# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMES FLETCHER JR., | ) | |
| | ) | |
| | ) | Case No. 20−cv−04768 |
| *Plaintiff,* | ) | |
| | ) | Judge Andrea Wood |
| *v.* | ) | |
| | ) | Magistrate Judge Maria Valdez |
| JEROME BOGUCKI, ANTHONY | ) | |
| NORADIN, RAYMOND SCHALK, | ) | |
| ANTHONY WOJCIK, UNKNOWN CITY | ) | |
| OF CHICAGO POLICE OFFICERS, and the | ) | |
| CITY OF CHICAGO | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' JOINT MOTION TO DISMISS

Jon Loevy
Anand Swaminathan
Mariah Garcia
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
mariah@loevy.com

Jennifer Blagg
1333 W. Devon Ave., Suite 267
Chicago, Illinois 60660
(773) 859-0081
jennifer@blagglaw.net

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

    Underlying Investigation ............................................................................................2

    Plaintiffs' Claims .......................................................................................................6

LEGAL STANDARD..........................................................................................................7

ARGUMENT.......................................................................................................................8

I. Plaintiff Properly States a 1983 Due Process Claim ......................................................8

    A. Plaintiff Has Stated a *Brady* Due Process Claim .............................................9

    B. Plaintiff Has Stated a Claim for Unduly Suggestive Identification............................17

    C. Plaintiff Has Stated a Claim for Destruction of Evidence ..........................................20

II. Plaintiff Has Adequately Pled a Willful and Wanton Misconduct Claim..............................21

III. Plaintiff Has Sufficiently and Plausibly Pled His Remaining Federal and State Law
    Claims ...................................................................................................................23

CONCLUSION...................................................................................................................24

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006)..................................................17

*Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019) .....................................................15

*Arista Records, LLC v. Doe 3*, 604 F. 3d 110 (2d Cir. 2010).............................................. 11 n. 3

*Avery* v. *City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017)....................................................15-16

*BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015) ..........................................................9

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) .............................................................................8

*Cannon v. Burge*, No. 05 C 2192, 2006 U.S. Dist. LEXIS 4040 (N.D.Ill. 2006) .......................12

*Carter v. Simpson*, 328 F.3d 948 (7th Cir. 2003) ......................................................................22

*Chelios v. Heavener*, 520 F.3d 678 (7th Cir. 2008).....................................................................22

*City of Los Angeles v. Heller*, 475 U.S. 706 (1986) .....................................................................24

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019)......................................18, 19, 20 n. 6

*Dixon v. Pfister*, 420 F.Supp.3d 740 (N.D. Ill. October 25, 2011) ....................................*Passim*

*Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) ................................................................20

*Drain v. Bauman*, 708 F.Supp.2d 693 (N.D. Ill. 2010) ............................................................22

*Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012) ......................................................................16

*Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003)................................................................ 16 n. 4

*Giglio v. United States*, 405 U.S. 150 (1972)..............................................................................16

*Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876 (N.D. Ill. 2016)........................................18

*Goudy v. Basinger*, 604 F.3d 394 (7th Cir. 2010) ......................................................................17

*Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007) ................................................................. 16 . 4

*Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960 (N.D. Ill. 2020) ............................ 11 n. 3

*Hensley v. Carey*, 818 F.2d 646 (7th Cir. 1987) ........................................................20

*KFC Corp. v. Iron Horse of Metairie Rd.*, LLC, No. 18 C 5294, 2020 WL 3892989
    (N.D. Ill. July 10, 2020) ........................................................9

*Kitchen v. Burge*, No. 10 C 4093, 2012 U.S. Dist. LEXIS 12059 (N.D. Ill. 2012).............. 16 n. 4

*Kyles v. Whitley*, 514 U.S. 419 (1995) ........................................................ 11, 17

*Liska v. Dart*, 60 F.Supp.3d 889 (N.D. Ill. 2014) ........................................................22

*Manson v. Brathwaite*, 432 U.S. 98 (1977) ........................................................ 17, 18

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) ........................................................15

*Meeker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) ........................................................14

*Mitchell v. Special Educ. Joint Agreement Sch. Dist. No. 208*,
    386 Ill.App.3d 106, 107, 897 N.E.2d 352, 553 (2008) ........................................................22

*NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) ........................................................8

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)........................................................15

*Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003)........................................................16

*Orange v. Burge*, No. 04 C 0168, 2005 U.S. Dist. LEXIS 7234
    (N.D.Ill. March 30, 2005)........................................................12

*Patterson v. Burge*, 328 F.Supp.2d 878 (N.D. Ill. 2004) ........................................................12

*Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012) ................................................... 18-19, 20 n. 20

*Rabe v. United Airlines, Inc.*, 636 F.3d 866 (7th Cir. 2011) ........................................................9

*Ruiz-Cortez v. City of Chicago*, No. 11 C 1420, 2016 WL 6270768
    (N.D. Ill. Oct. 26, 2016) ........................................................ 12, 16

*Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)........................................................ 16 n. 4

*Serrano v. Guevara*, No. 17 CV 2869, 2020 WL 3000284 (N.D. Ill. June 4, 2020)...................18

*Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394 (7th Cir. 2012)........................................................8

*Stevenson v. City of Chicago*, No. 17 CV 4839, 2018 WL 1784142
(N.D. Ill. Apr. 13, 2018) ...................................................................................21-22

*Swanigan v. Chicago*, 775 F. 3f 953 (7th Cir. 2015) ...............................................23

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) .........................................7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..................................................8

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008).............................................7

*Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2009) ............................................23

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002)........................................................14

*Tillman v. Burge*, 813 F.Supp.2d 946 (N.D. Ill. 2011) ............................................12

*Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583 (7th Cir. 1989) ...................7

*United States v. Bland*, 517 F.3d 930 (7th Cir. 2008) ...............................................9

*United States v. Hawkins*, 499 F.3d 703 (7th Cir. 2007) .........................................20

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011)................................................7, 8

*Wearry v. Cain*, 136 S.Ct. 1002 (2016) ...................................................................17

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) ...................................................................................................8

