**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| James Fletcher, Jr., | ) | |
| | ) | |
| *Plaintiff* | ) | 1:20-cv-04768 |
| | ) | |
| *-vs-* | ) | Judge Andrea R. Wood |
| | ) | |
| City of Chicago, et al., | ) | |
| | ) | |
| *Defendants* | ) | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS
CERTAIN CLAIMS IN COMPLAINT</u>**

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

DISCUSSION .......................................................................................................2

I.   Fletcher Has Failed to State A *Brady*-Based Process Claim  ...................................2

II.  Recent Seventh Circuit Precedent Is Unambiguous and Dooms
     Fletcher's Due Process Claim Based on The Use of Unduly Suggestive
     Procedures...................................................................................................12

III. Fletcher's New Allegations, Raised for the First Time in the Response
     and Based Solely on His "Belief," Do Not Save His Claim for Destruction
     of Evidence ................................................................................................17

IV.  Fletcher Concedes There is No Independent Tort for
     Willful and Wanton Misconduct ...................................................................18

CONCLUSION ...................................................................................................19

TABLE OF AUTHORITITES

**CASES** **Page**

<u>**Supreme Court**</u>

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................ *passim*

*Kyles v. Whitley*, 514 U.S. 419 (1995)............................................................n. 8

*Manson v. Brathwaite*, 432 U.S. 98 (1977) ....................................................12, 16

*Neil v. Biggers*, 409 U.S. 188 (1972)..............................................................12, 16

*Wearry v. Cain*, 136 S.Ct. 1002 (2016) ..........................................................n. 8

<u>**Circuit Courts**</u>

*Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019) ........................n. 6

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017)...........................n. 4, n. 6

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019)...................12, 14, 15, 16, 17

*Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) ..................................n. 10

*Fields v. Wharrie,* 740 F.3d 1107, 1114 (7th Cir. 2014) ...............................n. 4

*Fields v. Wharrie*, 672 F.3d 505, 517 (7th Cir. 2012) ..................................5

*Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003)........................................n. 7, 9, 10,

*Geinosky v. City of Chi.*, 675 F.3d 743 (7th Cir. 2012) ................................n. 3

*Goudy v. Bassinger*, 604 F.3d 394, 400 (7th Cir. 2010).............................n. 8, 12

*Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007) ..........................................9, n. 7

*Hensley v. Carey*, 818 F.2d 646, 648, 650 (7th Cir. 1987)...................13, 14, 17, n. 10

*Newsome v. McCabe,* 256 F.3d 747 (7th Cir. 2001).....................................n. 6, 13

*Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003)......................................13

*Patrick v. City of Chicago*, 974 F.3d 824(7th Cir. 2020).............................n. 4

*Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012)................................................................12, 14, 15, 16

*Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)......................................n. 4, 8, 9, 10, 11, n. 7

*United States v. Hawkins*, 499 F.3d 703 (7th Cir. 2007) ................................................................n. 10

*United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002)......................................................n. 7

*Whitlock v. Brueggemann*, 682 F.3d at 567, 582 (7th Cir. 2012) ..............................................n. 4

*Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ..........................................n. 3

## District Courts

*Avery v. City of Milwaukee*, 40 F. Supp. 3d 1089, 1093-4 (E.D. Wis. 2014),
 *rev'd in part,* 847 F.3d 433 (7th Cir. 2017)................................................................n. 6

*Dixon v. Pfister*, 420 F. Supp. 3d 740 (N.D. Ill. October 25, 2011) ........................... *passim*

*Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876 (N.D. Ill. 2016)......................................n. 10

*Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020)............................7

*Serrano v. Guevara*, 315 F. Supp. 3d 1026 (N.D. Ill. 2018) ................................................n. 10

*Walker v. White*, 16 CV 7024, 2017 WL 2653078 (N.D. Ill. June 20, 2017)................................8

*Wrice v. Burge*, 187 F. Supp. 3d 939, 951–52 (N.D. Ill. 2015)................................................n. 4

## Illinois Courts

*People v. Fletcher*, 2016 IL App (1st) 132459-U ................................................................ *passim*

## Statutes

42 U.S.C. §1983 ................................................................................................................ *passim*

735 ILCS 5/2-615 ................................................................................................................19

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................n. 3, 19

Defendants, Jerome Bogucki, Anthony Noradin, Raymond Schalk (the "detectives"), and Anthony Wojcik (collectively "Defendant Officers"), and City of Chicago (the "City"), through their respective undersigned counsel, submit this reply in support of their joint motion to dismiss (Dkt. # 34, "Motion"), which seeks to dismiss: the due process claims in Count I based on the suppression of *Brady* material, the use of unduly suggestive procedures, and the destruction of evidence; Count II ("Unlawful Detention");[1] and Count VIII ("Willful and Wanton Conduct").

## Introduction

Unable to offer any meaningful response in opposition to defendants' motion, Fletcher, from the very first sentence of his response, mischaracterizes and misdirects. In an effort to justify his claims in this action, he declares that he was granted habeas relief based "upon a finding that the eyewitness identifications the State used to procure [his] conviction were untrue, and based off of investigative misconduct by the Defendant Officers in the instant case." (Dkt. #42, Plaintiff's Response to Defendants' Joint Motion to Dismiss ("Response"), 1.) This statement is demonstrably false. The sole basis for Fletcher's habeas relief was the criminal court's admission of a hearsay statement, which the district court found to be testimonial and therefore a violation of the Confrontation Clause. *Dixon v. Pfister*, 420 F. Supp. 3d 740, 759, 767-8 (N.D. Ill. 2011).

