**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES FLETCHER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-04768 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JEROME BOGUCKI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In 2005, Plaintiff James Fletcher, Jr., was convicted of murdering Willie Sorrell. In October 2019, his conviction was set aside. Three months later, all charges against him were dropped. He subsequently brough this lawsuit claiming that police officers involved in his investigation—Jerome Bogucki, Anthony Noradin, Raymond Schalk, and Anthony Wojcik—caused his wrongful conviction by fabricating and suppressing evidence against him and using unduly suggestive identification techniques to obtain false eyewitness identifications. He also asserts that Defendant City of Chicago ("City") caused his injuries through its deficient policies and practices. Defendants move to dismiss the Complaint in part (Dkt. No. 34) and to strike some of its allegations (Dkt. No. 35). For the reasons stated below, their motion to dismiss is granted in part and denied in part, and their motion to strike is denied.

**BACKGROUND**

For purposes of Defendants' motion to dismiss, the Court accepts all well-pleaded allegations in the Complaint as true and draws reasonable inferences in Fletcher's favor. *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). The Court does not vouch for the objective

truth of those allegations. *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018). The Complaint alleges as follows.

Fletcher is a 57-year-old resident of Chicago. (Compl. ¶ 9, Dkt. No. 1.) Bogucki, Noradin, Schalk, and Wojcik ("Defendant Officers") were police officers employed by the City during the events described below. (*Id.* ¶¶ 10–11.) Wojcik supervised the other three officers. (*Id.* ¶ 11.)

On December 21, 1990, a shootout took place between two armed robbers and a delivery truck driver on Chicago's West Side. (*Id.* ¶¶ 14–16.) A bystander, Willie Sorrell, was inadvertently shot and killed by one of the robbers. (*Id.* ¶ 16.) The robbers successfully fled the scene. (*Id.* ¶ 17.) Police officers interviewed four witnesses: Edward Cooper, the driver; Sheenee Friend, who witnessed the robbery; and Emmett Wade and Terry Rogers, who witnessed the chase. (*Id.* ¶ 18.) But none of the witnesses was able to identify the robbers. (*Id.* ¶ 19.)

In 1995, Bogucki and Schalk took up the investigation, having played no part in its earlier stages. (*Id.* ¶ 20.) They interviewed Cooper, who told them that he believed Rogers was involved in the crime. (*Id.* ¶ 22.) Seven years later, in 2002, Rogers was arrested for arson and criminal trespassing. (*Id.* ¶ 23.) Bogucki, Schalk, and Noradin interviewed Rogers the day after his arrest, and he told them that Fletcher was one of the robbers. (*Id.* ¶¶ 24–25.) Rogers's identification was clearly unreliable because the perpetrator had been described by eyewitnesses as having "shoulder-length, Jheri-curl" hair but Defendant Officers knew that Fletcher had short, non-curly hair at the time of the crime. (*Id.* ¶ 26.) Further, Rogers's statement conflicted in several ways with the statement he made in 1990. (*Id.* ¶ 27.) Fletcher alleges that Defendant Officers made Rogers a deal not to prosecute him for arson in exchange for his false statement that Fletcher was one of the robbers. (*Id.* ¶ 29.)

Defendant Officers proceeded to re-interview the other witnesses. (*Id.* ¶ 37.) They used a photo of Fletcher from 2002 that more closely matched the initial description given of one of the robbers, even though they could have used a photo from 1990 that did not fit the description. (*Id.* ¶ 48.) They showed Cooper a photo array including the 2002 photo, but Cooper told them that he did not recognize any of the potential suspects because too much time had passed. (*Id.* ¶ 49.) The officers concealed this information and falsely stated in their report that Cooper had picked out Fletcher's photo and tentatively identified him. (*Id.* ¶ 50.) Defendant Officers also presented a photo array to Friend but she initially pointed out someone else. (*Id.* ¶ 45.) In response, Defendant Officers moved Friend's finger to Fletcher's photo, told her that Fletcher had committed the crime, and told her that Fletcher was a bad, violent man. (*Id.* ¶ 46.) Defendant Officers did not record or disclose the tactics they used. (*Id.* ¶ 47.) Finally, Defendant Officers showed a single photograph of Fletcher to Wade, who did not identify Fletcher as the perpetrator despite being pressured to do so. (*Id.* ¶ 39.) Wade had previously stated (in 1990) that he had seen the robbers and could identify them if he saw them again. (*Id.* ¶ 40.) But Defendant Officers did not disclose Wade's failure to identify Fletcher; instead, they falsely wrote that Wade had not previously seen the robbers' faces. (*Id.* ¶¶ 41, 43.)

