```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   JAMES FLETCHER JR.,                )
                                        )
 4            Plaintiff,                )
                                        )
 5       vs.                            ) No. 20 CV 4768
                                        )
 6   JEROME BOGUCKI, ANTHONY            ) Chicago, Illinois
     NORADIN, RAYMOND SCHALK,           ) February 23, 2022
 7   ANTHONY WOJCIK, UNKNOWN CITY       ) 10:05 a.m.
     OF CHICAGO POLICE OFFICERS,        )
 8   and the CITY OF CHICAGO,           )
                                        )
 9            Defendants.               )

10
         TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING
11
              BEFORE THE HONORABLE ANDREA R. WOOD
12

13   APPEARANCES:

14   For the Plaintiff:      LOEVY & LOEVY
                             BY:  MS. MARIAH E. GARCIA
15                           311 North Aberdeen Street, 3rd Floor
                             Chicago, Illinois 60607
16                           (312) 243-5900
                             Mariah@loevy.com
17
     For the Defendant
18   Officers:               HALE LAW LLC
                             BY:  MR. BRIAN J. STEFANICH
19                           53 West Jackson Boulevard, Suite 330
                             Chicago, Illinois 60604
20                           (312) 341-9646
                             Bstefanich@halemonico.com
21

22

23

24

25
```

```
 1   APPEARANCES:  (Continued)

 2   For the Defendant
     City of Chicago:      REITER BURNS LLP
 3                         BY:  MR. PAUL A. MICHALIK
                           311 South Wacker Drive, Suite 5200
 4                         Chicago, Illinois  60606
                           (312) 982-0090
 5                         Pmichalik@reiterburns.com

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
     Court Reporter:       Brenda S. Tannehill, CSR, RMR, CRR
23                         Official Court Reporter
                           219 South Dearborn Street, Suite 1928
24                         Chicago, Illinois 60604
                           (312) 554-8931
25                         brenda_tannehill@ilnd.uscourts.gov
```

1       (Proceedings held remotely, via telephone:)
2       THE COURT: Good morning. This is Judge Wood. I
3 believe we're ready to call the next case, so I will ask my
4 courtroom deputy to do that, and then we will get appearances
5 from Counsel starting with the plaintiff first.
6       David.
7       THE CLERK: 20 C 4768, Fletcher, Junior versus
8 Bogucki, et al., for status.
9       THE COURT: Plaintiff's counsel?
10      MS. GARCIA: Mariah Garcia for the plaintiff.
11      MR. STEFANICH: Brian Stefanich for the defendant
12 officers.
13      MR. MICHALIK: Paul Michalik for defendant City of
14 Chicago.
15      THE COURT: Thank you.
16      Okay. So I have now fully briefed the motion to
17 compel that was filed, but before we talk a little bit about
18 that, let me see what other progress has been made with
19 respect to discovery over the past few weeks.
20      Where do things stand, Ms. Garcia?
21      MS. GARCIA: Sure, Your Honor.
22      We are still waiting -- and I believe the individual
23 defendant officers -- on a few subpoenas to various government
24 agencies.
25      We've also started to send out subpoenas for

1  third-party witness depositions which counsel has been in
2  conversations to set down for an actual time. It's just been
3  a little difficult to locate some of those witnesses, but now
4  that we have, we're moving towards starting depositions.
5           THE COURT: Okay. And how many depositions do you
6  expect to take in the matter?
7           MS. GARCIA: We definitely want to take all the
8  depositions of the parties. We also, on our end, have three
9  nonlaw enforcement depositions, three to four eyewitnesses.
10 So that would be at least seven to eight, not counting some of
11 the shorter depositions we think we may need to take for some
12 of the nondefendant but still involved officer deps.
13          We've also discussed between counsel potentially
14 taking a couple of depositions a day for some of the non --
15 the less involved witnesses to try and cut down on time.
16          THE COURT: Okay. What about the individual
17 defendants? What are your plans for deposition discovery?
18          MR. STEFANICH: Sure, Judge. So we'll have the
19 plaintiff, we'll do the four eyewitnesses, and then we'll have
20 the damages depositions, which I think there's maybe three to
21 four of those witnesses as well. And I think that's about it
22 right now.
23          We'll have some of the state's attorney witnesses, so
24 I know we'll want one of the original trial prosecutors. And
25 then we will want probably two of the prosecutors that were

