**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES FLETCHER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-04768 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JEROME BOGUCKI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Respondent Cook County State's Attorney's Office's motion to quash subpoenas for the depositions of Toni Giancola and Christa Bowden [97] is denied. The deliberative-process privilege does not prohibit outright the requested depositions, but it does prohibit questioning about the specific reasons Respondent chose not to retry Plaintiff or to oppose his petition for a certificate of innocence. Respondent may designate the deposition testimonies as confidential pursuant to the confidentiality order governing this case. In addition, Daniel Brannigan's motion to intervene for the limited purpose of seeking a protective order [123] is granted, but his motion for a protective order [124] is denied. Plaintiff may ask Brannigan about his deposition testimony from a previous case so far as it concerns policies and practices followed by Brannigan as an investigator for the Cook County State's Attorney's Office, consistent with Plaintiff's position in the briefing. See the accompanying Statement for additional details.

## STATEMENT

Plaintiff James Fletcher, Jr. has brought this lawsuit in connection with his murder conviction in state court that was set aside in October 2019. Fletcher asserts claims under 42 U.S.C. § 1983 and Illinois state law against the individual officers involved in the investigation ("Officer Defendants") as well as the City of Chicago (collectively, "Defendants").

This Order addresses two discovery disputes involving third parties. First, the Cook County State's Attorney's Office ("CCSAO") moves to quash the subpoenas that Officer Defendants issued for the depositions of two Assistant State's Attorneys ("ASAs"), primarily on the grounds that the anticipated testimony would implicate the deliberative-process privilege. (Dkt. No. 97.) Second, Daniel Brannigan has filed a motion to intervene (Dkt. No. 123) and a motion for a protective order (Dkt. No. 124) with respect to his own deposition, arguing that Fletcher should not be allowed to ask him questions based on deposition testimony he gave in a previous case, *McIntosh v. City of Chicago, et al.*, No. 17-cv-06357 (N.D. Ill.).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26 (b)(1). "[R]elevance is to be construed broadly" in the discovery context. *Coleman v. Illinois*, No. 19 C

3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020) (internal quotation marks omitted). And the requested information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Therefore, "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Santiago v. City of Chicago*, No. 1:19-CV-04652, 2023 WL 5096288, at *2 (N.D. Ill. Aug. 9, 2023) (internal quotation marks omitted). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Gamon Plus, Inc. v. Campbell Soup Co.*, No. 1:15-CV-08940, 2022 WL 18284320, at *1 (N.D. Ill. May 26, 2022) (internal quotation marks omitted). The Court applies these principles to the third-party motions below.

## I.     CCSAO's Motion to Quash

CCSAO asks the Court to quash the subpoenas that Officer Defendants issued for the testimony of Toni Giancola and Christa Bowden, two ASAs who were involved in Fletcher's post-conviction proceedings in state court. Giancola played a role in CCSAO's decision not to retry Fletcher; instead, CCSAO moved to *nolle prosequi* the charges—a procedure that "reverts the matter to the same condition which existed before the commencement of the prosecution." *Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). For her part, Bowden appeared in the state-court proceedings to represent that "the People would not intervene" with respect to Fletcher's petition for a Certificate of Innocence ("COI"). (CCSAO's Mot. to Quash at 2, Dkt. No. 97.)

CCSAO argues that Officer Defendants' anticipated questioning of Giancola and Bowden would violate the deliberative-process privilege, which "protects communications that are part of the decision-making process of a governmental agency." *Glass v. Vill. of Maywood*, No. 22 CV 164, 2023 WL 6461364, at *3 (N.D. Ill. Oct. 4, 2023).[1] Officer Defendants respond that, because Fletcher has confirmed that he plans to use the lack of a retrial and the COI as evidence of his factual innocence, they should be able to explore the rationale behind CCSAO's positions on those issues. Fletcher filed his own response in which he takes no position on the matter. That said, Fletcher indicates that he will not introduce evidence or argument implicating CCSAO's decision-making processes.

