# EXHIBIT 6

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF ILLINOIS
EASTERN DIVISION
JUDGE ANDREA WOOD
MAGISTRATE JUDGE MARIA VALDEZ
CASE NO. 20-CV-04768

JAMES FLETCHER, JR.,
Plaintiff

V.

JEROME BOGUCKI, ANTHONY NORADIN, RAYMOND SCHALK, ANTHONY WOJCIK, UNKNOWN CITY OF CHICAGO POLICE OFFICERS, AND THE CITY OF CHICAGO,
Defendants

DEPONENT: MICHEAL FLEMING
DATE: JANUARY 18, 2023
REPORTER: KRYSTAL M BARNES

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
2..5

Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFF, JAMES FLETCHER:
Mariah Garcia, Esquire
Loevy & Loevy
311 North Aberdeen
3rd Floor
Chicago, Illinois 60607
Telephone No.: (312) 243-5900
E-mail: mariah@loevy.com
(Appeared via Videoconference)

ON BEHALF OF THE DEFENDANT, CITY OF CHICAGO:
Paul A. Michalik, Esquire
Reiter Burns
311 South Wacker Drive
Suite 5200
Chicago, Illinois 60606
Telephone No.: (312) 878-1294
E-mail: pmichalik@reiterburns.com
(Appeared via Videoconference)

Page 3

APPEARANCES (CONTINUED)

ON BEHALF OF THE DEFENDANT, MICHAEL FLEMING:
Lawrence Hyman, Esquire
Lawrence H. Hyman & Associates
111 West Washington
Suite 1025
Chicago, Illinois 60602
Telephone No.: (312) 346-6766
E-mail: hymanlaw@lhyman.com
(Appeared via Videoconference)

ON BEHALF OF THE DEFENDANTS, JEROME BOGUCKI, ANTHONY NORADIN, RAYMOND SCHALK, ANTHONY WOJCIK:
Brian Stefanich, Esquire
Hale & Monico
53 West Jackson Boulevard
Suite 337
Chicago, Illinois 60604
Telephone No.: (312) 564-4924
E-mail: bstefanich@halemonico.com
(Appeared via Videoconference)

Page 4

INDEX

| | Page |
|---|---|
| PROCEEDINGS | 6 |
| DIRECT EXAMINATION MS. GARCIA | 8 |
| CROSS-EXAMINATION MR. STEFANICH | 36 |
| EXAMINATION MR. MICHALIK | 43 |

EXHIBITS

| Exhibit | Page |
|---|---|
| 1 - Supplementary Report CITY-JF-203-207 | 15 |
| 2 - Supplementary Report CITY-JF-208-209 | 30 |
| 3 - General Progress Report CITY-JF-52 | 32 |

Page 5

STIPULATION

The VIDEO deposition of MICHAEL FLEMING was taken at CHURCHILL REPORTING, 110 NORTH WACKER DRIVE, CHICAGO, ILLINOIS 60606, via videoconference in which all participants attended remotely, on WEDNESDAY the 18TH day of JANUARY 2023 at 10:02 a.m.; said deposition was taken pursuant to the ILLINOIS Rules of Civil Procedure. The oath in the matter was administered remotely as permitted by Illinois Supreme Court Order No. 30370 which amended Civil Rule 206(h).
It is agreed that KRYSTAL M BARNES, being a Notary Public and Digital Reporter for the State of ILLINOIS, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
6..9

Page 6

PROCEEDINGS

THE REPORTER: My name is Krystal Barnes, I'm the online video technician and court reporter today representing Kentuckiana Court Reporters, located at 110 North Wacker Drive, Chicago, Illinois 60606. Today is the 18th day of January 2023, and the time is 10:04 a.m. Central Time.

We are convened by video conference to take the deposition of Detective Michael Fleming in the matter of James Fletcher, Jr., v. Jerome Bogucki, Anthony Nor -- Noradin, Raymond Schalk, Anthony Wojcik, unknown City of Chicago police officers, and the City of Chicago, pending in the United States District Court for the Northern District of Illinois, the Eastern Division, case number 20-CV-04768.

Will everyone but the witness please state your appearance, how you are attending, and the location you are attending from, starting with the plaintiff's counsel?

MS. GARCIA: Plaintiff's counsel, Mariah Garcia. I'm attending virtually. I'm also attending from the Chicagoland area.

MR. MICHALIK: I'm Paul --

MR. STEGANICH: Brian Stefanich --

Page 7

MR. MICHALIK: Oh. Go ahead, Brian.

MR. STEFANICH: Shit. Sorry, Paul. I'm Brian Stefanich, I represent Detectives Bogucki, Schalk, Noradin, and Sergeant Wojcik. I'm attending remotely from Wilmette.

MR. MICHALIK: I'm Paul Michalik on behalf of Defendant City of Chicago. And for purposes of this deposition, Mr. Fleming, I am attending from Fort Myers, Florida.

THE REPORTER: Sir, can you please state your full name for the record?

THE WITNESS: Michael Fleming, F-L-E-M-I-N-G.

THE REPORTER: And all parties agree that this is in fact, Mr. Fleming?

THE WITNESS: Pardon me, ma'am?

THE REPORTER: Oh, I was asking counsel if they all agree that you are who you say you are.

MR. STEFANICH: Agreed.

MS. GARCIA: Plaintiff agreed.

MR. MICHALIK: Agreed.

THE REPORTER: Perfect. Sir --

MR. MICHALIK: And for the record, Mr. Hyman has just joined us.

THE REPORTER: Oh, awesome. Can you raise your right hand for me please, sir? Do you solemnly

Page 8

swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes, I do.

THE REPORTER: Counsel may begin.

DIRECT EXAMINATION

BY MS. GARCIA:

**Q. Hi, Mr. Fleming. Can you please state your name and spell it for the record, please?**

A. Michael Fleming, F-L-E-M-I-N-G.

**Q. Okay. My name is Mariah Garcia, and I'm an attorney for the plaintiff, James Fletcher. Have you been deposed before, sir?**

A. Yes, I think sometime back.

**Q. Okay. Do you recall how many times you've been deposed before?**

A. No, I don't.

**Q. All right. Well, since it's been sometime and we're over Zoom, I'm just going to lay down a couple of ground rules, okay?**

A. Okay, sure.

**Q. Because we have a court reporter who is taking everything down, please keep your answers verbal and audible. So try not to nod or shake your head when you're answering. Answer with a full yes or no or with**

Page 9

**a full statement, okay?**

A. Okay.

**Q. If there's a question you don't understand, please let me know and I will rephrase it. Otherwise, I'm -- when you answer a question, I'm going to assume you understood the question, okay?**

A. Okay.

**Q. Attorneys on this Zoom may object, but unless counsel is instructing you not to answer, you can answer after the objections are stated, okay?**

A. Yes.

**Q. And I don't believe this is going to be a long deposition, but if you need a break at any time, please let me know and we can take a break once I've completed the line of questioning, okay?**

A. Okay.

**Q. All right. And Mr. Fleming, are you currently retired?**

A. Yes, I am.

**Q. Amazing. And you were employed with the Chicago Police Department, correct?**

A. Correct.

**Q. And when did you leave the Chicago Police Department?**

A. In March of '96.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
KENTUCKIANA COURT REPORTERS
502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 10

Q. '96. And once you left, did you seek employment elsewhere or was that when you retired just kind of from any employment?
A. Can you repeat that, ma'am?
Q. Sure. When you left the Chicago Police Department in 1996, did you seek employment elsewhere?
A. Employment? No.
Q. Okay. And when you left the Chicago Police Department in 1996, was that because you were entering retirement?
A. Yes.
Q. And when you retired, what position had you retained in the Chicago Police Department?
A. I was a detective.
Q. Okay. And when did you first join the Chicago Police Department?
A. In March of 1970.
Q. Uh-huh. Six. Okay. And I will go back to Chicago Police Department employment in a moment, but first, I wanted to ask what you did to prepare for today's deposition. So can --
A. I --
Q. -- you please state what you did to prepare?
A. I spoke with Mr. Michalik.
Q. Okay.

