# EXHIBIT 11

LOUISVILLE　LEXINGTON　LONDON　FLORENCE　CINCINNATI　INDIANAPOLIS　ORLANDO　JACKSONVILLE　TAMPA



# KENTUCKIANA
## — COURT REPORTERS —

# CASE NO. 20-CV-04768

# JAMES FLETCHER JR.

# V.

# JEROME BOGUCKI, ET AL.

## DEPONENT:

## LT. MICHAEL  FITZGERALD

## DATE:

## December 06, 2022



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

www.kentuckianareporters.com

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF ILLINOIS

3                      EASTERN DIVISION

4                     JUDGE ANDREA WOOD

5              MAGISTRATE JUDGE MARIA VALDEZ

6                   CASE NO. 20-CV-04768

7

8                  JAMES FLETCHER JR.,

9                        Plaintiff

10

11                           V.

12

13                JEROME BOGUCKI, ANTHONY

14               NORADIN, RAYMOND SCHALK,

15             ANTHONY WOJCIK, UNKNOWN CITY

16          OF CHICAGO POLICE OFFICERS, AND THE

17                   CITY OF CHICAGO

18                      Defendants

19

20

21

22

23   DEPONENT:  LT. MICHAEL FITZGERALD

24   DATE:      DECEMBER 6, 2022

25   REPORTER:  KORTNEY CHASE



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                          APPEARANCES

 2

 3   ON BEHALF OF THE PLAINTIFF, JAMES FLETCHER JR.:

 4   Mariah Garcia, Esquire

 5   Loevy & Loevy

 6   311 North Aberdeen Street, 3rd Floor

 7   Chicago, Illinois 60607

 8   Telephone No.: (312) 243-5900

 9   E-mail: mariah@loevy.com

10   (Appeared via videoconference)

11

12   ON BEHALF OF THE DEFENDANTS, ANTHONY WOJCIK, ANTHONY

13   NORADIN, RAYMOND SCHALK, AND JEROME BOGUCKI:

14   Brian Stefanich, Esquire

15   Hale & Monico

16   53 West Jackson Boulevard

17   Suite 337

18   Chicago, Illinois 60604

19   Telephone No.: (312) 598-2353

20   E-mail: bstefanich@HaleMonico.com

21   (Appeared via videoconference)

22

23

24

25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                    APPEARANCES (CONTINUED)

 2

 3    ON BEHALF OF THE DEFENDANT, CITY OF CHICAGO AND THE

 4    WITNESS, LT. MICHAEL FITZGERALD:

 5    Paul A. Michalik, Esquire

 6    Reiter Burns

 7    311 South Wacker Drive

 8    Suite 5200

 9    Chicago, Illinois 60606

10    Telephone No.: (312) 982-0090

11    E-mail: pmichalik@reiterburns.com

12    (Appeared via videoconference)

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                            INDEX

 2                                             Page

 3    PROCEEDINGS                                 6

 4    DIRECT EXAMINATION BY MS. GARCIA            7

 5    CROSS-EXAMINATION BY MR. MICHALIK          23

 6    REDIRECT EXAMINATION BY MS. GARCIA         26

 7

 8                          EXHIBITS

 9    Exhibit                                   Page

10    1 - General Offense Case Report from Arrest

11         of Terry Rodgers -Fletcher 000432-000433  15

12    2 - Photo of Terry Rodgers - CITY - JL 117    22

13

14    (Will forward upon receipt.)

