# EXHIBIT 14

LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA



# KENTUCKIANA
## — COURT REPORTERS —

# CASE NO. 20-CV-04768

# JAMES FLETCHER JR.

# V.

# JEROME BOGUCKI, ET AL.

## DEPONENT:

## RAYMOND SCHALK

## DATE:

## October 17, 2023



schedule@kentuckianareporters.com

877.808.5856 | 502.589.2273



www.kentuckianareporters.com

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DIVISION OF ILLINOIS

3              JUDGE ANDREA WOOD

4            CASE NO.: 20-CV-04768

5

6            JAMES FLETCHER JR.,

7                  Plaintiff

8

9                    V.

10

11          JEROME BOGUCKI, ANTHONY

12          NORADIN, RAYMOND SCHALK,

13        ANTHONY WOJICK, UNKNOWN CITY

14      OF CHICAGO POLICE OFFICERS, AND THE

15              CITY OF CHICAGO,

16                 Defendants

17

18

19

20

21

22

23  DEPONENT:  RAYMOND SCHALK

24  DATE:      OCTOBER 17, 2023

25  REPORTER:  ZOE NYHUS

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 4 of 124 PageID #:5464

2

```
 1                        APPEARANCES

 2

 3    ON BEHALF OF THE PLAINTIFF, JAMES FLETCHER JR.:

 4    Sean Starr, Esquire

 5    Loevy & Loevy

 6    311 North Aberdeen Street

 7    3rd Floor

 8    Chicago, Illinois 60607

 9    Telephone No.: (312) 243-5900

10    E-mail: Sean@loevy.com

11    (Appeared via videoconference)

12

13    ON BEHALF OF THE PLAINTIFF, JAMES FLETCHER JR.:

14    Jennifer Blagg, Esquire

15    Blagg Law

16    1333 West Devon Street

17    Suite 267

18    Chicago, Illinois 60660

19    Telephone No.: (773) 859-0081

20    E-mail: Jenniferblagglaw.net

21    (Appeared via videoconference)

22

23

24

25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of ANTHONY NORADIN, taken 5/06/25 Page 5 of 124

```
1              APPEARANCES (CONTINUED)

2

3   ON BEHALF OF THE DEFENDANT, THE CITY OF CHICAGO.:

4   Paul Machalik, Esquire

5   Reiter Burns, LLP

6   311 South Wacker Drive

7   Chicago, Illinois 60606

8   Telephone No.: (312) 982-0090

9   E-mail: Pmachalik@reiterburns.com

10   (Appeared via videoconference)

11

12  ON BEHALF OF THE DEFENDANTS, JEROME BOGUCKI, ANTHONY

13  NORADIN, RAYMOND SCHALK, AND ANTHONY WOJICK:

14  Brian Stefanich, Esquire

15  Hale & Monico, LLC

16  53 W Jackson Blvd

17  Suite 334

18  Chicago, Illinois 60604

19  Telephone No.: (312) 341-9646

20  E-mail: Bstefanich@halemonico.com

21   (Appeared via videoconference)

22

23

24

25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                       INDEX

 2                                          Page

 3    PROCEEDINGS                             6

 4    DIRECT EXAMINATION BY MR. STARR         7

 5

 6

 7                     EXHIBITS

 8    Exhibit                               Page

 9    6 - CCSAO Conflicts Screengrab Mugshots    26

10    7 - City JF192-198 Photograph         38

11    8 - City JF18 - Arrest Report of Terry Rogers 38

12    9 - Criminal History of James Fletcher    51

13    10 - General Offense Case Report      64

14    11 - Supplementary Police Report      68

15    12 - Notes Shalk Took During Rogers Interview 74

16    13 - City JF179 - Notes Title General

17         Progress Report                  79

18    14 - City JF180 - Notes Lineup -

19         April 20th, 2022                 83

20    15 - City JF140-147 - Case Supplementary

21         Report                           87

22

23

24

25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of RAYMOND SCHALK, taken on 10/16/2023

| | |
|---|---|
| 1 | STIPULATION |
| 2 | |
| 3 | The VIDEO deposition of RAYMOND SCHALK was taken at |
| 4 | KENTUCKIANA COURT REPORTERS, 730 EAST MAIN STREET, |
| 5 | LOUISVILLE, KENTUCKY 40202 via videoconference in which |
| 6 | all participants attended remotely, on TUESDAY the 16th |
| 7 | day of OCTOBER 2023 at approximately 10:38 a.m. (CT); |
| 8 | said VIDEO deposition was taken pursuant to the ILLINOIS |
| 9 | Rules of Civil Procedure.  The above- referenced |
| 10 | notarial act involved the use of communication |
| 11 | technology.  Specifically, the court reporter appeared |
| 12 | by videoconference pursuant to KRS 423.455 and complied |
| 13 | with all statutory requirements. |
| 14 | |
| 15 | It is agreed that ZOE NYHUS, being a Notary Public and |
| 16 | Digital Reporter for the State of ILLINOIS, may swear |
| 17 | the witness and that the reading and signing of the |
| 18 | completed transcript by the witness is not waived. |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                    PROCEEDINGS

 2

 3        THE REPORTER:  We are now on record.  Will all

 4   parties, except for the witness, please state your

 5   appearance, how you're attending, and your

 6   location?

 7        MR. STARR:  Good morning.  Sean Starr on

 8   behalf of Plaintiff, James Fletcher, from the law

 9   firm of Loevy & Loevy, attending remotely from the

10   City of Chicago.  I'm also joined by my co-counsel

11   today, Jennifer Blagg.

12        MS. BLAGG:  Also in Chicago.

13        MR. STEFANICH:  Brian Stefanich for the

14   individual defendants, attending remotely from

15   Huntley, Illinois.

16        MR. MACHALIK:  Paul Machalik representing

17   Defendant, City of Chicago.  I am attending

18   remotely from Chicago.

19        THE REPORTER:  All right.  And Mr. Schalk,

20   will you please state your full name for the

21   record?

22        THE WITNESS:  Raymond Schalk.

23        THE REPORTER:  And Mr. Schalk, do you have an

24   ID on you that you could hold up to the camera for

25   us?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              THE WITNESS:  I don't.
 2              MR. STARR:  I think we can waive of that.  I -
 3         - we previously deposed Mr. Schalk, and I -- I'll
 4         represent the plaintiff will stipulate that he is,
 5         in fact, Mr. Schalk.
 6              THE REPORTER:  Okay.  We have agreed to
 7         stipulate.  Mr. Schalk, will you please raise your
 8         right hand?  Do you solemnly swear or affirm that
 9         the testimony you're about to give will be the
10         truth, the whole truth, and nothing but the truth?
11              THE WITNESS:  I do.
12              THE REPORTER:  You may begin.
13                   DIRECT EXAMINATION
14    BY MR. STARR:
15         Q.   Good morning, Mr. Schalk.  I represent
16    Plaintiff, James Fletcher.  We met before in your
17    previous deposition.  Do you recall that?
18         A.   Yes, I do.
19         Q.   Okay.  And you understand you're still under
20    oath today, correct?
21         A.   Yes.
22         Q.   All right.  I have a -- obviously, I don't
23    know if you can tell, but I have a cold.  So if you
24    don't understand a question I ask, please ask me to re-
25    ask it and I -- and I'll do that for you, okay?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       A.    Yes.

2       Q.    Sir, last time, I believe that you told us

3  everything that you had an independent recollection of

4  regarding the Willie Sorrell homicide investigation; is

5  that correct?

6       A.    Yes.

7       Q.    So since that last deposition meeting, is

8  there anything new that you have independently recalled

9  beyond what you testified to last time?

10      A.    No.

11      Q.    Okay.  Excellent.  And sir, so therefore, as

12  we stated here today, at this point in the deposition

13  you've told me everything that you independently recall

14  about the Willie Sorrell homicide investigation,

15  correct?

16      A.    Yes.

17      Q.    Is it also correct that you've told me

18  everything you independently recall about the

19  prosecution of James Fletcher for the Willie Sorrell

20  homicide?

21      A.    Yes.

22      Q.    Excellent.  Sir, what did you do to prepare

23  for today's second continuation deposition?

24      A.    I just reviewed the police reports again.

25      Q.    All right.  Did you meet with your attorneys

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1  at all?
 2      A.   I spoke with an attorney, yes.
 3      Q.   On the telephone?
 4      A.   Yes.
 5      Q.   And how long was your conversation with your
 6  attorney in preparation for today?
 7      A.   Oh, just a few minutes.
 8      Q.   All right.  And when did that conversation
 9  take place?
10      A.   Yesterday.
11      Q.   All right.  And did you prepare -- did you
12  meet with your attorneys today at all?
13      A.   Well, just now.
14      Q.   And how much time did you spend meeting before
15  the deposition began?
16      A.   A few minutes.
17      Q.   Okay.  So you -- did you just talk to your
18  attorney for a few minutes in total over the course of
19  two days, once on the telephone and once in person; is
20  that correct?
21      A.   Yes.
22      Q.   Did you do anything else to prepare for
23  today's deposition?
24      A.   No.
25      Q.   Did you talk to Defendant Bogucki about his
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   deposition at all?

 2        A.   No, I didn't.

 3        Q.   Did you talk to him about your deposition at

 4   all?

 5        A.   No.

 6        Q.   Okay.  Sir, during the Willie Sorrell homicide

 7   investigation, did you interview James Fletcher?

 8        A.   Yes.

 9        Q.   Okay.  And was the interview conducted with

10   James Fletcher prior to his arrest for the Willie

11   Sorrell homicide?

12        A.   Yes.

13        Q.   Do you know how long that interview lasted?

14        A.   I don't recall.  It wasn't a -- a very long

15   interview, maybe half an hour.

16        Q.   Who was present for that interview besides

17   yourself?

18        A.   Detective Bogucki and Assistant State's --

19   State's Attorney Jennifer Walker.

20        Q.   Okay.  Did you ever interview Mr. Fletcher

21   outside of the presence of the State's Attorney?

22        A.   No.

23        Q.   What did Mr. Fletcher tell you during that

24   interview?

25        A.   Well, I -- I don't recall the interview. Going
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   by the reports, reports indicate that he -- he denied

2   any knowledge of the murder, denied -- denied being

3   there.  He -- he told us that he was doing too good with

4   his dope business to do any robberies.

5       Q.   Anything else that you recall about that

6   interview besides that?

7       A.   That's basically it.

8       Q.   Do you recall what Mr. Fletcher looked like?

9       A.   I really don't know.

10      Q.   And is it your testimony today that based on

11  your review of the reports, James Fletcher always

12  maintained that he was innocent of the Willie Sorrell

13  homicide?

14      A.   Yes.

15      Q.   He never admitted to you that he had anything

16  to do with it, correct?

17      A.   Correct.

18      Q.   And you testified last time that you and

19  Defendant Bogucki got the case in 1995, but you waited

20  to interview the witnesses Emmet Wade and Sheree Friend

21  until 2002 because you wanted to interview Terry Rogers

22  first; is that correct?

23      A.   Well, we -- we put a stop order on Terry

24  Rogers first, yeah, because he -- he was the one who

25  came up with the name Fletcher.  We thought he was the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1:20-Deposition of Raymond Schalk, Taken 10/16/23 - Page 12

1    most important one to speak with seeing he hadn't been

2    talked to for such a long period of time.

3        **Q.   Right.  So you -- but you waited --**

4    **deliberately waited to interview Emmet Wade and Sheree**

5    **Friend because you wanted to interview Terry Rogers**

6    **first; is that correct?**

7            MR. MACHALIK:  Objection.  Form.  You can

8        answer.

9        A.   Yes.  We felt that Terry Rogers was the most

10   important one to interview next.

11   BY MR. STARR:

12       **Q.   Yeah.  And you also testified last time that**

13   **you felt like Terry Rogers was the first witness that**

14   **you needed to talk to, correct?**

15       A.   Well, it's the one we wanted to talk to next.

16       **Q.   And you further testified at the last**

17   **deposition that the only reason that you thought it was**

18   **important to interview Terry Rogers before interviewing**

19   **Emmet Wade or Sheree Friend was because of Terry Rogers'**

20   **original statement naming Fletcher as an offender; is**

21   **that correct?**

22       A.   Well, yes, we wanted to talk to him about --

23   about that.  He's the one -- the witness who came up

24   with the name Fletcher, and we wanted to interview him

25   about that again because he hadn't been talked to for

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    years.

2        Q.    And you also testified at the last deposition

3    that the fact that Rogers waited 12 years from 1990 to

4    2002 to tell the police that he knew James Fletcher was

5    one of the offenders certainly hurt his credibility a

6    little bit.  Do you recall testifying to that?

7        A.    I don't recall testifying to that.

8        Q.    Is that an accurate statement?

9        A.    Well, he -- he came up with the name Fletcher

10   back in 1990.

11       Q.    Right.  But if I represent to you that in the

12   last deposition, I asked you about the fact that Terry

13   Rogers waited 12 years to tell the police that he knew

14   the full name of the offender, did that give you any

15   pause?  And your testimony was that it hurt his

16   credibility a little bit.  Would you have any reason to

17   dispute that?

18           MR. MACHALIK:  Objection.  You can answer.

19       A.    Well, we certainly questioned him about what

20   he had said back in the 1990 as compared to what he was

21   telling us in 2002.

22   BY MR. STARR:

23       Q.    Do you believe that the fact that Terry Rogers

24   waited 12 years to tell the police that he knew the full

25   name of the offender hurt his credibility at all?

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.   Well, people always don't come forward with
2    all the information right away.  It's not that unusual.
3      Q.   **Did it hurt his credibility at all is my**
4    **question, sir?**
5      A.   No, but it's -- it's something you have to
6    look at.
7      Q.   **Did Rogers' extensive criminal history also**
8    **impact his credibility?**
9      A.   Well, we talk to people all the time with
10   criminal histories.  We don't necessarily look at that
11   as a factor of -- of their credibility.
12     Q.   **So you're -- you were aware that Terry Rogers**
13   **had an extensive criminal history when you interviewed**
14   **him, correct?**
15          MR. MACHALIK:  Objection to form.  You can
16      answer.
17     A.   I believe we were.
18   BY MR. STARR:
19     Q.   **And that had no impact on your -- on your --**
20   **strike that.  Did -- and so Terry Rogers' criminal**
21   **history had no impact on what whether or not you thought**
22   **he was credible; is that correct?**
23     A.   I don't believe his -- his criminal background
24   had an impact on what he was telling us.
25     Q.   **Did the fact that Edward Cooper had previously**



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  told you that he thought Terry Rogers was a drug addict

2  impact Terry Rogers' credibility at all?

3      A.   Well, again, we certainly wanted to talk to

4  Terry Rogers and get a -- a feeling for ourselves what

5  he was saying.

6      Q.   I'm asking you, though:  In your -- in your

7  opinion as a detective, did the fact that Terry or --

8  strike that.  Did the fact that Edward Cooper had

9  previously given you information that he believed that

10 Terry Rogers was a drug act, did that affect Terry

11 Rogers' credibility at all when you interviewed him?

12     A.   Not necessarily.

13     Q.   Did the fact that Edward Cooper had also told

14 you that he thought that Terry Rogers had set him up for

15 the bread truck robbery that led to the homicide of

16 Willie Sorrell, did that affect Terry Rogers'

17 credibility at all in your opinion?

18     A.   Well, again, we wanted to talk to Terry

19 Rogers.  So there was nothing at that point to indicate

20 that he had set up the -- the robbery.

21     Q.   Well, there was, right?  Because Edward Cooper

22 told you that he thought that Terry Rogers set him up

23 there.  There was that piece of evidence, correct?

24     A.   Well, that's his suspicion with -- with no

25 basis to -- to back it up.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    What did you do to investigate whether or not

2  Terry Rogers set up Edward Cooper?

3      A.    Well, we put a stop order.  We tried to find

4  Terry Rogers and put a stop order in when we couldn't

5  find him to talk to him.

6      Q.    Did you ask him if he was involved in the

7  crime?

8      A.    I don't recall specifically.  He certainly

9  didn't say he was involved in a crime.

10      Q.    Okay.  Did you do anything else to investigate

11  whether or not Terry Rogers was involved in the homicide

12  of Willie Sorrell?

13      A.    Well, I don't know the -- what else there

14  would be.  We ended up in interviewing all the witnesses

15  and nobody else indicated that Terry Rogers was

16  involved.

17      Q.    And you don't know whether or not you actually

18  asked Terry Rogers if he was involved, correct?

19      A.    I -- I don't know because I don't remember the

20  interview and it's not -- doesn't specifically state

21  that in the report.  It's very possible we asked him

22  that.  But --

23      Q.    You didn't document your investigation into

24  whether or not Terry Rogers was involved in the bread

25  truck robbery that led to the homicide of Willie

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    Sorrell, correct?
 2              MR. MACHALIK:  Objection.  Form.  Misstates
 3         his testimony.  You can answer.
 4         A.   Well, it -- it certainly was documented in the
 5    interview with Edward Cooper, well, about his suspicions
 6    of Terry Rogers.  So that's -- we weren't hiding
 7    anything on that.
 8    BY MR. STARR:
 9         Q.   My question though, is:  Did you -- did you
10    document any -- in any report anywhere, after Cooper
11    told you that he thought Rogers was involved, that you
12    investigated whether or not Rogers was involved?
13              MR. MACHALIK:  Objection.  Form.  Misstates
14         his testimony.  You can answer.
15         A.   Well, my investigation would be interviewing
16    him, seeing what he said occurred, and interviewing all
17    the witnesses and seeing what they said occurred.
18    BY MR. STARR:
19         Q.   Did the fact that Terry Rogers had just been
20    arrested for attempted arson when you interviewed him
21    impact his credibility at all?
22         A.   Regarding this case?  No.
23         Q.   Okay.  You went on to testify during the last
24    deposition that because of the questions about Rogers'
25    credibility, you had to verify what he was saying with
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

