# EXHIBIT 19



Transcript of the Deposition of
**Jennifer Walker**
**Case:** James Fletcher Jr. v. Jerome Bogucki; et al.
**Taken On:** February 14, 2024

Royal Reporting Services, Inc.
Phone:312.361.8851
Email:info@royalreportingservices.com
Website: www.royalreportingservices.com

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
JAMES FLETCHER JR.,            )
                               )
          Plaintiff,           )
                               )
     vs.                       )   No. 20 CV 4786
                               )
JEROME BOGUCKI, ANTHONY        )
NORADIN, RAYMOND SCHALK,       )
ANTHONY WOJCIK, UNKNOWN CITY   )
OF CHICAGO POLICE OFFICERS,    )
and the CITY OF CHICAGO,       )
                               )
          Defendants.          )
```

        The deposition of JENNIFER WALKER, called
by the Defendant for examination, taken pursuant
to notice and pursuant to the Federal Rules of
Civil Procedure for the United States District
Courts pertaining to the taking of depositions,
taken via videoconference before Kari
Wiedenhaupt, Certified Shorthand Reporter
commencing at 10:32 a.m. on February 14, 2024.

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 2

```
 1   APPEARANCES (via videoconference):

 2     LOEVY & LOEVY
       MR. SEAN STARR
 3     311 North Aberdeen Street
       3rd Floor
 4     Chicago, Illinois 60607
       Phone:  312.243.5900
 5     E-mail:  sean@loevy.com

 6         On behalf of the Plaintiff;

 7     REITER BURNS
       MR. DANIEL J. BURNS
 8     311 South Wacker Drive
       Suite 5200
 9     Chicago, Illinois 60606
       Phone:  312.982.0900
10     E-Mail:  dburns@reiterburns.com

11         On behalf of the Defendant, City of
           Chicago;
12
       HALE & MONICO, LLC
13     MS. ALLYSON L. WEST
       53 West Jackson Boulevard
14     Suite 334
       Chicago, Illinois 60604
15     Phone:  312.341.9646
       E-mail:  awest@halemonico.com
16
           On behalf of the Individual Defendants;
17
18     LAW OFFICES OF JOHN C. COYNE
       MR. JOHN C. COYNE
19     53 West Jackson Boulevard
       Suite 1750
20     Chicago, Illinois  60604
       Phone:  312.929.4308
21     E-mail:  jcc@johnccoynelaw.com

22         On behalf of the Deponent;

23

24
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 3

```
 1   APPEARANCES (via videoconference) CONT'D:

 2     COOK COUNTY STATE'S ATTORNEY'S OFFICE
       MR. WILLIAM CLIFTON HOLMES
 3     500 Richard J. Daley Center
       Chicago, Illinois  60602
 4     Phone:  312.603.5440
       E-mail:  william.holmes@cookcountysao.org
 5
           On behalf of the State's Attorney's
 6         Office;

 7
       ALSO PRESENT:  Lo Ramanujam, paralegal at
 8                    Hale & Monico

 9                    *   *   *   *   *   *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 4

```
 1                    I N D E X

 2   WITNESS                          PAGE

 3   JENNIFER WALKER

 4     Examination by Ms. West          5

 5     Examination by Mr. Starr       159

 6

 7

 8

 9

10

11               E X H I B I T S

12   NUMBER                    MARKED FOR ID

13   Walker Deposition Exhibit

14        No. 1                       17

15        No. 2                       66

16        No. 3                       88

17        No. 4                      125

18        No. 5                      130

19        No. 6                      136

20        No. 7                      144

21        No. 8                      156

22

23

24
```

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 5

1      (Whereupon, the witness was duly
2  sworn.)
3      JENNIFER WALKER,
4  having been first duly sworn, was examined via
5  videoconference and testified as follows:
6  WHEREUPON:
7      EXAMINATION
8  BY MS. WEST:
9      Q.  Ms. Walker, can you please state your
10  full name for the record and spell your last
11  name, please?
12      A.  Sure.  Jennifer, J-E-N-N-I-F-E-R,
13  Walker, W-A-L-K-E-R.
14      Q.  Ms. Walker, I -- my name is Allyson
15  West.  I represent some individual officers that
16  are sued in a lawsuit by James Fletcher.
17      Have you ever been deposed before?
18      A.  I have.
19      Q.  Okay.  How many times have you been
20  deposed before?
21      A.  I believe twice, but I'm not
22  100 percent sure.
23      Q.  Okay.  I won't bore you with all the
24  ground rules, but if at any point you need to

Page 6

1  take a break, please let me know, and we'll take
2  that break.
3      If you any point you don't understand
4  my question, please let me know, and I will
5  repeat it or rephrase it in hopes to help you
6  understand the questions.  Understand?
7      A.  Yes.
8      Q.  Where are you currently located today?
9      A.  My office at 26th Street.
10      Q.  Are you utilizing the Zoom platform
11  from your computer or a phone?
12      A.  From a computer.
13      Q.  Okay.  Is there anything else up on
14  your screen other than the Zoom?
15      A.  No.
16      Q.  Is anyone else present in the room with
17  you?
18      A.  No.  I'm -- I'm in my office with the
19  door closed, and no one else is here.
20      Q.  Did you review any documents in
21  preparation for your deposition today?
22      A.  I did read documents that were sent by
23  my attorneys -- by John Coyne's office that I
24  was told were related to this deposition.

Page 7

1      Q.  Okay.  And did you review those
2  documents?
3      A.  I did read them, yes.
4      Q.  Okay.  Do you recall specifically what
5  documents were included in that packet?
6      A.  So I have them -- I printed them out,
7  and they are to my left.  And so if I'm looking
8  over here, I'm looking at the documents, just so
9  you know.
10      Q.  Okay.
11      A.  There was an attachment full of what
12  appears to be what we would call Felony --
13  copies of Felony Review files.
14      Q.  Uh-huh.
15      A.  There is a handwritten -- what appears
16  to be a handwritten statement of Terry Rogers
17  and a grand jury transcript involving testimony
18  of Terry Rogers, a -- what appears to be a
19  handwritten statement of Sheeree [sic] Friend,
20  and grand jury testimony of Sheeree Friend, a --
21  what appears to be a CPD sup report from
22  December of 1990, a document entitled
23  "Declaration" made by someone named Emmett Wade,
24  a Felony 101 sheet, a grand jury transcript of

Page 8

1  Jennifer Gonzalez's testimony that looks like it
2  was an indictment.
3      Q.  Mm-hmm.
4      A.  A sup -- a CPD sup report that was
5  printed on May 24th of 2002, a picture of five
6  men, a group of -- a collection of pictures of
7  men that appeared to be printed from the IDOC
8  website, and a document that purports to be an
9  arrest warrant pertaining to James Fletcher.
10      Q.  Okay.
11      A.  And just one more thing I want people
12  to know is that I wrote in blue kind of a
13  summary of what something is on the top of these
14  documents that I printed out just so it would
15  make it easier for me to find them on my desk,
16  because they -- you know, they're photocopies
17  and they all kind of look alike.
18      Q.  Absolutely.
19      A.  So if there's blue marks on it, that's
20  what those blue marks are.
21      Q.  Okay.  I understand.  Thank you for
22  telling us that.  And thank you for going
23  through what you looked at.
24      You are a licensed attorney, correct?

5  (Pages 5 to 8)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 9

1    A. Yes.
2    Q. And how long have you been licensed?
3    A. Since 19- -- November of 1994.
4    Q. And where are you currently employed?
5    A. The Cook County State's Attorney's
6 Office.
7    Q. And how long have you been with the
8 Office?
9    A. Since August of 1997.
10    Q. What is your current assignment?
11    A. I am the supervisor of the complex
12 narcotics unit.
13    Q. At some point in time in your career at
14 the State's Attorney's Office, were you in
15 Felony Review?
16    A. Yes.
17    Q. Were you in Felony Review more than one
18 time?
19    A. No.
20    Q. Okay. When were you in Felony Review?
21    A. From the fall of 2001 until, I believe,
22 the late summer, early fall of 2000- -- 2003.
23    Q. Okay. When you were an assistant
24 state's attorney in the -- in Felony Review,

Page 10

1 what did your duties and responsibilities
2 consist of?
3    A. When I was on Felony Review, I would --
4 we would review cases to see about filing -- if
5 felony charges would be brought. We would
6 review police reports at -- we would interview
7 witnesses at times, speak with defendants if
8 they wished to speak to us. We would make
9 charging decisions.
10    Q. Okay. And you mentioned that you
11 would -- you would speak with witnesses from
12 time to time; is that right?
13    A. Correct.
14    Q. Okay. Would you ever facilitate people
15 testifying before the grand jury?
16    A. I'm not sure what you mean by
17 "facilitate."
18    Q. Was there ever an instance when you
19 would transport or take a witness after
20 interviewing them from whatever area or police
21 station you were speaking with them at to the
22 grand jury to testify?
23    A. I never trans- -- I don't remember ever
24 transporting a witness to the grand jury.

Page 11

1    Q. Did you ever facilitate a witness going
2 to the grand jury to testify by calling another
3 assistant state's attorney who was assigned to
4 that division and give them a heads-up?
5    MR. STARR: Objection to form.
6 BY THE WITNESS:
7    A. I don't remember ever calling an ASA in
8 the grand jury unit and telling someone was
9 coming. I know I would make rec- -- I would
10 tell the police officers that someone should be
11 taken to the grand jury, but I didn't -- I don't
12 remember getting involved in the arrangements of
13 that happening.
14 BY MS. WEST:
15    Q. Thank you.
16    And you -- you testified earlier that
17 part of this process is making a
18 determination on a recommendation for charges;
19 is that right?
20    A. Correct.
21    Q. Generally speaking, when you're on
22 Felony Review, do you have that
23 recommendation to a supervisor?
24    A. On Felony Review I did have

Page 12

1 conversations with supervisors about what
2 charging decisions should be made. It -- it
3 wasn't necessarily that I was telling the
4 supervisor what to charge.
5    MR. HOLMES: On behalf of the State's
6 Attorney's Office, just given the nature of the
7 question and ASA's Walker's response just given,
8 I would caution and instruct the witness not to
9 reveal the substance of any charging decision
10 conversations with supervisors or colleagues
11 pursuant to the deliberative process privilege
12 of the Office.
13 BY MS. WEST:
14    Q. Do you have an independent recollection
15 of working on Mr. James Fletcher's case in -- as
16 a Felony Review assistant state's attorney in
17 2002?
18    A. I have a general recollection, but I
19 don't have a specific recollection.
20    Q. Tell me what your general recollection
21 is.
22    A. I remember that I was involved in the
23 review process of a case of -- of this -- of a
24 case involving a bread truck driver. I remember

6 (Pages 9 to 12)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 13

1    that I was involved in it on several days. I
2    don't remember -- I remember going with
3    detectives to IDOC to interview the defendant.
4         I do not remember the specifics of
5    what -- what IDOC facility we went to. I do not
6    remember the conversation between myself, the
7    detectives, and the defendant. I do not
8    remember specific conversations with witnesses.
9    I just have a general memory of -- of
10   recognition, should I say?
11        Q.   Prior to reading the documents, did you
12   have an independent recollection of the
13   detectives that were involved in the case of
14   James Fletcher?
15        A.   I didn't know who the detectives were
16   until I read the documents, so I would say no.
17        Q.   And now are you informed or is your
18   recollection refreshed as to who detectives were
19   that were involved in the case?
20        A.   I do -- after reading their names and
21   I -- and thinking about it for a second, I do
22   recognize the names, and I do remember -- I have
23   a vague recollection of -- of what they looked
24   like.

Page 14

1         Q.   And who were the detectives involved
2    that you worked with on Mr. Fletcher's case?
3         A.   Detective Schalk and Detective Bogucki.
4         Q.   Any other detectives that you recall
5    that worked on the case?
6         A.   Not that I can -- not that I remember.
7         Q.   Okay. Did you ever work with a
8    Detective Noradin, Anthony Noradin?
9         A.   I know when I was on Felony Review I
10   worked with Detective Noradin.
11        Q.   Do you have a recollection of him being
12   involved in Mr. Fletcher's case at all?
13        MR. STARR:   Asked and answered.
14   BY THE WITNESS:
15        A.   I -- I don't as I sit here today.
16   BY MS. WEST:
17        Q.   Had you worked with Detective Bogucki
18   prior to 2002?
19        A.   I don't remember.
20        Q.   Have you worked with Detective Bogucki
21   since Mr. Fletcher's case in 2002?
22        A.   I don't remember that.
23        Q.   Had you worked with Detective Schalk
24   prior to 2002?

Page 15

1         A.   I don't remember.
2         Q.   Had you worked with Detective Schalk --
3    or have you -- excuse me -- worked with
4    Detective Schalk since working with him in 2002?
5         A.   I -- I don't remember.
6         Q.   Same question for Noradin: Had you
7    worked with Detective Noradin prior to 2002?
8         A.   I -- I don't remember.
9         Q.   And --
10        A.   I'm probably going to say I don't
11   remember to this question too.
12        Q.   That's fine.
13             And have you worked with Detective
14   Noradin since 2002?
15        A.   I don't remember.
16        Q.   When you were first assigned to a case
17   on Felony Review, what would you do to get
18   yourself familiar with the investigation?
19        MR. COYNE:   Objection, foundation.
20             Go ahead.
21   BY THE WITNESS:
22        A.   Typically, I would -- it would depend
23   on if it was a phone case or a -- what we would
24   call a personal case where we would respond in

Page 16

1    person. If it was a -- if it was a personal
2    case, I would go -- I would typically go, meet
3    the detectives wherever they were at a police
4    station. I would have a conversation with them,
5    and I would review any reports that were ready
6    for me to review at that time.
7    BY MS. WEST:
8         Q.   How did it differ when it was a phone
9    case?
10        A.   If it was a phone case, typically, I
11   was having a conversation with an officer over
12   the phone. I would never have -- I wouldn't
13   have met them in person. And typically, on
14   phone cases, we did not receive reports to
15   review. It was -- the review process was mostly
16   a conversation with the officer or the
17   detective.
18        Q.   Understood.
19   BY MS. WEST:
20        Q.   I'm going to mark what you have got in
21   front of you, but I will share it on the screen
22   if you'd prefer as well. Let's mark the Felony
23   Review folder as Exhibit 1.
24

7 (Pages 13 to 16)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 17

1    (Whereupon, Walker Deposition
2    Exhibit No. 1 was marked for
3    identification.)
4    BY THE WITNESS:
5        A.  If you don't mind, I'm going to look at
6    it.
7    BY MS. WEST:
8        Q.  Yes.
9        A.  Because I can't see it very well on my
10   screen.
11       MR. COYNE:  Allyson, if you would still post
12   it on the screen, I would appreciate it.  I have
13   some of the documents printed out, but not all.
14       MS. WEST:  Okay.  I'll do that.
15       And I agree with you, Ms. Walker.  I
16   have it printed, because I think it's hard to
17   follow on the screen.
18       So for the record, it is
19   CCSAO_Conflicts_FletcherDixonBogucki_20cv4768_
20   0003014 through 003040.  All right.  Let me get
21   this pulled up really quick.
22   BY MS. WEST:
23       Q.  Okay.  Ms. Walker, can you see -- well,
24   do you have what we previously marked as

Page 18

1    Exhibit 1 in front of you, which is the Felony
2    Review folder?
3        A.  I do.
4        Q.  Okay.  And then it's also up on the
5    screen.
6        Do you see that?
7        A.  Yes.
8        Q.  Okay.  A couple just preliminary
9    questions about this document itself.
10       Is there anything else -- and when I
11   call it the Felony Review folder, is there
12   anything else other than this that is typically
13   included in the Felony Review folder?
14       A.  Other than this, the document on the
15   screen?
16       Q.  Correct.
17       A.  Okay.  Well, this appears to be a copy
18   of the outside of a Felony Review folder.
19   Inside the Felony Review folder there was a --
20   were carbon sheets that had a place to place
21   certain information, but since this is the
22   outside of the folder, you wouldn't be able to
23   see those papers as we look at it now.
24       Q.  Okay.  Thank you for the clarification.

Page 19

1        Okay.  Based on the document in front
2    of you, what type of charges were you
3    investigating relative to Mr. Fletcher?
4        A.  Well, I'm looking at this folder.  I
5    don't remember creating this -- or I'm looking
6    at this piece -- this copy of a folder.  I don't
7    remember creating this folder.  I do see writing
8    on there that looks like my handwriting.  I see
9    writing that is not my handwriting, and the
10   folder itself in not my -- in handwriting I can
11   say is not my handwriting says "murder" on it.
12       Q.  Okay.  Can you tell me on -- I'm sorry.
13   Did I cut you off?
14       A.  No.  You're fine.
15       Q.  On this first page that we are looking
16   at, which is 3014, what on this folder front is
17   your handwriting?
18       A.  Well, in the upper left corner, the
19   words "Fletcher, comma, James," looks like it
20   could be my handwriting, but I don't remember
21   writing on this document.
22       Q.  Okay.  I'm going to direct your
23   attention -- well, let me ask you this before we
24   go there:  Do you have an independent

Page 20

1    recollection of when you first became involved
2    with the review of Mr. Fletcher's case?
3        A.  I do not.
4        Q.  After looking at the Felony Review
5    folder documents, did that refresh your memory
6    as to when you first became involved?
7        A.  I don't remember creating any of these
8    documents, so it's -- it's hard for me to say
9    that I -- that I know that.
10       Q.  Can you take a look at -- it's -- at
11   the bottom the Bates is 3018 or page 5 of the
12   document.
13       A.  So I -- I'm sorry.  What's the Bates
14   number?
15       Q.  Sure.  3018.
16       A.  To make it easier for myself to prep, I
17   took -- I took that file apart.  Oh, you have
18   got it up on the screen now.  Okay.
19       Q.  I do.  Thanks.
20       A.  Hold on.  That will help.  Sorry.
21       Q.  No, no.  You're fine.
22       A.  And just so -- because I'm having a
23   little trouble seeing some of this --
24       Q.  Yes.

8  (Pages 17 to 20)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 21

1    A. -- the date on this is -- it looks like
2  it's 13 February 02, Action No. 55?  Is that
3  what you see?
4    **Q.  Yes.**
5    A.  Okay.  Yes.  I've got that in front of
6  me now.  Thank you.
7    **Q.  Okay.  Okay.  Great.**
8    **Is this document -- and when I say this**
9  **document, specifically this page, 3018 -- in**
10 **your handwriting?**
11   A.  I don't remember creating this
12 document, but the handwriting on this -- on this
13 document looks like my handwriting.
14   **Q.  You note under charges -- well, strike**
15 **that.**
16   **There is writing under charges that**
17 **looks like it says, "first-degree murder, armed**
18 **robbery."**
19   **Do you see that?**
20   A.  I do see that.
21   **Q.  And next to that there is the word**
22 **"action," and it has the letters "CI."**
23   **What does that mean?**
24   A.  So when -- on Felony Review, when ASAs

Page 22

1  are reviewing a case, there is typically three
2  actions.  There is approve, there is a reject,
3  or CI, which I believe stands for continuing
4  investigation.
5    **Q.  And below that it looks like it's a W**
6  **with a circle around it, and it says, "ASA**
7  **O'Brien."**
8    **Do you see that?**
9    A.  Yes.
10   **Q.  Do you know who that individual is?**
11   A.  I don't remember creating this
12 document, and I -- in order -- in order -- I
13 have a guess, but I don't know for certain who
14 that person would -- would be.
15   **Q.  Do you have any idea what the W with**
16 **the circle, that shorthand, stands for?**
17   MR. COYNE:  Let me just instruct you -- first
18 of all, objection, foundation.  Secondly, in
19 terms of answering these questions -- and I'm
20 going to give you instruction now just to
21 avoid -- potentially avoid interruptions.
22   I would instruct you not to answer any
23 question if in order to answer the question you
24 would need to reveal your opinions about the

Page 23

1  evidence, your legal theories, your strategies,
2  or your decisions; basically, everything that
3  constitutes your mental impressions.
4    If in order to answer these questions,
5  including the interpretation of what appears to
6  be an abbreviation -- if in order to do that you
7  would need to reveal your mental impressions of
8  your work as a prosecutor, I would instruct you
9  not to answer that question pursuant to Federal
10 Rule 26 and the work product doctrine.  If you
11 can answer the question or questions without
12 doing so, then you may proceed.
13   Do you understand the instruction?
14   THE WITNESS:  I do.  Thank you.
15   MR. COYNE:  Okay.
16   MR. HOLMES:  Same guidance and same
17 instruction on behalf of the State's Attorney's
18 Office on grounds of deliberative process
19 privilege.
20   THE WITNESS:  I'm sorry.  Could you state the
21 question again?
22   MS. WEST:  Absolutely.  Can you read it back,
23 please?  Thank you.
24

Page 24

1    (Whereupon, the record was read
2    as requested.)
3  BY THE WITNESS:
4    A.  I don't -- as I said before, I don't
5  remember creating this document.  It is possible
6  that the character inside the circle is an N,
7  not a W, to indicate notification.
8  BY MS. WEST:
9    **Q.  Thank you.**
10   **And what is -- what does notification**
11 **mean?**
12   MR. COYNE:  Foundation.
13   THE WITNESS:  Should I answer?
14   MR. COYNE:  You can answer consistent with
15 the instruction previously provided and if you
16 know.
17 BY THE WITNESS:
18   A.  It would indicate that I notified -- it
19 would indicate that a notification was made to a
20 supervisor.
21 BY MS. WEST:
22   **Q.  Next to "action" has the title**
23 **"reason."**
24   **Do you see that?**

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 25

1    A.  Yes.
2    Q.  Can you read what's listed, Nos. 1
3    through 4, if -- if you can read it?
4    A.  In real life the sheets inside the
5    Felony Review folder are much bigger.  This
6    piece of paper that I have been given, the
7    writing has shrunk.  I -- it is difficult for me
8    to read all of this because the writing is
9    small.
10   Q.  Does that help you at all --
11   A.  Yes, it does.
12   Q.  -- that I just expanded?
13   A.  Thank you.
14   Q.  Okay.
15   A.  It has "1" -- it says, "interview
16   delta. 2, find Sheeree Friend, something,
17   interview, slash" --  I'm not sure what that
18   word is.  3, find Emmett Wade, something,
19   interview" -- I can't read that.  I believe, 4,
20   "run live lineup with Edward" -- I think -- I'm
21   not sure what that last -- there is -- the copy
22   is not the greatest, and I can't read that last
23   word.
24   Q.  Thank you.

Page 26

1        Now, what is the purpose of -- strike
2    that.
3        What do you typically list when you're
4    on Felony Review under the title of "reason?"
5    MR. COYNE:  Same instruction as previously
6    provided, Jennifer.  With respect to the work
7    product doctrine, you can answer questions
8    generally without regard to a specific case.
9    However, if in order to answer the question, you
10   would need to divulge your mental impressions
11   with respect to a particular case, then the work
12   product privilege would apply, and I would
13   instruct you not to answer that question.  I
14   know you had testified you don't remember
15   reading this document, but I wanted to provide
16   you that instruction going forward.
17       Do you understand?
18   THE WITNESS:  Yes.  Thank you.
19   MR. COYNE:  All right.  Please proceed.
20   MR. HOLMES:  And same guidance and same
21   instruction on behalf of the State's Attorney's
22   Office on the grounds of deliberative process
23   privilege as to any question that would seek to
24   elicit information regarding the why of a

Page 27

1    charging decision or noncharging decision.
2    THE WITNESS:  And -- I'm sorry.  Can we
3    repeat that question just so I know what I --
4    MS. WEST:  Sure.
5    THE WITNESS:  -- remember what to answer?
6    MS. WEST:  Sure.  Do you mind reading it
7    back, please?
8        (Whereupon, the record was read
9         as requested.)
10   MR. HOLMES:  Same guidance and instruction on
11   behalf of the Office.
12   MR. COYNE:  Same objection.
13   BY THE WITNESS:
14   A.  So typically -- if a case was continued
15   for further investigation, typically, the ASA
16   would list things that would be -- we would like
17   to have done or goals before we would be able
18   to -- to complete before we would be able to
19   make a decision on charging the case.
20   BY MS. WEST:
21   Q.  Below here you indicate -- I'm sorry.
22       Under "Statement," do you see writing
23   in that box?  And it starts with "defendant or
24   delta"?

Page 28

1    A.  I do see writing in the box.  As I have
2    stated before, I don't remember creating this
3    document, but I do see writing in the box.
4    Q.  Okay.  Can you read what that says?
5    A.  "Delta not in custody for this case.
6    Paren, delta currently in" -- I'm not sure what
7    that word is, but then I -- IDO- -- "something
8    IDOC, closed paren."
9    Q.  Okay.  And you testified that you had a
10   recollection of going to IDOC to speak with
11   Mr. Fletcher; is that right?
12   A.  Yes.
13   Q.  Okay.  As you sit here today, do you
14   have an independent recollection of documenting
15   that he was in custody -- not in custody for
16   this specific case?
17   A.  I do not have an independent
18   recollection, no.
19   Q.  Are you aware that this armed robbery
20   took place in December of 1990?
21   A.  I read in the police reports to prepare
22   for the deposition that there was an armed
23   robbery that allegedly took place then, yes.
24   Q.  And you weren't involved in the case by

10  (Pages 25 to 28)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 29

1  way of Felony Review until 2002, correct?
2      A.  I wasn't on Felony Review until 2001,
3  so right.
4      Q.  Okay.  Do you have a recollection as to
5  why this case was at the Felony Review stage in
6  2002 when the crime happened in 1990?
7      MR. COYNE:  Objection to form, foundation.
8  Again, I would repeat the earlier instruction,
9  Jennifer.  In addition, I would instruct you not
10  to answer any questions that would alternately
11  require you to divulge anything I told you
12  during our confidential preparation for your
13  deposition in this case.
14      With those instructions, you can
15  proceed.
16      MR. HOLMES:  And on behalf of the Office to
17  elaborate on the State's Attorney's deliberative
18  process objection, the deliberative process
19  privilege protects communications that are part
20  of the decision-making process to reach a
21  charging or noncharging decision.  And so I
22  would instruct ASA Walker not to respond in a
23  way that would disclose any of the Office's
24  deliberations concerning whether to charge or

Page 30

1  not to charge Mr. Fletcher.
2      THE WITNESS:  Can we read the question back,
3  please?  Could we restate the question?
4      (Whereupon, the record was read
5       as requested.)
6      MR. HOLMES:  Same objection.
7  BY THE WITNESS:
8      A.  I do not.  I do not have a
9  recollection.
10  BY MS. WEST:
11      Q.  I know we -- we talked about this
12  earlier under "Reason."  "No. 2, find" -- and
13  what you said was "Sheeree Friend"; do you have
14  an independent recollection of who that
15  individual is?
16      A.  I do not.
17      Q.  Do you recall what her involvement was
18  in the underlying crime?
19      A.  I do not.
20      Q.  If you listed her -- if she is listed
21  under reason or you listed her under reason, is
22  that because she was a witness to the underlying
23  crime?
24      MR. COYNE:  Objection, foundation.

Page 31

1  BY THE WITNESS:
2      A.  I have no independent recollection.
3      MR. COYNE:  Hang on.  Hang on a second.
4  Yeah, Jennifer, hang on a second.  Let me just
5  make my objection.
6      And if you pause between the
7  question -- if you pause for a moment, that will
8  give the attorneys an opportunity to object
9  without stepping on your answer going forward.
10  So, also, objection, foundation.  Objection,
11  speculation.  And if you did remember the
12  answer, please keep in mind your earlier
13  instruction as to work product.
14      MR. HOLMES:  Same objection and instruction
15  on behalf of the State's Attorney's Office on
16  grounds of deliberative process privilege.
17  BY THE WITNESS:
18      A.  I don't recall.  And as I said before,
19  I don't remember authoring this document.
20  BY MS. WEST:
21      Q.  Under reason, No. 3, where it says,
22  "find Emmett Wade," do you have a recollection
23  of who Emmett Wade is?
24      A.  I do not.

Page 32

1      Q.  Okay.  Do you have a recollection of
2  his involvement in the underlying crime?
3      A.  I do not.
4      Q.  If individuals were listed under this
5  reason, for example, "find Sheeree Friend," or
6  "find Emmett Wade," how would you have obtained
7  those individuals' names?
8      MR. COYNE:  Objection.
9      MR. STARR:  Objection, speculation.
10  BY THE WITNESS:
11      A.  I don't remember authoring this
12  document.  If you're speaking -- I don't -- I
13  don't know how I would have gotten those names.
14  BY MS. WEST:
15      Q.  Okay.  And --
16      A.  And it --
17      Q.  I'm sorry.  Go ahead.
18      A.  Are you asking generally?
19      Q.  Let's ask it this way:  So previously
20  you testified that at the outset you would
21  review any police reports if it was an in-person
22  assignment, and you would speak with the
23  detectives; is that right?
24      A.  Yes.

11  (Pages 29 to 32)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 33

1     Q. Okay. And through reviewing reports
2 and/or speaking with detectives involved, would
3 you learn witnesses' names?
4     A. In the general sense, yes.
5     Q. Okay. And just so we are clear here,
6 you don't have an independent recollection of
7 learning these two individual -- their names
8 from either the police reports or the detectives
9 in this case; is that correct?
10     A. Correct.
11     Q. Number -- point No. 4 where it says,
12 "run live lineup with Edward Cooper," what does
13 running a live lineup mean?
14     MR. COYNE: Objection, foundation. And keep
15 in mind the earlier instruction, please.
16 BY THE WITNESS:
17     A. So generally speaking, running a --
18 talking about running a live lineup would mean
19 running a lineup with actual people in it, not
20 photographs of people. That would be what we
21 would talk about with talking about a live
22 lineup.
23 BY MS. WEST:
24     Q. Thank you.

Page 34

1     Over on the right-hand side of the page
2 under what -- Victim No. 2.
3     Do you see where I'm at?
4     A. Yes.
5     Q. Okay. The individual Edward Cooper is
6 listed.
7     Do you see that name?
8     A. I do.
9     Q. Okay. Do you recall -- first, do you
10 recall who Edward Cooper is?
11     A. I do not have an independent
12 recollection of Edward Cooper.
13     Q. Do you recall why Edward Cooper is
14 listed as a victim?
15     MR. COYNE: Objection, foundation --
16     THE COURT REPORTER: I'm sorry. Objection,
17 foundation --
18     MR. COYNE: I said, Objection, foundation and
19 speculation.
20     MR. STARR: Join.
21     MR. COYNE: Kari, can you hear me, or do you
22 need a volume increase?
23     THE COURT REPORTER: You know, you're great,
24 except for the very beginning of your objection.

Page 35

1 It doesn't come through. I don't know why that
2 is.
3     MR. COYNE: Okay. Can you put -- that great
4 compliment you gave me, can you put that on the
5 record, please? Thank you.
6     THE WITNESS: Could you restate the question?
7         (Whereupon, the record was read
8         as requested.)
9 BY THE WITNESS:
10     A. I do not have an independent
11 recollection of why Edward Cooper is listed in
12 that box.
13 BY MS. WEST:
14     Q. Based on the review of this folder,
15 over where it says "incident" on the left-hand
16 side, can you tell why Edward Cooper is listed
17 as a victim?
18     MR. COYNE: Objection, foundation.
19     MR. STARR: Join. Form as well.
20 BY THE WITNESS:
21     A. So if you could open -- if you could
22 put this bigger, because I -- I can't read it.
23 BY MS. WEST:
24     Q. And it is difficult to see, so do you

Page 36

1 want me to make it any bigger?
2     A. No. That's fine.
3     Q. Okay.
4     A. So I don't have an independent
5 recollection of creating this document and --
6 but reading the incident box of this document,
7 it appears that the V2 -- which based on how --
8 the process of Felony Review folders being
9 filled out, Edward Cooper would be V2 on this
10 document. According to the incident box, V2 was
11 a robbery victim.
12     Q. Thank you. All right. Let me just
13 direct your attention back to the -- the Victim
14 No. 2 box under "notes."
15     A. Yes.
16     Q. Now, where it says, "tentative ID of
17 defendant in photo lineup, 13 Feb 02. Not" --
18 it looks like -- "INV, period, by ASA Walker."
19     Do you read that the same as I just
20 read it?
21     A. Kind of. It's a little -- some of
22 lines are missing on the words. It's just a
23 little hard for me to see. I'm not -- I'm not
24 saying you're wrong, it's just hard for me to

12 (Pages 33 to 36)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 37

1  see.
2      Q.  Sure.  How about this:  Can you read it
3  for me, for what you think it says?
4      MR. COYNE:  Objection, foundation.
5      Go ahead.
6  BY THE WITNESS:
7      A.  So I can see, "tentative ID of delta
8  in" -- I can't read that word.  The next word I
9  think is "lineup," and then I see "13" and I see
10  "2."  And then I see "not" then I -- "INV by
11  ASA" -- I think -- "Walker."
12  BY MS. WEST:
13      Q.  Now, just so we are clear, I think you
14  said this earlier, but you don't have a
15  recollection of creating this document, but you
16  think this is your handwriting; is that right?
17      A.  I don't have a recollection of creating
18  this document, and it looks like it's my
19  handwriting.  I don't know; because I didn't --
20  I don't remember doing it, I can't say for sure
21  that it is my handwriting.
22      Q.  Okay.
23      A.  Looks like my handwriting.
24      Q.  Where it says, "next event, ASA" --

Page 38

1  there is a -- what looks like "J, period,
2  Walker."
3      Do you see that?
4      A.  Yes.
5      Q.  Does that look to be the way you write
6  your name or did write your name?
7      A.  That looks like it could be my
8  handwriting.
9      Q.  Okay.  What does "tentative ID of
10  defendant" mean?
11      MR. COYNE:  Objection, foundation.
12  BY THE WITNESS:
13      A.  It generally would mean that there was
14  a -- the ID -- the identification was tentative.
15  BY MS. WEST:
16      Q.  Meaning, there wasn't a positive
17  identification; is that right?
18      A.  There wasn't a definite identification.
19      Q.  Okay.  And under that where it says
20  "not INV by ASA Walker," based on that note,
21  does that mean you were not involved in the
22  interview of Mr. Cooper on this date?
23      MR. COYNE:  Objection, foundation.
24  BY THE WITNESS:

Page 39

1      A.  Generally speaking, it would mean that
2  the -- the -- Edward Cooper was not interviewed
3  or -- by an ASA and -- so the ASA -- well,
4  that's speculation.  I don't know.  I would
5  just -- I know it means that the ASA was -- did
6  not interview the -- Cooper.
7  BY MS. WEST:
8      Q.  Okay.  So based on this we can
9  determine that Mr. Cooper gave a tentative
10  identification on this date, correct?
11      MR. COYNE:  Objection; foundation,
12  speculation.
13      MR. STARR:  Objection to form as well.
14  BY THE WITNESS:
15      A.  I think it's -- it's -- that's -- I can
16  say that's what's written on the folder.  I
17  can't say if that actually happened.
18  BY MS. WEST:
19      Q.  Okay.  But it is what's written or
20  noted on the folder, correct?
21      A.  That's what's written on the folder.
22      Q.  If upon -- strike that.
23      Generally speaking, if you were
24  assigned to a case and you learned that

Page 40

1  witnesses had already been spoken to, would you
2  document that on the Felony Review folder sheet?
3      MR. STARR:  Form, foundation.  Calls for
4  speculation.
5  BY THE WITNESS:
6      A.  Witnesses were spoken to by whom?
7  BY MS. WEST:
8      Q.  Let me try it this way:  Based on the
9  note that you have in front of you relative to
10  Mr. Cooper, can you tell who spoke with
11  Mr. Cooper on February 13, 2002?
12      MR. COYNE:  Objection, foundation.
13      MR. STARR:  Join.
14  BY THE WITNESS:
15      A.  So this -- this document that I don't
16  remember creating but has handwriting that looks
17  like mine does not indicate who -- who spoke
18  with Edward Cooper.
19  BY MS. WEST:
20      Q.  Okay.  Can you tell based on the note
21  regarding Mr. Cooper that you, ASA Walker, did
22  not speak with him on February 13, 2002?
23      MR. COYNE:  Objection; foundation,
24  speculation.

13 (Pages 37 to 40)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 41

1     MR. STARR: Join.
2  BY THE WITNESS:
3     A. I don't know -- I know the folder
4  says -- I know what the folder says that we
5  talked about. I don't know what that -- I don't
6  know how that translates in the real world. I
7  don't have an independent recollection of this.
8  BY MS. WEST:
9     Q. All right. I'm going to show you
10 what's Bates-stamped 3015, which is page 2 of
11 the document. Actually, you know what? Let's
12 back up just to put this in some context really
13 quick. I'm going to go back to that first page
14 that we looked at --
15    A. Okay.
16    Q. -- 3018. At the top, does it appear to
17 be dated February 13, '02?
18    A. At the top of the page it says, "13
19 February 02," yes.
20    Q. Okay. And then if you go on over
21 just -- it says pages -- or page 1 of 1.
22       Do you see that?
23    A. Yes.
24    Q. Okay. Now, let me take you back up to

Page 42

1  page 2 of the document, which is 3015 Bates
2  stamp.
3       Do you see the top is -- also is dated
4  February 13, '02?
5     A. Yes.
6     Q. Okay. And it says, "page 2 of 2."
7       Do you see that?
8     A. Yes.
9     Q. Is this page done on the same day as
10 what we just looked at on 3018?
11    A. Well --
12    MR. COYNE: Objection, foundation --
13    MR. HOLMES: Objection -- go ahead, John.
14 BY THE WITNESS:
15    A. I didn't --
16    MR. COYNE: Objection, foundation.
17       Go ahead.
18    MR. STARR: Join.
19 BY THE WITNESS:
20    A. I don't remember creating this
21 document. I know the date on the -- on the --
22 what -- I will call it the first page that you
23 showed me is the same as the -- as this -- as
24 this document.

Page 43

1     But since I don't have an independent
2  recollection of creating it, I cannot say that
3  it was -- I cannot say that I know when it was
4  created, because I -- I don't remember.
5  BY MS. WEST:
6     Q. Sure. And earlier you told me that you
7  took apart the documents and put it in a
8  different order.
9       Is that because you put it in date
10 order?
11    A. I -- I -- so when I was preparing for
12 my deposition after receiving documents from my
13 attorney's office, I -- there was pages in
14 between, and it -- and it kind of got messed up
15 on our copy machine when I printed them all out.
16    So, yes, so I -- so when I put these
17 together, I put the -- the pages that said
18 13 February 02 together in a packet. And, you
19 know, for the other similar-looking pages, I
20 grouped them together by what the date was at
21 the top of the page.
22    Q. Okay. Thank you.
23       And typically, when you were filling
24 out this -- this Felony Review sheet folder, if

Page 44

1  you had more than one entry on the same date,
2  would you document which page it was for that
3  date at the top?
4     A. If I needed -- when I was on Felony
5  Review and I was filling out Felony Review
6  folders, if I needed multiple folders for the --
7  that date's -- for lack of a better word --
8  work, I would date each folder at the top.
9     Q. On the left-hand side of this folder,
10 do you see there is a "CI" under "action"?
11    A. Yes.
12    Q. Okay. And next to it under "reason,"
13 there is items -- what appear to look like
14 5 and 6.
15       Do you see those?
16    A. I see a 5 and 6, yes.
17    Q. Okay. Can you read those, please?
18    A. "5, INV Edward Cooper. 6, double-check
19 that D -- or delta -- equal sign crossed with a
20 slash, in custody."
21    Q. And just for the record, "INV," the
22 shorthand, does that stand for investigate?
23    A. When I was on Felony Review, typically
24 INV meant interview.

14  (Pages 41 to 44)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 45

1    Q.  And under No. 6, the equal with a slash
2  through it, do you know what that's shorthand
3  for?
4    A.  Typically, when I see that I think it
5  means not or doesn't.
6    Q.  Over on the right-hand side under
7  Witness 1, do you see that Terry Rogers is
8  listed as Witness No. 1?
9    A.  Yes.
10   Q.  And he is listed as an eyewitness; is
11  that right?
12   A.  In the -- the -- I see the word "eye,"
13  yes.  That would typically mean -- generally
14  would mean eyewitness.
15   Q.  Okay.  And then going down a few boxes
16  where it says, "related to defendant," do you
17  see that?
18   A.  Yes.
19   Q.  Okay.  Can you read what it says next
20  to that?
21   A.  "Did time, something, delta in
22  Stateville."
23   Q.  Okay.  And delta stands for defendant,
24  correct?

Page 46

1    A.  Generally -- generally, yes.
2    Q.  Okay.  Do you recall speaking with
3  Mr. Rogers?
4    A.  I do not.
5    Q.  Okay.  This information that's
6  documented here regarding -- related to
7  defendant, would that have been information that
8  was learned directly from the witness or
9  Mr. Rogers in this case?
10   MR. STARR:  Objection to form.
11   MR. COYNE:  Objection; foundation,
12  speculation.
13   MR. STARR:  Join.
14   THE WITNESS:  Could you repeat the question,
15  please?
16       (Whereupon, the record was read
17       as requested.)
18  BY THE WITNESS:
19   A.  I don't remember creating this
20  document.  I can't answer without speculating.
21  BY MS. WEST:
22   Q.  Generally, all the information that's
23  listed under Witness No. 1; so the name, the
24  address, the phone number, typically, where do

Page 47

1  you obtain that information for the individual
2  witness?
3    MR. STARR:  Objection to form, foundation.
4    MR. COYNE:  Join.
5  BY THE WITNESS:
6    A.  Generally speaking, while I was on
7  Felony Review, there could be multiple ways I
8  would get that information.
9  BY MS. WEST:
10   Q.  And what would --
11   A.  If I was filling -- if I was filling
12  out one of these boxes, there is -- there's
13  multiple ways I could -- I would have gotten
14  that -- I could have gotten that information.
15   Q.  And what are those multiple ways?
16   A.  Well, they would include speaking with
17  the detectives or officers involved.  It could
18  be information that was already written on a
19  police report.  It could be from speaking to a
20  witness.  And I'm sure there is other ways too,
21  but those would -- those three ways would be the
22  most common.
23   Q.  Would there -- strike that.
24      Would you ever run an IDOC history for

Page 48

1  an individual witness?
2    MR. STARR:  Form; foundation, speculation.
3    MR. COYNE:  Join.
4  BY THE WITNESS:
5    A.  I don't -- in 2- -- so when I was on
6  review and it was 22 years ago, we did not have
7  a lot of access to the internet.  There were
8  times when I was at the police station where no
9  one in the room had access to the internet.  I
10  don't remember running an IDOC history for a
11  witness, me personally myself.
12  BY MS. WEST:
13   Q.  Down under "notes," can you read what
14  that says?  And I can make it bigger, if that's
15  helpful.
16   A.  Yeah.  There is a lot of -- of extra
17  black on this, so it makes things a little more
18  difficult to see.  There is something in a
19  circle that says -- and then "ASA Walker on
20  13 Feb 02.  Something in a circle, delta in
21  photo lineup on 13 Feb 02, oral, scribble, only
22  - no grand jury per ASA O'Brien."
23   Q.  The circle over on the left-hand side,
24  it has something inside of it.

15  (Pages 45 to 48)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 49

1    Was there ever an instance that -- when
2  you were on Felony Review that you would write
3  an "I" and circle it?
4    A.  Yes.
5    Q.  And what does that stand for?
6    A.  Typically, when I was on Felony Review
7  if I wrote "I" in a circle, it could also mean
8  interview.
9    Q.  Can you tell from the notes here if
10  that's an "I" with a circle around it?
11    MR. STARR:  Asked and answered.
12  BY THE WITNESS:
13    A.  I -- I can't tell for sure, because
14  there is some bad copy noise on this.  It's -- I
15  can't say for sure.
16  BY MS. WEST:
17    Q.  Okay.  What does the significance of
18  no -- like, what does "no grand jury" mean?
19    MR. COYNE:  Objection; foundation,
20  speculation.
21    THE WITNESS:  Could I talk to John about
22  something, please?
23    MR. COYNE:  Sure.  I will be off the record
24  for a moment.

Page 50

1        (Whereupon, a discussion was had
2         off the record.)
3        (Whereupon, the record was read
4         as requested.)
5    MS. WEST:  Did we get an answer to that or
6  no?
7    THE COURT REPORTER:  No.
8    THE WITNESS:  No.
9    MR. COYNE:  No.  The witness requested --
10    THE WITNESS:  You didn't get an answer.
11    MR. COYNE:  The witness has requested a
12  conference with counsel.
13    MS. WEST:  That's fine.  Thank you.
14    MR. COYNE:  For the record, the witness
15  requested a break to confer with counsel
16  regarding a pending question, so we are just
17  going to ask that the question be repeated to
18  begin.
19        (Whereupon, the record was read
20         as requested.)
21    Q.  Okay.  What does the
22      significance of no -- like,
23      what does "no grand jury" mean?
24    MR. COYNE:  All right.  On behalf of the

Page 51

1  witness, my instruction to you, Jennifer, is a
2  question.  First of all, can you answer that
3  question without implicating the mental
4  impressions and decision-making of you and your
5  fellow prosecutors with respect to decisions on
6  how to utilize the grand jury resource in making
7  prosecutor decisions?
8    THE WITNESS:  No, I cannot.
9    MR. COYNE:  All right.  Then, I would
10  instruct you not to answer the question on work
11  product.  Mr. Holmes may have a similar
12  instruction on grand -- on the deliberative
13  process.
14    MR. HOLMES:  Same instruction on behalf of
15  the State's Attorney's Office on grounds of
16  deliberative process privilege, yes.
17  BY MS. WEST:
18    Q.  Okay.  What is -- strike that.
19      When a witness is spoken to on a
20  particular date, are they documented on the
21  Felony Review folder as a witness?
22    MR. COYNE:  Objection; foundation, incomplete
23  hypothetical.
24

Page 52

1  BY THE WITNESS:
2    A.  Generally speaking, if a witness is
3  spoken to by an ASA, there may be notes or
4  documentations made on the Felony Review folder.
5  BY MS. WEST:
6    Q.  Is there ever an instance where you
7  would write down a witness when they weren't
8  spoken to by an ASA?
9    MR. COYNE:  Objection, foundation.
10    MR. STARR:  Join.
11  BY THE WITNESS:
12    A.  It's possible.  It's -- I don't -- I --
13  it's hard to answer that question.  I -- it's
14  possible.
15  BY MS. WEST:
16    Q.  What does -- on that notation on 3015,
17  what does "oral only" mean?
18    MR. COYNE:  Same instruction as previously
19  given, Jennifer, as to work product.
20    MR. HOLMES:  And as to the Office as to
21  deliberative process privilege.
22  BY THE WITNESS:
23    A.  Generally, that would mean that an oral
24  conversation took place.

16  (Pages 49 to 52)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 53

1  BY MS. WEST:
2      Q.  Based on the no entry here with regard
3  to Mr. Rogers, can you tell whether or not
4  Mr. Rogers gave a positive identification of the
5  defendant based on the photo lineup on
6  February 13, 2002?
7      MR. COYNE:  Objection; foundation,
8  speculation.
9      Allyson, could you just bring that
10  document up?  Because that's one I don't have in
11  front of me.
12      MS. WEST:  Sure.
13      MR. STARR:  And I will join that objection as
14  well.
15      MR. COYNE:  Thank you.
16  BY THE WITNESS:
17      A.  So as I stated before, I don't remember
18  creating this document.  Even though the
19  handwriting on this document looks like my
20  handwriting, there is -- there is a squiggle to
21  the left of the word "delta" where -- in the
22  line that says, "delta in photo lineup."  I
23  can't read that squiggle due to the -- kind of
24  the copy noise.

Page 54

1      So I'm not -- I don't know -- I can't
2  answer that question, because I'm having trouble
3  reading this document.
4  BY MS. WEST:
5      Q.  Okay.  Do you have an independent
6  recollection of Terry Rogers giving a positive
7  identification of Mr. Fletcher based off of a
8  photo array?
9      A.  I do not.
10      Q.  Let's go to the next page, which for
11  the record is 3016 or page -- I think page 3 of
12  this document.  Yes.
13      And it has a page that looks like there
14  is a stamp on it.  It says, "filed grand
15  jury" and what looks like "May 13, 2002."
16      Do you see that?
17      A.  I see the stamp on the screen, yes.
18      Q.  Any idea what -- where that came from
19  or what that is?
20      A.  I have --
21      MR. HOLMES:  I just -- on behalf of the
22  Office I will just offer that 725 ILCS 5/112-6
23  is a statute which protects the secrecy of grand
24  jury proceedings.  I do recognize that there are

Page 55

1  a number of grand jury-related documents, which
2  have been produced in this case.  I have not had
3  an opportunity to read an order from the
4  criminal court judge authorizing release of such
5  documents.
6      I implicitly assume that there has been
7  such an order.  Although, I would note that the
8  Office does take the position that the
9  strictures of the statute are to be abided by
10  its attorneys, and thus, that would constrain
11  ASA Walker's responses to questions about this
12  document unless, there is an order from Judge
13  Reddick or another judge at 26th and California,
14  which would authorize release of information
15  pertaining these grand jury proceedings that I
16  am not aware of.
17      MR. COYNE:  Let me just ask -- Jennifer, I
18  would -- on behalf of the witness, I would join
19  that -- join that instruction and that
20  admonition.
21      Jennifer, can I just ask, did you have
22  any role in the grand jury in this case, just
23  for my purposes to represent you?
24      THE WITNESS:  I did not.

Page 56

1      MR. COYNE:  Okay.  Thank you.
2      MS. WEST:  Okay.
3      THE WITNESS:  That I can -- I don't -- no.  I
4  did not.
5      MS. WEST:  Okay.  And just for the record --
6  let me stop this for a second.
7      Just for the record, Sean, do we have
8  an order in this case?
9      MR. STARR:  Not to my knowledge.
10      MS. WEST:  Okay.  Can your office --
11      MR. STARR:  But that doesn't mean --
12      MS. WEST:  I'm sorry.  Go ahead.
13      MR. STARR:  I'm sorry.  I'm not saying that
14  we don't have one.  You know, I joined the case
15  quite late.  I'm not aware of one as I sit here
16  today.
17      MS. WEST:  Okay.  But just so we are clear --
18  because that's why I think there is an existence
19  of an order, because your office did produce the
20  grand jury materials.
21      MR. STARR:  Yeah.  And I agree with that.
22      MS. WEST:  Okay.  I just wanted to confirm
23  with you.  Okay.  Thank you.
24      MR. COYNE:  When you say your office, do you

17  (Pages 53 to 56)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 57

1    mean Loevy's office or --
2        MS. WEST:  Correct.
3        MR. COYNE:  Oh, got you.
4        MS. WEST:  Loevy's office produced the grand
5    jury materials, the two statements that I
6    provided to you guys prior to today's
7    deposition.
8        MR. COYNE:  Okay.
9        MR. STARR:  And, Allyson, if you want, I can
10   look on a break to see if we have the document.
11       MS. WEST:  Awesome.  Thank you.  I can take a
12   look too.
13       MR. STARR:  I mean, yeah, it would have been
14   produced, but, yeah, I'll take a look.
15       MS. WEST:  Okay.  Thanks.
16   BY MS. WEST:
17       Q.  Did we even get an answer to the
18   question after --
19       A.  If you could repeat the question about
20   the stamp?
21       Q.  Sure.
22       So on that page 3016 -- it looks like
23   it's a stamped document.
24       Any idea what that stamp is?

Page 58

1        A.  I don't know.  I don't know.
2        Q.  Thank you.
3        The next page -- sorry.  I will pull it
4    back up.  The next page on this document, which
5    is page 4 of the document or for the Bates it's
6    3017, on that page, Ms. Walker, do you see that
7    there is some abbreviations under "motions and
8    rulings"?
9        A.  Oh, yeah.
10       Q.  Okay.  And first off, do you know what
11   this particular page of the document is?  Are
12   you familiar with it?
13       A.  So, generally speaking, that is a --
14   outside of the Felony -- of a Felony Review
15   folder that has minimal writing on it.  I don't
16   remember creating this document.  Although, the
17   words "Fletcher, comma, James," that looks like
18   it could be my writing.  The items that you're
19   talking about, Counsel, are part of the
20   preprinted form.  The pre -- it comes like that.
21   It's how it was created, and those -- that's --
22   that's preprinted on the -- on the document.
23       Q.  So those abbreviations under "motions
24   and rulings" are preprinted on that document; is

Page 59

1    that right?
2        A.  Yes.
3        Q.  Okay.
4        A.  Correct.
5        Q.  Do you know what those -- those
6    preprinted abbreviations mean?
7        MR. COYNE:  Objection, foundation.
8    BY THE WITNESS:
9        A.  Those are abbreviations used typically
10   in bond court by the State's Attorney's Office.
11   Those --
12   BY MS. WEST:
13       Q.  Have you -- sorry.  Go ahead.
14       A.  Generally, it's my understanding it
15   means -- the FPC, finding probable cause.  The G
16   is an abbreviation for granted.  ATIA I believe
17   means advise trial in abstentia.  DDT means
18   defendant demands trial.  M/S refers to motion
19   state.
20       Q.  Okay.  Thank you.
21       And there is no date on here to
22   indicate that any of that -- those things that
23   you just read happened on a particular date; is
24   that right?

Page 60

1        A.  There is no other writing on the folder
2    other than the "Fletcher, comma, James."
3        Q.  Thank you.  All right.  So moving
4    forward, let's take a look at 3020.  All right.
5    And the date of this is March 9, 2002.
6        Do you see that?
7        A.  Yes.
8        Q.  Okay.  Are you able to pull it up
9    either in front of you on a paper copy or do
10   you --
11       A.  Yeah.  I have the paper copy -- I am
12   just trying to find my paper copy and make sure
13   I'm looking at the right thing.
14       MR. STARR:  Allyson, if I may, could I ask
15   you to make it a little bit bigger for my --
16       MS. WEST:  Sure, sure.
17       MR. STARR:  Thank you.
18   BY MS. WEST:
19       Q.  Ms. Walker, tell me whenever you've
20   been able to locate the page.
21       A.  Yes.  I have located the page.
22       Q.  Okay.  Okay.  Great.  All right.  I'm
23   going to direct you -- and I will make it bigger
24   for everybody involved here.  I'm going to

18  (Pages 57 to 60)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

---

Page 61

1   direct you to the right-hand side of the page
2   where it has Witness No. 2.
3           Do you see that?
4       A.  Yes.
5       Q.  Okay.  All right.  And the individual
6   listed as Witness No. 2 is Sheene Friend.
7           Do you see that?
8       A.  Yes.  I see the see the words "Sheene
9   Friend," yes.
10      Q.  Okay.  Going on down, do you see on the
11  left-hand side where it says, "means of ID"?
12      A.  Yes.
13      Q.  Okay.  And it looks like there is a
14  circle around "photo array."
15          Do you see that?
16      A.  I see that on the document.
17      Q.  Okay.  Because the photo array is
18  circled, does that mean that Ms. Friend was
19  shown a photo array at some point in time?
20      MR. COYNE:  Objection, foundation.
21  BY THE WITNESS:
22      A.  So while -- I don't have an independent
23  recollection of creating this document.
24  Although, the handwriting on this document looks

---

Page 62

1   like it could be my handwriting.  I don't know
2   why the circle was placed around "photo array"
3   here.  But generally speaking, if someone was
4   shown a photo array, that would be -- you know,
5   generally, we would circle "photo array."
6   BY MS. WEST:
7       Q.  Okay.  And "statement type," it looks
8   like "handwritten" is circled.
9           Do you see that?
10      A.  I do see that.
11      Q.  Okay.  Is that because Ms. Friend gave
12  a handwritten statement?
13      MR. COYNE:  Objection, foundation.
14  BY THE WITNESS:
15      A.  Again, I don't remember creating this
16  document, though the handwriting looks like
17  mine.  Generally speaking, if a handwritten was
18  taken, the handwritten -- the word "handwritten"
19  would be circled.
20  BY MS. WEST:
21      Q.  Okay.  And down under "Notes" -- let me
22  make it a little bit bigger, because I think
23  this one is pretty hard to read -- it looks like
24  it says "I," with a circle, "by ASA Walker on

---

Page 63

1   9 Mar 02."
2           Do you see that?
3       A.  Yes.  I see that.
4       Q.  Okay.  And do you agree with what I
5   just read, that that's what's documented here?
6       A.  That -- the copy is not great, but that
7   looks like that's what it could say.
8       Q.  Okay.  And the "I" you previously
9   testified means interview; is that right?
10      A.  Generally speaking, "I" with a circle
11  would mean interview.
12      Q.  Okay.  And based on these notes, it
13  appears that you, ASA Walker, interviewed
14  Ms. Friend on March 9th, 2002; is that right?
15      A.  I don't have any independent
16  recollection of this, so -- so I can't say for
17  sure.
18      Q.  Do you have any reason to dispute or
19  disagree with what is documented here in front
20  of you with regard to the interview of
21  Ms. Friend?
22      MR. COYNE:  Objection, form.
23      MR. STARR:  Form, foundation, speculation.
24  BY THE WITNESS:

---

Page 64

1       A.  I don't have an independent
2   recollection.  So I can't say -- I can't say
3   that I know -- I know that to be true, because
4   it would be speculation.
5   BY MS. WEST:
6       Q.  On down on that line -- the next
7   line -- I'm sorry.  On the same line under
8   notes, it looks like there is a plus sign with
9   an "ID," and it's circled.
10          Do you see that?
11      A.  I do see that.
12      Q.  And what does that mean to you?
13      A.  It's -- it's -- "ID" with a circle
14  around it and a plus sign generally speaking
15  could mean that there was a positive ID.  But
16  after that, I can't -- the words are too light,
17  so I can't read what it says.  So I'm not -- I'm
18  not sure.
19      Q.  Do you have an independent recollection
20  of Ms. Friend making a positive identification
21  based on a photo lineup?
22      A.  I do not.
23      Q.  Based on the notes that are in front of
24  you, can you say that Ms. Friend made a positive

---

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 65

1  identification based on a photo array?
2     MR. COYNE:  Objection --
3     MR. STARR:  Form, foundation.
4     MR. STARR:  -- foundation.
5     MR. STARR:  Form, foundation, speculation.
6  BY THE WITNESS:
7     A.  I can't -- I don't remember creating
8  this document.  Although, the handwriting does
9  appear that it could -- it looks like mine.
10  Because I don't have an independent
11  recollection, I cannot say that.
12  BY MS. WEST:
13     Q.  Is there any other reason why a photo
14  array would be circled if the individual didn't
15  view a photo array?
16     MR. COYNE:  Objection; foundation,
17  speculation.
18  BY THE WITNESS:
19     A.  I don't know.
20  BY MS. WEST:
21     Q.  And is there any other reason why
22  "positive ID" would be documented if the witness
23  didn't positively identify an individual?
24     MR. COYNE:  Same objections.

Page 66

1     MR. STARR:  Join.
2  BY THE WITNESS:
3     A.  Because I don't have a recollection of
4  this, I can't answer.
5  BY MS. WEST:
6     Q.  Let me show you what we will mark as
7  Exhibit 2.  And it's going to be the handwritten
8  statement of Ms. Friend.
9     Do you have that in paper form?
10     A.  I do.
11        (Whereupon, Walker Deposition
12         Exhibit No. 2 was marked for
13         identification.)
14  MS. WEST:  Okay.  All right.  Great.  I will
15  pull it up anyway for counsel.
16     MR. COYNE:  Can I just ask, are these going
17  to be Walker deposition exhibits, or are these
18  previously marked?
19     MS. WEST:  No.  These are going to be Walker
20  deposition exhibits.  So this is No. 2.  And for
21  the record, it is City-JF-000040 through 46.
22  BY THE WITNESS:
23     A.  Just so -- so the copy that I got of
24  this document doesn't have that city mark on it,

Page 67

1  and there are no pictures attached to it.
2  BY MS. WEST:
3     Q.  Okay.  If you don't mind -- I'm sorry.
4     A.  Just so everybody knows.
5     Q.  Okay.  Thank you.  I may ask you some
6  questions about those photographs.  So if you'd
7  prefer, we can look off of this one, but the
8  statement itself should be identical, if you --
9  it's better to read the copy in front of you.
10  Okay.  All right.  So we have already
11  established you have what we have marked as
12  Exhibit 2 in front of you.
13     Do you recognize this document?
14     A.  I do not.
15     Q.  Okay.  Do you see the top where it
16  says, "Statement of Sheene Friend"?
17     A.  Yes.
18     Q.  Okay.  Is that in your handwriting, the
19  name "Sheene Friend"?
20     A.  It looks like it could be my
21  handwriting, but I don't have an independent
22  recollection of creating this document, so I
23  can't say that it is.
24     Q.  Okay.  If you go on down where it says

Page 68

1  "present," do you see "ASA Jennifer Walker"?
2     A.  I do see that.
3     Q.  Okay.  Is that in your handwriting?
4     A.  Yes.  It -- it looks like it could be
5  my handwriting.  I don't have an independent
6  recollection of creating this document, so I
7  cannot say that for sure it is.
8     Q.  Okay.  So listed on this document --
9  present for the statement of Ms. Friend is
10  listed, ASA Jennifer Walker, Detective Bogucki,
11  and Detective Schalk.
12     Do you see that?
13     A.  I see the document says that.
14     Q.  Do you have an independent recollection
15  of taking the handwritten statement of
16  Ms. Friend?
17     A.  I do not.
18     Q.  Based on the statement that's in front
19  of you, where was the statement taken?
20     A.  Because I don't have an independent
21  recollection, I don't know where the statement
22  was taken, but the document indicates Area 5.
23     Q.  And the document indicates that it was
24  taken on March 9, 2002, at 13:50; is that right?

20  (Pages 65 to 68)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 69

1    A.  Yes.
2    Q.  Can you tell based on this document --
3  strike that.
4        I'm going to go down just to the body
5  of the document itself.
6        The first sentence, "After being
7  advised that Assistant State's Attorney Jennifer
8  Walker is a lawyer and is a prosecutor and not
9  her lawyer..." I'm just going to stop there for
10  a second.
11        Based on that -- based on the document
12  and the sentence that I just read, did you
13  advise Ms. Friend that you were an assistant
14  state's attorney and not her lawyer?
15    MR. STARR:  Form, foundation.  Calls for
16  speculation.
17    MR. COYNE:  Join.
18  BY THE WITNESS:
19    A.  I don't have a specific recollection of
20  taking this handwritten statement or creating
21  this document, but the document -- that's what
22  the document says.
23  BY MS. WEST:
24    Q.  Would there ever be an instance where

Page 70

1  somebody else would take down a handwritten
2  statement and indicate that it was you that was
3  present?
4    MR. COYNE:  Objection; form, foundation.
5  Requires speculation.
6  BY THE WITNESS:
7    A.  I -- I don't know.  To answer, I would
8  have to speculate.
9  BY MS. WEST:
10    Q.  Let me scroll down here.  Do you see
11  the signature that's on the left-hand side of
12  the first page, which is City-JF 40 where it
13  says "ASA," and it looks like there is a
14  signature next to it.
15        Do you see that?
16    A.  I do see that.
17    Q.  Okay.  Is that your signature?  I'm
18  sorry.
19    A.  I don't remember creating this
20  document.  I don't remember taking a -- the
21  statement that's discussed in this document.
22  That signature looks like it could be my
23  signature, but I can't say that it is.
24    Q.  And why can't you say that it is?

Page 71

1    A.  Because I don't remember creating this
2  document, and I -- I don't remember taking the
3  statement that's discussed in this document.
4    Q.  Typically, when you would take a
5  handwritten statement, would you document that
6  you were present for the statement?
7    A.  Generally speaking, yes.
8    Q.  And typically, when you were taking a
9  handwritten statement, would you document that
10  you advised the witness of who you were?
11    A.  Generally speaking, yes.
12    Q.  I'm going to ask you to take a look
13  at -- starting on the third page of this
14  document --
15    MR. COYNE:  Is that BS 42?
16    MS. WEST:  I'm sorry?
17    MR. COYNE:  Is that BS 42, the third page,
18  Bates stamp?
19    MS. WEST:  Correct.
20    MR. COYNE:  Thank you.
21    MS. WEST:  42 Bates stamp, the third page of
22  the document itself.
23  BY MS. WEST:
24    Q.  The middle of the page -- I'm going to

Page 72

1  show you with my cursor here where it starts
2  with "Sheene states" right here.
3    A.  Yes.
4    Q.  Do you see where I'm talking about?
5    A.  Yes.
6    Q.  Okay.  Can you -- I'm going to have you
7  read this, please.  If you could read it out
8  loud starting right here with "Sheene states..."
9    A.  Sure.
10        "Sheene states that the man who is
11  pictured in Exhibit #1 is the same -- crossed
12  off word -- man who grabbed her jacket that day.
13  Sheene states that when the man grabbed her
14  jacket, she saw that he had a handgun in his
15  other hand.  Sheene states that she got out of
16  the truck and went to the Church's Chicken" -- I
17  believe that's the word "on" -- "the south side
18  of Madison at Central.
19        Sheene stood outside and saw both of
20  the guys, the bread truck where Edward" -- I'm
21  sorry -- "both of the guys in the bread truck
22  where Edward was.  Sheene states she couldn't
23  hear what was being said, but she could see the
24  guy in Exhibit #1 talking to Edward and pointing

21  (Pages 69 to 72)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 73

1  his gun at Edward. Sheene saw Edward standing
2  inside" -- and the cursor is over it.
3      **Q. Oh, I'm sorry.**
4      A. I think it's a -- I think "while" --
5  "the guy in Exhibit #1 was patting Edward down.
6  Sheene states that the other guy" -- oh, sorry.
7  That was my cursor.
8          "Sheene states that the other guy was
9  holding a gun on Edward and pointing..."
10     **Q. I'm going to have you keep going,**
11  **please.**
12     A. "... his gun at Edward while the guy in
13  Exhibit #1 was patting Edward, crossed off
14  something, down. Sheene states that she saw the
15  guy in Exhibit #1 holding a bunch of money in
16  bills, and then both guys turned to get off the
17  bread truck. Sheene states at that the other
18  guy opened the passenger door, and he and the
19  guy in Exhibit #1 jumped off the bread truck."
20  A word was crossed off.
21          "After the guys got off the bread
22  truck, they ran across Madison towards the
23  northeast corner of -- crossed off -- Madison
24  and Parkside on a diagonal. Sheene states she

Page 74

1  saw Edward jump off the bread truck right after
2  them. Sheene states she saw that Edward had a
3  gun when he got off the truck. Sheene states
4  she saw the two guys turn around and fire at
5  Edward as they were running away.
6          Sheene states she saw Edward fire back
7  at the two guys. Sheene states that she saw at
8  least 4 to 5 shots fired, but she's not exactly
9  sure. Sheene states she saw the two guys
10  running away turn and shoot at Edward more than
11  once. Sheene states she saw the two guys run to
12  Parkside and turn north and she saw Edward chase
13  the two guys north on Parkside, but she did not
14  follow them.
15          Sheene states she then left the
16  Church's Chicken parking lot and went to the
17  laundry mat to start her clothes in the washer.
18  After she started her laundry, she noticed a
19  group of people gathering around outside the
20  liquor store where she had earlier gone to buy
21  laundry soap. Sheene went back across
22  Central -- crossed off word -- and saw an older
23  man laying in front of the liquor store bleeding
24  from his mouth."

Page 75

1      **Q. I'm going to stop you right there.**
2  **Thank you for reading that. And --**
3      MR. STARR: I'm just going to -- I'm just
4  going to make an objection for the record that
5  the document speaks for itself.
6  BY MS. WEST:
7      **Q. I'm going to scroll down. And I want**
8  **to ask you -- and this is page 45, Bates 45.**
9          **Typically, when you are taking a**
10  **statement of a witness, do you take a photograph**
11  **of that witness following or at some point**
12  **during the statement?**
13      A. Typically and generally speaking, yes,
14  we did.
15      **Q. Okay. And does this appear to be a**
16  **photograph or a Polaroid of the witness?**
17      MR. STARR: Form, foundation. Calls for
18  speculation.
19      MR. COYNE: Join.
20  BY THE WITNESS:
21      A. So I don't remember taking this
22  statement. I don't remember writing the
23  statement. It -- the exhibit is hard to see,
24  because it -- it looks like it could be a

Page 76

1  photograph that has been photocopied, so it's
2  hard for me to say what exactly this is.
3  BY MS. WEST:
4      **Q. I'm going to scroll on down to**
5  **Bates 46. This is what is identified as**
6  **Exhibit 1.**
7          **Do you see that?**
8      A. Yes.
9      **Q. Okay. And it looks like a signature**
10  **with the name "Sheene Friend" is at the bottom**
11  **of the page.**
12          **Do you see that?**
13      A. I do see that.
14      **Q. As well as what appears to be your**
15  **signature?**
16      A. It says -- it looks like it could be my
17  signature, but because I don't remember taking
18  this statement and I don't remember creating
19  this document, I can't say that it is my
20  signature.
21      **Q. And in Ms. Friend's statement, the**
22  **portion that you just read, she identifies the**
23  **individual in Exhibit 1 as one of the offenders,**
24  **correct?**

                                    22  (Pages 73 to 76)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 77

1    A.  That's what's written in the document.
2    Q.  Yes.  And that's -- that was my
3  question.
4        Based on the document, Ms. Friend
5  identifies the individual in Exhibit 1 as one of
6  the offenders, correct?
7    MR. STARR:  Form, foundation, speculation.
8  BY THE WITNESS:
9    A.  The document -- that's what the
10  document says, but I don't have any independent
11  recollection.  So I can't say what she
12  actually -- I can't say what she did.
13  BY MS. WEST:
14    Q.  Now, I understand you don't have an
15  independent recollection of taking the statement
16  of Ms. Friend.
17        But typically, all of the information
18  that's contained in the handwritten statement,
19  is that information that is related to you from
20  that particular witness?
21    MR. COYNE:  Objection, form.
22    MR. STARR:  Join.
23  BY THE WITNESS:
24    A.  Generally speaking, when I took

Page 78

1  handwritten statements, it was writing down
2  information I had received from a witness.
3  BY MS. WEST:
4    Q.  And the photograph that's in front of
5  you right now that's identified as Exhibit 1, do
6  you know that to be Mr. Fletcher?
7    A.  I have no independent recollection of
8  who that person is.
9    Q.  Are you aware that Mr. Fletcher was
10  charged with armed robbery and first degree
11  murder of an individual who was shot in December
12  of 1990?
13    MR. COYNE:  Jennifer, you can answer these
14  questions as long as you don't divulge --
15  yeah -- information that you received from me as
16  a source in our confidential communications to
17  prepare for this deposition.
18  BY THE WITNESS:
19    A.  I don't have any independent
20  recollection of that.
21  BY MS. WEST:
22    Q.  And based on your review of the Felony
23  Review notes and the other documents that were
24  provided to you, is it your understanding that

Page 79

1  there was more than one offender in the
2  underlying robbery and murder of Mr. Sorrell?
3    A.  I don't have any independent
4  recollection of -- of this, and I read the
5  document, and I see what they say, but I don't
6  have any independent recollection of this.
7    Q.  And based on those documents, does it
8  identify that there was more than one offender
9  in the underlying crime that took place on
10  December 21st, 1990?
11    A.  There are documents that indicate that,
12  but I don't have any independent recollection of
13  it.
14    Q.  So let me show you that one more time.
15  On this last page, which is page 5 of the
16  document or for the Bates range it's 44, the
17  middle paragraph here -- if you could just read
18  that middle paragraph, please.  It starts with
19  "Sheene states that she..."
20    MR. STARR:  Same objection.  The document
21  speaks for itself.
22        Go ahead.
23  BY THE WITNESS:
24    A.  "Sheene states that she has been

Page 80

1  treated well by the police and Assistant State's
2  Attorney Jennifer Walker and was not made any
3  threats or promises for giving this statement.
4  Sheene states that she has been given food to
5  eat, coffee -- something crossed off -- to
6  drink, and cigarettes to smoke.  Sheene states
7  she is not under the influence of drugs or
8  alcohol at -- something crossed off -- the time
9  of giving this statement.  Sheene states..."
10  BY MS. WEST:
11    Q.  Sorry.  You can stop here.
12    A.  Okay.
13    Q.  Thank you.
14        Do you typically, when you're doing a
15  handwritten statement, ask the individual
16  witness if they've been treated well by the
17  police?
18    A.  Generally speaking, yes.
19    Q.  And do you generally ask the witness if
20  they have been treated well by yourself?
21    A.  Yes.  I generally did.
22    Q.  Okay.  And based on this document,
23  Ms. Friend indicated that she had been treated
24  well by both you and the police, correct?

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 81

1    MR. STARR:  Form, foundation, speculation.
2    BY THE WITNESS:
3        A.  That's what the document says.
4    BY MS. WEST:
5        Q.  If you had witnessed any level of
6    misconduct by Detectives Bogucki and Schalk
7    during your review of Mr. Fletcher's case, would
8    you have reported it?
9        MR. COYNE:  Objection; form, foundation.
10   BY THE WITNESS:
11       A.  It calls for -- in order to -- without
12   giving a better context to this, it's -- and
13   since I don't have an independent recollection
14   of these conversations and the review process of
15   this case, I -- I don't know how to answer that.
16   But I can say that I am mindful of my
17   obligations as a prosecutor -- my ethical
18   obligations as a prosecutor, and I would have --
19   I would have acted in accordance with those
20   rules.
21   BY MS. WEST:
22       Q.  Have you ever reported a detective for
23   any type of misconduct during the course of your
24   time as a Felony Review assistant state's

Page 82

1    attorney?
2        A.  I don't remember doing that.
3        Q.  Is that something that you would
4    remember doing based on the serious level of the
5    alleged misconduct?
6        MR. COYNE:  Objection; form, foundation,
7    speculation.
8    BY THE WITNESS:
9        A.  I believe I would, but I can't
10   remember.  So I can't say for sure.
11   BY MS. WEST:
12       Q.  Let me show you -- we will go back to
13   Exhibit 1.  I want to ask you if you can read a
14   portion of the writing.
15           (Walker Exhibit No. 1 published
16            to Zoom participants.)
17   BY MS. WEST:
18       Q.  All right.  This is going to be
19   Bates 3020, page 7 of the document.  Over here
20   on the left-hand side under "incident," it's --
21       A.  I'm sorry.  What date -- I'm sorry.
22   What date is this?
23       Q.  Sure.  So this is March 9, '02.
24       A.  Okay.

Page 83

1        Q.  And the Bates at the bottom is 3020.
2        A.  Okay.
3        Q.  Over on the left-hand side under
4    "incident," there appears to be some notes.  I
5    think they are very difficult to read.
6           Can you read what's written there?
7        MR. COYNE:  Objection, foundation.
8    BY THE WITNESS:
9        A.  The copy is so bad, I can't.  It's too
10   light.  I'm sorry.  I can't.
11   BY MS. WEST:
12       Q.  No.  Thank you.  All right.  Let's move
13   on down here.  On Bates 3022, which is page 9 of
14   the document, under "statement" on the left-hand
15   side of that page -- and I'm sorry.  For your
16   reference, it's March 9, '02.
17       A.  Yes.
18       Q.  And it's documented page 1 of 2.
19           Where it has "statement," under there
20   it says, "Type:  Oral.  Date:  21 Feb '02," can
21   you read what that time is?
22       A.  It appears that it says, "14:20."
23       Q.  And can you go ahead and read what it
24   says next to "statement witness"?

Page 84

1        A.  It says, "ASA J Walker, DET Schalk
2    #20718." I believe, "DET Bogucki #20668.  Delta
3    AOR.  Delta waived.  In summary, delta stated he
4    wasn't there and didn't know anything" -- I'm
5    not sure what that word is -- and then "it."
6        Q.  Okay.  Now, you previously testified
7    that you do have a recollection of going to
8    speak with Mr. Fletcher at an IDOC facility,
9    correct?
10       A.  I remember going to an IDOC facility
11   with Detective Schalk and Detective Bogucki,
12   yes.
13       Q.  Okay.  Do you specifically recall the
14   purpose was to speak with Mr. Fletcher?
15       A.  I don't have an independent
16   recollection, but going to speak with someone
17   would be the purpose of going to IDOC.
18       Q.  Okay.  And based on this, does it
19   appear that on February 21st, '02 you,
20   Detective Schalk, and Detective Bogucki met with
21   Mr. Fletcher, or the defendant, as noted in this
22   case?
23       A.  That's what this document says.  I
24   don't have an independent recollection of

24  (Pages 81 to 84)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 85

1  creating it, and I don't have an independent
2  recollection of the conversation that could have
3  occurred at IDOC.
4      Q.  Okay.  Just so I'm clear, I understand
5  you don't have an independent recollection of
6  the conversation.
7      Do you have an independent recollection
8  of meeting with Mr. Fletcher?
9      A.  I don't -- I -- I remember going to
10 IDOC with Detective Schalk and Detective
11 Bogucki.  We were riding in the same car.  I
12 don't remember -- and I remember that the ride
13 lasted a while.  I don't remember meeting with
14 anyone when we got there.
15     Q.  Okay.  Where it's documented "AOR,"
16 what does AOR mean?
17     A.  Generally speaking, AOR would mean
18 advised of rights.
19     Q.  Okay, and next to "defendant AOR," it
20 says, "defendant waived."
21     Do you see that?
22     A.  Yes.
23     Q.  Okay.  Does that indicate that
24 individual waived his right and he spoke to you

Page 86

1  and the detectives?
2      A.  Generally, that's --
3      MR. STARR:  Speculation --
4  BY THE WITNESS:
5      A.  -- what that would indicate.
6      MR. STARR:  Sorry.  Belated objection.  Form,
7  foundation, speculation.
8  BY MS. WEST:
9      Q.  I'm sorry, Ms. Walker.  Can you repeat
10 your answer, please?
11     A.  Generally speaking, that's what that
12 would mean.  I don't have an independent
13 recollection of this event, so I can't say that
14 that's what happened.
15     Q.  Had you witnessed Detective Schalk or
16 Bogucki making threats towards Mr. Fletcher
17 during this interview, would you have reported
18 it?
19     MR. COYNE:  Objection; foundation,
20 speculation.
21     MR. STARR:  Join.
22 BY THE WITNESS:
23     A.  I cannot answer without speculating,
24 but would be mindful -- I was mindful of my

Page 87

1  obligations as an -- ethical obligations as a
2  prosecutor, and I would have acted in accordance
3  with those -- those rules.
4  BY MS. WEST:
5      Q.  All right.  Moving on.  The next date
6  is going to be March 16, 2002.  And it's going
7  to be Bates 3028.  Let me know whenever you have
8  had the opportunity to find it.
9      A.  I have it.  Thank you.
10     Q.  Okay.  Great.  All right.  Under --
11 sorry.  Give me a second to orient myself.
12     All right.  Under "action" -- which is
13 on the left-hand side of the page, it's like
14 that second box in the middle column.
15     Do you see what I'm talking about?
16     A.  Action?
17     Q.  And it's right where my cursor is right
18 in here.
19     A.  Oh, yeah, yeah, yeah.  I see that.
20 Sorry.
21     Q.  Okay.  Can you read what it says?
22     A.  Underneath the word "action" it says,
23 "arrest warrant approved."
24     Q.  Okay.  What does that mean?

Page 88

1      A.  Generally, it would mean that an arrest
2  warrant for the defendant was approved.
3      MS. WEST:  All right.  I'm going to show you
4  what we will mark as Exhibit 3.  And this is the
5  arrest warrant.  For the record, it is Bates
6  Individual Defendants 001604.
7      (Whereupon, Walker Deposition
8      Exhibit No. 3 was marked for
9      identification.)
10 BY MS. WEST:
11     Q.  Ms. Walker, do you have this document
12 in front of you?
13     A.  I do.
14     Q.  Okay.  Great.  Are you familiar, just
15 generally, with this document -- this type of
16 document, I should say?
17     A.  I am familiar generally speaking with
18 the arrest warrant form.
19     Q.  Okay.  And over on the left-hand side
20 written on the side of the page, do you see your
21 name, ASA Jennifer Walker?
22     A.  I do see my name, yes.
23     Q.  Okay.  It looks like there is a couple
24 other letters following your name.

25  (Pages 85 to 88)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 89

1      **Do you see that?**
2      A.  I do.
3      **Q.  Do you know what that is?**
4      A.  I don't.  I can say that AS -- the ASA
5   Jennifer Walker's handwriting does not look like
6   my handwriting.  I do not believe that I signed
7   it.  I -- it could be that those additional
8   letters mean that that was somebody else signing
9   my name based on -- on I have seen signatures
10  like that -- or I have seen writing like that
11  before where it's somebody else writing
12  somebody's name on -- on their behalf.
13     I don't -- I don't remember preparing
14  this document.  I don't know that I have ever
15  seen this document before preparing for the
16  deposition.  I do -- that -- it is not my
17  signature on the left-hand side.
18     **Q.  Okay.  Thank you.**
19     **Do you have any idea whose initials**
20  **that might be next to your name?**
21     MR. COYNE:  Objection, foundation.
22  BY THE WITNESS:
23     A.  I do not know.
24  BY MS. WEST:

Page 90

1      **Q.  Okay.  And the arrest warrant is for**
2   **the arrest of Mr. James Fletcher, correct?**
3      A.  That's what this piece of paper says,
4   yes.
5      **Q.  Okay.  And on the arrest warrant it**
6   **documents "for the offense of first-degree**
7   **murder."**
8      **Do you see those words on this**
9      A.  Yes.  I do see those words on this
10  document.
11     **Q.  Okay.  And it looks like at the bottom**
12  **the arresting officers are listed as Detective**
13  **Schalk and Bogucki.**
14     **Do you see that?**
15     A.  I do see that on the document.
16     **Q.  Okay.  I think I know the answer to**
17  **this question considering that you don't have an**
18  **independent recollection of being involved in**
19  **this, but I just want to close out on this.**
20     **What, if any, role did you play in**
21  **regards to the arrest warrant being sought for**
22  **the arrest of James Fletcher?**
23     MR. STARR:  Asked and answered.
24  BY THE WITNESS:

Page 91

1      A.  Because I don't have an independent
2   recollection, I can't answer that question.  I
3   don't know.  I don't remember.
4   BY MS. WEST:
5      **Q.  Thank you.**
6      **Generally speaking, in order to seek an**
7   **arrest warrant, does there have to be probable**
8   **cause for that warrant?**
9      A.  Under -- generally speaking, under the
10  law of the state of Illinois, probable cause
11  needs to be obtained before an arrest warrant
12  can be issued.
13     **Q.  And on the document that we looked at**
14  **in the Felony Review note -- and I can pull it**
15  **back up, but on that March 16, '02 note that we**
16  **read earlier, it said, "arrest warrant**
17  **approved."**
18     **When that's noted, is it indicating**
19  **that the Court approved the arrest warrant?**
20     MR. COYNE:  Objection, foundation.
21     MR. STARR:  Join.
22  BY THE WITNESS:
23     A.  Generally speaking, it would mean there
24  was a determination by Felony Review that there

Page 92

1   were sufficient facts to establish probable
2   cause, but ultimately, it would -- the warrant
3   would be issued by the judge.  It's not issued
4   by the State's Attorney's Office.
5   BY MS. WEST:
6      **Q.  Thank you.  All right.  I'm going to go**
7   **back to the Felony Review folder again.  All**
8   **right.  So we are going to look at page 3026,**
9   **which is page 13 of the document.  All right.**
10     **Under "Incident Summary" -- and let me**
11  **make it bigger for you, because I think it's a**
12  **little bit difficult to see -- the last three**
13  **sentences here that starts with "W1."**
14     **Do you see that?**
15     A.  Yes.
16     **Q.  Can you read what that says starting at**
17  **W1 to the end, please?**
18     A.  "W1 is picked up on stop order in
19  Feb 2002 and ID" -- it could be ID's.  I'm not
20  sure -- "delta in photo lineup.  W2 was picked
21  up on a stop order 7 Mar 02, and ID's" --
22  I-D-'-S -- "delta in a -- in photo lineup.  W3
23  was located later, scribble, in Mar 02."
24     **Q.  Thank you.**

26  (Pages 89 to 92)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 93

1    **And based on the Felony Review folder**
2    **notes that you have in front of you, W1 or**
3    **Witness 1 is Terry Rogers, correct?**
4        A.  So I don't have an independent
5    recollection of creating this document even
6    though the handwriting looks like it could be
7    mine.  In this document it indicates that Terry
8    Rogers is listed -- the name Terry Rogers is
9    listed in what would be considered the W1 box.
10       **Q.  Okay.  And same question for Witness 2,**
11   **which is also on the right-hand side of this**
12   **page.**
13       **Witness 2 listed on this document is**
14   **Sheene Friend, correct?**
15       A.  On this document, it's -- the name
16   Sheene Friend is listed in what would be
17   considered the Witness 2 box.
18       **Q.  Okay.  So then based on what you just**
19   **read under the incident, Witness 1, being Terry**
20   **Rogers, ID'd the defendant in the photo lineup,**
21   **correct?**
22       MR. STARR:  Form, foundation, speculation.
23   BY THE WITNESS:
24       A.  The notes on this document indicate

Page 94

1    there was a positive -- that Terry Rogers made a
2    positive identification.  I don't have an
3    independent recollection, and I can't say what
4    actually happened, because I don't have an
5    independent recollection.
6    BY MS. WEST:
7        **Q.  Sure.  And over on the right-hand side**
8    **where Terry Rogers is listed as a witness, the**
9    **notes there also support that there was a**
10   **positive identification by Mr. Rogers of the**
11   **defendant in a photo array on February 13th,**
12   **2002, correct?**
13       MR. STARR:  Form, foundation, speculation.
14   BY THE WITNESS:
15       A.  The document says there was a positive
16   identification.  I don't know if that is -- I
17   don't have an independent recollection to be
18   able to say what -- what occurred in -- in the
19   real world.
20   BY MS. WEST:
21       **Q.  And the identification was based off of**
22   **a photo array, correct, based on these notes?**
23       A.  The notes say photo array, but I
24   can't -- I can't say what actually happened,

Page 95

1    because I don't have an independent
2    recollection.
3        **Q.  And then on down with Ms. Friend, the**
4    **notes also support that a positive**
5    **identification of the defendant in a photo array**
6    **occurred with Ms. Friend as well, right?**
7        MR. STARR:  Form, foundation, speculation.
8    BY THE WITNESS:
9        A.  The notes indicate positive
10   identification.  That's what the document says,
11   but I don't have any independent recollection of
12   this.  So -- so I can't say what did or didn't
13   happen.
14   BY MS. WEST:
15       **Q.  You also see that there's like a little**
16   **star down under the notes of Ms. Friend.  Let me**
17   **scroll over here.**
18       **Can you see that?**
19       A.  I can see it better since you've pulled
20   it up.
21       **Q.  Okay.  Can you read what that says?**
22       A.  It says, "W" -- that might be a 2 --
23   "was 'dating,' in quotes, V2 at time of" -- I
24   believe the next word is incident -- "but they

Page 96

1    stopped seeing each other shortly after."
2        **Q.  Do you have a recollection of receiving**
3    **that information from Ms. Friend?**
4        A.  I do not.
5        **Q.  All right.  Let's take a look at 3024,**
6    **which is March 16, '02.  And I would like to**
7    **direct your attention onto the right-hand side**
8    **of the page.**
9        **Witness 3 is identified on this**
10   **document as Emmett Wade; is that right?**
11       A.  This document states -- has the name
12   Emmett Wade in the box for Witness 3, yes.
13       **Q.  Under "Notes" it looks like it says,**
14   **"I" -- with a circle around it -- "by ASA Walker**
15   **16 Mar 02."**
16       **Do you see that?**
17       A.  I do see those words.
18       **Q.  Okay.  And I know we've talked about**
19   **this.  The "I" with the circle around it means**
20   **an interview, correct?**
21       A.  Generally, "I" with a circle means
22   interview.
23       **Q.  And based on these notes, can you say**
24   **that you interviewed Mr. Wade on March 16, 2002?**

27  (Pages 93 to 96)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 97

1    A. I have no independent recollection of
2  meeting with an Emmett Wade. I have no
3  independent recollection of creating this
4  document. Although, the handwriting does look
5  like my handwriting.
6    Q. And the note would indicate to you that
7  an interview was done on March 16, '02, correct?
8    A. The document appears to say that.
9    Q. Okay. And that the interview was
10  conducted by ASA Walker?
11    MR. STARR: Form, foundation, speculation.
12  BY THE WITNESS:
13    A. The document appears to say that;
14  though, I have no independent recollection.
15  BY MS. WEST:
16    Q. I'm going to take you back to 3028.
17  This is pretty small. So let me try to make it
18  big so that way you can see it. On the
19  left-hand side of the page where it says,
20  "additional investigation required."
21    Do you see where I'm at?
22    A. Yes. I see that. I see those words
23  printed, yes.
24    Q. Okay. It looks like it says, "No. 1,

Page 98

1  order FT photos."
2    Do you see that?
3    A. The copy isn't great. I am unsure if
4  that is an F or not. It looks like there may be
5  a bottom. It may be an -- I see kind of a
6  little line there. So I'm not sure -- I'm not
7  sure what that -- if that's an F or it could be
8  another letter, but I do see "order," a letter
9  "T," and then I see the word "photos."
10    Q. Okay. And if it were to say, "order ET
11  photos," based on your experience as a Felony
12  Review assistant state's attorney, what is ET
13  photos referring to?
14    A. As I -- based on my general experience,
15  ET refers to -- as evidence technician. There
16  may be -- this could indicate that there were
17  photographs taken in this investigation by an
18  evidence technician, but I, again, don't have an
19  independent recollection of creating this
20  document or an independent recollection of the
21  review of this.
22    Q. Okay. Next to it on No. 2 -- how about
23  this? I will have you read it, because -- let's
24  do it that way.

Page 99

1    What do you -- can you read for No. 2,
2  please?
3    A. I believe No. 2 is a word that begins
4  with C. I believe that word is "conduct," but
5  I'm not 100 percent, because there is some light
6  spots in the writing. The second word appears
7  to be "lineups." Then "with all witnesses" and
8  the other --
9    Q. I'm sorry. Go ahead.
10    A. Do you want me to keep reading?
11    Q. Let me ask you a quick question about
12  that, and then we'll move on.
13    Based on what's documented as No. 2,
14  does that indicate to you that lineups had not
15  been done with all the witnesses in this case as
16  of March 16, 2002?
17    MR. STARR: Form, foundation, speculation.
18    MR. COYNE: Join.
19  BY THE WITNESS:
20    A. I don't remember creating this
21  document. I don't remember what the -- the
22  details of this. Generally speaking, it
23  could -- in my work as a a -- on Felony Review, it
24  could indicate that line -- additional lineups

Page 100

1  needed to happen.
2  BY MS. WEST:
3    Q. And can you read No. 3, please?
4    A. Did somebody say something? Okay.
5  No. 3. Reading No. 3: "ASA to interview" -- I
6  believe that it would be Edward Cooper.
7    Q. Okay.
8    A. No. 4, "W" -- I'm not sure what that
9  is -- "will need to go to JG -- GJ." I'm sorry.
10    Q. And does GJ stand for grand jury?
11    A. Typically, GJ would stand for grand
12  jury.
13    Q. Based on the notes that we've gone
14  through so far, at this point in time had you
15  spoken with Mr. Cooper?
16    MR. COYNE: Objection, foundation.
17    MR. STARR: Join.
18  BY THE WITNESS:
19    A. I don't have an independent
20  recollection. I don't know.
21  BY MS. WEST:
22    Q. And then let's go over here to this
23  side of the page. With regard to Mr. Cooper,
24  under "Notes" it looks like it says, I with a

28 (Pages 97 to 100)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

---

Page 101

1    circle around it -- so "interview by phone ASA
2    Walker March 9, 2002."
3         Do you see that?
4    A.  I do see that.
5         Q.  Okay.  Based on that note, does it
6    appear that Mr. Cooper was spoken to or
7    interviewed over the phone on March 9, 2002?
8    A.  There are words that -- that say that.
9    But I don't have an independent recollection of
10   creating this document or of having a -- any
11   such conversation, so I can't answer that
12   without speculating.
13       Q.  Do you have any reason to doubt the
14   accuracy that's what's -- as to what's
15   documented on the Felony Review folder sheet
16   that's maintained by the Office of the State's
17   Attorney's Office -- I'm sorry -- by the State's
18   Attorney's Office?
19       MR. COYNE:  Objection, foundation,
20   speculation.
21       MR. STARR:  Join.  Form as well.
22   BY THE WITNESS:
23       A.  I don't -- because I don't have an
24   independent recollection, I can't say whether or

---

Page 102

1    not something happened.  I don't have a doubt.
2    I just -- I can't say yes or no either way.
3    BY MS. WEST:
4        Q.  Okay.  Thank you.  That helps clear it
5    up.
6        So you don't necessarily doubt the
7    accuracy of what's written here?  You just don't
8    have an independent recollection of actually
9    taking these steps that are documented; is that
10   fair?
11       MR. STARR:  Asked and answered.
12   BY THE WITNESS:
13       A.  Correct.
14   BY MS. WEST:
15       Q.  Thank you.  All right.  I'm going to
16   take you down to 333.
17       Sorry.  Did somebody say something?
18       All right.  At the top of 3033, the
19   date is April 20, 2002.  Do you see that?
20       A.  Yes.
21       Q.  Okay.  And on the left-hand side under
22   "arrest," based on what's documented here, does
23   it appear that the defendant, or Mr. Fletcher,
24   was arrested on April 18, 2002?

---

Page 103

1        A.  So I don't have any independent
2    recollection of the events described in this
3    document.  I don't have an independent
4    recollection as to creating this document.
5    Although, the handwriting in this document does
6    look like it could be mine.  The words on this
7    page indicate that on April 18th of '02 the --
8    there was an arrest made at 26 -- at 26th Street
9    by Detectives Schalk and Bogucki, and the arrest
10   would be for the defendant, James Fletcher.
11       Q.  Okay.  And it was based off of the
12   arrest warrant?
13       MR. COYNE:  Objection, foundation.
14   BY THE WITNESS:
15       A.  This document does not indicate -- oh,
16   never mind.  This document says he was arrested
17   off of the arrest warrant.  I don't have any
18   independent recollection of that or of creating
19   this document.
20   BY MS. WEST:
21       Q.  Over on the right-hand side of this
22   page for -- I'm sorry, for Victim 2, Edward
23   Cooper, is it documented that an interview was
24   conducted of Mr. Cooper on April 20, 2002?

---

Page 104

1        MR. STARR:  Form, foundation, speculation.
2    BY THE WITNESS:
3        A.  I don't have an independent
4    recollection of creating this document or of any
5    interview with Mr. Cooper.  The words on this --
6    on this document indicate that there was an
7    interview by ASA Walker on 20 April '02.
8    BY MS. WEST:
9        Q.  And also based on what's noted here,
10   there was a positive identification at a lineup
11   by Mr. Cooper.
12       Do you see that?
13       A.  I see the words -- I see the plus sign,
14   ID at lineup 20 April '02 on the document.
15   Again, I don't have any personal -- I don't have
16   any independent recollection of that or of
17   creating this.
18       Q.  And just so we're clear, you do have an
19   independent recollection of being involved in an
20   in-person lineup relative to Mr. Fletcher's
21   case?
22       A.  I do not.
23       Q.  Typically speaking, as a Felony Review
24   assistant state's attorney, would you be

---

29 (Pages 101 to 104)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 105

1   involved in the lineup or the viewing of a
2   lineup with witnesses?
3       MR. COYNE:  Objection; form, foundation.
4   BY THE WITNESS:
5       A.  Typically, ASAs on Felony Review are
6   not involved in lineups.  But I can't -- I don't
7   have an independent recollection of anything, so
8   I don't know.
9   BY MS. WEST:
10      Q.  All right.  At the bottom of that under
11  "Notes," we have already gone over the
12  "interviewed by ASA Walker" portion, but that
13  second line, can you read that?
14      A.  Starting with V2?
15      Q.  Yes, please.
16      A.  "V2 was dating Witness 2 at time of
17  incident, but stopped seeing each other shortly
18  after."
19      Q.  Okay.  And we previously read a similar
20  entry for Ms. Friend that indicated that she was
21  dating V2, which is Mr. Cooper.
22          Do you recall reading that?
23      A.  I recall reading previously that V2 --
24  yes.  I previously recall reading that.

Page 106

1       Q.  Ms. Walker, let me ask you this:  Do
2   you need a break, or would you like to keep
3   going?
4       A.  I'm okay if we keep going, because then
5   I won't feel so bad if we have to stop to -- for
6   me to do my thing.
7       MS. WEST:  Okay.  Is everybody else okay to
8   keep going?
9       MR. COYNE:  Yeah, sure.  Allyson, do you have
10  an estimate as to how long just so I can tell
11  the office here?
12      MS. WEST:  Yeah, sure.  So I know I promised
13  1:30.  It's probably going to be more like 2:00,
14  about another hour.  Is -- with that in mind, is
15  everybody okay to keep going until Ms. Walker
16  needs to take her break?
17      MR. COYNE:  Sure.
18      MS. WEST:  Okay.  Thank you.
19  BY MS. WEST:
20      Q.  All right.  Let's take a look at 3030
21  of the fell Felony Review folder.
22          Do you see the date at the top,
23  April 20th, 2002?
24      A.  I do.

Page 107

1       Q.  And do you see over on the -- that same
2   page it says, "3 of 3"?
3       A.  Yes.
4       Q.  When you reviewed these documents that
5   are the Felony Review folder, did you see a
6   page 2 of 3 for April 20, 2002?
7       A.  I did not.
8       Q.  Okay.  Can you just generally explain
9   to me how -- how this is documented so that I
10  can better understand the chronology of
11  everything?
12      MR. COYNE:  Objection; form, foundation.
13  BY THE WITNESS:
14      A.  I'm not sure I understand your
15  question.
16  BY MS. WEST:
17      Q.  Sure.  So when you start a date entry,
18  do you document page 1 of 3 or 2 of 3?
19          Is that generally how you document it
20  when you're filling these out?
21      A.  Yes.  So.  So you -- you have a folder,
22  and if you need additional folders, you add them
23  as subsequent -- generally speaking, you would
24  add them as subsequent pages.  So typically --

Page 108

1   and to know -- to get a sense of how many pages
2   you should have in that set, we would write, you
3   know, 1 of the total number so that it was
4   easier to keep track of.
5       Q.  Okay.  And based on that and this being
6   3 of 3, does that give you an indication that
7   there would have been page 2 of 3 relative to
8   April 20th, '02?
9       MR. COYNE:  Objection, foundation.
10  BY THE WITNESS:
11      A.  Because I don't remember creating this
12  document, even though the handwriting is mine, I
13  cannot say for sure.  It is certainly possible.
14  But I -- I can't remember for sure if there was
15  a page 2 in this set.
16  BY MS. WEST:
17      Q.  Thank you.
18          At the top where it says "start time"
19  and "finish time," above "finish time" it looks
20  like it has a different date than April 20th.
21          Do you see that?
22      A.  I see -- so my -- my copy is kind of
23  bad, and yours kind of has the same thing.  It
24  looks like somebody -- like it had a -- maybe a

30  (Pages 105 to 108)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 109

1  hole punch in -- on it or something. I'm not
2  sure. But it looks as though there was a
3  different date written in front of it, but
4  because of that circle that was copied, I can't
5  tell exactly what that date would be.
6      Q. Okay. Is it unusual for a particular
7  entry on this folder to span multiple days?
8      MR. COYNE: Objection; form, foundation.
9  BY THE WITNESS:
10     A. It is -- I don't have any independent
11 recollection of creating this document or of the
12 events surrounding what's inside of it. But
13 generally speaking, it could be if -- if a case
14 gets called in and you know it's going to be
15 called in a few days later, it could be that you
16 would hold the file and add to it as opposed to
17 creating a whole new separate set of -- for lack
18 of a better word -- stuff.
19     If you were continuing to work on it
20 and you knew you were going to be continuing to
21 work on it, that could -- that is something that
22 could happen. But I don't know, because I -- I
23 don't have an independent recollection.
24 BY MS. WEST:

Page 110

1      Q. Okay. Thank you.
2      And on the right-hand side of this
3  page, Emmett Wade is listed as a witness.
4      Do you see that?
5      A. I see the words "Emmett Wade," yes.
6      Q. Okay. And down under "Notes," it
7  appears that it says "interviewed by ASA Walker
8  16 March 02."
9      Do you see that?
10     A. I see those words, yes.
11     Q. Okay. And there looks like there's an
12 arrow -- and then tell me if I'm reading this
13 correctly -- "didn't get a good look at the
14 robbers"?
15     A. I see -- yes. I see those words too.
16     Q. Okay. And based on that note, does it
17 appear that Mr. Wade was interviewed on
18 March 16th, 2002?
19     MR. COYNE: Objection, foundation.
20     MR. STARR: Join.
21 BY THE WITNESS:
22     A. I don't have a specific recollection of
23 this. I don't have a specific recollection
24 either of any interview or of creating this

Page 111

1  document, but -- so I can't say if that actually
2  happened or not.
3  BY MS. WEST:
4      Q. But that's what's documented here,
5  correct?
6      A. But there are words to that effect on
7  that document, yes. There's words to
8  that effect.
9      Q. And also -- I'm sorry.
10     A. Sorry.
11     Q. Also there is words "no ID," and it's
12 circled.
13     Do you see that?
14     A. I -- I see a circle around the word "no
15 ID."
16     Q. Okay. And generally speaking, does
17 that mean that a witness is unable to make an
18 identification?
19     A. Generally speaking, during my time on
20 review, yes, that -- that would be the case.
21     Q. Okay. And based on the document -- I'm
22 sorry -- the notes and the documentation here,
23 it appears that Mr. Wade could not make an
24 identification of an offender, correct?

Page 112

1      MR. COYNE: Objection, foundation.
2  BY THE WITNESS:
3      A. Well, I can't say that, because I don't
4  have an independent recollection. I can say
5  that the word "no ID" was circled -- or the
6  phrase "no ID" was circled.
7  BY MS. WEST:
8      Q. Typically, when you would speak with a
9  witness, would the detectives be present?
10     A. Typically, the detectives would be
11 present when I spoke with a witness for most of
12 the time.
13     Q. Are there instances that you can think
14 of where you would speak with the witness
15 without a detective?
16     A. Yes.
17     Q. What are those instances?
18     MR. COYNE: Objection; form, foundation. And
19 also, Jennifer, you can answer that question
20 provided you would not be divulging your
21 opinions about the evidence, your strategies,
22 your legal theories, your mental decision-making
23 in your work as a prosecutor.
24     So provided you can answer that

31 (Pages 109 to 112)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 113

1   question without divulging those mental
2   impressions, you can go ahead.
3       MR. HOLMES: Same admonition on behalf of the
4   Office.
5   BY MS. WEST:
6       Q.  Can you answer the question?
7       A.  I'm not sure if there is a -- if I have
8   a -- may I speak to John first?
9       MR. COYNE: Sure.
10      MS. WEST: You know what? Let me withdraw
11  the question. I will withdraw, and we can move
12  forward.
13  BY MS. WEST:
14      Q.  Do you have an independent recollection
15  if Detective Bogucki, Detective Schalk, or
16  Detective Noradin were involved with you in an
17  interview of Mr. Wade?
18      A.  I do not.
19      Q.  Do you have an independent recollection
20  of Detectives Bogucki or Schalk showing Mr. Wade
21  only one photograph and telling them that the
22  individual in the photograph was a bad guy?
23      MR. STARR: Form, foundation, and calls for
24  speculation.

Page 114

1       MR. COYNE: Join.
2   BY THE WITNESS:
3       A.  I do not.
4   BY MS. WEST:
5       Q.  Typically, when a witness is shown a
6   photo array, does it consist of more than one
7   photo?
8       MR. COYNE: I'm sorry. I didn't hear it.
9   Was there an answer to the last question?
10          (Whereupon, the record was read
11          as requested.)
12      MR. COYNE: Oh, got you. Thank you. I
13  didn't hear it. Sorry, Allyson. I just wanted
14  to hear it.
15      MS. WEST: No. No worries.
16          Can you read the question back? Unless
17  you remember it, Ms. Walker, because I --
18  BY THE WITNESS:
19      A.  I believe the -- I believe the question
20  was, typically, when a witness in a photo
21  array, there was more than one photo in it. Is
22  that right?
23  BY MS. WEST:
24      Q.  Yes.

Page 115

1       A.  Yes. Typically, a witness would be
2   shown a photo array with multiple photos.
3       Q.  Have you ever seen or witnessed a
4   detective show a witness only one photograph and
5   indicate that person was a bad guy?
6       A.  I do not have a recollection of that.
7       Q.  On the same page over on the left-hand
8   side under "Incident," can you read what it
9   says, please?
10      A.  Are you asking about the handwriting
11  part of it or all the words?
12      Q.  I'm sorry. The handwriting part that
13  starts -- well, it looks like "Incident Summary"
14  is crossed out, and it says, "continue from
15  Folder 2."
16          If you could read starting with what
17  looks like "warrant"?
18      A.  Yes.
19      Q.  Thank you.
20      A.  "Warrant was issued so delta would be
21  at A5 and lineups could be run. On 20 Apr 02
22  delta's put attorney" -- oh, that may be P-V-T,
23  not P-U-T -- "attorney showed up at A5 on
24  22 April 02. W3 did not view live lineup as W3

Page 116

1   didn't get a good look at either of the" -- and
2   I believe that says robbers. "Star, other C/I
3   files from February and March all from
4   ASA Walker 13 Feb 02 55; 9 Mar 02 010;
5   16 March 02 040."
6       Q.  Thank you.
7           Based on what you just read, let me ask
8   you a couple questions.
9           W3, Witness 3, is that Mr. Wade?
10      A.  I don't have an independent
11  recollection of creating this document, and I
12  don't have an independent recollection of -- of
13  the events in it. According -- this -- there is
14  no number on the page -- on the right-hand side
15  page where Emmett Wade is in the box on this
16  paper, reading all these documents together, it
17  is likely that the -- that the incident box on
18  the left-hand side page is referring to Mr. Wade
19  as W3 since it -- since prior sets of documents
20  had -- had referred to him as such.
21      Q.  And based on -- based on that, it
22  appears that Mr. Wade did not view the live
23  lineup as documented here; is that right?
24      MR. COYNE: Foundation.

32  (Pages 113 to 116)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 117

1    BY THE WITNESS:
2        A.  The folder indicates that to be -- the
3    document indicates that to be correct.  I don't
4    have an independent recollection, so I can't say
5    what happened.
6    BY MS. WEST:
7        Q.  On that -- after it says on
8    "20 April 02 defendant's" -- and you read it as
9    PVT.
10           Does that stand for private attorney?
11       A.  Typically, PVT would stand for private
12   attorney.
13       Q.  Do you have a recollection of
14   Mr. Fletcher's attorney showing up for the live
15   lineup?
16       A.  I do not have a -- a recollection of
17   that.
18       Q.  Is that unusual to have a private
19   attorney show up for a lineup?
20       MR. COYNE:  Objection, form.
21   BY THE WITNESS:
22       A.  In my experience on Felony Review
23   speaking generally, it -- it didn't happen all
24   the time, but it did -- it did -- it did happen.

Page 118

1    BY MS. WEST:
2        Q.  And when those attorneys came to the
3    live lineup, were they allowed on the side where
4    the witnesses were viewing the lineup?
5        MR. COYNE:  Objection; form, foundation.
6        MR. STARR:  Join.
7    BY MS. WEST:
8        Q.  Let me back up and put a -- I'm sorry.
9    Let me put a caveat on it.
10           At Area 5, did you ever witness a
11   private attorney view a lineup on the same side
12   as the witnesses who were also viewing the
13   lineup?
14       MR. STARR:  Form, foundation, and
15   speculation.
16       MR. COYNE:  Join.
17   BY THE WITNESS:
18       A.  I don't have an independent
19   recollection of watching a lineup take place at
20   Area 5.  I don't have -- so I -- I couldn't say
21   either way.
22   BY MS. WEST:
23       Q.  Safe to say that since you don't have
24   an independent recollection of the lineup being

Page 119

1    conducted, then you don't have an independent
2    recollection of any misconduct occurring by
3    Detectives Schalk and Bogucki during the lineup?
4        MR. COYNE:  Objection; form, foundation.
5    BY THE WITNESS:
6        A.  Because --
7        MR. STARR:  Join.
8    BY THE WITNESS:
9        A.  -- I don't have an independent
10   recollection of the lineup, I couldn't say what
11   happened at the lineup.
12   BY MS. WEST:
13       Q.  I'm going to indicate to you that in
14   this case Mr. Fletcher has testified that you
15   were present at Area 5 when Detective -- one of
16   the detectives, either Bogucki or Schalk, shoved
17   him following a lineup.
18           Do you have a recollection of that
19   occurring?
20       MR. STARR:  Form and foundation.  I believe
21   it mischaracterizes facts in evidence.
22           But go ahead.
23   BY THE WITNESS:
24       A.  I do not have a recollection of

Page 120

1    something like that happening.
2    BY MS. WEST:
3        Q.  And had something like that happened,
4    had it -- you witnessed a detective shove an
5    offender, would you have reported that?
6        MR. COYNE:  Foundation, speculation.
7        MR. STARR:  Form, foundation, speculation.
8    Join.
9    BY THE WITNESS:
10       A.  So to answer that question, I would be
11   required to speculate, but I am very mindful of
12   my ethical obligations as a prosecutor, and I
13   would have acted in accordance with those
14   obligations.
15   BY MS. WEST:
16       Q.  All right.  Let me show you another
17   page on the Felony Review.
18           And, Ms. Walker, please tell me
19   whenever you need to take that break, okay?  I
20   know we are getting close.
21       A.  Sure.  Thank you.  I haven't gotten
22   my -- I haven't gotten a text yet.  So thank
23   you.
24       Q.  Okay.  I'm going to direct you to

                                33  (Pages 117 to 120)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 121

1  page 3039, and the entry is going to be from
2  May 8, 2002. All right. All right.
3      Have you had an opportunity to pull
4  that page in front of you?
5      A. Yes. Thank you.
6      Q. Oh, okay. Great. It looks like on
7  this date it's noted that charges were approved.
8      Do you see that?
9      A. On -- in the "Charges Action" box on
10  the left-hand side, I do see the word
11  "approved."
12      Q. And under that where it says
13  "Statement," I know that you read earlier a
14  portion of this, but it looks like it's a more
15  full description.
16      Can you read for us what it says under
17  "Statement Witness"? It starts with ASA Walker.
18      A. Yes. "ASA Walker, DET Schalk star --
19  or No. 20718, DET Bogucki, No. 20668."
20      Do you want me to keep reading?
21      Q. Yes, please. Because it goes on there
22  and over in the right-hand side too.
23      A. Yes. "Delta AOR. Delta waived. In
24  summary, delta stated he wasn't there and didn't

Page 122

1  know anything about it. Delta did not know what
2  he was doing on December 21, 1990, but he stated
3  he knew he was not around Madison and Central.
4  Delta stated that" -- I can't read that word --
5  "December of 1990 he was selling dope at Cabrini
6  Green and had no reason to be sticking people
7  up" -- I can't read that word.
8      "He had a lot of" -- and then
9  continuing over to the left -- to the right-hand
10  side -- "paren, CONT, closed paren, money coming
11  from his dope business. He was in prison under
12  the name of Arnold" -- I think that says Dixon.
13  "His real name was James Fletcher."
14      Q. Thank you. And maybe I miss -- missed
15  this part.
16      But did you read the part where it
17  says, "defendant stated he knew Terry Rogers"?
18      A. Oh, I'm sorry. I missed --
19      Q. No, no. You're fine.
20      A. I think I skipped -- I was looking back
21  and forth, and I think I skipped a line.
22      So on the right-hand side it says,
23  "(CONT) money coming from his dope business.
24  Delta stated he knew Terry Rogers. Delta stated

Page 123

1  even though he was in prison under the name of
2  Arnold" -- and I think that's Dixon -- "his real
3  name was James Fletcher."
4      I'm sorry. I think I was jumping
5  between the screen and my paper, and I missed
6  that line. I apologize.
7      Q. No. No worries. Thank you.
8      And this summary, from what it appears
9  on the document here, is a summary of a
10  statement from Mr. Fletcher; is that correct?
11      MR. COYNE: Objection, foundation.
12  BY THE WITNESS:
13      A. So I don't have any independent
14  recollection of creating this document -- even
15  though the handwriting looks like it could be
16  mine -- that -- or speaking with James Fletcher
17  or taking the statement, but the words on the
18  page -- that's what the words on the page say.
19  BY MS. WEST:
20      Q. Let me take you to 3037. All right.
21  Witness No. 1, Terry Rogers.
22      Do you see that?
23      A. Yes.
24      Q. Okay. Thank you. Over on the

Page 124

1  right-hand side, it looks like it says, "W1 is
2  very hostile" with an exclamation point.
3      Do you see that?
4      A. Yes. I see those words.
5      Q. Okay. Do you recall Mr. Rogers being a
6  hostile witness?
7      A. I don't have an independent
8  recollection of creating this document. I don't
9  have an independent recollection of speaking
10  with a Terry Rogers.
11      Q. Under "Notes," does it appear that
12  Mr. Rogers was interviewed on February 13, 2002?
13      A. The document indicates there was an
14  interview by -- the document indicates
15  "interview by ASA Walker 13 February 02." I
16  don't have an independent recollection of this
17  or creating -- of that incident or of creating
18  this document. I -- I can't say.
19      Q. And also based on this document and
20  what's noted here, it looks like there was a
21  positive identification of a photo array by
22  Terry Rogers as well?
23      A. The document indicates that there was a
24  positive identification. I don't have an

34 (Pages 121 to 124)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 125

1  independent recollection of that.
2      Q.  And then also based on the notes, it
3  indicates that Mr. Rogers gave a handwritten
4  statement on May 8, 2002; is that right?
5      A.  The document indicates an "HW," which
6  I -- generally would refer to a handwritten
7  statement taken on May 8th, yes.  That's what
8  the document says.
9      MS. WEST:  Okay.  All right.  I'm going to
10  show you what we'll mark as Exhibit 4.  And for
11  the record, this is going to be the handwritten
12  statement of Terry Rogers.  All right.  And also
13  for the record, it's City-JF-161 through 163.
14          (Whereupon, Walker Deposition
15           Exhibit No. 4 was marked for
16           identification.)
17  BY MS. WEST:
18      Q.  All right.  Ms. Walker, do you have
19  this document in front of you?
20      A.  I do.
21      Q.  Okay.  Based on this document, what
22  detective was present for the handwritten
23  statement of Mr. Rogers?
24      MR. STARR:  Form, foundation.  Calls for

Page 126

1  speculation.
2  BY THE WITNESS:
3      A.  I reviewed this document to prepare for
4  my testimony here today.  I recognize that the
5  handwriting on here looks like mine, but I don't
6  have any independent recollection -- or of
7  creating this document or speaking with Terry
8  Rogers.  So I can't -- I can't testify as to
9  what happened.  Looking at this document and
10  knowing -- you know, and considering like how
11  things typically worked, it appears that
12  detective - and my copy is kind of cut off.
13      It appears that it was Detective
14  Norad- -- I'm guessing Noradin.  This looks like
15  Noradiv [sic], but it also looks like part of
16  that got cut off, so --
17  BY MS. WEST:
18      Q.  Okay.  And --
19      A.  -- I can't say for sure.
20      Q.  Okay.  And based on this document,
21  what's noted on the document is the statement
22  was taken on May 8, 2002.
23      Do you see that?
24      A.  That's what the document states.

Page 127

1      Q.  And it was taken at Area 5.
2      Do you see that?
3      A.  That's what the document states.
4      Q.  Okay.  And, Ms. Walker, let me ask you
5  this:  Have you had a chance to read through
6  this statement to yourself prior to -- to now?
7      A.  I read through this -- through this
8  within the last week, yes.
9      Q.  Okay.  Where I'm getting at is so that
10  I -- I don't have to make you read this into the
11  record, are you familiar with it enough that I
12  can ask you some questions about it, or would
13  you like some time to read through it again?
14      A.  Go ahead and ask me some questions, and
15  if I need to read it, I'll read.
16      Q.  Sounds good.
17      Based on Mr. Rogers's statement, he --
18  he identifies an individual in an Exhibit A as
19  James Fletcher.
20      Would you agree with that?
21      A.  The statement indicates that there's an
22  Exhibit A.  I don't have a copy of Exhibit A as
23  a part of the document that I reviewed.  And in
24  the -- in the -- the statement says that Terry

Page 128

1  states that Exhibit A is someone he knows as
2  Fletcher.
3      Q.  And I know that you already gave the
4  caveat that you aren't familiar with this
5  document.  You don't have a recollection of
6  taking Mr. Rogers's statement.
7      Is this document in your handwriting?
8      A.  This document looks like it could be my
9  writing, but because I don't remember making it
10  or having a conversation with Mr. Rogers, I
11  can't say that it is for sure in my writing.
12      Q.  And Mr. Rogers -- in the handwritten
13  statement what is documented is that he has
14  known Fletcher since they were kids, and they
15  used to go to the same roller-stating place.
16      Do you agree with that?
17      A.  That's what the document says at the
18  bottom of page 2.
19      Q.  And based on this statement, how did
20  Mr. Rogers report that he had been treated by
21  the police?
22      A.  According to the document, it states,
23  "Terry states he's been treated okay by the
24  police and by Assistant State's Attorney

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 129

1  Jennifer Walker." But I have no independent
2  recollection of the statement or of making it --
3  writing it down.
4       Q. And based on the document, Mr. Rogers
5  also indicates that no threats or promises had
6  been made for giving the statement.
7       A. The document states he was not made --
8  that "Terry was not made any threats or promises
9  and is giving the statement freely and
10 voluntarily."
11      Q. At the bottom of this third page here,
12 it looks like there's three signatures under the
13 last sentence.
14          The third signature, does that appear
15 to be your signature?
16      A. I don't remember signing this document.
17 It looks similar to my writing. But I can't say
18 that it is my signature, because I don't
19 remember signing it.
20      MS. WEST: All right. I'm going to show you
21 what we will mark as Exhibit 5. For the record,
22 this is the transcript of Terry Rogers's
23 testimony to the grand jury taken on May 9,
24 2002. And it's Bates Fletcher 007762 through

Page 130

1  7768.
2          (Whereupon, Walker Deposition
3          Exhibit No. 5 was marked for
4          identification.)
5  BY MS. WEST:
6       Q. Ms. Walker, was that -- was this
7  document among the documents that you reviewed
8  in preparation for today's deposition?
9       MR. COYNE: Yeah. Let me -- let me just
10 interject. Jennifer, just -- we talked about
11 the Grand Jury Secrecy Act earlier. So I just
12 want to caution you that according to the Act it
13 is illegal for you to reveal the identity of
14 witnesses or evidence that was presented to a
15 grand jury unless there was the required order
16 from the criminal court that alleviated the
17 witness, in this case you, of that obligation
18 not to do so.
19      So I don't know if that's been -- if
20 that's happened. So just in terms of
21 representing your interests, I would caution you
22 that you may find -- you may face some sort of
23 jeopardy should you reveal the identity of
24 testimony or witnesses presented to this grand

Page 131

1  jury unless there has been the appropriate order
2  from the criminal court releasing the -- those
3  materials.
4       So I just want to caution you of that.
5  I don't know that it has. There was a
6  conversation on the record earlier. And I have
7  not seen an order from the criminal court judge
8  at 26th Street, Judge Reddick. I haven't heard
9  of the order being issued, so you ought to know
10 that.
11      MR. HOLMES: Same -- same admonition on
12 behalf of the Office.
13      MS. WEST: All right. Let me stop this for a
14 second, so we can talk about this.
15      Sean, I obviously haven't -- haven't
16 had the chance to look. I don't know if you
17 have that order.
18      MR. STARR: I asked my paralegal take a look,
19 and she couldn't find it. It doesn't mean it
20 doesn't -- that we don't have one. I just --
21 you know, my focus has been on this deposition.
22      MS. WEST: Yeah, absolutely.
23      MR. STARR: I haven't had time to look in my
24 files.

Page 132

1       MS. WEST: And for everyone on here, I can
2  indicate to you that these documents have been
3  produced in litigation by plaintiff's office,
4  and that they have been used in other
5  depositions.
6  BY MS. WEST:
7       Q. So, Ms. Walker, let me ask you this:
8  What's your comfort level as to testifying to
9  these without actually putting your eyes on the
10 order?
11      MR. COYNE: Yeah. Let me just counsel her on
12 that, Jennifer, because I'm here for that
13 reason. All right. I understand that they've
14 been released. That's clear. I also am not
15 aware of any exception in the Grand Jury Secrecy
16 Act that would protect you from potential
17 jeopardy based upon the fact that the materials
18 were released, unless there was a criminal court
19 order that has been issued in this case that
20 would permit you to answer these questions. And
21 you ought to know that.
22      So I'm just cautioning you accordingly.
23 I haven't seen the order. There's been no
24 representation of any attorney in this

36 (Pages 129 to 132)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 133

1    deposition that there was such an order, much
2    less that they saw it. So I would caution you
3    that -- absent confirmation that an order has
4    been issued, I would caution you not to answer
5    any questions given the jeopardy that you may or
6    could face under the express terms of the Grand
7    Jury Secrecy Act.
8        MR. HOLMES: Same admonition on behalf of the
9    Office.
10   BY THE WITNESS:
11       A. So I can say that I read this exhibit
12   in preparation for my testimony here today, but
13   as I have not seen an order releasing this -- I
14   see it has been -- you-all have it. But I
15   haven't seen the order saying that it's okay to
16   talk about this. And I certainly don't -- am
17   not suggesting that someone is trying to do
18   something improper, I -- but for my own comfort
19   level, I would need to see the order in order to
20   speak on this.
21       MS. WEST: Understood. How about this? I'm
22   gonna skip forward. Actually, you know what?
23           Can we take just a five-minute break,
24   because I am going to have my office look for it

Page 134

1    as well. And then we'll go on, and I'll finish
2    up what I have with you, and then if we can come
3    to this, we will.
4        MR. COYNE: Yeah. Let's -- Allyson, let's
5    make that break a little longer because I'm
6    going to need to address some things here so I'm
7    not interrupted. And then you said about 2:00.
8    I know that obviously is not written in stone,
9    but, Sean, do you know approximately how much
10   time you're going to need for planning purposes
11   on our end?
12       MR. STARR: I'm going to say that I'm still
13   at approximately an hour, an hour and a half.
14   You know, I will do my best to get through my
15   outline as efficiently as possible.
16       MR. COYNE: Okay.
17       MR. STARR: And also it depends on what
18   questions get asked between now and then.
19       MR. COYNE: Does anyone else have -- expect
20   to have questions that would affect the length
21   of the deposition?
22       MR. BURNS: At this time, I don't expect to
23   have any questions. That may change, though.
24       MR. COYNE: Okay. Thank you. Just so we --

Page 135

1    just want to know for planning purposes. Thank
2    you.
3        MS. WEST: Okay. John, how long would you
4    like.
5        MR. COYNE: Why don't we say ten minutes?
6        MS. WEST: Okay.
7        MR. COYNE: That should be enough.
8        MS. WEST: Sounds good. Okay. Thank you.
9        MR. STARR: Sounds good. Thanks.
10       MS. WEST: We'll come back at 1:50.
11           (Whereupon, a short break was
12           taken.)
13       MS. WEST: Let's go -- I'm going to show you
14   what we'll mark as Exhibit 6. I'm sorry. Wait.
15   It's going to be 5.
16       THE COURT REPORTER: You have the grand jury
17   transcript marked as 5.
18       MS. WEST: Ah, okay. That's why. Thank you.
19   Okay. So the grand jury for Rogers is 5?
20       THE COURT REPORTER: Correct.
21       MS. WEST: Okay. So then we'll do 6. All
22   right. 6, for the record, is the Declaration of
23   Emmett Wade. And for the record, it's -- let's
24   do CCSAO-CUI 00152 through 157.

Page 136

1           (Whereupon, Walker Deposition
2           Exhibit No. 6 was marked for
3           identification.)
4    BY MS. WEST:
5        Q. All right. Ms. Walker, do you have
6    this document in front of you?
7        A. I do.
8        Q. Okay. Good. For context, Emmett Wade
9    was a witness that we spoke about earlier that
10   was documented in the Felony Review folder as
11   the individual who said he didn't have a good
12   look at the robbers.
13           Do you recall reading those notes?
14       A. I do recall that.
15       Q. Okay. Safe to say, Ms. Walker, you
16   have not seen this document before today?
17       A. Well, it was --
18       Q. Or before being provided it?
19       A. It -- prior to preparing for the
20   deposition, I had not seen it. But it -- I did
21   get it from John's office. So -- so I had seen
22   it before today.
23       Q. Okay. Did you have an opportunity to
24   read through it prior to today?

37 (Pages 133 to 136)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 137

1    A.  I -- I did.  I had trouble reading some
2  of the -- of the writing.  So I wouldn't say
3  that I was able to read every word, but I have
4  read through this.  There is just some words I
5  couldn't get.
6    Q.  Okay.  I want to direct your attention
7  specifically to a few things.
8        So on page 2 of the document -- for the
9  Bates range it's 153 -- this -- it's like the
10 first full paragraph in the middle of the page.
11 If you could just read that paragraph to
12 yourself, and then let me know when you're
13 finished.  I want to ask you a question.
14    A.  I have read it.
15    Q.  Thank you.  Based on the paragraph that
16 you just read, Mr. Wade is claiming that
17 detectives came to see him at his house, and
18 that they would return with the state's attorney
19 and come back in a few days.
20        Was that your reading of that
21 paragraph?
22    A.  I would say that's the gist.  Again,
23 there is -- there's some words here that are
24 difficult to read and for me to know with

Page 138

1  certainty what they are.
2    Q.  Okay.  Excuse me.  I'm going to move
3  down on to the next paragraph, and I am just
4  going to read this to you.
5        "The officers called me a couple days
6  later and asked me what a good time would be for
7  them to come -- to come back.  I told them, and
8  they came back with a tall, slender female
9  State's Attorney."
10        Do you have an independent recollection
11 of meeting with Mr. Wade at his home with the
12 detectives?
13    A.  I do not.
14    Q.  Would it have been unusual to visit a
15 witness at their home?
16    MR. COYNE:  Form.
17 BY THE WITNESS:
18    A.  While I was on Felony Review, I do
19 remember visiting -- going to a -- houses to
20 speak -- residences to speak with witnesses.  It
21 was more the exception than the rule, though.
22 BY MS. WEST:
23    Q.  I'm going to scroll on down here.
24        Actually, let me have you read to

Page 139

1  yourself the rest of this paragraph, and then it
2  proceeds onto the following page.
3    MR. STARR:  What page are you on?  I'm sorry.
4    MS. WEST:  Sure.  It was page 2 into 3 or
5  Bates 153 into 154.
6    MR. STARR:  Thanks.
7 BY THE WITNESS:
8    A.  I read that paragraph.
9 BY MS. WEST:
10    Q.  Okay.  Thank you.
11        In that paragraph Mr. Wade is saying
12 that he was shown one photograph by the
13 detectives in the presence of a State's
14 Attorney.  Do you agree with that?
15    MR. COYNE:  Foundation.
16 BY THE WITNESS:
17    A.  That's what the document says.
18 BY MS. WEST:
19    Q.  Okay.
20    A.  It -- again, having trouble reading it,
21 but that's the gist of what I -- I read the gist
22 of that in the document.
23    Q.  Okay.  And Mr. Wade is also saying that
24 the detective told him that "the individual in

Page 140

1  the photograph was a bad guy and that we want to
2  keep him off the street."
3        Do you see that?
4    MR. COYNE:  Objection, foundation as to
5  Mr. Wade.
6        Go ahead.
7 BY THE WITNESS:
8    A.  I -- I think I see "a bad," but -- but
9  I -- it's -- I think that's what that says, yes.
10 BY MS. WEST:
11    Q.  Okay.  On down -- and I will read.  It
12 says, "The lady attorney agreed that he was a
13 bad guy, and that he did" -- I think it says
14 this -- "type of thing."
15        Do you see that?
16    A.  I do see those words.
17    Q.  Okay.  Do you have a recollection of
18 ever telling a witness that an offender was a
19 bad guy?
20    A.  I do not have a recollection of that.
21    Q.  Would you have ever singled out an
22 offender by photograph and told a witness that
23 that was a bad guy?
24    MR. COYNE:  Objection; form, foundation.

38  (Pages 137 to 140)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 141

1    MR. STARR: Form, foundation, speculation.
2  BY THE WITNESS:
3    A. Because I don't remember meeting with
4  or having a conversation with Emmett Wade, I
5  can't answer the question, but I -- I can't say,
6  you know, yes or no. But I -- I can say that I
7  am mindful of my obligations as a prosecutor,
8  and I act in accordance with those obligations.
9  BY MS. WEST:
10   Q. And by acting in accordance with those
11 obligations, you would not tell a witness that a
12 possible offender was a bad guy, correct?
13   MR. STARR: Form, foundation.
14   MR. COYNE: Objection; form, foundation.
15 Incomplete hypothetical. Requires the witness
16 to speculate.
17   MR. STARR: Join.
18 BY THE WITNESS:
19   A. I would again say that I am mindful of
20 my obligations as a prosecutor, and I would act
21 in accordance with those obligations. But I
22 can't -- the question as asked would require me
23 to speculate.
24 BY MS. WEST:

Page 142

1    Q. Based on your obligations, would it be
2  improper to tell a witness that an offender was
3  a bad guy?
4    MR. COYNE: Can I hear that question again,
5  Madam Court Reporter? I didn't hear the
6  beginning.
7        (Whereupon, the record was read
8         as requested.)
9    MR. COYNE: Objection; form, foundation.
10 Incomplete hypothetical.
11 BY THE WITNESS:
12   A. So it would -- it would call -- it is
13 still speculation. It depends on are we talking
14 about, you know, a witness during an
15 investigation stage? Are we talking about a
16 witness after there has been a verdict in a
17 trial? Are we talking about -- you know, I --
18 there is a lot of situations here.
19       And based on your question, because it
20 calls for speculation, I can't answer it. But I
21 again say that I'm mindful of my obligations as
22 a prosecutor, and I -- I would -- would act in
23 accordance with those ethical obligations.
24 BY MS. WEST:

Page 143

1    Q. Based on your ethical obligations while
2  you were on Felony Review or assistant state's
3  attorney, if you were interviewing a witness
4  prior to charges being brought, prior to that
5  witness identifying an offender, would you ever
6  single out a photograph of a possible offender
7  and tell that witness that that individual in
8  that specific photograph was a bad guy?
9    MR. COYNE: Objection; form, foundation.
10 Incomplete hypothetical. Requires the witness
11 to speculate.
12   MR. STARR: Join.
13     Go ahead.
14 BY THE WITNESS:
15   A. I again can't answer that based --
16 because it would require me to speculate. But
17 again, I am -- I am -- I am mindful of my
18 obligations as a -- obligations as a prosecutor.
19 I would act in accordance with those
20 obligations. I would not taint an
21 identification.
22   MS. WEST: I'm going to show you what we will
23 mark as Exhibit 7. All right. For the record,
24 this is the affidavit of Edward Cooper, which is

Page 144

1  Bates-stamped Fletcher 425 through 426.
2        (Whereupon, Walker Deposition
3         Exhibit No. 7 was marked for
4         identification.)
5  BY MS. WEST:
6    Q. Ms. Walker, do you see the document in
7  front of you?
8    A. I see that document. I do not remember
9  getting that ahead of time to read over. So I
10 have not read this document.
11   Q. Okay. I want to direct you to two
12 specific paragraphs, but I would also like to
13 give you the opportunity if you would like to
14 read the document in its entirety. Just let me
15 know.
16   A. I finished reading paragraph 7.
17   Q. Okay. Let me scroll down for you.
18   A. I finished reading what's on the
19 screen.
20   Q. Okay. Just a little bit left. Sorry
21 to --
22   A. I finished.
23   Q. Okay. Thank you. All right. I want
24 to direct your attention to paragraph 8 and 9

39 (Pages 141 to 144)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 145

1    specifically.
2        Based on the notes that we have
3    previously reviewed today at your deposition and
4    that you reviewed prior to the deposition in the
5    Felony Review folders, Edward Cooper positively
6    identified Mr. Fletcher in a photo array,
7    correct?
8        MR. STARR: Form, foundation, speculation.
9    BY THE WITNESS:
10       A. I believe that's what those Felony
11   Review documents stated in them.
12   BY MS. WEST:
13       Q. And the Felony Review documents also
14   indicated that Mr. Cooper positively identified
15   the offender, Mr. Fletcher, at the lineup,
16   correct?
17       MR. STARR: Same objections.
18   BY THE WITNESS:
19       A. I believe -- I believe that's what the
20   documents indicated -- or I believe that's what
21   was stated on the documents.
22   BY MS. WEST:
23       Q. Okay. Did -- based on Mr. Cooper's
24   statement in paragraph 8, do you have a

Page 146

1    recollection of him refusing to appear before
2    the grand jury?
3        A. I don't have a recollection of
4    speaking -- an independent recollection of
5    speaking with Mr. Cooper, and I don't have an
6    independent recollection of him refusing to go
7    to the grand jury.
8        Q. This might take care of one of the
9    grand jury documents I wanted to show you.
10       Do you know an individual -- assistant
11   state's attorney by the name of Jennifer
12   Gonzalez?
13       A. I know Jennifer Gonzalez who used to be
14   an ASA, yes.
15       Q. Okay. Let me ask you this just to
16   clear this up for me: Have you ever gone by any
17   other name other than Jennifer Walker?
18       A. No, that's -- no, I have not.
19       Q. Okay. And at the time that you were in
20   Felony Review in -- from 2001 to I believe you
21   said 2003, was there another assistant state's
22   attorney in Felony Review by the name of
23   Jennifer Walker?
24       A. I don't believe that to be the case.

Page 147

1    And just to clear one thing up, at the time I
2    was in Felony Review I was married. I am still
3    married, same guy. I never changed my name.
4    There are people who socially refer to me by my
5    husband's name, but that's not my legal name,
6    but I do respond to it if I am called that. So
7    just to be extra clear.
8        Q. No. Thank you. And any time --
9        A. And it's not Gonzalez. His name is not
10   Gonzalez.
11       Q. Thank you. At any time that you would
12   have documented work as an assistant state's
13   attorney, you would have noted Jennifer Walker?
14       A. I specifically did not change my name
15   so I did not have to spell his last name for
16   court reporters. I only use my name in -- for
17   work.
18       Q. Okay. Thank you. Based on the Felony
19   Review notes, Ms. Friend gave a positive
20   identification of the offender, Mr. Fletcher,
21   based off of a photo array, correct?
22       MR. STARR: Form, foundation, speculation.
23   BY THE WITNESS:
24       A. That is what the documents indicate.

Page 148

1    BY MS. WEST:
2        Q. And then based on the handwritten
3    statement that we reviewed earlier, Ms. Friend
4    again positively identified the offender,
5    Mr. Fletcher, in her handwritten statement?
6        A. That is --
7        MR. STARR: Same objections.
8        MR. COYNE: Objection, form.
9    BY THE WITNESS:
10       A. That's what's written in the statement.
11   BY MS. WEST:
12       Q. And again, based on the Felony Review
13   folder, Mr. Rogers identified positively the
14   offender, Mr. Fletcher, based on a photo array,
15   correct?
16       MR. STARR: Same objections.
17   BY THE WITNESS:
18       A. That is what -- what is written in the
19   document.
20   BY MS. WEST:
21       Q. And again, based on the handwritten
22   statement of Terry Rogers, he further identified
23   Mr. Fletcher as an offender as well?
24       MR. STARR: Same objections.

40 (Pages 145 to 148)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 149

1  BY THE WITNESS:
2      A.  That is what's written in the
3  statement.
4  BY MS. WEST:
5      Q.  Based on the Felony Review folder,
6  Mr. Cooper positively identified Mr. Fletcher --
7  strike that.  I already asked you that question.
8          Based on the Felony Review folder, can
9  you tell if you interviewed or someone
10 interviewed Mr. Wade more than one time?
11     MR. STARR:  Form, foundation, speculation.
12 BY THE WITNESS:
13     A.  Based on the Felony Review folder
14 documents, they indicate -- they seem to
15 indicate that Wade was interviewed on
16 March 16th, but there is -- there is two entries
17 indicating that Wade was interviewed on
18 March 16th, and there is one entry that just
19 says he was interviewed and does not give a
20 date.  So I'm not -- I'm not sure.
21 BY MS. WEST:
22     Q.  Thank you.
23     A.  According to the -- just looking on the
24 documents, because I still have no personal

Page 150

1  recollection of that.
2      Q.  Prior to today's deposition, did you
3  speak with any attorneys who indicated that they
4  represent Mr. Fletcher?
5      A.  I don't think so.
6      Q.  Meaning, prior to today's deposition,
7  did you speak with anyone from the law firm of
8  Loevy & Loevy?
9      A.  If I have spoken with anyone from
10 Loevy & Loevy, it has not been about this case,
11 I may have spoken to them about a different
12 case.  I'm not sure who all they represent, but
13 I don't remember speaking to anyone from
14 Loevy & Loevy about the -- the Fletcher case.
15     Q.  Prior to today's deposition, did you
16 have any conversations with an attorney Jennifer
17 Blagg about Mr. Fletcher's case and the fact
18 that you were being deposed?
19     MR. STARR:  Asked and answered.
20 BY THE WITNESS:
21     A.  I don't remember speaking with Jennifer
22 Blagg.
23 BY MS. WEST:
24     Q.  Other than having a conversation with

Page 151

1  your attorney, which I don't want to know about,
2  did you speak with anyone else in preparation
3  for your deposition today?
4      A.  I have had to tell multiple people that
5  I was being deposed, but I have not spoken about
6  the substance of my -- of my testimony with
7  anyone other than my attorney.
8      Q.  Are you aware of Mr. Fletcher's
9  criminal conviction being overturned?
10     MR. COYNE:  Jennifer, you can answer the
11 question provided you don't need to disclose our
12 attorney-client communications.
13     THE WITNESS:  I -- I have heard that, yes.
14 BY MS. WEST:
15     Q.  Okay.  And are you aware that
16 Mr. Fletcher sought a certificate of innocence
17 following his conviction being vacated?
18     MR. COYNE:  Same instruction.
19 BY THE WITNESS:
20     A.  I believe so.
21 BY MS. WEST:
22     Q.  Are you aware that the State's Attorney
23 Office took no -- no position at Mr. Fletcher's
24 hearing on his motion for a certificate of

Page 152

1  innocence?
2      A.  I did -- I'm unaware of what position
3  the State's Attorney's Office may or may not
4  have taken.
5      MS. WEST:  Okay.  I am done with the
6  exception of the grand jury issue.  And I would
7  have two documents to show her.  It would be the
8  grand jury testimony for Friend.  It would be
9  the grand jury testimony for Rogers.  If we
10 could go off the record, I will check my e-mail
11 to see if I got anything from my paralegal
12 really quick.
13          (Whereupon, a discussion was had
14          off the record.)
15     MS. WEST:  Everyone, I mean, I told this to
16 John earlier.  I don't know who all was on
17 there.
18     What I would like to do given the fact
19 that we -- I understand your position and the
20 fact that Ms. Walker doesn't feel comfortable
21 testifying about specific grand jury materials
22 without reviewing an order from the criminal
23 court granting release of those records.  What I
24 would like to do -- I know you guys are aware

41  (Pages 149 to 152)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 153

1    they have been produced in discovery.  I would
2    still like to make a record and go through and
3    show her the two specific exhibits I would like
4    to use relative to the grand jury.
5            And -- and, John, I understand that you
6    need to make your record as well as I do, and
7    this may be one of those situations where,
8    Ms. Walker, it's a little painful in the sense
9    that you are going to be instructed not to
10   answer, but I'm going to keep asking you a few
11   questions.  Okay?
12           John, anything you want to add?
13       MR. COYNE:  Just if there is any questions
14   about the grand jury transcripts, then the
15   witness will be instructed in the same manner as
16   she was instructed earlier, which you have
17   acknowledged, Allyson, which is that absent an
18   order, the appropriate order releasing the grand
19   jury transcripts from the Secrecy Act, she would
20   be instructed not to answer that question.
21       So if we could just enter a stipulation
22   rather than inconveniencing the witness
23   that's -- that's what I would propose, but that
24   would just be a stipulation.  It's obviously

Page 154

1    your call.
2        MS. WEST:  Let's do it this way.  What I
3    would prefer to do is at least mark the
4    exhibits, and then I will ask her generally if
5    she could -- will provide testimony relative to
6    Exhibit X and Exhibit Y, and then you can
7    instruct her not to answer, and we don't have to
8    go through the process of me asking each
9    question.
10           Is that fair?
11       MR. COYNE:  However you want to proceed is
12   fine.
13       MS. WEST:  Thank you.  Okay.
14           Ms. Court Reporter, what exhibit are we
15   on?
16       THE COURT REPORTER:  8.  And you did mark one
17   previously as Exhibit 6, I believe -- or 5.
18       MS. WEST:  You're right.  5.  Let's go there
19   first.  Exhibit 5, for the record, is the grand
20   jury testimony of Terry Rogers taken on May 9th,
21   2002.  It's Fletcher 7762 through Fletcher 7767.
22   BY MS. WEST:
23       **Q.  Ms. Walker, I think we got so far as**
24   **the fact that you did review the grand jury**

Page 155

1    **testimony of Terry Rogers in preparation for the**
2    **deposition today, correct?**
3        A.  I -- I read this exhibit.
4        **Q.  Okay.  All right.  All right.**
5            **Ms. Walker, in your review of**
6    **Mr. Roger's grand jury testimony, did you see**
7    **that Mr. Rogers positively identified**
8    **Mr. Fletcher as the offender involved in the**
9    **December 21st, 1990 shooting of Willie Sorrell?**
10       A.  I --
11       MR. COYNE:  Objection -- objection.
12   Jennifer, and I'm going to instruct you as
13   previously mentioned -- I thought we were going
14   to get a stipulation on this -- any questions
15   regarding witnesses, evidence, testimony in
16   front of the grand jury, my instruction is to
17   you, you ought not to answer those questions in
18   light of the admonition of the Grand Jury
19   Secrecy Act so that you do not face jeopardy for
20   violating that Act.
21           And that would be my similar
22   instruction to you regarding any questions
23   pertaining to witnesses, evidence, testimony, or
24   other matters pertaining to any grand jury

Page 156

1    proceeding absent a properly issued order from
2    Judge Reddick or other appropriate presiding
3    judge at the criminal court that these documents
4    and the grand jury testimony in this case has
5    been released from the application of the Grand
6    Jury Secrecy Act.
7            Do you understand my instruction?
8        THE WITNESS:  I do.  Thank you.
9        MR. HOLMES:  Same -- same guidance and
10   instruction on behalf of the State's Attorney's
11   Office.
12   BY MS. WEST:
13       **Q.  Ms. Walker, based on the instruction**
14   **from your attorney, as well as Mr. Holmes, can**
15   **you answer my question?**
16       A.  I cannot.
17       MS. WEST:  All right.  Let's mark Friend's
18   grand jury testimony as Exhibit 8.
19           (Whereupon, Walker Deposition
20           Exhibit No. 8 was marked for
21           identification.)
22   BY MS. WEST:
23       **Q.  Ms. Walker, did you have -- oh, I'm**
24   **sorry.  For the record, the exhibit is**

42  (Pages 153 to 156)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 157

1  Ms. Friend's testimony before the grand jury on
2  May 1st, 2002, which is Bates 474 -- Fletcher
3  474 through 489.
4        MR. COYNE:  And, Allyson, this is 8 or 9?
5        MS. WEST:  8.
6  BY MS. WEST:
7        Q.  Ms. Walker, did you have an opportunity
8  to review Ms. Friend's grand jury testimony
9  prior to the deposition today?
10       A.  I did have the opportunity to review
11  Exhibit No. 8.
12       Q.  And based on your review of
13  Ms. Friend's testimony, does it appear that
14  Ms. Friend identified Mr. Fletcher as one of the
15  offenders involved in the shooting of Willie
16  Sorrell on 19- -- I'm sorry -- on December 21st,
17  1990?
18       MR. COYNE:  Objection.  And same instruction
19  to you as previously given as to the prior
20  exhibit, Jennifer.  If you need me to repeat it,
21  I will.
22       MR. HOLMES:  Join.
23       THE WITNESS:  I'm good, guys.  Thanks.
24  BY THE WITNESS:

Page 158

1        A.  Based on the Grand Jury Secrecy Act and
2  the fact that there has been no order presented
3  showing that this has been released, I do not --
4  am not able to answer that question.
5        MS. WEST:  Thank you.
6        Ms. Walker, those are all the questions
7  that I have for you.  I am just going to put on
8  the record -- and John, I know you need to put a
9  response on that I am going to reserve the right
10  to redepose Ms. Walker based on those two
11  exhibits we marked as Exhibit 6 [sic] and
12  Exhibit 8.
13       And, John, I know you object, so if you
14  would like to put your objection on the record.
15       MR. COYNE:  Yeah.  And on behalf of the
16  witness, we object to any continued -- or
17  reproduction of this witness for a continued
18  deposition.  Any predicate for answering these
19  questions, i.e. disclosure of the requisite
20  order to ask those questions of the witness
21  without putting the witness in jeopardy, ought
22  to have been, number one, possessed and, number
23  two, disclosed to all necessary parties.
24       Since that was not done, we would

Page 159

1  object to any reproduction of the witness for
2  deposition.  Thanks.  That's it.
3        MR. BURNS:  I have no questions.
4        MR. STARR:  Can we go off the record for just
5  two minutes?  I just need two minutes.
6        MR. COYNE:  Sure.
7        MR. STARR:  Thanks.
8        (Whereupon, a short break was
9        taken.)
10              EXAMINATION
11  BY MR. STARR:
12       Q.  Good afternoon, Ms. Walker.  My name is
13  Sean Starr, and I represent the Plaintiff,
14  Mr. Fletcher, in this matter.  I'm going to be
15  jumping around here a little bit, but I will do
16  my best to get us through the day and get you
17  out of here as efficiently as possible.
18       I just want to talk a little bit -- ask
19  you a few questions about your general practice
20  as a Felony Review State's Attorney.
21       You said it was from -- you were in
22  Felony Review from 2001 to 2003; is that
23  correct?
24       A.  The -- towards the end of '01 to kind

Page 160

1  of the early -- late summer, early fall of '03.
2        Q.  Okay.  And I wanted to just ask you
3  about what your general practice is, and if your
4  answer is -- at any point departs from your
5  general practices, you know, if you could
6  indicate that for me.  I don't think that's
7  going to be the case, but please indicate that,
8  if your -- if your answer was in departure from
9  what you would normally do during your tenure as
10  a Felony Review State's Attorney.
11       Ms. West asked you about what you would
12  normally do when you first were assigned a case
13  in Felony Review.
14       Do you remember that question --
15       A.  Yes.
16       Q.  -- in the morning?
17       Okay.  I think you mentioned you would
18  read -- you would read any police reports
19  that -- that you could get your hands on; is
20  that correct?
21       A.  Correct.
22       Q.  Would you specifically ask the police
23  that were investigating the underlying crime if
24  there were any police reports?

43  (Pages 157 to 160)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 161

1    A.  Generally, they would give me the
2    reports that they had.  I didn't have to ask.
3        Q.  All right.  Do you ever -- did you ever
4    have a circumstance where you were assigned a
5    case, and you were not given any police reports
6    by the police investigating the crime, and you
7    asked for the reports or asked if there were
8    reports?
9        MR. COYNE:  Objection, foundation.  Go ahead.
10   BY THE WITNESS:
11       A.  I don't have a specific recollection of
12   that.
13   BY MR. STARR:
14       Q.  Okay.  Would you make an effort to
15   determine what police reports exist at the time
16   you're assigned?
17       A.  If it was -- for your questions, I'm
18   assuming that the -- the case or the
19   investigation would be, you know, a personal
20   case, and I was at the police station doing
21   this.
22          On a phone case, we wouldn't worry
23   about -- like, we wouldn't have access to the
24   police reports, because we weren't physically

Page 162

1    there.  And typically, we would not get the
2    police reports for a phone case.  But for the --
3    for an in-person case, I was typically given the
4    police reports.  I would ask -- I may ask if
5    there were any others, but typically, I was just
6    given reports to read.
7        Q.  Okay.  And I am -- I am going -- my
8    question do -- strike that.
9           My questions are going to be just about
10   personal cases where you are present --
11       A.  Okay.
12       Q.  -- at an area or a station, not about
13   phone cases.  Okay?
14       A.  Okay.
15       Q.  Excellent.
16          Are you familiar with a Chicago Police
17   Department report called the General Progress
18   Report?
19       MR. BURNS:  Objection, foundation.
20   BY THE WITNESS:
21       A.  Yes.  I have seen GPR reports.
22   BY MR. STARR:
23       Q.  What's your understanding of what a
24   GPR -- the purpose of what a GPR is?

Page 163

1        MR. BURNS:  Objection, foundation.
2    BY THE WITNESS:
3        A.  Typically, in my experience the GPR
4    is -- report is where the detective or the
5    officer is making notes.  They are typically
6    handwritten -- when I was on Felony Review, they
7    were typically handwritten.  It was -- those
8    reports tended to be a little less formal and a
9    little more note-ish than a sup -- than a
10   typewritten sup report that was in, you know,
11   complete sentences.
12   BY MR. STARR:
13       Q.  And when you were initially assigned to
14   a case and you were given police reports by the
15   detective investigating the case, would you also
16   receive GPRs on occasion?
17       MR. COYNE:  Objection, foundation.  Just to
18   spare my objections, these are all general
19   progress questions -- general practice questions
20   unless indicated otherwise?
21       MR. STARR:  Yes.
22       MR. COYNE:  Okay.  That's -- I will keep
23   still then.  Thanks.
24   BY THE WITNESS:

Page 164

1        A.  I would -- I believe I would receive
2    them sometimes, but not necessarily every time.
3    It just depended.
4    BY MR. STARR:
5        Q.  Would you ever as a matter of general
6    practice ask the detectives if there were any
7    general progress reports if you did not receive
8    them at the initial time when you got the rest
9    of the reports?
10       A.  I don't specifically recall asking for
11   them.
12       Q.  Okay.  Would you ever receive any
13   police -- any notes taken by police in any other
14   format than a General Progress Report?
15       A.  I don't remember that.
16       Q.  In addition to police reports, would
17   you ask the police if they had interviewed the
18   suspects or witnesses in any given crime?
19       A.  It was my practice to ask if there were
20   witnesses and if the witnesses had been spoken
21   to by the police.
22       Q.  Was it also your practice to ask if the
23   witnesses had, in fact, been spoken to by police
24   what they had told the police?

44  (Pages 161 to 164)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 165

1  A.  Yes.  That information was typically
2  shared with me.
3      Q.  All right.  And if it wasn't shared
4  with you, would you seek it out?
5      A.  Typically, I would ask, yes.
6      Q.  Is it correct to characterize that as a
7  Felony Review, you would want to know as much as
8  possible in terms of what the police had learned
9  prior to your assignment?
10     A.  Well, we didn't typically learn
11 anything prior to being assigned, but once we
12 were assigned, it was our goal to gather
13 information.
14     Q.  Okay.  And maybe I poorly phrased that
15 question.
16         But is it correct to characterize your
17 general practice as a Felony Review State's
18 Attorney that when you were assigned a case, you
19 would attempt to learn as much about the
20 investigation that had occurred prior to your
21 assignment once you were assigned?
22     A.  Yes.
23     Q.  Okay.  Under what circumstances as a
24 Cook County State's Attorney -- Felony Review

Page 166

1  State's Attorney would you interview witnesses
2  independent of the police?
3      MR. COYNE:  Objection, foundation.
4  BY THE WITNESS:
5      A.  Well, I would -- I would speak to them
6  when -- without the police present to find out
7  how they had been treated by the police, but I
8  would -- but I would never speak to a witness by
9  myself -- like completely by myself.  There
10 would just be a period in talking to them where
11 I would speak to them alone -- you know, alone
12 without the police there.
13 BY MR. STARR:
14     Q.  Okay.  Is it your testimony that you
15 would never independently interview a witness or
16 a suspect about an underlying crime separate and
17 apart from the police with the exception of
18 asking them about how the police treated them?
19     MR. COYNE:  Objection; form, foundation.
20 Mischaracterizes testimony.
21         Go ahead.
22 BY THE WITNESS:
23     A.  I can't ever recall an incident where I
24 spoke to a witness or a defendant on something I

Page 167

1  was working on with Felony Review without police
2  officers there for any part of that
3  conversation.
4  BY MR. STARR:
5      Q.  And was there a reason why you would
6  refrain from doing that?
7      MR. COYNE:  Objection.  Jennifer, I'm
8  instructing you on the work-product privilege.
9  Once again, if in order to answer that question
10 you would need to divulge your mental
11 impressions -- which include your opinions about
12 the evidence, your strategies, your
13 decision-making as a prosecutor -- if in order
14 to answer counsel's question you would need to
15 disclose those mental impressions with respect
16 to a specific case, then I would instruct you
17 not to answer the question.  If you can answer
18 the question without doing so, then you may
19 proceed and answer.
20     MR. HOLMES:  Same guidance and same
21 instruction on behalf of the State's Attorney's
22 Office on the ground of deliberate process
23 privilege.
24 BY THE WITNESS:

Page 168

1      A.  Thank you.
2         Could you repeat the question, please?
3  BY MR. STARR:
4      Q.  Yeah.
5         Was there a reason why as a Cook County
6  State's Attorney you would refrain from
7  interviewing witnesses or suspects outside the
8  presence of police personnel with the -- the one
9  exception being the one you described, where you
10 would ask them how they were treated by the
11 please?
12     MR. COYNE:  Same instruction.
13     MR. HOLMES:  Same guidance and instruction.
14 BY THE WITNESS:
15     A.  There is -- there is a -- there's a
16 couple reasons.  One reason when it comes to
17 interviewing the defendant is -- is safety.
18 One -- there are -- it is -- talking with
19 witnesses and defendants -- or potential
20 defendants, also, it's good to have another
21 person there to help listen and -- and ask the
22 questions.  You know, when you're talking and
23 listening, that can get -- that can -- that can
24 be a lot.

45 (Pages 165 to 168)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 169

1      So it's good to have some- -- someone
2   else there as well. And there is probably some
3   more reasons. I just can't think of them all
4   right now.
5   BY MR. STARR:
6      Q. Okay. Did you ever have, in your time
7   as a Felony Review State's Attorney, an occasion
8   to interview a witness where there was also a
9   defense counsel present for that interview?
10     A. I can't remember that. I don't recall
11  that situation. I don't -- I just -- I don't
12  remember that.
13     Q. Do you -- based on your experience, is
14  that something that would be allowed under the
15  policies and practices of the State's Attorney
16  Office as you understood it?
17     MR. COYNE: Objection; form, foundation.
18  Requires speculation.
19     MR. HOLMES: Also, I object on grounds of
20  work product. And if you would require the
21  witness to disclose the work product of the
22  State's Attorney's Office in responding to the
23  question, I would instruct the witness not to
24  answer.

Page 170

1      MR. COYNE: Jennifer, just to clarify that as
2   far as work product, these -- as counsel
3   indicated earlier, these are general practice
4   questions. Work product is case specific. So
5   if you would need to divulge any mental
6   impressions or -- with respect to your work as a
7   prosecutor pertaining to a specific case, then I
8   would instruct you not to answer.
9      In general, you can answer questions
10  for work product, as long as it's not pertaining
11  a particular case.
12     Do you understand?
13  BY THE WITNESS:
14     A. I do. Thank you.
15     Could you repeat the question, please?
16  BY MR. STARR:
17     Q. Yeah. And I am going to rephrase it
18  slightly maybe to avoid some of these
19  objections.
20     Were you aware of any prohibitions as a
21  State's Attorney from interviewing witnesses in
22  the presence of the defense counsel?
23     MR. COYNE: Objection; form, foundation.
24     Go ahead.

Page 171

1   BY THE WITNESS:
2      A. I don't a -- I don't remember a
3   specific prohibition. I don't recall that.
4   BY MR. STARR:
5      Q. But it's correct to say you also don't
6   recall interviewing witnesses in the presence of
7   defense counsel, correct?
8      A. I -- I can't -- I cannot recall doing
9   so. That's -- that's also correct.
10     Q. As a Felony Review State's Attorney,
11  were you allowed to make witnesses promises?
12     MR. COYNE: Objection; form, foundation.
13  Incomplete hypothetical.
14  BY THE WITNESS:
15     A. I don't quite understand what kind of
16  promise -- what you mean by "promise."
17  BY MR. STARR:
18     Q. Well, I mean it in the most general
19  sense. I'm going to ask you some more specific
20  questions after this, but I just want to know if
21  you had -- in your experience as a State's
22  Attorney, were you allowed to make witnesses
23  promises during the course of your interviews
24  with them?

Page 172

1      MR. COYNE: Objection; form, foundation.
2      MR. HOLMES: Objection on grounds of
3   deliberate process privilege as to the State's
4   Attorney Office.
5   BY THE WITNESS:
6      A. I'm having trouble understanding what
7   you mean by promises.
8   BY MR. STARR:
9      Q. Okay. Let me ask another question
10  maybe more specifically.
11     As a Cook County State's Attorney, were
12  you allowed to make promises to witnesses in
13  exchange for their statements?
14     MR. COYNE: Objection; form, foundation.
15  Incomplete hypothetical.
16     MR. HOLMES: Deliberative process privilege
17  objection on behalf of the State's Attorney's
18  Office.
19  BY THE WITNESS:
20     A. I guess my question would be, I don't
21  understand when you say promises. Promises
22  about what?
23  BY MR. STARR:
24     Q. Promises of any kind.

46 (Pages 169 to 172)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 173

1    MR. HOLMES:  Same objection.
2    MR. COYNE:  Same objections.
3  BY THE WITNESS:
4    A.  I'm sorry.  I'm just having trouble
5  understanding.  Make promises... um...
6    MR. COYNE:  Jennifer, you are permitted to
7  answer that you don't understand the question,
8  if that's the case.
9  BY THE WITNESS:
10   A.  I'm really not understanding the --
11 BY MR. STARR:
12   Q.  Okay.
13   A.  -- when you say "promises," what that
14 means.
15   Q.  Okay.  As a Cook County State's
16 Attorney, were you allowed to make promises
17 regarding use immunity to witnesses in exchange
18 for their statement?
19   MR. COYNE:  Objection to foundation and
20 speculation.
21     Go ahead.
22   MR. HOLMES:  Deliberative process privilege
23 objection on behalf of the State's Attorney's
24 Office.

Page 174

1  BY THE WITNESS:
2    A.  Generally speaking, I know that use
3  immunity is something -- and -- that I as a
4  Felony Review assistant would not have been able
5  to do -- to make.  That's something that happens
6  at a level far above mine.
7  BY MR. STARR:
8    Q.  What about can you make a promise
9  regarding payment to a witness in exchange for
10 their statement?
11   MR. COYNE:  Objection; form, foundation.
12 Incomplete hypothetical.  Requires the witness
13 to speculate.
14 BY THE WITNESS:
15   A.  I am -- I'm not sure exactly what kind
16 of payment you would be talking about.  That's
17 difficult to answer based off of -- of
18 speculation.  There are -- you know, I am aware
19 of my ethical obligations as a prosecutor, and I
20 would act within those -- within those
21 obligations.  I -- I'm not sure what you mean by
22 "payment."
23 BY MR. STARR:
24   Q.  I mean payment, monetary payment.

Page 175

1    MR. COYNE:  Same objections.
2  BY MR. STARR:
3    Q.  Are you allowed to make a promise about
4  monetary payment in exchange for a statement
5  from a witness?
6    MR. COYNE:  Same objections.
7  BY THE WITNESS:
8    A.  If you're talking about a quid pro quo
9  payment -- I know that there have been witnesses
10 who have received relocation assistance by the
11 State's Attorney's Office.  I don't have a
12 specific recollection of being a part of that
13 kind of situation where -- where I have been a
14 part of relocation.  I know there has been -- I
15 have heard conversation about it, but I don't
16 know that I have ever sought relocation for a
17 witness.  Other than that, I don't -- I don't
18 know what you're talking about with payment.
19 BY MR. STARR:
20   Q.  Or do you know whether or not as a Cook
21 County State's Attorney you were allowed to make
22 promises regarding criminal charges -- pending
23 criminal charges of a witness in exchange for
24 their statement in an unrelated case?

Page 176

1    MR. COYNE:  Objection; form, foundation.
2  Incomplete hypothetical.  Requires the witness
3  to speculate.
4      Go ahead.
5    MR. HOLMES:  Object on grounds of deliberate
6  process as to the State's Attorney's Office.
7  BY THE WITNESS:
8    A.  Are you talking about when I was on
9  Felony Review or throughout my entire experience
10 in the office?
11 BY MR. STARR:
12   Q.  I am talking about when you were on
13 Felony Review.
14   A.  I cannot recall a time where I would
15 make -- where I made a promise to a witness
16 about criminal charges.  I -- your question is
17 very broad, and -- and I think it would require
18 me to speculate.  And, you know, again, I'm
19 mindful of my obligations as a prosecutor, and I
20 would -- and I seek to comply with my ethical
21 obligations.
22   Q.  Well, I'm just asking whether or not --
23 I'm going to rephrase it and hopefully this will
24 help.

47 (Pages 173 to 176)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 177

1    Do you know, were there any
2  prohibitions in place in the Cook County State's
3  Attorney's Office preventing you from promising
4  a reduced charge in a pending criminal case for
5  a witness in exchange for their statement in an
6  unrelated investigation?
7    MR. COYNE: Objection; form, foundation.
8  Incomplete hypothetical. It requires
9  speculation.
10    Go ahead.
11  BY THE WITNESS:
12    A. Again, I -- could you ask that question
13  one more time, please?
14    MR. STARR: Could we just have it read back?
15    (Whereupon, the record was read
16        as requested.)
17  BY THE WITNESS:
18    A. So I can't remember that
19  conversation -- a conversation about -- I was on
20  Felony Review once. It was 22 years ago. I
21  can't -- there is things about being on Felony
22  Review I cannot remember.
23    That being said, I am mindful of my
24  obligations as a prosecutor, and I -- I work

Page 178

1  within those obligations and -- and I -- I don't
2  ever remember doing that. And your question is
3  pretty broad, and it's difficult to answer.
4    MR. COYNE: Just for the record -- the answer
5  appears to be no, just for the record.
6    MR. STARR: I mean, I would take that answer
7  if I got it, Jim. But I don't think I got it.
8    MR. COYNE: All right. Yeah.
9  BY MR. STARR:
10    Q. Do you know in this case whether any
11  promises were made to any of the witnesses
12  regarding either use immunity, payment, monetary
13  payment, or reduction in pending charges in an
14  unrelated criminal matter?
15    A. I am --
16    MR. COYNE: Objection; form, foundation. Go
17  ahead.
18    MS. WEST: Form and foundation.
19    MR. COYNE: Objection; form, foundation.
20    Go ahead.
21    MS. WEST: Join.
22  BY THE WITNESS:
23    A. I'm unaware of any of those things.
24  BY MR. STARR:

Page 179

1    Q. All right. You throughout this
2  deposition have referred to being mindful of
3  your obligations as a prosecutor.
4    What do you mean by that?
5    A. There is ethical obligations that a --
6  that a prosecutor has. There -- there -- the
7  golden rule of being a prosecutor is to do the
8  right thing. My -- and that -- and that's what
9  I seek to do as a prosecutor is to do the right
10  thing.
11    Q. When you say "the golden rule is to do
12  the right thing," are you familiar with the --
13  the ABA standard of -- regarding prosecutors to
14  seek -- the duty to seek justice and not merely
15  convict?
16    A. Correct.
17    Q. Is that what you're referring to?
18    A. Yes.
19    Q. Okay. Excellent.
20    And so as a Cook County State's
21  Attorney working in the felony -- felony review
22  division or Felony Review unit, amongst the
23  things that you were obligated ethically to do
24  and understand, were you familiar with your

Page 180

1  obligations under Brady v. Maryland?
2    A. Yes.
3    Q. And you are -- are you familiar with
4  the case of Brady v. Maryland, generally
5  speaking?
6    A. Generally speaking, yes.
7    Q. And what is your general understanding
8  of what Brady v. Maryland -- what kind of
9  obligations it imposes upon State prosecutors?
10    A. That there --
11    MR. HOLMES: I'm just going to -- I'm sorry,
12  ASA Walker. I'm just going to object on behalf
13  of the State's Attorney's Office that Ms. Walker
14  is not here today as a 26(a)(2) expert witness.
15    And with that, the witness can answer.
16  BY THE WITNESS:
17    A. Generally speaking, the idea of Brady
18  is that prosecutors have the duty to bring forth
19  any evidence that may negate guilt. It doesn't
20  mean -- if it's -- even if it's evidence that
21  isn't strictly required to be produced under
22  the -- under discovery, you still have an
23  obligation to produce those kinds of materials,
24  even if it's -- it's not -- even if the evidence

48 (Pages 177 to 180)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

| Page 181 | Page 183 |
|---|---|
| 1  may not be admissible, you still -- for the<br>2  defense to introduce, you still have to provide<br>3  it.<br>4  BY MR. STARR:<br>5      Q.  And what -- how does that apply to --<br>6  as far as your experience, how did that apply to<br>7  a Felony Review State's Attorney?<br>8      MR. HOLMES:  I'm just going to -- Sean, if I<br>9  could, just a standing objection --<br>10     MR. COYNE:  Incomplete hypothetical -- hang<br>11  on.  Let me just finish.<br>12         Objection; form, foundation, incomplete<br>13  hypothetical.<br>14         And, Jennifer, to the extent that you<br>15  would need to reveal your decision-making<br>16  processes as to any particular case, I would<br>17  instruct you not to answer the question,<br>18  pursuant to Federal Rule 26 of the work-product<br>19  doctrine.  Thank you.<br>20     MR. HOLMES:  And just a standing objection,<br>21  Sean, to this line of questions to the extent<br>22  they seek to elicit expert testimony of ASA<br>23  Walker.  So it's a 26(a)(2) objection.  Also<br>24  objection on deliberative process grounds on | 1      MR. HOLMES:  Deliberate process objection on<br>2  behalf of the Office.<br>3  BY THE WITNESS:<br>4      A.  Your question is very broad.  One --<br>5  one way that it would apply is that when<br>6  interviewing a witness, you write down -- or<br>7  you -- you don't write down.  You record, you<br>8  take, you -- you -- you ex-- -- you -- all the<br>9  things the witness says, not just -- not just<br>10  the evidence or the statements that point<br>11  towards the suspect -- the current suspect, but<br>12  all -- everything that the witness says, and<br>13  that that complete information would be tendered<br>14  over to the defense.  That would be an example<br>15  of -- of what an ASA on Felony Review should do<br>16  under Brady.<br>17  BY MR. STARR:<br>18     Q.  Okay.  As a -- strike that.<br>19         You understood that Brady requires<br>20  State's Attorneys to turn over any exculpatory<br>21  evidence that they learn in the course of their<br>22  assignment to a case, correct?<br>23     A.  Correct.<br>24     Q.  And you understood that Brady required |

| Page 182 | Page 184 |
|---|---|
| 1  behalf of the Office.<br>2      MR. STARR:  I'm good with standing<br>3  objections.<br>4  BY THE WITNESS:<br>5      A.  Could you ask the question again,<br>6  please?<br>7  BY MR. STARR:<br>8      Q.  Sure.<br>9         What -- generally speaking, what was<br>10  your understanding -- strike that.<br>11         You just testified that your<br>12  understanding generally about your obligations<br>13  as a State prosecutor on Brady were that you had<br>14  to disclose any evidence that may -- I think you<br>15  said "may negate guilt," correct?<br>16     A.  Correct.<br>17     Q.  And how did that apply to your time as<br>18  a Felony Review State's Attorney?<br>19         What were your obligations as a Felony<br>20  Review State's Attorney under Brady?<br>21     MR. COYNE:  Same objection.  Foundation,<br>22  form, incomplete hypothetical, and same<br>23  instruction as to Rule 26.<br>24         Go ahead. | 1  State's Attorneys to turn over any evidence that<br>2  may impeach State witnesses, correct?<br>3      A.  Correct.<br>4      Q.  And you understood that Brady requires<br>5  that prosecutors refrain from or prevent the<br>6  destruction of material evidence, correct?<br>7      A.  Correct.<br>8      Q.  Okay.  And so as a Felony Review<br>9  State's Attorney, if you learned about any<br>10  exculpatory evidence in any case that you were<br>11  assigned, you would have disclosed that<br>12  evidence, correct?<br>13     MR. COYNE:  Objection; form, foundation,<br>14  incomplete hypothetical.<br>15  BY THE WITNESS:<br>16     A.  Could you say the question again,<br>17  please?<br>18  BY MR. STARR:<br>19     Q.  Sure.<br>20         As a -- during your tenure as a Cook<br>21  County State's Attorney, if you were assigned to<br>22  a case and you discovered exculpatory evidence,<br>23  you would disclose that evidence, correct?<br>24     MR. COYNE:  Same objections.  And same |

49 (Pages 181 to 184)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

---

Page 185

1  instruction, Jennifer.  As long as you're not
2  divulging your decision-making and your opinions
3  about evidence, you can answer the question.
4  BY THE WITNESS:
5      A.  Thank you.
6          You would -- so as a Felony Review
7  State's Attorney, I would -- I would, for lack
8  of a better word, "capture" that information.
9  It would remain in the file.  It would not be --
10 you know, since I -- I'm not the trial ASA, so I
11 wouldn't be actually handing it over to the
12 defense, but it would certainly be my obligation
13 to -- to capture that evidence.
14 BY MR. STARR:
15     Q.  Would it be your obligation to inform a
16 supervisor about becoming aware of that
17 evidence?
18     MR. COYNE:  Objection; form, foundation.
19 BY THE WITNESS:
20     A.  It would depend on -- it would depend.
21 BY MR. STARR:
22     Q.  Okay.
23     A.  I wouldn't necessarily call my
24 supervisor for every -- every little thing.

---

Page 186

1  Like, it may be -- I'm sorry.
2          I have -- something popped up on my
3  computer that I need to click to postpone for a
4  notific- -- software update.  Sorry.
5          It's not something I would hide from my
6  supervisor, but I may not pick up the phone
7  directly after learning it and notify my
8  supervisor either.
9      Q.  Okay.  What do you -- how -- strike
10 that.
11         What do you mean when you say that you
12 would capture that exculpatory evidence in the
13 file?  What does that mean?
14     A.  It means it -- it may be written down.
15 It may be -- if I know that it's -- it's in a
16 police report, it may -- it may be something
17 that I'm just mentally aware of that it's in the
18 police report.  It may not necessarily mean --
19 I'm -- I'm not necessarily going to -- I, as a
20 Felony Review ASA, would not necessarily write
21 my own memo about it.  It would just depend.
22 There is -- it would depend.
23     Q.  Okay.  And if you became aware of
24 exculpatory evidence on a case you were assigned

---

Page 187

1  to, after the end of your time working on that
2  case, would you still have that obligation to
3  capture that evidence in some format?
4      MR. COYNE:  Objection; foundation, incomplete
5  hypothetical.  Requires speculation.
6          Go ahead.  And form.
7      MR. HOLMES:  Standing -- standing 26(a)(2)
8  objection.
9  BY THE WITNESS:
10     A.  Could you repeat the question, please?
11 BY MR. STARR:
12     Q.  Yeah.  Maybe -- maybe I didn't phrase
13 it that well.
14         I'm just wondering -- you know, you're
15 working as a Felony Review ASA on a case.
16         At some point you hand that case off to
17 a trial attorney, correct?
18     A.  Yes.
19     Q.  Okay.  So under that circumstance, if
20 you had learned about exculpatory evidence after
21 you had handed off the case to another State's
22 Attorney, would you still have an obligation to
23 capture that evidence and to document that in
24 some way?

---

Page 188

1      MR. COYNE:  Same objection.
2      MR. HOLMES:  Same 26(a)(2) objection.
3  BY THE WITNESS:
4      A.  If I no longer am working on the file,
5  I'm not sure how I would have -- how I would
6  learn of that evidence.  It would cause --
7  it's -- as -- as an ASA, if I learned about a
8  case that I was handling with that evidence,
9  then yes.  If I wasn't handling the case, I may
10 not understand that it is exculpatory, because
11 the case isn't top of mind.  I -- I -- I don't
12 understand what you're asking me.
13     MR. COYNE:  You can lead with that.  Yeah.
14 By the way, Jennifer, you can lead with "I don't
15 understand what you're asking" just to -- just
16 to make that suggestion.  Let me just make that
17 suggestion, if you just lead with "I don't
18 understand what you're asking."  That's just a
19 suggestion I think everyone would appreciate.
20         Go ahead.
21 BY MR. STARR:
22     Q.  As a State's Attorney, does your
23 ethical obligation under Brady stop at some
24 point?

---

50 (Pages 185 to 188)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 189

1     MR. HOLMES:  26(a)(2) objection.
2     MR. COYNE:  Yeah.  Objection, foundation and
3  form.
4  BY THE WITNESS:
5     A.  I believe -- it's my understanding that
6  Brady applies to prosecutors.  I will admit I
7  have not read Brady for a bit.  I understand the
8  generalities.  I'm not -- I don't feel qualified
9  to -- to answer specific questions like that.
10  BY MR. STARR:
11     Q.  Well, then let me ask you a different
12  question.
13        During your testimony as a Felony
14  Review ASA, did you adhere to your ethical and
15  legal obligations under Brady?
16     A.  Yes.
17     Q.  Okay.  Are you aware that the Illinois
18  Rules of Professional Conduct have analogues to
19  Brady, correct?
20     A.  Yes.
21     Q.  And that under Illinois Professional
22  Rule of Conduct 3.8, you have a -- the
23  prosecutor has a special responsibility to make
24  a timely disclosure to the defense of all

Page 190

1  evidence or information known to the prosecutor
2  that tends to negate the guilt of the accused or
3  mitigates the offense.
4        Do you understand that?
5     A.  Yes.
6     Q.  Okay.  And did you adhere to that
7  principal during your testimony as a Felony
8  Review State's Attorney?
9     A.  Yes.
10     Q.  Okay.  And did you follow these rules,
11  Brady and local rules of Illinois, during your
12  entire time at the State's Attorney's Office?
13     A.  I -- I certainly believe so, yes.
14     Q.  Okay.  And you are aware that -- you
15  know, that not following your Brady obligations
16  can lead to discipline, suspension, disbarment,
17  and other punishments, correct?
18     A.  Correct.
19     Q.  Okay.  Do you recall receiving any
20  training on Brady when you first went into
21  Felony Review?
22     A.  It was 22 years ago.  I know we
23  received training.  I do not specifically
24  remember as I sit here today if it -- if that

Page 191

1  training included Brady training.
2     Q.  Do you recall having training on Brady
3  at some point in your career as a State's
4  Attorney?
5     A.  Yes.
6     Q.  Okay.  And did you learn about Brady in
7  law school?
8     A.  That was a really long time ago and I
9  can't -- I don't know.  Probably.
10     Q.  Did you ever take any continuing
11  education on Brady?
12     A.  I may have, but I can't -- I don't
13  remember, because I'm old enough to have been a
14  lawyer before CLE was required.  So I
15  don't know.  I don't know as -- I can't
16  remember.
17     Q.  But as a general proposition you're
18  familiar with Brady, and you believe that you
19  adhered to its principles during your time as a
20  State's Attorney, correct?
21     A.  Correct.
22     Q.  Are you aware of any instance in which
23  you withheld exculpatory evidence on a case you
24  were assigned to?

Page 192

1     A.  I am --
2     MR. COYNE:  Objection, foundation.  Go ahead.
3  BY THE WITNESS:
4     A.  I'm not aware of that.
5  BY MR. STARR:
6     Q.  Are you aware of any instance where
7  another prosecutor withheld any exculpatory
8  evidence in a case that the Cook County State's
9  Attorney was prosecuting?
10     MR. COYNE:  Objection.
11     A.  I am not -- I am not aware of that.
12     THE COURT REPORTER:  I'm sorry.  What was the
13  objection?
14     MR. COYNE:  Foundation.
15  BY THE WITNESS:
16     A.  And my answer is, I'm not aware of
17  that.
18  BY MR. STARR:
19     Q.  Okay.  I want to pivot a little bit
20  here and talk about the extent to which a
21  State's Attorney would typically be involved in
22  a law enforcement investigation.  And I want to
23  be really clear here.  When I say
24  investigations, I'm talking about prosecutors

51  (Pages 189 to 192)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 193

1    leaving their prosecutory role and acting as
2    investigators in a criminal investigation.
3        Is it fair to say that in 2002
4    prosecutors within the Cook County State's
5    Attorney's Office did not typically investigate
6    crimes independent of the police agencies that
7    brought them cases?
8        MR. COYNE:  Objection, form and foundation.
9        MR. HOLMES:  30(b)(6) and 26(a)(2) objection
10   on behalf of the Office, that the witness is
11   here as a fact witness and not as a 30(b)(6) or
12   expert witness.
13   BY THE WITNESS:
14       A.  Could you repeat the question, please?
15   BY MR. STARR:
16       Q.  Certainly.
17       Is it fair to say that in 2002
18   prosecutors within the Cook County State's
19   Attorney's Office did not typically investigate
20   crimes independent of the police agencies that
21   brought them cases?
22       MR. HOLMES:  Same objections.
23   BY THE WITNESS:
24       A.  I would say that is correct.

Page 194

1    BY MR. STARR:
2        Q.  And was that your understanding of the
3    Cook County State's Attorney's practice, to not
4    independently investigate crimes?
5        MR. HOLMES:  Same objections.
6    BY THE WITNESS:
7        A.  Yes, that is my under- -- that was my
8    understanding.
9    BY MR. STARR:
10       Q.  In your experience, was it fair to say
11   that the Cook County State's Attorney's Office
12   typically relied on the information that the
13   police departments brought them about the cases
14   that they were assigned to?
15       MR. COYNE:  Objection, form and foundation.
16       MS. WEST:  Join.
17       MR. HOLMES:  30(b)(6) and 26(a)(2)
18   objections.
19   BY THE WITNESS:
20       A.  I would -- I would say we did rely
21   on -- on the -- we relied on information that
22   was brought to us by the -- by law enforcement,
23   yes.
24   BY MR. STARR:

Page 195

1        Q.  And was it your practice as a Cook
2    County State's Attorney in the Felony Review
3    Unit to rely on the information provided to you
4    by police to be complete and accurate?
5        MR. COYNE:  Same objection.
6    BY THE WITNESS:
7        A.  Yes.  I -- I believed it was -- it was
8    true and accurate or I relied on it to be true
9    and accurate, yes.
10   BY MR. STARR:
11       Q.  And did you also, as a Cook County
12   State's Attorney, have an expectation that the
13   evidence and information that the police
14   presented you would be true and accurate?
15       MR. COYNE:  Objection, form and foundation.
16   Requires speculation.
17       MS. WEST:  Join.
18   BY THE WITNESS:
19       A.  If you're asking if that was the
20   standard, yes.  I expected the information to be
21   true and accurate.
22   BY MR. STARR:
23       Q.  I'm asking -- I'm asking you, was that
24   your practice?

Page 196

1        Did you -- did you expect that the
2    information brought to you by the police, that
3    that information would be true and accurate?
4        MR. COYNE:  Objection; form, foundation.
5    Incomplete hypothetical.
6    BY THE WITNESS:
7        A.  Yes.  I would expect it to be true and
8    accurate.
9    BY MR. STARR:
10       Q.  And you understand that State's
11   Attorneys who engage in investigations of crimes
12   separate and apart from the police department,
13   they are -- they're not absolutely immune from
14   civil suits, correct?
15       MR. COYNE:  Objection, form and foundation.
16   Incomplete hypothetical.  Requires the witness
17   to speculate.
18       MR. HOLMES:  26(a)(2) and 30(b)(6) objections
19   on behalf of the Office.
20   BY THE WITNESS:
21       A.  I have heard that, but I am not an --
22   I'm not an expert on prosecutorial immunity.
23   BY MR. STARR:
24       Q.  Do you know whether or not the Cook

52  (Pages 193 to 196)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 197

1    County State's Attorney -- strike that.
2        As a Cook County State's Attorney in
3    the Felony Review Unit, did you conduct any
4    independent investigation into the murder of
5    Willie Sorrell separate and apart from the
6    Chicago Police Department?
7        MR. COYNE:  Objection to --
8    BY THE WITNESS:
9        A.  I do not recall doing so.
10       THE COURT REPORTER:  What was the objection?
11       MR. COYNE:  Form.
12   BY MR. STARR:
13       Q.  And is it your understanding that the
14   prosecution of James Fletcher was based on
15   evidence brought to the State's Attorney's
16   Office by the Chicago Police Department?
17       MR. COYNE:  Objection, foundation.
18   BY THE WITNESS:
19       A.  I don't know what, if anything, changed
20   after the Felony Review process ended.  My
21   involvement -- I don't remember my involvement
22   in this case extending past anything that would
23   have happened when I was on Felony Review.
24   BY MR. STARR:

Page 198

1        Q.  All right.  The -- as a Cook County
2    State's Attorney -- Felony Review attorney, you
3    had to rely on the Chicago police to provide you
4    facts that amounted to probable cause; is that
5    correct?
6        MR. COYNE:  Objection; form, foundation.
7        MS. WEST:  Join.
8    BY THE WITNESS:
9        A.  For what?  I'm not sure I understand
10   what you're asking me.
11   BY MR. STARR:
12       Q.  Let me rephrase it.
13       In the Willie Sorrell murder
14   investigation, you, as a Cook County State's
15   Attorney in the Felony Review Unit, had to rely
16   on the Chicago police to provide you facts to
17   determine probable -- probable cause; is that
18   correct?
19       MR. COYNE:  Objection.  Form and foundation.
20       MS. WEST:  Join.
21   BY THE WITNESS:
22       A.  Probable cause to charge?
23   BY MR. STARR:
24       Q.  Yes.

Page 199

1        A.  The -- the Chicago Police Department
2    was the investigating agency.  They -- yes.
3    Yeah.  I believe so, yes.
4        Q.  And how -- strike that.
5        Can you explain your role in
6    determining whether or not there was probable
7    cause to charge James Fletcher in this case?
8        MR. COYNE:  Objection, foundation.
9        MR. HOLMES:  Object on grounds of
10   deliberative process privilege as to the State's
11   Attorney's Office.
12   BY THE WITNESS:
13       A.  I don't think I can answer that
14   question without getting into my deliberative
15   process.  I don't think I can answer that.
16   BY MR. STARR:
17       Q.  Okay.  Can I -- let me ask you this:
18   Did you make the determination of whether or not
19   there was enough probable cause to charge James
20   Fletcher in this case?
21       MR. HOLMES:  Same objection.
22   BY THE WITNESS:
23       A.  I do not recall if -- if the
24   determination to charge was made by me alone or

Page 200

1    if there were others involved.  I have no
2    independent recollection of that.
3    BY MR. STARR:
4        Q.  Is there any document that you are
5    aware of that would indicate who made the final
6    decision on probable cause in the Willie Sorrell
7    murder investigation?
8        A.  So typically, in Felony -- while I was
9    on Felony Review, if I discussed a case with a
10   supervisor, I would make a notation on the
11   Felony Review file.  This case I don't have an
12   independent recollection of how -- of how
13   that -- that process went.  So I can't answer
14   how it happened in this case.
15       Q.  So my question was, is there a document
16   that would indicate to you who made that
17   decision?
18       Is it your testimony that that document
19   would be the Felony Review folder?
20       MR. COYNE:  Objection; form, foundation.
21   BY THE WITNESS:
22       A.  So because I don't have a specific
23   recollection as to this case, I can't tell you
24   exact-- I can't tell you, "Oh, this is the

53  (Pages 197 to 200)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 201

1    document."
2         I can tell you generally that if I
3    spoke about a case with a supervisor, that that
4    would be noted on the Felony Review file, that I
5    had -- that I had at least a conversation, if
6    not multiple conversations, with a supervisor.
7    BY MR. STARR:
8         Q.  And we reviewed the Felony Review
9    folder at length during the course of this
10   deposition; is that correct?
11        A.  Yes.
12        Q.  And did you see any indication on the
13   folder either during the course of the
14   deposition or in preparation for the deposition
15   that indicated to you that you consulted with a
16   supervisor in determining probable cause in this
17   case?
18        A.  So the Felony Review file does indicate
19   that supervisors -- that several of my
20   supervisors or people who I know were my
21   supervisors at that time were notified.  But I
22   don't have an independent recollection if they
23   were notified or not, because I don't have an
24   independent recollection of this case since it

Page 202

1    was 22 years ago.
2         Q.  And what supervisors did you see listed
3    on the Felony Review file?
4         A.  Off the top of my head without looking
5    at those documents, I believe I saw Darren
6    O'Brien, and I believe I saw Chamberlain.  And
7    there may have been somebody else, but I don't
8    remember.
9         Q.  Do you know if Darren O'Brien had a
10   brother that was in the Chicago Police
11   Department?
12        A.  Are you -- I'm sorry.  Are you asking
13   or telling?
14        Q.  I'm asking you if you know.
15            Do you know if Darren O'Brien has a
16   brother on the Chicago Police Department?
17        A.  I do not know.  I'm unaware of that.
18        Q.  Okay.  Regarding the Felony Review
19   file, is the Felony Review file and the Felony
20   Review notes the same document, or are those
21   separate things?
22        A.  I'm not -- I'm not familiar with the
23   concept of Felony Review notes.
24        Q.  Okay.  So we looked at the Felony

Page 203

1    Review file as you understand it earlier today
2    as Exhibit 1, correct?
3         A.  Correct.  Well, one thing I do want to
4    say, the -- when I was reviewing these documents
5    in preparation for my deposition, there was one
6    page in that Felony Review file attachment that
7    we did not talk about during -- I have not
8    talked about during this deposition.
9         But it was made out in a handwriting
10   that I did not recognize to be mine.  I don't
11   know who it is.  I don't know anything about it.
12   But that was part of that exhibit that I looked
13   at, and I just want to be clear that I don't
14   know anything about that -- that piece of paper,
15   because it doesn't look like mine.
16        Q.  I was --
17        A.  It doesn't look like my handwriting.
18        Q.  I was planning to ask you some
19   questions about that then.
20        A.  Okay.
21        Q.  And we will get to that in short order.
22        A.  Okay.
23        Q.  Regarding the Felony Review folder, if
24   a Felony Review State's Attorney had conducted

Page 204

1    an interview with a defendant, would you expect
2    there to be some summary of that interview on
3    the folder?
4         MR. COYNE:  Objection; form, foundation.
5    Requires speculation.
6    BY THE WITNESS:
7         A.  And I'm sorry.  Just to make sure, you
8    said with a defendant, correct?
9    BY MR. STARR:
10        Q.  Yes.
11        A.  Okay.  I would -- it would be -- at the
12   time it would certainly my practice to write down
13   a summary of a -- any conversation I had with
14   the defendant in the folder.
15        Q.  Okay.  During your time as a Felony
16   Review State's Attorney, was it also your
17   practice to summarize any interview you may have
18   had with a witness during the pendency of a
19   case?
20        A.  Not necessarily.  It -- it could be
21   that -- there may be a few things that were
22   notated on the file, but a general summary of
23   what the witness said is not -- I would not
24   necessarily do a big summary of what they said

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 205

1    to me on the file.
2        Q.  If a witness indicated to you that they
3    could identify a suspect, is that something that
4    you would necessarily include in the file?
5        A.  It's some- --
6        MR. COYNE:  Objection, foundation.
7    BY THE WITNESS:
8        A.  It's something I may include.  I
9    wouldn't say I would include it every time.
10   BY MR. STARR:
11       Q.  If a witness indicated to you that they
12   were unable to identify a suspect, is that
13   something that you would include every time?
14       MR. COYNE:  Same objection.
15   BY THE WITNESS:
16       A.  I would say I would typically include
17   it, but I can't promise every time.
18   BY MR. STARR:
19       Q.  Would that be something that would
20   potentially be exculpatory that you would be
21   required to document under Brady?
22       MR. COYNE:  Objection; foundation,
23   speculation.
24       MR. HOLMES:  26(a)(2) objection on behalf of

Page 206

1    the Office.
2    BY THE WITNESS:
3        A.  It could be, but it could also have
4    been -- I could also have seen if it was a
5    police report, and so if it was already in a
6    police report, it may not be something that I
7    would also include.
8    BY MR. STARR:
9        Q.  That's fair.
10       So in a circumstance where you're not
11   aware that there is any other documentation
12   regarding a witness stating that they could not
13   make an identification and you learn that fact
14   from a witness, is that something that you would
15   be obligated to document -- and in using your
16   own terminology -- "capture" in the file?
17       MR. COYNE:  Objection, form and foundation.
18   Requires speculation.  Incomplete hypothetical.
19       MR. HOLMES:  26(a)(2) objection.
20   BY THE WITNESS:
21       A.  I'm sorry.  I need that -- I need you
22   to ask that again.
23       MR. STARR:  Let's have it read back, because
24   I don't know if I can get it as well as last

Page 207

1    time.
2        (Whereupon, the record was read
3        as requested.)
4        MR. COYNE:  Same objections.
5        MR. HOLMES:  Same objection.
6    BY THE WITNESS:
7        A.  If there was no other writing capturing
8    that information, that is something I would
9    expect I would have -- would have captured -- I
10   would have put in the file or directed it to be
11   captured elsewhere.
12   BY MR. STARR:
13       Q.  And you would have done so, because you
14   would be obligated under Brady and other local
15   rules to document exculpatory evidence, correct?
16       MR. COYNE:  Same objections.
17       MR. HOLMES:  26(a)(2) objection.
18   BY THE WITNESS:
19       A.  Yeah.  Yes, I believe so.
20   BY MR. STARR:
21       Q.  Okay.  At what point -- based on your
22   understanding, at what point in a police
23   investigation does Felony Review get assigned to
24   a case?

Page 208

1        MR. COYNE:  Objection, foundation.
2    Incomplete hypothetical.
3    BY THE WITNESS:
4        A.  So back in -- when I was on Review in
5    2001, we typically did not go out -- go out to a
6    police station unless there was a witness to
7    talk to.  It -- but it would depend on -- on the
8    case.  Typically, there was a witness to talk to
9    at least.
10   BY MR. STARR:
11       Q.  Okay.  In your general experience in
12   Felony Review, if you were called out to talk to
13   a witness, and that witness -- once you engaged
14   with that witness, they told you that they could
15   identify the suspect and that they, you know,
16   knew the suspect's name, what would be your --
17   what would be your next steps in your -- in your
18   process?
19       MR. COYNE:  Objection; form, foundation,
20   incomplete hypothetical.
21       And I would remind you of the prior
22   admonition, Jennifer.  If you have to reveal
23   your decision-making as to a particular case,
24   that would be precluded under Federal Rule 26.

55 (Pages 205 to 208)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 209

1    If you can answer the question without doing so,
2    then go ahead.
3        MS. WEST: Objection to form and foundation.
4    BY THE WITNESS:
5        A.  So there is a -- there is lot of --
6    there is a lot of factors at play.  Like, is
7    this witness the first witness that's -- that
8    someone from Felony Review has talked to?  Is
9    this witness the 17th person that the Felony
10   Review has talked to?  Is there a defendant that
11   has been talked to?  Is there a video of this
12   situation?
13       Like, there is an awful lot of
14   hypotheticals with all of that.  So -- so it
15   would really depend.  I believe your question is
16   what -- after I talk to a witness -- could you
17   repeat the question, please?
18   BY MR. STARR:
19       Q.  Yeah.  Let me --
20       A.  I want to make sure I'm answering it
21   right.
22       Q.  Maybe I can rephrase it for you to make
23   it easier.
24           If you were assigned to a case as

Page 210

1    Felony Review State's Attorney and you went out
2    and there was a witness at the police station
3    and the witness told you that they could
4    identify the suspect and they gave you that
5    person's name, would you take a statement from
6    that person?
7        MR. COYNE: Object; form, foundation,
8    incomplete hypothetical.
9        MS. WEST: Join.
10   BY THE WITNESS:
11       A.  I may, or I may not.
12   BY MR. STARR:
13       Q.  Under what circumstances would you
14   refrain from taking a statement?
15       MR. COYNE: Same objections.
16   BY THE WITNESS:
17       A.  It would -- it would depend on -- so
18   when I answered before, I was assuming you
19   were -- I -- I assumed myself -- you did not ask
20   me this.  I assumed that it was a written
21   statement.
22       So I would like to amend my answer to
23   say, I would have a conversation with them, but
24   I may not necessarily take a written statement

Page 211

1    at that time.
2    BY MR. STARR:
3        Q.  And why would you -- why would you
4    refrain from taking a written statement at that
5    time?
6        MR. COYNE: Same objections.
7    BY MR. STARR:
8        Q.  What circumstances might you refrain
9    from taking a written statement?
10       MR. COYNE: Sorry.  Same objections.  Form,
11   foundation, incomplete hypothetical.
12       MS. WEST: Join.
13       MR. COYNE: Also, yeah, I need to take a
14   phone call.  I hate to interrupt the pending
15   question, but this is a call I have to take.
16   BY THE WITNESS:
17       A.  And --
18       MR. COYNE: Do you want to answer -- hang on.
19   Go ahead.
20       Hi.  It's John Coyne.  Can you hold one
21   second, please?  Thank you.
22       All right.  Could you answer, and
23   then -- so I can talk a call?
24   BY THE WITNESS:

Page 212

1        A.  Yes.
2        It would depend on a variety of
3    factors, and to answer that question, I think I
4    would have to disclose my decision-making
5    process and work product.
6        MR. COYNE: All right.  And, Sean, just so
7    you know, we've been going for over five hours
8    with a couple of short breaks.  If this is still
9    going at 4:15, I'm going to need about a
10   45-minute break to address the matters that have
11   developed today.  I mean, you can go as long as
12   you want, but I'm going to need about 45 minutes
13   if we're still going at 4:15.  I'll try to make
14   it 30, but it could be 45.
15       MR. STARR: I don't know if -- I mean, I -- I
16   have some obligations myself, John, after normal
17   work hours.  I don't know if I can stick around
18   past 5:00.  I'm -- I'm trying to get through
19   this as quickly as possible.
20       MR. COYNE: Yeah.  I'm not complaining.  I'm
21   just saying --
22       MR. STARR: Are we on the record?
23       MR. COYNE: Hang on.  Hang on.  We have been
24   going over five hours with very short breaks.

56 (Pages 209 to 212)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 213

1    I'm just telling you -- you can go
2    until 7:00 if you want. I'm just saying, if
3    it's still going at 4:15, I'm going to need 30
4    to 45 minutes. I'm -- we can -- then, we can
5    resume.
6        MR. HOLMES: We only took a 20-minute lunch
7    break. So Mr. Coyne's request is not
8    unreasonable.
9        MR. COYNE: Right. I -- yeah. And it wasn't
10   a lunch break for me.
11       MR. HOLMES: Yeah, right.
12       MR. STARR: I mean, under the circumstances,
13   it's a little -- are we on the record, or are we
14   off the record?
15       MR. COYNE: Oh, we can do it on the record.
16   I mean, yeah, we can do it on the record. I
17   mean, I have to take this call right now, so --
18       MR. STARR: Yeah, take the call. Take the
19   call. Let's go off the record.
20       (Whereupon, a short break was
21       taken.)
22       MR. COYNE: All right. I had to take a call.
23   That was the call that I mentioned at the
24   beginning at the deposition that I might have to

Page 214

1    take.
2        So as I mentioned earlier, Sean, I
3    don't want to rain on your parade. You can go
4    as long as you want. It's just that -- and I'm
5    going to be able to push it back to at least
6    3:00 -- or 4:30. These are matters that I need
7    to address that developed today.
8        So I -- if we're still going at 4:30,
9    I'll just need about a 30 -- I should be able to
10   make it in 30 minutes -- a 30-minute break. We
11   can resume at 5:00, and you can go as far as you
12   want.
13       But for the record, I personally have
14   not taken any breaks today other than dealing
15   with this case. So I have matters dealing --
16   pertaining to my law practice -- it's my firm --
17   that I need to address personally. And that's
18   why I would need to do that at 4:30. I would be
19   done by 5:00, and then we can resume. So I just
20   wanted to put that on the record so there is no
21   surprises.
22       MR. STARR: Well, I mean, John, I understand
23   that things arise and, you know, conflicts
24   happen during the -- you know, the course of a

Page 215

1    given workday. I think we did take a break. I
2    mean, it wasn't my break. I didn't ask for the
3    break that we took earlier, and we took
4    approximately 20 minutes at least, maybe more
5    than that.
6        I ate lunch during that period of time.
7    So if you're trying to squeeze in another break
8    for lunch -- which is not what you're doing.
9    You already said what you're doing. I can't
10   stay past 5:00 today. I don't have that much
11   more, but if you need a break at 4:30, quite
12   honestly, I'm not going to just wait until 5:00
13   and then resume.
14       So -- and I know that Allyson wants to
15   bring the witness back. I didn't want to bring
16   the witness back, and I'm going to try to get
17   the show on the road here. But I'm just
18   flagging that for you right now.
19       MR. COYNE: Right. But --
20       MR. STARR: So if you have a conflict arise,
21   you have a conflict arise. I get it, but that
22   doesn't mean we have to -- we have to stay
23   later.
24       MR. COYNE: Well, yeah, just so you know, you

Page 216

1    talked about a 20-minute lunch break. I did not
2    get a -- we had an issue, a break that was
3    taken. We resumed it, and then Allyson and I
4    agreed we want to take a longer break so I could
5    address something.
6        The break started with a
7    deposition-related matter, all right, and then
8    we took a short break. So it was never that we
9    took a continuous, agreed 20-minute break. And
10   I don't want to quibble on semantics.
11       But, you know, we have been going since
12   10:30 without a lunch, without a break. I don't
13   need a lunch. I'm just saying I have matters
14   that I personally have to address for purposes
15   of my law practice, because it's my firm. And
16   I'm not trying to delay things. I'm just
17   saying, I could probably make it in 20 minutes,
18   but 4:30 -- in fact, I probably could push it
19   to 4:40. If we're still going -- that's 50
20   minutes from now -- I will need a 20-minute
21   break. That's all I'm saying.
22       MR. STARR: I'm not -- I'm not trying to give
23   you a hard time. Let's just go forward and see
24   where we're at.

57 (Pages 213 to 216)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 217

1    MR. COYNE: Fine. Let's do it.
2    MS. WEST: Really quick -- sorry, because I
3    need to know for coverage on my end, John, do
4    you think you will be able to finish by 4:30 or
5    4:45?
6    MR. STARR: I'm going to try.
7    MS. WEST: Okay.
8    MR. COYNE: All right. Let's give it a shot.
9    BY MR. STARR:
10   **Q. Ms. Walker, I understand you've**
11   **previously testified that your independent**
12   **recollection of the Fletcher case boils down to**
13   **you recall that this case involved a bread truck**
14   **driver and a robbery; is that correct?**
15   MS. WEST: Asked and answered.
16   BY THE WITNESS:
17   A. That's part of what I recall, yes.
18   BY MR. STARR:
19   **Q. Okay. Is the other part that you**
20   **recall driving in a car with Detectives Bogucki**
21   **and Schalk going to an IDOC facility?**
22   A. Yes, I remember that too.
23   MS. WEST: Asked and answered.
24   BY THE WITNESS:

Page 218

1    A. I remember that as well.
2    BY MR. STARR:
3    **Q. Is there any other independent**
4    **recollection you have about the Willie Sorrell**
5    **homicide investigation or the prosecution of**
6    **James Fletcher for that -- for that murder?**
7    A. Nothing specific.
8    **Q. Okay. If at some at some point you**
9    **recall something specific, please let us know.**
10   **Are you -- during the -- during your**
11   **time assigned as a Felony Review State's**
12   **Attorney, do you know if you received any**
13   **general or progress reports from the Chicago**
14   **police on this case?**
15   A. I do not recall.
16   **Q. Okay. As you sit here today, do you**
17   **have a recollection as to whether or not there**
18   **were any Chicago police reports that you asked**
19   **for but didn't receive?**
20   A. I do not recall.
21   **Q. Okay. And you testified earlier that**
22   **you are -- you're aware of who Jerome Bogucki**
23   **is, correct?**
24   A. I'm aware of Detective Bogucki. I

Page 219

1    don't remember that I remember his first name.
2    **Q. Okay. And outside of riding in a**
3    **vehicle with him, do you have any other**
4    **independent recollection of any other**
5    **interactions with him on this case?**
6    A. Not specific, no.
7    **Q. Do you have any other general**
8    **recollections?**
9    A. I remember he was involved in the case,
10   but I don't remember, like, a specific
11   conversation or, like, I don't remember anything
12   specific.
13   **Q. Did you ever in the -- in the mid-2000s**
14   **when you were in Felony Review, did you ever**
15   **hear any rumors or allegations about Detective**
16   **Bogucki committing misconduct as a Chicago**
17   **police officer?**
18   MR. COYNE: Objection, form.
19   BY THE WITNESS:
20   A. I do not recall that.
21   BY MR. STARR:
22   **Q. Did you ever in your entire career hear**
23   **any rumors or allegations about Detective**
24   **Bogucki committing misconduct outside of the**

Page 220

1    confines of this case?
2    A. I do not recall that.
3    **Q. Okay. Do you have any opinion of**
4    **Detective Bogucki as a Chicago police officer?**
5    MR. COYNE: Objection; form, foundation.
6    BY THE WITNESS:
7    A. He was -- he was professional with me.
8    I -- I -- and -- but I -- I believe I had a few
9    cases with him. I know I had more than one with
10   him when I was on Felony Review. But I -- I
11   don't -- I didn't know him well. And I -- I
12   don't even know when the last time it was that I
13   saw him.
14   BY MR. STARR:
15   **Q. You previously testified that you're**
16   **familiar with a Chicago police detective by the**
17   **name of Raymond Schalk; is that correct?**
18   A. Detective Schalk, I don't know the --
19   his first name.
20   **Q. Okay. Other than what you recall about**
21   **riding in a vehicle with him going to an IDOC**
22   **facility, do you have any other independent**
23   **recollection of any interactions or**
24   **conversations you had with Detective Schalk**

58  (Pages 217 to 220)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 221

1  during the pendency of this case?
2      A.  I do not.
3      Q.  Okay.  While you were on Felony Review,
4  did you hear any rumors or allegations of any
5  misconduct committed by Detective Schalk?
6      A.  I did not.
7      MR. COYNE:  Objection, form.
8  BY THE WITNESS:
9      A.  I don't recall that.  I do not recall
10  that.
11  BY MR. STARR:
12      Q.  At any point, have you heard any --
13  other than this -- strike that.
14          At any point, have you heard any rumors
15  of misconduct or allegations of misconduct about
16  Detective Schalk besides this case?
17      MR. COYNE:  Objection, form.
18  BY THE WITNESS:
19      A.  I do not recall that.
20  BY MR. STARR:
21      Q.  Okay.  And do you have any opinion of
22  Detective Schalk's work as a Chicago police
23  officer?
24      MR. COYNE:  Objection; form, foundation.

Page 222

1  BY THE WITNESS:
2      A.  I believe he and Detective Bogucki were
3  partners or worked together.  I believe I had at
4  least one other case with him and Detective
5  Bogucki.  You know, I -- I remember him as -- as
6  being, you know, pleasant and professional with
7  me.  I have not seen him in quite some time, and
8  I -- and I do not know him -- I did not know him
9  well.
10          I -- I could probably recognize him if
11  I was shown a picture, but I don't -- we didn't
12  have a lot of -- we didn't have a lot of
13  interaction.
14  BY MR. STARR:
15      Q.  I believe you testified about Detective
16  Noradin earlier.
17          Do you know who Detective Noradin is?
18      A.  I do know Detective -- I do know who
19  Detective Noradin is.
20      Q.  Okay.  And his name is Anthony Noradin.
21          Do you know his first name?
22      A.  I know him -- I believe I know him as
23  Tony --
24      Q.  Okay.

Page 223

1      A.  -- Noradin.  I don't believe I know him
2  as Anthony Noradin.
3      Q.  Do you have any independent
4  recollection of any interactions or
5  communications or conversations with Detective
6  Noradin on the Willie Sorrell homicide
7  investigation or the prosecution of James
8  Fletcher for that murder?
9      A.  I do not.
10      Q.  Did you ever hear any rumors or
11  allegations about Detective Noradin committing
12  misconduct as a Chicago police officer during
13  your time in Felony Review?
14      MR. COYNE:  Objection; form, foundation.
15  BY THE WITNESS:  I do not recall that.
16  BY MR. STARR:
17      Q.  Have you ever heard any rumors or
18  allegations about Detective Noradin committing
19  misconduct as a Chicago police officer in your
20  career?
21      MR. COYNE:  Objection, form.
22  BY THE WITNESS:
23      A.  I -- I do not recall that.
24  BY MR. STARR:

Page 224

1      Q.  And do you have an opinion of him as a
2  Chicago police officer?
3      MR. COYNE:  Objection, foundation.
4  BY THE WITNESS:
5      A.  He was -- he has been -- he was
6  professional and pleasant when I had to deal
7  with him.  I believe I had a couple of -- a
8  couple of other cases with him when he was at
9  Area 5, but I can't specifically remember the
10  names of those cases or what those cases were
11  about.  I just -- I knew I've interacted with
12  him a -- a couple of times when I was on Felony
13  Review, but I don't remember exactly how many
14  either.
15  BY MR. STARR:
16      Q.  What about a Chicago police detective
17  or a sergeant by the name of Tony or Anthony
18  Wojcik?
19          Do you know who that is?
20      A.  I have heard the name, but I don't know
21  if I -- I'm not getting a picture in my head of
22  what he looked like.
23      Q.  Do you know what context you have heard
24  the name in?

59 (Pages 221 to 224)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 225

1    A.  Just being around 26th Street.  Like, I
2  have heard -- I have heard the name.
3    Q.  Do you have any independent
4  recollection whatsoever of any interactions,
5  communications, or conversations with Tony
6  Wojcik during the pendency of the Willie Sorrell
7  criminal investigation -- homicide investigation
8  or the prosecution of James Fletcher for that
9  crime?
10   A.  I do not recall that.
11   Q.  Did you ever hear any allegations or
12  rumors about Detective Wojcik or Sergeant Wojcik
13  committing any misconduct during your time in
14  Felony Review?
15   MR. COYNE:  Objection, form.
16  BY THE WITNESS:
17   A.  I do not recall that.
18  BY MR. STARR:
19   Q.  Have you heard any rumors of -- or
20  allegations of Detective Wojcik committing
21  misconduct at any point in your career?
22   MR. COYNE:  Objection, form.
23  BY THE WITNESS:
24   A.  I don't recall that.  I -- I don't

Page 226

1  recall that.
2  BY MR. STARR:
3    Q.  Do you have any opinion of Detective --
4  Sergeant Wojcik as a Chicago police officer?
5    MS. WEST:  Objection to foundation.
6    MR. COYNE:  Objection; form, foundation.
7  BY THE WITNESS:
8    A.  I -- I don't remember having any
9  interaction with Sergeant Wojcik.  I don't -- I
10  don't know that I would be able to -- like, if I
11  was shown a line -- a photo array, I don't know
12  that I could pick Sergeant Wojcik out of the
13  photo array.  I just don't really know him.
14  Like, I don't know him.
15  BY MR. STARR:
16   Q.  Other -- strike that.
17       Do you have any independent
18  recollection whatsoever of interviewing any
19  witness in the Willie Sorrell homicide or the
20  James Fletcher criminal prosecution?
21   A.  I do not.
22   Q.  Do you have any independent
23  recollection of Mr. Fletcher?
24   A.  I do not.

Page 227

1    Q.  Do you have any independent
2  recollection of Terry Rogers?
3    A.  I do not.
4    Q.  You're aware that Terry Rogers
5  allegedly identified James Fletcher to
6  Detectives Bogucki and Schalk, correct?
7    A.  I have read that in the police report
8  getting ready for this audition -- this
9  deposition.
10   Q.  And allegedly Terry Rogers was able to
11  identify Mr. Fletcher in a photo array that
12  Detectives Bogucki and Schalk showed him,
13  correct?
14   MR. COYNE:  Objection, foundation.
15  BY THE WITNESS:
16   A.  I have read that in preparation for
17  this deposition.
18  BY MR. STARR:
19   Q.  And those photos in the photo array
20  were IDOC photos, correct?
21   MR. COYNE:  Same objection.
22  BY THE WITNESS:
23   A.  I -- I don't know about that.
24  BY MR. STARR:

Page 228

1    Q.  You are aware that Terry Rogers
2  allegedly told Detectives Bogucki and Schalk
3  that he knew Mr. Fletcher prior to the Willie
4  Sorrell homicide, correct?
5    A.  I have read that in documents preparing
6  for the deposition, yes.
7    Q.  Do you know if you -- strike that.
8       Did you do anything to independently
9  corroborate whether or not Terry Rogers knew
10  James Fletcher prior to the Willie homi- --
11  Willie Sorrell homicide?
12   MR. COYNE:  Objection, foundation.
13  BY THE WITNESS:
14   A.  I don't know.  I don't recall.
15  BY MR. STARR:
16   Q.  Do you know if the Detectives Bogucki
17  and Schalk did anything to independently
18  corroborate whether or not Mr. Rogers knew
19  Mr. Fletcher prior to the Willie Sorrell
20  homicide?
21   MR. COYNE:  Objection --
22   MS. WEST:  Objection, foundation.
23   MR. COYNE:  -- foundation.
24  BY THE WITNESS:

60  (Pages 225 to 228)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 229

1    A. I don't recall, and I don't know.
2   BY MR. STARR:
3       Q. Would it surprise you to hear that
4   Detective Bogucki has testified in this civil
5   case that he did nothing to corroborate whether
6   or not Terry Rogers knew James Fletcher prior to
7   the Willie Sorrell homicide?
8       MS. WEST: Objection.
9       MR. COYNE: Objection to form, foundation,
10  speculation.
11      MS. WEST: Join and misstates the record.
12  BY THE WITNESS:
13      A. I don't -- I don't know. I -- I would
14  need to know more about that to -- to be able --
15  it would be speculation for me to say how I feel
16  about that.
17  BY MR. STARR:
18      Q. Well, you understand that Terry Rogers
19  said that he could identify James Fletcher
20  because he knew him prior to the crime, correct?
21      MR. COYNE: Objection, foundation.
22      MS. WEST: Join.
23      MR. COYNE: And also mischaracterizes the
24  witness's testimony.

Page 230

1       MS. WEST: Yes. Join.
2   BY THE WITNESS:
3       A. I understand I have read some things in
4   some reports and documents to prepare for this
5   deposition today that say -- that say the gist
6   of what you just said.
7   BY MR. STARR:
8       Q. Okay. Given that, would you expect --
9   in your experience as a Felony Review State's
10  Attorney, would you expect and anticipate the
11  police to have corroborated that piece of
12  evidence?
13      MR. COYNE: Objection; form, foundation,
14  incomplete hypothetical. Requires speculation.
15      MS. WEST: Join.
16  BY THE WITNESS:
17      A. Not necessarily.
18  BY MR. STARR:
19      Q. Why would you not expect them to
20  corroborate that?
21      MR. COYNE: Objection.
22      Also, Jennifer, I will repeat the
23  earlier instruction. If you have to offer your
24  opinion, your mental impressions about the

Page 231

1   evidence in this case, strategies, opinions,
2   legal theories, arguments, then I would instruct
3   you not to answer the question based upon
4   Federal Rule 26 and the work product doctrine.
5       If you can answer the question without
6   doing so, then you may proceed.
7       MR. HOLMES: Same guidance and instruction on
8   behalf of the Office on grounds of deliberative
9   process privilege.
10  BY THE WITNESS:
11      A. I don't think I can answer that
12  question based off of the -- off of work product
13  and the -- and my own deliberation.
14  BY MR. STARR:
15      Q. So are you going to take your
16  attorney's recommendation and refuse to answer
17  my question?
18      A. Respectfully, yes.
19      Q. Okay. Did you have any concerns that
20  Terry Roger's identification of James Fletcher
21  was not credible?
22      MR. COYNE: Objection; form, foundation.
23  Also, the same instruction is, if you're talking
24  about your -- if you would need to reveal your

Page 232

1   mental impressions about the evidence in this
2   case, same instruction.
3       MR. HOLMES: Same objection and instruction
4   on behalf of the Office on grounds of
5   deliberative process privilege.
6   BY THE WITNESS:
7       A. Could you repeat the question, please?
8   BY MR. STARR:
9       Q. Yeah.
10      Did you have any concerns that Terry
11  Rogers's identification of James Fletcher was
12  not credible when you were at Cook County
13  State's Attorney -- Felony Review with the
14  State's Attorney?
15      MR. COYNE: Same objection. Same instruction
16  on work product.
17      MR. HOLMES: Likewise, as to the State's
18  Attorney's Office as to deliberative process
19  privilege.
20  BY THE WITNESS:
21      A. I don't recall.
22  BY MR. STARR:
23      Q. Okay. If you had had evidence that
24  Terry Rogers's identification of James Fletcher

61 (Pages 229 to 232)

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 233

1  was false, is that something that you would have
2  necessarily documented?
3      MR. COYNE:  Objection; form, foundation,
4  incomplete hypothetical.  Requires the witness
5  to speculate.
6  BY THE WITNESS:
7      A.  I can't answer that question without
8  speculating.
9  BY MR. STARR:
10     Q.  Well, don't you -- wouldn't you have
11  had an ethical and a legal obligation under
12  Brady to document that information, if you had
13  learned that Terry's Rogers's identification of
14  Mr. Fletcher was false?
15     MR. COYNE:  Objection; form, foundation,
16  incomplete hypothetical.  Requires the witness
17  to speculate.
18     MR. HOLMES:  26(a)(2) objection as to the
19  Office.
20  BY THE WITNESS:
21     A.  I don't believe I can fully answer that
22  question without speculating, so I -- I can't
23  answer that.
24  BY MR. STARR:

Page 234

1      Q.  Were you aware that Terry Rogers had a
2  pending felony charge when he identified James
3  Fletcher?
4      A.  I don't recall.
5      Q.  Do you have any independent
6  recollection of the witness Edward Cooper?
7      A.  I do not.
8      Q.  And you're aware that Mr. Cooper
9  testified -- strike that.
10     Are you aware that Mr. Cooper testified
11  at James Fletcher's criminal trial?
12     A.  I am not.
13     Q.  Are you aware that Mr. Cooper has
14  recanted his identification of James Fletcher
15  since the time that he testified?
16     A.  I think I was shown a document this --
17  well, sometime today -- I don't even know what
18  time it is -- when the -- when Ms. West was
19  questioning me that may have indicated that, but
20  I -- I didn't review that as well as some of the
21  other documents.  So I'm -- I -- I may have
22  learned that today.
23     Q.  Okay.  I think you were probably
24  referring to the affidavit or the declaration of

Page 235

1  Edward Cooper that we looked at, which was
2  Exhibit No. 7; is that correct?
3      A.  I believe so.
4      Q.  Are you aware that Edward Cooper has
5  testified in this civil matter in a deposition
6  that in 2002, two white police officers came to
7  his home and told them -- told him who to
8  identify in this case?
9      A.  I am unaware of any deposition
10  testimony by Mr. Cooper.
11     Q.  Are you aware that Mr. Cooper has
12  testified that he was -- that he told the two
13  white officers that he was unable to identify
14  the suspect in the Willie Sorrell shooting?
15     A.  I am not aware of that.
16     Q.  Did the police ever provide you with
17  any documentation that Edward Cooper told them
18  in 2002 that he was unable to identify James
19  Fletcher?
20     A.  I am -- don't recall.
21     Q.  If the police had told you or provided
22  you with documentation that Edward Cooper had
23  told them in 2002 that he was unable to identify
24  anyone in the Willie Sorrell shooting, is that

Page 236

1  something that you would have documented or
2  captured in the file?
3      MR. COYNE:  Objection; form, foundation.
4  Requires the witness to speculate.  Incomplete
5  hypothetical.
6  BY THE WITNESS:
7      A.  It -- it may.  But it -- it would
8  require me to speculate, so I'm not 100 percent
9  comfortable answering that question.
10  BY MR. STARR:
11     Q.  Are you aware that Edward Cooper has
12  testified that the police showed him a photo
13  array and pointed out a photo and told him that
14  was the suspect?
15     A.  I'm unaware of whatever -- I'm unaware
16  of Edward Cooper testifying really in anything.
17     Q.  Did the police ever tell you or provide
18  you with any documentation that they showed
19  Edward Cooper a photo array and pointed out the
20  suspect?
21     A.  That they showed him a photo array and
22  that the police pointed out a suspect to Cooper?
23     Q.  Correct.
24     A.  I am -- I am not aware of that.

62  (Pages 233 to 236)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 237

1      Q.  If the police had told you that they
2  had shown Cooper a photo array and pointed out
3  the suspect in the photo array for Cooper, is
4  that something that you would have necessarily
5  had an obligation to document or capture in the
6  State's Attorney's file?
7      MR. COYNE:  Objection; form, foundation,
8  incomplete hypothetical.  It requires the
9  witness to speculate.
10     MR. HOLMES:  26(a)(2) objection on behalf of
11  the Office.
12  BY THE WITNESS:
13     A.  It would require me to speculate to
14  give a complete answer.  But if the police told
15  me that they -- well, it would require me to
16  speculate, and I don't think I could answer that
17  question.
18  BY MR. STARR:
19     Q.  Well, if the police told you that they
20  unduly influenced the photo array in this case,
21  what would you have done?
22     MR. COYNE:  Objection; form, foundation,
23  incomplete hypothetical.  Requires the witness
24  the speculate, and I would further admonish you

Page 238

1  as to the Rule 26 instruction I gave you earlier
2  about revealing your decision-making process as
3  an attorney in this case.
4  BY THE WITNESS:
5     A.  I would have been mindful of my ethical
6  obligations as a prosecutor, and -- but I -- I
7  cannot answer that question without getting into
8  my deliberative processes and work product
9  information.
10  BY MR. STARR:
11     Q.  Because there is nothing in the record
12  to indicate that you ever documented that the
13  police, in fact, told you that they unduly
14  influenced a photo array with Ed Cooper, is it
15  safe to assume that you never learned that?
16     MR. COYNE:  Objection; form and foundation.
17  Incomplete hypothetical.  Requires speculation
18  and argumentative.
19     MS. WEST:  Join.
20  BY THE WITNESS:
21     A.  I certainly don't recall that, but what
22  you're asking me to do is -- is to speculate,
23  and I can't do that either.
24  BY MR. STARR:

Page 239

1      Q.  If Ed Cooper had told you that the
2  police had unduly influenced him to identify
3  somebody, wouldn't it have been mindful of your
4  obligations as a prosecutor to document that
5  somewhere?
6      MR. COYNE:  Objection; form, foundation.
7  Incomplete hypothetical and requires the witness
8  to speculate.
9  BY THE WITNESS:
10     A.  I would be mindful of my obligations as
11  a prosecutor, but I cannot -- I can't answer
12  that question, which is a hypothetical question
13  that requires me to speculate.
14  BY MR. STARR:
15     Q.  Well, since there is nothing in the
16  record that indicates that you documented that
17  Ed Cooper told you that the police had unduly
18  influenced him to identify Mr. Fletcher, is it
19  safe to assume that you never learned that from
20  him?
21     MR. COYNE:  Objection; form, foundation.
22  Incomplete hypothetical.  Requires speculation
23  and argumentative.
24     MS. WEST:  Join.

Page 240

1  BY THE WITNESS:
2     A.  While I was on review, I was mindful of
3  my ethical obligations as a prosecutor.  To
4  answer that question would require me to
5  speculate, though.
6  BY MR. STARR:
7     Q.  Are you aware that Ed Cooper has
8  testified that when he went to see a lineup at
9  the police station a few days later, Detectives
10  Bogucki and Schalk may have shown him the same
11  photo that he previously had seen at his house?
12     A.  I'm unaware of Ed -- of Mr. Cooper's
13  testimony.  So I don't know what he -- he has
14  testified to.
15     Q.  If the police -- strike that.
16         Did the police ever tell you that they
17  provided -- strike that.
18         Did Detectives Bogucki and Schalk ever
19  tell you that when Ed Cooper came to view the
20  lineup at the police station, they showed him
21  James Fletcher's photo prior to viewing the
22  lineup?
23     A.  I don't recall that.
24     Q.  If the police had told you that they

63  (Pages 237 to 240)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 241

1 had shown Ed Cooper James Fletcher's photo prior
2 to him viewing the lineup, is that something
3 that you would have documented or captured
4 within the State's Attorney's file?
5     MR. COYNE: Objection; form, foundation.
6 Incomplete hypothetical. Requires the witness
7 to speculate.
8     MS. WEST: Join.
9 BY THE WITNESS:
10     A. I can't answer that, because it would
11 require me to speculate, but I would be mindful
12 of my ethical obligations as a prosecutor.
13 BY MR. STARR:
14     Q. Did Ed Cooper ever tell you that when
15 he went to view the lineup at the police
16 station, the police showed him a photo of James
17 Fletcher prior to viewing the lineup?
18     A. I don't have an independent basis of
19 knowledge for any conversation I may or may not
20 have had with Mr. Cooper.
21     Q. If Ed Cooper had told you that when he
22 went to view a lineup at the Chicago Police
23 Department, they showed him a photo of James
24 Fletcher and told him, "Remember, this is the

Page 242

1 guy you identified in the photo array," is that
2 something that you would have had to necessarily
3 document as a Cook County State's Attorney?
4     MR. COYNE: Objection; form, foundation.
5 Incomplete hypothetical. It requires the
6 witness to speculate.
7 BY THE WITNESS:
8     A. It requires -- I can't answer that
9 question. It requires me to speculate. But I
10 was -- when I was on review and today I am
11 mindful of my ethical obligations as a
12 prosecutor.
13 BY MR. STARR:
14     Q. And because there is nothing in the
15 file or in the record to indicate that you
16 documented that you learned that either from the
17 police or from Ed Cooper himself, is it safe to
18 assume that you never learned that?
19     MR. COYNE: Objection; form, foundation.
20 Requires speculation. Incomplete hypothetical
21 and argumentative.
22 BY THE WITNESS:
23     A. I can't answer that question, because
24 it requires me to speculate.

Page 243

1 BY MR. STARR:
2     Q. Did Ed Cooper tell you anything
3 exculpatory about the Willie Sorrell homicide
4 investigation that you didn't document?
5     A. I don't recall a -- conversations with
6 Mr. Cooper. I have no independent recollection.
7     Q. Do you have any independent
8 recollection of a witness by the name of Sheene
9 Friend?
10     A. I do not have an independent
11 recollection of Sheene Friend.
12     Q. Are you aware that Friend's testimony
13 helped convict James Fletcher?
14     A. I am unaware of what happened at trial.
15     Q. Are you aware that Sheene Friend has
16 signed a declaration recanting her
17 identification of James Fletcher in the Willie
18 Sorrell homicide?
19     A. I don't recall that.
20     Q. Okay. Are you aware that -- strike
21 that.
22         Are you aware that Sheene Friend's
23 declaration states that she told police she
24 could not identify the shooter in the Willie

Page 244

1 Sorrell homicide?
2     A. I don't recall ever seeing that
3 declaration.
4     Q. Did the police ever tell you or provide
5 you with any documentation that Sheene Friend
6 told them she was unable to make an
7 identification in the Sorrell shooting?
8     A. I don't recall that.
9     Q. If the police had told you that Sheene
10 Friend was unable to make an identification in
11 the Sorrell shooting, is that something that you
12 would have documented or captured within the
13 State's Attorney's file.
14     MR. COYNE: Objection; form, foundation.
15 Incomplete hypothetical. Requires the witness
16 to speculate.
17 BY THE WITNESS:
18     A. I can't answer that question, because
19 it requires me to speculate.
20 BY MR. STARR:
21     Q. Are you aware that Sheene Friend has
22 stated that when the police showed her a photo
23 array, she identified someone other than James
24 Fletcher?

64 (Pages 241 to 244)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 245

1  A.  I'm -- I'm unaware of having a -- I
2  have no independent recollection of having a
3  conversation with Ms. Friend.  I am unaware of
4  what she has -- has said in this case.  And I --
5  I have no independent recollection of that.
6  **Q.  Are you aware that Sheene Friend has**
7  **stated that after she identified someone**
8  **different in the photo array, the police pointed**
9  **her at James Fletcher's photograph?**
10  A.  I'm not aware of that --
11  MS. WEST:  Misstates -- sorry.  Let me just
12  get a belated objection on --
13  THE WITNESS:  Sorry.
14  MS. WEST:  -- that it misstates the record.
15  Go ahead.
16  BY THE WITNESS:
17  A.  I am not aware of that.
18  BY MR. STARR:
19  **Q.  Did Sheene Friend ever tell you that**
20  **the police unduly influenced her identification**
21  **of James Fletcher?**
22  A.  I do not recall that.
23  **Q.  If Sheene Friend had told you that the**
24  **police unduly influenced her identification of**

Page 246

1  **James Fletcher in the Willie Sorrell homicide,**
2  **would you have necessarily documented that or**
3  **captured it within the State's Attorney's file?**
4  MR. COYNE:  Objection; form, foundation.
5  Incomplete hypothetical and requires the witness
6  to speculate.
7  BY THE WITNESS:
8  A.  Because I would have to speculate to
9  answer that question, I cannot answer it.
10  BY MR. STARR:
11  **Q.  Because there is no documentation in**
12  **the record that you ever indicated that either**
13  **the police or Sheene Friend told you that they**
14  **had un- -- the police had unduly influenced her**
15  **identification of James Fletcher, is it safe to**
16  **assume that you never learned that?**
17  MR. COYNE:  Objection.  Form, foundation,
18  incomplete hypothetical, and argumentative.
19  BY THE WITNESS:
20  A.  It -- I would have to speculate to
21  answer that question, so I can't.
22  BY MR. STARR:
23  **Q.  You had concerns about Sheene Friend's**
24  **identification of James Fletcher, correct?**

Page 247

1  MR. COYNE:  Objection.  Mischaracterizes the
2  testimony and assume facts not in evidence,
3  form.
4  And I would remind you of the
5  admonition previously given, Ms. Walker, under
6  Federal Rule 26 regarding your work product
7  doctrine privilege.
8  MR. HOLMES:  Joined as to the Office as to
9  deliberative process privilege.
10  BY THE WITNESS:
11  A.  I don't recall that.  I don't recall --
12  I don't have an independent basis of knowledge
13  for -- for any conversation I may have had with
14  Ms. Friend.
15  BY MR. STARR:
16  **Q.  If you had learned any evidence --**
17  **strike that.**
18  **If you had learned that Sheene Friend's**
19  **identification of James Fletcher was false,**
20  **would you have turned -- would you have**
21  **documented that or captured that information in**
22  **the State's Attorney's file?**
23  MR. COYNE:  Objection; form, foundation.
24  Requires speculation.  Incomplete hypothetical.

Page 248

1  BY THE WITNESS:
2  A.  I can't answer that question without
3  speculating, so I'm not able to answer.
4  BY MR. STARR:
5  **Q.  If you had learned that Sheene**
6  **Friend -- strike that.**
7  **If Sheene Friend told you that she had**
8  **falsely identified James Fletcher, you would**
9  **have an ethical obligation and duty to disclose**
10  **that; wouldn't you have?**
11  MR. COYNE:  Objection; form, foundation,
12  incomplete hypothetical, and requires the
13  witness to speculate.
14  MR. HOLMES:  26(a)(2) objection as to the
15  Office.
16  BY THE WITNESS:
17  A.  I can't answer that question without
18  speculating.
19  BY MR. STARR:
20  **Q.  Did Sheene Friend tell you anything**
21  **exculpatory about the Willie Sorrell homicide**
22  **and the criminal prosecution of James Fletcher**
23  **that you did not document?**
24  MR. COYNE:  Foundation.

65 (Pages 245 to 248)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 249

1    BY THE WITNESS:
2        A.  I do not recall and I do not have an
3    independent basis of knowledge as to what
4    Ms. Friend may or may not have told me.
5    BY MR. STARR:
6        Q.  Sheene Friend also had pending criminal
7    charges against her when she was interviewed by
8    the Chicago police; isn't that correct?
9        MR. COYNE:  Objection, foundation.
10   BY THE WITNESS:
11       A.  I do not recall that.
12   BY MR. STARR:
13       Q.  Do you know if there were any deals or
14   promises made to Sheene Friend in exchange for
15   her statement?
16       MR. COYNE:  Objection, form.
17   BY THE WITNESS:
18       A.  I do not -- I do not recall that, and I
19   do not know.
20   BY MR. STARR:
21       Q.  Do you have any independent
22   recollection of a witness by the name of Emmett
23   Wade?
24       A.  I -- I do not.

Page 250

1        Q.  Do you know whether or not you actually
2    were the person that went out to Emmett Wade's
3    home with Detectives Bogucki and Schalk?
4        A.  I don't -- I don't have a recollection
5    of -- of that conversation, so I can't say.
6        Q.  Do you recall that exhibit we looked at
7    earlier that -- the declarations of Emmett Wade
8    in which he indicated that the detectives came
9    out with what he thought was a tall, slender
10   State's Attorney, correct?
11       A.  I -- I saw that, yes.  I read that.
12       Q.  All right.  Are you aware of any other
13   State's Attorneys that worked on the Willie
14   Sorrell homicide investigation?
15       A.  In the Felony Review stage?
16       Q.  Yes.
17       A.  I am not.
18       Q.  Are you aware that Emmett Wade has
19   signed a declaration stating that the police
20   came to his home and showed him a single photo
21   of someone named Fletcher and asked him to
22   identify him in the Willie Sorrell shooting?
23       MR. COYNE:  Object as to form.  Asked and
24   answered.

Page 251

1        Go ahead.
2    BY THE WITNESS:
3        A.  I am aware of the declaration that
4    we -- was used an exhibit earlier today.
5    BY MR. STARR:
6        Q.  Did the police ever tell you that they
7    went to Willie Sorrell's home and showed him a
8    single photo of James Fletcher and asked him to
9    identify him as the shooter in the Willie
10   Sorrell homicide?
11       A.  I do not recall that.
12       Q.  If the police had told you that they
13   had done that, is that something that you would
14   have documented or captured within the State's
15   Attorney's file?
16       MR. COYNE:  Objection; form, foundation.
17   Incomplete hypothetical and requires the witness
18   to speculate.
19   BY THE WITNESS:
20       A.  I can't answer that, as it requires me
21   to speculate.
22   BY MR. STARR:
23       Q.  Did Emmett Wade ever tell you that the
24   police showed him a single photo and asked him

Page 252

1    to identify that photo as the person who shot
2    Willie Sorrell?
3        A.  I do not recall that.
4        Q.  If the police -- if Emmett Wade had
5    told you that the police had showed him a single
6    photo of James Fletcher and asked him to
7    identify James Fletcher as the shooter of the
8    Sorrell homicide, is that something that you
9    would have documented or captured within the
10   State's Attorney file?
11       MR. COYNE:  Objection; form, foundation.
12   Incomplete hypothetical and requires the witness
13   to speculate.
14   BY THE WITNESS:
15       A.  As I would have to speculate, I
16   would -- I can't answer that question.
17   BY MR. STARR:
18       Q.  Because we have no document -- strike
19   that.
20           Because there is no documentation in
21   the record that was made by you that you learned
22   either from the police or from Mr. Wade that the
23   police showed Mr. Wade a single photo of James
24   Fletcher and asked him to ID him as the shooter

66 (Pages 249 to 252)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 253

1  in the Sorrell homicide, is it safe to assume
2  that you never learned that?
3       MR. COYNE: Objection; form, foundation,
4  incomplete hypothetical. Requires speculation
5  and argumentative.
6  BY THE WITNESS:
7       A. I can't answer that, because it
8  requires me to speculate.
9  BY MR. STARR:
10      Q. Are you aware that Mr. Wade has
11  testified in this civil case that when the
12  police came to his house and showed him the
13  single photograph, that the person that he
14  thought was the State's Attorney was also
15  present in his home?
16      A. I'm unaware of any testimony in the
17  civil case. I am unaware of any other testimony
18  given by Mr. Wade.
19      Q. Are you aware that Mr. Wade has
20  testified in this civil case that when the
21  police showed him the single photo, he has
22  testified that he does not think that the
23  State's Attorney was within physical proximity
24  enough to see what was happening between him and

Page 254

1  the police?
2       A. I'm unaware of -- of Mr. Wade's -- the
3  contents of Mr. Wade's testimony in the civil
4  case. And until you said he did, I'm unaware
5  that he testified at all.
6       Q. If Mr. Wade has testified that based on
7  his recollection the person he thought was the
8  State's Attorney was not in a physical proximity
9  to see what the police were showing him, do you
10  have any reason to doubt his representation?
11      MS. WEST: Objection.
12      MR. COYNE: Objection; form, foundation,
13  incomplete hypothetical and requires
14  speculation.
15      MS. WEST: Objection. Misstates the record
16  and speculation.
17  BY THE WITNESS:
18      A. Because I would have to speculate, I
19  cannot answer.
20  BY MR. STARR:
21      Q. Did Mr. Wade tell you anything
22  exculpatory about the police investigation into
23  the shooting of Willie Sorrell or the criminal
24  prosecution of James Fletcher?

Page 255

1       A. I don't have any independent
2  recollection of speaking with Mr. Wade.
3       Q. Did Mr. Wade tell you anything about
4  his inability or ability to identify
5  Mr. Fletcher in the shooting of Willie Sorrell?
6       A. I don't have any independent
7  recollection of a conversation with Mr. Wade.
8       Q. Do you have any involvement in the
9  appeal that Mr. Fletcher filed?
10      A. No.
11      Q. Were you contacted at all during the
12  pendency of Mr. Fletcher's postconviction
13  petition by anybody in the State's Attorney's
14  Office to opine about your role in the case?
15      MR. HOLMES: I object on behalf of the
16  State's Attorney's Office on grounds of
17  deliberative process privilege and instruct the
18  witness not to answer to the extent that her
19  answer would reflect communications or
20  deliberations by the Office in regard to any
21  appeal proceedings involving Mr. Fletcher.
22      MR. COYNE: Yeah. Actually, can I hear the
23  question back, too, Kari? Part of it I didn't
24  hear.

Page 256

1       MR. STARR: Let me -- let me just ask it
2  again. I will ask it -- I don't know if this is
3  going to solve the problem.
4  BY MR. STARR:
5       Q. Did you have -- do you recall having
6  any involvement in the postconviction
7  proceedings of James Fletcher?
8       A. I do not recall that.
9       Q. Did anyone interview you during the
10  pendency of the postconviction petition that
11  James Fletcher filed in his case?
12      MR. HOLMES: Objection. I --
13      THE WITNESS: Sure.
14      MR. HOLMES: The objection is on the grounds
15  of deliberative process privilege on behalf of
16  the Office and instruct the witness not to
17  answer to the extent her answer would reveal
18  communications or deliberations of the office in
19  regard to those proceedings just referenced by
20  counsel.
21  BY THE WITNESS:
22      A. I do not recall that happening.
23  BY MR. STARR:
24      Q. Okay. I have to ask you some specific

67 (Pages 253 to 256)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 257

1 questions about your awareness of police
2 misconduct that have been alleged in this case.
3 The defendants in Mr. Fletcher's civil case made
4 claim that the prosecutors had knowledge of the
5 defendant's alleged mis- -- police misconduct.
6 Given your answers about your independent
7 recollection, we may have to approach some of
8 these question as hypothetical, but I'm going to
9 ask them anyways.
10      Ma'am, did you obstruct James
11 Fletcher's right to counsel?
12      MR. COYNE: Objection; form, foundation.
13 BY THE WITNESS:
14      A. I don't recall that.
15 BY MR. STARR:
16      Q. Okay. Were you aware at any point
17 during the prosecution -- strike that.
18      Were you aware at any point during the
19 investigation of the Willie Sorrell homicide or
20 the prosecution of James Fletcher for that crime
21 that the Chicago police engaged in misconduct?
22      A. I --
23      MR. COYNE: Objection to form.
24 BY THE WITNESS:

Page 258

1      A. I am not aware of that.
2 BY MR. STARR:
3      Q. During the investigation of the Willie
4 Sorrell homicide and the prosecution of James
5 Fletcher, did you become aware at any point that
6 the Chicago police engaged in witness coercion
7 in this case?
8      MR. COYNE: Objection, form.
9 BY THE WITNESS:
10      A. I'm not aware of that.
11 BY MR. STARR:
12      Q. Did you ever become aware that the
13 Chicago police made promises to any of the
14 witnesses in this case?
15      MR. COYNE: Objection, form.
16 BY THE WITNESS:
17      A. I am not aware of that.
18 BY MR. STARR:
19      Q. Did you ever become aware that the
20 Chicago police threatened any of the witnesses
21 in this case?
22      A. I am not aware of that.
23      Q. Did you ever become aware that Chicago
24 police fed facts to the witnesses to implicate

Page 259

1 Mr. Fletcher?
2      MR. COYNE: Objection, form.
3      THE WITNESS: I am not aware of that.
4 BY MR. STARR:
5      Q. During the pendency of the Sorrell
6 homicide investigation and the prosecution of
7 James Fletcher, did you ever become aware of any
8 undisclosed Chicago police reports?
9      MR. COYNE: Objection, foundation and form.
10 BY THE WITNESS:
11      A. Undisclosed to who?
12 BY MR. STARR:
13      Q. Undisclosed to the criminal defense.
14      A. I am not aware of that.
15      Q. During the pendency of the Willie
16 Sorrell homicide investigation and the
17 prosecution of James Fletcher, did you ever
18 become aware of any false facts in any of the
19 Chicago police reports?
20      MR. COYNE: Objection, form.
21 BY THE WITNESS:
22      A. I am not aware of that.
23 BY MR. STARR:
24      Q. During the pendency of the Willie

Page 260

1 Sorrell homicide investigation and the
2 prosecution of James Fletcher, did you ever
3 become aware of any Chicago police fabrication
4 of evidence?
5      A. I am not aware of that.
6      Q. During the pendency of the Willie
7 Sorrell homicide investigation and the
8 prosecution of James Fletcher, did you ever
9 become aware of the Chicago police concealing
10 any exculpatory evidence?
11      A. I am not aware of that.
12      Q. If you had become aware of any of the
13 things that I just listed for you, would you
14 have turned that information over either in the
15 form -- either to the defense attorneys, or
16 would you have documented it the State's
17 Attorney's file?
18      MR. COYNE: Objection; form and foundation.
19 Incomplete hypothetical and requires the witness
20 to speculate.
21 BY THE WITNESS:
22      A. I cannot answer that because it
23 requires me to speculate.
24 BY MR. STARR:

68  (Pages 257 to 260)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 261

1    Q.  Do you have any involvement in the
2   criminal prosecution of James Fletcher?
3       A.  No.
4       Q.  What do you understand undue or
5   wrongful influence in the context of police
6   identification procedures to mean?
7       MR. COYNE:  Objection; form, foundation.
8       MR. HOLMES:  26(a)(2) objection on behalf of
9   the Office.
10  BY THE WITNESS:
11      A.  Could you repeat the question, please.
12  BY MR. STARR:
13      Q.  Yeah.  Just in the interest of time,
14  I'm just going to give you my deposition --
15  definition and see if you agree with it.
16          When I say undue or wrongful influence
17  on identification procedures, what I'm referring
18  to is influence by which a person is induced to
19  act otherwise than by their own free will or
20  without adequate attention to the consequences.
21          Does that make sense?
22      A.  Yes.
23      MR. COYNE:  Objection, form.
24  BY MR. STARR:

Page 262

1       Q.  Okay.  Did Detective Bogucki -- strike
2   that.
3           Did you ever ask Detective Bogucki if
4   he ever unduly influenced any of the
5   identification procedures that occurred during
6   the police investigation in this case?
7       A.  I --
8       MR. COYNE:  Objection, form.
9   BY THE WITNESS:
10      A.  I do not recall that.
11  BY MR. STARR:
12      Q.  Do you ever asking Detective Schalk
13  that?
14      A.  I do not recall that.
15      Q.  When did you first become aware that
16  there were allegations that Detectives Bogucki
17  and Schalk had unduly influenced any of the
18  identifications?
19      A.  When I was preparing for this
20  deposition.
21      Q.  Have you ever become aware that there
22  are other allegations by other individuals
23  regarding Detectives Bogucki and Schalk unduly
24  influencing identification procedures in other

Page 263

1   cases?
2       MR. COYNE:  Objection, form and foundation.
3   BY THE WITNESS:
4       A.  I am not aware of that.
5   BY MR. STARR:
6       Q.  If you had -- during the Willie Sorrell
7   prosecution while you were working on it as a
8   Felony Review prosecutor and you had learned
9   that Detectives Bogucki and Schalk had unduly
10  influenced other identification procedures in
11  other cases, would you have documented that?
12      MR. COYNE:  Objection; form, foundation.
13  Incomplete hypothetical.  Requires the witness
14  to speculate.
15  BY THE WITNESS:
16      A.  It requires me to speculate.  I cannot
17  answer.
18      MR. COYNE:  Yeah.  I need -- I need to take a
19  break.  I've tried to delay it as much as
20  possible.  I will try to make it ten minutes,
21  so --
22      MR. STARR:  John, I've got -- I've got like
23  five more questions.
24      MR. COYNE:  All right.  Well, just let me do

Page 264

1   this.  You've got five questions?  Give me a
2   minute and a half then.
3       MR. STARR:  Okay.
4       MR. COYNE:  A minute and a half.
5       MR. STARR:  We are going off the record.
6           (Whereupon, a discussion was had
7               off the record.)
8   BY MR. STARR:
9       Q.  All right.  Ms. Walker, are you ready?
10      A.  Sure.
11      Q.  Okay.  At any time while there were
12  murder charges -- strike that.
13          At any time during the Willie Sorrell
14  homicide investigation or while there were
15  murder charges pending against James Fletcher,
16  did any member of the Chicago Police Department
17  ever inform you orally or in writing in any
18  way at all that either Detective Bogucki,
19  Detective Schalk, Detective Noradin, or Sergeant
20  Wojcik unduly influenced any of the
21  identification procedures in this case?
22      A.  I do not recall that.
23      Q.  Does knowing that James Fletcher has
24  been exonerated and received a certificate of

69  (Pages 261 to 264)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 265

1  innocence affect your opinion about whether or
2  not he is guilty?
3      MR. COYNE: Objection; form, foundation.
4  Calls for speculation, and also if -- I would
5  instruct you not to answer any questions,
6  including this question, Jennifer, if it would
7  need or require you to offer your opinion on the
8  evidence or your decision-making regarding this
9  case and the result of this case.
10     MR. HOLMES: On behalf of the Office, joined
11 on the ground of deliberative process privilege
12 and same guidance and same instruction.
13 BY THE WITNESS:
14     A. Would you repeat the question, please?
15 BY MR. STARR:
16     Q. Yeah.
17         Does learning that Mr. Fletcher has
18 been exonerated and has received the certificate
19 of innocence have any bearing whatsoever on your
20 opinion of whether or not he is guilty or
21 innocent of the Willie Sorrell homicide?
22     MR. COYNE: Same objection. Same
23 instruction.
24     MR. HOLMES: Same guidance and instruction.

Page 266

1  BY THE WITNESS:
2      A. I can't answer that.
3  BY MR. STARR:
4      Q. Why can't you answer that?
5      MR. HOLMES: Same guidance and answer.
6      MR. COYNE: Agreed -- join. Same as before
7  given.
8  BY THE WITNESS:
9      A. It would require me to just -- it would
10 require me to get into work product and
11 deliberative process, so I can't answer that.
12 BY MR. STARR:
13     Q. So are you taking your attorney's
14 recommendation and refusing to answer my
15 question?
16     A. I am.
17     Q. Okay. Do you have any opinion about
18 whether or not James Fletcher is guilty or
19 innocent of the murder of Willie Sorrell?
20     MR. COYNE: Objection, foundation.
21     MR. HOLMES: Deliberative process objection
22 on behalf of the Office.
23     MR. COYNE: You do not -- if you answer --
24 you can answer the question. The question is

Page 267

1  whether you have an opinion, Jennifer. But I
2  would instruct you not to answer if you -- to
3  the extent you do have an opinion and as to what
4  that opinion may be.
5  BY THE WITNESS:
6      A. I do not have an opinion.
7      MR. STARR: John, I realize I want to ask her
8  a question about one of the exhibits that
9  Allyson used.
10         Do you have time to spare now, or where
11 are you at?
12     MR. COYNE: I've got about -- I've got
13 about -- I'm pushing this back based on your
14 representation of five questions, Sean. That
15 was an agreement we had. I recognize you as a
16 man of integrity, so I will roll about five more
17 minutes, but then I am going to have to -- I'm
18 going to have to take a much longer break.
19     MR. STARR: Okay. All right. Let me do my
20 best here.
21 BY MR. STARR:
22     Q. All right. This is -- I'm trying to
23 share my screen.
24         Do you see the screen, ma'am?

Page 268

1      (Walker Exhibit No. 1 published
2       to Zoom participants.)
3  BY THE WITNESS:
4      A. Yes.
5  BY MR. STARR:
6      Q. Okay. I just wanted to ask you just a
7  couple of questions. Allyson shared this. I
8  believe this is marked as Exhibit No. 1.
9         This is the State's Attorney's file,
10 correct?
11     A. It's the Felony Review folders, yes.
12     Q. Okay.
13     A. Or it -- or it looks like Felony Review
14 folders. That's what it looks like.
15     Q. Okay.
16     A. And they say James Fletcher on them.
17     Q. And on 3015 -- Bates 3015.
18         Do you see that down at the bottom,
19 ma'am?
20     A. Could you -- what's the date at the top
21 of the Felony Review file, please? The 13th?
22 Okay.
23     Q. February 13, '02.
24     A. I found it. I found the page, yes.

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 269

1    Q.  Okay.  I'm just going to zoom in a
2  little bit.  And this section here on the bottom
3  right-hand side, we looked at this earlier.
4    Do you recall that, ma'am?
5    A.  Yes.
6    Q.  And it says, "defendant in photo lineup
7  on 13 February '02," and then it says, "oral" --
8  something crossed out -- "only - no grand jury
9  per ASA O'Brien."
10    Do you see that, ma'am?
11    A.  I -- I see those words, yes.
12    Q.  What is -- what does "no grand jury"
13  mean to you, ma'am?
14    MS. WEST:  Objection.  Asked and --
15    MR. COYNE:  First of all, this question has
16  been asked and answered.  And we -- it was fully
17  vetted -- prior in the deposition, number
18  one.
19    Number two, the same instruction.  The
20  witness -- as you may recall, Sean, we took a
21  break for the witness to confer with counsel,
22  and the witness stated that she could not answer
23  this question based upon work product and/or
24  deliberative process privilege.

Page 270

1    So this has all been gone over.  We're
2  just retreading material that's already been
3  addressed in this -- and resolved in this
4  deposition earlier, just for the record.
5    MR. STARR:  I don't know if I would agree
6  that it was resolved, but I'll try to reask it.
7  BY MR. STARR:
8    Q.  Is that a -- is that a notation that
9  you would commonly see in a State's Attorney's
10  Felony Review file?
11    MR. COYNE:  Objection, form.
12  BY THE WITNESS:
13    A.  I'm not sure what you mean by "commonly
14  see."  It is -- it's a notation that could be
15  seen in a Felony Review file based on my
16  experience in Felony Review review back in 2002.
17  BY MR. STARR:
18    Q.  Is one of the reasons why that notation
19  might be made as a general matter of practice
20  because the witness may not be a good witness to
21  testify to the grand jury?
22    MR. COYNE:  Objection; form, foundation.
23  Once again, this line of questioning has been
24  precluded by the witness's invocation of the

Page 271

1  work product privilege earlier that she could
2  not answer questions regarding that indication,
3  because it would require her to reveal
4  privileged material.
5    So the same instruction as earlier
6  given, Jennifer.
7    MR. HOLMES:  I object on behalf of the
8  State's Attorney's Office on the grounds of
9  deliberative process privilege and instruct the
10  witness not to answer to the extent her answer
11  would reveal deliberations of the Office in
12  reference to charging decisions and grand jury
13  presentations.
14  BY MR. STARR:
15    Q.  Are you going to take your attorney's
16  instruction and not answer my questions?
17    A.  Yes.
18    Q.  And maybe I can short-circuit this.
19    Are you going to take that same
20  instruction and refuse to answer any questions I
21  might ask you about this notation of "no grand
22  jury"?
23    A.  Most likely.
24    Q.  Okay.  Let me ask you some questions

Page 272

1  about 3024, which I will see if I can give you
2  the date as well.  I believe the date is
3  March 16, 2002 on this one.
4    A.  All right.
5    Q.  Okay.  Do you see this 3024 down here?
6    A.  Yes.  I see -- I have that --
7    Q.  Okay.
8    A.  -- in front of me.
9    Q.  It's this box about the witness Emmett
10  Wade.
11    A.  Yes.
12    Q.  Okay.  And do you see the "Means of ID"
13  column here?
14    A.  I -- yes.  The row?
15    Q.  Yeah.  And so there is several
16  different categories within this:  "Photo Array,
17  Lineup Show-up, Knows Defendant," and one that
18  says, "No ID."
19    Do you see that?
20    A.  Well, I see "Means of ID.  Knows" -- I
21  see "Means of ID" -- where did I -- where was
22  it?  "Photo Array, Lineup, Show-up, Knows
23  Defendant," and then I see a scribble.
24    Q.  Yeah.  If you look closely at it it

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

---

Page 273

1    says, "No ID."  Or if you look in the next box
2    down you can see that that is where "No ID"
3    falls, correct?
4        A.  Correct.
5        Q.  Do you know why there is a scribble
6    over "No ID" there?
7        MR. COYNE:  Objection, foundation.
8    BY THE WITNESS:
9        A.  I do not.
10   BY MR. STARR:
11       Q.  Okay.  And this purports to be an
12   interview with Mr. Wade that occurred on
13   March 16th, 2002, correct?
14       A.  Well --
15       MR. COYNE:  Object, asked and answered.  This
16   was all gone over before.
17       Go ahead.  You can answer it all again.
18   BY THE WITNESS:
19       A.  So I don't recall making this document.
20   Although, the handwriting does look like it
21   could be my handwriting.  I don't have any
22   independent recollection of my -- any
23   conversation with Mr. Wade.  I do see the words
24   on the page, and the document says what it says.

Page 274

1    BY MR. STARR:
2        Q.  Okay.  And so my question is, is it
3    your understanding that this is an interview
4    that took place on March 16, 2002?
5        MR. COYNE:  Objection, foundation.
6    BY THE WITNESS:
7        A.  The -- the document says there was an
8    interview by ASA Walker on March 16th of 2002.
9    BY MR. STARR:
10       Q.  Okay.  And then on 3030, which the date
11   is April 20, 2002, there is a date at the top
12   there.
13       This is a -- this is appears to be
14   another interview with Mr. Wade, correct?
15       MR. COYNE:  Objection, foundation.  Asked and
16   answered.
17   BY THE WITNESS:
18       A.  Well, this is another document that I
19   do not have an independent recollection of
20   creating.  I do not recollect having any --
21   having a conversation with Mr. Wade as I sit
22   here today.  The document says the words
23   "interviewed by ASA Walker March -- 16 Mar 02"
24   on -- in that -- in that box, but I don't

Page 275

1    understand -- when you say it looks like another
2    interview, I don't know what that is.
3        MR. COYNE:  And let me interject.
4        Sean, in all -- in all -- at long last,
5    okay, there they have been multiple material
6    representations of how much more time you had.
7    You have said five more questions.  It's now
8    been more than ten.  You've said five more
9    minutes.  I have allowed that.
10       Now, I have to take a break, a
11   significant break, because I have awaited and in
12   good faith relied upon your representations, and
13   I shouldn't have.  So I'm just telling you.
14       MR. STARR:  John, John --
15       MR. COYNE:  I have to take a break.
16       MR. STARR:  I also didn't expect you to have
17   to take a break for your own private practice
18   during this deposition.
19       MR. COYNE:  Well, this -- you know, it's --
20   when I have to take a break of -- for is my
21   business.  The fact is I haven't taken any
22   significant break other than taking an emergency
23   phone call that lasted approximately three
24   minutes.

Page 276

1        Now, if you're going to make
2    representations, Sean, you should stick by them,
3    because otherwise people rely on them to their
4    detriment.
5        MR. STARR:  You can admonish your client.
6    You're not going to admonish me, John.
7        MR. COYNE:  I'm not admonishing you.  I'm
8    just saying you have made material
9    representations.  Those representations have
10   been replied upon, and you have violated those
11   representations --
12       MR. STARR:  And just like --
13       MR. COYNE:  -- for the record.
14       MR. STARR:  -- we scheduled the deposition
15   for 10:00 today.  We didn't anticipate you
16   taking a personal break to do your own work.
17       MR. COYNE:  You can go until 8:00 if you
18   want.  What I said was I need a break, and that
19   is not unreasonable, nor is it unexpected, and
20   it's going to have to last a significant period
21   of time.  Now, I --
22       MR. STARR:  I will --
23       THE COURT REPORTER:  I'm sorry.  I can't get
24   both people speaking at once.

72  (Pages 273 to 276)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 277

1    MR. COYNE: Let me finish, Sean. I will wait
2  until 4:50. At 4:50 I'm leaving for 25 minutes.
3    MR. STARR: Okay. I will be done at 4:50,
4  John.
5    MR. COYNE: All right.
6  BY MR. STARR:
7    Q. Ms. Walker, do you see this document in
8  front of you?
9    A. I do.
10    Q. Is this the page you referred to
11  earlier as being the page that you're not sure
12  who wrote this page?
13    A. Correct.
14    Q. Okay. And do you see -- you reviewed
15  this in preparation, right?
16    A. Yes.
17    Q. Okay. And do you see on this page
18  letter C it says, "Sheene Friend -
19  inconsistent/17 years old at the time"?
20    A. I see those words, yes.
21    Q. Do you know who wrote this, ma'am?
22    A. I have no idea.
23    Q. Do you have any recollection of
24  thinking that Sheene Friend's identification of

Page 278

1  Mr. Fletcher was inconsistent?
2    MS. WEST: Objection, foundation.
3    MR. COYNE: Objection. The same instruction
4  as work product given earlier.
5    MR. HOLMES: Same instruction and same
6  guidance as to deliberative process privilege.
7  BY MR. STARR:
8    Q. Are you going to refuse to answer my
9  question, ma'am?
10    A. Yes.
11    Q. Okay. Does this document indicate to
12  you that somebody in the State's Attorney's
13  Office thought that Ms. Friend's identification
14  of Mr. Fletcher was inconsistent?
15    MS. WEST: Objection.
16    MR. COYNE: Objection; foundation,
17  speculation. Same instruction.
18    MS. WEST: Same. Sorry. It also misstates
19  or interprets a document that speaks for itself.
20  BY THE WITNESS:
21    A. I have no idea who created that
22  document or where it came from.
23  BY MR. STARR:
24    Q. But it's part of the State's Attorney's

Page 279

1  file, correct?
2    A. I have no idea.
3    Q. Okay. My last question is this: Based
4  on the documents we looked at earlier, your
5  initial -- strike that.
6    Based on the documents it appears that
7  your initial interview with Mr. Rogers took
8  place on February 13, 2002.
9    Do you remember seeing that?
10    A. I --
11    MS. WEST: Asked and answered.
12  BY THE WITNESS:
13    A. I have no independent recollection of
14  any conversation I had with Mr. Rogers, and I
15  don't know when that took place.
16  BY MR. STARR:
17    Q. Okay.
18    A. If I -- if I spoke with him, I don't
19  know when that happened.
20    Q. If I represent to you that Mr. Rogers's
21  handwritten statement was taken on May 8th,
22  2002, would you believe that representation?
23    MR. COYNE: Objection. Foundation,
24  speculation, and form.

Page 280

1  BY THE WITNESS:
2    A. I -- I'm not trying to fight with you
3  that that wasn't the date, but I don't have an
4  independent recollection that it was.
5  BY MR. STARR:
6    Q. Do you know why three months elapsed
7  between the initial interview of Mr. Rogers and
8  his handwritten statements?
9    MR. COYNE: Objection; foundation,
10  speculation.
11  BY THE WITNESS:
12    A. I do not.
13  BY MR. STARR:
14    Q. Do you recall looking at that
15  handwritten statement earlier?
16    A. Prior -- to prepare for today? Yes.
17    Q. And then we looked at during the course
18  of the deposition, correct?
19    A. Yes.
20    Q. Okay. Last -- I'm just going to show
21  it to you.
22    Do you see this document on your
23  screen?
24

73 (Pages 277 to 280)

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 281

1          (Walker Exhibit No. 4 published
2          to Zoom participants.)
3    BY THE WITNESS:
4        A.  Yes.
5    BY MR. STARR:
6        Q.  And I think we marked this as Exhibit
7    No. 4.
8            Ma'am, do you know why Detective
9    Bogucki's name and Detective Schalk's name are
10   on this document, but then they are crossed out?
11       A.  I don't recall, and I would have to
12   speculate to answer.
13       Q.  Do you know if Detective Bogucki and
14   Detective Schalk sat in on this statement that
15   Terry Rogers purportedly gave in May 8th, 2002?
16       MR. COYNE:  Objection, form and foundation.
17   BY THE WITNESS:
18       A.  I don't have -- I don't have an
19   independent recollection of the -- of
20   conversations with Mr. Rogers or taking
21   Mr. Rogers's statement, so I can't answer
22   without speculating.
23       MR. STARR:  Okay.  Okay.  I'm -- for the
24   record, I'm just going to state that I'm going

Page 282

1    to end my questions now understanding, John,
2    that you have something to take care of.
3    If Ms. West attempts to bring back this witness,
4    I will have additional questions, but for the
5    purposes of what we discussed on the record and
6    not to belabor the point, I will -- I have no
7    further questions.
8        MR. COYNE:  All right.
9        MS. WEST:  I don't have anything else.
10       MR. COYNE:  Jennifer, you have the right to
11   review your transcript.  I would reserve that
12   right.  You may want to -- I would suggest -- so
13   the witness reserves signature, and thank you,
14   everyone.
15       MR. STARR:  Thank you.
16       MS. WEST:  Thank you, Ms. Walker.
17       THE COURT REPORTER:  Do you need to order the
18   transcript, Ms. West?
19       MS. WEST:  Yes, please.
20       THE COURT REPORTER:  Any copy orders?
21       MR. COYNE:  No, none here.
22       MR. STARR:  None.
23       MR. HOLMES:  I don't, Kari.  Thank you.
24

Page 283

1           (Deposition concluded at
2    4:48 p.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

74 (Pages 281 to 283)

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

```
                                              Page 284

 1           IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   JAMES FLETCHER JR.,          )
                                  )
 4         Plaintiff,             )
                                  )
 5    vs.                         ) No. 20 CV 4786
                                  )
 6   JEROME BOGUCKI, ANTHONY      )
     NORADIN, RAYMOND SCHALK,     )
 7   ANTHONY WOJCIK, UNKNOWN      )
     CITY OF CHICAGO POLICE       )
 8   OFFICERS, and the CITY       )
     OF CHICAGO,                  )
 9                                )
           Defendants.           )
10

11           I, JENNIFER WALKER, being first duly

12   sworn, on oath say that I am the deponent in the

13   aforesaid deposition taken on February 14, 2024;

14   that I have read the foregoing transcript of my

15   deposition, and affix my signature to same.

16                 _____
                        JENNIFER WALKER
17

18   Subscribed and sworn to
     before me this _____ day
19   of _____ , 2024.

20

21   _____
     Notary Public
22

23

24
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 285

1          IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF ILLINOIS

3                 EASTERN DIVISION

4          I, Kari Wiedenhaupt, Certified

5     Shorthand Reporter, do hereby certify that on

6     February 14, 2024, the deposition of the

7     witness, JENNIFER WALKER, called by the

8     Defendant, was taken before me, reported

9     stenographically, and was thereafter reduced to

10    typewriting under my direction.

11          The said deposition was taken via

12    videoconference, and there were present counsel

13    as previously set forth.

14          The said witness, JENNIFER WALKER, was

15    first duly sworn to tell the truth, the whole

16    truth, and nothing but the truth, and was then

17    examined upon oral interrogatories.

18          I further certify that the foregoing

19    is a true, accurate, and complete record of the

20    questions asked of and answers made by the said

21    witness, JENNIFER WALKER, on the date and time

22    hereinabove referred to.

23          The signature of the witness, JENNIFER

24    WALKER, was reserved by agreement of counsel.

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 286

1           The undersigned is not interested in

2    the within case, nor of kin or counsel to any of

3    the parties.

4           Witness my signature as a Certified

5    Shorthand Reporter in the State of Illinois, on

6    March 5th, 2024.

7

8

9

10

11

12

13

14

_____
15    Kari Wiedenhaupt, CSR
      161 North Clark Street
16    Suite 3050
      Chicago, Illinois 60601
17    Phone:  312.361.8851

18    CSR No. 084-003582

19

20

21

22

23

24

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 287

**A**

**a.m** 1:19
**A5** 115:21,23
**ABA** 179:13
**abbreviation** 23:6 59:16
**abbreviations** 58:7,23 59:6,9
**Aberdeen** 2:3
**abided** 55:9
**ability** 255:4
**able** 18:22 27:17 27:18 60:8,20 94:18 137:3 158:4 174:4 214:5,9 217:4 226:10 227:10 229:14 248:3
**absent** 133:3 153:17 156:1
**absolutely** 8:18 23:22 131:22 196:13
**abstentia** 59:17
**access** 48:7,9 161:23
**accuracy** 101:14 102:7
**accurate** 195:4,8 195:9,14,21 196:3,8 285:19
**accused** 190:2
**acknowledged** 153:17
**act** 130:11,12 132:16 133:7 141:8,20 142:22 143:19 153:19 155:19 155:20 156:6 158:1 174:20 261:19
**acted** 81:19 87:2 120:13

**acting** 141:10 193:1
**action** 21:2,22 24:22 44:10 87:12,16,22 121:9
**actions** 22:2
**actual** 33:19
**add** 107:22,24 109:16 153:12
**addition** 29:9 164:16
**additional** 89:7 97:20 99:24 107:22 282:4
**address** 46:24 134:6 212:10 214:7,17 216:5 216:14
**addressed** 270:3
**adequate** 261:20
**adhere** 189:14 190:6
**adhered** 191:19
**admissible** 181:1
**admit** 189:6
**admonish** 237:24 276:5,6
**admonishing** 276:7
**admonition** 55:20 113:3 131:11 133:8 155:18 208:22 247:5
**advise** 59:17 69:13
**advised** 69:7 71:10 85:18
**affect** 134:20 265:1
**affidavit** 143:24 234:24
**affix** 284:15

**aforesaid** 284:13
**afternoon** 159:12
**agencies** 193:6 193:20
**agency** 199:2
**ago** 48:6 177:20 190:22 191:8 202:1
**agree** 17:15 56:21 63:4 127:20 128:16 139:14 261:15 270:5
**agreed** 140:12 216:4,9 266:6
**agreement** 267:15 285:24
**Ah** 135:18
**ahead** 15:20 32:17 37:5 42:13,17 56:12 59:13 79:22 83:23 99:9 113:2 119:22 127:14 140:6 143:13 144:9 161:9 166:21 170:24 173:21 176:4 177:10 178:17,20 182:24 187:6 188:20 192:2 209:2 211:19 245:15 251:1 273:17
**alcohol** 80:8
**alike** 8:17
**allegations** 219:15,23 221:4,15 223:11,18 225:11,20 262:16,22

**alleged** 82:5 257:2,5
**allegedly** 28:23 227:5,10 228:2
**alleviated** 130:16
**allowed** 118:3 169:14 171:11 171:22 172:12 173:16 175:3 175:21 275:9
**Allyson** 2:13 5:14 17:11 53:9 57:9 60:14 106:9 114:13 134:4 153:17 157:4 215:14 216:3 267:9 268:7
**alternately** 29:10
**amend** 210:22
**amounted** 198:4
**analogues** 189:18
**and/or** 33:2 269:23
**answer** 22:22,23 23:4,9,11 24:13,14 26:7 26:9,13 27:5 29:10 31:9,12 46:20 50:5,10 51:2,10 52:13 54:2 57:17 66:4 70:7 78:13 81:15 86:10,23 90:16 91:2 101:11 112:19,24 113:6 114:9 120:10 132:20 133:4 141:5 142:20 143:15 151:10 153:10
**answered** 14:13 49:11 90:23 102:11 150:19 210:18 217:15 217:23 250:24 269:16 273:15 274:16 279:11
**answering** 22:19 158:18 209:20 236:9

153:20 154:7
155:17 156:15
158:4 160:4,8
167:9,14,17,17
167:19 169:24
170:8,9 173:7
174:17 178:3,4
178:6 180:15
181:17 185:3
189:9 192:16
199:13,15
200:13 209:1
210:22 211:18
211:22 212:3
231:3,5,11,16
233:7,21,23
237:14,16
238:7 239:11
240:4 241:10
242:8,23
244:18 246:9,9
246:21 248:2,3
248:17 251:20
252:16 253:7
254:19 255:18
255:19 256:17
256:17 260:22
263:17 265:5
266:2,4,5,11
266:14,23,24
267:2 269:22
271:2,10,10,16
271:20 273:17
278:8 281:12
281:21

**Royal Reporting Services, Inc.**
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 288

answers 257:6
285:20
Anthony 1:6,7
14:8 222:20
223:2 224:17
284:6,7
anticipate
230:10 276:15
anybody 255:13
anyway 66:15
anyways 257:9
AOR 84:3 85:15
85:16,17,19
121:23
apart 20:17 43:7
166:17 196:12
197:5
apologize 123:6
appeal 255:9,21
appear 41:16
44:13 65:9
75:15 84:19
101:6 102:23
110:17 124:11
129:14 146:1
157:13
APPEARAN...
2:1 3:1
appeared 8:7
appears 7:12,15
7:18,21 18:17
23:5 36:7
63:13 76:14
83:4,22 97:8
97:13 99:6
110:7 111:23
116:22 123:8
126:11,13
178:5 274:13
279:6
application
156:5
applies 189:6
apply 26:12
181:5,6 182:17

183:5
appreciate
17:12 188:19
approach 257:7
appropriate
131:1 153:18
156:2
approve 22:2
approved 87:23
88:2 91:17,19
121:7,11
approximately
134:9,13 215:4
275:23
Apr 115:21
April 102:19,24
103:7,24 104:7
104:14 106:23
107:6 108:8,20
115:24 117:8
274:11
area 10:20 68:22
118:10,20
119:15 127:1
162:12 224:9
argumentative
238:18 239:23
242:21 246:18
253:5
arguments
231:2
armed 21:17
28:19,22 78:10
Arnold 122:12
123:2
arrangements
11:12
array 54:8 61:14
61:17,19 62:2
62:4,5 65:1,14
65:15 94:11,22
94:23 95:5
114:6,21 115:2
124:21 145:6
147:21 148:14

226:11,13
227:11,19
236:13,19,21
237:2,3,20
238:14 242:1
244:23 245:8
272:16,22
arrest 8:9 87:23
88:1,5,18 90:1
90:2,5,21,22
91:7,8,11,16
91:19 102:22
103:8,9,12,17
arrested 102:24
103:16
arresting 90:12
arrow 110:12
ASA 11:7 22:6
27:15 29:22
36:18 37:11,24
38:20 39:3,3,5
40:21 48:19,22
52:3,8 55:11
62:24 63:13
68:1,10 70:13
84:1 88:21
89:4 96:14
97:10 100:5
101:1 104:7
105:12 110:7
116:4 121:17
121:18 124:15
146:14 180:12
181:22 183:15
185:10 186:20
187:15 188:7
189:14 269:9
274:8,23
ASA's 12:7
ASAs 21:24
105:5
asked 14:13
49:11 90:23
102:11 131:18
134:18 138:6

141:22 149:7
150:19 160:11
161:7,7 217:15
217:23 218:18
250:21,23
251:8,24 252:6
252:24 269:14
269:16 273:15
274:15 279:11
285:20
asking 32:18
115:10 153:10
154:8 164:10
166:18 176:22
188:12,15,18
195:19,23,23
198:10 202:12
202:14 238:22
262:12
assigned 11:3
15:16 39:24
160:12 161:4
161:16 163:13
165:11,12,18
165:21 184:11
184:21 186:24
191:24 194:14
207:23 209:24
218:11
assignment 9:10
32:22 165:9,21
183:22
assistance
175:10
assistant 9:23
11:3 12:16
69:7,13 80:1
81:24 98:12
104:24 128:24
143:2 146:10
146:21 147:12
174:4
assume 55:6
238:15 239:19
242:18 246:16

247:2 253:1
assumed 210:19
210:20
assuming
161:18 210:18
ate 215:6
ATIA 59:16
attached 67:1
attachment 7:11
203:6
attempt 165:19
attempts 282:3
attention 19:23
36:13 96:7
137:6 144:24
261:20
attorney 8:24
9:24 11:3
12:16 69:7,14
80:2 82:1
98:12 104:24
115:22,23
117:10,12,14
117:19 118:11
128:24 132:24
137:18 138:9
139:14 140:12
143:3 146:11
146:22 147:13
150:16 151:1,7
151:22 156:14
159:20 160:10
165:18,24
166:1 168:6
169:7,15
170:21 171:10
171:22 172:4
172:11 173:16
175:21 179:21
181:7 182:18
182:20 184:9
184:21 185:7
187:17,22
188:22 190:8
191:4,20 192:9

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 289

| | | | | |
|---|---|---|---|---|
| 192:21 195:2 | 32:11 | **B** 4:11 | 142:19 143:1 | 183:2 193:10 |
| 195:12 197:1,2 | **authorize** 55:14 | **back** 23:22 27:7 | 143:15 145:2 | 196:19 205:24 |
| 198:2,2,15 | **authorizing** | 30:2 36:13 | 145:23 147:18 | 231:8 232:4 |
| 203:24 204:16 | 55:4 | 41:12,13,24 | 147:21 148:2 | 237:10 255:15 |
| 210:1 218:12 | **avoid** 22:21,21 | 58:4 74:6,21 | 148:12,14,21 | 256:15 261:8 |
| 230:10 232:13 | 170:18 | 82:12 91:15 | 149:5,8,13 | 265:10 266:22 |
| 232:14 238:3 | **awaited** 275:11 | 92:7 97:16 | 156:13 157:12 | 271:7 |
| 242:3 250:10 | **aware** 28:19 | 114:16 118:8 | 158:1,10 | **belabor** 282:6 |
| 252:10 253:14 | 55:16 56:15 | 122:20 135:10 | 169:13 174:17 | **belated** 86:6 |
| 253:23 254:8 | 78:9 132:15 | 137:19 138:7,8 | 197:14 207:21 | 245:12 |
| **attorney's** 3:2,5 | 151:8,15,22 | 177:14 206:23 | 231:3,12 254:6 | **believe** 5:21 |
| 9:5,14 12:6 | 152:24 170:20 | 208:4 214:5 | 267:13 269:23 | 9:21 22:3 |
| 23:17 26:21 | 174:18 185:16 | 215:15,16 | 270:15 279:3,6 | 25:19 59:16 |
| 29:17 31:15 | 186:17,23 | 255:23 267:13 | **basically** 23:2 | 72:17 82:9 |
| 43:13 51:15 | 189:17 190:14 | 270:16 282:3 | **basis** 241:18 | 84:2 89:6 |
| 59:10 92:4 | 191:22 192:4,6 | **bad** 49:14 83:9 | 247:12 249:3 | 95:24 99:3,4 |
| 101:17,18 | 192:11,16 | 106:5 108:23 | **Bates** 20:11,13 | 100:6 114:19 |
| 152:3 156:10 | 200:5 206:11 | 113:22 115:5 | 42:1 58:5 | 114:19 116:2 |
| 167:21 169:22 | 218:22,24 | 140:1,8,13,19 | 71:18,21 75:8 | 119:20 145:10 |
| 172:17 173:23 | 227:4 228:1 | 140:23 141:12 | 76:5 79:16 | 145:19,19,20 |
| 175:11 176:6 | 234:1,8,10,13 | 142:3 143:8 | 82:19 83:1,13 | 146:20,24 |
| 177:3 180:13 | 235:4,11,15 | **based** 19:1 | 87:7 88:5 | 151:20 154:17 |
| 190:12 193:5 | 236:11,24 | 35:14 36:7 | 129:24 137:9 | 164:1 189:5 |
| 193:19 194:3 | 240:7 243:12 | 38:20 39:8 | 139:5 157:2 | 190:13 191:18 |
| 194:11 197:15 | 243:15,20,22 | 40:8,20 53:2,5 | 268:17 | 199:3 202:5,6 |
| 199:11 231:16 | 244:21 245:6 | 54:7 63:12 | **Bates-stamped** | 207:19 209:15 |
| 232:18 237:6 | 245:10,17 | 64:21,23 65:1 | 41:10 144:1 | 220:8 222:2,3 |
| 241:4 244:13 | 250:12,18 | 68:18 69:2,11 | **bearing** 265:19 | 222:15,22 |
| 246:3 247:22 | 251:3 253:10 | 69:11 77:4 | **becoming** | 223:1 224:7 |
| 251:15 255:13 | 253:19 257:16 | 78:22 79:7 | 185:16 | 233:21 235:3 |
| 255:16 260:17 | 257:18 258:1,5 | 80:22 82:4 | **beginning** 34:24 | 268:8 272:2 |
| 266:13 268:9 | 258:10,12,17 | 84:18 89:9 | 142:6 213:24 | 279:22 |
| 270:9 271:8,15 | 258:19,22,23 | 93:1,18 94:21 | **begins** 99:3 | **believed** 195:7 |
| 278:12,24 | 259:3,7,14,18 | 94:22 96:23 | **behalf** 2:6,11,16 | **best** 134:14 |
| **attorney-client** | 259:22 260:3,5 | 98:11,14 99:13 | 2:22 3:5 12:5 | 159:16 267:20 |
| 151:12 | 260:9,11,12 | 100:13 101:5 | 23:17 26:21 | **better** 44:7 67:9 |
| **attorneys** 6:23 | 262:15,21 | 102:22 103:11 | 27:11 29:16 | 81:12 95:19 |
| 31:8 55:10 | 263:4 | 104:9 108:5 | 31:15 50:24 | 107:10 109:18 |
| 118:2 150:3 | **awareness** 257:1 | 110:16 111:21 | 51:14 54:21 | 185:8 |
| 183:20 184:1 | **Awesome** 57:11 | 116:7,21,21 | 55:18 89:12 | **big** 97:18 204:24 |
| 196:11 250:13 | **awest@halem...** | 124:19 125:2 | 113:3 131:12 | **bigger** 25:5 |
| 260:15 | 2:15 | 125:21 126:20 | 133:8 156:10 | 35:22 36:1 |
| **audition** 227:8 | **awful** 209:13 | 127:17 128:19 | 158:15 167:21 | 48:14 60:15,23 |
| **August** 9:9 | | 129:4 132:17 | 172:17 173:23 | 62:22 92:11 |
| **authoring** 31:19 | **B** | 137:15 142:1 | 180:12 182:1 | **bills** 73:16 |

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 290

**bit** 60:15 62:22
92:12 144:20
159:15,18
189:7 192:19
269:2
**black** 48:17
**Blagg** 150:17,22
**bleeding** 74:23
**blue** 8:12,19,20
**body** 69:4
**Bogucki** 1:6
14:3,17,20
68:10 81:6
84:2,11,20
85:11 86:16
90:13 103:9
113:15,20
119:3,16
121:19 217:20
218:22,24
219:16,24
220:4 222:2,5
227:6,12 228:2
228:16 229:4
240:10,18
250:3 262:1,3
262:16,23
263:9 264:18
281:13 284:6
**Bogucki's** 281:9
**boils** 217:12
**bond** 59:10
**bore** 5:23
**bottom** 20:11
76:10 83:1
90:11 98:5
105:10 128:18
129:11 268:18
269:2
**Boulevard** 2:13
2:19
**box** 27:23 28:1,3
35:12 36:6,10
36:14 87:14
93:9,17 96:12

116:15,17
121:9 272:9
273:1 274:24
**boxes** 45:15
47:12
**Brady** 180:1,4,8
180:17 182:13
182:20 183:16
183:19,24
184:4 188:23
189:6,7,15,19
190:11,15,20
191:1,2,6,11
191:18 205:21
207:14 233:12
**bread** 12:24
72:20,21 73:17
73:19,21 74:1
217:13
**break** 6:1,2
50:15 57:10
106:2,16
120:19 133:23
134:5 135:11
159:8 212:10
213:7,10,20
214:10 215:1,2
215:3,7,11
216:1,2,4,6,8,9
216:12,21
263:19 267:18
269:21 275:10
275:11,15,17
275:20,22
276:16,18
**breaks** 212:8,24
214:14
**bring** 53:9
180:18 215:15
215:15 282:3
**broad** 176:17
178:3 183:4
**brother** 202:10
202:16
**brought** 10:5

143:4 193:7,21
194:13,22
196:2 197:15
**BS** 71:15,17
**bunch** 73:15
**BURNS** 2:7,7
134:22 159:3
162:19 163:1
**business** 122:11
122:23 275:21
**buy** 74:20

───────
**C**
───────
**C** 2:18,18 99:4
277:18
**C/I** 116:2
**Cabrini** 122:5
**California** 55:13
**call** 7:12 15:24
18:11 42:22
142:12 154:1
185:23 211:14
211:15,23
213:17,18,19
213:22,23
275:23
**called** 1:12
109:14,15
138:5 147:6
162:17 208:12
285:7
**calling** 11:2,7
**calls** 40:3 69:15
75:17 81:11
113:23 125:24
142:20 265:4
**capture** 185:8
185:13 186:12
187:3,23
206:16 237:5
**captured** 207:9
207:11 236:2
241:3 244:12
246:3 247:21
251:14 252:9

**capturing** 207:7
**car** 85:11 217:20
**carbon** 18:20
**care** 146:8 282:2
**career** 9:13
191:3 219:22
223:20 225:21
**case** 12:15,23,24
13:13,19 14:2
14:5,12,21
15:16,23,24
16:2,9,10 20:2
22:1 26:8,11
27:14,19 28:5
28:16,24 29:5
29:13 33:9
39:24 46:9
55:2,22 56:8
56:14 81:7,15
84:22 99:15
104:21 109:13
111:20 119:14
130:17 132:19
146:24 150:10
150:12,14,17
156:4 160:7,12
161:5,18,20,22
162:2,3 163:14
163:15 165:18
167:16 170:4,7
170:11 173:8
175:24 177:4
178:10 180:4
181:16 183:22
184:10,22
186:24 187:2
187:15,16,21
188:8,9,11
191:23 192:8
197:22 199:7
199:20 200:9
200:11,14,23
201:3,17,24
204:19 207:24
208:8,23

209:24 214:15
217:12,13
218:14 219:5,9
220:1 221:1,16
222:4 229:5
231:1 232:2
235:8 237:20
238:3 245:4
253:11,17,20
254:4 255:14
256:11 257:2,3
258:7,14,21
262:6 264:21
265:9,9 286:2
**cases** 10:4 16:14
162:10,13
193:7,21
194:13 220:9
224:8,10,10
263:1,11
**categories**
272:16
**cause** 59:15 91:8
91:10 92:2
188:6 198:4,17
198:22 199:7
199:19 200:6
201:16
**caution** 12:8
130:12,21
131:4 133:2,4
**cautioning**
132:22
**caveat** 118:9
128:4
**CCSAO-CUI**
135:24
**CCSAO_Conf...**
17:19
**Center** 3:3
**Central** 72:18
74:22 122:3
**certain** 18:21
22:13
**certainly** 108:13

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 291

133:16 185:12
190:13 193:16
204:12 238:21
**certainty** 138:1
**certificate**
151:16,24
264:24 265:18
**Certified** 1:18
285:4 286:4
**certify** 285:5,18
**Chamberlain**
202:6
**chance** 127:5
131:16
**change** 134:23
147:14
**changed** 147:3
197:19
**character** 24:6
**characterize**
165:6,16
**charge** 12:4
29:24 30:1
177:4 198:22
199:7,19,24
234:2
**charged** 78:10
**charges** 10:5
11:18 19:2
21:14,16 121:7
121:9 143:4
175:22,23
176:16 178:13
249:7 264:12
264:15
**charging** 10:9
12:2,9 27:1,19
29:21 271:12
**chase** 74:12
**check** 152:10
**Chicago** 1:8,8
2:4,9,11,14,20
3:3 162:16
197:6,16 198:3
198:16 199:1

202:10,16
218:13,18
219:16 220:4
220:16 221:22
223:12,19
224:2,16 226:4
241:22 249:8
257:21 258:6
258:13,20,23
259:8,19 260:3
260:9 264:16
284:7,8 286:16
**Chicken** 72:16
74:16
**chronology**
107:10
**Church's** 72:16
74:16
**CI** 21:22 22:3
44:10
**cigarettes** 80:6
**circle** 22:6,16
24:6 48:19,20
48:23 49:3,7
49:10 61:14
62:2,5,24
63:10 64:13
96:14,19,21
101:1 109:4
111:14
**circled** 61:18
62:8,19 64:9
65:14 111:12
112:5,6
**circumstance**
161:4 187:19
206:10
**circumstances**
165:23 210:13
211:8 213:12
**city** 1:7,8 2:11
66:24 284:7,8
**City-JF** 70:12
**City-JF-000040**
66:21

**City-JF-161**
125:13
**civil** 1:15 196:14
229:4 235:5
253:11,17,20
254:3 257:3
**claim** 257:4
**claiming** 137:16
**clarification**
18:24
**clarify** 170:1
**Clark** 286:15
**CLE** 191:14
**clear** 33:5 37:13
56:17 85:4
102:4 104:18
132:14 146:16
147:1,7 192:23
203:13
**click** 186:3
**client** 276:5
**CLIFTON** 3:2
**close** 90:19
120:20
**closed** 6:19 28:8
122:10
**closely** 272:24
**clothes** 74:17
**coercion** 258:6
**coffee** 80:5
**colleagues** 12:10
**collection** 8:6
**column** 87:14
272:13
**come** 35:1 134:2
135:10 137:19
138:7,7
**comes** 58:20
168:16
**comfort** 132:8
133:18
**comfortable**
152:20 236:9
**coming** 11:9
122:10,23

**comma** 19:19
58:17 60:2
**commencing**
1:19
**committed**
221:5
**committing**
219:16,24
223:11,18
225:13,20
**common** 47:22
**commonly**
270:9,13
**communicatio...**
29:19 78:16
151:12 223:5
225:5 255:19
256:18
**complaining**
212:20
**complete** 27:18
163:11 183:13
195:4 237:14
285:19
**completely**
166:9
**complex** 9:11
**compliment**
35:4
**comply** 176:20
**computer** 6:11
6:12 186:3
**concealing**
260:9
**concept** 202:23
**concerning**
29:24
**concerns** 231:19
232:10 246:23
**concluded** 283:1
**conduct** 99:4
189:18,22
197:3
**conducted** 97:10
103:24 119:1

203:24
**confer** 50:15
269:21
**conference**
50:12
**confidential**
29:12 78:16
**confines** 220:1
**confirm** 56:22
**confirmation**
133:3
**conflict** 215:20
215:21
**conflicts** 214:23
**consequences**
261:20
**considered** 93:9
93:17
**considering**
90:17 126:10
**consist** 10:2
114:6
**consistent** 24:14
**constitutes** 23:3
**constrain** 55:10
**consulted**
201:15
**CONT** 122:10
122:23
**CONT'D** 3:1
**contacted**
255:11
**contained** 77:18
**contents** 254:3
**context** 41:12
81:12 136:8
224:23 261:5
**continue** 115:14
**continued** 27:14
158:16,17
**continuing** 22:3
109:19,20
122:9 191:10
**continuous**
216:9

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 292

**conversation**
13:6 16:4,11
16:16 52:24
85:2,6 101:11
128:10 131:6
141:4 150:24
167:3 175:15
177:19,19
201:5 204:13
210:23 219:11
241:19 245:3
247:13 250:5
255:7 273:23
274:21 279:14
**conversations**
12:1,10 13:8
81:14 150:16
201:6 220:24
223:5 225:5
243:5 281:20
**convict** 179:15
243:13
**conviction** 151:9
151:17
**Cook** 3:2 9:5
165:24 168:5
172:11 173:15
175:20 177:2
179:20 184:20
192:8 193:4,18
194:3,11 195:1
195:11 196:24
197:2 198:1,14
232:12 242:3
**Cooper** 33:12
34:5,10,12,13
35:11,16 36:9
38:22 39:2,6,9
40:10,11,18,21
44:18 100:6,15
100:23 101:6
103:23,24
104:5,11
105:21 143:24
145:5,14 146:5

149:6 234:6,8
234:10,13
235:1,4,10,11
235:17,22
236:11,16,19
236:22 237:2,3
238:14 239:1
239:17 240:7
240:19 241:1
241:14,20,21
242:17 243:2,6
**Cooper's** 145:23
240:12
**copied** 109:4
**copies** 7:13
**copy** 18:17 19:6
25:21 43:15
49:14 53:24
60:9,11,12
63:6 66:23
67:9 83:9 98:3
108:22 126:12
127:22 282:20
**corner** 19:18
73:23
**correct** 8:24
10:13 11:20
18:16 29:1
33:9,10 39:10
39:20 45:24
57:2 59:4
71:19 76:24
77:6 80:24
84:9 90:2 93:3
93:14,21 94:12
94:22 96:20
97:7 102:13
111:5,24 117:3
123:10 135:20
141:12 145:7
145:16 147:21
148:15 155:2
159:23 160:20
160:21 165:6
165:16 171:5,7

171:9 179:16
182:15,16
183:22,23
184:2,3,6,7,12
184:23 187:17
189:19 190:17
190:18 191:20
191:21 193:24
196:14 198:5
198:18 201:10
203:2,3 204:8
207:15 217:14
218:23 220:17
227:6,13,20
228:4 229:20
235:2 236:23
246:24 249:8
250:10 268:10
273:3,4,13
274:14 277:13
279:1 280:18
**correctly** 110:13
**corroborate**
228:9,18 229:5
230:20
**corroborated**
230:11
**counsel** 50:12,15
58:19 66:15
132:11 169:9
170:2,22 171:7
256:20 257:11
269:21 285:12
285:24 286:2
**counsel's** 167:14
**County** 3:2 9:5
165:24 168:5
172:11 173:15
175:21 177:2
179:20 184:21
192:8 193:4,18
194:3,11 195:2
195:11 197:1,2
198:1,14
232:12 242:3

**couple** 18:8
88:23 116:8
138:5 168:16
212:8 224:7,8
224:12 268:7
**course** 81:23
171:23 183:21
201:9,13
214:24 280:17
**court** 1:1 34:16
34:23 50:7
55:4 59:10
91:19 130:16
131:2,7 132:18
135:16,20
142:5 147:16
152:23 154:14
154:16 156:3
192:12 197:10
276:23 282:17
282:20 284:1
285:1
**Courts** 1:16
**coverage** 217:3
**Coyne** 2:18,18
15:19 17:11
22:17 23:15
24:12,14 26:5
26:19 27:12
29:7 30:24
31:3 32:8
33:14 34:15,18
34:21 35:3,18
37:4 38:11,23
39:11 40:12,23
42:12,16 46:11
47:4 48:3
49:19,23 50:9
50:11,14,24
51:9,22 52:9
52:18 53:7,15
55:17 56:1,24
57:3,8 59:7
61:20 62:13
63:22 65:2,4

65:16,24 66:16
69:17 70:4
71:15,17,20
75:19 77:21
78:13 81:9
82:6 83:7
86:19 89:21
91:20 99:18
100:16 101:19
103:13 105:3
106:9,17
107:12 108:9
109:8 110:19
112:1,18 113:9
114:1,8,12
116:24 117:20
118:5,16 119:4
120:6 123:11
130:9 132:11
134:4,16,19,24
135:5,7 138:16
139:15 140:4
140:24 141:14
142:4,9 143:9
148:8 151:10
151:18 153:13
154:11 155:11
157:4,18
158:15 159:6
161:9 163:17
163:22 166:3
166:19 167:7
168:12 169:17
170:1,23
171:12 172:1
172:14 173:2,6
173:19 174:11
175:1,6 176:1
177:7 178:4,8
178:16,19
181:10 182:21
184:13,24
185:18 187:4
188:1,13 189:2
192:2,10,14

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 293

193:8 194:15
195:5,15 196:4
196:15 197:7
197:11,17
198:6,19 199:8
200:20 204:4
205:6,14,22
206:17 207:4
207:16 208:1
208:19 210:7
210:15 211:6
211:10,13,18
211:20 212:6
212:20,23
213:9,15,22
215:19,24
217:1,8 219:18
220:5 221:7,17
221:24 223:14
223:21 224:3
225:15,22
226:6 227:14
227:21 228:12
228:21,23
229:9,21,23
230:13,21
231:22 232:15
233:3,15 236:3
237:7,22
238:16 239:6
239:21 241:5
242:4,19
244:14 246:4
246:17 247:1
247:23 248:11
248:24 249:9
249:16 250:23
251:16 252:11
253:3 254:12
255:22 257:12
257:23 258:8
258:15 259:2,9
259:20 260:18
261:7,23 262:8
263:2,12,18,24

264:4 265:3,22
266:6,20,23
267:12 269:15
270:11,22
273:7,15 274:5
274:15 275:3
275:15,19
276:7,13,17
277:1,5 278:3
278:16 279:23
280:9 281:16
282:8,10,21
**Coyne's** 6:23
213:7
**CPD** 7:21 8:4
**created** 43:4
58:21 278:21
**creating** 19:5,7
20:7 21:11
22:11 24:5
28:2 36:5
37:15,17 40:16
42:20 43:2
46:19 53:18
58:16 61:23
62:15 65:7
67:22 68:6
69:20 70:19
71:1 76:18
85:1 93:5 97:3
98:19 99:20
101:10 103:4
103:18 104:4
104:17 108:11
109:11,17
110:24 116:11
123:14 124:8
124:17,17
126:7 274:20
**credible** 231:21
232:12
**crime** 29:6
30:18,23 32:2
79:9 160:23
161:6 164:18

166:16 225:9
229:20 257:20
**crimes** 193:6,20
194:4 196:11
**criminal** 55:4
130:16 131:2,7
132:18 151:9
152:22 156:3
175:22,23
176:16 177:4
178:14 193:2
225:7 226:20
234:11 248:22
249:6 254:23
259:13 261:2
**crossed** 44:19
72:11 73:13,20
73:23 74:22
80:5,8 115:14
269:8 281:10
**CSR** 286:15,18
**current** 9:10
183:11
**currently** 6:8
9:4 28:6
**cursor** 72:1 73:2
73:7 87:17
**custody** 28:5,15
28:15 44:20
**cut** 19:13 126:12
126:16
**CV** 1:5 284:5

─────────
**D**
**D** 4:1 44:19
**Daley** 3:3
**DANIEL** 2:7
**Darren** 202:5,9
202:15
**date** 21:1 38:22
39:10 42:21
43:9,20 44:1,3
44:8 51:20
59:21,23 60:5
82:21,22 83:20

87:5 102:19
106:22 107:17
108:20 109:3,5
121:7 149:20
268:20 272:2,2
274:10,11
280:3 285:21
**date's** 44:7
**dated** 41:17 42:3
**dating** 105:16
105:21
**dating,'** 95:23
**day** 42:9 72:12
159:16 284:18
**days** 13:1 109:7
109:15 137:19
138:5 240:9
**dburns@reite...**
2:10
**DDT** 59:17
**deal** 224:6
**dealing** 214:14
214:15
**deals** 249:13
**December** 7:22
28:20 78:11
79:10 122:2,5
155:9 157:16
**decision** 12:9
27:1,1,19
29:21 200:6,17
**decision-maki...**
29:20 51:4
112:22 167:13
181:15 185:2
208:23 212:4
238:2 265:8
**decisions** 10:9
12:2 23:2 51:5
51:7 271:12
**declaration** 7:23
135:22 234:24
243:16,23
244:3 250:19
251:3

**declarations**
250:7
**defendant** 1:13
2:11 13:3,7
27:23 36:17
38:10 45:16,23
46:7 53:5
59:18 84:21
85:19,20 88:2
93:20 94:11
95:5 102:23
103:10 122:17
166:24 168:17
204:1,8,14
209:10 269:6
272:17,23
285:8
**defendant's**
117:8 257:5
**defendants** 1:9
2:16 10:7 88:6
168:19,20
257:3 284:9
**defense** 169:9
170:22 171:7
181:2 183:14
185:12 189:24
259:13 260:15
**definite** 38:18
**definition**
261:15
**degree** 78:10
**delay** 216:16
263:19
**deliberate**
167:22 172:3
176:5 183:1
**deliberation**
231:13
**deliberations**
29:24 255:20
256:18 271:11
**deliberative**
12:11 23:18
26:22 29:17,18

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 294

31:16 51:12,16
52:21 172:16
173:22 181:24
199:10,14
231:8 232:5,18
238:8 247:9
255:17 256:15
265:11 266:11
266:21 269:24
271:9 278:6
**delta** 25:16
27:24 28:5,6
37:7 44:19
45:21,23 48:20
53:21,22 84:2
84:3,3 92:20
92:22 115:20
121:23,23,24
122:1,4,24,24
**delta's** 115:22
**demands** 59:18
**department**
162:17 196:12
197:6,16 199:1
202:11,16
241:23 264:16
**departments**
194:13
**departs** 160:4
**departure** 160:8
**depend** 15:22
185:20,20
186:21,22
208:7 209:15
210:17 212:2
**depended** 164:3
**depends** 134:17
142:13
**deponent** 2:22
284:12
**deposed** 5:17,20
150:18 151:5
**deposition** 1:12
4:13 6:21,24
17:1 28:22

29:13 43:12
57:7 66:11,17
66:20 78:17
88:7 89:16
125:14 130:2,8
131:21 133:1
134:21 136:1
136:20 144:2
145:3,4 150:2
150:6,15 151:3
155:2 156:19
157:9 158:18
159:2 179:2
201:10,14,14
203:5,8 213:24
227:9,17 228:6
230:5 235:5,9
261:14 262:20
269:17 270:4
275:18 276:14
280:18 283:1
284:13,15
285:6,11
**deposition-rel...**
216:7
**depositions** 1:16
132:5
**described** 103:2
168:9
**description**
121:15
**desk** 8:15
**destruction**
184:6
**DET** 84:1,2
121:18,19
**details** 99:22
**detective** 14:3,3
14:8,10,17,20
14:23 15:2,4,7
15:13 16:17
68:10,11 81:22
84:11,11,20,20
85:10,10 86:15
90:12 112:15

113:15,15,16
115:4 119:15
120:4 125:22
126:12,13
139:24 163:4
163:15 218:24
219:15,23
220:4,16,18,24
221:5,16,22
222:2,4,15,17
222:18,19
223:5,11,18
224:16 225:12
225:20 226:3
229:4 262:1,3
262:12 264:18
264:19,19
281:8,9,13,14
**detectives** 13:3,7
13:13,15,18
14:1,4 16:3
32:23 33:2,8
47:17 81:6
86:1 103:9
112:9,10
113:20 119:3
119:16 137:17
138:12 139:13
164:6 217:20
227:6,12 228:2
228:16 240:9
240:18 250:3,8
262:16,23
263:9
**determination**
11:18 91:24
199:18,24
**determine** 39:9
161:15 198:17
**determining**
199:6 201:16
**detriment** 276:4
**developed**
212:11 214:7
**diagonal** 73:24

**differ** 16:8
**different** 43:8
108:20 109:3
150:11 189:11
245:8 272:16
**difficult** 25:7
35:24 48:18
83:5 92:12
137:24 174:17
178:3
**direct** 19:22
36:13 60:23
61:1 96:7
120:24 137:6
144:11,24
**directed** 207:10
**direction** 285:10
**directly** 46:8
186:7
**disagree** 63:19
**disbarment**
190:16
**discipline**
190:16
**disclose** 29:23
151:11 167:15
169:21 182:14
184:23 212:4
248:9
**disclosed** 158:23
184:11
**disclosure**
158:19 189:24
**discovered**
184:22
**discovery** 153:1
180:22
**discussed** 70:21
71:3 200:9
282:5
**discussion** 50:1
152:13 264:6
**dispute** 63:18
**District** 1:1,1,15
284:1,1 285:1

285:2
**division** 1:2 11:4
179:22 284:2
285:3
**divulge** 26:10
29:11 78:14
167:10 170:5
**divulging**
112:20 113:1
185:2
**Dixon** 122:12
123:2
**doctrine** 23:10
26:7 181:19
231:4 247:7
**document** 7:22
8:8 18:9,14
19:1,21 20:12
21:8,9,12,13
22:12 24:5
26:15 28:3
31:19 32:12
36:5,6,10
37:15,18 40:2
40:15 41:11
42:1,21,24
44:2 46:20
53:10,18,19
54:3,12 55:12
57:23 58:4,5
58:11,16,22,24
61:16,23,24
62:16 65:8
66:24 67:13,22
68:6,8,13,22
68:23 69:2,5
69:11,21,21,22
70:20,21 71:2
71:3,5,9,14,22
75:5 76:19
77:1,4,9,10
79:5,16,20
80:22 81:3
82:19 83:14
84:23 88:11,15

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 295

88:16 89:14,15
90:10,15 91:13
92:9 93:5,7,13
93:15,24 94:15
95:10 96:10,11
97:4,8,13
98:20 99:21
101:10 103:3,4
103:5,15,16,19
104:4,6,14
107:18,19
108:12 109:11
111:1,7,21
116:11 117:3
123:9,14 124:8
124:13,14,18
124:19,23
125:5,8,19,21
126:3,7,9,20
126:21,24
127:3,23 128:5
128:7,8,17,22
129:4,7,16
130:7 136:6,16
137:8 139:17
139:22 144:6,8
144:10,14
148:19 187:23
200:4,15,18
201:1 202:20
205:21 206:15
207:15 233:12
234:16 237:5
239:4 242:3
243:4 248:23
252:18 273:19
273:24 274:7
274:18,22
277:7 278:11
278:19,22
280:22 281:10
**documentation**
111:22 206:11
235:17,22
236:18 244:5

246:11 252:20
**documentations**
52:4
**documented**
46:6 51:20
63:5,19 65:22
83:18 85:15
99:13 101:15
102:9,22
103:23 107:9
111:4 116:23
128:13 136:10
147:12 233:2
236:1 238:12
239:16 241:3
242:16 244:12
246:2 247:21
251:14 252:9
260:16 263:11
**documenting**
28:14
**documents** 6:20
6:22 7:2,5,8
8:14 13:11,16
17:13 20:5,8
43:7,12 55:1,5
78:23 79:7,11
90:6 107:4
116:16,19
130:7 132:2
145:11,13,20
145:21 146:9
147:24 149:14
149:24 152:7
156:3 202:5
203:4 228:5
230:4 234:21
279:4,6
**doing** 23:12
37:20 80:14
82:2,4 122:2
161:20 167:6
167:18 171:8
178:2 197:9
209:1 215:8,9

231:6
**door** 6:19 73:18
**dope** 122:5,11
122:23
**double-check**
44:18
**doubt** 101:13
102:1,6 254:10
**drink** 80:6
**Drive** 2:8
**driver** 12:24
217:14
**driving** 217:20
**drugs** 80:7
**due** 53:23
**duly** 5:1,4
284:11 285:15
**duties** 10:1
**duty** 179:14
180:18 248:9

_____
**E**
**E** 4:1,11
**e-mail** 2:5,10,15
2:21 3:4
152:10
**earlier** 11:16
29:8 30:12
31:12 33:15
37:14 43:6
74:20 91:16
121:13 130:11
131:6 136:9
148:3 152:16
153:16 170:3
203:1 214:2
215:3 218:21
222:16 230:23
238:1 250:7
251:4 269:3
270:4 271:1,5
277:11 278:4
279:4 280:15
**early** 9:22 160:1
160:1

**easier** 8:15
20:16 108:4
209:23
**EASTERN** 1:2
284:2 285:3
**eat** 80:5
**Ed** 238:14 239:1
239:17 240:7
240:12,19
241:1,14,21
242:17 243:2
**education**
191:11
**Edward** 25:20
33:12 34:5,10
34:12,13 35:11
35:16 36:9
39:2 40:18
44:18 72:20,22
72:24 73:1,1,5
73:9,12,13
74:1,2,5,6,10
74:12 100:6
103:22 143:24
145:5 234:6
235:1,4,17,22
236:11,16,19
**effect** 111:6,8
**efficiently**
134:15 159:17
**effort** 161:14
**either** 33:8 60:9
102:2 110:24
116:1 118:21
119:16 178:12
186:8 201:13
224:14 238:23
242:16 246:12
252:22 260:14
260:15 264:18
**elaborate** 29:17
**elapsed** 280:6
**elicit** 26:24
181:22
**emergency**

275:22
**Emmett** 7:23
25:18 31:22,23
32:6 96:10,12
97:2 110:3,5
116:15 135:23
136:8 141:4
249:22 250:2,7
250:18 251:23
252:4 272:9
**employed** 9:4
**ended** 197:20
**enforcement**
192:22 194:22
**engage** 196:11
**engaged** 208:13
257:21 258:6
**enter** 153:21
**entire** 176:9
190:12 219:22
**entirety** 144:14
**entitled** 7:22
**entries** 149:16
**entry** 44:1 53:2
105:20 107:17
109:7 121:1
149:18
**equal** 44:19 45:1
**establish** 92:1
**established**
67:11
**estimate** 106:10
**ET** 98:10,12,15
**ethical** 81:17
87:1 120:12
142:23 143:1
174:19 176:20
179:5 188:23
189:14 233:11
238:5 240:3
241:12 242:11
248:9
**ethically** 179:23
**event** 37:24
86:13

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 296

events 103:2
109:12 116:13
everybody
60:24 67:4
106:7,15
evidence 23:1
98:15,18
112:21 119:21
130:14 155:15
155:23 167:12
180:19,20,24
182:14 183:10
183:21 184:1,6
184:10,12,22
184:23 185:3
185:13,17
186:12,24
187:3,20,23
188:6,8 190:1
191:23 192:8
195:13 197:15
207:15 230:12
231:1 232:1,23
247:2,16 260:4
260:10 265:8
ex- 183:8
exact- 200:24
exactly 74:8
76:2 109:5
174:15 224:13
examination
1:13 4:4,5 5:7
159:10
examined 5:4
285:17
example 32:5
183:14
Excellent
162:15 179:19
exception
132:15 138:21
152:6 166:17
168:9
exchange
172:13 173:17

174:9 175:4,23
177:5 249:14
exclamation
124:2
exculpatory
183:20 184:10
184:22 186:12
186:24 187:20
188:10 191:23
192:7 205:20
207:15 243:3
248:21 254:22
260:10
excuse 15:3
138:2
exhibit 4:13
16:23 17:2
18:1 66:7,12
67:12 72:11,24
73:5,13,15,19
75:23 76:6,23
77:5 78:5
82:13,15 88:4
88:8 125:10,15
127:18,22,22
128:1 129:21
130:3 133:11
135:14 136:2
143:23 144:3
154:6,6,14,17
154:19 155:3
156:18,20,24
157:11,20
158:11,12
203:2,12 235:2
250:6 251:4
268:1,8 281:1
281:6
exhibits 66:17
66:20 153:3
154:4 158:11
267:8
exist 161:15
existence 56:18
exonerated

264:24 265:18
expanded 25:12
expect 134:19
134:22 196:1,7
204:1 207:9
230:8,10,19
275:16
expectation
195:12
expected 195:20
experience
98:11,14
117:22 163:3
169:13 171:21
176:9 181:6
194:10 208:11
230:9 270:16
expert 180:14
181:22 193:12
196:22
explain 107:8
199:5
express 133:6
extending
197:22
extent 181:14,21
192:20 255:18
256:17 267:3
271:10
extra 48:16
147:7
eye 45:12
eyes 132:9
eyewitness
45:10,14

———————
F

F 98:4,7
fabrication
260:3
face 130:22
133:6 155:19
facilitate 10:14
10:17 11:1
facility 13:5

84:8,10 217:21
220:22
fact 132:17
150:17 152:18
152:20 154:24
158:2 164:23
193:11 206:13
216:18 238:13
275:21
factors 209:6
212:3
facts 92:1
119:21 198:4
198:16 247:2
258:24 259:18
fair 102:10
154:10 193:3
193:17 194:10
206:9
faith 275:12
fall 9:21,22
160:1
falls 273:3
false 233:1,14
247:19 259:18
falsely 248:8
familiar 15:18
58:12 88:14,17
127:11 128:4
162:16 179:12
179:24 180:3
191:18 202:22
220:16
far 100:14
154:23 170:2
174:6 181:6
214:11
Feb 36:17 48:20
48:21 83:20
92:19 116:4
February 1:19
21:2 40:11,22
41:17,19 42:4
43:18 53:6
84:19 94:11

116:3 124:12
124:15 268:23
269:7 279:8
284:13 285:6
fed 258:24
Federal 1:14
23:9 181:18
208:24 231:4
247:6
feel 106:5
152:20 189:8
229:15
fell 106:21
fellow 51:5
felony 7:12,13
7:24 9:15,17
9:20,24 10:3,5
11:22,24 12:16
14:9 15:17
16:22 18:1,11
18:13,18,19
20:4 21:24
25:5 26:4 29:1
29:2,5 36:8
40:2 43:24
44:4,5,23 47:7
49:2,6 51:21
52:4 58:14,14
78:22 81:24
91:14,24 92:7
93:1 98:11
99:23 101:15
104:23 105:5
106:21 107:5
117:22 120:17
136:10 138:18
143:2 145:5,10
145:13 146:20
146:22 147:2
147:18 148:12
149:5,8,13
159:20,22
160:10,13
163:6 165:7,17
165:24 167:1

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 297

169:7 171:10
174:4 176:9,13
177:20,21
179:21,21,22
181:7 182:18
182:19 183:15
184:8 185:6
186:20 187:15
189:13 190:7
190:21 195:2
197:3,20,23
198:2,15 200:8
200:9,11,19
201:4,8,18
202:3,18,19,19
202:23,24
203:6,23,24
204:15 207:23
208:12 209:8,9
210:1 218:11
219:14 220:10
221:3 223:13
224:12 225:14
230:9 232:13
234:2 250:15
263:8 268:11
268:13,21
270:10,15,16
**female** 138:8
**fight** 280:2
**file** 20:17 109:16
185:9 186:13
188:4 200:11
201:4,18 202:3
202:19,19
203:1,6 204:22
205:1,4 206:16
207:10 236:2
237:6 241:4
242:15 244:13
246:3 247:22
251:15 252:10
260:17 268:9
268:21 270:10
270:15 279:1

**filed** 54:14 255:9
256:11
**files** 7:13 116:3
131:24
**filing** 10:4
**filled** 36:9
**filling** 43:23
44:5 47:11,11
107:20
**final** 200:5
**find** 8:15 25:16
25:18 30:12
31:22 32:5,6
60:12 87:8
130:22 131:19
166:6
**finding** 59:15
**fine** 15:12 19:14
20:21 36:2
50:13 122:19
154:12 217:1
**finish** 108:19,19
134:1 181:11
217:4 277:1
**finished** 137:13
144:16,18,22
**fire** 74:4,6
**fired** 74:8
**firm** 150:7
214:16 216:15
**first** 5:4 15:16
19:15 20:1,6
22:17 34:9
41:13 42:22
51:2 58:10
69:6 70:12
78:10 113:8
137:10 154:19
160:12 190:20
209:7 219:1
220:19 222:21
262:15 269:15
284:11 285:15
**first-degree**
21:17 90:6

**five** 8:5 212:7,24
263:23 264:1
267:14,16
275:7,8
**five-minute**
133:23
**flagging** 215:18
**Fletcher** 1:3
5:16 8:9 13:14
19:3,19 28:11
30:1 54:7
58:17 60:2
78:6,9 84:8,14
84:21 85:8
86:16 90:2,22
102:23 103:10
119:14 122:13
123:3,10,16
127:19 128:2
128:14 129:24
144:1 145:6,15
147:20 148:5
148:14,23
149:6 150:4,14
151:16 154:21
154:21 155:8
157:2,14
159:14 197:14
199:7,20
217:12 218:6
223:8 225:8
226:20,23
227:5,11 228:3
228:10,19
229:6,19
231:20 232:11
232:24 233:14
234:3,14
235:19 239:18
241:17,24
243:13,17
244:24 245:21
246:1,15,24
247:19 248:8
248:22 250:21

251:8 252:6,7
252:24 254:24
255:5,9,21
256:7,11
257:20 258:5
259:1,7,17
260:2,8 261:2
264:15,23
265:17 266:18
268:16 278:1
278:14 284:3
**Fletcher's** 12:15
14:2,12,21
20:2 81:7
104:20 117:14
150:17 151:8
151:23 234:11
240:21 241:1
245:9 255:12
257:3,11
**Floor** 2:3
**focus** 131:21
**folder** 16:23
18:2,11,13,18
18:19,22 19:4
19:6,7,10,16
20:5 25:5
35:14 39:16,20
39:21 40:2
41:3,4 43:24
44:8,9 51:21
52:4 58:15
60:1 92:7 93:1
101:15 106:21
107:5,21 109:7
115:15 117:2
136:10 148:13
149:5,8,13
200:19 201:9
201:13 203:23
204:3,14
**folders** 36:8
44:6,6 107:22
145:5 268:11
268:14

**follow** 17:17
74:14 190:10
**following** 75:11
88:24 119:17
139:2 151:17
190:15
**follows** 5:5
**food** 80:4
**foregoing**
284:14 285:18
**form** 11:5 29:7
35:19 39:13
40:3 46:10
47:3 48:2
58:20 63:22,23
65:3,5 66:9
69:15 70:4
75:17 77:7,21
81:1,9 82:6
86:6 88:18
93:22 94:13
95:7 97:11
99:17 101:21
104:1 105:3
107:12 109:8
112:18 113:23
117:20 118:5
118:14 119:4
119:20 120:7
125:24 138:16
140:24 141:1
141:13,14
142:9 143:9
145:8 147:22
148:8 149:11
166:19 169:17
170:23 171:12
172:1,14
174:11 176:1
177:7 178:16
178:18,19
181:12 182:22
184:13 185:18
187:6 189:3
193:8 194:15

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 298

195:15 196:4
196:15 197:11
198:6,19
200:20 204:4
206:17 208:19
209:3 210:7
211:10 219:18
220:5 221:7,17
221:24 223:14
223:21 225:15
225:22 226:6
229:9 230:13
231:22 233:3
233:15 236:3
237:7,22
238:16 239:6
239:21 241:5
242:4,19
244:14 246:4
246:17 247:3
247:23 248:11
249:16 250:23
251:16 252:11
253:3 254:12
257:12,23
258:8,15 259:2
259:9,20
260:15,18
261:7,23 262:8
263:2,12 265:3
270:11,22
279:24 281:16
**formal** 163:8
**format** 164:14
187:3
**forth** 122:21
180:18 285:13
**forward** 26:16
31:9 60:4
113:12 133:22
216:23
**found** 268:24,24
**foundation**
15:19 22:18
24:12 29:7

30:24 31:10
33:14 34:15,17
34:18 35:18
37:4 38:11,23
39:11 40:3,12
40:23 42:12,16
46:11 47:3
48:2 49:19
51:22 52:9
53:7 59:7
61:20 62:13
63:23 65:3,4,5
65:16 69:15
70:4 75:17
77:7 81:1,9
82:6 83:7 86:7
86:19 89:21
91:20 93:22
94:13 95:7
97:11 99:17
100:16 101:19
103:13 104:1
105:3 107:12
108:9 109:8
110:19 112:1
112:18 113:23
116:24 118:5
118:14 119:4
119:20 120:6,7
123:11 125:24
139:15 140:4
140:24 141:1
141:13,14
142:9 143:9
145:8 147:22
149:11 161:9
162:19 163:1
163:17 166:3
166:19 169:17
170:23 171:12
172:1,14
173:19 174:11
176:1 177:7
178:16,18,19
181:12 182:21

184:13 185:18
187:4 189:2
192:2,14 193:8
194:15 195:15
196:4,15
197:17 198:6
198:19 199:8
200:20 204:4
205:6,22
206:17 208:1
208:19 209:3
210:7 211:11
220:5 221:24
223:14 224:3
226:5,6 227:14
228:12,22,23
229:9,21
230:13 231:22
233:3,15 236:3
237:7,22
238:16 239:6
239:21 241:5
242:4,19
244:14 246:4
246:17 247:23
248:11,24
249:9 251:16
252:11 253:3
254:12 257:12
259:9 260:18
261:7 263:2,12
265:3 266:20
270:22 273:7
274:5,15 278:2
278:16 279:23
280:9 281:16
**FPC** 59:15
**free** 261:19
**freely** 129:9
**Friend** 7:19,20
25:16 30:13
32:5 61:6,9,18
62:11 63:14,21
64:20,24 66:8
67:16,19 68:9

68:16 69:13
76:10 77:4,16
80:23 93:14,16
95:3,6,16 96:3
105:20 147:19
148:3 152:8
157:14 243:9
243:11,15
244:5,10,21
245:3,6,19,23
246:13 247:14
248:6,7,20
249:4,6,14
277:18
**Friend's** 76:21
156:17 157:1,8
157:13 243:12
243:22 246:23
247:18 277:24
278:13
**front** 16:21 18:1
19:1,16 21:5
40:9 53:11
60:9 63:19
64:23 67:9,12
68:18 74:23
78:4 88:12
93:2 109:3
121:4 125:19
136:6 144:7
155:16 272:8
277:8
**FT** 98:1
**full** 5:10 7:11
121:15 137:10
**fully** 233:21
269:16
**further** 27:15
148:22 237:24
282:7 285:18

———————
**G**
**G** 59:15
**gather** 165:12
**gathering** 74:19

**general** 12:18,20
13:9 33:4
98:14 159:19
160:3,5 162:17
163:18,19
164:5,7,14
165:17 170:3,9
171:18 180:7
191:17 204:22
208:11 218:13
219:7 270:19
**generalities**
189:8
**generally** 11:21
26:8 32:18
33:17 38:13
39:1,23 45:13
46:1,1,22 47:6
52:2,23 58:13
59:14 62:3,5
62:17 63:10
64:14 71:7,11
75:13 77:24
80:18,19,21
85:17 86:2,11
88:1,15,17
91:6,9,23
96:21 99:22
107:8,19,23
109:13 111:16
111:19 117:23
125:6 154:4
161:1 174:2
180:4,6,17
182:9,12 201:2
**getting** 11:12
120:20 127:9
144:9 199:14
224:21 227:8
238:7
**gist** 137:22
139:21,21
230:5
**give** 11:4 22:20
31:8 87:11

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 299

108:6 144:13
149:19 161:1
216:22 217:8
237:14 261:14
264:1 272:1
**given** 12:6,7
25:6 52:19
80:4 133:5
152:18 157:19
161:5 162:3,6
163:14 164:18
215:1 230:8
247:5 253:18
257:6 266:7
271:6 278:4
**giving** 54:6 80:3
80:9 81:12
129:6,9
**GJ** 100:9,10,11
**go** 15:20 16:2,2
19:24 32:17
37:5 41:13,20
42:13,17 54:10
56:12 59:13
67:24 69:4
79:22 82:12
83:23 92:6
99:9 100:9,22
113:2 119:22
127:14 128:15
134:1 135:13
140:6 143:13
146:6 152:10
153:2 154:8,18
159:4 161:9
166:21 170:24
173:21 176:4
177:10 178:16
178:20 182:24
187:6 188:20
192:2 208:5,5
209:2 211:19
212:11 213:1
213:19 214:3
214:11 216:23

245:15 251:1
273:17 276:17
**goal** 165:12
**goals** 27:17
**goes** 121:21
**going** 8:22 11:1
13:2 15:10
16:20 17:5
19:22 22:20
26:16 28:10
31:9 41:9,13
45:15 50:17
60:23,24 61:10
66:7,16,19
69:4,9 71:12
71:24 72:6
73:10,10 75:1
75:3,4,7 76:4
82:18 84:7,10
84:16,17 85:9
87:6,6 88:3
92:6,8 97:16
102:15 106:3,4
106:8,13,15
109:14,20
119:13 120:24
121:1 125:9,11
129:20 133:24
134:6,10,12
135:13,15
138:2,4,19,23
143:22 153:9
153:10 155:12
155:13 158:7,9
159:14 160:7
162:7,9 170:17
171:19 176:23
180:11,12
181:8 186:19
212:7,9,9,12
212:13,24
213:3,3 214:5
214:8 215:12
215:16 216:11
216:19 217:6

217:21 220:21
231:15 256:3
257:8 261:14
264:5 267:17
267:18 269:1
271:15,19
276:1,6,20
278:8 280:20
281:24,24
**golden** 179:7,11
**gonna** 133:22
**Gonzalez** 146:12
146:13 147:9
147:10
**Gonzalez's** 8:1
**good** 110:13
116:1 127:16
135:8,9 136:8
136:11 138:6
157:23 159:12
168:20 169:1
182:2 270:20
275:12
**gotten** 32:13
47:13,14
120:21,22
**GPR** 162:21,24
162:24 163:3
**GPRs** 163:16
**grabbed** 72:12
72:13
**grand** 7:17,20
7:24 10:15,22
10:24 11:2,8
11:11 48:22
49:18 50:23
51:6,12 54:14
54:23 55:1,15
55:22 56:20
57:4 100:10,11
129:23 130:11
130:15,24
132:15 133:6
135:16,19
146:2,7,9

152:6,8,9,21
153:4,14,18
154:19,24
155:6,16,18,24
156:4,5,18
157:1,8 158:1
269:8,12
270:21 271:12
271:21
**granted** 59:16
**granting** 152:23
**great** 21:7 34:23
35:3 60:22
63:6 66:14
87:10 88:14
98:3 121:6
**greatest** 25:22
**Green** 122:6
**ground** 5:24
167:22 265:11
**grounds** 23:18
26:22 31:16
51:15 169:19
172:2 176:5
181:24 199:9
231:8 232:4
255:16 256:14
271:8
**group** 8:6 74:19
**grouped** 43:20
**guess** 22:13
172:20
**guessing** 126:14
**guidance** 23:16
26:20 27:10
156:9 167:20
168:13 231:7
265:12,24
266:5 278:6
**guilt** 180:19
182:15 190:2
**guilty** 265:2,20
266:18
**gun** 73:1,9,12
74:3

**guy** 72:24 73:5,6
73:8,12,15,18
73:19 113:22
115:5 140:1,13
140:19,23
141:12 142:3
143:8 147:3
242:1
**guys** 57:6 72:20
72:21 73:16,21
74:4,7,9,11,13
152:24 157:23

---
**H**
---

**H** 4:11
**Hale** 2:12 3:8
**half** 134:13
264:2,4
**hand** 72:15
187:16
**handed** 187:21
**handgun** 72:14
**handing** 185:11
**handling** 188:8
188:9
**hands** 160:19
**handwriting**
19:8,9,10,11
19:17,20 21:10
21:12,13 37:16
37:19,21,23
38:8 40:16
53:19,20 61:24
62:1,16 65:8
67:18,21 68:3
68:5 89:5,6
93:6 97:4,5
103:5 108:12
115:10,12
123:15 126:5
128:7 203:9,17
273:20,21
**handwritten**
7:15,16,19
62:8,12,17,18

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 300

62:18 66:7
68:15 69:20
70:1 71:5,9
77:18 78:1
80:15 125:3,6
125:11,22
128:12 148:2,5
148:21 163:6,7
279:21 280:8
280:15
**hang** 31:3,3,4
181:10 211:18
212:23,23
**happen** 95:13
100:1 109:22
117:23,24
214:24
**happened** 29:6
39:17 59:23
86:14 94:4,24
102:1 111:2
117:5 119:11
120:3 126:9
130:20 197:23
200:14 243:14
279:19
**happening**
11:13 120:1
253:24 256:22
**happens** 174:5
**hard** 17:16 20:8
36:23,24 52:13
62:23 75:23
76:2 216:23
**hate** 211:14
**head** 202:4
224:21
**heads-up** 11:4
**hear** 34:21
72:23 114:8,13
114:14 142:4,5
219:15,22
221:4 223:10
225:11 229:3
255:22,24

**heard** 131:8
151:13 175:15
196:21 221:12
221:14 223:17
224:20,23
225:2,2,19
**hearing** 151:24
**help** 6:5 20:20
25:10 168:21
176:24
**helped** 243:13
**helpful** 48:15
**helps** 102:4
**hereinabove**
285:22
**Hi** 211:20
**hide** 186:5
**history** 47:24
48:10
**hold** 20:20
109:16 211:20
**holding** 73:9,15
**hole** 109:1
**Holmes** 3:2 12:5
23:16 26:20
27:10 29:16
30:6 31:14
42:13 51:11,14
52:20 54:21
113:3 131:11
133:8 156:9,14
157:22 167:20
168:13 169:19
172:2,16 173:1
173:22 176:5
180:11 181:8
181:20 183:1
187:7 188:2
189:1 193:9,22
194:5,17
196:18 199:9
199:21 205:24
206:19 207:5
207:17 213:6
213:11 231:7

232:3,17
233:18 237:10
247:8 248:14
255:15 256:12
256:14 261:8
265:10,24
266:5,21 271:7
278:5 282:23
**home** 138:11,15
235:7 250:3,20
251:7 253:15
**homi-** 228:10
**homicide** 218:5
223:6 225:7
226:19 228:4
228:11,20
229:7 243:3,18
244:1 246:1
248:21 250:14
251:10 252:8
253:1 257:19
258:4 259:6,16
260:1,7 264:14
265:21
**honestly** 215:12
**hopefully**
176:23
**hopes** 6:5
**hostile** 124:2,6
**hour** 106:14
134:13,13
**hours** 212:7,17
212:24
**house** 137:17
240:11 253:12
**houses** 138:19
**husband's** 147:5
**HW** 125:5
**hypothetical**
51:23 141:15
142:10 143:10
171:13 172:15
174:12 176:2
177:8 181:10
181:13 182:22

184:14 187:5
196:5,16
206:18 208:2
208:20 210:8
211:11 230:14
233:4,16 236:5
237:8,23
238:17 239:7
239:12,22
241:6 242:5,20
244:15 246:5
246:18 247:24
248:12 251:17
252:12 253:4
254:13 257:8
260:19 263:13
**hypotheticals**
209:14

**I**

**I-D-'-S** 92:22
**i.e** 158:19
**ID** 4:12 36:16
37:7 38:9,14
61:11 64:9,13
64:15 65:22
92:19 104:14
111:11,15
112:5,6 252:24
272:12,18,20
272:21 273:1,2
273:6
**ID'd** 93:20
**ID's** 92:19,21
**idea** 22:15 54:18
57:24 89:19
180:17 277:22
278:21 279:2
**identical** 67:8
**identification**
17:3 38:14,17
38:18 39:10
53:4 54:7
64:20 65:1
66:13 88:9

94:2,10,16,21
95:5,10 104:10
111:18,24
124:21,24
125:16 130:4
136:3 143:21
144:4 147:20
156:21 206:13
231:20 232:11
232:24 233:13
234:14 243:17
244:7,10
245:20,24
246:15,24
247:19 261:6
261:17 262:5
262:24 263:10
264:21 277:24
278:13
**identifications**
262:18
**identified** 76:5
78:5 96:9
145:6,14 148:4
148:13,22
149:6 155:7
157:14 227:5
234:2 242:1
244:23 245:7
248:8
**identifies** 76:22
77:5 127:18
**identify** 65:23
79:8 205:3,12
208:15 210:4
227:11 229:19
235:8,13,18,23
239:2,18
243:24 250:22
251:9 252:1,7
255:4
**identifying**
143:5
**identity** 130:13
130:23

Royal Reporting Services, Inc.
312.361.8851

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 301

**IDO-** 28:7
**IDOC** 8:7 13:3,5
28:8,10 47:24
48:10 84:8,10
84:17 85:3,10
217:21 220:21
227:20
**ILCS** 54:22
**illegal** 130:13
**Illinois** 1:1 2:4,9
2:14,20 3:3
91:10 189:17
189:21 190:11
284:1 285:2
286:5,16
**immune** 196:13
**immunity**
173:17 174:3
178:12 196:22
**impeach** 184:2
**implicate**
258:24
**implicating** 51:3
**implicitly** 55:6
**imposes** 180:9
**impressions**
23:3,7 26:10
51:4 113:2
167:11,15
170:6 230:24
232:1
**improper**
133:18 142:2
**in-person** 32:21
104:20 162:3
**inability** 255:4
**incident** 35:15
36:6,10 82:20
83:4 92:10
93:19 95:24
105:17 115:8
115:13 116:17
124:17 166:23
**include** 47:16
167:11 205:4,8

205:9,13,16
206:7
**included** 7:5
18:13 191:1
**including** 23:5
265:6
**incomplete**
51:22 141:15
142:10 143:10
171:13 172:15
174:12 176:2
177:8 181:10
181:12 182:22
184:14 187:4
196:5,16
206:18 208:2
208:20 210:8
211:11 230:14
233:4,16 236:4
237:8,23
238:17 239:7
239:22 241:6
242:5,20
244:15 246:5
246:18 247:24
248:12 251:17
252:12 253:4
254:13 260:19
263:13
**inconsistent**
278:1,14
**inconsistent/17**
277:19
**inconveniencing**
153:22
**increase** 34:22
**independent**
12:14 13:12
19:24 28:14,17
30:14 31:2
33:6 34:11
35:10 36:4
41:7 43:1 54:5
61:22 63:15
64:1,19 65:10

67:21 68:5,14
68:20 77:10,15
78:7,19 79:3,6
79:12 81:13
84:15,24 85:1
85:5,7 86:12
90:18 91:1
93:4 94:3,5,17
95:1,11 97:1,3
97:14 98:19,20
100:19 101:9
101:24 102:8
103:1,3,18
104:3,16,19
105:7 109:10
109:23 112:4
113:14,19
116:10,12
117:4 118:18
118:24 119:1,9
123:13 124:7,9
124:16 125:1
126:6 129:1
138:10 146:4,6
166:2 193:6,20
197:4 200:2,12
201:22,24
217:11 218:3
219:4 220:22
223:3 225:3
226:17,22
227:1 234:5
241:18 243:6,7
243:10 245:2,5
247:12 249:3
249:21 255:1,6
257:6 273:22
274:19 279:13
280:4 281:19
**independently**
166:15 194:4
228:8,17
**indicate** 24:7,18
24:19 27:21
40:17 59:22

70:2 79:11
85:23 86:5
93:24 95:9
97:6 98:16
99:14,24 103:7
103:15 104:6
115:5 119:13
132:2 147:24
149:14,15
160:6,7 200:5
200:16 201:18
238:12 242:15
278:11
**indicated** 80:23
105:20 145:14
145:20 150:3
163:20 170:3
201:15 205:2
205:11 234:19
246:12 250:8
**indicates** 68:22
68:23 93:7
117:2,3 124:13
124:14,23
125:3,5 127:21
129:5 239:16
**indicating** 91:18
149:17
**indication** 108:6
201:12 271:2
**indictment** 8:2
**individual** 2:16
5:15 22:10
30:15 33:7
34:5 47:1 48:1
61:5 65:14,23
76:23 77:5
78:11 80:15
85:24 88:6
113:22 127:18
136:11 139:24
143:7 146:10
**individuals** 32:4
262:22
**individuals'**

32:7
**induced** 261:18
**influence** 80:7
261:5,16,18
**influenced**
237:20 238:14
239:2,18
245:20,24
246:14 262:4
262:17 263:10
264:20
**influencing**
262:24
**inform** 185:15
264:17
**information**
18:21 26:24
46:5,7,22 47:1
47:8,14,18
55:14 77:17,19
78:2,15 96:3
165:1,13
183:13 185:8
190:1 194:12
194:21 195:3
195:13,20
196:2,3 207:8
233:12 238:9
247:21 260:14
**informed** 13:17
**initial** 164:8
279:5,7 280:7
**initially** 163:13
**initials** 89:19
**innocence**
151:16 152:1
265:1,19
**innocent** 265:21
266:19
**inside** 18:19
24:6 25:4
48:24 73:2
109:12
**instance** 10:18
49:1 52:6

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 302

69:24 191:22
192:6
**instances** 112:13
112:17
**instruct** 12:8
22:17,22 23:8
26:13 29:9,22
51:10 154:7
155:12 167:16
169:23 170:8
181:17 231:2
255:17 256:16
265:5 267:2
271:9
**instructed** 153:9
153:15,16,20
**instructing**
167:8
**instruction**
22:20 23:13,17
24:15 26:5,16
26:21 27:10
29:8 31:13,14
33:15 51:1,12
51:14 52:18
55:19 151:18
155:16,22
156:7,10,13
157:18 167:21
168:12,13
182:23 185:1
230:23 231:7
231:23 232:2,3
232:15 238:1
265:12,23,24
269:19 271:5
271:16,20
278:3,5,17
**instructions**
29:14
**integrity** 267:16
**interacted**
224:11
**interaction**
222:13 226:9

**interactions**
219:5 220:23
223:4 225:4
**interest** 261:13
**interested** 286:1
**interests** 130:21
**interject** 130:10
275:3
**internet** 48:7,9
**interpretation**
23:5
**interprets**
278:19
**interrogatories**
285:17
**interrupt**
211:14
**interrupted**
134:7
**interruptions**
22:21
**interview** 10:6
13:3 25:15,17
25:19 38:22
39:6 44:24
49:8 63:9,11
63:20 86:17
96:20,22 97:7
97:9 100:5
101:1 103:23
104:5,7 110:24
113:17 124:14
124:15 166:1
166:15 169:8,9
204:1,2,17
256:9 273:12
274:3,8,14
275:2 279:7
280:7
**interviewed**
39:2 63:13
96:24 101:7
105:12 110:7
110:17 124:12
149:9,10,15,17

149:19 164:17
249:7 274:23
**interviewing**
10:20 143:3
168:7,17
170:21 171:6
183:6 226:18
**interviews**
171:23
**introduce** 181:2
**INV** 36:18 37:10
38:20 44:18,21
44:24
**investigate**
44:22 193:5,19
194:4
**investigating**
19:3 160:23
161:6 163:15
199:2
**investigation**
15:18 22:4
27:15 97:20
98:17 142:15
161:19 165:20
177:6 192:22
193:2 197:4
198:14 200:7
207:23 218:5
223:7 225:7,7
243:4 250:14
254:22 257:19
258:3 259:6,16
260:1,7 262:6
264:14
**investigations**
192:24 196:11
**investigators**
193:2
**invocation**
270:24
**involved** 11:12
12:22 13:1,13
13:19 14:1,12
20:1,6 28:24

33:2 38:21
47:17 60:24
90:18 104:19
105:1,6 113:16
155:8 157:15
192:21 200:1
217:13 219:9
**involvement**
30:17 32:2
197:21,21
255:8 256:6
261:1
**involving** 7:17
12:24 255:21
**issue** 152:6
216:2
**issued** 91:12
92:3,3 115:20
131:9 132:19
133:4 156:1
**items** 44:13
58:18

---

## J

**J** 2:7 3:3 38:1
84:1
**J-E-N-N-I-F-...**
5:12
**jacket** 72:12,14
**Jackson** 2:13,19
**James** 1:3 5:16
8:9 12:15
13:14 19:19
58:17 60:2
90:2,22 103:10
122:13 123:3
123:16 127:19
197:14 199:7
199:19 218:6
223:7 225:8
226:20 227:5
228:10 229:6
229:19 231:20
232:11,24
234:2,11,14

235:18 240:21
241:1,16,23
243:13,17
244:23 245:9
245:21 246:1
246:15,24
247:19 248:8
248:22 251:8
252:6,7,23
254:24 256:7
256:11 257:10
257:20 258:4
259:7,17 260:2
260:8 261:2
264:15,23
266:18 268:16
284:3
**jcc@johnccoy...**
2:21
**Jennifer** 1:12
4:3 5:3,12 8:1
26:6 29:9 31:4
51:1 52:19
55:17,21 68:1
68:10 69:7
78:13 80:2
88:21 89:5
112:19 129:1
130:10 132:12
146:11,13,17
146:23 147:13
150:16,21
151:10 155:12
157:20 167:7
170:1 173:6
181:14 185:1
188:14 208:22
230:22 265:6
267:1 271:6
282:10 284:11
284:16 285:7
285:14,21,23
**jeopardy** 130:23
132:17 133:5
155:19 158:21

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 303

**Jerome** 1:6
218:22 284:6
**JG** 100:9
**Jim** 178:7
**John** 2:18,18
6:23 42:13
49:21 113:8
135:3 152:16
153:5,12 158:8
158:13 211:20
212:16 214:22
217:3 263:22
267:7 275:14
275:14 276:6
277:4 282:1
**John's** 136:21
**join** 34:20 35:19
40:13 41:1
42:18 46:13
47:4 48:3
52:10 53:13
55:18,19 66:1
69:17 75:19
77:22 86:21
91:21 99:18
100:17 101:21
110:20 114:1
118:6,16 119:7
120:8 141:17
143:12 157:22
178:21 194:16
195:17 198:7
198:20 210:9
211:12 229:11
229:22 230:1
230:15 238:19
239:24 241:8
266:6
**joined** 56:14
247:8 265:10
**JR** 1:3 284:3
**judge** 55:4,12,13
92:3 131:7,8
156:2,3
**jump** 74:1

**jumped** 73:19
**jumping** 123:4
159:15
**jury** 7:17,20,24
10:15,22,24
11:2,8,11
48:22 49:18
50:23 51:6
54:15,24 55:15
55:22 56:20
57:5 100:10,12
129:23 130:11
130:15 131:1
132:15 133:7
135:16,19
146:2,7,9
152:6,8,9,21
153:4,14,19
154:20,24
155:6,16,18,24
156:4,6,18
157:1,8 158:1
269:8,12
270:21 271:12
271:22
**jury-related**
55:1
**justice** 179:14

**K**

**Kari** 1:17 34:21
255:23 282:23
285:4 286:15
**keep** 31:12
33:14 73:10
99:10 106:2,4
106:8,15 108:4
121:20 140:2
153:10 163:22
**kids** 128:14
**kin** 286:2
**kind** 8:12,17
36:21 43:14
53:23 98:5
108:22,23

126:12 159:24
171:15 172:24
174:15 175:13
180:8
**kinds** 180:23
**knew** 109:20
122:3,17,24
208:16 224:11
228:3,9,18
229:6,20
**know** 6:14 7:9
8:12,16 11:9
13:15 14:9
20:9 22:10,13
24:16 26:14
27:3 30:11
32:13 34:23
35:1 37:19
39:4,5 41:3,3,4
41:5,6,11
42:21 43:3,19
45:2 54:1
56:14 58:1,1
58:10 59:5
62:1,4 64:3,3
65:19 68:21
70:7 78:6
81:15 84:4
87:7 89:3,14
89:23 90:16
91:3 94:16
96:18 100:20
105:8 106:12
108:1,3 109:14
109:22 113:10
120:20 121:13
122:1,1 126:10
128:3 130:19
131:5,9,16,21
132:21 133:22
134:8,9,14
135:1 137:12
137:24 141:6
142:14,17
144:15 146:10

146:13 151:1
152:16,24
158:8,13 160:5
161:19 163:10
165:7 166:11
168:22 171:20
174:2,18 175:9
175:14,16,18
175:20 176:18
177:1 178:10
185:10 186:15
187:14 190:15
190:22 191:9
191:15,15
196:24 197:19
201:20 202:9
202:14,15,17
203:11,11,14
206:24 208:15
212:7,15,17
214:23,24
215:14,24
216:11 217:3
218:9,12 220:9
220:11,12,18
222:5,6,8,8,17
222:18,18,21
222:22,22
223:1 224:19
224:20,23
226:10,11,13
226:14 227:23
228:7,14,16
229:1,13,14
234:17 240:13
249:13,19
250:1 256:2
270:5 273:5
275:2,19
277:21 279:15
279:19 280:6
281:8,13
**knowing** 126:10
264:23
**knowledge** 56:9

241:19 247:12
249:3 257:4
**known** 128:14
190:1
**knows** 67:4
128:1 272:17
272:20,22

**L**

**L** 2:13
**lack** 44:7 109:17
185:7
**lady** 140:12
**lasted** 85:13
275:23
**late** 9:22 56:15
160:1
**laundry** 74:17
74:18,21
**law** 2:18 91:10
150:7 191:7
192:22 194:22
214:16 216:15
**lawsuit** 5:16
**lawyer** 69:8,9,14
191:14
**laying** 74:23
**lead** 188:13,14
188:17 190:16
**learn** 33:3
165:10,19
183:21 188:6
191:6 206:13
**learned** 39:24
46:8 165:8
184:9 187:20
188:7 233:13
234:22 238:15
239:19 242:16
242:18 246:16
247:16,18
248:5 252:21
253:2 263:8
**learning** 33:7
186:7 265:17

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 304

leaving 193:1
277:2
left 7:7 19:18
53:21 74:15
122:9 144:20
left-hand 35:15
44:9 48:23
61:11 70:11
82:20 83:3,14
87:13 88:19
89:17 97:19
102:21 115:7
116:18 121:10
legal 23:1
112:22 147:5
189:15 231:2
233:11
length 134:20
201:9
let's 16:22 32:19
41:11 54:10
60:4 83:12
96:5 98:23
100:22 106:20
134:4,4 135:13
135:23 154:2
154:18 156:17
206:23 213:19
216:23 217:1,8
letter 98:8,8
277:18
letters 21:22
88:24 89:8
level 81:5 82:4
132:8 133:19
174:6
licensed 8:24 9:2
life 25:4
light 64:16
83:10 99:5
155:18
Likewise 232:17
line 53:22 64:6,7
64:7 98:6
99:24 105:13

122:21 123:6
181:21 226:11
270:23
lines 36:22
lineup 25:20
33:12,13,18,19
33:22 36:17
37:9 48:21
53:5,22 64:21
92:20,22 93:20
104:10,14,20
105:1,2 115:24
116:23 117:15
117:19 118:3,4
118:11,13,19
118:24 119:3
119:10,11,17
145:15 240:8
240:20,22
241:2,15,17,22
269:6 272:17
272:22
lineups 99:7,14
99:24 105:6
115:21
liquor 74:20,23
list 26:3 27:16
listed 25:2 30:20
30:20,21 32:4
34:6,14 35:11
35:16 45:8,10
46:23 61:6
68:8,10 90:12
93:8,9,13,16
94:8 110:3
202:2 260:13
listen 168:21
listening 168:23
litigation 132:3
little 20:23
36:21,23 48:17
60:15 62:22
92:12 95:15
98:6 134:5
144:20 153:8

159:15,18
163:8,9 185:24
192:19 213:13
269:2
live 25:20 33:12
33:13,18,21
115:24 116:22
117:14 118:3
LLC 2:12
Lo 3:7
local 190:11
207:14
locate 60:20
located 6:8
60:21 92:23
Loevy 2:2,2
150:8,8,10,10
150:14,14
Loevy's 57:1,4
long 9:2,7 78:14
106:10 135:3
170:10 185:1
191:8 212:11
214:4 275:4
longer 134:5
188:4 216:4
267:18
look 8:17 17:5
18:23 20:10
38:5 44:13
57:10,12,14
60:4 67:7
71:12 89:5
92:8 96:5 97:4
103:6 106:20
110:13 116:1
131:16,18,23
133:24 136:12
203:15,17
272:24 273:1
273:20
looked 8:23
13:23 41:14
42:10 91:13
202:24 203:12

224:22 235:1
250:6 269:3
279:4 280:17
looking 7:7,8
19:4,5,15 20:4
60:13 122:20
126:9 149:23
202:4 280:14
looks 8:1 19:8
19:19 21:1,13
21:17 22:5
36:18 37:18,23
38:1,7 40:16
53:19 54:13,15
57:22 58:17
61:13,24 62:7
62:16,23 63:7
64:8 65:9
67:20 68:4
70:13,22 75:24
76:9,16 88:23
90:11 93:6
96:13 97:24
98:4 100:24
108:19,24
109:2 110:11
115:13,17
121:6,14
123:15 124:1
124:20 126:5
126:14,15
128:8 129:12
129:17 268:13
268:14 275:1
lot 48:7,16 74:16
122:8 142:18
168:24 209:5,6
209:13 222:12
222:12
loud 72:8
lunch 213:6,10
215:6,8 216:1
216:12,13

_____
M
_____

M/S 59:18
ma'am 257:10
267:24 268:19
269:4,10,13
277:21 278:9
281:8
machine 43:15
Madam 142:5
Madison 72:18
73:22,23 122:3
maintained
101:16
making 11:17
51:6 64:20
86:16 128:9
129:2 163:5
273:19
man 72:10,12,13
74:23 267:16
manner 153:15
Mar 63:1 92:21
92:23 96:15
116:4 274:23
March 60:5
63:14 68:24
82:23 83:16
87:6 91:15
96:6,24 97:7
99:16 101:2,7
110:8,18 116:3
116:5 149:16
149:18 272:3
273:13 274:4,8
274:23 286:6
mark 16:20,22
66:6,24 88:4
125:10 129:21
135:14 143:23
154:3,16
156:17
marked 4:12
17:2,24 66:12
66:18 67:11
88:8 125:15
130:3 135:17

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 305

136:2 144:3
156:20 158:11
268:8 281:6
**marks** 8:19,20
**married** 147:2,3
**Maryland** 180:1
180:4,8
**mat** 74:17
**material** 184:6
270:2 271:4
275:5 276:8
**materials** 56:20
57:5 131:3
132:17 152:21
180:23
**matter** 159:14
164:5 178:14
216:7 235:5
270:19
**matters** 155:24
212:10 214:6
214:15 216:13
**mean** 10:16
21:23 24:11
33:13,18 38:10
38:13,21 39:1
45:13,14 49:7
49:18 50:23
52:17,23 56:11
57:1,13 59:6
61:18 63:11
64:12,15 85:16
85:17 86:12
87:24 88:1
89:8 91:23
111:17 131:19
152:15 171:16
171:18 172:7
174:21,24
178:6 179:4
180:20 186:11
186:13,18
212:11,15
213:12,16,17
214:22 215:2

215:22 261:6
269:13 270:13
**Meaning** 38:16
150:6
**means** 39:5 45:5
59:15,17,17
61:11 63:9
96:19,21
173:14 186:14
272:12,20,21
**meant** 44:24
**meet** 16:2
**meeting** 85:8,13
97:2 138:11
141:3
**member** 264:16
**memo** 186:21
**memory** 13:9
20:5
**men** 8:6,7
**mental** 23:3,7
26:10 51:3
112:22 113:1
167:10,15
170:5 230:24
232:1
**mentally** 186:17
**mentioned**
10:10 155:13
160:17 213:23
214:2
**merely** 179:14
**messed** 43:14
**met** 16:13 84:20
**mid-2000s**
219:13
**middle** 71:24
79:17,18 87:14
137:10
**mind** 17:5 27:6
31:12 33:15
67:3 103:16
106:14 188:11
**mindful** 81:16
86:24,24

120:11 141:7
141:19 142:21
143:17 176:19
177:23 179:2
238:5 239:3,10
240:2 241:11
242:11
**mine** 40:17
62:17 65:9
93:7 103:6
108:12 123:16
126:5 174:6
203:10,15
**minimal** 58:15
**minute** 264:2,4
**minutes** 135:5
159:5,5 212:12
213:4 214:10
215:4 216:17
216:20 263:20
267:17 275:9
275:24 277:2
**mis-** 257:5
**mischaracteri...**
119:21 166:20
229:23 247:1
**misconduct** 81:6
81:23 82:5
119:2 219:16
219:24 221:5
221:15,15
223:12,19
225:13,21
257:2,5,21
**missed** 122:14
122:18 123:5
**missing** 36:22
**misstates** 229:11
245:11,14
254:15 278:18
**mitigates** 190:3
**Mm-hmm** 8:3
**moment** 31:7
49:24
**monetary**

174:24 175:4
178:12
**money** 73:15
122:10,23
**Monico** 2:12 3:8
**months** 280:6
**morning** 160:16
**motion** 59:18
151:24
**motions** 58:7,23
**mouth** 74:24
**move** 83:12
99:12 113:11
138:2
**moving** 60:3
87:5
**multiple** 44:6
47:7,13,15
109:7 115:2
151:4 201:6
275:5
**murder** 19:11
21:17 78:11
79:2 90:7
197:4 198:13
200:7 218:6
223:8 264:12
264:15 266:19

———————
**N**
**N** 4:1 24:6
**name** 5:10,11,14
34:7 38:6,6
46:23 67:19
76:10 88:21,22
88:24 89:9,12
89:20 93:8,15
96:11 122:12
122:13 123:1,3
146:11,17,22
147:3,5,5,9,14
147:15,16
159:12 208:16
210:5 219:1
220:17,19

222:20,21
224:17,20,24
225:2 243:8
249:22 281:9,9
**named** 7:23
250:21
**names** 13:20,22
32:7,13 33:3,7
224:10
**narcotics** 9:12
**nature** 12:6
**necessarily** 12:3
102:6 164:2
185:23 186:18
186:19,20
204:20,24
205:4 210:24
230:17 233:2
237:4 242:2
246:2
**necessary**
158:23
**need** 5:24 22:24
23:7 26:10
34:22 100:9
106:2 107:22
120:19 127:15
133:19 134:6
134:10 151:11
153:6 157:20
158:8 159:5
167:10,14
170:5 181:15
186:3 206:21
206:21 211:13
212:9,12 213:3
214:6,9,17,18
215:11 216:13
216:20 217:3
229:14 231:24
263:18,18
265:7 276:18
282:17
**needed** 44:4,6
100:1

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 306

needs 91:11
106:16
negate 180:19
182:15 190:2
never 10:23
16:12 103:16
147:3 166:8,15
216:8 238:15
239:19 242:18
246:16 253:2
new 109:17
noise 49:14
53:24
noncharging
27:1 29:21
Norad- 126:14
Noradin 1:7
14:8,8,10 15:6
15:7,14 113:16
126:14 222:16
222:17,19,20
223:1,2,6,11
223:18 264:19
284:6
Noradiv 126:15
normal 212:16
normally 160:9
160:12
north 2:3 74:12
74:13 286:15
northeast 73:23
NORTHERN
1:1 284:1
285:2
Nos 25:2
Notary 284:21
notated 204:22
notation 52:16
200:10 270:8
270:14,18
271:21
note 21:14 38:20
40:9,20 55:7
91:14,15 97:6
101:5 110:16

note-ish 163:9
noted 39:20
84:21 91:18
104:9 121:7
124:20 126:21
147:13 201:4
notes 36:14
48:13 49:9
52:3 62:21
63:12 64:8,23
78:23 83:4
93:2,24 94:9
94:22,23 95:4
95:9,16 96:13
96:23 100:13
100:24 105:11
110:6 111:22
124:11 125:2
136:13 145:2
147:19 163:5
164:13 202:20
202:23
notice 1:14
noticed 74:18
notific- 186:4
notification 24:7
24:10,19
notified 24:18
201:21,23
notify 186:7
November 9:3
number 4:12
20:14 33:11
46:24 55:1
99:8 108:3
116:14 158:22
158:22 269:17
269:19

———— O ————

O'Brien 22:7
48:22 202:6,9
202:15 269:9
oath 284:12
object 31:8

158:13,16
159:1 169:19
176:5 180:12
199:9 210:7
250:23 255:15
271:7 273:15
objection 11:5
15:19 22:18
27:12 29:7,18
30:6,24 31:5
31:10,10,14
32:8,9 33:14
34:15,16,18,24
35:18 37:4
38:11,23 39:11
39:13 40:12,23
42:12,13,16
46:10,11 47:3
49:19 51:22
52:9 53:7,13
59:7 61:20
62:13 63:22
65:2,16 70:4
75:4 77:21
79:20 81:9
82:6 83:7 86:6
86:19 89:21
91:20 100:16
101:19 103:13
105:3 107:12
108:9 109:8
110:19 112:1
112:18 117:20
118:5 119:4
123:11 140:4
140:24 141:14
142:9 143:9
148:8 155:11
155:11 157:18
158:14 161:9
162:19 163:1
163:17 166:3
166:19 167:7
169:17 170:23
171:12 172:1,2

172:14,17
173:1,19,23
174:11 176:1
177:7 178:16
178:19 181:9
181:12,20,23
181:24 182:21
183:1 184:13
185:18 187:4,8
188:1,2 189:1
189:2 192:2,10
192:13 193:8,9
194:15 195:5
195:15 196:4
196:15 197:7
197:10,17
198:6,19 199:8
199:21 200:20
204:4 205:6,14
205:22,24
206:17,19
207:5,17 208:1
208:19 209:3
219:18 220:5
221:7,17,24
223:14,21
224:3 225:15
225:22 226:5,6
227:14,21
228:12,21,22
229:8,9,21
230:13,21
231:22 232:3
232:15 233:3
233:15,18
236:3 237:7,10
237:22 238:16
239:6,21 241:5
242:4,19
244:14 245:12
246:4,17 247:1
247:23 248:11
248:14 249:9
249:16 251:16
252:11 253:3

254:11,12,15
256:12,14
257:12,23
258:8,15 259:2
259:9,20
260:18 261:7,8
261:23 262:8
263:2,12 265:3
265:22 266:20
266:21 269:14
270:11,22
273:7 274:5,15
278:2,3,15,16
279:23 280:9
281:16
objections 65:24
145:17 148:7
148:16,24
163:18 170:19
173:2 175:1,6
182:3 184:24
193:22 194:5
194:18 196:18
207:4,16
210:15 211:6
211:10
obligated
179:23 206:15
207:14
obligation
130:17 180:23
185:12,15
187:2,22
188:23 233:11
237:5 248:9
obligations
81:17,18 87:1
87:1 120:12,14
141:7,8,11,20
141:21 142:1
142:21,23
143:1,18,18,20
174:19,21
176:19,21
177:24 178:1

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 307

179:3,5 180:1
180:9 182:12
182:19 189:15
190:15 212:16
238:6 239:4,10
240:3 241:12
242:11
**obstruct** 257:10
**obtain** 47:1
**obtained** 32:6
91:11
**obviously**
131:15 134:8
153:24
**occasion** 163:16
169:7
**occurred** 85:3
94:18 95:6
165:20 262:5
273:12
**occurring** 119:2
119:19
**offender** 79:1,8
111:24 120:5
140:18,22
141:12 142:2
143:5,6 145:15
147:20 148:4
148:14,23
155:8
**offenders** 76:23
77:6 157:15
**offense** 90:6
190:3
**offer** 54:22
230:23 265:7
**office** 3:2,6 6:9
6:18,23 9:6,8
9:14 12:6,12
23:18 26:22
27:11 29:16
31:15 43:13
51:15 52:20
54:22 55:8
56:10,19,24

57:1,4 59:10
92:4 101:16,17
101:18 106:11
113:4 131:12
132:3 133:9,24
136:21 151:23
152:3 156:11
167:22 169:16
169:22 172:4
172:18 173:24
175:11 176:6
176:10 177:3
180:13 182:1
183:2 190:12
193:5,10,19
194:11 196:19
197:16 199:11
206:1 231:8
232:4,18
233:19 237:11
247:8 248:15
255:14,16,20
256:16,18
261:9 265:10
266:22 271:8
271:11 278:13
**Office's** 29:23
**officer** 16:11,16
163:5 219:17
220:4 221:23
223:12,19
224:2 226:4
**officers** 1:8 5:15
11:10 47:17
90:12 138:5
167:2 235:6,13
284:8
**OFFICES** 2:18
**oh** 20:17 57:3
58:9 73:3,6
87:19 103:15
114:12 115:22
121:6 122:18
156:23 200:24
213:15

**okay** 5:19,23
6:13 7:1,4,10
8:10,21 9:20
9:23 10:10,14
14:7 17:14,23
18:4,8,17,24
19:1,12,22
20:18 21:5,7,7
23:15 25:14
28:4,9,13 29:4
32:1,15 33:1,5
34:5,9 35:3
36:3 37:22
38:9,19 39:8
39:19 40:20
41:15,20,24
42:6 43:22
44:12,17 45:15
45:19,23 46:2
46:5 49:17
50:21 51:18
54:5 56:1,2,5
56:10,17,22,23
57:8,15 58:10
59:3,20 60:8
60:22,22 61:5
61:10,13,17
62:7,11,21
63:4,8,12
66:14 67:3,5
67:10,15,18,24
68:3,8 70:17
72:6 75:15
76:9 80:12,22
82:24 83:2
84:6,13,18
85:4,15,19,23
87:10,21,24
88:14,19,23
89:18 90:1,5
90:11,16 93:10
93:18 95:21
96:18 97:9,24
98:10,22 100:4
100:7 101:5

102:4,21
103:11 105:19
106:4,7,7,15
106:18 107:8
108:5 109:6
110:1,6,11,16
111:16,21
120:19,24
121:6 123:24
124:5 125:9,21
126:18,20
127:4,9 128:23
133:15 134:16
134:24 135:3,6
135:8,18,19,21
136:8,15,23
137:6 138:2
139:10,19,23
140:11,17
144:11,17,20
144:23 145:23
146:15,19
147:18 151:15
152:5 153:11
154:13 155:4
160:2,17
161:14 162:7
162:11,13,14
163:22 164:12
165:14,23
166:14 169:6
172:9 173:12
173:15 179:19
183:18 184:8
185:22 186:9
186:23 187:19
189:17 190:6
190:10,14,19
191:6 192:19
199:17 202:18
202:24 203:20
203:22 204:11
204:15 207:21
208:11 217:7
217:19 218:8

218:16,21
219:2 220:3,20
221:3,21
222:20,24
230:8 231:19
232:23 234:23
243:20 256:24
257:16 262:1
264:3,11
266:17 267:19
268:6,12,15,22
269:1 271:24
272:5,7,12
273:11 274:2
274:10 275:5
277:3,14,17
278:11 279:3
279:17 280:20
281:23,23
**old** 191:13
277:19
**older** 74:22
**once** 74:11
165:11,21
167:9 177:20
208:13 270:23
276:24
**open** 35:21
**opened** 73:18
**opine** 255:14
**opinion** 220:3
221:21 224:1
226:3 230:24
265:1,7,20
266:17 267:1,3
267:4,6
**opinions** 22:24
112:21 167:11
185:2 231:1
**opportunity**
31:8 55:3 87:8
121:3 136:23
144:13 157:7
157:10
**opposed** 109:16

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 308

**oral** 48:21 52:17
52:23 83:20
269:7 285:17
**orally** 264:17
**order** 22:12,12
22:23 23:4,6
26:9 43:8,10
55:3,7,12 56:8
56:19 57:10
81:11 91:6
92:18,21 98:1
98:8,10 130:15
131:1,7,9,17
132:10,19,23
133:1,3,13,15
133:19,19
152:22 153:18
153:18 156:1
158:2,20 167:9
167:13 203:21
282:17
**orders** 282:20
**orient** 87:11
**ought** 131:9
132:21 155:17
158:21
**outline** 134:15
**outset** 32:20
**outside** 18:18,22
58:14 72:19
74:19 168:7
219:2,24
**overturned**
151:9

——————
**P**
**P-U-T** 115:23
**P-V-T** 115:22
**p.m** 283:2
**packet** 7:5 43:18
**page** 4:2 19:15
20:11 21:9
34:1 41:10,13
41:18,21 42:1
42:6,9,22

43:21 44:2
54:10,11,11,13
57:22 58:3,4,5
58:6,11 60:20
60:21 61:1
70:12 71:13,17
71:21,24 75:8
76:11 79:15,15
82:19 83:13,15
83:18 87:13
88:20 92:8,9
93:12 96:8
97:19 100:23
103:7,22 107:2
107:6,18 108:7
108:15 110:3
115:7 116:14
116:15,18
120:17 121:1,4
123:18,18
128:18 129:11
137:8,10 139:2
139:3,4 203:6
268:24 273:24
277:10,11,12
277:17
**pages** 41:21
43:13,17,19
107:24 108:1
**painful** 153:8
**paper** 25:6 60:9
60:11,12 66:9
90:3 116:16
123:5 203:14
**papers** 18:23
**parade** 214:3
**paragraph**
79:17,18
137:10,11,15
137:21 138:3
139:1,8,11
144:16,24
145:24
**paragraphs**
144:12

**paralegal** 3:7
131:18 152:11
**paren** 28:6,8
122:10,10
**parking** 74:16
**Parkside** 73:24
74:12,13
**part** 11:17 29:19
58:19 115:11
115:12 122:15
122:16 126:15
127:23 167:2
175:12,14
203:12 217:17
217:19 255:23
278:24
**participants**
82:16 268:2
281:2
**particular** 26:11
51:20 58:11
59:23 77:20
109:6 170:11
181:16 208:23
**parties** 158:23
286:3
**partners** 222:3
**passenger** 73:18
**patting** 73:5,13
**pause** 31:6,7
**payment** 174:9
174:16,22,24
174:24 175:4,9
175:18 178:12
178:13
**pendency**
204:18 221:1
225:6 255:12
256:10 259:5
259:15,24
260:6
**pending** 50:16
175:22 177:4
178:13 211:14
234:2 249:6

264:15
**people** 8:11
10:14 33:19,20
74:19 122:6
147:4 151:4
201:20 276:3
276:24
**percent** 5:22
99:5 236:8
**period** 36:18
38:1 166:10
215:6 276:20
**permit** 132:20
**permitted** 173:6
**person** 16:1,13
22:14 78:8
115:5 168:21
209:9 210:6
250:2 252:1
253:13 254:7
261:18
**person's** 210:5
**personal** 15:24
16:1 104:15
149:24 161:19
162:10 276:16
**personally**
48:11 214:13
214:17 216:14
**personnel** 168:8
**pertaining** 1:16
8:9 55:15
155:23,24
170:7,10
214:16
**petition** 255:13
256:10
**phone** 2:4,9,15
2:20 3:4 6:11
15:23 16:8,10
16:12,14 46:24
101:1,7 161:22
162:2,13 186:6
211:14 275:23
286:17

**photo** 36:17
48:21 53:5,22
54:8 61:14,17
61:19 62:2,4,5
64:21 65:1,13
65:15 92:20,22
93:20 94:11,22
94:23 95:5
114:6,7,20,21
115:2 124:21
145:6 147:21
148:14 226:11
226:13 227:11
227:19 236:12
236:13,19,21
237:2,3,20
238:14 240:11
240:21 241:1
241:16,23
242:1 244:22
245:8 250:20
251:8,24 252:1
252:6,23
253:21 269:6
272:16,22
**photocopied**
76:1
**photocopies**
8:16
**photograph**
75:10,16 76:1
78:4 113:21,22
115:4 139:12
140:1,22 143:6
143:8 245:9
253:13
**photographs**
33:20 67:6
98:17
**photos** 98:1,9,11
98:13 115:2
227:19,20
**phrase** 112:6
187:12
**phrased** 165:14

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 309

**physical** 253:23
254:8
**physically**
161:24
**pick** 186:6
226:12
**picked** 92:18,20
**picture** 8:5
222:11 224:21
**pictured** 72:11
**pictures** 8:6
67:1
**piece** 19:6 25:6
90:3 203:14
230:11
**pivot** 192:19
**place** 18:20,20
28:20,23 52:24
79:9 118:19
128:15 177:2
274:4 279:8,15
**placed** 62:2
**Plaintiff** 1:4 2:6
159:13 284:4
**plaintiff's** 132:3
**planning** 134:10
135:1 203:18
**platform** 6:10
**play** 90:20 209:6
**pleasant** 222:6
224:6
**please** 5:9,11 6:1
6:4 23:23
26:19 27:7
30:3 31:12
33:15 35:5
44:17 46:15
49:22 72:7
73:11 79:18
86:10 92:17
99:2 100:3
105:15 115:9
120:18 121:21
160:7 168:2,11
170:15 177:13

182:6 184:17
187:10 193:14
209:17 211:21
218:9 232:7
261:11 265:14
268:21 282:19
**plus** 64:8,14
104:13
**point** 5:24 6:3
9:13 33:11
61:19 75:11
100:14 124:2
160:4 183:10
187:16 188:24
191:3 207:21
207:22 218:8
221:12,14
225:21 257:16
257:18 258:5
282:6
**pointed** 236:13
236:19,22
237:2 245:8
**pointing** 72:24
73:9
**Polaroid** 75:16
**police** 1:8 10:6
10:20 11:10
16:3 28:21
32:21 33:8
47:19 48:8
80:1,17,24
128:21,24
160:18,22,24
161:5,6,15,20
161:24 162:2,4
162:16 163:14
164:13,13,16
164:17,21,23
164:24 165:8
166:2,6,7,12
166:17,18
167:1 168:8
186:16,18
193:6,20

194:13 195:4
195:13 196:2
196:12 197:6
197:16 198:3
198:16 199:1
202:10,16
206:5,6 207:22
208:6 210:2
218:14,18
219:17 220:4
220:16 221:22
223:12,19
224:2,16 226:4
227:7 230:11
235:6,16,21
236:12,17,22
237:1,14,19
238:13 239:2
239:17 240:9
240:15,16,20
240:24 241:15
241:16,22
242:17 243:23
244:4,9,22
245:8,20,24
246:13,14
249:8 250:19
251:6,12,24
252:4,5,22,23
253:12,21
254:1,9,22
257:1,5,21
258:6,13,20,24
259:8,19 260:3
260:9 261:5
262:6 264:16
284:7
**policies** 169:15
**poorly** 165:14
**popped** 186:2
**portion** 76:22
82:14 105:12
121:14
**position** 55:8
151:23 152:2

152:19
**positive** 38:16
53:4 54:6
64:15,20,24
65:22 94:1,2
94:10,15 95:4
95:9 104:10
124:21,24
147:19
**positively** 65:23
145:5,14 148:4
148:13 149:6
155:7
**possessed**
158:22
**possible** 24:5
52:12,14
108:13 134:15
141:12 143:6
159:17 165:8
212:19 263:20
**post** 17:11
**postconviction**
255:12 256:6
256:10
**postpone** 186:3
**potential** 132:16
168:19
**potentially**
22:21 205:20
**practice** 159:19
160:3 163:19
164:6,19,22
165:17 170:3
194:3 195:1,24
204:12,17
214:16 216:15
270:19 275:17
**practices** 160:5
169:15
**pre** 58:20
**precluded**
208:24 270:24
**predicate**
158:18

**prefer** 16:22
67:7 154:3
**preliminary**
18:8
**prep** 20:16
**preparation**
6:21 29:12
130:8 133:12
151:2 155:1
201:14 203:5
227:16 277:15
**prepare** 28:21
78:17 126:3
230:4 280:16
**preparing** 43:11
89:13,15
136:19 228:5
262:19
**preprinted**
58:20,22,24
59:6
**presence** 139:13
168:8 170:22
171:6
**present** 3:7 6:16
68:1,9 70:3
71:6 112:9,11
119:15 125:22
162:10 166:6
169:9 253:15
285:12
**presentations**
271:13
**presented**
130:14,24
158:2 195:14
**presiding** 156:2
**pretty** 62:23
97:17 178:3
**prevent** 184:5
**preventing**
177:3
**previously**
17:24 24:15
26:5 32:19

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 310

52:18 63:8
66:18 84:6
105:19,23,24
145:3 154:17
155:13 157:19
217:11 220:15
240:11 247:5
285:13
**principal** 190:7
**principles**
191:19
**printed** 7:6 8:5
8:7,14 17:13
17:16 43:15
97:23
**prior** 13:11
14:18,24 15:7
57:6 116:19
127:6 136:19
136:24 143:4,4
145:4 150:2,6
150:15 157:9
157:19 165:9
165:11,20
208:21 228:3
228:10,19
229:6,20
240:21 241:1
241:17 269:17
280:16
**prison** 122:11
123:1
**private** 117:10
117:11,18
118:11 275:17
**privilege** 12:11
23:19 26:12,23
29:19 31:16
51:16 52:21
167:8,23 172:3
172:16 173:22
199:10 231:9
232:5,19 247:7
247:9 255:17
256:15 265:11

269:24 271:1,9
278:6
**privileged** 271:4
**pro** 175:8
**probable** 59:15
91:7,10 92:1
198:4,17,17,22
199:6,19 200:6
201:16
**probably** 15:10
106:13 169:2
191:9 216:17
216:18 222:10
234:23
**problem** 256:3
**Procedure** 1:15
**procedures**
261:6,17 262:5
262:24 263:10
264:21
**proceed** 23:12
26:19 29:15
154:11 167:19
231:6
**proceeding**
156:1
**proceedings**
54:24 55:15
255:21 256:7
256:19
**proceeds** 139:2
**process** 11:17
12:11,23 16:15
23:18 26:22
29:18,18,20
31:16 36:8
51:13,16 52:21
81:14 154:8
167:22 172:3
172:16 173:22
176:6 181:24
183:1 197:20
199:10,15
200:13 208:18
212:5 231:9

232:5,18 238:2
247:9 255:17
256:15 265:11
266:11,21
269:24 271:9
278:6
**processes**
181:16 238:8
**produce** 56:19
180:23
**produced** 55:2
57:4,14 132:3
153:1 180:21
**product** 23:10
26:7,12 31:13
51:11 52:19
169:20,21
170:2,4,10
212:5 231:4,12
232:16 238:8
247:6 266:10
269:23 271:1
278:4
**professional**
189:18,21
220:7 222:6
224:6
**progress** 162:17
163:19 164:7
164:14 218:13
**prohibition**
171:3
**prohibitions**
170:20 177:2
**promise** 171:16
171:16 174:8
175:3 176:15
205:17
**promised**
106:12
**promises** 80:3
129:5,8 171:11
171:23 172:7
172:12,21,21
172:24 173:5

173:13,16
175:22 178:11
249:14 258:13
**promising** 177:3
**properly** 156:1
**propose** 153:23
**proposition**
191:17
**prosecuting**
192:9
**prosecution**
197:14 218:5
223:7 225:8
226:20 248:22
254:24 257:17
257:20 258:4
259:6,17 260:2
260:8 261:2
263:7
**prosecutor** 23:8
51:7 69:8
81:17,18 87:2
112:23 120:12
141:7,20
142:22 143:18
167:13 170:7
174:19 176:19
177:24 179:3,6
179:7,9 182:13
189:23 190:1
192:7 238:6
239:4,11 240:3
241:12 242:12
263:8
**prosecutorial**
196:22
**prosecutors**
51:5 179:13
180:9,18 184:5
189:6 192:24
193:4,18 257:4
**prosecutory**
193:1
**protect** 132:16
**protects** 29:19

54:23
**provide** 26:15
154:5 181:2
198:3,16
235:16 236:17
244:4
**provided** 24:15
26:6 57:6
78:24 112:20
112:24 136:18
151:11 195:3
235:21 240:17
**proximity**
253:23 254:8
**Public** 284:21
**published** 82:15
268:1 281:1
**pull** 58:3 60:8
66:15 91:14
121:3
**pulled** 17:21
95:19
**punch** 109:1
**punishments**
190:17
**purportedly**
281:15
**purports** 8:8
273:11
**purpose** 26:1
84:14,17
162:24
**purposes** 55:23
134:10 135:1
216:14 282:5
**pursuant** 1:13
1:14 12:11
23:9 181:18
**push** 214:5
216:18
**pushing** 267:13
**put** 35:3,4,22
41:12 43:7,9
43:16,17
115:22 118:8,9

Case: 1:20-cv-04768 Document #: 184-19 Filed: 05/06/25 Page 104 of 118 PageID #:5909

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 311

158:7,8,14
207:10 214:20
**putting** 132:9
158:21
**PVT** 117:9,11

---

**Q**

**qualified** 189:8
**question** 6:4
12:7 15:6,11
22:23,23 23:9
23:11,21 26:9
26:13,23 27:3
30:2,3 31:7
35:6 46:14
50:16,17 51:2
51:3,10 52:13
54:2 57:18,19
77:3 90:17
91:2 93:10
99:11 107:15
112:19 113:1,6
113:11 114:9
114:16,19
120:10 137:13
141:5,22 142:4
142:19 149:7
151:11 153:20
154:9 156:15
158:4 160:14
162:8 165:15
167:9,14,17,18
168:2 169:23
170:15 172:9
172:20 173:7
176:16 177:12
178:2 181:17
182:5 183:4
184:16 185:3
187:10 189:12
193:14 199:14
200:15 209:1
209:15,17
211:15 212:3
231:3,5,12,17

232:7 233:7,22
236:9 237:17
238:7 239:12
239:12 240:4
242:9,23
244:18 246:9
246:21 248:2
248:17 252:16
255:23 257:8
261:11 265:6
265:14 266:15
266:24,24
267:8 269:15
269:23 274:2
278:9 279:3
**questioning**
234:19 270:23
**questions** 6:6
18:9 22:19
23:4,11 26:7
29:10 55:11
67:6 78:14
116:8 127:12
127:14 132:20
133:5 134:18
134:20,23
153:11,13
155:14,17,22
158:6,19,20
159:3,19
161:17 162:9
163:19,19
168:22 170:4,9
171:20 181:21
189:9 203:19
257:1 263:23
264:1 265:5
267:14 268:7
271:2,16,20,24
275:7 282:1,4
282:7 285:20
**quibble** 216:10
**quick** 17:21
41:13 99:11
152:12 217:2

**quickly** 212:19
**quid** 175:8
**quite** 56:15
171:15 215:11
222:7
**quo** 175:8
**quotes** 95:23

---

**R**

**rain** 214:3
**Ramanujam** 3:7
**ran** 73:22
**range** 79:16
137:9
**Raymond** 1:7
220:17 284:6
**reach** 29:20
**read** 6:22 7:3
13:16 23:22
24:1 25:2,3,8
25:19,22 27:8
28:4,21 30:2,4
35:7,22 36:19
36:20 37:2,8
44:17 45:19
46:16 48:13
50:3,19 53:23
55:3 59:23
62:23 63:5
64:17 67:9
69:12 72:7,7
76:22 79:4,17
82:13 83:5,6
83:21,23 87:21
91:16 92:16
93:19 95:21
98:23 99:1
100:3 105:13
105:19 114:10
114:16 115:8
115:16 116:7
117:8 121:13
121:16 122:4,7
122:16 127:5,7
127:10,13,15

127:15 133:11
136:24 137:3,4
137:11,14,16
137:24 138:4
138:24 139:8
139:21 140:11
142:7 144:9,10
144:14 155:3
160:18,18
162:6 177:14
177:15 189:7
206:23 207:2
227:7,16 228:5
230:3 250:11
284:14
**reading** 13:11
13:20 26:15
27:6 36:6 54:3
75:2 99:10
100:5 105:22
105:23,24
110:12 116:16
121:20 136:13
137:1,20
139:20 144:16
144:18
**ready** 16:5
227:8 264:9
**real** 25:4 41:6
94:19 122:13
123:2
**realize** 267:7
**really** 17:21
41:12 152:12
173:10 191:8
192:23 209:15
217:2 226:13
236:16
**reask** 270:6
**reason** 24:23
26:4 30:12,21
30:21 31:21
32:5 44:12
63:18 65:13,21
101:13 122:6

132:13 167:5
168:5,16
254:10
**reasons** 168:16
169:3 270:18
**rec-** 11:9
**recall** 7:4 14:4
30:17 31:18
34:9,10,13
46:2 84:13
105:22,23,24
124:5 136:13
136:14 164:10
166:23 169:10
171:3,6,8
176:14 190:19
191:2 197:9
199:23 217:13
217:17,20
218:9,15,20
219:20 220:2
220:20 221:9,9
221:19 223:15
223:23 225:10
225:17,24
226:1 228:14
229:1 232:21
234:4 235:20
238:21 240:23
243:5,19 244:2
244:8 245:22
247:11,11
249:2,11,18
250:6 251:11
252:3 256:5,8
256:22 257:14
262:10,14
264:22 269:4
269:20 273:19
280:14 281:11
**recanted** 234:14
**recanting**
243:16
**receive** 16:14
163:16 164:1,7

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 312

164:12 218:19
received 78:2,15
175:10 190:23
218:12 264:24
265:18
receiving 43:12
96:2 190:19
recognition
13:10
recognize 13:22
54:24 67:13
126:4 203:10
222:10 267:15
recollect 274:20
recollection
12:14,18,19,20
13:12,18,23
14:11 20:1
28:10,14,18
29:4 30:9,14
31:2,22 32:1
33:6 34:12
35:11 36:5
37:15,17 41:7
43:2 54:6
61:23 63:16
64:2,19 65:11
66:3 67:22
68:6,14,21
69:19 77:11,15
78:7,20 79:4,6
79:12 81:13
84:7,16,24
85:2,5,7 86:13
90:18 91:2
93:5 94:3,5,17
95:2,11 96:2
97:1,3,14
98:19,20
100:20 101:9
101:24 102:8
103:2,4,18
104:4,16,19
105:7 109:11
109:23 110:22

110:23 112:4
113:14,19
115:6 116:11
116:12 117:4
117:13,16
118:19,24
119:2,10,18,24
123:14 124:8,9
124:16 125:1
126:6 128:5
129:2 138:10
140:17,20
146:1,3,4,6
150:1 161:11
175:12 200:2
200:12,23
201:22,24
217:12 218:4
218:17 219:4
220:23 223:4
225:4 226:18
226:23 227:2
234:6 243:6,8
243:11 245:2,5
249:22 250:4
254:7 255:2,7
257:7 273:22
274:19 277:23
279:13 280:4
281:19
recollections
219:8
recommendat...
11:18,23
231:16 266:14
record 5:10
17:18 24:1
27:8 30:4 35:5
35:7 44:21
46:16 49:23
50:2,3,14,19
54:11 56:5,7
66:21 75:4
88:5 114:10
125:11,13

127:11 129:21
131:6 135:22
135:23 142:7
143:23 152:10
152:14 153:2,6
154:19 156:24
158:8,14 159:4
177:15 178:4,5
183:7 207:2
212:22 213:13
213:14,15,16
213:19 214:13
214:20 229:11
238:11 239:16
242:15 245:14
246:12 252:21
254:15 264:5,7
270:4 276:13
281:24 282:5
285:19
records 152:23
Reddick 55:13
131:8 156:2
redepose 158:10
reduced 177:4
285:9
reduction
178:13
refer 125:6
147:4
reference 83:16
271:12
referenced
256:19
referred 116:20
179:2 277:10
285:22
referring 98:13
116:18 179:17
234:24 261:17
refers 59:18
98:15
reflect 255:19
refrain 167:6
168:6 184:5

210:14 211:4,8
refresh 20:5
refreshed 13:18
refuse 231:16
271:20 278:8
refusing 146:1,6
266:14
regard 26:8 53:2
63:20 100:23
255:20 256:19
regarding 26:24
40:21 46:6
50:16 155:15
155:22 173:17
174:9 175:22
178:12 179:13
202:18 203:23
206:12 247:6
262:23 265:8
271:2
regards 90:21
REITER 2:7
reject 22:2
related 6:24
45:16 46:6
77:19
relative 19:3
40:9 104:20
108:7 153:4
154:5
release 55:4,14
152:23
released 132:14
132:18 156:5
158:3
releasing 131:2
133:13 153:18
relied 194:12,21
195:8 275:12
relocation
175:10,14,16
rely 194:20
195:3 198:3,15
276:3
remain 185:9

remember
10:23 11:7,12
12:22,24 13:2
13:2,4,6,8,22
14:6,19,22
15:1,5,8,11,15
19:5,7,20 20:7
21:11 22:11
24:5 26:14
27:5 28:2
31:11,19 32:11
37:20 40:16
42:20 43:4
46:19 48:10
53:17 58:16
62:15 65:7
70:19,20 71:1
71:2 75:21,22
76:17,18 82:2
82:4,10 84:10
85:9,12,12,13
89:13 91:3
99:20,21
108:11,14
114:17 128:9
129:16,19
138:19 141:3
144:8 150:13
150:21 160:14
164:15 169:10
169:12 171:2
177:18,22
178:2 190:24
191:13,16
197:21 202:8
217:22 218:1
219:1,1,9,10
219:11 222:5
224:9,13 226:8
241:24 279:9
remind 208:21
247:4
repeat 6:5 27:3
29:8 46:14
57:19 86:9

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

157:20 168:2
170:15 187:10
193:14 209:17
230:22 232:7
261:11 265:14
**repeated** 50:17
**rephrase** 6:5
170:17 176:23
198:12 209:22
**replied** 276:10
**report** 7:21 8:4
47:19 128:20
162:17,18
163:4,10
164:14 186:16
186:18 206:5,6
227:7
**reported** 81:8
81:22 86:17
120:5 285:8
**Reporter** 1:18
34:16,23 50:7
135:16,20
142:5 154:14
154:16 192:12
197:10 276:23
282:17,20
285:5 286:5
**reporters**
147:16
**reports** 10:6
16:5,14 28:21
32:21 33:1,8
160:18,24
161:2,5,7,8,15
161:24 162:2,4
162:6,21 163:8
163:14 164:7,9
164:16 218:13
218:18 230:4
259:8,19
**represent** 5:15
55:23 150:4,12
159:13 279:20
**representation**

132:24 254:10
267:14 279:22
**representations**
275:6,12 276:2
276:9,9,11
**representing**
130:21
**reproduction**
158:17 159:1
**request** 213:7
**requested** 24:2
27:9 30:5 35:8
46:17 50:4,9
50:11,15,20
114:11 142:8
177:16 207:3
**require** 29:11
141:22 143:16
169:20 176:17
236:8 237:13
237:15 240:4
241:11 265:7
266:9,10 271:3
**required** 97:20
120:11 130:15
180:21 183:24
191:14 205:21
**requires** 70:5
141:15 143:10
169:18 174:12
176:2 177:8
183:19 184:4
187:5 195:16
196:16 204:5
206:18 230:14
233:4,16 236:4
237:8,23
238:17 239:7
239:13,22
241:6 242:5,8
242:9,20,24
244:15,19
246:5 247:24
248:12 251:17
251:20 252:12

253:4,8 254:13
260:19,23
263:13,16
**requisite** 158:19
**reserve** 158:9
282:11
**reserved** 285:24
**reserves** 282:13
**residences**
138:20
**resolved** 270:3,6
**resource** 51:6
**respect** 26:6,11
51:5 167:15
170:6
**Respectfully**
231:18
**respond** 15:24
29:22 147:6
**responding**
169:22
**response** 12:7
158:9
**responses** 55:11
**responsibilities**
10:1
**responsibility**
189:23
**rest** 139:1 164:8
**restate** 30:3 35:6
**result** 265:9
**resume** 213:5
214:11,19
215:13
**resumed** 216:3
**retreading**
270:2
**return** 137:18
**reveal** 12:9
22:24 23:7
130:13,23
181:15 208:22
231:24 256:17
271:3,11
**revealing** 238:2

**review** 6:20 7:1
7:13 9:15,17
9:20,24 10:3,4
10:6 11:22,24
12:16,23 14:9
15:17 16:5,6
16:15,15,23
18:2,11,13,18
18:19 20:2,4
21:24 25:5
26:4 29:1,2,5
32:21 35:14
36:8 40:2
43:24 44:5,5
44:23 47:7
48:6 49:2,6
51:21 52:4
58:14 78:22,23
81:7,14,24
91:14,24 92:7
93:1 98:12,21
99:23 101:15
104:23 105:5
106:21 107:5
111:20 117:22
120:17 136:10
138:18 143:2
145:5,11,13
146:20,22
147:2,19
148:12 149:5,8
149:13 154:24
155:5 157:8,10
157:12 159:20
159:22 160:10
160:13 163:6
165:7,17,24
167:1 169:7
171:10 174:4
176:9,13
177:20,22
179:21,22
181:7 182:18
182:20 183:15
184:8 185:6

186:20 187:15
189:14 190:8
190:21 195:2
197:3,20,23
198:2,15 200:9
200:11,19
201:4,8,18
202:3,18,19,20
202:23 203:1,6
203:23,24
204:16 207:23
208:4,12 209:8
209:10 210:1
218:11 219:14
220:10 221:3
223:13 224:13
225:14 230:9
232:13 234:20
240:2 242:10
250:15 263:8
268:11,13,21
270:10,15,16
270:16 282:11
**reviewed** 107:4
126:3 127:23
130:7 145:3,4
148:3 201:8
277:14
**reviewing** 22:1
33:1 152:22
203:4
**Richard** 3:3
**ride** 85:12
**riding** 85:11
219:2 220:21
**right** 10:12
11:19 17:20
26:19 28:11
29:3 32:23
36:12 37:16
38:17 41:9
45:11 50:24
51:9 59:1,24
60:3,4,13,22
61:5 63:9,14

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 314

| | | | | |
|---|---|---|---|---|
| 66:14 67:10 | **robbery** 21:18 | **rules** 1:14 5:24 | 48:19 53:22 | 281:14 284:6 |
| 68:24 72:2,8 | 28:19,23 36:11 | 81:20 87:3 | 54:14 61:11 | **Schalk's** 221:22 |
| 74:1 75:1 78:5 | 78:10 79:2 | 189:18 190:10 | 62:24 64:17 | 281:9 |
| 82:18 83:12 | 217:14 | 190:11 207:15 | 67:16,24 68:13 | **scheduled** |
| 85:24 87:5,10 | **Roger's** 155:6 | **rulings** 58:8,24 | 69:22 70:13 | 276:14 |
| 87:12,17,17 | 231:20 | **rumors** 219:15 | 76:16 77:10 | **school** 191:7 |
| 88:3 92:6,8,9 | **Rogers** 7:16,18 | 219:23 221:4 | 81:3 83:20,22 | **screen** 6:14 |
| 95:6 96:5,10 | 45:7 46:3,9 | 221:14 223:10 | 83:24 84:1,23 | 16:21 17:10,12 |
| 102:15,18 | 53:3,4 54:6 | 223:17 225:12 | 85:20 87:21,22 | 17:17 18:5,15 |
| 105:10 106:20 | 93:3,8,8,20 | 225:19 | 90:3 92:16 | 20:18 54:17 |
| 114:22 116:23 | 94:1,8,10 | **run** 25:20 33:12 | 94:15 95:10,21 | 123:5 144:19 |
| 120:16 121:2,2 | 122:17,24 | 47:24 74:11 | 95:22 96:13 | 267:23,24 |
| 123:20 125:4,9 | 123:21 124:5 | 115:21 | 97:19,24 | 280:23 |
| 125:12,18 | 124:10,12,22 | **running** 33:13 | 100:24 103:16 | **scribble** 48:21 |
| 129:20 131:13 | 125:3,12,23 | 33:17,18,19 | 107:2 108:18 | 92:23 272:23 |
| 132:13 135:22 | 126:8 128:10 | 48:10 74:5,10 | 110:7 115:9,14 | 273:5 |
| 136:5 143:23 | 128:12,20 | | 116:2 117:7 | **scroll** 70:10 75:7 |
| 144:23 154:18 | 129:4 135:19 | ——————— | 121:12,16 | 76:4 95:17 |
| 155:4,4 156:17 | 148:13,22 | **S** | 122:12,17,22 | 138:23 144:17 |
| 158:9 161:3 | 152:9 154:20 | **S** 4:11 | 124:1 125:8 | **Sean** 2:2 56:7 |
| 165:3 169:4 | 155:1,7 227:2 | **safe** 118:23 | 127:24 128:17 | 131:15 134:9 |
| 178:8 179:1,8 | 227:4,10 228:1 | 136:15 238:15 | 139:17 140:9 | 159:13 181:8 |
| 179:9,12 198:1 | 228:9,18 229:6 | 239:19 242:17 | 140:12,13 | 181:21 212:6 |
| 209:21 211:22 | 229:18 234:1 | 246:15 253:1 | 149:19 183:9 | 214:2 267:14 |
| 212:6 213:9,11 | 279:7,14 280:7 | **safety** 168:17 | 183:12 269:6,7 | 269:20 275:4 |
| 213:17,22 | 281:15,20 | **sat** 281:14 | 272:18 273:1 | 276:2 277:1 |
| 215:18,19 | **Rogers's** 127:17 | **saw** 72:14,19 | 273:24,24 | **sean@loevy.c...** |
| 216:7 217:8 | 128:6 129:22 | 73:1,14 74:1,2 | 274:7,22 | 2:5 |
| 250:12 257:11 | 232:11,24 | 74:4,6,7,9,11 | 277:18 | **second** 13:21 |
| 263:24 264:9 | 233:13 279:20 | 74:12,22 133:2 | **Schalk** 1:7 14:3 | 31:3,4 56:6 |
| 267:19,22 | 281:21 | 202:5,6 220:13 | 14:23 15:2,4 | 69:10 87:11,14 |
| 272:4 277:5,15 | **role** 55:22 90:20 | 250:11 | 68:11 81:6 | 99:6 105:13 |
| 282:8,10,12 | 193:1 199:5 | **saying** 36:24 | 84:1,11,20 | 131:14 211:21 |
| **right-hand** 34:1 | 255:14 | 56:13 133:15 | 85:10 86:15 | **Secondly** 22:18 |
| 45:6 61:1 | **roll** 267:16 | 139:11,23 | 90:13 103:9 | **secrecy** 54:23 |
| 93:11 94:7 | **roller-stating** | 212:21 213:2 | 113:15,20 | 130:11 132:15 |
| 96:7 103:21 | 128:15 | 216:13,17,21 | 119:3,16 | 133:7 153:19 |
| 110:2 116:14 | **room** 6:16 48:9 | 276:8 | 121:18 217:21 | 155:19 156:6 |
| 121:22 122:9 | **row** 272:14 | **says** 19:11 21:17 | 220:17,18,24 | 158:1 |
| 122:22 124:1 | **rule** 23:10 | 22:6 25:15 | 221:5,16 227:6 | **section** 269:2 |
| 269:3 | 138:21 179:7 | 28:4 31:21 | 227:12 228:2 | **see** 10:4 17:9,23 |
| **rights** 85:18 | 179:11 181:18 | 33:11 35:15 | 228:17 240:10 | 18:6,23 19:7,8 |
| **road** 215:17 | 182:23 189:22 | 36:16 37:3,24 | 240:18 250:3 | 21:3,19,20 |
| **robbers** 110:14 | 208:24 231:4 | 38:19 41:4,4 | 262:12,17,23 | 22:8 24:24 |
| 116:2 136:12 | 238:1 247:6 | 41:18,21 42:6 | 263:9 264:19 | 27:22 28:1,3 |
| | | 45:16,19 48:14 | | |

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 315

34:3,7 35:24
36:23 37:1,7,9
37:9,10 38:3
41:22 42:3,7
44:10,15,16
45:4,7,12,17
48:18 54:16,17
57:10 58:6
60:6 61:3,7,8,8
61:10,15,16
62:9,10 63:2,3
64:10,11 67:15
68:1,2,12,13
70:10,15,16
72:4,23 75:23
76:7,12,13
79:5 85:21
87:15,19 88:20
88:22 89:1
90:8,9,14,15
92:12,14 95:15
95:18,19 96:16
96:17 97:18,21
97:22,22 98:2
98:5,8,9 101:3
101:4 102:19
104:12,13,13
106:22 107:1,5
108:21,22
110:4,5,9,10
110:15,15
111:13,14
121:8,10
123:22 124:3,4
126:23 127:2
133:14,19
137:17 140:3,8
140:15,16
144:6,8 152:11
155:6 201:12
202:2 216:23
240:8 253:24
254:9 261:15
267:24 268:18
269:10,11

270:9,14 272:1
272:5,6,12,19
272:20,21,23
273:2,23 277:7
277:14,17,20
280:22
seeing 20:23
96:1 105:17
244:2 279:9
seek 26:23 91:6
165:4 176:20
179:9,14,14
181:22
seen 89:9,10,15
115:3 131:7
132:23 133:13
133:15 136:16
136:20,21
162:21 206:4
222:7 240:11
270:15
selling 122:5
semantics
216:10
sense 33:4 108:1
153:8 171:19
261:21
sent 6:22
sentence 69:6,12
129:13
sentences 92:13
163:11
separate 109:17
166:16 196:12
197:5 202:21
sergeant 224:17
225:12 226:4,9
226:12 264:19
serious 82:4
set 108:2,15
109:17 285:13
sets 116:19
share 16:21
267:23
shared 165:2,3

268:7
Sheene 61:6,8
67:16,19 72:2
72:8,10,13,15
72:19,22 73:1
73:6,8,14,17
73:24 74:2,3,6
74:7,9,11,15
74:21 76:10
79:19,24 80:4
80:6,9 93:14
93:16 243:8,11
243:15,22
244:5,9,21
245:6,19,23
246:13,23
247:18 248:5,7
248:20 249:6
249:14 277:18
277:24
Sheeree 7:19,20
25:16 30:13
32:5
sheet 7:24 40:2
43:24 101:15
sheets 18:20
25:4
shoot 74:10
shooter 243:24
251:9 252:7,24
shooting 155:9
157:15 235:14
235:24 244:7
244:11 250:22
254:23 255:5
short 135:11
159:8 203:21
212:8,24
213:20 216:8
short-circuit
271:18
shorthand 1:18
22:16 44:22
45:2 285:5
286:5

shortly 96:1
105:17
shot 78:11 217:8
252:1
shots 74:8
shove 120:4
shoved 119:16
show 41:9 66:6
72:1 79:14
82:12 88:3
115:4 117:19
120:16 125:10
129:20 135:13
143:22 146:9
152:7 153:3
215:17 280:20
Show-up 272:17
272:22
showed 42:23
115:23 227:12
236:12,18,21
240:20 241:16
241:23 244:22
250:20 251:7
251:24 252:5
252:23 253:12
253:21
showing 113:20
117:14 158:3
254:9
shown 61:19
62:4 114:5,20
115:2 139:12
222:11 226:11
234:16 237:2
240:10 241:1
shrunk 25:7
sic 7:19 126:15
158:11
side 34:1 35:16
44:9 45:6
48:23 61:1,11
70:11 72:17
82:20 83:3,15
87:13 88:19,20

89:17 93:11
94:7 96:7
97:19 100:23
102:21 103:21
110:2 115:8
116:14,18
118:3,11
121:10,22
122:10,22
124:1 269:3
sign 44:19 64:8
64:14 104:13
signature 70:11
70:14,17,22,23
76:9,15,17,20
89:17 129:14
129:15,18
282:13 284:15
285:23 286:4
signatures 89:9
129:12
signed 89:6
243:16 250:19
significance
49:17 50:22
significant
275:11,22
276:20
signing 89:8
129:16,19
similar 51:11
105:19 129:17
155:21
similar-looking
43:19
single 143:6
250:20 251:8
251:24 252:5
252:23 253:13
253:21
singled 140:21
sit 14:15 28:13
56:15 190:24
218:16 274:21
situation 169:11

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 316

175:13 209:12
**situations**
142:18 153:7
**skip** 133:22
**skipped** 122:20
122:21
**slash** 25:17
44:20 45:1
**slender** 138:8
250:9
**slightly** 170:18
**small** 25:9 97:17
**smoke** 80:6
**soap** 74:21
**socially** 147:4
**software** 186:4
**solve** 256:3
**some-** 169:1
205:5
**somebody** 70:1
89:8,11 100:4
102:17 108:24
202:7 239:3
278:12
**somebody's**
89:12
**Sorrell** 79:2
155:9 157:16
197:5 198:13
200:6 218:4
223:6 225:6
226:19 228:4
228:11,19
229:7 235:14
235:24 243:3
243:18 244:1,7
244:11 246:1
248:21 250:14
250:22 251:10
252:2,8 253:1
254:23 255:5
257:19 258:4
259:5,16 260:1
260:7 263:6
264:13 265:21

266:19
**Sorrell's** 251:7
**sorry** 19:12
20:13,20 23:20
27:2,21 32:17
34:16 56:12,13
58:3 59:13
64:7 67:3
70:18 71:16
72:21 73:3,6
80:11 82:21,21
83:10,15 86:6
86:9 87:11,20
99:9 100:9
101:17 102:17
103:22 111:9
111:10,22
114:8,13
115:12 118:8
122:18 123:4
135:14 139:3
144:20 156:24
157:16 173:4
180:11 186:1,4
192:12 202:12
204:7 206:21
211:10 217:2
245:11,13
276:23 278:18
**sort** 130:22
**sought** 90:21
151:16 175:16
**Sounds** 127:16
135:8,9
**source** 78:16
**south** 2:8 72:17
**span** 109:7
**spare** 163:18
267:10
**speak** 10:7,8,11
28:10 32:22
40:22 84:8,14
84:16 112:8,14
113:8 133:20
138:20,20

150:3,7 151:2
166:5,8,11
**speaking** 10:21
11:21 32:12
33:2,17 39:1
39:23 46:2
47:6,16,19
52:2 58:13
62:3,17 63:10
64:14 71:7,11
75:13 77:24
80:18 85:17
86:11 88:17
91:6,9,23
99:22 104:23
107:23 109:13
111:16,19
117:23 123:16
124:9 126:7
146:4,5 150:13
150:21 174:2
180:5,6,17
182:9 255:2
276:24
**speaks** 75:5
79:21 278:19
**special** 189:23
**specific** 12:19
13:8 26:8
28:16 69:19
110:22,23
143:8 144:12
152:21 153:3
161:11 167:16
170:4,7 171:3
171:19 175:12
189:9 200:22
218:7,9 219:6
219:10,12
256:24
**specifically** 7:4
21:9 84:13
137:7 145:1
147:14 160:22
164:10 172:10

190:23 224:9
**specifics** 13:4
**speculate** 70:8
120:11 141:16
141:23 143:11
143:16 174:13
176:3,18
196:17 233:5
233:17 236:4,8
237:9,13,16,24
238:22 239:8
239:13 240:5
241:7,11 242:6
242:9,24
244:16,19
246:6,8,20
248:13 251:18
251:21 252:13
252:15 253:8
254:18 260:20
260:23 263:14
263:16 281:12
**speculating**
46:20 86:23
101:12 233:8
233:22 248:3
248:18 281:22
**speculation**
31:11 32:9
34:19 39:4,12
40:4,24 46:12
48:2 49:20
53:8 63:23
64:4 65:5,17
69:16 70:5
75:18 77:7
81:1 82:7 86:3
86:7,20 93:22
94:13 95:7
97:11 99:17
101:20 104:1
113:24 118:15
120:6,7 126:1
141:1 142:13
142:20 145:8

147:22 149:11
169:18 173:20
174:18 177:9
187:5 195:16
204:5 205:23
206:18 229:10
229:15 230:14
238:17 239:22
242:20 247:24
253:4 254:14
254:16 265:4
278:17 279:24
280:10
**spell** 5:10
147:15
**spoke** 40:10,17
85:24 112:11
136:9 166:24
201:3 279:18
**spoken** 40:1,6
51:19 52:3,8
100:15 101:6
150:9,11 151:5
164:20,23
**spots** 99:6
**squeeze** 215:7
**squiggle** 53:20
53:23
**stage** 29:5
142:15 250:15
**stamp** 42:2
54:14,17 57:20
57:24 71:18,21
**stamped** 57:23
**stand** 44:22 49:5
100:10,11
117:10,11
**standard** 179:13
195:20
**standing** 73:1
181:9,20 182:2
187:7,7
**stands** 22:3,16
45:23
**star** 95:16 116:2

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

121:18
**Starr** 2:2 4:5
11:5 14:13
32:9 34:20
35:19 39:13
40:3,13 41:1
42:18 46:10,13
47:3 48:2
49:11 52:10
53:13 56:9,11
56:13,21 57:9
57:13 60:14,17
63:23 65:3,5
66:1 69:15
75:3,17 77:7
77:22 79:20
81:1 86:3,6,21
90:23 91:21
93:22 94:13
95:7 97:11
99:17 100:17
101:21 102:11
104:1 110:20
113:23 118:6
118:14 119:7
119:20 120:7
125:24 131:18
131:23 134:12
134:17 135:9
139:3,6 141:1
141:13,17
143:12 145:8
145:17 147:22
148:7,16,24
149:11 150:19
159:4,7,11,13
161:13 162:22
163:12,21
164:4 166:13
167:4 168:3
169:5 170:16
171:4,17 172:8
172:23 173:11
174:7,23 175:2
175:19 176:11

177:14 178:6,9
178:24 181:4
182:2,7 183:17
184:18 185:14
185:21 187:11
188:21 189:10
192:5,18
193:15 194:1,9
194:24 195:10
195:22 196:9
196:23 197:12
197:24 198:11
198:23 199:16
200:3 201:7
204:9 205:10
205:18 206:8
206:23 207:12
207:20 208:10
209:18 210:12
211:2,7 212:15
212:22 213:12
213:18 214:22
215:20 216:22
217:6,9,18
218:2 219:21
220:14 221:11
221:20 222:14
223:16,24
224:15 225:18
226:2,15
227:18,24
228:15 229:2
229:17 230:7
230:18 231:14
232:8,22 233:9
233:24 236:10
237:18 238:10
238:24 239:14
240:6 241:13
242:13 243:1
244:20 245:18
246:10,22
247:15 248:4
248:19 249:5
249:12,20

251:5,22
252:17 253:9
254:20 256:1,4
256:23 257:15
258:2,11,18
259:4,12,23
260:24 261:12
261:24 262:11
263:5,22 264:3
264:5,8 265:15
266:3,12 267:7
267:19,21
268:5 270:5,7
270:17 271:14
273:10 274:1,9
275:14,16
276:5,12,14,22
277:3,6 278:7
278:23 279:16
280:5,13 281:5
281:23 282:15
282:22
**start** 74:17
107:17 108:18
**started** 74:18
216:6
**starting** 71:13
72:8 92:16
105:14 115:16
**starts** 27:23 72:1
79:18 92:13
115:13 121:17
**state** 5:9 23:20
59:19 91:10
180:9 182:13
184:2 281:24
286:5
**state's** 3:2,5 9:5
9:14,24 11:3
12:5,16 23:17
26:21 29:17
31:15 51:15
59:10 69:7,14
80:1 81:24
92:4 98:12

101:16,17
104:24 128:24
137:18 138:9
139:13 143:2
146:11,21
147:12 151:22
152:3 156:10
159:20 160:10
165:17,24
166:1 167:21
168:6 169:7,15
169:22 170:21
171:10,21
172:3,11,17
173:15,23
175:11,21
176:6 177:2
179:20 180:13
181:7 182:18
182:20 183:20
184:1,9,21
185:7 187:21
188:22 190:8
190:12 191:3
191:20 192:8
192:21 193:4
193:18 194:3
194:11 195:2
195:12 196:10
197:1,2,15
198:2,14
199:10 203:24
204:16 210:1
218:11 230:9
232:13,14,17
237:6 241:4
242:3 244:13
246:3 247:22
250:10,13
251:14 252:10
253:14,23
254:8 255:13
255:16 260:16
268:9 270:9
271:8 278:12

278:24
**stated** 28:2
53:17 84:3
121:24 122:2,4
122:17,24,24
145:11,21
244:22 245:7
269:22
**statement** 7:16
7:19 27:22
62:7,12 66:8
67:8,16 68:9
68:15,18,19,21
69:20 70:2,21
71:3,5,6,9
75:10,12,22,23
76:18,21 77:15
77:18 80:3,9
80:15 83:14,19
83:24 121:13
121:17 123:10
123:17 125:4,7
125:12,23
126:21 127:6
127:17,21,24
128:6,13,19
129:2,6,9
145:24 148:3,5
148:10,22
149:3 173:18
174:10 175:4
175:24 177:5
210:5,14,21,24
211:4,9 249:15
279:21 280:15
281:14,21
**statements** 57:5
78:1 172:13
183:10 280:8
**states** 1:1,15
72:2,8,10,13
72:15,22 73:6
73:8,14,17,24
74:2,3,6,7,9,11
74:15 79:19,24

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

80:4,6,9 96:11
126:24 127:3
128:1,22,23
129:7 243:23
284:1 285:1
**Stateville** 45:22
**stating** 206:12
250:19
**station** 10:21
16:4 48:8
161:20 162:12
208:6 210:2
240:9,20
241:16
**statute** 54:23
55:9
**stay** 215:10,22
**stenographica...**
285:9
**stepping** 31:9
**steps** 102:9
208:17
**stick** 212:17
276:2
**sticking** 122:6
**stipulation**
153:21,24
155:14
**stone** 134:8
**stood** 72:19
**stop** 56:6 69:9
75:1 80:11
92:18,21 106:5
131:13 188:23
**stopped** 96:1
105:17
**store** 74:20,23
**strategies** 23:1
112:21 167:12
231:1
**street** 2:3 6:9
103:8 131:8
140:2 225:1
286:15
**strictly** 180:21

**strictures** 55:9
**strike** 21:14
26:1 39:22
47:23 51:18
69:3 149:7
162:8 182:10
183:18 186:9
197:1 199:4
221:13 226:16
228:7 234:9
240:15,17
243:20 247:17
248:6 252:18
257:17 262:1
264:12 279:5
**stuff** 109:18
**Subscribed**
284:18
**subsequent**
107:23,24
**substance** 12:9
151:6
**sued** 5:16
**sufficient** 92:1
**suggest** 282:12
**suggesting**
133:17
**suggestion**
188:16,17,19
**Suite** 2:8,14,19
286:16
**suits** 196:14
**summarize**
204:17
**summary** 8:13
84:3 92:10
115:13 121:24
123:8,9 204:2
204:13,22,24
**summer** 9:22
160:1
**sup** 7:21 8:4,4
163:9,10
**supervisor** 9:11
11:23 12:4

24:20 185:16
185:24 186:6,8
200:10 201:3,6
201:16
**supervisors** 12:1
12:10 201:19
201:20,21
202:2
**support** 94:9
95:4
**sure** 5:12,22
10:16 20:15
25:17,21 27:4
27:6 28:6 37:2
37:20 43:6
47:20 49:13,15
49:23 53:12
57:21 60:12,16
60:16 63:17
64:18 68:7
72:9 74:9
82:10,23 84:5
92:20 94:7
98:6,7 100:8
106:9,12,17
107:14,17
108:13,14
109:2 113:7,9
120:21 126:19
128:11 139:4
149:20 150:12
159:6 174:15
174:21 182:8
184:19 188:5
198:9 204:7
209:20 256:13
264:10 270:13
277:11
**surprise** 229:3
**surprises** 214:21
**surrounding**
109:12
**suspect** 166:16
183:11,11
205:3,12

208:15 210:4
235:14 236:14
236:20,22
237:3
**suspect's** 208:16
**suspects** 164:18
168:7
**suspension**
190:16
**sworn** 5:2,4
284:12,18
285:15

—————
**T**
**T** 4:11 98:9
**taint** 143:20
**take** 6:1,1 10:19
20:10 41:24
55:8 57:11,14
60:4 70:1 71:4
71:12 75:10
96:5 97:16
102:16 106:16
106:20 118:19
120:19 123:20
131:18 133:23
146:8 178:6
183:8 191:10
210:5,24
211:13,15
213:17,18,18
213:22 214:1
215:1 216:4
231:15 263:18
267:18 271:15
271:19 275:10
275:15,17,20
282:2
**taken** 1:13,17
11:11 62:18
68:19,22,24
98:17 125:7
126:22 127:1
129:23 135:12
152:4 154:20

159:9 164:13
213:21 214:14
216:3 275:21
279:21 284:13
285:8,11
**talk** 33:21 49:21
131:14 133:16
159:18 192:20
203:7 208:7,8
208:12 209:16
211:23
**talked** 30:11
41:5 96:18
130:10 203:8
209:8,10,11
216:1
**talking** 33:18,21
58:19 72:4,24
87:15 142:13
142:15,17
166:10 168:18
168:22 174:16
175:8,18 176:8
176:12 192:24
231:23
**tall** 138:8 250:9
**technician** 98:15
98:18
**tell** 11:10 12:20
19:12 35:16
40:10,20 49:9
49:13 53:3
60:19 69:2
106:10 109:5
110:12 120:18
141:11 142:2
143:7 149:9
151:4 200:23
200:24 201:2
236:17 240:16
240:19 241:14
243:2 244:4
245:19 248:20
251:6,23
254:21 255:3

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

285:15
**telling** 8:22 11:8
12:3 113:21
140:18 202:13
213:1 275:13
**ten** 135:5 263:20
275:8
**tended** 163:8
**tendered** 183:13
**tends** 190:2
**tentative** 36:16
37:7 38:9,14
39:9
**tenure** 160:9
184:20
**terminology**
206:16
**terms** 22:19
130:20 133:6
165:8
**Terry** 7:16,18
45:7 54:6 93:3
93:7,8,19 94:1
94:8 122:17,24
123:21 124:10
124:22 125:12
126:7 127:24
128:23 129:8
129:22 148:22
154:20 155:1
227:2,4,10
228:1,9 229:6
229:18 231:20
232:10,24
234:1 281:15
**Terry's** 233:13
**testified** 5:5
11:16 26:14
28:9 32:20
63:9 84:6
119:14 182:11
217:11 218:21
220:15 222:15
229:4 234:9,10
234:15 235:5

235:12 236:12
240:8,14
253:11,20,22
254:5,6
**testify** 10:22
11:2 126:8
270:21
**testifying** 10:15
132:8 152:21
236:16
**testimony** 7:17
7:20 8:1 126:4
129:23 130:24
133:12 151:6
152:8,9 154:5
154:20 155:1,6
155:15,23
156:4,18 157:1
157:8,13
166:14,20
181:22 189:13
190:7 200:18
229:24 235:10
240:13 243:12
247:2 253:16
253:17 254:3
**text** 120:22
**thank** 8:21,22
11:15 18:24
21:6 23:14,23
24:9 25:13,24
26:18 33:24
35:5 36:12
43:22 50:13
53:15 56:1,23
57:11 58:2
59:20 60:3,17
67:5 71:20
75:2 80:13
83:12 87:9
89:18 91:5
92:6,24 102:4
102:15 106:18
108:17 110:1
114:12 115:19

116:6 120:21
120:22 121:5
122:14 123:7
123:24 134:24
135:1,8,18
137:15 139:10
144:23 147:8
147:11,18
149:22 154:13
156:8 158:5
168:1 170:14
181:19 185:5
211:21 282:13
282:15,16,23
**Thanks** 20:19
57:15 135:9
139:6 157:23
159:2,7 163:23
**theories** 23:1
112:22 231:2
**thing** 8:11 60:13
106:6 108:23
140:14 147:1
179:8,10,12
185:24 203:3
**things** 27:16
48:17 59:22
126:11 134:6
137:7 177:21
178:23 179:23
183:9 202:21
204:21 214:23
216:16 230:3
260:13
**think** 17:16
25:20 37:3,9
37:11,13,16
39:15 45:4
54:11 56:18
62:22 73:4,4
83:5 90:16
92:11 112:13
122:12,20,21
123:2,4 140:8
140:9,13 150:5

154:23 160:6
160:17 169:3
176:17 178:7
182:14 188:19
199:13,15
212:3 215:1
217:4 231:11
234:16,23
237:16 253:22
281:6
**thinking** 13:21
277:24
**third** 71:13,17
71:21 129:11
129:14
**thought** 155:13
250:9 253:14
254:7 278:13
**threatened**
258:20
**threats** 80:3
86:16 129:5,8
**three** 22:1 47:21
92:12 129:12
275:23 280:6
**time** 9:13,18
10:12,12 16:6
45:21 61:19
79:14 80:8
81:24 83:21
95:23 100:14
105:16 108:18
108:19,19
111:19 112:12
117:24 127:13
131:23 134:10
134:22 138:6
144:9 146:19
147:1,8,11
149:10 161:15
164:2,8 169:6
176:14 177:13
182:17 187:1
190:12 191:8
191:19 201:21

204:12,15
205:9,13,17
207:1 211:1,5
215:6 216:23
218:11 220:12
222:7 223:13
225:13 234:15
234:18 261:13
264:11,13
267:10 275:6
276:21 277:19
285:21
**timely** 189:24
**times** 5:19 10:7
48:8 224:12
**title** 24:22 26:4
**today** 6:8,21
14:15 28:13
56:16 126:4
133:12 136:16
136:22,24
145:3 151:3
155:2 157:9
180:14 190:24
203:1 212:11
214:7,14
215:10 218:16
230:5 234:17
234:22 242:10
251:4 274:22
276:15 280:16
**today's** 57:6
130:8 150:2,6
150:15
**told** 6:24 29:11
43:6 138:7
139:24 140:22
152:15 164:24
208:14 210:3
228:2 235:7,7
235:12,17,21
235:23 236:13
237:1,14,19
238:13 239:1
239:17 240:24

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 320

241:21,24
243:23 244:6,9
245:23 246:13
248:7 249:4
251:12 252:5
**Tony** 222:23
224:17 225:5
**top** 8:13 41:16
41:18 42:3
43:21 44:3,8
67:15 102:18
106:22 108:18
188:11 202:4
268:20 274:11
**total** 108:3
**track** 108:4
**training** 190:20
190:23 191:1,1
191:2
**trans-** 10:23
**transcript** 7:17
7:24 129:22
135:17 282:11
282:18 284:14
**transcripts**
153:14,19
**translates** 41:6
**transport** 10:19
**transporting**
10:24
**treated** 80:1,16
80:20,23
128:20,23
166:7,18
168:10
**trial** 59:17,18
142:17 185:10
187:17 234:11
243:14
**tried** 263:19
**trouble** 20:23
54:2 137:1
139:20 172:6
173:4
**truck** 12:24

72:16,20,21
73:17,19,22
74:1,3 217:13
**true** 64:3 195:8
195:8,14,21
196:3,7 285:19
**truth** 285:15,16
285:16
**try** 40:8 97:17
212:13 215:16
217:6 263:20
270:6
**trying** 60:12
133:17 212:18
215:7 216:16
216:22 267:22
280:2
**turn** 74:4,10,12
183:20 184:1
**turned** 73:16
247:20 260:14
**twice** 5:21
**two** 33:7 57:5
74:4,7,9,11,13
144:11 149:16
152:7 153:3
158:10,23
159:5,5 235:6
235:12 269:19
**type** 19:2 62:7
81:23 83:20
88:15 140:14
**typewriting**
285:10
**typewritten**
163:10
**typically** 15:22
16:2,10,13
18:12 22:1
26:3 27:14,15
43:23 44:23
45:4,13 46:24
49:6 59:9 71:4
71:8 75:9,13
77:17 80:14

100:11 104:23
105:5 107:24
112:8,10 114:5
114:20 115:1
117:11 126:11
162:1,3,5
163:3,5,7
165:1,5,10
192:21 193:5
193:19 194:12
200:8 205:16
208:5,8

_____

**U**

**Uh-huh** 7:14
**ultimately** 92:2
**um** 173:5
**un-** 246:14
**unable** 111:17
205:12 235:13
235:18,23
244:6,10
**unaware** 152:2
178:23 202:17
235:9 236:15
236:15 240:12
243:14 245:1,3
253:16,17
254:2,4
**under-** 194:7
**underlying**
30:18,22 32:2
79:2,9 160:23
166:16
**Underneath**
87:22
**undersigned**
286:1
**understand** 6:3
6:6,6 8:21
23:13 26:17
77:14 85:4
107:10,14
132:13 152:19
153:5 156:7

170:12 171:15
172:21 173:7
179:24 188:10
188:12,15,18
189:7 190:4
196:10 198:9
203:1 214:22
217:10 229:18
230:3 261:4
275:1
**understanding**
59:14 78:24
162:23 172:6
173:5,10 180:7
182:10,12
189:5 194:2,8
197:13 207:22
274:3 282:1
**understood**
16:18 133:21
169:16 183:19
183:24 184:4
**undisclosed**
259:8,11,13
**undue** 261:4,16
**unduly** 237:20
238:13 239:2
239:17 245:20
245:24 246:14
262:4,17,23
263:9 264:20
**unexpected**
276:19
**unit** 9:12 11:8
179:22 195:3
197:3 198:15
**United** 1:1,15
284:1 285:1
**UNKNOWN**
1:7 284:7
**unreasonable**
213:8 276:19
**unrelated**
175:24 177:6
178:14

**unsure** 98:3
**unusual** 109:6
117:18 138:14
**update** 186:4
**upper** 19:18
**use** 147:16 153:4
173:17 174:2
178:12
**utilize** 51:6
**utilizing** 6:10

_____

**V**

**v** 180:1,4,8
**V2** 36:7,9,10
95:23 105:14
105:16,21,23
**vacated** 151:17
**vague** 13:23
**variety** 212:2
**vehicle** 219:3
220:21
**verdict** 142:16
**vetted** 269:17
**victim** 34:2,14
35:17 36:11,13
103:22
**video** 209:11
**videoconference**
1:17 2:1 3:1
5:5 285:12
**view** 65:15
115:24 116:22
118:11 240:19
241:15,22
**viewing** 105:1
118:4,12
240:21 241:2
241:17
**violated** 276:10
**violating** 155:20
**visit** 138:14
**visiting** 138:19
**volume** 34:22
**voluntarily**
129:10

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 321

| | | | | |
|---|---|---|---|---|
| **vs** 1:5 284:5 | 17:23 29:22 | 153:12 154:11 | **we've** 96:18 | 94:20 95:14 |
| | 36:18 37:11 | 159:18 165:7 | 100:13 212:7 | 97:15 100:2,21 |
| **W** | 38:2,20 40:21 | 171:20 192:19 | **website** 8:8 | 102:3,14 |
| **W** 22:5,15 24:7 | 48:19 58:6 | 192:22 203:3 | **week** 127:8 | 103:20 104:8 |
| 95:22 100:8 | 60:19 62:24 | 203:13 209:20 | **went** 13:5 72:16 | 105:9 106:7,12 |
| **W-A-L-K-E-R** | 63:13 66:11,17 | 211:18 212:12 | 74:16,21 | 106:18,19 |
| 5:13 | 66:19 68:1,10 | 213:2 214:3,4 | 190:20 200:13 | 107:16 108:16 |
| **W1** 92:13,17,18 | 69:8 80:2 | 214:12 215:15 | 210:1 240:8 | 109:24 111:3 |
| 93:2,9 124:1 | 82:15 84:1 | 216:4,10 267:7 | 241:15,22 | 112:7 113:5,10 |
| **W2** 92:20 | 86:9 88:7,11 | 276:18 282:12 | 250:2 251:7 | 113:13 114:4 |
| **W3** 92:22 | 88:21 96:14 | **wanted** 26:15 | **weren't** 28:24 | 114:15,23 |
| 115:24,24 | 97:10 101:2 | 56:22 114:13 | 52:7 161:24 | 117:6 118:1,7 |
| 116:9,19 | 104:7 105:12 | 146:9 160:2 | **West** 2:13,13,19 | 118:22 119:12 |
| **Wacker** 2:8 | 106:1,15 110:7 | 214:20 268:6 | 4:4 5:8,15 | 120:2,15 |
| **Wade** 7:23 | 114:17 116:4 | **wants** 215:14 | 11:14 12:13 | 123:19 125:9 |
| 25:18 31:22,23 | 120:18 121:17 | **warrant** 8:9 | 14:16 16:7,19 | 125:17 126:17 |
| 32:6 96:10,12 | 121:18 124:15 | 87:23 88:2,5 | 17:7,14,22 | 129:20 130:5 |
| 96:24 97:2 | 125:14,18 | 88:18 90:1,5 | 23:22 24:8,21 | 131:13,22 |
| 110:3,5,17 | 127:4 129:1 | 90:21 91:7,11 | 27:4,6,20 | 132:1,6 133:21 |
| 111:23 113:17 | 130:2,6 132:7 | 91:16,19 92:2 | 30:10 31:20 | 135:3,6,8,10 |
| 113:20 116:9 | 136:1,5,15 | 103:12,17 | 32:14 33:23 | 135:13,18,21 |
| 116:15,18,22 | 144:2,6 146:17 | 115:17,20 | 35:13,23 37:12 | 136:4 138:22 |
| 135:23 136:8 | 146:23 147:13 | **washer** 74:17 | 38:15 39:7,18 | 139:4,9,18 |
| 137:16 138:11 | 152:20 153:8 | **wasn't** 12:3 29:2 | 40:7,19 41:8 | 140:10 141:9 |
| 139:11,23 | 154:23 155:5 | 38:16,18 84:4 | 43:5 46:21 | 141:24 142:24 |
| 140:5 141:4 | 156:13,19,23 | 121:24 165:3 | 47:9 48:12 | 143:22 144:5 |
| 149:10,15,17 | 157:7 158:6,10 | 188:9 213:9 | 49:16 50:5,13 | 145:12,22 |
| 249:23 250:7 | 159:12 180:12 | 215:2 280:3 | 51:17 52:5,15 | 148:1,11,20 |
| 250:18 251:23 | 180:13 181:23 | **watching** 118:19 | 53:1,12 54:4 | 149:4,21 |
| 252:4,22,23 | 217:10 247:5 | **way** 29:1,23 | 56:2,5,10,12 | 150:23 151:14 |
| 253:10,18,19 | 264:9 268:1 | 32:19 38:5 | 56:17,22 57:2 | 151:21 152:5 |
| 254:6,21 255:2 | 274:8,23 277:7 | 40:8 97:18 | 57:4,11,15,16 | 152:15 154:2 |
| 255:3,7 272:10 | 281:1 282:16 | 98:24 102:2 | 59:12 60:16,18 | 154:13,18,22 |
| 273:12,23 | 284:11,16 | 118:21 154:2 | 62:6,20 64:5 | 156:12,17,22 |
| 274:14,21 | 285:7,14,21,24 | 183:5 187:24 | 65:12,20 66:5 | 157:5,6 158:5 |
| **Wade's** 250:2 | **Walker's** 12:7 | 188:14 264:18 | 66:14,19 67:2 | 160:11 178:18 |
| 254:2,3 | 55:11 89:5 | **ways** 47:7,13,15 | 69:23 70:9 | 178:21 194:16 |
| **wait** 135:14 | **want** 8:11 36:1 | 47:20,21 | 71:16,19,21,23 | 195:17 198:7 |
| 215:12 277:1 | 57:9 75:7 | **we'll** 6:1 99:12 | 75:6 76:3 | 198:20 209:3 |
| **waived** 84:3 | 82:13 90:19 | 125:10 134:1 | 77:13 78:3,21 | 210:9 211:12 |
| 85:20,24 | 99:10 121:20 | 135:10,14,21 | 80:10 81:4,21 | 217:2,7,15,23 |
| 121:23 | 130:12 131:4 | **we're** 104:18 | 82:11,17 83:11 | 226:5 228:22 |
| **Walker** 1:12 4:3 | 135:1 137:6,13 | 212:13 214:8 | 86:8 87:4 88:3 | 229:8,11,22 |
| 4:13 5:3,9,13 | 140:1 144:11 | 216:19,24 | 88:10 89:24 | 230:1,15 |
| 5:14 17:1,15 | 144:23 151:1 | 270:1 | 91:4 92:5 94:6 | 234:18 238:19 |

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 322

239:24 241:8
245:11,14
254:11,15
269:14 278:2
278:15,18
279:11 282:3,9
282:16,18,19
**whatsoever**
225:4 226:18
265:19
**white** 235:6,13
**Wiedenhaupt**
1:18 285:4
286:15
**WILLIAM** 3:2
**william.holme...**
3:4
**Willie** 155:9
157:15 197:5
198:13 200:6
218:4 223:6
225:6 226:19
228:3,10,11,19
229:7 235:14
235:24 243:3
243:17,24
246:1 248:21
250:13,22
251:7,9 252:2
254:23 255:5
257:19 258:3
259:15,24
260:6 263:6
264:13 265:21
266:19
**wished** 10:8
**withdraw**
113:10,11
**withheld** 191:23
192:7
**witness** 4:2 5:1
10:19,24 11:1
11:6 12:8
14:14 15:21
17:4 23:14,20

24:3,13,17
26:18 27:2,5
27:13 30:2,7
30:22 31:1,17
32:10 33:16
35:6,9,20 37:6
38:12,24 39:14
40:5,14 41:2
42:14,19 45:7
45:8 46:8,14
46:18,23 47:2
47:5,20 48:1,4
48:11 49:12,21
50:8,9,10,11
50:14 51:1,8
51:19,21 52:1
52:2,7,11,22
53:16 55:18,24
56:3 59:8 61:2
61:6,21 62:14
63:24 65:6,18
65:22 66:2,22
69:18 70:6
71:10 75:10,11
75:16,20 77:8
77:20,23 78:2
78:18 79:23
80:16,19 81:2
81:10 82:8
83:8,24 86:4
86:22 89:22
90:24 91:22
93:3,10,13,17
93:19,23 94:8
94:14 95:8
96:9,12 97:12
99:19 100:18
101:22 102:12
103:14 104:2
105:4,16
107:13 108:10
109:9 110:3,21
111:17 112:2,9
112:11,14
114:2,5,18,20

115:1,4 116:9
117:1,21
118:10,17
119:5,8,23
120:9 121:17
123:12,21
124:6 126:2
130:17 133:10
136:9 138:15
138:17 139:7
139:16 140:7
140:18,22
141:2,11,15,18
142:2,11,14,16
143:3,5,7,10
143:14 145:9
145:18 147:23
148:9,17 149:1
149:12 150:20
151:13,19
153:15,22
156:8 157:23
157:24 158:16
158:17,20,21
159:1 161:10
162:20 163:2
163:24 166:4,8
166:15,22,24
167:24 168:14
169:8,21,23
170:13 171:1
171:14 172:5
172:19 173:3,9
174:1,9,12,14
175:5,7,17,23
176:2,7,15
177:5,11,17
178:22 180:14
180:15,16
182:4 183:3,6
183:9,12
184:15 185:4
185:19 187:9
188:3 189:4
192:3,15

193:10,11,12
193:13,23
194:6,19 195:6
195:18 196:6
196:16,20
197:8,18 198:8
198:21 199:12
199:22 200:21
204:6,18,23
205:2,7,11,15
206:2,12,14,20
207:6,18 208:3
208:6,8,13,13
208:14 209:4,7
209:7,9,16
210:2,3,10,16
211:16,24
215:15,16
217:16,24
219:19 220:6
221:8,18 222:1
223:15,22
224:4 225:16
225:23 226:7
226:19 227:15
227:22 228:13
228:24 229:12
230:2,16
231:10 232:6
232:20 233:4,6
233:16,20
234:6 236:4,6
237:9,12,23
238:4,20 239:7
239:9 240:1
241:6,9 242:6
242:7,22 243:8
244:15,17
245:13,16
246:5,7,19
247:10 248:1
248:13,16
249:1,10,17,22
251:2,17,19
252:12,14

253:6 254:17
255:18 256:13
256:16,21
257:13,24
258:6,9,16
259:3,10,21
260:19,21
261:10 262:9
263:3,13,15
265:13 266:1,8
267:5 268:3
269:20,21,22
270:12,20,20
271:10 272:9
273:8,18 274:6
274:17 278:20
279:12 280:1
280:11 281:3
281:17 282:3
282:13 285:7
285:14,21,23
286:4
**witness's** 229:24
270:24
**witnessed** 81:5
86:15 115:3
120:4
**witnesses** 10:7
10:11 13:8
40:1,6 99:7,15
105:2 118:4,12
130:14,24
138:20 155:15
155:23 164:18
164:20,20,23
166:1 168:7,19
170:21 171:6
171:11,22
172:12 173:17
175:9 178:11
184:2 258:14
258:20,24
**witnesses'** 33:3
**Wojcik** 1:7
224:18 225:6

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 323

225:12,12,20
226:4,9,12
264:20 284:7
**wondering**
187:14
**word** 21:21
25:18,23 28:7
37:8,8 44:7
45:12 53:21
62:18 72:12,17
73:20 74:22
84:5 87:22
95:24 98:9
99:3,4,6
109:18 111:14
112:5 121:10
122:4,7 137:3
185:8
**words** 19:19
36:22 58:17
61:8 64:16
90:9 96:17
97:22 101:8
103:6 104:5,13
110:5,10,15
111:6,7,11
115:11 123:17
123:18 124:4
137:4,23
140:16 269:11
273:23 274:22
277:20
**work** 14:7 23:8
23:10 26:6,11
31:13 44:8
51:10 52:19
99:23 109:19
109:21 112:23
147:12,17
169:20,21
170:2,4,6,10
177:24 212:5
212:17 221:22
231:4,12
232:16 238:8

247:6 266:10
269:23 271:1
276:16 278:4
**work-product**
167:8 181:18
**workday** 215:1
**worked** 14:2,5
14:10,17,20,23
15:2,3,7,13
126:11 222:3
250:13
**working** 12:15
15:4 167:1
179:21 187:1
187:15 188:4
263:7
**world** 41:6
94:19
**worries** 114:15
123:7
**worry** 161:22
**wouldn't** 16:12
18:22 137:2
161:22,23
185:11,23
205:9 233:10
239:3 248:10
**write** 38:5,6
49:2 52:7
108:2 183:6,7
186:20 204:12
**writing** 19:7,9
19:21 21:16
25:7,8 27:22
28:1,3 58:15
58:18 60:1
75:22 78:1
82:14 89:10,11
99:6 128:9,11
129:3,17 137:2
207:7 264:17
**written** 39:16,19
39:21 47:18
77:1 83:6
88:20 102:7

109:3 134:8
148:10,18
149:2 186:14
210:20,24
211:4,9
**wrong** 36:24
**wrongful** 261:5
261:16
**wrote** 8:12 49:7
277:12,21

___
**X**
___
**X** 4:1,11 154:6

___
**Y**
___
**Y** 154:6
**yeah** 31:4 48:16
56:21 57:13,14
58:9 60:11
78:15 87:19,19
87:19 106:9,12
130:9 131:22
132:11 134:4
158:15 168:4
170:17 178:8
187:12 188:13
189:2 199:3
207:19 209:19
211:13 212:20
213:9,11,16,18
215:24 232:9
255:22 261:13
263:18 265:16
272:15,24
**years** 48:6
177:20 190:22
202:1 277:19
**you-all** 133:14

___
**Z**
___
**zoom** 6:10,14
82:16 268:2
269:1 281:2

___
**0**
___

**0003014** 17:20
**00152** 135:24
**001604** 88:6
**003040** 17:20
**007762** 129:24
**01** 159:24
**010** 116:4
**02** 21:2 36:17
41:17,19 42:4
43:18 48:20,21
63:1 82:23
83:16,20 84:19
91:15 92:21,23
96:6,15 97:7
103:7 104:7,14
108:8 110:8
115:21,24
116:4,4,5
117:8 124:15
268:23 269:7
274:23
**03** 160:1
**040** 116:5
**084-003582**
286:18

___
**1**
___
**1** 4:14 16:23
17:2 18:1 25:2
25:15 41:21,21
45:7,8 46:23
72:11,24 73:5
73:13,15,19
76:6,23 77:5
78:5 82:13,15
83:18 93:3,19
97:24 107:18
108:3 123:21
203:2 268:1,8
**1:30** 106:13
**1:50** 135:10
**10:00** 276:15
**10:30** 216:12
**10:32** 1:19
**100** 5:22 99:5

236:8
**101** 7:24
**125** 4:17
**13** 21:2 36:17
37:9 40:11,22
41:17,18 42:4
43:18 48:20,21
53:6 54:15
92:9 116:4
124:12,15
268:23 269:7
279:8
**13:50** 68:24
**130** 4:18
**136** 4:19
**13th** 94:11
268:21
**14** 1:19 284:13
285:6
**14:20** 83:22
**144** 4:20
**153** 137:9 139:5
**154** 139:5
**156** 4:21
**157** 135:24
**159** 4:5
**16** 87:6 91:15
96:6,15,24
97:7 99:16
110:8 116:5
272:3 274:4,23
**161** 286:15
**163** 125:13
**16th** 110:18
149:16,18
273:13 274:8
**17** 4:14
**1750** 2:19
**17th** 209:9
**18** 102:24
**18th** 103:7
**19-** 9:3 157:16
**1990** 7:22 28:20
29:6 78:12
79:10 122:2,5

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 324

155:9 157:17
**1994** 9:3
**1997** 9:9
**1st** 157:2

**2**
**2** 4:15 25:16
  30:12 34:2
  36:14 37:10
  41:10 42:1,6,6
  61:2,6 66:7,12
  66:20 67:12
  83:18 93:10,13
  93:17 95:22
  98:22 99:1,3
  99:13 103:22
  105:16 107:6
  107:18 108:7
  108:15 115:15
  128:18 137:8
  139:4
**2-** 48:5
**2:00** 106:13
  134:7
**20** 1:5 102:19
  103:24 104:7
  104:14 107:6
  115:21 117:8
  215:4 216:17
  274:11 284:5
**20-minute** 213:6
  216:1,9,20
**2000-** 9:22
**2001** 9:21 29:2
  146:20 159:22
  208:5
**2002** 8:5 12:17
  14:18,21,24
  15:4,7,14 29:1
  29:6 40:11,22
  53:6 54:15
  60:5 63:14
  68:24 87:6
  92:19 94:12
  96:24 99:16

101:2,7 102:19
102:24 103:24
106:23 107:6
110:18 121:2
124:12 125:4
126:22 129:24
154:21 157:2
193:3,17 235:6
235:18,23
270:16 272:3
273:13 274:4,8
274:11 279:8
279:22 281:15
**2003** 9:22
146:21 159:22
**2024** 1:19
284:13,19
285:6 286:6
**20668** 84:2
121:19
**20718** 84:2
121:19
**20th** 106:23
108:8,20
**21** 83:20 122:2
**21st** 79:10 84:19
155:9 157:16
**22** 48:6 115:24
177:20 190:22
202:1
**24th** 8:5
**25** 277:2
**26** 23:10 103:8
181:18 182:23
208:24 231:4
238:1 247:6
**26(a)(2)** 180:14
181:23 187:7
188:2 189:1
193:9 194:17
196:18 205:24
206:19 207:17
233:18 237:10
248:14 261:8
**26th** 6:9 55:13

103:8 131:8
225:1

**3**
**3** 4:16 25:18
  31:21 54:11
  88:4,8 96:9,12
  100:3,5,5
  107:2,2,6,18
  107:18 108:6,6
  108:7 116:9
  139:4
**3.8** 189:22
**3:00** 214:6
**30** 212:14 213:3
  214:9,10
**30-minute**
  214:10
**30(b)(6)** 193:9
  193:11 194:17
  196:18
**3014** 19:16
**3015** 41:10 42:1
  52:16 268:17
  268:17
**3016** 54:11
  57:22
**3017** 58:6
**3018** 20:11,15
  21:9 41:16
  42:10
**3020** 60:4 82:19
  83:1
**3022** 83:13
**3024** 96:5 272:1
  272:5
**3026** 92:8
**3028** 87:7 97:16
**3030** 106:20
  274:10
**3033** 102:18
**3037** 123:20
**3039** 121:1
**3050** 286:16
**311** 2:3,8

**312.243.5900**
  2:4
**312.341.9646**
  2:15
**312.361.8851**
  286:17
**312.603.5440**
  3:4
**312.929.4308**
  2:20
**312.982.0900**
  2:9
**333** 102:16
**334** 2:14
**3rd** 2:3

**4**
**4** 4:17 25:3,19
  33:11 58:5
  74:8 100:8
  125:10,15
  281:1,7
**4:15** 212:9,13
  213:3
**4:30** 214:6,8,18
  215:11 216:18
  217:4
**4:40** 216:19
**4:45** 217:5
**4:48** 283:2
**4:50** 277:2,2,3
**40** 70:12
**42** 71:15,17,21
**425** 144:1
**426** 144:1
**44** 79:16
**45** 75:8,8 212:12
  212:14 213:4
**45-minute**
  212:10
**46** 66:21 76:5
**474** 157:2,3
**4786** 1:5 284:5
**489** 157:3

**5**
**5** 4:4,18 20:11
  44:14,16,18
  68:22 74:8
  79:15 118:10
  118:20 119:15
  127:1 129:21
  130:3 135:15
  135:17,19
  154:17,18,19
  224:9
**5/112-6** 54:22
**5:00** 212:18
  214:11,19
  215:10,12
**50** 216:19
**500** 3:3
**5200** 2:8
**53** 2:13,19
**55** 21:2 116:4
**5th** 286:6

**6**
**6** 4:19 44:14,16
  44:18 45:1
  135:14,21,22
  136:2 154:17
  158:11
**60601** 286:16
**60602** 3:3
**60604** 2:14,20
**60606** 2:9
**60607** 2:4
**66** 4:15

**7**
**7** 4:20 82:19
  92:21 143:23
  144:3,16 235:2
**7:00** 213:2
**725** 54:22
**7762** 154:21
**7767** 154:21
**7768** 130:1

James Fletcher Jr. v. Jerome Bogucki; et al.
Deposition of Jennifer Walker - Taken 2/14/2024

Page 325

| **8** | | | | |
|---|---|---|---|---|
| **8** 4:21 121:2 | | | | |
| 125:4 126:22 | | | | |
| 144:24 145:24 | | | | |
| 154:16 156:18 | | | | |
| 156:20 157:4,5 | | | | |
| 157:11 158:12 | | | | |
| **8:00** 276:17 | | | | |
| **88** 4:16 | | | | |
| **8th** 125:7 279:21 | | | | |
| 281:15 | | | | |
| **9** | | | | |
| **9** 60:5 63:1 | | | | |
| 68:24 82:23 | | | | |
| 83:13,16 101:2 | | | | |
| 101:7 116:4 | | | | |
| 129:23 144:24 | | | | |
| 157:4 | | | | |
| **9th** 63:14 154:20 | | | | |