# EXHIBIT 25

LOUISVILLE    LEXINGTON    LONDON    FLORENCE    CINCINNATI    INDIANAPOLIS    ORLANDO    JACKSONVILLE    TAMPA



**KENTUCKIANA**
**— COURT REPORTERS —**

# CASE NO. 20-CV-04768

# JAMES FLETCHER JR.

# V.

# JEROME BOGUCKI, ET AL.

## DEPONENT:

## EMMETT WADE

## DATE:

## November 11, 2023



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

www.kentuckianareporters.com

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DIVISION OF ILLINOIS

 3                     EASTERN DIVISION

 4                    JUDGE ANDREA WOOD

 5                  CASE NO. 20-CV-04768

 6

 7                  JAMES FLETCHER JR.,

 8                       Plaintiff

 9

10                         V.

11

12              JEROME BOGUCKI, ANTHONY

13             NORADIN, RAYMOND SCHALK,

14           ANTHONY WOJICK, UNKNOWN CITY

15       OF CHICAGO POLICE OFFICERS, AND THE

16                  CITY OF CHICAGO,

17                      Defendants

18

19

20

21

22

23   DEPONENT:  EMMETT WADE

24   DATE:       NOVEMBER 11, 2023

25   REPORTER:  LUCY GOUGH
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                        APPEARANCES

 2

 3   ON BEHALF OF THE PLAINTIFF, JAMES FLETCHER JUNIOR:

 4   Sean Starr, Esquire

 5   Loevy & Loevy

 6   311 North Aberdeen Street

 7   Third Floor

 8   Chicago, Illinois 60607

 9   Telephone No.: (312) 243-5900

10   E-mail: sean@loevy.com

11   (Appeared via videoconference)

12

13   ON BEHALF OF THE DEFENDANT, THE CITY OF CHICAGO:

14   Katherine Morrison, Esquire

15   Reiter Burns, LLP

16   311 South Wacker Drive

17   Suite 5200

18   Chicago, IL 60606

19   Telephone No.: (312) 982-0090

20   E-mail: kmorrison@reiterburns.com

21   (Appeared via videoconference)

22

23

24

25
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              APPEARANCES (CONTINUED)

 2

 3  ON BEHALF OF THE DEFENDANTS, JEROME BOGUCKI, ANTHONY

 4  NORADIN, RAYMOND SCHALK, ANTHONY WOJCIK, AND UNKNOWN

 5  CITY OF CHICAGO POLICE OFFICERS:

 6  Jennifer Bitoy, Esquire

 7  Hale & Monico, LLC

 8  53 West Jackson Boulevard

 9  Suite 334

10  Chicago, Illinois 60604

11  Telephone No.: (312) 341-9646

12  E-mail: jbitoy@halemonico.com

13  (Appeared via videoconference)

14

15

16

17

18

19

20

21

22

23

24

25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                          INDEX
```

```
 2                                        Page
 3   PROCEEDINGS                             7
 4   DIRECT EXAMINATION BY MR. STARR         8
 5   CROSS-EXAMINATION BY MS. BITOY         60
 6   EXAMINATION BY MS. MORRISON           127
 7   REDIRECT EXAMINATION BY MR. STARR     129
 8   RE-EXAMINATION BY MS. MORRISON        134
 9   FURTHER DIRECT EXAMINATION BY MR. STARR   135
10   RECROSS-EXAMINATION BY MS. BITOY      136
11   FURTHER DIRECT EXAMINATION BY MR. STARR   138
12
13                         EXHIBITS
14   Exhibit                                Page
15   PLAINTIFF'S EXHIBITS
16   1 - Arnold Dixon Mugshot-
17        CCSAO_Conflicts_FletcherDixonBogucki_
18        20cv4768_001761                    15
19   2 - Emmett Wade's Signed Declaration -
20        Fletcher 000003-000009            44
21
22   DEFENDANTS' EXHIBITS
23   1 - Trial Testimony of Emmett Wade -
24        February 23, 2005 - Fletcher 881-1009   76
25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of ANNETTE MOORE, taken on November 2, 2021

```
 1                EXHIBITS (CONTINUED)

 2   Exhibit                               Page

 3   2 - Chicago Police Department Case

 4        Supplementary Report - May 21, 2002 -

 5        IND DEF 481-489                    96

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                          STIPULATION

 2

 3    The VIDEO deposition of EMMETT WADE was taken at

 4    KENTUCKIANA COURT REPORTERS, 730 WEST MAIN STREET, SUITE

 5    101, LOUISVILLE, KENTUCKY 40202, via videoconference in

 6    which all participants attended remotely, on SATURDAY

 7    the 11th day of NOVEMBER 2023 at 9:59 a.m. (CT); said

 8    VIDEO deposition was taken pursuant to the FEDERAL Rules

 9    of Civil Procedure. The oath in this matter was sworn

10    remotely pursuant to FRCP 30.

11

12    It is agreed that LUCY GOUGH, being a Notary Public and

13    Digital Reporter for the State of ILLINOIS, may swear

14    the witness and that the reading and signing of the

15    completed transcript by the witness is not waived.

16

17

18

19

20

21

22

23

24

25
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1        PROCEEDINGS

2        THE REPORTER:  We are on the record.  My name

3   is Lucy Gough, I'm the online video technician and

4   court reporter today, representing Kentuckiana Court

5   Reporters, located at 730 West Main Street, in

6   Louisville, Kentucky.  Today is the 11th day of

7   November 2023.  The current time is 9:59 a.m.

8   Central Time.  We are convened by video conference

9   to take the deposition of Emmett Wade, in the matter

10  of James Fletcher Junior v. Jerome Bogucki et al.,

11  pending in the United States District Court for the

12  Northern District of Illinois, Case Number

13  20-CV-04768.  Will everyone but the witness please

14  state your appearance, how you're attending, and the

15  location you're attending from, starting with

16  Plaintiff's Counsel?

17        MR. STARR:  Okay.  Good morning, my name is

18  Sean Starr from Loevy & Loevy, and I represent the

19  Plaintiff, James Fletcher, in this matter --

20        MS. BITOY:  Good morning --

21        MR. STARR:  -- remotely from Chicago.  Sorry.

22        MS. BITOY:  Sorry.  Good morning, my name is

23  Jennifer Bitoy, and I represent the individual

24  Defendant officers, and I'm appearing remotely via

25  Zoom, in Chicago.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    MS. MORRISON:  Katherine Morrison for the City

2    of Chicago, and I'm appearing remotely from Chicago.

3         THE REPORTER:  All right, thank you so much.

4    Mr. Wade, will you please state your full name for

5    the record and hold your ID up to the camera?

6         THE WITNESS:  Emmett Wade, Jr.

7         THE REPORTER:  Thank you.

8         THE WITNESS:  I'm from Texas, in Texas.

9         THE REPORTER:  Thank you so much.  Do all

10   parties agree that the witness is in fact Emmett

11   Wade?

12        MR. STARR:  Plaintiff agrees.

13        MS. BITOY:  Yes, Defendant agrees.

14        MS. MORRISON:  Yes, agree.

15        THE REPORTER:  Thank you.  And Mr. Wade, when

16   you're ready, will you please raise your right hand?

17        THE WITNESS:  Okay.

18        THE REPORTER:  Do you solemnly swear or affirm

19   that the testimony you're about to give will be the

20   truth, the whole truth, and nothing but the truth?

21        THE WITNESS:  I swear.

22        THE REPORTER:  All right.  Counsel, you may

23   proceed.

24                   DIRECT EXAMINATION

25   BY MR. STARR:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       Q.   Good morning, sir.  Thank you for joining us

2   today on a Saturday morning.  We appreciate your

3   availability.  Mr. Wade, for the record, could you

4   please state and spell your name?

5       A.   Emmett Wade, Jr.  E-M-M-E-T-T, W-A-D-E, J-R.

6       Q.   Thank you, sir.  And let the record reflect

7   that this is a Zoom videotaped deposition taken pursuant

8   to the Federal Rules of Civil Procedure.  Mr. Wade, I

9   represent a man by the name of James Fletcher. You

10  understand that, correct?

11      A.   Correct.

12      Q.   Okay.  And the other lawyers here today on the

13  Zoom, represent the City of Chicago, and the individual

14  Chicago Police Officers that Mr. Fletcher has sued for

15  causing his wrongful conviction; do you understand that?

16      A.   Yes.

17      Q.   Okay.  Sir, did you witness an incident that

18  involved a shooting on December 21, 1990, on the 5600

19  block of West Madison, in Chicago, Illinois?

20      A.   Yes.

21      Q.   And you understand that a man named Willie

22  Sorrell was shot and killed during that incident, on

23  December 21, 1990, correct?

24      A.   Yes.

25      Q.   Sir, as you sit here today, would you be able

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    to identify the offenders involved in that shooting?

2        A.    No.

3        Q.    Okay.  Sir, approximately 12 years after that

4    shooting, did two Chicago police detectives come to your

5    home in 2002, to ask you questions about that 1990

6    shooting?

7        A.    Yes.

8        Q.    Did those detectives tell you, in 2002, that

9    they had a suspect from the 1990 shooting?

10           MS. MORRISON:  Objection.  Form.

11           THE WITNESS:  Yes.

12           MS. MORRISON:  Leading the witness.

13           MS. BITOY:  I join that objection.

14   BY MR. STARR:

15       Q.    I didn't hear your answer, sir?

16       A.    Yes.

17       Q.    Okay.  Did those detectives ask you if you

18   could identify the suspect?

19           MS. MORRISON:  Objection.  Form.  Leading.

20           THE WITNESS:  Well, my whole position was I was

21     never able to identify nobody but the Holsum truck

22     bread driver.

23   BY MR. STARR:

24       Q.    Okay.  But did they ask you if they could --

25   if you were able to identify the suspect?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     A.    Yes.

2     Q.    Okay.  What did you tell them when they asked

3  you if you were able to identify the suspect?

4     A.    I told them my -- from my point of view, the -

5  - my whole vision was concerning the Holsum truck

6  driver, because I saw him with the gun, shaking.  And

7  when he went to shoot, I braced myself back in the seat

8  because I knew he was going to hit me, and -- but the

9  bullet hit my windshield, and ricocheted up.

10     Q.    Did those detectives that came to your house

11  in 2002 show you any photographs of any suspects when

12  they visited your home?

13          MS. BITOY:  Object to form.

14          THE WITNESS:  Yes.

15          MS. BITOY:  Foundation.

16  BY MR. STARR:

17     Q.    Did the detectives that visited your home in

18  2002 specifically point out one of the photographs as

19  being the man they thought was their suspect?

20          MS. BITOY:  Object to form.

21          THE WITNESS:  Yes.

22          MS. MORRISON:  Objection.  Form.  Leading.

23  BY MR. STARR:

24     Q.    And sir, just so you know, in these

25  depositions there is going to be objections, and you can

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    let the other attorneys make their objections and then

2    answer the question.  Sir, did they -- those detectives

3    -- ask you if you could identify the person in the

4    photograph as one of the offenders in the 1990 shooting?

5        A.   Yes.

6        Q.   What did you tell them when they asked you if

7    you could identify the person in the photograph?

8        A.   The -- I told them that I saw the three people

9    run past -- well, they was on the, like, the side of my

10   car, of the van, and I could see them out the side of,

11   you know, from my peripheral vision, running past me

12   with hoodies on, like they was tied up.  And then you

13   know, at that point, I'm still looking at the Holsum

14   truck driver because he's shooting.  And -- and that's

15   the only person that I can identify that, you know -- in

16   that shooting.

17       Q.   So is it correct then when the police showed

18   you the photograph, you told them you could not identify

19   anyone?

20       A.   Correct.

21       Q.   Okay.  Did those detectives tell you that a

22   man named James Fletcher was their suspect?

23       A.   They said Fletcher is a bad guy, and they

24   showed me the photograph.

25       Q.   Did those detectives tell you anything else

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  about Mr. Fletcher?

2      A.   No.  Not so much, but he's the suspect in this

3  -- in this case and that, you know, we would need you to

4  identify.  And I said, I cannot identify the guy because

5  I never saw him, per se, shoot.  Only after the Holsum

6  truck, bread truck driver shot a couple of times, I

7  think it was, and that's when they returned fire and I

8  saw Mr. Sorrell, I think that's his name, fall.

9      Q.   Did the police tell you that they already had

10  Mr. Fletcher in custody?

11     A.   Yes.

12     Q.   Did the --

13     A.   And they said he wouldn't -- he would never

14  get out.

15     Q.   Did the police tell you that Mr. Fletcher was

16  a bad guy they wanted to keep off the street?

17     A.   Yes.

18         MS. MORRISON:  Objection.  Form.  Leading.

19         MS. BITOY:  Join that objection.

20  BY MR. STARR:

21     Q.   You can answer, sir.

22     A.   Yes.  Yes, they did.

23     Q.   Did the police tell you that they had any

24  other witnesses that had already identified Mr.

25  Fletcher?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    They said they had other people, but at the

 2   time, they didn't tell me who it was.  Only when I made

 3   it to court that I found out that it was a young lady

 4   and Cooper, the Holsum truck driver --

 5        Q.    Okay.

 6        A.    -- who was at the Court.  And we spoke briefly

 7   then.

 8        Q.    Okay.  So the -- when the police visited your

 9   home in 2002, they told you that they had other

10   witnesses that had previously identified Mr. Fletcher?

11        A.    Yes.

12        Q.    And the detectives told you that they wanted

13   you to identify the photograph of Mr. Fletcher; is that

14   correct?

15             MS. MORRISON:  Objection.  Form.  Leading.

16             THE WITNESS:  Yes.

17   BY MR. STARR:

18        Q.    And were you able to identify the man in the

19   photograph that the police identified as Fletcher as

20   being involved in a 1990 shooting?

21        A.    No.

22        Q.    And did you specifically tell the Chicago

23   Police that visited your home in 2002 that you were

24   unable to identify the man in the photograph they showed

25   you that they identified as Fletcher?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

15

```
 1            MS. BITOY:  Just object to the form.  Asked and
 2       answered.
 3            THE WITNESS:  Yes.
 4   BY MR. STARR:
 5       Q.   And sir, do you know that my client, James
 6   Fletcher, was convicted of the shooting death of Willie
 7   Sorrell?
 8       A.   Yes.
 9       Q.   And do you have any basis whatsoever to
10   believe that my client, James Fletcher, was involved in
11   the shooting death of Willie Sorrell in any way?
12            MS. MORRISON:  Objection --
13            THE WITNESS:  No.
14            MS. BITOY:  Objection.  Form.  Foundation.
15   BY MR. STARR:
16       Q.   I didn't hear your answer, sir.
17       A.   No.
18            MR. STARR:  Sir.  I'm going to show you what
19       I'm going to mark as Exhibit number 1 for the
20       record. It's Bates CCSAO Conflicts, Fletcher, Dixon,
21       Bogucki 20CV4768.  And the identifying number is
22       1761.
23            (EXHIBIT 1 MARKED FOR IDENTIFICATION)
24   BY MR. STARR:
25       Q.   If you give me one moment, I'm going to share
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    my screen, sir.  Sir, do you see this photograph on your

2    screen?

3         A.   Yes.

4         Q.   Sir, have you seen this photograph before?

5         A.   I think this probably the photograph that they

6    brung to the house.

7         Q.   Okay.  So you believe that this is the

8    photograph that the police showed you in 2002, correct?

9         A.   Correct.

10        Q.   And is this the man that the police told you

11   was named Fletcher, sir?

12        A.   Yes.

13        Q.   And is this the man that police wanted you to

14   identify as being involved in the 1990 shooting?

15        A.   Yes.

16        Q.   Okay.  Sir.  Mr. Wade, have you ever given a

17   deposition before today?

18        A.   No.  No -- no more than in court.

19        Q.   Okay.  But never a deposition in a situation

20   like this, where you're sitting in a room without a

21   judge, but there's attorneys asking you questions and

22   there's a court reporter present?

23        A.   No, I have never.

24        Q.   Sir, what did you do to prepare for today's

25   deposition?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1        A.   Well, basically, I just, you know, it's --
2   it's something that won't ever go away, but, you know, I
3   didn't -- I didn't have to do much preparing for it
4   because I remember it like yesterday.
5        Q.   All right.  And sir, you and I have never met
6   in person, correct?
7        A.   Correct.
8        Q.   But we've spoke on the phone a couple of
9   times; is that correct?
10       A.   Right.
11       Q.   Okay.  Have you had an opportunity to speak
12  with any other attorneys about this case --
13       A.   No.
14       Q.   -- in preparation for today's deposition?
15       A.   No.
16       Q.   And you're not currently represented by any
17  counsel, correct?
18       A.   Correct.
19       Q.   All right.  Sir, did you have a chance to look
20  over any documents in preparation for today's
21  deposition?
22       A.   Yes.  I looked over the documents, the
23  supplementary report, and I -- I -- what I -- what came
24  to mind was what they said I said.  The police officers
25  put that I can identify -- I think I can identify them
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   --
 2        Q.   Okay.  We're going to look at that -- I didn't
 3   mean to interrupt you.  Go ahead.
 4        A.   -- I never said that.
 5        Q.   Okay.  We'll look at that document a little
 6   bit, but -- so you looked at the police report, the 1990
 7   supplemental report.  Any other documents did you look
 8   at in preparation for today's deposition?
 9        A.   Not that I can recall, no.
10        Q.   Did you review your -- any handwritten
11   declaration?
12        A.   Handwritten declaration?  No.
13        Q.   Okay.  Well, I'm going to look at -- we're
14   going to look at that and I'll ask you again if it
15   refreshes your recollection.  Did you look at any other
16   testimony that you gave in this case?
17        A.   No.
18        Q.   Okay.  And then other than depositions, you
19   mentioned that you testified in court.  Are you
20   referring to your testimony in this case, in the Willie
21   Sorrell homicide case?
22        A.   Yes.
23        Q.   Have you ever testified in any other cases
24   besides this case?
25        A.   No.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1       Q.   Okay.  Do you recall testifying in this case,
2  sir?
3       A.   Yes.
4       Q.   And you testified in 2005, correct?
5       A.   I believe so, yes.
6       Q.   And you testified that the police showed up --
7  strike that.  You testified that the police showed you
8  photos in 2002, correct?
9       A.   Correct.
10      Q.   Did you testify during the criminal trial that
11 the police specifically pointed out one photo, and asked
12 you to identify that suspect?
13           MS. BITOY:  Just object to form.
14           THE WITNESS:  Yes.
15 BY MR. STARR:
16      Q.   You testified during the criminal trial that
17 they pointed to one photo, one photo in particular?
18           MS. BITOY:  Objection --
19           THE WITNESS:  Yes.
20           MS. BITOY:  -- form.
21 BY MR. STARR:
22      Q.   Okay.  During the criminal trial, you were
23 asked if the police had anything for you -- for you to
24 view when they came to your home in 2002; is that
25 correct?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Correct.

 2        Q.    And you stated that the police showed you a

 3   couple of photographs and you thought they might've been

 4   5x7's or something like that; is that correct?

 5             MS. MORRISON:  Objection --

 6             THE WITNESS:  I can't remember.

 7             MS. BITOY:  -- the question.  You can answer.

 8             THE WITNESS:  Okay.  I -- I -- I couldn't

 9       specifically say if I said 5x7s, but I did say

10       photos.

11   BY MR. STARR:

12        Q.    Okay.  Do you remember the police showing you

13   more than one photo in 2002 when they came to your home?

14        A.    They could have, but the photo that they

15   looked at more -- mainly was Fletcher.  Because the

16   officer was saying his name.

17        Q.    Okay.  So the police may have showed you more

18   than one photograph, but their emphasis was only on the

19   one photograph that they said was Fletcher; is that

20   correct?

21        A.    That's correct.

22        Q.    And that's the photograph that you remembered

23   today, right?

24        A.    Right.

25        Q.    And the detectives that came to your home in
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

21

1    2002, they only pointed out one photograph is being a

2    suspect, correct?

3        A.   Right.

4        Q.   When you were called to testify in 2005, did

5    you meet with anybody before you gave your testimony?

6        A.   I think I met with the district attorney.  I'm

7    -- you know, it's -- it's kind of vague when it come to

8    that.  Because they set us in another room until --

9    until our testimony.

10       Q.   Well, what do you remember -- go ahead.

11       A.   One of the -- the -- the thing I -- that

12   stands out the most to me was the black police officer

13   that was in that room with us.  And he said to us, be

14   very careful because Chicago PD has hired a lot of

15   racist police.  And I thought that was kind of strange

16   at that point.

17       Q.   So your testimony is that, before you gave

18   your testimony in court in 2005, you were in a witness

19   room and a police officer, a black police officer told

20   you that?

21       A.   Yes.  And -- and we -- it wasn't a witness

22   room, we was actually in another courthouse that wasn't

23   in operation that day.

24       Q.   And when you say we, who are you referring to?

25   Who was with you besides this black police officer?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    (No verbal response.)

 2             THE REPORTER:  Sorry --

 3    BY MR. STARR:

 4        Q.    Hey, sir, your sound went out.  I can't hear

 5    you.  Still can't hear you.  Did you happen to hit the

 6    mute button?  Okay, you're back.

 7        A.    Hold on.

 8        Q.    Let me -- let me ask the question again.

 9             MR. STARR:  Oh, he said, hold on.  I -- we

10        can't hear you.

11             THE WITNESS:  Can you hear me?

12             MR. STARR:  We can hear you now.  Can you hear

13        us?

14             THE WITNESS:  Hold on for one second.

15             MR. STARR:  Okay.

16             THE WITNESS:  Hello?

17             MR. STARR:  We can hear you.

18             THE WITNESS:  I don't know.

19             MR. STARR:  Can you hear us, Mr. Wade?  Why

20        don't we go off the record while I get this sorted

21        out?

22             THE REPORTER:  Yeah, we're going off the

23        record.  The time is 10:15 a.m.

24             (OFF THE RECORD)

25             THE REPORTER:  We are back on the record for
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        the deposition of Emmett Wade being conducted by
 2        video conference.  My name is Lucy Gough.  Today is
 3        November 11, 2023.  The current time is 10:20 a.m.
 4        Central Time.
 5   BY MR. STARR:
 6        Q.   Mr. Wade, we were just discussing your
 7   testimony in 2005, and you testified that prior to
 8   giving your testimony, you were in a different courtroom
 9   waiting to testify.  And you referred to there being --
10   you referred to people being there besides yourself, and
11   the black police officer you mentioned.  Who else was in
12   that room, sir?
13        A.   Cooper, the guy from the Holsum truck.  The
14   truck driver -- driver.  And they brung a girl in
15   briefly.  And she was saying that she told them that she
16   wouldn't testify.  I mean, she -- yeah, she wouldn't
17   testify because she didn't know who -- who shot him.  So
18   I think they had incarcerated at that time.
19        Q.   Do you know who that woman, what her name was?
20        A.   No, I never met her.
21        Q.   And who was she telling that she didn't want
22   to testify?
23        A.   I guess somebody from the prosecution office.
24        Q.   Okay.
25        A.   That she didn't she -- she said she didn't
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  want to, because she didn't know the guy they want him -

2  - her to testify against, if it was him.

3      Q.   Okay.  So you heard this female witness tell

4  the state's attorney that she did not know who Mr.

5  Fletcher was.  Is that what your testimony is?

6      A.   Yes.  Yes.

7      Q.   Okay.  And she could not identify Mr.

8  Fletcher; is that correct?

9      A.   She said she could not identify him.

10     Q.   Okay.  And then you said that Mr. Cooper was

11  there as well, Edward Cooper; is that correct?

12     A.   That's correct.

13     Q.   And did you have any --

14     A.   Me and him -- yeah, me and him shortly

15  exchanged some words.

16     Q.   What did you talk to Mr. Cooper about?

17     A.   Well, one of the first things I told him, I

18  said to him that day, I said, had you not shot, we

19  wouldn't be here today.

20     Q.   So you were expressing your dissatisfaction

21  with the fact that he shot and his bullet hit your

22  vehicle; is that correct?

23     A.   It wasn't just that the bullet hit my vehicle,

24  when them other guys shot back, that man died.  That was

25  my biggest thing.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And did -- what did Mr. Cooper say in response

2    to that, sir?

3    A.   He said he -- he -- he got fearful and he just

4    acted out of haste.  And I was like, yeah, but that cost

5    a life.

6    Q.   Did you and Mr. Cooper discuss anything

7    further than that?

8    A.   Yeah, he said he didn't -- he didn't know who

9    -- who -- he couldn't identify who did it.  But you

10   know, he was in the same boat that I was.  I said, I'm

11   not in a boat.  You know?  I'm just telling my truth.

12   Q.   Did Mr. Cooper tell you anything about any

13   interactions he had with police?

14   A.   No.  Not that I recall.  Just that they wanted

15   him, they brung him the photos.  I guess the same photos

16   they brung me.  And he -- he said at that point, he

17   couldn't identify him.  But I don't know what his -- I

18   never heard his court testimony or anything like that.

19   Q.   Did Mr. Cooper tell you anything else besides

20   that, sir?

21   A.   No.  Not that I could recall.  Not at this

22   moment.

23   Q.   Did you tell Mr. Cooper anything besides what

24   you've already testified to?

25   A.   No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1    Q.   Did you tell Mr. Cooper that you were also
 2    unable to identify Mr. Fletcher?
 3    A.   Yes.
 4    Q.   Other than the black police officer that you
 5    mentioned, did you meet with any other police before you
 6    testified?
 7    A.   No.
 8    Q.   Sir, where do you currently live?
 9    A.   In Texas.  Dallas, Texas.
10    Q.   And how long have you lived in that area, sir?
11    A.   Since 2020 --
12    Q.   Who do you live with --
13    A.   -- May of 2020.
14    Q.   May of 2020?
15    A.   I live with -- I live with my fiance right
16    now.
17    Q.   Do you have any family that lives in the area
18    besides your fiance?
19    A.   Yes.  I have all -- I have four daughters that
20    moved here, and I have my brother, and my sister.
21    Q.   How old -- are your daughter's adult in age?
22    A.   Yes.  My youngest is 20.  She's currently in
23    college.
24    Q.   Did you live anywhere else prior to living in
25    the Dallas, Texas area?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  A.  No.

2  Q.  Have you ever lived in the City of Chicago?

3  A.  Yes.

4  Q.  How -- what years did you live in the City of

5  Chicago?

6  A.  Born and raised there to 2020.

7  Q.  Okay.  So you lived in Chicago your entire

8  life, and then you moved to Texas in 2020?

9  A.  Right?

10  Q.  All right.  What prompted you to leave the

11  City of Chicago, sir?

12  A.  My wife actually passed in 2016 and we had,

13  prior to her passing, we had always talked about moving

14  here.  So you know, after a couple of years went by

15  after her death, I -- you know, felt it would be better

16  for me and my daughter, my youngest daughter to come

17  here and just start over.

18  Q.  Sorry to hear that, sir.  Are you currently

19  employed?

20  A.  Yes.

21  Q.  Where are you employed?

22  A.  Oldcastle Infrastructure.

23  Q.  And what do you do for Oak Castle [sic]

24  Infrastructure?

25  A.  I drive a forklift for them.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    Is that a full-time job, sir?

2    A.    Yes.

3    Q.    Prior to working at Oak Castle Infrastructure,

4    were you employed anywhere else?

5    A.    Yeah.  I can't -- I -- I -- it was an oxygen,

6    a small tank oxygen company.  I can't remember their

7    name.

8    Q.    Was that in Texas or in Chicago?

9    A.    That was Texas.

10   Q.    Okay.  And when you lived in Chicago, did you

11   have a full-time job in Chicago?

12   A.    Yes.  I was -- my last full-time job was FIC

13   America, and Carol Stream.  And before that, I was ten

14   years employed at HYDAC Technology.

15   Q.    How long did you work at FIC America?

16   A.    A year.

17   Q.    What did you do there, sir?

18   A.    I drove forklift, material handler.

19   Q.    All right.  And then prior to that, you said

20   you worked at a place called HYDAC; is that correct?

21   A.    HYDAC Technology.  H-Y-D-A-C Technology.

22   Q.    You worked there for ten years?

23   A.    Ten years, yeah.

24   Q.    And what did you do there, sir?

25   A.    I was lead over shipping receiving and

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  pickers.

2      Q.   Prior to HYDAC, did you have any other

3  permanent full-time employment?

4      A.   Yes.  I worked for -- contracted out through

5  Techtronic, for cable company.

6      Q.   How long did you do that for, sir?

7      A.   I did that from, I want to say 2004 all the

8  way up until I started working for HYDAC in 2010.

9      Q.   And then prior to 2004, did you have full-time

10 employment in Chicago?

11     A.   Yes.

12     Q.   And where'd you work, sir?

13     A.   Oh, well, 2004?  I can't recall the company

14 right now, that's been a while.

15     Q.   That's okay.  I -- I'm not trying to test your

16 memory, I'm just trying to get an overview of your

17 employment history.  Were you working in 1990 sir, when

18 this incident that we're here to talk about today

19 happened?

20     A.   I was doing plumbing work with my uncle.

21     Q.   Was there a plumbing company that your uncle

22 had?

23     A.   Yes.

24     Q.   And do you remember the name of that company?

25     A.   Metcalf Plumbing.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    How long did you work for Metcalf Plumbing?

2    A.    I think it was like a couple of years.  I -- I

3    worked with my uncle.

4    Q.    And you believe you were employed at Metcalf

5    Plumbing in December of 1990, correct?

6    A.    Yeah.  I know I was, my uncle was with me that

7    day also.  It was my mother -- I mean, my uncle, my

8    wife, and my sister.

9    Q.    They were --

10    A.    Yeah, they was -- they was there and, you

11    know, something told me -- because Bonnie DeShong, a

12    record -- a radio personality was at the Payless across

13    the street.  And I -- my uncle went into the clinic,

14    because he was going to the doctor that day.  And my

15    wife and sister, I told them, you-all go over there and

16    see Bonnie DeShong.  You know?  It -- it -- it'd be

17    nice.  And they went over there, and I was the only one

18    sitting in the van at the time reading a Sun-Times

19    newspaper.

20    Q.    Was it -- Bonnie with B or Vonnie with V?

21    A.    B.

22    Q.    Okay.

23    A.    B-O-N-N-I-E.  Bonnie DeShong.

24    Q.    Okay.  I have to ask this, sir.  I apologize

25    in advance, but have you ever been arrested before?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    Before?  Yes.

2    Q.    What -- how many times have you been arrested?

3    A.    Probably three or four for traffic.

4    Q.    Are all your arrests traffic-related, sir?

5    A.    Yes.

6    Q.    Have you ever been convicted of any crime that

7    involves dishonesty, or breach of trust, fraud or making

8    a false statement of any kind?

9    A.    No.  I have no criminal record of any kind

10   like that.

11   Q.    Were you ever a member of a street gang, sir?

12   A.    No.

13   Q.    Do you have any opinions, general opinions

14   about police or law enforcement?

15   A.    No.

16   Q.    Have you ever had any problems with police or

17   law enforcement?

18   A.    No.

19   Q.    Okay.  Do you have any conditions that might

20   affect your ability to provide truthful and accurate

21   testimony today?

22   A.    No.

23   Q.    Do you have any conditions that might affect

24   your memory?

25   A.    No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    Are you taking any medications that might

2   affect your ability to provide truthful and accurate

3   testimony today?

4      A.    Have never took medications.  Thank God.

5      Q.    All right.  So it's safe to say you're not

6   taking any medications that affect your memory, correct?

7      A.    Right.

8      Q.    All right.  Is there anything else that you

9   can think of that might affect your ability to provide

10  truthful and accurate testimony today during this

11  deposition?

12     A.    No.  This -- this thing, I guess going to go

13  to the grave with me, because it was so -- you can kind

14  of see it all, talking to you now, you can kind of see

15  the whole thing.

16     Q.    And you're talking about the incident that you

17  witnessed on December 21, 1990, correct?

18     A.    Right.  I can even remember my sister trying

19  to cough -- comfort Mr. Willie as he was laying there.

20  He was shaking and I looked at my sister and told her, I

21  said, baby, he gone.  He -- that's just his nerves I

22  think that's kicking in, you know.  So yeah.

23     Q.    So sounds like you have a pretty distinct

24  memory of the incident.  Can you take us back?  And can

25  you tell me everything that you actually do have an

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    independent recollection of regarding the incident that
 2    you witnessed on December 21, 1990?
 3         A.   Okay.  I was sitting on the driver's side of
 4    the vehicle.  When we pulled up, I parked, my uncle got
 5    out.  His name is Felton Metcalf, he's deceased.  He got
 6    out and he went into the doctor's office.  I told my
 7    sister and -- and my wife, I said, hey, you-all go over
 8    there and see Bonnie DeShong.  They was kind of
 9    reluctant.  I was like, no, go on and see her, we're
10    going to be sitting here for a while.  You -- you know,
11    you want to sit up in this crammed van until, you know,
12    till he come out?  So they went over there.
13              I was sitting there reading the paper, and I
14    looked up because I can kind of see the guys running
15    past me.  And I looked up, and I'm looking at the Holsum
16    truck, which is Cooper.  He was pointing the gun and he
17    was shaking.  It was a silver gun.  They say it was a
18    .38, I thought it was a bigger caliber gun.  I don't
19    know why, but it looked like a bigger caliber. And I saw
20    him point.  I said, oh my God, he going to hit me.  He
21    aiming at me.  And he shot off the first shot.  And like
22    I said, that hit the windshield, ricocheted up.  Then he
23    shot again.  And then it was return fire, and I could
24    see Mr. Willie fall.  And I said, oh my God.  And I
25    jumped over to the other side of the van.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-04768 Document #: 1442-2 Filed: 01/03/2025 Page 36 of 160

34

```
 1              My initial reaction was to go grab Cooper,
 2    because I was pissed off that he shot.  Had he not shot,
 3    this wouldn't have never happened.  So -- but he had ran
 4    trying to chase the guys, and I'm like, oh my God, he
 5    trying to play hero out here, you know?  And when he
 6    came back, that's my sister at this time, and my wife
 7    had came up out of the Payless, and my sister was
 8    comforting him.  And I saw them, the police, with
 9    Cooper, and I went to approach, and they bagged me back.
10         Q.   Okay.  So the police, you said they bagged you
11    back to them.  What do you mean by that?
12         A.   Because I was pissed.
13         Q.   Okay.
14         A.   You know, I -- I had a cracked windshield,
15    could've cost me my life.  Because when he shot, that
16    bullet probably would've hit me in my head.
17         Q.   Did you have any conversation with the police
18    at the scene?
19         A.   No.  They just -- well, I did have a little
20    conversation because they asked me to come over to Grand
21    Crossing, to the police station.
22         Q.   All right.  Did you do that, sir?
23         A.   Yes, I did.
24         Q.   And did the police interview you when you went
25    to the police station?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    Yes.

2    Q.    And did you tell the police what you

3    witnessed?

4    A.    Yes.

5    Q.    All right.  And I apologize for asking this,

6    but I have to ask this.  Were you on any drugs or any

7    alcohol the day you witnessed this incident?

8    A.    No.

9    Q.    Okay.  And the men that you saw running from

10   the scene, as you sit here today, do you know who those

11   men were?

12   A.    No.

13   Q.    When you went to the police station in 1990,

14   was it the same day as the incident?

15   A.    I can't recall.  I don't -- I don't -- I don't

16   think it was the same day, though.  I really don't.

17   Q.    Was it --

18   A.    I think it was a couple of -- couple of days

19   after.

20   Q.    Was it close in time to the incident?

21   A.    Yes.

22   Q.    Were you pretty shooken up after the incident?

23   A.    I -- I don't know what to call it.  I -- I

24   think I was more angry than shook up.

25   Q.    When you met with police in 1990, were they

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1  wearing the traditional Blue Chicago Police uniforms, or
 2  were they wearing plain clothes?
 3       A.   No, they was plain clothes officers.
 4       Q.   Do you know the name of the officer or
 5  officers that you met with?
 6       A.   I can't recall.
 7       Q.   Did you meet with more than one?
 8       A.   It was two officers, and a district attorney.
 9       Q.   And that's in 1990, correct?
10       A.   Right.
11       Q.   Okay.  After that day at the station, you
12  previously testified that you didn't see the police
13  until 2002; is that right?
14       A.   Right.  I never saw him no more until after
15  that.
16       Q.   All right.  So can you tell me everything you
17  remember about the police coming to your home in 2002?
18       A.   Well, the -- I think the first time they came,
19  they said they -- they have a suspect in the -- in the
20  case from the shooting.  And I said, okay.  And they
21  said that they will come back with the district attorney
22  to interview me more.  And that day they just left, and
23  then they came back with her.
24       Q.   And do you remember what month it was that the
25  police came to your -- first came to your home in 2002?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-2 Filed: 05/06/25 Page 39 of 160

```
 1        A.   No.  I can't remember what month it was,
 2   because -- it probably was getting close to fall,
 3   because I was painting.
 4        Q.   Okay.  You remember --
 5        A.   I was painting.  I was painting my living
 6   room.
 7        Q.   Okay.  You remember you were painting when the
 8   police came to your home?  And then you said the police
 9   came back a second time; is that correct?
10        A.   Right.
11        Q.   Tell me what you recall about the police
12   coming back to your house that second time.
13        A.   Well, they came with the state's attorney. And
14   she sat in the chair and I sat on the couch across from
15   that with the police officers, because they was mainly
16   the ones questioning, you know, telling me what was
17   going on.  So I sat with them.  It -- it -- this was
18   probably about a 20-minute meeting where they was like -
19   - they showed me the picture and said, this is the guy
20   Fletcher, and he's a bad guy, and we want to keep him
21   behind bars.  And at that point I said, I can't identify
22   him.  I won't, sir.  I told them then I would not say
23   that that was him when I didn't see him.
24        Q.   And you told the police that?
25        A.   Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 40 of 160 PageID #:6262

38

1      Q.   The police that came to your house, how many

2  were there?

3      A.   Two.

4      Q.   Okay.  And were they in plain clothes, or were

5  they in blue police uniforms?

6      A.   They was in plain clothes.  Detective.

7      Q.   Okay.  They were detective -- they identified

8  themselves as detectives?

9      A.   Yes.

10     Q.   Do you recall what their names were, sir?

11     A.   No.

12     Q.   Okay.  And the woman that you -- there was a

13  woman state's attorney, you think; is that correct?

14     A.   Yes.  She -- it was no doubt she was a woman.

15     Q.   Did she -- okay, fair enough.  Did she tell

16  you what her name was, sir?

17     A.   She did.  But I -- I can't -- I -- I can't

18  recall that either.  There's too much time that went

19  past.

20     Q.   Okay.  And she self-identified as a state's

21  attorney; is that correct?

22     A.   Yes, she did.

23     Q.   Did she show you any kind of credentials of

24  any kind?

25     A.   No.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    While the detectives were interviewing you,

2    what was the -- where was the state's attorney?

3    A.    She was sitting across from us in the -- in my

4    chair.  I was sitting on the sofa with the two police

5    officers.

6    Q.    Okay.  And while the police were interviewing

7    you, what was the state's attorney doing?

8    A.    I think she was, if I recall correctly, she

9    was looking at notes or something I think.  You know, I

10   didn't pay too much attention to her because she wasn't

11   the one asking the -- you know, asking the questions.

12   Q.    Okay.  Was your focus on the police that were

13   interviewing you, or was your focus on the state's

14   attorney?

15   A.    That -- that was all my focus on the police

16   because they was the ones who was showing me the

17   pictures, and asking me the questions.

18   Q.    Do you even know if the state's attorney was

19   listening to your conversation with the police?

20   A.    No, I don't know --

21        MS. MORRISON:  Objection.  Speculation.  You

22   can answer.

23        THE WITNESS:  I don't know.

24   BY MR. STARR:

25   Q.    And as you sit here today, do you know what

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    the names of those two police officers were or are?

2       A.   No.

3       Q.   Okay.  But they did identify themselves back

4    in 2002, correct?

5       A.   Right.  The same police came twice to my

6    house.

7       Q.   All right.  Do you recall were they male or

8    female?

9       A.   They was male, white males.

10      Q.   Okay.  Do you recall anything else about what

11   they looked like?

12      A.   One of them, I want to say, had a salt and

13   pepper mustache.  I -- I -- I can't recall whether he

14   was kind of balding a little bit.  And the other one was

15   a little bit taller.

16      Q.   Okay.  Do you recall whether one was heavy or

17   thin?

18      A.   The one I think that was balding was kind of

19   getting heavy.

20      Q.   Anything else that you can recall about what

21   they looked like?

22      A.   No.  The state's attorney, she was -- I -- I

23   think she was kind of tall and slender.

24      Q.   And do you remember what color hair the

25   state's attorney had?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1        A.    Black.  I -- I'm pretty sure it was black.

2        Q.    **And do you remember the hair color of the two**

3    **officers?**

4        A.    Salt and pepper, probably.

5        Q.    **So you're not sure?**

6        A.    Right.

7        Q.    **And what did the police -- what do you**

8    **specifically remember them saying to you?**

9              MS. MORRISON:  Objection.  Form.

10             THE WITNESS:  Well --

11             MS. MORRISON:  You can answer.

12             THE WITNESS:  Okay.  They came in, they said

13        they had a suspect, that he was a bad guy and he

14        would never -- he would never be on the streets

15        again when convicted.

16   BY MR. STARR:

17       Q.    **Okay.  Did they say anything else at that**

18   **point?**

19       A.    No.  Well, they showed me the photos, and they

20   kept saying, you know, when you -- when we get into

21   court, this is the guy that identified him.  And that's

22   when I said, I couldn't identify anyone on the shooter

23   side, because I know whoever shot back at the Holsum

24   truck driver, those was the people who had to hit

25   Mr. Sorrell, because he fell when they shot back.  So

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1  I'm looking in the direction of the Holsum truck driver.

2  That's how I was able to see him fall, Mr. Willie. And,

3  you know, that's what I remember about that.

4  **Q.    Do you remember how many offenders there were**

5  **besides the Holsum truck driver?**

6  A.   I always -- you know, from what I was seeing

7  out the side of my eye, I -- I -- I thought I saw three

8  people running.

9  **Q.    Did the police talk to you about the number of**

10  **offenders when they came to your home in 2002?**

11  A.   I don't recall.  No, I don't recall.  They

12  just was -- they focus was mainly on Fletcher.

13  **Q.    All right.  And you said they showed you**

14  **pictures.  Do you -- do you have a recollection of how**

15  **many pictures there were?**

16  A.   No.

17  **Q.    Do you --**

18  A.   But I do know that his picture was the only

19  one that they focused on.

20  **Q.    Okay.  And when you say his picture, you're**

21  **talking about James Fletcher, correct?**

22  A.   Right.

23  **Q.    And you're talking about the picture that I**

24  **previously showed you that I marked as Exhibit 1; is**

25  **that correct?**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   Right.  Correct.
 2        Q.   And did the police ask you for anything?
 3             MS. BITOY:  Objection to form.
 4             THE WITNESS:  No.
 5   BY MR. STARR:
 6        Q.   Did the police ask you to identify that
 7   photograph of Mr. Fletcher?
 8        A.   They -- they didn't put it in that form of
 9   questioning.  They just said, this is the guy who did
10   the shooting and, you know, when you come -- you know,
11   when the case start, you -- you know, you'll be one of
12   the witnesses who, you know, put it in form that he was
13   the guy.  I -- and that's -- like I said again, I told
14   them I could not identify the shooters.
15        Q.   Do you recall anything else about the
16   photograph that they showed you that they identified as
17   Mr. Fletcher?
18        A.   It looked like a DOC photograph.
19        Q.   Anything else?
20        A.   That's it.
21        Q.   Did the police point out any of Mr. Fletcher's
22   physical characteristics to you?
23        A.   No.
24        Q.   Did the police mention anything about
25   Mr. Fletcher's lips to you?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    No.
 2        Q.    And did they tell you anything else about
 3   Mr. Fletcher besides the fact that he was their suspect
 4   and that he was in custody and that he was a bad guy.
 5        A.    That's all they said.
 6        Q.    During your interaction with these police
 7   officers in 2002 at your home, did you form any opinion
 8   about them based on your interactions with them?
 9             MS. BITOY:  Objection.  Form.
10             MS. MORRISON:  Objection.  Form.
11             THE WITNESS:  No.
12             MR. STARR:  Mr. Wade, I'm going to show you
13        what I'm going to mark as Exhibit number 2, and for
14        the record that this is Bates Fletcher 003 through
15        009.
16             (EXHIBIT 2 MARKED FOR IDENTIFICATION)
17   BY MR. STARR:
18        Q.    If you bear with me for one moment here, put
19   up on the screen for you to see.  All right, sir, can
20   you see this document on your screen?
21        A.    Yes.
22        Q.    Okay.  And do you see that at the top of the
23   document, there's a caption and it says, "People v.
24   James Fletcher" and there's a case number?  Do you see
25   that, sir?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Yes.
 2        Q.    Okay.  And then do you see that the title of
 3   this document is Declaration?
 4        A.    Yeah, I see Declaration above my name.
 5        Q.    Okay.  And understanding that this is a
 6   document on your screen or your phone, let me know if
 7   you want me to make it bigger or anything, or zoom in it
 8   at all at any point to make it easier for you, okay?
 9        A.    You can make it bigger because I -- I -- I --
10   I wear glasses.
11        Q.    Okay.  So I'm going to try to make it big
12   enough that I can use it as an exhibit but also so you
13   can see it.  I made it a little bit bigger.  Did that
14   help at all?
15        A.    Yes.
16        Q.    All right.  And do you see that your name is
17   listed underneath the word "Declaration" there?
18        A.    Right, that and my birthdate.
19        Q.    Is that your correct birthdate?
20        A.    11-25-64, yes.
21        Q.    Okay.  I'm going to scroll -- I'm going to
22   show you a certain part of this briefly, but I'm going
23   to scroll to the end.  And you can see at the end that
24   the Bates stamp at the bottom of this is Fletcher 0009.
25   Do you see that, sir?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.    Fletcher 009?

2      Q.    The right-hand corner, do you see that at the

3  bottom?

4      A.    Yeah, I see that.

5      Q.    Okay.  Above this, you -- there is a signature

6  line where on one side of the page it says, "signature

7  of declarant."  Do you see that on the left-hand side?

8      A.    Yes.

9      Q.    Is that your signature, sir?

10     A.    Yes, it is.

11     Q.    Okay.  And on the right-hand side, there's a -

12 - it says, "signature of witness," and there's someone

13 else's signature.  Do you see that as well, sir?

14     A.    Yes.  I see that.

15     Q.    And the dates on here are 3-17-2012, correct?

16     A.    Correct.

17     Q.    Okay.  So you recognize that as being your

18 signature, right, sir?

19     A.    That is my signature.

20     Q.    Okay.  Does seeing this document -- and we're

21 going to look at it in more detail.  But does seeing

22 your signature on this document refresh your

23 recollection of signing this document, sir?

24     A.    No, I don't.

25     Q.    Okay.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    I really don't.
 2        Q.    Okay.  So going back to the first page, it
 3   says -- I'm just going to read it into the record, but I
 4   want you to look at it as I'm doing it.  It says, "This
 5   statement was taken at Louie's Grill in Forest Park on
 6   March 16, 2012, by Jennifer Blagg on behalf of James
 7   Fletcher AKA Arnold Dixon."  Do you see that?
 8        A.    Yes, I remember Louie's.  Yes.
 9        Q.    Okay.  Does this refresh your recollection of
10   meeting with Ms. Blagg to sign this document?
11        A.    Yes.
12        Q.    Okay.
13        A.    It's vague, but I remember it.
14        Q.    All right.  And you -- do you know that
15   Ms. Blagg represented Mr. Fletcher during the
16   post-conviction proceedings?
17        A.    Yes.
18        Q.    All right.  And you have a recollection of
19   meeting with Ms. Blagg in 2012, correct?
20        A.    Yes.
21        Q.    All right.  I want to -- I'm not going to
22   belabor this too long, because I understand this is
23   small on your screen, but I want to go through a part of
24   this.  On this first page in the middle of the page, and
25   I can kind of highlight it with this cursor, there's a
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   sentence that says, "I saw a man fall as I was getting
 2   out of the van."  Do you see that?
 3        A.    Yes.
 4        Q.    Okay.  And this is a reference to Willie
 5   Sorrell; correct, sir?
 6        A.    That's correct.
 7        Q.    All right.  And above that, there's a line
 8   that says, "I saw three men run by me wearing black
 9   hoodies with the hoods over their heads."  Do you see
10   that?
11        A.    Right.  That's true.
12        Q.    And are those the three men that you
13   previously testified that you thought you saw running
14   from the scene of the shooting?
15        A.    Right.
16        Q.    All right.  I'm going to scroll down to the
17   next page, sir.  All right.  And you can see at the
18   bottom, this is Fletcher 004, correct?
19        A.    Right.
20        Q.    All right.  At the top of this page, and
21   understanding, again, this is small and that it's
22   handwritten.  It says, at the very top, the second line,
23   "I went to get Cooper and confront him because he shot
24   my van."  Do you see that?
25        A.    Right.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And then it says, "The police stopped me."  Do

2  you see that, sir?

3    A.   Yeah.  Right.

4    Q.   Okay.  Is that a reference to what you

5  previously testified to, that after the shooting you

6  wanted to confront Mr. Cooper because he had shot your

7  van?

8    A.   Right.  I wanted to confront him for a couple

9  of reasons.  Like I said, I was seeing the guy lay out

10  and the van window was shot.  You know, you could see

11  the bullet print into the window where it had

12  ricocheted.

13    Q.   Okay.  In this same paragraph, it -- and I'll

14  highlight this briefly here.  It says, "The police gave

15  me a card, and told me to come to Grand Station."  Do

16  you see this?

17    A.   Yes.

18    Q.   And is that a reference to what you previously

19  testified that you went to the police station after the

20  shooting?

21    A.   Right.

22    Q.   All right.  The next paragraph says -- and

23  it's the first sentence of the next paragraph.  It says,

24  "I didn't hear anything else about the case until 2002."

25  Do you see that?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Yes.
 2        Q.    And that's consistent with what you previously
 3   testified to, right, sir?
 4        A.    Right.
 5        Q.    Okay.  And then it says, "One weekday while I
 6   was painting the house, two officers came to my house in
 7   Bellwood."  Do you see that?
 8        A.    That's correct.  Frederick --
 9        Q.    Okay.
10        A.    -- Avenue in Bellwood.
11        Q.    All right.  And then it says, "The officers
12   said they reopened the case and had a man in custody."
13   Do you see that, sir?
14        A.    Yeah.  I can't really see it, but --
15        Q.    It's right here.
16        A.    Okay.
17        Q.    Is that correct?
18        A.    That's correct.
19        Q.    Okay.  And then it says, "They wanted me to
20   make another statement."  Do you see that, sir, the next
21   sentence?
22        A.    Yes.
23        Q.    Is that correct?
24        A.    That's correct.
25        Q.    It says, "One officer was bald and kind of
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    chubby.  The other was slimmer in a trench coat."  Do
2    you see that, sir?
3         A.    Right.
4         Q.    And is that correct?
5         A.    That's correct.  That's what I just tried to
6    describe a minute ago.
7         Q.    All right.  And then it says, "They told me
8    that a state's attorney would come back with them in a
9    few days."  And that's --
10        A.    That's correct.
11        Q.    And then the next paragraph says, "The
12   officers called me a couple days later and asked me what
13   a good time would be for them to come back.  I told
14   them, and they came back with a tall slender female
15   state's attorney."  Do you see that?
16        A.    Yes.
17        Q.    And is that accurate?
18        A.    That's accurate.
19        Q.    Okay.  "They came inside.  We sat down.  The
20   guy with the bald head showed me one picture."  Do you
21   see that, sir?
22        A.    Yes.
23        Q.    And is that correct?
24        A.    That's correct.
25        Q.    Okay.  And then at the bottom of this, it
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  says, "He said this," and it goes onto the next page.

2  And I will -- actually, before I go into this, I'll for

3  the record represent that there's a duplicate page.  So

4  Page 5 is a reprint.  So I'm going to go from Page 4 --

5  you see it says 2 of 6 here, sir?

6      A.   Uh-huh.

7      Q.   Okay.  So he said this.  And then if I go to

8  this next page, this next page says 2 or 6 again.  So

9  I'm going to go onto to the Fletcher 06.  And you can

10  see that it'll say 3 of 6 at the bottom; do you see

11  that?

12      A.   Yeah.  I haven't got there --

13      Q.   Okay.

14      A.   Yeah, I see it now.

15      Q.   Okay.  So that's the third page.  So it says,

16  "He said that this is the guy we have in custody.  He is

17  a bad guy.  We want to keep him off the street."  Do you

18  see that, sir?

19      A.   Yes.

20      Q.   And is that accurate?  Did the police say that

21  in --

22

23

24      A.   That's --

25      Q.   -- 2002.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    That's accurate.

2    Q.    Okay.  The Affidavit goes on to say, "They let

3  me know he was in jail, and they didn't want him to get

4  out."  Do you see that, sir?

5    A.    That's correct.  That's correct.

6    Q.    And then it says, "they said it would -- that

7  if he got connected on this case, he would be in for

8  life."  Is that correct?

9    A.    That's correct.

10    Q.    Okay.  And then farther down the page, it says

11  -- and I'll highlight here.  It says, "They seem

12  confident that the man in the picture was the man who

13  committed the crime."  Is that correct?

14    A.    That's correct.

15    Q.    And then it says, "I was not confident, and I

16  told them that I would not say it was him."  Do you see

17  that, sir?

18    A.    Yes.

19    Q.    Okay; is that correct?

20    A.    That's correct.

21    Q.    Okay.  Further down the page -- sorry, a

22  little bit higher.  It went down too far, but I'll show

23  you where.  Right here it says -- do you see this, sir?

24    A.    Yeah.  I could see the blue.

25    Q.    Okay.  It says, "They told me when they were

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

54

1    trying to get me to say that the man in the photo did

2    it, that they had a woman in custody who saw everything,

3    that would identify the man."  Do you see that, sir?

4        A.   Yes.

5        Q.   Is that accurate?  Did the police tell you

6    that when they visited your home in 2002?

7        A.   I can't recall that, you know, right now, but

8    that -- that -- that had to be accurate if I said it

9    then.

10       Q.   Okay.  Do you think your recollection of this

11   event was a little better in 2012 than it is in 2023?

12       A.   Sure, it is.

13       Q.   Okay.  And the next line says, "It seemed like

14   they were using that to persuade me that it was the man

15   in the photo and I should ID him."  Do you see that?

16       A.   Yes, and I often said that.

17       Q.   Okay.  And do -- that's accurate then, right?

18       A.   Yes.

19       Q.   Okay.  And the next line says, "I asked the

20   men who the man in the picture was, and they told me

21   Fletcher."  Do you see that?

22       A.   Right.

23       Q.   And did that happen in 2002; did the police

24   tell you that?

25       A.   Yes.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Okay.  And it says, "They told me his whole

2    name, but at the time, I only remembered Fletcher."  Is

3    that correct?

4    A.   That's correct.

5    Q.   Okay.  All right.  Going onto to the next

6    page, Fletcher 07.  There's a first full paragraph down

7    here.  It starts with, "I went to court and spoke to the

8    prosecutor briefly."  But further down the page, it says

9    -- and I'll highlight it for you.  Do you see this?

10   A.   Uh-huh.

11   Q.   Okay.  It says, "Before I went to sit with

12   Cooper, I was sitting on the courtroom -- or in the

13   courtroom, and you could see in the lockup when they

14   opened up the doors.  Once they opened the door, I saw a

15   woman crying.  She looked like she didn't want to be

16   here.  I knew she was the woman that they had in custody

17   that they had told me about before."  Do you see that?

18   A.   Yes.

19   Q.   Okay.  And is that accurate, did you see that?

20   A.   Yes.

21   Q.   Okay.  It says -- it goes on to say, "I had

22   been to court a couple of times before, and they had not

23   been able to locate her.  I had never talked to Cooper

24   before the day of trial."  Do you see that?

25   A.   Yes.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-2 Filed: 03/06/25 Page 58 of 160

56

```
 1        Q.   And is that accurate, you had never talked to
 2   Cooper before the day of trial?
 3        A.   No.  I had never talked to him until they set
 4   us in the room together.
 5        Q.   And then it says, "We started chatting, and he
 6   told me he wasn't sure who did it."  Do you see that?
 7        A.   Yes.
 8        Q.   And is that accurate?  Did Mr. Cooper tell you
 9   in 2005 at trial that he wasn't sure who committed the
10   crime?
11        A.   Right.
12        Q.   Okay.  And then I'm going to take you to the
13   next page, which is Fletcher 08.  This is a little
14   smaller here, just because it runs off the off the side
15   of the page.  All right.  Do you see this part here
16   that's kind of in the margins, it says "They started
17   chatting with a black officer"?  Do you see that?
18        A.   Yes.
19        Q.   And is this the black police officer -- is
20   this a reference to the black police officer you already
21   testified to?
22        A.   Right.
23        Q.   Okay.  And it says, "They started chatting
24   with a black officer who's there.  The black officer
25   told me that these officers were bad guys, and they were
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  racist.  He said they would do anything to close a

2  case."  Is that correct?

3       A.   Yeah.  That's correct.

4       Q.   Is that accurately -- is that an accurate

5  representation of what this black officer told you in

6  2005 about the detectives who visited your home in

7  2002?

8       A.   Yes.

9       Q.   Okay.  And then sir, the last page, I'll take

10 you -- the last page here, and it says -- there's a

11 paragraph here.  Do you see this paragraph that says, "I

12 haven't been promised anything"?

13      A.   Right.

14      Q.   Okay.  It says, "I haven't been promised

15 anything for giving this statement.  It is the truth,

16 and I'd be willing to testify for Fletcher at an

17 evidentiary hearing or any other court proceeding."  Do

18 you see that?

19      A.   Yes.

20      Q.   Is that accurate, sir?

21      A.   That's accurate.

22      Q.   Okay.  So this says that you were not promised

23 anything in exchange for giving this statement, correct?

24      A.   Correct.

25      Q.   Has anybody -- strike that.  Has Mr. Fletcher,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   my client, James Fletcher, promised you or given

2   anything to you in exchange for your testimony?

3        A.   Never -- never met him.

4        Q.   Okay.  You've never met Mr. Fletcher?

5        A.   No.

6        Q.   You don't know who he is, correct?

7        A.   No -- correct.

8        Q.   Okay.  Have you ever met Mr. Fletcher's

9   father, James Fletcher, Sr?

10       A.   I have.

11       Q.   Did James Fletcher, Sr. ever promise you

12  anything or give you anything in exchange for making

13  that statement or for testifying today?

14       A.   Never have.

15       Q.   Okay.  Has anybody ever promised you anything

16  or given you anything in exchange for your testimony in

17  this case?

18       A.   Never.

19       Q.   Okay.  Sir, what did motivate you to testify

20  today in this case?

21       A.   Like -- it's nothing that really motivated me.

22  I just would love to see the truth come out, you know,

23  what's really the truth of this case, because I don't

24  think it was ever handled right.

25       Q.   Why do you think it was never handled right,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    sir?

2        A.   I just found it odd back -- back then when it

3    came to my door that they would point out one guy and

4    just, you know, hold that one guy to what I don't think

5    nobody else could -- could identify because them guys

6    was hooded up.  I think they had some kind of material

7    around, from what I could see from they face, around

8    their face.  I don't think nobody could have identify

9    them.

10       Q.   So do you think the police who came to your

11   home in 2002 acted inappropriately?

12           MS. BITOY:  Objection.  Form.

13           THE WITNESS:  I think they did.

14   BY MR. STARR:

15       Q.   You can tell -- you can answer.

16       A.   I think they did.

17       Q.   Why do you think they acted inappropriately,

18   sir?

19       A.   Because --

20           MS. MORRISON:  Objection.  Foundation.  You can

21       answer.

22           THE WITNESS:  Okay.  I -- I just think if you

23       have a lineup of pictures like that, you should --

24       you shouldn't be just pointing out one guy.

25   BY MR. STARR:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Okay.  And sir, if this case proceeded to

2 trial, would you be willing to come to Chicago to

3 testify at trial about what you saw and what happened in

4 this case?

5    A.   Yes.

6    Q.   Okay.  And if you came to trial and testified,

7 would you tell the truth?

8    A.   Yes.

9    Q.   Is everything you said today the truth, sir?

10    A.   It's what I've been saying for the last --

11 since 1990.

12         MR. STARR:  Okay.  I have no further --

13         THE WITNESS:  Nothing changed.

14         MR. STARR:  I have no further questions. Thank

15    you, sir.

16         THE WITNESS:  Uh-huh.

17              CROSS-EXAMINATION

18 BY MS. BITOY:

19    Q.   Good morning, Mr. Wade.  My name is Jennifer

20 Bitoy.  And again, I represent the individual Defendant

21 officers in this case, and I have a couple of questions

22 for you.

23    A.   Okay.

24    Q.   So you testified that you had spoken to

25 Mr. Starr a couple of times before your deposition



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1   today; is that correct?
 2        A.   That's correct.
 3        Q.   When is the first time that you spoke to
 4   Mr. Starr?
 5        A.   You're referring to the police officers,
 6   right?
 7        Q.   No.  I'm sorry, so the attorney, Sean Starr,
 8   who's been asking you questions --
 9        A.   Oh, I -- I -- I -- oh, I'm sorry, I -- I don't
10   --
11        Q.   That's okay.
12        A.   I see.  I don't know his name.  I'm not good
13   with name.
14        Q.   That's okay.
15        A.   I think it's been a couple of times that I --
16   I have spoken to him.
17        Q.   Sure.  So when's the very first time that you
18   spoke to the attorney who's been asking you questions,
19   Sean Starr?
20        A.   Probably about a month ago, when he told me
21   that I would have to do a deposition.
22        Q.   And I'm assuming that was a phone
23   conversation.  Sorry.  Sir, are you able to hear me?
24        A.   Yes.  Can you hear me?
25        Q.   Yes, I can hear you now.  You said you spoke
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  to Mr. Starr a month ago.  Was that a phone

2  conversation?

3         A.    Right.  Yes.

4         Q.    Okay.  And was anyone else on the call?

5         A.    Not that I recall, no.

6         Q.    Okay.  And what did Mr. Starr say to you, and

7  what did you say to him?

8         A.    That he was heading into court and they needed

9  my testimony and that I had been subpoenaed.  So I said,

10 okay.

11        Q.    Did Mr. -- how long was that conversation?

12        A.    Couldn't have been no more than five minutes.

13 I was at work.

14        Q.    When's the next time that you spoke to Mr.

15 Starr?

16        A.    A couple days ago.

17        Q.    And was that another phone conversation?

18        A.    Yes.

19        Q.    Was anyone else on the phone besides yourself

20 and Mr. Starr?

21        A.    I can't think of the guy's name, but yes.

22        Q.    Okay.  Did he identify himself?

23        A.    Yes.  I think he's a private investigator or

24 something like that.

25        Q.    And the private investigator was a man?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.    That located me, I guess.

2    Q.    Okay.  And so he was on the -- so the next

3 conversation that you had with Mr. Starr was yourself,

4 Mr. Starr, and this private investigator who had located

5 you; is that accurate?

6    A.    That's correct.

7    Q.    Okay.  Is that the very first time that you

8 had spoken to that private investigator, or had you

9 spoken to him previously?

10   A.    No, he actually reached out to my sister

11 that's in Chicago, and he he one who got this whole

12 thing going in place.

13   Q.    And what -- how long was that conversation

14 between yourself, Mr. Starr, and the private

15 investigator?

16   A.    Probably about five minutes, if -- if that

17 long.

18   Q.    And what was discussed during that

19 conversation?

20   A.    This Zoom meeting here we're doing today.

21   Q.    Were you given any information about

22 Mr. Fletcher's lawsuit?

23   A.    I just asked for these documents that they

24 sent over.

25   Q.    And so, you just mentioned that they had sent

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 66 of 160

```
 1   over documents.  When did you receive documents?

 2        A.   I want to say about a week ago.

 3        Q.   And exactly what documents did you receive?

 4        A.   Let me read that.  The general progress

 5   report.  I guess it's the police -- the Supplementary

 6   Report from the police department.

 7        Q.   Are there -- if you look at the bottom

 8   right-hand corner of the pages, are there any numbers --

 9        A.   Numbers?

10        Q.   Yes.

11        A.   City J -- City JF015152, JF015156, JF015153,

12   015155, and 015154.

13        Q.   Apart from the general progress report, were

14   you sent any other documents?

15        A.   No.

16        Q.   Did you have any further conversations? You've

17   just testified about a conversation you had a week ago.

18   Have you had any other conversations with Mr. Starr

19   prior to your deposition today?

20             MR. STARR:  Objection.  Mischaracterizes

21        testimony.

22             THE WITNESS:  No.

23   BY MS. BITOY:

24        Q.   Okay.  Just to be sure, you spoke to Mr. Starr

25   a week ago; is that correct?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   Yes.

 2             MR. STARR:  Objection.  Asked and answered.

 3   BY MS. BITOY:

 4        Q.   Have you spoken to him at any other point from

 5   between last week and your deposition today?

 6        A.   A couple of days ago.

 7        Q.   Okay.  And was that another phone

 8   conversation?

 9        A.   Yes.

10        Q.   And was anyone else on the phone during that

11   conversation?

12        A.   Yes, the private investigator.

13        Q.   And how long was that conversation?

14        A.   Probably a little under five minutes.  It

15   wasn't -- it wasn't a long conversation at all.

16        Q.   And what was discussed during that

17   conversation?

18        A.   It was just about the Zoom meeting, and he

19   told me answer everything truthfully.

20        Q.   Were you given any -- or were you told that

21   Mr. Fletcher was suing the City of Chicago?

22        A.   Yes.

23        Q.   Okay.  And --

24        A.   I think I knew that from the previous

25   attorney.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   And what previous attorney was that, that

2 you're referring to?

3      A.   The one that I met at the breakfast

4 restaurant, Louie's.

5      Q.   And I'm going to go into your -- so is that

6 Jennifer Blagg; is that who you're talking about?

7      A.   Yes.  Yes.

8      Q.   I'm going to go into your conversations with

9 Jennifer Blagg.  But in terms of your conversations with

10 Mr. Starr, did he tell you that Mr. Fletcher was suing

11 the City of Chicago?

12      A.   I can't recall that, but I -- he could have.

13      Q.   Did he tell you that Mr. Fletcher was suing

14 individual defendant police officers?

15      A.   Yes.

16      Q.   Did he tell you why Mr. Fletcher was suing the

17 City of Chicago and Police officers?

18        MR. STARR:  Objection to form.  Foundation.

19        THE WITNESS:  I -- I don't -- I don't recall

20    him saying that -- why he was suing them.

21 BY MS. BITOY:

22      Q.   Did Mr. Starr tell you that Mr. Fletcher was

23 wrongfully convicted?

24      A.   That could have, yes.

25      Q.   Did Mr. Starr tell you that Mr. Fletcher was

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    innocent?

2        A.   He didn't presume innocent or -- or guilty. He

3    just we never went into that type of conversation.

4        Q.   So he just told you that Mr. Fletcher was

5    wrongfully convicted?

6            MR. STARR:  Objection.  Mischaracterizes

7        testimony.

8            THE WITNESS:  Right.

9    BY MS. BITOY:

10       Q.   Did Mr. Starr tell you that Mr. Fletcher had

11   obtained a certificate of innocence?

12       A.   No, I never knew that until now.

13       Q.   Apart from Mr. Starr, have you spoken -- and

14   I'm excluding Jennifer Blagg, have you spoken to any

15   other attorney at Loevy & Loevy's office prior to your

16   deposition today?

17       A.   No.

18       Q.   Do you know someone named Anand Swaminathan?

19       A.   No.

20       Q.   Do you know someone named Maria Garcia?

21       A.   No.

22       Q.   Do you know anyone named Theresa Kleinhaus?

23       A.   No.

24       Q.   Danielle Hamilton?

25       A.   No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   I know that you said that you spoke to a

2    private investigator prior to your deposition today. Did

3    that prior -- did that private investigator give you any

4    details about Mr. Fletcher's lawsuit?

5    A.   No, he just said I've been subpoenaed, and

6    that I would have to testify, so

7    Q.   Were you -- I know we just -- Mr. Starr went

8    through your affidavit with you a little while ago. Did

9    you review your affidavit prior to your deposition

10   today?

11   A.   No.  I -- I didn't review that form.  This the

12   only form that I have.

13       MR. STARR:  Belated objection to form and

14       foundation, just to the extent that it's a

15       declaration, and not an affidavit.  And I don't know

16       if that makes a difference.

17   BY MS. BITOY:

18   Q.   Sure.  So the handwritten declaration that you

19   just kind of went through with Mr. Starr, did you review

20   that at all prior to your deposition today?

21   A.   No, I didn't.

22   Q.   Did you review your criminal trial testimony

23   that you gave in 2005 prior to your deposition today?

24   A.   No.

25   Q.   Apart from the one general progress report

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   that you spoke about, were you shown or did you review
 2   any other police reports?
 3        A.   No.
 4        Q.   Did Mr. Starr, or did anyone else show you any
 5   photographs prior to your deposition today?
 6        A.   No.
 7        Q.   Have you seen any news articles relating to
 8   Mr. Fletcher's case?
 9        A.   No.
10        Q.   So I want to talk a little bit about your
11   criminal trial testimony that you gave in March of 2005,
12   okay?
13        A.   Okay.
14        Q.   You received a subpoena to testify in Mr.
15   Fletcher's criminal trial, correct?
16        A.   Correct.
17        Q.   Were you aware that Mr. Fletcher's defense
18   attorney had listed you as a witness in support of his
19   Defense?
20             MR. STARR:  Objection.  Foundation.
21             THE WITNESS:  I'm -- I --
22   BY MS. BITOY:
23        Q.   I'm sorry.  Can you say that again?
24        A.   I wasn't -- I was not aware of that.
25        Q.   Did you meet with --
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 72 of 160

70

1    A.   I -- I --

2    Q.   **Sorry, go ahead.**

3    A.   I -- I would not say that I was a witness of

4  his because he kind of badgered me in court.  I don't --

5  I don't understand that if I was a witness of him, why

6  was he badgering me?

7    Q.   **So it's your testimony that Mr. Fletcher's**

8  **attorney was badgering you at court?**

9    A.   Yes.

10    Q.   **And in what way was he badgering you?**

11    A.   He kept asking the same question over again,

12  and I had responded on several occasions.  And then the

13  judge finally came and said, look, he responded to that

14  question, you know, on several occasions now.  There's

15  no need to ask it again.  I can't remember what the

16  specific question was, but he kept going on and on with

17  that.  So I never knew I was his witness, no.

18    Q.   **Okay.  Did you ever meet with any of Mr.**

19  **Fletcher's Defense attorneys prior to testifying at**

20  **trial?**

21    A.   No.

22    Q.   **Did you ever meet with any private**

23  **investigator working on behalf of Mr. Fletcher prior to**

24  **testifying at trial?**

25    A.   Nobody but that lady up in -- in Louie's.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



602.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    Okay.

2    A.    That -- well, that was after trial -- after

3  the trial.

4    Q.    Okay.  Did you meet with any assistant state's

5  attorneys prior to testifying at trial?

6         MR. STARR:  Objection.  Asked and answered.

7  BY MS. BITOY:

8    Q.    Sorry.  You can answer, sir.

9    A.    No.  I -- the only time I remember meeting

10  with the state's attorneys was at my house, and I

11  probably met with them when I was at the courthouse.

12    Q.    Do you remember who or that state's attorney

13  was that you met at the courthouse?

14         MR. STARR:  Objection.

15         THE WITNESS:  No, I don't.

16         MR. STARR:  Mischaracterizes --

17         THE WITNESS:  No, I don't.

18         MR. STARR:  -- his testimony.

19  BY MS. BITOY:

20    Q.    Do you know if it was a man or a woman?

21    A.    I think it was a woman.  I'm -- I -- I can't

22  recall.  It -- it's been a while.

23    Q.    Do you know if it was the same prosecutor who

24  questioned you at trial?

25    A.    I don't think it was.  You mean the same

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    person -- I -- I -- wait a minute.  You got me confused

2    on that question.  Can you repeat that?

3        Q.   Sure.  So you said that you recall meeting

4    with a state's attorney at the courthouse prior to

5    testifying.  And I'm just trying to understand if that

6    was the same prosecutor who questioned you on the stand,

7    or if this was a different prosecutor?

8            MR. STARR:  Form.  Foundation. Mischaracterizes

9        his testimony.

10           THE WITNESS:  That could've been the same

11       prosecutor at the courthouse.  I didn't see anyone

12       different.

13   BY MS. BITOY:

14       Q.   Okay.  So you only recall seeing one

15   prosecutor at the courthouse; is that right?

16           MR. STARR:  Form.  Foundation.

17           THE WITNESS:  No, I was --

18           MR. STARR:  Mischaracterizes his testimony.

19       Sorry, sir.  Go ahead.

20           THE WITNESS:  It was two.  It was two at the

21       desk.

22   BY MS. BITOY:

23       Q.   Two at the desk.  Did you speak to more than

24   one prior to testifying?

25       A.   No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   And what did you say to the prosecutor, and

2 what did the prosecutor say to you?

3      A.   I can't even remember the exact thing, but I -

4 - I think she just asked me was I ready to go.  And I

5 was like, okay, let's get it over with.

6      Q.   How long would you approximate that

7 conversation with the prosecutor was?

8      A.   They met with us briefly.  It couldn't have

9 been more than a minute or two.

10      Q.   And just to be clear, was this prosecutor a

11 different prosecutor than the one that you spoke to at

12 your home in 2002?

13         MR. STARR:  Objection.  Asked and answered.

14         THE WITNESS:  Yes.

15 BY MS. BITOY:

16      Q.   And I think you testified previously that you

17 did not meet with any detectives prior to testifying at

18 trial; is that right?

19         MR. STARR:  Objection.

20         THE WITNESS:  That's correct.

21 BY MS. BITOY:

22      Q.   During this minute or so conversation with the

23 state's attorney, did you express any concerns that you

24 were uncomfortable testifying?

25      A.   No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Did you tell the state's attorney that you

2  believed that you had been manipulated, in any way, by

3  detectives?

4         MR. STARR:  Objection.  Calls for speculation.

5         THE WITNESS:  No.  I -- I -- I never discussed

6    that with them.

7  BY MS. BITOY:

8    Q.   Did you tell the assistant state's attorney

9  that police officer had point -- strike that.  Did you

10 tell the assistant state's attorney that police officers

11 had pointed out Mr. Fletcher to you prior to testifying?

12        MR. STARR:  Objection.  Speculation.

13 BY MS. BITOY:

14   Q.   You may answer, sir.

15   A.   No.  I never felt the need since they have had

16 the state's attorney at my house.  And, you know, I -- I

17 never felt the need to do that.

18   Q.   And why didn't you feel the need to do that?

19   A.   Because they came to my house.  They pointed

20 him out in my house.

21   Q.   So I'm talking about at the courthouse.

22 Before, you were testifying -- so I'm not talking about

23 the conversation in 2002.  I'm discussing your

24 conversation with the prosecutor in 2005.  Why did you

25 not find it necessary --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Video Deposition of Dwayne Mabry, taken 03 November 2013

```
 1        A.    It --
 2        Q.    -- to tell the prosecutor --
 3        A.    -- it -- it -- it -- it never came up.
 4        Q.    And you never volunteered that information
 5   either, is that also --
 6            MR. STARR:  Asked and answered.
 7            THE WITNESS:  No, I did not.
 8   BY MS. BITOY:
 9        Q.    Okay.  So I'd like to go through some of your
10   trial testimony.  You were sworn under oath at the
11   criminal trial, correct?
12        A.    Correct.
13        Q.    And you testified truthfully; is that
14   accurate?
15        A.    That's true.
16        Q.    So I'm going to share my screen.  Are you able
17   to see this, sir?
18        A.    It's still buffering.  Yes, I see it now.
19        Q.    Okay.  So this is the transcript of your
20   testimony at trial that you gave on February 23, 2005;
21   do you see that?
22        A.    Yes, I see it.
23        Q.    Okay.  So I'd like to first ask you some
24   questions regarding the answers that you gave to the
25   assistant state's attorney when he was asking you
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   questions, okay?

 2        A.   Okay.

 3        Q.   And so Mr. Clarke is the assistant state's

 4   attorney, and he asked you the following questions,

 5   "Question, In this photo, could you identify" -- or,

 6   "could you indicate where you saw the bread truck driver

 7   when he fired the gun?  Answer, he came out from his

 8   side here and came right up over here.  Question, he was

 9   firing away from the bread truck, right? Answer, right."

10        A.   Right.  From the back of the --

11        Q.   Right.  "Question, Mr. Wade, you couldn't

12   tell exactly who he was shooting at, right?  Answer,

13   no."  So based on the questioning that the state's

14   attorney asked you, you testified that you could not

15   identify who the bread truck driver, Mr. Cooper, was

16   shooting at, correct?

17        A.   That's correct.  That's what I stated today

18   also.

19        Q.   And that was truthful testimony, correct?

20        A.   That's truthful.

21             MS. BITOY:  Okay.  So I'm going to start here

22        at the bottom of page -- and just for the record, I

23        don't think I've mentioned this, but we'll say this

24        is -- Sean, did you mark the Criminal Trials

25        Transcript as an Exhibit --
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MR. STARR:  I didn't.  No, I didn't use it.

 2              MS. BITOY:  Okay.

 3              MR. STARR:  No.

 4              MS. BITOY:  So I'll mark this then as Defense

 5         Exhibit 1.  And this is Bates stamped Fletcher 988

 6         through 1009, for the record.

 7                   (DEFENSE EXHIBIT 1 MARKED FOR IDENTIFICATION)

 8    BY MS. BITOY:

 9         Q.   And so at this point, we're on Page Bates

10    stamped Fletcher 999.  And I'm starting at the bottom of

11    the page, line 21, here.  And you were asked the

12    following question, sir, "Question, Mr. Wade, the other

13    two men that ran past your van, had you seen them again

14    when the police arrived?"  And you said, "Answer, no.

15    Like I said, I don't know if those two men, you know,

16    who I could have saw.  I saw two, a couple of

17    individuals running with hoodies on, but I never said

18    they was offenders.  I never said I saw any guns in

19    their hands."

20         A.   True.

21         Q.   Sorry, I -- "Question, you never saw those two

22    again after they ran past you?  Answer, no.  Question,

23    Mr. Wade, were you able to identify anyone to the police

24    regarding those two individuals?  Answer, no." And so,

25    my question is, you testified under the state's
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    attorney's questioning that you could not implicate
2    Mr. Fletcher as being involved in the crime; is that
3    accurate?
4         A.   That's correct.
5              MR. STARR:  Objection.  Form.
6    BY MS. BITOY:
7         Q.   And that was accurate -- that was truthful
8    testimony?
9         A.   Correct.
10        Q.   All right.  So I'd like to now focus on some
11   answers that you gave in response to Mr. Fletcher's
12   defense attorney, okay?
13             MR. STARR:  And Jennifer, when you are done
14        with this exhibit, if we could take a short break --
15             MS. BITOY:  Yeah.
16             MR. STARR:  -- I'd appreciate it.
17             MS. BITOY:  Yeah.  Of course.
18   BY MS. BITOY:
19        Q.   Okay.  So Mr. Hill, which is Mr. Fletcher's
20   Defense attorney, asked you the following questions
21   starting on line 6.  "Question, Mr. Hill, Your Honor, we
22   don't have" -- sorry.  Hold on a moment.  On the wrong
23   page.  Sorry.  All right.  So Mr. Hill, Mr. Fletcher's
24   Defense attorney asked you the following questions,
25   "Question, Mister -"
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      MR. STARR:  What page is this?  I'm sorry. You

2   just --

3      MS. BITOY:  Yes.  This is Fletcher Bates

4   stamped 1002.

5      MR. STARR:  Thank you.

6      MS. BITOY:  Sure.  And I'm starting on line 6.

7 BY MS. BITOY:

8   Q.  You were asked the following questions,

9 "Question, Mr. Wade, you indicated that you saw two

10 individuals with hoodies running in the vicinity of

11 Madison and Central on December 21st; is that correct?

12 Answer, correct.  Question, you don't see in this

13 courtroom either of those individuals who you saw

14 running with hoodies in the vicinity of Madison and

15 Central on December 21, 1990; is that correct?"  Your

16 answer is, "That is correct.  I also never said it was

17 two individuals.  I keep hearing two individuals.  I

18 never said how many individuals that was running.  It

19 could have been three.  I initially thought it was

20 three, you know, but it was a group of people out there,

21 more than 15, 20 people, on the corner.  People

22 scattered everywhere.  No, I can't say it was two

23 individuals.  I wasn't trying to see that.  I was trying

24 to get out of my van."  And so I just want to be clear

25 here.  Mr. Fletcher's attorney specifically asked you

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  whether you could identify Mr. Fletcher in the

2  courtroom, and you said no, that you could not; is that

3  accurate?

4         MR. STARR:  Objection.  Form.

5         THE WITNESS:  That's correct.

6  BY MS. BITOY:

7     Q.   And was that truthful testimony?

8     A.   Truthful.

9     Q.   Okay.  On page -- this is, for the record,

10  Bates stamped Fletcher 1003, and I'm starting on line

11  17.  Mr. Wade, you were asked the following questions,

12  "Question, Mr. Wade, the police detectives, did they

13  ever, in fact, come and visit you with respect to this

14  case after December 21, 1990?  Answer, 12 years later,

15  2002.  Question, do you remember what month in 2002 the

16  detectives came and visited you?  Answer, I think it was

17  around March.  Question, do you remember which

18  detectives came to visit you around March of 2002?

19  Answer, no.  Question, where did they come to visit you?

20  Answer, at my home.  Question, who else was there at

21  your home when they came to visit you?  Answer, my wife.

22  Question, was she there when the officers talked to you?

23  Answer, yes, she was.  Question, when the officers came

24  to visit you at that time, did they have anything for

25  you to view?  Answer, they had pictures. Question, could

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  you describe the pictures that they had, Mr. Wade?

2  Answer, it was, I think, a couple of 5x7s, something

3  like that."  And so, under questioning by Mr. Fletcher's

4  Defense attorney, you said that the police had shown you

5  multiple photographs; is that right?

6          MR. STARR:  Asked and answered.

7  BY MS. BITOY:

8      Q.   Is that accurate, sir, that you testified at

9  trial that you -- that the police officers had shown you

10 multiple photographs?

11         MR. STARR:  Form.  Asked and answered.

12         THE WITNESS:  They --

13 BY MS. BITOY:

14     Q.   I'm sorry, sir, I couldn't hear.  You were cut

15 off.  Please say that again.

16     A.   They -- they have photographs.

17     Q.   They had photographs, plural, correct?

18         MR. STARR:  Form.  Asked and answered.

19         THE WITNESS:  Right.

20 BY MS. BITOY:

21     Q.   Okay.  You were then further asked -- I'm

22 still on Fletcher 1004 now, for the record.  I'm

23 starting on line 19.  You asked the following questions,

24 "Mr. Wade, I'm going to show you what's been previously

25 marked as People's Group Exhibit 14.  I would ask you to

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  look at that.  Let me spread it out for you.  I ask you,

2  Mr. Wade, does this look like the photos that the police

3  showed you in March of 2002 when they came to visit

4  you?"  Your answer, "Similar. Question, were you able to

5  identify anyone who was at Madison and Central on

6  December 21, 1990, out of these photographs?  Answer,

7  no."  So it's true that, at trial, under Mr. Fletcher's

8  Defense attorney's questions, you testified that you

9  could not identify Mr. Fletcher from a photo array; is

10 that accurate?

11        MR. STARR:  Form.  Foundation. Mischaracterizes

12     his prior testimony.  Asked and answered.  You can

13     answer.

14        THE WITNESS:  Correct.

15 BY MS. BITOY:

16    Q.   And you did not testify that you were only

17 shown one photograph or that the police told you to pick

18 out one photograph from that photo array; is that

19 accurate?

20    A.   No.  What I testified to was that they made it

21 -- how can I put it?  They looked at his photograph more

22 than any others.

23    Q.   Correct.  I'm just saying you did not testify

24 to that in 2005, under oath, when you gave your trial

25 testimony, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   No.
 2        Q.   And then I'm just going to ask you one more
 3   question here.  For reference, I'm at Fletcher 1009. And
 4   this is, again, questioning by Mr. Hill.  He asks you,
 5   "Question, at the time of the crime, do you remember
 6   indicating to the police that you might be able to
 7   identify the suspect?"  And you answered "No," correct?
 8            MR. STARR:  Did we lose him?
 9            MS. BITOY:  I think so.  I don't think see him.
10            MR. STARR:  Okay.
11            THE REPORTER:  Okay.  He just entered the
12       waiting room.
13            MS. BITOY:  Okay.
14            THE WITNESS:  Hello?
15            MS. BITOY:  We can hear you.  Can you hear me?
16            THE WITNESS:  Okay.  Yes.
17   BY MS. BITOY:
18        Q.   Okay.  So I -- for the record, I'm at Bates
19   stamp Fletcher 1009.  And my question was: Sir, you were
20   asked the following questions by Mr. Fletcher's defense
21   attorney.  "Question, at the time of the crime, do you
22   remember indicating to the police that you might be able
23   to identify the suspects?"  And you answered "No,"
24   correct?
25        A.   That's correct.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    Is that truthful?

2      A.    That's truthful.

3      Q.    Okay.  So I want to switch gears, and talk a

4   little bit about your interactions with the police

5   related to the armed robbery and the shooting, okay?

6      A.    Uh-huh.

7      Q.    You were interviewed either the day of or a

8   few days after the shooting, correct?

9      A.    Right.

10     Q.    And do you recall the detective that you spoke

11  to at the station?

12          MR. STARR:  Asked and answered.

13          THE WITNESS:  I can't recall.

14  BY MS. BITOY:

15     Q.    Does the name Detective Michael Fleming ring

16  any bells to you?

17     A.    No.  I -- I can't recall that.

18     Q.    Okay.  And you told the police that you

19  weren't able to see the faces of any of the suspects

20  running past or van, correct?

21     A.    That's correct.

22          MR. STARR:  Objection.  Asked and answered.

23  BY MS. BITOY:

24     Q.    And you also testified consistently to -- with

25  that at Mr. Fletcher's criminal trial, right?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Correct.
 2             MR. STARR:  Answered.
 3   BY MS. BITOY:
 4        Q.    And then you said -- you testified that 12
 5   years later, you were re-approached by detectives
 6   regarding this case; is that accurate?
 7        A.    That's accurate.
 8        Q.    Okay.  And you couldn't recall, I think,
 9   exactly what time it was.  But if I told you it was
10   around March, does that sound accurate to you or no?
11        A.    I don't -- I can't recall.  I thought it was
12   closer to fall, but it could be.
13        Q.    Okay.  Do you remember what time -- well, how
14   many officers came to your home the first time?
15             MR. STARR:  Asked and answered.
16             THE WITNESS:  Two.
17   BY MS. BITOY:
18        Q.    Do you remember what time they came to your
19   home?
20        A.    It was in the evening, because it was dark.
21        Q.    And was anyone else home at the time?
22        A.    My wife.
23        Q.    Did the officers come into your house at that
24   time?
25        A.    No.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And I know you sort of gave descriptions, but
2   I'm just going to ask him a couple of names and see if
3   you recognize any of these names.  Jerome Bogucki. Have
4   you ever heard that name before?
5    A.   Don't recall it.
6    Q.   Okay.  What about Raymond Schalk?  Does that
7   name ring any bells?
8    A.   No.
9    Q.   And so, when the police officers first came to
10   your home in 2002, what did they say to you, and what
11   did they -- you say to them?
12        MR. STARR:  Asked and answered.
13  BY MS. BITOY:
14    Q.   Sorry.  You can answer, sir.
15    A.   They -- they -- they told me they had a
16   suspect in custody, and they will be back with the
17   state's attorney.  They will set up a meeting with her.
18    Q.   Okay.  Where did this conversation occur?  Was
19   it outside?
20    A.   It was in my door -- door well.
21    Q.   So did they knock on your door?
22    A.   Yes.
23    Q.   And how long were they at your home?
24    A.   The first night, it couldn't have been no
25   longer than a couple of minutes.  I think they just gave

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    me their card and told me they would be in touch with me

2    to set up the interview.

3         Q.   Were you shown any photographs at that time?

4         A.   No.

5         Q.   And then you testified that the same officers

6    came back a second time with an assistant state's

7    attorney; is that accurate?

8         A.   That's correct.

9         Q.   Do you remember how much time elapsed from the

10   first meeting to the second meeting?

11        A.   No, I don't recall it, but it was -- it was

12   close.

13        Q.   And do you recall what time they -- or, strike

14   that.  The two detectives and the state's attorney came

15   back that second time?

16        A.   It was also in the evening time.  It was dark.

17        Q.   And was anyone else home at that time?

18        A.   My wife.

19        Q.   And what's your wife's name?  Or what --

20        A.   Denise Wade.

21        Q.   Sorry, say her last name again?

22        A.   Wade.  W-A-D-E.

23        Q.   And is she -- has she passed; is that

24   accurate?

25        A.   Yes.  Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      Q.   Do you recall the name of the state's attorney

 2  who came?

 3      A.   No, I don't.

 4         MR. STARR:  Asked and answered.

 5  BY MS. BITOY:

 6      Q.   Have you heard of the name Jennifer Walker?

 7  Does that sound familiar to you?

 8      A.   No.

 9      Q.   So did the officers actually come into your

10  home this time?

11      A.   Yes.

12      Q.   And where did this interview take place?

13      A.   In my living room.

14      Q.   And was your wife actually sitting along with

15  you during the interview?

16      A.   I think she actually was sitting in the

17  kitchen.  I'm not for sure.

18      Q.   Was anyone else --

19      A.   I know -- I know I was sitting on the couch

20  with the two officers, and the state's attorney was

21  sitting in my chair across from us.

22      Q.   Was anyone else home, or present for this

23  interview?

24      A.   No.  Well, my uncle, but you know, my uncle

25  stayed with me all his life up until his death.  But he

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  was in his room.  So no, he wasn't present.

2      Q.    What do you recall officer saying to you, and

3  what did you say in response?

4          MR. STARR:  Asked and answered.

5  BY MS. BITOY:

6      Q.    You can answer, sir.

7      A.    Okay.  They came in.  They -- like I said,

8  they said they had a suspect in custody.  They said his

9  name.  They -- they said he was a bad guy, and they

10 wanted to keep him off the street.

11     Q.    Did you observe any officer taking any notes

12 during your conversation with them?

13     A.    They weren't taking notes.  The state's

14 attorney was taking notes.

15     Q.    Did you tell officers when they came to your

16 home in 2002 that on December 21, 1990, you parked your

17 van on the south side of Madison Street, and that there

18 was one car parked between your van and the bread truck?

19         MR. STARR:  Objection.  Asked and answered.

20 BY MS. BITOY:

21     Q.    You can answer, sir.

22     A.    I -- I -- I don't remember whether it was one

23 or two cars, but I do remember it's -- it was some cars

24 in front of me.

25     Q.    Would you have shared that information with

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  officers when they came to your home in 2002?

2      A.   I don't recall sharing that with them.

3      Q.   Do you have any reason to dispute that you

4  would've told them that information?

5      A.   No, I don't.

6      Q.   Is that information accurate?

7      A.   It was -- like I said, it was probably one or

8  two cars.  I think it was two cars because I'm familiar

9  with that area.  And where I was sitting was, like, a

10 couple of doors down from Uncle Remus Chicken Shack. So

11 it -- it had to be a couple of cars back.

12     Q.   Okay.  Did you tell police officers when they

13 came to your home in 2002 that you were waiting for your

14 wife and for your uncle at the time prior to the

15 shooting?

16         THE WITNESS:  My fiance is trying to call me,

17     but I'm trying not to answer.

18         MR. STARR:  Do you need to take a break, sir?

19         MS. BITOY:  Yeah.  We can certainly take a

20     break.

21         THE WITNESS:  Yeah.  Okay.  Yes.  Can I answer

22     her?

23         MS. BITOY:  Yeah.  Do you want to take a --

24     like, a five-minute break, ten-minute break.  What -

25     -



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of EMMETT WADE, taken on November 11, 2023

```
 1            THE REPORTER:  I'll go off the record.  We're
 2       going off.  The time is 11:38 a.m.
 3                 (OFF THE RECORD)
 4            THE REPORTER:  We are back on the record for
 5       the deposition of Emmett Wade.  My name is Lucy
 6       Gough. Today is November 11, 2023, and the current
 7       time is 11:54 a.m.
 8  BY MS. BITOY:
 9       Q.   Okay.  Mr. Wade, shortly before the break, we
10  were discussing conversations that you had with officers
11  who came to your home in 2002.  Do you recall that?
12       A.   Yes.
13       Q.   Okay.  Did you tell officers when they came to
14  your home in 2002 that you're waiting for your wife and
15  your uncle in your car shortly before the shooting?
16       A.   Yes, yes.
17       Q.   And that was accurate, correct?
18       A.   That's accurate, yes.
19       Q.   Did you tell police that Mr. Cooper came out
20  of the truck, and fired his gun at male blacks?
21       A.   Yes.
22       Q.   And was that accurate?
23       A.   Yes.
24       Q.   Okay.  Could you tell police that these black
25  males were shooting their guns at Mr. Cooper?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          A.    The Holsum truck driver fired two shots first.

2    They returned fire somewhere down in the middle of that

3    block.  And -- and when they returned fire, this is how

4    I know Cooper didn't hit him, hit Willie, that's when he

5    came out of the store, and was hit.  And I saw him

6    because at that time I was crawling over the seat to get

7    out the passenger side door, because I really wanted to

8    confront Cooper.

9          Q.    Okay.  So my question is just to say, did you

10   tell officers that you observed some black males

11   shooting at Mr. Cooper?

12               MR. STARR:  Objection, asked and answered.

13               THE WITNESS:  I don't recall saying black

14        males.  I -- I said I saw three individuals running,

15        you know, from my peripheral vision, you know, on

16        the side of my car.

17   BY MS. BITOY:

18        Q.    Okay.  Did you tell officers that you saw the

19   victim, Mr. Sorrell, fall to the ground outside of a

20   liquor store?

21        A.    Yes, I did.  I saw him fall as I was getting

22   out the side of the car.

23        Q.    And did you also tell officers when they came

24   to your home in 2002 that you could not see the faces of

25   the offenders?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1          MR. STARR:  Asked and answered.
2          THE WITNESS:  Correct.
3   BY MS. BITOY:
4      Q.   And we already established that you testified
5   consistently with that at Mr. Fletcher's criminal trial,
6   correct?
7          MR. STARR:  Asked and answered.
8          THE WITNESS:  Correct.
9   BY MS. BITOY:
10     Q.   At what point during the interview did the
11  officers show you photographs?
12     A.   Right away.
13     Q.   So was this --
14     A.   After they -- after they sat down at my home,
15  they pulled out the -- they had a black notepad that
16  they pulled out, and they had the pictures in there.
17     Q.   So was this after you gave them an account of
18  what happened, or was this before you gave them an
19  account of what happened?
20         MR. STARR:  Asked and answered.
21  BY MS. BITOY:
22     Q.   You can answer, sir.
23     A.   Before.
24     Q.   And I think you testified that it was the
25  police officer with -- who was bald that showed you the
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    photographs; is that accurate?
 2         A.   Yes.
 3              MR. STARR:  Asked and answered.
 4    BY MS. BITOY:
 5         Q.   Do you remember what format the photograph was
 6    in?  Was it a printout, like a --
 7         A.   Printout.
 8         Q.   And do you recall how big the photograph was?
 9              MR. STARR:  Objection.
10              THE WITNESS:  They say it's a 5x7, but that's -
11         - that's kind of big.  It was -- I don't know, like
12         a -- a little bit bigger than a wallet in size.
13    BY MS. BITOY:
14         Q.   Was it a color photograph or was it in black
15    and white?
16         A.   I want to say it could've been color.
17         Q.   And you said photographs.  Do you know how
18    many photographs you were shown?
19              MR. STARR:  Asked and answered.
20              THE WITNESS:  I don't recall it.
21    BY MS. BITOY:
22         Q.   Do you recall if there was any writing on the
23    photographs that you observed?
24         A.   I think it was in the form of Department of
25    Corrections.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    Do you know if any of the writing indicated
2  anything about the individual in the photo, so like
3  height, weight, anything like that?
4    A.    I didn't look at anything like that.  Any
5  writing that was under the picture, I really didn't pay
6  attention to.
7    Q.    Do you remember anything about the other
8  photographs that you were shown, besides the photograph
9  that you identified as being Mr. Fletcher, who is the
10 Plaintiff in this case?
11   A.    No.  It's like -- the photographs weren't
12 shown like that.
13        MR. STARR:  You're breaking up.  Could you say
14     -- could you say that again, sir?
15        THE WITNESS:  I said that the -- the other
16     photographs that they had, they did not show them
17     like they showed James Fletcher photograph.
18 BY MS. BITOY:
19   Q.    So how did they show you those photographs?
20   A.    They went through them real quick and then
21 they said, this is the guy we have, meaning Fletcher.
22   Q.    Did the assistant state's attorney say
23 anything during this time?
24        MR. STARR:  Objection.  Asked and answered.
25        THE WITNESS:  No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  BY MS. BITOY:

2     Q.   Did you express any concerns to the State's

3  attorney or the officers that you thought you were being

4  manipulated to identify Mr. Fletcher?

5          MR. STARR:  Form.  Foundation.  Asked and

6     answered.

7          THE WITNESS:  No.

8  BY MS. BITOY:

9     Q.   And how long were the officers at your home

10 during the second meeting?

11         MR. STARR:  Asked and answered.

12 BY MS. BITOY:

13    Q.   Sorry, you can answer, sir.

14    A.   Half an hour or less.

15    Q.   Okay.  So I just want to show you a

16 supplementary report quickly.  I know that you said that

17 you had one supplementary report from 1990 that you had

18 received; is that right?

19    A.   Yes.

20    Q.   Okay.  I'd like to show you the supplementary

21 report from your 2002 interview with officers, okay?

22    A.   Okay.

23    Q.   Can you see my screen, sir?

24    A.   I can see it -- I -- but I -- you know, like I

25 said, I can't read the small print.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    Is that a little bit better?

2      A.    It's a little bit better, but --

3      Q.    Is that better?

4      A.    Yes.

5       MS. BITOY:   Okay.   So just for reference, this

6     is -- I'll mark this as Defense Exhibit 2.   And this

7     is Bates stamped IND DEF 481 through 489.

8        (DEFENSE EXHIBIT 2 MARKED FOR IDENTIFICATION)

9 BY MS. BITOY:

10     Q.    And so, sir, this is the supplementary report

11 that officers completed in relation to your 2002

12 interview.   And I just want to read through what they

13 noted in terms of their interview with you, okay? Okay.

14     A.    Okay.

15     Q.    Sure.   I'm starting on the bottom of Page 7 of

16       9 IND DEF 487.   It says, "Emmett Wade: He

17 stated that on December 21, 1990, he had parked his van

18 on the south side of Madison Street.   There was one car

19 parked between his van and the bread truck.   He was

20 waiting for his wife who had gone to the shoe store, and

21 for his uncle who had gone to a chiropractor's office.

22 Wade was reading a newspaper when he noticed three M/Bs

23 running in his street near his van.   At least two of

24 those subjects were carrying handguns.   The bread truck

25 driver came out of the truck and fired a handgun at the"

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1    --
 2         A.    Can -- can --
 3         Q.    I'm sorry, go ahead.
 4         A.    That's not correct.  I never said I saw
 5    handguns.
 6         Q.    Okay.  So we'll get to that.  I'm just going
 7    to read through it, okay?
 8         A.    Uh-huh.
 9         Q.    "Wade believed that the bread truck driver had
10    fired first, but he was not certain.  Wade saw the
11    victim, who had just come out of the liquor store, fall
12    to the ground.  The M/Bs continued running south
13    westbound on Madison, followed by the driver.  Wade did
14    not see where they went.  Wade ran up to the victim and
15    could see that he had been shot.  He told the victim not
16    to move.  Wade stated that he did not see the faces of
17    the offenders.  He further stated that the bread truck
18    driver was not shooting in the direction of the victim.
19    He stated that the victim had to have been shot by the
20    offenders."  Did you see that, sir?
21         A.    Yes.
22         Q.    Okay.  And is there any --
23         A.    But some of -- some of that statement is
24    wrong.
25         Q.    Yes.  Can you please identify for me what's
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    wrong?

2           MR. STARR:  Objection to form.

3           THE WITNESS:  First of all --

4           MR. STARR:  You can answer.

5           THE WITNESS:  Okay.  First of all, they said

6      that I saw offenders with two handguns.  I never

7      told them I saw them with two handguns.  Second of

8      all, I'm sure, it's -- there's no doubt in my mind

9      that Cooper shot twice first, before the shots came

10     from them.  So no, I -- I -- I never said to them I

11     wasn't sure who shot first.  Never said that.

12   BY MS. BITOY:

13       Q.   Okay.  Did you tell officers that you could

14   not see the faces of the offenders?

15       A.   Yes, I did.

16       Q.   Okay.  And you also testified consistently

17   with that at your criminal -- at the criminal trial,

18   correct?

19       A.   Correct.

20       Q.   Okay.  All right.  So I'd like to go through

21   your declaration again, and ask you some questions about

22   that, okay?

23       A.   Okay.

24       Q.   Can you see -- can you see my screen?

25       A.   Yes, I can see it.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.    So your declaration was taken by Jennifer
 2   Blagg.  When is the very first time that you spoke to
 3   Jennifer Blagg?
 4        A.    I can't recall the first time I ever spoke to
 5   her.
 6        Q.    How many times have you spoken to her?
 7        A.    Several.
 8        Q.    Was it more than three?
 9        A.    Could have been, yes.
10        Q.    Was it more than five?
11        A.    Too long ago, I -- I can't recall that.
12        Q.    What do you recall about the very first
13   interaction that you had with Ms. Blagg?
14        A.    At Louie's, she came to take this statement,
15   you know, at -- at the restaurant.
16        Q.    Was that the very first time that you met with
17   Ms. Blagg?
18        A.    Yes.
19        Q.    Was that the very first time that you spoke to
20   her?
21        A.    No.
22        Q.    So when's the very first time that you spoke
23   to her?
24        A.    I -- I -- like I said, I cannot remember the
25   first time, but I knew before that meeting, we had spoke
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    at least a couple of times, because she set up the

2    meeting, I didn't.

3         Q.   And I know that you said a couple of times.

4    Would those have been phone conversations?

5         A.   Yes.

6         Q.   And what was said during the first phone

7    conversation, if you can recall?

8         A.   That she would've liked to come and interview

9    -- interview me about the case.

10        Q.   Did she say anything else?

11        A.   Pretty much, no.  She asked that -- what's a

12   good time she could set up the meeting, and she would

13   come to me, instead of I have to come down there

14   downtown, or wherever they was located.

15        Q.   Did she give you any information about

16   Mr. Fletcher's case?

17        A.   Not at that point.

18        Q.   The second -- do you recall what -- strike

19   that.  Do you recall the second contact that you would

20   have had with Ms. Blagg?

21        A.   It probably was the meeting, the setup of the

22   meeting when she took whatever she needed to take.

23        Q.   Okay.  So was that another phone conversation?

24        A.   Yes.

25        Q.   And what was discussed during that phone

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 104 of 160 PageID #:6326
The Deposition of SOME WITNESS, taken on November 15, 2016
102

1 conversation?

2     A.   I guess, where can we meet, and I think I

3 picked Louie's.

4     **Q.   Was anyone else on the phone throughout --**

5 **during these two conversations?**

6     A.   I -- I don't -- if it was, I don't recall.

7     **Q.   Did Ms. Blagg send you any letters, or any**

8 **documents prior to meeting with her?**

9     A.   No.

10     **Q.   Did she send you any e-mails?**

11     A.   No.

12     **Q.   So you met with Ms. Blagg at Louie's Grill in**

13 **Forest Park on March 16, 2012; is that right?**

14     A.   That's correct.  I don't remember the dates,

15 but that should be correct.

16     **Q.   And did you know when you were going to meet**

17 **her that you would be filling out this declaration?**

18     A.   I knew she would be taking some notes.  I

19 didn't know it would be a declaration.

20     **Q.   How did the subject of filling out this**

21 **declaration come about?**

22         MR. STARR:  Objection to form.

23         THE WITNESS:  I don't know.

24 BY MS. BITOY:

25     **Q.   Did she ask you if you would be willing to**



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    fill out a declaration on behalf of Mr. Fletcher?

2        A.   I don't recall.

3        Q.   Did you state that you would be willing, or

4    that -- to fill out a declaration on behalf of

5    Mr. Fletcher?

6            MR. STARR:  Objection to form.  Foundation.

7        Asked and answered.

8            THE WITNESS:  What I said --

9            MR. STARR:  Go ahead, sir.  Sorry.

10           THE WITNESS:  What I said was, you know, I can

11       give my statement on what I saw and, you know, what

12       happened at -- at the scene.

13   BY MS. BITOY:

14       Q.   And did you say that you would be agreeing --

15   that you would agree to put that in writing?

16           MR. STARR:  Asked and answered.

17           THE WITNESS:  I never agreed with anything to

18       put it in, you know, for people to put it in

19       writing. I don't -- I don't remember that.

20   BY MS. BITOY:

21       Q.   Did you have any understanding as to why you

22   would be drafting this declaration?

23       A.   Yes.  I had -- she told me at that time she

24   believed he was wrongly convicted.

25       Q.   And did she tell you why she believed he was

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 106 of 160 PageID #:6328
The Deposition of BENJAMIN WADE, taken on November 16, 2023
104

```
 1   wrongly convicted?
 2        A.   No, she didn't get into the details.
 3        Q.   Did she ask you, or were you told that filling
 4   out this declaration would be helpful to Mr. Fletcher's
 5   case?
 6        A.   No, she never said that.
 7        Q.   Did you have lunch with Ms. Blagg at Louie's
 8   Grill?
 9        A.   We had breakfast.
10        Q.   And who else was present?
11        A.   It was her.
12        Q.   So Mr. Fletcher, Sr. wasn't present?
13        A.   I can't recall was he -- I met with
14   Mr. Fletcher, I think, after that meeting.  Because he
15   found me -- well, it could've been before that meeting,
16   because Mr. Fletcher went to my brother's house, and
17   that's how I got introduced to Mr. Fletcher.
18        Q.   So you can't recall one way or the other
19   whether Mr. Fletcher, Sr. was present at this meeting at
20   Louie's?
21        A.   No.  No.
22        Q.   Did Ms. Blagg bring this -- the declaration
23   form with her to Louie's?
24             MR. STARR:  Form.  Foundation.
25             THE WITNESS:  See, I -- up until now, I never
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     knew what a declaration form was, so I -- I really

2     don't -- didn't know what she was filling out.

3  BY MS. BITOY:

4        Q.    So I guess my question is, I -- let me show

5  you this exhibit again.  Sir, is this your handwriting?

6        A.    Can you blow it up a little bit?  That look --

7  from my handwriting.

8        Q.    I'm sorry.  You cut -- you cut off.

9        A.    I'm not sure, because I really can't see it.

10 Like I need to see it, so I don't -- I don't want to

11 answer that.

12       Q.    Okay.  If I blow it up a little bit more, is -

13 - are you able to see it now any better?

14       A.    That's not my handwriting.

15       Q.    This is not your handwriting?

16       A.    Now, the initials, the initials might be mine.

17 That look more like my handwriting, the EW and --

18       Q.    Okay.  So fair to say you don't recall writing

19 out a six-page declaration; is that right?

20       A.    No -- no, I -- I -- no, I definitely didn't

21 write out a six-page declaration.

22       Q.    Okay, okay.  So during your meeting with

23 Ms. Blagg at Louie's Grill, was she writing out while

24 she was -- did you see her writing anything while she

25 was talking to you?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 108 of 160 PageID #:6330
The Deposition of SAMUEL WADE, Taken on November 10, 2023
106

1    A.    Yeah, she -- she was definitely writing while
2  we was talking.
3         MR. STARR:  I'm just going to -- I'm just going
4      to object to note for the record that it's
5      technically five pages.  There's the duplicate page
6      that I identified earlier.
7         MS. BITOY:  Okay, understood.
8  BY MS. BITOY:
9    Q.    Okay.  So was -- do you recall going over a
10  declaration with Ms. Blagg at Louie's Grill on
11  March 16, 2012?
12         MR. STARR:  Asked and answered.
13         THE WITNESS:  I --
14  BY MS. BITOY:
15    Q.    Okay.  Do you see that your initials or notice
16  -- or as described on this photo, or on this document,
17  do you remember when you would have done that?
18    A.    The only thing -- thing I would do is -- is
19  she telling me to initial something because she had to
20  correct something.  That's -- that's all I remember
21  about that.
22    Q.    Okay, sir, have you ever reviewed this
23  document in full?
24    A.    No.
25         MR. STARR:  Objection.  Asked and answered.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    BY MS. BITOY:

2      Q.   So you've never actually gone through every

3    single page of your declaration; is that accurate?

4        MR. STARR:  Asked and answered.

5        THE WITNESS:  Not of -- not of hers.

6    BY MS. BITOY:

7      Q.   Okay.  Did you go over what Ms. Blagg was

8    going to be putting into this declaration prior to it

9    being drafted?

10        MR. STARR:  Asked and answered.

11        THE WITNESS:  No.

12    BY MS. BITOY:

13      Q.   Did Ms. Blagg ask you if police had shown you

14    any photos of Mr. Fletcher in 2002?

15      A.   She could have.

16      Q.   Did she bring any photographs with her to

17    Louie's Grill?

18        THE WITNESS:  Not that I recall.

19    BY MS. BITOY:

20      Q.   Did she bring any documents for you to review

21    with her at Louie's Grill?

22      A.   Only -- only thing I saw is what -- what she

23    was writing in -- in her folder.

24      Q.   I'm sorry, what she was writing in her folder;

25    is that what you said?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

     1          A.     Yeah.  She had like a black booklet that, you

     2     know, she was carrying.

     3          Q.     Did Ms. Blagg ever tell you anything about the

     4     police officers who were involved in investigating the

     5     Sorrell murder?

     6          A.     No.

     7          Q.     How long was this meeting with Ms. Blagg?

     8          A.     Probably an hour.

     9          Q.     Okay.  So I'm going to go through some

    10     portions of this declaration with you and ask you some

    11     questions about it, okay?

    12          A.     Okay.

    13          Q.     Well, starting on Page 3 of 6 of the

    14     declaration and just for reference, this is, I think the

    15     version that I'm using might be different than the one

    16     that you used, Sean, but this is CCSAO-CIU 154, and this

    17     is Page 3 of 6.  And at the top here, you say -- well,

    18     actually, no.  Let's go up one page.  I'm going to start

    19     at the bottom of Page 2 of 6.  You said -- and this is

    20     at this point, you're discussing when officers came to

    21     your home in 2002, and you say, "He said this is the guy

    22     we have in custody.  He is a bad guy.  We want to keep

    23     him off the street.  They let me know he was in jail and

    24     they didn't want him to get out.  They said if he got

    25     convicted on this case, he would be in for life.  The

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1   lady attorney agreed that he was a bad guy, and that he

 2   did this type of thing.  They were confident that the

 3   man in the picture was the man who had committed the

 4   crime.  I was not confident and I told them that I would

 5   not say it was him."  Do you see that?

 6           MR. STARR:  I'm just going to --

 7           THE WITNESS:  Yes.

 8           MR. STARR:  I think it says they seem

 9      confident, but just for clarification.

10           MS. BITOY:  Sure.

11   BY MS. BITOY:

12      Q.   Did you -- do you see that though, in your

13   declaration, sir?

14      A.   Yes.  Yes.

15      Q.   Did you -- did you tell that information to

16   Ms. Blagg when you met with her at Louie's Grill?

17      A.   Yeah, that's something I would've told her

18   because that's me, word-for-word.

19      Q.   Okay.  Did the officers ever tell you why they

20   thought Mr. Fletcher was a bad guy?

21      A.   No, they never did.

22      Q.   Did they tell you what he was in prison for?

23      A.   No, they didn't.

24           MR. STARR:  Objection.  Mischaracterizes

25      testimony.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 112 of 160 PageID #:6334
The Deposition of CLEMENT WARD, taken on November 12, 2024
110

```
 1    BY MS. BITOY:
 2        Q.    So they didn't tell you what he was in prison
 3    for; is that accurate, sir?
 4        A.    Right, because what he was in prison for had
 5    nothing to do with this case, what I gathered, back
 6    then.
 7        Q.    Okay.  I'm going to scroll down a little bit.
 8    Same page here.  Starting -- let me see if I can
 9    highlight this.  Do you see my cursor, sir, moving on
10    the screen?
11        A.    I -- I see your cursor, but I can't see the --
12    the writing.
13        Q.    Okay.  I'll try and zoom in a little bit.
14    Okay, starting here, they -- you say, "They told me when
15    they were trying to get me to say that the man in the
16    photo did it, that they had a woman in custody who saw
17    everything that would identify the man.  It seemed that
18    they were using that to persuade me it was the man in
19    the photo and I should ID him.  I asked the men who the
20    man in the picture was and they told me Fletcher." My
21    question is, did police officers ever tell you who --
22    the identity of this woman who could identify Fletcher?
23             MR. STARR:  Asked and answered.
24             THE WITNESS:  I never --
25             MR. STARR:  Go ahead.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 113 of 160 PageID #:6335
The Deposition of EMMITT SPARKS, taken on November 11, 2020
111

 1          THE WITNESS:  Never knew the identity of her
 2     and I never saw her until I was in the court -- in
 3     the courtroom.
 4  BY MS. BITOY:
 5          Q.   Have you ever heard the name Shenee Friend?
 6          A.   I might have heard it, you know, during court,
 7  but I don't remember.  I don't recall.
 8          Q.   Okay.  Had you ever met this woman prior to
 9  seeing her in court?
10          A.   Never met any of them.
11          Q.   Okay.  I am going to move on to -- this is
12  Page 4 of 6 now.  I'm going to start in the -- on this
13  second paragraph here.  "I went to Court and spoke to
14  prosecutor briefly.  The day the day of the trial sat me
15  down with Cooper.  I started chatting with Cooper. The
16  state's attorney came over and asked me if I was going
17  to be a State witness.  I said, 'I'm not anybody's
18  witness.' Before I went to sit with Cooper, I was
19  sitting on the Court -- in the courtroom.  You could see
20  in the lockup when they opened the doors. Once they
21  opened the door and I saw a woman crying. She looked
22  like she didn't want to be there.  I knew she was the
23  woman that they had in custody that they told me about
24  before."  How did you -- and my question I guess is, how
25  did you know that this was a woman that police officers

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1    had told you about before?
 2              MR. STARR:  Asked and answered.
 3              THE WITNESS:  Because --
 4              MR. STARR:  Go ahead.
 5              THE WITNESS:  Whatever she's -- she was
 6        speaking on the case to whatever prosecutor she was
 7        speaking to.  She -- she -- I -- what I remember
 8        vaguely was her saying is that she never identified
 9        Fletcher as the shooter, and -- and she didn't
10        understand why she was there.
11    BY MS. BITOY:
12        Q.   Okay.  And you heard her saying that, that's
13    that -- that's what --
14        A.   Yes, yes, yes.  She was crying while she was
15    talking.
16        Q.   And then you say, "I had been to court a
17    couple of times before, and they were not able to locate
18    her."  How many times had you been to court prior to you
19    testifying?
20        A.   I think it was twice we had been to court. I'm
21    not for sure.  Don't take my word on that, though.
22        Q.   And do you recall speaking to anyone during
23    those two times?
24        A.   No, it was -- it -- it -- the trial got, what
25    you call it, postponed to a later date.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   And you said that they were not able to locate
2  her.  Where are you getting that information from that
3  you knew that?
4      A.   I think the state's attorney was saying they
5  was looking for another witness.
6      Q.   Okay.  All right.  I'm going to go on Page 5
7  of 6 now, just for the record.  This is CCSAO-CIU 156.
8  And I'm just going to start at this sentence where I'm
9  sort of moving my cursor here.  You say, "Fletcher's
10  father found me in November of 2011.  He told me his son
11  had been convicted.  He asked me about my testimony and
12  what I saw.  I told him" -- let me make this a little
13  bit bigger.  "I told him how the police showed me a
14  photo of his son.  I told him I thought it was really
15  strange that they showed me a single picture instead of
16  a photo array, and that it was strange how they wanted
17  me to say it was him -- or say it was his son.  I had
18  previously seen a photo array when I was a victim of an
19  attempted robbery.  I told Fletcher about how I remember
20  the Defense attorney asking me a question about the
21  police coming, but the police object -- but the State
22  objected, and the attorney couldn't figure out how to
23  ask me how the police acted when they came to my house."
24  Do you see that, sir?
25      A.   2011?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Yes.  That's what's in your declaration.

2    A.   Okay.

3    Q.   Okay.  So my question is, in your declaration,

4  you say -- okay.  So my question is, in your

5  declaration, you say that Mr. Fletcher's father came to

6  see you, and that you told him that the police had only

7  shown you a single photograph, and that you thought it

8  was strange that they did not show you a photo array.  Do

9  you see that?

10   A.   Yes.  I don't recall whether saying single.

11 What I probably said was they had the pictures, and they

12 pointed out his single photograph.  And that was it.

13   Q.   Are you saying that this --

14   A.   They pointed him -- the police pointed him

15 out.

16   Q.   Are you saying that your declaration is

17 inaccurate, then?

18        MR. STARR:  Objection.  Form, foundation,

19    mischaracterizes his testimony.

20        THE WITNESS:  I -- I couldn't say whether it's

21    inaccurate or not.  It's been years since I, you

22    know, spoke on this.  I couldn't say whether I said

23    one photo or what.

24 BY MS. BITOY:

25   Q.   Sure.  So I -- sir, you signed this

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    declaration, correct?

 2              MR. STARR:  Asked and answered.

 3              THE WITNESS:  Yes, I did.

 4    BY MS. BITOY:

 5         Q.   Okay.  And you affirmed that all the

 6    information in this declaration was true, correct?

 7              MR. STARR:  Asked and answered.

 8              THE WITNESS:  Correct.

 9    BY MS. BITOY:

10         Q.   Okay.  So I'm just -- I'm reading from your

11    declaration right here.  And where you see my cursor,

12    you say, "I told him, I thought it was really strange

13    that they showed me a single picture instead of a photo

14    array.  And it was strange how they wanted me to say it

15    was his son.  I had previously seen a photo array when I

16    was a victim of an attempt robbery."  Do you see that,

17    sir?

18              MR. STARR:  Asked and answered.

19              THE WITNESS:  Yes.

20    BY MS. BITOY:

21         Q.   Okay.  So in your declaration, you -- or you

22    affirmed that you were only shown a single photograph;

23    is that accurate?

24              MR. STARR:  Asked and answered.  He just

25         explained this.  You just asked him the same set of
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 118 of 160 PageID #:6340
The Deposition of Smith Taken on November 11 2021
116

```
 1        questions.
 2             MS. BITOY:  Is that accurate, sir?
 3             THE WITNESS:  I would say to that -- to that
 4        fact is that if I did say single, it wasn't a single
 5        picture that they brung with them, but it was a
 6        single picture that they was pointing out.
 7   BY MS. BITOY:
 8        Q.   Okay.  But that's not what's reflected in your
 9   declaration, correct?
10        A.   Okay.  But --
11             MR. STARR:  Asked and answered.  Badgering,
12        harassing.
13   BY MS. BITOY:
14        Q.   Is that accurate, sir?
15             MR. STARR:  Same objections.
16   BY MS. BITOY:
17        Q.   You can answer.
18        A.   Well, here go the thing.  I'm -- I'm not going
19   to say it's not accurate, but, you know, it could have
20   been misspoken, because they had more than one picture.
21        Q.   Do you remember if you told Ms. Blagg if it
22   was one photo or multiple photos?
23             MR. STARR:  Asked and answered.
24             THE WITNESS:  I would've told her it was
25        multiple.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    BY MS. BITOY:
 2         Q.   Okay.  And I am just going to go back or down
 3    to the final page.  This is Page 6 of 6.  And just for
 4    the record, this is CCSAO-CIU-157.  And you see that
 5    there's a notary republic [sic] on here.  It looks like
 6    a Brenda Weeks.  Do you see that?
 7         A.   Yes.
 8         Q.   Okay.  Was a notary public present when you
 9    signed this document?
10         A.   I don't recall.
11         Q.   Do you recall anyone else being present but
12    you and Ms. Blagg when you signed this document?
13              MR. STARR:  Asked and answered.
14              THE WITNESS:  I remember her.
15    BY MS. BITOY:
16         Q.   And by her, you mean Ms. Blagg, correct?
17         A.   Right.
18         Q.   Okay.  We're done with this.  Sir, would you
19    agree that 2012, when you filled -- or signed this
20    declaration, that was the first time that you ever came
21    forward to say the police officers showed you, or
22    pointed out Mr. Fletcher to you, prior to your testimony
23    at trial?
24         A.   Are you -- can you -- can -- can you repeat
25    that, please?  I'm sorry.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Sure.  Would you agree that 2012 was the very

2   first time that you ever came forward to say that police

3   officers pointed out Mr. Fletcher to you and wanted you

4   to identify Mr. Fletcher at trial?

5        MR. STARR:  Form, foundation, and

6     mischaracterizes prior testimony.

7        THE WITNESS:  No, I -- I wouldn't say that's

8     accurate.

9  BY MS. BITOY:

10     Q.   When is the very first time that you came

11  forward and said that -- told anyone that you had been

12  manipulated by police?

13     A.   I never said I was manipulated.  I said that

14  it was strange that they would show me one photo.  I

15  never said that they manipulated or anything like that.

16  I said it was strange that they only picked out this one

17  photo out of the other photos that they had.  And it was

18  strange that they said his name over and over again.

19     Q.   When is the very first time that you voiced

20  that concern to anyone?

21     A.   I -- I haven't voiced that concern to nobody

22  but what I put in the depositions.  That's -- that's the

23  only time I've voiced it.

24     Q.   Right.  So that's what I mean.  2012, when you

25  signed that declaration, that was the very first time

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  that you had told anyone that you felt it was strange

2  that police were trying to get you to identify Mr.

3  Fletcher; is that accurate?

4      A.   That could -- that could be true.   That's

5  accurate.

6      Q.   In your declaration, and you testified today

7  that you spoke to Mr. Cooper at the courthouse in 2002.

8  Do you remember that testimony?

9      A.   Yes.

10     Q.   Okay.   And have you ever seen Mr. Cooper since

11  then?   That time?

12     A.   No.   No.

13     Q.   Have you ever learned that Mr. Cooper has

14  signed any declarations or affidavits on behalf of

15  Mr. Fletcher?

16     A.   No.

17     Q.   Did Ms. Blagg tell you that she was speaking

18  to any other witnesses and attempting to obtain

19  declarations or affidavits from that?

20     A.   No.

21     Q.   And you stated that you spoke to Mr. Fletcher,

22  Sr. in 2011.   How did Mr. Fletcher, Sr. contact you?

23     A.   Well, like I said, he didn't contact me, per

24  se.   He contacted me through my brother.   He actually

25  went to my brother's house.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       Q.    And who is your brother, sir?

2       A.    Eric Wade.

3       Q.    And do you know how Mr. Fletcher Sr. was able

4   to contact Eric Wade?

5       A.    Don't know how.  Don't know how.

6       Q.    Okay.  And did your brother then tell you that

7   Mr. Fletcher, Sr. was looking for you?

8       A.    Well, he called me while he was there.

9       Q.    Oh, okay.  So Mr. Fletcher, Sr. and your

10  brother called you?

11      A.    Right.  My brother called me.

12      Q.    Okay.  And did you have a conversation at that

13  time with Mr. Fletcher, Sr.?

14      A.    I didn't have a conversation.  He asked to

15  meet with me.  And I said, okay, fine.

16      Q.    And do you recall how soon after that phone

17  conversation you met with Mr. Fletcher, Sr.?

18      A.    Probably a week after that.

19      Q.    And where was that meeting?

20      A.    It could have been at Louie's, because that's,

21  you know, where I meet everybody at.

22      Q.    Do you remember seeing or meeting with

23  Mr. Fletcher, Sr. in person on more than one occasion?

24      A.    Maybe twice.  That's it.  The first time we

25  sat and talked.  And he was just like, you know, he

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 123 of 160 PageID #:6345
The Deposition of EMMITT WADE, Taken on November 23, 2023
121

1  really, you know, want to see this thing through with

2  his son.  He -- he felt his son was innocent.  The

3  second time, I think this is how the attorneys came

4  along.  The -- the lady you're talking about.

5      **Q.   Apart from telling you that he thought that he**

6  **thought that his son was innocent, did he tell you**

7  **anything else about Mr. Fletcher's case?**

8      A.   Who is -- Mr. Fletcher told me that.

9      **Q.   Right.**

10      A.   The father.

11      **Q.   So there's a Senior --**

12      A.   No.  Well, right.  He never told me anything

13  else about it.

14      **Q.   Okay.  Did Mr. Fletcher, Sr. tell you that he**

15  **wanted you to sign a declaration on behalf of**

16  **Mr. Fletcher?**

17      A.   First time, again, I'm hearing about this

18  declaration.  I never knew what this declaration mean

19  until I'm looking -- you saying it today.

20      **Q.   Okay.  So the Declaration that we went through**

21  **that -- the handwritten, are you saying that today's the**

22  **very first time that you've seen this declaration?**

23          MR. STARR:  Objection.

24          MS. BITOY:  That's the first time I've seen it.

25          MR. STARR:  Mischaracterizes his testimony.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   BY MS. BITOY:

2       Q.   So you're saying that the first time that

3   you're seeing this declaration is today?  I'm sorry, I

4   just want to get a clean answer for that.

5       A.   Yes.  I saw her writing that --

6            MR. STARR:  Mischaracterizes testimony.

7            THE WITNESS:  -- but I never -- never reviewed

8       it.

9   BY MS. BITOY:

10      Q.   Okay.

11      A.   Before today.

12      Q.   Okay.  So you've never reviewed the

13  declaration prior to today; that's your testimony?

14      A.   Right.  Right.

15      Q.   Okay.  Understood.  Did Ms. Blagg ask you

16  whether you would testify at an evidentiary hearing on

17  behalf of Mr. Fletcher?

18           MR. STARR:  Foundation.

19           THE WITNESS:  I don't recall.

20  BY MS. BITOY:

21      Q.   Did you tell Ms. Blagg that you would be

22  willing to testify in a court proceeding on behalf of

23  Mr. Fletcher?

24           MR. STARR:  Objection, asked and answered.

25           THE WITNESS:  I don't recall that, either.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   BY MS. BITOY:

 2        Q.   Okay.  In your declaration, it states that

 3   Mr. -- when you were at the courthouse with Mr. Cooper,

 4   Mr. Cooper told you that he was only 75 percent sure

 5   that Mr. Fletcher was the offender; is that accurate?

 6        A.   That's correct.  That's accurate.

 7        Q.   Okay.  Did you tell that information to

 8   Ms. Blagg?

 9        A.   I don't recall whether I did or not.

10        Q.   Did Ms. Mr. Cooper ever tell you the basis of

11   why he felt he was only 75 percent accurate?

12        A.   No.

13        Q.   That fact -- isn't sure?  I'm sorry.  No?

14        A.   No, no.

15        Q.   I think you testified previously that you were

16   arrested three or four times for traffic violations. Do

17   you recall that testimony?

18        A.   Yes.

19        Q.   Was that in Chicago or was that somewhere

20   else?

21        A.   Chicago.

22        Q.   Did you have any negative experiences with

23   police during either -- any of those instances?

24        A.   No.

25        Q.   Okay.  If we could just take maybe, like, a
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    five-minute break.  I think I'm wrapping up.

2         A.   Okay.  At 1:00, we have to pick up my

3    daughter.

4         Q.   Okay.  And I'll --

5         A.   So.

6         Q.   Okay.  It -- it's just going to be a

7    five-minute break.  I -- and I'm --

8         A.   Okay.

9         Q.   -- happy.  So I really appreciate your

10   patience.  I know this is not fun, so just five minutes.

11        A.   Oh, okay.  That's fine.

12             THE REPORTER:  Okay.  We're --

13             MS. BITOY:  Thank you.

14             THE REPORTER:  -- going off the record.  The

15        time is 12:38 p.m.

16             (OFF THE RECORD)

17             THE REPORTER:  We are back on the record for

18        the deposition of Emmett Wade.  My name is Lucy

19        Gough. Today's November 11, 2023.  The current time

20        is 12:43 p.m.

21   BY MS. BITOY:

22        Q.   Okay.  Mr. Wade, I only have very --

23   essentially one more question for you.  I just want to

24   show you your declaration once more.

25        A.   Okay.  I'm going to get my glasses, okay?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 127 of 160 PageID #:6349
The Deposition of MATT WALSH, taken on November 29, 2023
125

1      Q.   Okay.  Sounds good.

2      A.   All right.  Okay.  I'm ready.

3      Q.   Okay.  And so I -- just for reference here,

4  I'm on Page 3 of 6.  This is Bates stamped

5  CCSAO-CIU-154.  And I just want to focus on this portion

6  right here, where it says, "The lady attorney agreed

7  that he was a bad guy and that he had done this type of

8  thing." Do you see that?

9           MR. STARR:  Asked and answered.

10  BY MS. BITOY:

11      Q.   Do you see that?

12      A.   Yes, I -- yes.

13      Q.   So it's your testimony that the State's

14  attorney had -- was involved in the conversation when

15  officers told you that Fletcher was a bad guy?  Is that

16  --

17      A.   No.  No.

18           MR. STARR:  Form, foundation.

19           THE WITNESS:  No, she -- she --

20           MR. STARR:  Mischaracterizes his testimony. Go

21      ahead.

22           THE WITNESS:  -- she -- she -- she -- she

23      wasn't saying -- she never said Fletcher.  She said

24      -- I think her statement was, these are bad guys.

25      She never said Fletcher.  She never said the names

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1        of the other people that was in the photo.
 2   BY MS. BITOY:
 3        Q.   You said that she said that these were bad
 4   guys.  What -- who was she referring to?
 5        A.   I guess the photos that they were showing.
 6        Q.   Okay.  So in your declaration here -- because
 7   -- I'll go back a little bit further, or further up --
 8   your declaration states that "They came inside.  We sat
 9   down.  The guy with a bald head showed me one picture.
10   He said, this is the guy we have in custody.  He is a
11   bad guy.  We want to keep him off the street.  They let
12   me know he was in jail, and they didn't want him to get
13   out.  They said, if he got convicted on this case, he
14   would be in for life.  The lady attorney agreed that he
15   was a bad guy and that he did this type of thing."  Do
16   you see that?
17        A.   Yes.
18        Q.   So according to your declaration, the State's
19   attorney agreed with the police officers that the photo
20   who they had shown you of Mr. Fletcher, he was a bad
21   guy; is that it?
22             MR. STARR:  Form.  Form, foundation.  Asked and
23        answered.  Mischaracterizes prior testimony.
24        Harassing.
25   BY MS. BITOY:
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   You can answer, sir.

 2        A.   Well, I -- I don't -- it is hard to recall

 3   that conversation in total, but she never -- for me, she

 4   never got involved with picking out anyone.  What I

 5   recall is maybe -- maybe I misspoke to this lady, but I

 6   recall her saying that -- that these are bad guys.

 7        Q.   I think those are all the questions that I

 8   have for you, sir.  The other attorneys may have some

 9   further follow-up.  Thank you for your time.

10        A.   Thank you.

11                    EXAMINATION

12   BY MS. MORRISON:

13        Q.   Hi, Mr. Wade.  My name's Katherine Morrison,

14   and I represent the City of Chicago.  I just have a

15   quick follow-up question with regard to what Ms. Bitoy

16   was just asking you.

17        A.   Okay.

18        Q.   You were asked by Mr. Starr earlier that

19   during this second meeting with the detectives, and the

20   State's attorney back in 2002, I think he asked you if

21   you knew if the State's attorney was participating in

22   the conversation or heard what you were telling the

23   detectives.  Do you remember that question?

24             MR. STARR:  Objection to form.

25             THE WITNESS:  Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 130 of 160 PageID #:6352
The Deposition of EMMITT WADE, Taken on November 15, 2022
128

1  BY MS. MORRISON:

2      Q.   And it's clear, based on the documents that

3  you've been shown, that the State's attorney was paying

4  attention, and was involved in the conversations at that

5  time; would you agree?

6          MR. STARR:  Objection to form.  Foundation.

7      Mischaracterizes prior testimony.  Asked and

8      answered. You can answer.

9          THE WITNESS:  I didn't never see her involved.

10     I -- I -- I thought for me, I thought it was more

11     them than her.

12  BY MS. MORRISON:

13     Q.   But she was present when you told the

14  detectives that --

15     A.   She -- she -- she was -- she -- she was

16  present, but she wasn't answering the questions like

17  they was, or pointing at the pictures.  She wasn't doing

18  any of that.

19     Q.   Sure.  But my question is, was she present in

20  the room when you told the detectives that you could not

21  identify Mr. Fletcher as the shooter?

22         MR. STARR:  Asked and answered.

23         THE WITNESS:  Oh, yes.  Yes.  Yes, she was.

24  BY MS. MORRISON:

25     Q.   Okay.  Have you spoken to anyone from the City

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    of Chicago with regard to this incident following your

2    testimony back in the 2005 criminal trial?

3        A.    No, I haven't.

4        Q.    Those are all the questions that I have. Thank

5    you.

6        A.    Thank you.

7                        REDIRECT EXAMINATION

8    BY MR. STARR:

9        Q.    I just have a couple of follow-ups to that.

10       A.    Uh-huh.

11       Q.    Ms. Morrison asked if you spoke to anybody

12   from the City of Chicago after your testimony in 2005.

13   Did you -- did the police ever try to contact you at any

14   point between 1990 and 2002?

15       A.    No, not that I recall.  And if they did, they

16   probably was at the wrong address, because I had moved.

17       Q.    Okay.  So you have no recollection of the

18   police ever attempting to contact you --

19       A.    Never.

20       Q.    -- about this case between 1990 and when they

21   came back in 2002, correct?

22       A.    No.

23       Q.    Okay.

24       A.    Don't have no recollection.

25       Q.    And you were shown the declaration multiple

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   times by myself and by Ms. Bitoy.  You saw -- you saw

 2   that your signature's on that document, correct?

 3        A.   Right.

 4        Q.   And you wouldn't have signed a document unless

 5   you believed it would be accurate, correct?

 6        A.   That's correct.

 7        Q.   Okay.  You testified that the state's

 8   attorney, or the woman who identified herself as the

 9   state's attorney, was in the room when the detectives

10   were at your home, correct?

11        A.   Correct.

12        Q.   But you don't know if she was paying attention

13   to what you and the detectives were talking about,

14   correct?

15             MS. BITOY:  Objection.

16             MS. MORRISON:  Objection.

17             THE WITNESS:  No, because I was --

18             MS. MORRISON:  Mischaracterizes testimony.

19   BY MR. STARR:

20        Q.   You can answer.

21        A.   -- I was turned towards the detectives.

22        Q.   Okay.

23        A.   And we was talking.

24        Q.   And you don't know if they saw what photo in

25   particular they showed you when they identified the
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 133 of 160 PageID #:6355
The Deposition of EMMITT MARTIN, Taken on November 13, 2023
131

```
 1   photograph as being the suspect, correct?
 2           MS. MORRISON:  Objection.  Form.
 3           THE WITNESS:  Can you repeat that again?  I'm
 4       sorry.
 5   BY MR. STARR:
 6       Q.   Sure.  Because you were not paying attention
 7   to the state's sttorney, you don't know if she was
 8   paying attention to the photo that they showed you when
 9   they identified the photo as being the suspect?
10           MS. BITOY:  Objection.
11           MS. MORRISON:  Form, speculation.
12           MS. BITOY:  Foundation.
13           THE WITNESS:  I -- I -- I don't know if she was
14       paying attention or not.
15   BY MR. STARR:
16       Q.   So you don't even know if she could see the
17   photo when they showed it to you, correct?
18           MS. MORRISON:  Objection.  Speculation.
19           THE WITNESS:  I think -- well, from -- from the
20       view of the house, she -- she couldn't have seen the
21       photos as -- how it was held.
22   BY MR. STARR:
23       Q.   And you said that you testified that you think
24   that she was writing during this interview, correct?
25       A.   Right.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   Did you ever see what she was writing?

 2        A.   No, I didn't.  She --

 3        Q.   You have no --

 4        A.   -- was sitting across the room from me.

 5        Q.   You have no idea what she was writing,

 6   correct?

 7        A.   Correct.

 8        Q.   And she could've been drawing.  You don't know

 9   for -- that for a fact that she was, in fact, writing,

10   do you?

11             MS. MORRISON:  Objection.  Form.

12             THE WITNESS:  No, I don't.

13   BY MR. STARR:

14        Q.   She could have been writing poetry or writing

15   a love letter, correct?

16             MS. MORRISON:  Objection.  Form.

17             THE WITNESS:  I don't know what she was

18      writing.

19   BY MR. STARR:

20        Q.   You were asked about whether or not you knew

21   that Ms. -- by Ms. Bitoy, you were asked whether or not

22   you knew that Mr. Fletcher had received a Certificate of

23   Innocence.  Do you remember that question?

24        A.   Right.

25        Q.   Are you familiar with what a Certificate of
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 135 of 160 PageID #:6357
The Deposition of EMMITT MARTIN, Taken on November 15, 2023
133

```
 1    Innocence is, sir?
 2         A.   First time I heard it today.
 3         Q.   Okay.  Well, just so you know, it's when a
 4    judge enters an order finding that the individual who
 5    was previously convicted of a crime is innocent.  Does
 6    that make sense?
 7         A.   That makes sense.
 8              MS. BITOY:  Form.
 9    BY MR. STARR:
10         Q.   So when I tell you that Mr. Fletcher has
11    received it -- or actually, when Ms. Bitoy told you that
12    Mr. Fletcher received a Certificate of Innocence, did
13    that surprise you at all, sir?
14              MS. MORRISON:  Objection.  Form.
15              THE WITNESS:  I -- I -- I don't -- I can't say
16         it surprised me, but, you know, it -- it is what it
17         is.
18    BY MR. STARR:
19         Q.   Okay.
20         A.   At this point.
21         Q.   And you previously testified that the reason
22    you were here today testifying is because you wanted to
23    tell the truth, right?
24         A.   Right.  I have been telling the truth since
25    the day it happened.
```



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
1        Q.   Okay.  And you told us the truth today, right,
2   sir?
3        A.   Yes, I have.
4        Q.   Okay.  Thank you for your time.  I appreciate
5   it.  I have no further questions.
6        A.   Thank you.
7             MS. BITOY:  I don't have any further questions
8        based on that.
9                    RE-EXAMINATION
10  BY MS. MORRISON:
11       Q.   Just have one follow-up.  Mr. Wade, do you
12  have any reason to believe that the state's attorney was
13  not paying attention when the detectives were speaking
14  to you at your house back in 2002?
15       A.   I can't --
16            MR. STARR:  Objection.  Form, foundation,
17       mischaracterizes the prior testimony.  Asked and
18       answered.  Go ahead.
19            THE WITNESS:  I can't characterize that,
20       because I wasn't paying attention to her.  I -- I
21       was, you know, really focusing with the officers.
22       So I can't answer that.
23  BY MS. MORRISON:
24       Q.   Would she have been able to hear you clearly
25  from the position that she was in the living room?
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 137 of 160 PageID #:6359
The Deposition of EMMITT WADE, taken on November 19, 2024

135

```
 1              MR. STARR:  Speculation.
 2              THE WITNESS:  Sure.
 3              MS. MORRISON:  Okay.  No further questions.
 4                    FURTHER DIRECT EXAMINATION
 5   BY MR. STARR:
 6        Q.   I have one follow-up.  Sir, you don't know
 7   whether or not the state -- the woman who identified
 8   herself as the state's attorney recognized the fact that
 9   the police had identified for you who the suspect was,
10   correct?
11        A.   I -- I don't think she could've saw them from
12   the position she was sitting.  You know, the pictures
13   that they sent that was Fletcher.  I don't think that
14   they -- she could have saw that.
15        Q.   So you have no idea whether or not the state's
16   attorney was aware that the police were manipulating
17   you, or attempting to manipulate you, into identifying
18   the photo of Mr. Fletcher, correct?
19              MS. BITOY:  Objection to form.
20              MS. MORRISON:  Objection.  Mischaracterized his
21        testimony.  He already said they did not manipulate
22        him.
23              THE WITNESS:  I -- I agree.  I don't -- I don't
24        -- I didn't see no manipulation at that time.  Or I
25        didn't think of it that way.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 138 of 160 PageID #:6360
The Deposition of SAMUEL WADE, taken on November 15, 2023

136

```
 1   BY MR. STARR:
 2       Q.    So let me rephrase it.  I actually didn't ask
 3   you -- I changed the question as I was asking it.  I
 4   said, you don't have any idea whether or not the state's
 5   attorney was aware that the police were attempting to
 6   manipulate you into identifying the photo of Mr.
 7   Fletcher, correct?
 8           MS. MORRISON:  Objection.  Form.
 9           THE WITNESS:  Correct.
10           MS. MORRISON:  Mischaracterizes testimony.
11   BY MR. STARR:
12       Q.    You can answer.
13       A.    Correct.
14           MR. STARR:  Okay.  I have no further questions.
15               RECROSS-EXAMINATION
16   BY MS. BITOY:
17       Q.    I just have one follow-up.  Sorry.
18           MS. MORRISON:  Go ahead.
19   BY MS. BITOY:
20       Q.    I just have one follow-up question from that,
21   Mr. Wade.  And I'd like to go back to your declaration
22   for a moment for this.  Again, I'm on page -- what is
23   this?  3 of 6, Bates stamp CCSAO-CIU-154.  And in your
24   declaration, you state starting sort of where I have my
25   cursor here, "I was not confident" -- I'm sorry.  I'll
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1   go back up a little bit.  In your declaration, you
2   state, "They seemed confident that the man in the
3   picture was the man who committed the crime.  I was not
4   confident, and I told them that I would not say it was
5   him.  After that, the lady attorney backed the other
6   officers off and said that was enough."  So based on
7   your declaration, the state's attorney actually told the
8   officers to back off and that was enough.  So would that
9   lead you to believe that she would have knowledge that
10  they were showing you a picture that you could not
11  identify as Mr. Fletcher?
12        MR. STARR:  Objection.  Form, foundation. Asked
13     and answered.  Compound.  Calls for speculation,
14     mischaracterizes his prior testimony.
15        THE WITNESS:  Well, I can't recall a statement,
16     but if she said that, you know, I don't know.  I --
17     my whole -- like I said, my whole thing was paying
18     attention to the officers.  They was the one
19     directing the questions, so I couldn't tell you for
20     one thing.  What I am confident of, I wasn't going
21     to have somebody convicted that I wasn't sure who
22     pulled the trigger.  That's all.  That's it.  That's
23     all.
24  BY MS. BITOY:
25     Q.   Sure.  I understand.  I -- I'm just trying to
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   say that based on your declaration, the lady starts at -

2   - state's attorney was paying enough attention to tell

3   officers that they needed to back off and that was

4   enough, correct?

5          MR. STARR:  Form, foundation.  And he just

6      asked -- you just asked, and he just answered that.

7   BY MS. BITOY:

8      Q.   You may answer, sir.

9      A.   Okay.  Well, I think at the -- that was at the

10  -- at -- at the close of everything.  You know, that

11  night, she was telling them it was enough questions and

12  to bag it -- back off and we'll go from here.  So you

13  know, I don't -- I don't know whether she was talking

14  about the pictures, or something they said at the end. I

15  don't know.  I -- I can't recall what that was.

16         MS. BITOY:  Okay.  I don't have any further

17     questions.

18         MS. MORRISON:  Nothing further.

19                FURTHER DIRECT EXAMINATION

20  BY MR. STARR:

21     Q.   Just one question.  So when the state's

22  attorney said -- told the officers to back off, you're

23  not sure if that was right after you said you couldn't

24  identify, or if it was ten minutes after that, or if

25  they were standing too close to you?  You don't

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1   remember, right?

 2           MS. MORRISON:  Objection.  Form of the

 3       question.

 4           THE WITNESS:  No.  It's --

 5           MS. BITOY:  Mischaracterizes his --

 6           MS. MORRISON:  You can answer.

 7           THE WITNESS:  No, no.  I wouldn't say -- this

 8       was at the conclusion of that meeting.  They was

 9       about to leave, so I don't -- I don't recall why she

10       told them that.  Maybe they asked me something else.

11       I don't -- I don't recall it.  At this point, I just

12       don't recall it.

13           MR. STARR:  Okay.  I have no further questions.

14           THE REPORTER:  Okay.

15           MS. MORRISON:  Nothing further.

16           THE REPORTER:  All right.

17           MS. BITOY:  Nothing.  Sorry.  Thank you.

18           MR. STARR:  Okay.  So --

19           THE REPORTER:  Mr. Starr, before we go off

20       record, do you want your standing order for this, or

21       are you going to order?

22           MR. STARR:  I -- yeah, I think our standing

23       order's fine, but I just --

24           THE REPORTER:  Oh.

25           MR. STARR:  -- instruct the witness -- just to
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    let the witness know, though, Mr. Wade, in -- when

2    you give a deposition like this, you're given an

3    opportunity as a third-party witness to do one of

4    two things.  You can waive your signature and

5    believe that the court reporter did her job

6    correctly and took down everything we said and

7    didn't make any mistakes, or you can reserve

8    signature.  And what that means is that you've got

9    to come take a look at it, and read and review the

10   transcript.  I'm not your attorney, but I generally

11   recommend to my clients that they -- that they waive

12   signature, because I know the court reporters do

13   their job correctly.

14        THE WITNESS:  Well, after seeing some things

15   that I'd have saw, I want to reserve -- reserve it,

16   and I want to, you know, make sure what's in there

17   is what I said.

18        MR. STARR:  Fair enough.  Okay.

19        THE REPORTER:  Okay.

20        MR. STARR:  So we'll reserve.

21        THE REPORTER:  Sure.

22        THE WITNESS:  Okay.

23        THE REPORTER:  Thanks.  Is there an e-mail

24   address I can send the -- that to?

25        THE WITNESS:  Yes, it's Emmett,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 143 of 160 PageID #:6365
The Deposition of EMMETT WADE, taken on November 13 2021
141

```
 1   E-M-M-E-T-T-W-A-D-EJ-R@outlook.com.
 2        THE REPORTER:  Thank you.  And then -- okay. So
 3   Mr. Starr, I've got you for the standing order and a
 4   copy of the Zoom video?  Or --
 5        MR. STARR:  Yeah, let me just -- let me -- I'll
 6   get -- I'll let you know.  I'm not sure.
 7        THE REPORTER:  Okay.  And then Ms. Morrison, do
 8   you want to order the transcript, or the video?
 9        MS. MORRISON:  Not at this time.  Thank you.
10        THE REPORTER:  Okay.  And then Ms. Bitoy, do
11   you want to order the transcript or the video?
12        MS. BITOY:  Just the transcripts.  PDF is fine.
13   Thank you.
14        THE REPORTER:  All right.  And sorry,
15   Mr. Starr, just to clarify, do you want to hold off
16   on the transcript as well for now?
17        MR. STARR:  Yeah.  For now.  And why don't we
18   let the witness go?  Mr. Wade --
19        THE REPORTER:  Yeah.  Okay.
20        MR. STARR:  -- thank you very much for your
21   time on this Saturday.  We appreciate it.
22        THE WITNESS:  Okay.  Thank you.  You guys have
23   a good day.
24        MR. STARR:  This concludes the deposition.
25        MS. BITOY:  Thank you.  You, too.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 144 of 160 PageID #:6366
The Deposition of EMMETT WADE, taken on November 17, 2020
142

```
 1        THE REPORTER:  Thanks.  You, too.

 2        MR. STARR:  Take care, sir.

 3        THE REPORTER:  This concludes the deposition.

 4   The time is 1:00 p.m. [sic].

 5             (DEPOSITION CONCLUDED AT 12:58 P.M. C)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 145 of 160 PageID #:6367
The Deposition of EMMETT WADE, Taken on November 11, 2023
143

```
 1                CERTIFICATE OF DIGITAL REPORTER

 2                      STATE OF ILLINOIS

 3

 4   I do hereby certify that the witness in the foregoing

 5   transcript was taken on the date, and at the time and

 6   place set out on the Title page here of by me after

 7   first being duly sworn to testify the truth, the whole

 8   truth, and nothing but the truth; and that the said

 9   matter was recorded digitally by me and then reduced to

10   type written form under my direction, and constitutes a

11   true record of the transcript as taken, all to the best

12   of my skill and ability. I certify that I am not a

13   relative or employee of either counsel, and that I am in

14   no way interested financially, directly or indirectly,

15   in this action.

16

17

18

19

20

21

22   LUCY GOUGH,

23   DIGITAL REPORTER / NOTARY

24   MY COMMISSION EXPIRES ON: 01/31/2024

25   SUBMITTED ON: 11/21/2023
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Exhibits**

DefExhibit1_
Wade 4:23,24
77:5,7

DefExhibit2_
Wade 5:3,4
97:6,8

PlaExhibit2_
Wade 4:19,20
44:16

PlaExhibit1_
Wade 4:16,17
15:23

—————

0

0009 45:24

003 44:14

004 48:18

009 44:15 46:1

015154 64:12

015155 64:12

06 52:9

07 55:6

08 56:13

—————

1

1 15:19,23
42:24 77:5,7

1002 79:4

1003 80:10

1004 81:22

1009 77:6 83:3,
19

10:15 22:23

10:20 23:3

11 23:3 91:6
124:19

11-25-64 45:20

11:38 91:2

11:54 91:7

11th 7:6

12 10:3 80:14
85:4

12:38 124:15

12:43 124:20

12:58 142:5

14 81:25

15 79:21

154 108:16

156 113:7

16 47:6 102:13
106:11

17 80:11

1761 15:22

19 81:23

1990 9:18,23
10:5,9 12:4
14:20 16:14
18:6 29:17 30:5
32:17 33:2
35:13,25 36:9
60:11 79:15
80:14 82:6
89:16 96:17
97:17 129:14,
20

1:00 124:2
142:4

—————

2

2 44:13,16 52:5,
8 97:6,8 108:19

20 26:22 79:21

20-CV-04768
7:13

20-minute
37:18

2002 10:5,8
11:11,18 14:9,
23 16:8 19:8,24
20:13 21:1
36:13,17,25
40:4 42:10 44:7

49:24 52:25
54:6,23 57:7
59:11 73:12
74:23 80:15,18
82:3 86:10
89:16 90:1,13
91:11,14 92:24
96:21 97:11
107:14 108:21
119:7 127:20
129:14,21
134:14

2004 29:7,9,13

2005 19:4 21:4,
18 23:7 56:9
57:6 68:23
69:11 74:24
75:20 82:24
129:2,12

2010 29:8

2011 113:10,25
119:22

2012 47:6,19
54:11 102:13
106:11 117:19
118:1,24

2016 27:12

2020 26:11,13,
14 27:6,8

2023 7:7 23:3
54:11 91:6
124:19

20CV4768
15:21

21 9:18,23
32:17 33:2
77:11 79:15
80:14 82:6
89:16 97:17

21st 79:11

23 75:20

—————

3

3 52:10 108:13,
17 125:4
136:23

3-17-2012

46:15

38 33:18

—————

4

4 52:4 111:12

481 97:7

487 97:16

489 97:7

—————

5

5 52:4 113:6

5600 9:18

5x7 94:10

5x7's 20:4

5x7s 20:9 81:2

—————

6

6 52:5,8,10
78:21 79:6
108:13,17,19
111:12 113:7
117:3 125:4
136:23

—————

7

7 97:15

730 7:5

75 123:4,11

—————

9

9 97:16

988 77:5

999 77:10

9:59 7:7

—————

A

a.m. 7:7 22:23
23:3 91:2,7

ability 31:20
32:2,9

account 93:17,
19

accurate 31:20
32:2,10 51:17,
18 52:20 53:1
54:5,8,17 55:19
56:1,8 57:4,20,
21 63:5 75:14
78:3,7 80:3
81:8 82:10,19
85:6,7,10 87:7,
24 90:6 91:17,
18,22 94:1
107:3 110:3
115:23 116:2,
14,19 118:8
119:3,5 123:5,
6,11 130:5

accurately
57:4

acted 25:4
59:11,17
113:23

address
129:16 140:24

adult 26:21

advance 30:25

affect 31:20,23
32:2,6,9

affidavit 53:2
68:8,9,15

affidavits
119:14,19

affirm 8:18

affirmed
115:5,22

age 26:21

agree 8:10,14
103:15 117:19
118:1 128:5
135:23

agreed 103:17
109:1 125:6
126:14,19

agreeing



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

103:14

agrees 8:12,13

ahead 18:3 21:10 70:2 72:19 98:3 103:9 110:25 112:4 125:21 134:18 136:18

aiming 33:21

AKA 47:7

alcohol 35:7

America 28:13,15

Anand 67:18

angry 35:24

answering 128:16

answers 75:24 78:11

anybody's 111:17

apologize 30:24 35:5

appearance 7:14

appearing 7:24 8:2

approach 34:9

approximate 73:6

approximately 10:3

area 26:10,17, 25 90:9

armed 84:5

Arnold 47:7

array 82:9,18 113:16,18 114:8 115:14, 15

arrested 30:25 31:2 123:16

arrests 31:4

arrived 77:14

articles 69:7

asks 83:4

assistant 71:4 74:8,10 75:25 76:3 87:6 95:22

assuming 61:22

attempt 115:16

attempted 113:19

attempting 119:18 129:18 135:17 136:5

attending 7:14,15

attention 39:10 95:6 128:4 130:12 131:6,8,14 134:13,20 137:18 138:2

attorney 21:6 24:4 36:8,21 37:13 38:13,21 39:2,7,14,18 40:22,25 51:8, 15 61:7,18 65:25 66:1 67:15 69:18 70:8 71:12 72:4 73:23 74:1,8, 10,16 75:25 76:4,14 78:12, 20,24 79:25 81:4 83:21 86:17 87:7,14 88:1,20 89:14 95:22 96:3 109:1 111:16 113:4,20,22 125:6,14 126:14,19 127:20,21 128:3 130:8,9 134:12 135:8, 16 136:5 137:5, 7 138:2,22 140:10

attorney's 78:1 82:8

attorneys 12:1 16:21 17:12 70:19 71:5,10 121:3 127:8

availability 9:3

Avenue 50:10

aware 69:17,24 135:16 136:5

---

## B

B-O-N-N-I-E 30:23

baby 32:21

back 11:7 22:6, 25 24:24 32:24 34:6,9,11 36:21,23 37:9, 12 40:3 41:23, 25 47:2 51:8, 13,14 59:2 76:10 86:16 87:6,15 90:11 91:4 110:5 117:2 124:17 126:7 127:20 129:2,21 134:14 136:21 137:1,8 138:3, 12,22

backed 137:5

bad 12:23 13:16 37:20 41:13 44:4 52:17 56:25 89:9 108:22 109:1,20 125:7, 15,24 126:3,11, 15,20 127:6

badgered 70:4

badgering 70:6,8,10 116:11

bag 138:12

bagged 34:9, 10

bald 50:25 51:20 93:25 126:9

balding 40:14, 18

bars 37:21

based 44:8 76:13 128:2 134:8 137:6 138:1

basically 17:1

basis 15:9 123:10

Bates 15:20 44:14 45:24 77:5,9 79:3 80:10 83:18 97:7 125:4 136:23

bear 44:18

behalf 47:6 70:23 103:1,4 119:14 121:15 122:17,22

belabor 47:22

Belated 68:13

believed 74:2 98:9 103:24,25 130:5

bells 84:16 86:7

Bellwood 50:7,10

big 45:11 94:8, 11

bigger 33:18, 19 45:7,9,13 94:12 113:13

biggest 24:25

birthdate 45:18,19

bit 18:6 40:14, 15 45:13 53:22 69:10 84:4 94:12 97:1,2 105:6,12 110:7,

13 113:13 126:7 137:1

Bitoy 7:20,22, 23 8:13 10:13 11:13,15,20 13:19 15:1,14 19:13,18,20 20:7 43:3 44:9 59:12 60:18,20 64:23 65:3 66:21 67:9 68:17 69:22 71:7,19 72:13, 22 73:15,21 74:7,13 75:8 76:21 77:2,4,8 78:6,15,17,18 79:3,6,7 80:6 81:7,13,20 82:15 83:9,13, 15,17 84:14,23 85:3,17 86:13 88:5 89:5,20 90:19,23 91:8 92:17 93:3,9,21 94:4,13,21 95:18 96:1,8,12 97:5,9 99:12 102:24 103:13, 20 105:3 106:7, 8,14 107:1,6, 12,19 109:10, 11 110:1 111:4 112:11 114:24 115:4,9,20 116:2,7,13,16 117:1,15 118:9 121:24 122:1,9, 20 123:1 124:13,21 125:10 126:2, 25 127:15 130:1,15 131:10,12 132:21 133:8, 11 134:7 135:19 136:16, 19 137:24 138:7,16 139:5, 17 141:10,12, 25

black 21:12,19, 25 23:11 26:4 41:1 48:8 56:17,19,20,24



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of EMMETT WADE, Taken on November 14, 2023
Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 148 of 160 PageID #:6370
146

57:5 91:24 92:10,13 93:15 94:14 108:1

blacks 91:20

Blagg 47:6,10, 15,19 66:6,9 67:14 100:2,3, 13,17 101:20 102:7,12 104:7, 22 105:23 106:10 107:7, 13 108:3,7 109:16 116:21 117:12,16 119:17 122:15, 21 123:8

block 9:19 92:3

blow 105:6,12

blue 36:1 38:5 53:24

boat 25:10,11

Bogucki 7:10 15:21 86:3

Bonnie 30:11, 16,20,23 33:8

booklet 108:1

Born 27:6

bottom 45:24 46:3 48:18 51:25 52:10 64:7 76:22 77:10 97:15 108:19

braced 11:7

breach 31:7

bread 10:22 13:6 76:6,9,15 89:18 97:19,24 98:9,17

break 78:14 90:18,20,24 91:9 124:1,7

breakfast 66:3 104:9

breaking 95:13

Brenda 117:6

briefly 14:6 23:15 45:22 49:14 55:8 73:8 111:14

bring 104:22 107:16,20

brother 26:20 119:24 120:1,6, 10,11

brother's 104:16 119:25

brung 16:6 23:14 25:15,16 116:5

buffering 75:18

bullet 11:9 24:21,23 34:16 49:11

button 22:6

———————
C
———————

cable 29:5

caliber 33:18, 19

call 35:23 62:4 90:16 112:25

called 21:4 28:20 51:12 120:8,10,11

Calls 74:4 137:13

camera 8:5

caption 44:23

car 12:10 89:18 91:15 92:16,22 97:18

card 49:15 87:1

care 142:2

careful 21:14

Carol 28:13

carrying 97:24

108:2

cars 89:23 90:8,11

case 7:12 13:3 17:12 18:16,20, 21,24 19:1 36:20 43:11 44:24 49:24 50:12 53:7 57:2 58:17,20,23 60:1,4,21 69:8 80:14 85:6 95:10 101:9,16 104:5 108:25 110:5 112:6 121:7 126:13 129:20

cases 18:23

Castle 27:23 28:3

causing 9:15

CCSAO 15:20

CCSAO-CIU 108:16 113:7

CCSAO-CIU-154 125:5 136:23

CCSAO-CIU-157 117:4

Central 7:8 23:4 79:11,15 82:5

certificate 67:11 132:22, 25 133:12

chair 37:14 39:4 88:21

chance 17:19

changed 60:13 136:3

characteristics 43:22

characterize 134:19

chase 34:4

chatting 56:5,

17,23 111:15

Chicago 7:21, 25 8:2 9:13,14, 19 10:4 14:22 21:14 27:2,5,7, 11 28:8,10,11 29:10 36:1 60:2 63:11 65:21 66:11,17 123:19,21 127:14 129:1, 12

Chicken 90:10

chiropractor's 97:21

chubby 51:1

City 8:1 9:13 27:2,4,11 64:11 65:21 66:11,17 127:14 128:25 129:12

Civil 9:8

clarification 109:9

clarify 141:15

Clarke 76:3

clean 122:4

clear 73:10 79:24 128:2

client 15:5,10 58:1

clients 140:11

clinic 30:13

close 35:20 37:2 57:1 87:12 138:10,25

closer 85:12

clothes 36:2,3 38:4,6

coat 51:1

college 26:23

color 40:24 41:2 94:14,16

comfort 32:19

comforting 34:8

committed 53:13 56:9 109:3 137:3

company 28:6 29:5,13,21,24

completed 97:11

Compound 137:13

concern 118:20,21

concerns 73:23 96:2

CONCLUDED 142:5

concludes 141:24 142:3

conclusion 139:8

conditions 31:19,23

conducted 23:1

conference 7:8 23:2

confident 53:12,15 109:2, 4,9 136:25 137:2,4,20

Conflicts 15:20

confront 48:23 49:6,8 92:8

confused 72:1

connected 53:7

consistent 50:2

consistently 84:24 93:5 99:16

contact 101:19 119:22,23



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 149 of 160 PageID #:6371
The Deposition of EMMETT WADE, taken on November 11, 2023

147

120:4 129:13, 18

contacted 119:24

continued 98:12

contracted 29:4

convened 7:8

conversation 34:17,20 39:19 61:23 62:2,11, 17 63:3,13,19 64:17 65:8,11, 13,15,17 67:3 73:7,22 74:23, 24 86:18 89:12 101:7,23 102:1 120:12,14,17 125:14 127:3, 22

conversations 64:16,18 66:8,9 91:10 101:4 102:5 128:4

convicted 15:6 31:6 41:15 66:23 67:5 103:24 104:1 108:25 113:11 126:13 133:5 137:21

conviction 9:15

Cooper 14:4 23:13 24:10,11, 16 25:1,6,12, 19,23 26:1 33:16 34:1,9 48:23 49:6 55:12,23 56:2,8 76:15 91:19,25 92:4,8,11 99:9 111:15,18 119:7,10,13 123:3,4,10

copy 141:4

corner 46:2 64:8 79:21

correct 9:10, 11,23 12:17,20 14:14 16:8,9 17:6,7,9,17,18 19:4,8,9,25 20:1,4,20,21 21:2 24:8,11, 12,22 28:20 30:5 32:6,17 36:9 37:9 38:13,21 40:4 42:21,25 43:1 45:19 46:15,16 47:19 48:5,6,18 50:8,17,18,23, 24 51:4,5,10, 23,24 53:5,8,9, 13,14,19,20 55:3,4 57:2,3, 23,24 58:6,7 61:1,2 63:6 64:25 69:15,16 73:20 75:11,12 76:16,17,19 78:4,9 79:11, 12,15,16 80:5 81:17 82:14,23, 25 83:7,24,25 84:8,20,21 85:1 87:8 91:17 93:2,6,8 98:4 99:18,19 102:14,15 106:20 115:1,6, 8 116:9 117:16 123:6 129:21 130:2,5,6,10, 11,14 131:1,17, 24 132:6,7,15 135:10,18 136:7,9,13 138:4

Corrections 94:25

correctly 39:8 140:6,13

cost 25:4 34:15

couch 37:14 88:19

cough 32:19

could've 34:15 72:10 94:16 104:15 132:8

135:11

counsel 7:16 8:22 17:17

couple 13:6 17:8 20:3 27:14 30:2 35:18 49:8 51:12 55:22 60:21,25 61:15 62:16 65:6 77:16 81:2 86:2,25 90:10, 11 101:1,3 112:17 129:9

court 7:4,11 14:3,6 16:18,22 18:19 21:18 25:18 41:21 55:7,22 57:17 62:8 70:4,8 111:2,6,9,13,19 112:16,18,20 122:22 140:5, 12

courthouse 21:22 71:11,13 72:4,11,15 74:21 119:7 123:3

courtroom 23:8 55:12,13 79:13 80:2 111:3,19

cracked 34:14

crammed 33:11

crawling 92:6

credentials 38:23

crime 31:6 53:13 56:10 78:2 83:5,21 109:4 133:5 137:3

criminal 19:10, 16,22 31:9 68:22 69:11,15 75:11 76:24 84:25 93:5 99:17 129:2

CROSS- EXAMINATIO N 60:17

Crossing 34:21

crying 55:15 111:21 112:14

current 7:7 23:3 91:6 124:19

cursor 47:25 110:9,11 113:9 115:11 136:25

custody 13:10 44:4 50:12 52:16 54:2 55:16 86:16 89:8 108:22 110:16 111:23 126:10

cut 81:14 105:8

———————

D

Dallas 26:9,25

Danielle 67:24

dark 85:20 87:16

date 112:25

dates 46:15 102:14

daughter 27:16 124:3

daughter's 26:21

daughters 26:19

day 7:6 21:23 24:18 30:7,14 35:7,14,16 36:11,22 55:24 56:2 84:7 111:14 133:25 141:23

days 35:18 51:9,12 62:16 65:6 84:8

death 15:6,11 27:15 88:25

deceased 33:5

December 9:18,23 30:5 32:17 33:2 79:11,15 80:14 82:6 89:16 97:17

declarant 46:7

declaration 18:11,12 45:3, 4,17 68:15,18 99:21 100:1 102:17,19,21 103:1,4,22 104:4,22 105:1, 19,21 106:10 107:3,8 108:10, 14 109:13 114:1,3,5,16 115:1,6,11,21 116:9 117:20 118:25 119:6 121:15,18,20, 22 122:3,13 123:2 124:24 126:6,8,18 129:25 136:21, 24 137:1,7 138:1

declarations 119:14,19

DEF 97:7,16

defendant 7:24 8:13 60:20 66:14

defense 69:17, 19 70:19 77:4,7 78:12,20,24 81:4 82:8 83:20 97:6,8 113:20

Denise 87:20

department 64:6 94:24

deposition 7:9 9:7 16:17,19,25 17:14,21 18:8 23:1 32:11 60:25 61:21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 150 of 160 PageID #:6372
The Deposition of EMMETT WADE, taken on November 15, 2023

148

64:19 65:5
67:16 68:2,9,
20,23 69:5 91:5
124:18 140:2
141:24 142:3,5

depositions
11:25 18:18
118:22

describe 51:6
81:1

descriptions
86:1

Deshong
30:11,16,23
33:8

desk 72:21,23

detail 46:21

details 68:4
104:2

detective 38:6,
7 84:10,15

detectives
10:4,8,17
11:10,17 12:2,
21,25 14:12
20:25 38:8 39:1
57:6 73:17 74:3
80:12,16,18
85:5 87:14
127:19,23
128:14,20
130:9,13,21
134:13

died 24:24

difference
68:16

DIRECT 8:24
135:4 138:19

directing
137:19

direction 42:1
98:18

discuss 25:6

discussed
63:18 65:16
74:5 101:25

discussing
23:6 74:23
91:10 108:20

dishonesty
31:7

dispute 90:3

dissatisfactio
n 24:20

distinct 32:23

district 7:11,12
21:6 36:8,21

Dixon 15:20
47:7

DOC 43:18

doctor 30:14

doctor's 33:6

document
18:5 44:20,23
45:3,6 46:20,
22,23 47:10
106:16,23
117:9,12 130:2,
4

documents
17:20,22 18:7
63:23 64:1,3,14
102:8 107:20
128:2

door 55:14
59:3 86:20,21
92:7 111:21

doors 55:14
90:10 111:20

doubt 38:14
99:8

downtown
101:14

drafted 107:9

drafting
103:22

drawing 132:8

drive 27:25

driver 10:22
11:6 12:14 13:6
14:4 23:14

41:24 42:1,5
76:6,15 92:1
97:25 98:9,13,
18

driver's 33:3

drove 28:18

drugs 35:6

duplicate 52:3
106:5

———————

E

E-M-M-E-T-T
9:5

E-m-m-e-t-t-w-
a-d-ej-r@
outlook.com.
141:1

e-mail 140:23

e-mails 102:10

earlier 106:6
127:18

easier 45:8

Edward 24:11

elapsed 87:9

else's 46:13

Emmett 7:9
8:6,10 9:5 23:1
91:5 97:16
124:18 140:25

emphasis
20:18

employed
27:19,21 28:4,
14 30:4

employment
29:3,10,17

end 45:23
138:14

enforcement
31:14,17

entered 83:11

enters 133:4

entire 27:7

Eric 120:2,4

essentially
124:23

established
93:4

et al 7:10

evening 85:20
87:16

event 54:11

evidentiary
57:17 122:16

EW 105:17

exact 73:3

EXAMINATIO
N 8:24 127:11
129:7 135:4
138:19

exchange
57:23 58:2,12,
16

exchanged
24:15

excluding
67:14

exhibit 15:19,
23 42:24 44:13,
16 45:12 76:25
77:5,7 78:14
81:25 97:6,8
105:5

experiences
123:22

explained
115:25

express 73:23
96:2

expressing
24:20

extent 68:14

eye 42:7

F

———————

face 59:7,8

faces 84:19
92:24 98:16
99:14

fact 8:10 24:21
44:3 80:13
116:4 123:13
132:9 135:8

fair 38:15
105:18 140:18

fall 13:8 33:24
37:2 42:2 48:1
85:12 92:19,21
98:11

false 31:8

familiar 88:7
90:8 132:25

family 26:17

farther 53:10

father 58:9
113:10 114:5
121:10

fearful 25:3

February
75:20

Federal 9:8

feel 74:18

fell 41:25

felt 27:15
74:15,17 119:1
121:2 123:11

Felton 33:5

female 24:3
40:8 51:14

fiance 26:15,18
90:16

FIC 28:12,15

figure 113:22

fill 103:1,4

filled 117:19

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

filling 102:17, 20 104:3 105:2

final 117:3

finally 70:13

find 74:25

finding 133:4

fine 120:15 124:11 139:23 141:12

fire 13:7 33:23 92:2,3

fired 76:7 91:20 92:1 97:25 98:10

firing 76:9

five-minute 90:24 124:1,7

Fleming 84:15

Fletcher 7:10, 19 9:9,14 12:22,23 13:1, 10,15,25 14:10, 13,19,25 15:6, 10,20 16:11 20:15,19 24:5,8 26:2 37:20 42:12,21 43:7, 17 44:3,14,24 45:24 46:1 47:7,15 48:18 52:9 54:21 55:2,6 56:13 57:16,25 58:1, 4,9,11 65:21 66:10,13,16,22, 25 67:4,10 70:23 74:11 77:5,10 78:2 79:3 80:1,10 81:22 82:9 83:3,19 95:9, 17,21 96:4 103:1,5 104:12, 14,16,17,19 107:14 109:20 110:20,22 112:9 113:19 117:22 118:3,4 119:3,15,21,22 120:3,7,9,13,

17,23 121:8,14, 16 122:17,23 123:5 125:15, 23,25 126:20 128:21 132:22 133:10,12 135:13,18 136:7 137:11

Fletcher's 43:21,25 58:8 63:22 68:4 69:8,15,17 70:7,19 78:11, 19,23 79:25 81:3 82:7 83:20 84:25 93:5 101:16 104:4 113:9 114:5 121:7

focus 39:12, 13,15 42:12 78:10 125:5

focused 42:19

focusing 134:21

folder 107:23, 24

follow-up 127:9,15 134:11 135:6 136:17,20

follow-ups 129:9

Forest 47:5 102:13

forklift 27:25 28:18

form 10:10,19 11:13,20,22 13:18 14:15 15:1,14 19:13, 20 41:9 43:3,8, 12 44:7,9,10 59:12 66:18 68:11,12,13 72:8,16 78:5 80:4 81:11,18 82:11 94:24 96:5 99:2 102:22 103:6

104:23,24 105:1 114:18 118:5 125:18 126:22 127:24 128:6 131:2,11 132:11,16 133:8,14 134:16 135:19 136:8 137:12 138:5 139:2

format 94:5

forward 117:21 118:2,11

found 14:3 59:2 104:15 113:10

foundation 11:15 15:14 59:20 66:18 68:14 69:20 72:8,16 82:11 96:5 103:6 104:24 114:18 118:5 122:18 125:18 126:22 128:6 131:12 134:16 137:12 138:5

fraud 31:7

Frederick 50:8

Friend 111:5

front 89:24

full 8:4 55:6 106:23

full-time 28:1, 11,12 29:3,9

fun 124:10

_____

G

gang 31:11

Garcia 67:20

gathered 110:5

gave 18:16 21:5,17 49:14 68:23 69:11 75:20,24 78:11

82:24 86:1,25 93:17,18

gears 84:3

general 31:13 64:4,13 68:25

generally 140:10

girl 23:14

give 8:19 15:25 58:12 68:3 101:15 103:11 140:2

giving 23:8 57:15,23

glasses 45:10 124:25

God 32:4 33:20,24 34:4

good 7:17,20, 22 9:1 51:13 60:19 61:12 101:12 125:1 141:23

Gough 7:3 23:2 91:6 124:19

grab 34:1

Grand 34:20 49:15

grave 32:13

Grill 47:5 102:12 104:8 105:23 106:10 107:17,21 109:16

ground 92:19 98:12

group 79:20 81:25

guess 23:23 25:15 32:12 63:1 64:5 102:2 105:4 111:24 126:5

guilty 67:2

gun 11:6 33:16, 17,18 76:7 91:20

guns 77:18 91:25

guy 12:23 13:4, 16 23:13 24:1 37:19,20 41:13, 21 43:9,13 44:4 49:9 51:20 52:16,17 59:3, 4,24 89:9 95:21 108:21,22 109:1,20 125:7, 15 126:9,10,11, 15,21

guy's 62:21

guys 24:24 33:14 34:4 56:25 59:5 125:24 126:4 127:6 141:22

_____

H

H-Y-D-A-C 28:21

hair 40:24 41:2

Half 96:14

Hamilton 67:24

hand 8:16

handgun 97:25

handguns 97:24 98:5 99:6,7

handled 58:24, 25

handler 28:18

hands 77:19

handwriting 105:5,7,14,15, 17

handwritten 18:10,12 48:22 68:18 121:21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 152 of 160 PageID #:6374
The Deposition of EMMITT WADE, Taken on November 15, 2023
150

happen 22:5 54:23

happened 29:19 34:3 60:3 93:18,19 103:12 133:25

happy 124:9

harassing 116:12 126:24

hard 127:2

haste 25:4

head 34:16 51:20 126:9

heading 62:8

heads 48:9

hear 10:15 15:16 22:4,5, 10,11,12,17,19 27:18 49:24 61:23,24,25 81:14 83:15 134:24

heard 24:3 25:18 86:4 88:6 111:5,6 112:12 127:22 133:2

hearing 57:17 79:17 121:17 122:16

heavy 40:16,19

height 95:3

held 131:21

helpful 104:4

hero 34:5

hey 22:4 33:7

higher 53:22

highlight 47:25 49:14 53:11 55:9 110:9

Hill 78:19,21,23 83:4

hired 21:14

history 29:17

hit 11:8,9 22:5 24:21,23 33:20, 22 34:16 41:24 92:4,5

hold 8:5 22:7,9, 14 59:4 78:22 141:15

Holsum 10:21 11:5 12:13 13:5 14:4 23:13 33:15 41:23 42:1,5 92:1

home 10:5 11:12,17 14:9, 23 19:24 20:13, 25 36:17,25 37:8 42:10 44:7 54:6 57:6 59:11 73:12 80:20,21 85:14,19,21 86:10,23 87:17 88:10,22 89:16 90:1,13 91:11, 14 92:24 93:14 96:9 108:21 130:10

homicide 18:21

Honor 78:21

hooded 59:6

hoodies 12:12 48:9 77:17 79:10,14

hoods 48:9

hour 96:14 108:8

house 11:10 16:6 37:12 38:1 40:6 50:6 71:10 74:16,19,20 85:23 104:16 113:23 119:25 131:20 134:14

HYDAC 28:14, 20,21 29:2,8

─────────
I

ID 8:5 54:15

110:19

idea 132:5 135:15 136:4

IDENTIFICATI ON 15:23 44:16 77:7 97:8

identified 13:24 14:10,19, 25 38:7 41:21 43:16 95:9 106:6 112:8 130:8,25 131:9 135:7,9

identify 10:1, 18,21,25 11:3 12:3,7,15,18 13:4 14:13,18, 24 16:14 17:25 19:12 24:7,9 25:9,17 26:2 37:21 40:3 41:22 43:6,14 54:3 59:5,8 62:22 76:5,15 77:23 80:1 82:5,9 83:7,23 96:4 98:25 110:17,22 118:4 119:2 128:21 137:11 138:24

identifying 15:21 135:17 136:6

identity 110:22 111:1

Illinois 7:12 9:19

implicate 78:1

inaccurate 114:17,21

inappropriatel y 59:11,17

incarcerated 23:18

incident 9:17, 22 29:18 32:16, 24 33:1 35:7, 14,20,22 129:1

IND 97:7,16

independent 33:1

indicating 83:6,22

individual 7:23 9:13 60:20 66:14 95:2 133:4

individuals 77:17,24 79:10, 13,17,18,23 92:14

information 63:21 75:4 89:25 90:4,6 101:15 109:15 113:2 115:6 123:7

Infrastructure 27:22,24 28:3

initial 34:1 106:19

initially 79:19

initials 105:16 106:15

innocence 67:11 132:23 133:1,12

innocent 67:1, 2 121:2,6 133:5

inside 51:19 126:8

instances 123:23

instruct 139:25

interaction 44:6 100:13

interactions 25:13 44:8 84:4

interrupt 18:3

interview 34:24 36:22 87:2 88:12,15, 23 93:10 96:21 97:12,13 101:8,

9 131:24

interviewed 84:7

interviewing 39:1,6,13

introduced 104:17

investigating 108:4

investigator 62:23,25 63:4, 8,15 65:12 68:2,3 70:23

involved 9:18 10:1 14:20 15:10 16:14 78:2 108:4 125:14 127:4 128:4,9

involves 31:7

─────────
J

J-R 9:5

jail 53:3 108:23 126:12

James 7:10,19 9:9 12:22 15:5, 10 42:21 44:24 47:6 58:1,9,11 95:17

Jennifer 7:23 47:6 60:19 66:6,9 67:14 78:13 88:6 100:1,3

Jerome 7:10 86:3

JF015152 64:11

JF015153 64:11

JF015156 64:11

job 28:1,11,12 140:5,13



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

join 10:13 13:19

joining 9:1

Jr 8:6 9:5

judge 16:21 70:13 133:4

jumped 33:25

Junior 7:10

**K**

Katherine 8:1 127:13

Kentuckiana 7:4

Kentucky 7:6

kicking 32:22

killed 9:22

kind 21:7,15 31:8,9 32:13,14 33:8,14 38:23, 24 40:14,18,23 47:25 50:25 56:16 59:6 68:19 70:4 94:11

kitchen 88:17

Kleinhaus 67:22

knew 11:8 55:16 65:24 67:12 70:17 100:25 102:18 105:1 111:1,22 113:3 121:18 127:21 132:20, 22

knock 86:21

knowledge 137:9

**L**

lady 14:3 70:25 109:1 121:4 125:6 126:14

127:5 137:5 138:1

law 31:14,17

lawsuit 63:22 68:4

lawyers 9:12

lay 49:9

laying 32:19

lead 28:25 137:9

Leading 10:12, 19 11:22 13:18 14:15

learned 119:13

leave 27:10 139:9

left 36:22

left-hand 46:7

letter 132:15

letters 102:7

life 25:5 27:8 34:15 53:8 88:25 108:25 126:14

lineup 59:23

lips 43:25

liquor 92:20 98:11

listed 45:17 69:18

listening 39:19

live 26:8,12,15, 24 27:4

lived 26:10 27:2,7 28:10

lives 26:17

living 26:24 37:5 88:13 134:25

locate 55:23 112:17 113:1

located 7:5 63:1,4 101:14

location 7:15

lockup 55:13 111:20

Loevy 7:18 67:15

Loevy's 67:15

long 26:10 28:15 29:6 30:1 47:22 62:11 63:13,17 65:13, 15 73:6 86:23 96:9 100:11 108:7

longer 86:25

looked 17:22 18:6 20:15 32:20 33:14,15, 19 40:11,21 43:18 55:15 82:21 111:21

lose 83:8

lot 21:14

Louie's 47:5,8 66:4 70:25 100:14 102:3, 12 104:7,20,23 105:23 106:10 107:17,21 109:16 120:20

Louisville 7:6

love 58:22 132:15

Lucy 7:3 23:2 91:5 124:18

lunch 104:7

**M**

M/bs 97:22 98:12

made 14:2 45:13 82:20

Madison 9:19 79:11,14 82:5 89:17 97:18 98:13

Main 7:5

make 12:1 45:7,8,9,11 50:20 113:12 133:6 140:7,16

makes 68:16 133:7

making 31:7 58:12

male 40:7,9 91:20

males 40:9 91:25 92:10,14

man 9:9,21 11:19 12:22 14:18,24 16:10, 13 24:24 48:1 50:12 53:12 54:1,3,14,20 62:25 71:20 109:3 110:15, 17,18,20 137:2, 3

manipulate 135:17,21 136:6

manipulated 74:2 96:4 118:12,13,15

manipulating 135:16

manipulation 135:24

March 47:6 69:11 80:17,18 82:3 85:10 102:13 106:11

margins 56:16

Maria 67:20

mark 15:19 44:13 76:24 77:4 97:6

marked 15:23 42:24 44:16 77:7 81:25 97:8

material 28:18 59:6

matter 7:9,19

meaning 95:21

means 140:8

medications 32:1,4,6

meet 21:5 26:5 36:7 69:25 70:18,22 71:4 73:17 102:2,16 120:15,21

meeting 37:18 47:10,19 63:20 65:18 71:9 72:3 86:17 87:10 96:10 100:25 101:2,12,21,22 102:8 104:14, 15,19 105:22 108:7 120:19, 22 127:19 139:8

member 31:11

memory 29:16 31:24 32:6,24

men 35:9,11 48:8,12 54:20 77:13,15 110:19

mention 43:24

mentioned 18:19 23:11 26:5 63:25 76:23

met 17:5 21:6 23:20 35:25 36:5 58:3,4,8 66:3 71:11,13 73:8 100:16 102:12 104:13 109:16 111:8, 10 120:17

Metcalf 29:25 30:1,4 33:5

Michael 84:15

middle 47:24 92:2

might've 20:3



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

mind 17:24 99:8

mine 105:16

minute 51:6 72:1 73:9,22

minutes 62:12 63:16 65:14 86:25 124:10 138:24

Mischaracteriz ed 135:20

mischaracteri zes 64:20 67:6 71:16 72:8,18 82:11 109:24 114:19 118:6 121:25 122:6 125:20 126:23 128:7 130:18 134:17 136:10 137:14 139:5

misspoke 127:5

misspoken 116:20

mistakes 140:7

Mister 78:25

moment 15:25 25:22 44:18 78:22 136:22

month 36:24 37:1 61:20 62:1 80:15

morning 7:17, 20,22 9:1,2 60:19

Morrison 8:1, 14 10:10,12,19 11:22 13:18 14:15 15:12 20:5 39:21 41:9,11 44:10 59:20 127:12, 13 128:1,12,24 129:11 130:16, 18 131:2,11,18 132:11,16 133:14 134:10,

23 135:3,20 136:8,10,18 138:18 139:2,6, 15 141:7,9

mother 30:7

motivate 58:19

motivated 58:21

move 98:16 111:11

moved 26:20 27:8 129:16

moving 27:13 110:9 113:9

multiple 81:5, 10 116:22,25 129:25

murder 108:5

mustache 40:13

mute 22:6

——————

N

name's 127:13

named 9:21 12:22 16:11 67:18,20,22

names 38:10 40:1 86:2,3 125:25

needed 62:8 101:22 138:3

negative 123:22

nerves 32:21

news 69:7

newspaper 30:19 97:22

nice 30:17

night 86:24 138:11

Northern 7:12

notary 117:5,8

note 106:4

noted 97:13

notepad 93:15

notes 39:9 89:11,13,14 102:18

notice 106:15

noticed 97:22

November 7:7 23:3 91:6 113:10 124:19

number 7:12 15:19,21 42:9 44:13,24

numbers 64:8, 9

——————

O

Oak 27:23 28:3

oath 75:10 82:24

object 11:13, 20 15:1 19:13 106:4 113:21

objected 113:22

objection 10:10,13,19 11:22 13:18,19 14:15 15:12,14 19:18 20:5 39:21 41:9 43:3 44:9,10 59:12, 20 64:20 65:2 66:18 67:6 68:13 69:20 71:6,14 73:13, 19 74:4,12 78:5 80:4 84:22 89:19 92:12 94:9 95:24 99:2 102:22 103:6 106:25 109:24 114:18 121:23 122:24 127:24 128:6 130:15,

16 131:2,10,18 132:11,16 133:14 134:16 135:19,20 136:8 137:12 139:2

objections 11:25 12:1 116:15

observe 89:11

observed 92:10 94:23

obtain 119:18

obtained 67:11

occasion 120:23

occasions 70:12,14

occur 86:18

odd 59:2

offender 123:5

offenders 10:1 12:4 42:4,10 77:18 92:25 98:17,20 99:6, 14

office 23:23 33:6 67:15 97:21

officer 20:16 21:12,19,25 23:11 26:4 36:4 50:25 56:17,19, 20,24 57:5 74:9 89:2,11 93:25

officers 7:24 9:14 17:24 36:3,5,8 37:15 39:5 40:1 41:3 44:7 50:6,11 51:12 56:25 60:21 61:5 66:14,17 74:10 80:22,23 81:9 85:14,23 86:9 87:5 88:9,20 89:15 90:1,12 91:10,13 92:10,

18,23 93:11 96:3,9,21 97:11 99:13 108:4,20 109:19 110:21 111:25 117:21 118:3 125:15 126:19 134:21 137:6,8,18 138:3,22

Oldcastle 27:22

online 7:3

opened 55:14 111:20,21

operation 21:23

opinion 44:7

opinions 31:13

opportunity 17:11 140:3

order 133:4 139:20,21 141:3,8,11

order's 139:23

overview 29:16

oxygen 28:5,6

——————

P

p.m. 124:15,20 142:4,5

pages 64:8 106:5

painting 37:3, 5,7 50:6

paper 33:13

paragraph 49:13,22,23 51:11 55:6 57:11 111:13

Park 47:5 102:13

parked 33:4 89:16,18 97:17, 19



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

part 45:22
47:23 56:15

participating
127:21

parties 8:10

passed 27:12
87:23

passenger
92:7

passing 27:13

past 12:9,11
33:15 38:19
77:13,22 84:20

patience
124:10

pay 39:10 95:5

paying 128:3
130:12 131:6,8,
14 134:13,20
137:17 138:2

Payless 30:12
34:7

PD 21:14

PDF 141:12

pending 7:11

people 12:8
14:1 23:10
41:24 42:8
44:23 79:20,21
103:18 126:1

People's 81:25

pepper 40:13
41:4

percent 123:4,
11

peripheral
12:11 92:15

permanent
29:3

person 12:3,7,
15 17:6 72:1
120:23

personality
30:12

persuade
54:14 110:18

phone 17:8
45:6 61:22
62:1,17,19
65:7,10 101:4,
6,23,25 102:4
120:16

photo 19:11,17
20:13,14 54:1,
15 76:5 82:9,18
95:2 106:16
110:16,19
113:14,16,18
114:8,23
115:13,15
116:22 118:14,
17 126:1,19
130:24 131:8,9,
17 135:18
136:6

photograph
12:4,7,18,24
14:13,19,24
16:1,4,5,8
20:18,19,22
21:1 43:7,16,18
82:17,18,21
94:5,8,14 95:8,
17 114:7,12
115:22 131:1

photographs
11:11,18 20:3
69:5 81:5,10,
16,17 82:6 87:3
93:11 94:1,17,
18,23 95:8,11,
16,19 107:16

photos 19:8
20:10 25:15
41:19 82:2
107:14 116:22
118:17 126:5
131:21

physical 43:22

pick 82:17
124:2

picked 102:3
118:16

pickers 29:1

picking 127:4

picture 37:19
42:18,20,23
51:20 53:12
54:20 95:5
109:3 110:20
113:15 115:13
116:5,6,20
126:9 137:3,10

pictures 39:17
42:14,15 59:23
80:25 81:1
93:16 114:11
128:17 135:12
138:14

pissed 34:2,12

place 28:20
63:12 88:12

plain 36:2,3
38:4,6

Plaintiff 7:19
8:12 95:10

Plaintiff's 7:16

play 34:5

plumbing
29:20,21,25
30:1,5

plural 81:17

poetry 132:14

point 11:4,18
12:13 21:16
25:16 33:20
37:21 41:18
43:21 45:8 59:3
65:4 74:9 77:9
93:10 101:17
108:20 129:14
133:20 139:11

pointed 19:11,
17 21:1 74:11,
19 114:12,14
117:22 118:3

pointing 33:16
59:24 116:6
128:17

police 9:14
10:4 12:17
13:9,15,23

14:8,19,23
16:8,10,13
17:24 18:6
19:6,7,11,23
20:2,12,17
21:12,15,19,25
23:11 25:13
26:4,5 31:14,16
34:8,10,17,21,
24,25 35:2,13,
25 36:1,12,17,
25 37:8,11,15,
24 38:1,5 39:4,
6,12,15,19
40:1,5 41:7
42:9 43:2,6,21,
24 44:6 49:1,
14,19 52:20
54:5,23 56:19,
20 59:10 61:5
64:5,6 66:14,17
69:2 74:9,10
77:14,23 80:12
81:4,9 82:2,17
83:6,22 84:4,18
86:9 90:12
91:19,24 93:25
107:13 108:4
110:21 111:25
113:13,21,23
114:6,14
117:21 118:2,
12 119:2
123:23 126:19
129:13,18
135:9,16 136:5

portion 125:5

portions
108:10

position 10:20
134:25 135:12

post-
conviction
47:16

postponed
112:25

preparation
17:14,20 18:8

prepare 16:24

preparing 17:3

present 16:22
88:22 89:1
104:10,12,19
117:8,11
128:13,16,19

presume 67:2

pretty 32:23
35:22 41:1
101:11

previous
65:24 66:1

previously
14:10 36:12
42:24 48:13
49:5,18 50:2
63:9 73:16
81:24 113:18
115:15 123:15
133:5,21

print 49:11
96:25

printout 94:6,7

prior 23:7
26:24 27:13
28:3,19 29:2,9
64:19 67:15
68:2,3,9,20,23
69:5 70:19,23
71:5 72:4,24
73:17 74:11
82:12 90:14
102:8 107:8
111:8 112:18
117:22 118:6
122:13 126:23
128:7 134:17
137:14

prison 109:22
110:2,4

private 62:23,
25 63:4,8,14
65:12 68:2,3
70:22

problems
31:16

Procedure 9:8

proceed 8:23

proceeded
60:1

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 156 of 160 PageID #:6378
The Deposition of EMMETT WADE, taken on November 15, 2023
154

proceeding 57:17 122:22

proceedings 7:1 47:16

progress 64:4, 13 68:25

promise 58:11

promised 57:12,14,22 58:1,15

prompted 27:10

prosecution 23:23

prosecutor 55:8 71:23 72:6,7,11,15 73:1,2,7,10,11 74:24 75:2 111:14 112:6

provide 31:20 32:2,9

public 117:8

pulled 33:4 93:15,16 137:22

pursuant 9:7

put 17:25 43:8, 12 44:18 82:21 103:15,18 118:22

putting 107:8

_____

Q

question 12:2 20:7 22:8 70:11,14,16 72:2 76:5,8,11 77:12,21,22,25 78:21,25 79:9, 12 80:12,15,17, 19,20,22,23,25 82:4 83:3,5,19, 21 92:9 105:4 110:21 111:24 113:20 114:3,4 124:23 127:15,

23 128:19 132:23 136:3, 20 138:21 139:3

questioned 71:24 72:6

questioning 37:16 43:9 76:13 78:1 81:3 83:4

questions 10:5 16:21 39:11,17 60:14, 21 61:8,18 75:24 76:1,4 78:20,24 79:8 80:11 81:23 82:8 83:20 99:21 108:11 116:1 127:7 128:16 129:4 134:5,7 135:3 136:14 137:19 138:11,17 139:13

quick 95:20 127:15

quickly 96:16

_____

R

racist 21:15 57:1

radio 30:12

raise 8:16

raised 27:6

ran 34:3 77:13, 22 98:14

Raymond 86:6

re-approached 85:5

RE-EXAMINATIO N 134:9

reached 63:10

reaction 34:1

read 47:3 64:4 96:25 97:12 98:7 140:9

reading 30:18 33:13 97:22 115:10

ready 8:16 73:4 125:2

real 95:20

reason 90:3 133:21 134:12

reasons 49:9

recall 18:9 19:1 25:14,21 29:13 35:15 36:6 37:11 38:10,18 39:8 40:7,10, 13,16,20 42:11 43:15 54:7 62:5 66:12,19 71:22 72:3,14 84:10, 13,17 85:8,11 86:5 87:11,13 88:1 89:2 90:2 91:11 92:13 94:8,20,22 100:4,11,12 101:7,18,19 102:6 103:2 104:13,18 105:18 106:9 107:18 111:7 112:22 114:10 117:10,11 120:16 122:19, 25 123:9,17 127:2,5,6 129:15 137:15 138:15 139:9, 11,12

receive 64:1,3

received 69:14 96:18 132:22 133:11,12

receiving 28:25

recognize 46:17 86:3

recognized 135:8

recollection 18:15 33:1 42:14 46:23 47:9,18 54:10 129:17,24

recommend 140:11

record 7:2 8:5 9:3,6 15:20 22:20,23,24,25 30:12 31:9 44:14 47:3 52:3 76:22 77:6 80:9 81:22 83:18 91:1,3,4 106:4 113:7 117:4 124:14,16,17 139:20

RECROSS-EXAMINATIO N 136:15

REDIRECT 129:7

reference 48:4 49:4,18 56:20 83:3 97:5 108:14 125:3

referred 23:9, 10

referring 18:20 21:24 61:5 66:2 126:4

reflect 9:6

reflected 116:8

refresh 46:22 47:9

refreshes 18:15

regard 127:15 129:1

related 84:5

relating 69:7

relation 97:11

reluctant 33:9

remember 17:4 20:6,12

21:10 28:6 29:24 32:18 36:17,24 37:1, 4,7 40:24 41:2, 8 42:3,4 47:8, 13 70:15 71:9, 12 73:3 80:15, 17 83:5,22 85:13,18 87:9 89:22,23 94:5 95:7 100:24 102:14 103:19 106:17,20 111:7 112:7 113:19 116:21 117:14 119:8 120:22 127:23 132:23 139:1

remembered 20:22 55:2

remotely 7:21, 24 8:2

Remus 90:10

reopened 50:12

repeat 72:2 117:24 131:3

rephrase 136:2

report 17:23 18:6,7 64:5,6, 13 68:25 96:16, 17,21 97:10

reporter 7:2,4 8:3,7,9,15,18, 22 16:22 22:2, 22,25 83:11 91:1,4 124:12, 14,17 139:14, 16,19,24 140:5, 19,21,23 141:2, 7,10,14,19 142:1,3

reporters 7:5 140:12

reports 69:2

represent 7:18,23 9:9,13 52:3 60:20 127:14



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 157 of 160 PageID #:6379
The Deposition of EMMETT WADE, taken on November 15, 2023

155

representation 57:5

represented 17:16 47:15

representing 7:4

reprint 52:4

republic 117:5

reserve 140:7, 15,20

respect 80:13

responded 70:12,13

response 22:1 25:1 78:11 89:3

restaurant 66:4 100:15

return 33:23

returned 13:7 92:2,3

review 18:10 68:9,11,19,22 69:1 107:20 140:9

reviewed 106:22 122:7, 12

ricocheted 11:9 33:22 49:12

right-hand 46:2,11 64:8

ring 84:15 86:7

robbery 84:5 113:19 115:16

room 16:20 21:8,13,19,22 23:12 37:6 56:4 83:12 88:13 89:1 128:20 130:9 132:4 134:25

Rules 9:8

run 12:9 48:8

running 12:11 33:14 35:9 42:8 48:13 77:17 79:10,14,18 84:20 92:14 97:23 98:12

runs 56:14

_____

S

safe 32:5

salt 40:12 41:4

sat 37:14,17 51:19 93:14 111:14 120:25 126:8

Saturday 9:2 141:21

scattered 79:22

scene 34:18 35:10 48:14 103:12

Schalk 86:6

screen 16:1,2 44:19,20 45:6 47:23 75:16 96:23 99:24 110:10

scroll 45:21,23 48:16 110:7

Sean 7:18 61:7, 19 76:24 108:16

seat 11:7 92:6

self-identified 38:20

send 102:7,10 140:24

Senior 121:11

sense 133:6,7

sentence 48:1 49:23 50:21 113:8

set 21:8 56:3 86:17 87:2

101:1,12 115:25

setup 101:21

Shack 90:10

shaking 11:6 32:20 33:17

share 15:25 75:16

shared 89:25

sharing 90:2

Shenee 111:5

shipping 28:25

shoe 97:20

shook 35:24

shooken 35:22

shoot 11:7 13:5

shooter 41:22 112:9 128:21

shooters 43:14

shooting 9:18 10:1,4,6,9 12:4, 14,16 14:20 15:6,11 16:14 36:20 43:10 48:14 49:5,20 76:12,16 84:5,8 90:15 91:15,25 92:11 98:18

short 78:14

shortly 24:14 91:9,15

shot 9:22 13:6 23:17 24:18,21, 24 33:21,23 34:2,15 41:23, 25 48:23 49:6, 10 98:15,19 99:9,11

shots 92:1 99:9

show 11:11 15:18 38:23 44:12 45:22

53:22 69:4 81:24 93:11 95:16,19 96:15, 20 105:4 114:8 118:14 124:24

showed 12:17, 24 14:24 16:8 19:6,7 20:2,17 37:19 41:19 42:13,24 43:16 51:20 82:3 93:25 95:17 113:13,15 115:13 117:21 126:9 130:25 131:8,17

showing 20:12 39:16 126:5 137:10

shown 69:1 81:4,9 82:17 87:3 94:18 95:8,12 107:13 114:7 115:22 126:20 128:3 129:25

sic 27:23 117:5 142:4

side 12:9,10 33:3,25 41:23 42:7 46:6,7,11 56:14 76:8 89:17 92:7,16, 22 97:18

sign 47:10 121:15

signature 46:5,6,9,12,13, 18,19,22 140:4, 8,12

signature's 130:2

signed 114:25 117:9,12,19 118:25 119:14 130:4

signing 46:23

silver 33:17

Similar 82:4

single 107:3 113:15 114:7, 10,12 115:13, 22 116:4,6

sir 9:1,6,17,25 10:3,15 11:24 12:2 13:21 15:5,16,18 16:1,4,11,16,24 17:5,19 19:2 22:4 23:12 25:2,20 26:8,10 27:11,18 28:1, 17,24 29:6,12, 17 30:24 31:4, 11 34:22 37:22 38:10,16 44:19, 25 45:25 46:9, 13,18,23 48:5, 17 49:2 50:3, 13,20 51:2,21 52:5,18 53:4, 17,23 54:3 57:9,20 58:19 59:1,18 60:1,9, 15 61:23 71:8 72:19 74:14 75:17 77:12 81:8,14 83:19 86:14 89:6,21 90:18 93:22 95:14 96:13,23 97:10 98:20 103:9 105:5 106:22 109:13 110:3,9 113:24 114:25 115:17 116:2,14 117:18 120:1 127:1,8 133:1, 13 134:2 135:6 138:8 142:2

sister 26:20 30:8,15 32:18, 20 33:7 34:6,7 63:10

sit 9:25 33:11 35:10 39:25 55:11 111:18

sitting 16:20 30:18 33:3,10, 13 39:3,4 55:12 88:14,16,19,21 90:9 111:19



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 158 of 160 PageID #:6380
The Deposition of EMMETT WADE, taken on November 15, 2023
156

132:4 135:12

situation 16:19

six-page 105:19,21

size 94:12

slender 40:23 51:14

slimmer 51:1

small 28:6 47:23 48:21 96:25

smaller 56:14

sofa 39:4

solemnly 8:18

son 113:10,14, 17 115:15 121:2,6

Sorrell 9:22 13:8 15:7,11 18:21 41:25 48:5 92:19 108:5

sort 86:1 113:9 136:24

sorted 22:20

sound 22:4 85:10 88:7

sounds 32:23 125:1

south 89:17 97:18 98:12

speak 17:11 72:23

speaking 112:6,7,22 119:17 134:13

specific 70:16

specifically 11:18 14:22 19:11 20:9 41:8 79:25

speculation 39:21 74:4,12 131:11,18 135:1 137:13

spell 9:4

spoke 14:6 17:8 55:7 61:3, 18,25 62:14 64:24 68:1 69:1 73:11 84:10 100:2,4,19,22, 25 111:13 114:22 119:7, 21 129:11

spoken 60:24 61:16 63:8,9 65:4 67:13,14 100:6 128:25

spread 82:1

Sr 58:9,11 104:12,19 119:22 120:3,7, 9,13,17,23 121:14

stamp 45:24 83:19 136:23

stamped 77:5, 10 79:4 80:10 97:7 125:4

stand 72:6

standing 138:25 139:20, 22 141:3

stands 21:12

Starr 7:17,18, 21 8:12,25 10:14,23 11:16, 23 13:20 14:17 15:4,15,18,24 19:15,21 20:11 22:3,9,12,15, 17,19 23:5 39:24 41:16 43:5 44:12,17 59:14,25 60:12, 14,25 61:4,7,19 62:1,6,15,20 63:3,4,14 64:18,20,24 65:2 66:10,18, 22,25 67:6,10, 13 68:7,13,19 69:4,20 71:6, 14,16,18 72:8,

16,18 73:13,19 74:4,12 75:6 77:1,3 78:5,13, 16 79:1,5 80:4 81:6,11,18 82:11 83:8,10 84:12,22 85:2, 15 86:12 88:4 89:4,19 90:18 92:12 93:1,7,20 94:3,9,19 95:13,24 96:5, 11 99:2,4 102:22 103:6,9, 16 104:24 106:3,12,25 107:4,10 109:6, 8,24 110:23,25 112:2,4 114:18 115:2,7,18,24 116:11,15,23 117:13 118:5 121:23,25 122:6,18,24 125:9,18,20 126:22 127:18, 24 128:6,22 129:8 130:19 131:5,15,22 132:13,19 133:9,18 134:16 135:1,5 136:1,11,14 137:12 138:5, 20 139:13,18, 19,22,25 140:18,20 141:3,5,15,17, 20,24 142:2

start 27:17 43:11 76:21 108:18 111:12 113:8

started 29:8 56:5,16,23 111:15

starting 7:15 77:10 78:21 79:6 80:10 81:23 97:15 108:13 110:8, 14 136:24

starts 55:7 138:1

state 7:14 8:4 9:4 103:3 111:17 113:21 135:7 136:24 137:2

state's 24:4 37:13 38:13,20 39:2,7,13,18 40:22,25 51:8, 15 71:4,10,12 72:4 73:23 74:1,8,10,16 75:25 76:3,13 77:25 86:17 87:6,14 88:1,20 89:13 95:22 96:2 111:16 113:4 125:13 126:18 127:20, 21 128:3 130:7, 9 131:7 134:12 135:8,15 136:4 137:7 138:2,21

stated 20:2 76:17 97:17 98:16,17,19 119:21

statement 31:8 47:5 50:20 57:15,23 58:13 98:23 100:14 103:11 125:24 137:15

states 7:11 123:2 126:8

station 34:21, 25 35:13 36:11 49:15,19 84:11

stayed 88:25

stopped 49:1

store 92:5,20 97:20 98:11

strange 21:15 113:15,16 114:8 115:12, 14 118:14,16, 18 119:1

Stream 28:13

street 7:5 13:16 30:13

31:11 52:17 89:10,17 97:18, 23 108:23 126:11

streets 41:14

strike 19:7 57:25 74:9 87:13 101:18

sttorney 131:7

subject 102:20

subjects 97:24

subpoena 69:14

subpoenaed 62:9 68:5

sued 9:14

suing 65:21 66:10,13,16,20

Sun-times 30:18

supplemental 18:7

supplementary 17:23 64:5 96:16,17,20 97:10

support 69:18

surprise 133:13

surprised 133:16

suspect 10:9, 18,25 11:3,19 12:22 13:2 19:12 21:2 36:19 41:13 44:3 83:7 86:16 89:8 131:1,9 135:9

suspects 11:11 83:23 84:19

Swaminathan 67:18

swear 8:18,21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 1:20-cv-04768 Document #: 184-25 Filed: 05/06/25 Page 159 of 160 PageID #:6381
The Deposition of EMMETT WADE, Taken on November 15, 2023
157

switch 84:3

sworn 75:10

---

T

taking 32:1,6
89:11,13,14
102:18

talk 24:16
29:18 42:9
69:10 84:3

talked 27:13
55:23 56:1,3
80:22 120:25

talking 32:14,
16 42:21,23
66:6 74:21,22
105:25 106:2
112:15 121:4
130:13,23
138:13

tall 40:23 51:14

taller 40:15

tank 28:6

technically
106:5

technician 7:3

Technology
28:14,21

Techtronic
29:5

telling 23:21
25:11 37:16
106:19 121:5
127:22 133:24
138:11

ten 28:13,22,23
138:24

ten-minute
90:24

terms 66:9
97:13

test 29:15

testified 18:19,
23 19:4,6,7,16
23:7 25:24 26:6

36:12 48:13
49:5,19 50:3
56:21 60:6,24
64:17 73:16
75:13 76:14
77:25 81:8
82:8,20 84:24
85:4 87:5 93:4,
24 99:16 119:6
123:15 130:7
131:23 133:21

testify 19:10
21:4 23:9,16,
17,22 24:2
57:16 58:19
60:3 68:6 69:14
82:16,23
122:16,22

testifying 19:1
58:13 70:19,24
71:5 72:5,24
73:17,24 74:11,
22 112:19
133:22

testimony
8:19 18:16,20
21:5,9,17,18
23:7,8 24:5
25:18 31:21
32:3,10 58:2,16
62:9 64:21 67:7
68:22 69:11
70:7 71:18
72:9,18 75:10,
20 76:19 78:8
80:7 82:12,25
109:25 113:11
114:19 117:22
118:6 119:8
121:25 122:6,
13 123:17
125:13,20
126:23 128:7
129:2,12
130:18 134:17
135:21 136:10
137:14

Texas 8:8 26:9,
25 27:8 28:8,9

Theresa 67:22

thin 40:17

thing 21:11

24:25 32:12,15
63:12 73:3
106:18 107:22
109:2 116:18
121:1 125:8
126:15 137:17,
20

things 24:17
140:4,14

third-party
140:3

thought 11:19
20:3 21:15
33:18 42:7
48:13 79:19
85:11 96:3
109:20 113:14
114:7 115:12
121:5,6 128:10

tied 12:12

till 33:12

time 7:7,8 14:2
22:23 23:3,4,18
30:18 34:6
35:20 36:18
37:9,12 38:18
51:13 55:2
61:3,17 62:14
63:7 71:9 80:24
83:5,21 85:9,
13,14,18,21,24
87:3,6,9,13,15,
16,17 88:10
90:14 91:2,7
92:6 95:23
100:2,4,16,19,
22,25 101:12
103:23 117:20
118:2,10,19,23,
25 119:11
120:13,24
121:3,17,22,24
122:2 124:15,
19 127:9 128:5
133:2 134:4
135:24 141:9,
21 142:4

times 13:6 17:9
31:2 55:22
60:25 61:15
100:6 101:1,3
112:17,18,23

123:16 130:1

title 45:2

today 7:4,6
9:2,12,25 16:17
20:23 23:2
24:19 29:18
31:21 32:3,10
35:10 39:25
58:13,20 60:9
61:1 63:20
64:19 65:5
67:16 68:2,10,
20,23 69:5
76:17 91:6
119:6 121:19
122:3,11,13
133:2,22 134:1

today's 16:24
17:14,20 18:8
121:21 124:19

told 11:4 12:8,
18 14:9,12
16:10 21:19
23:15 24:17
30:11,15 32:20
33:6 37:22,24
43:13 49:15
51:7,13 53:16,
25 54:20 55:1,
17 56:6,25 57:5
61:20 65:19,20
67:4 82:17
84:18 85:9
86:15 87:1 90:4
98:15 99:7
103:23 104:3
109:4,17
110:14,20
111:23 112:1
113:10,12,13,
14,19 114:6
115:12 116:21,
24 118:11
119:1 121:8,12
123:4 125:15
128:13,20
133:11 134:1
137:4,7 138:22
139:10

top 44:22
48:20,22
108:17

total 127:3

touch 87:1

traditional
36:1

traffic 31:3
123:16

traffic-related
31:4

transcript
75:19 76:25
140:10 141:8,
11,16

transcripts
141:12

trench 51:1

trial 19:10,16,
22 55:24 56:2,9
60:2,3,6 68:22
69:11,15 70:20,
24 71:2,3,5,24
73:18 75:10,11,
20 81:9 82:7,24
84:25 93:5
99:17 111:14
112:24 117:23
118:4 129:2

Trials 76:24

trigger 137:22

truck 10:21
11:5 12:14 13:6
14:4 23:13,14
33:16 41:24
42:1,5 76:6,9,
15 89:18 91:20
92:1 97:19,24,
25 98:9,17

true 48:11
75:15 77:20
82:7 115:6
119:4

trust 31:7

truth 8:20
25:11 57:15
58:22,23 60:7,9
133:23,24
134:1

truthful 31:20
32:2,10 76:19,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

20 78:7 80:7,8
84:1,2

truthfully
65:19 75:13

turned 130:21

type 67:3 109:2
125:7 126:15

_____

U

Uh-huh 52:6
55:10 60:16
84:6 98:8
129:10

unable 14:24
26:2

uncle 29:20,21
30:3,6,7,13
33:4 88:24
90:10,14 91:15
97:21

uncomfortable
73:24

underneath
45:17

understand
9:10,15,21
47:22 70:5 72:5
112:10 137:25

understanding
45:5 48:21
103:21

understood
106:7 122:15

uniforms 36:1
38:5

United 7:11

_____

V

vague 21:7
47:13

vaguely 112:8

van 12:10
30:18 33:11,25
48:2,24 49:7,10
77:13 79:24

84:20 89:17,18
97:17,19,23

vehicle 24:22,
23 33:4

verbal 22:1

version 108:15

vicinity 79:10,
14

victim 92:19
98:11,14,15,18,
19 113:18
115:16

video 7:3,8
23:2 141:4,8,11

view 11:4
19:24 80:25
131:20

violations
123:16

vision 11:5
12:11 92:15

visit 80:13,18,
19,21,24 82:3

visited 11:12,
17 14:8,23 54:6
57:6 80:16

voiced 118:19,
21,23

volunteered
75:4

Vonnie 30:20

_____

W

W-A-D-E 9:5
87:22

Wade 7:9 8:4,
6,11,15 9:3,5,8
16:16 22:19
23:1,6 44:12
60:19 76:11
77:12,23 79:9
80:11,12 81:1,
24 82:2 87:20,
22 91:5,9
97:16,22 98:9,
10,13,14,16

120:2,4 124:18,
22 127:13
134:11 136:21
140:1 141:18

wait 72:1

waiting 23:9
83:12 90:13
91:14 97:20

waive 140:4,11

Walker 88:6

wallet 94:12

wanted 13:16
14:12 16:13
25:14 49:6,8
50:19 89:10
92:7 113:16
115:14 118:3
121:15 133:22

wear 45:10

wearing 36:1,2
48:8

week 64:2,17,
25 65:5 120:18

weekday 50:5

Weeks 117:6

weight 95:3

West 7:5 9:19

westbound
98:13

whatsoever
15:9

when's 61:17
62:14 100:22

where'd 29:12

white 40:9
94:15

wife 27:12
30:8,15 33:7
34:6 80:21
85:22 87:18
88:14 90:14
91:14 97:20

wife's 87:19

Willie 9:21
15:6,11 18:20

32:19 33:24
42:2 48:4 92:4

window 49:10,
11

windshield
11:9 33:22
34:14

witness.'
111:18

witnessed
32:17 33:2
35:3,7

witnesses
13:24 14:10
43:12 119:18

woman 23:19
38:12,13,14
54:2 55:15,16
71:20,21
110:16,22
111:8,21,23,25
130:8 135:7

word 45:17
112:21

word-for-word
109:18

words 24:15

work 28:15
29:12,20 30:1
62:13

worked 28:20,
22 29:4 30:3

working 28:3
29:8,17 70:23

would've
34:16 90:4
101:8 109:17
116:24

wrapping
124:1

write 105:21

writing 94:22
95:1,5 103:15,
19 105:18,23,
24 106:1
107:23,24
110:12 122:5

131:24 132:1,5,
9,14,18

wrong 78:22
98:24 99:1
129:16

wrongful 9:15

wrongfully
66:23 67:5

wrongly
103:24 104:1

_____

Y

year 28:16

years 10:3
27:4,14 28:14,
22,23 30:2
80:14 85:5
114:21

yesterday
17:4

you-all 30:15
33:7

young 14:3

youngest
26:22 27:16

_____

Z

zoom 7:25 9:7,
13 45:7 63:20
65:18 110:13
141:4



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS