# EXHIBIT 43

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>     Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 02 CR 16669<br><br>The Honorable Joe Kirby |
| JAMES FLETCHER,<br>     Defendant. | ) ) ) ) | |

**DEFENDANT'S MOTION TO SUPPRESS ALL PRE-TRIAL IDENTIFICATIONS AND BAR ANY IN-COURT IDENTIFICATION TESTIMONY BY THE WITNESSES THAT PARTICIPATED IN THE PRE-TRIAL IDENTIFICATIONS**

     Now comes the Defendant, James Fletcher, by his attorneys, and respectfully requests that this Court enter an order (1) suppressing any evidence at trial of any pre-trial identifications by Sheene Friend, Edward Cooper, or Terry Rogers and (2) barring any in-court identification of Mr. Fletcher by those three witnesses. The photo-array shown to those witnesses and the corporeal line-up identification that Ms. Friend and Mr. Cooper participated in were unnecessarily suggestive, leading to a substantial likelihood of misidentification, and hence, denying Mr. Fletcher due process as provided for in the 5th and 14th Amendments to the Constitution of the United States. Furthermore, the State cannot establish by clear and convincing evidence that an in-court identification would nevertheless be independently reliable. In support of this Motion, Mr. Fletcher states as follows:

## I.    Background

    1.    On information and belief, on December 21, 1990, Mr. Cooper, a bread truck driver, was allegedly robbed by two suspects in his bread truck, which was parked near 5611 W. Madison Street in Chicago, Illinois. After the suspects fled the bread truck, Mr. Cooper retrieved his handgun and proceeded to chase the fleeing suspects westward on Madison Street. A

-1-

gun battle ensued, and as a result, Willie Sorrell, a bystander, was shot and killed.

2. That same day, Ms. Friend and Mr. Cooper were only able to give a vague description of the suspects. The original police report listed one suspect as a male black in his early twenties, 6'0" tall with long black hair and unknown eye color. The original police report listed the second suspect as a male black, 30 years old with a pony tail and brown eyes. The supplementary police report included a generic description of their height (somewhere between 5'8" - 5'11"), a generic description of their age (in their 20s), hair style (one had a pony tail and the other has collar length curls), failed to describe the suspects in any detail, and failed to identify any distinguishing characteristics of the suspects.

3. Also that day, the police interviewed Terry Rogers, another eye-witness to the above-described incident. Mr. Rogers stated he was only able to view one of the suspects, but he was not able to give the police anymore of a description than Ms. Friend or Mr. Cooper. Mr. Rogers further stated that he overheard one suspect call the other suspect "Fletcher." In the police reports and notes, none of the other eye-witnesses are listed as having heard either suspect make such a statement.

4. Also that same day, Ms. Friend, an eye-witness to the above-described incident who is a friend of Mr. Cooper, viewed photographs at the police station but failed to identify anyone as the perpetrator. At the time of the incident, the police/State had photographs of James Fletcher, the address of James Fletcher, and the name of "Fletcher" as a possible suspect. However, it is unknown whether a photograph of James Fletcher was included in the photographs viewed by Ms. Friend.

5. Mr. Cooper is a family friend of Mr. Rogers.

6. On March 19, 1995, the police showed Mr. Cooper a photo-array. Mr. Cooper was unable to identify anyone in the photo-array as one of the

-2-

Fletcher 000166

suspects. It is unknown whether a photograph of Mr. Fletcher was included in this photo-array.

7. On February 11, 2002, Mr. Rogers was arrested for criminal trespass to a residence where a previous arson had occurred one month prior. At the time of his arrest, Mr. Rogers was in possession of rags, paper towels, and six packs of matches.

8. On February 12, 2002, while still in custody, the police re-interviewed Mr. Rogers, more than 11 years after the above-described incident. Mr. Rogers stated that he knew James Fletcher and that Mr. Fletcher was one of the men he saw fleeing from Mr. Cooper's bread truck. Mr. Rogers further stated he did not recall what he had told the police in 1990. Mr. Rogers did not tell police that he and Mr. Fletcher were in rival gangs.

## II. The Photo-Array Assembled by the Police

9. On February 12, 2002, the police assembled a photo-array using a recent photograph of Mr. Fletcher from the Illinois Department of Corrections' web site. Mr. Fletcher had been in the custody of the Illinois Department of Corrections since December 2, 1991.

10. Mr. Fletcher's photograph used for the photo-array did not resemble his appearance as it was in 1990. In 1990, Mr. Fletcher weighed roughly 180 pounds, was 5'11", and had short hair. Mr. Fletcher's photograph from the IDOC's web site showed him with long hair (*i.e.* braids) and listed his weight as 189 pounds.

11. The police used six other photos in their photo-array. The six additional photos were also obtained from the Illinois Department of Corrections' web site. The police did not choose six additional photos based on physical similarities to the eye-witness descriptions of the suspects or based on similarities to Mr. Fletcher's physical appearance. Instead, the police choose the six additional photographs because all six inmates

-3-

Fletcher 000167

shared the last name of an alleged alias used by Mr. Fletcher, *i.e.* Arnold
Dixon. Those inmates are Arthur Dixon, Darnell Dixon, Devon Dixon,
Otis Dixon, Jarone Dixon, and Frederick Dixon.

12. All seven photographs in the photo-array contained the name of the
person, their date of birth, their weight, their hair color, their sex, their
height, their race, and the color of their eyes. The photo-array used is
attached as Exhibit A to this motion.

13. Arthur Dixon is three inches shorter than Mr. Fletcher and is 9 years
younger than Mr. Fletcher.

14. Darnell Dixon is two inches taller than Mr. Fletcher, is 8 years younger
than Mr. Fletcher, and over twenty pounds lighter than Mr. Fletcher.

15. Devon Dixon is six inches taller than Mr. Fletcher, is 11 years younger
than Mr. Fletcher, and had short hair.

16. Otis Dixon is over 30 pounds heavier than Mr. Fletcher and had short hair.

17. Jarone Dixon is three inches shorter than Mr. Fletcher and is 19 years
younger than Mr. Fletcher.

18. Frederick Dixon is four inches shorter than Mr. Fletcher, 9 years younger
than Mr. Fletcher, almost a hundred pounds heavier than Mr. Fletcher, and
is bald.

## III. The Photo-Array Identifications·

19. On February 12, 2002, Mr. Rogers, while still in police custody, identified
Mr. Fletcher's photograph in the photo-array as one of the men fleeing Mr.
Cooper's bread truck in 1990. Mr. Rogers was never tried for criminal
trespass or charged with arson. Mr. Rogers' rags, paper towels, and
matches were not inventoried.

20. On February 12, 2002, after 10 p.m., the police went to Mr. Cooper's
home and showed him the same photo-array. Mr. Cooper picked out Mr.
Fletcher's photograph and stated that he looked similar to one of the

Fletcher 000168

offenders, but he could not be positive of his identification.

21. On March 7, 2002, Ms. Friend was arrested for parole violation.

22. On March 8, 2002, while in custody, the police re-interviewed Ms. Friend. The police showed her the same photo-array shown to Mr. Rogers and Mr. Cooper. Ms. Friend identified Mr. Fletcher as one of the suspects fleeing Mr. Cooper's bread truck.

## IV. The April 20, 2002 Corporeal Line-up Identification

23. On April 20, 2002, Mr. Fletcher participated in a corporeal line-up with David Wilson, Henry Cox, John Smith, and Dwayne Simmons.

24. Of the five participants, Mr. Fletcher was the tallest, by three or more inches, the heaviest, the only person with long hair similar to the witnesses' description, and was distinguishable by wearing clean white tennis shoes without laces and with the shoe tongues pulled up and out.

25. Mr. Fletcher's attorney, J. Cunyon Gordon, was present in the suspect room, but she was not allowed into the viewing room during the line-up to observe the conduct of the State (*i.e.* Jennifer Walker, the Assistant State's Attorney), the police, or the witnesses during the identification procedure.[1/]

26. Ms. Gordon objected to the corporeal line-up because Mr. Fletcher clearly stood out. However, the police ignored Ms. Gordon's objection telling her to make her complaints to the Judge.

27. At the corporeal line-up, Ms. Friend and Mr. Cooper identified Mr. Fletcher as one of the suspects from the 1990 incident.

---

[1/] The denial of Mr. Fletcher's 6th Amendment right to counsel during this line-up identification is addressed in a separate motion being filed concurrently with this motion.

-5-

Fletcher 000169

V.  **Mr. Fletcher Has a Right to Due Process. The Photo-array Used by the Police Denied Mr. Fletcher Due Process So Any Evidence of the Photo-array Should Be Suppressed at Trial**

28.  "The Due Process Clause of the Fifth and Fourteenth Amendment forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification." *Kirby v. Illinois*, 406 U.S. 682, 691 (1972) (*citing Stovall v. Denno*, 388 U.S. 293 (1967) and *Foster v. California*, 394 U.S. 440 (1969)). Therefore, an out of court identification must be suppressed when the identification is so "unnecessarily suggestive and conducive to irreparable mistaken identification" that the defendant is denied due process. *People v. Simpson*, 172 Ill.2d 117, 140, 665 N.E.2d 1228, 1240 (1996); *People v. Maloney*, 201 Ill.App.3d 599, 607, 558 N.E.2d 1277, 1282 (1st Dist. 1990) (trial court erred in failing to suppress lineup identification based on a line-up that contained people with physical differences so extreme that the "lineup procedure all but hung a sign saying 'pick me' around defendant's neck."); *see also Brown v. State of Texas*, 29 S.W.3d 251, 254 (Tex. Crim. App. 2000) (lineup may be unduly suggestive when "suspect is dissimilar in appearance from the other participants because of his distinctly different appearance, race, hair color, height, or age.").

29.  The police assembled the photographs used in the photo-array shown to Ms. Friend, Mr. Rogers, and Mr. Cooper based on a common last name and without regard to the physical characteristics of the people in the photographs. As a result, Mr. Fletcher clearly stands out in the photo-array. The physical differences in age, weight, height, and hair style made the photo-array impermissibly suggestive. *See People v. Maloney*, 201 Ill.App.3d 599, 558 N.E.2d 1277 (1st Dist. 1990).

30.  Even though the witnesses gave rather vague descriptions of the suspects height, age, and weight, none of seven participants in the photo-array

-6-

Fletcher 000170

matched that vague description except for Mr. Fletcher. Worse yet, some of the participants were exceedingly different (*e.g.* one participant would have been 8 years old at the time of the incident and another participant was extremely overweight and bald whereas the eye-witnesses described the suspects as having a slim build and long hair.).

31.     The courts have long held that differences in height, weight, and, in particular, age warrant suppression of lineup identifications at trial. *See e.g. People v. Morris*, 131 App.2d 443, 266 N.E.2d 444 (1st Dist. 1970) (affirming trial court's suppression of lineup identification where 18 year old defendant was placed in a lineup with two adults.); *State v. Henderson*, 569 P.2d 252, 256-57 (Ariz. Ct. App. 1977) (lineup unduly suggestive where appellant was 36 years old and other participants ranged from 20 to 24 years of age); *People v. Jones*, 209 N.W.2d 322, 324 (Mich. Ct. App. 1973) ("Age alone might be sufficient to vitiate a lineup if it caused the defendant to stand out significantly from the other participants in the lineup."); *People v. Burwell*, 258 N.E.2d 714 (N.Y. App. Div. 1970) (lineup was improperly suggestive where defendants were teenagers and other participants ranged from 27 to 48 years old.); *McFadden v. Cabana*, 851 F.2d 784 (5th Cir. 1988) (the State did not even try to argue that the disparities in height and weight would not have been suggestive to identifying the witnesses.); *Cf. People v. Harrell*, 104 Ill. App.3d 138, 145, 432 N.E.2d 1163, 1169 (5th Dist. 1982) (but for the defendant's youthful appearance, lineup where defendant was 27 years old and other defendants ranged from 17 to 19 years old would be considered unduly suggestive.).

32.     The United States Court of Appeals for the Fifth Circuit suppressed a line-up identification under similar circumstances as the instant matter in *Swicegood v. Alabama*, 577 F.2d 1322 (5th Cir. 1978). In *Swicegood*, the Fifth Circuit held that a line-up where the defendant was 35 years old and

-7-

Fletcher 000171

the remaining participants were each 26 years old or younger violated due process. The court reasoned that the age difference could have caused the viewer to identify the older person. *Id.* at 1327. Since the prosecution could not independently prove the reliability of the identification, the line-up violated due process. *Id.* at 1329.

33.    Five of the six participants in the photo-array ranged in age from 8 to 18 years younger than Mr. Fletcher. Not only were those participants considerably younger than Mr. Fletcher, those participants would have obviously been too young to be considered a reasonable suspect because of their age in 1990, ranging from 8 to 19 years old. At the time of the incident, Mr. Fletcher was 27 years old.

34.    In addition to age, hair style is an important aspect in identification of witnesses. In particular, the only non-vague description of the suspects was their hair style. "One would think that if a suspect is described only in terms of one characteristic, the filler photos in an array would also portray people having that characteristic. Otherwise, there may be no real identification, just a witness with the wit to suppose that the one suspect with the salient characteristic must be the person suspected by the authorities." *U.S. v. Eltayib et al.*, 88 F.3d 157, 166 (2nd Cir. 1996) (finding that the police had cropped the photos of each participant in the photo-array to give the appearance of short hair except the suspect who had long hair which matched the witnesses' description.).

35.    Five of the six participants were far off in age. The sixth participant, the only participant close in age to Mr. Fletcher, was very different in weight (over 30 pounds) and hair style (short versus long braids) to Mr. Fletcher. The difference in hair style is important because all of the eye-witnesses said both suspects had long hair. The photo-array was particularly suggestive because the only participant similar in age to Mr. Fletcher had a distinctly different hairstyle (short hair). Furthermore, the police chose to

-8-

use a photograph of Mr. Fletcher with braids (*i.e.* longer hair) even though they had in their possession photographs of Mr. Fletcher circa 1990 with shorter hair (*i.e.* his hairstyle at the time of the incident).

36. Furthermore, the use of a photo-array is troublesome and unnecessary when it is suggestive and "the government easily could have obtained less suggestive photos or conducted a line-up." *U.S. v. Duprey et al.*, 895 F.2d 303, 308 (7th Cir. 1989) (*citing U.S. v. Stubblefield*, 621 F.2d 980, 983 (9th Cir. 1980)). A photo-array is "unnecessary" if there was no emergency or exigent circumstance. *See Manson v. Brathwaite*, 432 U.S. 98, 109 (1977).

37. This photo-array was unnecessary. First, Mr. Fletcher was in custody of the State. Thus, the State, at its leisure, could have conducted a proper corporeal line-up instead of using a suggestive photo-array. Also, the State had ample time to collect photographs of participants that more closely resembled the description of the suspects or Mr. Fletcher. In addition, the State could have used a more reliable photograph of Mr. Fletcher from 1991 that depicted Mr. Fletcher as he appeared at the time of the incident, *i.e.* with short hair. But the State did not do so and proceeded with a photo-array that was suggestive and unnecessary.

38. Because the photo-array was unnecessary and impermissibly suggestive, the Court should suppress any evidence of the photo-array at trial.

VI. **The April 20, 2002 Corporeal Line-up Denied Mr. Fletcher Due Process and Any Evidence of the Corporeal Line-up Should Be Suppressed at Trial**

39. In addition to the photo-array identification, the corporeal line-up was also impermissibly suggestive. Mr. Fletcher was physically distinguishable from the other participants. Mr. Fletcher was the tallest individual by over three inches and he was the only participant with long hair. This was impermissibly suggestive. *See U.S. v. Eltayib et al.*, 88 F.3d 157, 166 (2nd

Fletcher 000173

Cir. 1996); *People v. Maloney*, 201 Ill.App.3d 599, 558 N.E.2d 1277 (1st Dist. 1990). Mr. Fletcher clearly stood out in the lineup so that the witnesses were merely picking out the tall guy with braids (*i.e.* long hair).

40.     Mr. Fletcher was also distinguished by wearing clean white shoes without laces and the tongue hanging out. A suspect should not be clothed in such a way as to stand out from other persons in a line-up. *See Moore v. State*, 1995 OK CR 39, 900 P.2d 996 (Okla. Crim. App. 1995) (citing *Thompson v. State*, 438 P.2d 284 (Okl.Cr. 1968)).

41.     In *State v. Boykins*, 173 W.Va 761, 320 S.E.2d 134 (W. Va. 1984), the Court stated that a suspect who was the only person in a corporeal line-up dressed in the clothes matching the eye-witness descriptions of the suspect and was the only person in the corporeal line-up who was in the previous photo-array line-up made the corporeal line-up unnecessarily suggestive. *Id.* at 765; *see also State v. Dabney*, 146 Ariz. 108, 704 P.2d 238 (Ariz. 1985) (stating that under the circumstances a corporeal lineup was unduly suggestive because the suspect was the only participant to have appeared in a previous photo-array shown to the witness.).

42.     The corporeal line-up identification was also unnecessarily suggestive because Mr. Fletcher was the only person to appear in both the photo-array and the corporeal line-up identification. Furthermore, in the corporeal line-up identification, Mr. Fletcher was the only individual whose hair style and height matched the generic descriptions of the suspects. These two factors in addition to the physical differences mentioned above, only magnifies the suggestiveness of the corporeal line-up.

43.     The corporeal line-up was unnecessarily suggestive because at the time of the corporeal line-up, Ms. Gordon was not allowed to observe the witnesses. However, from Ms. Gordon's limited access, she noticed the Mr. Fletcher clearly stood out among the participants in the line-up. She objected to the group as a whole, but the police ignored her objection.



-10-

Fletcher 000174



44. At the time, the corporeal line-up identification was unnecessary because there was no emergency or exigent circumstances. *See Manson v. Brathwaite*, 432 U.S. 98, 109 (1977). Ms. Gordon identified due process problems with the line-up to the State. The State had notice from Ms. Gordon of due process problems with the corporeal line-up and had the time to remedy any problem. Because Mr. Fletcher was in the custody of the State, the State could have postponed the line-up and conducted a proper witness-suspect confrontation at a later date. However, instead of postponing the line-up, the State ignored Mr. Fletcher's right to due process and choose to proceed with the impermissibly suggestive corporeal line-up identification.

45. In addition, it is unknown if any other due process violations occurred within the viewing room because Ms. Gordon was not allowed to observe the witnesses, Ms. Walker, and the police during the identification procedure.

46. Because the corporeal line-up identification was unnecessary and impermissibly suggestive, the Court should suppress any evidence of the corporeal line-up identification at trial.

## VII. Ms. Friend, Mr. Cooper, and Mr. Rogers Should Be Barred from Attempting to Identify Mr. Fletcher at Trial

47. In *United States v. Wade*, 388 U.S. 218 (1967), the Supreme Court held that, once a line-up identification is deemed suggestive, any in-court identification is barred unless the State can establish by clear and convincing evidence that the proffered in-court identification had a non-suggestive independent origin. *Id.* at 240. *See, e.g., Swicegood*, 577 F.2d at 1329 (granting writ of habeas corpus and ordering new trial where suggestiveness of line-up had a corrupting influence and the State could not establish the reliability of in-court identification). The Supreme Court

-11-

Fletcher 000175

further stated that "'it is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before trial.'" *Wade* at 229.

48. Both the photo-array and the corporeal line-up were impermissibly suggestive. Moreover, the State will be unable to satisfy its burden to show by clear and convincing evidence that Ms. Friend, Mr. Cooper, and Mr. Rogers have an independent reliable source for any in-court identification.

49. The Supreme Court has held that "reliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite*, 432 U.S. at 114. At the time of the above-described incident, none of these witnesses were able to give the police a detailed description of the suspects. Furthermore, that incident happened over twelve years ago, while the unconstitutional photo-array identifications and corporeal line-up identification occurred relatively recently. As suggested by the Court in *Wade*, an in-court identification by Ms. Friend, Mr. Cooper, or Mr. Rogers would only serve to confirm that Mr. Fletcher was the man they recently saw in the unconstitutional photo-array or in the unconstitutional line-up and could not serve as a reliable identification of one of the suspects from an incident that occurred over twelve years ago.

-12-

Fletcher 000176

WHEREFORE, defendant James Fletcher respectfully requests that this Court enter an order (1) suppressing any evidence at trial of any pre-trial identifications by Ms. Friend, Mr. Cooper, or Mr. Rogers and (2) barring any in-court identification of Mr. Fletcher by those three witnesses.

Respectfully submitted,

Attorney for James Fletcher

Reginald J. Hill
Joseph A. Saltiel
Attorney # 05003
Jenner & Block, LLC
One IBM Plaza
Chicago, Il 60611
Tel: (312) 222-9350
Fax: (312) 527-0484

Date: November 10, 2003

-13-

## CERTIFICATE OF SERVICE

Joseph A. Saltiel, an attorney, certifies that he will cause a copy of the foregoing Motion to Suppress All Pre-trial Identifications and Bar Any In-court Identification Testimony by the Witnesses That Participated in the Pre-trial Identifications to be served on opposing counsel by handing a copy to the Assistant State's Attorney in open court before Judge Kirby on the 10th day of November, 2003.

_____
Joseph A. Saltiel

Fletcher 000178