# EXHIBIT 49

OFFICE OF THE STATE'S ATTORNEY
COOK COUNTY, ILLINOIS



EXHIBIT
Brannigan 1

# INVESTIGATIVE REPORT

| CONTROL NO: | REPORTING DATE: | PREPARED BY INVESTIGATORS: | SYNOPSIS OF REPORT: |
|---|---|---|---|
| CASE NO: 02CR-16669 | 5 March 2015 | Brannigan #334 | Located & Interviewed Defense Witness |

Date of Assignment: 10 December 2014

Assignment: Locate & Interview Defense Witness

Subject Information: FRIEND, Sheenee F/B/40yrs
IR# 1212456, SS#

Evidence & Inventory: Copy of Friend's 8/26/2011 affidavit with her original 3/5/15 handwritten notations. Copy of Friend's 4/5/12 affidavit with her original 3/5/15 handwritten notations. Both affidavits dated & signed by R/Is and Friend. Both inventoried at the State's Attorney's Evidence Vault under #46076.

Attachments: Copies of above inventoried items.

Assigned Personnel: Brannigan #334 & Carroll #505

Investigation: James FLETCHER aka Arnold Dixon was convicted for the December 21, 1990 shooting death of victim Willie Sorrell.

Two affidavits in the name of Sheenee FRIEND have been submitted on behalf of FLETCHER. In essence both affidavits state, among other things, detectives told FRIEND to pick FLETCHER out of a photo array lineup and later told FRIEND to pick FLETCHER out of a physical lineup.

Reporting Investigators (R/Is) assigned to locate and interview FRIEND regarding the affidavits.

On March 5, 2015 at approximately 9:25 AM R/Is located FRIEND at her residence. Friend was advised R/Is represented the Cook County State's Attorney's Office. R/Is requested an interview regarding the affidavit in her name and events surrounding the shooting death of victim Willie Sorrell; FRIEND agreed.

In summary FRIEND stated she could read and write. She attended Austin High School until the tenth grade.

02CR-16669

FRIEND was shown both affidavits and she recalled both of them. She stated it was her signature on both affidavits.

R/Is asked FRIEND how she knew witness/victim COOPER. FRIEND stated she knew him through her father.

R/Is asked FRIEND if she knew FLETCHER before the murder and she said she did not. FRIEND then remarked that she met members of FLETCHER'S family after FLETCHER was arrested as they kept coming by her residence telling her not to come to court. She recalled a female black in her early twenties who identified herself as FLETCHER'S daughter and a tall skinny dark skinned older male black who identified himself as FLETCHER'S uncle. She did not know either of their names but said she recalled seeing the male around the neighborhood. She thought he might have lived somewhere on Laramie.

FRIEND continued and stated that she was given money not to go to court. FRIEND explained saying she found $100.00 money orders made out to her and left in her mail box. She believed it happened on three occasions. FRIEND stated she told the detectives and a State's Attorney about people telling her not to come to court and giving her money not to appear in court. She cashed the money orders but went to court. FRIEND said she told the truth at the Grand Jury and when she testified in court.

FRIEND was asked if she recalled the detectives she dealt with and she could only remember that the two she spoke with most of the time years after the incident were two older white males; no further description.

FRIEND was asked if any detective or officer threatened her or told her who to identify at any time. She said no detective threatened her or told her who to identify at any time. FRIEND stated she told police and detectives the truth about what happened initially and told detectives the truth years later. She said she was treated well by detectives and police at the time of the incident and was treated well years later.

At this time Inv. Brannigan read both affidavits out loud to FRIEND as she followed along. FRIEND remarked that the affidavits were not accurate and truthful. R/Is asked FRIEND why she signed the affidavits if they were not truthful and accurate. FRIEND replied, "So these people would leave me the fuck alone."

R/Is asked FRIEND to recount how she came to sign the first affidavit. FRIEND recalled a woman started to come to her (FRIEND'S) residence saying she was FLETCHER'S daughter and FLETCHER was a changed man. The woman also said FLETCHER did not do the murder. At times the woman came with a child she claimed was her daughter. She also recalled talking to a male black, whose name she did not recall, who came to her residence. The man told her he was an "advocate" for people wrongfully convicted and was working for FLETCHER. She believed the man also interviewed her over the phone. Through this "advocate" she eventually agreed to meet with a female lawyer who worked for FLETCHER. They met at a nearby restaurant named McArthur's. She was driven to the restaurant by the "advocate." FRIEND thought they drove in

CCSAO_Conflicts_FletcherDixonBogucki_20cv4768_CIU_000356
**CCSAO-CIU 000425**

02CR-16669

a gray Honda belonging to the "advocate." At McArthur's restaurant she met a heavy set female white in her late 40's with blonde hair who said she was FLETCHER'S lawyer. She recalled the female white lawyer presented her with the affidavit all typed out and FRIEND said she signed it. FRIEND said it was the first time she spoke to the female white lawyer.

FRIEND was asked to recount how the second affidavit came about. It was FRIEND'S recollection that she was contacted by the same male black "advocate" and asked if she would again go to McArthur's restaurant and meet with FLETCHER'S lawyer. She agreed to go to the restaurant and the male black "advocate" drove them both. She believed they rode in the same gray car. At the restaurant FRIEND was presented with the second affidavit all typed out. She believed it was the same heavy set female white attorney who presented the first affidavit. FRIEND was certain she was not interviewed by the male black "advocate" or the heavy set female white lawyer prior to being presented with the second affidavit in the restaurant.

R/Is asked FRIEND if she would review both affidavits and mark what was true, what was false and make any notations necessary to accurately explain what was written in the affidavit; she agreed.

FRIEND then reviewed both affidavits marking what was true and what was false. She made handwritten notations when necessary. She initialed her notations then signed and dated both affidavits. R/Is also signed and dated both affidavits.

In essence, among other things, FRIEND'S review documented through her notations she was not told who to pick out of photo lineups and physical lineups. Additionally, her notations document that she only signed both affidavits to get FLETCHER'S lawyers to leave her alone. See both affidavits for details.

At this time the interview was ended. FRIEND agreed to another interview if necessary.

Both affidavits with original handwritten notations and signatures inventoried. Copies are an attachment to this report.

INVESTIGATORS: _____

SUPERVISORY REVIEW: _____

3 of 3

CCSAO_Conflicts_FletcherDixonBogucki_20cv4768_CIU_000357
CCSAO-CIU 000426