Plaintiff James Fletcher, by his attorneys Loevy & Loevy, respectfully submits the following response in opposition to Defendants' Joint Motion to Dismiss, Dkt. 34, and states as follows:

## INTRODUCTION

On October 25, 2019, Chief Judge Pallmeyer overturned Plaintiff's wrongful conviction for the murder of Willie Sorrell, upon a finding that the eyewitness identifications the State used to procure Plaintiff's conviction were untrue, and based off of investigative misconduct by the Defendant Officers in the instant case. *See Dixon v. Pfister*, 420 F.Supp.3d 740, 742 (N.D. Ill. October 25, 2011). The State did not appeal the Chief Judge's granting of Plaintiff's writ of *habeas*, and on January 30, 2020, James Fletcher walked out of prison a free man. Several months later, Plaintiff brought this civil rights lawsuit against the city of Chicago and Defendant Officers, for causing Plaintiff to be wrongfully convicted for a murder he did not commit.

Plaintiff's Complaint alleges a detailed set of facts specifying the events which led to Mr. Fletcher's wrongful incarceration, as well as the specific legal claims that flow from Defendants' conduct. This 40 page document is comprehensive, speaks specifically to the acts of the individual Defendants, and goes far beyond the requirements of federal notice pleading. Defendants' nonetheless seek to dismiss Plaintiff's Complaint. They do so in direct defiance of the motion to dismiss standard: they ignore many of Plaintiff's well-pleaded allegations; expressly dispute other allegations (by pointing to police reports that are some of the very documents that Plaintiff says were fabricated, and contained deliberate and material omissions); and ultimately fail to accept Plaintiff's allegations as true. In addition, Defendants misapply the law regarding Plaintiff's due process and willful and wanton conduct claims.

1

Applying the law correctly—including accepting all factual allegations as true and drawing all inferences in Plaintiff's favor—Plaintiff's Complaint more than adequately sets forth the factual basis for the federal and state-law claims Plaintiff brings against the Defendant Officers and the City of Chicago. The Court should decline Defendants' invitation to resolve factual disputes in their favor, and their joint motion to dismiss should be denied.[1]

## FACTUAL BACKGROUND

### Underlying Investigation

On December 21, 1990, two armed men robbed Edward Cooper, the driver of a delivery truck on the 5600 block of West Madison Street in Chicago. Dkt. 1 at ¶¶ 14-15. A chase ensued, and gunfire was exchanged. *Id*. at ¶¶ 15-16. Tragically, a stray bullet hit a 65-year-old bystander to the scene, Willie Sorrell, who soon thereafter died of the wound. *Id*. at ¶ 16. The assailants escaped apprehension. *Id*. at ¶ 17.

There were four eyewitnesses to the shooting: Cooper, himself; Sheenee Friend, an eyewitness to the robbery; and Emmett Wade and Terry Rogers, eyewitnesses to the chase. They all spoke to police, but none of them made an identification. *Id*. at ¶¶ 18-19. The only eyewitness description of the perpetrator given to the police was of someone with "shoulder-length, Jheri-curl" style hair. *Id*. at ¶ 26.

The case went cold for five years. Then, in 1995, Defendants Bogucki and Schalk began investigating the Sorrell murder. *Id*. at ¶ 20. At that time Cooper told the Defendant Officers he believed Rogers to be one of the robbers, given Rogers history of drug use, but was unable to provide the Detectives any further details on the second assailant. *Id*. at ¶ 21-22. Detective

---

[1] Plaintiff voluntarily dismisses his claim for Unlawful Detention under the Fourth and Fourteenth Amendment (Count II).

2

Bogucki and Schalk put a stop order in for Rogers, but otherwise did not investigate the case for seven more years. *Id*. at ¶ 22.

In 2002, twelve years after the robbery occurred, Rogers was arrested for arson and criminal trespassing. *Id*. at ¶ 23. Defendant Officers interviewed Rogers in custody the following day. *Id*. at ¶ 24. During the interview, Rogers falsely implicated Plaintiff in the crime, claiming for the first time in twelve years that he knew who the shooter was. *Id*. at ¶ 25. Upon information and belief, Defendants then struck an illegal and undisclosed deal with Rogers to secure a false statement from him implicating Fletcher. *Id*. at ¶ 29. After Rogers did, Defendants declined to seek charges against him for the arson, and he was released. *Id*.

After interviewing Rogers, Defendant Officers re-interviewed the remaining eyewitnesses to the Sorrell murder: Emmett Wade, Edward Cooper, and Sheenee Friend. All three witnesses were coerced or manipulated in an attempt to elicit a false identification of Fletcher.

Defendant Officers engaged in several coercive tactics in an attempt to obtain an identification from Wade, including: (1) showing Wade only a single photograph of Plaintiff and not a photo-array, *id*. at ¶ 39; (2) telling Wade that the man in the photograph was a "bad guy" they wanted to keep off the streets, *id*. at ¶ 39; and (3) showing Wade a photograph of Plaintiff taken in 2002, and not 1990, during the commission of the crime, because he had a curly hairstyle in 2002 (but not 1990) that was similar to the "Jheri-curl" hairstyle described by eyewitnesses at the scene of the crime, *id*., at ¶ 48. Despite pressure from Defendant Officers, however, Wade would not identify Plaintiff. *Id*.

Wade's refusal to identify Plaintiff was highly exculpatory, as he had seen the perpetrators, and told the detectives at the scene in 1990 that he could identify the shooters if he

saw them again. *Id*. at ¶ 40. Defendant Officers deliberately concealed the improper

identification procedures they had used with Wade. *Id*. at ¶ 42. Defendants instead wrote a

fabricated report claiming Wade did not see the faces of the perpetrators on the day of the

robbery, implying that he would not have been able to identify – or refute an identification – of

Plaintiff as the offender. *Id*. at ¶ 43.

Sheenee Friend was similarly coerced by Defendant Officers to make a false

identification. At the interview, which took place while she was in custody for a parole

violation, she was shown a photo-array, which contained the same misleading photo of Plaintiff

shown to Wade. *Id*. at ¶ 45, 48. When asked to identify the person who killed Willie Sorrell,

Friend pointed to someone other than Plaintiff, *id*. at ¶ 45, and in response, Defendant Officers

moved her finger to Plaintiff's photo, telling her that Plaintiff was the one who did it. *Id*.

Defendants also told Friend that Plaintiff was a bad, violent man that needed to be kept off the

streets. *Id*. at ¶ 46. As with Wade, Defendants deliberately concealed Friend's misidentification,

and their misconduct, from Fletcher. *Id*. at ¶ 47.

When Cooper was re-interviewed by Defendants, he was shown a photo-array which

contained this same deceptive photograph of Plaintiff. *Id*. at ¶ 49. Despite the Defendants'

manipulation, Cooper told the Defendants that because the robbery had happened twelve years

earlier he did not recognize anyone in the pictures. *Id*. The Defendants wrote a false police report

concealing this information, and instead stated that Cooper picked out a photo of Plaintiff and

made a tentative identification of him as the perpetrator. *Id*. at ¶ 50.

Defendant Officers then assembled a police line-up that included Fletcher and four other

individuals. *Id*. at ¶ 52. This line-up was viewed by Cooper and Friend. *Id*. The line-up

procedures were unconstitutional, unreliable, and unduly suggestive. In the first instance,

Defendants had already shown Fletcher's photographs to Friend and Cooper to try and get them to falsely implicate Fletcher – so they knew Fletcher was the Defendants' suspect. *Id*. at ¶ 54. In addition, Defendants chose individuals to stand in the lineup with Fletcher that did not have a similar appearance, causing Fletcher to stand out. *Id*. at ¶ 55. Based on the misconduct set forth above, Cooper and Friend ultimately selected Plaintiff as Willie Sorrell's shooter out of the line-up.

Defendant Officers also tried to pressure Plaintiff to confess to a crime they knew he did not commit. When they interviewed Plaintiff, prior to his arrest, they attempted to coax him into confessing by implying they would not treat him as a suspect in Sorrell's murder if he became a police informant on their behalf. *Id*. at ¶ 63. Once Fletcher made clear he would not confess or act as a police informant, they threatened him, and told him that if he did not confess or work for him, they would pin a false murder charge on him. *Id*. at ¶ 64. Fletcher never confessed, and Defendants followed through on their threat. Soon after the Defendants left, Fletcher was arrested and charged for the murder of Willie Sorrell. *Id*. at ¶ 65.

These improper tactics were part and parcel of Defendant City of Chicago's policy and practice of causing the prosecution of innocent people based on the same types of misconduct alleged here. Indeed, both the Chicago Police Department and the Individual Officers are responsible for scores of similar miscarriages of justice. *Id*. at ¶¶ 66-110. Since 1986, no fewer than 150 cases have come to light in which Chicago police officers fabricated false evidence or suppressed exculpatory evidence in order to cause the convictions of innocent persons for serious crimes they did not commit. *Id*. at ¶ 67. Moreover, Plaintiff's Complaint details numerous other instances of exactly such misconduct by these particular Defendant Officers. *Id*. at ¶¶ 98-110.[2] As

---

[2] This includes allegations of the physical coercion of witnesses by Defendants Bogucki and Noradin, *id*. at ¶ 103; allegations of the cover-up of police misconduct by Defendants Noradin and Wojcik, *id*. at ¶¶ 104-106; allegations

such, Plaintiff joins many others in alleging *Monell* violations against Defendant City, based on its long history of condoning the fabrication and suppression of evidence by its officers.

### Plaintiffs' Claims

Plaintiff alleges: (1) constitutional due process violations (2) constitutionally unlawful detention; (3) constitutional failure to intervene; (4) conspiracy to deprive constitutional rights; (5) policy and practice claims against the City of Chicago; (6) malicious prosecution; (7) intentional infliction of emotional distress; (8) willful and wanton conduct; (9) civil conspiracy; (10) respondeat superior; and (11) statutory indemnification.

Defendants concede that Plaintiff's case will move forward on Plaintiff's due process claim. As explained more fully below, Defendants affirmatively state that Plaintiff has made out a claim for fabrication of evidence. That is a due process claim, and Defendants' attempt to dismiss other aspects of Plaintiff's due process claim is ultimately futile: both because the legal arguments they make are meritless, and also because Defendants improperly ask the Court to preemptively dismiss methods of proving his due process claim, on a piecemeal basis.

Defendants also argue that because some of Plaintiff's due process theories fail, all of the remaining constitutional claims, as well as his state law claims for conspiracy, *respondeat superior*, and indemnification also fail. But this argument is baseless in light of Defendants' concession that Plaintiff's due process claim goes forward based on his allegations of fabrication of evidence. Furthermore, Defendants' do not present any challenges to his *Monell* claim, nor any of the state law tort claims (excluding Plaintiff's will and wanton conduct claim), which means the case will go forward on those claims as well.

---

of the obtaining of false confessions through coercive interrogation techniques by Defendants Bogucki and Wojcik, *id*. at ¶¶ 100-102, 105; and allegations of fabrication of evidence by Defendants Bogucki, Schalk and Wojcik, *id*. at ¶¶ 100, 102, 105-106.

In sum, Defendants concede that this case must go into discovery on multiple claims (and indeed discovery has already begun), but nevertheless ask this Court to parse Plaintiff's due process claim into theories of liability and methods of proof, and dismiss certain aspects on a piecemeal basis. Defendants' attempt to chop Plaintiff's due process claim up in that way is improper, and will only serve to make discovery unmanageable and the subject of numerous disputes. For this reason, and in light of Defendants' similarly unavailing substantive arguments, this Court should deny Defendants' motion to dismiss.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Plaintiffs need to pass only "two easy-to-clear hurdles" to survive Defendants' motion to dismiss: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen." *Id.* (emphasis in original). At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

The Federal Rules of Civil Procedure ("Rule(s)") permit notice pleading and only require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a)(2) "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich*, 664 F.3d at 212.

## ARGUMENT

## I.     Plaintiff Properly States a 1983 Due Process Claim

Plaintiff asserts a due process claim based on four theories: fabrication of evidence, suppression of evidence (*i.e.*, a *Brady* claim), use of suggestive evidence procedures, and destruction of evidence. *See* Dkt. 1 at ¶ 134-144. Defendants move to strike only three of these theories, conceding that Plaintiff has stated a due process claim based on the fabrication of evidence. *See* Dkt. 34 at 8 ("Fletcher's allegations fall short on *all but his fabricated evidence claim*.") (emphasis added).  Defendants' concession is fatal to their motion to dismiss. The Complaint sets forth a *single* due process claim, premised on multiple legal theories. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) ("[A claim is] the aggregate of operate facts which give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims."). *See also NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("No matter how many legal theories, or 'counts,' a plaintiff may assert, they constitute a single 'claim' to the extent premised on the same facts; different legal theories...do not multiply the number of claims for relief.").

Rule 12(b)(6) does not authorize the dismissal of legal theories. As long as the plaintiff can, in response to a motion to dismiss, identify a plausible theory that would entitle it to relief on its claim, that claim may move forward; a motion to dismiss some legal theories and not others must be denied. *See KFC Corp. v. Iron Horse of Metairie Rd.*, LLC, No. 18 C 5294, 2020 WL 3892989, at *3 (N.D. Ill. July 10, 2020). *See also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."); *cf. Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."). On this basis alone, Defendants' motion to dismiss should be denied.

Even if the Court were to consider each of Plaintiff's other three due process theories separately and independently, Plaintiff has amply stated a claim as to each.

### A.    Plaintiff Has Stated a *Brady* Due Process Claim

Defendants contend that Plaintiff has not stated a *Brady* claim against Defendant Officers for suppression of evidence related to each eyewitnesses identification of Plaintiff as the perpetrator who killed Willie Sorrell. This is not so. Defendants' argument ignores the allegations in the Complaint and improperly replaces them with disputed facts Defendants ask this Court to resolve in its favor.

A *Brady* claim has three elements: (1) the suppression of evidence; (2) that was favorable to the defense; and (3) that was material to an issue at trial. *United States v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008) (citation omitted). Plaintiff has easily met all three of these elements. He alleges that Defendants withheld the following evidence from Plaintiff prior to trial:

9

- Friend choosing a person other than Plaintiff out of a photo array that contained Plaintiff, Dkt. 1 at ¶ 45;

- Friend only choosing Plaintiff out of the photo array based on Defendants' coercion, which included pointing at and singling out Plaintiff, *id*.;

- Wade only being shown a single photograph of Plaintiff, when being asked to identify the person who killed Willie Sorrell, *id*. at ¶ 39;

- Wade refusing to identify Plaintiff as the person who killed Willie Sorrell despite Defendant Officers pressuring him to identify Plaintiff as the killer, *id*. at ¶¶ 39-43;

- Cooper telling Defendant Officers that he could not identify anyone, when presented with a photo array containing Plaintiff's picture, *id*. at ¶¶ 49-50; and

- Upon information and belief, Rogers illegal and undisclosed deal with Rogers, wherein they declined to investigate or seek charges for arson, in exchange for his false statement implicating Fletcher, *id*. at ¶ 29.

First, the information withheld from Plaintiff regarding Friend and Cooper's identification (or lack thereof) of him as the Sorrell suspect is simple, straightforward evidence of Plaintiff's *Brady* claim. This was direct exculpatory evidence which would have allowed Plaintiff to undermine Friend and Cooper's eyewitness identifications, and would have been unquestionably material in Plaintiff's criminal case – since the sole bases for Plaintiff's conviction were the eyewitness identifications of Cooper, Friend, and Rogers. Wade's refusal to identify Plaintiff as Sorrell's shooter, despite being shown only a picture of Plaintiff, is also highly exculpatory, given Wade's earlier statement to police that he would be able to recognize the shooters if he saw them again. *See id*. at ¶ 40. Each of these examples—independently, and certainly cumulatively—more than adequately states a *Brady* claim.

Second, in addition to the inability of eyewitnesses Cooper, Friend and Rogers to independently identify Plaintiff when presented with his picture, the suggestive tactics that Defendants used to procedure eyewitness identifications were also suppressed, and also

constitute a violation under *Brady*. *See Kyles v. Whitley*, 514 U.S. 419, 447-49 (1995) (withheld evidence of police misconduct in one part of the investigation could be extrapolated to attack the police investigation in the rest of the case). Defendant Officers concealed the fact that they moved Friend's finger to Plaintiff's photo after she chose someone other than Plaintiff on the photo array; that they showed Wade a single photo of Plaintiff and attempted to pressure him into choosing Plaintiff after he refused to identify Plaintiff; and that they completely made up Cooper's photo identification after he told them he could not identify Plaintiff from a photo array. The improper tactics used to coerce all three eyewitnesses could have been used to attack the integrity of the police investigation, and thus was highly material to Plaintiff's criminal case.

Third, Rogers' undisclosed deal with Defendants constitutes another *Brady* violation.[3] Though Defendants' are correct in asserting that Rogers did not personally testify at Plaintiff's trial, he nonetheless provided testimony at the trial, when the State introduced police reports into evidence which contained his testimonial statements *See Dixon*, 420 F.Supp.3d at 760-61 (finding that one of Rogers' statements to the investigating officers was introduced by Defendant Bogucki at trial, when he read one of the underlying police reports in the case, and further finding that Rogers' statement was testimonial in nature). Therefore, if Plaintiff knew that Rogers received a benefit in exchange for his testimony, Plaintiff could have attacked both the reliability of Rogers' statements in the police report, Defendant Officers reliance on those

---

[3] This allegation is made on information and belief. This belief is partially based on the fact that, despite being caught with ample evidence of guilt of the crime (arson) he was arrested for– such as incendiary material – Rogers was inexplicably released without charges after implicating Plaintiff. Dkt. 1 at ¶¶ 23-20. Allegations based on information and belief must also be taken as true at the motion to dismiss stage. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) ("The Twombly plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.") (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

statements, and Defendant Officers credibility on the whole. This qualifies as an independent basis to support Plaintiff's due process claim based on the suppression of evidence.

Fourth, Plaintiff also alleges that Defendants suppressed evidence of their longstanding pattern and practice of denying criminal suspects due process, through the use of suggestive, coercive, or otherwise unreliable identification procedures, and that Plaintiff was convicted as part of this established practice. Repeated rulings by courts in this District have stated that similar allegations state actionable § 1983 *Brady* claims. In *Patterson v. Burge*, 328 F.Supp.2d 878 (N.D.Ill. 2004), for example, Judge Gottschall upheld *Brady* claims where the plaintiff alleged that defendants "effectuate[d] a pattern and practice of torture and frame-ups [of which] he was not aware[, and] knowingly suppressed both the actual truth of his innocence and their roles in framing him." *Id*. at 889. Likewise, in *Tillman v. Burge*, 813 F.Supp.2d 946 (N.D. Ill. 2011), Chief Judge Pallmeyer found *Brady* materiality in withheld evidence of abusive police patterns, stating: "Had the factfinder been aware of the scope of the abuse in Area 2, or had that abuse been confirmed through official channels, the trier of fact may have found the evidence—chiefly Plaintiff's confession—insufficient to support a conviction." *Tillman* at 962, 964. *See also Cannon v. Burge*, No. 05 C 2192, 2006 U.S. Dist. LEXIS 4040, *39-41 (N.D.Ill. 2006) (St. Eve, J.) ("Plaintiff's knowledge of what transpired in the interrogation room does not relieve [the defendants] of their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room."); *Orange v. Burge*, No. 04 C 0168, 2005 U.S. Dist. LEXIS 7234, *35 (N.D.Ill. March 30, 2005) (Holderman, J.); *Ruiz-Cortez v. City of Chicago*, No. 11 C 1420, No. 11 C 1420, 2016 WL 6270768 (N.D. Ill. 2016) (Leinenweber, J.).

While adjudicating Plaintiff's federal writ of habeas corpus, Chief Judge Pallmeyer seemingly endorsed this theory of the case. Specifically, Chief Judge Pallmeyer wrote:

> "Finally, although not addressed here, the allegations rendered in the recent affidavits of Cooper, Friend, and Wade are highly troubling, particularly in light of the misconduct for which Detective Schalk was charged and Detective Bogucki was found liable in *Jimenez v. City of Chicago*. The court suspects that these materials could plausibly substantiate Petitioner's second claim: that the use of Cooper and Friend's identifications to convict Petitioner violated rights guaranteed by the Due Process Clause."

*Dixon*, 420 F.Supp. at 767. The Chief Judge's words concisely make the point. Because a pattern of misconduct among Defendant Officers, as well as within the Chicago Police Department, could only have been known by Plaintiff after he was convicted, Plaintiff's due process rights under *Brady* were arguably violated.

Defendants attempt to dismiss Plaintiff's *Brady* theories by sidestepping the well-pleaded allegations set forth above, and instead disputing particular facts in the Complaint. That is improper. In sum, Defendants argue: (1) that Plaintiff already knew about the circumstances surrounding Cooper and Wade's (lack of) identification of Plaintiff, and (2) that evidence of police misconduct is not *Brady* material, and thus Defendant Officers had no duty to disclose their investigative misconduct with Rogers, Friend, and Wade. Both of Defendants' arguments fail.

As an initial matter, Defendants' motion ignores several exculpatory facts discussed above that Plaintiff alleges were withheld, including for example Friend's statements during her identification procedure, Rogers' *quid pro quo* with Defendants, and Defendants' pattern of similar misconduct. Defendants have therefore forfeited any challenge to the sufficiency of Plaintiff's *Brady*-based claim, and the argument can be easily rejected on that basis.

Defendants' first argument–that Plaintiff knew about the circumstances surrounding Cooper and Wade's identifications—requires rejecting Plaintiff's well-pleaded facts and instead accepting as true Defendants' competing facts, based on outside documents and reports

Defendants attach to their motion. The Court should reject Defendants' request that this Court rewrite the motion to dismiss standard. Extrinsic documents may be incorporated at the motion to dismiss stage only when: (1) the document is part of the pleadings that are referred to in the plaintiff's complaint, (2) the document is central to Plaintiff's claim, and (3) the authenticity of the document is authenticated or conceded. *E.g.*, *Meeker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir.2009); *Tierney v. Vahle*, 304 F.3d 734, 738–39 (7th Cir.2002). Defendants do not meet these elements. The extrinsic documents Defendants attach are not cited in the Complaint, and the authenticity of the documents is *not* conceded by Plaintiff. Rather, the legitimacy of the reports is in direct dispute. Indeed, the police reports Defendants are relying on are the very documents Plaintiff alleges are fabricated and contain material falsehoods and omissions; their veracity is a central issue in this litigation. Remarkably, Defendants ask this Court to accept the contents of the disputed reports as true, and as a basis to grant its motion to dismiss. This is an egregious misapplication of the motion to dismiss standard.

In any event, Defendants' alternate version of the facts is false. Plaintiff did not know the circumstances surrounding Cooper and Wade's interactions with the Defendant Officers prior to trial. Defendants affirmatively twist the facts to manufacture such a claim. For example, Defendants claim that because Plaintiff hired a private investigator to talk to Cooper prior to trial, he must have known what occurred between the Defendant Officers and Cooper during their initial interview in 2002. This is simply not true. As Chief Judge Pallmeyer outlines in *Dixon*, Cooper *did* talk to the private investigator, but it was solely about whether Cooper recalled one or two robbers carrying a gun, not whether Cooper had performed an identification of Plaintiff or not. *Dixon*, 420 F.Supp.3d 740 at 745.

Defendants also claim that before trial Wade told Plaintiff's defense attorney that detectives told him to pick out Plaintiff, but he did not. Dkt. 34, 11-12.This argument—contrary to Plaintiff's well-pleaded facts, and therefore improper at the motion to dismiss stage— mischaracterizes the facts, and ignores the fact that there is no evidence that Wade or his defense attorney ever learned that Defendants (1) showed Wade only a *single* photograph of Plaintiff when they were pressuring him to identify Plaintiff as the shooter (not a "series of photographs," as Defendants would later claim in their reports), *see Dixon*, 420 F.Supp.3d at 748, and (2) Defendants tried to coerce Wade into identifying Plaintiff by, for example, telling him Plaintiff was a bad man.

Finally, even if a portion of exculpatory information is known to a plaintiff at his criminal trial, a plaintiff can still make out a *Brady* claim based on the undisclosed portion of exculpatory information. *See, e.g., Aver*y v. *City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017) (holding that, although plaintiff knew that the informants' statements were false, he did not know the full extent of the pressure tactics and inducements the detectives used to obtain them, and so plaintiff made out a claim under *Brady*). Therefore, even if the Court were to accept Defendants' disputed facts as true, Plaintiff *still* makes out a claim under *Brady*.

Defendants' second argument—that police misconduct cannot constitute *Brady* evidence—is contrary to law. Courts have long held that evidence of police misconduct withheld from Plaintiff at trial constitutes a *Brady* violation. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001), abrogated on other grounds by *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) (recognizing a due process violation when a police officer suppresses his manipulation of a witness to falsely identify a criminal defendant); *Anderson v. City of Rockford*, 932 F.3d 494, 506-07 (7th Cir. 2019) (failure to disclose misconduct used to fabricate statement constituted

*Brady* violation); *Avery*, 847 F.3d at 39 ("*Avery's Brady* claims are premised on the detectives'

failure to disclose the details of the pressure and inducements they brought to bear to extract

false statements from Randolph, Kent, and Kimbrough. . . . In other words, he did not have the

evidence that could help him prove that the informants' statements were false . . . . Summary

judgment on the *Brady* claims was improper."); *Fields v. Wharrie*, 672 F.3d 505, 517 (7th Cir.

2012) ("The constitutional violation occurs when the means by which the testimony was

acquired are not disclosed at trial—or when other information that impeach the testimony's

reliability are not shared with the defense."); *Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir.

2003) (Defendants' failure to disclose "the details of how they induced the witnesses to finger

Newsome" forms the basis for a Brady violation); *Ruiz-Cortez v. City of Chicago*, No. 11 C

1420, 2016 WL 6270768, at *16 (N.D. Ill. Oct. 26, 2016) (Plaintiff's claims "relate to things that

ranged far outside Plaintiff's knowledge," including a "pattern of misconduct and obstruction of

justice."); *Giglio v. United States*, 405 U.S. 150 (1972) ("When the reliability of a given witness

may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility

falls within [Brady]").[4]

***

---

[4]     Furthermore, the cases upon which Defendants rely are distinguishable. They concern allegations of
suppression based on a plaintiff's own alibi, or torture to which a plaintiff was subjected – both facts which would
be obviously known to the plaintiff. *See Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007) (plaintiff knew of his own
alibi); *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (defendants not liable for remaining silent about the
abuse they inflicted on the plaintiff since plaintiff would have known about it). These cases do not apply here, where
Plaintiff's *Brady* claim is based on manipulation and coercion of other witnesses, and that Plaintiff alleges he did not
know about. The cases Plaintiff cites above squarely apply to the allegations of misconduct in this case.
        Similarly, Defendants reliance on *Gauger v. Hendle*, 349 F.3d 354, 358 (7th Cir. 2003), is also misplaced.
Courts have consistently found *Gauger* has no application in cases like Plaintiff's, where *Brady* claims are based on
actions unknown to the plaintiff that Defendants took outside the interrogation room. *See, e.g.*, *Kitchen v. Burge*, No.
10 C 4093, 2012 U.S. Dist. LEXIS 12059  at *13-14 (N.D. Ill. 2012) (finding that courts in this district have
repeatedly held that *Gauger* "does not cut off a plaintiff's claim where the defendants are accused of '. . . violating
[the plaintiff's] right to a fair trial through actions they took outside the interrogation room.'").

16

Brady evidence is not measured piecemeal; all withheld evidence must be assessed cumulatively to determine if the evidence is exculpatory and material. *Kyles v. Whitley*, 514 U.S. at 434-37; *Goudy v. Basinger*, 604 F.3d 394, 400-01 (7th Cir. 2010). The Seventh Circuit has thus disallowed Defendants' improper tactic of treating "each piece of suppressed evidence in seriatim, rather than assessing its cumulative effect." *Goudy*, 604 F.3d at 400; *see also Wearry v. Cain*, 136 S.Ct. 1002, 1006 (2016).

Plaintiff has identified multiple categories of *Brady* evidence that were withheld. Those instances, independently and cumulatively, clearly permit Plaintiff's due process theory based on the suppression of evidence to proceed into discovery. Defendants fail to accept these allegations as true, and cite caselaw that is easily distinguished. Accordingly, the Court should deny Defendants' motion to dismiss for failure to state a cognizable claim under the due process clause.

**B.     Plaintiff Has Stated a Claim for Unduly Suggestive Identification**

A Plaintiff's Fourteenth Amendment right to due process is violated if "unduly suggestive identification techniques are allowed to taint the trial." *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006). In evaluating whether due process was violated, courts assess the totality of the circumstances to determine "whether the identification procedure was unduly suggestive and whether the resulting identification is reliable." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 109 (1977)). Determining whether an identification was unduly suggestive and whether it tainted the subsequent trial is a highly fact intensive process and, therefore, seldom suitable for disposition on a motion to dismiss. *See, e.g.*, *Alexander*, 433 F.3d at 555-56.

17

The Complaint alleges several identification techniques used by the Defendants that were unduly suggestive and made the identifications unreliable. For example, Plaintiff has alleged that Defendants (1) pointed out Plaintiff's photo in meetings with Cooper and Friend, before they viewed lineups; (2) included a deceptive picture of Plaintiff in the photo-array that was shown to Cooper, Wade, and Friend, which showed Plaintiff as he appeared in 2002, not 1990, *id*. at ¶ 48 and (3) placed Plaintiff in a police lineup with individuals that did not have a similar appearance to Plaintiff, which caused Plaintiff to stand out, *id*. at ¶ 55.

This makes out a claim of unduly suggestive identification procedure under the due process clause. *See, e.g.*, *Brathwaite*, 432 U.S. 98 at 109 (undisputed that single photograph identification procedure is suggestive); *Serrano v. Guevara*, No. 17 CV 2869, 2020 WL 3000284, at *15 (N.D. Ill. June 4, 2020) (finding that plaintiff stated a claim for an unduly suggestive identification technique when defendant officers, in attempting to elicit an identification of a car in a criminal proceeding, only showed witness one car that was similar to the suspect car); *Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876, 883 (N.D. Ill. 2016) (dismissing a motion to dismiss, after plaintiff presented a set of facts that, if proved, would show that defendant officers identified plaintiff on behalf of a witness, under suggestive circumstances).

Defendants apparently concede this point, as they do not argue that the identification procedures alleged by Plaintiff were constitutionally permissible. Instead, they argue that this theory of due process liability should not be considered because he withdrew his motion to suppress Cooper and Friend's identification at his criminal trial. This frankly bizarre argument is premised on a faulty reading of two Seventh Circuit cases, *Coleman v. City of Peoria*, 925 F.3d 336, 347-348 (7th Cir. 2019) and *Phillips v. Allen*, 668 F.3d 912, 915-17 (7th Cir. 2012). Taken

18

together, Defendants claim these cases establish a multi-tiered procedural approach to unduly suggestive claims, wherein a wrongfully convicted plaintiff loses his right to bring a claim based on an unduly suggestive lineup if: (1) the plaintiff was unsuccessful in challenging the admissibility of eyewitness identification at trial, or (2) the plaintiff fails to challenge an eyewitness identification at trial. *See* Dkt. 34 at 16-18. *See* Dkt. 34 at 16-18. Defendants further claim that an exception to this rule only exists when a particular technique has been forbidden by an "authoritative judicial decision." *Id.* at 18, citing *Phillips*, 668 F.3d at 917.

Defendants reading of these cases is simply incorrect. Neither *Coleman* nor *Phillips* holds that a plaintiff forfeits his ability to bring a claim based on an unduly suggestive procedure if he fails to challenge an eyewitness identification at trial.[5] Instead, *Coleman* simply considered whether the eyewitness identification procedure at issue in that case had the requisite indicia of reliability, and concluded that it did. That is not surprising: the eyewitness identified the plaintiff prior to any alleged misconduct, was certain of her identification of plaintiff at the lineup, and was not told or influenced to pick plaintiff out of a lineup in anyway. *See Coleman*, 925 F.3d at 347-49. Notably, Coleman was also at the summary judgment stage, not the pleading stage. The Seventh Circuit similarly predicated its analysis in *Phillips* on the analysis in Coleman, *i.e.*, whether there was sufficient indicia of reliability to the identification procedure in that case, thereby precluding a claim that it was unduly suggestive.

In short, the *Coleman* and *Phillips* courts ultimately ruled on whether there was sufficient indicia of reliability to the identification procedures at issue, not whether a plaintiff's due process

---

[5]  Notably, such a standard would make little sense in a case like this, where the due process claim is predicated in part on the fact that the evidence relevant to adjudicating a motion to suppress was suppressed and fabricated.

claim based on an unduly suggestive identification procedure could be "forfeited" based on arguments made, or not made, during the criminal proceedings.[6]

There are no other cases within the Seventh Circuit that apply the invented standard Defendant' advocate for. To the contrary, there are many cases which set out the standard for unduly suggestive procedure claims, but do not set forth any requirement to prevail on a motion to suppress or object to an eyewitness identification at trial. *See United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007) (holding that, at the motion to dismiss stage, a plaintiff need only to allege that the identification technique was suggestive and that the suggestiveness was unnecessary). *See also Hensley v. Carey*, 818 F.2d 646, 648-50 (7th Cir. 1987) (Section 1983 liability for police officer if the "improper identification has some prejudicial impact on an accused's defense" at trial); *Dominguez v. Hendley*, 545 F.3d 585, 590 (7th Cir. 2008) (affirming jury verdict in case alleging that unduly suggestive identification procedures were used).

For all of the reasons set forth above, the Court should deny Defendants' motion to dismiss Plaintiff's due process claim based on unduly suggestive lineup procedures.

### C.    Plaintiff Has Stated a Claim for Destruction of Evidence

Under the permissive pleading standard under Rule 8, Plaintiff has adequately alleged that Defendants not only fabricated and suppressed evidence of his innocence, but also destroyed such evidence. For example, Cooper was shown a photo array in 1995 that included individuals with the name Fletcher, Dkt. 1 at ¶ 21; Plaintiff believes that photo array was destroyed because

---

[6] Even if this Court adopts Defendants' reading of *Coleman* (and *Phillips*, as cited in *Coleman*), Defendants' argument still fails. In *Coleman*, a wrongfully convicted plaintiff lost a motion to suppress hearing in his criminal case, which sought to exclude an (out-of-court) photo and lineup identification from trial. *Coleman*, 925 F.3d at 347. This is wholly distinguishable from the instant case, where Plaintiff withdrew his motion to suppress prior to adjudication on the merits. *See* Dkt 34 at 12, 16-18 citing *Dixon v. Pfister*, 420 F.Supp.3d 740, 750 (N.D. Ill. October 25, 2011). Plaintiff did not "forfeit" his due process rights at his underlying criminal trial, as Defendants misplaced reading of *Coleman* suggests, because the suggestibility of the identification procedures implemented by Defendants was never adjudicated.

it included a picture of the Plaintiff, James Fletcher. Likewise, all of the eyewitnesses were questioned by CPD Officers in 1990 at the scene of the crime, *id*. at ¶ 19; Plaintiff believes that this photo array was likewise destroyed by Defendant Officers.

Taken together with Plaintiff's *Monell* allegations against the City of Chicago for destruction of exculpatory evidence, Plaintiff's allegations that Defendants destroyed evidence which would have shown his innocence states a claim for destruction of evidence.[7]

## II.    Plaintiff Has Adequately Pled a Willful and Wanton Misconduct Claim

Defendants move to dismiss Plaintiff's state law claim for willful and wanton conduct (Count VIII) by improperly mischaracterizing Plaintiff's allegations. First, Defendants' argue that there is no separate, independent tort of willful and wanton conduct, and suggest that, as such, Count VIII of Plaintiff's complaint must be dismissed. *See* Dkt. 34, 24 ("Because there is no such thing as a 'willful and wanton claim . . . under Illinois law, Count VIII must be dismissed with prejudice."). Defendants' further argue that, to the extent that the willful and wanton conduct can be considered an aggravated form of negligence, Plaintiff has failed to plead the basic elements of the tort. *See id*.

Each of Defendants' arguments lack merit. While Defendants are correct that willful and wanton conduct is not an independent tort in Illinois, that does not warrant its dismissal. Because a willful and wanton conduct claim is treated like an elevated form of negligence, if a plaintiff asserts the basic elements of a negligence claim, and then additionally asserts that defendants possessed a deliberate intention to harm or a conscious disregard for the plaintiff's welfare, they will survive a motion to dismiss. *See Stevenson v. City of Chicago*, No. 17 CV 4839, 2018 WL 1784142, at *10 (N.D. Ill. Apr. 13, 2018) ("To recover damages based on willful and wanton

---

[7] If the court decides to dismiss Plaintiff's claim for destruction of evidence, Plaintiff asks that it does so without prejudice, so that Plaintiff may amend and incorporate additional specific allegations.

conduct, a plaintiff must plead and eventually prove (1) the basic elements of a negligence claim . . . and (2) that the defendant's conduct demonstrated 'a deliberate intention to harm or a conscious disregard for the plaintiff's welfare.'") (citation omitted).

This is precisely what Plaintiff has pled in his Complaint. Though Count VIII itself does not enumerate every instance of deliberate indifference or conscious disregard displayed by Defendant Officers, the count incorporates the allegations in the Complaint by reference, which is replete with instances illustrating just that. Plaintiff alleges, for example, that Defendant Officers first threatened and then actively proceeded to pin false murder charges on him, after he refused to confess to a murder he did not commit, or act as a police informant for CPD. Dkt. 1, ¶¶ 63-65. Plaintiff also alleges that in order to pin the false murder charges on him, Defendant Officers, among other things, fabricated and manufactured evidence, and also concealed exculpatory evidence. *See* Dkt. 1, ¶¶ 31-36. Taken as true, these allegations are more than sufficient to show that Defendant Officers displayed a conscious disregard for Plaintiff's welfare, and to state a claim of willful ad wanton conduct.

Furthermore, adjudicating whether a defendant's conduct is sufficiently willful and wanton is not an appropriate determination at the motion to dismiss stage. *See Stevenson*, 2018 WL 1784142, at *10 (citing cases). This is because, "whether the conduct is sufficiently willful and wanton is ordinarily a question of fact for the jury and rarely should be ruled upon as a matter of law." *Liska v. Dart*, 60 F.Supp.3d 889, 906 (N.D. Ill. 2014) (citations omitted); *see Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003) ("Whether an officer acted wantonly 'is normally a question of fact to be determined by the jury.' "); *Drain v. Bauman*, 708 F.Supp.2d 693, 709 (N.D. Ill. 2010) (*citing Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008)); *Mitchell v. Special Educ. Joint Agreement Sch. Dist. No. 208*, 386 Ill.App.3d 106, 107,

22

897 N.E.2d 352, 553 (2008). This is further reason this Court should deny Defendants' motion to dismiss as to Count VIII.

### III. Plaintiff Has Sufficiently and Plausibly Pled His Remaining Federal and State Law Claims

Defendants lastly ask the Court to dismiss Plaintiff's § 1983 failure to intervene, conspiracy, and *Monell* claims, as well as his state law claims for conspiracy, *respondeat superior*, and indemnification, based on the faulty notion that Plaintiff's underlying due process claims fail; which would therefore render these remaining "derivative" claims moot. Dkt. 34 at 24-25.

Defendants' own motion undermines this argument. Defendants' themselves state that "Fletcher's allegations fall short on *all but his fabricated evidence claim*," *id*. at 8 (emphasis added), thereby conceding that Plaintiff *has* stated a due process claim for fabrication of evidence. Following Defendants' own logic, this underlying claim would be sufficient to allow his so-called "derivative" constitutional, *Monell*, and state law claims to proceed. Second, as stated above, Plaintiff has adequately stated a claim under several facets of the due process clause, including: fabrication of evidence, suggestive evidence procedures, destruction of evidence, and suppression of *Brady* material. Since Plaintiff's due process claim does not fail, Plaintiff's remaining federal and state law claims must also proceed.

Furthermore, contrary to what Defendants state, a claim for *Monell* liability is not a derivative claim at all. It is independent; there can be *Monell* liability without individual liability. *See Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009) (holding that a municipality can be liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict); *see also Swanigan v. Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("In some civil-rights cases, . . . a verdict in favor of individual defendants would not necessarily be

23

inconsistent with plaintiff's verdict on a factually distinct *Monell* claim). Cases like this one, where a jury could find a policy caused a constitutional deprivation without finding misconduct by a particular officer, are different in kind from cases where municipal liability is premised on a particular officer's use of force, such as *City of Los Angeles v. Heller*, 475 U.S. 706 (1986).

## CONCLUSION

For the reasons articulated above, Plaintiff respectfully requests that this Court deny Defendants' Joint Motion to Dismiss in its entirety.

Respectfully submitted,

**JAMES FLETCHER**

*/s/ Mariah Garcia*
One of Plaintiff's Attorneys

Jon Loevy
Anand Swaminathan
Mariah Garcia
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
mariah@loevy.com

Jennifer Blagg
1333 W. Devon Ave., Suite 267
Chicago, Illinois 60660
(773) 859-0081
jennifer@blagglaw.net

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on January 25, 2021, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Mariah Garcia*         
One of Plaintiff's Attorneys