Unfortunately, Fletcher's attempts at misdirection permeate his Response. He inaccurately asserts that defendants ignore his allegations and rely on disputed facts. He claims, without citation, to have made allegations (and asserted claims) in his complaint that simply are not there. Fletcher asks this Court to ignore facts and evidence established in matters of public record, of which this Court may take judicial notice, because they conflict with his allegations. (Response,

---

[1] Fletcher states he is voluntarily dismissing his claims in Count II. (Response, n. 1.) Defendants simply note that based on the arguments in their joint motion (at Section IV), those claims should be dismissed with prejudice.

at 1). Fletcher does not explain why this Court should indulge his request to turn a blind eye to the actual evidence and instead credit his contradictory allegations, many of which are entirely speculative, under the pretense of complying with the standards applicable to motions to dismiss. In the end, no amount of misdirection (or manipulation of the facts) can save the claims at issue here.

## Discussion

### I.     Plaintiff Has Failed to State A Due Process Claim Under *Brady*.[2]

As defendants demonstrated in their motion, Fletcher was fully aware of any facts regarding the photo array, the lineup, and the witness identifications that were subject to *Brady* disclosure. (Motion, 1-6, 8-15.) Not only was Fletcher himself fully aware of the evidence he claims was suppressed, his criminal jury heard all of the evidence that he claims was suppressed. Unable to meaningfully argue otherwise, Fletcher instead contends that defendants have improperly relied on "disputed" facts while ignoring the allegations in the complaint. (Response, 1, 9, 13-14.) To the contrary, defendants merely cited to public documents that set forth trial testimony, the content of which cannot be disputed and the truth of which is not relevant (*i.e.,* whether true or false, the witnesses said what they said). For example, when asked by Fletcher's lawyer whether he told Fletcher's private investigator that he was only 75% sure of his photo array identification the year before the trial, eyewitness Edward Cooper admitted that he did. *People v. Fletcher*, 2016 IL App (1st) 132459-U, ¶ 6. Fletcher therefore cannot plausibly dispute that his

---

[2] Although Fletcher contends that the Court should disregard defendants' *Brady* and suggestive procedures arguments because they have conceded that he has stated a fabricated evidence-based due process claim (Response, 6), as defendants noted in their motion, the Seventh Circuit and district courts in this circuit routinely address due process theories as "claims" and treat them separately. (Motion, n. 7.) Such practice is therefore not only proper, it helps to streamline litigation and make for more efficient discovery. Particularly where, as here, Fletcher has asserted an extremely broad *Monell* claim, narrowing the underlying constitutional claims at issue in this matter will significantly serve to streamline the proceedings and focus the scope of relevant discovery.

lawyer asked the question (which necessarily means he had the information Fletcher now claims was suppressed), nor can he plausibly dispute that the jury heard Cooper's testimony admitting this fact.

Fletcher also claims defendants have improperly relied on police reports that he says have not been "authenticated" and cannot be authenticated because he says they were fabricated. (Response, 14.) Authentication has nothing to do with the truth of the content of the reports, and Fletcher does not claim that the reports, which *he* refers to and relies on in his complaint, are not the reports from his criminal case.[3] Again, whether true or false, the words written in the reports say what they say and Fletcher cannot dispute that they were written.

Fletcher's real complaint in his Response is that the record and evidence established in public documents and the police reports he refers to in his complaint expose his allegations for what they are: distortions and manipulations of otherwise indisputable facts that conclusively defeat his *Brady* claim.

### Edward Cooper

Fletcher claims that Defendant Officers withheld the fact that Cooper told them "he could not identify anyone, when presented with a photo array containing [Fletcher's] picture." (Response, 10.) But as defendants established in their motion, Fletcher knew, and his jury heard, that Cooper (i) was shown a photo array and asked if he saw anyone who robbed him; (ii) could not make a positive identification from the photo array; and (iii) told Fletcher's investigator in

---

[3] Although Fletcher claims he did not "cite" the police reports prepared in the course of the murder investigation, the reports were incorporated by reference in the complaint (paragraphs 34, 35, 42, 47, 51, 60, 136, 170), to support claims of a failure to report and disclose certain facts. Thus, the reports are "considered part of the pleadings" and "may be considered by [this] court in ruling on the motion to dismiss." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (the court may consider on a Rule 12(b)(6) motion "documents that are critical to the complaint and referred to in it.").

2004 that he was only 75% sure of his identification. (Motion, 4-5, 9-11.) Fletcher also knew, and his jury heard, that Fletcher was the only participant in the lineup whose picture had been included in the photo array. (*Id.* at 3.) And Fletcher knew that Cooper, who Fletcher admits talked to his private investigator (Response, 14), told that investigator the year before his trial, "I can't even remember their faces after so many years." (Motion, 11.)

Notwithstanding his admission that Cooper spoke with his private investigator, Fletcher claims that Cooper only discussed whether or one or two robbers were carrying a gun and "not whether Cooper had performed an identification of Plaintiff or not." (Response, 14.) But in response to a question on cross-examination, Cooper admitted that he told Fletcher's investigator he was only 75% sure that Fletcher was the perpetrator. *Fletcher*, 2016 IL App (1st) 132459-U, ¶ 6 ("On cross-examination, Cooper admitted that he told an investigator in September 2004 that he was 'only about 75 percent sure' of the identity of his assailants."); *Dixon*, 420 F. Supp. 3d at 748-9 ("In his September 2004 conversation with a detective hired by the defense, Cooper told the detective that he was only '75 percent sure' who the robber was." (quoting Trial Tr. Vol. III at 98, 99)). Fletcher cannot plausibly dispute the actual words his counsel used to cross-examine Cooper, or the words Cooper used to respond to the questions.

In any event, Fletcher's jury heard this testimony, which means it was disclosed at trial and therefore not suppressed. The jury also heard Cooper's testimony that, when he viewed the 2002 photo array, he tentatively identified Fletcher, but told detectives he was not sure and wanted to see an in-person line-up. *Dixon,* 420 F. Supp. 3d at 748; *Fletcher*, 2016 IL App (1st) 132459-U, ¶6.

The trial record establishes beyond debate that the officers did not suppress a single piece of evidence regarding the circumstances of Cooper's identification. Thus, the Cooper allegations

4

do not support Fletcher's *Brady* claim.

**Emmett Wade**

Fletcher claims Defendant Officers withheld that Wade was "shown a single photograph of Plaintiff, when being asked to identify the person who killed Willie Sorrell" and "refus[ed] to identify Plaintiff as the person who killed Willie Sorrell despite Defendant Officers pressuring him to identify Plaintiff as the killer." (Response, 10.) But as Fletcher admits (Response, 3), Wade did not identify him as one of the armed robbers at any time. And Wade testified at Fletcher's trial that he could not identify Fletcher as one of the armed robbers. Thus, any alleged pressure or other tactics employed to secure an identification were not subject to *Brady* disclosure because there was no identification to impeach. *See Fields v. Wharrie*, 672 F.3d 505, 517 (7th Cir. 2012) ("The constitutional violation occurs when the means by which the *testimony* was acquired are not disclosed at trial—or when other information that *impeach the testimony's reliability* are not shared with the defense." (emphasis added)).

Fletcher completely ignores this dispositive argument. Instead, he merely repeats the allegations in his complaint and then contends that a purportedly fabricated statement in the 2002 police report somehow transformed Wade's inability to identify him into a "refusal" to identify him that is "highly exculpatory." (Response, 3-4.) Specifically, Fletcher claims that Defendant Officers fabricated their 2002 report by "falsely" recording that Wade told them he could not see the armed robbers' faces, thereby implying that he would not have been able to identify Fletcher or refute any identification of Fletcher. (*Id.*) First of all, allegations of fabrication do not state a *Brady* claim. (Motion, 14-15.)[4] Second, Fletcher does not allege, either in his complaint or in his

---

[4] *See also*, *Wrice v. Burge*, 187 F. Supp. 3d 939, 951–52 (N.D. Ill. 2015) ("To be clear, I am not endorsing Wrice's argument that the officers who interrogated [testifying witness] had a *Brady* obligation to disclose that they fabricated evidence [because as *Saunders-El*] reiterate[s] [a] *Brady* claim cannot be 'premised on

5

response, that Wade told the officers he could see the armed robbers' faces and that Fletcher was not one of them. (Complaint, ¶¶39-43; Response, 3-4, 10-11, 13-15.)

As to Fletcher's claim that Wade was shown a single photo of him rather than a photo array, it is not relevant to the attempted *Brady* claim because Wade did not identify Fletcher. Although not necessary to resolution of this issue, the Court should note that Fletcher told the court in his post-conviction proceedings that his trial counsel had elicited these alleged details of the identification procedures from Wade. *Fletcher*, 2016 IL App (1st) 132459-U, ¶ 27 ("[Fletcher]'s original postconviction petition admits, 'Emmitt Wade told [Fletcher's defense counsel] that detectives told him to pick out [Fletcher], but he did not.' Since Wade's affidavit contains facts already known to [Fletcher] at or prior to his trial, it does not qualify as newly discovered evidence.").

The ultimate and dispositive point here is that Wade did not identify Fletcher and testified as such. Whether the officers showed Wade one photo or many, whether they told Wade that Fletcher was their suspect and pressured him to identify Fletcher, and/or whether they fabricated the 2002 police report is immaterial to the issue. With no identification to impeach, any alleged

---

the police officers' silence following their alleged fabrication of the evidence'") (quoting *Saunders–El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015)). Nor does this allegation support a fabrication claim because Fletcher does not allege that the 2002 report was admitted at trial. *Patrick v. City of Chicago*, 974 F.3d 824, 834-5 (7th Cir. 2020) (a plaintiff must prove that the allegedly fabricated evidence was used at trial and was material to the plaintiff's conviction); *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) (a due process claim based on fabricated evidence is viable *only* when the allegedly fabricated evidence was admitted against a plaintiff at trial and caused the plaintiff's conviction); *Whitlock v. Brueggemann*, 682 F.3d at 567, 582 (7th Cir. 2012) ("[Defendant] is correct that the alleged constitutional violation here was not complete until trial."); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("[T]he cases we've just cited involved not merely the fabrication, but the introduction of the fabricated evidence at the criminal defendant's trial. For if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is, as we noted earlier, no tort.")

6

tactics used in Wade's interview are not subject to disclosure under *Brady* and therefore these allegations cannot support Fletcher's *Brady* claim.[5]

### Terry Rogers

Fletcher argues that "[u]pon information and belief," Defendant Officers failed to disclose a "deal with Rogers, wherein they declined to investigate or seek charges for arson, in exchange for his false statement implicating Fletcher." (Response, 10.) The only facts he provides to support this allegation in his complaint, however, are that Rogers was arrested in February 2002 and interviewed by Defendant Officers the day after his arrest, and then released sometime after without being charged. (Complaint, ¶¶23-24, 30.) These facts are insufficient to plausibly link Defendant Officers to Rogers' release or link that release to Rogers' identification of Fletcher as one of the armed robbers. Thus, any suggestion that Rogers' release was somehow linked to an "illegal and undisclosed deal" (*id.*, ¶29), is nothing more than speculation and the Court "is not required to credit rank speculation." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (rejecting an allegation based on information and belief to support a claim: "If [plaintiff] has a legitimate reason to suspect that [defendant] disclosed [private information], he surely possesses information of some kind that triggered his suspicion . . . .")

Equally dispositive, Fletcher admits that Rogers did not in fact testify at his trial. (Response, 11.) Fletcher nevertheless claims that because Detective Bogucki testified that he had learned from the 1990 police report that one of the witnesses had provided the name "Fletcher," he could have used the purported deal to attack the reliability of Rogers' 1990 statement to police and Defendant Officers' reliance on that statement. Of course, Fletcher fails to explain how an

---

[5] Defendants note that Fletcher fails to mention much less address their argument that, even if the Court were to find that the officers had a duty to disclose the alleged tactics they used when they interviewed Wade, the presence of an Assistant State's Attorney during Wade's interview at which he was shown Fletcher's photo discharged any *Brady* obligation. (Motion, 12.)

alleged deal struck in 2002 could somehow attack the credibility of a statement Rogers gave to Detective Fleming in 1990 or call into question Detective Bogucki's reliance on that 1990 statement.

Fletcher also claims that "the State introduced police reports into evidence which contained [Rogers'] testimonial statements" at his trial and cites *Dixon* for this allegation. (Response, 11.) *Dixon* does not state that the 1990 report containing Rogers' statement was entered into evidence, and Fletcher does not allege in his complaint that it was. *Dixon*, 420 F. Supp. 3d 740, 761 ("Specifically, Bogucki testified that from reading police reports, he learned that '[o]ne of the witnesses had provided a name of Fletcher.'"). As such, Fletcher's allegations with respect to Rogers do not support his *Brady* claim.

### Shenee Friend

As defendants established in their motion, under circuit precedent, police officers have no *Brady* duty to disclose their alleged fabrication of evidence. (Motion, 14-15, n. 11). And Fletcher plainly alleges in his complaint that Defendant Officers fabricated Friend's identification by moving her finger to the photo of Fletcher and saying "that was who did it." (Complaint, ¶45.) Thus, this is an allegation of fabrication and any attempt to recast the claim under *Brady* should be rejected. *See Walker v. White*, 16 CV 7024, 2017 WL 2653078, at *4 (N.D. Ill. June 20, 2017) (citing *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015): "The Seventh Circuit, however, does not permit recasting evidence-fabrication claims as *Brady*-based due process claims. Although [plaintiff] attempts to articulate his *Brady* claim as alleging that the officers withheld evidence as to the [planted] drugs' origin, he merely repeats his fabrication of evidence claim [which alleged that police planted the drugs on him].").

Rather than address the precedent defendants cite in their motion, Fletcher cites several

cases that address the suppression of promises or threats made to a witness to secure his/her testimony, or multiple interviews over a period of years coupled with threats or promises, or pre-trial recantations.[6] But Fletcher does not allege that Friend was threatened or promised any benefit or interviewed repeatedly or at undue length or that she recanted her identification before trial, the only sort of allegations that would support a *Brady* claim. Not one of the cases Fletcher cites, however, stands for the proposition that fabrication allegations can support a *Brady* claim.

Fletcher skirts the insufficiency of his allegations by contending that *Saunders-El*, *Gauger*, and *Kuba* stand only for the narrow proposition that there is no duty to disclose that which is known to a criminal defendant. (Response, n. 4.) The only support for this contention is that those cases involved evidence that the plaintiffs already knew about. (*Id.*) Fletcher wholly ignores the language in the cases (and other circuit precedent cited by defendants) that indisputably holds that officers have no duty to create evidence on behalf of a defendant. *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) ("Gauger wants to make every false statement by a prosecution witness the basis for a civil rights suit, on the theory that by failing to correct the statement the prosecution deprived the defendant of *Brady* material, that is, the correction itself."); *see also Harris v. Kuba*, 486 F.3d 110, 1017 (7th Cir. 2007) ("Harris essentially seeks an extension of *Brady* to provide relief

---

[6] *Avery v. City of Milwaukee*, 40 F. Supp. 3d 1089, 1093-4 (E.D. Wis. 2014), *rev'd in part,* 847 F.3d 433 (7th Cir. 2017) (defendants suppressed that the three jailhouse informants were promised reduced sentences in exchange for their testimony that plaintiff confessed to the murder at issue; they were interviewed multiple times over a period of two years and one of them recanted his statement before trial but was told he had to testify); *Anderson v. City of Rockford*, 932 F.3d 494, 500-3, 505-7 (7th Cir. 2019) (defendants suppressed evidence that: one witness told other witnesses who were family members immediately after the shooting at issue that he did not know who did the shooting; same witness had unrelated forgery charges against him dropped after he testified; recordings of same witness admitting he did not know who the shooter was in calls made from jail; another witness' statement of first-hand knowledge that another man was responsible for the murder at issue and a defendant's threat to that witness that if he did not recant his statement, he would be charged with perjury); *Newsome v. McCabe*, 256 F.3d 301, 747, 749 (7th Cir. 2001) (defendants failed to disclose that plaintiff's "fingerprints did not match those they had obtained at the crime scene" and also failed to disclose that the eyewitnesses had "earlier selected pictures from a book if mug shots that did not contain [plaintiff]'s photo").

if a police officer makes a false statement to a prosecutor by arguing that an officer is "suppressing" evidence of the truth by making the false statement. This court has already foreclosed this extension.")

In fact, *Gauger* expressly identified and rejected the plaintiff's attempt to conflate the *Brady* duty to disclose exculpatory or impeaching evidence with a *Brady* duty to create such evidence for the criminal defendant or to tell the truth about an investigation and thereby impermissibly extend *Brady*. *Gauger*, 349 F.3d at 360. To emphasize its point, the court observed that adopting the proposed extension of *Brady* would not benefit that particular plaintiff in any event: "Indeed [even if the court were to adopt the extension] the duty to disclose falls out [in this case], because Gauger knew what he had said at the interrogation." *Id.* Neither this language nor any other language in *Gauger* circumscribes its analysis to evidence that is already known to a criminal defendant or directed toward the defendant. Likewise, plaintiff argues that *Saunders-El* is limited to misconduct that a plaintiff already knows about or is directed toward the plaintiff. Again, there is no language in *Saunders-El* that circumscribes its analysis or holding. In fact, not *once* in the entire opinion does the court use the words "knowledge" or "know(s)" or "knew." 778 F.3d 556. And the issue in the case was not that the defendants did not disclose that the plaintiff was abused; it was that the defendants did not disclose that they had planted evidence at the crime scene to frame the plaintiff.

*Saunders-El* was the first Seventh Circuit opinion to expressly hold as much. 778 F.3d at 560 ("district court erred in holding, *categorically,* that a claim of evidence fabrication cannot form the basis of a due process claim under §1983 and must instead be brought as a state law malicious prosecution claim"). But in doing so, the court made sure that the holdings in *Gauger, Sornberger* and *Kuba* were not compromised by also expressly finding that, consistent with those cases,

10

officers have no duty to disclose their misconduct or tell the truth about the circumstances of their investigations and thereby create evidence for a defendant. *Id.* at 562. In short, *Saunders-El* made clear that its recognition of a due process fabrication claim was distinct from an improper extension of the *Brady* duty to include disclosure of misconduct.[7]

In a final grasp at a *Brady* claim, Fletcher, without citation, claims he has also alleged that Defendant Officers "suppressed evidence of their longstanding pattern and practice of denying criminal suspects due process." (Response, 12.) In fact, the word "pattern" is used only once in Fletcher's 40-page, 201-paragraph complaint and the word "patterns" is used but twice. (Complaint, ¶81, 96.) And those paragraphs fall within the section of the complaint entitled "Policy and Practice of Wrongly Convicting Innocent Individuals" (*id.* at 10), which contains allegations in support of Fletcher's *Monell* claim and does *not* include a single allegation that Defendant Officers "suppressed" any pattern (*id.* at ¶¶66-97). Nowhere in his complaint has Fletcher alleged that *Defendant Officers* suppressed a pattern of misconduct. Allegations that do not exist cannot be used to save Fletcher's *Brady* claim, and this "see if it sticks" argument should be summarily rejected by the Court.

Fletcher concludes his defense of his deficient *Brady* allegations by arguing that the Seventh Circuit "has [] disallowed Defendants' improper tactic of treating 'each piece of

---

[7] *Saunders-El*, 778 F.3d 556, 562 ("Saunders–El seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." (emphasis original)); *Gauger*, 349 F.3d 354, 360 ("We find the proposed extension of *Brady* difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence."); *Harris*, 486 F.3d at 1015 (*Brady* "'does not place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case'" (internal citations omitted)); *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel.")

suppressed evidence in seriatim, rather than assessing its cumulative effect.'" (Response, 17 (quoting *Goudy v. Bassinger*, 604 F.3d 394, 400 (7th Cir. 2010)). Of course, *Goudy* was referring to the appropriate standard by which a court must determine whether evidence *found* to be suppressed was material, that is, the court must measure the cumulative effect of each piece of suppressed evidence to determine materiality. *Goudy*, 604 F.3d at 400-1. This principle of law does not mean that the Court is not required to first determine whether a piece of evidence has been suppressed or is even subject to *Brady* before it is thrown into the bucket of suppressed evidence to be considered in determining whether the cumulative effect of the evidence is material.[8]

## II.     Recent Seventh Circuit Precedent Is Unambiguous and Dooms Plaintiff's Due Process Claim Based on The Use of Unduly Suggestive Procedures.

As defendants established in their motion (at 16-19), the Seventh Circuit has refused to convert "a rule of evidence to a rule of damages" by recognizing an independent section 1983 claim for use of suggestive procedures in securing an identification. *See Phillips v. Allen,* 668 F.3d 912, 915 (7th Cir. 2012) (refusing to extend "the *Biggers* approach. . . from trials to arrests, and from a rule of evidence to a rule of damages"); *Coleman v. City of Peoria*, 925 F.3d 336, 347 (7th Cir. 2019) (*Brathwaite* and *Biggers* "address the admissibility of eyewitness identifications at trial, not § 1983 liability.") This precedent forecloses Fletcher's attempt to base a due process claim on allegations of unduly suggestive identification procedures.

As evident from the very cases Fletcher cites in his response, *Coleman* and *Phillips* are consistent with long-standing circuit precedent that holds the use of suggestive procedures in

---

[8] Fletcher also cites *Kyles v. Whitley* and *Wearry v. Cain* for the same proposition but they, like *Goudy*, concern the appropriate measure of materiality. *Kyles*, 514 U.S. 419, 441 (1995) (requiring a "cumulative evaluation" of the materiality of wrongfully withheld evidence); *Wearry*, 136 S.Ct. 1002, 1007 (2016) ("the state postconviction court improperly evaluated the materiality of each piece of evidence in isolation rather than cumulatively").

securing an identification does not support a damages award under section 1983. *See e.g., Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001) ("No one would quarrel with the assertion in defendants' reply brief that 'in 1979 [and today], the detectives could have reasonably believed that it should be up to the prosecutors, and ultimately the court, to determine if an eyewitness identification is sufficiently reliable for use at trial.'").[9] As the court explained, it was not the use of the procedures at issue that supported a claim for damages, it was the suppression of *Brady* evidence that gave Mr. Newsome a viable claim under section 1983. *Id.* at 751-753.

The Seventh Circuit reiterated this principle of law when *Newsome* was again up on appeal two years later. *Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003) (the use of "manipulated" identifications at trial "would not by itself support an award of damages, as our opinion denying rehearing in 2001 explained"); *see also id.* at 305 ("the constitutional violation justifying an award of damages is not the conduct of the lineups but the concealment of evidence about them"). Likewise, in *Alexander v. City of South Bend*, the Seventh Circuit again reiterated that "The Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality." 433 F.3d 550, 555 (7th Cir. 2006) (citing *Hensley v. Carey*, 818 F.2d 646, 648, 650 (7th Cir. 1987)); *see also id.* ("*Hensley*'s point is this: flawed identification procedures are not themselves constitutional violations; plaintiffs must show *how* those flawed procedures compromised the constitutional right to a fair trial. What identification evidence was actually admitted at trial? What did the victims, eyewitnesses, and police officers say? Were they cross-examined? Were the circumstances surrounding the identification and the police procedures put before the jury? What exhibits were admitted on this issue? Was any objection or motion to

---

[9] In *Newsome*, the defendants failed to disclose that plaintiff's "fingerprints did not match those they had obtained at the crime scene" and also failed to disclose that the eyewitnesses had "earlier selected pictures from a book if mug shots that did not contain [plaintiff]'s photo"). 256 F.2d at 749.

suppress the identification evidence made?") The questions *Alexander* asked, like *Newsome*, clearly target the *disclosure* of evidence that would enable a criminal defendant to test the identification at issue at trial. The questions posed also make clear that because the constitutional right at issue is evidentiary in nature, the due process remedy is exclusion from trial through a motion to suppress. *Id.* ("Grounded in due process, the constitutional interest implicated in challenges to police identification procedures is *evidentiary* in nature." (emphasis original)); *id.* at 556 ("It is telling that Alexander did not move to suppress or otherwise object to the introduction of the identification evidence on grounds of unconstitutional suggestiveness.")

Thus, well before *Coleman* and *Phillips*, our circuit made clear that the use of suggestive procedures is not actionable under section 1983. Instead, a plaintiff must be able to establish that critical evidence relating to the procedures and identification was either suppressed or fabricated and therefore made his trial unfair. And under that precedent, Fletcher's due process claim must sound in suppression or fabrication to support an award of damages.

Although he makes reference to them, Fletcher does not genuinely discuss the *Newsome* cases, *Alexander* or *Hensley*. (Response, 17-18.) Instead, he mischaracterizes or misquotes these and the other cases he cites (see Response, 20), which irrefutably hold that the use of suggestive procedures cannot form the basis of a section 1983 claim for damages.[10]

_____

[10] Fletcher's quote from *Alexander* is from the court's discussion of admissibility standards in a criminal case not whether a suggestive procedures claim is an actionable section 1983 claim, 433 F.3d at 555; the quote Fletcher attributes to *Hensley* is actually a quote from the Southern District of New York and not *Hensley*'s take on the issue, 818 F.2d at 649; *Dominguez v. Hendley* does not discuss the viability or contours of a suggestive procedure claim at all, 545 F.3d 585 (7th Cir. 2008); *United States v. Hawkins* is a criminal case that obviously had nothing to do with a motion to dismiss a section 1983 suggestive procedures claim, and that examined the trial court's denial of a motion to suppress identifications at the defendant's criminal trial, 499 F.3d 703 (7th Cir. 2007); and *Serrano v. Guevara*, No. 17 CV 2869, 2020 WL 3000284 (N.D. Ill. June 4, 2020) examined the identifications at issue to determine whether the circumstances surrounding the identifications supported an inference that the defendants fabricated the identifications (at *15-17) and whether the allegations supported a *Brady* claim and not whether the

Fletcher also mischaracterizes *Phillips* and *Coleman*. He claims that the Seventh Circuit conducted a reliability analysis in those cases and found the identifications at issue to be sufficient. (Response, 19.) Not so. As defendants discussed in their motion, in *dicta* in *Phillips* (a false arrest case), the Seventh Circuit considered a possible exception to its holding that the use of suggestive procedures could not support a claim for damages under section 1983. (Motion, 17.) The court hypothesized (but did not apply) a "proviso" that would allow a cause of action against a police officer for use of "a particular technique" if that technique "ha[d] already been forbidden by an authoritative judicial decision (that is, by the Supreme Court or the court of appeals with territorial jurisdiction)" before the officer used it. *Phillips*, 668 F.3d at 917. The court did not conduct a "reliability" analysis and conclude that the identification passed muster, as Fletcher claims. It discussed the facts surrounding the identifications at issue *solely* to illustrate its point that neither the police officers nor the lawyers nor the justices themselves have the expertise necessary to determine whether the facts before the court established that the procedures used were suggestive. *Phillips*, 668 F.3d 912, 914-17. Therefore, courts should not make a determination that a particular procedure is suggestive without hearing from experts. *Id.* at 915-17. Moreover, the Seventh Circuit explained, even if expert testimony or a scientific report is offered in a particular case and the court in the case rules that a procedure was suggestive, the officers in the case would nonetheless be entitled to qualified immunity unless it or the Supreme Court had previously proscribed the particular technique at issue. *Id.* at 917.

Fletcher's mischaracterization of *Coleman* is equally egregious. In *Coleman*, a reversed-conviction case, the trial court in the underlying criminal proceedings denied the plaintiff's motion

---

allegations supported a suggestive procedures claim (at *18-19). As for *Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876 (N.D. Ill. 2016) the only case Fletcher cites that allowed a suggestive procedures claim, it is a district court opinion that is not binding on this Court and respectfully, was incorrectly decided.

15

to suppress photo and lineup identifications, and the plaintiff did not object to the in-court identification and did not appeal the trial court's denial of his motion to suppress. 925 F.3d 336, 348. The Seventh Circuit explained that the defendants "cannot be held liable for depriving [the plaintiff] of his constitutional rights simply because the trial court rejected [the plaintiff]'s legal arguments, or because he forfeited them." *Id.* The Seventh Circuit then continued:

> Even if a court had later found [the] identifications inadmissible under the *Brathwaite/Biggers* framework, an officer is not automatically liable for violating a suspect's constitutional rights whenever a judge later deems a witness's identification inadmissible. *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) (refusing to extend the *Biggers* framework "from trials to arrests, and from a rule of evidence to a rule of damages"). Our decision in *Phillips* notes a proviso for situations where an officer uses a specific interrogation technique clearly proscribed by existing law. *Id.* at 917 (explaining an officer may not use judicially forbidden measures "to trick a person into making an unreliable identification"). For example, an interrogator's use of physical violence to extract an identification out of an eyewitness surely violates due process

*Id.* at 347-48. Although the court then went on to discuss the "show up" procedure used (a procedure previously forbidden in this circuit absent exigent circumstances), this entire discussion follows the words "Even if" and therefore is plainly *dicta*. *Id.* at 347-49. Indeed, after the discussion, the Seventh Circuit circled back to the principles embodied in its actual holding:

> [Plaintiff]'s appellate briefs develop a solid cross-examination outline for [witness]'s identifications. But such arguments do not establish a constitutional violation. After all, "the validity of an eyewitness identification is for the jury." *Id.* at 916. Due process is not offended by the introduction of a questionable eyewitness identification; the jury may observe the witness, assess any alleged suggestive circumstances, and make its own determination about what weight, if any, to give it.

*Id.* at 349. Thus, *Coleman*, consistent with circuit precedent, held that the due process right with respect to unreliable identifications is their suppression. *Id.* at 347. If a criminal defendant is unsuccessful in challenging an identification in his criminal proceedings, or forfeits his right to the identification, he cannot seek damages from the police officer who secured the identification for the alleged use of suggestive procedures. *Id.* If the proviso discussed in *dicta* is applied, even if a

16

later court finds the identification at issue to have been unconstitutionally admitted, the officer is still protected from damages for the use of a suggestive procedure unless the procedure had previously been proscribed by circuit or Supreme Court precedent. *Id.* at 347-48. Fletcher does not mention much less discuss any of this analysis or language. (Response, 18-19.) He simply refers to defendants' argument here as "bizarre." (*Id.*, 18.)[11]

Finally, contrary to Fletcher's claim, defendants do not concede that the procedures used were suggestive. Whether they were is not relevant to whether he can state this claim. Under *Coleman*'s ruling (and *Newsome*'s and *Alexander*'s and *Hensley*'s), the use of suggestive procedures cannot support a claim for damages under section 1983. For that reason alone, Fletcher's suggestive procedures claim should be dismissed. And, even if the Court applies the proviso discussed in *dicta*, Fletcher has not and cannot plead the facts necessary to trigger the proviso. Thus, the claim must still be dismissed with prejudice.

### III.  Fletcher's New Allegations, Raised for the First Time in the Response and Based Solely on His "Belief," Do Not Save His Claim for Destruction of Evidence.

As defendants established in their motion (at 16-19), Fletcher's complaint failed to identify a single piece of evidence allegedly "destroyed" by defendants. (Complaint, ¶¶34, 115, 120, 140.) In an attempt to save this claim, Fletcher now claims in his Response (at 20-21) that he "believes" a 1995 photo array shown to Cooper was destroyed because it contained Fletcher's photo. (Response, 20-21.) However, this argument offers nothing more than another speculative allegation based on a "belief" that lacks a single fact to support it. Such an unsubstantiated

---

[11] Fletcher's argument that because he withdrew his motion to suppress, the suggestibility of the procedures Defendant Officers used was never adjudicated and therefore he did not forfeit his due process rights in his criminal proceedings (Response, n. 6) is so disingenuous it doesn't merit response. Likewise, his argument in footnote 5 of his Response, that because evidence was suppressed and fabricated, he couldn't litigate a motion to suppress has no merit. First, as established above, he had all the evidence he needed if he wanted to pursue such a motion. Second, that he is barred from bringing a suggestive procedures claim, has nothing to do with whether he can state a claim for suppression and/or fabrication of evidence.

assertion fails to provide a plausible claim that evidence was destroyed. And as Fletcher well knows, Cooper testified at trial that Fletcher's picture was not in the array. *Dixon*, 420 F. Supp. 3d at 767. As discussed above, Fletcher had numerous conversations with Cooper, both before his trial and during his post-conviction proceedings, and submitted affidavits from Cooper in his post-conviction case. If Fletcher actually had any information or good faith basis upon which to assert that the 1995 photo array was destroyed by Defendant Officers, and/or that the array contained his picture, those specific allegations presumably would have been front and center in his complaint. Given Fletcher's extensive access to Cooper (this background is readily available from a cursory review of *People v. Fletcher* and *Dixon v. Pfister*, both of which are public documents), the Court should not allow Fletcher's claim to advance based purely on a "belief" unsupported by a single fact.

Fletcher's reliance on implausible speculation in an effort to oppose defendants' motion is further demonstrated by his suggestion that because "all of the eyewitnesses were questioned by CPD Officers in 1990 at the scene of the crime, *id*. at ¶19; Plaintiff believes that this photo array was likewise destroyed by Defendant Officers." (Response, 21.) What photo array? Is Fletcher alleging that CPD officers came to the crime scene in 1990 with a photo array that already included Fletcher's picture? Did Cooper or Wade or Friend tell him, in their many conversations, that they were shown a photo array that included Fletcher in 1990? Again, the Court should reject this illogical and unreasonable contention. Stripped of its unsupported conjecture, Fletcher's response fails to plausibly support his "destruction of evidence" claim and it should be dismissed.

## IV. Fletcher Concedes There is No Independent Tort for Willful and Wanton Misconduct.

Fletcher concedes that there is no independent tort for "willful and wanton conduct" under Illinois law. (Response, 21 ("Defendants are correct that willful and wanton conduct is not an

independent tort in Illinois.").) That concession should end this Court's inquiry. But Fletcher actually declares that the non-existence of such a cause of action "does not warrant its dismissal." *Id*. This declaration seriously misapprehends both federal and Illinois rules of procedure, which provide for dismissal when a plaintiff fails to state a claim upon which relief can be granted. FRCP Rule 12(b)(6); 735 ILCS 5/2-615. Fletcher's bizarre argument merits no further response from defendants and no consideration by this Court. Count VIII must be dismissed.

## Conclusion

For all of the foregoing reasons and the reasons set forth in defendants' joint motion, defendants respectfully request that the Court dismiss: the due process claim alleged in Count I to the extent based on the suppression of evidence under *Brady*, unduly suggestive procedures, or destruction of evidence; the Fourth and Fourteenth Amendment "unlawful detention" and malicious prosecution claims alleged in Count II (as conceded by Fletcher, Response, n. 1); and, any derivative federal and state law claim (see Motion, 24-25) to the extent based on otherwise deficient claims. The state law willful and wanton conduct claim in Count VIII also should be dismissed because, as Fletcher concedes (Response, 21), it is not cognizable under Illinois law.


Respectfully submitted,

CELIA MEZA                                    Defendant Officers
Acting Corporation Counsel
of the City of Chicago


By:   s/ Paul A. Michalik                     By:   s/ Amy A. Hijjawi
Special Assistant Corporation Counsel         Special Assistant Corporation Counsel
Attorneys for Defendant City of Chicago       Attorneys for Defendant Officers

Terrence M. Burns                           Andrew M. Hale
Paul A. Michalik                            Amy A. Hijjawi
Daniel M. Noland                            Brian Stefanich
Reiter Burns, LLP                           Hale Law LLC
311 South Wacker, Suite 5200                53 W. Jackson Blvd., Suite 330
Chicago, Illinois 60606                     Chicago, IL 60604
(312) 982-0090                              (312) 341-9646

**CERTIFICATE OF SERVICE**

I, Amy A. Hijjawi, an attorney, hereby certify that, on the date stamped on the margin above, I served a copy of this pleading on all counsel of record via the ECF System.

/s/ Amy A. Hijjawi