Subsequently, Defendant Officers conducted a police line-up with Cooper and Friend. (*Id.* ¶ 52.) Both Cooper and Friend had already seen Fletcher's photograph and knew that the officers suspected Fletcher of having committed the crime. (*Id.* ¶ 54.)

No physical evidence tied Fletcher to the crime. (*Id.* ¶ 32.) Nevertheless, he was arrested and charged for Sorrell's murder. (*Id.* ¶ 65.) Defendant Officers never disclosed their fabrication of evidence to the state prosecutors, Fletcher, or Fletcher's attorneys. (*Id.* ¶ 113.) Instead, they wrote false police reports that hid their misconduct, which were used to charge and prosecute

Fletcher. (*Id.* ¶ 114.) Defendant Officers also suppressed exculpatory evidence, including that Rogers had previously received benefits for testifying for the police. (*Id.* ¶ 118.) Wojcik both intentionally ignored the other officers' misconduct and explicitly authorized it. (*Id.* ¶ 119.)

Fletcher, who maintained his innocence throughout his prosecution, was wrongfully convicted and sentenced to life without parole. (*Id.* ¶¶ 121–22.) He sought post-conviction relief and his conviction was eventually set aside on October 25, 2019. (*Id.* ¶ 124.) Three months later, the Cook County State's Attorney dropped the charges against him. (*Id.* ¶ 125.) Ultimately, Fletcher spent thirteen years in prison for a crime he did not commit. (*Id.* ¶ 127.)

In addition to the above allegations, Fletcher makes the following claims regarding the City's practices and policies. Fletcher alleges that the Chicago Police Department has a history of causing innocent people to be convicted of serious crimes, including at least 150 cases since 1986. (*Id.* ¶ 67.) Those cases frequently involved the tactics that Defendant Officers used against Fletcher, including fabricating evidence, withholding exculpatory evidence, using suggestive identification procedures, feeding information to witnesses, pressuring witnesses to testify consistently with police detectives' case theories, and physically abusing witnesses. (*Id.* ¶¶ 68, 70.) During the time period relevant to Fletcher's claims, police officers, including Defendant Officers, routinely hid and destroyed exculpatory material, keeping such documents in files that were never disclosed to participants in the criminal proceedings. (*Id.* ¶ 71.) However, the City chose not to investigate such misconduct, and no Chicago police officer has faced discipline for falsifying or hiding evidence in a case where police detectives attempted to charge innocent people with serious crimes. (*Id.* ¶ 77.) Relatedly, the City took no action to identify police officers who were repeatedly accused of misconduct. (*Id.* ¶ 78.) Instead, the Chicago Police Department maintained a code of silence under which officers ignored and lied about misconduct committed

4

by other officers. (*Id.* ¶ 83.) In the years before Fletcher was convicted, the City failed to train its officers adequately on various topics, including how to conduct identification procedures, the duty to preserve and disclose exculpatory evidence, the importance of not abusing, manipulating, and coercing suspects and witnesses, and the risks of wrongful conviction, among other things. (*Id.* ¶ 92.)

## DISCUSSION

Defendants move to dismiss Count I (in part), Count II, and Count VIII of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 34). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the Court need not accept a party's legal conclusions, and a party cannot defeat a motion to dismiss with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* This pleading standard does not require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

### I.     Count I: Fourteenth Amendment Due Process

In Count I, Fletcher asserts a claim pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Fourteenth Amendment Due Process rights. The Due Process Clause protects criminal defendants from being deprived of their liberty based on various kinds of police misconduct. A defendant's due process rights are implicated when the government "manufactures false evidence" against him, *see Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012);

"fails to disclose evidence materially favorable to the accused," *see Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010); uses "unduly suggestive identification techniques [to the extent that they] are allowed to taint the trial," *see Alexander v. City of S. Bend*, 433 F.3d 550, 555 (7th Cir. 2006); and destroys evidence "with apparent exculpatory value" or destroys "potentially exculpatory evidence" in bad faith, *see Armstrong v. Daily*, 786 F.3d 529, 546 (7th Cir. 2015). But a due process violation occurs only where the evidence or law enforcement techniques cause a deprivation of liberty. *See Armstrong*, 786 F.3d at 553 ("[A]n accused has no claim against an officer who fabricates evidence and puts the evidence in a drawer, never to be used.").

Defendants concede that Fletcher has stated a claim under a theory of fabrication of evidence. But they argue that Fletcher's alternative theories of relief—including suppression of evidence, unduly suggestive identification procedures, and destruction of evidence—constitute separate claims that should be dismissed as insufficiently pleaded.

### A. Dismissal of Theories

Generally, "[a] complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). That said, Federal Rule of Civil Procedure 10 requires a plaintiff to state "a separate count" for "each claim founded on a separate transaction or occurrence" where "doing so would promote clarity." Fed. R. Civ. P. 10(b). A single claim may encompass multiple theories of relief: a claim consists of "the aggregate of operative facts which give rise to a right enforceable in the courts" and "[o]ne claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (internal quotation marks and citation omitted); *see also NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("One set

of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

Fletcher asserts that Defendants violated his right to a fair trial and his right not to be wrongfully convicted and imprisoned. He alleges that they accomplished this by fabricating police reports, using false evidence, failing to correct false evidence, using unduly suggestive identification techniques, withholding exculpatory evidence, and concealing and destroying other evidence. This is a single claim under a single set of facts. In theory, these facts could be divided up in any number of ways; for example, Fletcher might assert a separate count for "suggestive identification techniques" based on each allegedly suggestive interview and lineup. But all of these facts relate to a single investigation involving the same set of police officers and are therefore appropriately tied together. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.").

The authority Defendants cite does not require Fletcher to assert a separate due process claim for each legal theory he might pursue. In *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), the plaintiff asserted that police officers violated his Fourteenth Amendment Due Process rights by (1) fabricating evidence against him and (2) withholding evidence of the fabrication from the prosecution. The Court of Appeals referred to the second theory as a "*Brady* claim" in its decision; therefore, Defendants contend, a fabrication of evidence claim must be pleaded separately from a *Brady* claim. *Id.* at 558, 561–62. But nothing in *Saunders-El* hinged on whether the two theories formed a single claim or two claims; rather, the court held that the plaintiff had failed to state a claim under any of his attempted legal theories. *Id.* at 560–62. Indeed, the Court

of Appeals also referred to the plaintiff as asserting a "dual-pronged" due process claim, which could be interpreted as acknowledging that the plaintiff asserted a single claim encompassing multiple theories. *Id.* at 561. Ultimately, the language the court used to describe the plaintiff's claim and legal theories was merely dicta. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (defining dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it").

In some cases, however, considering the viability of individual theories supporting a single claim may serve to narrow issues for discovery and trial. And so, even though the evidence fabrication theory that Defendants concede to have been sufficiently pleaded suffices to state a Fourteenth Amendment Due Process claim (and thus prevents dismissal of Count I), the Court will nonetheless consider the other legal theories advanced by Fletcher.

### B. *Brady* Due Process

Defendants contend that Fletcher's allegations do not plausibly suggest that they suppressed or concealed any exculpatory evidence. They maintain that there is no legal requirement that police officers turn over evidence of their own misdeeds. In response, Fletcher points to exculpatory statements and actions by eyewitnesses that the investigating officers failed to turn over.

To state a due process claim based on *Brady v. Maryland*, 373 U.S. 83 (1963), Fletcher must allege that "(1) the evidence at issue is favorable to [him], either because it was exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued." *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009). "*Brady* does not require the creation of exculpatory

evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." *Saunders-El*, 778 F.3d at 562. And because "[t]he Constitution does not require that police testify **truthfully**," but only entitles a defendant "to a trial that will enable jurors to determine where the truth lies," no *Brady* violation occurs when a police officer withholds information known to the defendant. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006); *see also Harris v. Kuba*, 486 F.3d 1010, 1016–17 (7th Cir. 2007) (finding no *Brady* violation where police officer allegedly lied to prosecutors about facts known to criminal defendant).

As alleged, no physical evidence tied Fletcher to the crime. Instead, the prosecution relied heavily on eyewitness identifications. Fletcher alleges that even though Friend initially selected a person other than Fletcher out of a photo array, Defendant Officers withheld that information from the prosecution. (Compl. ¶¶ 45, 139.) At trial, Friend identified Fletcher as one of the robbers. *People v. Fletcher*, 2016 IL App (1st) 132459-U, ¶¶ 7–8. Likewise, Fletcher alleges that Cooper told Defendant Officers that he did not recognize anyone in a photo array, but those officers concealed Cooper's failure to make an identification. (Compl. ¶¶ 49–50.) At trial, Cooper testified that he had identified Fletcher in that lineup; his prior statement, allegedly withheld by Defendant Officers, would have impeached that identification. *See Fletcher*, 2016 IL App (1st) 132459-U, ¶ 6. These allegations, standing alone, state a claim under a *Brady* theory: making inferences in Fletcher's favor, they plausibly suggest that police officers suppressed evidence favorable to Fletcher, causing prejudice. *See Parish*, 594 F.3d at 554.

Defendants contend that Fletcher's claim is for fabrication of evidence, not *Brady* suppression. They note that Fletcher has alleged that Defendant Officers moved Friend's finger from the potential suspect she first identified to Fletcher's photograph. Therefore, Defendants

urge, the officers did not have to disclose Friend's initial identification because they could not have violated *Brady* simply by "keeping quiet about their wrongdoing." *Saunders-El*, 778 F.3d at 562. But Defendants ignore that Friend's initial identification of another suspect is separate from Defendant Officers' subsequent alleged fabrication of evidence. Friend's identification of someone else as the perpetrator was materially impeaching evidence that the officers were obligated to disclose. And Defendants do not contend that Fletcher knew that Friend had identified someone else as the perpetrator at the time of his trial. Similarly, Defendants contend that Fletcher had interviewed Cooper through an investigator prior to trial, and Cooper said that he was only 75% sure of his identification. But the allegedly withheld information—that Cooper failed to identify Fletcher when shown a photo array—is far more impeaching than what Cooper told the investigator.

Some of Fletcher's other allegations might not independently suffice to state a claim. For example, he alleges that Wade declined to identify him as the perpetrator when shown a single photograph of him. (Compl. ¶ 39.) But Defendants point out that Wade did not identify Fletcher as the perpetrator at trial and that his failure to identify Fletcher when interviewed earlier therefore was not necessarily material or impeaching. The parties also contest whether Defendant Officers' alleged deal to drop arson charges against Rogers in exchange for his implicating Fletcher in the crime constituted *Brady* material, considering that Rogers did not testify at Fletcher's criminal trial. But ultimately, because Fletcher has sufficiently stated a claim under a *Brady* theory, the Court need not resolve whether his other allegations would suffice to state such a claim on their own.

### C.    Unduly Suggestive Identification Procedures

Defendants also contend that Fletcher has failed to make out a claim for unduly suggestive identification procedures. Their position is that because there is no minimum standard for identification or lineup procedures under the Constitution, no deficiencies in such a procedure could ever support a Fourteenth Amendment Due Process claim.

Indeed, "[t]he Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality." *Alexander*, 433 F.3d at 555 (7th Cir. 2006). However, a defendant's due process right to a fair trial is violated when "unduly suggestive identification techniques are allowed to taint the trial." *Id.* To state a claim for a Fourteenth Amendment Due Process violation based on a suggestive identification procedure theory, Fletcher must allege that "the flaws in [Defendants'] identification techniques made his trial unfair." *Id.* An officer "is not automatically liable for violating a suspect's constitutional rights whenever a judge later deems a witness's identification inadmissible," although a finding of liability may be appropriate "where an officer uses a specific interrogation technique clearly proscribed by existing law." *Coleman v. City of Peoria*, 925 F.3d 336, 347–48 (7th Cir. 2019).

The identification procedures used to convict Fletcher, according to his allegations, were egregiously flawed. He alleges that Defendant Officers instructed Friend to identify him as the perpetrator even though she initially identified someone else. (Compl. ¶ 45.) They allegedly did so while Friend was in custody for a parole violation; making inferences in Fletcher's favor, it is plausible to infer that Defendant Officers used that leverage to pressure Friend further into making a false identification. (*Id.* ¶ 44.) In addition, Defendant Officers allegedly used a photograph of Fletcher from 2002 (when he had a hairstyle that matched the description of the robber from 1990) even though they could have used a 1990 photograph (when his appearance

11

did not match the witnesses' descriptions). (*Id.* ¶ 48.) Again, at trial, Friend identified Fletcher as one of the robbers. *Fletcher*, 2016 IL App (1st) 132459-U, ¶¶ 7–8. Because, as alleged, no physical evidence tied Fletcher to the crime, Fletcher has adequately pleaded that Defendant Officers' alleged suggestive identification techniques tainted the trial.

Not every suggestive identification technique violates a defendant's Fourteenth Amendment rights. For example, a lineup identification is not necessarily unduly suggestive just because a defendant is visually distinguished from the other participants—for example, because he is the only participant wearing a hat, a visible ankle restraint, or white shoes. *See Coleman*, 925 F.3d at 348 (collecting cases). Such suggestive elements may be outweighed by "indicia of reliability," for example when a witness reports that he or she had a good opportunity to view the suspect during the crime, was familiar with the suspect, or was certain of his or her identification. *Id.* But here, Defendant Officers are alleged to have steamrolled over Friend's failure to identify Fletcher by instructing her to identify him. Fletcher asserts, and Defendants do not dispute, that such an identification technique was plainly proscribed by law.

Defendants' remaining objections are unavailing. They cite *Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012), which held that a police officer does not spoil an identification just by "mentioning a suspect's name." *Id.* at 917. But *Phillips* offered the distinction that "showing a witness just one photo and asking her to 'confirm' that the photo depicts the culprit," unlike lesser suggestive actions, could give rise to liability under § 1983. *Id.* Defendants Officers' conduct, as alleged, matches squarely up with the proviso in *Phillips* regarding liability for officers who "trick a person into making an unreliable identification" by using a technique that "has already been forbidden by an authoritative judicial decision." *Id.*

Defendants next suggest that the *Coleman* decision added a "trigger" to the *Phillips* proviso, establishing that a defendant must first successfully suppress a challenged identification in his criminal case before he can pursue a claim for unduly suggestive identification techniques. *See Coleman*, 925. F.3d at 347. But this interpretation of *Coleman* is not supported by the decision. As discussed above, unduly suggestive identification procedures only give rise to a due process claim when they taint the underlying trial; where the fruits of such a procedure are successfully suppressed, no prejudice can result. And although *Coleman* concluded that the witness's identification "bore enough indicia of reliability to warrant defendants' reliance," it considered the suppression hearing at the criminal trial only as part of the totality of the circumstances, not as a required "trigger." *Id.* at 348.

The improper admission of identification testimony does not, without more, support a claim for unduly suggestive identification procedures. *See Phillips*, 668 F.3d at 915. But Fletcher's theory—that Defendant Officers told an eyewitness to identify him as the suspect even after she picked out someone else's photograph—alleges the kind of wrongdoing and prejudice that is required. *See Gonzalez v. City of Waukegan*, 220 F. Supp. 3d 876, 883 (N.D. Ill. 2016) (concluding that a plaintiff states a claim under an unduly suggestive identification procedure theory by alleging that police officers told the witness which suspect to identify and, in doing so, tainted the resulting criminal trial). Defendants' cite no authority to the contrary. *See Newsome v. McCabe*, 256 F.3d 747, 752–53 (7th Cir. 2001), *abrogated on other grounds by Manuel v. City of Joliet,* 137 S. Ct. 911 (2017) (agreeing that "detectives could . . . reasonably believe[] that it should be up to the prosecutors, and ultimately the court, to determine if an eyewitness identification is sufficiently reliable for use at trial," but not opining on the level of police misconduct required to taint an eyewitness identification); *Hensley v. Carey*, 818 F.2d 646, 649

(7th Cir. 1987) (holding that a defendant who participated in an allegedly unduly suggestive lineup but was not ultimately tried "could not possibly have been deprived of his right to a fair trial since he was never tried"). The Court concludes that Fletcher has also stated a claim under a theory of unduly suggestive identification procedures.

### D. Destruction of Evidence

Finally, Defendants assert that Fletcher's "claim" for destruction of evidence must be dismissed because Fletcher has not identified any evidence that has been destroyed.

Fletcher points to two paragraphs in support of this theory of liability: first, that "[n]one of the witnesses [at the scene of the crime] identified either of the offenders at the scene and the case went cold" (Compl. ¶ 19); and second, that "Bogucki and Schalk re-interviewed Cooper in March of 1995. They showed Cooper a photo-array of potential suspects, including a man named Fletcher Clinton. Cooper was unable to identify any of the men as the assailant." (*Id.* ¶ 21.) Neither paragraph implies that Defendants destroyed evidence. Fletcher adds that he has also alleged that the City (generally) destroyed exculpatory evidence; but to make out a theory for destruction of evidence, he must also allege that Defendants (specifically) destroyed evidence about his case. Thus, Fletcher's allegations do not state a claim under a destruction of evidence theory.

As noted above, however, that Fletcher's pleaded facts do not support a destruction of evidence theory does not lead to the dismissal of Count I. And moreover, it does not necessarily preclude him from taking discovery regarding the potential destruction of relevant evidence. He is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If Defendant Officers destroyed evidence regarding the Fletcher investigation, that fact may be closely enough

related to his other allegations to be discoverable. In sum, Count I survives Defendants' motion to dismiss, though Fletcher has not adequately pleaded a claim based on a theory of destruction of evidence.

## II.    Count II: Unlawful Detention

Fletcher initially asserted a claim for unlawful detention in violation of the Fourth and Fourteenth Amendments. After Defendants moved to dismiss that claim, Fletcher indicated his intent to voluntarily dismiss it. Defendants ask the Court to dismiss the claim with prejudice.

The parties have not addressed whether Fletcher is entitled to voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1), or whether Count II may only be dismissed on terms to be determined by the Court pursuant to Federal Rule of Civil Procedure 41(a)(2). But the result is the same because dismissal without prejudice is appropriate here. Under Rule 41(a)(2), "dismissal [without prejudice] is typically allowed unless the defendants will suffer some legal prejudice beyond the potential for further litigation." *Belkow v. Celotex Corp.*, 722 F. Supp. 1547, 1553 (N.D. Ill. 1989). Defendants have not identified any prejudice they would face if Count II is dismissed without prejudice. Thus, the Court dismisses Count II without prejudice.

## III.    Count VIII: Willful and Wanton Conduct (Negligence)

Defendants also move to dismiss Count VIII, which Fletcher captioned "State Law Claim—Willful and Wanton Conduct." There is no independent tort under Illinois law for "willful and wanton conduct." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012). Instead, "willful and wanton conduct is regarded as an aggravated form of negligence." *Id.* To state such a claim, Fletcher must plead "the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that

duty, and that the breach was a proximate cause of the plaintiff's injury." *Id.* He must also "allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Id.* [1]

Defendants complain that Fletcher has wrongly categorized his claim because "willful and wanton conduct" is not an independent tort. But Fletcher has clarified that he asserts a claim for negligence aggravated by willful and wanton conduct, which is recognized under Illinois law. *See id.* In any case, "specifying an incorrect theory is not a fatal error." *Rabe*, 636 F.3d at 872.

But Defendants also maintain that Fletcher has not identified a duty owed to him or a breach of that duty. The Court agrees. The duty Fletcher specifies—the "duty to refrain from willful and wanton conduct in connection with the Sorrell murder investigation"—is too vague to support a negligence claim. (Compl. ¶ 186.) Certainly, Fletcher has pleaded that Defendant Officers deliberately intended to harm him; for one thing, he alleges that they framed him for a murder because he would not act as a police informant for them. (Compl. ¶¶ 63–65.) But he must also plead duty, breach, and cause, and Fletcher has not explained why his allegations support such a claim. For these reasons, Count VIII is dismissed without prejudice.

## IV.  Motion to Strike

Defendants also have moved to strike certain paragraphs from the Complaint. (Dkt. No. 35.) They assert that those paragraphs—which allege that Defendants have a history of investigative misconduct—are prejudicial, intended only to embarrass Defendants, and unrelated to the Complaint's allegations. Fletcher, in response, maintains that these paragraphs (1) establish a pattern or practice of constitutional violations by the City, and (2) may be admissible under Federal Rule of Evidence 404(b), which provides that evidence of other crimes, wrongs, or acts

---

[1] Under Illinois law, public employees are generally immune from suit for their "act[s] or omission[s] in the execution or enforcement of any law," but there is an exception for willful and wanton conduct. *See* 745 ILCS 10/2-202; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014).

"may be admissible . . . [to] prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Federal Rule of Civil Procedure 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike are disfavored because of the risk that they will delay and unnecessarily multiply the proceedings. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "A motion to strike should not be granted unless . . . the language in the pleading has no possible relation to the controversy and is clearly prejudicial." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013) (internal quotation marks and citation omitted). Prejudice lies where the allegations "confus[e] the issues" or are "so lengthy and complex that [they] place[] an undue burden on the responding party." *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

Defendants move to strike the following allegations:

- Defendant Officers worked in Area 5, where there was allegedly a long history of misconduct similar to that which allegedly occurred in this case. (Compl. ¶ 91.)

- Police supervisors failed to intervene to stop such misconduct. (*Id.*)

- Defendant Officers' supervisors and the City promoted officers who engaged in misconduct, including Wojcik, who "ranks in the top 8% of officers in terms of the number of times he has been accused of misconduct" but, as alleged, has never been meaningfully disciplined. (*Id.* ¶ 95.)

- Defendant Officers have been accused of misconduct on numerous occasions, and Bogucki in particular was found by a jury to have caused a wrongful conviction through his misconduct. (*Id.* ¶¶ 98–101.)

The remaining paragraphs detail additional alleged misconduct involving Defendant Officers and state that the City failed to discipline them for their misconduct. (*Id.* ¶¶ 102–110.)

Fletcher has alleged that the City caused his wrongful conviction through its policies and practices, including failing to prevent Defendant Officers' misconduct committed against him. Thus, alleged misconduct committed by Defendant Officers on other occasions is potentially relevant to whether the City caused Fletcher's injuries through its policies and practices. But even if Fletcher had not asserted such a claim, the disputed paragraphs would still be allowable. Defendant Officers may contend that any mistakes they made in investigating Fletcher were accidental. Their past alleged misconduct is relevant on that issue under Federal Rule of Evidence 404(b)(2). Of course, as Defendants note, Fletcher may not argue that Defendant Officers violated his rights just because they allegedly committed similar actions in the past. Fed. R. Evid. 404(b)(1). Still, Fletcher has offered several non-propensity purposes for which such evidence could be used.

Defendants' remaining arguments are unavailing. They state that the challenged allegations will confuse the jury because Defendants are not on trial for their past alleged misconduct. But the Court has not yet determined whether those allegations may be presented to the jury, and that issue is properly the subject of a future motion in limine. Defendants also complain that they will be unduly burdened by investigating, responding to, and defending against the allegations. But Fletcher's allegations overwhelmingly speak only to prior allegations of misconduct against Defendant Officers; thus, Defendants need not dig up all the details of each alleged incident, but will generally be able to respond by confirming whether Fletcher has accurately described the complaints made against Defendant Officers.

Similarly, it is not unduly prejudicial that the Complaint gives examples of other officers with histories of alleged misconduct who worked in the same area as Defendant Officers, including Detective Reynaldo Guevara. It is potentially relevant whether Defendant Officers

18

worked in an environment where misconduct was tolerated. In any event, the challenged allegations focus almost exclusively on Defendant Officers. The same holds for Fletcher's allegation that Wojcik ratified false police reports about Officer Jason Van Dyke's shooting and killing of Laquan McDonald in October 2014. (Compl. ¶ 106(b).) Any risk of unfair prejudice before a jury is appropriately addressed as an evidentiary matter at a later stage in the case. The challenged allegations are also not redundant; they may be fairly extensive, but they are efficiently drafted and do not unnecessarily digress from the subject matter of this case.

Defendants object that discovery will be improperly broadened unless the Court strikes the challenged allegations. Not so. The scope of discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ P. 26(b)(1). Proportionality is determined in relation to Fletcher's *claims*, not his factual allegations. For these reasons, Defendants' motion to strike is denied.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss (Dkt. No. 34) is granted in part and denied in part. Counts II and VIII are dismissed without prejudice. Defendants' motion to strike (Dkt. No. 35) is denied.

ENTERED:

Dated: September 30, 2021

Andrea R. Wood
United States District Judge

19