1 involved in the review of Mr. Fletcher's case, the
2 postconviction review and the Conviction Integrity Unit
3 review. And then there's one witness, Mr. Fletcher's attorney
4 during the lineup, that we will depose as well.
5     THE COURT: I'm sorry. What is the name of the
6 attorney during the lineup?
7     MR. STEFANICH: The last name is Gunyon, I believe
8 G-U-N-Y-O-N.
9     THE COURT: So not the counsel whose recorded calls
10 are the subject of the motion to compel?
11     MR. STEFANICH: Correct.
12     THE COURT: Okay. And I take it that you are not
13 seeking any deposition testimony regarding advice given by
14 Attorney Gunyon to the plaintiff? In other words, are there
15 going to be privilege issues, or you just want to know what
16 happened during the lineup?
17     MR. STEFANICH: Yeah, I don't expect any privilege
18 issues to arise. She was just the attorney for the lineup,
19 and she testified both at the motion to suppress the
20 identification and Mr. Fletcher's criminal trial, so I
21 wouldn't expect really to get into any privileged matters.
22     THE COURT: Okay. And as I was reviewing the motion
23 to compel -- I'm sorry -- the motion, I guess, to enforce the
24 subpoena which is basically a motion to compel, I noticed that
25 obviously, there's a group of folks for whom you're seeking

1 the calls between them and Mr. Fletcher. Which of those
2 people, if any, are you planning to depose?
3       MR. STEFANICH: Sure.
4       So Debra Sanders would be one for sure that we would
5 depose. She was a witness at the plaintiff's criminal trial.
6 She testified to an alibi that she and Mr. Fletcher were out
7 of state at the time of the murder as well as some other
8 characteristics of Mr. Fletcher that didn't match the
9 eyewitness descriptions. So she would be one that we would
10 depose.
11       The two damages witnesses, Delan Gardner and
12 Natasha Reeves, would be individuals that we would depose.
13       Ms. Blagg who was Mr. Fletcher's postconviction
14 attorney and his current attorney in this case, I think we
15 would wait on making that decision until we heard some of the
16 calls. Obviously, if there's nothing particularly relevant
17 about the affidavits or about the case, we wouldn't seek her
18 deposition because we know that would raise some issues with
19 representation in this case and things like that. So that's
20 one that we would probably wait on.
21       And then Yvette McGee is the other individual. I
22 know she had 13 phone calls with Mr. Fletcher. It seems like
23 she had some role in securing Mr. Cooper's affidavit.
24 Mr. Cooper was one of the victims in this case. So I think
25 that one, again, we would probably want to either wait until

1    we received the phone calls or depose Mr. Cooper before we
2    made the decision on that deposition.
3            I'm sorry.  One other one was Mr. Fletcher's father.
4    So he also testified at Mr. Fletcher's criminal trial, and I
5    don't believe he was listed on plaintiff's Rule 26
6    disclosures.  So that would be one that we would probably meet
7    and confer about.  I don't know if he's still around, but if
8    he is still around and available to testify, he's somebody
9    that we would want to depose because he testified to the same
10   topics as Debra Sanders, the alibi and Mr. Fletcher's
11   appearance in 1995.
12           THE COURT:  Okay.  Thank you.
13           Then what about the city?  Does the city have any
14   plans apart from what I've just heard on behalf of the
15   individual defendants to conduct depositions?
16           MR. MICHALIK:  Not at this time, Judge.
17           This is Paul Michalik for the city.
18           Whether or not there would be some additional
19   depositions that we would be seeking is, I guess, going to
20   depend on how things play out on some of this underlying fact
21   discovery.  And it sounds like some of our time is going to be
22   spent trying to maybe track down some retired nondefendant
23   police officers.  As the Court is obviously aware, sometimes
24   that becomes kind of a difficult process, tracking them down,
25   finding out if they're still around.  But other than that, at

1  this point, I don't think I have anything in addition to what
2  Mr. Stefanich just said.
3        THE COURT: Okay. That's helpful. Thank you.
4        So using that as a lead in to ask a couple of
5  questions about the pending motion, I suppose I'd be
6  interested in hearing from the individual defendants how your
7  access to the phone recordings plays into your plans to depose
8  those witnesses because it does strike me as a bit of a
9  fishing expedition.
10       I'm not sure that the briefing from the individual
11 defendants actually contests that that's more or less what's
12 going on here is that you want to look at all of the
13 communications between the plaintiff and people who you think
14 might have information to see if there's anything there.
15       Are you planning to do that in advance of depositions
16 in order to guide your questioning?
17       I'm just trying to figure out how these things fit
18 together, if at all.
19       MR. STEFANICH: Sure, Judge.
20       So what I think we tried to do was we tried to not
21 make it a fishing expedition by only seeking calls with six
22 out of the 66 people that Mr. Fletcher called, but I think for
23 how we would use this at depositions, I think we would wait to
24 depose the plaintiff until we -- you know, if we get the phone
25 calls, until we listen to the phone calls.

1	I think, for some of these witnesses, you know, we
2	might not have to wait. I don't think we would have to wait
3	on Debra Sanders. To me, it seems like any sort of
4	communications with her we could ask, you know, sort of the
5	plaintiff about at his deposition.
6	We would wait for the damages witnesses which is
7	Delan Gardner and Natasha Reeves.
8	And then, like I said, I think we would hold off on
9	deciding whether to depose Ms. Blagg and Yvette McGee until we
10	listen to those phone calls as well.
11	We do have topics just from the records that we
12	received that we know we want to question these witnesses on,
13	but I think for these witnesses, it would give us more detail
14	on what's going on with plaintiff -- especially of the damage
15	witnesses -- what's going on with the plaintiff while he's in
16	custody, how is him being in custody impacting the
17	relationships with his children, are we hearing any sort of
18	emotional pain with what's going on in his life when he's
19	talking to his children and things like that. So I think that
20	was our thought process in this.
21	THE COURT: Okay. While I'm asking a couple of
22	questions, is there any indication that the plaintiff
23	actually -- and I'm switching topics now to the conversations
24	that you're seeking that were recorded between the plaintiff
25	and his attorney. And you've taken the position that any

1  privilege is waived, but is there any indication that the
2  plaintiff actually knew that those calls were being recorded,
3  or is that an assumption that you're urging me to draw based
4  on the fact that they didn't follow the procedures for getting
5  on a private attorney call?
6           MR. STEFANICH: So I don't think in the response
7  brief they contest that he -- they do not contest that he knew
8  that it was being recorded.
9           I know in the inmate manual -- and I'm not sure if --
10 off the top of my head, I'm not sure if that was produced when
11 we subpoenaed the IDOC for the entire inmate file, but in the
12 inmate manual, I know it's disclosed that the outgoing prison
13 calls are recorded. And then again, sort of in other cases,
14 we know that when we receive a call, there's usually a
15 prerecorded message when you dial out that says that this call
16 is being monitored and recorded.
17          So I think all those things are true in this case.
18 And like I said, I don't think plaintiff actually contests
19 that he did not know that the calls were recorded.
20          THE COURT: Ms. Garcia, did he know?
21          I think it's accurate to say that it wasn't contested
22 that he knew, but it also isn't expressly acknowledged or
23 admitted that he knew. So what is the fact of the matter?
24 Did he know that he was on a recorded line?
25          MS. GARCIA: Your Honor, I can't answer for all of

1  the calls. I believe that when he talked to Ms. Blagg, he had
2  the understanding that it would be privileged.
3       I know that there's a difference between whether a
4  call is privileged when someone calls out versus when someone
5  calls in, but given the amount of calls here, I'm not sure --
6  and this may be something I just need to look into further --
7  that all the calls we're requesting are calls where he
8  specifically called out. And so if that's the case, there may
9  be a number of calls where it was Ms. Blagg calling in and it
10 was recorded regardless of the fact that the IDOC should have
11 demarcated that as privileged in some way.
12      And so if that's not a fulsome response, I apologize,
13 but I don't believe that he knew or that if he knew, he
14 certainly didn't imagine all of his calls would have been
15 recorded.
16      MR. STEFANICH: Judge, just to clarify, we did
17 request just the outgoing calls. So the call logs that were
18 produced that we based the motion on are just for calls that
19 Mr. Fletcher placed and not calls that Ms. Blagg would have
20 placed into the facility.
21      And again, I think the case law -- you know, I think
22 the case law that we cited is pretty clear that, you know,
23 there's no -- whether he knew that calls were recorded, you
24 know, is part of it, but the case law says that there's no
25 reasonable expectation of privacy in your outgoing phone calls

1  in the IDOC. So we think based on that case law that there is
2  no attorney-client privilege in this instance.
3      THE COURT: Any response to that, Ms. Garcia?
4      MS. GARCIA: Sure.
5      I think that the case law isn't -- as I kind of cited
6  in our response brief, isn't as clear in that, especially in
7  cases where there would be no other option for the calls to be
8  privileged or not recorded because they are privileged.
9      I just think that while I understand Counsel's point,
10 I think that there is definitely case law that says privilege
11 attaches regardless of whether or not he's placing an outgoing
12 call when he's talking to an attorney about things that are
13 privileged between an attorney and a client.
14     THE COURT: Okay.
15     MS. GARCIA: Not to interrupt -- sorry, Judge.
16     THE COURT: Go ahead.
17     MS. GARCIA: Not to interrupt, but I think,
18 obviously, you've seen our briefing and you've seen the thrust
19 of our argument, and we agree that we still -- a lot of the
20 requests are a fishing expedition that haven't -- that the
21 individual defendants haven't yet shown their reason for
22 requesting these calls specifically, and so, you know, on our
23 end of things, we'd want the subpoena quashed altogether;
24 however, if there are certain areas in which there's a
25 question of relevance, we would be open to having a deposition

1  go forward first and then, based on the questioning in that
2  deposition potentially of plaintiff, potentially of dead
3  responders or Ms. Blagg, revisiting the question of whether
4  there is relevance in these phone calls.
5              Because these depositions are going to have to occur
6  regardless, and I understand that individual counsel would
7  want them in their possession before they were deposed, but I
8  think in this situation, since there is such a question of
9  whether they're relevant or for privilege attaching, it might
10 make more sense for certain of the phone calls in which
11 there's a question of whether they're relevant or privileged
12 to kind of be put on the back burner until we have those
13 depositions and have a little more clarity.
14             THE COURT:  So what about that option?  Because it
15 did occur to me that absent some testimony or some other basis
16 in the record to think that there was a relevant topic that
17 was discussed, this could be construed as just a pure fishing
18 expedition through an extremely large volume of recorded calls
19 from a lengthy time period.
20             It would seem to be easier to justify going in and
21 looking at all the calls from a particular person if there was
22 some indication that you're looking for something in
23 particular that was said rather than simply taking
24 particularly interesting people from the initial disclosures
25 and seeking all of the calls with those people.

1	Why shouldn't I require at least some threshold
2	showing based on something else in the record that there's
3	actually something there to look for?
4	And this is directed towards defense counsel.
5	MR. STEFANICH: Well, I guess initially, we would say
6	we think we've already made that threshold showing based on
7	their Rule 26 disclosures, but, you know, I just don't think
8	that's, I guess, a practical solution.
9	If you think about going into a deposition with these
10	witnesses and trying to ask them about, you know, a specific
11	phone call that they had with the plaintiff in, you know,
12	2013, I think it seems to me like a lot of the answers are
13	going to be "I don't remember" until we can refresh their
14	recollection with the actual phone calls.
15	So I just think it's just not going to be, like, a
16	practical solution for us. And I think the case law sort of
17	bears that out where I know the *Prince* case talked about the
18	difficulty of making that initial showing without the actual
19	phone calls.
20	We obviously -- and we've never argued that we know
21	what's on the phone calls. We obviously don't know what's on
22	the phone calls, but I think by limiting the request to six
23	individuals and, you know, about 40 percent of the calls that
24	plaintiff made, I think we were pretty reasonable in our
25	subpoena and tried to narrowly tailor it to individuals that

1   would have knowledge about the case and knowledge about the
2   issues that Mr. Fletcher is claiming in this case.
3           MR. MICHALIK:  Your Honor.
4           THE COURT:  I'm sorry.  Who is --
5           MR. MICHALIK:  -- Michalik.
6           I apologize.  This is Paul Michalik.
7           I would just say also that waiting until the
8   depositions take place may result in some significant
9   inefficiencies because let's assume that there are some
10  questions that are asked at the deposition, the witness
11  doesn't recall or provides us some information that suggests,
12  you know, some additional reason to obtain these phone calls.
13  Is that then going to result in the need to redepose or, you
14  know, take a second deposition of some of the witnesses?
15          So I would just think that, you know, doing it by
16  taking the depositions first and then getting the phone calls
17  may lead to some inefficiencies.
18          THE COURT:  Okay.  I believe when the motion was
19  first filed, I asked and learned that at this point, there
20  hasn't been any objection from IDOC, that basically, the call
21  logs were produced, which was part of the agreement on how
22  this issue was going to be addressed between plaintiff and
23  defendants; and that based on a review of the call logs, that
24  sort of has come -- you know, we've sort of gotten to this
25  point.  But nobody at the IDOC is saying that this is

1 burdensome in any way or contrary to their policies in any
2 way. They're just looking for direction on how to go forward.
3 　　　　　Is that fair to say?
4 　　　　　MR. STEFANICH: Procedurally, we never sent -- we
5 pulled back the subpoena before it got to the IDOC for the
6 phone calls, so we only sent them the subpoena for the phone
7 logs.
8 　　　　　In no case that we've had has the IDOC ever objected
9 based on burden to producing recorded phone calls, and they've
10 always been able to produce it pretty quickly. But like I
11 said, we pulled back that subpoena when plaintiff objected, so
12 they never actually received the subpoena for the phone calls.
13 　　　　　THE COURT: Okay. So here's what I want to do. I
14 want to give it a little bit of thought. I'll issue a written
15 order based on the briefing which I think is pretty
16 comprehensive. I know the issues. I want to give a little
17 bit of thought to a couple of issues that have been raised and
18 issue a written order. And I'll get that to you in short
19 order.
20 　　　　　I think in terms of a next status date, given where
21 we are in discovery and what your likely next steps will be
22 with depositions, that I'm going to direct the parties to file
23 a written status report and to do so by April 15th just to
24 indicate what additional progress you've made, any disputes
25 that have come up, any other issues in addition to the

Case: 1:20-cv-04768 Document #: 74 Filed: 04/08/22 Page 17 of 18 PageID #:1098

17

1  disputes that you'd like to discuss at a telephone status
2  hearing, whether there's been any change with respect to the
3  parties' views regarding possible settlement, and really
4  anything else that you'd like to discuss.
5         I will hold off on setting a next telephone status
6  hearing until I see what sort of issues you'd like to raise.
7         If you've got several new discovery disputes, we may
8  need to have a discovery conference, but if things are moving
9  smoothly and you're heading into depositions, it may be that
10 it makes sense to hold off on a telephone hearing for a little
11 bit longer to make sure you're on track for the close of
12 discovery.
13        So April 15th for the written status report.  I'll
14 get you the ruling on the motion to compel, I would think,
15 within the next week or so so that you can get back to the
16 IDOC and proceed with your depositions.
17        Is there anything else for this morning?
18        MR. MICHALIK:  Not from the city, Your Honor.  Thank
19 you.
20        MS. GARCIA:  Not from plaintiff.  Thank you,
21 Your Honor.
22        MR. STEFANICH:  And not from the individual
23 defendants.  Thanks, Judge.
24        THE COURT:  Thank you for your time and for answering
25 my questions.

1     Have a good day.
2     (Proceedings adjourned at 10:32 a.m.)
3                    * * * * *
4              C E R T I F I C A T E
5
6
7     I, Brenda S. Tannehill, certify that the foregoing is
8  a complete, true, and accurate transcript from the record of
9  proceedings on February 23, 2022, before the HONORABLE
10 ANDREA R. WOOD in the above-entitled matter.
11
12
13 */s/Brenda S. Tannehill, CSR, RMR, CRR*          4/8/2022
14     Official Court Reporter                      Date
       United States District Court
15     Northern District of Illinois
       Eastern Division
16
17
18
19
20
21
22
23
24
25