To start, the *nolle prosequi* and the COI are relevant to this case. An element of Fletcher's malicious-prosecution claims under Illinois law is that "the prosecution against him was terminated in a manner indicative of innocence." *Patrick v. City of Chicago*, 974 F.3d 824, 832–33 (7th Cir. 2020). The *nolle prosequi* could satisfy this burden if it "was entered for reasons related to [Fletcher's] innocence." *Lund*, 956 F.3d at 949. Likewise, the COI is "directly relevant" to this issue. *Patrick*, 974 F.3d at 832–33. And as Fletcher suggests, the *nolle prosequi* and COI might also prove relevant to his federal due process claims, so far as he alleges that Officer Defendants withheld evidence "material" to his conviction. *Goudy v. Cummings*, 922 F.3d 834, 842 (7th Cir. 2019); *cf. Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 747 (N.D. Ill. 2015) ("Should defendants offer evidence that [the plaintiff] was actually guilty so as to negate the materiality of

---

[1] There is some authority suggesting that the deliberative-process privilege does not apply to Illinois governmental entities, *Murdock v. City of Chicago*, 565 F. Supp. 3d 1037, 1043–44 (N.D. Ill. 2021), but the parties do not discuss it here. They have thus waived the issue. *E.g.*, *Affiliated Dialysis of Joliet, LLC v. Health Care Serv. Corp.*, No. 23 CV 15086, 2024 WL 1195607, at *4 (N.D. Ill. Mar. 20, 2024).

the allegedly withheld evidence, the COI would be relevant rebuttal evidence . . . ."). Separately, if the jury concludes that Fletcher is innocent, it may award him higher damages. *See Parish v. City of Elkhart*, 702 F.3d 997, 1003 (7th Cir. 2012) (explaining in a § 1983 wrongful-conviction case that "the district court's rulings improperly limited the introduction of evidence relating to [the plaintiff's] innocence, and that evidence was critical to the damages issue").

In sum, the COI and lack of a retrial are relevant so far as they support Fletcher's factual innocence, and Fletcher has confirmed that he plans to introduce the evidence accordingly. By the same token, CCSAO's reasons for not seeking a retrial or opposing the COI are relevant too. For one thing, "[t]he decision to move for *nolle prosequi* is a matter of prosecutorial discretion," *Garcia v. City of Chicago*, 24 F.3d 966, 971 (7th Cir. 1994); if reasons other than a belief in Fletcher's innocence motivated the choice here, a jury could conclude that the *nolle prosequi* is less probative of Fletcher's innocence, *see Lund*, 956 F.3d at 949 (listing among the potential rationales "limited resources, availability of police and other witnesses, and ease of garnering evidence"). And the lack of opposition to the COI ostensibly increased its odds of being granted—meaning the same sort of evidence as to why CCSAO did not intervene could similarly diminish the probative value of the COI. *See Patrick*, 974 F.3d at 833 (explaining that a COI has "limit[ed]" probative value if it does not "reflect a factual finding arising from the crucible of the adversarial process"). Especially at the discovery stage, this is enough to show the relevance of Giancola and Bowden's testimonies.[2]

The Court therefore must determine whether the testimonies are privileged. Application of the deliberative-process privilege proceeds in two steps, beginning with the governmental entity making a *prima facie* showing that satisfies the following requirements:

> (1) [T]he department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents [or testimony] in question; and (3) the official must specifically identify and describe the documents [or testimony].

*DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2021 WL 3109662, at *4 (N.D. Ill. July 22, 2021) (internal quotation marks omitted). In this case, Officer Defendants do not dispute that the declaration of Jessica M. Scheller, who at the time of her testimony was Chief of the Advice, Business & Complex Litigation Division of the Civil Actions Bureau in CCSAO, satisfies the *prima facie* burden. (CCSAO's Mot. to Quash, Ex. H ("Scheller Decl."), Dkt. No. 97-8.)

Accordingly, Officer Defendants must demonstrate a "particularized need" for the requested testimonies that overcomes CCSAO's interest in confidentiality. *DeLeon-Reyes*, 2021 WL 3109662, at *4. Factors to consider at this step include:

---

[2] CCSAO suggests that Giancola and Bowden lack extensive knowledge of its post-conviction decision-making, which could mean that taking their depositions would not be "proportional to the needs of the case." Fed. R. Civ. P. 26 (b)(1). But absent more concrete facts as to the scope of their knowledge, the Court will not disallow the depositions on that basis.

(1) the relevance of the information to the litigation; (2) the availability of other evidence that would serve the same purpose as the deposition sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which the deposition sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

*Id.* (internal quotation marks omitted); *see also United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) ("[R]elevance alone is an insufficient reason for breaching the deliberative process privilege."). The Court must weigh these factors on an issue-by-issue basis. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

Consideration of these factors favors allowing the depositions of Giancola and Bowden to proceed—but only to a limited degree. As explained above, their testimony is relevant to the anticipated argument that Fletcher is factually innocent. The second factor, the availability of substitute evidence, cuts in both directions. Officer Defendants acknowledge there is already evidence in the record indicating that members of the Conviction Integrity Unit ("CIU") did not believe Fletcher to be innocent prior to the granting of his habeas petition. (Officer Defs.' Resp. Br., Ex. D ("Aducci Dep.") at 54:19–55:07, Dkt. No. 99-5; Officer Defs.' Resp. Br., Ex. J ("April 2019 McGuire Letter"), Dkt. No. 99-11.) Yet those materials do not reveal whether CCSAO revised its position ***after*** the petition was granted; further, the documents CCSAO previously produced do not appear to fill this void. *See Bahena v. City of Chicago*, No. 17 C 8532, 2018 WL 2905747, at *4 (N.D. Ill. June 11, 2018) (reasoning that "[t]here [was] no other evidence that would substitute for" a memorandum that revealed why CCSAO decided "to dismiss the charges").

The third factor counsels against allowing the depositions. CCSAO is not a defendant in this litigation, nor does "its conduct . . . bear on the question of whether [Officer Defendants] knowingly sought to procure the prosecution and conviction of an individual whom they knew to be innocent." *Evans v. City of Chicago*, 231 F.R.D. 302, 317 (N.D. Ill. 2005). Conversely, the serious nature of the allegations that Officer Defendants caused Fletcher to be falsely imprisoned for thirteen years supports a particularized need under the fourth factor. *Bahena*, 2018 WL 2905747, at *4; *see also Evans*, 231 F.R.D. at 317 ("A claim that police officers violated their sworn duty by knowingly seeking the prosecution and conviction of a person whom they knew to be innocent (and did so through multiple constitutional violations) strikes at the heart of the integrity of our criminal justice system.").

The final factor concerns the chilling effect of requiring the depositions to proceed. This factor recognizes the crucial role the deliberative-process privilege plays in facilitating unrestrained speech among government officials. *See Nat'l Immigrant Just. Ctr. v. United States Dep't of Just.*, 953 F.3d 503, 508 (7th Cir. 2020) (discussing the privilege as incorporated in the Freedom of Information Act). That some time has passed since the events in question—roughly four years since the conviction was vacated and two years since the COI was issued (CCSAO's Mot. to Quash at 2–3)—perhaps mitigates the chilling effect. *See Bahena*, 2018 WL 2905747, at *4 (explaining that there was a particularized need when "four years [had] passed since the decision was made to dismiss the charges against Plaintiff"). Nonetheless, the Court finds that certain lines of proposed questioning would unduly impinge CCSAO's interest.

Accordingly, in line with the need to apply the privilege on a particularized basis, the depositions may proceed subject to limitations. Questions about the procedural steps CCSAO took when deciding to *nolle prosequi* the charges and not to oppose the COI are appropriate. Such topics **may** include: what procedures were followed, who was involved in the decisions, what documents were reviewed, and whether any investigation was conducted. The parties **may** further ask about the factors that, as a general matter, determine whether CCSAO will retry a criminal defendant or oppose a COI (such as the strength of the case, resource management, availability of witnesses, and length of incarceration). The parties also **may** ask whether the ASA witnesses are aware of evidence actually exonerating Fletcher and ask them to identify such evidence, if it exists. Notably, many of these questions would arguably elicit purely factual material outside the scope of the deliberative-process privilege altogether. *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 187 (N.D. Ill. 2019). In any case, Officer Defendants have demonstrated a particularized need for the information sufficient to overcome CCSAO's interest in privacy.

By contrast, the parties **may not** ask Giancola or Bowden about the specific reasons why CCSAO decided to *nolle prosequi* and not oppose the COI in Fletcher's particular case. For example, the parties **may not** ask the ASA witnesses about whether specific factors weighed in favor of or against retrying Fletcher or opposing his COI, any internal CCSAO determination of Fletcher's actual guilt or innocence (other than identifying specific facts exonerating Fletcher), or any recommendations that were made, accepted, or rejected with respect to Fletcher's retrial and COI. Those questions would seek information squarely within the deliberative-process privilege and Officer Defendants have not demonstrated a particularized need. *Cf. Nat'l Immigrant Just. Ctr.*, 953 F.3d at 509 (reasoning that "communications to and from the Attorney General or the Office of the Attorney General discussing the pros and cons of certifying a case for decision, commenting on different lines of reasoning supporting a particular decisional path, and offering suggestions on draft opinions" lie "at the heart of the deliberative process privilege"). Moreover, the parties may not ask whether Giancola or Bowden **believe** that Fletcher is guilty or innocent; Officer Defendants have not shown that the personal beliefs of individual ASAs are relevant.

The questions Officer Defendants may pursue per the above discussion, along with information already available, will enable them to counter Fletcher's anticipated argument that the *nolle prosequi* and COI indicate his factual innocence. If Officer Defendants believe more is needed to overcome the prejudicial effect of this evidence, they may submit corresponding jury instructions. *See Patrick*, 974 F.3d at 833 (describing how "[w]ell-crafted jury instructions can guard against the risk of unfair prejudice or confusion of the issues" that could arise from the introduction of a COI into evidence).

In short, although the deliberative-process privilege restricts the scope of questions Officer Defendants and Fletcher may ask, it does not warrant quashing outright Officer Defendants' subpoenas to depose Giancola and Bowden. What is more, CCSAO has not demonstrated that the mental-process privilege or work-product doctrine, which it raises in only a cursory manner, provide alternative bases for quashing the subpoenas. *See DeLeon-Reyes*, 2021 WL 3109662, at *6–7 (concluding that such arguments had been waived in similar circumstances). To be clear, the Court is not holding that the testimony will be admissible at trial. Finally, because CCSAO does have a legitimate interest in confidentiality, it may designate the testimony as confidential pursuant to the order the Court previously entered in this case.

## II.    Brannigan's Motion for a Protective Order

Next, Brannigan seeks to intervene for purposes of obtaining a protective order with respect to Fletcher's proposed questioning at Brannigan's deposition. Fletcher and Defendants all want to depose Brannigan due to his role in this case as an investigator for CCSAO. Brannigan was previously a defendant in *McIntosh*; there, he participated in a deposition during which, among other things, he testified about his understanding of CCSAO policies and his general practices as an investigator. (Brannigan Mot. for Protective Order, Ex. 1, Dkt. No. 124-1.) Fletcher now proposes asking Brannigan about his *McIntosh* testimony during his deposition in this case. Brannigan objects on the grounds that such questioning would be unduly prejudicial. Defendants filed a brief supporting Brannigan's position.

The Court agrees with Fletcher that questions about Brannigan's *McIntosh* deposition are permissible. There is little doubt that Brannigan's prior testimony about CCSAO policies and practices is relevant to his work as a CCSAO investigator in this matter. It is true that, relevance aside, courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also PeopleFlo Mfg., Inc. v. Sundyne, LLC*, No. 20 CV 3642, 2022 WL 7102662, at *2 (N.D. Ill. Oct. 12, 2022) (explaining that the good-cause inquiry accounts for "the totality of the circumstances" (internal quotation marks omitted)). But none of these concerns warrant precluding Fletcher's proposed questioning here. Although Brannigan cites the heavy burden of reviewing the entire *McIntosh* deposition in preparation for his deposition in this case, Fletcher has made clear that he plans to reference that testimony only so far as it concerns CCSAO policy and practices, including Brannigan's own practices as a CCSAO investigator. This is not the type of burden that calls for a protective order. In addition, Brannigan does not offer any support for his suggestion that the Court should issue a protective order to prevent Fletcher from impeaching him with his testimony from the *McIntosh* deposition.

Accordingly, although Brannigan's motion to intervene is granted for the purpose of permitting the request, his motion for a protective order is denied. The Court reaches this conclusion with the understanding that Fletcher will not overly rely on the *McIntosh* deposition but will instead use it only as necessary to reference Brannigan's prior testimony about CCSAO policies and practices.

## III.    Conclusion

For the reasons explained above, Respondent Cook County State's Attorney's Office's motion to quash (Dkt. No. 97) is denied. Intervenor Daniel Brannigan's motion to intervene (Dkt. No. 123) is granted, but his motion for a protective order (Dkt. No. 124) is denied.

Dated:  July 8, 2024

                                     Andrea R. Wood
                                     United States District Judge