Page 11

A. And I reviewed -- I reviewed my case reports.
Q. Okay. And without going into the topic of your conversation with Mr. Michalik, how many times did you speak with him in preparation for today's deposition?
A. In-person, twice.
Q. Okay. And do you recall when the first time you spoke in-person to him was?
A. Well, I -- actually, I take that back. It was one time in-person and one time on the phone.
Q. Okay. And do you recall when that first time you spoke to him on the phone was?
A. A week or two ago.
Q. Okay. And how long did that conversation last?
A. Oh, it could've been half-an-hour.
Q. Okay. And outside of yourself and Mr. Michalik, was there anybody else who were -- was not counsel that was on that line?
A. No.
Q. Okay. And when you spoke to him in-person the second time in preparation for the deposition, do you recall when that occurred?
A. This morning.
Q. Okay. And how long did the conversation this

Page 12

morning last?
A. Oh, maybe a half hour, 45 minutes.
Q. Okay. And you stated that you reviewed your case report in this matter, correct?
A. Correct.
Q. And do you recall what documents were in that case report?
A. As I recall, it's two supplemental case reports.
Q. Okay. And how long did you take to review those case reports?
A. Probably 20 minutes.
Q. Okay. And outside of your counsel who's there with you today and Mr. Michalik, did you discuss this case with anyone else other than your counsel?
A. No, I did not.
Q. Okay. Now, the case reports that we're going to be speaking about today occurred -- were -- so ar -- about an incident that occurred in December of 1990.
So my first question is: What position within the Chicago Police Department did you hold in December of
1990?
A. I was a detective.
Q. Okay. And was there a specific shift that you

Page 13

were assigned as a detective at the time?
A. I was assigned to a shift. I -- I'm really not sure if I was days or afternoons.
Q. Okay. And were you assigned to a specific district or area within the City of Chicago?
A. Area 5, violent crimes.
Q. Okay. And as a detective in area 5 in December of 1990, what were your roles and responsibilities?
A. To investigate violent crimes.
Q. And how would you classify "violent crimes" in this context?
A. In -- did you -- be -- can you be more specific when you say -- regarding this case?
Q. No. As a detective within area 5.
A. Any violent crimes: Murder, assault, rapes, robberies.
Q. Okay. And as a detective, did you work with a partner?
A. At which time?
Q. In December of 1990.
A. No.
Q. Okay. Did you ever work with a partner as a detective?
A. Yes.

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
14..17

Page 14

Q. And what was the process for being either assigned or having a partner as a detective?
A. I do -- I don't know if it was a process. When I went to area 5 homicide, I was assigned with a Detective Lanners who I stayed with until he retired.
Q. Okay. And was that before or after 1990?
A. It was before.
Q. Okay. And if you had wanted another partner after Detective Flanners [sic], would you -- would that be something that you would've been able to have at the time?
A. Sure.
Q. Okay. And why did you decide not to seek another partner after Detective Flanners?
A. It wasn't a question of not seeking, it was a question of which was -- which would be more beneficial. I would team up with other detectives on investigations at my request or their request, and that seemed to work fine.
Q. Okay. Now, let's talk about the date of the incident itself, December 21st of 1990. Mr. Fleming, do you have an independent recollection of the investigation into the homicide of Willie Sorrell on December 21st, 1990?
A. I do not.

Page 15

Q. Okay. And I -- you said that you had reviewed your case file in this matter, correct?
A. That's correct.
Q. Did reviewing this case file refresh your recollection as to the investigation into Mr. Sorrell's homicide investigation?
A. It did not.
Q. Okay. Well, I'm going to pull up one of the supplemental reports, and let's just go through it and see if there's anything that jumps out at you once we do. One moment, I need to share my screen. For the record, this is Exhibit 1 and it's Bates CITY-JF 203 to 207. And the Bates may not be exactly what you may have reviewed, Mr. Fleming. But first, can you see this exhibit that I'm sharing on the screen?
(EXHIBIT 1 MARKED FOR IDENTIFICATION)
A. Yes, I can.
BY MS. GARCIA:
Q. Okay. And I'm going to scroll through it just quickly, but I will go slowly as we go through it just so that I can ask whether this is the -- one of the case reports that you reviewed prior to the deposition.
A. It appears to be.
Q. Okay. And one thing I didn't ask at the beginning is: Do you have any papers in front of you?

Page 16

For example, do you have this case report in front of you?
MR. MICHALIK: Mariah, I have a version of that case report. Would you like me to give it to Mr. Fleming?
MS. GARCIA: Sure, I just think it might be easier for him. I'm happy to keep it up on the screen, and I will for purposes of the recording. But, you know, I know it's sometimes hard to read on a laptop screen.
MR. MICHALIK: It is. And just to be clear, this is the sup report that's dated December 21, 1990?
MS. GARCIA: Yes.
MR. MICHALIK: Okay. Yes, he's got a copy in front of him.
BY MS. GARCIA:
Q. Okay. So Mr. Fleming, on Page 1 of the sup lepor -- the sup report, it says, "Michael Fleming" at the bottom of the page. Do you see that?
A. Yes, I do.
Q. And there's a signature below it. Is that your signature?
A. Yes, it is.
Q. Okay. And as you stated before, upon review,

Page 17

this did not refresh recollection as to the investigation into Willie Sorrell's homicide, correct?
A. That's correct.
Q. Okay. Now, aside of that, do you have any reason to disbelieve the information that is contained in this report?
A. No, I don't.
Q. Okay, so let's go first to Page 3. And there's a paragraph that says "PERSONNEL ASSIGNED," and then there's a list of detectives and sergeants and other Chicago Police Department personnel. Do you see that on Page 3?
A. Yes, I do.
Q. Okay. Do you have any reason to believe -- actually, strike that. Does this paragraph, for a given definition of paragraph, refresh your recollection as to who was on the scene with you on December 21st, 1990?
A. It does, except Detective Salvi. I don't think she was on the scene.
Q. Okay. And can you expand on that for me?
A. According to my report, Detective Salvi covered the hospital --
Q. Okay.
A. -- where the body was -- where the -- the victim was taken.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
18..21

Page 18

Q. Okay. And outside of Detective Salvi, is there any other personnel that you recall being there that is not listed in this paragraph?
A. No.
Q. Okay. And within the report, there were several witnesses that are specified. Namely, Edward Cooper, Sheene Friend, Emmett Wade, and Terry Rogers. Do you recall speaking to anybody outside of Edward Cooper, Sheene Friend, Emmett Wade, and Terry Rogers on December 21st, 1990, as far as witnesses go?
A. No.
Q. Okay. And do you recall speaking with Edward Cooper at all?
A. No.
Q. Okay. And when was the last time that you read this police report? Because I don't want to be asking you questions if you haven't had a chance to review it any time recently.
A. I looked at it briefly this morning.
Q. Okay. And just for the purposes of being as thorough and accurate as possible, would you please just review this police report for me one more time and then let me know when you're done?
A. You want me to read the entire report?
Q. Yes, please.

Page 19

A. Yes. Okay.
Q. Okay. And so now that you had a chance to review, does this refresh your recollection at all as to your conversation with Edward Cooper on December 21st, 1990?
A. No, it does not.
Q. Okay. Now, that you've had a chance to review this report, does this at all refresh your recollection as to the conversation that you had with Sheene Friend on December 21st, 1990?
A. No, it does not.
Q. Okay. And after you've had a chance to review, does this report at all refresh your recollection as to the conversation you had with Emmett Wade on December 21st, 1990?
A. No, it does not.
Q. Okay. And after having a chance to review, does this at all refresh your recollection as to the conversation you had with Terry Rogers on December 21st, 1990?
A. No, it does not.
Q. Okay. After -- sorry, strike that. I wanted to go to the last page of the report, Page 5. Where the paragraph at the bottom that is about your -- in conversation with Terry Rogers.

Page 20

A. Your Page 6, you mean, right?
Q. Page 6, the -- is that the -- I have it as Page --
A. Oh. Oh, Page 5. Okay, I got you. Yeah, I'm sorry.
Q. Yes, don't worry about it.
A. I'm not.
Q. I know, and it's -- we're looking at two different things right now, but it's the paragraph that --
A. Yes, I have it.
Q. -- details the Terry Rogers conversation.
A. Okay.
Q. Now, I'm not going to ask you if you recall anything else outside of the report since you've stated you do not. But I wanted to ask you about this particular sentence where it stated, "ROGERS viewed photos in the area 5 V/Cs with" -- negative -- "results." Do you see that?
A. Yes.
Q. Okay. Do you recall showing or having Mr. Rogers view photos in area 5?
A. No, I do not.
Q. Okay. And I wanted to ask a little bit more of a procedural question. In an instance where someone

Page 21

like Mr. Rogers would view photos in area 5, what was the procedure for putting those photos together?
A. I -- I would have to assume be it -- applying to this case, that he was -- he handed several large binders of photos --
Q. Okay. And when it says --
A. -- to review.
Q. Oh, sorry. I didn't mean to cut you off, Mr. Fleming. Where it says -- what does "V/C" in this context mean?
A. Pardon me?
Q. What does "V/C" in this context mean? So it says, "ROGERS viewed photos in area 5 V/Cs with" - "negative" -- "results." What does "V/C" mean?
A. Violent crimes.
Q. Okay. And according -- sorry, strike that. Per your time within Chicago Police Department as a detective, when witnesses viewed photos in area 5, was there a specific area where that -- they viewed in the building itself, or could it be somewhere else that they viewed these photos?
A. It -- it's really too general of a question. It -- it could be in the photo room, it could be in the squad room, it could be in an interview room, anywhere.
Q. Okay. And I know that at some point --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
22..25

Page 22

actually, strike that. Are you familiar with the practice of showing witnesses photo arrays?
A. Yes.
Q. Okay. And was that a practice that was utilized by the Chicago Police Department in 1990?
A. I would think so, yes.
Q. Okay. So is it possible that Mr. Rogers was viewing a photo array in area 5 on December 21st, 1990?
MR. MICHALIK: Object to the form of the question. Go ahead.
MS. GARCIA: You can --
THE WITNESS: You'd -- you'd have to be more specific as far as what's a photo array -- array.
BY MS. GARCIA:
Q. Sure. For -- in my understanding, a photo array is different photos put in one, you know, sheet of paper, one laminated piece of paper versus what you were describing before of having binders that you might show to someone. Does that make sense?
A. Yes. Yes.
Q. And so do you recall, one way or the other in this instance, whether it was a photo array that was utilized or the showing of pictures in binders?
A. I don't recall.
Q. Okay. And as a detective, when you had a

Page 23

witness who was going to view a photo, would you compile the pictures yourself or was there someone else that had that responsibility?
MR. MICHALIK: Object to the form of the question. Incomplete hypothetical. You can answer, if you can.
THE WITNESS: It's -- it -- it's too general to -- to say there. I -- I can't answer you, so I'd have to say I don't recall any procedure like you're mentioning.
BY MS. GARCIA:
Q. So do you recall ever compiling photos yourself to show witnesses when investigating a violent crime?
A. I don't recall specifically, but I probably did, yes.
Q. Okay. And do you recall having other people compile photos for you when you wanted to show a witness photographs of a potential suspect?
A. I don't recall.
Q. Okay. And so you're unsure of whether -- actually, strike that. When these photo arrays were compiled -- as you said, you recalled compiling it at least once, what source or database did you pull photos from when compiling photos to show a witness?

Page 24

MR. MICHALIK: Object to form. Foundation.
THE WITNESS: It -- it's too general of a question. If you could be more specific, I'd -- I'd certainly try to answer it.
BY MS. GARCIA:
Q. Sure. You can agree -- actually, strike that. In this instance, Rogers viewed photos in area 5, correct?
A. According to my report, that's correct.
Q. Okay. And in instances where you showed witnesses photographs when investigating a violent crime, what source or sources did you utilize to compile those photographs?
A. Photographs that were available.
Q. Photographs that were what? Sorry, I -- I -- I didn't hear the last part.
A. Available.
Q. And what does "available" mean in this context?
A. That -- that were present -- at -- at that time, that were present in the -- in the area.
Q. Okay. And was that area 5 you're talking about?
A. Yes. Yes.
Q. And was there some sort of database or -- and

Page 25

I understand this is, you know, in 1990, when computers were not as utilized as they are now. But when you say "available," do you mean in -- you know, you're pulling from a database or you're pulling from some sort of hard copy in the building itself?
A. These -- these -- these photos, they're hard copies. They were obtained from penitentiary releases, recent arrests. They were a -- you know, official photographs put in big binders and viewed by -- now, in -- in this case, there was no suspects even suspected, so I'm sure -- I feel relatively sure that he would've looked at the big binders since I had no idea who the offenders were, nor did he.
Q. Okay. And did the big binders -- actually, strike that. Were these -- the binders standard across -- actually, strike that again. In instances where you didn't have any sort of lead as to who you may be investigating, were the binders that you utilized standard from witness to witness? In that, I mean, would it have been -- if you had someone else who came in the same day as Mr. Rogers to view something completely unrelated, but still a violent crime and you had no lead on that investigative matter, would you have shown that person the same binders that Mr. Rogers viewed in area 5?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
KENTUCKIANA COURT REPORTERS
502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
26..29

Page 26

A. No.
Q. Okay. So was there some sort of sorting mechanism for which you would decide which binders to show which suspects in the instance where you didn't have a distinct lead you were going off of?
A. I would think, age.
Q. Okay.
A. Race.
Q. Okay.
A. Sex.
Q. Okay.
A. And possible physical description.
Q. Okay. And in instances where you showed a witness binders, would the pictures that you showed that witness be memorialized in any form?
A. If there was identification, yes.
Q. Okay. And would there -- strike that. Per your time as a detective within Chicago Police Department, when you were showing witnesses binders of photographs, would you ever demarcate which photographs you had shown the witness, even if there wasn't an identification?
A. In the binders?
Q. Yes.
A. No.

Page 27

Q. Okay. I wanted to go just with a sentence above the sentence we just spent a long time on, which is, "While" -- they're -- "running he" -- he being Terry Rogers -- "heard one of the men call" -- to -- "the other to hurry up and he called him by the name FLETCHER." Do you see that?
A. Just a minute, I'm looking.
Q. Of course.
A. Yes. Yes, I di -- I found it.
Q. Okay. And do you recall whether -- when you were showing Mr. Rogers the photos in area 5, whether you looked for the name "Fletcher" when compiling the photos to show Mr. Rogers?
MR. MICHALIK: Object to the form of the question. That mischaracterizes his testimony regarding the photos.
THE WITNESS: Can you repeat that, ma'am?
BY MS. GARCIA:
Q. Sure. When -- do you recall, in showing Mr. Rogers the photos in area 5, whether the photos themselves were sorted by any persons who had the name of Fletcher, whether first or last?
A. No.
Q. Okay. And if you had a name, is that a method for which you would sort photos to show witnesses when

Page 28

investigating a violent crime?
MR. MICHALIK: Object to the form. Incomplete hypothetical.
THE WITNESS: I would say normally, no.
BY MS. GARCIA:
Q. Okay. And --
THE WITNESS: And in this case, no.
BY MS. GARCIA:
Q. Sure. Do you recall ever following up to investigate whether or not there was someone named Fletcher who was involved in December 21st, 1990?
A. No, I don't.
Q. Okay. Do you recall whether or not another Chicago Police Department officer followed up on whether or not there was a personed [sic] named Fletcher who was involved in the homicide of Willie Sorrell?
A. No, I do not.
Q. Okay. And then I'm going to have you go up two more sentences in the same paragraph. Sorry I'm going in reverse, but I think it makes more sense. Sequentially, that starts with, "He stated that he got a good look at one of the men and remember seeing him in the area of Parkside and Madison off and on for the past month. He stated that" -- that -- "man is a narcotics user." Do you see that?

Page 29

A. Yes.
Q. Okay. Do you recall whether or not you asked him the name of the man who he recalled seeing in the area of Parkside and Madison?
A. I do not.
Q. Okay. Do you recall following up and investigating persons within that area to see whether or not they may have been involved in the homicide of Willie Sorrell?
A. No.
Q. Okay. Do you recall any other Chicago Police Department officers following up on Mr. Rogers' claim that he had seen one of the men in Parkside and Madison in the past month?
A. No, I do not.
Q. Okay. And do you recall whether he stated that the name of the person who he had saw in the area of Parkside and Madison was Fletcher?
A. Say that again, please?
Q. Do you recall whether Mr. Rogers stated that the person he had seen in the area of Parkside and Madison was named Fletcher, either first or last name?
A. No, I do not.
Q. Okay. If Mr. Rogers had stated that he knew the name of the person who was in the area of Parkside

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
KENTUCKIANA COURT REPORTERS
502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
30..33

Page 30

and Madison when you interviewed him, would you have included that in this report?
A. Yes, I would.
Q. Okay. After -- and I understand you don't have an independent recollection of this matter, so I'm not trying to fish or anything. But after the investigation into Willie Sorrell's murder on December 21st, 1990, did you have any other -- did you -- sorry, strike that. Did you work on this case after this initial investigation on December 21st, 1990?
A. Yes, I did.
Q. Okay. And do you have an independent recollection of the work that you did on this case?
A. No, I don't.
Q. Okay.
A. According to my report is all I can do.
Q. Okay. And so I think that leads me into our second exhibit here, which is the supplemental report also dated -- actually, I believe it was dated December 22nd, 1990.
(EXHIBIT 2 MARKED FOR IDENTIFICATION)
A. Yes, that's right.
BY MS. GARCIA:
Q. And for the record, this is Exhibit 2. It is Bates range 208 to 209. That's CITY-JF 208 to 209. And

Page 31

Mr. Fleming, is this the other case report that you reviewed in preparation for your deposition?
A. Yes.
Q. Okay. And on Page 1, it has your name at the bottom of the page. Do you see that?
A. That's correct.
Q. And there's a signature underneath that name. Is that your signature?
A. That is my signature.
Q. Okay. And after a review of this document -- actually, strike that. Is this one of the documents that you reviewed this morning?
A. Yes.
Q. Okay. And after a review of this document, do you have any reason to believe that it is not truthful and accurate?
A. I do not.
Q. Okay. And do you have an independent recollection of the events within this report that is dated December 26th, 1990?
A. I do not.
Q. Okay. And in the report, it details placing Mr. Cooper under arrest for the aggravated assault of Emmett Wade and gun charges. Do you recall placing Mr. Cooper under arrest on December 22nd, 1990?

Page 32

A. I do not.
Q. Okay. And after arresting Mr. Cooper on December 22nd, 1990, did you work or investigate any further into either the homicide of Mr. Sorrell or the arrest of Mr. Cooper?
A. I don't recall doing that.
Q. Okay. I'm going to pull up Exhibit 3, and it is Bates CITY-JF 52. It's only one page. And can you see that on your screen, Mr. Fleming?
(EXHIBIT 3 MARKED FOR IDENTIFICATION)
A. Yes, I see it.
BY MS. GARCIA:
Q. Okay. It's dated March 19th, '95. I'll give you a moment to review this and just let me know when you're done, okay?
A. Okay. Okay.
Q. Okay. Did you have any involvement in the investigation detailed on this page by Detective Bogucki and Detective Schalk?
A. No.
Q. Okay. Did either Detective Bogucki or Detective Schalk reach out to you in 1995 to ask you about your involvement in the investigation in 1990?
A. Not that I recall.
Q. Okay. And do you know of any other officers

Page 33

outside of Bogucki and Schalk, as you can see in this report, who did further investigation into the homicide of Mr. Sorrell on December 21st, 1990?
A. No, I do not.
Q. Did you have any involvement in this case when Detectives Bogucki and Schalk began reinvestigating it in 1995?
A. Not that I recall.
Q. Okay. And I will -- strike that. Do you recall being involved in this case in any other shape or form after 1995?
A. I do not.
Q. Okay. Do you recall being involved in this case when it was reinvestigated in 2002?
A. I do not.
Q. Okay. Do you recall any involvement into the arrest of Terry Rogers on February 11th, 2002?
A. I do not.
Q. Okay. And outside of Bogucki and Schalk, did you ever speak to Anthony Noradin about the investigation into the homicide of Willie Sorrell on December 21st, 1990?
A. No.
MR. MICHALIK: All right, let me just object to the form of that question. It suggests that he

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
34..37

Page 34

might have talked to Bogucki and Schalk. That was not his testimony. You might want to rephrase.
BY MS. GARCIA:
Q. Oh. Oh, my apologies. I -- you had already stated you didn't talk with them, so I will rephrase that. Did you -- and maybe I'll just do it this way: Did you speak with Detective Bogucki at all about the Willie Sorrell investigation?
A. Not that I recall.
Q. Okay. Do you recall speaking with Detective Schalk at all about the Willie Sorrell investigation?
A. Not that I recall.
Q. Okay. Do you recall speaking with -- I believe he was detective, but he may have just been Officer Noradin, about the Willie Sorrell investigation?
A. Not that I recall.
Q. Okay. And do you recall speaking with Anthony Wojcik about the Willie Sorrell investigation?
A. Not that I recall.
Q. Okay. Do you recall ever investigating a person named James Fletcher in connection with the Willie Sorrell investigation?
A. Say that again?
Q. Do you recall ever investigating a person named James Fletcher in connection with the Willie

Page 35

Sorrell homicide investigation?
A. Not that I recall.
Q. Okay. And do you recall ever investigating a person named Arnold Dixon during the investigation into Willie Sorrell's homicide?
A. Not that I recall.
Q. Okay. And do you recall speaking with any of the witnesses we talked about earlier, those being Edward Cooper, Emmett Wade, Sheened [sic] Friend, or Terry Rogers after December of 1990?
A. Not that I recall.
MS. GARCIA: Okay. I don't have any further questions.
MR. STEFANICH: Okay, I'm going to have some questions. Mariah, sorry. Could you actually leave Exhibit number 1 up on the screen?
MS. GARCIA: Yep.
MR. STEFANICH: Thanks.
MS. GARCIA: One second. I think I actually can give you the ability to actually control this. One second. All right, Brian. You should be able to control the scroll now.
MR. STEFANICH: Oops.
MS. GARCIA: Uh-huh.
MR. STEFANICH: All right, let's see if I can

Page 36

do this.
MS. GARCIA: Here, there you go.
MR. STEFANICH: Yeah. Thank you.
CROSS-EXAMINATION
BY MR. STEFANICH:
Q. Detective Fleming, my name's Brian Stefanich. I represent Detectives Bogucki, Schalk, Noradin, and Sergeant Wojcik in this case. I have a few questions on your sup report, which we've marked as Exhibit number 1 in this deposition. This report is dated December 21st, 1990; is that correct?
A. 21st? Yes, that's correct.
Q. Okay. And that was the day of the robbery; is that correct?
A. That's correct.
Q. Okay. And when you wrote this report, you remembered what the witnesses had told you; is that correct?
MS. GARCIA: Object to form. Sorry. Go ahead and answer, Mr. Fleming.
THE WITNESS: Say that again?
BY MR. STEFANICH:
Q. Sure. When you wrote this report, you had knowledge of what the four witnesses had told you; is that correct?

Page 37

A. That's correct.
Q. Okay. And I believe you stated that you had no reason to believe that this report is inaccurate; is that correct?
A. That this report is what?
Q. Sure. You ha -- let me rephrase. This report is accurate. You accurately reflected what the witnesses told you, correct?
A. That's correct, absolutely.
Q. I want to first go down to Terry Rogers. You interviewed him at area 5?
A. That's correct.
Q. Okay. And during the interview with Terry --
A. According to my report, that's correct.
Q. Sure. And during the interview with Terry Rogers, he gave you a name of -- gave you a potential name of one of the offenders, correct?
A. He gave me a name -- according to my report, he gave me a name of one of the offenders called the other offender.
Q. Okay. And what was that name?
A. Fletcher.
Q. Can you just read for the record what -- according to your report, what Terry Rogers told you during your interview with him?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
KENTUCKIANA COURT REPORTERS
502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A. Sure. Terry Rogers "stated he was standing in a door-way at 5611" - "West" -- "Madison and observed his Cousin COOPER exiting uncle Remis's restaurant at 5611" - "West" -- "Madison. He exchanged a few words with COOPER and then COOPER returned to his truck. He then looked away and a few minutes later he saw two offenders exit COOPER'S truck in a 'hurry'. He then heard shots and knew that" -- that -- that -- "something had went down in COOPER'S truck. He then ran behind COOPER who was running after the two offenders. He feels that COOPER fired about 4 shots at the" -- two -- "men. He stated that he got a look at one of the men and remembers seeing him in the area of Parkside and Madison off and on for the past month. He stated that the man is a narcotic user. While they were running he heard one of the men call the other to hurry up and he called him by the name FLETCHER. ROGERS viewed photos at area 5" -- violent crimes -- "area 5 V/Cs with" -- negative -- "results. He stated that COOPER had a chrome handgun but when they got to" -- the -- "Parkside in Washington he did not go back to the scene with COOPER and therefore does not know what COOPER did with his gun. He stated that he can identify at least one of the offenders if seen again."

**Q. Okay, I want to do the same thing with two**

**other witnesses. The first is Edwad -- Edward Cooper. On Page 4 of your report, the top of Page 4, can you read for the record, according to your report, what Edward Cooper told you when you interviewed him?**

A. Yes, sir. Edward Cooper "stated that he just made a delivery at Remis's restaurant at" -- 57 - "5611 West Madison Street and that he had double parked his Holsum bread truck at this location. While standing in his step van he was approached by a friend of his" -- he was approached by a friend of his - "last name is Friend Sheene who stepped in to the van to talk. At this time he was approached by the" -- offender or -- "offenders who displayed handguns and told him, 'GIVE ME YOUR MONEY, ITS NOT YOURS, IT BELONGS TO THE COMPANY, YOU DON'T WANT TO GET KILLED FOR THE COMPANY MONEY.' At this time he gave them approximately $30.00 from his left pants pocket. Offender #1 then searched him and took approximately 300 from his right" front pocket -- "pants pocket. He stated that FRIEND then ran from the truck and the offenders also ran. He stated that he then ran after the offenders who were shooting at him. While chasing the offenders he met a cousin" -- Terry -- "ROGERS Terry who told him to be careful as he knew them and they" -- were -- and they "will shoot him. He goes on to say that ROGERS told him that he will help COOPER

find the offenders later. COOPER and ROGERS observed the offenders enter a building at 5657 West Washington Boulevard. COOPER and ROGERS observed the offenders entered the building at 5657 West Washington Boulevard. They then returned to the scene and directed the police back to 5657 West Washington Boulevard. COOPER denies having a gun and agreed to a GSR test area 5 violent crimes. The test samples were obtained by the Crime Lab personnel."

**Q. Okay. And then finally, the next summary of the witness interview on this page is Sheene Friend. Can you, for the record, read according to your report what Ms. Friend told you when you interviewed her?**

A. Yes. She "stated in summary but not verbatim, that she was washing her clothes at the laundromat at 5640 West Madison and observed COOPER in his bread truck. She needed $3 to purchase bleach and was talking to COOPER just inside his step van. She gave the same account of the offenders entering the van and robbing COOPER. She stated she heard approximately 6 shots and felt that it was CROSS FIRE between the offenders and COOPER. She stated that she observed COOPER and ROGERS running after the robbery offenders and heard shots but did not see COOPER with a gun. She states" -- that -- "that she can identify the offenders if she sees them

again and agreed to view photos in area 5 V/CS."

**Q. Okay. And then according to your report, it looks like you interviewed Edward Cooper again; is that correct?**

A. That's correct.

**Q. Okay. And according to your report, what did Mr. Cooper tell you during this second interview?**

A. Okay. Mr. Cooper, "Upon further questioning and after being advised of his rights again by Detective Fleming stated he was on probation for possession of cocaine and was worried about losing his job, but now" -- he -- "wanted to tell the truth. He stated in summary but not verbatim that he did have a 38" -- caliber, chrome in color -- 30 [sic] "caliber revolver chrome in color which he carried in his bread truck for protection. After the robbery he exited his truck with his gun and one of the offenders fired at him. He fired at the offenders while standing next to his truck. He then went" -- to the re -- "to the rear of his truck and fired two more shots at the offenders who were running westbound in the middle of Madison Street. He then ran after the offenders Northbound on Parkside and fired one or two more shots at the offenders on Parkside Just North of Madison Street". He's -- "He is not sure but feels that he did not hit the offenders with any of his

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
42..45

Page 42

shots. He was not aware that he hit" -- vic -- "vehicle number 3's windshield. He stated that he last saw the offenders" -- I'm having a little trouble lining this up, but -- the offenders "near the building at Washington and Parkside and felt that they ran into the building at 5657 West Washington." One of his -- "On his way back he put the gun under a bag between two dumpsters in the alley at approximately 5680 West Madison and told a male, black, approximate age 50 known to him as WILLIE who is an employee of" -- the -- "GOLD STAR FOODS at 5680 West Madison Street to get the gun and hold it for him. He stated that WILLIE told him he would get the gun and hold it for him at the store. He stated that he does not know anything more about WILLIE but will accompany the reporting detective on 22 December 90 and locate WILLIE at the GOLD STAR FOODS and attempt to recover" - - the -- "handgun."

**Q. Thank you, Detective. Then, the next day, did -- according to your re -- second supplemental report, did Edward Cooper accompany you to Gold Star Foods to recover his handgun?**

A. According to my report, he did.

MR. STEFANICH: Okay. That's all the -- that's all the questions I have for you, Detective. Thank you.

Page 43

MS. GARCIA: I don't have any other questions. So Paul, unless you do, I think we can end the deposition.

MR. MICHALIK: I do. I just have -- just a little bit of a follow-up.

MS. GARCIA: Okay.

EXAMINATION

BY MR. MICHALIK:

**Q. Mr. Fleming, you recall you were being asked about photos and binders at the area 5. Do you recall those questions?**

A. Yes.

**Q. All right, how many photos were in these binders?**

A. Probably a hundred in each binder.

**Q. Now, were they referred to as mug books?**

A. Yeah.

**Q. All right. Did you compile the photographs that were included in these mug books?**

A. No. I did not.

**Q. They were just available for any detective to use at area 5?**

A. Uh-huh.

MR. MICHALIK: No further questions, thank you.

MR. STEFANICH: Nothing else from me.

Page 44

MS. GARCIA: Nothing else on my end.

MR. MICHALIK: All right, we will reserve signature. Thank you.

THE REPORTER: Absolutely. Your e-mail address is okay for that?

MR. MICHALIK: Yes.

THE REPORTER: Perfect. Any other orders?

MS. GARCIA: No. But Paul -- off the record.

THE REPORTER: Oh, give me one second. I'll get us off the record.

(DEPOSITION CONCLUDED AT 11:08 A.M. CT)

Page 45

CERTIFICATE OF DIGITAL REPORTER

STATE OF ILLINOIS

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Stipulation page hereof, by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded digitally by me and then reduced to typewritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel and that I am in no way interested financially, directly or indirectly, in this action.

KRYSTAL M BARNES
Official Seal
Notary Public - State of Illinois
My Commission Expires Feb 18, 2026

KRYSTAL M BARNES,
DIGITAL REPORTER / NOTARY
MY COMMISSION EXPIRES: 02/18/2026
SUBMITTED ON: 01/10/2024

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
46

**Exhibits**

**Exhibit1_ Fleming** 15:12,16 35:16 36:9
**Exhibit2_ Fleming** 30:21,24
**Exhibit3_ Fleming** 32:7, 10

**#**

**#1** 39:17

**$**

**$3** 40:17
**$30.00** 39:16

**1**

**1** 15:12,16 16:18 31:4 35:16 36:9
**10:04** 6:7
**110** 6:5
**11:08** 44:11
**11th** 33:17
**18th** 6:6
**1970** 10:17
**1990** 12:19,23 13:8,21 14:6, 21,24 16:13 17:17 18:10 19:5,10,15,20 22:5,8 25:1 28:11 30:8,10, 20 31:20,25 32:3,23 33:3,22 35:10 36:11
**1995** 32:22 33:7,11
**1996** 10:6,9
**19th** 32:13

**2**

**2** 30:21,24
**20** 12:12
**20-CV-04768** 6:16
**2002** 33:14,17
**2023** 6:6
**203** 15:12
**207** 15:13
**208** 30:25
**209** 30:25
**21** 16:12
**21st** 14:21,24 17:17 18:10 19:4,10,15,19 22:8 28:11 30:8,10 33:3,22 36:10,12
**22** 42:15
**22nd** 30:20 31:25 32:3
**26th** 31:20

**3**

**3** 17:8,12 32:7, 10
**3's** 42:2
**30** 41:14
**300** 39:18
**38** 41:13

**4**

**4** 38:11 39:2
**45** 12:2

**5**

**5** 13:6,7,15 14:4 19:23 20:4,18, 22 21:1,13,18 22:8 24:7,22 25:25 27:11,20 37:11 38:18 40:7 41:1 43:10,22
**50** 42:9
**52** 32:8
**5611** 38:2,4 39:6
**5640** 40:16
**5657** 40:2,4,6 42:6
**5680** 42:8,11
**57** 39:6

**6**

**6** 20:1,2 40:20
**60606** 6:5

**9**

**90** 42:16
**95** 32:13
**96** 9:25 10:1

**A**

**a.m.** 6:7 44:11
**ability** 35:20
**absolutely** 37:9 44:4
**accompany** 42:15,20
**account** 40:19
**accurate** 18:21 31:16 37:7
**accurately** 37:7
**address** 44:4
**advised** 41:9
**affirm** 8:1
**afternoons** 13:3
**age** 26:6 42:9
**aggravated** 31:23
**agree** 7:13,17 24:6
**agreed** 7:18, 19,20 40:7 41:1
**ahead** 7:1 22:10 36:19
**alley** 42:8
**Amazing** 9:20
**answering** 8:25
**answers** 8:23
**Anthony** 6:11 33:20 34:17
**apologies** 34:4
**appearance** 6:18
**appears** 15:23
**applying** 21:3
**approached** 39:9,10,12
**approximate** 42:9
**approximately** 39:16,18 40:20 42:8
**ar** 12:18
**area** 6:23 13:5, 6,7,15 14:4 20:18,22 21:1, 13,18,19 22:8 24:7,21,22 25:25 27:11,20 28:23 29:4,7, 17,21,25 37:11 38:13,18 40:7 41:1 43:10,22
**Arnold** 35:4
**array** 22:8,13, 16,22
**arrays** 22:2 23:22
**arrest** 31:23,25 32:5 33:17
**arresting** 32:2
**arrests** 25:8
**assault** 13:16 31:23
**assigned** 13:1, 2,4 14:2,4 17:9
**assume** 9:5 21:3
**attempt** 42:17
**attending** 6:18,19,22,23 7:4,8
**attorney** 8:12
**Attorneys** 9:8
**audible** 8:24
**aware** 42:1
**awesome** 7:24

**B**

**back** 8:14 10:18 11:9 38:21 40:6 42:7
**bag** 42:7
**Barnes** 6:2
**Bates** 15:12,13 30:25 32:8
**began** 33:6
**begin** 8:5
**beginning** 15:25
**behalf** 7:6
**BELONGS** 39:14
**beneficial**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023

14:16
**big** 25:9,12,14
**binder** 43:15
**binders** 21:5 22:18,23 25:9, 12,14,15,18,24 26:3,14,19,23 43:10,14
**bit** 20:24 43:5
**black** 42:9
**bleach** 40:17
**body** 17:24
**Bogucki** 6:10 7:3 32:18,21 33:1,6,19 34:1, 7 36:7
**books** 43:16, 19
**bottom** 16:20 19:24 31:5
**Boulevard** 40:3,4,6
**bread** 39:8 40:16 41:15
**break** 9:13,14
**Brian** 6:25 7:1, 2 35:21 36:6
**briefly** 18:19
**building** 21:20 25:5 40:2,4 42:4,6

**C**

**caliber** 41:13, 14
**call** 27:4 38:16
**called** 27:5 37:19 38:17
**careful** 39:23
**carried** 41:15
**case** 6:15 11:1 12:4,7,8,11,15, 17 13:14 15:2, 4,21 16:1,4 21:4 25:10 28:7 30:9,13 31:1 33:5,10,14 36:8
**Central** 6:7
**chance** 18:17 19:2,7,12,17
**charges** 31:24
**chasing** 39:22
**Chicago** 6:5, 12,13 7:7 9:21, 23 10:5,8,13, 15,19 12:21 13:5 17:11 21:17 22:5 26:18 28:14 29:11
**Chicagoland** 6:23
**chrome** 38:20 41:14
**City** 6:12,13 7:7 13:5
**CITY-JF** 15:12 30:25 32:8
**claim** 29:12
**classify** 13:11
**clear** 16:11
**clothes** 40:15
**cocaine** 41:11
**color** 41:14,15
**COMPANY** 39:14,15
**compile** 23:1, 18 24:12 43:18
**compiled** 23:23
**compiling** 23:12,23,25 27:12
**completed** 9:14
**completely** 25:22
**computers** 25:1
**CONCLUDED** 44:11
**conference** 6:8
**connection** 34:21,25
**contained** 17:5
**context** 13:12 21:10,12 24:19
**control** 35:20, 22
**convened** 6:8
**conversation** 11:3,14,25 19:4,9,14,19,25 20:12
**Cooper** 18:7,8, 13 19:4 31:23, 25 32:2,5 35:9 38:3,5,10,11, 19,22 39:1,4,5, 25 40:1,3,6,16, 18,20,22,24 41:3,7,8 42:20
**COOPER'S** 38:7,9
**copies** 25:7
**copy** 16:15 25:5
**correct** 9:21,22 12:4,5 15:2,3 17:2,3 24:8,9 31:6 36:11,12, 14,15,18,25 37:1,4,8,9,12, 14,17 41:4,5
**could've** 11:16
**counsel** 6:20, 21 7:16 8:5 9:9 11:19 12:13,15
**couple** 8:19
**court** 6:3,4,14 8:22
**cousin** 38:3 39:22
**covered** 17:22
**crime** 23:14 24:12 25:22 28:1 40:8
**crimes** 13:6, 10,11,16 21:15 38:18 40:8
**CROSS** 40:21
**CROSS-EXAMINATION** 36:4
**CT** 44:11
**cut** 21:8

**D**

**database** 23:24 24:25 25:4
**date** 14:20
**dated** 16:12 30:19 31:20 32:13 36:10
**day** 6:6 25:21 36:13 42:18
**days** 13:3
**December** 12:19,21 13:8, 21 14:21,24 16:12 17:17 18:9 19:4,10, 15,19 22:8 28:11 30:7,10, 19 31:20,25 32:3 33:3,22 35:10 36:10 42:16
**decide** 14:13 26:3
**Defendant** 7:7
**definition** 17:16
**delivery** 39:6
**demarcate** 26:20
**denies** 40:6
**Department** 9:21,24 10:6,9, 13,16,19 12:21 17:11 21:17 22:5 26:19 28:14 29:12
**deposed** 8:13, 16
**deposition** 6:9 7:8 9:13 10:21 11:5,22 15:22 31:2 36:10 43:3 44:11
**describing** 22:18
**description** 26:12
**detailed** 32:18
**details** 20:12 31:22
**detective** 6:9 10:14 12:24 13:1,7,15,18,24 14:2,5,9,14 17:18,21 18:1 21:18 22:25 26:18 32:18,19, 21,22 34:7,10, 14 36:6 41:9 42:15,18,24 43:21
**detectives** 7:3 14:17 17:10 33:6 36:7
**di** 27:9
**DIRECT** 8:6
**directed** 40:5
**disbelieve** 17:5
**discuss** 12:14
**displayed** 39:13
**distinct** 26:5

KENTUCKIANA
COURT REPORTERS

**district** 6:14 13:5
**Division** 6:15
**Dixon** 35:4
**document** 31:10,14
**documents** 12:6 31:11
**door-way** 38:2
**double** 39:7
**Drive** 6:5
**dumpsters** 42:8

E

**e-mail** 44:4
**earlier** 35:8
**easier** 16:7
**Eastern** 6:15
**Edwad** 39:1
**Edward** 18:6,8, 12 19:4 35:9 39:1,4,5 41:3 42:20
**Emmett** 18:7,9 19:14 31:24 35:9
**employed** 9:20
**employee** 42:10
**employment** 10:2,3,6,7,19
**end** 43:2 44:1
**enter** 40:2
**entered** 40:4
**entering** 10:9 40:19
**entire** 18:24
**events** 31:19
**EXAMINATION** 8:6 43:7
**exchanged** 38:4
**exhibit** 15:12, 15,16 30:18,21, 24 32:7,10 35:16 36:9
**exit** 38:7
**exited** 41:16
**exiting** 38:3
**expand** 17:20

F

**F-L-E-M-I-N-G** 7:12 8:10
**fact** 7:14
**familiar** 22:1
**February** 33:17
**feel** 25:11
**feels** 38:11 41:25
**felt** 40:21 42:5
**file** 15:2,4
**finally** 40:10
**find** 40:1
**fine** 14:19
**FIRE** 40:21
**fired** 38:11 41:17,20,22
**fish** 30:6
**Flanners** 14:9, 14
**Fleming** 6:9 7:8,12,14 8:8, 10 9:17 14:21 15:14 16:5,18, 19 21:9 31:1 32:9 36:6,20 41:10 43:9
**Fletcher** 6:10 8:12 27:6,12,22 28:11,15 29:18, 22 34:21,25
37:22 38:17
**Florida** 7:9
**follow-up** 43:5
**Foods** 42:11, 16,20
**form** 22:9 23:4 24:1 26:15 27:14 28:2 33:11,25 36:19
**Fort** 7:8
**found** 27:9
**Foundation** 24:1
**friend** 18:7,9 19:9 35:9 39:9, 10,19 40:11,13
**front** 15:25 16:1,16 39:18
**full** 7:11 8:25 9:1

G

**Garcia** 6:21,22 7:19 8:7,11 15:18 16:6,14, 17 22:11,14 23:11 24:5 27:18 28:5,8 30:23 32:12 34:3 35:12,17, 19,24 36:2,19 43:1,6 44:1,8
**gave** 37:16,18, 19 39:16 40:18
**general** 21:22 23:7 24:2
**give** 8:2 16:4 32:13 35:20 39:13 44:9
**Gold** 42:11,16, 20
**good** 28:22
**ground** 8:20
**GSR** 40:7
**gun** 31:24 38:23 40:7,24 41:17 42:7,12, 13

H

**ha** 37:6
**half** 12:2
**half-an-hour** 11:16
**hand** 7:25
**handed** 21:4
**handgun** 38:20 42:17,21
**handguns** 39:13
**happy** 16:7
**hard** 16:9 25:4, 6
**head** 8:24
**hear** 24:16
**heard** 27:4 38:8,16 40:20, 23
**hit** 41:25 42:1
**hold** 12:21 42:12,13
**Holsum** 39:8
**homicide** 14:4, 23 15:6 17:2 28:16 29:8 32:4 33:2,21 35:1,5
**hospital** 17:22
**hour** 12:2
**hundred** 43:15
**hurry** 27:5 38:16
**hurry'** 38:7
**Hyman** 7:22
**hypothetical** 23:5 28:3

I

**idea** 25:12
**identification** 15:16 26:16,22 30:21 32:10
**identify** 38:23 40:25
**Illinois** 6:5,15
**in-person** 11:6,8,10,21
**inaccurate** 37:3
**incident** 12:19 14:21
**included** 30:2 43:19
**Incomplete** 23:5 28:2
**independent** 14:22 30:5,12 31:18
**information** 17:5
**initial** 30:10
**inside** 40:18
**instance** 20:25 22:22 24:7 26:4
**instances** 24:10 25:16 26:13
**instructing** 9:9
**interview** 21:24 37:13,15, 25 40:11 41:7
**interviewed** 30:1 37:11 39:4 40:13 41:3
**investigate** 13:10 28:10 32:3
**investigating** 23:13 24:11 25:18 28:1 29:7 34:20,24 35:3

**investigation** 14:23 15:5,6 17:2 30:7,10 32:18,23 33:2, 21 34:8,11,15, 18,22 35:1,4

**investigations** 14:17

**investigative** 25:23

**involved** 28:11,16 29:8 33:10,13

**involvement** 32:17,23 33:5, 16

J

**James** 6:10 8:12 34:21,25

**January** 6:6

**Jerome** 6:10

**job** 41:11

**join** 10:15

**joined** 7:23

**Jr** 6:10

**jumps** 15:10

K

**Kentuckiana** 6:4

**KILLED** 39:15

**kind** 10:3

**knew** 29:24 38:8 39:23

**knowledge** 36:24

**Krystal** 6:2

L

**Lab** 40:8

**laminated** 22:17

**Lanners** 14:5

**laptop** 16:10

**large** 21:4

**laundromat** 40:15

**lay** 8:19

**lead** 25:17,23 26:5

**leads** 30:17

**leave** 9:23 35:15

**left** 10:1,5,8 39:17

**lepor** 16:19

**lining** 42:3

**list** 17:10

**listed** 18:3

**locate** 42:16

**located** 6:4

**location** 6:18 39:8

**long** 9:12 11:14,25 12:10 27:2

**looked** 18:19 25:12 27:12 38:6

**losing** 41:11

M

**made** 39:6

**Madison** 28:23 29:4,13,18,22 30:1 38:2,4,14 39:7 40:16 41:21,24 42:9, 11

**make** 22:19

**makes** 28:20

**male** 42:9

**man** 28:24 29:3 38:15

**March** 9:25 10:17 32:13

**Mariah** 6:21 8:11 16:3 35:15

**marked** 15:16 30:21 32:10 36:9

**matter** 6:10 12:4 15:2 25:23 30:5

**mechanism** 26:3

**memorialized** 26:15

**men** 27:4 28:22 29:13 38:12,16

**mentioning** 23:10

**met** 39:22

**method** 27:24

**Michael** 6:9 7:12 8:10 16:19

**Michalik** 6:24 7:1,6,20,22 10:24 11:3,18 12:14 16:3,11, 15 22:9 23:4 24:1 27:14 28:2 33:24 43:4,8,24 44:2,6

**middle** 41:21

**minute** 27:7

**minutes** 12:2, 12 38:6

**mischaracterizes** 27:15

**moment** 10:19 15:11 32:14

**MONEY** 39:14

**MONEY.'** 39:15

**month** 28:24 29:14 38:14

**morning** 11:24 12:1 18:19 31:12

**mug** 43:16,19

**murder** 13:16 30:7

**Myers** 7:9

N

**name's** 36:6

**named** 28:10, 15 29:22 34:21, 25 35:4

**narcotic** 38:15

**narcotics** 28:24

**needed** 40:17

**negative** 20:18 21:14 38:19

**nod** 8:24

**Noradin** 6:11 7:4 33:20 34:15 36:7

**North** 6:5 41:24

**Northbound** 41:22

**Northern** 6:14

**number** 6:15 35:16 36:9 42:2

O

**object** 9:8 22:9 23:4 24:1 27:14 28:2 33:24 36:19

**objections** 9:10

**observed** 38:2 40:1,3,16,22

**obtained** 25:7 40:8

**occurred** 11:23 12:18,19

**offender** 37:20 39:12,17

**offenders** 25:13 37:17,19 38:7,10,24 39:12,20,21,22 40:1,2,3,19,21, 23,25 41:17,18, 20,22,23,25 42:3,4

**officer** 28:14 34:15

**officers** 6:12 29:12 32:25

**official** 25:8

**online** 6:3

**Oops** 35:23

**orders** 44:7

P

**pants** 39:17,19

**paper** 22:17

**papers** 15:25

**paragraph** 17:9,15,16 18:3 19:24 20:9 28:19

**Pardon** 7:15 21:11

**parked** 39:7

**Parkside** 28:23 29:4,13, 18,21,25 38:13, 20 41:22,23 42:5

**part** 24:16

**parties** 7:13

**partner** 13:19, 23 14:2,8,14

**past** 28:23 29:14 38:14

**Paul** 6:24 7:2,6



The Deposition of MICHAEL FLEMING, taken on January 18, 2023
50

43:2 44:8
**pending** 6:13
**penitentiary** 25:7
**people** 23:17
**Perfect** 7:21 44:7
**person** 25:24 29:17,21,25 34:21,24 35:4
**personed** 28:15
**personnel** 17:9,11 18:2 40:9
**persons** 27:21 29:7
**phone** 11:10, 12
**photo** 21:23 22:2,8,13,15,22 23:1,22
**photographs** 23:19 24:11,13, 14,15 25:9 26:20 43:18
**photos** 20:18, 22 21:1,2,5,13, 18,21 22:16 23:12,18,24,25 24:7 25:6 27:11,13,16,20, 25 38:17 41:1 43:10,13
**physical** 26:12
**pictures** 22:23 23:2 26:14
**piece** 22:17
**placing** 31:22, 24
**plaintiff** 7:19 8:12
**plaintiff's** 6:20,21
**pocket** 39:17, 18,19
**point** 21:25
**police** 6:12 9:21,23 10:5,8, 13,16,19 12:21 17:11 18:16,22 21:17 22:5 26:18 28:14 29:11 40:5
**position** 10:12 12:20
**possession** 41:10
**potential** 23:19 37:16
**practice** 22:2,4
**preparation** 11:4,22 31:2
**prepare** 10:20, 23
**present** 24:20, 21
**prior** 15:22
**probation** 41:10
**procedural** 20:25
**procedure** 21:2 23:9
**PROCEEDINGS** 6:1
**process** 14:1,3
**protection** 41:16
**pull** 15:8 23:24 32:7
**pulling** 25:3,4
**purchase** 40:17
**purposes** 7:7 16:8 18:20
**put** 22:16 25:9 42:7
**putting** 21:2

**Q**

**question** 9:3,5, 6 12:20 14:15, 16 20:25 21:22 22:10 23:5 24:3 27:15 33:25
**questioning** 9:15 41:8
**questions** 18:17 35:13,15 36:8 42:24 43:1,11,24
**quickly** 15:20

**R**

**Race** 26:8
**raise** 7:24
**ran** 38:9 39:19, 20,21 41:21 42:5
**range** 30:25
**rapes** 13:16
**Raymond** 6:11
**reach** 32:22
**read** 16:9 18:16,24 37:23 39:3 40:12
**rear** 41:19
**reason** 17:5,14 31:15 37:3
**recall** 8:15 11:7,11,23 12:6,8 18:2,8, 12 20:14,21 22:21,24 23:9, 12,15,17,20 27:10,19 28:9, 13 29:2,6,11, 16,20 31:24 32:6,24 33:8, 10,13,16 34:9, 10,12,13,16,17, 19,20,24 35:2, 3,6,7,11 43:9, 10
**recalled** 23:23 29:3
**recent** 25:8
**recently** 18:18
**recollection** 14:22 15:5 17:1,16 19:3,8, 14,18 30:5,13 31:19
**record** 7:11,22 8:9 15:12 30:24 37:23 39:3 40:12 44:8,10
**recording** 16:8
**recover** 42:17, 21
**referred** 43:16
**reflected** 37:7
**refresh** 15:4 17:1,16 19:3,8, 13,18
**reinvestigated** 33:14
**reinvestigating** 33:6
**releases** 25:7
**remember** 28:22
**remembered** 36:17
**remembers** 38:13
**Remis's** 38:3 39:6
**remotely** 7:5
**repeat** 10:4 27:17
**rephrase** 9:4 34:2,5 37:6
**report** 12:4,7 16:1,4,12,19 17:6,21 18:5, 16,22,24 19:8, 13,23 20:15 24:9 30:2,16,18 31:1,19,22 33:2 36:9,10,16,23 37:3,5,6,14,18, 24 39:2,3 40:12 41:2,6 42:19,22
**reporter** 6:2,3 7:10,13,16,21, 24 8:5,22 44:4, 7,9
**Reporters** 6:4
**reporting** 42:15
**reports** 11:1 12:9,11,17 15:9,22
**represent** 7:3 36:7
**representing** 6:4
**request** 14:18
**reserve** 44:2
**responsibilities** 13:9
**responsibility** 23:3
**restaurant** 38:3 39:6
**results** 20:19 21:14 38:19
**retained** 10:13
**retired** 9:18 10:2,12 14:5
**retirement** 10:10
**returned** 38:5 40:5
**reverse** 28:20
**review** 12:10 16:25 18:18,22 19:3,7,13,17 21:7 31:10,14 32:14
**reviewed** 11:1 12:3 15:1,14,22 31:2,12

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
51

**reviewing** 15:4
**revolver** 41:14
**rights** 41:9
**robberies** 13:17
**robbery** 36:13 40:23 41:16
**robbing** 40:19
**Rogers** 18:7,9 19:19,25 20:12,17,22 21:1,13 22:7 24:7 25:21,24 27:4,11,13,20 29:20,24 33:17 35:10 37:10,16,24 38:1,17 39:23,25 40:1,3,22
**Rogers'** 29:12
**roles** 13:8
**room** 21:23,24
**rules** 8:20
**running** 27:3 38:10,15 40:23 41:20

**S**

**Salvi** 17:18,21 18:1
**samples** 40:8
**scene** 17:17,19 38:21 40:5
**Schalk** 6:11 7:3 32:19,22 33:1,6,19 34:1,11 36:7
**screen** 15:11,15 16:8,10 32:9 35:16
**scroll** 15:19 35:22
**searched** 39:17
**seek** 10:1,6 14:13
**seeking** 14:15
**sees** 40:25
**sense** 22:19 28:20
**sentence** 20:17 27:1,2
**sentences** 28:19
**Sequentially** 28:21
**Sergeant** 7:4 36:8
**sergeants** 17:10
**Sex** 26:10
**shake** 8:24
**shape** 33:10
**share** 15:11
**sharing** 15:15
**Sheene** 18:7,9 19:9 39:11 40:11
**Sheened** 35:9
**sheet** 22:16
**shift** 12:25 13:2
**Shit** 7:2
**shoot** 39:24
**shooting** 39:21
**shots** 38:8,11 40:20,23 41:20,23 42:1
**show** 22:18 23:13,18,25 26:4 27:13,25
**showed** 24:10 26:13,14
**showing** 20:21 22:2,23 26:19 27:11,19
**shown** 25:24 26:21
**sic** 14:9 28:15 35:9 41:14
**signature** 16:22,23 31:7,8,9 44:3
**sir** 7:10,21,25 8:13 39:5
**slowly** 15:20
**solemnly** 7:25
**Sorrell** 14:23 28:16 29:9 32:4 33:3,21 34:8,11,15,18,22 35:1
**Sorrell's** 15:5 17:2 30:7 35:5
**sort** 24:25 25:4,17 26:2 27:25
**sorted** 27:21
**sorting** 26:2
**source** 23:24 24:12
**sources** 24:12
**speak** 11:4 33:20 34:7
**speaking** 12:18 18:8,12 34:10,13,17 35:7
**specific** 12:25 13:4,14 21:19 22:13 24:3
**specifically** 23:15
**spell** 8:9
**spent** 27:2
**spoke** 10:24 11:8,12,21
**squad** 21:24
**standard** 25:15,19
**standing** 38:1 39:8 41:18
**Star** 42:11,16,20
**starting** 6:19
**starts** 28:21
**state** 6:17 7:10 8:8 10:23
**stated** 9:10 12:3 16:25 20:15,17 28:21,24 29:16,20,24 34:5 37:2 38:1,12,14,19,23 39:5,19,20 40:14,20,22 41:10,12 42:2,12,14
**statement** 9:1
**states** 6:13 40:24
**stayed** 14:5
**Stefanich** 6:25 7:2,3,18 35:14,18,23,25 36:3,5,6,22 42:23 43:25
**STEGANICH** 6:25
**step** 39:9 40:18
**stepped** 39:11
**store** 42:13
**Street** 39:7 41:21,24 42:11
**strike** 17:15 19:22 21:16 22:1 23:22 24:6 25:15,16 26:17 30:9 31:11 33:9
**suggests** 33:25
**summary** 40:10,14 41:12
**supplemental** 12:8 15:9 30:18 42:19
**suspect** 23:19
**suspected** 25:10
**suspects** 25:10 26:4
**swear** 8:1

**T**

**taking** 8:22
**talk** 14:20 34:5 39:11
**talked** 34:1 35:8
**talking** 24:22 40:17
**team** 14:17
**technician** 6:3
**Terry** 18:7,9 19:19,25 20:12 27:3 33:17 35:10 37:10,13,15,24 38:1 39:22,23
**test** 40:7,8
**testimony** 8:1 27:15 34:2
**thing** 15:24 38:25
**things** 20:9
**time** 6:6,7 9:13 11:7,10,11,22 13:1,20 14:11 18:15,18,22 21:17 24:21 26:18 27:2 39:11,16
**times** 8:15 11:3
**today** 6:3,6 12:14,18
**today's** 10:21 11:4
**told** 36:17,24 37:8,24 39:4,13,23,25 40:13 42:9,12
**top** 39:2
**topic** 11:2

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MICHAEL FLEMING, taken on January 18, 2023
52

**trouble** 42:3
**truck** 38:5,7,9 39:8,20 40:17 41:15,16,18,19
**truth** 8:2,3 41:12
**truthful** 31:15

U

**Uh-huh** 10:18 35:24 43:23
**uncle** 38:3
**underneath** 31:7
**understand** 9:3 25:1 30:4
**understanding** 22:15
**understood** 9:6
**United** 6:13
**unknown** 6:12
**unrelated** 25:22
**unsure** 23:21
**user** 28:25 38:15
**utilize** 24:12
**utilized** 22:5, 23 25:2,18

V

**V/c** 21:9,12,14
**V/cs** 20:18 21:13 38:18 41:1
**van** 39:9,11 40:18,19
**vehicle** 42:1
**verbal** 8:23
**verbatim** 40:14 41:13
**version** 16:3
**versus** 22:17
**vic** 42:1
**victim** 17:25
**video** 6:3,8
**view** 20:22 21:1 23:1 25:21 41:1
**viewed** 20:17 21:13,18,19,21 24:7 25:9,25 38:17
**viewing** 22:8
**violent** 13:6, 10,11,16 21:15 23:13 24:11 25:22 28:1 38:18 40:7
**virtually** 6:22

W

**Wacker** 6:5
**Wade** 18:7,9 19:15 31:24 35:9
**wanted** 10:20 14:8 19:22 20:16,24 23:18 27:1 41:12
**washing** 40:15
**Washington** 38:21 40:2,4,6 42:5,6
**week** 11:13
**West** 38:2,4 39:7 40:2,4,6, 16 42:6,8,11
**westbound** 41:21
**Willie** 14:23 17:2 28:16 29:9 30:7 33:21 34:8,11,15,18, 22,25 35:5 42:10,12,15,16
**Wilmette** 7:5
**windshield** 42:2
**witnesses** 18:6,10 21:18 22:2 23:13 24:11 26:19 27:25 35:8 36:17,24 37:8 39:1
**Wojcik** 6:12 7:4 34:18 36:8
**words** 38:4
**work** 13:18,23 14:18 30:9,13 32:3
**worried** 41:11
**worry** 20:6
**would've** 14:10 25:11
**wrote** 36:16,23

Z

**Zoom** 8:19 9:8

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com