15

16

17

18

19

20

21

22

23

24

25
```



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                            STIPULATION

 2

 3

 4    The deposition of LT. MICHAEL FITZGERALD was taken at

 5    KENTUCKIANA COURT REPORTERS, 730 WEST MAIN STREET, SUITE

 6    101, LOUISVILLE, KENTUCKY 40202, via videoconference, in

 7    which all participants attended remotely, on TUESDAY,

 8    the 6th day of DECEMBER 2022 at approximately 9:59 a.m.

 9    (CT); said deposition was taken pursuant to the FEDERAL

10    Rules of Civil Procedure.  The oath in this matter was

11    sworn remotely pursuant to FRCP 30.

12

13    It is agreed that KORTNEY CHASE, being a Notary Public

14    and Digital Reporter for the State of ILLINOIS, may swear

15    the witness.

16

17

18

19

20

21

22

23

24

25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

**502.589.2273** Phone
**502.584.0119** Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                        PROCEEDINGS
 2          THE REPORTER:  We are now on the record.  Will
 3     all parties, except for the witness, please state
 4     your appearance, your location, and how you're
 5     attending.
 6          MS. GARCIA:  Mariah Garcia for the plaintiff. I
 7     am attending remotely from the Chicagoland area.
 8          MR. STEFANICH:  Brian Stefanich.  I represent
 9     the defendant officers in this case.  I am attending
10     remotely from Womac.
11          MR. MICHALIK:  This is Paul Michalik.  I
12     represent the defendant, City of Chicago, and I also
13     represent the deponent, Lieutenant Michael
14     Fitzgerald, and I am in person with the lieutenant
15     here in my office in Chicago.
16          THE REPORTER:  Lieutenant Fitzgerald, will you
17     please state your full name for the record?
18          THE WITNESS:  Sure.  My name is Lieutenant
19     Michael Fitzgerald.  The spelling of my last name is
20     F-I-T-Z-G-E-R-A-L-D.
21          THE REPORTER:  Okay.  And do all parties agree
22     that the witness is, in fact, Lieutenant Fitzgerald?
23          MR. STEFANICH:  Yes.
24          MS. GARCIA:  Plaintiff agrees.
25          MR. MICHALIK:  Yep.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              THE REPORTER:  Okay.  Lieutenant Fitzgerald,
 2       will you please raise your right hand?  Do you
 3       solemnly swear or affirm the testimony you're about
 4       to give will be the truth, the whole truth, and
 5       nothing but the truth?
 6              THE WITNESS:  I do, ma'am.
 7              THE REPORTER:  Thank you.  You may begin.
 8                      DIRECT EXAMINATION
 9  BY MS. GARCIA:
10       Q.   Hi, Lieutenant Fitzgerald.  Will you please
11  state your full name and spell it for the record please?
12       A.   Lieutenant Michael Fitzgerald.  The spelling
13  of my first name is M-I-C-H-A-E-L.  My last name is
14  F-I-T-Z-G-E-R-A-L-D, and my star number is currently
15  197.
16       Q.   Great.  And my name is Mariah Garcia.  I'm an
17  attorney for the plaintiff, James Fletcher.  Lieutenant
18  Fitzgerald, have you ever been deposed before?
19       A.   Yes, ma'am.  I have.
20       Q.   Okay.  Well, since you have been, I'll just go
21  over the rules very, very quickly.  Because we are over
22  Zoom and we have a court reporter taking everything
23  down, please keep your answers verbal and audible.  So
24  answer any question with a "yes," or a "no," or a full
25  answer, okay?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.    Yes, ma'am.

2      Q.    If there's a question you don't understand for

3  any reason, please let me know and I will rephrase it,

4  but if you answer a question, I'm going to assume that

5  you understood my question, okay?

6      A.    Okay.

7      Q.    I will let you fully answer any question that

8  I ask you so long as you let me get out my full question

9  before you get to answer, okay?

10      A.    Yes, ma'am.

11      Q.    And I believe this deposition will be pretty

12  short, but if you need to take a break for any reason,

13  let me know and we can take a break as soon as I have

14  finished that question, okay?

15      A.    Okay.

16      Q.    Okay.  This may seem like a silly question,

17  but, Lieutenant Fitzgerald, are you still employed or

18  currently employed with the Chicago Police Department?

19      A.    I am.

20      Q.    All right.  And is your current position

21  lieutenant?

22      A.    Yes, ma'am.  It is.

23      Q.    Okay.  And do you recall what year you became

24  a lieutenant within the Chicago Police Department?

25      A.    Within the last year.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    Okay.    And what are the roles and
2  responsibilities of a lieutenant within the Chicago
3  Police Department?
4          MR. MICHALIK:    I'm going to object to the
5      relevance.    Go ahead.
6          THE WITNESS:    It depends on the area of
7      assignment.    Currently, I'm assigned to the Evidence
8      and Recovered Property Section, so my
9      responsibilities are specifically focused on
10      evidence and recovered property being received by
11      the Evidence and Recovered Property Section,
12      ensuring that it's inventoried properly, and
13      answering questions for officers that might have
14      questions regarding the appropriateness of that,
15      making sure evidence is disseminated properly to the
16      officers when it's taken to court, received back in,
17      and things of that nature.
18          For those that are assigned to the field, they
19      have responsibilities that involve field supervision
20      of officers and those that have served as the watch
21      operations lieutenants are responsible for
22      day-to-day affairs of their particular watches that
23      they're assigned to, as well as reviewing and
24      approving arrest reports and sometimes case reports.
25  BY MS. GARCIA:

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    Okay.  And how long have you been an employee

2    within the Chicago Police Department?

3    A.    My date of hire was October 4, 1999, so it's

4    23 years, two months and a couple of days.

5    Q.    Okay.  And when you started working at the

6    Chicago Police Department in 1993 [sic], what was your

7    position?

8    A.    It was 1999, ma'am.

9    Q.    1999.  My apologies.

10   A.    So when I first started in October of 1999, I

11   was assigned to the training academy, where I spent

12   approximately six months in the training academy until I

13   was sent to the street and was with a field training

14   officer until, I believe, it was March of 2020 -- I

15   mean, March of 2000.

16   Q.    And after you had completed your field

17   training, what position did you hold within the Chicago

18   Police Department?

19   A.    After I finished my field training, I was a

20   patrol officer.

21   Q.    Okay.  And were you a patrol officer in

22   February of 2002?

23   A.    Yes, ma'am.  I was.

24   Q.    And do you recall what area you were assigned

25   to in February of 2002?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.    I was assigned to the 15th District.

2     **Q.    Okay.  And did you have a partner in February**

3 **of 2002?**

4     A.    I had a regular partner that I worked with and

5 then, from time to time, when he wasn't available, they

6 would put me with other officers.

7     **Q.    And who was your regular partner?**

8     A.    Officer Hugh Gallagly.  That's G-A-L-L-A-G-L-Y

9 and I believe the star number is 13851.

10     **Q.    And what was the process in 2002 of being**

11 **assigned a partner?**

12     A.    They would assign us based on the watches.  The

13 -- ultimately, whoever was -- I believe that we had a

14 captain at the time.  I don't know if it was Captain

15 Patrick (phonetic) or if he was a lieutenant still at

16 the time, but they would determine which officers would

17 like to work together.  They would put us together and

18 they would assign us to beats based on, you know,

19 availability of cars.  On the dates when your partner,

20 your regular partner, wasn't available, it would be the

21 watch secretary would see who was available and they

22 would have to staff the beat cars and then that's how

23 you would wind up working with someone else.

24     **Q.    Okay.  And in February of 2002, did you have a**

25 **regular shift that you worked or regular beat?**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    I believe in 2002, we were typically assigned
 2   to the late rapid cars, which would've been a 6:00
 3   start, but from time to time, when my regular partner
 4   wasn't there or I had to fill in, they would rotate us
 5   to an earlier start, which would be a 4:00 start, so
 6   1600 hours.
 7        Q.    Okay.  And when you were a patrolman in the
 8   15th District in 2002, what were your roles and
 9   responsibilities?
10        A.    I believe I was kind of a steady watch at that
11   time.  So we would be responding essentially to patrol
12   calls that we would get from 911, from the dispatchers.
13   We would also conduct our own traffic stops and make
14   on-view arrests based on things that we observed.
15        Q.    Okay.  Do you have an independent recollection
16   -- actually, strike that.  You are in the room with your
17   counsel, Mr. Michalik, correct?
18        A.    That's correct.  Yes.
19        Q.    Okay.  And prior to today's deposition, can
20   you -- actually, strike that.  That's a bad question.
21   Did you do anything to prepare for today's deposition?
22        A.    Yes, ma'am.  I did.
23        Q.    Can you tell me what you did to prepare for
24   today's deposition?
25        A.    I was afforded the opportunity to review both
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    the General Offense Case Report and the Arrest Report

2    associated with the arrest of Mr. Rodgers.

3        Q.   Okay.  And did you meet with Mr. Michalik?

4    Without going into anything you might have talked about,

5    did you meet with him prior to today's deposition in

6    preparation for today's deposition?

7        A.   Yes, ma'am.  We did.

8        Q.   Okay.  And how many times did you meet with

9    him?

10       A.   Once.

11       Q.   Okay.  And do you recall when you met with him

12   that one time?

13       A.   The exact date?  No.  It was probably like a

14   month-and-a-half ago.

15       Q.   Okay.  And do you recall how long that meeting

16   lasted?

17       A.   More between 45 minutes to an hour.

18       Q.   Okay.  And other than the reviewing the

19   General Offense Case Report and the Arrest Report

20   related to the arrest of Mr. Rodgers, I would assume,

21   did you review anything else?

22       A.   No, ma'am.  I have not.

23       Q.   Okay.  And have you discussed this deposition

24   with anybody besides your counsel?

25       A.   I have not.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   Okay.  And so, now I want to turn to the
 2   evening of February 11, 2002.  Do you have an
 3   independent recollection?  And I understand you reviewed
 4   documentation around this incident, but do you have an
 5   independent recollection of the arrest of Terry Rodgers
 6   on February 11, 2002?
 7        A.   I do not, ma'am.
 8        Q.   Okay.  Then I'm going to pull up and I don't
 9   think I asked this earlier.  Do you have any papers in
10   front of you?
11        A.   I do not.  No.
12        Q.   Okay.  I just know sometimes people will print
13   out the reports, but I have it on my computer.
14             MR. MICHALIK:  Hey, Mariah?  Yeah.  Mariah,
15        it's Paul.  You didn't send any deposition exhibits,
16        but I do have the two reports, the arrest report and
17        the general offense case report, here on paper if
18        you want me to show that to the lieutenant.
19             MS. GARCIA:  Sure.  I'll pull up the case
20        report, the arrest report itself so that Brian can
21        see it and I can refer to it as it's on the screen.
22   BY MS. GARCIA:
23        Q.   But Lieutenant Fitzgerald, if you want to
24   follow along with the hard copy, that's perfectly fine.
25   So I am sharing my screen.  Hopefully, you can see this.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  Apologies.  One moment.  This is the wrong exhibit.

2  Okay.  Here we go.

3          MS. GARCIA:  For the record, this will be

4      Exhibit 1.  This was Bates stamped sideways, but it

5      is Bates Fletcher 000432 to 000433 and, Lieutenant

6      Fitzgerald, I'm going to give you a moment.  If you

7      could review this for me and let me know when you're

8      done.

9              (Exhibit 1 was marked for identification.)

10          THE WITNESS:  I'm done with the first page.

11 BY MS. GARCIA:

12     Q.   Okay.

13     A.   I'm finished with the second page also.

14     Q.   Okay.  And, Lieutenant Fitzgerald, does this

15 refresh your recollection at all as to the arrest of

16 Terry Rodgers on February 11, 2002?

17     A.   Slightly, yes.

18     Q.   Okay.  And so, what do you recall of the

19 arrest of Terry Rodgers on February 11, 2002?

20     A.   Specifically?  The only thing that I recall,

21 and again, without refreshing my recollection and

22 knowing that it was him, would've been the portion about

23 Bomb and Arson coming out to the scene because we had

24 conducted a custodial search and found materials that we

25 had found on him.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Okay.  And on Page 1, and I know this is

2    handwritten, it states "Reporting officer," and then

3    underneath on the bottom of the page, it says, "M.

4    Fitzgerald."  Lieutenant Fitzgerald, are you the

5    reporting officer that's being referenced in this --

6    A.   Yes, ma'am.

7    Q.   -- area?

8    A.   Ma'am, I am.  My star number is next to it,

9    which was my patrol star of 5084 --

10   Q.   Okay.

11   A.   -- and then, that's my signature that's next.

12   Q.   And do you know how to pronounce the person's

13   name underneath your name on the first page?

14   A.   It would've been Officer Misylik.

15   Q.   Okay.  Misylik.  And Officer Misylik was not

16   your regular partner, at the time, correct?

17   A.   That's correct, ma'am.

18   Q.   Okay.  And do you recall how you came to work

19   with him on this day?

20   A.   I would -- that we were assigned to work

21   together that day.

22   Q.   Okay.  And is this your handwriting on the

23   report or is it Officer Misylik's?

24   A.   It would be my handwriting.

25   Q.   Okay.  And I don't know if your signature is

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    here.  Is this your -- apologies.

2        A.    So I can direct you to where my signature --

3        Q.    Yes, please.  It would be on the --

4        A.    So if you -- if you see where my name is?  If

5    you see where my name is --

6        Q.    Sure.

7        A.    -- printed, just to the side of my star

8    number, 5084, that -- the line right next to that is --

9    that's my signature and then the date follows that.

10       Q.    Okay.  And do you recall who was your

11   approving officer on that date for this report?

12       A.    The approved -- it looks like it was,

13   according to this signature, Sergeant Peggy Johnson.

14       Q.    Okay.  And you've now had a chance to review

15   this report, correct?

16       A.    I'm sorry?

17       Q.    You've had a chance to review this report,

18   correct?

19       A.    This morning.  Yes.

20       Q.    Okay.  And after reviewing this report, do you

21   have any reason to doubt that it's a truthful and

22   accurate reporting of the arrest of Terry Rodgers on

23   February 11, 2002?

24       A.    No, ma'am.  I do not.

25       Q.    Okay.  Do you recall any follow up you did
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   into Terry Rodgers after arresting him on February 11th
 2   in 2002?
 3        A.    No, ma'am.
 4        Q.    Okay.  Do you recall any follow up you did
 5   into the arson that had occurred earlier in the month at
 6   227 South Central after the arrest of Terry Rodgers on
 7   February 11th in 2002?
 8             MR. MICHALIK:  Object to the form of the
 9        question.  Assumes facts not in evidence.
10             THE WITNESS:  Aside from the notification that
11        we would've made to Bomb and Arson, that would've
12        been the extent of the furtherance of our
13        investigation into that incident.
14   BY MS. GARCIA:
15        Q.    Okay.  I'm going to stop the share of the
16   exhibit.  In the arrest report that you just reviewed,
17   it mentioned that you had contacted Sergeant Dolan in
18   Detective Division regarding Mr. Rodgers' arrest.  Do
19   you recall that?
20             MR. MICHALIK:  I'm just going to object,
21        Mariah.  It's the General Offense Case Report that
22        we're looking at, not the Arrest Report.
23             MS. GARCIA:  Oh, apologies.  Apologies.
24   BY MS. GARCIA:
25        Q.    The General Offense Case Report.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.   And I'm sorry, could you repeat the question

2   about Sergeant Dolan?

3      **Q.   Do you recall contacting him regarding the**

4   **investigative report into Mr. Rodgers?**

5      A.   Aside from what was notated in the report?  No.

6   I don't have an independent recollection of having a

7   conversation with him.

8      **Q.   Okay.  And do you have an independent**

9   **recollection of having a conversation with Detective**

10  **Division?**

11     A.   No, ma'am.  I do not.

12     **Q.   Okay.  Do you know if any other officer was**

13  **assigned to investigate Rodger's involvement into the**

14  **potential arson that had occurred at 227 South Central?**

15     A.   No.  I do not.

16     **Q.   Okay.  Do you know if any other officer was**

17  **assigned to investigate the potential arson at 22 [sic]**

18  **South Central after your involvement in arresting**

19  **Mr. Rodgers?**

20     A.   No.  I do not.

21     **Q.   Did you speak with Detective Bogucki regarding**

22  **Terry Rodgers following his arrest?**

23     A.   To the best of my recollection, I did not.

24     **Q.   Okay.  Do you recall speaking to Detective**

25  **Shock following the arrest of Terry Rodgers regarding**



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    his arrest?
 2         A.    Again, to the best of my recollection, I did
 3    not.
 4         Q.    Okay.  Do you recall speaking with Anthony
 5    Noradin, and I will spell that, N-O-R-A-D-I-N, regarding
 6    the arrest of Terry Rodgers?
 7         A.    Again, my response, to the best of my
 8    recollection, I do not.
 9         Q.    Okay.  And do you recall -- actually, one
10    second.  Strike that.  Do you recall speaking to Anthony
11    Wojick following the arrest of Terry Rodgers regarding
12    his arrest, after the arrest?
13         A.    And again -- right.  And again, to the best of
14    my recollection, I did not.
15         Q.    Okay.  Did you ever work on the investigation
16    into the death of Willie Sorel?
17         A.    I do not believe I did.  No.
18         Q.    Okay.  Did you ever work on the investigation
19    into my client, James Fletcher?
20         A.    And again, to the best of my recollection, I
21    did not.  No.
22         Q.    Okay.  To the best of your recollection, did
23    you ever work on an investigation into a man named
24    Arnold [sic] Dickson?
25         A.    The name doesn't sound familiar.  No, ma'am.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Okay.  And following the arrest of Terry

2  Rodgers, do you recall speaking with Terry Rodgers?

3      A.   Following the arrest?  No, ma'am.  I do not.

4      Q.   Okay.  And after the arrest of Terry Rodgers,

5  do you recall speaking or investigating Edward Cooper?

6      A.   The name does not sound familiar either,

7  ma'am.

8      Q.   Okay.  After the arrest of Mr. Rodgers, do you

9  recall speaking to or investigating Emmet Wade?

10      A.   No, ma'am.  I do not.

11      Q.   Okay.  And following the arrest of

12  Mr. Rodgers, do you recall speaking to or investigating

13  Shenee Friend?

14      A.   No, ma'am.  I do not.

15      Q.   Okay.  I'm going to represent to you that

16  Mr. Rodgers was not charged for any crimes following his

17  arrest on February 11, 2002.  Does the fact that he was

18  not charged for any crimes surprise you?

19      MR. STEFANICH:  Objection.  Form and

20    foundation.

21      MR. MICHALIK:  Join.

22      THE WITNESS:  Following his arrest?  Is that

23    what you're saying, ma'am?

24  BY MS. GARCIA:

25      Q.   Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.   I would have no opinion on it one way or the

2   other because I wasn't involved in any furtherance of

3   any investigations involving him.

4      **Q.   Okay.  And did anyone articulate to you the**

5   **reason as to why he was not charged following his**

6   **arrest?**

7      A.   To the best of my recollection, no, ma'am.

8      **Q.   Okay.  I'm going to pull up what we can call**

9   **Exhibit 2, which is the CITY JF [sic] 117 in Bates.**

10   **Lieutenant Fitzgerald, have you seen this person before?**

11         (Exhibit 2 was marked for identification.)

12      A.   Yes, ma'am.

13  BY MS. GARCIA:

14      **Q.   Okay.  And who is this person?**

15      A.   It would be Terry Rodgers and again, my

16   recollection of that would be based off the information

17   that's supplied in the exhibit, but I don't have an

18   independent recollection of recognizing him, absent

19   those demographics.

20      **Q.   Okay.  And to the best of your recollection,**

21   **after arresting Mr. Rodgers, did you ever interact with**

22   **the individual pictured in this exhibit ever again?**

23      A.   Not that I believe.  No, ma'am.

24      **Q.   Okay.  And before I let you go, following the**

25   **review of the General Offense Case Report and the review**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

One Deposition of Arthur D. Hutchinson #: 184-11 Filed: 05/06/25 Page 25 of 43 PageID #:

```
1    of Mr. Rodgers' pictures, is there anything else that
2    you haven't said regarding the arrest of Mr. Rodgers
3    that you now independently recall?
4              MR. MICHALIK:  Object to the form of the
5         question.
6              THE WITNESS:  No.  I do not.
7              MS. GARCIA:  Okay.  I don't have any further
8         questions.
9              MR. STEFANICH:  I don't have anything.
10             MS. GARCIA:  Okay.
11             MR. STEFANICH:  Paul, I assume you're good?
12             MR. MICHALIK:  Yeah.  No.  I have just a couple
13        of follow ups.
14             MR. STEFANICH:  Okay.
15                   CROSS-EXAMINATION
16   BY MR. MICHALIK:
17        Q.   Lieutenant, based on your review of the
18   materials, you said that you had a refreshed
19   recollection as to the involvement of Bomb and Arson,
20   correct?
21        A.   Briefly.  Yes.
22        Q.   All right.  And according to the second page
23   of the General Offense Case Report, which was marked as
24   Exhibit Number 1, Bomb and Arson was contacted regarding
25   Mr. Rodgers?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    That's correct.  Yeah.  They were.

2    Q.    **All right.  Do you recall why Bomb and Arson**

3  **was contacted?**

4    A.    It would've been a follow up based on the

5  circumstances of the arrest that we had made, what we

6  had discovered him to be in possession of in terms of

7  the matches, the rags, on the paper towels, and the fact

8  that the location where he was arrested based on the

9  information supplied by the witness and -- was at -- was

10  a scene of a recent fire.

11    Q.    **All right.  And you briefly mentioned this,**

12  **but can you clarify, what was found in your custodial**

13  **search?**

14    A.    During the course of the custodial search,

15  according to the case report, there were six books of

16  matches, some taper towels, and some rags.

17    Q.    **Under the circumstances that you had and the**

18  **materials that were found in the custodial search, was**

19  **there any basis to charge Mr. Rodgers with any crime?**

20    A.    No.

21    Q.    **Why not?**

22    A.    Those are just general items that anyone could

23  have on them.  They're not criminal in and of

24  themselves, or illegal.  As I said, the full purpose of

25  contacting Bomb and Arson was based upon the nature of

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   the totality of the circumstances, based on the fact

 2   that the location that we were at was recently the scene

 3   of a fire and we were just making a notification in case

 4   they needed additional information.

 5        Q.   Was it unique to find items such as rags,

 6   paper towels, and matches on an individual during that

 7   time of year?

 8        A.   I would say no.

 9        Q.   Why not?

10        A.   During the cold season, depending on his

11   circumstances, if Mr. Rodgers had been homeless, I mean,

12   he might have been using the matches, and the -- the

13   rags, and the paper towels to keep himself warm by -- by

14   lighting them to -- you know, whatever source he needed

15   to keep warm.  He could have been using the rags and

16   stuff in his shoes using this, you know, as a tissue.

17   Same thing with the paper towels.

18        Q.   And again, just to be clear, you know, based

19   on Mr. Rodgers' possession of those materials, there was

20   no basis to charge him with any criminal misconduct,

21   correct?

22        A.   That's correct.  Possession of those items, in

23   and of themselves, is not grounds for a charge.

24        Q.   Okay.

25             MR. MICHALIK:  I have no further questions.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Thank you.
 2             MS. GARCIA:  Just a couple of follow up.
 3                   REDIRECT EXAMINATION
 4   BY MS. GARCIA:
 5        Q.    Lieutenant Fitzgerald, did you make decisions
 6   regarding charging of potential suspects as a patrol
 7   officer in 2002?
 8        A.    As a patrol officer, we would present the --
 9   the facts to the watch commander.  The watch commander
10   and the desk sergeant would review our arrest reports
11   and understand the totality of our circumstances. Then,
12   based upon that, they would make a determination as to
13   whether the charges that we placed on the arrest report
14   were sufficient.
15        Q.    Okay.  And I know you don't have an
16   independent recollection of this incident, but in this
17   situation where there's been, as was noted in your
18   General Offense Case Report, a prior arson, and there is
19   someone who has a potential material that can be
20   inflammatory, would that not raise a suspicion of
21   potential criminal conduct?
22        A.    What would ultimately happen in these
23   situations is exactly what we did.  We would've notified
24   the unit that would've been responsible for that follow
25   up investigation, since they know the particulars of
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1 those incidents beyond the original case report. They

2 would then conduct their follow up and then they would

3 advise us and our watch commander or our desk sergeant,

4 that they were either looking to extend their

5 investigation, at which point in time, had Mr. Rodgers

6 been a suspect or subject to further investigation, they

7 would've potentially issued a hold paper for him and

8 furthered their investigation into the incident, if

9 necessary.

10      Q.   Sure.  But I'm asking you a more specific

11 question based on the fact that you were being called to

12 a residence where there was a prior arson and the

13 residents had been told to contact the police if there

14 was a suspicious individual in the area and given the

15 fact that Mr. Rodgers was caught in a building where he

16 was not a resident with potential inflammatory material,

17 including six books of matches, and rags, and paper

18 towels, would that not raise suspicion that Mr. Rodgers

19 may have been in that residence to conduct criminal

20 misconduct?

21        MR. STEFANICH:  Objection.  Form.

22        THE WITNESS:  He was arrested for the

23    criminal --

24        MR. STEFANICH:  Sorry.  Objection.  Form.

25        THE WITNESS:  He was arrested for the criminal

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  conduct that we were aware of, in the sense that he

2  did not have permission to be in the residence at

3  that time.  What we discovered on his person

4  subsequent to his arrest was what furthered our --

5  our contact with the Bomb and Arson section.

6  BY MS. GARCIA:

7      Q.   Sure.  And you contacted the Bomb and Arson

8  section because there was at least a plausible potential

9  that Mr. Rodgers was there to conduct arson, such that

10 had been conducted earlier in that month, correct?

11         MR. STEFANICH:  Objection.  Form.

12         THE WITNESS:  The -- the contact -- again, the

13     contact was just a notification to them that we had

14     an individual that was in custody that was found at

15     the scene of a recent fire, that was in possession

16     of incendiary items that could be used to -- to

17     start a fire, that were incendiary.

18 BY MS. GARCIA:

19     Q.   Sure.  And just as you were telling

20 Mr. Michalik that those items may have been not used in

21 a criminal way or may not have been to be used in a

22 criminal way, the six books of matches, the rags, and

23 paper towels also could have been used to create some

24 sort of incendiary inflammation that could lead to an

25 arson, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1          MR. MICHALIK:  Object to form.  Calls for
 2     speculation.  Go ahead.
 3          THE WITNESS:  They could have been used for any
 4     number of things, but again, just a mere possession
 5     of them and the fact that he wasn't displaying them
 6     or using them in a manner that was suggestive that
 7     he was there to create a fire, it would've been
 8     nothing that would've been anything more than a
 9     notification to that division.
10  BY MS. GARCIA:
11     Q.   Sure.  And when you said when there was
12  nothing to suggest to he was using them in a way that
13  would start a fire, what are you basing that
14  classification on?
15     A.   We didn't find him in possession -- of him
16  attempting to strike the match to light the rags.  He
17  was just in possession of items that were in his pocket.
18     Q.   Okay.  And do you recall the manner in which
19  you arrested Mr. Rodgers?
20     A.   The specific manner in terms of -- I -- I'm
21  not certain I understand.
22     Q.   Yes.  The specific manner.  Do you recall
23  walking up to him, arresting him, speaking to him?
24     A.   The -- the specific conversation?  No.  I do
25  not.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.   Okay.  Do you recall where he was located in

2  the residence?

3     A.   That I do not know.

4     Q.   Do you recall what his demeanor was like when

5  you arrested him?

6     A.   That I do not know.

7     Q.   Do you recall what he was doing, physically,

8  when you were arresting him?

9     A.   Again, that I do not know.

10     Q.   Do you recall his demeanor when you first

11  encountered Mr. Rodgers?

12     A.   No, ma'am.  I do not.

13     Q.   Okay.  And do you recall if he had the matches

14  in his hand when you first encountered him?

15     A.   I think if he would've had them in his hand

16  when we first encountered him, based on how detailed my

17  report was, it would've been documented that's how he

18  had them so -- and the fact that we conducted the search

19  in the station, it would've been a custodial search on

20  him.  So no.  He wouldn't have had them displayed.

21     Q.   Okay.  And when you were patrolling the 15th

22  division in 2002, when you received a call of a

23  potential suspect, would you put on your police flashers

24  and your police alarm when you were transporting

25  yourself to the scene of a potential crime?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1       A.    It would depend on the circumstances.
 2       Q.    Do you recall if you put on your police
 3  flashers and put on your police alarm when you were
 4  traveling to the scene of this potential arson at 227
 5  South Central?
 6       A.    I do not recall specifically.
 7            MR. STEFANICH:  Object to the form.
 8  BY MS. GARCIA:
 9       Q.    Sure.  I can rephrase it.  Do you recall if
10  you put on your police flashers or your alarm while you
11  were transporting yourself to 22 [sic] South Central on
12  February 11, 2002?
13       A.    I don't believe we did, but I don't have an
14  independent recollection of whether we did or did not.
15       Q.    Okay.  And so, is it possible that as you were
16  approaching 22 [sic] South Central, the police alarm and
17  police flashes were going off?
18            MR. STEFANICH:  Object to the form.
19            THE WITNESS:  Again, if you're referring to our
20      lights and sirens, it might be possible.  I would
21      assume not, but it's -- the nature of this -- or
22      this incident that we would've done that, no.
23  BY MS. GARCIA:
24       Q.    Okay.  But you don't know one way or the
25  other, correct?
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MR. STEFANICH:  Object to the form.  Asked and
 2         answered.
 3              THE WITNESS:  With certainly?  No, ma'am.  I do
 4         not.
 5    BY MS. GARCIA:
 6         Q.   Okay.  And so then it is possible you had the
 7    alarms and sirens on as you were approaching 22 [sic]
 8    South Central on February 11, 2002, correct?
 9              MR. STEFANICH:  Object to the form.  Asked and
10         answered.
11              THE WITNESS:  Yes, ma'am.  It is possible, but
12         unlikely.
13    BY MS. GARCIA:
14         Q.   Okay.  And in your experience as a Chicago
15    police officer for many years, when you have your alarms
16    and sirens going to the scene of a crime, do the
17    suspects tend to keep out the tools in which they may
18    have been committing that crime?
19              MR. MICHALIK:  Object to the form.  Calls for
20         speculation.  Incomplete hypothetical.
21              THE WITNESS:  It depends on the circumstances.
22         Yes.  There have been times when we've arrived on
23         scene where people are still -- like in a street
24         fight, we show up.  Someone is still swinging a
25         baseball bat, trying to strike someone.  People
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1 still have weapons displayed.  So just because we're

2 arriving on scene doesn't necessarily cause people

3 to put their -- their tools away.

4 BY MS. GARCIA:

5 Q.  Sure.  Is it possible that, you know --

6 actually, strike that.  In a situation where you had

7 your alarms and sirens on, is it possible that that

8 would have alerted Mr. Rodgers or any other person at 22

9 [sic] South Central that you were arriving on the scene?

10 MR. STEFANICH:  Objection.  Form.

11 MR. MICHALIK:  Object to the form.  Calls for

12 speculation.

13 THE WITNESS:  As we were arriving on scene,

14 it's possible, but again, sometimes people don't

15 hear the lights and sirens when we're pulling up.

16 BY MS. GARCIA:

17 Q.  Okay.  And I believe you mentioned that when

18 you contact Bomb and Arson on a suspicion of either a

19 bomb or arson, they will then do the follow up and get

20 back to the watch commander regarding next steps,

21 correct?

22 MR. MICHALIK:  Object to the form of the

23 question.  Mischaracterizes his prior testimony.

24 THE WITNESS:  If necessary, the notification is

25 made initially to them.  If there was a situation

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-11 Filed: 05/06/25 Page 36 of 43 PageID #:5440

34

```
 1        where an investigator would arrive, you would
 2        conduct that follow up to determine if there was a
 3        need for furtherance into their investigation and a
 4        hold will be placed on an offender.  At that point
 5        in time, then they would make the notification of
 6        either the desk sergeant, or the watch operations
 7        lieutenant, or watch commander at that time that
 8        there would be a need to place a hold on a subject.
 9   BY MS. GARCIA:
10        Q.   Okay.  And do you recall who went from Bomb
11   and Arson to investigate the scene further?
12        A.   No, ma'am.  That I do not.
13        Q.   Do you recall any other actions that Bomb and
14   Arson took regarding Mr. Rodgers' involvement in
15   potential arson at 22 [sic] South Central?
16        A.   No, ma'am.  I do not.
17        Q.   Okay.
18             MS. GARCIA:  No further questions.
19             MR. STEFANICH:  Nothing from me still.
20             MR. MICHALIK:  Nothing further.
21             MS. GARCIA:  All right.  Oh, sorry, we can go
22        off the record.
23             THE REPORTER:  Off the record.
24                 (Deposition concluded at 10:36 a.m. CT)
25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1            CERTIFICATE OF DIGITAL REPORTER

2                STATE OF ILLINOIS

3

4    I do hereby certify that the witness in the foregoing

5    transcript was taken on the date, and at the time and

6    place set out on the Title page hereof by me after first

7    being duly sworn to testify the truth, the whole truth,

8    and nothing but the truth; and that the said matter was

9    recorded digitally by me and then reduced to typewritten

10   form under my direction, and constitutes a true record

11   of the transcript as taken, all to the best of my skills

12   and ability. I certify that I am not a relative or

13   employee of either counsel, and that I am in no way

14   interested financially, directly or indirectly, in this

15   action.

16

17

18   

OFFICIAL SEAL
KORTNEY CHASE
Notary Public, State of Illinois
Commission No. 939728
My Commission Expires Sep 24, 2025

19

20

21

22   KORTNEY CHASE,

23   DIGITAL REPORTER / NOTARY

24   COMMISSION EXPIRES ON: 09/24/2025

25   SUBMITTED ON: 02/26/2025

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-11 Filed: 05/06/25 Page 38 of 43 PageID #:5442
The Deposition of LT. MICHAEL O'NEIL, taken on December 16, 2020

36

**0**

000432 15:5

000433 15:5

**1**

1 15:4,9 16:1 23:24

10:36 34:24

11 14:2,6 15:16, 19 17:23 21:17 31:12 32:8

117 22:9

11th 18:1,7

13851 11:9

15th 11:1 12:8 30:21

1600 12:6

197 7:15

1993 10:6

1999 10:3,8,9, 10

**2**

2 22:9,11

2000 10:15

2002 10:22,25 11:3,10,24 12:1,8 14:2,6 15:16,19 17:23 18:2,7 21:17 26:7 30:22 31:12 32:8

2020 10:14

22 19:17 31:11, 16 32:7 33:8 34:15

227 18:6 19:14 31:4

23 10:4

**4**

4 10:3

45 13:17

4:00 12:5

**5**

5084 16:9 17:8

**6**

6:00 12:2

**9**

911 12:12

**A**

a.m. 34:24

absent 22:18

academy 10:11,12

accurate 17:22

actions 34:13

additional 25:4

advise 27:3

affairs 9:22

affirm 7:3

afforded 12:25

agree 6:21

agrees 6:24

ahead 9:5 29:2

alarm 30:24 31:3,10,16

alarms 32:7,15 33:7

alerted 33:8

answering 9:13

answers 7:23

Anthony 20:4, 10

apologies 10:9 15:1 17:1 18:23

appearance 6:4

approaching 31:16 32:7

appropriateness 9:14

approved 17:12

approving 9:24 17:11

approximately 10:12

area 6:7 9:6 10:24 16:7 27:14

Arnold 20:24

arrest 9:24 13:1,2,19,20 14:5,16,20 15:15,19 17:22 18:6,16,18,22 19:22,25 20:1, 6,11,12 21:1,3, 4,8,11,17,22 22:6 23:2 24:5 26:10,13 28:4

arrested 24:8 27:22,25 29:19 30:5

arresting 18:1 19:18 22:21 29:23 30:8

arrests 12:14

arrive 34:1

arrived 32:22

arriving 33:2, 9,13

arson 15:23 18:5,11 19:14, 17 23:19,24 24:2,25 26:18

27:12 28:5,7,9, 25 31:4 33:18, 19 34:11,14,15

articulate 22:4

assign 11:12, 18

assigned 9:7, 18,23 10:11,24 11:1,11 12:1 16:20 19:13,17

assignment 9:7

assume 8:4 13:20 23:11 31:21

Assumes 18:9

attempting 29:16

attending 6:5, 7,9

attorney 7:17

audible 7:23

availability 11:19

aware 28:1

**B**

back 9:16 33:20

bad 12:20

baseball 32:25

based 11:12,18 12:14 22:16 23:17 24:4,8,25 25:1,18 26:12 27:11 30:16

basing 29:13

basis 24:19 25:20

bat 32:25

Bates 15:4,5 22:9

beat 11:22,25

beats 11:18

begin 7:7

Bogucki 19:21

bomb 15:23 18:11 23:19,24 24:2,25 28:5,7 33:18,19 34:10, 13

books 24:15 27:17 28:22

bottom 16:3

break 8:12,13

Brian 6:8 14:20

briefly 23:21 24:11

building 27:15

**C**

call 22:8 30:22

called 27:11

calls 12:12 29:1 32:19 33:11

captain 11:14

cars 11:19,22 12:2

case 6:9 9:24 13:1,19 14:17, 19 18:21,25 22:25 23:23 24:15 25:3 26:18 27:1

caught 27:15

Central 18:6 19:14,18 31:5, 11,16 32:8 33:9 34:15

chance 17:14, 17

charge 24:19 25:20,23

charged 21:16, 18 22:5



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

charges 26:13

charging 26:6

Chicago 6:12,
15 8:18,24 9:2
10:2,6,17 32:14

Chicagoland
6:7

circumstance
s 24:5,17 25:1,
11 26:11 31:1
32:21

City 6:12 22:9

clarify 24:12

classification
29:14

clear 25:18

client 20:19

cold 25:10

commander
26:9 27:3 33:20
34:7

committing
32:18

completed
10:16

computer
14:13

concluded
34:24

conduct 12:13
26:21 27:2,19
28:1,9 34:2

conducted
15:24 28:10
30:18

contact 27:13
28:5,12,13
33:18

contacted
18:17 23:24
24:3 28:7

contacting
19:3 24:25

conversation
19:7,9 29:24

Cooper 21:5

copy 14:24

correct 12:17,
18 16:16,17
17:15,18 23:20
24:1 25:21,22
28:10,25 31:25
32:8 33:21

counsel 12:17
13:24

couple 10:4
23:12 26:2

court 7:22 9:16

create 28:23
29:7

crime 24:19
30:25 32:16,18

crimes 21:16,
18

criminal 24:23
25:20 26:21
27:19,23,25
28:21,22

CROSS-
EXAMINATIO
N 23:15

CT 34:24

current 8:20

custodial
15:24 24:12,14,
18 30:19

custody 28:14

_____

D

date 10:3 13:13
17:9,11

dates 11:19

day 16:19,21

day-to-day
9:22

days 10:4

death 20:16

decisions 26:5

defendant 6:9,
12

demeanor
30:4,10

demographics
22:19

Department
8:18,24 9:3
10:2,6,18

depend 31:1

depending
25:10

depends 9:6
32:21

deponent 6:13

deposed 7:18

deposition
8:11 12:19,21,
24 13:5,6,23
14:15 34:24

desk 26:10
27:3 34:6

detailed 30:16

Detective
18:18 19:9,21,
24

determination
26:12

determine
11:16 34:2

Dickson 20:24

direct 7:8 17:2

discovered
24:6 28:3

discussed
13:23

dispatchers
12:12

displayed
30:20 33:1

displaying
29:5

disseminated
9:15

District 11:1
12:8

division 18:18
19:10 29:9
30:22

documentatio
n 14:4

documented
30:17

Dolan 18:17
19:2

doubt 17:21

_____

E

earlier 12:5
14:9 18:5 28:10

Edward 21:5

Emmet 21:9

employed
8:17,18

employee 10:1

encountered
30:11,14,16

ensuring 9:12

essentially
12:11

evening 14:2

evidence 9:7,
10,11,15 18:9

exact 13:13

EXAMINATIO
N 7:8 26:3

exhibit 15:1,4,
9 18:16 22:9,
11,17,22 23:24

exhibits 14:15

experience
32:14

extend 27:4

extent 18:12

F

F-I-T-Z-G-E-R-
A-L-D 6:20
7:14

fact 6:22 21:17
24:7 25:1
27:11,15 29:5
30:18

facts 18:9 26:9

familiar 20:25
21:6

February
10:22,25 11:2,
24 14:2,6
15:16,19 17:23
18:1,7 21:17
31:12 32:8

field 9:18,19
10:13,16,19

fight 32:24

fill 12:4

find 25:5 29:15

fine 14:24

finished 8:14
10:19 15:13

fire 24:10 25:3
28:15,17 29:7,
13

Fitzgerald
6:14,16,19,22
7:1,10,12,18
8:17 14:23
15:6,14 16:4
22:10 26:5

flashers 30:23
31:3,10

flashes 31:17

Fletcher 7:17
15:5 20:19

focused 9:9

follow 14:24
17:25 18:4
23:13 24:4
26:2,24 27:2

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

33:19 34:2

form 18:8
21:19 23:4
27:21,24 28:11
29:1 31:7,18
32:1,9,19
33:10,11,22

found 15:24,25
24:12,18 28:14

foundation
21:20

Friend 21:13

front 14:10

full 6:17 7:11,
24 8:8 24:24

fully 8:7

furtherance
18:12 22:2 34:3

furthered 27:8
28:4

—————
G
—————

G-A-L-L-A-G-
L-Y 11:8

Gallagly 11:8

Garcia 6:6,24
7:9,16 9:25
14:19,22 15:3,
11 18:14,23,24
21:24 22:13
23:7,10 26:2,4
28:6,18 29:10
31:8,23 32:5,13
33:4,16 34:9,
18,21

general 13:1,
19 14:17 18:21,
25 22:25 23:23
24:22 26:18

give 7:4 15:6

good 23:11

Great 7:16

grounds 25:23

—————
H
—————

hand 7:2 30:14,
15

handwriting
16:22,24

handwritten
16:2

happen 26:22

hard 14:24

hear 33:15

Hey 14:14

hire 10:3

hold 10:17 27:7
34:4,8

homeless
25:11

hour 13:17

hours 12:6

Hugh 11:8

hypothetical
32:20

—————
I
—————

identification
15:9 22:11

illegal 24:24

incendiary
28:16,17,24

incident 14:4
18:13 26:16
27:8 31:22

incidents 27:1

including
27:17

Incomplete
32:20

independent
12:15 14:3,5
19:6,8 22:18
26:16 31:14

independently
23:3

individual
22:22 25:6
27:14 28:14

inflammation
28:24

inflammatory
26:20 27:16

information
22:16 24:9 25:4

initially 33:25

interact 22:21

inventoried
9:12

investigate
19:13,17 34:11

investigating
21:5,9,12

investigation
18:13 20:15,18,
23 26:25 27:5,
6,8 34:3

investigations
22:3

investigative
19:4

investigator
34:1

involve 9:19

involved 22:2

involvement
19:13,18 23:19
34:14

involving 22:3

issued 27:7

items 24:22
25:5,22 28:16,
20 29:17

—————
J
—————

James 7:17
20:19

JF 22:9

Johnson 17:13

Join 21:21

—————
K
—————

kind 12:10

knowing 15:22

—————
L
—————

lasted 13:16

late 12:2

lead 28:24

lieutenant
6:13,14,16,18,
22 7:1,10,12,17
8:17,21,24 9:2
11:15 14:18,23
15:5,14 16:4
22:10 23:17
26:5 34:7

lieutenants
9:21

light 29:16

lighting 25:14

lights 31:20
33:15

located 30:1

location 6:4
24:8 25:2

long 8:8 10:1
13:15

—————
M
—————

M-I-C-H-A-E-L
7:13

made 18:11
24:5 33:25

make 12:13
26:5,12 34:5

making 9:15
25:3

man 20:23

manner 29:6,
18,20,22

March 10:14,
15

Mariah 6:6
7:16 14:14
18:21

marked 15:9
22:11 23:23

match 29:16

matches 24:7,
16 25:6,12
27:17 28:22
30:13

material 26:19
27:16

materials
15:24 23:18
24:18 25:19

meet 13:3,5,8

meeting 13:15

mentioned
18:17 24:11
33:17

mere 29:4

met 13:11

Michael 6:13,
19 7:12

Michalik 6:11,
25 9:4 12:17
13:3 14:14
18:8,20 21:21
23:4,12,16
25:25 28:20
29:1 32:19
33:11,22 34:20

minutes 13:17

Mischaracteriz
es 33:23

misconduct
25:20 27:20

Misylik 16:14,
15

Misylik's



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-04768 Document #: 184-11 Filed: 05/06/25 Page 41 of 43 PageID #:5445
The Deposition of DAVID MORALES, taken on December 6, 2022

39

16:23

moment 15:1,6

month 18:5 28:10

month-and-a-half 13:14

months 10:4, 12

morning 17:19

——————

N

——————

N-O-R-A-D-I-N 20:5

named 20:23

nature 9:17 24:25 31:21

necessarily 33:2

needed 25:4, 14

Noradin 20:5

notated 19:5

noted 26:17

notification 18:10 25:3 28:13 29:9 33:24 34:5

notified 26:23

number 7:14 11:9 16:8 17:8 23:24 29:4

——————

O

——————

object 9:4 18:8,20 23:4 29:1 31:7,18 32:1,9,19 33:11,22

Objection 21:19 27:21,24 28:11 33:10

observed 12:14

occurred 18:5 19:14

October 10:3, 10

offender 34:4

offense 13:1, 19 14:17 18:21, 25 22:25 23:23 26:18

office 6:15

officer 10:14, 20,21 11:8 16:2,5,14,15,23 17:11 19:12,16 26:7,8 32:15

officers 6:9 9:13,16,20 11:6,16

on-view 12:14

operations 9:21 34:6

opinion 22:1

opportunity 12:25

original 27:1

——————

P

——————

paper 14:17 24:7 25:6,13,17 27:7,17 28:23

papers 14:9

particulars 26:25

parties 6:3,21

partner 11:2,4, 7,11,19,20 12:3 16:16

Patrick 11:15

patrol 10:20,21 12:11 16:9 26:6,8

patrolling 30:21

patrolman

12:7

Paul 6:11 14:15 23:11

Peggy 17:13

people 14:12 32:23,25 33:2, 14

perfectly 14:24

permission 28:2

person 6:14 22:10,14 28:3 33:8

person's 16:12

phonetic 11:15

physically 30:7

pictured 22:22

pictures 23:1

place 34:8

plaintiff 6:6,24 7:17

plausible 28:8

pocket 29:17

point 27:5 34:4

police 8:18,24 9:3 10:2,6,18 27:13 30:23,24 31:2,3,10,16,17 32:15

portion 15:22

position 8:20 10:7,17

possession 24:6 25:19,22 28:15 29:4,15, 17

potential 19:14,17 26:6, 19,21 27:16 28:8 30:23,25 31:4 34:15

potentially 27:7

preparation 13:6

prepare 12:21, 23

present 26:8

pretty 8:11

print 14:12

printed 17:7

prior 12:19 13:5 26:18 27:12 33:23

PROCEEDINGS 6:1

process 11:10

pronounce 16:12

properly 9:12, 15

property 9:8, 10,11

pull 14:8,19 22:8

pulling 33:15

purpose 24:24

put 11:6,17 30:23 31:2,3,10 33:3

——————

Q

——————

question 7:24 8:2,4,5,7,8,14, 16 12:20 18:9 19:1 23:5 27:11 33:23

questions 9:13,14 23:8 25:25 34:18

quickly 7:21

——————

R

——————

rags 24:7,16

25:5,13,15 27:17 28:22 29:16

raise 7:2 26:20 27:18

rapid 12:2

reason 8:3,12 17:21 22:5

recall 8:23 10:24 13:11,15 15:18,20 16:18 17:10,25 18:4, 19 19:3,24 20:4,9,10 21:2, 5,9,12 23:3 24:2 29:18,22 30:1,4,7,10,13 31:2,6,9 34:10, 13

received 9:10, 16 30:22

recent 24:10 28:15

recently 25:2

recognizing 22:18

recollection 12:15 14:3,5 15:15,21 19:6, 9,23 20:2,8,14, 20,22 22:7,16, 18,20 23:19 26:16 31:14

record 6:2,17 7:11 15:3 34:22,23

recovered 9:8, 10,11

REDIRECT 26:3

refer 14:21

referenced 16:5

referring 31:19

refresh 15:15

refreshed 23:18



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-11 Filed: 05/06/25 Page 42 of 43 PageID #:5446
The Deposition of LT. MICHAEL FLEMING, taken on December 6, 2023

40

refreshing 15:21

regular 11:4,7, 20,25 12:3 16:16

related 13:20

relevance 9:5

remotely 6:7, 10

repeat 19:1

rephrase 8:3 31:9

report 13:1,19 14:16,17,20 16:23 17:11,15, 17,20 18:16,21, 22,25 19:4,5 22:25 23:23 24:15 26:13,18 27:1 30:17

reporter 6:2, 16,21 7:1,7,22 34:23

reporting 16:2, 5 17:22

reports 9:24 14:13,16 26:10

represent 6:8, 12,13 21:15

residence 27:12,19 28:2 30:2

resident 27:16

residents 27:13

responding 12:11

response 20:7

responsibilities 9:2,9,19 12:9

responsible 9:21 26:24

review 12:25 13:21 15:7 17:14,17 22:25 23:17 26:10

reviewed 14:3 18:16

reviewing 9:23 13:18 17:20

Rodger's 19:13

Rodgers 13:2, 20 14:5 15:16, 19 17:22 18:1,6 19:4,19,22,25 20:6,11 21:2,4, 8,12,16 22:15, 21 23:2,25 24:19 25:11 27:5,15,18 28:9 29:19 30:11 33:8

Rodgers' 18:18 23:1 25:19 34:14

roles 9:1 12:8

room 12:16

rotate 12:4

rules 7:21

——————

S

——————

scene 15:23 24:10 25:2 28:15 30:25 31:4 32:16,23 33:2,9,13 34:11

screen 14:21, 25

search 15:24 24:13,14,18 30:18,19

season 25:10

secretary 11:21

section 9:8,11 28:5,8

send 14:15

sense 28:1

sergeant 17:13 18:17 19:2 26:10 27:3

34:6

served 9:20

share 18:15

sharing 14:25

Shenee 21:13

shift 11:25

Shock 19:25

shoes 25:16

short 8:12

show 14:18 32:24

sic 10:6 19:17 20:24 22:9 31:11,16 32:7 33:9 34:15

side 17:7

sideways 15:4

signature 16:11,25 17:2, 9,13

silly 8:16

sirens 31:20 32:7,16 33:7,15

situation 26:17 33:6,25

situations 26:23

Slightly 15:17

solemnly 7:3

Sorel 20:16

sort 28:24

sound 20:25 21:6

source 25:14

South 18:6 19:14,18 31:5, 11,16 32:8 33:9 34:15

speak 19:21

speaking 19:24 20:4,10 21:2,5,9,12

29:23

specific 27:10 29:20,22,24

specifically 9:9 15:20 31:6

speculation 29:2 32:20 33:12

spell 7:11 20:5

spelling 6:19 7:12

spent 10:11

staff 11:22

stamped 15:4

star 7:14 11:9 16:8,9 17:7

start 12:3,5 28:17 29:13

started 10:5,10

state 6:3,17 7:11

states 16:2

station 30:19

steady 12:10

Stefanich 6:8, 23 21:19 23:9, 11,14 27:21,24 28:11 31:7,18 32:1,9 33:10 34:19

steps 33:20

stop 18:15

stops 12:13

street 10:13 32:23

strike 12:16,20 20:10 29:16 32:25 33:6

stuff 25:16

subject 27:6 34:8

subsequent 28:4

sufficient 26:14

suggest 29:12

suggestive 29:6

supervision 9:19

supplied 22:17 24:9

surprise 21:18

suspect 27:6 30:23

suspects 26:6 32:17

suspicion 26:20 27:18 33:18

suspicious 27:14

swear 7:3

swinging 32:24

——————

T

——————

taking 7:22

talked 13:4

taper 24:16

telling 28:19

tend 32:17

terms 24:6 29:20

Terry 14:5 15:16,19 17:22 18:1,6 19:22,25 20:6,11 21:1,2, 4 22:15

testimony 7:3 33:23

thing 15:20 25:17

things 9:17 12:14 29:4



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-11 Filed: 05/06/25 Page 43 of 43 PageID #:5447
The Deposition of LT. JOHN MCCALL, taken on December 16, 2020

41

time 11:5,14,16
12:3,11 13:12
16:16 25:7 27:5
28:3 34:5,7

times 13:8
32:22

tissue 25:16

today's 12:19,
21,24 13:5,6

told 27:13

tools 32:17
33:3

totality 25:1
26:11

towels 24:7,16
25:6,13,17
27:18 28:23

traffic 12:13

training 10:11,
12,13,17,19

transporting
30:24 31:11

traveling 31:4

truth 7:4,5

truthful 17:21

turn 14:1

typically 12:1

_____

U

ultimately
11:13 26:22

underneath
16:3,13

understand
8:2 14:3 26:11
29:21

understood
8:5

unique 25:5

unit 26:24

ups 23:13

_____

V

_____

verbal 7:23

_____

W

_____

Wade 21:9

walking 29:23

warm 25:13,15

watch 9:20
11:21 12:10
26:9 27:3 33:20
34:6,7

watches 9:22
11:12

weapons 33:1

Willie 20:16

wind 11:23

Wojick 20:11

Womac 6:10

work 11:17
16:18,20 20:15,
18,23

worked 11:4,
25

working 10:5
11:23

would've 12:2
15:22 16:14
18:11 24:4
26:23,24 27:7
29:7,8 30:15,
17,19 31:22

wrong 15:1

_____

Y

_____

year 8:23,25
25:7

years 10:4
32:15

_____

Z

_____

Zoom 7:22



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com