18

```
 1  other witnesses; is that correct?
 2       A.   Well, in -- in any case, we'd want to verify
 3  somebody -- one witness' account compared to other
 4  witnesses.
 5       Q.   You wouldn't have had much of a case if you
 6  only had the word of a convicted felon, like Terry
 7  Rogers, who had waited 12 years to give you James
 8  Fletcher's name, correct?
 9            MR. MACHALIK:  Objection.  Form.  You can
10       answer.
11       A.   Well, in -- in any case, if you only have one
12  witness, it -- it's -- it's not as strong a case.
13  BY MR. STARR:
14       Q.   Would you have had probable cause to arrest
15  James Fletcher for the homicide of Willie Sorrell if the
16  only piece of evidence you had was Terry Rogers after
17  12 years telling you that James Fletcher was one of the
18  offenders?
19       A.   Well, that would've been the State's
20  Attorney's decision.  They're the ones who charge
21  someone with murder.  So we would've presented it to the
22  State's Attorney, and they would've made the decision
23  of, yes, to charge him or, no, not to charge him.
24       Q.   Well, do you go to the State's Attorney and
25  ask whether or not you can arrest every single person
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   that you arrest as a Chicago Police detective?
 2            MR. MACHALIK:  Objection.  Form.  Misstates
 3        his testimony.  You can answer.
 4        A.   Well, we -- we arrest people and bring them
 5   in.  Before we can charge them with felonies, we have to
 6   present the case to the State's Attorney.
 7   BY MR. STARR:
 8        Q.   And would you have arrested James Fletcher for
 9   the Willie Sorrell homicide if the only piece of
10   evidence you had was Terry Rogers after 12 years telling
11   you that James Fletcher was involved?
12            MR. MACHALIK:  Objection.  Form.  Incomplete
13        hypothetical.  You can answer.
14        A.   That probably would've been enough probable
15   cause.  We certainly had more than that when we
16   eventually did charge him, but that probably would've
17   been enough probable cause to bring him in.
18   BY MR. STARR:
19        Q.   And when you allegedly got Edward Cooper to
20   tentatively identify James Fletcher in a photo array,
21   that made it more likely that you could close the Willie
22   Sorrell homicide, correct?
23            MR. MACHALIK:  Objection.  Form.  You can
24        answer.
25        A.   More likely -- I don't -- I don't really
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    understand the question.

2    BY MR. STARR:

3        Q.   Well, it gave you more evidence --

4        A.   I continued the investigation.

5        Q.   Right.  When you got -- when you allegedly got

6    Edward Cooper to tentatively identify James Fletcher in

7    a photo array, that gave you additional evidence to

8    close the cold case, correct?

9            MR. MACHALIK:  Objection.  Form.  You can

10       answer.

11       A.   No.  Then the next step was to -- to find the

12   other witnesses and see what they say.

13   BY MR. STARR:

14       Q.   When you allegedly got Sheree Friend to

15   identify James Fletcher in a photo array, that made it

16   much more likely that you could close the Willie Sorrell

17   cold case, correct?

18           MR. MACHALIK:  Objection.  Form, foundation.

19       You can answer.

20       A.   Well, again, it was another factor in the case

21   that we present to the State's Attorney.  We had the

22   State's Attorney talk to Sheree Friend and take a

23   handwritten statement from her regarding that

24   identification.

25           MR. STARR:  Can we go off the record?  We lost

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1          his video.  I'm sorry.  I didn't mean to interrupt
 2          you, sir.
 3          A.   I said just a statement that was signed by
 4    Sheree Friend.
 5               MR. STARR:  Can we go off the record?  We lost
 6          his video.
 7                    (OFF THE RECORD)
 8               THE REPORTER:  We're back on record.
 9    BY MR. STARR:
10          Q.   Sir, when you allegedly got Mr. Cooper and Ms.
11    Friend to identify James Fletcher in a live lineup, that
12    made it more likely that you could close the Willie
13    Sorrell cold case homicide, correct?
14               MR. MACHALIK:  Objection.  Form.  You can
15          answer.
16          A.   Well, we don't clear the case until the
17    person's charged with murder, until a State's Attorney
18    says, "Yes, charge him with murder".  And then he's
19    arrested and sent to court.  Then we clear the case.
20    BY MR. STARR:
21          Q.   And their alleged identification in the live
22    lineup made it more likely that you would get to a point
23    where you could clear the case, correct?
24          A.   Well, again, we present the State's Attorney,
25    they make their decision.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    You have no independent recollection of any

2   interviews with either Mr. Cooper, Mr. Rogers, or

3   Ms. Friend, correct?

4    A.    No, I don't.

5    Q.    So you don't recall any of them actually

6   identifying James Fletcher, you just know that they did

7   from your reports, correct?

8    A.    Well, I know they did from the reports from

9   the, well, the handwritten statement from Jennifer --

10  from Sheree friend that she gave to Jennifer Walker and

11  signed that.  I -- I know that they testified in the

12  trial and convicted him of murder.

13   Q.    Okay.  Do you recall last time we met, we

14  ended looking at -- give me one second to pull it up

15  here -- a type written GPR that you created.  Do you

16  remember looking at that exhibit?  I think it was

17  Exhibit number 5.

18   A.    I believe so.

19   Q.    Okay.  I'm going to share my screen with you

20  again with Exhibit 5.  We can take a quick -- just

21  quick, it says, "Exhibit 4" on here, but I believe I

22  entered it as Exhibit 5.  Do you recall this document,

23  sir?

24   A.    Yes.

25   Q.    And you reviewed this before your deposition

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    last time, correct?

2        A.    Yes.

3        Q.    When did you and Detective Bogucki compose

4    this document?

5        A.    Well, the date of this report indicates on

6    there, 19 March, '95.

7        Q.    Okay.  So do you believe that's the date that

8    you and Detective Bogucki composed this document?

9        A.    I believe so.

10       Q.    Okay.  Is it possible that you wrote this

11   document on some other date?

12       A.    Not likely.  I don't know what reason there

13   would be.

14       Q.    Okay.  It's not likely, but is it -- is it

15   possible?

16       A.    No.  I mean, if the -- the report says, "Date

17   of this report, 19 March, '95," that's the date of the

18   report.

19       Q.    But you had no independent recollection of

20   creating this document, correct?

21       A.    Correct.

22       Q.    Is it possible that you composed this document

23   in 1999?

24       A.    No.

25       Q.    Is it possible you composed this document in

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    2002?

2        A.   No.

3        Q.   Did you and Detective Bogucki have any

4    specific conversations prior to your first deposition

5    where you discussed whether or not you were allowed to

6    type GPRs for a short period of time in 1995?

7        A.   I don't know if we had a conversation with

8    each other about it.  I -- I mean, I -- I know we were

9    allowed to do that.

10       Q.   Right.  You testified to that last time,

11   correct?

12       A.   Yes.

13       Q.   And you testified about how you were allowed

14   to type GPRs during this time period.  I think without

15   even there being a question posed about whether or not

16   you were allowed to type GPRs in 1995.  Do you recall

17   what time period it was that you were "allowed" to type

18   GPRs?

19       A.   No, I don't.

20       Q.   Detective Bogucki testified to the exact same

21   thing that there was a time period where detectives were

22   allowed to type GPRs.  Do you find that curious at all?

23            MR. MACHALIK:  Objection.  Form.  You can

24       answer.

25       A.   No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MR. STARR:

Q.    You have an independent recollection about there being a small time period in which you were "allowed" to type GPRs, correct?

        MR. MACHALIK:  Objection.  Form.  You can
    answer.

A.    I just recall that.  I don't remember specifically when it was.  It obviously it has to be a very short report like this.

BY MR. STARR:

Q.    And it would have to have been during the March of 1995 period, correct?

A.    Yes.

Q.    Otherwise, you would've hand wrote this?

A.    Otherwise, it could be included in a supplemental report to the homicide.

Q.    Right.  But if you were going to submit it as a GPR, if it wasn't during that period of time where you were allowed to type GPRs, it would've been a handwritten GPR, correct?

A.    Well, handwritten GPRs are just notes.  The -- an actual report will be submitted on a supplemental report.

Q.    Okay.  But when you created GPRs for any other period, except for this time period where you were

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   allowed to type them, they would've been handwritten,

2   correct?

3        A.   Yes, handwritten notes.

4            MR. STARR:  Okay.  All right.  Let's take a

5        look at another exhibit.  I'll mark this as

6        Exhibit 6. And for the record, this is the CCSAO

7        Conflicts 1761 through 1767.

8            (EXHIBIT 6 MARKED FOR IDENTIFICATION).

9   BY MR. STARR:

10       Q.   Sir.  Do you see the document on your screen?

11       A.   Yes.

12       Q.   Okay.  I'm going to just scroll through it.

13  You see that Bates stamp at the bottom, it says 1761

14  right here.

15       A.   1761.  I don't see 1761.

16       Q.   Right in the bottom right-hand side above the

17  date.  Do you see the date?

18       A.   Oh, yeah.  I see -- I see that.  Yes.

19       Q.   Well, I guess while we're looking at it, do

20  you -- what date is in the corner right-hand pocket or

21  corner right-hand of this document?

22       A.   2-12-02.

23       Q.   Okay.  Does that tell you that this document

24  was printed on 2-12-02?

25       A.   Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1 Q. Okay.  And I'm just going to scroll through

2 this, so you get a chance to see this.  You see this

3 first photograph is a photograph of someone by the name

4 of Arnold Dixon (phonetic), correct?

5 A. Arnold Dixon, also known as James Fletcher.

6 Q. Okay.  So do you recognize this individual in

7 this document that's on the screen, which is 1761?  Do

8 you recognize that individual as James Fletcher?

9 A. I don't recall that.  I know that James

10 Fletcher was in prison under the name of Arnold Dixon.

11 Q. Okay.  So you have a -- you have an

12 independent recollection that he was in prison under the

13 name of Arnold Dixon, correct?

14 A. Well, from the reports, I -- I remember that.

15 Q. Okay.  So then I'm just going to scroll

16 through.  Let me know if you want me to stop.  I'm just

17 showing you these seven different photographs.  They're

18 all people with the last name Dixon, correct?

19 A. Yes.

20 Q. Okay.  And did you have a chance to briefly

21 see all these photographs?

22 A. Yes.

23 Q. Okay.  And have you seen these documents

24 before, these photographs?

25 A. I believe this is a photo array that we showed

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 30 of 124

1   witnesses back in '02.

2       Q.   Did you review this photo array in preparation

3   for today's deposition at any point?

4       A.   No.

5       Q.   And so you believe that this photo or these

6   photos are the photo array that you showed witnesses in

7   the Willie Sorrell homicide in 2002, correct?

8       A.   Well, that's the report indicates that I -- I

9   brought up photos of Dixons -- IDOC photos of Dixons,

10  including Arnold Dixon, James Fletcher, and put that in

11  the photo, and they were subsequently inventoried.

12      Q.   How did you learn that James Fletcher used an

13  alias of Arnold Dixon?

14      A.   I don't recall if -- it came up running James

15  Fletcher's name or I'm -- I'm -- I don't recall exactly

16  how.

17      Q.   What did you do to determine whether or not

18  any of the witnesses to the Willie Sorrell homicide knew

19  that James Fletcher had used the alias Arnold Dixon

20  prior to showing them these photos?

21      A.   I don't recall doing anything about that.

22      Q.   Did any of the witnesses ask you why you were

23  showing them photographs with the names of the suspects

24  in the fillers on them?

25      A.   No, I don't recall that.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 31 of 124 PageID #:5491
1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 31 of 124

29

1      Q.   Did any of the witnesses ask you why you were

2  showing them photographs of the suspect and the

3  witnesses with all this personal characteristic

4  information, including the birth, the weight, the hair,

5  the sex, the height, the race, and the eye color?

6           MR. MACHALIK:  Objection.  Form.  You can

7      answer.

8      A.   I don't recall anybody saying that.  Of

9  course, they're -- they're looking at a photograph.

10 They're not looking at the rest of it of whatever's on

11 there.

12 BY MR. STARR:

13     Q.   Well, I believe your prior testimony and your

14 co-defendant, Defendant Bogucki, have testified that

15 these are the photographs in the form they were shown to

16 witnesses; is that not correct?

17     A.   I believe it is.

18     Q.   Okay.  So you would've shown this photograph

19 and the other six photographs to the witnesses with all

20 the IDOC information that's currently present on those

21 on these documents, correct?

22     A.   Again, I don't recall the photo array, but if

23 -- if that's how they were inventoried, then that's what

24 we showed.

25     Q.   Right.  So you didn't do anything to redact



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 32 of 124

30

```
 1    any of the names or personal characteristics on these
 2    documents, correct?
 3         A.   Not that I remember.  No.
 4         Q.   You didn't do anything to redact the fact that
 5    these were people that were inmates in the IEOC,
 6    correct?
 7         A.   No, I didn't.
 8         Q.   Did you ask any of the witnesses if they knew
 9    anyone by the name of Dixon?
10         A.   I don't recall asking anybody that.
11         Q.   Did you ask any of the witnesses if they knew
12    anyone with the name of Arnold Dixon?
13         A.   I don't recall that, no.
14         Q.   How many other times besides this case have
15    you shown a witness a photo of a suspect with their name
16    listed on it?
17         A.   How many times?  I don't know.  There -- it's
18    very possible there were other times.  And in fact, the
19    real name isn't on there.  James Fletcher isn't on
20    there.
21         Q.   Okay.  Have you ever shown a witness, other
22    than in the Willie Sorrell homicide, a photograph in a
23    photo array with a name listed on it?
24         A.   That's possible.  I don't recall when -- when,
25    though.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1       Q.   Can -- you can't tell me a single case where
 2  you did that; is that correct, sir?
 3            MR. MACHALIK:   Objection.   Asked and answered.
 4       A.   I don't recall specific cases, but I -- would
 5  imagine there were.
 6  BY MR. STARR:
 7       Q.   Would you agree with me that it was highly
 8  unusual to show witnesses a photo array that contain the
 9  names of the witnesses or of the suspects and the
10  fillers?
11       A.   Well, most of our photo arrays don't have
12  names on them.   Most of the photos, they -- they have an
13  IR number, but they don't have the names, which is
14  generally the photos we use for photo arrays.
15       Q.   So would you agree with me that it was highly
16  unusual to show these witnesses a photo array with the
17  names listed on the photos?
18            MR. MACHALIK:   Objection.   Form.   You can
19       answer.
20       A.   I don't know when I've done it before, but I
21  -- I would guess I have, but it's generally, there's no
22  name on it.
23  BY MR. STARR:
24       Q.   So it's pretty unusual, correct?
25            MR. MACHALIK:   Objection.   Asked and answered.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Somewhat.

 2   BY MR. STARR:

 3        Q.    Did you ever consider covering up the names of

 4   the individuals on these photos?

 5        A.    No.  Because James Fletcher's name wasn't on

 6   there.

 7        Q.    You did -- you previously testified that you

 8   printed these photos off of the IDOC website; is that

 9   correct?

10        A.    I believe so.

11        Q.    Okay.  Do you know when you did that?

12        A.    Well, 2-12-02 is what it says on that -- this

13   photo.

14        Q.    Okay.  Other than Edward Cooper and Sheree

15   Friend, did you show these photos to anybody else?

16        A.    Well, to Terry Rogers, of course.

17        Q.    You showed these photos to Terry Rogers?

18        A.    Yes.

19        Q.    Okay.  Other than Terry Rogers, Sheree Friend,

20   and Edward Cooper, did you show these photos to anyone

21   else?

22        A.    No.  I don't think I did.  No, I didn't.

23        Q.    And you showed this photo to Terry Rogers on

24   February 12, 2002; is that correct?

25        A.    I believe so.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And you interviewed Mr. Rogers on that same

2    occasion; is that correct?

3    A.   Yes.

4    Q.   This was in the first time -- strike that. Was

5    this the first time the Chicago Police had interviewed

6    Terry Rogers?

7    A.   No, he was interviewed back in 1990 when the

8    -- when the homicide happened.

9    Q.   Had you prior -- previously interviewed Terry

10   Rogers before this time?

11   A.   No.

12   Q.   What did you do to confirm that Terry Rogers

13   did not know that Fletcher's name was Arnold Dixon?

14   A.   Well, the only name he gave me was James

15   Fletcher -- Jimmy Fletcher.

16   Q.   Did you ask him if he knew that James Fletcher

17   used any aliases?

18   A.   I don't recall asking him that.

19   Q.   Why didn't you use the Chicago Police

20   Department IR photos instead of these photos?

21   A.   I think this was just a -- he told us he was

22   in prison with -- had been in prison with -- with

23   Fletcher.  I think it was what we found searching for

24   -- for him.  And that's what he brought up.

25   Q.   So Terry Rogers told you that he knew that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   James Fletcher was in prison, correct?

 2        A.   Well, he --

 3             MR. MACHALIK:  Form, misstates his testimony.

 4        You can answer.

 5        A.   He told us that he had previously been in

 6   prison with Fletcher.  I don't know if he told us he was

 7   in prison now.

 8   BY MR. STARR:

 9        Q.   Did you do anything to determine whether or

10   not the previous time that Terry Rogers was in prison

11   with James Fletcher, whether or not James Fletcher was

12   in prison under the name Arnold Dixon?

13        A.   I don't recall that.

14        Q.   Okay.  And when you were interviewing Terry

15   Rogers, he was under arrest at this point for a -- for

16   attempted arson, correct?

17        A.   I know he was under arrest.  If -- if -- I

18   don't recall what the charge was.

19        Q.   Do you -- if I represent to you that he was --

20   he was arrested with paper towels and lighter fluid and

21   he was arrested for attempted arson, would you have any

22   reason to dispute that?

23        A.   Like I -- again, I said I -- I know he was

24   arrested for something.  I don't recall specifically

25   what he was in custody for.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.    So he was under arrest at the point in which

2 you showed him this photo array, correct?

3     A.    Yes.

4     Q.    Were any promises made to Terry Rogers by

5 either you or Detective Bogucki?

6     A.    No.

7     Q.    Were you aware of any promises that were made

8 to Terry Rogers by anyone from the State's Attorney's

9 Office?

10     A.    No.

11     Q.    I'm going to show you another document, sir.

12 And this, for the record, is City JF 192 through 197.

13 All right, sir.  These are just a series of, I believe,

14 all color photographs.  I'm going to scroll through

15 them.  Please let me know if you want me to stop, if you

16 want to look at one with any more particularity, okay?

17 See the Bates at the bottom, the first one is City JF

18 192?

19     A.    Yes.

20     Q.    All right.  The Bates at the bottom of the

21 last document is 198.  Do you see that, sir?

22     A.    Yes.

23     Q.    Did you have a chance to look at these photos?

24     A.    Briefly, yes.

25     Q.    Okay.  Do you recognize any of the men in

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1:20-Deposition Document #: 18-14 Filed: 05/06/25 Page 38 of 124

36

```
 1   these photos?
 2        A.    No, I don't.
 3        Q.    Do you recognize this person in the first
 4   photo?
 5        A.    I don't.
 6        Q.    If I told you this was Terry Rogers, would
 7   that refresh your recollection at all?
 8        A.    I -- again, I don't recall what Terry Rogers
 9   looked like, so I don't know.
10        Q.    Okay.  What about the photograph found on the
11   bottom of City JF 193; do you see this individual?
12        A.    I do.
13        Q.    She's got, like, a NFL coat on there.  You see
14   in the side view; you can see that this coat says NFL?
15        A.    Yes.
16        Q.    Do you recognize this individual?
17        A.    No, I don't.
18        Q.    Right.  So if this is Fletcher Clinton, would
19   that refresh your recollection at all?
20        A.    No.
21        Q.    Okay.  Were any of these photos shown to Terry
22   Rogers?
23        A.    Not that I know of.  I believe the only photos
24   shown to him were the IDOC photos.
25        Q.    Were any of these photos shown to Emmet Wade?
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.   No.

2     **Q.   Were any of these photos shown to Edward**

3 **Cooper?**

4     A.   No.

5     **Q.   Were any of these photos showed to Sheree**

6 **Friend?**

7     A.   No.  Now, if -- if some of these photos were

8 shown to Edward Cooper along with Fletcher Clinton, that

9 -- that's a possibility.  I don't know if that's the

10 case.

11     **Q.   Does looking at -- do any of these photos**

12 **refresh your recollection at all, sir?**

13         THE REPORTER:  I'm sorry to interrupt.  Would

14     you like to mark that as Exhibit 6?

15         MR. STARR:  Yeah, I thought it was 7.

16         THE REPORTER:  I believe we're on 6.  The last

17     one, 5, being CCSAO, the screen grab of mugshots.

18         MR. STARR:  Okay.  We'll figure that out after

19     the dep.  I think I thought that I marked five

20     exhibits last time, which would've brought us to

21     Number 7 in the last one.  But you're probably more

22     correct than I am. So why don't we just keep going?

23         THE REPORTER:  Okay.

24         MR. STARR:  But I do want to mark it as an

25     exhibit, okay?  Excellent.  Thanks.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                (EXHIBIT 7 MARKED FOR IDENTIFICATION)
 2   BY MR. STARR:
 3        Q.   I'm going to show you another exhibit here,
 4   sir, which -- I have as marked as Exhibit number 8, but
 5   we'll figure it out.
 6                (EXHIBIT 8 MARKED FOR IDENTIFICATION)
 7             THE REPORTER:  We can go ahead with your
 8        count.
 9             MR. STARR:  Yeah, okay.
10             MR. MACHALIK:  And for what it's worth, Sean,
11        I'm tracking with your numbering.
12             MR. STARR:  Okay.  Thanks, Paul.
13   BY MR. STARR:
14        Q.   All right.  I'm going to show you what I'm --
15   oh, this is the wrong one.  I'm sorry.  All right. This
16   is what I'm marking as Exhibit number 8.  And for the
17   record, it's City JF 18.  All right.  Sir, you see this
18   document on your screen?
19        A.   Yes.
20        Q.   Okay.  It's a one-page document.  Do you see
21   that?
22        A.   Yes.
23        Q.   Okay.  Have you seen this document before?
24        A.   I -- I believe I have this -- a copy of this,
25   included with the reports that I was given.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    And did you review it for -- in preparation

2  for today's deposition?

3    A.    No, I didn't.

4    Q.    For the record, can you tell me what this

5  document is?

6    A.    It's an arrest report of Terry Rogers.

7    Q.    And do you see your name anywhere on this

8  arrest report, sir?

9    A.    My name?

10   Q.    Yeah.

11   A.    No.

12   Q.    Do you have an independent recollection of

13 seeing this document during the Willie Sorrell homicide

14 investigation?

15   A.    No.

16   Q.    Do you know if you ever saw this document?

17   A.    I don't recall.

18   Q.    All right.  Can you tell me based on your

19 experience as a Chicago police detective, what date and

20 time Mr. Rogers was arrested on, according to this

21 report?

22   A.    Let's see.

23   Q.    I can zoom in a little bit for you too, if

24 that makes it easier.

25   A.    Okay.  Yeah, date of arrest, 11 February '02

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   at 2330 hours.

 2        Q.   And 2330 hours, is that 11:30 p.m. in --

 3        A.   Yes.

 4        Q.   -- laymen's parlance?  Okay.

 5        A.   Yes.

 6        Q.   When were you first notified by an

 7   investigative alert or a stop order that Terry Rogers

 8   had been arrested?

 9        A.   Probably the next day.  I'm not sure.  It

10   could take some time for the paperwork to go through and

11   then for them to realize that there's a stop order on

12   Terry Rogers.

13        Q.   In your experience, how much time did that

14   usually take?

15        A.   It can take hours.  It can take a day.

16        Q.   Do you know who notified you that there was a

17   stop order in on Terry Rogers?

18        A.   No, I don't.

19        Q.   What did you do in response to finding out

20   that Terry Rogers had been arrested?

21        A.   I believe we had taken custody of him from the

22   15th District lockup and brought him to (Inaudible).

23        Q.   Okay.  And that was my next question.  Was it

24   -- what district was he arrested in?  You believe was

25   the 15th?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    Yes.

2    Q.    Does this -- does this document tell you that?

3    A.    Beat of arrest is 15-22, yes.

4    Q.    Okay.  What is this information here at the

5 top of the document that's not handwritten, that's

6 typed?  What does this information tell you?  I want to

7 zoom in a little bit for you.  Do you see that

8 information at the top?  It's computers -- computer

9 script.

10    A.    There's a date of 12 February '02 at 00:52

11 from 15th District.  There's phone number.  It's

12 probably police phone number, 312-746 number.  I don't

13 know what -- what's that -- that is to.

14    Q.    Does this information tell you when Terry

15 Rogers was transported from the 15th District to

16 Area 5?

17    A.    No.

18    Q.    Do you know when Terry Rogers was transported

19 to Area 5?

20    A.    No.  There -- there -- he had to be signed out

21 of the 15th District lockup.  So there should be a -- a

22 report about that.  There -- it may be on the -- the

23 back of the arrest report.

24    Q.    Do you see the handwritten thing on the

25 righthand side of the top here that says, "Leads"?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   Uh-huh.  Yes.

 2        Q.   Does -- what does that indicate to you, sir?

 3        A.   Leads is a -- was a computer program.  I don't

 4   know if that's where they discovered we had the stop

 5   order on Leads or -- or I would assume the lockup wrote

 6   that on there.

 7        Q.   Does that possibly indicate to you that Leads

 8   had tripped the stop order at that point in time?

 9        A.   It's possible.

10        Q.   Okay.  So it's possible that the stop order

11   had been notified as of 12:52 on February 12th of --

12        A.   Well, that date and time --

13        Q.   Correct?

14        A.   That date and time might have nothing to do

15   with the fact that Leads was written on there.

16        Q.   But it -- but it could indicate that this is

17   the time in which the notification went out that there

18   was a stop order on this individual, correct?

19        A.   No, I wouldn't think so.

20        Q.   Why not?

21        A.   It -- it's -- it looks like computer-generated

22   time.  I don't -- I don't think that that has anything

23   to do with it.

24        Q.   You see the -- underneath the computer-

25   generated information that you were just talking about,
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   do you see the handwritten note that says -- does it say

2   "sister" and then a phone number?

3        A.   Yes.

4        Q.   And then a name and the last name, it appears

5   to be Rogers?

6        A.   Yes.

7        Q.   Do you have any recollection of ever

8   contacting Terry Rogers' sister?

9        A.   I don't.  That's my handwriting, but I don't

10  know when I wrote that or -- or -- no, I don't remember

11  contacting his sister.

12       Q.   Well, that was my next question.  Who's -- if

13  you know whose handwriting that is.  So that's your

14  handwriting, sir?

15       A.   Yes.

16       Q.   All right.  So you wrote the sister's name and

17  phone number on this document at some point in time.

18       A.   At some point, probably on a -- a Xerox copy

19  of the arrest report.

20       Q.   All right.  How long after Terry Rogers was

21  arrested did you have -- first have contact with him?

22       A.   I don't recall a specific time period.  I

23  believe it was the next day.

24       Q.   Okay.  And we're going to look at this report

25  in a minute, but I don't have it up.  But according to

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   your sub-report, it states that it was 7:30 p.m. on

2   February 12th, 20 -- 2002.  Does that sound correct?

3        A.   If that's what report says, yes.

4        Q.   And that's City JF 144 for the record.  Can

5   you explain to me what happened when Terry Rogers was

6   transparent -- transported Area 5?

7        A.   Well, he would've been brought up, placed in

8   an interview room.  Myself and Detective Bogucki

9   would've introduced ourselves and told him what we

10   wanted to talk to him about, the -- homicide from Deck

11   in 1990.  And we'd like to hear from him what happened.

12        Q.   And what do you recall -- do you have any

13   recollection at all what he told you?

14        A.   Again, I'm going by the report.  No, I don't

15   recall the interview.

16        Q.   Okay.  So based on the reports, what is it

17   Terry Rogers tells you?

18        A.   Well, I -- I'd have to see the report to give

19   you a word for word, but basically he was out there on -

20   - on the street corner nearby selling dope, that Jimmy

21   Fletcher came up to him and asked him if he had any dope

22   to buy.  And then sometime later, he sees Fletcher and

23   another -- another offender robbing a blood -- bread

24   truck driver, and then fleeing from the bread truck

25   drive -- driver with the bread truck driver in pursuit

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    and gunshots were exchanged.

2         Q.   Did you ask him if he actually heard anyone

3    yell the name Fletcher or not?

4         A.   I asked him -- well, the report indicates that

5    we asked him what -- why his account back in '90 --

6    1990, is different to what he's saying now.

7         Q.   Yeah, that's not my question, though.  Did you

8    ask him whether or not he actually heard anyone yell the

9    name Fletcher?

10        A.   Well, again, the report indicates he doesn't

11   remember what he said back then, so it'd be very

12   possible I asked him whether he heard somebody yell it

13   and why he said that back then.

14        Q.   Did you find it at all surprising that, after

15   12 years, Terry Rogers was now telling you that he in

16   fact knew who the -- who one of the suspects was?

17        A.   No, it -- it's the -- some people don't want

18   to say everything at first.  I don't -- why he didn't

19   say it all back then, I don't know.

20        Q.   Do you think that the fact that he was under

21   arrest for arson had any -- played any role in him

22   telling you that he thought that James Fletcher was one

23   of the suspects?

24             MR. MACHALIK:  Objection.  Form.  Misstates

25        the evidence.  You can answer.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       A.   No, he never indicated anything like that.

2    BY MR. STARR:

3       Q.   Did you do anything to find out -- to

4    corroborate Rogers' statement that James Fletcher was

5    buying drugs or wanted to buy drugs?

6       A.   No.

7       Q.   Do you know if James Fletcher was a drugs --

8    drug user?

9       A.   No, I don't.

10      Q.   Did you do anything to investigate whether or

11   not James Fletcher was a drug user?

12      A.   No, I didn't.

13      Q.   What did you do to verify -- strike that.  How

14   long did it take you and Detective Bogucki to get Terry

15   Rogers to tell you that James Fletcher was one of the

16   shooters?

17           MR. MACHALIK:   Objection to form.

18      A.   I think he gave us the story right away.  The

19   report doesn't indicate there's any time period there.

20   BY MR. STARR:

21      Q.   And if it -- if it had taken a longer time

22   period, that would've been documented, correct?

23      A.   If there had to been -- if there had to be

24   multiple conversations with him before he told us that,

25   it would've been documented.  Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   What did you do from an investigative

2  standpoint after Rogers told you the name Jimmy Fletcher

3  or James Fletcher?

4      A.   Well, it -- obviously, we were able to bring

5  up the IDOC photograph.

6      Q.   That was the next -- I interrupted.  I

7  apologize.  Go ahead.

8      A.   The -- the -- and so we could identify the

9  James Fletcher he's talking about and put the photo

10  array together and show him the photo array.

11      Q.   So the next investigative step after Terry

12  Rogers gives you the name James Fletcher is to pull up

13  the IDOC photograph of Arnold Dixon, correct?

14      A.   I believe so.

15      Q.   How did you know that the guy in prison named

16  Arnold Dixon was the James Fletcher that Terry Rogers

17  was identifying?

18      A.   Well, he -- he had -- he picked him out of the

19  photo array.

20      Q.   Right.  But how'd you know to pull up that

21  particular photo of that particular Arnold Dixon?

22      A.   I don't recall how we got the alias Arnold

23  Dixon from James Fletcher, but obviously we did.

24      Q.   Did you investigate any other James Fletchers

25  besides the James Fletcher who's the plaintiff in this

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    case?

2         A.   I don't recall knowing of any other James

3    Fletcher.

4         **Q.   Did you pull any other IR histories of any**

5    **other James Fletchers besides the James Fletcher who's**

6    **the plaintiff in this case?**

7         A.   Again, I don't recall knowing of any other

8    James Fletcher.

9         **Q.   Did you request any other Chicago Police**

10   **Department photographs of a James Fletcher besides a**

11   **James Fletcher that's a plaintiff in this case?**

12        A.   Well, if -- if I didn't know of any other

13   James Fletchers, I couldn't ask for photos.

14        **Q.   But how did you know of this James Fletcher,**

15   **sir?**

16        A.   Because we were -- somehow were able to -- to

17   connect name Arnold Dixon to James Fletcher and find him

18   in prison as Arnold Dixon.

19        **Q.   Did you do anything to document how you were**

20   **able to determine that the James Fletcher that Terry**

21   **Rogers was telling you is one of the suspects was the**

22   **same James Fletcher who used the alias Arnold Dixon in**

23   **IDOC?**

24        A.   Well, obviously he identified the photo as the

25   offender, as -- as the James Fletcher he knows --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   That's not my question, sir.

2    A.   He's known -- knows from prison and he's known

3    from the neighborhood.

4    Q.   That's not my question.  My question is:  Did

5    you do anything to document how you were able to

6    determine that the name James Fletcher, that Terry

7    Rogers was giving you was the same person who was using

8    the name Arnold Dixon in IDOC?

9    A.   Well, we -- we obviously put Arnold Dixon's

10   photograph in a -- in a photo array.

11   Q.   That's not -- that's, again, not the question

12   I'm asking.  Before you put the photo array in front of

13   Mr. Rogers, did you do anything to document how it is

14   you went from James Fletcher, the name that Terry Rogers

15   was giving you, to the individual in prison at IDOC

16   named Arnold Dixon?

17   A.   I believe the report indicates that we were

18   able to determine that James Fletcher was under the name

19   of Arnold Dixon incarcerated and in -- in prison. And

20   that's why we brought up the photos.

21   Q.   And how were you able to determine that, sir?

22   A.   I don't recall right now.

23   Q.   And how were you able to determine at the

24   James Fletcher that you pulled the criminal IR history

25   for was the right James Fletcher?

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1:20-Deposition of Raymond Schalk taken 05/06/25 Page 52 of 124

1     A.   Well, obviously we put the -- got the photos

2  from IDOC and put them in a photo array and showed the

3  James Fletcher who identified it.

4     **Q.   Okay.  So it was a lucky guess, right?**

5         MR. MACHALIK:  Objection.  Form, misstates his

6       testimony.  You can answer.

7     A.   No.  I mean, we looked at James Fletcher and

8  then discovered he was Arnold Dixon.  His alias is

9  Arnold Dixon and he's in prison.

10  BY MR. STARR:

11     **Q.   Were there any other James Fletchers that were**

12  **ever arrested by the Chicago Police Department before**

13  **February of 2002 besides my client?**

14         MR. MACHALIK:  Objection.  Form, foundation.

15       You can answer.

16     A.   I don't have any information about that.

17  BY MR. STARR:

18     **Q.   Okay.  So after Terry Rogers gives you the**

19  **names James Fletcher, you pull an IR history for James**

20  **Fletcher, correct?**

21     A.   No, we searched the IDOC because he told him -

22  - told us he'd been in prison with him.

23     **Q.   Okay.  Did you ever pull an IR history for**

24  **James Fletcher?**

25     A.   Sure, at some point.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.    So it's your testimony that you searched
 2   IDOC's photographs for James Fletcher before you pulled
 3   the IR history, correct?
 4        A.    I don't recall which we did first --
 5             MR. MACHALIK:  Objection.  Form.  You can
 6        answer.
 7        A.    I don't recall which we did first.
 8   BY MR. STARR:
 9        Q.    Okay.  But somehow you went from the -- just
10   having the name James Fletcher to having IDOC
11   photographs of Arnold Dixon, correct?
12        A.    Somehow we connected the -- the name of James
13   Fletcher having an alias of Arnold Dixon.
14        Q.    And I'm asking if you can tell me how you
15   connected that was dots?
16             MR. MACHALIK:  Objection, asked and answered.
17        A.    I can't, no.
18   BY MR. STARR:
19        Q.    Okay.  Let's take a look at another exhibit.
20             MR. STARR:  I'm going to mark this as
21        Exhibit 9.  This is the CJF 45-44.
22                   (EXHIBIT 9 MARKED FOR IDENTIFICATION)
23   BY MR. STARR:
24        Q.    Do you see this document on the screen, sir?
25        A.    Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1      Q.   And this is a one-page document.  Do you see
 2  the Bates stamp at the bottom, 45-44?
 3      A.   Yes.
 4      Q.   Okay.  And what is this document, sir?
 5      A.   Appears to be the criminal history of a James
 6  Fletcher.
 7      Q.   Have you reviewed this document in preparation
 8  for today's deposition?
 9      A.   No.
10      Q.   Do you know if you've ever seen this document
11  before today?
12      A.   I probably have.  If it -- if it was in the
13  file, I certainly would've.
14      Q.   Do you have any independent recollection of
15  seeing this document report before today?
16      A.   No, I don't
17      Q.   See the handwriting at the top of the document
18  there, sir?
19      A.   Yes.
20      Q.   Is that your handwriting?
21      A.   Appears to be.
22      Q.   And it -- the case number, do you see that?
23      A.   Yes.
24      Q.   Can you read that into the record, so we have
25  a -- so I have a clear understanding of what that says.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    Case number looks like 0247064601.

2    Q.    Okay.  So 0247064601; is that correct?

3    A.    That's what it looks like.

4    Q.    All right.  And this is the IR history of

5 James Fletcher, correct?

6    A.    Of a James Fletcher.

7    Q.    Of a James Fletcher, right.  And you can see

8 that this document contains the name Arnold Dixon?

9    A.    Yes.

10    Q.    Is that where you got the name Arnold Dixon

11 from?

12    A.    Possible.

13    Q.    Okay.  Let's take a look.  What date does it

14 say this was requested on?

15    A.    February 12, 2002.

16    Q.    All right.  And I'm just going to rotate this

17 document twice, so it's upside down because there's

18 something printed under the bottom here.  I want you to

19 see.  Again, this is a computer-generated script.  You

20 see this doc -- this information that's on here

21 that's --

22    A.    Yes.

23    Q.    -- generated?  Okay.  And what is the date and

24 the time on this?

25    A.    February 12th, '02, 20:49.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Deposition of Raymond Schalk taken 05/06/25 Page 56 of 124

54

```
 1        Q.    And what -- in layman terms, what time is
 2   20:49?
 3        A.    8:49 p.m.
 4        Q.    So on 8:49 p.m. February 12, 2002, you pulled
 5   James Fletcher's IR history, correct?
 6              MR. MACHALIK:  Objection.  Form, foundation,
 7        misstates this testimony.  You can answer.
 8        A.    No, I don't know when I pulled this or what --
 9   or whoever pulled this up.
10   BY MR. STARR:
11        Q.    Well, somebody from the Chicago Police
12   Department pulled up this IR history on
13   February 12, 2002, at 8:49, correct?
14              MR. MACHALIK:  Objection to form.
15              MR. STEFANICH:  Object to the form of the
16        question, foundation.
17              MR. MACHALIK:  Same objection.
18        A.    That's what's printed on there.  I don't know
19   why.
20   BY MR. STARR:
21        Q.    Well, you don't know why?  Isn't that in --
22   when this document was generated?
23        A.    I don't know.
24        Q.    What is -- do you see how it says, "From 435
25   window"?  Do you see that?
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.   Yes.

2     **Q.   That tell you anything, sir?**

3     A.   No, I don't know what that is.

4     **Q.   What about the phone number there?  Does the**

5 **phone number tell you anything?**

6     A.   No, it's a -- it's probably a police phone

7 number.  The 312-746, sir.  But I don't know what that

8 number is.  I don't know what that is, no.

9     **Q.   Any of the other information that's computer**

10 **generated that follows after the phone number?  That**

11 **tell you anything?**

12     A.   No.

13     **Q.   All right.  So basing on your review of this**

14 **document, does that tell you that at 8:49 p.m., you**

15 **believe that James Fletcher, whose I history is**

16 **represented by document -- Exhibit number 9, Bates stamp**

17 **CJF 45-44 was the James Fletcher that Terry Rogers was**

18 **telling you about?**

19     MR. MACHALIK:  Objection.  Form, misstates his

20     testimony.  You can answer.

21     A.   No, it doesn't indicate that.

22 BY MR. STARR:

23     **Q.   Would you have pulled any other -- strike**

24 **that.  Did you pull any other IR histories for any other**

25 **James Fletchers other than the plaintiff?**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   Not that I recall, but --

 2        Q.   If you had, would you have been sure to

 3   include those documents in the investigative file?

 4        A.   Yes.

 5        Q.   And you would've done that as a matter of

 6   practice, correct?

 7        A.   Yes.

 8        Q.   And you would've done that because the Chicago

 9   Police Department policies required you to -- any

10   investigative material that you generated to include in

11   the investigative file, correct?

12        A.   Yes.

13             MR. MACHALIK:  Object to foundation.  You

14        can --

15   BY MR. STARR:

16        Q.   And you did a good -- you did a good job to

17   make sure that you included all documents that you

18   generated in an investigation in the investigative file,

19   correct?

20             MR. MACHALIK:  Objection.  Form.  You can

21        answer.

22        A.   I believe so.

23   BY MR. STARR:

24        Q.   Okay.  So does this document tell you that

25   somebody investigating the Willie Sorrell homicide
```



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  generated an IR or history for the in individual who was

2  eventually arrested for that murder, James Fletcher?

3      A.   It appears that whatever that date and time

4  is, it was printed then on this -- on this IR sheet. By

5  who or when, I don't know.

6      Q.   And we know that you printed the IDOC photos

7  on the same date of February 12, 2002, correct?

8      A.   Yes.

9      Q.   And do you believe that you printed those

10 photos before this IR history was printed?

11         MR. MACHALIK:  Objection, asked and answered.

12     A.   I don't recall.  I could have done either one.

13 BY MR. STARR:

14     Q.   Okay.  Okay.  I'm going to show you --

15 actually, let's look at that again.  Did you -- let me

16 ask you this about that document.  Did you ever show the

17 IR history of James Fletcher to Terry Rogers?

18     A.   I don't believe so.  I don't know why I would.

19     Q.   How long did it take you to find James

20 Fletcher's photo after Terry Rogers told you the name

21 James Fletcher?

22     A.   I don't recall specifically how long it took.

23     Q.   If you had the IR history of James Fletcher at

24 8:49 or 8-whatever it was on February 12, 2002, why

25 didn't you also pull the Chicago Police Department

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   mugshot photo of James Fletcher?

2          MR. MACHALIK:  Objection.  Form.

3      A.   Well, it -- it would take a while to send for

4   photos.  This was a time before everything was

5   computerized.  It would take a while to send for photos

6   to our -- our graphic art section downtown for then to

7   send photos back where I could pull up the IDC -- IDOC

8   photos right away.

9   BY MR. STARR:

10     Q.   So was a -- was it a regular occurrence that

11  you would pull up IDOC photos of suspects and do photo

12  arrays?

13     A.   It's possible.

14     Q.   But you don't have any recollection of

15  specifically doing that, correct?

16     A.   I don't.  I would -- I would imagine I did at

17  some time, but I don't recall.

18     Q.   After you showed the IDOC photo array to Terry

19  Rogers and he identified Arnold Dixon as the suspect,

20  what was your next investigative step?

21     A.   To try to locate the other witnesses.

22     Q.   And what witness did you try to locate at that

23  point in time?

24     A.   Well, Edward Cooper, Sheree Friend, and -- and

25  Emmet Wade.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And you, in fact, went out to Edward Cooper's

2  home on that date, correct?

3    A.   Yes.

4    Q.   And you had been -- you had been in Edward

5  Cooper's home seven years earlier, correct?

6    A.   I believe so.

7    Q.   And so did you just assume that Edward Cooper

8  lived at the same house that he lived at seven years

9  prior?

10    A.   If that's the address we had on him, that's

11  where we were going.

12    Q.   You didn't do anything to investigate whether

13  he had had any new addresses, correct?

14    A.   I don't recall.

15    Q.   Okay.  So you went out to Edward Cooper's

16  home, the same residence that you had previously had

17  been to.  What time did you arrive at his residence,

18  sir?

19         MR. MACHALIK:  Objection.  Form.  You can

20    answer.

21    A.   I'm going to have to look at the report to

22  give you the exact time.

23  BY MR. STARR:

24    Q.   Who else was with you when you went out to

25  Edward Cooper's home with the IDOC photo array?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1        A.    Detective Bogucki, and I'm not sure if
2   Detective Noradin was there, too, or not.
3        Q.    Did you -- so this was -- this was at some
4   point on -- in the evening, correct?
5        A.    Yes.
6        Q.    Okay.  Likely after 8:48 or 8:49 p.m.,
7   correct?
8        A.    I'm not sure what time.  The reports should
9   indicate when we were there.
10       Q.    Did you call Mr. Cooper before you went out
11  there to tell him that you were on your way?
12       A.    I don't remember.
13       Q.    Did you show the IDOC photos to Mr. Cooper
14  when you got there on February 12, 2002?
15       A.    Yes.
16       Q.    What was Mr. Cooper's reaction?
17       A.    Well, he -- he picked out a photograph of
18  Arnold Dixon, James Fletcher, and -- and said it looked
19  similar, but he wasn't sure.
20       Q.    And so when Mr. Cooper testified in this civil
21  case that he told you that he couldn't identify anyone,
22  he was lying, correct?
23       A.    That's not what he told us at the time.
24       Q.    So he was lying when he testified to that in
25  this case, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.   He's lying, or he doesn't remember what he

2   said.

3      Q.   Okay.  What did you do to confirm that Edward

4   Cooper did not know James Fletcher as Arnold Dixon?

5      A.   I didn't -- don't recall that at all.

6      Q.   Did you ever show Terry Rogers any other

7   photos besides the IDOC photos?

8      A.   No.

9      Q.   And when you were printing the IDOC photos,

10   how much time did it take you to find other individuals

11   that looked similar to Arnold Dixon?

12      A.   I think immediately, you can pull up other

13   photos.

14      Q.   Right.  You can immediately pull up other

15   photos, but you have to find other people that look

16   similar, based on your previous testimony, correct?

17      A.   Somewhat similar.

18      Q.   How much time did it take you to find photos

19   that you thought looked similar to the photo of Arnold

20   Dixon?

21      A.   Well, obviously, I -- I printed out photos of

22   all people that named Dixon and so they -- they probably

23   came up right away.

24      Q.   How did you -- how did you find the other

25   photos of the other fillers in the IDOC photo spread?

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  A. Well, I -- I don't recall specifically doing

2 it, but I imagine running the name Dixon, they'd come

3 up.

4  **Q. Why did you choose to run the name Dixon?**

5  A. Because James Fletcher was in prison under the

6 name of Arnold Dixon.

7  **Q. And did you make sure all the fillers were of**

8 **the same relative age as to that of Arnold Dixon?**

9  A. Relatively, yes.

10  **Q. Did you make sure all the fillers were of the**

11 **similar skin color as Arnold Dixon?**

12  A. As -- as close as can be.  As long as the --

13 the photograph looks similar, age, skin color can be a

14 little different, but the -- photographs look similar.

15  **Q. Did you make any effort to locate Emmett Wade**

16 **on February 12, 2002?**

17  A. Yes.

18  **Q. What did you do to locate Emmet Wade on**

19 **February 12, 2002?**

20  A. I -- I think to report to -- well, it

21 indicates we couldn't to locate him, so we would've gone

22 to whatever address we last had on him.

23  **Q. So you went -- you went to one address to see**

24 **if Emmet Wade lived there on February 12, 2002?  Is that**

25 **your testimony?**

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 65 of 124 PageID #:5525
1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 65 of 124

63

1      A.   I don't recall how many addresses we went to.

2      Q.   But you went to at least one address for Emmet

3  Wade on February 12, 2002.  Is that your testimony?

4      A.   I believe so.  I don't recall doing it, but I

5  would imagine so.

6      Q.   What efforts did you make to locate Sheree

7  Friend on February 12, 2002?

8      A.   Again, I don't recall, but apparently we

9  would've went to the last address we had on her.

10     Q.   Would the fact that it was already late in the

11 evening have -- play any role in whether or not you

12 would go out and try to find these witnesses?

13     A.   Well, it depends how late you're talking

14 about.

15     Q.   Well, after 9:00 p.m., correct?

16     A.   Well, I don't believe it's that -- that's that

17 late.

18     Q.   So you think you pulled the IR history for

19 James Fletcher at some point after you went on to look

20 for the witnesses?

21     A.   I don't recall when I pulled the IR history,

22 James Fletcher.

23     Q.   Right.  But we know it was pulled at 8:48 or

24 8:49, correct?

25          MR. MACHALIK:  Objection.  Form.  Misstates

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      his prior testimony.  It misstates the evidence.

 2      You can answer.

 3          A.   That date and time is printed on the -- that

 4   -- the IR sheet.

 5   BY MR. STARR:

 6      Q.   And you think that would date and time

 7   could've been printed after that date and time?

 8              MR. MACHALIK:  Objection.  Form.

 9      A.   I don't know.

10   BY MR. STARR:

11      Q.   Does that make any sense?

12      A.   I don't know why that is printed on there, so

13   I don't know.

14      Q.   I mean, have you ever seen any police

15   documents that were dated after the date and time in

16   which they say they were dated?

17              MR. MACHALIK:  Object to the form.

18      A.   Actually, I've never paid attention to that

19   date and time on the IR sheets.

20      Q.   Okay.  Let's take a look at what we'll mark

21   Exhibit 10.  It's the City JF64, 65, and this is the

22   General Offense Case Report.  Do you see this document

23   on your screen, sir?

24              (EXHIBIT 10 MARKED FOR IDENTIFICATION)

25      A.   Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.  All right.  And did you -- I'm going to go a

2  some more here.  Did you review this document in

3  preparation for today?

4     A.  I -- I didn't for today, but I have in the

5  past.

6     Q.  Right.  You previously testified that when you

7  worked cold cases, you would've reviewed all the police

8  reports.  You would've read them and made sure that you

9  were familiar with them, correct?

10    A.  Yes.

11    Q.  So you would've done that with this document;

12  is that right?

13    A.  Back -- yeah, back then.

14    Q.  Can you tell me what a General Offense Case

15  Report generally does?  What's the purpose of it?

16    A.  Well, it's -- it's to document a crime that --

17  that just -- just occurred.

18    Q.  It's the first case -- it's the first report

19  that the police generate on a crime, correct?

20    A.  Yes.

21    Q.  All right.  And do you see -- are your -- do

22  you see who the author of this document is?

23    A.  An Officer Jay Gilger (phonetic).

24    Q.  Are you familiar with Officer Gilger?

25    A.  Yes.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And -- all right.  You don't see your name

2 anywhere on this document, do you, sir?

3    A.   No.

4    Q.   And you reviewed it.  You would know your name

5 was on this document, correct?

6    A.   Yeah.  My name is not on there.

7    Q.   Okay.  What information did you learn from

8 this document when you first looked at it back in 1995?

9    A.   Well, the -- the information that's written on

10 there, what occurred at the time of the robbery and the

11 shooting.

12    Q.   Okay.  You see in this box in the middle here,

13 it appears to list the names of -- let me just go to the

14 top here.  The box here lists the victims, correct?

15    A.   Yes.

16    Q.   There's a Box 21.  It says the name of the

17 victims and it says Willie Sorrell, Jr., and Edward

18 Cooper, correct?

19    A.   Yes.

20    Q.   And there's an address there for Cooper, 1435

21 North Luna.  You see that?

22    A.   Yes.

23    Q.   That the address you went to in February of

24 2002 to show him the IDOC photo array?

25    A.   I don't know.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    And then you see below that there's a list of

2    witnesses, correct, in the -- box 31, right?

3    A.    Yes.

4    Q.    Do -- and one witness's name is Sheree Friend,

5    and one witness is named Emmet Wade, right?

6    A.    Yes.

7    Q.    And then below that, there's a list of the

8    offenders -- description of the offenders, correct?

9    A.    Yes.

10   Q.    You would've learned all this information when

11   you reviewed the document, correct?

12   A.    I would've read it back then.  Yes.

13   Q.    Okay.  Does this document tell you anywhere

14   that Emmet Wade was not able to see the faces of the

15   offenders?

16   A.    I don't believe that's on there.

17   Q.    Does it tell you anywhere that Emmet Wade was

18   not able to see the offenders in general?

19   A.    I don't know if it -- it documents what he

20   specifically saw.

21   Q.    Right.

22   A.    I would -- Detective Fleming is the one who

23   came out to the scene.  If -- his report might indicate

24   what Emmet Wade saw.

25   Q.    Okay.  But it does list Emmet Wade as one of

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 70 of 124 PageID #:5530
1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 70 of 124

68

1   the witnesses to the crime, correct?

2        A.   Yes.   Whether he is -- whether he is

3   eyewitness or a circumstantial witness, he's a witness.

4        Q.   He's a witness.  All right.  Let's take a look

5   at number -- document number -- exhibit number 11.  You

6   just referenced this.  I'm going to show it to you now,

7   the Supplementary Report from Detective Fleming in 1990.

8   For the record, this is Bates -- city JF47 through 51.

9   Do you see this document on your screen, sir?

10                   (EXHIBIT 11 MARKED FOR IDENTIFICATION)

11       A.   Yes.

12       Q.   All right.  You see that this document is

13  dated the date of the original occurrence is

14  December 21, 1990?

15       A.   Yes.

16       Q.   All right.  And then it shows Edward Cooper as

17  being one of the victims, correct?

18       A.   Yes.

19       Q.   All right.  And then it shows another victim

20  being Willie Sorrell like we talked about, correct?

21       A.   Yes.

22       Q.   And you see that this bottom of the left-hand

23  side here, it says the reporting officer is Michael

24  Fleming.  And you see that there's a signature that

25  seems to say Michael Fleming, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    Yes.

2    Q.    And then it's dated December 21, 1990, at

3    2355, right?

4    A.    Yes.

5    Q.    All right.  And then we scroll through the

6    next page.  It lists the offenders -- the description of

7    the offenders, correct?

8    A.    Yes.

9    Q.    And it lists the manner and motive, among

10   other things, and then we're just -- I'm just going to

11   scroll through.  See here, "Personnel Assigned"?

12   A.    Yes.

13   Q.    And this is on page 49.  You see the name

14   Sergeant Kero, Police Officer Gilbert, Detective

15   Fleming, Tex Pergrotowski (phonetic) and McCoe

16   (phonetic), and Detective Karen Salvi, and E.T. Bulicky

17   (phonetic).  Do you see all those names?

18   A.    Yes.

19   Q.    Any of those names refresh your recollection

20   of this case at all?

21   A.    Well, they reflect -- refresh my recollection

22   of this case?

23   Q.    Yes.

24   A.    I don't know what you mean by that.

25   Q.    Does it --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.   What -- are the names would?

2    Q.   I don't know why they would either, sir.  I'm

3  asking you if it does.  Does seeing these names on this

4  report refresh your recollection at all?

5    A.   No.

6    Q.   All right.  Now, you see the witnesses listed,

7  Sheree Friend and Emmet Wade, correct?

8    A.   And Terry Rogers, yes.

9    Q.   And Terry Rogers, yeah.  All right.  So I'm

10 just going to scroll down to the 50 -- CJF51.  You see

11 this is a summary of what Emmet Wade said?

12   A.   Yes.

13   Q.   All right.  And you see that I've highlighted

14 a part here, right?

15   A.   Yes.

16   Q.   It's -- can you read that into the record,

17 sir?

18   A.   Well, some of it is cut off here, but --

19   Q.   The letter E is cut off.  I represent to

20 you --

21        MR. STEFANICH:  It's cut off on our screen

22   with the --

23        MR. STARR:  Oh, I'm sorry.

24        MR. STEFANICH:  -- pictures of the video.  Let

25   me see if I can remember how we did this.  There we

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1:20 Deposition of Raymond Schalk    Taken 05/06/25    Page 73 of 124

1    go.

2        MR. STARR:  Yeah, and while Brian is trying to

3    fix that, I'll represent the there is a letter cut

4    off in this document that I'm showing.  We did get

5    a new version of this from the city recently, which

6    I don't have as an exhibit, but it shows that the

7    letter E is missing from the word "able".

8        MR. STEFANICH:  Okay.  He can read it now.

9  BY MR. STARR:

**10       Q.    Okay.  Can you read that highlighted part into**

**11  the record, sir?**

12       A.    Yeah.  "He stated that approximately six or

13  seven shots were fired, and he may be able to identify

14  the two unknown male Blacks if seen again."

**15       Q.    Okay.  Does seeing that refresh your**

**16  recollection at all regarding what Emmet Wade told**

**17  police in 1990?**

18        THE REPORTER:  I'm sorry to interrupt.  Were

19    you wanting to make that Exhibit 11?

20        MR. STARR:  Yes, please.

21        THE REPORTER:  Thank you.

22        MR. MACHALIK:  And I'll object to the form.

23    You can answer.

24       A.    It doesn't reflect my memory as to what he

25  said back then, because I wasn't there.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    BY MR. STARR:

2        Q.    Okay.  Do you have any reason to think that

3    the information that Detective Fleming included in this

4    report is inaccurate?

5        A.    No.

6        Q.    I think you previously testified you thought

7    Detective Fleming was a good detective who did his job

8    correctly; is that right?

9        A.    Yes.

10       Q.    Okay.  Seeing that now, that Emmet Wade told

11   Detective Fleming that if he had seen the suspects again

12   -- if he was able to see the suspects again, he might be

13   able to identify them, does that tell you that Emmet

14   Wade had indicated to police that he may be able to

15   identify the suspects?

16       A.    Well, obviously, that's what's written there,

17   so he obviously told that to Detective Fleming.

18       Q.    Okay.  And yet you never showed the photo

19   array to Emmet Wade, correct?

20       A.    No, because he told us that he didn't see any

21   faces.

22       Q.    He told you he didn't see any faces?

23       A.    Yes.

24       Q.    So if Emmet Wade says that you came to his

25   house with Detective Bogucki and you, in fact, showed

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    him a photograph, is Emmet Wade lying?

2        A.    Yes.

3        Q.    If Emmet Wade says that you showed him a

4    single photograph of James Fletcher, is Emmet Wade

5    lying?

6        A.    I would never show a single photograph of a

7    suspect.

8        Q.    So is he lying if he says that?

9        A.    Apparently.  He -- he was also interviewed by

10   the State's Attorney and if she wanted us to show photos

11   to Emmet Wade, she would've told us to.

12       Q.    And so the fact that Emmet Wade had previously

13   stated that he could potentially identify the suspects,

14   that didn't make you want to show him the photo array?

15            MR. MACHALIK:  Objection.  Form.  Asked and

16            answered.

17       A.    Not when he tells us right offhand he doesn't

18   -- didn't see any faces.  People change their mind all

19   the time as to wanting to be involved, which apparently

20   he did.

21   BY MR. STARR:

22       Q.    Well, would there be any value in showing

23   Emmet Wade a photo array that included James Fletcher,

24   if you thought James Fletcher was a suspect?

25       A.    No, not to somebody who says they didn't see

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    the face of the offender.

 2              MR. STARR:  All right.  Let's look at --

 3              MR. MACHALIK:  Can we take a five-minute

 4         break?

 5              MR. STARR:  Sure.  Let's take ten.

 6              MR. MACHALIK:  Okay.  10-minute break.

 7              THE REPORTER:  All right.  Let me get us off

 8         the record here.

 9                   (OFF THE RECORD)

10              THE REPORTER:  We're back on the record.

11    BY MR. STARR:

12         Q.   Mr. Schalk, I'm going to show you, I believe

13    is Exhibit number 12.  And for the record, it's City

14    JF181.  Do you see this one-page document on your screen

15    and the Bates stamp of 181 at the bottom?

16                   (EXHIBIT 12 MARKED FOR IDENTIFICATION)

17         A.   Yes.

18         Q.   And do you know what this document is, sir?

19         A.   It's notes that I took regarding the Terry

20    Rogers interview.

21         Q.   And this is the -- these notes are taken on a

22    General Progress Report; is that correct?

23         A.   That's -- that's what they call it.  It was

24    basically note paper, though.

25         Q.   All right.  And you reviewed this document in
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    preparation for today's deposition?

2         A.   Not today, but I've seen it before.

3         Q.   And this is your handwriting on this document;

4    is that correct?

5         A.   Yes.

6         Q.   All right.  And can you tell me the what it

7    says for the date and the time -- or the date in the

8    watch up here?

9         A.   Close to February '02, third watch.

10        Q.   Okay.  What time was the third watch back in

11   February of '02?

12        A.   It would be from 4:30 to 1:00 a.m.

13        Q.   Okay.  All right.  So -- and do you understand

14   this to be a General Progress Report that you took notes

15   on during your interview of Jerry Rogers on

16   February 12, 2002?

17        A.   Yes.

18        Q.   Can you -- just because this is your

19   handwriting, I can't make it all out.  Can -- and I

20   asked Detective Bogucki if he could.  He couldn't.  Can

21   you read this -- what this says into the record for us?

22        A.   Well, I'll try to.  I'm -- not always can read

23   my handwriting either.  "Terry Rogers, 5278 West

24   Washington" -- I believe that's the NP for no phone.

25   1930 probably is when I -- the time of the interview.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    "On Southwest corner of Madison Parkside, selling.

2    Fletcher walks up, asked if he has any work, walks away.

3    15, 20 minutes later, red truck pulls up, Cooper

4    driving.  Knows previously," I think that's what said,

5    "In" -- "in front of Uncle Remus.  Heard gunshots, saw

6    Fletcher and another male" -- "another running from

7    truck.  Cooper shooting back, ran westbound on Madison

8    to Parkside.  Victim on sidewalk.  Jimmy Fletcher,

9    Fulton Latrobe (phonetic) did time with him".  And then

10   there's "ASA Jennifer Walker" on the side.

11       Q.   Thank you for that.  And then there's another

12   section at the bottom of the document.  Can you read

13   what that says?

14       A.   "21st of February, Graham, 1420 hours."  That

15   -- that would be the prison.  "James Fletcher, Arnold

16   Dixon, ASA Jennifer Walker.  Didn't know what he was

17   doing in December of '90.  Not at Mass, no Central.

18   Selling dope at Cabrini-Green, doing good business.

19   Didn't need to do armed robberies.  Knew Rogers. Didn't

20   know why he would say he didn't."

21       Q.   Okay.  Thank you for reading that into the

22   record.  I appreciate that.  So this is a -- this is a

23   General Progress Report that contains two different

24   episodes with two different interviews; is that correct?

25       A.   Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  Q. So the first one is an interview that you

2 conducted with Terry Rogers on February 12, 2002.  And

3 you said it was at 7:30 p.m.  Is that 1930?

4  A. Yes.

5  Q. And then the second one is an interview you

6 conducted on February 21st with James Fletcher; is that

7 correct?

8  A. Yes.

9  Q. Okay.  And do you have any -- did you make any

10 other notes of either of the interviews you conducted

11 with either of these men besides these notes, sir?

12  A. Any -- any notes I would've made would be in

13 the file.  There's nothing else, then there's nothing

14 else.

15  Q. All right.  So this tells you that you

16 interviewed Terry Rogers at 7:30 p.m. on

17 February 12, 2002, correct?

18  A. Yes.

19  Q. And we know from that IR history, that that

20 somebody pulled an IR history of James Fletcher at 8:49

21 on February 12, 2002, correct?

22    MR. MACHALIK:  Objection.  Form.  Foundation.

23  Misstates his testimony.  You can answer.

24  A. That -- that -- that's stamped on there for

25 some reason.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    BY MR. STARR:

2        Q.    Do you have any independent recollection of

3    drafting that General Progress Report?

4        A.    No.

5        Q.    Does seeing this General Progress Report

6    refresh your recollection at all of any interview you

7    conducted during this Willie Sorrell homicide

8    investigation?

9        A.    No.

10        Q.    And you also testified that you -- on February

11    12, 2002, you went out to interview Mr. Cooper, right?

12        A.    Yes.

13        Q.    Did you make a GPR of that interview, sir?

14        A.    I don't recall if I did or if Detective

15    Bogucki did.

16        Q.    Would there any -- be any reason that -- why

17    you would make a GPR of an interview you conducted with

18    Terry Rogers; but not a GPR of an interview you

19    conducted with Mr. Cooper?

20        A.    No.  Sometimes I take notes.  Sometimes

21    Detective Bogucki takes notes.

22        Q.    But if you did, in fact, take notes during the

23    interview with Mr. Cooper, you would've included those

24    notes in the investigative file; is that right?

25        A.    Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   I'm going to show you what I'll mark as
 2   Exhibit number 13.  And for the record, this is City
 3   JF179.  All right.  Sir, do you see this document on
 4   your screen?
 5                   (EXHIBIT 13 MARKED FOR IDENTIFICATION)
 6        A.   Yes.
 7        Q.   And you see it's a one-page document with the
 8   Bates stamp of City JF179?
 9        A.   Yes.
10        Q.   And do you see your signature on this
11   document, sir?
12        A.   Yes.
13        Q.   And this is another General Progress Report,
14   correct?
15        A.   Yes.
16        Q.   And is it your handwriting?
17        A.   Well, it's -- it's notes put on a piece of
18   paper that's titled General Progress Report.
19        Q.   And is this your handwriting on this General
20   Progress Report, sir?
21        A.   Yes.
22        Q.   All right.  I want to ask you to do the same
23   thing you did -- strike that.  Have you reviewed this
24   document in preparation for today?
25        A.   Not today, but I've seen it before.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.   Okay.  Can you tell us what time the date of

2  this report is?

3     A.   Date of report is 12 March, '02, third watch.

4     Q.   Okay.  So can you do the same thing you did

5  before and read -- there's seemingly a right-hand side

6  and a left-hand side column.  I mean, they're not really

7  columns, but do you see what I'm talking about here,

8  sir?

9     A.   Yes.

10     Q.   Could you read the left-hand side column first

11  for us, so we know what it says?

12     A.   There's Emmet Wade with a phone number (708)

13  547-9730 after 9:00 p.m.

14     Q.   All right.  I'm going to scroll down for you.

15  Can you read the next section?

16     A.   "Parked behind red truck.  Another car through

17  his" -- I -- actually, I can't read that next line. And

18  then, "Saw offender running towards" -- "towards him.

19  Three question mark" -- "in middle of street. Driver

20  came out and shot, hit his car.  Offender" -- let's see.

21  I can't quite read the next couple words. "He tried to

22  get out.  Offender shot vic.  Victim falls coming out of

23  liquor store.  Runs to victim, tells him to just lay

24  there.  Driver comes back, grabbed him". And there's a

25  couple of phone numbers under that.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   All right.  And on the right-hand column, can
2  you read what that says?
3    A.   It looks like a Social Security number. "348-
4  60-4347.  320 South Frederick, Bellwood, 60104." Couple
5  of phone number -- might be work number. "(708) 410-
6  0455.  11-25-64."  Another social, "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.  Sister
7  is Wade Lakita (phonetic), 401 Washington, Oak Park,
8  (708) 384-5089.  Dark Hoods. Two" -- can't quite read
9  what that says.
10    Q.   All right.  Thank you for doing that, sir.  So
11  does -- is it your understanding that this document
12  represents a memorialization of notes that of an
13  interview you conducted with Emmet Wade on
14  March 12, 2002?
15    A.   Yes.
16    Q.   Do you have any independent recollection of
17  conducting that interview with Emmet Wade on
18  March 12, 2002?
19    A.   No.
20    Q.   Is there any notation in here that Emmet Wade
21  told you that he could not see the two offenders' faces?
22    A.   It's not written on there, but it -- they're
23  just notes.  They're not -- I don't write everything
24  that is told to me, which is then later documented a
25  report.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    You did write, "Saw offenders running towards

2   him," correct?

3      A.    Yes.

4      Q.    Okay.  Is there a reason why you would not

5   have made a note or documented that during your

6   interview with Wade, he told you that he could not see

7   the offenders' faces?

8      A.    Well, I did document it in my supplemental

9   report.

10      Q.    Is there a reason why you would not have

11   documented in this General Progress Report?

12      A.    Well, that -- that is just note paper to

13   assist us in -- in making a supplemental report.  We

14   don't necessarily have to write everything down in -- in

15   notes to make out the supplemental report.

16      Q.    But is there a reason why you did not document

17   that Emmet Wade told you he didn't see the offenders'

18   faces in this General Progress Report?

19      A.    I don't think I -- as I said, it's not

20   necessary.  I think we lost the video again here.

21            MR. STARR:  Okay.  Let's take a break.  Go off

22       the record.

23                  (OFF THE RECORD)

24            THE REPORTER:  And we are back on the record.

25   BY MR. STARR:

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   All right.  Mr. Schalk, I'm going to show you

2    what I'm going to mark as Exhibit number -- I believe

3    it's 15.  Might be off by one, but it's City JF180.

4                    (EXHIBIT 14 MARKED FOR IDENTIFICATION)

5                    THE REPORTER:  It'd be 14.

6                    MR. STARR:  14?  Okay.  Thank you.

7    BY MR. STARR:

8    Q.   All right.  So sir, do you see the document on

9    your screen?

10   A.   Yes.

11   Q.   And it's a one-page document with the Bates

12   stamp of City JF180.  Do you see that?

13   A.   I do.  Yes.

14   Q.   And this is -- this is another General

15   Progress Report notes on it, correct?

16   A.   Yes.

17   Q.   And have you seen this document before today?

18   A.   Yes.

19   Q.   And what is this document?

20   A.   It's the notes apparently written on April

21   20th of '02.  Appears to be notes regarding the lineup.

22   Q.   All right.  And is this your handwriting?  Do

23   you recognize it as your handwriting, sir?

24   A.   Yes.  Yes, it is.

25   Q.   Okay.  And you see on this document there is

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  the list of people in the lineup; is that correct?

2      A.   Yes.

3      Q.   Is that what your understanding of what these

4  names are?

5      A.   Yes.

6      Q.   All right.  Do you recall how you found these

7  individuals to stand in the lineup?

8      A.   Generally, we take people out of the lockups

9  to stand in lineups.

10     Q.   Okay.  And then it says here -- further down

11 here, there's -- it says "Cooper Prosperity Trucking".

12 Do you see that?

13     A.   Yeah.  That appears to be Detective Bogucki's

14 handwriting.

15     Q.   Okay.  Do you recall Mr. Cooper working for a

16 Prosperity Trucking company?

17     A.   I don't.  That's what it says there, but I

18 don't.

19     Q.   And then it says -- it appears to say "Emmet"

20 with a phone number.  Do you see that, sir?

21     A.   Yes.

22     Q.   And then it appears to say "daughter of

23 victim, Kandye Sorrell."  Do you see that?

24     A.   Yes.

25     Q.   Do you recall talking to Ms. Sorrell?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.   I don't.

2     Q.   All right.  Does anything about this document

3 refresh your recollection of any involvement you had in

4 the Willie Sorrell homicide?

5     A.   No, I -- not -- I didn't -- no independent

6 recollection.

7     Q.   All right.  I think we cut off when your video

8 screen stopped working out, I was asking you why you

9 chose not to include in your general progress report

10 that documented your interview of Emmet Wade.  Why did

11 you choose not to include the information that Mr. Wade

12 allegedly told you he did not see the faces of the

13 suspects?

14     A.   Well, as I said, those are just notes.  We use

15 the notes and our memory of the interview to do a

16 supplemental report indicating, you know, what had been

17 said.  That's what -- that's what he did tell me. That's

18 what he told the state's attorney when we went back to

19 talk to him to state's attorney.

20     Q.   And you would've taken those notes

21 contemporaneous to being at Mr. Wade's residence

22 interviewing him; is that correct?

23     A.   Yes.

24     Q.   All right.  And then are the other GPRs, do

25 you have any reason to believe that you took -- strike

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    that.  Did you take the other GPRs contemporaneous to

2    the interviews you conducted in those that are

3    documented in those GPRs?

4        A.   I believe so.

5        Q.   All right.  You said that ASA Walker was with

6    you when you interviewed Mr. Wade; is that correct?

7        A.   Not -- not the first time.  We went back

8    several days later with her.

9        Q.   All right.  So you interviewed Mr. Wade just

10   -- with just you and Detective Bogucki; is that correct?

11       A.   Whether Detective Noradin was there, I'm not

12   sure.

13       Q.   But there was -- ASA Walker was not there,

14   right?

15       A.   Not the first time, no.

16       Q.   Is it possible that you showed Emmet Wade a

17   single photograph the first time you visited his home

18   when you weren't with ASA walker?

19       A.   No --

20          MR. STEFANICH:  Objection.  Asked and

21      answered.

22       A.   No, that's not possible.

23   BY MR. STARR:

24       Q.   And was ASA Walker with you -- was she present

25   for the first interview you conducted with Terry Rogers?

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       A.   No, not the first interview.

2       Q.   **All right.  So you interviewed --**

3       A.   But we did -- we did call her out and she then

4    did interview Terry Rogers also.

5       Q.   **You interviewed Terry Rogers with just you and**

6    **Detective Bogucki before ASA Walker joined the**

7    **interview; is that correct?**

8       A.   Again, Detective Noradin was possibly there,

9    I'm not sure.  But yes, it's just us without her.

10      Q.   **All right.  I'm going to show you Exhibit**

11   **number 15.  And this is City JF 140 to 147.  All right.**

12   **Do you see this document on your screen, sir?**

13                    (EXHIBIT 15 MARKED FOR IDENTIFICATION)

14      A.   Yes.

15      Q.   **And do you see that the first page is City JF**

16   **140?**

17      A.   Yes.

18      Q.   **And the last page is City JF 147?**

19      A.   Yes.

20      Q.   **And this is a case supplementary report; is**

21   **that correct, sir?**

22      A.   Yes.

23      Q.   **Is there -- can you tell me what the date of**

24   **this case supplementary report is?**

25      A.   Let's see.  It should be there.  This report

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    was submitted on 21 May '02.

2        Q.    Okay.  And that -- that's your name above the

3    date submitted, correct?

4        A.    Right.  Yes.

5        Q.    Does that tell us that you submitted this

6    document on May 21, 2002?

7        A.    Yes.

8        Q.    And so you would've read this document and

9    made sure that everything in it was correct before you

10   submitted it; is that right?

11       A.    Yes.

12       Q.    You submitted it to a supervisor by the name

13   of Anthony Wojick; is that correct?

14       A.    Well, we -- we submit the -- the documents for

15   -- for approval.  Whatever Sergeant happened to be on

16   duty would go into the -- the computer and see what --

17   what reports have been submitted and approve them.

18       Q.    And it says that Tony Wojick was the approving

19   supervisor on this report, correct?

20       A.    Yes, on May 24th.

21       Q.    And it lists your partner Jerome Bogucki as

22   the primary detective assigned to the case; is that

23   correct?

24       A.    Yes.

25       Q.    All right.  And have you had a chance to

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1   review this document in preparation for today?

 2       A.   Yes.

 3       Q.   Did you see anything in this document you

 4   thought was incorrect?

 5       A.   No.

 6       Q.   All right.  And this is a supplemental report

 7   that you submitted in the Willie Sorrell homicide back

 8   in 2002, correct?

 9       A.   Yes.

10       Q.   All right.  I'm going to direct your attention

11   to City JF 142.  This is the narrative part of the

12   document, correct?

13       A.   Yes.

14       Q.   And here it says, the part that I highlighted

15   on February 12, 2002, at 1930 hours, the responding

16   detectives and reporting detectives transported Rogers

17   from the 15th District to Area 5.  He was then

18   interviewed regarding the Sorrell homicide and relayed

19   the following in summary.  Do you see that?

20       A.   Yes.

21       Q.   Do you have any recollection of transporting

22   Mr. Rogers from the 15th District to the Area 5?

23       A.   I don't.

24       Q.   Did you interview Mr. Rogers in the car when

25   you were transporting him?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.   That's not something we would do, no.

2     Q.   Did he tell you anything when you were

3 transporting him?

4     A.   I don't know because I don't remember the

5 transportation.

6     Q.   Did you tell him what -- why you were

7 transporting him?

8     A.   We -- I would assume that when we took him out

9 of the lockup, we -- we told him what we were doing and

10 why we wanted to talk to him.

11     Q.   All right.  And this 1930 that's noted here is

12 -- that's -- conforms to your GPR that said you

13 interviewed him.  It's 1930, correct?

14     A.   Yes.

15     Q.   All right.  And then further down, I

16 highlighted another section.  You see the section that

17 says the -- is this -- is R detectives for responding or

18 reporting?

19     A.   Reporting.

20     Q.   Okay.  "The reporting detectives checked ICAM

21 arrest records for anyone with the name of Jimmy

22 Fletcher.  It was learned that James Fletcher, AKA Jimmy

23 Fletcher, Eugene Brown, Arnold Dixon, IR number 966425,

24 had several arrests, including murder and armed robbery.

25 It was learned that Fletcher was currently incarcerated

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   at the Graham Correctional Center under the name Arnold
 2   Dixon.  He was serving a 25-year sentence for armed
 3   robbery".  Do you see that, sir?
 4        A.   Yes.
 5        Q.   Does that tell you that you searched the IR
 6   history of James Fletcher?
 7             MR. STEFANICH:  Objection.  Form.
 8        A.   Well, it says we searched I -- I -- ICAM
 9   records.
10   BY MR. STARR:
11        Q.   What are ICAM records?
12        A.   It's been a while, but it's -- it's another
13   computer-generated search for -- I don't remember what
14   ICAM stands for, but it probably shows prison records.
15        Q.   Okay.  If you searched ICAM, would it -- would
16   you be able to generate a -- an -- a criminal history
17   report like the one we looked at earlier?
18        A.   No.  The other one is from the police
19   department.
20        Q.   All right.  What other James Fletcher's did
21   you search ICAM for?
22        A.   I don't recall.
23        Q.   Did you search ICAM for any other James
24   Fletcher's?
25        A.   I don't recall.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   All right.  Then the next section here that

2  I've highlighted says, "The responding detectives

3  obtained a photo of James Fletcher, AKA Arnold Dixon

4  from the Illinois Department of Corrections website.

5  That photo was placed in an array with six other IDOC

6  photos of male Blacks with the name Dixon.  Terry Rogers

7  was shown the photo array and positive" -- "positively

8  identified Fletcher, AKA Arnold Dixon as one of the

9  offenders who was shooting at the red truck driver in

10  1990".  Do you see that?

11    A.   Yes.

12    Q.   Does that tell you that you searched a police

13  database for James Fletcher prior to showing the IDOC

14  photos to Mr. Rogers?

15    A.   It doesn't indicate that.

16    Q.   All right.  I'm going to direct your attention

17  to another section in this.  This is on page 146.  This

18  is a part of the summary of the interview of Sheree

19  Friend.  Do you see that on 145 going into 146?

20    A.   Yes.

21    Q.   Okay.  At the bottom of this first full

22  paragraph, it says, "Friend stated that she had

23  previously seen one of the offenders several times in

24  the neighborhood".  Do you see that?

25    A.   Yes.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.   Did she tell you that?

2     A.   Yes.

3     Q.   Do you recall her saying that?

4     A.   No, but if I wrote it on there, that's what

5 she said.

6     Q.   Did she tell detectives that in 1990?

7     A.   I don't know.

8     Q.   If there's no report documenting that she told

9 detectives that in 1990, would you have asked her why

10 she didn't previously tell detectives that in 1990?

11        MR. STEFANICH:  Objection.  Form.  A complete

12     hypothetical.  You can answer.

13     A.   Not necessarily.

14 BY MR. STARR:

15     Q.   All right.  And then there's the next

16 paragraph or the next section here is the narrative

17 summary of your interview with Emmet Wade.  Do you see

18 that on the bottom of 146?

19     A.   Yes.

20     Q.   All right.  And then if I scroll down to the

21 next page, 147, there's a line that I highlighted.  It

22 says, "Wade stated that he did not see the faces of the

23 offenders".  Do you see that?

24     A.   Yes.

25     Q.   This is in conflict with your GPR that says



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   Wade saw the offenders, correct?

2           MR. STEFANICH:  Objection.  Form.  You can

3       answer.

4       A.   No, the -- the GPR doesn't indicate that he

5   saw faces.  Saw people running, but the GPR doesn't

6   indicate that he saw faces.

7   BY MR. STARR:

8       Q.   So you did this report on May 21, 2002, right?

9       A.   When it was actually started, I'm not sure. We

10  might have been started several days before that, but it

11  was submitted on the 21st of May.

12      Q.   Okay.  So and you interviewed Wade in March of

13  2002, right?

14      A.   Yes.

15      Q.   So this is two months after your interview

16  with Wade, correct?

17      A.   Yes.

18      Q.   So do your -- is your general progress report,

19  the contemporaneous notes that you took of your

20  interview with Wade, a better document as to what you

21  learned from Wade than a -- than a supplementary report

22  that you submitted two months later?

23      A.   No.

24      Q.   How come?

25      A.   Because it's -- it's just notes.  We make

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    supplementary reports from our notes and from our

2    memory.

3         Q.   So you drafted the supplemental report based

4    on the GPR that you had documenting your interview with

5    him Emmet Wade and your memory, correct?

6         A.   Yes.  And of course the interview with the

7    state's attorney also.

8         Q.   All right.  So I just want to scroll down to

9    the bottom of this document.  This is the same Exhibit

10   number 15.  You see where it says a report of Detective

11   Shaw, Bogucki, and Noradin?

12        A.   Yes.

13        Q.   As I asked you before, your name -- the fact

14   that your name is on here and it says it's your report,

15   you would've reviewed this and made sure everything was

16   correct, right, before --

17        A.   Yes.

18        Q.   -- submitting it?

19        A.   Yes.

20        Q.   All right.  Do you have any -- sir, as you sit

21   here today, do you have a belief about whether or not

22   James Fletcher is guilty of the murder of Willie

23   Sorrell?

24        A.   Well -- well, I -- I have to go back to what I

25   knew back then, which certainly I believed he was

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 98 of 124 PageID #:5558
Deposition of Raymond Schalk - taken October 5, 2022

96

```
 1   guilty.  The state's attorneys believed he was guilty.

 2   The jury believed he was guilty.  I haven't heard --

 3       Q.   As --

 4       A.   -- I haven't heard anything yet that has

 5   changed my mind.

 6       Q.   I didn't mean to interrupt you.  So I'm -- as

 7   I'm asking you as you sit here today, do you have a

 8   belief of whether or not James Fletcher is guilty of the

 9   murder of Willie Sorrell?

10           MR. STEFANICH:  Objection.  He just answered -

11       - he just answered it.  He just answered it.  Asked

12       and answered.  You can answer again.

13       A.   Yes.  I -- I believed back then, and I haven't

14   heard anything recently that would change my mind to

15   that.

16   BY MR. STARR:

17       Q.   Are you aware that Mr. Fletcher was exonerated

18   and had his conviction vacated?

19           MR. STEFANICH:  Objection.  Form.  You can

20       answer.

21       A.   I heard that, yes.

22   BY MR. STARR:

23       Q.   Does the fact that James Fletcher was

24   exonerated and had his conviction vacated impact your

25   belief in whether or not he's guilty whatsoever?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MR. STEFANICH:  Objection.  Form.  You can
 2       answer.
 3       A.   Well, I would like to hear why he was
 4  exonerated.  I haven't -- I haven't heard the facts of -
 5  - of why they're saying why they exonerated him.
 6  BY MR. STARR:
 7       Q.   So the fact that a court vacated his
 8  conviction is -- does not change your opinion about what
 9  his guilt whatsoever, correct?
10       A.   Again, I'd have to hear the reasoning.
11       Q.   Okay.  Did you -- do -- are you aware that
12  James Fletcher received a certificate of innocence from
13  the state of Illinois?
14       A.   I heard that.
15       Q.   Does the fact that James Fletcher received a
16  court ordered certificate of innocence from the state of
17  Illinois impact your belief of whether or not he's
18  guilty?
19              MR. STEFANICH:  Objection.  Form.  You can
20       answer.
21       A.   Again, I'd like to hear the reasoning behind
22  all that.
23  BY MR. STARR:
24       Q.   At any time between Fletcher's arrest in 2002
25  and today, have you learned any information that's cast
```



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    any doubt on your belief that Fletcher's guilty?

 2            MR. STEFANICH:  Objection.  If you can answer

 3        without disclosing any attorney/client

 4        communications you can do so.  If you can't, I'll

 5        instruct you not to answer.

 6    A.   All right.  I don't think I can answer that.

 7            MR. STEFANICH:  I'm going to object based on

 8        attorney/client privilege.  Instruct him not to

 9        answer.

10  BY MR. STARR:

11    Q.   Are you going to take your attorney's

12  instruction and refuse to answer my question about

13  whether or not you've learned any new evidence about

14  whether or not Mr. Fletcher was in fact guilty?

15    A.   Yes.

16    Q.   Did you have any knowledge of James Fletcher

17  prior to your meeting with Terry Rogers -- when you

18  interviewed Terry Rogers, and he gave you the name James

19  Fletcher?

20    A.   No.

21    Q.   Did you have any knowledge of James Fletcher's

22  criminal history prior to receiving the IR history from

23  the city of Chicago?

24            MR. STEFANICH:  Going to object to form.  You

25        can answer.
```



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.   I don't believe -- believe so, other than

2  obviously seeing the ICAM photos and saying he's in

3  prison for another armed robbery.

4  BY MR. STARR:

5     Q.   Yeah.  Did the fact that he was in prison for

6  another armed robbery affect your belief about whether

7  or not he was guilty of this crime?

8     A.   Yes.

9     Q.   Do you know whether or not Detective Bogucki

10  knew of James Fletcher prior to that interview with

11  Terry Rogers on February 12, 2002?

12         MR. STEFANICH:  Objection.  Foundation.  You

13     can answer.

14     A.   No, I don't believe he did.

15  BY MR. STARR:

16     Q.   Do you know if Detective Noradin knew who --

17  knew of James Fletcher prior to your interview with

18  Terry Rogers on February 12, 2002?

19     A.   No, I don't believe he did.

20     Q.   Do you know if Detective -- or strike that. Do

21  you know if Defendant Wojick knew of Terry Rogers prior

22  to your interview -- strike that.  Do you know if

23  Defendant Wojick knew of James Fletcher prior to your

24  interview of Terry Rogers on February 12, 2002?

25     A.   Seeing that he -- he had nothing to do with

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    this case, I don't believe he did.

2        **Q.   Have you ever considered that perhaps you and**

3    **your colleagues got this case wrong and that someone**

4    **who's not James Fletcher committed this crime?**

5            MR. STEFANICH:  Objection to form.  You can

6        answer.

7        A.   Well, again, I'd have to hear -- I'd have to

8    hear some reasoning that would make me change my mind.

9    BY MR. STARR:

10       **Q.   I'm asking if you've ever considered this**

11   **fact.**

12       A.   I'm open to all considerations.

13       **Q.   So have you, in fact, considered that it's**

14   **possible that you and your colleagues got this wrong,**

15   **that James Fletcher's not guilty of this crime?**

16       A.   I haven't heard anything that would change my

17   mind.

18       **Q.   Is there anything that would change your**

19   **belief that James Fletcher is guilty?**

20       A.   Well, I'd have -- I'd have to hear some --

21   some evidence to show he is not guilty.

22       **Q.   Well, is there any evidence that you know of**

23   **suggesting that Fletcher's guilty that we've not**

24   **discussed today?**

25           MR. STEFANICH:  Objection.  Attorney/client

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        privilege.  Going instruct him not to answer that
 2        question.
 3              THE WITNESS:  I'm not going to answer the
 4        question.
 5   BY MR. STARR:
 6        Q.   You're going to take your attorney's
 7   instruction to refuse to answer my question?
 8        A.   Yes.
 9        Q.   Okay.
10              MR. STARR:  And if there's any evidence that
11        Mr. Fletcher is guilty that hasn't been produced in
12        this case, I think that Plaintiff already know
13        about it.  Say that for the record.
14   BY MR. STARR:
15        Q.   Have you ever had any documents relating to
16   the Willie Sorrell homicide investigation or the
17   prosecution of James Fletcher in your personal
18   possession?
19              MR. STEFANICH:  Objection.  Form.  You can
20        answer.
21        A.   Well, I've given copies of the -- the file.
22   BY MR. STARR:
23        Q.   During the civil case?
24        A.   Yes.
25        Q.   Prior to getting copies from your attorney
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   during the civil case, did you ever have any documents
 2   in your possession?
 3         A.    No.
 4         Q.    Did you conspire with any other police officer
 5   in this case that deprived James Fletcher of his
 6   constitutional rights?
 7         A.    No.
 8         Q.    Did you withhold any exculpatory evidence from
 9   James Fletcher?
10         A.    No.
11         Q.    Did anyone present any exculpatory evidence to
12   you which you know was withheld?
13         A.    No.
14         Q.    Did you present any evidence to anybody else
15   that was then then withheld?
16         A.    No.
17         Q.    Did you hear of anyone receiving any evidence
18   from Jerome Bogucki that was withheld?
19         A.    No.
20         Q.    Did you hear of anyone receiving any evidence
21   from Anthony Noradin that was then withheld?
22         A.    No.
23         Q.    Did you hear of anyone receiving any evidence
24   from Tony Wojick that was then withheld?
25         A.    No.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.   Did you hear of anyone receiving any evidence

2   from any other police personnel that was then withheld?

3     A.   No.

4     Q.   Is there anything of our discussion today that

5   refreshed your recollection any further than what you've

6   testified to?

7     A.   No.

8     Q.   Are there any documents that you're aware of

9   that you could review that would refresh your

10  recollection any further than what you've already

11  testified to today?

12     A.   No.

13     MR. STARR:  Okay.  I'm going to take a five-

14     minute break and check my notes.  I think I'm just

15     about done here.

16          (OFF THE RECORD)

17     THE REPORTER:  We're back on the record.

18  BY MR. STARR:

19     Q.   Mr. Schalk, you previously testified that

20  Defendant Wojick had no role in the Willie Sorrell

21  homicide investigation, correct?

22     A.   Yeah.  Said it in the approving the report I

23  submitted.

24     Q.   Right.  So we saw that report, which I think

25  was Exhibit number 15, and we saw that Tony Wojick had

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   approved that court report, correct?

2       A.   Yes.

3       Q.   And as a supervisor, a sergeant in the Area 5

4   Detective Division, would you have -- would you have

5   kept Tony Wojick abreast or aware of the investigation

6   that you were conducting?

7       A.   No, not necessarily, depending on there might

8   have been another supervisor that we were more in

9   contact with on this case to inform him of where we were

10  with it.

11      Q.   Was there another supervisor that you kept

12  abreast or aware of your ongoing investigation into the

13  Willie Sorrell homicide?

14      A.   I don't recall the specific time period

15  because there was a time period we were working on cold

16  cases where there was one specific sergeant we were -- I

17  don't know if it was during this -- this time period,

18  though.

19      Q.   So do you have an independent recollection of

20  keeping any of your supervisors aware of the ongoing

21  investigation that you were -- you and Detective Bogucki

22  and Noradin were conducting into the Willie Sorrell

23  homicide?

24      A.   We -- we would've had to inform somebody of

25  what we were doing any particular day or especially when

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    we're changing shifts to do a lineup or go -- going to

2    the jail to -- to charge him with the warrant. We would

3    have to tell a supervisor what we were doing.

4        Q.   Do you have an independent recollection of

5    actually telling any supervisor any of that stuff?

6        A.   No.

7        Q.   Okay.  Who was the other sergeant other than

8    Sergeant Wojick at the time that you would've been

9    communicating with?

10        A.   Yeah, again, I'm not sure who -- which

11   sergeants were all working at that time.  I know there

12   was a Sergeant Kero that for a while there we were

13   working with cold cases with him.  I don't know if -- if

14   he was there at that time period.

15        Q.   And because you don't have any independent

16   recollection of who you were communicating with, it's

17   possible you were communicating with Tony Wojick,

18   correct?

19        A.   I don't think so, but it's possible we -- we

20   told him, yeah, we've got to change our watch to -- to

21   do a lineup or yeah, we've got to go to the jail to --

22   to -- to serve this warrant, so we got to change our

23   shifts.

24        Q.   And you were -- when I was showing you the

25   clear and open report, you indicated that the report was

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  submitted on May 21, 2002, but you also indicated that

2  you could have written the report before that; is that

3  correct?

4      A.   It -- it probably took some time to -- to

5  finish it.  I would imagine we had other investigations

6  to do in the meantime, but we get things done when we

7  can get things done.

8      Q.   And when you're writing a clear and open or a

9  clear and closed report like this, do you open up the

10 document, you start -- you start composing it and you

11 continue the investigation at some point and then you go

12 back to it.  Is that how it works?

13         MR. MACHALIK:  Objection.  Form.

14     A.   Well, it could be we did part of it and then

15 did some more of it later on when -- when Terry Rogers

16 was, again, picked up.

17 BY MR. STARR:

18     Q.   Okay.  So it's --

19     A.   Would have done before then.

20     Q.   It's an organic document, you don't

21 necessarily sit down and create it all in one sitting,

22 correct?

23     A.   Correct.

24     Q.   At any point in the investigation, did you

25 ever print out a draft of any report that was part of

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 109 of 124 PageID #:5569

107

```
 1   this investigation and show it to any supervisor,

 2   including Tony Wojick, and ask what they thought of it?

 3              MR. MACHALIK:  Objection.  Form.

 4        A.   No, I don't recall doing that.

 5   BY MR. STARR:

 6        Q.   At any point in time, did you print out any

 7   report of this investigation whatsoever and show any

 8   supervisor -- any supervisor, including Tony Wojick, the

 9   report?

10              MR. MACHALIK:  Objection.  Form.

11        A.   No, I don't recall doing that.

12   BY MR. STARR:

13        Q.   At any point in time, did you -- did any

14   supervisor make any edits to any report -- strike that.

15   At any point in time, did any supervisor, including Tony

16   Wojick make any edits to any report that you were

17   generating in this case?

18        A.   I don't believe so, no.

19        Q.   At any point, did any supervisor, including

20   Tony Wojick suggest to you that you need to make certain

21   edits to any of the reports that were part of this case?

22        A.   No, I don't recall that.

23        Q.   And you said that -- strike that.  Is there

24   anything about the Willie Sorrell investigation that you

25   can recall that you haven't told us today, sir?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          MR. MACHALIK:  Objection.  Asked and answered.

2     A.   No.

3  BY MR. STARR:

4     **Q.   And does the supervisor review the report**

5  **before you -- before they approve them?**

6          MR. MACHALIK:  Objection.  Foundation.  You

7     can answer.

8     A.   I believe they would read the report before

9  approving it.

10  BY MR. STARR:

11    **Q.   Can a supervisor reject the report and ask a**

12 **detective to change something or fix something in a**

13 **report before they approve it?**

14    A.   We can do that, yes.

15         MR. STARR:  Okay.  I have no further

16    questions.

17         MR. MACHALIK:  No questions through me.

18         THE REPORTER:  All right.  And before we go

19    off the record here -- well, let me take us off the

20    record actually.

21              (DEPOSITION CONCLUDED AT 1:08 P.M.(CT))

22

23

24

25

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              CERTIFICATE OF DIGITAL REPORTER
 2                    STATE OF ILLINOIS
 3
 4   I do hereby certify that the witness in the foregoing
 5   transcript was taken on the date, and at the time and
 6   place set out on the Title page here of by me after
 7   first being duly sworn to testify the truth, the whole
 8   truth, and nothing but the truth; and that the said
 9   matter was recorded digitally by me and then reduced to
10   typwritten form under my direction, and constitutes a
11   true record of the transcript as taken, all to the best
12   of my skill and ability.  I certify that I am not a
13   relative or employee of either counsel, and that I am in
14   no way interested financially, directly or indirectly,
15   in this action.
16
17
18
19
20
21
22   ZOE NYHUS,
23   DIGITAL REPORTER/NOTARY
24   COMMISSION EXPIRES:  09/20/2027
25   SUBMITTED ON:  10/24/2023
```

OFFICIAL SEAL
ZOE NYHUS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES SEPT. 20, 2027

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Exhibits**

Exhibit 6_
Schalk 26:6,8
37:14

Exhibit 7_
Schalk 38:1

Exhibit 8_
Schalk 38:4,6,
16

Exhibit 9_
Schalk 51:21,
22 55:16

Exhibit 10_
Schalk 64:21,
24

Exhibit 11_
Schalk 68:5,10
71:19

Exhibit 12_
Schalk 74:13,
16

Exhibit 13_
Schalk 79:2,5

Exhibit 14_
Schalk 83:4

Exhibit 15_
Schalk 87:10,
11,13 95:9,10
103:25

**(**

(708) 80:12
81:5

**0**

00:52 41:10

02 28:1 39:25
41:10 53:25
75:9,11 80:3
83:21 88:1

0247064601
53:1,2

0455 81:6

**1**

10 64:21,24

10-minute
74:6

11 39:25 68:5,
10 71:19

11-25-64 81:6

11:30 40:2

12 13:3,13,24
18:7,17 19:10
32:24 41:10
45:15 53:15
54:4,13 57:7,24
60:14 62:16,19,
24 63:3,7
74:13,16 75:16
77:2,17,21
78:11 80:3
81:14,18 89:15
99:11,18,24

12:52 42:11

12th 42:11 44:2
53:25

13 79:2,5

14 83:4,5,6

140 87:11,16

142 89:11

1420 76:14

1435 66:20

144 44:4

145 92:19

146 92:17,19
93:18

147 87:11,18
93:21

15 76:3 83:3
87:11,13 95:10
103:25

15-22 41:3

15th 40:22,25
41:11,15,21

89:17,22

1761 26:7,13,
15 27:7

1767 26:7

18 38:17

181 74:15

19 23:6,17

192 35:12,18

193 36:11

1930 75:25
77:3 89:15
90:11,13

197 35:12

198 35:21

1990 13:3,10,
20 33:7 44:11
45:6 68:7,14
69:2 71:17
92:10 93:6,9,10

1995 11:19
24:6,16 25:12
66:8

1999 23:23

1:00 75:12

1:08 108:21

**2**

2-12-02 26:22,
24 32:12

20 44:2 76:3

2002 11:21
13:4,21 24:1
28:7 32:24 44:2
50:13 53:15
54:4,13 57:7,24
60:14 62:16,19,
24 63:3,7 66:24
75:16 77:2,17,
21 78:11 81:14,
18 88:6 89:8,15
94:8,13 97:24
99:11,18,24
106:1

20:49 53:25
54:2

20th 83:21

21 66:16 68:14
69:2 88:1,6
94:8 106:1

21st 76:14 77:6
94:11

2330 40:1,2

2355 69:3

24th 88:20

25-year 91:2

**3**

31 67:2

312-746 41:12
55:7

320 81:4

348- 81:3

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
81:6

**4**

4 22:21

401 81:7

410- 81:5

435 54:24

45-44 51:21
52:2 55:17

49 69:13

4:30 75:12

**5**

5 22:17,20,22
37:17 41:16,19
44:6 89:17,22
104:3

50 70:10

51 68:8

5278 75:23

547-9730
80:13

**6**

6 26:6,8 37:14,
16

60-4347 81:4

60104 81:4

65 64:21

**7**

7 37:15,21 38:1

708 384-5089
81:8

7:30 44:1 77:3,
16

**8**

8 38:4,6,16

8-whatever
57:24

8:48 60:6 63:23

8:49 54:3,4,13
55:14 57:24
60:6 63:24
77:20

**9**

9 51:21,22
55:16

90 45:5 76:17

95 23:6,17

966425 90:23

9:00 63:15
80:13

**A**

a.m. 75:12

abreast 104:5,
12

account 18:3
45:5

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

accurate 13:8

act 15:10

actual 25:22

addict 15:1

additional 20:7

address 59:10 62:22,23 63:2,9 66:20,23

addresses 59:13 63:1

admitted 11:15

affect 15:10,16 99:6

affirm 7:8

age 62:8,13

agree 31:7,15

agreed 7:6

ahead 38:7 47:7

AKA 90:22 92:3,8

alert 40:7

alias 28:13,19 47:22 48:22 50:8 51:13

aliases 33:17

alleged 21:21

allegedly 19:19 20:5,14 21:10 85:12

allowed 24:5, 9,13,16,17,22 25:4,19 26:1

Anthony 88:13 102:21

apologize 47:7

apparently 63:8 73:9,19 83:20

appearance 6:5

appears 43:4 52:5,21 57:3 66:13 83:21 84:13,19,22

approval 88:15

approve 88:17 108:5,13

approved 104:1

approving 88:18 103:22 108:9

approximately 71:12

April 83:20

Area 41:16,19 44:6 89:17,22 104:3

armed 76:19 90:24 91:2 99:3,6

Arnold 27:4,5, 10,13 28:10,13, 19 30:12 33:13 34:12 47:13,16, 21,22 48:17,18, 22 49:8,9,16,19 50:8,9 51:11,13 53:8,10 58:19 60:18 61:4,11, 19 62:6,8,11 76:15 90:23 91:1 92:3,8

array 19:20 20:7,15 27:25 28:2,6 29:22 30:23 31:8,16 35:2 47:10,19 49:10,12 50:2 58:18 59:25 66:24 72:19 73:14,23 92:5,7

arrays 31:11, 14 58:12

arrest 10:10 18:14,25 19:1,4 34:15,17 35:1 39:6,8,25 41:3,

23 43:19 45:21 90:21 97:24

arrested 17:20 19:8 21:19 34:20,21,24 39:20 40:8,20, 24 43:21 50:12 57:2

arrests 90:24

arrive 59:17

arson 17:20 34:16,21 45:21

art 58:6

ASA 76:10,16 86:5,13,18,24 87:6

assigned 69:11 88:22

assist 82:13

Assistant 10:18

assume 42:5 59:7 90:8

attempted 17:20 34:16,21

attending 6:5, 9,14,17

attention 64:18 89:10 92:16

attorney 9:2,6, 18 10:19,21 18:22,24 19:6 20:21,22 21:17, 24 73:10 85:18, 19 95:7 101:25

attorney's 18:20 35:8 98:11 101:6

attorney/client 98:3,8 100:25

attorneys 8:25 9:12 96:1

author 65:22

aware 14:12 35:7 96:17

97:11 103:8 104:5,12,20

———————

B

back 13:10,20 15:25 21:8 28:1 33:7 41:23 45:5,11,13,19 58:7 65:13 66:8 67:12 71:25 74:10 75:10 76:7 80:24 82:24 85:18 86:7 89:7 95:24,25 96:13 103:17 106:12

background 14:23

based 11:10 39:18 44:16 61:16 95:3 98:7

basically 11:7 44:19 74:24

basing 55:13

basis 15:25

Bates 26:13 35:17,20 52:2 55:16 68:8 74:15 79:8 83:11

Beat 41:3

began 9:15

begin 7:12

behalf 6:8

belief 95:21 96:8,25 97:17 98:1 99:6 100:19

believed 15:9 95:25 96:1,2,13

Bellwood 81:4

birth 29:4

bit 13:6,16 39:23 41:7

Blacks 71:14 92:6

Blagg 6:11,12

blood 44:23

Bogucki 9:25 10:18 11:19 23:3,8 24:3,20 29:14 35:5 44:8 46:14 60:1 72:25 75:20 78:15,21 86:10 87:6 88:21 95:11 99:9 102:18 104:21

Bogucki's 84:13

bottom 26:13, 16 35:17,20 36:11 52:2 53:18 68:22 74:15 76:12 92:21 93:18 95:9

box 66:12,14, 16 67:2

bread 15:15 16:24 44:23,24, 25

break 74:4,6 82:21 103:14

Brian 6:13 71:2

briefly 27:20 35:24

bring 19:4,17 47:4

brought 28:9 33:24 37:20 40:22 44:7 49:20

Brown 90:23

Bulicky 69:16

business 11:4 76:18

buy 44:22 46:5

buying 46:5

———————

C

Cabrini-green

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

76:18

call 60:10
74:23 87:3

camera 6:24

car 80:16,20
89:24

case 11:19
17:22 18:2,5,
11,12 19:6
20:8,17,20
21:13,16,19,23
30:14 31:1
37:10 48:1,6,11
52:22 53:1
60:21,25 64:22
65:14,18 69:20,
22 87:20,24
88:22 100:1,3
101:12,23
102:1,5 104:9
107:17,21

cases 31:4
65:7 104:16
105:13

cast 97:25

CCSAO 26:6
37:17

Center 91:1

Central 76:17

certificate
97:12,16

chance 27:2,
20 35:23 88:25

change 73:18
96:14 97:8
100:8,16,18
105:20,22
108:12

changed 96:5

changing
105:1

characteristic
29:3

characteristics
30:1

charge 18:20,
23 19:5,16

21:18 34:18
105:2

charged 21:17

check 103:14

checked 90:20

Chicago 6:10,
12,17,18 19:1
33:5,19 39:19
48:9 50:12
54:11 56:8
57:25 98:23

choose 62:4
85:11

chose 85:9

circumstantial
68:3

city 6:10,17
35:12,17 36:11
38:17 44:4
64:21 68:8 71:5
74:13 79:2,8
83:3,12 87:11,
15,18 89:11
98:23

civil 60:20
101:23 102:1

CJF 51:21
55:17

CJF51 70:10

clear 21:16,19,
23 52:25
105:25 106:8,9

client 50:13

Clinton 36:18
37:8

close 19:21
20:8,16 21:12
62:12 75:9

closed 106:9

co-counsel
6:10

co-defendant
29:14

coat 36:13,14

cold 7:23 20:8,

17 21:13 65:7
104:15 105:13

colleagues
100:3,14

color 29:5
35:14 62:11,13

column 80:6,
10 81:1

columns 80:7

committed
100:4

communicatin
g 105:9,16,17

communicatio
ns 98:4

company
84:16

compared
13:20 18:3

complete
93:11

compose 23:3

composed
23:8,22,25

composing
106:10

computer 41:8
42:3 55:9 88:16

computer-
42:24

computer-
generated
42:21 53:19
91:13

computerized
58:5

computers
41:8

CONCLUDED
108:21

conducted
10:9 77:2,6,10
78:7,17,19
81:13 86:2,25

conducting
81:17 104:6,22

confirm 33:12
61:3

conflict 93:25

Conflicts 26:7

conforms
90:12

connect 48:17

connected
51:12,15

consideration
s 100:12

considered
100:2,10,13

conspire
102:4

constitutional
102:6

contact 43:21
104:9

contacting
43:8,11

contemporane
ous 85:21 86:1
94:19

continuation
8:23

continue
106:11

continued
20:4

conversation
9:5,8 24:7

conversations
24:4 46:24

convicted 18:6
22:12

conviction
96:18,24 97:8

Cooper 14:25
15:8,13,21 16:2
17:5,10 19:19
20:6 21:10 22:2
32:14,20 37:3,8

conducting
81:17 104:6,22

confirm 33:12
61:3

conflict 93:25

Conflicts 26:7

conforms
90:12

connect 48:17

connected
51:12,15

considerations
100:12

considered
100:2,10,13

conspire
102:4

constitutional
102:6

contact 43:21
104:9

contacting
43:8,11

contemporaneous
85:21 86:1
94:19

continuation
8:23

continue
106:11

continued
20:4

conversation
9:5,8 24:7

conversations
24:4 46:24

convicted 18:6
22:12

conviction
96:18,24 97:8

Cooper 14:25
15:8,13,21 16:2
17:5,10 19:19
20:6 21:10 22:2
32:14,20 37:3,8

58:24 59:7
60:10,13,20
61:4 66:18,20
68:16 76:3,7
78:11,19,23
84:11,15

Cooper's 59:1,
5,15,25 60:16

copies 101:21,
25

copy 38:24
43:18

corner 26:20,
21 44:20 76:1

correct 7:20
8:5,15,17 9:20
11:16,17,22
12:6,14,21
14:14,22 15:23
16:18 17:1
18:1,8 19:22
20:8,17 21:13,
23 22:3,7 23:1,
20,21 24:11
25:4,12,20 26:2
27:4,13,18 28:7
29:16,21 30:2,6
31:2,24 32:9,24
33:2 34:1,16
35:2 37:22
42:13,18 44:2
46:22 47:13
50:20 51:3,11
53:2,5 54:5,13
56:6,11,19 57:7
58:15 59:2,5,13
60:4,7,22,25
61:16 63:15,24
65:9,19 66:5,
14,18 67:2,8,11
68:1,17,20,25
69:7 70:7 72:19
74:22 75:4
76:24 77:7,17,
21 79:14 82:2
83:15 84:1
85:22 86:6,10
87:7,21 88:3,9,
13,19,23 89:8,
12 90:13 94:1,
16 95:5,16 97:9
103:21 104:1
105:18 106:3,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

22,23

Correctional 91:1

Corrections 92:4

correctly 72:8

corroborate 46:4

could've 64:7

count 38:8

couple 80:21, 25 81:4

court 21:19 97:7,16 104:1

covering 32:3

create 106:21

created 22:15 25:24

creating 23:20

credibility 13:5,16,25 14:3,8,11 15:2, 11,17 17:21,25

credible 14:22

crime 16:7,9 65:16,19 68:1 99:7 100:4,15

criminal 14:7, 10,13,20,23 49:24 52:5 91:16 98:22

curious 24:22

custody 34:25 40:21

cut 70:18,19,21 71:3 85:7

——————

D

Dark 81:8

database 92:13

date 23:5,7,11, 16,17 26:17,20

39:19,25 41:10 42:12,14 53:13, 23 57:3,7 59:2 64:3,6,7,15,19 68:13 75:7 80:1,3 87:23 88:3

dated 64:15,16 68:13 69:2

daughter 84:22

day 40:9,15 43:23 104:25

days 9:19 86:8 94:10

December 68:14 69:2 76:17

decision 18:20,22 21:25

Deck 44:10

Defendant 6:17 9:25 11:19 29:14 99:21,23 103:20

defendants 6:14

deliberately 12:4

denied 11:1,2

dep 37:19

department 33:20 48:10 50:12 54:12 56:9 57:25 91:19 92:4

depending 104:7

depends 63:13

deposed 7:3

deposition 7:17 8:7,12,23 9:15,23 10:1,3 12:17 13:2,12 17:24 22:25 24:4 28:3 39:2 52:8 75:1

108:21

deprived 102:5

description 67:8 69:6

detective 10:18 15:7 19:1 23:3,8 24:3,20 35:5 39:19 44:8 46:14 60:1,2 67:22 68:7 69:14,16 72:3, 7,11,17,25 75:20 78:14,21 84:13 86:10,11 87:6,8 88:22 95:10 99:9,16, 20 104:4,21 108:12

detectives 24:21 89:16 90:17,20 92:2 93:6,9,10

determine 28:17 34:9 48:20 49:6,18, 21,23

direct 7:13 89:10 92:16

disclosing 98:3

discovered 42:4 50:8

discussed 24:5 100:24

discussion 103:4

dispute 13:17 34:22

district 40:22, 24 41:11,15,21 89:17,22

Division 104:4

Dixon 27:4,5, 10,13,18 28:10, 13,19 30:9,12 33:13 34:12 47:13,16,21,23

48:17,18,22 49:8,16,19 50:8,9 51:11,13 53:8,10 58:19 60:18 61:4,11, 20,22 62:2,4,6, 8,11 76:16 90:23 91:2 92:3,6,8

Dixon's 49:9

Dixons 28:9

doc 53:20

document 16:23 17:10 22:22 23:4,8, 11,20,22,25 26:10,21,23 27:7 35:11,21 38:18,20,23 39:5,13,16 41:2,5 43:17 48:19 49:5,13 51:24 52:1,4,7, 10,15,17 53:8, 17 54:22 55:14, 16 56:24 57:16 64:22 65:2,11, 16,22 66:2,5,8 67:11,13 68:5, 9,12 71:4 74:14,18,25 75:3 76:12 79:3,7,11,24 81:11 82:8,16 83:8,11,17,19, 25 85:2 87:12 88:6,8 89:1,3, 12 94:20 95:9 106:10,20

documented 17:4 46:22,25 81:24 82:5,11 85:10 86:3

documenting 93:8 95:4

documents 27:23 29:21 30:2 56:3,17 64:15 67:19 88:14 101:15 102:1 103:8

dope 11:4 44:20,21 76:18

dots 51:15

doubt 98:1

downtown 58:6

draft 106:25

drafted 95:3

drafting 78:3

drive 44:25

driver 44:24,25 80:19,24 92:9

driving 76:4

drug 15:1,10 46:8,11

drugs 46:5,7

duty 88:16

——————

E

E.T. 69:16

earlier 59:5 91:17

easier 39:24

edits 107:14, 16,21

Edward 14:25 15:8,13,21 16:2 17:5 19:19 20:6 32:14,20 37:2,8 58:24 59:1,4,7, 15,25 61:3 66:17 68:16

effort 62:15

efforts 63:6

Emmet 11:20 12:4,19 36:25 58:25 62:15,18, 24 63:2 67:5, 14,17,24,25 70:7,11 71:16 72:10,13,19,24 73:1,3,4,11,12, 23 80:12 81:13, 17,20 82:17



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

84:19 85:10
86:16 93:17
95:5

ended 16:14
22:14

entered 22:22

episodes
76:24

Eugene 90:23

evening 60:4
63:11

eventually
19:16 57:2

evidence
15:23 18:16
19:10 20:3,7
45:25 64:1
98:13 100:21,
22 101:10
102:8,11,14,17,
20,23 103:1

exact 24:20
59:22

EXAMINATIO
N 7:13

Excellent 8:11,
22 37:25

exchanged
45:1

exculpatory
102:8,11

exhibit 22:16,
17,20,21,22
26:5,6,8 37:14,
25 38:1,3,4,6,
16 51:19,21,22
55:16 64:21,24
68:5,10 71:6,19
74:13,16 79:2,5
83:2,4 87:10,13
95:9 103:25

exhibits 37:20

exonerated
96:17,24 97:4,5

experience
39:19 40:13

explain 44:5

extensive
14:7,13

eye 29:5

eyewitness
68:3

___

F

face 74:1

faces 67:14
72:21,22 73:18
81:21 82:7,18
85:12 93:22
94:5,6

fact 7:5 13:3,
12,23 14:25
15:7,8,13 17:19
30:4,18 42:15
45:16,20 59:1
63:10 72:25
73:12 78:22
95:13 96:23
97:7,15 98:14
99:5 100:11,13

factor 14:11
20:20

facts 97:4

falls 80:22

familiar 65:9,
24

February
32:24 39:25
41:10 42:11
44:2 50:13
53:15,25 54:4,
13 57:7,24
60:14 62:16,19,
24 63:3,7 66:23
75:9,11,16
76:14 77:2,6,
17,21 78:10
89:15 99:11,18,
24

feeling 15:4

felon 18:6

felonies 19:5

felt 12:9,13

figure 37:18
38:5

file 52:13 56:3,
11,18 77:13
78:24 101:21

fillers 28:24
31:10 61:25
62:7,10

find 16:3,5
20:11 24:22
45:14 46:3
48:17 57:19
61:10,15,18,24
63:12

finding 40:19

finish 106:5

fired 71:13

firm 6:9

five- 103:13

five-minute
74:3

fix 71:3 108:12

fleeing 44:24

Fleming 67:22
68:7,24,25
69:15 72:3,7,
11,17

Fletcher 6:8
7:16 8:19 10:7,
10,20,23 11:8,
11,25 12:20,24
13:4,9 18:15,17
19:8,11,20
20:6,15 21:11
22:6 27:5,8,10
28:10,12,19
30:19 33:15,16,
23 34:1,6,11
36:18 37:8
44:21,22 45:3,
9,22 46:4,7,11,
15 47:2,3,9,12,
16,23,25 48:3,
5,8,10,11,14,
17,20,22,25
49:6,14,18,24,
25 50:3,7,19,

20,24 51:2,10,
13 52:6 53:5,6,
7 55:15,17
57:2,17,21,23
58:1 60:18 61:4
62:5 63:19,22
73:4,23,24
76:2,6,8,15
77:6,20 90:22,
23,25 91:6
92:3,8,13 95:22
96:8,17,23
97:12,15 98:14,
16,19 99:10,17,
23 100:4,19
101:11,17
102:5,9

Fletcher's
18:8 28:15 32:5
33:13 54:5
57:20 91:20,24
97:24 98:1,21
100:15,23

Fletchers
47:24 48:5,13
50:11 55:25

fluid 34:20

form 12:7
14:15 17:2,13
18:9 19:2,12,23
20:9,18 21:14
24:23 25:5
29:6,15 31:18
34:3 45:24
46:17 50:5,14
51:5 54:6,14,15
55:19 56:20
58:2 59:19
63:25 64:8,17
71:22 73:15
77:22 91:7
93:11 94:2
96:19 97:1,19
98:24 100:5
101:19 106:13
107:3,10

forward 14:1

found 33:23
36:10 84:6

foundation
20:18 50:14
54:6,16 56:13

77:22 99:12
108:6

Frederick 81:4

friend 11:20
12:5,19 20:14,
22 21:4,11
22:3,10 32:15,
19 37:6 58:24
63:7 67:4 70:7
92:19,22

front 49:12
76:5

full 6:20 13:14,
24 92:21

Fulton 76:9

___

G

gave 20:3,7
22:10 33:14
46:18 98:18

general 64:22
65:14 67:18
74:22 75:14
76:23 78:3,5
79:13,18,19
82:11,18 83:14
85:9 94:18

generally
31:14,21 65:15
84:8

generate
65:19 91:16

generated
42:25 53:23
54:22 55:10
56:10,18 57:1

generating
107:17

Gilbert 69:14

Gilger 65:23,24

give 7:9 13:14
18:7 22:14
44:18 59:22

giving 49:7,15

good 6:7 7:15
11:3 56:16 72:7



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

76:18

GPR 22:15 25:18,20 78:13, 17,18 90:12 93:25 94:4,5 95:4

GPRS 24:6,14, 16,18,22 25:4, 19,21,24 85:24 86:1,3

grab 37:17

grabbed 80:24

Graham 76:14 91:1

graphic 58:6

guess 26:19 31:21 50:4

guilt 97:9

guilty 95:22 96:1,2,8,25 97:18 98:1,14 99:7 100:15,19, 21,23 101:11

gunshots 45:1 76:5

guy 47:15

_____

H

hair 29:4

half 10:15

hand 7:8 25:14

handwriting 43:9,13,14 52:17,20 75:3, 19,23 79:16,19 83:22,23 84:14

handwritten 20:23 22:9 25:20,21 26:1,3 41:5,24 43:1

happened 33:8 44:5,11 88:15

hear 44:11 97:3,10,21

100:7,8,20 102:17,20,23 103:1

heard 45:2,8, 12 76:5 96:2,4, 14,21 97:4,14 100:16

height 29:5

hiding 17:6

highlighted 70:13 71:10 89:14 90:16 92:2 93:21

highly 31:7,15

histories 14:10 48:4 55:24

history 14:7, 13,21 49:24 50:19,23 51:3 52:5 53:4 54:5, 12 55:15 57:1, 10,17,23 63:18, 21 77:19,20 91:6,16 98:22

hit 80:20

hold 6:24

home 59:2,5, 16,25 86:17

homicide 8:4, 14,20 10:6,11 11:13 15:15 16:11,25 18:15 19:9,22 21:13 25:16 28:7,18 30:22 33:8 39:13 44:10 56:25 78:7 85:4 89:7,18 101:16 103:21 104:13, 23

Hoods 81:8

hour 10:15

hours 40:1,2, 15 76:14 89:15

house 59:8 72:25

how'd 47:20

Huntley 6:15

hurt 13:5,15,25 14:3

hypothetical 19:13 93:12

_____

I

ICAM 90:20 91:8,11,14,15, 21,23 99:2

ID 6:24

IDC 58:7

identification 20:24 21:21 26:8 38:1,6 51:22 64:24 68:10 74:16 79:5 83:4 87:13

identified 48:24 50:3 58:19 92:8

identify 19:20 20:6,15 21:11 47:8 60:21 71:13 72:13,15 73:13

identifying 22:6 47:17

IDOC 28:9 29:20 32:8 36:24 47:5,13 48:23 49:8,15 50:2,21 51:10 57:6 58:7,11,18 59:25 60:13 61:7,9,25 66:24 92:5,13

IDOC's 51:2

IEOC 30:5

Illinois 6:15 92:4 97:13,17

imagine 31:5 58:16 62:2 63:5 106:5

immediately

61:12,14

impact 14:8, 19,21,24 15:2 17:21 96:24 97:17

important 12:1,10,18

inaccurate 72:4

Inaudible 40:22

incarcerated 49:19 90:25

include 56:3, 10 85:9,11

included 25:15 38:25 56:17 72:3 73:23 78:23

including 28:10 29:4 90:24 107:2,8, 15,19

Incomplete 19:12

incorrect 89:4

independent 8:3 22:1 23:19 25:2 27:12 39:12 52:14 78:2 81:16 85:5 104:19 105:4, 15

independently 8:8,13,18

indicating 85:16

individual 6:14 27:6,8 36:11,16 42:18 49:15 57:1

individuals 32:4 61:10 84:7

inform 104:9, 24

information 14:2 15:9 29:4,

20 41:4,6,8,14 42:25 50:16 53:20 55:9 66:7,9 67:10 72:3 85:11 97:25

inmates 30:5

innocence 97:12,16

innocent 11:12

instruct 98:5,8 101:1

instruction 98:12 101:7

interrupt 21:1 37:13 71:18 96:6

interrupted 47:6

interview 10:7, 9,13,15,16,20, 24,25 11:6,20, 21 12:4,5,10, 18,24 16:20 17:5 44:8,15 74:20 75:15,25 77:1,5 78:6,11, 13,17,18,23 81:13,17 82:6 85:10,15 86:25 87:1,4,7 89:24 92:18 93:17 94:15,20 95:4,6 99:10,17,22,24

interviewed 14:13 15:11 17:20 33:1,5,7, 9 73:9 77:16 86:6,9 87:2,5 89:18 90:13 94:12 98:18

interviewing 12:18 16:14 17:15,16 34:14 85:22

interviews 22:2 76:24 77:10 86:2

introduced



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

44:9

inventoried 28:11 29:23

investigate 16:1,10 46:10 47:24 59:12

investigated 17:12

investigating 56:25

investigation 8:4,14 10:7 16:23 17:15 20:4 39:14 56:18 78:8 101:16 103:21 104:5,12,21 106:11,24 107:1,7,24

investigations 106:5

investigative 40:7 47:1,11 56:3,10,11,18 58:20 78:24

involved 16:6, 9,11,16,18,24 17:11,12 19:11 73:19

involvement 85:3

IR 31:13 33:20 48:4 49:24 50:19,23 51:3 53:4 54:5,12 55:24 57:1,4, 10,17,23 63:18, 21 64:4,19 77:19,20 90:23 91:5 98:22

_____

J

jail 105:2,21

James 6:8 7:16 8:19 10:7,10 11:11 13:4 18:7,15,17 19:8,11,20

20:6,15 21:11 22:6 27:5,8,9 28:10,12,14,19 30:19 32:5 33:14,16 34:1, 11 45:22 46:4, 7,11,15 47:3,9, 12,16,23,24,25 48:2,5,8,10,11, 13,14,17,20,22, 25 49:6,14,18, 24,25 50:3,7, 11,19,24 51:2, 10,12 52:5 53:5,6,7 54:5 55:15,17,25 57:2,17,19,21, 23 58:1 60:18 61:4 62:5 63:19,22 73:4, 23,24 76:15 77:6,20 90:22 91:6,20,23 92:3,13 95:22 96:8,23 97:12, 15 98:16,18,21 99:10,17,23 100:4,15,19 101:17 102:5,9

Jay 65:23

Jennifer 6:11 10:19 22:9,10 76:10,16

Jerome 88:21 102:18

Jerry 75:15

JF 35:12,17 36:11 38:17 44:4 87:11,15, 18 89:11

JF179 79:3,8

JF180 83:3,12

JF181 74:14

JF47 68:8

JF64 64:21

Jimmy 33:15 44:20 47:2 76:8 90:21,22

job 56:16 72:7

joined 6:10 87:6

Jr 66:17

jury 96:2

_____

K

Kandye 84:23

Karen 69:16

keeping 104:20

Kero 69:14 105:12

knew 13:4,13, 24 28:18 30:8, 11 33:16,25 45:16 76:19 95:25 99:10,16, 17,21,23

knowing 48:2, 7

knowledge 11:2 98:16,21

_____

L

Lakita 81:7

lasted 10:13

late 63:10,13, 17

Latrobe 76:9

law 6:8

lay 80:23

layman 54:1

laymen's 40:4

Leads 41:25 42:3,5,7,15

learn 28:12 66:7

learned 67:10 90:22,25 94:21 97:25 98:13

led 15:15 16:25

left-hand 68:22 80:6,10

letter 70:19 71:3,7

lighter 34:20

lineup 21:11, 22 83:21 84:1,7 105:1,21

lineups 84:9

liquor 80:23

list 66:13 67:1, 7,25 84:1

listed 30:16,23 31:17 70:6

lists 66:14 69:6,9 88:21

live 21:11,21

lived 59:8 62:24

locate 58:21,22 62:15,18,21 63:6

location 6:6

lockup 40:22 41:21 42:5 90:9

lockups 84:8

Loevy 6:9

long 9:5 10:13, 14 12:2 43:20 46:14 57:19,22 62:12

longer 46:21

looked 11:8 36:9 50:7 60:18 61:11,19 66:8 91:17

lost 20:25 21:5 82:20

lucky 50:4

Luna 66:21

lying 60:22,24 61:1 73:1,5,8

_____

M

Machalik 6:16 12:7 13:18 14:15 17:2,13 18:9 19:2,12,23 20:9,18 21:14 24:23 25:5 29:6 31:3,18,25 34:3 38:10 45:24 46:17 50:5,14 51:5,16 54:6, 14,17 55:19 56:13,20 57:11 58:2 59:19 63:25 64:8,17 71:22 73:15 74:3,6 77:22 106:13 107:3, 10 108:1,6,17

made 18:22 19:21 20:15 21:12,22 35:4,7 65:8 77:12 82:5 88:9 95:15

Madison 76:1, 7

maintained 11:12

make 21:25 56:17 62:7,10, 15 63:6 64:11 71:19 73:14 75:19 77:9 78:13,17 82:15 94:25 100:8 107:14,16,20

makes 39:24

making 82:13

male 71:14 76:6 92:6

manner 69:9

March 23:6,17 25:12 80:3 81:14,18 94:12

mark 26:5 37:14,24 51:20 64:20 79:1 80:19 83:2

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

marked 26:8 37:19 38:1,4,6 51:22 64:24 68:10 74:16 79:5 83:4 87:13

marking 38:16

Mass 76:17

material 56:10

matter 56:5

Mccoe 69:15

meantime 106:6

meet 8:25 9:12

meeting 8:7 9:14 98:17

memorializati on 81:12

memory 71:24 85:15 95:2,5

men 35:25 77:11

met 7:16 22:13

Michael 68:23, 25

middle 66:12 80:19

mind 73:18 96:5,14 100:8, 17

minute 43:25 103:14

minutes 9:7, 16,18 76:3

missing 71:7

misstates 17:2,13 19:2 34:3 45:24 50:5 54:7 55:19 63:25 64:1 77:23

months 94:15, 22

morning 6:7 7:15

motive 69:9

mugshot 58:1

mugshots 37:17

multiple 46:24

murder 11:2 18:21 21:17,18 22:12 57:2 90:24 95:22 96:9

—————

**N**

named 47:15 49:16 61:22 67:5

names 28:23 30:1 31:9,12, 13,17 32:3 50:19 66:13 69:17,19 70:1,3 84:4

naming 12:20

narrative 89:11 93:16

nearby 44:20

necessarily 14:10 15:12 82:14 93:13 104:7 106:21

needed 12:14

neighborhood 49:3 92:24

NFL 36:13,14

Noradin 60:2 86:11 87:8 95:11 99:16 102:21 104:22

North 66:21

notation 81:20

note 43:1 74:24 82:5,12

noted 90:11

notes 25:21 26:3 74:19,21 75:14 77:10,11,

12 78:20,21,22, 24 79:17 81:12, 23 82:15 83:15, 20,21 85:14,15, 20 94:19,25 95:1 103:14

notification 42:17

notified 40:6, 16 42:11

NP 75:24

number 22:17 31:13 37:21 38:4,16 41:11, 12 43:2,17 52:22 53:1 55:4,5,7,8,10, 16 68:5 74:13 79:2 80:12 81:3,5 83:2 84:20 87:11 90:23 95:10 103:25

numbering 38:11

numbers 80:25

—————

**O**

Oak 81:7

oath 7:20

object 54:15 56:13 64:17 71:22 98:7,24

objection 12:7 13:18 14:15 17:2,13 18:9 19:2,12,23 20:9,18 21:14 24:23 25:5 29:6 31:3,18,25 45:24 46:17 50:5,14 51:5,16 54:6,14,17 55:19 56:20 57:11 58:2 59:19 63:25 64:8 73:15 77:22 86:20

91:7 93:11 94:2 96:10,19 97:1, 19 98:2 99:12 100:5,25 101:19 106:13 107:3,10 108:1, 6

obtained 92:3

occasion 33:2

occurred 17:16,17 65:17 66:10

occurrence 58:10 68:13

offender 12:20 13:14,25 44:23 48:25 74:1 80:18,20,22

offenders 13:5 18:18 67:8,15, 18 69:6,7 82:1 92:9,23 93:23 94:1

offenders' 81:21 82:7,17

Offense 64:22 65:14

offhand 73:17

Office 35:9

officer 65:23, 24 68:23 69:14 102:4

one-page 38:20 52:1 74:14 79:7 83:11

ongoing 104:12,20

open 100:12 105:25 106:8,9

opinion 15:7, 17 97:8

order 11:23 16:3,4 40:7,11, 17 42:5,8,10,18

ordered 97:16

organic 106:20

original 12:20 68:13

—————

**P**

p.m. 40:2 44:1 54:3,4 55:14 60:6 63:15 77:3,16 80:13

paid 64:18

paper 34:20 74:24 79:18 82:12

paperwork 40:10

paragraph 92:22 93:16

Park 81:7

Parked 80:16

Parkside 76:1, 8

parlance 40:4

part 70:14 71:10 89:11,14 92:18 106:14, 25 107:21

particularity 35:16

parties 6:4

partner 88:21

past 65:5

Paul 6:16 38:12

pause 13:15

people 14:1,9 19:4 27:18 30:5 45:17 61:15,22 73:18 84:1,8 94:5

Pergrotowski 69:15

period 12:2 24:6,14,17,21 25:3,12,18,25 43:22 46:19,22



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

104:14,15,17
105:14

person 9:19
18:25 36:3 49:7

person's
21:17

personal 29:3
30:1 101:17

personnel
69:11 103:2

phone 41:11,
12 43:2,17
55:4,5,6,10
75:24 80:12,25
81:5 84:20

phonetic 27:4
65:23 69:15,16,
17 76:9 81:7

photo 19:20
20:7,15 27:25
28:2,5,6,11
29:22 30:15,23
31:8,11,14,16
32:13,23 35:2
36:4 47:9,10,
19,21 48:24
49:10,12 50:2
57:20 58:1,11,
18 59:25 61:19,
25 66:24 72:18
73:14,23 92:3,
5,7

photograph
27:3 29:9,18
30:22 36:10
47:5,13 49:10
60:17 62:13
73:1,4,6 86:17

photographs
27:17,21,24
28:23 29:2,15,
19 35:14 48:10
51:2,11 62:14

photos 28:6,9,
20 31:12,14,17
32:4,8,15,17,20
33:20 35:23
36:1,21,23,24,
25 37:2,5,7,11
48:13 49:20

50:1 57:6,10
58:4,5,7,8,11
60:13 61:7,9,
13,15,18,21,25
73:10 92:6,14
99:2

picked 47:18
60:17 106:16

pictures 70:24

piece 15:23
18:16 19:9
79:17

place 9:9

plaintiff 6:8
7:4,16 47:25
48:6,11 55:25
101:12

play 63:11

played 45:21

pocket 26:20

point 8:12
15:19 21:22
28:3 34:15 35:1
42:8 43:17,18
50:25 58:23
60:4 63:19
106:11,24
107:6,13,15,19

police 8:24
13:4,13,24 19:1
33:5,19 39:19
41:12 48:9
50:12 54:11
55:6 56:9 57:25
64:14 65:7,19
69:14 71:17
72:14 91:18
92:12 102:2
103:2

policies 56:9

posed 24:15

positive 92:7

positively 92:7

possession
101:18 102:2

possibility
37:9

possibly 42:7
87:8

potentially
73:13

practice 56:6

preparation
9:6 28:2 39:1
52:7 65:3 75:1
79:24 89:1

prepare 8:22
9:11,22

presence
10:21

present 10:16
19:6 20:21
21:24 29:20
86:24 102:11,
14

presented
18:21

pretty 31:24

previous 7:17
34:10 61:16

previously 7:3
14:25 15:9 32:7
33:9 34:5 59:16
65:6 72:6 73:12
76:4 92:23
93:10 103:19

primary 88:22

print 106:25
107:6

printed 26:24
32:8 53:18
54:18 57:4,6,9,
10 61:21 64:3,
7,12

printing 61:9

prior 10:10
24:4 28:20
29:13 33:9 59:9
64:1 92:13
98:17,22 99:10,
17,21,23
101:25

prison 27:10,
12 33:22 34:1,

6,7,10,12 47:15
48:18 49:2,15,
19 50:9,22 62:5
76:15 91:14
99:3,5

privilege 98:8
101:1

probable
18:14 19:14,17

PROCEEDING
S 6:1

produced
101:11

program 42:3

progress
74:22 75:14
76:23 78:3,5
79:13,18,20
82:11,18 83:15
85:9 94:18

promises
35:4,7

prosecution
8:19 101:17

Prosperity
84:11,16

pull 22:14
47:12,20 48:4
50:19,23 55:24
57:25 58:7,11
61:12,14

pulled 49:24
51:2 54:4,8,9,
12 55:23 63:18,
21,23 77:20

pulls 76:3

purpose 65:15

pursuit 44:25

put 11:23 16:3,
4 28:10 47:9
49:9,12 50:1,2
79:17

_____

Q

question 7:24
14:4 17:9 20:1

6,7,10,12 47:15
48:18 49:2,15,
19 50:9,22 62:5
76:15 91:14
99:3,5

24:15 40:23
43:12 45:7
49:1,4,11 54:16
80:19 98:12
101:2,4,7

questioned
13:19

questions
17:24 108:16,
17

quick 22:20,21

_____

R

race 29:5

raise 7:7

ran 76:7

Raymond 6:22

re- 7:24

reaction 60:16

read 52:24 65:8
67:12 70:16
71:8,10 75:21,
22 76:12 80:5,
10,15,17,21
81:2,8 88:8
108:8

reading 76:21

real 30:19

realize 40:11

reason 12:17
13:16 23:12
34:22 72:2
77:25 78:16
82:4,10,16
85:25

reasoning
97:10,21 100:8

recall 7:17
8:13,18 10:14,
25 11:5,8 13:6,
7 16:8 22:5,13,
22 24:16 25:7
27:9 28:14,15,
21,25 29:8,22
30:10,13,24
31:4 33:18

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

34:13,18,24
36:8 39:17
43:22 44:12,15
47:22 48:2,7
49:22 51:4,7
56:1 57:12,22
58:17 59:14
61:5 62:1 63:1,
4,8,21 78:14
84:6,15,25
91:22,25 93:3
104:14 107:4,
11,22,25

recalled 8:8

received
97:12,15

receiving
98:22 102:17,
20,23 103:1

recently 71:5
96:14

recognize
27:6,8 35:25
36:3,16 83:23

recollection
8:3 22:1 23:19
25:2 27:12
36:7,19 37:12
39:12 43:7
44:13 52:14
58:14 69:19,21
70:4 71:16
78:2,6 81:16
85:3,6 89:21
103:5,10
104:19 105:4,
16

record 6:3,21
20:25 21:5,7,8
26:6 35:12
38:17 39:4 44:4
52:24 68:8
70:16 71:11
74:8,9,10,13
75:21 76:22
79:2 82:22,23,
24 101:13
103:16,17
108:19,20

records 90:21
91:9,11,14

red 76:3 80:16
92:9

redact 29:25
30:4

referenced
68:6

reflect 69:21
71:24

refresh 36:7,19
37:12 69:19,21
70:4 71:15 78:6
85:3 103:9

refreshed
103:5

refuse 98:12
101:7

regular 58:10

reject 108:11

relating 101:15

relative 62:8

relayed 89:18

remember
16:19 22:16
25:7 27:14 30:3
43:10 45:11
60:12 61:1
70:25 90:4
91:13

remotely 6:9,
14,18

Remus 76:5

report 16:21
17:10 23:5,16,
17,18 25:9,16,
22,23 28:8
39:6,8,21
41:22,23 43:19,
24 44:3,14,18
45:4,10 46:19
49:17 52:15
59:21 62:20
64:22 65:15,18
67:23 68:7 70:4
72:4 74:22
75:14 76:23
78:3,5 79:13,
18,20 80:2,3
81:25 82:9,11,

13,15,18 83:15
85:9,16 87:20,
24,25 88:19
89:6 91:17 93:8
94:8,18,21
95:3,10,14
103:22,24
104:1 105:25
106:2,9,25
107:7,9,14,16
108:4,8,11,13

REPORTER
6:3,19,23 7:6,
12 21:8 37:13,
16,23 38:7
71:18,21 74:7,
10 82:24 83:5
103:17 108:18

reporting
68:23 89:16
90:18,19,20

reports 8:24
11:1,11 22:7,8
27:14 38:25
44:16 60:8 65:8
88:17 95:1
107:21

represent 7:4,
15 13:11 34:19
70:19 71:3

represented
55:16

representing
6:16

represents
81:12

request 48:9

requested
53:14

required 56:9

residence
59:16,17 85:21

responding
89:15 90:17
92:2

response
40:19

rest 29:10

review 11:11
28:2 39:1 55:13
65:2 89:1 103:9
108:4

reviewed 8:24
22:25 52:7 65:7
66:4 67:11
74:25 79:23
95:15

right-hand
26:16,20,21
80:5 81:1

righthand
41:25

rights 102:6

robberies 11:4
76:19

robbery 15:15,
20 16:25 66:10
90:24 91:3
99:3,6

robbing 44:23

Rogers 11:21,
24 12:5,9,13,18
13:3,13,23
14:12 15:1,4,
10,14,19,22
16:2,4,11,15,
18,24 17:6,11,
12,19 18:7,16
19:10 22:2
32:16,17,19,23
33:1,6,10,12,25
34:10,15 35:4,8
36:6,8,22 39:6,
20 40:7,12,17,
20 41:15,18
43:5,20 44:5,17
45:15 46:15
47:2,12,16
48:21 49:7,13,
14 50:18 55:17
57:17,20 58:19
61:6 70:8,9
74:20 75:15,23
76:19 77:2,16
78:18 86:25
87:4,5 89:16,
22,24 92:6,14
98:17,18 99:11,
18,21,24
106:15

Rogers' 12:19
14:7,20 15:2,
11,16 17:24
43:8 46:4

role 45:21
63:11 103:20

room 44:8

rotate 53:16

run 62:4

running 28:14
62:2 76:6 80:18
82:1 94:5

Runs 80:23

_____

S

Salvi 69:16

scene 67:23

Schalk 6:19,
22,23 7:3,5,7,
15 74:12 83:1
103:19

screen 22:19
26:10 27:7
37:17 38:18
51:24 64:23
68:9 70:21
74:14 79:4 83:9
85:8 87:12

script 41:9
53:19

scroll 26:12
27:1,15 35:14
69:5,11 70:10
80:14 93:20
95:8

Sean 6:7 38:10

search 91:13,
21,23

searched
50:21 51:1
91:5,8,15 92:12

searching
33:23

section 58:6
76:12 80:15
90:16 92:1,17



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-04768 Document #: 184-14 Filed: 05/06/25 Page 122 of 124 PageID #:5582
The Deposition of OFC RAYMOND SCHALK, taken on 09/30/2021
120

93:16

Security 81:3

seemingly 80:5

sees 44:22

selling 44:20 76:1,18

send 58:3,5,7

sense 64:11

sentence 91:2

sergeant 69:14 88:15 104:3,16 105:7, 8,12

sergeants 105:11

series 35:13

serve 105:22

serving 91:2

set 15:14,20,22 16:2

sex 29:5

share 22:19

Shaw 95:11

sheet 57:4 64:4

sheets 64:19

Sheree 11:20 12:4,19 20:14, 22 21:4 22:10 32:14,19 37:5 58:24 63:6 67:4 70:7 92:18

shifts 105:1,23

shooters 46:16

shooting 66:11 76:7 92:9

short 24:6 25:9

shot 80:20,22

shots 71:13

show 31:8,16 32:15,20 35:11

38:3,14 47:10 57:14,16 60:13 61:6 66:24 68:6 73:6,10,14 74:12 79:1 83:1 87:10 100:21 107:1,7

showed 27:25 28:6 29:24 32:17,23 35:2 37:5 50:2 58:18 72:18,25 73:3 86:16

showing 27:17 28:20,23 29:2 71:4 73:22 92:13 105:24

shown 29:15, 18 30:15,21 36:21,24,25 37:2,8 92:7

shows 68:16, 19 71:6 91:14

side 26:16 36:14 41:25 68:23 76:10 80:5,6,10

sidewalk 76:8

signature 68:24 79:10

signed 21:3 22:11 41:20

similar 60:19 61:11,16,17,19 62:11,13,14

single 18:25 31:1 73:4,6 86:17

sir 8:2,11,22 10:6 14:4 21:2, 10 22:23 26:10 31:2 35:11,13, 21 37:12 38:4, 17 39:8 42:2 43:14 48:15 49:1,21 51:24 52:4,18 55:2,7 59:18 64:23 66:2 68:9 70:2, 17 71:11 74:18

77:11 78:13 79:3,11,20 80:8 81:10 83:8,23 84:20 87:12,21 91:3 95:20 107:25

sister 43:2,8, 11 81:6

sister's 43:16

sit 95:20 96:7 106:21

sitting 106:21

skin 62:11,13

small 25:3

social 81:3,6

solemnly 7:8

Sorrell 8:4,14, 19 10:6,11 11:12 15:16 16:12 17:1 18:15 19:9,22 20:16 21:13 28:7,18 30:22 39:13 56:25 66:17 68:20 78:7 84:23,25 85:4 89:7,18 95:23 96:9 101:16 103:20 104:13,22 107:24

sound 44:2

South 81:4

Southwest 76:1

speak 12:1

specific 24:4 31:4 43:22 104:14,16

specifically 16:8,20 25:8 34:24 57:22 58:15 62:1 67:20

spend 9:14

spoke 9:2

spread 61:25

stamp 26:13 52:2 55:16 74:15 79:8 83:12

stamped 77:24

stand 84:7,9

standpoint 47:2

stands 91:14

Starr 6:7 7:2,14 12:11 13:22 14:18 17:8,18 18:13 19:7,18 20:2,13,25 21:5,9,20 25:1, 10 26:4,9 29:12 31:6,23 32:2 34:8 37:15,18, 24 38:2,9,12,13 46:2,20 50:10, 17 51:8,18,20, 23 54:10,20 55:22 56:15,23 57:13 58:9 59:23 64:5,10 70:23 71:2,9,20 72:1 73:21 74:2,5,11 78:1 82:21,25 83:6,7 86:23 91:10 93:14 94:7 96:16,22 97:6, 23 98:10 99:4, 15 100:9 101:5, 10,14,22 103:13,18 106:17 107:5, 12 108:3,10,15

start 106:10

started 94:9,10

state 6:4,20 16:20 97:13,16

state's 10:18, 19,21 18:19,22, 24 19:6 20:21, 22 21:17,24 35:8 73:10 85:18,19 95:7 96:1

stated 8:12 71:12 73:13 92:22 93:22

statement 12:20 13:8 20:23 21:3 22:9 46:4

states 44:1

Stefanich 6:13 54:15 70:21,24 71:8 86:20 91:7 93:11 94:2 96:10,19 97:1, 19 98:2,7,24 99:12 100:5,25 101:19

step 20:11 47:11 58:20

stipulate 7:4,7

stop 11:23 16:3,4 27:16 35:15 40:7,11, 17 42:4,8,10,18

stopped 85:8

store 80:23

story 46:18

street 44:20 80:19

strike 14:20 15:8 33:4 46:13 55:23 79:23 85:25 99:20,22 107:14,23

strong 18:12

stuff 105:5

sub-report 44:1

submit 25:17 88:14

submitted 25:22 88:1,3,5, 10,12,17 89:7 94:11,22 103:23 106:1

submitting 95:18



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

subsequently 28:11

suggest 107:20

suggesting 100:23

summary 70:11 89:19 92:18 93:17

supervisor 88:12,19 104:3, 8,11 105:3,5 107:1,8,14,15, 19 108:4,11

supervisors 104:20

supplemental 25:16,22 82:8, 13,15 85:16 89:6 95:3

supplementary 68:7 87:20,24 94:21 95:1

surprising 45:14

suspect 29:2 30:15 58:19 73:7,24

suspects 28:23 31:9 45:16,23 48:21 58:11 72:11,12, 15 73:13 85:13

suspicion 15:24

suspicions 17:5

swear 7:8

_____

T

takes 78:21

talk 9:17,25 10:3 12:14,15, 22 14:9 15:3,18 16:5 20:22 44:10 85:19 90:10

talked 12:2,25 68:20

talking 42:25 47:9 63:13 80:7 84:25

telephone 9:3, 19

telling 13:21 14:24 18:17 19:10 45:15,22 48:21 55:18 105:5

tells 44:17 73:17 77:15 80:23

ten 74:5

tentatively 19:20 20:6

terms 54:1

Terry 11:21,23 12:5,9,13,18,19 13:12,23 14:12, 20 15:1,2,4,7, 10,14,16,18,22 16:2,4,11,15, 18,24 17:6,19 18:6,16 19:10 32:16,17,19,23 33:6,9,12,25 34:10,14 35:4,8 36:6,8,21 39:6 40:7,12,17,20 41:14,18 43:8, 20 44:5,17 45:15 46:14 47:11,16 48:20 49:6,14 50:18 55:17 57:17,20 58:18 61:6 70:8,9 74:19 75:23 77:2,16 78:18 86:25 87:4,5 92:6 98:17,18 99:11, 18,21,24 106:15

testified 8:9 11:18 12:12,16 13:2 22:11 24:10,13,20 29:14 32:7

60:20,24 65:6 72:6 78:10 103:6,11,19

testify 17:23

testifying 13:6,7

testimony 7:9 11:10 13:15 17:3,14 19:3 29:13 34:3 50:6 51:1 54:7 55:20 61:16 62:25 63:3 64:1 77:23

Tex 69:15

thing 24:21 41:24 79:23 80:4

things 69:10 106:6,7

thought 11:25 12:17 14:21 15:1,14,22 17:11 37:15,19 45:22 61:19 72:6 73:24 89:4 107:2

time 8:2,9 9:14 11:18 12:2,12 14:9 22:13 23:1 24:6,10,14,17, 21 25:3,18,25 33:4,5,10 34:10 37:20 39:20 40:10,13 42:8, 12,14,17,22 43:17,22 46:19, 21 53:24 54:1 57:3 58:4,17,23 59:17,22 60:8, 23 61:10,18 64:3,6,7,15,19 66:10 73:19 75:7,10,25 76:9 80:1 86:7,15,17 97:24 104:14, 15,17 105:8,11, 14 106:4 107:6, 13,15

times 30:14,17, 18 92:23

titled 79:18

today 6:11 7:20 8:12 9:6, 12 11:10 52:11, 15 65:3,4 75:2 79:24,25 83:17 89:1 95:21 96:7 97:25 100:24 103:4,11 107:25

today's 8:23 9:23 28:3 39:2 52:8 75:1

told 8:2,13,17 11:3 15:1,13,22 17:11 33:21,25 34:5,6 36:6 44:9,13 46:24 47:2 50:21,22 57:20 60:21,23 71:16 72:10,17, 20,22 73:11 81:21,24 82:6, 17 85:12,18 90:9 93:8 105:20 107:25

Tony 88:18 102:24 103:25 104:5 105:17 107:2,8,15,20

top 41:5,8,25 52:17 66:14

total 9:18

towels 34:20

tracking 38:11

transparent 44:6

transportation 90:5

transported 41:15,18 44:6 89:16

transporting 89:21,25 90:3,7

trial 22:12

tripped 42:8

truck 15:15 16:25 44:24,25

76:3,7 80:16 92:9

Trucking 84:11,16

truth 7:10

type 22:15 24:6,14,16,17, 22 25:4,19 26:1

typed 41:6

_____

U

Uh-huh 42:1

Uncle 76:5

underneath 42:24

understand 7:19,24 20:1 75:13

understanding 52:25 81:11 84:3

unknown 71:14

unusual 14:2 31:8,16,24

upside 53:17

user 46:8,11

_____

V

vacated 96:18, 24 97:7

verify 17:25 18:2 46:13

version 71:5

vic 80:22

victim 68:19 76:8 80:22,23 84:23

victims 66:14, 17 68:17

video 21:1,6 70:24 82:20 85:7

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

view 36:14

visited 86:17

——————
W
——————

Wade 11:20
12:4,19 36:25
58:25 62:15,18,
24 63:3 67:5,
14,17,24,25
70:7,11 71:16
72:10,14,19,24
73:1,3,4,11,12,
23 80:12 81:7,
13,17,20 82:6,
17 85:10,11
86:6,9,16
93:17,22 94:1,
12,16,20,21
95:5

Wade's 85:21

waited 11:19
12:3,4 13:3,13,
24 18:7

waive 7:2

walker 10:19
22:10 76:10,16
86:5,13,18,24
87:6

walks 76:2

wanted 11:21
12:5,15,22,24
15:3,18 44:10
46:5 73:10
90:10

wanting 71:19
73:19

warrant 105:2,
22

Washington
75:24 81:7

watch 75:8,9,
10 80:3 105:20

website 32:8
92:4

weight 29:4

West 75:23

westbound
76:7

whatever's
29:10

whatsoever
96:25 97:9
107:7

Willie 8:4,14,19
10:6,10 11:12
15:16 16:12,25
18:15 19:9,21
20:16 21:12
28:7,18 30:22
39:13 56:25
66:17 68:20
78:7 85:4 89:7
95:22 96:9
101:16 103:20
104:13,22
107:24

window 54:25

withheld
102:12,15,18,
21,24 103:2

withhold 102:8

witness' 18:3

witness's 67:4

witnesses
11:20 16:14
17:17 18:1,4
20:12 28:1,6,
18,22 29:1,3,
16,19 30:8,11
31:8,9,16 58:21
63:12,20 67:2
68:1 70:6

Wojick 88:13,
18 99:21,23
102:24 103:20,
25 104:5 105:8,
17 107:2,8,16,
20

word 18:6
44:19 71:7

words 80:21

work 76:2 81:5

worked 65:7

working 84:15
85:8 104:15
105:11,13

works 106:12

worth 38:10

would've
18:19,21,22
19:14,16 25:14,
19 26:1 29:18
37:20 44:7,9
46:22,25 52:13
56:5,8 62:21
63:9 65:7,8,11
67:10,12 73:11
77:12 78:23
85:20 88:8
95:15 104:24
105:8

write 81:23
82:1,14

writing 106:8

written 22:15
42:15 66:9
72:16 81:22
83:20 106:2

wrong 38:15
100:3,14

wrote 23:10
25:14 42:5
43:10,16 93:4

——————
X
——————

Xerox 43:18

——————
Y
——————

years 13:1,3,
13,24 18:7,17
19:10 45:15
59:5,8

yell 45:3,8,12

Yesterday
9:10

——————
Z
——————

zoom 39:23

41:7



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS