# EXHIBIT 50



Transcript of the Deposition of
**Daniel Brannigan**
**Case:** James Fletcher, Jr. v. Jerome Bogucki, et al.
**Taken On:** August 16, 2024

Royal Reporting Services, Inc.
Phone:312.361.8851
Email:info@royalreportingservices.com
Website: www.royalreportingservices.com

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES FLETCHER JR.,             )
                                )
          Plaintiff,            )
                                )
     vs.                        )   No. 20 CV 4786
                                )
JEROME BOGUCKI, ANTHONY         )
NORADIN, RAYMOND SCHALK,        )
ANTHONY WOJCIK, UNKNOWN CITY    )
OF CHICAGO POLICE OFFICERS,     )
and the CITY OF CHICAGO,        )
                                )
          Defendants.           )


          The deposition of DANIEL BRANNIGAN,
called by the Defendant for examination, taken
pursuant to notice and pursuant to the Federal
Rules of Civil Procedure for the United States
District Courts pertaining to the taking of
depositions, taken at the offices of
Hale & Monico, Room 301, 53 West Jackson
Boulevard, Chicago, Illinois, before Kari
Wiedenhaupt, Certified Shorthand Reporter
commencing at 10:20 a.m. on August 16, 2024.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 2

```
 1   APPEARANCES:

 2      LOEVY & LOEVY
        MR. SEAN STARR
 3      311 North Aberdeen Street
        Third Floor
 4      Chicago, Illinois 60607
        Phone:  312.243.5900
 5      E-mail:  sean@loevy.com

 6          -and-

 7      LAW OFFICE OF JENNIFER BLAGG
        MS. JENNIFER L. BLAGG (via videoconference)
 8      1509 West Berwyn Avenue
        Suite 201E
 9      Chicago, Illinois 60640
        Phone:  773.859.0081
10      E-mail:  jennifer@blagglaw.net

11          On behalf of the Plaintiff;

12      BURNS NOLAND
        MS. KATHERINE C. MORRISON
13      311 South Wacker Drive
        Suite 5200
14      Chicago, Illinois 60606
        Phone:  312.982.0090
15      E-mail:  kmorrison@burnsnoland.com

16          On behalf of the Defendant, City of
            Chicago;
17
        HALE & MONICO, LLC
18      MS. ALLYSON L. WEST
        53 West Jackson Boulevard
19      Suite 334
        Chicago, Illinois 60604
20      Phone:  312.341.9646
        E-mail:  awest@halemonico.com
21
            On behalf of the Individual Defendants;
22

23

24
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 3

```
 1   APPEARANCES (CONTINUED):

 2     LAW OFFICES OF JOHN C. COYNE
       MR. JOHN C. COYNE
 3     53 West Jackson Boulevard
       Suite 1750
 4     Chicago, Illinois  60604
       Phone:  312.929.4308
 5     E-mail:  jcc@johnccoynelaw.com

 6          On behalf of the Deponent;

 7     COOK COUNTY STATE'S ATTORNEY'S OFFICE
       MR. W. CLIFTON HOLMES
 8     500 Richard J. Daley Center
       Chicago, Illinois  60602
 9     Phone:  312.603.5440
       E-mail:  william.holmes@cookcountysao.com
10
            On behalf of the State's Attorney's
11          Office.

12
       ALSO PRESENT:  Lo Ramanujam, paralegal at
13                    Hale & Monico (via
                      videoconference)
14

15                    *   *   *   *   *   *

16

17

18

19

20

21

22

23

24
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 4

1                     I N D E X

2    WITNESS                              PAGE

3    DANIEL BRANNIGAN

4       Examination by Ms. West             6

5       Examination by Mr. Starr            98

6

7

8                   E X H I B I T S

9    NUMBER                        MARKED FOR ID

10   Brannigan Deposition Exhibit

11          No. 1                          18

12          No. 2                          63

13          No. 3                          77

14          No. 4                          90

15          No. 5                         290

16          No. 6                         298

17          No. 7                         304

18          No. 8                         309

19          No. 9                         318

20          No. 10                        336

21          No. 11                        340

22          No. 12                        379

23

24

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 5

1                    (Whereupon, the witness was duly

2                     sworn.)

3       THE COURT REPORTER:  Just for the record,

4    would counsel like to introduce yourselves and

5    state whom you represent?

6       MS. WEST:  Sure.

7            Just for the record, my name is Allyson

8    West.  I represent the individual defendant

9    officers.

10      MS. MORRISON:  Katherine Morrison.  I

11   represent City of Chicago.

12      MR. HOLMES:  Cliff Holmes.  I represent the

13   Cook County State's Attorney's Office.

14      MR. STARR:  Sean Starr, along with Jennifer

15   Blagg, who is attending remotely, and we

16   represent the plaintiff in this matter.

17           Can -- Ms. Blagg, can you hear us?

18      MS. BLAGG:  Yes, I can.

19      MR. STARR:  Okay.  Great.

20      MR. COYNE:  John Coyne on behalf of the

21   witness.

22

23

24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 6

```
 1                    DANIEL BRANNIGAN,
 2   having been first duly sworn, was examined and
 3   testified as follows:
 4                       EXAMINATION
 5   BY MS. WEST:
 6        Q.   Mr. Brannigan --
 7        A.   Yes.
 8        Q.   -- can you state your name and spell
 9   your last name for the record, please?
10        A.   Daniel Brannigan; D-A-N-I-E-L, B as in
11   boy, R-A-N-N-I-G-A-N.
12        Q.   Mr. Brannigan, like I said, my name is
13   Allyson West.  I represent the defendant
14   officers that have been sued by James Fletcher.
15   I'm going to ask you some questions.
16             Have you ever taken part in a
17   deposition before?
18        A.   Yes, ma'am.
19        Q.   I won't bore you with all the ground
20   rules then.  I'm sure your attorney let you
21   know, but if at any point you need to take a
22   break, let me know.  We will take a break.  All
23   I ask is that you answer the question pending
24   before we take that break.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 7

1          Understood?

2     A.    Yes, ma'am.

3     Q.    If you don't understand a question that

4  I ask you, please let me know.  I will try to

5  repeat it or rephrase it until you do understand

6  the question.

7          Understood?

8     A.    Yes, ma'am.

9     Q.    And just like what you're doing right

10 now, we will try our best not to talk over each

11 other so that the court reporter can take down

12 everything that we are saying accurately.

13         Understood?

14    A.    Yes, ma'am.

15    Q.    Okay.  Did you do anything to prepare

16 for your deposition today?

17    A.    Yes, ma'am.

18    Q.    What did you do?

19    A.    Read some reports and documents related

20 to this case.

21    Q.    Okay.  Do you have a recollection of

22 what documents you reviewed prior to your

23 deposition this morning?

24    A.    Copies of affidavits and my report.  I

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 8

1   think an arrest report.

2       MR. COYNE:  I'm sorry.  What?

3       THE WITNESS:  An arrest report.

4       MR. COYNE:  Oh, right.

5   BY THE WITNESS:

6       A.   An arrest report of Ms. Friend.  I

7   think that's all I recall right now.

8   BY MS. WEST:

9       Q.   **Other than meeting with your counsel,**

10  **did you speak with anyone in preparation for**

11  **your deposition today?**

12      A.   I spoke to Carroll, who was my partner

13  on this.

14      THE COURT REPORTER:  Carroll?

15      THE WITNESS:  Carroll, C-A-R-R-O-L-L.  First

16  name Gerry; G as in George, E-R-R-Y.

17  BY MS. WEST:

18      Q.   **And when did you speak with**

19  **Mr. Carroll?**

20      A.   Pardon me?

21      Q.   **When did you speak with Mr. Carroll?**

22      A.   Maybe a week ago, two weeks ago.  I

23  don't recall.

24      Q.   **And did you discuss the substance of**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 9

1    the underlying investigation that you and

2    Mr. Carroll did in this case?

3        A.   I just asked him what he recalled, if

4    he recalled anything.

5        Q.   Okay.  And did Mr. Carroll recall

6    anything?

7        A.   No.  He said he would take a look at

8    some reports.

9        Q.   Did you have any further conversation

10   with Mr. Carroll about --

11       A.   That might have been a while back when

12   this first came up.  So maybe two conversations

13   with him.

14       Q.   Did you speak with Mr. Carroll after he

15   had an opportunity to look at some paperwork?

16       A.   I don't remember.  I guess he did,

17   yeah.  I'm sure he did, yeah.  Okay.

18       Q.   Okay.  Did -- after looking at

19   paperwork, did Mr. Carroll indicate to you he

20   had any recollection of your -- his involvement?

21       A.   He -- he recalled it, but it was -- he

22   had no details for me.  He added nothing to

23   mine.

24       Q.   Have you had any conversations with

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 10

1   anyone else other than Mr. Carroll and your

2   attorney in preparation for your deposition

3   today?

4        A.   That's all I recall.  No.  I requested

5   the reports, yeah, from -- who did I request

6   them from?  Before I had -- before I had

7   reports, I knew about this.  I was told about

8   the suit, and it did not ring a bell, nothing,

9   zero, zip, nada.  So I had somebody dig them up

10  for me.

11       Q.   And was that somebody that you had dig

12  them up at the State's Attorney's Office?

13       A.   Yes.

14       Q.   And you're still employed with the

15  State's Attorney's Office?

16       A.   Pardon?

17       Q.   You're still employed with the State's

18  Attorney's Office?

19       A.   We were, yeah.

20       Q.   I'm sorry.  Are you currently?

21       A.   Oh, no, no, no.  I am currently

22  retired.

23       Q.   When did you retire?

24       A.   January 31st.  I mean -- excuse me.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 11

1   December 31st, 2021.

2       Q.   Okay.  So you contacted somebody at the

3   State's Attorney's Office?

4       A.   Right.

5       Q.   And had them request documentation

6   related to your investigation in the Jimmy

7   Fletcher case; is that right?

8       A.   That's correct.

9       Q.   Do you remember that individual's name?

10      A.   Pardon?

11      Q.   Do you recall that person's name that

12  you asked for the documents from?

13      A.   I believe it was Margaret Bamford at

14  the time.  She would have been the sergeant at

15  the time.

16      Q.   Had you worked with Margaret in the

17  past?

18      A.   Yes.

19      Q.   And did Margaret send you those

20  documents via e-mail, or were they paper copies

21  that were delivered to you?

22      A.   With me, probably paper copies.

23      Q.   Okay.  So you -- let's just -- so the

24  record is clear, so you retired from the Cook

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 12

1    County State's Attorney's Office on

2    December 31st of 2021; is that right?

3        A.    Correct.

4        Q.    Okay.  And prior to your retirement,

5    how long had you been with the office?

6        A.    Since January '05.

7        Q.    And when you worked at the State's

8    Attorney's Office, in what capacity were you

9    employed?

10       A.    I was an investigator there.

11       Q.    And was that your title the entire time

12   that you worked at the State's Attorney's

13   Office?

14       A.    Yes, ma'am.

15       Q.    Just generally, what did your duties

16   consist of as an investigator with the State's

17   Attorney's Office?

18       A.    There is many roles for an investigator

19   to play at the State's Attorney's Office.  My

20   first role was working in child support, which

21   was basically handing out summons to people who

22   were in arrears on child support.  I then

23   went -- as an investigator, and then I went to

24   the post-conviction unit, which --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 13

1   post-conviction, capital litigation, and

2   conflicts cases.  And I remained there for the

3   duration.

4        Q.   And when did you go to the

5   post-conviction unit?

6        A.   Maybe a year after my arrival at the

7   State's Attorney's Office.  I did approximately

8   a year, eight months, nine months at the child

9   support unit.

10       Q.   So I want to focus in on your time in

11  the post-conviction unit.

12            How would you typically receive your

13  assignments?

14       A.   From the State's Attorney.  From the

15  State's Attorney to the supervisor, sometimes to

16  yourself directly if the supervisor wasn't

17  around.

18       Q.   Okay.  And would you receive

19  assignments both by somebody filling out an

20  investigator form --

21       A.   That's correct.

22       Q.   And would you also receive assignments

23  by somebody orally coming and seeking you out

24  and talking to you about something?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 14

1      A.   It may have happened on occasion, look

2    something up real quick, but 99 percent of the

3    time it would be a written -- a written request.

4      MR. COYNE:  I need a clarification.  You said

5    you get your assignment from the State's

6    Attorney or from an Assistant State's Attorney?

7      THE WITNESS:  Oh, Kimmie never called me up.

8      MR. COYNE:  So you mean an Assistant State's

9    Attorney?

10     THE COURT REPORTER:  Kimmie?

11     THE WITNESS:  Kimmie.  Kimmie Fox.  No.  It

12   would be an assistant that would --

13   BY MS. WEST:

14     **Q.   Yes.**

15          **Do you have an independent recollection**

16   **of receiving an assignment in James Fletcher's**

17   **case?**

18     A.   No.  I did not.

19     **Q.   So --**

20     A.   At what point in time?  Now?  Now I

21   know all about it.

22     **Q.   Okay.  So, yeah, let's take this little**

23   **by little.**

24          **So as you sit here today, do you have**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 15

1   an independent recollection of receiving the

2   assignment for James Fletcher's case?

3       A.   No.

4       Q.   Okay.  After looking at the paperwork

5   in preparation for your deposition today, were

6   you able to determine when approximately you

7   received that assignment?

8       A.   I can't tell you the exact date, but

9   sometime in -- I believe it was 2015.

10      Q.   Okay.  As you sit here today, do you

11  have an understanding of what stage

12  Mr. Fletcher's case was in when you first

13  received the assignment in roughly 2015?

14      MR. COYNE:  Objection, form and foundation.

15          Go ahead.

16  BY THE WITNESS:

17      A.   I don't know if it was in the

18  post-conviction or the conviction integrity

19  stage, if he was done with his post-conviction

20  work or if it was -- that had already been done

21  and I was now in the conviction integrity phase

22  of his whatever you want to call it.

23  BY MS. WEST:

24      Q.   And when you were at the State's

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 16

1  **Attorney's Office working in the post-conviction**

2  **unit, would you handle assignments both from**

3  **cases that were still in the post-conviction**

4  **phase as well as those that were in the**

5  **integrity unit?**

6      A.   Conviction integrity was formed after I

7  had been assigned to the post-conviction and

8  everything, and conviction integrity just became

9  another part of that squad or unit.

10     **Q.   Do you recall what time period that**

11 **happened?**

12     A.   No, ma'am.

13     **Q.   Do you recall who you received the**

14 **assignment from to work on Mr. Fletcher's case?**

15     A.   No.  No, ma'am.

16     **Q.   Do you --**

17     A.   Do I recall then -- or I recall -- I

18 have an idea now, but I don't -- and I didn't

19 recall when I --

20     THE COURT REPORTER:  Sorry?

21     MS. WEST:  Pardon me.

22     THE COURT REPORTER:  I didn't hear the end of

23 what you said.

24     THE WITNESS:  I'm sorry.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 17

1  BY THE WITNESS:

2      A.    When I first started getting

3  notifications that there was a lawsuit, I didn't

4  know anything about anything.  I now have an

5  idea who may have been one of the people

6  involved.

7  BY MS. WEST:

8      **Q.    And is that based on your review of**

9  **documents?**

10     A.    Correct.

11     **Q.    Okay.  And who do you think may have**

12 **given you the assignment?**

13     A.    I think it was maybe Galassini, Nancy

14 Galassini, and I think it may have been Gina

15 Savini.  There may be others, but they --

16 those -- that's who I believe right now.

17     **Q.    In 2015 when you were working as an**

18 **investigator for the State's Attorney's Office,**

19 **did you have a partner that you typically worked**

20 **with?**

21     A.    Usually, yes.

22     **Q.    Okay.  And who was your partner at the**

23 **time?**

24     A.    At what point?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 18

1      Q.    In 2015.

2      A.    That would have been Carroll for the

3    most part.  Not permanently assigned partner,

4    but for the most part.  It's not like you didn't

5    work with other individuals.

6      MS. WEST:  I want to show you what we will

7    mark as Brannigan Exhibit 1.  Let me see.  All

8    right.

9                    (Whereupon, Brannigan Deposition

10                     Exhibit No. 1 was marked for

11                     identification.)

12     MS. WEST:  All right, Mr. Brannigan.

13          Oh, for the record, this document is

14   Bates-stamped -- and I will go with the State's

15   Attorney Bates stamp.  It's CCSAO-CIU 000424

16   through 426.

17   BY MS. WEST:

18     Q.    Mr. Brannigan, have you seen this

19   document before?

20     A.    Say that again, ma'am.

21     Q.    Have you seen this document before?

22     A.    Yes.

23     Q.    And what is this document?

24     A.    This appears to be a photocopy of a

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 19

1    report prepared by me and Detective Carroll --

2    or Investigator Carroll related to an interview

3    with Sheenee Friend, F-R-I-E-N-D.

4        **Q.   And is this one of the documents that**

5    **you reviewed in preparation for your deposition**

6    **today?**

7        A.   Yes, ma'am.

8        **Q.   Do you have an independent recollection**

9    **of -- strike that.**

10           **Let me ask you this first:  So you see**

11   **the date of assignment at the top of this -- the**

12   **report where it says December 10th, 2014?**

13       A.   Yes, ma'am.

14       **Q.   Okay.  And then do you see reporting**

15   **date, March 5th, 2015?**

16       A.   Yes, ma'am.

17       **Q.   Do you know if you received the**

18   **assignment in 2014 based on this?**

19       A.    That -- that would indicate that's the

20   day that I first received the assignment.

21   That's correct.

22       **Q.   Do you have a recollection if it took**

23   **you multiple attempts to finally locate and meet**

24   **with Ms. Friend?**

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 20

1      MR. STARR:  Objection, foundation.

2      MS. WEST:  You can answer.

3      MR. STARR:  You can answer.

4      MR. COYNE:  You can answer unless you're

5   instructed not to answer.  Okay?  If somebody

6   objects, you can still answer.

7   BY THE WITNESS:

8      A.   I -- I really don't recall.

9   BY MS. WEST:

10     **Q.   Okay.  When --**

11     A.   I suspect due to the time frame it may

12  have been a while.

13     **Q.   Okay.  And that's what I was getting**

14  **at.  Because it looks like there is, you know, a**

15  **little less than -- I mean, it's a few months**

16  **there.**

17          **But you don't have a recollection of**

18  **how long, if it took you multiple attempts?**

19     A.   No, ma'am.

20     **Q.   Okay.  All right.  Do you have an**

21  **independent recollection of interviewing**

22  **Ms. Friend?**

23     A.   I'm sorry.  My hearing is not real

24  good.  That's why I'm --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 21

```
 1      Q.    No, no.  I understand.

 2      A.    Okay.

 3      Q.    Do you have an independent recollection

 4   of interviewing Ms. Friend?

 5      A.    Yes.

 6      Q.    Tell me generally what you recall about

 7   your interview with Ms. Friend.

 8      A.    It was a very pleasant interview.  It

 9   was not long -- not long and drawn out.  It was

10   in the kitchen of -- a room in her apartment.

11   That's basically it.

12      Q.    Okay.  Based on this report, can you

13   tell if you drafted this report or if

14   Mr. Carroll did?

15      A.    I would say it's probably 80 percent

16   my -- my drafting it.  I mean, Mr. Carroll

17   reviewed it and may have made a change during

18   the drafts.

19      Q.    Is that typically how it worked?  Would

20   one investigator take the lead on drafting a

21   report and the other would review it?

22      MR. COYNE:  Objection, form.

23          Go ahead.

24      THE WITNESS:  Pardon?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 22

1      MR. COYNE:  Go ahead.  I just objected to

2  form.  You can answer.

3  BY THE WITNESS:

4      A.   Yes.  That would be commonplace.

5  BY MS. WEST:

6      **Q.   And on page 3 of this document, do you**

7  **see your signature?**

8      A.   I see -- I see two signatures.  One

9  appears to be mine.  I'm not sure who the

10 sergeant was at the time.  And would you like me

11 to venture a guess at who signed off on it?

12     MR. COYNE:  I would say not.  I would urge

13 you not to guess during the deposition.

14 BY MS. WEST:

15     **Q.   That's okay.**

16          **Let me ask you:  So were you given --**

17 **when you started working as an investigator with**

18 **the State's Attorney's Office, were you assigned**

19 **a star number or a number, essentially?**

20     A.   Yes, I was.

21     **Q.   Okay.  And the 334 that's next to your**

22 **signature, was that your number?**

23     A.   That would have been my star number,

24 yes.  That was my star number.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 23

```
 1        Q.   And then are you familiar with
 2   Mr. Carroll's signature?
 3        A.   Yes.
 4        Q.   Is that his signature next to yours?
 5        A.   Yes.  It appears to be his signature.
 6        Q.   Okay.  And are you aware of what his
 7   star number was as an investigator?
 8        A.   505.
 9        Q.   Okay.  Thank you.
10             And it looks like there is also a date
11   above the names where the line "investigator"
12   is.  It looks like it says 13 MAR 15.
13             Do you see that?
14        A.   Yes.
15        Q.   Would that have -- is that in your
16   handwriting?
17        A.   Is that what?
18        Q.   In your handwriting?
19        A.   Appears to be, yes.
20        Q.   Okay.  And would you have dated it at
21   the same time you signed it?
22        A.   Oh, yes, yes.
23        Q.   Okay.  Okay.  When looking through this
24   report, it looks like based on the report, your
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 24

1    assignment was to locate and interview

2    Ms. Friend; is that right?

3        A.   That's correct.

4        Q.   Were you aware at the time that

5    Ms. Friend was a witness for the defense?

6        MR. STARR:  Objection to foundation.

7    BY THE WITNESS:

8        A.   That she was a witness for defense?

9    BY MS. WEST:

10       Q.   Yes.

11       A.   No.  I had no idea.

12       Q.   So up at the top of the report where it

13   says "Synopsis of Report" on page 1 -- right

14   here on page 1.

15       A.   Oh, I'm sorry.

16       Q.   No.  You're fine.

17       A.   Okay.

18       Q.   It says, "located and interviewed

19   defense witness."

20            Do you see that?

21       MR. COYNE:  What part are you at?  Okay.  Got

22   you.

23   BY THE WITNESS:

24       A.   Okay.  Okay.  Yes.

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 25

1    BY MS. WEST:
2        **Q.    Okay.  So based on the report, did you**
3    **have the information provided to you that she**
4    **was --**
5        A.    Yeah.  I -- I must have or that
6    wouldn't be here.
7        MR. COYNE:  And, Dan, just make sure you let
8    her finish the questions.
9        THE WITNESS:  Yes.
10       MR. COYNE:  Otherwise, the court reporter
11   will get mad at me.
12       MR. STARR:  And I was trying to make an
13   objection, a belated objection as to form,
14   foundation, and speculation.
15   BY MS. WEST:
16       **Q.    Okay.  Do you have a recollection of**
17   **who you received the information from that**
18   **Ms. Friend was a defense witness?**
19       A.    As I sit here today right now, no.
20       **Q.    Based on your report, it looks like you**
21   **were talking to Ms. Friend about two affidavits**
22   **that she had previously signed; is that correct?**
23       A.    Correct.
24       **Q.    Okay.  And based on your report, one**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 26

1  **affidavit was dated August 26th, 2011, and one**

2  **was dated March 5th, 2012.**

3         **Do you see that?**

4     MR. STARR:  Did you say March 5th?

5     MS. WEST:  I'm sorry.  April 5th.  Thank you.

6  All right.

7  BY THE WITNESS:

8     A.   Go over the dates again.

9  BY MS. WEST:

10     **Q.   Sure.**

11         **So I'm looking at that evidence and**

12  **inventory section --**

13     A.   Got you.

14     **Q.   -- on page 1.**

15     A.   Yes, ma'am.

16     **Q.   So it looks like based on that it says**

17  **the first affidavit from Ms. Friend was from**

18  **August 26, 2011.**

19         **Do you see that?**

20     A.   Correct.

21     **Q.   And then the second affidavit was from**

22  **April 5th, 2012.**

23         **Do you see that?**

24     A.   Yes, ma'am.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 27

```
 1        Q.    Okay.
 2        A.    I can't read my own report.  I
 3   apologize.
 4        Q.    No.  You're fine.
 5              I want to direct your attention to the
 6   first paragraph that starts with "Two
 7   affidavits" on page 1.
 8        A.    Page 1.
 9        Q.    Page 1 where it says --
10        A.    First half -- first paragraph.
11        Q.    Yes.  First paragraph, and it starts
12   with "Two affidavits."
13              Do you see that?
14        A.    Correct.
15        Q.    Okay.  Essentially, you note, "In
16   essence, both affidavits state, among other
17   things, detectives told Friend to pick Fletcher
18   out of a photo array lineup and later told
19   Friend to pick Fletcher out of a physical
20   lineup."
21              Do you see that?
22        A.    Yes.
23        Q.    And is -- is that something that you
24   documented after reading both of her affidavits?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 28

```
 1      MR. STARR:  Objection to form and foundation,
 2   calls for speculation.
 3   BY THE WITNESS:
 4      A.   Say again, please.
 5      MS. WEST:  Sure.
 6           Would you mind reading it back?
 7                (Whereupon, the record was read
 8                 as requested.)
 9   BY THE WITNESS:
10      A.   Correct.
11   BY MS. WEST:
12      Q.   Okay.  Would you have learned the
13   information that I just read that's in this
14   first full paragraph from any other source other
15   than the two affidavits of Ms. Friend?
16      MR. STARR:  Same objections.
17   BY THE WITNESS:
18      A.   No, ma'am.
19   BY MS. WEST:
20      Q.   Okay.  The second -- all right.  Let's
21   go to page 2 of your report.
22           So on the second page of your report --
23   so I'm at the third paragraph -- or the second
24   full paragraph on page 2.  It starts with
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 29

1    "R/Is."

2            Based on this paragraph, Ms. Friend

3    relays to you that she didn't know who

4    Mr. Fletcher was prior to the homicide?  Do you

5    agree?

6        A.    One, two -- third full paragraph?

7        Q.    Correct.

8        A.    Right, okay.

9              She said she did not.

10       Q.    Okay.  On down in that paragraph,

11   Friend indicated to you that after

12   Mr. Fletcher's arrest, his family would visit

13   her and tell her not to come to court.

14             Do you see that?

15       MR. COYNE:  Sorry.  Is that the next

16   paragraph or the same paragraph?

17       MS. WEST:  Same paragraph, next sentence.

18       MR. STARR:  Objection to form.

19   BY THE WITNESS:

20       A.    Okay.  And repeat the question.  I'm

21   sorry.

22   BY MS. WEST:

23       Q.    Sure, sure.

24             So let me do it this way.  I will

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 30

```
 1    direct you to that same paragraph we're looking
 2    at that starts with "R/Is."
 3         A.   Okay.
 4         Q.   Okay.  The second sentence that starts
 5    with "Friend."
 6         A.   Correct.
 7         Q.   Okay.  "Friend then remarked that she
 8    met members of Fletcher's family after Fletcher
 9    was arrested as they kept coming by her
10    residence telling her not to come to court."
11              Do you see that?
12         A.   Yes.
13         Q.   Do you have a recollection of
14    Ms. Friend telling you that?
15         A.   Yes.
16         Q.   What else do you have a recollection of
17    Ms. Friend telling you relative to
18    Mr. Fletcher's family members coming to her
19    house and telling her not to go to court?
20         MR. STARR:  I'm going to object to form and
21    foundation and calls for speculation.  He
22    already testified to the extent of his
23    independent recollection.
24              Go ahead.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 31

```
 1   BY THE WITNESS:
 2       A.   Basically what's in that paragraph.
 3   BY MS. WEST:
 4       Q.   And when you say "what's in that
 5   paragraph," the paragraph later details that
 6   there were two individuals that would come to
 7   her house.
 8            Do you see that?
 9       A.   Correct.
10       Q.   And one of the individuals was a woman
11   who identified herself as Fletcher's daughter.
12       A.   Correct.
13       Q.   And do you remember Ms. Friend telling
14   you that?
15       A.   Yes.
16       MR. STARR:   Same objections.
17   BY MS. WEST:
18       Q.   I'm sorry.  Go ahead.
19       A.   Yes.
20       Q.   And she also indicated -- Ms. Friend
21   also indicated that a tall, skinny, dark-skinned
22   older man identified himself as Fletcher's
23   uncle.
24            Do you recall her telling you that?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 32

```
 1      A.   Yes.
 2      MR. COYNE:  Just for the record, it says
 3  "dark-skinned older male black."  Just for the
 4  record, that's what it says.
 5      MR. STARR:  Same objections.
 6      MS. WEST:  Okay.  Now I've lost my frame
 7  of --
 8      MR. STARR:  Sure.  So --
 9      THE WITNESS:  Okay.  Let's go.
10  BY MS. WEST:
11      Q.   Well, let me just back up.
12      A.   Okay.  Let's go again.
13      Q.   Thank you.  All right.
14           So we have already established that
15  Ms. Friend told you that a female who identified
16  themselves as Fletcher's daughter came to her
17  house, correct?
18      MR. STARR:  Objection to form.
19  BY THE WITNESS:
20      A.   Yes.
21  BY MS. WEST:
22      Q.   Okay.  And she also -- Ms. Friend also
23  indicated to you that a male black who was
24  skinny, dark-skinned, who identified himself as
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 33

1   **Fletcher's uncle would come to her house?**

2       MR. STARR:  Objection to form and foundation.

3   Are you -- I don't mean to interrupt too much,

4   but are you asking him about his independent

5   recollection now?  Because your previous

6   question was, but now you're just summarizing

7   what it says.  So I'm just not sure what your

8   question is.

9       MS. WEST:  Yeah.  I'm going to do it both

10  ways.

11      MR. STARR:  Okay.  Okay.

12      MS. WEST:  Yeah.

13      THE WITNESS:  Can you repeat what you said?

14  I couldn't --

15      MR. STARR:  Yeah.  Sure.  No problem.  I

16  objected and asked Ms. West whether or not she

17  was asking about your independent recollection

18  or what the report says.

19      MR. COYNE:  Right.  And for the record, he

20  did say that what was told to him is summarized

21  in this paragraph.  So it sounds like it's both,

22  but that's just for the record.

23  BY MS. WEST:

24      **Q.   All right.  Let's clear it up for the**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 34

1    record.  Okay?  The paragraph that we're focused

2    on right now is talking about individuals from

3    Mr. Fletcher's family that would come to

4    Ms. Friend's house and tell her not to go to

5    court.

6           Is that an accurate summary of the

7    paragraph we're focused on?

8        A.   Yes, it is.

9        Q.   Okay.  And you have an independent

10   recollection of Ms. Friend telling you that

11   members of Mr. Fletcher's family would come to

12   her home and tell her not to go to court; is

13   that right?

14       MR. STARR:  Objection; form, foundation,

15   calls for speculation, mischaracterizes his

16   prior testimony regarding his independent

17   recollection.

18   BY THE WITNESS:

19       A.   Yes.  Yes, I do.

20   BY MS. WEST:

21       Q.   And do you have an independent

22   recollection of Ms. Friend telling you that two

23   specific individuals from Mr. Friend's -- I'm

24   sorry -- from Mr. Fletcher's family would come

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 35

```
 1   to her house?

 2        MR. STARR:  Same objections.

 3   BY THE WITNESS:

 4        A.   All right.  Say that one again, ma'am.

 5   BY MS. WEST:

 6        Q.   Sure.

 7        A.   I thought we just did this.  Go ahead.

 8        Q.   We -- yeah.  We are just doing it again

 9   to make sure the record is clear here.

10             Do you have an independent recollection

11   of Ms. Friend telling you that two family

12   members, specifically two individuals, would

13   come to her home and tell her not to go to

14   court?

15        MR. STARR:  Form, foundation, speculation.

16   Mischaracterizes his prior testimony regarding

17   his independent recollection.

18   BY MS. WEST:

19        Q.   You can answer.

20        A.   Yes.

21        Q.   Documented here in your report it says

22   that Ms. Friend didn't know either of those

23   individuals' names; is that right?

24        A.   Correct.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 36

1    Q.    Next paragraph on page 2 of your

2  report.

3          Do you have an independent recollection

4  of Ms. Friend telling you that she found money

5  orders in her mailbox?

6    A.    Yes.

7    MR. STARR:  Same objections.

8  BY MS. WEST:

9    Q.    And in your report you documented,

10  "Friend continued and stated that she was given

11  money not to go to court."

12          Do you see that, the next paragraph

13  down?

14    A.    Okay.  So we are -- she is given money

15  to go to court, right?

16    Q.    Money not to go to court.

17    A.    Or not to go to court.

18    Q.    Do you see that?

19    A.    Correct.

20    Q.    Okay.  Do you have a recollection of

21  Ms. Friend telling you that?

22    A.    Yes.

23    MR. STARR:  Objection to form, foundation.

24  Mischaracterizes his prior testimony regarding

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 37

1    his independent recollection.

2    BY MS. WEST:

3        Q.   And in this paragraph -- well, let me

4    ask you this:  Do you have a recollection of

5    Ms. Friend telling you how many times this

6    happened, that she received money in her

7    mailbox?

8        A.   I think she said three times.

9        MR. STARR:  Same objections.

10   BY MS. WEST:

11       Q.   And is that what is also documented in

12   your report?

13       A.   Yes.

14       Q.   Let's just establish this first:  So if

15   Ms. Friend told you something during the course

16   of your interview with her, would you have

17   documented it in your report?

18       A.   Anything related to the case, yes.

19       Q.   Okay.  And, typically, what type of

20   information do you put in a report after

21   interviewing a witness?

22       MR. STARR:  Objection; form, foundation.

23   BY THE WITNESS:

24       A.   I would put --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 38

1      MR. STARR:  Incomplete hypothetical.  Thank

2   you.

3   BY THE WITNESS:

4      A.   I put in what she related to me, a

5   summary of what was related to me.  Unless there

6   is a specific quote, it's a summary.

7   BY MS. WEST:

8      **Q.   And if there -- if you included in your**

9   **report any specific quotes, would it be actually**

10  **in quotations in your report?**

11     MR. COYNE:  Objection, foundation.

12          Go ahead.

13  BY THE WITNESS:

14     A.   Yes, ma'am.

15  BY MS. WEST:

16     **Q.   Okay.  And during this conversation**

17  **with Ms. Friend, did she indicate to you that**

18  **the money that she found in the mailbox was from**

19  **Mr. Fletcher's family?**

20     MR. STARR:  Objection; form, foundation,

21  calls for speculation, assumes facts not in

22  evidence.

23  BY THE WITNESS:

24     A.   Say the question again.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 39

```
 1   BY MS. WEST:
 2       Q.    Sure.
 3            So based on your recollection of having
 4   this conversation with Ms. Friend, was the money
 5   that she was being paid not to go to court from
 6   Mr. Fletcher's family?
 7       MR. STARR:  Objection to form, foundation,
 8   and speculation.  Assumes facts not in evidence.
 9   BY THE WITNESS:
10       A.   I don't see it here in the report, but
11   I -- I believe she -- she told me that she did
12   not know.
13   BY MS. WEST:
14       Q.    That she didn't know who was paying the
15   money?
16       A.   She did not know who was paying the
17   money.
18       Q.    Okay.  Based on this, did she tell you
19   that the money was being left by way of a bribe
20   or a payment for her not to go to court?
21       MR. COYNE:  Objection, form.
22       MR. STARR:  Objection; form, foundation,
23   mischaracterizes what he just testified to.
24
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 40

```
 1   BY THE WITNESS:

 2       A.   No.  She did not say that.

 3   BY MS. WEST:

 4       Q.   In that same paragraph that we're

 5   looking at, you documented in your report that

 6   "Friend stated she told the detectives and a

 7   State's Attorney about people telling her not to

 8   come to court and giving her money not to appear

 9   in court."

10           Do you see that?

11       A.   Yes.

12       Q.   Did you do any follow-up to confirm

13   whether or not Ms. Friend had, in fact, told the

14   State's Attorney's or a detective about that?

15       A.   I don't recall.

16       Q.   Okay.  Did Ms. Friend tell you whether

17   or not the State's Attorney or the detectives

18   did anything with that information that she

19   provided to them?

20       MR. COYNE:  Objection, form.

21   BY THE WITNESS:

22       A.   I don't recall.

23   BY MS. WEST:

24       Q.   The last sentence in that paragraph
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 41

```
 1   is -- says, "Friend said she told the truth at
 2   the grand jury and when she testified in court."
 3          Do you see that?
 4   A.   Yes.
 5   Q.   Okay.  Do you have an independent
 6   recollection of her speaking to you about her
 7   testimony at the grand jury or Mr. Fletcher's
 8   criminal trial?
 9   MR. STARR:  Form, foundation, calls for
10   speculation, mischaracterizes the prior
11   testimony.
12   BY THE WITNESS:
13   A.   No.  She just said she told the truth
14   when she went to court and the grand jury.
15   BY MS. WEST:
16   Q.   Two paragraphs down it still starts
17   with Friend, "Friend was asked."
18          Do you see that?
19   A.   Okay.  I'm at that paragraph.
20   Q.   Okay.  "Friend was asked if any
21   detective or officer threatened her or told her
22   who to identify at any time."
23          Do you see that?
24   A.   Yes.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 42

1     **Q.  When you write it that way, is that**

2  **some -- is that a question that you specifically**

3  **posed to Ms. Friend?**

4     MR. COYNE:  Objection --

5     MR. STARR:  Form, foundation, speculation.

6        Sorry, John.

7     MR. COYNE:  Yeah, sorry.

8        Objection, form.  And join.

9     MR. STARR:  And foundation and speculation.

10  BY THE WITNESS:

11     A.  Yeah.  I proposed that to her.  I said

12  that or Gerry said that.  I can't remember right

13  now.

14  BY MS. WEST:

15     **Q.  And do you have an independent**

16  **recollection of asking Ms. Friend if a detective**

17  **or officer had threatened her or told her who to**

18  **identify?**

19     MR. STARR:  Form, foundation, speculation,

20  mischaracterizes his prior testimony.

21  BY THE WITNESS:

22     A.  I do have that recollection, yes.

23  BY MS. WEST:

24     **Q.  And what did Ms. Friend tell you?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 43

1    A.   That no one threatened her.

2    MR. STARR:  Belated same objections to the

3  second follow-up question.

4  BY THE WITNESS:

5    A.   All right.  That nobody threatened her

6  or told her who -- let me clear my throat.

7       Nobody told her who to identify or

8  nobody threatened her.

9  BY MS. WEST:

10    **Q.   Thank you.**

11       **And when we're talking about identify,**

12  **we mean identifying an offender.**

13       **Is that what we are speaking about or**

14  **what you're documenting in your report?**

15    A.   That's correct.

16    **Q.   Do you have a recollection of**

17  **Ms. Friend telling you that she told the**

18  **detectives the truth about what happened**

19  **initially, and then again years later she told**

20  **the truth?**

21    MR. STARR:  Objection to form and foundation,

22  mischaracterizes his prior testimony, and calls

23  for speculation.

24       Go ahead.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 44

 1    BY THE WITNESS:

 2        A.    Read the question again.  I'm so sorry.

 3    BY MS. WEST:

 4        Q.    **Sure.**

 5              **Do you have an independent recollection**

 6    **of Ms. Friend telling you that she told the**

 7    **truth when she spoke to detectives initially and**

 8    **then again when she spoke with them years later?**

 9        MR. STARR:  Same objections.

10    BY THE WITNESS:

11        A.    Yes.

12    BY MS. WEST:

13        Q.    **Finally, it's documented in this same**

14    **paragraph that Ms. Friend indicated that she had**

15    **been treated well by the police both during the**

16    **initial investigation and the investigation**

17    **years later.**

18              **Do you see that documented?**

19        A.    Yes.

20        Q.    **The -- the last -- the second to last**

21    **paragraph, so one paragraph down, it starts, "At**

22    **this time."**

23        A.    Yes.

24        Q.    **Okay.  Based on this paragraph, it**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 45

1    appears that you read both affidavits aloud to

2    Ms. Friend; is that right?

3        A.   That's correct.

4        Q.   Do you have an independent recollection

5    of reading those affidavits to Ms. Friend?

6        A.   Yes, I do.

7        MR. STARR:  Same objection regarding

8    mischaracterizing his prior testimony.

9    BY MS. WEST:

10       Q.   And when you were reading those

11   affidavits to Ms. Friend, was your partner,

12   Mr. Carroll, present?

13       MR. STARR:  Same objections.

14   BY THE WITNESS:

15       A.   Yes, he was.

16   BY MS. WEST:

17       Q.   And anyone other than yourself,

18   Mr. Carroll, and Ms. Friend present?

19       MR. STARR:  Same objections.

20   BY THE WITNESS:

21       A.   I don't recall anyone else being

22   present.

23   BY MS. WEST:

24       Q.   Do you have a recollection of after you

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 46

1    read those affidavits to Ms. Friend that she

2    indicated to you that both affidavits were not

3    accurate and truthful?

4        MR. STARR:  Objection to form, foundation,

5    and calls for speculation.  It mischaracterizes

6    his prior testimony regarding his independent

7    recollection.

8    BY THE WITNESS:

9        A.   Ms. Friend told me that those

10   affidavits -- I think the term she used on it --

11   were "bullshit."

12   BY MS. WEST:

13       Q.   And what you documented here in your

14   report was that Friend remarked that the

15   affidavits were not accurate and truthful,

16   correct?

17       A.   That's correct.

18       Q.   Do you have an independent recollection

19   of telling -- or strike that.

20           Do you have an independent recollection

21   of asking Ms. Friend why she signed the

22   affidavits even though they weren't truthful?

23       MR. STARR:  Form, foundation, speculation,

24   mischaracterizes his prior testimony regarding

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 47

1   his independent recollection.

2   BY THE WITNESS:

3       A.   I do.

4   BY MS. WEST:

5       **Q.   And what did she tell you?**

6       A.   It -- just what it says here.  That

7   these people, in fact -- that it was quoted, it

8   stood out in my mind.  "So these people would

9   leave me the fuck alone."

10      MR. STARR:  And just for the record,

11  belated -- same objections to the follow-up

12  question.  I just didn't want to interrupt

13  Mr. Brannigan.

14  BY MS. WEST:

15      **Q.   And I know we talked about this**

16  **earlier:  So if there is anything documented in**

17  **your report in quotes, that's an exact quote**

18  **from the person you're interviewing; is that**

19  **right?**

20      A.   That would be correct.

21      **Q.   Okay.  And you indicated on the record**

22  **that Ms. Friend's response, which was documented**

23  **in your report in quotes, is "So these people**

24  **would leave me the fuck alone," correct?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 48

```
 1      A.   That is correct.
 2      Q.   Who was Ms. Friend referring to when
 3  she says she wants these people to leave her
 4  alone?
 5      MR. COYNE:  Objection, foundation and
 6  speculation.
 7      MR. STARR:  Join.  And mischaracterizes his
 8  prior testimony regarding his independent
 9  recollection.
10  BY THE WITNESS:
11      A.   Would you like me to speculate as to
12  who it was?
13  BY MS. WEST:
14      Q.   No.  Only if she told you specifically.
15      A.   Did she say specifically?
16      Q.   Yes.
17      A.   The only people she is referring to is
18  the family and the attorneys --
19      MR. STARR:  Belated --
20      THE WITNESS:  Oh, the supposed attorneys or
21  whatever they were --
22      MR. STARR:  Belated --
23  BY THE WITNESS:
24      A.   -- that were coming to her.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 49

1        MR. STARR:  Belated objection.  Form,

2   foundation, speculation, and mischaracterizes

3   his prior testimony regarding his independent

4   recollection.

5   BY MS. WEST:

6        Q.    The final paragraph there on page 2 --

7        A.    Okay.

8        Q.    -- do you have a recollection of

9   Ms. Friend telling you that a woman started

10  coming to her home telling her that she was

11  Fletcher's daughter and that Fletcher was a

12  changed man?

13       MR. STARR:  Form, foundation, speculation,

14  and mischaracterizes his prior testimony.

15  BY MS. WEST:

16       Q.    You can answer.

17       A.    Yes.

18       Q.    Okay.  What specifically do you

19  remember about that conversation relative to the

20  woman who came to Ms. Friend's house and

21  identified herself as Fletcher's daughter?

22       MR. STARR:  Same objections.

23  BY THE WITNESS:

24       A.    Basically, what's in the -- the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 50

```
 1   paragraph.
 2   BY MS. WEST:
 3       Q.   In that same paragraph, there is also
 4   some quoted language.
 5            One, two, three, four -- so the fourth
 6   sentence from the bottom the word "advocate" is
 7   in quotations; is that correct?
 8       A.   That's correct.
 9       Q.   Is that a word that Ms. Friend would
10   have used if you had it in quotes?
11       A.   I can't remember if -- if that was a
12   quote from her or me putting something together
13   about some guy who kept coming around and
14   helping -- now as I kind of remember it now --
15   claiming he was there to help people who were
16   wrongfully put in jail.  So that would probably
17   be my quote.
18       Q.   Okay.  And we have looked at a couple
19   paragraphs now here on the second page where
20   Ms. Friend talks about a younger woman who
21   identified themselves as Fletcher's daughter and
22   an older black man who was an advocate.
23            Are we talking about the same people?
24       MR. STARR:  Objection to form, foundation.
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 51

```
 1   BY THE WITNESS:
 2       A.   Okay.  This one again, now.
 3   BY MS. WEST:
 4       Q.   Yeah.
 5            So did Ms. Friend tell you about more
 6   than two people that would come visit her house?
 7       MR. STARR:  Same objections.
 8   BY THE WITNESS:
 9       A.   It was my opinion they were talking the
10   same person.
11   BY MS. WEST:
12       Q.   Okay.
13       A.   As far as the daughter goes.  The
14   advocate, as I sit here right now, I'm unsure.
15   The person I described as an advocate, I'm
16   unsure if that's the person mentioned in the
17   previous paragraphs.
18       Q.   Okay.  So just so we are clear, you're
19   not sure if the advocate is the same person that
20   would come to Ms. Friend's house and tell her
21   not to go to court?
22       MR. STARR:  Asked and answered.
23   BY THE WITNESS:
24       A.   I don't think -- I -- as we sit here
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 52

 1   now, I cannot tell you if that's the same tall
 2   dark-skinned male that came to Ms. Friend who
 3   she described as an uncle.  It escapes me right
 4   now.
 5   BY MS. WEST:
 6       Q.   Based on your report in that last
 7   paragraph on the second page, Ms. Friend
 8   indicated to you that the man also interviewed
 9   her over the phone.
10            Do you see that?  It's the third
11   paragraph.
12       A.   Yes.
13       Q.   The third sentence from the bottom.
14       A.   Correct.
15       Q.   And what you've documented here is
16   "Through this 'advocate' she eventually agreed
17   to meet with a female lawyer who worked for
18   Fletcher."
19            Do you see that?
20       A.   Yes.
21       Q.   Do you know the name of the female
22   lawyer that was working for Fletcher?
23       MR. STARR:  Form, foundation, and
24   speculation.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 53

1      THE WITNESS:  Do I --

2      MR. STARR:  Mischaracterizes his prior

3  testimony.

4  BY MS. WEST:

5      Q.    **Go ahead.**

6      A.    Go ahead.  Do I -- do I what?

7      Q.    **Know the name of the female attorney**

8  **that was working for Fletcher.**

9      MR. STARR:  Same objections.

10  BY THE WITNESS:

11      A.    No.  I do -- I do not.  I do not recall

12  her telling me a name.

13  BY MS. WEST:

14      Q.    **Do you have an independent recollection**

15  **of Ms. Friend telling you that she met with that**

16  **female lawyer at a restaurant named McArthur's?**

17      MR. STARR:  Form, foundation, speculation,

18  and mischaracterizes his prior testimony

19  regarding his independent recollection.

20  BY THE WITNESS:

21      A.    She -- she met with a person she

22  described as a female lawyer at McArthur's

23  restaurant.

24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 54

1   BY MS. WEST:

2       Q.   And when she met with that female

3   lawyer at McArthur's, was she presented with an

4   affidavit?

5       A.   Yes.

6       Q.   And the affidavit that she was

7   presented with, was it already prepared prior to

8   Ms. Friend meeting with that female lawyer?

9       MR. STARR:  Objection.  Are you asking him if

10  it's what his report states or he has an

11  independent recollection?

12  BY MS. WEST:

13      Q.   I am asking you if you have an

14  independent recollection of Ms. Friend telling

15  you that the affidavit that she was presented

16  with was prepared prior to her arrival.

17      A.   I have an independent recollection,

18  yes.

19      Q.   Okay.

20      A.   And it's in the report.

21      Q.   Thank you.

22      MR. STARR:  Belated objections to form,

23  foundation, speculation, and mischaracterizes

24  his prior testimony.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 55

1    BY MS. WEST:

2        Q.   And just -- just so we are clear, do

3    you have an independent recollection of

4    Ms. Friend telling you that the advocate drove

5    her -- the man who she indicated was the

6    advocate drove her to meet with the lawyer?

7        MR. STARR:  Same objections.

8    BY THE WITNESS:

9        A.   Do I have an independent recollection?

10   BY MS. WEST:

11       Q.   Yes.

12       A.   Yes, I do.

13       Q.   Okay.  And is it also documented in

14   your report?

15       A.   Yes, it is.

16       Q.   Okay.  Documented in your report,

17   Ms. Friend indicated to you that this was the

18   first time she had spoken with the female white

19   lawyer.

20            Do you see that documented?

21       A.   Yes.

22       Q.   Do you have an independent recollection

23   of walking through Ms. Friend's second

24   affidavit, which was from 2012?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 56

1    MR. STARR:  Form, foundation, speculation,

2  mischaracterizes prior testimony.

3  BY THE WITNESS:

4    A.  Yes, I do.

5  BY MS. WEST:

6    **Q.  And the conversation that you had with**

7  **Ms. Friend about the second affidavit from 2012,**

8  **did you document it in your report?**

9    A.  Yes, I did.

10    **Q.  Okay.  And based on -- strike that.**

11    **What do you recall Ms. Friend telling**

12  **you about how the second affidavit came about?**

13    MR. STARR:  Form, foundation, calls for

14  speculation, mischaracterizes his prior

15  testimony regarding his independent

16  recollection.

17  BY THE WITNESS:

18    A.  The same people, I believe, came back

19  to her.  That's my recollection.

20  BY MS. WEST:

21    **Q.  And what's documented in your report is**

22  **that the same male black advocate drove her to**

23  **meet with the lawyer; is that what --**

24    A.  That's correct.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 57

1      Q.   And based on your report, Ms. Friend

2    was again presented with a second affidavit that

3    was already prepared; is that right?

4      A.   That's what she said, yes.

5      Q.   And Ms. Friend -- documented -- or

6    strike that.

7           Documented in your report, Ms. Friend

8    indicated that -- well -- she believed it was

9    the same female white attorney who presented her

10   with a second affidavit that had also presented

11   her with the first?

12     A.   Correct.

13     Q.   And what's documented in your report is

14   that Ms. Friend was -- this is the last sentence

15   there in the --

16     A.   Where are we at now?

17     Q.   We are on the first full paragraph on

18   the third page.

19     A.   The third page?

20     Q.   Third page, first full paragraph that

21   starts with "Friend."

22     A.   Okay.

23     Q.   Okay.  The last sentence that also

24   starts with "Friend," Ms. Friend indicated to

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 58

1    you -- and what it says here:  "Friend was

2    certain she was not interviewed by the male

3    black advocate or the heavy-set female white

4    lawyer prior to being presented with the second

5    affidavit in the restaurant."

6          Do you see that?

7    A.   Correct.

8    Q.   Do you recall Ms. Friend telling you

9    that?

10   A.   Yes.

11   MR. STARR:  Form, foundation, calls for

12   speculation.

13   THE WITNESS:  Go ahead.  Sorry.

14   MR. STARR:  And mischaracterizes his prior

15   testimony regarding his independent

16   recollection.

17   MS. WEST:  Did you get that all?

18   THE COURT REPORTER:  Yes.

19   BY THE WITNESS:

20   A.   Okay.  Yes.  I have an independent

21   recollection.

22   BY MS. WEST:

23   Q.   The next paragraph there that starts

24   with "R/Is," "R/Is asked Friend if she would

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 59

1  review both affidavits and mark what was true

2  and what was false and make any notations

3  necessary to accurately explain what was written

4  in the affidavit.  She agreed."

5          Do you see what -- that documented

6  here?

7      A.  Yes, ma'am.

8      Q.  And do you have an independent

9  recollection of asking Ms. Friend to go through

10  the affidavits and mark what was true and what

11  was false?

12      A.  Yes, ma'am.

13      MR. STARR:  Form, foundation, and

14  speculation.  Mischaracterizes his prior

15  testimony.

16  BY THE WITNESS:

17      A.  Yes, ma'am.

18  BY MS. WEST:

19      Q.  And was that at your suggestion?

20      MR. STARR:  Same objections.

21  BY MS. WEST:

22      Q.  Her walking through the affidavits and

23  marking true or false?

24      A.  That was my suggestion.  Yes, ma'am.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 60

1      **Q.    Did you ask Ms. Friend to do that so**
2    **that you would have a better understanding of**
3    **what was true and what was false in those**
4    **affidavits?**
5      MR. STARR:  Form.
6    BY THE WITNESS:
7      A.   Yes.
8    BY MS. WEST:
9      **Q.    On the face of the affidavits, do you**
10   **have an independent recollection of Ms. Friend**
11   **also making handwritten notations?**
12     MR. STARR:  Same objections: form,
13   foundation, speculation, mischaracterizes prior
14   testimony.
15   BY THE WITNESS:
16     A.   Yes.
17   BY MS. WEST:
18     **Q.    Third paragraph from the bottom on**
19   **page 3, it starts with "In essence."**
20     A.   Okay.
21     **Q.    This paragraph seems to be a short**
22   **summary of what Ms. Friend noted relative to the**
23   **affidavits.**
24          **Do you agree?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 61

1      MR. STARR:  Form, foundation, speculation.

2   BY THE WITNESS:

3      A.   Yes.

4   BY MS. WEST:

5      **Q.   Okay.  And, in essence, what did**

6   **Ms. Friend tell you relative to the affidavits?**

7      A.   Okay.  Want to say that again?

8      **Q.   Sure.**

9           **In essence and what is documented in**

10  **your report, what did Ms. Friend tell you**

11  **relative to her affidavits?**

12     MR. STARR:  Form, foundation, speculation.

13  BY THE WITNESS:

14     A.   Essentially, she was treated well by

15  the police.  No one told her who -- and the

16  State's Attorney, and no one told her who to

17  pick out.

18  BY MS. WEST:

19     **Q.   In that same paragraph, do you see --**

20  **let's see.  The second to last sentence,**

21  **Additionally, her notations documented that she**

22  **only signed both affidavits to get Fletcher's**

23  **lawyer [sic] to leave her alone.**

24          **Do you see that?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 62

```
 1      A.   That's correct.
 2      Q.   Do you have a memory of her telling you
 3  that?
 4      A.   Yes.
 5      MR. STARR:  Same objections: form,
 6  foundation, speculation, mischaracterizes his
 7  prior testimony.
 8      MR. COYNE:  Just for the record, did you get
 9  that down as lawyers, plural, or lawyer,
10  singular, Madam Court Reporter?
11      THE COURT REPORTER:  Lawyer singular.
12      MR. COYNE:  Okay.  Just for the record, the
13  document says lawyers, plural.
14  BY MS. WEST:
15      Q.   Along with your report, Mr. Brannigan,
16  you submitted the affidavits that Ms. Friend
17  marked.
18      A.   Say it again.
19      Q.   Along with your report when you turned
20  it in, did you submit the two affidavits that
21  Ms. Friend marked on?
22      A.   Correct, all part of the same report.
23      Q.   All right.  You can put that then to
24  the side.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 63

1      MS. WEST:  Do you need a break?  Are you okay

2   to keep going?

3      THE WITNESS:  Are you guys good?

4      MR. COYNE:  Do you need a break?  She is

5   asking you if you need a break.

6      MS. WEST:  Yeah.  Would you like a break?

7      THE WITNESS:  Oh, do I need a break?

8      MS. WEST:  Yes.

9      THE WITNESS:  What are we doing now?

10      MS. WEST:  We are going to keep going.  So I

11   didn't know if you needed a break.

12      THE WITNESS:  Yeah, we can take a break.

13      MR. COYNE:  Yeah, take five.

14      THE WITNESS:  Okay.

15                  (Whereupon, a short break was

16                   taken.)

17                  (Whereupon, Brannigan Deposition

18                   Exhibit No. 2 was marked for

19                   identification.)

20      MS. WEST:  You have in front of you what we

21   have marked as Brannigan Deposition Exhibit

22   No. 2.

23          For the record, it is Bates-stamped

24   CCSAO-CIU 000419 through 422.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 64

```
 1    BY MS. WEST:
 2        Q.   Are you familiar with this document
 3    that's in front of you?
 4        A.   Yes, ma'am.
 5        Q.   Okay.  Is this one of the documents
 6    that you reviewed in preparation for your
 7    deposition today?
 8        A.   It appears to be a copy of it, yes.
 9        MR. STARR:  Okay.  And, Allyson, can you tell
10    me what Bates you are looking at?
11        MS. WEST:  So I have 419 --
12        MR. STARR:  Okay.  That's what I have.  I
13    just wanted to make sure they're the same.
14        MS. WEST:  -- through 422.
15        MR. STARR:  I appreciate it.
16        MS. WEST:  Yeah.  Let's do this:  For the
17    record, it is the August 26th, 2011, affidavit
18    that is subsequently dated and marked March 5,
19    2015, just so we know what we're talking about.
20    BY MS. WEST:
21        Q.   Mr. Brannigan, on the last page of this
22    document, the fourth page, so the back here --
23        A.   There we go.
24        Q.   -- do you see your signature?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 65

1      A.   That's my signature -- a copy of my

2   signature, yes.

3      **Q.   And do you also see Mr. Carroll's**

4   **signature?**

5      A.   Yes.

6      **Q.   Okay.  And then the -- the name that's**

7   **signed next to yours, whose name is that right**

8   **here?**

9      A.   What about it?

10     **Q.   Whose name was that?**

11     A.   Sheenee Friend.

12     **Q.   Okay.  And do you have an independent**

13  **recollection of Ms. Friend signing this document**

14  **in your presence?**

15     MR. STARR:  Form, foundation, and

16  mischaracterizes his prior testimony.  Calls for

17  speculation.

18  BY THE WITNESS:

19     A.   Yes, ma'am.

20  BY MS. WEST:

21     **Q.   Bear with me, because I want to walk**

22  **through the paragraphs in this affidavit.  So**

23  **let's start on page 1, the first paragraph.  "In**

24  **March of 2002, I was on parole and was arrested**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 66

```
 1    for a parole violation."
 2            Do you see that?
 3      A.   Yes, ma'am.
 4      Q.   And next to that, there is a T.
 5      A.   Yes, ma'am.
 6      Q.   Okay.  And is that something that
 7    Ms. Friend marked to indicate truth?
 8      A.   That's correct.
 9      Q.   Okay.  And the SF next to it, did -- go
10    ahead.
11      A.   Go ahead.
12      Q.   Did she mark her initials after she
13    indicated T for true?
14      A.   Yes.
15      Q.   Okay.  And she did this in your
16    presence?
17      A.   That's correct.
18      Q.   Okay.  On to the second paragraph,
19    "Police arrested me while I was staying at a
20    friend's house and brought me to a police
21    station at Grand and Central."
22            Do you see that?
23      A.   Yes.
24      Q.   And next to that paragraph, what did
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 67

1  Ms. Friend indicate?

2      A.   She put a T there and her initials.

3      Q.   **And the T is for true?**

4      A.   That's correct.

5      Q.   **And Ms. Friend was indicating that that**

6  **paragraph -- the contents of that paragraph were**

7  **true?**

8      A.   That's correct.

9      Q.   **Paragraph 3, While there, were two --**

10 **"While there, two police detectives showed me a**

11 **group of photos of men, all on one page.  They**

12 **asked me who did the shooting in December 1990**

13 **and I pointed at" -- and a word is stricken**

14 **out -- and "Fletcher" is written, and then it**

15 **says "picture."**

16          **Do you see that?**

17     A.   Correct.

18     Q.   **Okay.**

19     A.   I see it.

20     Q.   **Where the -- the word is marked out and**

21 **"Fletcher" is written, is that in Ms. Friend's**

22 **handwriting?**

23     A.   Is that what?

24     Q.   **In Ms. Friend's handwriting?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

```
                                            Page 68
 1      MR. STARR:  Objection, calls for speculation.
 2   BY THE WITNESS:
 3      A.   That's correct.
 4   BY MS. WEST:
 5      Q.   Okay.  And you know that because
 6   Ms. Friend documented that in your presence; is
 7   that right?
 8      A.   That's correct.
 9      Q.   Okay.  And back on that first page,
10   Ms. Friend also indicated a T for true next to
11   paragraph 3, correct?
12      A.   That's correct.
13      Q.   Okay.  That first page -- I just want
14   to bring you back to what's documented here at
15   the bottom of that first page.
16           Do you see where it says, "I only
17   signed because Fletcher lawyer would not leave
18   me alone, SF"?  Do you see that?
19      A.   Yes.
20      Q.   Was that something that Ms. Friend
21   documented on this affidavit?
22      A.   Yes.
23      Q.   And do you know that because she did so
24   in your presence?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 69

 1      A.   That's correct.

 2      MR. STARR:  Objection to form and foundation,

 3  speculation.  Calls for -- mischaracterizes his

 4  prior testimony regarding his independent

 5  recollection.

 6  BY MS. WEST:

 7      Q.   **All right.  Back to the second page.**

 8  **On paragraph 4, which is kind of hard to see,**

 9  **paragraph 4 says, "The police then pointed at a**

10  **photo of a different man on the page"** --

11      A.   Wait.  Time out.

12      Q.   **Yeah.**

13      A.   Where are we at now?

14      Q.   **So the second page -- the first**

15  **paragraph on the second page here.  It's kind of**

16  **hard to see.**

17      A.   Got you.

18      Q.   **But it has a number 4.**

19      A.   All right.  Thank you.

20      Q.   **Yeah.**

21          **"The police then pointed at a photo of**

22  **a different man on that page and said something**

23  **like, 'That's right.  This is the one.'  They**

24  **said he was 'Fletcher' and told me -- told me**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 70

1    **Terry Rogers knew Fletcher and they planned the**

2    **robbery together.  I marked or initialed the**

3    **photo..."  And then the next -- the end of the**

4    **sentence is marked out, and it says "Fletcher."**

5            **Did Ms. Friend mark out the remainder**

6    **of paragraph 4 and write "Fletcher" in?**

7        MR. STARR:  I'm going to object to it

8    mischaracterizes the evidence.  I don't know if

9    that necessarily constitutes marking out the

10   rest of the paragraph.

11   BY THE WITNESS:

12       A.   Yes, she did.

13   BY MS. WEST:

14       Q.   **And over on the side next to that**

15   **paragraph, did Ms. Friend put an F to indicate**

16   **false?**

17       MR. STARR:  I'm also going to object to that,

18   because it appears there is something that's

19   been written over there.  But go ahead.

20           We are talking about the second -- or

21   the first full paragraph on the second page,

22   right?

23       MS. WEST:  Correct.

24       MR. STARR:  It appears to me that there is a

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 71

1    letter that's been written over based on my

2    review of the document.

3        MS. WEST:  Oh, what number?  Number 4.  Okay.

4        MR. STARR:  I said -- well, I said a letter.

5    You said number.

6    BY MS. WEST:

7        Q.   **Do you see an F there to indicate**

8    **false?**

9        A.   Let's -- let's go back.  Where are

10   we -- I see an F, but where are we talking?

11       Q.   **We are talking this first full**

12   **paragraph on page 2.**

13       A.   The first full paragraph.  I think

14   that's paragraph 4.

15       Q.   **Correct.**

16       A.   Can we agree on that?  Okay.  Yes.  I

17   see the letter F for false there.

18       Q.   **Okay.  Do you also see in the margin on**

19   **the left-hand side where it says, "Police didn't**

20   **tell me who to pick out, SF"?**

21            **Do you see that?**

22       A.   Yes.

23       Q.   **Is that something that Ms. Friend**

24   **documented on this affidavit in your presence?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 72

```
 1      MR. STARR:  Form, foundation, calls for
 2   speculation.
 3   BY THE WITNESS:
 4      A.   Yes, yes.
 5   BY MS. WEST:
 6      Q.   And so far what we've walked through in
 7   this affidavit is consistent with what you
 8   documented in your report, correct?
 9      MR. STARR:  Objection to form.
10   BY THE WITNESS:
11      A.   That is correct.
12   BY MS. WEST:
13      Q.   All right.  On to paragraph 5 at the
14   bottom of page 2.
15      A.   Okay.
16      Q.   Okay.  "Several weeks later, police
17   picked me up while I was on house arrest.  They
18   took me to Central and Grand to view a lineup.
19   They told me to pick out who did the shooting,
20   and I picked out the man" -- and the next few
21   words are stricken out.  And above it it's
22   written, "who I saw shooting" -- then the
23   sentence continues -- "weeks earlier in the
24   group of photos."
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 73

 1          **Do you see that?**
 2      MR. STARR:  Object -- object to form and,
 3  again, mischaracterization of the evidence.
 4  BY THE WITNESS:
 5      A.  Yes.
 6  BY MS. WEST:
 7      **Q.   Do you recall Ms. Friend marking a**
 8  **portion of paragraph 5 out and indicating the**
 9  **words "who I saw shooting"?**
10      MR. STARR:  Form, foundation, and
11  speculation.
12  BY MS. WEST:
13      **Q.   You can answer.**
14      A.  Yes.
15      **Q.   And next to the paragraph 5, there is a**
16  **T to indicate true.**
17          **Do you see that?**
18      A.  Yes.
19      **Q.   Okay.  And that was also documented by**
20  **Ms. Friend in your presence, correct?**
21      A.  That's also what?
22      **Q.   Documented by Ms. Friend in your**
23  **presence.**
24      MR. STARR:  Speculation.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 74

```
 1   BY THE WITNESS:

 2       A.   Yes.

 3   BY MS. WEST:

 4       Q.   All of these changes that Ms. Friend

 5   makes on the affidavit are initialed by her,

 6   correct?

 7       A.   All the what?

 8       Q.   The changes and notations that she

 9   makes are initialed by her?

10       A.   They are initialed by her.  If she made

11   the changes, she wrote them.

12       MR. STARR:  Form, foundation,

13   mischaracterizes the evidence.

14   BY MS. WEST:

15       Q.   Okay.  Let me clear it up.

16            All the marks that we have gone through

17   so far are those that Ms. Friend herself did on

18   the affidavit, correct?

19       MR. STARR:  Same objection.

20   BY THE WITNESS:

21       A.   The ones we went through?

22   BY MS. WEST:

23       Q.   Correct.

24       A.   Correct.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 75

1      Q.   Next page, page 3, paragraph 6, "When I

2   testified at Fletcher's trial, I was locked up

3   in the Cook County Jail."

4           Do you see that?

5      A.   Yes.

6      Q.   And next to that paragraph, what did

7   Ms. Friend indicate?

8      A.   There is a T and then the initials SF.

9      Q.   And the T stands for true, correct?

10     A.   Correct.

11     Q.   And Ms. Friend documented that in your

12  presence?

13     A.   That's correct.

14     Q.   In paragraph 7, "I was taken to court

15  in my jail uniform and testified at the trial."

16          Do you see that?

17     A.   Yes.

18     Q.   Okay.  And what did Ms. Friend indicate

19  as to that paragraph?

20     A.   That handwriting that's there.

21     Q.   So we will get to that.  Let me ask

22  you:  Do you see a T or an F next to that here?

23     A.   Oh, that's what we are talking about?

24     Q.   Yes.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 76

```
 1      A.   I see a T and the initials SF.

 2      Q.   And under paragraph 7, there is a

 3   sentence that says, "Why ID Fletcher in court

 4   and say he did it when she didn't know?"

 5           Do you see that?

 6      A.   Yes.

 7      Q.   Do you know who wrote that on this

 8   document?

 9      A.   No.

10      Q.   Okay.  Paragraph 8, "At the time of the

11   crime, I told police I could not identify who

12   did the crime."

13           Do you see that?

14      A.   Yes.

15      Q.   Okay.  And next to paragraph 8 on the

16   side, did Ms. Friend indicate true or false as

17   to that paragraph?

18      A.   There is an F there indicating false.

19      Q.   Okay.  Aside from Ms. Friend

20   documenting on the front of this affidavit that

21   she only signed this document because Fletcher's

22   lawyer wouldn't leave her alone, do you have an

23   independent recollection of her telling you

24   that?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 77

1      MR. STARR:  Form, foundation, asked and

2   answered, calls for speculation,

3   mischaracterizes his prior testimony.

4   BY THE WITNESS:

5      A.   Yes.

6   BY MS. WEST:

7      **Q.   All right.  Last page, page 4 of the**

8   **document, paragraph 9, "At one point, the police**

9   **detectives wrote a letter to the parole board**

10  **letting the board know that I was cooperating**

11  **with them in a murder investigation."**

12          **Do you see that?**

13     A.   Yes.

14     **Q.   And what did Ms. Friend indicate as to**

15  **that paragraph?**

16     A.   She put her initials next to the

17  letter T for truth.

18     MS. WEST:  All right.  You can put that one

19  aside.  I am going to give you what we will mark

20  as Exhibit 3.  For the record, this is --

21  Exhibit 3 is CCSAO-CIU 000423.

22                  (Whereupon, Brannigan Deposition

23                   Exhibit No. 3 was marked for

24                   identification.)

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 78

```
 1    BY MS. WEST:

 2        Q.   Mr. Brannigan, I'm sorry to back you up

 3    really quick.  The Exhibit 2 that we were just

 4    looking at, there is a date of March 5, 2015, on

 5    the back.

 6             Do you see that?

 7        A.   Yes.

 8        Q.   Okay.  And as documented in your

 9    report, that's the date that you met with and

10    interviewed Ms. Friend, correct?

11        A.   Correct.

12        Q.   Okay.  All right.  Sorry.  Now we can

13    move on to 3.

14             Do you have -- Mr. Brannigan, are you

15    familiar with this document that's in front of

16    you?

17        A.   Yes.

18        Q.   Is this a document that you reviewed in

19    preparation for your deposition today?

20        A.   Yes.

21        Q.   Do you have an independent recollection

22    of walking through this specific affidavit with

23    Ms. Friend on March 5th, 2015?

24        MR. STARR:  Form, foundation, calls for
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 79

```
 1   speculation, mischaracterizes his prior

 2   testimony regarding his independent

 3   recollection.

 4   BY THE WITNESS:

 5       A.  Yes.

 6   BY MS. WEST:

 7       Q.  All right.  I'm going to walk you

 8   through these paragraphs as well.  Let me back

 9   up just one step.

10           Did you have Ms. Friend do the same

11   indications for true and false on this affidavit

12   as you did with the 2011 affidavit?

13       A.  Yes.

14       Q.  Okay.  Paragraph 1, "I was a witness to

15   a shooting that occurred on December 21, 1990,

16   that resulted in the death of Willie Sorrell."

17           Do you recall that?

18       A.  Yes.

19       Q.  And over to the left-hand side, it

20   appears that Ms. Friend indicated T for true; is

21   that right?

22       A.  Yes.

23       Q.  And she has also documented her

24   initials, correct?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 80

1      A.    Correct.

2      Q.    Okay.  And that was done in your

3   presence, right?

4      A.    That's correct.

5      Q.    Okay.  Paragraph 2, "I have previously

6   given an affidavit dated August 26, 2011."

7            Do you see that?

8      A.    Yes.

9      Q.    Okay.  And Ms. Friend on the left-hand

10  side of this document indicated that that

11  paragraph was true as well, correct?

12     A.    Correct.

13     Q.    Paragraph 3, "After talking to Jennifer

14  Blagg, Jim Fletcher's attorney, I realized that

15  I knew additional facts that were relevant to

16  Fletcher's case.  This affidavit is a supplement

17  to my prior affidavit."

18            Do you see that?

19     A.    Yes.

20     Q.    Okay.  And next to paragraph 3, what

21  did Ms. Friend indicate?

22     A.    That's an F, as in false, and her

23  initials.

24     Q.    And, again, as we are walking through

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 81

1    this, all these notations that Ms. Friend made

2    were done in your presence; is that right?

3         A.   That's correct.

4         Q.   Now, paragraph 4 -- oh, strike that.

5    Let me ask you one question about the 3 before I

6    move on.

7              Paragraph 3, do you have an independent

8    recollection of Ms. Friend talking to you about

9    how this supplemental affidavit came about?

10        MR. STARR:  Objection, form, foundation,

11   calls for speculation, mischaracterizes his

12   prior testimony regarding his independent

13   recollection.

14   BY THE WITNESS:

15        A.   Yes.

16   BY MS. WEST:

17        Q.   What do -- what do you recall?

18        MR. STARR:  Same objections.

19   BY THE WITNESS:

20        A.   I presented them to her, and she said,

21   "These are the affidavits that these people came

22   to me with."

23   BY MS. WEST:

24        Q.   All right.  Paragraph 4, "As I

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 82

1    previously said, when the police showed the

2    photos, they told me that Fletcher was the one

3    that I should pick.  They told me that Terry

4    Rogers told them it was Fletcher who did it.

5    They also told me that Fletcher was a really bad

6    guy, and he was in jail for a robbery.  They

7    said his background was messed up, and he -- and

8    he [sic] violent background.  I thought he was a

9    bad guy based on what they told me.  They said

10    that the dude who did the crime with Fletcher

11    had gone south to Mississippi."

12        Do you see that in paragraph 4?

13    A.   Yes.

14    Q.   Okay.  And what did Ms. Friend indicate

15    as to paragraph 4?

16    A.   There is an F there, as in false, and

17    then her initials.

18    Q.   All right.  On to paragraph 5, "When

19    the police took me to the station to view the

20    lineup, they had me hidden in a room.  I could

21    hear this lady lawyer tripping outside the room.

22    I could hear everything she was saying to the

23    police, and she was arguing about viewing the

24    lineup with me.  I could see that she was the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 83

1    lawyer for the guy that the police told me to

2    pick out of the photo array, which was the same

3    man that they told me that Terry Rogers had

4    picked out.  The police had me view the lineup

5    without the lady lawyer in the room with me.  I

6    knew who to pick because it was the same guy

7    that the police pointed out before."

8            Do you see that?

9        A.   Yes.

10       Q.   Okay.  And it looks like documented in

11   the left-hand margin it says, "I remember" --

12       A.   I believe that's "some arguing."

13       Q.   Thank you.

14            "I remember some arguing, but the

15   office [sic] didn't tell me who to pick out."

16            Do you see that?

17       A.   Correct.

18       Q.   Did I read that correctly, or do you

19   read it a different way?

20       A.   That's what I read.

21       Q.   Okay.  And did Ms. Friend document

22   that?

23       A.   Pardon?

24       Q.   Did Ms. Friend document that on this

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 84

```
 1   document?
 2       A.   Yes, with her initials.
 3       Q.   Okay.  And was that relative to the
 4   contents of paragraph 5?
 5       MR. STARR:  Objection, form, foundation.  It
 6   calls for speculation.  It assumes facts not in
 7   evidence and mischaracterizes the prior
 8   testimony regarding his independent
 9   recollection.
10   BY THE WITNESS:
11       A.   Yes.
12   BY MS. WEST:
13       Q.   All right.  Paragraph 6, "I honestly
14   don't remember what the guy really looked like
15   who did the robbery in December of 1990.  All I
16   remember about him was he was a big guy.  I
17   couldn't see the face because he snatched me
18   back through the truck."
19            Do you see that?
20       A.   Yes.
21       Q.   And next to that, after the sentence
22   that ends in "truck," it looks like it says, "I
23   did remember."
24            Do you see that?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 85

```
 1      A.   Yes.
 2      Q.   Is that something that Ms. Friend noted
 3  on this document?
 4      A.   Yes.
 5      Q.   Okay.  And then in paragraph 6 on the
 6  left-hand side, what did she indicate about this
 7  paragraph?
 8      A.   She put the letter F, as in false.
 9      Q.   On to paragraph 7, "The police had a
10  warrant for my arrest just so I would testify.
11  I didn't go to court at first because I didn't
12  want to testify.  After I testified, they let me
13  go."
14          Do you see that?
15      A.   Yes.
16      Q.   And next to that paragraph, what did
17  Ms. Friend indicate, true or false?
18      A.   She indicated with her initials and
19  then the letter T for true.
20      Q.   Does it also look like she drew, like,
21  an arrow to indicate to paragraph 7?
22      A.   Yes.
23      Q.   Okay.  On paragraph 8, "I have always
24  wondered if I put the wrong person away.  If I
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 86

1    did, I want to correct it, and that's why I'm

2    coming forward now."

3            Do you see that?

4    A.    Yes.

5    Q.    Okay.  And then after that typed

6    paragraph, Ms. Friend wrote, "I never say it or

7    never thought it."

8            Do you see that?

9    A.    Yes.

10    Q.    And that's something that Ms. Friend

11    documented on this affidavit?

12    A.    Yes.

13    Q.    Okay.  And also, with regard to

14    paragraph 8, what did she indicate as far as

15    true or false?

16    A.    She indicated F, as in false.

17    MR. STARR:  A belated objection to foundation

18    for that one.

19    BY MS. WEST:

20    Q.    On to paragraph 9, "I have" --

21    A.    On to what?

22    Q.    Paragraph 9, the last paragraph here.

23    "I have not been promised anything in return for

24    giving this affidavit.  I am willing to testify

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 87

1   at an evidentiary hearing on James Fletcher's

2   behalf."

3            Do you see that?

4        A.    Correct.

5        Q.    Okay.  And what did Ms. Friend indicate

6   next to that, true or false?

7        A.    F.

8        MR. STARR:  Objection to foundation.

9   BY THE WITNESS:

10       A.    False.

11  BY MS. WEST:

12       Q.    And down at the bottom of this

13  document, there is an additional sentence

14  written and initialed by Ms. Friend.

15           Do you see that?

16       A.    Back up again.

17       Q.    Sure.

18       A.    Where are we looking at?  And start

19  with the one -- the paragraph 9.

20       Q.    Correct.  That's what we were looking

21  at, paragraph 9.

22       A.    Okay.  "Not been promised..."  "I am

23  willing to testify at an evidentiary hearing on

24  James Fletcher's behalf."

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 88

1        MR. COYNE:  You testified there was an F

2    there.

3        THE WITNESS:  Pardon?

4        MR. COYNE:  You testified there was an F next

5    to number 9.  That was where we left off before

6    we moved to the bottom.

7    BY THE WITNESS:

8        A.   A lot of chicken scratch in here.  Yes.

9    Okay.  I see the F in paragraph 9.  Right.

10   Okay.  That's correct.

11       MR. COYNE:  Good.

12       THE WITNESS:  All right.  I got it.

13   BY MS. WEST:

14       **Q.   And at the bottom of this document, do**

15   **you see additional handwriting or a sentence**

16   **that Ms. Friend wrote on this affidavit in your**

17   **presence?**

18       A.   Yes.

19       **Q.   Okay.  And what does that say?**

20       A.   "I only signed because Fletcher lawyer

21   would not leave me alone."

22       **Q.   And did Ms. Friend initial that**

23   **sentence as well?**

24       A.   Yes.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 89

1    Q.   And did she also sign her name and date
2  it next to that sentence?
3    A.   Yes.
4    Q.   Okay.  And, again, Ms. Friend did all
5  of these markups and additions in your presence,
6  correct?
7    A.   Correct.
8    Q.   And the indications and additions by
9  Ms. Friend are consistent with the substance
10  that you documented in your report?
11    MR. STARR:  Form, foundation.
12  BY THE WITNESS:
13    A.   Correct.
14    MR. STARR:  Did we lose somebody?
15    MS. WEST:  No.  She is still on there.
16    MR. STARR:  Good.
17    MS. WEST:  Okay.  Mr. Brannigan, let me show
18  you what we will mark as Exhibit 4.
19       For the record, this is CCSAO-CIU 390
20  through 391.
21    MR. STARR:  Was it just one page that you --
22    MS. WEST:  Yeah.  So it's, like, front and
23  back, but the back has been redacted.
24    MR. STARR:  Okay.  So it's two pages, yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 90

1   Okay.  I just want to make sure.

2       MS. WEST:  I think I did put it on -- for the

3   record, it's --

4       THE COURT REPORTER:  Yes.

5       MS. WEST:  Okay.

6                    (Whereupon, Brannigan Deposition

7                     Exhibit No. 4 was marked for

8                     identification.)

9   BY MS. WEST:

10      **Q.    All right.  Mr. Brannigan, have you**

11  **ever seen this e-mail?  It's a copy of an**

12  **e-mail.**

13      A.    Yes, I believe so.

14      **Q.    Okay.  Did you review this copy of an**

15  **e-mail prior to your deposition today?**

16      A.    If I did, it wasn't recent.  I -- I

17  don't know.

18      **Q.    Okay.**

19      A.    I can't answer that right now.

20      **Q.    Based on the top of this document, is**

21  **this an e-mail that you yourself sent to someone**

22  **named Michael?**

23      A.    Okay.  This appears to be a copy of an

24  e-mail I sent to a Michael.  And just for the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 91

1   record, this is probably one of the highest tech

2   things I did at that time, an e-mail as opposed

3   to just calling.  Yeah.  I'm guessing, yeah.

4   Okay.  I got this.

5       **Q.    And do you -- based on the e-mail**

6   **address that you're sending this to, could you**

7   **tell who Michael is?**

8       A.    Yes.

9       **Q.    Who is that?**

10      A.    His name is Michael Berthay,

11  B-E-R-T-H-A-Y.

12      **Q.    And who is Michael Berthay?**

13      A.    Mike?  I don't know what he was at that

14  time.  He -- he may have been, like, the

15  equivalent of the chief of detectives for the

16  northern half of Mississippi Highway Patrol, or

17  he may have been the generalissimo of the

18  highway patrol.  I have known him for many

19  years.

20      **Q.    Okay.  So you knew Michael prior to the**

21  **date of this e-mail, which was October 2nd,**

22  **2014?**

23      A.    From previous cases, yes.

24      **Q.    Okay.**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 92

1    A.    Nothing related to this case.

2    **Q.    And why did you -- why did you reach**

3    **out to Michael?**

4    A.    Apparently, something indicated that

5    Terry Rogers was down in Mississippi or may be

6    down -- an individual named Terry Rogers may be

7    down in Mississippi, and he was one of the

8    characters attached to this case.  I don't

9    remember if we were supposed to interview him or

10   what we were supposed to do with him as I sit

11   here now.

12   **Q.    Okay.  And that's my next question:  Do**

13   **you have an independent recollection of who**

14   **Terry Rogers is and how he is involved in**

15   **Mr. Fletcher's case?**

16   A.    I -- I would be guessing.  I just

17   really -- I have no idea really.

18   **Q.    And do you have an independent**

19   **recollection of being tasked with locating and**

20   **interviewing Terry Rogers?**

21   A.    It rings a bell is the best I can say.

22   **Q.    Do you have an independent recollection**

23   **if you ever made contact with Terry Rogers?**

24   A.    I've seen nothing to refresh my memory

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 93

1  that would make me aware of that right now.
2      Q.   Maybe I asked you this already, but do
3  you have an independent recollection of being
4  assigned to locate Terry Rogers?
5      A.   I -- I may have.  I don't know.  I
6  cannot answer that.  I maybe had been doing it
7  for somebody else, but I do believe it was
8  assigned -- it was an individual with this case.
9  That's the best I can tell you at this moment as
10  I sit here right now.
11      Q.   Based on this e-mail, can you tell if
12  you ever traveled to Mississippi to try to
13  locate Mr. Rogers?
14      MR. STARR:  Objection, foundation.
15      THE WITNESS:  Pardon me?
16      MR. STARR:  Foundation.
17  BY MS. WEST:
18      Q.   You can answer.
19      A.   I don't recall traveling to Mississippi
20  to look for a Mr. Terry Rogers.
21      MS. WEST:  The last sentence -- sorry, John.
22  We'll take a break after this.
23      MR. COYNE:  No.  Go ahead.  Keep going.
24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 94

1  BY MS. WEST:

2      Q.   The last sentence says, "Need to get

3  down there in the next two weeks or so."

4          Do you see that?

5      A.   Yes.

6      Q.   Okay.  Does that refresh your memory as

7  to if you ever went down to Mississippi to look

8  for Mr. Rogers?

9      A.   I -- as I sit here right now, I -- I

10  don't believe I went down there.  I don't know

11  if -- I have no idea of why I did or did not go

12  down there.

13      Q.   Do you have an independent recollection

14  of receiving information that Mr. Rogers was, in

15  fact, in Mississippi?

16      A.   Not really, no.  Not now.  I have seen

17  nothing to refresh my memory.  This would

18  suggest I did, but --

19      Q.   Do you have an independent recollection

20  of being tasked with locating and interviewing

21  any other witnesses relative to James Fletcher's

22  case?

23      A.   I seem to recall other witnesses, but

24  my best recollection is the only one we ended up

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 95

1  doing is Ms. Friend, and it happens that way

2  sometimes.  It -- they waive off on the other

3  witnesses.  I just couldn't tell you how many

4  more there were and if we interviewed any more.

5  And my best recollection as I sit here right now

6  is we did not interview any more.

7      **Q.   Does the name Edward Cooper ring a bell**

8  **to you as a witness that you were tasked with**

9  **interviewing?**

10     A.   I remember the name.  I believe he was

11 the victim of the initial robbery.

12     **Q.   Do you have an independent recollection**

13 **of attempting to locate and speak with him?**

14     A.   As I sit here right now, I -- I don't.

15 I don't have any -- anything that would refresh

16 my memory.

17     **Q.   How about, are you familiar with an**

18 **individual by the name of Emmett Wade?**

19     A.   I'm drawing a complete blank on Emmett

20 Wade as I sit here right now.

21     **Q.   If you had spoken with any other**

22 **witness relative to Mr. Fletcher's case, would**

23 **you have documented it in a report much like you**

24 **did for Ms. Friend?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 96

1      MR. COYNE:  Objection, foundation,

2  speculation.

3      MR. STARR:  Join.

4  BY THE WITNESS:

5      A.  Yes.

6  BY MS. WEST:

7      **Q.  Was it your custom and practice as an**

8  **investigator with the State's Attorney's Office**

9  **to document any interview that you had with a**

10 **witness in a report?**

11     A.  Yes.

12     **Q.  Once you're tasked with an assignment**

13 **such as locating and interviewing a witness, are**

14 **you provided with any other details about that**

15 **specific witness?**

16     A.  Yes.

17     **Q.  What details are you provided?**

18     A.  Pardon me?

19     MR. STARR:  Objection to form and foundation,

20 vague.

21     MR. COYNE:  Join.

22 BY MS. WEST:

23     **Q.  What details are you provided?**

24     A.  I'm -- just a witness in general, what

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 97

1    is my procedure?

2        **Q.   Correct.**

3        A.   Or what is the procedure of the office?

4        MR. COYNE:  What details were you provided is

5    the question.

6    BY MS. WEST:

7        **Q.   Sure.  Let's back up.**

8        A.   On any witness?

9        **Q.   Correct.**

10       A.   What details I'm provided?

11       **Q.   Mm-hmm.**

12       A.   Sometimes it's nothing more than a

13   nickname.  Sometimes it's a pile of stuff.  It

14   would depend on each individual case.

15       **Q.   Do you pull police reports or criminal**

16   **histories or any other documentation to try to**

17   **inform you as to the specific witness that**

18   **you're attempting to locate?**

19       MR. COYNE:  Objection, foundation.

20       THE WITNESS:  I'm sorry?

21       MR. COYNE:  I objected on foundation.  You

22   can answer.

23   BY THE WITNESS:

24       A.   Okay.  So let's say that again.  Do I?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 98

 1    BY MS. WEST:

 2        **Q.   Do you?**

 3        A.   On occasion, I do.  Sometimes they are

 4    presented to me.

 5        MS. WEST:  All right.  Give me one -- one

 6    minute.  I may be done.  I'm just going to look

 7    over my notes.

 8             I don't think I have anything else,

 9    Mr. Brannigan.

10        THE WITNESS:  Pardon me?

11        MS. WEST:  I don't have any other questions

12    right now.  Some other attorneys may.  Thank

13    you.

14        THE WITNESS:  Yes, ma'am.

15        MS. MORRISON:  I don't have any questions.

16    Thank you.

17        THE WITNESS:  Yes, ma'am.

18        MR. STARR:  I have a few questions.

19        THE WITNESS:  Yes, sir.

20                        EXAMINATION

21    BY MR. STARR:

22        **Q.   All right.  Good afternoon,**

23    **Mr. Brannigan.  As I previously --**

24        A.   I'm sorry?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 99

```
 1        Q.   As I previously -- I said good
 2   afternoon.  And as I previously mentioned, my
 3   name is Sean Starr, and I represent Mr. Fletcher
 4   who is the plaintiff in this matter.
 5        A.   Yes, sir.
 6        Q.   And I understand that you have some
 7   issues with your hearing.  I want to be
 8   respectful of that.
 9        A.   Okay.
10        Q.   So if say something you don't hear
11   perfectly well --
12        A.   Okay.
13        Q.   -- please ask me to rephrase it --
14        A.   Yes.
15        Q.   -- and I'll restate it.
16             So based on your testimony today, you
17   worked at the State's Attorney's Office from
18   approximately January of 2005 until December of
19   2021; is that correct?
20        A.   Yes.
21        Q.   Okay.  And prior to your employment at
22   the State's Attorney's Office, is it correct
23   that you were employed by the Chicago Police
24   Department?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 100

1      A.   Yes.

2      Q.   Okay.  And could you give me your --

3   the date that you started working for the police

4   department and the date that you left the police

5   department?

6      A.   6 January '69 is when I started.  And I

7   left in January of '05.

8      Q.   Okay.  So it sounds like you've had

9   a -- you had a fairly long career at --

10     A.   Yes.

11     Q.   -- at the Chicago Police Department and

12  a fairly long career at the State's Attorney's

13  Office; is that correct?

14     A.   That's correct.

15     Q.   And you retired in 2021.

16          Are you currently employed, sir?

17     A.   No, sir.

18     Q.   Okay.  Are you collecting a pension

19  with the sheriff or police department?

20     MR. COYNE:  Irrelevant.  Objection.

21          Go ahead.

22  BY THE WITNESS:

23     A.   From the police department, yes, sir.

24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 101

```
 1    BY MR. STARR:
 2        Q.   Do you collect a pension from the
 3    State's Attorney's Office?
 4        MR. COYNE:  Same objection.  It's not
 5    relative to any claim or defense.
 6             Go ahead.
 7    BY THE WITNESS:
 8        A.   Yes, sir.
 9    BY MR. STARR:
10        Q.   Are you familiar with the 1975 movie
11    starring John Wayne titled "Brannigan"?
12        A.   Yes, sir.
13        Q.   Are you the real-life inspiration of
14    that movie, sir?
15        A.   No, sir.  I have never seen the whole
16    movie, but I caught, you know, bits and pieces
17    of it.
18        Q.   Well, so you had nothing to do with the
19    making of that movie?
20        A.   No.  But I did get picked on.
21        Q.   Because it's about a Chicago police
22    officer, if I understand correctly, who travels
23    to London to investigate a crime and it's titled
24    "Brannigan."
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 102

1      A.    No.  I never traveled to London.

2      **Q.    Okay.**

3      A.    A lot of other places, but not London

4  in my cops and robbers career.

5      **Q.    Okay.  All right.  I just wanted to**

6  **make sure.**

7          **So I have heard a couple of things**

8  **about you at the State's Attorney's Office, and**

9  **I wanted you to tell me if these reputational**

10 **things are correct.  What --**

11     A.    I'm sorry.  Say it again?

12     THE COURT REPORTER:  Slow down, maybe.

13     MR. STARR:  Sure.  Thanks.

14 BY MR. STARR:

15     **Q.    I have heard a couple of things about**

16 **your work at the State's Attorney's Office, and**

17 **I wanted to ask you if you would agree with**

18 **these reputational things that I've heard about**

19 **you.**

20          **One is that everybody at the State's**

21 **Attorney's Office loves Danny Brannigan; is that**

22 **correct?**

23     MS. MORRISON:  Object to form.

24     MS. WEST:  Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 103

1       MR. COYNE:  Objection to form.

2       MS. WEST:  Join.

3       MR. COYNE:  I objected to form.

4            You can answer if you -- if you

5    understand.

6    BY THE WITNESS:

7       A.   I don't know that.

8    BY MR. STARR:

9       **Q.   You don't know?**

10      A.   I don't know that for sure.

11      **Q.   Okay.**

12      A.   I'm sure -- I'm certain there is some

13   people that don't think well of me.

14      **Q.   Okay.  All right.  That's fair.**

15           **And then I've also heard that you**

16   **are -- your reputation -- strike that.**

17           **I have also heard that your reputation**

18   **involves being very adept at getting people who**

19   **have given recanted affidavits to recant their**

20   **recantations; is that correct?**

21      MR. COYNE:  Objection, form, foundation.

22      MS. WEST:  Objection, form.

23      MR. COYNE:  Hang on.  Objection, form,

24   foundation, incomplete hypothetical --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 104

 1      MS. MORRISON:  Join.

 2      MS. WEST:  Join.

 3      MR. COYNE:  Go ahead, and repeat my objection

 4   to form.

 5      THE WITNESS:  Let's do that one again.

 6      MR. COYNE:  Hang on, Dan.

 7      THE WITNESS:  Yeah.

 8      MR. COYNE:  Objection, form, foundation,

 9   incomplete hypothetical, and requires

10   speculation.

11          Go ahead and answer if you can.

12      MS. WEST:  Join.

13      MS. MORRISON:  Join.

14      THE WITNESS:  All right.

15   BY MR. STARR:

16      **Q.   Do you want me to ask it again?**

17      A.   Yeah.

18      **Q.   Okay.**

19      A.   Please.

20      **Q.   So my question essentially is, do you**

21   **agree with this reputational -- this reputation,**

22   **that you have a reputation of being very good at**

23   **getting people who have given affidavits**

24   **recanting their prior testimony to recant that**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 105

1    **recantation?**

2           **Do you agree with that?**

3        MR. COYNE:  Same objections.

4        MS. WEST:  Join.

5    BY THE WITNESS:

6        A.   I would say I'm -- I work hard.  I

7    would say I'm objective.  I would say I'm fairly

8    good at it.  I don't know that I'm really good

9    at it.  And sometimes I just get lucky because

10   people are tired of being harassed.

11   BY MR. STARR:

12       **Q.   Okay.  That's fair.**

13           **And, sir, have you been -- I'm not sure**

14   **if Ms. West asked you this:  Have you been**

15   **deposed before?**

16       A.   Yes, sir.

17       **Q.   Okay.  On how many occasions have you**

18   **been deposed?**

19       A.   I didn't --

20       **Q.   How many occasions have you given a**

21   **deposition?**

22       A.   Lots.  I couldn't even give you a

23   guesstimate.

24       **Q.   Okay.  Would you say it was more than**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 106

1   **ten times you have been deposed?**

2       MR. COYNE:  Objection, foundation.

3           Go ahead.

4   BY THE WITNESS:

5       A.   I really couldn't give you anything

6   with any accuracy.  I remember one time I said

7   less than a thousand.  Probably -- probably --

8   yeah.  I get confused with depositions and trial

9   prep and everything else.  But I really just

10  can't give you an answer, but many times, sir.

11  BY MR. STARR:

12      **Q.   Okay.  That's fair.  And I'm not trying**

13  **to confuse you.**

14      A.   Right.  No.  Right.

15      **Q.   I believe that my firm Loevy & Loevy**

16  **has deposed you at least on two occasions, once**

17  **in the McIntosh case and then another time in**

18  **the Nathson Fields cases.**

19          **Do you --**

20      A.   Okay.

21      **Q.   Do you recall being deposed --**

22      A.   I --

23      **Q.   -- in those cases?**

24      A.   I recall being deposed in, yeah, both

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 107

1    of them.

2        Q.   Okay.  All right.  Do you recall

3    whether or not you have been deposed by

4    Loevy & Loevy in any other cases?

5        A.   Not as I sit here right now.

6        Q.   Okay.  So when you -- you left the

7    police department in 2000- -- January of 2005.

8            How long before you started working at

9    the State's Attorney's Office?

10       A.   Say it again.

11       Q.   How long after you retired from the

12   Chicago -- oh, actually, I --

13       A.   Oh, did I go to the State's

14   Attorney's --

15       Q.   Yeah.  Let me -- let me just strike

16   that.

17           Did you retire from the Chicago Police

18   Department?

19       A.   Yes.

20       Q.   Okay.  How long after you retired from

21   the Chicago Police Department did you start

22   working for the State's Attorney's Office?

23       A.   I quit the police department on a

24   Friday, and I started with the State's

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 108

```
 1   Attorney's Office on a Monday.
 2        Q.    Okay.  So only a weekend in between?
 3        A.    That's how I recall it, yeah.
 4        Q.    Okay.
 5        A.    That weekend.
 6        Q.    And how did your employment with the
 7   State's Attorney's Office come to be?
 8        A.    How --
 9        MR. COYNE:  Objection, form.
10             Go ahead.
11   BY THE WITNESS:
12        A.    How did it come to be?
13   BY MR. STARR:
14        Q.    Yeah.
15             Did you -- did you fill out an
16   application?  Did someone --
17        A.    Yes, yes.
18        Q.    -- recruit you?
19        A.    Yes, I did.
20        Q.    Okay.  You filled out an application?
21        A.    Filled out an application and was
22   recruited, yes.
23        Q.    Okay.  And would that -- would you have
24   filled out an application prior to your
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 109

1    retirement from the police department?

2        A.    Yes.

3        Q.    Okay.  Would you characterize it as a

4    planned transition from one job to the other?

5        A.    No.  It was a couple things I was

6    looking at, and that's the one that popped.

7        Q.    Okay.  Was there any reason why you

8    chose to leave the Chicago Police Department?

9        A.    Time to retire.

10       Q.    Okay.

11       A.    And a job -- and a job opened up.  Time

12   to retire and a job opened up.

13       Q.    Okay.  And so did your experience at

14   the Chicago Police Department help you get a job

15   at the State's Attorney as far as you understood

16   it?

17       MR. COYNE:  Objection, form, foundation.

18           Go ahead.

19   BY THE WITNESS:

20       A.    Of course it would.

21   BY MR. STARR:

22       Q.    And how come?

23       A.    Investigative background.

24       Q.    All right.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 110

1    A.   I was a detective for many years.

2    **Q.   Okay.  So can you give me a general**

3    **overview of the assignments and the positions**

4    **you had at the Chicago Police Department?**

5    A.   In the police department?

6    **Q.   Yeah.**

7    A.   Patrol.  Everybody goes there, right?

8    Tac team.  I made detective in '74.  Made

9    sergeant in June of '86.  February of '74,

10   detective; June of '86, sergeant.

11   **Q.   And you retired as a sergeant; is that**

12   **correct?**

13   A.   Correct.

14   **Q.   Okay.  And am I correct that during**

15   **your tenure at the Chicago Police Department,**

16   **you worked in the cold case unit or squad; is**

17   **that correct?**

18   A.   When I -- that's where I retired from,

19   yes.

20   **Q.   Okay.  And how many years were you in**

21   **the cold case unit?**

22   A.   Maybe five.

23   **Q.   So approximately 2000 to 2005 you were**

24   **in the cold case unit?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 111

1      A.    Approximately?

2      **Q.    2000 to 2005.**

3      A.    Yes.  That's where I retired from.

4      **Q.    And was the cold case unit an**

5   **area-specific unit or was it a citywide unit?**

6      A.    It was citywide.

7      **Q.    And was it -- is it correct that the**

8   **cold case unit that was citywide was located out**

9   **of Homan Square?  Is that where your office was?**

10     A.    That is correct.

11     **Q.    And was it for the duration of your**

12  **time in the cold case unit located at Homan**

13  **Square?**

14     A.    Initially, while the offices at Homan

15  Square were being prepared, it was at the new

16  police headquarters at 35th and Michigan.

17     **Q.    And do you know what --**

18     A.    That was maybe nine months, eight

19  months.

20     **Q.    Okay.  So at some point of 2000 -- in**

21  **the year -- approximately the year 2000, and**

22  **after that it was at Homan Square?**

23     A.    Correct.

24     **Q.    Okay.  And did the cold case unit**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 112

1    investigate cold cases from all the different

2    areas?

3        A.    Correct.

4        Q.    Okay.  So it would be correct to state

5    that you as a member of the cold case unit would

6    have investigated Area Five cold cases, correct?

7        A.    Correct.

8        Q.    Okay.  And did you supervise -- were

9    you a -- you were a sergeant at this time,

10   correct?

11       A.    Correct.

12       Q.    And did you supervise the detectives

13   that worked in the cold case unit?

14       A.    Correct.

15       Q.    And could you just give me, like, a

16   layman's definition of what the cold case unit

17   did?

18       A.    Essentially, it would be -- first of

19   all, it was made perfectly clear to me when we

20   were forming this that, "You will do what you're

21   told."  So on occasion, other cases popped up

22   that were not within the parameters, which were

23   the case should be a year old with little or no

24   activity on it, no longer any activity on the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 113

1   case, and go out and try and solve it and take a

2   fresh set of eyes and look at it.

3       Q.   Okay.  And that's the -- that's --

4   generally, that's the definition of what the

5   cold case unit did?

6       A.   Yeah.  A year -- a year older, but at

7   least a year with no activity.  If somebody was

8   still working on it, but for some reason you

9   went there and they would say, "No.  We are

10  working on XYZ case," you would back off even if

11  it was a little older.  Someone may have picked

12  it up on their own.

13      Q.   And if you know, how did -- did the

14  cold cases get sent to the cold case unit from

15  the areas?

16      MS. MORRISON:  Objection to foundation.

17          You can answer if you know.

18  BY THE WITNESS:

19      A.   It -- it came in many ways.  Sometimes

20  a retired detective would call up.  A retired

21  boss might remember an old case.  They came in

22  any -- any way.  Sometimes guys had their own

23  cases that they recalled that they wanted to go

24  back and take a look at, things of that -- there

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 114

 1    was not -- no formal way that the cases came to

 2    you.

 3    BY MR. STARR:

 4         Q.    **Understood.**

 5               **Was there a formal location where the**

 6    **actual cold case file existed?**

 7         A.    They would exist in the detective

 8    areas.

 9         Q.    **Okay.**

10         A.    And you would have to go there.

11         Q.    **And so is it correct that the only ways**

12    **in which you would get a cold case assigned to**

13    **the cold case unit is somebody would reach out**

14    **and say, "Hey, I have got this old case I want**

15    **you to look at"?**

16         MS. MORRISON:  Object to form.

17    BY THE WITNESS:

18         A.    No.  Sometimes some guy who is long

19    retired would say, "Go look at the XYZ case."

20    Sometimes it would be a guy who was working in

21    the area.  Sometimes it might be a boss in an

22    area.  No real rhyme or reason how we picked up

23    the cases.

24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 115

```
 1    BY MR. STARR:
 2        Q.   Okay.  And just for clarity's sake,
 3    so -- and the record is clear, so there wasn't,
 4    like, a list of cold cases that you were, like,
 5    going down the list checking off.  They were
 6    just coming in on a -- somewhat of an ad hoc
 7    basis?
 8        MS. MORRISON:  Object to form.
 9        MR. COYNE:  Object to form.
10        MS. WEST:  Join.
11    BY THE WITNESS:
12        A.   I guess you could say that, yes.
13    BY MR. STARR:
14        Q.   Okay.  And as a member of the cold case
15    unit, was it ever the case that you would
16    investigate cases after a conviction had
17    occurred?
18        A.   After a conviction occurred?  No.
19    Usually, they were open cases, no conviction.
20        Q.   Okay.  So you said usually.
21             Does that mean there were some
22    exceptions to that rule?
23        A.   That a conviction -- wait.
24        Q.   Yeah.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 116

1           So I understand that, like, a cold case

2     is a case that has not been solved, correct?

3        A.   Correct.

4        Q.   My question is, were you ever assigned

5     as a member of the cold case unit to investigate

6     a case where someone had already been convicted?

7        MS. MORRISON:  Object to form.

8     BY THE WITNESS:

9        A.   I can't think of one.

10    BY MR. STARR:

11       Q.   Okay.  And were you ever during your

12    time in the cold case unit ever asked to

13    independently look at a case after a conviction

14    had occurred?

15       A.   I don't recall ever having that.

16       Q.   Do you know if the cold case unit as

17    a -- as a -- as a unit within the Chicago Police

18    Department, if it ever looked at cases where

19    there was already a conviction?

20       MR. COYNE:  Object, foundation.

21       MS. MORRISON:  Object to form.  What time

22    period are we talking about?

23    BY THE WITNESS:

24       A.   I -- I will say it again.  I don't

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 117

1   recall that we ever worked on a case where there

2   was a conviction.

3   BY MR. STARR:

4        Q.    Okay.

5        A.    My best recollection.

6        Q.    When you were hired by the State's

7   Attorney's Office in 2005, did you receive any

8   formal training?

9        A.    When I first got there?

10       Q.    Yes.

11             What kind of training did you receive?

12       A.    Procedures, their in-house procedures

13  of how things worked in different courts,

14  different courts around the county.  I think we

15  visited -- visited them all, went out and -- how

16  certain people served subpoenas, where they are

17  at.  We're shown everything about -- it's like

18  going to a -- a new -- any new job.

19       Q.    And would you -- did you receive any

20  training or guidance related to how to conduct

21  interviews with witnesses as a Cook County

22  State's Attorney investigator?

23       A.    I don't -- I don't recall any class on

24  how to do an interview my- -- myself or any

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 118

1   other copper who came in with me from the police

2   department.

3       Q.   **And when you say yourself or any other**

4   **copper, are you making a distinction regarding**

5   **somebody who has a law enforcement background**

6   **didn't receive certain training that other**

7   **people did?**

8       A.   Say that again.

9       MR. COYNE:   Object --

10  BY MR. STARR:

11      Q.   **Yeah.  Meaning --**

12      A.   Some -- yeah.  Go ahead.

13      Q.   **So I'm just -- based on your answer,**

14  **I'm wondering if you're making a distinction**

15  **between investigators who had law enforcement**

16  **background versus investigators who didn't have**

17  **law enforcement background.**

18      A.   Correct.  There was -- there's a

19  difference.

20      Q.   **Okay.  And what's that difference as**

21  **far as you understood it?**

22      A.   People who did not have a law

23  enforcement background started out at ground

24  zero, basically.  They went to some -- usually

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 119

1  the Chicago Police Department, maybe the

2  sheriff's department, maybe the state police

3  even.  They would go to one of those agencies to

4  get qualified for their position.

5          The people who came from a law

6  enforcement agency -- DEA, customs, ATF,

7  wherever -- they would just move right in, and

8  you would just learn the policy of that State's

9  Attorney -- of the State's Attorney's Office,

10  but you did not receive any specific training

11  that I recall.

12     **Q.   Regarding the policy, do you recall**

13  **there being any -- when you joined in 2000, do**

14  **you recall there being -- I'm sorry.**

15          **2005?**

16     A.   2005.

17     **Q.   Yeah.  I apologize.**

18          **When you joined in 2005, do you recall**

19  **there being any policy regarding how to conduct**

20  **interviews with witnesses?**

21     A.   Do I recall the policies from there

22  when I first joined?  No.

23     **Q.   Well, my question was a little**

24  **different.**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 120

1      **It was, do you recall if there was a**
2  **policy about how to conduct the interview with a**
3  **witness?**
4      A.   I'm sure there was.  I don't recall
5  what it was.
6      **Q.   Do you recall if there was a -- like, a**
7  **handbook of written policies you were given?**
8      A.   Yes.
9      **Q.   Okay.  And do you recall if that**
10 **handbook of written policies had any policies**
11 **related to how to conduct interviews with**
12 **witnesses?**
13     A.   I don't recall.
14     **Q.   Okay.  And so is it correct to say that**
15 **in your experience as a law enforcement Chicago**
16 **police officer, the things you learned about**
17 **conducting witnesses [sic], you applied to your**
18 **time at the State's Attorney's Office when you**
19 **were conducting interviews of witnesses?**
20     MR. COYNE:  Objection, form.
21     MS. WEST:  Join.
22 BY THE WITNESS:
23     A.   Pretty much.
24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 121

```
 1   BY MR. STARR:
 2       Q.   Did you ever receive during your time
 3   in the State's Attorney's Office any training on
 4   your -- strike that.
 5            Do you have an understanding about what
 6   I mean when I say "Brady obligations"?
 7       A.   Do I -- am I familiar with it?  Yes,
 8   from my time at the police department and at the
 9   State's Attorney's Office.
10       Q.   Okay.  Excellent.  What's your
11   understanding generally?
12       A.   Anything you find is turned over, but
13   our rule of thumb in the police department was
14   give everything to the State's Attorney and they
15   will figure out what's applicable or not.
16       Q.   And you understood it to apply to your
17   job as an investigator at the State's Attorney's
18   Office --
19       A.   Turn everything --
20       Q.   -- as well?
21       A.   Turn everything over.
22       Q.   And when you say "turn everything
23   over" --
24       A.   Reports, files.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 122

```
 1        Q.    Okay.

 2        A.    Based on your work product.

 3        Q.    And did you understand Brady -- your

 4   Brady obligations to include to -- if you had

 5   learned any exculpatory information, to turn

 6   over that information?

 7        A.    That's correct.

 8        Q.    Okay.  And did you understand your

 9   Brady obligations required you if you learned

10   any impeachment evidence that you had to turn

11   that over?

12        MR. HOLMES:  Can I just object and seek

13   clarification?  When counsel is using the phrase

14   "turn over," is counsel referring to turning

15   over these documents to an Assistant State's

16   Attorney or to a defendant -- a criminal

17   defendant?

18             Because Mr. Brannigan, of course, was

19   in the posture of an investigator --

20        MR. STARR:  Yeah.

21        MR. HOLMES:  -- and not an attorney.  Thus,

22   the question of how and whether Brady

23   obligations applied to Brannigan I don't think

24   has been established.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 123

```
 1        MR. STARR:  That's fair.  I thought that he
 2   said that he turned it over to the State's
 3   Attorney.
 4        MR. HOLMES:  He did.  But that's a few
 5   questions ago.
 6        MR. STARR:  Okay.  Okay.
 7        MR. HOLMES:  So I just --
 8        THE WITNESS:  Okay.  Let's get this clarified
 9   so I can --
10   BY MR. STARR:
11        Q.   Yeah.
12             So did you understand in your role as a
13   Cook County State's Attorney investigator, if
14   you encountered any exculpatory or impeachment
15   evidence, you had an obligation to turn that
16   over to the State's Attorney?
17        A.   Mm-hmm.  Yes, sir.
18        Q.   Okay.  And you also -- did you also
19   understand that as a Cook County State's
20   Attorney investigator, that you were prevented
21   from destroying any material evidence that you
22   may encounter, correct?
23        A.   Yes, sir.
24        Q.   Okay.  Did you receive any training on
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 124

1   Brady when you went to the State's Attorney's

2   Office?

3       A.   I don't recall.  I may have.

4       Q.   In terms of meeting your obligations

5   under Brady -- strike that.

6            During your time as a Cook County

7   State's Attorney, did you meet your obligations

8   under Brady?

9       A.   Did I?

10      Q.   Yes.

11      A.   I think so, yeah.  Yes, sir.

12      Q.   Did you do anything unusual or atypical

13  regarding your Brady obligations on the Fletcher

14  case?

15      MR. COYNE:  Objection, form, foundation.

16  BY THE WITNESS:

17      A.   Did I what?

18  BY MR. STARR:

19      Q.   Yeah.  Let me rephrase it.

20           Did you meet your -- did you believe

21  that you met your Brady obligations during your

22  time assigned to the Fletcher case?

23      A.   The force?  Oh, Fletcher.  Oh.  I'm

24  sorry.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 125

```
 1          As far as I know I did, yes.  There
 2    would be no reason for me not to.
 3        Q.   And you followed your typical practices
 4    regarding Brady during your time assigned to the
 5    Fletcher case?
 6        MR. COYNE:  Objection, form.
 7    BY THE WITNESS:
 8        A.   Say it again, please.
 9    BY MR. STARR:
10        Q.   You followed your typical practices
11    regarding Brady --
12        A.   Yes, sir.
13        Q.   -- during your time assigned to
14    Fletcher?
15        A.   Yes, sir.
16        Q.   Could you -- I think you were partially
17    asked this by Ms. West, but could you explain to
18    me what your responsibilities were as a State's
19    Attorney investigator?
20        A.   You would be given various assignments.
21    There is -- there is various units within the
22    State's Attorney's Office, so it would depend
23    where you are assigned.  The sex trafficking
24    unit, they had their special training or other
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 126

1   training.  I think there is people assigned to

2   Secret Service, narcotics -- I mean, DEA.  So it

3   would depend where you were at.

4       Q.   And I think you testified earlier that

5   the vast majority of the time that you were

6   working for the State's Attorney you were

7   working in the post-conviction unit; is that

8   correct?

9       A.   That's correct.

10      Q.   Okay.  So in the post-conviction unit,

11  what were your responsibilities as a State's

12  Attorney investigator?

13      A.   Basically to go out and locate

14  witnesses involved in the post-conviction cases

15  and sometimes to interview those witnesses,

16  maybe even some victims now and then.

17      Q.   And in 2014, were you working in the

18  post-conviction unit?

19      A.   Yes.

20      Q.   In 2015, were you also working in the

21  post-conviction unit?

22      A.   2014 and 2015, and CIU came into

23  existence also, the conviction integrity unit.

24      Q.   Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 127

```
 1            And I think you testified you weren't
 2    sure when that happened; is that right?
 3        A.   Pardon?
 4        Q.   I think you earlier testified that you
 5    weren't certain --
 6        A.   I wasn't -- no.  I'm not sure exactly
 7    when the post-conviction unit was established.
 8        Q.   When the -- you worked in the
 9    conviction integrity unit as well as the
10    post-conviction unit, correct?
11        A.   Correct.
12        Q.   Did your responsibilities change when
13    the conviction integrity unit came into
14    existence?
15        A.   Not really, no.
16        Q.   Okay.  So you were still --
17        A.   The same investigators were assigned to
18    one as the other.
19        Q.   And your responsibilities still are to
20    be involved --
21        THE COURT REPORTER:  Sorry?
22        MR. STARR:  I don't know what I said.
23        MR. COYNE:  Still involved.
24
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 128

```
 1   BY MR. STARR:
 2       Q.    Still involved, yeah.
 3       A.    I'm sorry.  Say it again.
 4       Q.    And when the conviction integrity unit
 5   came into existence, your responsibilities still
 6   involved primarily locating and interviewing
 7   witnesses; is that correct?
 8       A.    Correct.  That was the basic.
 9       Q.    And when you conducted an interview
10   with any witness that you were assigned, did you
11   always generate a report?
12       MR. COYNE:  Objection, foundation.
13           Go ahead.  You can answer.
14   BY THE WITNESS:
15       A.    Yes.
16   BY MR. STARR:
17       Q.    Okay.  And when you submitted a report,
18   you submitted it to the prosecutor or the
19   State's Attorney assigned to the case; is that
20   correct?
21       A.    That's where it eventually ended up,
22   yes.
23       Q.    And was that prosecutor or the State's
24   Attorney your supervisor on that case?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 129

1      MR. COYNE:  Objection, foundation.

2  BY THE WITNESS:

3      A.   No.  I had a -- I had a sergeant who

4  would review it -- the report first.  I always

5  had a supervisor somewhere along the line who

6  would review it, the report first, and then it

7  would go, make sure the package was complete.

8  BY MR. STARR:

9      Q.   **Okay.  Your supervisor was somebody who**

10  **was not a State's Attorney; is that correct?**

11     A.   That's correct.

12     Q.   **Okay.  And you said sergeant.**

13          **Was that the title that your supervisor**

14  **had during your time as an investigator?**

15     A.   Initially, it was just supervisor.

16  Then it went to sergeant, more formal.

17     Q.   **Okay.  And you would submit your**

18  **initial report to your sergeant or supervisor**

19  **prior to submitting it to the State's Attorney**

20  **on -- assigned to the case, correct?**

21     A.   Correct.

22     Q.   **Okay.  And what was the purpose of**

23  **submitting it to your supervisor -- direct**

24  **supervisor first before submitting it to the**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 130

1    **State's Attorney?**

2        A.   Well, it was basically for him to make

3    sure it was a complete package, whatever might

4    be there was there.  Something that was

5    inventoried should be inventoried.  Was it

6    inventoried?  Things of that nature.

7        **Q.   And -- and -- strike that.**

8            **During the Fletcher -- during your time**

9    **assigned to the Fletcher case, do you know who**

10   **your supervisor was?**

11       A.   Do I know who my supervisor was during

12   the Fletcher case?

13       **Q.   Yes.**

14       A.   I -- I think the one was a guy named --

15   I couldn't quite read the signature, but I could

16   believe there was a -- it might have been three

17   of them.  But I don't really know.  I would -- I

18   think one was -- I will give you the last three:

19   Killacky, Caira with a C, Bamford.  I think

20   that's it.  I believe that's it.

21       **Q.   Can you spell Caira for me?**

22       A.   C-A-I-R-A.  I believe he signed off on

23   one of these reports, but I'm not sure -- or the

24   only report that I recall generating.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 131

1      **Q.   And is Killacky with a K?**

2      A.   With a K, yes, sir.

3      MR. COYNE:  Sean, whenever is convenient for

4   you in your outline, can we take a five-minute

5   break?

6      MR. STARR:  Sure.

7      MR. COYNE:  Whenever it is convenient.

8      MR. STARR:  Just a few more questions.

9      MR. COYNE:  Sure.

10      THE WITNESS:  What was that?  I didn't hear

11   you.

12      MR. COYNE:  I'm just asking him to take a

13   five-minute break when it's convenient for him.

14      THE WITNESS:  Oh, okay.

15   BY MR. STARR:

16      **Q.   And when you submitted your report to**

17   **your supervisor the first time, would you meet**

18   **with that supervisor to discuss the case?**

19      A.   Sometimes.  You would probably talk to

20   him during the case at one point or another, but

21   it was not a -- sometimes you would hand it to

22   him and away it would go.

23      **Q.   And was it your practice to discuss**

24   **your opinions about the case with your**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 132

1   **supervisors?**

2       A.   Yes, on some of them.  Not every case.

3   Some of them were just to locate somebody.  So

4   locate, get that information to the State's

5   Attorney, and that was it.

6       **Q.   And was it ever the case that after you**

7   **submitted that initial report to your supervisor**

8   **that they would suggest that you make changes to**

9   **your report?**

10      A.   No.  Maybe if there was a typo or you

11  left something -- you forgot to put this in

12  there, something of that nature.  They wouldn't

13  know enough about the investigation to -- to

14  change the content of -- of the report.

15      **Q.   Okay.  And --**

16      A.   Unless they were out with you, but, I

17  mean, generally no.

18      **Q.   Did you submit your report to your**

19  **supervisor -- was it ever the case that you**

20  **would submit your report to a supervisor and**

21  **they would bounce it back to you, and you would**

22  **submit it again and they would bounce it back a**

23  **second time?**

24      MR. COYNE:  Objection, form.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 133

 1    BY THE WITNESS:

 2        A.   I -- I don't recall.

 3    BY MR. STARR:

 4        Q.   **Okay.  Do you recall in this case**

 5    **whether or not your supervisor made any changes**

 6    **or suggested any additions or the like when you**

 7    **first submitted your report?**

 8        A.   Which case?

 9        Q.   **In the Fletcher case.**

10        A.   In the Fletcher case?  I -- I don't

11    recall.  I don't think so.

12        Q.   **Okay.  And would you at some point meet**

13    **with the State's Attorney that assigned you to**

14    **do the investigation?**

15        A.   Oh, yeah.  You would routinely meet

16    with the State's Attorneys --

17        Q.   **Okay.**

18        A.   -- at some point.

19        Q.   **And would you offer your opinion about**

20    **the case to the State's Attorney?**

21        A.   What do you mean by "my opinion"?  I

22    mean --

23        Q.   **Well, you --**

24        A.   I would tell them what's going on.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 134

1      Q.    Yeah.

2            You were a conduit of the State's

3    Attorney's Office, right?  They sent you out to

4    do these investigations and --

5      A.    Right.  You have to tell them, "We

6    can't find this person.  You're going to have to

7    figure out another way to approach the case,"

8    or, I mean, any -- any number of reasons I might

9    have met with the State's Attorney on the case.

10     Q.    Would you meet with the State's

11   Attorney to talk about your impressions of the

12   witnesses that you were interviewing?

13     A.    Yes.  I would tell them that, yeah.

14     Q.    And you would share that impression

15   with the supervisor --

16     A.    Yeah.

17     Q.    -- or with the State's Attorney?

18     A.    Yes.

19     Q.    Okay.  And would you discuss with the

20   State's Attorney what the goal of the case would

21   be?

22     MR. COYNE:  Objection, form.

23   BY THE WITNESS:

24     A.    Say that again.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 135

```
 1   BY MR. STARR:
 2       Q.   Yeah.  Let me rephrase it.
 3            Would you discuss with the State's
 4   Attorney at any point what the goal of the
 5   interviews that you were conducting were?
 6       MR. COYNE:  Objection, form.
 7   BY THE WITNESS:
 8       A.   Basically, we would talk about the case
 9   in general, what the case was about, and go find
10   out the truth.
11   BY MR. STARR:
12       Q.   So you would talk with the State's
13   Attorney before you went out to conduct the
14   interviews, correct?
15       A.   It would depend what they actually had
16   us do.  Sometimes I just did -- any one of us,
17   any -- we are talking me specifically or just
18   how it works?
19       Q.   I'm talking about you specifically.
20       A.   I have been assigned to just do locates
21   and pass them on and never heard anything back
22   on them.
23       Q.   Did you talk to the State's Attorney
24   about the goals of the interview with Ms. Friend
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 136

1  **before you went out and interviewed Ms. Friend?**

2      A.   Yes, I'm sure.  I don't recall it

3  specifically, but I -- there had -- there would

4  be no reason for me not to.

5      **Q.   Do you recall what the goals of**

6  **interviewing Ms. Friend were?**

7      A.   To see what she had to say.

8      MR. HOLMES:  I'm -- on behalf of the State's

9  Attorney's Office, I instruct the witness not to

10  answer the question beyond the yes or no that

11  was sought by the plaintiff's counsel on the

12  ground of the deliberative process privilege.

13  BY THE WITNESS:

14      A.   So you are going to have to speak up

15  just a tad.

16      MR. HOLMES:  Yes.  Mr. Starr had asked a

17  question that was seeking a yes or no answer,

18  and on behalf of the State's Attorney's Office,

19  I'm instructing you not to answer the question

20  beyond the yes or no that was sought by

21  Mr. Starr on the ground of the deliberative

22  process privilege on behalf of the State's

23  Attorney's Office.

24      THE WITNESS:  Got you.  Okay.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 137

1      MR. HOLMES:  That's the instruction.

2      THE WITNESS:  Okay.

3   BY MR. STARR:

4      **Q.   And it was a yes or no question, so --**

5      A.   Okay.  Let's go.

6      **Q.   So the question was, do you recall**

7   **what -- do you recall what the goal of**

8   **interviewing Ms. Friend was prior to when you**

9   **went out and interviewed her?**

10     MR. COYNE:  Objection, form.

11     MR. HOLMES:  Same objection.

12  BY THE WITNESS:

13     A.   Yes.

14  BY MR. STARR:

15     **Q.   Okay.  And do you recall if the goal**

16  **regarding interviewing Ms. Friend was to get**

17  **Ms. Friend to come off of her affidavits that**

18  **she had --**

19     MR. HOLMES:  On behalf of --

20  BY MR. STARR:

21     **Q.   -- previously signed?**

22     MR. COYNE:  Objection, form.

23     MR. HOLMES:  On behalf of the State's

24  Attorney's Office, I instruct the witness not to

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 138

```
 1   answer on the ground of the deliberative process
 2   privilege.
 3   BY MR. STARR:
 4       Q.   Are you going to recognize the State's
 5   Attorney's instruction and refuse to answer my
 6   question?
 7       MR. COYNE:  Yeah.  I would urge you to follow
 8   the State's Attorney's instruction -- Assistant
 9   State's Attorney's instruction.
10   BY THE WITNESS:
11       A.   Yes.
12       MR. STARR:  Okay.  Do you want to take that
13   break?
14       MR. COYNE:  Yeah.  Let's take that break.
15       MR. STARR:  Yeah.
16       MR. COYNE:  Thanks, Sean.
17                   (Whereupon, a short break was
18                    taken.)
19   BY MR. STARR:
20       Q.   Mr. Brannigan, was it your practice
21   whenever you were assigned to go out to conduct
22   an interview to always meet with the State's
23   Attorney who was assigned to the case before
24   going out to conduct the interview?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 139

1      A.    Yes.  No reason for me not to.

2      **Q.    Okay.  And was it your practice to find**

3   **out what the goal of the interview was in terms**

4   **of what the State's Attorney thought the goal**

5   **was?**

6      MR. COYNE:  Objection, form.

7      MR. HOLMES:  It's a -- and again, from the

8   State's Attorney's Office, it's not an

9   objection, per se, but I just want to caution

10   the witness that the question is seeking a yes

11   or no answer, and the State's Attorney's Office

12   would have an objection to the extent that any

13   response would go beyond yes or no to this

14   question.

15   BY THE WITNESS:

16      A.    Okay.  Roll it by me again.

17   BY MR. STARR:

18      **Q.    Sure.**

19         **When you would meet with the State's**

20   **Attorney that assigned you to do an interview,**

21   **before you went out to do the interview, would**

22   **you always attempt to find out what the goal of**

23   **the interview was from the State's Attorney?**

24   **And it's a yes or no question.**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 140

1      MR. HOLMES:  Same objection.

2      MR. COYNE:  Objection, form.

3      MS. WEST:  Join.

4      MR. COYNE:  Go ahead.

5   BY THE WITNESS:

6      A.   Yes.

7   BY MR. STARR:

8      **Q.   Okay.  In addition to meeting with the**

9   **State's Attorney before going out to conduct the**

10  **interview, would you do anything else to prepare**

11  **for the interview?**

12     A.   It would depend on if it was just --

13  how would I say this?  Most cases seemed to

14  involve homicides; I would say the vast bulk of

15  them.  So depending on what we were looking

16  for -- you -- you would read the file.

17  Sometimes you would -- you would read whatever

18  was available right at that time.  Sometimes

19  there was not a complete file.  That was

20  oftentimes the case, as a matter of fact; the

21  files could not be found.

22          So you would read what was available

23  regardless of who you were looking for, but on

24  occasion, it was nothing more than we will see

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 141

1    if this person is still alive.

2        **Q.   And when you were -- you testified that**

3    **you would review the file, in cases that you**

4    **were assigned to interview somebody.  If there**

5    **was a file and there were documents in that**

6    **file, would it make your -- would it be your**

7    **practice to review the file in its entirety?**

8        A.   As best I could, yes.

9        **Q.   And would you make an effort to review**

10   **whatever police reports were in that file?**

11       A.   Yes.

12       **Q.   And if there were transcripts of**

13   **testimony, would you want to review the**

14   **transcripts of testimony?**

15       A.   Yes, if it were necessary or pertinent

16   to that individual.

17       **Q.   Okay.  Any other types of documents**

18   **that you would want to review as part of your**

19   **practice?**

20       A.   Whatever -- as I said, whatever was

21   available I'd try to get my paws on.  It doesn't

22   mean I read it once I had it, but I would try to

23   get my hands on everything.

24       **Q.   So you said that the file wouldn't**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 142

```
 1   always be available.
 2          In what circumstances would the file
 3   not be available to you?
 4       MR. COYNE:  Objection, foundation.
 5          Go ahead.
 6   BY THE WITNESS:
 7       A.   It can't be found.
 8   BY MR. STARR:
 9       Q.   Okay.  So when you were working as an
10   investigator in the State's Attorney's Office as
11   part of the post-conviction unit, did -- if
12   the -- if a file existed, did you have access to
13   it?
14       A.   Yes.
15       MR. COYNE:  Objection, foundation.
16          Go ahead.
17   BY THE WITNESS:
18       A.   Excuse me.
19   BY MR. STARR:
20       Q.   Would --
21       A.   Yes.
22       Q.   Was that -- would you guys -- strike
23   that.
24          Would the nomenclature be that you
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 143

1    would call that file the trial file or was there

2    some other file that you would --

3         A.   It would be the trial file.

4         THE COURT REPORTER:  Sorry.  Was there some

5    other file that you would --

6    BY MR. STARR:

7         Q.   -- that you would review?

8         A.   It would normally be the trial file.

9         Q.   And would you -- would you ever begin

10   an investigation without reviewing the documents

11   if they did exist?

12        A.   I would at least review a portion of

13   them.  I couldn't say that I would review every

14   single scrap of paper in the file, no.

15        Q.   Do you know how many cases that you

16   have been involved in as a State's Attorney

17   investigator that have resulted in convictions

18   being overturned?

19        A.   No idea.  I wouldn't even know how to

20   guess.

21        Q.   Do you have a -- any sort of ballpark

22   estimate of how many cases you have been

23   involved in that resulted in an overturned

24   conviction?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 144

1    A.   In there -- I don't even recall that

2  statistic being around.  I'm sure the State's

3  Attorney's Office might have it, but --

4    **Q.   Okay.**

5    A.   I'm completely unaware of seeing that,

6  though.

7    **Q.   And you were shown this Exhibit 1,**

8  **which is your -- your investigative report from**

9  **the Fletcher case, correct?**

10   A.   I'm sorry?

11   **Q.   You were shown by Ms. West Exhibit 1,**

12  **and this is an investigative report.**

13   A.   Correct.

14   **Q.   Would you also refer to this report as**

15  **the ROI?**

16   A.   The who?

17   **Q.   An ROI, an acronym.**

18   A.   The report of investigate- -- I guess

19  you could.

20   **Q.   Is -- that's not a term you used?**

21   A.   I -- I don't recall using it, no.

22   **Q.   All right.  Did an investigative report**

23  **before it was formally submitted to a State's**

24  **Attorney have any different terminology attached**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 145

1    to it that you -- you're familiar with?

2        A.   I'm not following you.

3        Q.   So you said that you submitted your

4    report to your supervisor before you submitted

5    it to the State's Attorney, right?

6        A.   Yeah.

7        Q.   Did it -- did that report -- was that

8    report called something different when it was in

9    that infancy before it was submitted to the

10   State's Attorney?

11       A.   No.  I -- I -- no.  I don't -- I don't

12   recall anything about that, no.

13       Q.   Was it your practice to make sure the

14   reports that you were submitting were thorough

15   and that everything that happened during the

16   interview was included into the report?

17       MR. COYNE:  Objection, form.

18   BY THE WITNESS:

19       A.   Everything that was relevant to the

20   interview.

21   BY MR. STARR:

22       Q.   Was it your practice to precisely

23   summarize all of the material evidence that you

24   gathered during your investigation?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 146

1    A.   Yes.

2    Q.   **Was there an expectation within the**

3  **State's Attorney's Office that, as an**

4  **investigator, you were supposed to be precise**

5  **and thorough?**

6    MR. COYNE:  Objection, form, foundation.

7    MS. WEST:  Join.

8  BY THE WITNESS:

9    A.   Yes.

10  BY MR. STARR:

11    Q.   **And would you consider it a best**

12  **practice to be precise and thorough in**

13  **conducting an investigation?**

14    A.   Best you could do, yes.

15    Q.   **In your experience as a law enforcement**

16  **personnel and also within the State's Attorney's**

17  **Office, was there a difference between what an**

18  **interview is and what an interrogation is?**

19    A.   I guess you could say -- interrogation

20  in my opinion -- my opinion only -- would be an

21  in-custody issue.  You made an arrest and now

22  you're -- interrogate the person to get the

23  information.

24    Q.   **Would that be the primary distinction**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 147

1    between those two terms that --

2        A.   To me.

3        Q.   -- one is in custody?

4             To you.  Okay.

5             In an interrogation, is it also the

6    case that you believe that you know the truth

7    going into the interview?

8        MR. COYNE:  Objection, foundation.

9    BY THE WITNESS:

10       A.   In an interrogation?  Not necessarily.

11   BY MR. STARR:

12       Q.   Okay.  Is an interview more open-ended

13   than an interrogation in your experience?

14       MR. COYNE:  Same objection.

15   BY THE WITNESS:

16       A.   I wouldn't know.

17   BY MR. STARR:

18       Q.   Would you characterize the conversation

19   you had with Ms. Friend as an interview or an

20   interrogation?

21       A.   An interview.

22       Q.   Is that because she wasn't in custody?

23       A.   She wasn't in custody.  It was in her

24   house, in her kitchen.  I would consider that an

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 148

```
 1   interview.
 2       Q.   Because of the setting?
 3       A.   The setting, the whole thing.  She
 4   wasn't under arrest.
 5       Q.   And --
 6       A.   Free -- free to go, free to tell me to
 7   go.
 8       Q.   And during your time as a State's
 9   Attorney investigator when you would go out to
10   conduct interviews, did you ever audio or
11   visually record those interviews?
12       A.   Yes.
13       Q.   And would you record the interviews
14   whenever possible?
15       A.   Pardon?
16       Q.   Would you record those interviews
17   whenever possible?
18       A.   Yes.
19       Q.   And when you were interviewing somebody
20   as a State's Attorney investigator, would you
21   take contemporaneous notes about what they were
22   telling you?
23       A.   Yes.
24       Q.   Okay.  And then would you submit those
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 149

```
 1    notes with your report to your supervisor?

 2        A.   Not initially, no.

 3        Q.   And what are --

 4        A.   I may have, but I wasn't obligated to.

 5        Q.   Okay.  I am going to unpack that a

 6    little bit.

 7             So you took contemporaneous notes when

 8    you conducted interviews, and then your next

 9    step would be to write up a report of that

10    interview?

11        A.   Based on those notes, yes, sir.

12        Q.   And then -- and then you would submit

13    that report to your supervisor for approval,

14    correct?

15        A.   Correct.

16        Q.   But you didn't submit your notes in --

17    accompanied with the report that you submitted;

18    is that correct?

19        MS. WEST:  Objection, misstates his

20    testimony.

21    BY THE WITNESS:

22        A.   I didn't say that.

23    BY MR. STARR:

24        Q.   Okay.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 150

1    A.   I --

2    Q.   **Could you explain to me what your**

3  **process was?**

4    A.   I -- I didn't have to, and I can't

5  really remember if I did.  I'm not sure.  I

6  think -- I just really couldn't tell you.

7  Initially, no.  Later it became the way to do

8  it.

9    Q.   **Do you know when that change occurred?**

10    A.   I couldn't give you an exact date.

11  Maybe 2019.

12    Q.   **Okay.  So from 2005 to 2019, you**

13  **weren't obligated to submit your notes when you**

14  **submitted your report; is that correct?**

15    A.   I'm not being exact on the dates, but I

16  was not obligated to submit my notes to the

17  supervisor or the State's Attorney.

18    Q.   **So is it safe to assume that in 2015**

19  **when you drafted this investigative report, you**

20  **were not obligated to submit your notes?**

21    A.   To who?

22    Q.   **To your supervisor.**

23    A.   I don't -- I don't think so.  No,

24  not -- he may have seen them.  I mean, he had

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 151

1    them.

2         Q.   And when --

3         A.   There was no -- there was no formal

4    obligation for me to keep my notes and to submit

5    them to the State's Attorney.

6         **Q.   When you submitted the first draft of**

7    **this investigative report in the Fletcher case**

8    **summarizing your interview with Ms. Friend, did**

9    **you or did you not submit your notes with this**

10   **report to your supervisor?**

11        A.   I just can't remember as I sit here

12   right now.

13        **Q.   And did you have any obligations if you**

14   **had audio recorded or video recorded the**

15   **interview to submit those recordings to your**

16   **supervisor when you submitted your initial**

17   **report?**

18        A.   I would have, yes.

19        **Q.   Okay.**

20        A.   Oh, I take that back.  I don't even

21   know if I did that initially.  I -- I don't know

22   that I would do that with the supervisor.  I --

23   or let me rephrase that.

24             I don't think I was obligated to, and I

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 152

1    just can't recall if I did or didn't.

2        **Q.    Okay.  In the Fletcher case, you**

3    **submitted an investigative report summarizing**

4    **your interview with Ms. Friend.**

5            **We established that, correct?**

6        A.    Correct.

7        **Q.    Did you audio or video record your**

8    **interview with Ms. Friend?**

9        A.    No.

10       **Q.    Why not?**

11       A.    Didn't have a camera with me.

12       **Q.    And I -- correct me if I'm wrong.  I**

13   **believe your previous testimony was that you**

14   **would -- whenever you could, you would audio or**

15   **video record interviews you conducted.**

16       A.    Yes.  You would have to have a camera

17   to do that, though.

18       **Q.    And why didn't you have a camera on**

19   **this occasion when you interviewed Ms. Friend?**

20       A.    I -- I couldn't tell you.  Not knowing,

21   I hesitate to reply.

22       **Q.    After you get your initial report**

23   **approved by your supervisor, do you go through**

24   **the same process with the State's Attorney?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 153

1      A.    And what's the same process?

2      **Q.    Yeah.  That's fair.**

3            **So you testified that your process was**

4      **you would conduct the interview, take notes,**

5      **summarize those notes in a report, and submit a**

6      **draft of that report to your supervisor, right?**

7      A.    I would say 99 percent of the time it

8      was the report -- I signed off on the report.

9      I'd say 99 -- 99 and 9/10ths percent of the time

10     I signed off on the report.  I was done with it.

11     A supervisor reviewed it, the package, to make

12     sure that the attached -- something like an

13     attachment was there.

14            "Oh, by the way, you said you

15     inventoried something.  Where is the inventory

16     number?"  Things of that -- but as far as the

17     content of the report, that's 99 and 9/10ths

18     percent me or my partner's report.

19     **Q.    After you got approval from your**

20     **supervisor --**

21     A.    Pardon?

22     **Q.    After you got approval from your**

23     **supervisor, did you then submit a report to the**

24     **State's Attorney?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 154

1      A.   Yeah.  We submit that report then to

2    the State's Attorney.

3      Q.   **And was that a draft report that**

4    **ever -- would ever get bounced back by the**

5    **State's Attorney?**

6      A.   No.  I didn't ever have one do that.

7      Q.   **So that was your final report?**

8      A.   That was the final report, basically.

9    Oftentimes, I hand delivered them to them, save

10   the sergeant some aggregation.

11     Q.   **I asked you about your contemporaneous**

12   **notes.**

13          **Did you ever submit your**

14   **contemporaneous notes to the State's Attorney?**

15     A.   On this case?

16     Q.   **On any case.**

17     A.   Yes.  They would go to the sergeants or

18   the sergeants saw them, and then the State's

19   Attorney would get them.

20     Q.   **So it was your practice to submit your**

21   **handwritten notes to your sergeant, and then**

22   **they would eventually make their way up the**

23   **chain --**

24     A.   Well, we --

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 155

1    Q.    -- to the State's Attorney?

2    A.    When that kicked in --

3    Q.    Okay.

4    A.    -- we had to keep notes.

5    Q.    And that was not --

6    A.    Keep -- retain our notes.

7    Q.    And that was not until 2019?

8    A.    That's my best guess.

9    Q.    Well, what was your practice before

10   2019?

11   A.    Shred them when you don't need them

12   anymore.

13   Q.    So you took contemporaneous notes of

14   interviews that you conducted with witnesses in

15   post-conviction cases, and then you summarized

16   those notes and you shredded them?

17   A.    Correct.

18   Q.    Okay.  Did anyone ever see your

19   contemporaneous notes in the Fletcher case?

20   A.    Did anybody what?

21   Q.    Receive your contemporaneous notes that

22   you took in the Fletcher case?

23   MR. COYNE:  Objection, foundation.

24        Go ahead.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 156

```
 1   BY THE WITNESS:
 2       A.   Yeah, my partner did.
 3   BY MR. STARR:
 4       Q.   Okay.  That's Mr. Carroll?
 5       A.   Yes, yeah.
 6       Q.   You gave him the notes to review?
 7       A.   He was right there.
 8       Q.   Okay.
 9       A.   He may have even added something to
10   them.  I don't remember right now.
11       Q.   That's another question I have then.
12            So when you were taking notes of
13   interviews when you were conducting them with
14   another investigator, would you both take notes
15   on the same piece of paper?
16       A.   Not really.  There'd be one guy --
17   probably it was me doing the yapping in this
18   case and Carroll doing the notes.
19       Q.   Do you have an independent recollection
20   of whether or not you took notes in the -- in
21   the --
22       A.   Pardon?
23       Q.   Do you have an independent recollection
24   of whether or not you took notes during the
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 157

1    **Friend interview?**

2         A.   No.  I was -- I remember I was handing

3    her the stuff.  I was reading it to her, and she

4    was making the notes.  I -- I just can't recall

5    if I took a few notes or not.  I -- I just don't

6    recall.

7         **Q.   But you do recall someone taking notes,**

8    **correct?**

9         A.   Somebody would have taken notes, yeah.

10        **Q.   Okay.  So if you didn't take notes**

11   **during the Friend interview, it would have been**

12   **Mr. Carroll that took the notes?**

13        A.   Or it could have been both of us, but I

14   would have taken the fewest amount of notes,

15   because I remember that I was doing most of the

16   yapping with her.  Her and I seemed to have hit

17   it off.

18        **Q.   And where are the notes that were taken**

19   **during the Friend interview?**

20        MR. COYNE:  Objection, foundation.

21   BY THE WITNESS:

22        A.   Shredded.

23   BY MR. STARR:

24        **Q.   Okay.  You had a shredder at the**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 158

1   office?

2      A.   We had a couple of them.  Not in our

3   office, per se.  We'd go find somewhere to rip

4   them up, throw them in a garbage can.

5      Q.   And that was your practice?

6      A.   That was the practice.  That was the

7   practice then, yes.  There is a policy now

8   that's different, but that was the practice in

9   '15.

10     Q.   And as of 2019, your understanding of

11  the policy changed, that you were supposed to

12  retain these notes?

13     A.   I think it was 2019, yeah.  I'm not 100

14  percent sure.  There's state law on it if it's a

15  homicide investigation.  There is a number of

16  issues that are -- that are out there.

17     Q.   And when you were writing your report

18  to submit to your supervisor, would you write

19  that on a computer?

20     A.   Some of it on -- well, obviously, it

21  went on the computer.  Well, yeah.  I suppose

22  when I started, I still used a typewriter, but

23  it switched to computers pretty quick.

24     Q.   How about this Exhibit 1?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 159

```
 1      A.   That's --

 2      Q.   Did you write that on a computer?

 3      A.   That's computer-generated, yeah.

 4      Q.   And so if it was computer-generated,

 5  you would save the draft, and then you

 6  would submit the draft --

 7      A.   You'd go back to it, yeah.  But usually

 8  I roughed it out longhand is -- was -- just my

 9  own -- from, I guess, when I started.

10      Q.   So you would handwrite the report

11  before you'd type it up?

12      A.   Pretty much, yeah.

13      Q.   Okay.  Did you handwrite this report

14  before you typed it up?

15      A.   I really don't recall.

16      Q.   Okay.

17      A.   I probably wrote the better part of it

18  out and then went to the computer.

19      Q.   But since you wrote this report on a

20  report [sic] -- or strike that.

21           Since you wrote this report on a

22  computer, there should be a saved draft on a

23  computer, correct?

24      A.   I would guess so.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 160

1      Q.   Okay.  And if you wrote more than one

2  draft, there should be more than one saved

3  draft, correct?

4      MR. COYNE:  Objection, foundation.

5  BY THE WITNESS:

6      A.   Well, I -- I mean, I don't know how --

7  let me tell you something about me and

8  computers.  We are not best friends.  I can't

9  even remember -- I can't even remember how it --

10     THE COURT REPORTER:  Sorry?

11     MR. COYNE:  You can't remember what?

12     THE WITNESS:  Huh?

13     MR. COYNE:  You have your hand over your

14  mouth.

15  BY THE WITNESS:

16     A.   I can't -- I can't remember how it

17  went.

18  BY MR. STARR:

19     Q.   In 2015?

20     A.   I'm trying to be -- you know, it's only

21  been a couple of years, but things are done

22  electronically now as I was leaving, but back

23  then, it was just an old computer.  You'd type

24  it up, just go back in and make corrections on

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 161

1    it, yeah.

2        Q.    But in 2015, you would have saved -- if

3    you had written more than one draft of the

4    report, you would have saved --

5        A.    No.  It would have been one --

6        THE COURT REPORTER:  Sorry.  If you could

7    wait until he finishes asking his question.

8        MR. COYNE:  Yeah.  Just let him finish the

9    question.

10       THE WITNESS:  Okay.

11       MR. COYNE:  Take it easy on Madam Court

12   Reporter.

13       THE WITNESS:  I'm sorry.  I'm sorry.

14   BY MR. STARR:

15       Q.    So let me just reask it.

16            So in 2015 when you wrote this draft on

17   a computer, if you had written more than one

18   draft on the computer, you would have

19   necessarily had to save more than one draft,

20   correct?

21       MR. COYNE:  Objection, foundation.

22   BY THE WITNESS:

23       A.    It would have been -- I would not have

24   saved the whole copy.  I would have just -- I'd

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 162

1   just go back to what I was doing and change a

2   line, move a paragraph up or down, or something

3   of that nature.  But there wouldn't be, like,

4   five copies of the draft in various stages in

5   the computer.  I mean, I don't know computers

6   well, but I don't think that's how it works.

7       **Q.   Do you -- do you have any independent**

8   **recollection of whether or not there -- you did**

9   **more than one draft of this report?**

10      A.   Do I have any independent --

11      **Q.   Yeah.**

12      A.   Did I -- say that again.

13      **Q.   Okay.  Do you have an independent**

14  **recollection of whether or not there was more**

15  **than one draft of this report that was done by**

16  **you?**

17      A.   More than one completed draft and then

18  I changed it?

19      **Q.   Just specifically --**

20      A.   Oh.

21      **Q.   -- do you have any independent**

22  **recollection of whether or not you drafted more**

23  **than one draft of this?**

24      A.   It took me more than one time to write

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 163

1    the report.  I may have -- I couldn't tell you.

2    I have no specific recollection.  I generally

3    scribbled out a whole bunch, and then I would go

4    to the computer and stop/start, stop/start.  I

5    might start the damn thing and then get -- go do

6    something else and forget about it for a week.

7         Q.   So this is a yes or no question.

8              Would you agree that the primary

9    purpose in going out and trying to conduct these

10   interviews with witnesses in post-conviction

11   cases was to determine the guilt or innocence of

12   the individual that was convicted?

13        MR. COYNE:  Objection, form.

14        MR. HOLMES:  Object -- can the question be

15   repeated, please, by Madam Court Reporter?

16                    (Whereupon, the record was read

17                     as requested.)

18        MR. HOLMES:  So on behalf of the State's

19   Attorney's Office, I instruct the witness not to

20   answer on the ground of the deliberative process

21   privilege.  Although framed to encompass a range

22   of cases, the question is framed so as to

23   encompass a very specific range of cases, and,

24   therefore, it's seeking to invade the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 164

1   deliberative processes of the office in relation

2   to those specific cases.  So that's the

3   instruction.

4         I instruct the witness not to answer.

5   BY MR. STARR:

6   **Q.   Are you going to take the State's**

7   **Attorney's --**

8   A.   I -- I couldn't follow all of --

9   MR. COYNE:  So he's -- the State's

10  Attorney -- the Assistant State's Attorney --

11  THE WITNESS:  Right.

12  MR. COYNE:  -- Mr. Holmes has instructed you

13  not to answer that question based on the

14  deliberative process privilege.  I would urge

15  you to follow Mr. Holmes' instruction in that

16  regard.

17  THE WITNESS:  Got you.

18  MR. COYNE:  I'm the loudest one here, I

19  think.  That's why I --

20  BY MR. STARR:

21  **Q.   Are you going to respect the State's**

22  **Attorney's instruction and refuse to answer my**

23  **question?**

24  A.   Ask it again, but, yes, I'm probably

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 165

1    going to.

2        Q.   Ask the original question again?

3        A.   Sure.

4        Q.   Well, I'm going to ask it a different

5    way.

6             So in the McIntosh -- do you remember

7    testifying in the McIntosh case?

8        A.   Now we are talking about something

9    different.

10       Q.   I'm not trying to --

11       A.   I'm not going to answer that.

12       Q.   I'm not trying to confuse you.

13       A.   I will stand by what -- what he

14   recommended.

15       MR. COYNE:  And for the record, the witness

16   has adopted the instruction of Mr. Holmes and is

17   refusing to answer the question -- the last full

18   question asked based upon the deliberative

19   process privilege just so we are clear on the

20   record.

21   BY MR. STARR:

22       Q.   And I'm -- and I'm not trying to

23   confuse you, but do you -- you previously

24   testified that you were deposed in the McIntosh

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 166

1    case, correct?

2        A.    What about the McIntosh?

3        Q.    **You were -- you gave a deposition in**

4    **that case?**

5        A.    That's correct.

6        Q.    **And do you recall testifying in that**

7    **case during that deposition that the primary**

8    **purpose in going out to conduct these interviews**

9    **was to determine the guilt or innocence of the**

10   **convicted person?**

11       MR. COYNE:  Before you answer that question,

12   let me just interpose for the record:  With

13   respect to any questions to this witness as to

14   the McIntosh case, there was a motion for a

15   protective order filed pursuant to Rule 26.  It

16   was filed with the court based upon, among other

17   bases, the fact that it was not legally

18   appropriate to ask the questions to this witness

19   about the McIntosh case.

20            That motion for a protective order was

21   overruled.  It was denied, and, therefore, I

22   will allow him to answer.  But I do want to make

23   a record that we -- for a continuing line of

24   objections to any questions to this witness

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 167

1     about the McIntosh or any other case unrelated

2     to this case.  For the record, I object to those

3     questions.

4            Go ahead.

5        MR. HOLMES:  And I -- is the question

6     completed, or are you going to ask a new

7     question?

8        MR. STARR:  Well, I think I'm just going to

9     leave the question I asked.  I don't know if he

10    remembers it or not, but I'm certainly going

11    to -- I'm going to just try to move forward

12    here.

13       MR. HOLMES:  So it's seeking a yes or no

14    answer as to a document that speaks for itself,

15    but the Office objects to the extent that

16    counsel would be seeking for Mr. Brannigan to

17    elaborate at all beyond a yes or no answer on

18    the ground of the deliberative process

19    privilege, and I would instruct the witness not

20    to elaborate beyond a yes or no answer on the

21    ground of deliberative process privilege.

22    BY MR. STARR:

23       **Q.    Do you remember my question?**

24       A.    Something about McIntosh and do I

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 168

1    remember.

2        **Q.    Yeah.  I just --**

3        A.    Okay.

4        **Q.    I'm wondering whether or not you**

5    **remember during the McIntosh deposition you**

6    **testified that it was your understanding that**

7    **the primary purpose in going out and**

8    **interviewing these witnesses was to help**

9    **determine the guilt or innocence of the**

10   **convicted person.**

11       MR. HOLMES:  Same objection.

12       MR. COYNE:  Same objection as well.

13   BY MR. STARR:

14       **Q.    Do you remember giving that testimony,**

15   **Mr. Brannigan?**

16       A.    I --

17       MR. HOLMES:  Same objection and conditional

18   instruction.

19   BY THE WITNESS:

20       A.    I just don't recall.

21   BY MR. STARR:

22       **Q.    Okay.  When you went out to interview**

23   **witnesses and during your role as an**

24   **investigator with the State's Attorney's Office,**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 169

1    **was it ever the goal to try to defend the**

2    **conviction that existed?**

3        MR. COYNE:  Objection, form, foundation.

4        MR. HOLMES:  I object to this question to the

5    extent that it seeks for the witness to expound

6    upon any specific case in relation to that

7    question and instruct the witness not to answer

8    in relation to any specific case on ground of

9    the deliberative process privilege.

10   BY MR. STARR:

11       Q.   **Are you going to refuse to answer my**

12   **question?**

13       A.   He is -- he is requesting I don't

14   answer.

15       Q.   **Was it ever your opinion that your job**

16   **was to go out and defend a conviction when**

17   **interviewing witnesses during your work as an**

18   **investigator --**

19       MR. COYNE:  Objection, form.

20           Go ahead.

21       MR. HOLMES:  On behalf of the State's

22   Attorney's Office, I instruct the witness not to

23   answer on the ground of the deliberative process

24   privilege.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 170

```
 1    BY THE WITNESS:
 2        A.   I'm not an attorney, so I'm going to
 3    follow the advice of the attorneys.
 4    BY MR. STARR:
 5        Q.   And I'll note for the record that
 6    during the McIntosh deposition, the State's
 7    Attorney's Office let you answer that --
 8        A.   Pardon?
 9        Q.   -- question.
10             I said I will note for the record that
11    during the McIntosh deposition, the State's
12    Attorney's Office had a different position.
13    They let you answer that question, but the
14    document speaks for itself.
15        A.   You've got to talk slower.  I'm sorry.
16        Q.   I will note for the -- I'm trying to
17    get everybody out of here.  Everyone's
18    complaining about getting out of here.
19        MR. COYNE:  I wasn't.
20        MR. STARR:  I will note for the record --
21    everybody but John.
22        MR. COYNE:  And the witness.
23        MR. STARR:  I will note for the record that
24    during the McIntosh deposition, the State's
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

                                                    Page 171

 1    Attorney's Office let you answer that question,
 2    but I will -- I will respect your --
 3         THE WITNESS:  Okay.
 4    BY MR. STARR:
 5         Q.    -- decision not to answer.
 6               You were asked about your independent
 7    recollection in this case.
 8               Do you remember those questions that
 9    Ms. West asked?
10         A.   Yes, ma'am.
11         Q.   How do you --
12         A.   Yes, sir.
13         Q.   No worries.
14               How do you define the term -- what do
15    you mean when you hear the -- strike that.
16               When you say you have an independent
17    recollection, what do you mean by that?
18         A.   That I -- I recall this interview, you
19    know, pretty much every period and --
20         Q.   Okay.
21         A.   You know, I mean, the report helped, of
22    course, refresh my memory, but I -- I recall the
23    interview.
24         Q.   Yeah.  So --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 172

1    A.   I recall speaking with her and sitting

2    there with her.

3       **Q.   So I have a slightly different**

4    **definition I want you to understand regarding**

5    **independent recollection.**

6          **When I use the term "independent**

7    **recollection," what I'm talking about is your**

8    **physical memory of events and conversations you**

9    **had without the aid of a report sitting in front**

10   **of you that you can refer to, without the aid of**

11   **any conversations you had with anybody, whether**

12   **it was your partner or your attorney; is that**

13   **fair?**

14      MR. COYNE:  I'm just going to object to

15   physical memory.

16          Go ahead.

17   BY THE WITNESS:

18      A.   If -- if -- run it by me again.

19   BY MR. STARR:

20      **Q.   Yeah.  I just want to make sure that**

21   **makes -- this makes sense to you as a**

22   **definition.**

23      A.   It -- I remember this interview because

24   it was pretty egregious compared to most of our

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 173

1    interviews.  It was, you know, two affidavits.

2    We don't often get two affidavits, and she

3    was -- what's the term I'm trying to say?

4            She was very -- she was almost glad to

5    see us come there.  There was no what am I doing

6    there.  It was an interesting interview compared

7    to most, and I pretty much recall every sentence

8    in that affidavit as soon as I remembered what

9    case it was about.

10       **Q.   And you say this was more egregious**

11   **than the normal case?**

12       A.   Than the normal ones, yeah.

13       **Q.   And could you explain why that -- why**

14   **that is the case, why you felt that?**

15       A.   Usually, we get -- they -- when they're

16   like that, "Ah, I just signed it to help a

17   friend," and that's the end of an affidavit.

18   It's all bogus, things -- things of that nature

19   or, "No.  That's my affidavit and I'm sticking

20   to it."  But we do get some, and this one stuck

21   out.  Two times.  She was fairly articulate.  I

22   just remember this one.

23       **Q.   Okay.  So when Ms. West asked you**

24   **initially what your independent recollection**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 174

1    was, my -- my memory of your testimony was that

2    you said that Ms. Friend was pleasant, that it

3    wasn't a long, drawn out interview, that it was

4    in her kitchen in her apartment, and that was

5    basically it.  Okay?

6        A.    Yeah.

7        Q.    Did you -- do you remember testifying

8    to that?

9        A.    Pretty much, yeah.

10       Q.    And then when Ms. West put the

11   document -- report in front of you and asked you

12   questions about your recollection, you were able

13   to look down at the report and answer her

14   questions, correct?

15       A.    Correct.

16       Q.    And so I would like for you without the

17   aid of the report -- and I know we've already

18   went over it once, but if you can tell me

19   what -- everything you independently recall

20   about this interview.

21       MR. COYNE:  Objection, asked and answered.

22   BY THE WITNESS:

23       A.    Is it -- this -- I'm not here for a

24   memory contest.  I just did the best I could.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 175

 1   BY MR. STARR:
 2        Q.   **I understand that, sir.**
 3        A.   And I got that.
 4        Q.   **I understand.**
 5             **You were looking at the report when you**
 6   **were answering questions about your**
 7   **independent --**
 8        A.   Correct, in that --
 9        THE COURT REPORTER:  Sorry, sorry.
10   BY MR. STARR:
11        Q.   **You were looking at the report when you**
12   **were answering questions about the -- your**
13   **independent recollection, which is not an**
14   **approach that I would normally take with a**
15   **witness, because I think that would undermine**
16   **your independent recollection.**
17             **I'm asking you now without the report**
18   **in front of you, can you tell me everything that**
19   **you independently recall -- independently recall**
20   **about that interview?**
21        MS. MORRISON:  Objection, argumentative.
22        MS. WEST:  Join.  Asked and answered.
23        MR. COYNE:  Renewed asked and answered.
24        MS. WEST:  Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 176

1      THE WITNESS:  Pardon?

2      MR. COYNE:  I just renewed the objection of

3  asked and answered.

4      THE WITNESS:  So then --

5      MR. COYNE:  There is a question pending.  We

6  have all -- we've objected.

7          The question is, without the aid of

8  your report, can you testify --

9  BY THE WITNESS:

10     A.   Do I think -- I'm pretty sure I could.

11  What would you like me to tell you?  Ask me a

12  question.

13  BY MR. STARR:

14     **Q.   I would -- I would like you to tell me**

15  **everything that you independently recall about**

16  **that interview without looking at your report**

17  **while you give that answer.**

18     A.    Okay.  We went -- went to her house,

19  identified ourselves, which is routine.  She was

20  very pleasant.  Asked her if she would sit for

21  the interview regarding two affidavits she had,

22  showed her the affidavits, started -- "Tell me

23  what happened."  She identified the affidavits.

24  I remember that.  And then, "What's this all

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 177

1  about?"

2          And then she went through her story and

3  stuff about these people were bothering her,

4  coming to her, and pestering her family members

5  and that one -- one was telling her -- I believe

6  it was Fletcher -- I believe, Fletcher's sister.

7  The other one said he was an uncle or something

8  and that they were telling her not to go to

9  court, that they would give her money, and then

10 she was -- she said eventually she found --

11 she -- she described the people, tall black guy,

12 who -- and that was the uncle.

13         And then she said she found -- she said

14 she was given money.  I remember asking her

15 about the money.  "Well, money, what are you

16 talking about?"

17         "Well, I found money orders in my

18 mailbox."

19         "What did you do with the money

20 orders?"

21         "Well, I cashed them."

22         "Who dropped them?"

23         "Well, I'm not sure, but I think it was

24 them," things of that nature.  And then -- well,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 178

1   you know, we talked to the detectives.  Then we

2   went over the affidavits, and we went over them.

3   And, "Is this true?

4          "No, no, no.  I was in jail at that

5   time.  And they wrote a letter for me."

6          I remember that specifically.  She

7   says, "Yeah.  I was in my jail clothes."

8          And I said, "Well, will you mark these?

9   You know, how about we look at this, and we'll

10  go over -- and I will read it to you, you read

11  your copy, and we will go over it, and you mark

12  down everything that's true or false.

13         And then if you have anything you want

14  to add to improve upon that or clarify it, go

15  right ahead.  And away we went and we -- step by

16  step by step each one of the little parts of the

17  affidavit.  It was nothing there that was

18  surprising.  It was just that simple.

19     **Q.   Is that everything you independently**

20  **recall about that interview?**

21     A.   Yeah.  It was just that simple.

22     **Q.   Okay.**

23     A.   It was not -- I mean, she told the

24  story right up front.  And it's pretty unusual;

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 179

1   you know, two separate affidavits, the money

2   business.  "What did you do with the money?"

3   She said she told -- gave -- told the State's

4   Attorney and the detectives about it.  What they

5   did, I don't know.  But it was not a tricky,

6   long, involved interview.

7       **Q.   What members of her family were the**

8   **people bothering?**

9       A.   She described it as one -- one who --

10  that was her term -- identified herself as a

11  sister and the other guy was an -- was an uncle.

12      **Q.   Right.**

13          **But I thought -- I think you just**

14  **testified that she told you that these people**

15  **were bothering members of her family.**

16      A.   They were bothering her.

17      **Q.   But not members of her family?**

18      A.   Oh, I don't -- I don't think she's

19  got -- I'm not sure.

20      **Q.   Okay.**

21      A.   But bothering her.

22      **Q.   What did Ms. Friend look like?**

23      A.   You know, I -- she was nothing unusual.

24  I couldn't tell you that she was -- I don't get

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 180

1   yelled at -- obese.  She just -- yeah.  I mean,

2   I don't know that I would recognize her if she

3   walked in here right now.  But she was just a

4   regular -- there was nothing unusual about her.

5   There was no conflict here.  There was no --

6   nothing unusual, just went through it, other

7   than, "Holy moly.  They are giving you money"

8   and all this.

9       Q.   Do you have any independent

10  recollection of what she looked like?

11      A.   She was black.

12      Q.   Besides being black, do you have any

13  independent recollection?

14      A.   Maybe -- maybe a little on the heavier

15  side, but she was not in -- a particularly

16  attractive woman.  Middle aged, 30, something

17  like that.  I don't know.  I could look at the

18  thing and refresh my memory.  But there was

19  nothing unusual about her.

20      Q.   Yeah, I don't want to -- I'm not trying

21  to -- I'm just trying to find out what your

22  actual independent recollection is.

23      A.   It's pretty clear on --

24      Q.   That's what the question is.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 181

1      A.    -- on this thing now.  I mean, it was a

2  simple interview.

3      Q.    **Was she light-skinned or dark-skinned**

4  **black?**

5      A.    Medium, kind of medium.

6      Q.    **Was she -- you said she was -- did you**

7  **say she wasn't obese or she wasn't a beast?  I'm**

8  **not --**

9      A.    I said obese.  She wasn't, like,

10  grande, a --

11      Q.    **She wasn't --**

12      THE COURT REPORTER:  I'm sorry?

13  BY THE WITNESS:

14      A.    Grande.  She wasn't big.  She wasn't

15  real big.  She wasn't -- just a regular person,

16  as far as I recall.

17  BY MR. STARR:

18      Q.    **Okay.  Do you remember what sort of**

19  **hairstyle she had?**

20      A.    No.

21      Q.    **Do you remember what color hair she**

22  **had?**

23      A.    No.  I don't remember if she had any

24  pink hair or purple hair.  I suspect she just

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 182

1    had regular hair, or I would -- it would stick

2    out in my memory better.

3        Q.   Do you recall how tall or how short she

4    was?

5        A.   Medium height, you know.  She wasn't

6    real tiny.

7        Q.   What do you mean by that?

8        A.   She wasn't real big.  Let's go with

9    5'6", 5'7" or something.  I can't even --

10       Q.   And you have an independent

11   recollection of it, or are you guessing?

12       A.   Pardon?

13       Q.   Are you guessing that height or --

14       A.   I -- I'm guessing.  I didn't measure

15   her.  Yeah.

16       MR. COYNE:  We don't guess in depositions.  I

17   urge you as your counsel not to guess in this

18   deposition.

19       THE WITNESS:  Yes.

20       MR. COYNE:  That's my advice to you.

21       THE WITNESS:  Yes, sir.

22   BY MR. STARR:

23       Q.   Do you have any independent

24   recollection of what color her eyes were?

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 183

1    A.   Independent recollection, no.  I didn't
2  look to see what color her eyes are.
3    **Q.   Do you have any independent**
4  **recollection of any other physical**
5  **characteristics that she had?**
6    A.   No.
7    **Q.   And then beyond what you've just**
8  **testified to, do you have any other independent**
9  **recollection whatsoever?**
10   A.   Of?
11   **Q.   Of your interview with Ms. Friend.**
12   A.   I'd say it was unusual.
13   THE COURT REPORTER:  Sorry?
14  BY THE WITNESS:
15   A.   Just that it was a bit unusual with the
16  giving her money and -- or finding money in the
17  mailbox being dropped there by somebody.
18  BY MR. STARR:
19   **Q.   All right.  So let me ask you about**
20  **that.**
21     **I think you testified when Ms. West was**
22  **questioning you that she never specifically told**
23  **you that the money was from members of James**
24  **Fletcher's family; is that --**

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 184

1     A.    Say it again.

2     Q.    **I believe when Ms. West was questioning**

3 **you, you testified that Ms. Friend never**

4 **specifically told you that the money was from**

5 **members of Fletcher's family.**

6     A.    That that's my recollection, yeah.

7     Q.    **Okay.**

8     A.    I believe so.

9     Q.    **Okay.  And then I think you just**

10 **testified when I asked about your independent**

11 **recollection that she did tell you that.**

12          **So which one is it?**

13     A.    I don't --

14     MR. COYNE:  Objection.  That mischaracterizes

15 the witness' testimony.

16     MS. WEST:  Join.

17 BY MR. STARR:

18     Q.    **So she never told you that members of**

19 **the Fletcher family --**

20     A.    I don't -- I don't recall --

21     THE COURT REPORTER:  Sorry?

22     MR. COYNE:  Objection, asked and answered.

23          Go ahead.

24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 185

1   BY MR. STARR:

2       **Q.   She never told you that members of**

3   **Fletcher's family gave her any money, correct?**

4       MR. COYNE:  Objection, asked and answered.

5   BY THE WITNESS:

6       A.   Correct.

7   BY MR. STARR:

8       **Q.   Okay.  Do you recall any other**

9   **questions that you asked Ms. Friend?**

10      A.   That would have all been in the report.

11      **Q.   Okay.  Did you ever ask Ms. Friend if**

12  **she positively identified Mr. Fletcher?**

13      A.   Just what she noted on the -- that it

14  was Fletcher on the affidavits.

15      **Q.   Did you ever ask Ms. Friend if**

16  **Mr. Fletcher was guilty of the crime?**

17      A.   Did I ask her if he was guilty?

18      **Q.   Yes.**

19      A.   No, I did not.

20      **Q.   Why not?**

21      A.   My job is to interview her, seek the

22  truth.

23      **Q.   But you didn't think that seeking the**

24  **truth would also involve asking her whether or**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 186

1  **not she witnessed Mr. Fletcher commit the crime?**

2      A.   There is a judge that will decide

3  what's the truth and what's not and whether he's

4  guilty or not.

5      **Q.   Right.**

6          **But you said your job is to seek the**

7  **truth.  So as a part of your job of seeking the**

8  **truth, you did not think to ask her whether or**

9  **not she witnessed Mr. Fletcher commit the crime,**

10 **correct?**

11     MR. COYNE:  Objection, asked and answered.

12         Go ahead.

13 BY THE WITNESS:

14     A.   Say it again.

15     MR. STARR:  Can you read that back?

16             (Whereupon, the record was read

17              as requested.)

18 BY THE WITNESS:

19     A.   I did not specifically ask her.  It was

20 indicated by her writings and notations.

21 BY MR. STARR:

22     **Q.   Do you know whether or not Ms. Friend**

23 **actually saw Mr. Fletcher commit this crime?**

24     A.   Do I know?  I wasn't there, so I

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 187

```
 1   wouldn't know.
 2       Q.   And you didn't ask Ms. Fletcher
 3   [sic] -- or Ms. Friend that, so you --
 4       A.   Ms. Friend.  That's who you meant
 5   before.
 6       THE COURT REPORTER:  Sorry?
 7   BY THE WITNESS:
 8       A.   I take that back, because you said
 9   Fletcher, I believe, if I saw Ms. Fletcher.
10   BY MR. STARR:
11       Q.   Okay.  Maybe I -- maybe I misspoke.  I
12   apologize.
13       A.   Can you go back to that?  I just want
14   to be clear.
15       Q.   Do you -- Do you know whether or not
16   Ms. Friend --
17       A.   No.  I want her -- can she read this
18   back?
19       MR. COYNE:  He is going to repeat the
20   question.
21       MR. STARR:  Yeah.
22   BY MR. STARR:
23       Q.   And if I misspoke, I apologize.
24           Do you know whether or not Ms. Friend
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 188

1    actually saw Mr. Fletcher commit this crime?

2        A.   Do I know?  Yes, by her notations.  I

3    did not ask her.

4        Q.   Okay.  So you never asked Ms. Friend if

5    she actually witnessed Ms. Fletcher --

6    Mr. Fletcher commit the crime, correct?

7        A.   Correct.

8        Q.   So you don't actually know whether or

9    not Ms. Friend saw Mr. Fletcher commit the

10   crime, correct?

11       A.   I wasn't there, so I wouldn't know if

12   she did or didn't.

13       Q.   Okay.  You were asked some questions

14   about Terry Rogers.

15            Do you remember those questions?

16       A.   Yes.

17       Q.   Other than your -- other than your

18   assignment to interview Ms. Friend, do you have

19   any independent recollection that you were

20   assigned to do anything else on this particular

21   case?

22       A.   And Terry -- is that the one where the

23   e-mail went?

24       Q.   Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 189

1    A.   Yeah.  I was probably asked to at least

2  locate him.

3    **Q.   Yeah, you mentioned --**

4    A.   There may have been other people, too,

5  but I don't recall them.

6    **Q.   You mentioned that in some cases where**

7  **you were conducting interviews, at some point in**

8  **time you were waived off on conducting other**

9  **interviews.**

10           **Do you remember saying that?**

11    MR. COYNE:  Objection, form.

12  BY THE WITNESS:

13    A.   Yes.

14  BY MR. STARR:

15    **Q.   Were you waived off on interviewing**

16  **Mr. Rogers in this case?**

17    A.   I don't remember how it came about, but

18  it's routine that you may be given four people

19  to locate in an attempt to get an interview, and

20  you might do two.  You might do one.  You might

21  do all of them, but it's routine for them to --

22  the State -- them, being the Assistant State's

23  Attorneys, to say, "We are moving on to

24  something else," or "I have got another case.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 190

1    Put this on hold," and it just stops.  And

2    sometimes they come back, and sometimes they

3    don't.  I have no idea.

4        **Q.   Do you have any independent**

5    **recollection in this case whether or not you**

6    **were waived off of interviewing Terry Rogers?**

7        A.   I must have been or we would have kept

8    looking for him.

9        **Q.   Do you have an independent recollection**

10   **of whether or not you were waived off of**

11   **interviewing Emmett Wade in this case?**

12       A.   They must have decided we didn't need

13   to find him, because I don't remember

14   interviewing him.

15       **Q.   Do you have any independent**

16   **recollection of whether or not you were waived**

17   **off of interviewing Edward Cooper?**

18       A.   I'm -- same -- same position.  I didn't

19   interview him, and either I didn't find him or I

20   was told to let it go.

21       MR. COYNE:  The question is whether you have

22   an independent recollection.

23   BY THE WITNESS:

24       A.   I don't have -- okay.  I got you there.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 191

1           I don't have an independent -- if I was

2      actually waived off.

3      BY MR. STARR:

4           **Q.   Is it your testimony that your only**

5      **involvement with the Sorrell homicide -- Willie**

6      **Sorrell was the victim.**

7           A.   Wait.  The only involvement --

8           **Q.   Let me just ask it again.**

9                **So Willie Sorrell -- do you know that**

10     **Willie Sorrell was the victim in this case?**

11          A.   Who?

12          **Q.   Willie Sorrell was the man who --**

13          A.   Oh, he is the old guy that caught the

14     stray bullet?

15          **Q.   Yes.**

16          A.   Yeah, okay.

17          **Q.   Okay.**

18          A.   He is the victim, right.

19          **Q.   So is it your testimony that your only**

20     **involvement in the Willie Sorrell homicide**

21     **investigation occurred when you were working at**

22     **the Cook County State's Attorney's Office in the**

23     **2000s?**

24          A.   That's the only thing I can recall,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 192

```
 1   yeah.
 2        Q.   And is it your testimony that you had
 3   no involvement with the Sorrell homicide
 4   investigation when you were employed by the
 5   Chicago Police Department?
 6        A.   That's my best recollection, correct.
 7        Q.   In terms of the underlying police
 8   investigation of the Sorrell homicide, do you
 9   have any knowledge of that investigation when it
10   was ongoing?
11        A.   Wait.  The '9- -- '90 portion or the
12   later one?  Either one.  I don't -- I don't have
13   any --
14        Q.   Yeah.  So --
15        A.   -- recollection of it.
16        Q.   Let me break it up just to be clear.
17             So you know the murder happened in
18   1990.
19        A.   I -- yeah, I think it was '90.
20        Q.   And you were working for the Chicago
21   Police Department in 1990, correct?
22        A.   Correct.
23        Q.   In 1990, did you have any knowledge of
24   the ongoing investigation into the Sorrell
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 193

 1    homicide?

 2        A.    No.

 3        Q.    Okay.  And then you -- you realized

 4    that it wasn't until 2002 that anyone was

 5    arrested for that crime, correct?

 6        A.    I don't know when I learned that

 7    anybody got arrested.

 8        Q.    So if I --

 9        A.    I didn't know anything about the case.

10        Q.    If I represent to you that my client,

11    Mr. Fletcher, was arrested in 2002, would you

12    have any reason to doubt that?

13        A.    No.

14        Q.    Okay.  So in 2002, you were working for

15    the Chicago Police Department, correct?

16        A.    In 2002, I was working at the police

17    department, correct.

18        Q.    And in the cold case unit, right?

19        A.    Yes.

20        Q.    Okay.  In 2002 when this case was being

21    investigated, do you have any -- did you have

22    knowledge at the time of the Sorrell homicide

23    investigation?

24        A.    No, sir.  Not that I recall, no.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 194

 1      Q.   Do you know that the Sorrell homicide
 2   investigation was a cold case?
 3      MS. MORRISON:   Object to foundation.
 4   BY THE WITNESS:
 5      A.   Do I know if -- well, it would be
 6   classified as one, because it happened in '90,
 7   and in 2002, that's pretty old, yeah.
 8   BY MR. STARR:
 9      Q.   It's 12 years, right?
10      A.   Yeah.  Whatever -- whatever it was,
11   yeah.
12      Q.   So did you have any knowledge when you
13   were working in the cold case unit of this being
14   a cold case that people were looking at?
15      A.   Not -- not to my knowledge.  I just
16   can't recall it, that case popping up on the
17   radar.
18      Q.   And then based on your review of --
19   strike that.
20           I think you testified -- and correct me
21   if I'm wrong.  I think you testified that you
22   would have necessarily reviewed whatever was in
23   the file before you went out to interview
24   Ms. Friend, right?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 195

1      A.   You reviewed what you had your hands

2   on.

3      **Q.   Okay.  And do you recall whether or not**

4   **there were police reports in the trial file that**

5   **you reviewed in this case?**

6      A.   I can't recall.

7      **Q.   All right.  Well, do you have any**

8   **independent recollection of reviewing any police**

9   **reports in this Sorrell homicide?**

10     A.   No.  No, sir.

11     **Q.   Okay.  Do you know whether or not you**

12  **were -- actually did, in fact, review any police**

13  **reports in the Sorrell homicide before you**

14  **interviewed Ms. Friend?**

15     A.   There would be no reason for me not to

16  look at some of them, but I don't know that I

17  looked at everything.  Like I said before, I

18  don't know that I read every scrap of paper.

19     **Q.   Do you have any independent**

20  **recollection of noticing or identifying anything**

21  **about the police investigation into the Sorrell**

22  **homicide that seemed unusual or improper?**

23     MR. COYNE:  Objection.  Objection, form.

24     MS. WEST:  Join.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 196

1      MR. HOLMES:  On behalf of the State's

2  Attorney's Office, I instruct the witness not to

3  answer on the ground of deliberative process

4  privilege.

5           I instruct the witness not to answer on

6  the ground of deliberative process privilege.

7      THE WITNESS:  Okay.  And that -- what was the

8  question?

9  BY MR. STARR:

10     **Q.   So the question was, do you have any**

11 **independent recollection of noticing anything**

12 **unusual or improper about the police**

13 **investigation into the murder of Willie Sorrell?**

14     MR. HOLMES:  Same objection.  On behalf of

15 the State's Attorney's Office, I --

16 BY THE WITNESS:

17     A.   Yeah.  I am going to follow the advice

18 of the attorney.

19 BY MR. STARR:

20     **Q.   And you're refusing to answer my**

21 **question?**

22     A.   Yeah.

23     **Q.   Okay.  Do you have any copies of any**

24 **notes that you took in the -- during your**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 197

1   assignment to the Fletcher case?

2       A.   Do I have any?  No.  No, sir.

3       Q.   And do you have any audio or video

4   recordings that you made at any point during

5   your assignment to the Fletcher case?

6       A.   No, sir.

7       Q.   Did you follow your usual practices

8   during your assignment to the Fletcher case?

9       MR. COYNE:  Objection, form.

10      THE WITNESS:  What?

11      MR. COYNE:  I just objected to form.  You can

12  answer.

13  BY THE WITNESS:

14      A.   I can't remember every single thing I

15  did, but I suspect I would have.

16  BY MR. STARR:

17      Q.   Do you recall any unique circumstances

18  that caused you to deviate from your typical

19  practices during your assignment to the Fletcher

20  case?

21      MR. COYNE:  Objection, form.

22  BY THE WITNESS:

23      A.   No, sir.

24  BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 198

1      Q.   When was the first time you heard about
2   the Willie Sorrell homicide?
3      A.   And as I sit here now, no clue.
4   Probably when I was assigned to start looking
5   up -- it might have been more -- more than me
6   assigned to it, but when we were -- we -- I'll
7   use the collective "we" were assigned to look up
8   the case.
9      Q.   And do you have any recollection of
10  speaking to any of the officers investigating
11  the Willie Sorrell homicide while the
12  investigation was pending?
13     A.   Do I?  No.  I have no recollection of
14  speaking to any of them.
15     Q.   Did you ever speak to any officers
16  about the Willie Sorrell homicide investigation
17  at any point?
18     A.   No.  I don't remember those guys.  I
19  don't remember speaking to them anywhere or at
20  any time.
21     Q.   As part of your practice as a Cook
22  County State's Attorney investigator, would you
23  speak to the officers that investigated the
24  underlying crimes that you were investigating?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 199

1      A.    You might.

2      Q.    In what circumstances would you make an

3   effort to speak to the officers that were

4   originally assigned to the case?

5      MR. COYNE:  Objection, form and foundation.

6   BY THE WITNESS:

7      A.    If the State's Attorney's Office

8   requested we do.

9   BY MR. STARR:

10     Q.    Okay.  So it would only be the case

11  that you would talk to the officers if the

12  State's Attorney requested you go talk to the

13  officers?

14     MR. COYNE:  Objection; form, foundation.

15  BY THE WITNESS:

16     A.    That's my best recollection right now,

17  yeah.

18  BY MR. STARR:

19     Q.    Well, you had a long, distinguished

20  career as a Chicago police officer.

21         I assume you knew a lot of police

22  officers, correct?

23     A.    That's correct.

24     Q.    Did you ever have an occasion while you

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 200

1   **were working a case for the State's Attorney's**

2   **Office, you saw officers you knew and you gave**

3   **them a call about the investigation?**

4        MS. MORRISON:  Object to form.

5   BY THE WITNESS:

6        A.   I may have, but I -- I don't recall any

7   specific case.  I don't think there would be a

8   reason for me not to just to get a better

9   handle.  I might have -- need help in finding a

10  witness, a myriad number of reasons, but off the

11  top of my head, I don't -- most people weren't

12  real happy for my position in the State's

13  Attorney's Office.

14       THE COURT REPORTER:  Most people...

15  BY THE WITNESS:

16       A.   Most detectives were not overly happy

17  to see us snooping around one of their

18  convictions, as you might imagine.

19  BY MR. STARR:

20       Q.   **Why not?**

21       A.   Because they want to -- "Let it go.

22  It's done.  It's over."  And they are worried

23  about ending up in court.

24       Q.   **Did you ever have any cases that you**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 201

1    **investigated as a lead detective that were**

2    **overturned after a conviction?**

3         MS. MORRISON:  Object to foundation.

4         MS. WEST:  Join.

5         MS. MORRISON:  Speculation.

6    BY THE WITNESS:

7         A.   I -- I was never a lead detective.

8    That's a -- a formal spot right now.  But that I

9    was involved in?  I have been involved in cases,

10   I think, that were overturned, but I don't know

11   what my role would be.  I can't think of

12   anything specifically right now, by I -- could I

13   talk to my lawyer about something?  I --

14        MR. COYNE:  Do you need to speak to me?

15        THE WITNESS:  Yeah.

16        MR. COYNE:  All right.  Let's go off the

17   record.

18        MR. STARR:  Do --

19        THE WITNESS:  Yeah.  Ask the question again.

20        MR. STARR:  Hold on.  Hold on.  Hold on.

21        THE WITNESS:  I want to make sure I got this.

22        MR. COYNE:  Wait a minute.  He just asked to

23   speak to me.

24        MR. STARR:  I know, but he's in the middle of

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 202

1    an answer.  So I want to make sure he has

2    answered it before --

3        THE WITNESS:  I want to make sure I

4    understand the question completely.

5        MR. STARR:  Technically, he has got to finish

6    his answer.

7        THE WITNESS:  Okay.

8        MR. COYNE:  Well, that's -- I didn't know if

9    he did -- I didn't know that he didn't finish

10   it.

11       MR. STARR:  I don't either.

12       THE WITNESS:  Yeah.  Give me the question

13   again, yeah.

14       MR. COYNE:  If -- in order to answer the

15   question, he is entitled to speak to his

16   attorney to determine whether a privilege

17   applies.  So he does not have to answer the

18   question in order to confer with his counsel

19   according to the federal rules.

20           But I'm not sure if he -- did you

21   answer that question or not?

22       THE WITNESS:  I'm -- I'm not sure either.

23       MR. COYNE:  Do you need -- in order to answer

24   that question --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 203

1      THE WITNESS:  Have her read me the --

2      MR. COYNE:  Yeah.  Let me ask you a question.

3      THE WITNESS:  Okay.

4      MR. COYNE:  You mentioned speaking to me.

5          In order to answer that question, do

6   you need to speak to me about the potential

7   application of a privilege?

8      THE WITNESS:  Well, you used the term "lead

9   detective."  That's what I'm worried about.  All

10  right?

11     MR. COYNE:  Do you show, Madam Court

12  Reporter, that he answered that question or no?

13     MR. HOLMES:  Or just if Madam Court Reporter

14  could read it back to us.

15                  (Whereupon, the record was read

16                   as requested.)

17  BY THE WITNESS:

18     A.   That would be my answer.

19     MR. COYNE:  Okay.  I think he has answered

20  then.

21  BY MR. STARR:

22     Q.   **Okay.  And in the cases that you were**

23  **involved in that were overturned, you -- did you**

24  **agree or disagree with the convictions being**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 204

1    **overturned?**

2        MR. COYNE:  Objection, form, foundation.

3        MR. HOLMES:  I --

4        MR. COYNE:  That requires speculation.

5        MR. HOLMES:  Now, I have to interject here

6    that, Mr. Starr, this latest question does not

7    distinguish between Mr. Brannigan's time with

8    the City of Chicago versus his time with the

9    State's Attorney's Office.

10            Are you referring, Mr. Starr, to his --

11   any convictions in cases in which he was

12   involved being overturned from his time with the

13   City of Chicago?

14       MR. STARR:  Yes.

15       MR. HOLMES:  The witness can answer if he is

16   able to.

17   BY THE WITNESS:

18       A.   What -- you've got to explain

19   "involved."  I mean --

20   BY MR. STARR:

21       **Q.   It was your term.  So you said you were**

22   **involved in cases that were overturned.**

23            **The question is, those cases that you**

24   **have -- of the cases that you were involved in**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 205

```
 1    as a detective that were overturned, do you --
 2    are there any that you agree with in terms of
 3    the conviction being overturned?
 4         MR. COYNE:  Same objections.  Just same
 5    objections as I interposed earlier.
 6              You can answer if you can.
 7    BY THE WITNESS:
 8         A.   Do I agree with the overturning?  Let
 9    me think.
10         MS. WEST:  I'm just going to add a belated
11    foundation objection.
12         MS. MORRISON:  And calls for a legal
13    conclusion.
14    BY THE WITNESS:
15         A.   I will say yes.  One.  That's my best
16    guess -- best guess.
17    BY MR. STARR:
18         Q.   Okay.  There is one case that you agree
19    that the conviction should have been overturned?
20         A.   No.  It should not have been
21    overturned.
22         Q.   Okay.
23         A.   No, should not have.
24         Q.   Okay.  Are there any that you do agree
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 206

1    **should have been overturned --**

2        MR. COYNE:  Same objections.

3    BY MR. STARR:

4        **Q.    That was my original question.**

5        A.    Wait.  Should have been overturned?

6        **Q.    Yeah.**

7        A.    As I sit here now, no.

8        **Q.    Okay.  And what is the case that you**

9    **disagree with that was overturned?**

10       MR. HOLMES:  And speaking strictly to his

11   time at the City of Chicago as a detective?

12   BY THE WITNESS:

13       A.    Right, at the City of Chicago; I

14   disagree with.  I've got to get my cases

15   straight, and I could be wrong, but one that

16   was -- there's been a lot of cases over the

17   years.  Nathson Fields.

18       THE COURT REPORTER:  Sorry?

19       THE WITNESS:  Nathon -- I think that's right.

20   Nathon or Nathson.  Nathon is N-A-T-H-O-N [sic],

21   I believe.  Last name is Fields, F-I-E-L-D-S.

22   BY MR. STARR:

23       **Q.    And you disagree that that case --**

24   **strike that.**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 207

1     A.   I think that's the one.

2     **Q.   So in Nathson --**

3     A.   That's my best recollection.

4     **Q.   You think Nathon -- Nathson Fields was**

5   **guilty and that his conviction should not have**

6   **been overturned?**

7     A.   I think that's the one.  I'm not

8   100 percent positive.

9     **Q.   Why do you think that?**

10    A.   Because that's what I think based on

11  the -- the stuff that's out there, the evidence

12  that was out there.

13    **Q.   And you investigated that case as a**

14  **detective?**

15    A.   No.  I was just part of the overall

16  investigation.  I was not the guys that were the

17  main investigators.  I was a detective assigned

18  to the gang unit for many, many, many years.  I

19  worked with the detectives, but I was not the

20  homicide detective or the lead detective or

21  detective -- part of the lead detectives.

22    **Q.   Do you have an independent recollection**

23  **of anything else that you said to Ms. Friend**

24  **that's not either represented in your report or**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 208

1    **that you've testified to today?**

2    A.   Right now we are going back to --

3    **Q.   Yeah.**

4    A.   Going back to Ms. Friend?

5    **Q.   Yeah.**

6    A.   Okay.  What now?

7    **Q.   Do you have an independent recollection**

8    **of anything that you said to Ms. Friend that**

9    **either isn't in the report that you gave or in**

10   **your testimony today?**

11   A.   No, sir.  There would be no reason.  It

12   should all be documented in that report.

13   **Q.   Do you have any independent**

14   **recollection of anything she said that wasn't**

15   **documented in this report or that you haven't**

16   **testified to today?**

17   A.   No.  It would all be documented in the

18   report.

19   **Q.   Can you tell how long the interview**

20   **took with Ms. Friend?**

21   A.   Well, I couldn't do anything but give

22   you a guesstimate.

23   **Q.   And I don't want you to guess.**

24   A.   I couldn't tell --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 209

1      Q.   Do you have any independent
2  recollection at all?
3      A.   I couldn't tell you other than it was
4  not a three-hour interview.  How's that?
5      Q.   Do you have an independent recollection
6  of how long the interview took?
7      A.   I just told you.  I can give you a
8  guesstimate.  We don't want to do that.  It was
9  less than three hours, though.
10     Q.   So you can't -- you don't have an
11  independent recollection of how long it was
12  other than --
13     A.   How long --
14     THE COURT REPORTER:  Sorry.  If you could
15  wait.  I --
16     MS. WEST:  Let's just wait and not talk over
17  each other for her.
18     THE WITNESS:  I'm sorry.  I'm sorry.
19     MS. WEST:  Thanks.
20  BY MR. STARR:
21     Q.   So you don't have an independent
22  recollection of how long the interview took
23  other than to say that it was less than three
24  hours, correct?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 210

1    A.    Other than it was what?

2    **Q.    Less than three hours.**

3    A.    Oh, yes.  That's the best I can do.

4    **Q.    Okay.  Did you ever meet Ms. Friend's**

5    **mother?**

6    A.    No, sir.

7    **Q.    Does the name --**

8    A.    Not that I recall, no.

9    **Q.    Does the name Wanda Friend ring any**

10   **bells for you?**

11   A.    No, sir.

12   **Q.    Did Ms. Friend have any children at the**

13   **house when you went to interview her?**

14   A.    I have no independent recollection of

15   any children, no.

16   **Q.    Do you recall where she lived?**

17   A.    Over on the West Side in a -- in a

18   bigger building.  I think the address was

19   52-something North Locust.  Something like that.

20   **Q.    Do you recall what floor she lived on?**

21   A.    Yeah.  I think the second floor or the

22   third floor.  I'm not sure.  The second, I

23   believe.

24   **Q.    And the interview took place in her**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 211

1   **kitchen.**

2          **Is that your testimony?**

3      A.    Yeah.  That's how I recall it, yes.

4   That's my best recollection.

5      **Q.    Did Ms. Friend offer you anything to**

6   **drink when you were there?**

7      A.    I -- I don't recall that, no.

8      **Q.    Do you --**

9      A.    I don't think I have been offered

10  anything to drink anywhere -- but go ahead -- in

11  interviews.

12     **Q.    Did your partner, Mr. Carroll, ask any**

13  **specific questions that you can recall?**

14     A.    Oh, I don't recall what he might have

15  asked right now.  It's all in the report.  Maybe

16  it was something -- part of that report may be

17  something he asked.

18     **Q.    During your interview with Ms. Friend,**

19  **did she indicate to you that Mr. Fletcher's**

20  **attorney had offered her any payments or any**

21  **incentives to give her affidavit?**

22     A.    No, she did not.

23     **Q.    Did Ms. Friend indicate to you that she**

24  **had been threatened or coerced to give her**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 212

1    **affidavits?**

2        A.    Threatened or coerced by who?

3        **Q.    Coerced by anyone to give her**

4    **affidavits.**

5        A.    She just said that she was bothered and

6    harassed by the family members, but she never

7    said she was threatened or coerced.

8        **Q.    And Ms. Friend said that she was**

9    **bothered by the family members during the**

10   **criminal trial, correct?**

11       A.    That would -- that would be correct,

12   yes, sir.

13       **Q.    Was Ms. -- did Ms. Friend say that she**

14   **was bothered by any family members in order to**

15   **give her -- in order to incentivize her to give**

16   **an affidavit?**

17       A.    Yes.  That's what she wrote on her

18   affidavit.  "These people were harassing me" or

19   something like that.

20       **Q.    Did Ms. Friend indicate that any**

21   **promises had been made to her in exchange for**

22   **her affidavit by anyone?**

23       A.    No, sir.

24       **Q.    Did Ms. Friend indicate any impropriety**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 213

1    **by Ms. -- Mr. Fletcher's attorney?**

2         MR. COYNE:  Objection, form.

3              You can answer.

4    BY THE WITNESS:

5         A.   About the attorney?

6    BY MR. STARR:

7         **Q.    Yeah.**

8         A.   No.

9         **Q.    Did you conclude that Mr. Fletcher's**

10   **attorney had engaged in any impropriety based on**

11   **your interview of Ms. Friend?**

12        MR. COYNE:  Objection, form.

13   BY THE WITNESS:

14        A.   No.  I did not make any conclusion on

15   that.  Her beef was with the -- the family

16   members and the advocate, whoever he was.

17   BY MR. STARR:

18        **Q.    And so was it your interpretation that**

19   **Ms. Friend's interaction with Mr. Fletcher's**

20   **attorney was professional?**

21        MR. COYNE:  Objection, form.

22        MS. WEST:  Join.

23   BY THE WITNESS:

24        A.   I -- I can only tell you that she

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 214

1    didn't complain about the attorney.

2    BY MR. STARR:

3        Q.    Okay.  And did -- did Ms. Friend

4    indicate to you who Mr. Fletcher's attorney was

5    that got the affidavits?

6        A.    Say it again now.

7        Q.    Yeah.

8        A.    Did Ms. --

9        Q.    Did Ms. Friend indicate to you the name

10   of the attorney that got the affidavits from

11   her?

12       A.    I can't remember.

13       Q.    Did Ms. Friend tell you that the

14   attorney that came to her house to get the

15   affidavit was Ms. Black?

16       A.    No.  I know Ms. Black, or I know who

17   she is.  No.  She did not say that.

18       Q.    Have you formed any personal opinion

19   about whether or not Mr. Fletcher was guilty or

20   innocent --

21       MR. HOLMES:  Objection.  On behalf of the

22   State's Attorney's Office, I instruct the

23   witness not to answer on the ground of the

24   deliberative process privilege.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 215

```
 1   BY MR. STARR:
 2       Q.   I also wasn't done with my question,
 3   but let me ask it again.
 4       A.   Okay.
 5       Q.   Do you have -- strike that.
 6            Have you formed any personal opinion at
 7   any point in time about whether or not
 8   Mr. Fletcher was guilty or innocent of the
 9   Willie Sorrell homicide?
10       MR. HOLMES:  Objection.  On behalf of the
11   State's Attorney's Office, I instruct the
12   witness not to answer on the ground of the
13   deliberative process privilege.
14   BY THE WITNESS:
15       A.   And I'm not going to answer.
16   BY MR. STARR:
17       Q.   As you sit here today as a nonemployee
18   of the State's Attorney's Office, do you have an
19   opinion about whether or not Mr. Fletcher is
20   guilty or innocent?
21       MR. HOLMES:  Same objection and same
22   instruction.  On behalf of the State's
23   Attorney's Office, I instruct the witness not to
24   answer on the ground of the deliberative process
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 216

```
 1   privilege.

 2   BY THE WITNESS:

 3       A.   I will -- I will listen to the

 4   attorneys.

 5   BY MR. STARR:

 6       Q.   Okay.  And you're going to take the

 7   State's Attorney advice and not answer my

 8   questions?

 9       A.   Yeah.

10       Q.   And I guess it's an instruction and not

11   advice, but --

12       A.   Pardon?  I'm sorry.

13       Q.   I said it was an instruction not to

14   answer.

15       A.   Yeah.

16       Q.   That's fine.

17            If during the time you were assigned to

18   the Fletcher investigation you had discovered

19   something improper about the police

20   investigation, what would you have done?

21       MR. COYNE:  Objection, form, foundation,

22   incomplete hypothetical, and requires the

23   witness to speculate.

24       MS. WEST:  Join.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 217

 1      MS. MORRISON:  Join.

 2   BY THE WITNESS:

 3      A.   That's pretty speculative.  I -- I -- I

 4   follow the law.  I follow the law.  I would

 5   follow all ethical responsibilities and all

 6   policy responsibilities within the State's

 7   Attorney's Office.

 8   BY MR. STARR:

 9      **Q.   And so --**

10      A.   Whatever that would be.

11      **Q.   So do you know in 2015 when you were**

12   **working on this case if you had discovered that**

13   **the detectives in this case had coerced the**

14   **witnesses to testify against Mr. Fletcher, would**

15   **you have informed anybody about that?**

16      MR. COYNE:  Objection, form, foundation,

17   incomplete hypothetical, and requires the

18   witness to speculate.

19      MS. WEST:  Join.

20   BY THE WITNESS:

21      A.   Is everybody done?

22           I would follow all my legal and ethical

23   and policy rules on what to do.

24   BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 218

1       Q.   Sure.

2            My question is, would you have informed

3    anybody of that -- that information if you had

4    learned --

5       A.   I would --

6       Q.   -- that information?

7       MR. COYNE:  Same objections.

8    BY THE WITNESS:

9       A.   I would follow all my legal

10   responsibilities and obligations --

11   BY MR. STARR:

12      Q.   Were all --

13      A.   -- and policy.

14      Q.   What were your legal obligations in

15   2015 if you had learned that the detectives in

16   the Sorrell investigation had coerced and

17   manipulated witnesses to testify against

18   Mr. Fletcher?  What were your obligations?

19      MR. COYNE:  Objection, foundation.

20      MR. HOLMES:  I'll just object that the

21   witness is here as a fact witness and not a

22   26(a)(2) expert witness.

23      THE WITNESS:  I'm sorry?

24      MR. HOLMES:  It's not an instruction on this

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 219

1    one, Mr. Brannigan.  I'm just objecting for the

2    record that you are here as a fact witness and

3    not as an expert witness.  But with that, you

4    can answer the question.

5    BY THE WITNESS:

6        A.   Okay.  I would have brought -- brought

7    that to the attention of -- whatever my legal

8    obligations were at that time.

9             If she had told me they were coerced.

10   Is that what you're saying again?

11   BY MR. STARR:

12       **Q.   I'm just trying to --**

13       A.   Read the question --

14       **Q.   I'm just trying to get a straight**

15   **answer.**

16            **If you -- if you had learned during**

17   **your assignment to this case that the detectives**

18   **had coerced and manipulated witnesses to give**

19   **false testimony, would you have told anyone?**

20       MR. COYNE:  Objection to form, foundation,

21   incomplete hypothetical, requires speculation,

22   and asked and answered.

23   BY THE WITNESS:

24       A.   I already answered.  He said I asked

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 220

1    and answered it.

2    BY MR. STARR:

3        Q.   And you haven't -- and it's a yes or no

4    question.

5             Would you have told anyone if you had

6    learned that information, sir?

7        MR. COYNE:  Same objections.

8        THE WITNESS:  I'm sorry?

9        MR. COYNE:  I was just making the same

10   objections.  I'm not instructing you not to

11   answer.

12       THE WITNESS:  Okay.

13       MR. COYNE:  I'm just making my same

14   objections.

15   BY THE WITNESS:

16       A.   I already said it.  I would follow all

17   my legal and ethical and policy obligations.

18   Whatever those were, I would do it.

19   BY MR. STARR:

20       Q.   So we can do this all day.  I don't

21   want to, but we can.

22       A.   And I don't want to do it either.

23       Q.   Did you have any legal or ethical

24   obligation to tell anyone if you had learned

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 221

1    **that?**

2       MR. COYNE:  Objection, form, foundation --

3    hang on.

4            Objection, form, foundation, incomplete

5    hypothetical, and the question requires the

6    witness to speculate impermissibly, I believe,

7    and also asked and answered.

8       MR. HOLMES:  On behalf of the State's

9    Attorney's Office, I have two objections.  One

10   is that, again, the witness is here as a fact

11   witness and not a 26(a)(2) expert witness with

12   legal obligations and conditions.

13           And, belatedly, I will instruct the

14   witness not to answer on the ground of the

15   deliberative process privilege because this --

16   this latest iteration of the question does seek

17   for Mr. Brannigan to offer his opinions and

18   mental impressions on the underlying case

19   itself.  On that basis, I instruct the witness

20   not to answer.

21   BY THE WITNESS:

22      A.  I'm getting a little confused here, so

23   I'm not going to answer.

24   BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 222

```
 1      Q.   Are you going to --
 2      A.   I'll follow his --
 3      Q.   Sir, are you going to refuse to answer
 4   my question --
 5      A.   Yes.
 6      Q.   -- about whether or not if you had
 7   learned that these detectives had manipulated or
 8   coerced witnesses --
 9      A.   I would -- I would like to, and I am
10   going to follow the legal advice --
11      Q.   Okay.
12      A.   -- because I'm not an attorney.
13      MR. COYNE:  And for the -- for the record, it
14   was an instruction from the State's Attorney and
15   not legal advice.  It is an instruction you're
16   following, just for the record.
17      MS. WEST:  Sean, when you get to a good
18   stopping point, just five minutes.
19      MR. STARR:  Sure.  We can take a break right
20   now.
21                  (Whereupon, a short break was
22                   taken.)
23   BY MR. STARR:
24      Q.   Mr. Brannigan, do you know Detective
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 223

1  Jerome Bogucki?

2      A.   No, sir.

3      Q.   Did you ever work with him?

4      A.   No, sir.

5      Q.   Did you ever supervise him?

6      A.   No, sir.

7      Q.   Okay.  So you -- it's safe to assume

8  you have no personal relationship with

9  Mr. Bogucki?

10     A.   That's correct.

11     Q.   How about Detective Ray Schalk, do you

12 know him?

13     A.   No, sir.

14     Q.   Did you ever work with him?

15     A.   No, sir.

16     Q.   Did you ever supervise him?

17     A.   No, sir.

18     Q.   And it's safe to say you have no

19 personal relationship with Detective Schalk?

20     A.   That's correct.

21     Q.   Do you know if you as a State's

22 Attorney investigator investigated any cases

23 that -- any other cases that Detective Bogucki

24 and Schalk were the primary detectives on?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 224

1      A.   I don't recall, but I don't think so.

2      Q.   Okay.  How about Detective Anthony

3   Noradin, do you know who that is?

4      A.   Anthony who?

5      Q.   Noradin.

6      A.   No, sir.

7      Q.   Or Tony Noradin?

8      A.   I don't know him, no.

9      Q.   Okay.  Do you know who he is?

10      A.   No, I don't think so.

11      Q.   Did you ever work with him?

12      A.   No, sir.

13      Q.   Did you ever supervise him?

14      A.   No, sir.

15      Q.   Have any personal relationship with

16   Detective Noradin?

17      A.   No, sir.

18      Q.   How about Sergeant -- former Detective

19   Sergeant Tony or Anthony Wojcik, do you know who

20   that is?

21      A.   I know Tony Wojcik, yes.

22      Q.   Okay.  And how do you know Tony Wojcik?

23      A.   He was a detective in Area Two, I

24   believe, and he was a sergeant in cold case when

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 225

1    I left, I think, but I never worked with Tony,

2    that I recall anyhow.

3         Q.   Did you ever supervise him?

4         A.   Not that I -- no.  I don't remember

5    ever supervising him.

6         Q.   And you were a sergeant in cold case

7    contemporaneous to the time that Tony Wojcik was

8    a sergeant in cold case?

9         A.   If it was, it was for a hot minute, but

10   I don't think so.

11        Q.   Did you have any personal relationship

12   with Tony Wojcik?

13        A.   No, sir.

14        Q.   Did you ever do any -- and this is not

15   about Mr. Wojcik.  This is about you.

16             Do you ever --

17        A.   I did what?

18        Q.   Yeah, sorry.  This is not about Tony

19   Wojcik.  This is about you.

20        A.   Okay.

21        Q.   Have you ever done any private

22   investigations outside of your State's Attorney

23   employment?

24        A.   In the past, yeah, but --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 226

1      Q.   And did you have an employer, or did
2   you work for yourself?
3      A.   Way back in the police department I
4   worked for myself, and anything I did would have
5   been as a contractor for a specific case.
6      Q.   Okay.  Did you ever work for an
7   employer, though, in that capacity?
8      A.   Like a regular -- the XYZ Agency?
9      Q.   Yeah.
10     A.   Would --
11     Q.   Any agency or any LLC that was an
12  investigative agency.
13     A.   Yeah, once or twice.
14     Q.   Which ones were those?
15     A.   I remember -- I don't know what the
16  name of it was.  The guy that owned it was a guy
17  named Davis, D-A-V-I-S; first name, Daniel.
18     Q.   Okay.  And was that during your tenure
19  at the State's Attorney's Office?
20     A.   Police or State's Attorney.  I
21  couldn't -- it's been a long time.  I -- I
22  couldn't tell you.
23     Q.   Did you do any private investigation
24  when you were employed with the State's

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 227

1  Attorney's Office?

2      A.   I don't -- I don't think so.  I might

3  have done that Davis one, but I -- no, because

4  I -- I don't remember putting in a request to

5  work part time.  I would have done that, and I

6  don't recall doing that, but I can't say with

7  any certainty.

8      Q.   Was that a policy of the State's

9  Attorney's Office when you were employed there

10  that if you wanted to work outside, you had to

11  put in a request?

12      A.   You had to put in a request.

13      Q.   Okay.  Did you ever at any point in

14  time investigate any post-conviction cases from

15  a private standpoint, not the State's Attorney's

16  Office?

17      A.   Did I ever --

18      Q.   Yeah.  Did you ever investigate a

19  post-conviction case --

20      A.   Post-conviction case.

21      Q.   -- outside of your employment with the

22  State's Attorney's Office?

23      A.   No, sir.

24      Q.   Do you know if -- did Tony Wojcik ever

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 228

1    work for the State's Attorney's Office while you

2    were there?

3        A.    No, no.  He -- I don't think he was

4    ever employed by the State's Attorney's Office.

5        Q.    Do you know if he is currently employed

6    by the State's Attorney's Office?

7        A.    Not that I'm aware of.

8        Q.    Do you know if Tony Wojcik had any

9    personal relationships with any other State's

10   Attorney investigators that you worked with?

11       A.    Say that again.

12       Q.    Do you know of any personal

13   relationships that Tony Wojcik had with any

14   State's Attorney investigators that you worked

15   with?

16       A.    No, I don't think so.

17       Q.    Have you ever seen Tony Wojcik be at

18   any State's Attorney social outings or

19   functions?

20       A.    No.  I have only been to one or two,

21   maybe a Christmas party or something.  I don't

22   remember seeing Tony Wojcik there.

23       Q.    Okay.  What about Detectives Schalk and

24   Bogucki, do you know that they worked in the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 229

1    cold case unit?

2        A.   Did they?  Is that what you're saying?

3    Did they --

4        Q.   **Yeah.**

5        A.   Do I know that they did?

6        Q.   **Yeah, that's my question.**

7        A.   Do I know that they did?

8        Q.   **Yes.**

9        A.   You're telling me they did?

10       Q.   **I'm asking if you know that they worked**

11   **in the cold case unit.**

12       A.   Not while I was there, I don't think,

13   no, no.

14       Q.   **Do you know that this case, the**

15   **Fletcher case, was investigated by the cold case**

16   **unit in 2002?**

17       A.   By the Chicago Police Department.  Now,

18   the areas all had their own guy -- a couple of

19   guys that would work cold cases.

20       Q.   **Okay.  So there would be a citywide and**

21   **then there was also -- each area had their own**

22   **cold case unit?**

23       A.   Yeah.  They would have, you know, a

24   star, a coin, and your job would be to look at

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 230

1    the old cases and we try and keep you out of the

2    rotation.  But I don't -- I don't remember them

3    being assigned to the cold case squad at all.

4        Q.   Okay.

5        A.   And I don't remember this case in the

6    cold case squad.  It doesn't mean somebody could

7    not have looked at it or whether they did.  The

8    cold case squad was made up of detectives from

9    the different detective areas, as you might

10   imagine.  They might have looked at it while I

11   was there, but I don't recall working on it, and

12   I don't recall anybody working on it, and I

13   don't recall whatever -- Schalk and --

14       Q.   Bogucki.

15       A.   -- Bogucki or whatever, no.  I don't

16   recall them being there.

17       Q.   And your testimony about Mr. Wojcik

18   being part of the cold case, he was part of the

19   citywide cold case unit, or he was --

20       A.   I think he was part of the citywide

21   cold case when I left or just after I left, I

22   believe.  Don't quote me.

23       Q.   How about two other detectives.  Do you

24   know a detective by the name of Robert

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 231

1    Rutherford?

2        A.   No, sir.  The name does not ring a

3    bell.

4        Q.   **How about a detective by the name of**

5    **Kevin McDonald?**

6        A.   No, sir.  The name does not ring a

7    bell.

8        Q.   **Okay.  And if I told you there was**

9    **testimony in this case from Rutherford, Bogucki,**

10   **and Schalk that they were working the**

11   **Fletcher -- the Sorrell investigation as a cold**

12   **case, would that surprise you?**

13       A.   It would be a cold case in Area Five or

14   Area Six or wherever the hell they were area.

15   There's no -- because it was an old case,

16   they would be considered working a cold case,

17   but not out of the cold case squad.

18       Q.   **Were you aware of any policies that**

19   **specifically dictated how a cold case was**

20   **supposed to be investigated that were part of**

21   **the Chicago Police Department?**

22       MS. MORRISON:  Object to foundation.

23   BY THE WITNESS:

24       A.   Say that one again.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 232

1  BY MR. STARR:

2      Q.    **Were you aware of any policies**

3  **governing how to investigate a cold case while**

4  **you were employed by the Chicago Police**

5  **Department?**

6      A.    Oh, I'm missing something here.

7      Q.    **Were you aware of any policies that**

8  **governed how to investigate cold cases --**

9      A.    Who could pick one up or who couldn't?

10     Q.    **Just any policies that applied to the**

11 **investigating of cold cases during your time at**

12 **the police department.**

13     A.    No, just what I mentioned earlier when

14 I was assigned to the cold case squad.  I don't

15 even know if it was a written policy, but it

16 was -- it was a practice that the case should be

17 over a year old, a year or a little older, with

18 no activity on it; in other words, they hit a

19 dead end.  Now, how the different areas did

20 their own is beyond me.  I do not -- I couldn't

21 speak for -- where were those guys from?  Area

22 Five?

23     Q.    **Yeah, Area Five.**

24     A.    Area Five.  I couldn't speak for

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 233

```
 1   Area Five.
 2       Q.   Okay.  During your time at the cold
 3   case --
 4       A.   My time in cold case?
 5       Q.   Yeah.
 6            During your time in the cold case unit,
 7   did you participate in what was referred to as
 8   Police Operations?
 9       A.   Who?
10       Q.   Police Operations.
11       MR. COYNE:  Objection, form.
12   BY THE WITNESS:
13       A.   I don't understand the question.  I
14   don't understand what you're saying.
15            Police who?
16   BY MR. STARR:
17       Q.   Oh, you're not familiar with the
18   Chicago Police Department term "Operations"?
19       A.   Police Operations?  Like -- I mean, I'm
20   missing something.  Everything you are doing is
21   a police operation, right?
22       Q.   Well, I'm talking about with the
23   capital letter O, "Operations" --
24       A.   Yeah.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 234

1    Q.    -- like a -- a unit within the police

2   department that investigated specific things

3   that was referred to as Operations.

4          Are you familiar with that?

5    A.    Police Operations, I don't recall that

6   unit or that phrase.

7    Q.    Okay.  If I told you that my

8   understanding of Operations were a joint task

9   force that operated between the police

10  department -- Chicago Police Department and

11  other law enforcement agencies, does that

12  refresh your recollection of what an Operation

13  is?

14   A.    There --

15   MS. MORRISON:  I'm going to object to the

16  form of the question.

17          You can answer if you understand it.

18  BY THE WITNESS:

19   A.    There were -- there were always --

20  what's the term they like to use -- task forces

21  out there:  FBI, violent crimes task force; FBI

22  joint terrorist task force; ATF.  I was detailed

23  to them, but I don't know -- they had a specific

24  name, organized crime and drug enforcement task

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 235

1   force.  I -- FBI, DEA -- FBI, DEA, and ATF were

2   the ones that were coppers -- a lot of coppers

3   assigned to, and Secret Service, I believe.

4   BY MR. STARR:

5       **Q.   And did you --**

6       A.   But I -- I never heard the term you're

7   referencing.

8       **Q.   And as you -- did you as a member of**

9   **the cold case unit ever work in conjunction with**

10  **a joint task force?**

11      A.   Joint terrorism task force or which --

12      **Q.   Any sort of joint task force.**

13      A.   Any what?

14      **Q.   Any sort.**

15      A.   No.  I don't believe anybody would.  I

16  would prior, but --

17      **Q.   But not during the cold case period?**

18      A.   No.  In the cold case squad, that was

19  your focus, cold cases, or if something else

20  popped up that the chief would assign you to or

21  a superintendent would.

22      **Q.   Did the cold case unit ever work in**

23  **conjunction with the State's Attorney's Office**

24  **when you were at the police department?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 236

1      MS. MORRISON:  I'm just going to object to

2   form and object to this line of questioning.

3   He's not here as a 30(b)(6) witness on behalf of

4   the City.  He is here in his role as the

5   investigator with the State's Attorney.

6           So I'll just note that objection.

7   BY THE WITNESS:

8      A.   Okay.  What's the question again?

9   BY MR. STARR:

10     Q.   **Did -- during your time on the cold**

11  **case unit, did you ever work in conjunction with**

12  **the State's Attorney's Office?**

13     A.   Yeah.  You had to.

14     Q.   **How come?**

15     A.   How what?

16     Q.   **How come?**

17     A.   That's where you go to get cases

18  approved.

19     Q.   **Okay.  So other than -- other than the**

20  **normal typical investigation of a homicide where**

21  **you would potentially refer someone for charges**

22  **to the State's Attorney, did you work in**

23  **conjunction with the State's Attorney's Office?**

24     A.   Oh, yeah.  We'd seek their assistance

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 237

```
 1   in stuff, yeah.
 2        Q.   In what fashion?
 3        A.   In what fashion?
 4        Q.   Yeah.  In what ways would you seek
 5   their assistance?
 6        MR. COYNE:  Objection, foundation.
 7             Go ahead.
 8        THE WITNESS:  Say it again.
 9        MR. COYNE:  I'd just object to foundation.
10             You can go ahead.
11   BY THE WITNESS:
12        A.   They -- they had a group up there that
13   worked cold cases of State's Attorneys that were
14   focused on that.  They were doing their own in-
15   house investigations.  And on occasion, we would
16   go to them seeking advice, to get search
17   warrants, kick -- kick cases around, and figure
18   out a way to approach them.
19   BY MR. STARR:
20        Q.   And then when you were at the State's
21   Attorney's Office, did you work on cold cases
22   there?
23        A.   No.  I don't remember any work
24   specifically.  I may have helped with something,
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 238

1    go find a witness, but, I mean, I don't remember

2    working a case.  They had guys assigned to that

3    and I was not assigned to that, but I may have.

4    I may have.  I don't want to -- but I don't

5    recall.

6        **Q.    Do you have any knowledge of the**

7    **State's Attorney's cold case division or unit**

8    **working in conjunction with the Chicago Police**

9    **Department on the Willie Sorrell homicide**

10   **investigation?**

11       A.    No, no independent knowledge at all.

12   No recollection at all.

13       **Q.    Okay.  I'm going to go back to look at**

14   **this first exhibit, Exhibit 1, your**

15   **investigative report that Ms. West showed you.**

16       A.    Okay.

17                    (Witness viewing document.)

18   BY MR. STARR:

19       **Q.    This investigative report, as we have**

20   **established, is dated March 5th, 2015, correct?**

21       A.    Yes.

22       **Q.    And that would have been 25 years after**

23   **the Willie Sorrell homicide, right?**

24       A.    Whatever it was, yeah.  That's close.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 239

```
 1      Q.    Almost 25 years.

 2      A.    '90, yeah.

 3      Q.    Yeah.

 4      A.    I think it was '90.

 5      Q.    Yeah.  The homicide was in December of

 6  1990.

 7            So it was almost 25 years, correct?

 8      A.    Yeah.

 9      Q.    Did you have any concerns about

10  Ms. Friend's recollection based on the span --

11  the passage of time?

12      MR. COYNE:  Objection, form.

13      MR. HOLMES:  On behalf of the State's

14  Attorney's Office, I instruct the witness not to

15  answer on the ground of deliberative process

16  privilege.

17  BY THE WITNESS:

18      A.    I'm not going to answer.

19  BY MR. STARR:

20      Q.    Okay.  You are going to refuse to

21  answer my question based on that instruction?

22      A.    Yeah.

23      Q.    Okay.

24      A.    Based on their instructions.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 240

```
 1      Q.   Did you -- go ahead.

 2      A.   Based on their instructions.

 3      Q.   Okay.  Did you ask Ms. Friend if she --

 4  if she could recall what Mr. Fletcher looked

 5  like when you interviewed her in 2015?

 6      A.   No.

 7      Q.   Okay.

 8      A.   I don't specifically remember that or

 9  it would be in the report.

10      Q.   Is there a reason why you didn't ask

11  Ms. Friend if she could remember what

12  Mr. Fletcher looked like in --

13      A.   If she has an --

14      THE COURT REPORTER:  Sorry.  If you could

15  repeat the question.

16  BY MR. STARR:

17      Q.   Was there a reason why you wouldn't

18  have asked Ms. Friend if she could remember what

19  Mr. Fletcher looked like when you interviewed

20  her in 2015?

21      MR. HOLMES:  On behalf of the State's

22  Attorney's Office, I instruct the witness not to

23  answer on the ground of the deliberative process

24  privilege.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 241

 1   BY THE WITNESS:

 2       A.   I will follow the attorney's advice.

 3   BY MR. STARR:

 4       Q.   **Do you have any independent**

 5   **recollection of thinking that Ms. Friend was not**

 6   **able to identify Mr. Fletcher 25 years later?**

 7       MR. HOLMES:  On behalf of the State's

 8   Attorney's Office, I instruct the witness not to

 9   answer on the ground of the deliberative process

10   privilege.

11   BY THE WITNESS:

12       A.   I will follow the advice.

13   BY MR. STARR:

14       Q.   **And you're refusing to answer my**

15   **questions?**

16       A.   Yes, sir.

17       Q.   **Okay.  This "Evidence and Inventory"**

18   **section of the report here --**

19       A.   Yes, sir.

20       Q.   **-- it references a State's Attorney's**

21   **Office evidence vault.**

22           **Do you see that?**

23       A.   Yes, sir.

24       Q.   **What's a State's Attorney evidence**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 242

1  **vault?**

2      A.    An evidence vault.

3      **Q.    Well, is it a physical vault?**

4      A.    Yeah.

5      **Q.    Okay.**

6      A.    Okay.

7      **Q.    Is it a filing cabinet or is it a --**

8      A.    No, no.  It's a vault, vault.

9      **Q.    That has, like, a lock on it?**

10     A.    Well, it's a whole room, and it's

11  locked and everything inside is locked.

12     **Q.    Okay.  And if you had submitted any**

13  **contemporaneous notes that you took during this**

14  **investigation, would they be in that vault as**

15  **well?**

16     A.    No.

17     **Q.    Because you are certain you destroyed**

18  **them?**

19     A.    Yes.

20     **Q.    And why are you certain you destroyed**

21  **them?**

22     A.    That is my practice, and there'd be no

23  reason to keep them.

24     **Q.    And correct me if I'm wrong.  I thought**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 243

1   you said that sometimes you would submit them if

2   you --

3       A.   I suppose you could, but I -- there

4   would be no reason for me to, and I never did.

5       Q.   So can you say unequivocally in this

6   case that you did not --

7       A.   Did I?

8       Q.   -- submit any notes?

9       A.   Did I not --

10      Q.   Are you --

11      A.   -- submit any notes?

12      Q.   Are you able to say with certainty that

13   in the --

14      A.   The best of my recollection, I did not

15   submit any notes --

16      Q.   Okay.

17      A.   -- at all, zero, zip, nada.

18      Q.   But you can't say for sure whether you

19   did or not, because you don't recall, correct?

20      MR. COYNE:  I'll note an objection.  That's

21   argumentative.  Also, asked and answered.

22          Go ahead.

23   BY THE WITNESS:

24      A.   It was not my practice.  I don't think

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 244

1    I did.  There would be no reason for me to do
2    that.
3    BY MR. STARR:
4        **Q.    Do you recall whether or not your**
5    **supervisor requested that you submit your notes**
6    **in this case?**
7        A.    No.
8        **Q.    Do you have any specific recollection**
9    **that they didn't ask for the notes?**
10       A.    Back then, I don't remember ever
11   turning my notes in, I don't think.
12       **Q.    And we -- and you were asked by**
13   **Ms. West about how you were assigned to this**
14   **case in December of 2014, right?**
15       A.    Yeah, 10 -- yeah.  That's what it looks
16   like, right.
17       **Q.    Do you recall being assigned to this**
18   **case in December of --**
19       A.    I recall being assigned.  I couldn't
20   tell you --
21       **Q.    -- 2014?**
22       A.    Now I know the --
23       THE COURT REPORTER:  Sorry.  If you could
24   repeat your answer.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 245

```
 1   BY THE WITNESS:

 2       A.   I recall being assigned to the case and

 3   I recall the date, because that's on the report,

 4   the exact date, yeah.

 5   BY MR. STARR:

 6       Q.   And do you recall -- strike that.

 7            Is that -- strike that.

 8            I think you were asked by Ms. West

 9   about whether or not you went out to visit

10   Ms. Friend on more than one occasion.

11            Do you recall those questions?

12       A.   I believe so, yeah.

13       Q.   Is it possible that you went out to her

14   house on more than one occasion to --

15       A.   Looking for her?

16       MR. COYNE:  Objection, foundation,

17   speculation.

18   BY MR. STARR:

19       Q.   Yes.

20       MR. HOLMES:  And what was the end of that

21   question?  You kind of talked over it with

22   crosstalk.

23       MR. STARR:  Yeah.

24   BY MR. STARR:
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 246

1      Q.   I asked if it was possible you went out

2   to visit Ms. West -- or Ms. Field -- or

3   Ms. Friend.   There's a lot of names.

4           Is it possible that you went out to

5   visit Ms. Friend on more than one occasion

6   before getting -- taking this interview?

7      MR. COYNE:  Okay.  Objection, form,

8   foundation, speculation.

9   BY THE WITNESS:

10     A.   It's -- it's possible I went out on

11  more than one occasion looking for her, but I

12  did not find her until the date in question.

13  BY MR. STARR:

14     Q.   And if you did go out to visit her on

15  more than one occasion before March 5th, 2015,

16  you don't know whether or not she was actually

17  home when you visited her house, correct?

18     MR. COYNE:  Objection, foundation,

19  speculation.

20     MS. WEST:  Join.

21  BY THE WITNESS:

22     A.   I guess I -- I don't know how to answer

23  that.  I guess she would -- well, if I went

24  out -- a big if, okay -- I did not find her.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 247

```
 1   BY MR. STARR:
 2       Q.   So you could have went to her house,
 3   rang her doorbell, and she could have just
 4   refused to answer the door, right?
 5       MR. COYNE:  Same objections.
 6   BY THE WITNESS:
 7       A.   Entirely possible, sir.
 8   BY MR. STARR:
 9       Q.   Is it also entirely possible that she
10   agreed to sign the affidavit that you presented
11   to her the way that she did because she was
12   tired of you coming to her house and knocking on
13   her door?
14       MR. COYNE:  Objection, foundation,
15   speculation.
16       MS. WEST:  Join.
17       MS. MORRISON:  Argumentative.
18   BY THE WITNESS:
19       A.   I would suggest that would be
20   inaccurate, because I don't -- what's the word
21   I'm looking for?  I got X amount of time to do
22   something, and I go out, and I go to the
23   different addresses.  She may have had other
24   addresses for her, too.  But I don't know if I
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 248

```
 1   went out one time and stumbled on her or if I
 2   went out 20 times.
 3   BY MR. STARR:
 4       Q.   But I think you testified that it would
 5   have been your practice to go out as soon as you
 6   got this assignment, right?
 7       A.   As what?
 8       Q.   I thought you testified when Ms. West
 9   was asking questions that it would have been
10   your practice to go out once you got the
11   assignment.
12       MS. WEST:  Misstates his prior testimony.
13       MR. COYNE:  Yeah, I agree.  I join on that.
14   I don't think that was his testimony.
15           But go ahead.
16   BY THE WITNESS:
17       A.   Well, of course you go out.  How else
18   are you going to find a person?
19   BY MR. STARR:
20       Q.   All right.  So it was your practice,
21   then, when you were initially assigned a case
22   that you would start investigating it right
23   away, right?
24       MR. COYNE:  Objection, form.  That also
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 249

 1   mischaracterizes his prior testimony.

 2       MS. WEST:  Join.

 3   BY THE WITNESS:

 4       A.   No, sir.  I don't believe I testified

 5   to that.  I would go out as soon as possible.  I

 6   might get assigned a case and not get around to

 7   going out for a week, two weeks.  I mean, I

 8   don't know.  It would depend on what's going on

 9   in the office at that time.

10   BY MR. STARR:

11       **Q.   That last question wasn't about your**

12   **testimony.  It was just a question.  So let me**

13   **ask it again to make sure it's clear on the**

14   **record.**

15           **Was it your practice once you were**

16   **assigned a case to investigate it as soon as**

17   **possible?**

18       MR. COYNE:  Objection, foundation.

19   BY THE WITNESS:

20       A.   Yes.

21   BY MR. STARR:

22       **Q.   Okay.  And was it your practice once**

23   **you were assigned a case to go out and try to**

24   **interview somebody that you were assigned to**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 250

1    **interview as soon as possible?**

2        MR. COYNE:  Same objection, foundation.

3    BY THE WITNESS:

4        A.   As soon as possible.

5    BY MR. STARR:

6        **Q.   And sometimes there would be a couple**

7    **weeks that -- delay?**

8        A.   Yes.

9        **Q.   Right?**

10       A.   Correct.  That could be.

11       **Q.   How often would there be a three-month**

12   **delay?**

13       MR. COYNE:  Objection, foundation.

14   BY THE WITNESS:

15       A.   Pretty routine -- routinely.  It would

16   be --

17   BY MR. STARR:

18       **Q.   Routinely?**

19       A.   Before you could find somebody, yeah.

20       **Q.   Okay.  But you don't know in this case**

21   **whether or not you went out to try to interview**

22   **her on multiple occasions before March of 2015,**

23   **correct?**

24       MR. COYNE:  Objection, asked and answered.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 251

```
 1      MS. WEST:  Asked and answered.

 2      MR. COYNE:  Actually, it's repeatedly been

 3  asked and answered.

 4  BY THE WITNESS:

 5      A.   I don't know if I went out there once

 6  and found her that day.  I don't know if I went

 7  to other locations.

 8  BY MR. STARR:

 9      Q.   And Ms. Friend -- your testimony is

10  that Ms. Friend told you that she signed the

11  affidavits that she did because she was being

12  repeatedly bothered by Mr. Fletcher's --

13      A.   The --

14      Q.   -- associates?

15      MR. COYNE:  Wait a minute.  Wait a minute.

16  Hang on.  Hang on.  Hang on.  Let me object.

17      THE WITNESS:  Okay.

18      MR. COYNE:  Objection, asked and answered

19  repeatedly.  Just so you know, Sean, we're going

20  over the same area here over and over again just

21  so it's clear for the record.

22          Go ahead.

23      MS. WEST:  Join.

24  BY THE WITNESS:
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 252

```
 1      A.   Okay.  Say it again.

 2   BY MR. STARR:

 3      Q.   So is it your testimony today that

 4   Ms. Friend informed you in some form that the

 5   reason she signed the affidavits that she signed

 6   attesting to the truth of the matter was because

 7   she was being bothered by Mr. Fletcher's

 8   associates?

 9      MR. COYNE:  Same objections.

10          Go ahead.

11      THE WITNESS:  Everybody done?

12      MR. COYNE:  Go ahead.

13   BY THE WITNESS:

14      A.   Yeah, that's correct.

15   BY MR. STARR:

16      Q.   And isn't it also possible that she

17   gave you what you wanted because she was being

18   bothered by you or people at the State's

19   Attorney's Office?

20      MR. COYNE:  Objection, form, foundation.  It

21   requires speculation and it's also

22   argumentative.

23      MS. WEST:  Join.

24      MR. COYNE:  Go ahead.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 253

1      MR. HOLMES:  On behalf of the State's

2  Attorney's Office, I instruct the witness not to

3  answer on the ground of deliberative process

4  privilege.

5  BY MR. STARR:

6      **Q.   Are you going to refuse to answer my**

7  **question based on the instruction of the State's**

8  **Attorney's Office?**

9      A.   Yeah.  I will refuse to answer the

10  question.  I would like to answer the question,

11  but I won't.

12      **Q.   Do you recall whether or not you called**

13  **Ms. Friend on the phone at any point prior to**

14  **visiting your home on March 5, 2015?**

15      A.   No, I do not.

16      **Q.   Did Ms. Friend ever tell you that she**

17  **dated Edward Cooper, the victim, the bread truck**

18  **driver, in the Sorrell homicide case?**

19      A.   Dated him?  No.

20      **Q.   Yeah.**

21      A.   I think she said she knew him.

22      **Q.   Okay.  She never told you that they**

23  **dated?**

24      A.   I don't recall that, no.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 254

1      Q.   When Ms. Friend allegedly told you that
2   she told the detectives about people telling her
3   not to come to court and giving her money, did
4   she tell you what detectives?
5      A.   No.  She just said the detectives.
6      Q.   No?
7      A.   She didn't know detectives' names.  She
8   didn't even remember what they looked like.
9      Q.   When she told you that she told the
10  State's Attorney about people telling her not to
11  come to court and allegedly giving her money not
12  to appear in court, did she tell you what
13  State's Attorney that was?
14     A.   No, sir.
15     Q.   Did you ask her?
16     A.   I -- no, I don't think so.
17     Q.   Did you ask her what detectives she
18  told?
19     A.   Based on the general conversation, I
20  didn't, because she couldn't even describe --
21  really describe the detectives in any detail,
22  just that they were the standard old white guys.
23     Q.   At the bottom of the second page, 425,
24  the last paragraph there --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 255

 1      A.   You're -- page 2.

 2      Q.   **Yeah, page 2.**

 3      A.   Yeah, okay.

 4      Q.   **The second -- third sentence in that**

 5   **paragraph says, "The woman also said Fletcher**

 6   **did not do the murder."**

 7           **Do you see that?**

 8      A.   In what paragraph again?

 9      Q.   **The final, the last paragraph on the**

10   **page.**

11      A.   Okay.

12      Q.   **The third -- third sentence.**

13      A.   Where are we?  Oh, okay.

14      Q.   **Do you see where it says, "The woman**

15   **also said Fletcher did not do the murder"?**

16      A.   Yeah.

17      Q.   **Do you recall Ms. Friend telling you**

18   **that?**

19      A.   Yeah.

20      Q.   **Do you have any independent**

21   **recollection?**

22      A.   Yes.

23      Q.   **Okay.  Do you have any independent**

24   **recollection of asking any follow-up questions**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 256

1   **about that statement?**

2       A.    About the -- she said that -- I think

3   she said it twice, a couple times.   That was

4   the -- the woman who was coming to her was the

5   daughter.

6       **Q.    Yeah.  My question is, did you --**

7       A.    Did I do any --

8       **Q.    Did you ask any --**

9       A.    -- follow-up on it?

10      **Q.    -- follow-up questions?**

11      THE COURT REPORTER:   Sorry?

12  BY THE WITNESS:

13      A.    No, I did not.

14  BY MR. STARR:

15      **Q.    And why not?**

16      A.    This was what she said.  I'm done with

17  this as far -- until the State's Attorney -- as

18  far as I was concerned, until the State's

19  Attorney has another idea or game plan.

20      **Q.    But you asked questions to prompt much**

21  **of this information, correct?**

22      A.    She pretty much rolled with it.

23      **Q.    So you showed up at her house, and what**

24  **questions did you ask her?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 257

1      A.   Identified ourselves --

2      MR. COYNE:  Objection.

3      THE COURT REPORTER:  Sorry?

4      MR. COYNE:  Objection.  Hang on.  Before he

5  answers, objection, asked and answered.  Once

6  again, we are going over material that this

7  witness has already testified to previously in

8  this deposition.

9      MR. STARR:  Except for this testimony is

10  different.  So I'm making sure I -- we have it

11  clear.

12      MR. COYNE:  Go ahead.

13      THE WITNESS:  Okay.

14  BY MR. STARR:

15      **Q.   So you're telling me now that when you**

16  **showed up at Ms. Friend's house, she basically**

17  **told you all this information without you asking**

18  **questions?**

19      MR. COYNE:  Objection, mischaracterizes his

20  testimony.

21      MS. WEST:  Join.

22  BY THE WITNESS:

23      A.   Not -- not basically without asking

24  questions.  She had to know why I was there.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 258

1    So, yeah, we identified ourselves, told her we

2    were here about the affidavits in her name.  We

3    showed her the affidavits, "Take a look at

4    them," and that's standard procedure and

5    standard practice.  And "We would like to ask

6    you some questions about it."

7            And she started talking and

8    volunteering a lot of stuff.  Now, I could go

9    over it with you each page -- sentence, but I

10   think we already did that.  She is the one --

11   she volunteered.  I didn't ask her if anyone

12   gave her money.  She told -- she volunteered

13   that she was finding -- that this was what was

14   happening.

15   BY MR. STARR:

16       **Q.   Are the questions that are represented**

17   **in this report the only questions that you asked**

18   **her?  And, for instance, I will direct you to**

19   **the one that you were already asked about by**

20   **Ms. West, which is the third full paragraph on**

21   **page 2.  It says --**

22       A.   Page --

23       **Q.   Page 2.**

24       A.   I will go back there.  Hang on.

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 259

1    Page 2.  What paragraph?

2        Q.   **Third paragraph.**

3        A.   RI asked Friend if she knows Fletcher

4    before -- if she knew Fletcher before the

5    murder, and she said she did not.

6        MR. COYNE:  Actually, it's plural, "R/Is"

7    plural, just for the record.

8        MR. STARR:  Thanks.

9    BY MR. STARR:

10       Q.   **That's an example of a question that**

11   **you asked, correct?**

12       A.   Correct.

13       Q.   **And then there is a few other examples**

14   **in this document.  So there is one in the**

15   **paragraph prior to that.**

16            **Do you see that?  It says, "R/Is asked**

17   **Friend how she knew"** --

18       A.   Yep.

19       Q.   **Okay.  Are all the questions that you**

20   **asked about** --

21       A.   That -- that -- that --

22       Q.   **-- this case represented in this?**

23       A.   That was a question I asked her, yes.

24       Q.   **So are all the questions that you asked**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 260

1    Ms. Friend about the Willie Sorrell homicide,

2    are they represented in this document?

3        A.   That's correct.

4        Q.   Oh, so you didn't ask any other

5    questions besides what's represented in this

6    report?

7        A.   No.  I can't think -- yeah.  No.  I

8    did.  I asked her if she wanted to talk to us,

9    and she said yes.  Yeah.

10       Q.   Besides the perfunctory --

11       A.   Yeah.  I think that's in there, too,

12   right?  I will bet it is.  Yep.  Friend agreed,

13   yeah.  Told her -- again, told her who we were,

14   and then we just went into the conversation.

15       Q.   So there is -- you have no independent

16   recollection of any other questions you asked

17   besides what's represented in this report,

18   correct?

19       A.   That's correct.  Yes, sir.

20       Q.   I want to take a look at -- oh, let me

21   ask you one question:  So if you were assigned

22   to this case in December of 2014, why were you

23   sending e-mails in October of 2014 about Terry

24   Rogers?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 261

1    A.   It could have been a lookup for

2    something.  Like I told you, sometimes it was

3    just you look up, and, you know, we get three or

4    four to look up.  They're going to -- they're

5    diving into a case to do something.

6        **Q.   But this is more --**

7    A.   You --

8        **Q.   I'm sorry.**

9            **This is more than a lookup, though,**

10   **right?  Because you're indicating here that you**

11   **might have to go down to Mississippi.**

12   A.   We may have to, yeah.

13       **Q.   So is it --**

14   A.   Depending on what they tend to say.  To

15   go out and actually interview her, this date of

16   the 10th of -- the 10th of December, that

17   represents the date that they decided to go

18   out -- for us to go out and interview her.

19   Prior to that, they must have been -- not must

20   have been.

21            They were looking at the case.  As I

22   told you when you were asking how things go,

23   they may give you four or five lookups.  You

24   look them up, and you never hear another thing.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 262

1    You're doing a lookup and find this out, find

2    that out, and you take it from there.

3        Q.   So it's possible you were assigned to

4    this case in October of 2014 as opposed to --

5        A.   To do a lookup --

6        MR. COYNE:  Objection.  Hang on.

7    BY THE WITNESS:

8        A.   Yeah.

9        MR. COYNE:  Objection.  Objection,

10   foundation.

11           First, also let me tell you, Dan, you

12   began your answer to the last question "it could

13   have been."  I would urge you to remind yourself

14   of the oath that you took in this case to tell

15   the truth, the whole truth, and nothing but the

16   truth and not to speculate or guess in response

17   to these questions.  That's my advice as your

18   lawyer.

19       THE WITNESS:  Yes, sir.

20           Go ahead.

21       MR. STARR:  And I think he answered my

22   question.

23   BY MR. STARR:

24       Q.   So my next question is, do you have a

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 263

1    **recollection of who the other person's name is**
2    **that's redacted on this document?**
3       MR. HOLMES:  I think that you're correct,
4    Mr. Starr.  He can answer yes/no, but for
5    anything further, there has been a privilege log
6    produced by the State's Attorney's Office in
7    conjunction with the document production in this
8    case which traveled separately from this
9    deposition.
10           So the witness is not going to be able
11   to answer questions about the content of the
12   e-mails that are redacted for the simple reason
13   that there was a subpoena duces tecum issued to
14   our office.  A response was given to that
15   subpoena duces tecum, and the witness is not
16   here to answer questions about the subpoena
17   duces tecum response.
18      MR. COYNE:  And so, Dan, just so you know, do
19   not disclose any information that you may know,
20   but that is redacted on these documents.
21      THE WITNESS:  Okay.
22      MR. COYNE:  I think at this point it's a yes
23   or no question.
24   BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 264

1    **Q.    Yeah.**

2         **Do you recall who the other name is**

3    **that's redacted at the top of the e-mail there?**

4    MR. COYNE:  You can answer if you know or

5    not, but don't disclose the name in the event

6    that you do know.

7    BY THE WITNESS:

8    A.   No.  I don't recall, no.

9    BY MR. STARR:

10   **Q.   Do you -- does the name Fletcher**

11   **Clinton ring any bells to you?**

12   A.   Who?

13   **Q.   Fletcher Clinton?**

14   A.   Fletcher --

15   **Q.   First name, Fletcher; last name,**

16   **Clinton?**

17   A.   As in Bill Clinton, the president?

18   **Q.   Yeah.**

19   A.   The former president?

20   **Q.   Does that name --**

21   A.   No, sir.

22   **Q.   -- seem familiar to you at all?**

23   A.   No.  It does not ring a bell right now.

24   **Q.   Let's take a look at Exhibit 2, the**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 265

1    **affidavits, briefly.**

2        A.   Pardon?

3        MR. COYNE:  Exhibit 2.

4        MR. STARR:  Exhibit 2.

5        MR. COYNE:  It's the 2011 affidavit.

6        THE WITNESS:  Got it.

7    BY MR. STARR:

8        **Q.   In the first page here, 419, page 1**

9    **of 4, this handwritten note that says, "I only**

10   **signed because Fletcher lawyer would not leave**

11   **me alone" --**

12       A.   Hang on.  What am I looking at?

13       **Q.   The bottom of the first page.**

14       MS. WEST:  You are on the wrong one.

15       THE WITNESS:  Oh, yeah.

16       MR. COYNE:  It's this one here.  It's this

17   one.

18       THE WITNESS:  Yeah.  Down here.

19       MR. COYNE:  419.

20       THE WITNESS:  This one?

21       MR. COYNE:  419.

22       THE WITNESS:  I'm in the wrong one.

23       MR. COYNE:  No.  It's People versus -- that

24   one.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 266

```
 1      THE WITNESS:  Okay.

 2      MR. COYNE:  That's the one.

 3      THE WITNESS:  Yep.

 4  BY MR. STARR:

 5      Q.   The handwritten note at the bottom that

 6  says it?

 7      A.   Yep.

 8      Q.   Okay.  Did Ms. Friend tell you how many

 9  times Fletcher's -- I'm sorry.  Strike that.

10           Did Ms. Friend tell you how many times

11  Mr. Fletcher's attorney or lawyer bothered her?

12      A.   No, she did not.

13      Q.   Okay.  And I think you said the quote

14  was "leave me the fuck alone," right?

15      A.   Yeah.  That's what she said to me.

16  That's why it's a quote.

17      Q.   Okay.  So she -- she wrote something

18  different than what she said to you, but

19  omitting the word "fuck," right?

20      A.   Yeah.

21      Q.   Okay.  And do you see this name right

22  here, Susan Swanson?

23      A.   Where are we at now?

24      Q.   On the top of the first page.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 267

1    MR. COYNE:  Under declaration.  Right there.

2    THE WITNESS:  Oh, okay.

3  BY MR. STARR:

4    **Q.  Did Ms. Friend ever say anything to you**

5  **about anyone by the name of Susan Swanson?**

6    A.  No, she did not.

7    **Q.  Did you ask her if Susan Swanson --**

8    A.  No.

9    THE COURT REPORTER:  Sorry?

10    THE WITNESS:  Excuse me.

11    MR. COYNE:  Just let him finish.

12  BY MR. STARR:

13    **Q.  Let me finish my question, yeah.**

14    **Did you ask her if Susan Swanson was**

15  **Mr. Fletcher's attorney that she was referring**

16  **to?**

17    A.  No, I did not.

18    **Q.  Is there any reason why you wouldn't**

19  **have asked that question?**

20    MR. HOLMES:  On behalf of the State's

21  Attorney's Office, I instruct the witness not to

22  answer on the ground of the deliberative process

23  privilege.

24  BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 268

 1      **Q.   Are you going to take that**
 2  **instruction --**
 3      A.   Yes.
 4      **Q.   -- and refuse to answer my question?**
 5      A.   Take the instructions.
 6      **Q.   Did you know who Mr. Fletcher's**
 7  **attorney was when you went out to investigate**
 8  **Ms. Friend?**
 9      A.   No, sir.
10      **Q.   If I told you it was Ms. Blagg, would**
11  **that surprise you?**
12      MR. COYNE:  Objection, form, as to surprise.
13  BY THE WITNESS:
14      A.   I don't know who the attorney was at
15  that time.
16  BY MR. STARR:
17      **Q.   On the second page here in this first**
18  **full paragraph where it starts, "The police then**
19  **pointed at a photo..."**
20      A.   Which one?  Yeah.  Same one?
21      **Q.   Second page --**
22      MR. COYNE:  Right here.
23      THE WITNESS:  Of this document?  Okay.
24  BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 269

1     Q.   Do you see this second full paragraph

2     here?  You see the second full paragraph, right?

3     A.   Yes, sir.

4     Q.   You were asked questions by Ms. West

5     about it, correct?

6     A.   Okay.

7     Q.   And you indicated that there was an F

8     that is next to this paragraph that connotates

9     that the entire -- that the paragraph is false;

10    is that right?

11    A.   That's what the F -- right.

12    Q.   Does the F mean that every single fact

13    in this paragraph is false or just some of the

14    facts?

15    A.   The whole thing is false including --

16    after she read it and made her corrections down

17    at the bottom.

18    Q.   So the corrections are false as well?

19    A.   Pardon?

20    Q.   The corrections are false as well?

21    A.   No.  The whole paragraph was false --

22    excuse me.  I said that ass backwards.  The

23    whole paragraph was false, and then she made

24    those corrections on the bottom of what she says

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 270

```
 1   happened.
 2       Q.   Okay.  And this part at the bottom here
 3   that says -- "pointed out to me," is that -- is
 4   that an underline or is that a cross-out in your
 5   opinion?
 6       A.   Say it again.
 7       Q.   This part right here.
 8       A.   "Pointed out to me."
 9       Q.   Yeah.  Is that underlined or crossed
10   out?
11       A.   That was crossed out.
12       Q.   Okay.
13       A.   I remember that.
14       Q.   The same question about this bottom
15   paragraph is, where it says "police pointed out
16   to me," is that crossed out or underlined?
17       A.   That's crossed out.
18       Q.   Okay.
19       A.   Because she made -- she made her
20   notation right above that if you look at it.
21       Q.   And did you tell Ms. Friend that that
22   was the information that you were asked -- you
23   were specifically sent to ask about?
24       MR. HOLMES:  Objection, foundation.  Asked by
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 271

1   who as to what?

2   BY MR. STARR:

3       **Q.   Did you tell Ms. Friend that you were**

4   **specifically sent to interview her to find out**

5   **whether or not the police had instructed her on**

6   **who to pick?**

7       A.   Okay.  Answer?

8       MR. HOLMES:  Can Madam Court Reporter read

9   the last question?

10  BY MR. STARR:

11      **Q.   I can ask it again.**

12          **Did you tell Ms. Friend that you were**

13  **specifically there to interview her to find out**

14  **whether or not the police had instructed her who**

15  **to select?**

16      A.   No, I did not.

17      **Q.   Did you tell Ms. Friend anything about**

18  **why you were specifically there?**

19      A.   Yeah.  I told you that.  To ask her

20  about the -- when we came in the door, "We are

21  here to ask you about these two affidavits and

22  the shooting."

23      **Q.   Beyond that, did you tell her that you**

24  **were there to ask her any specific -- find out**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 272

1    **any other specific things?  Beyond telling**

2    **Ms. Friend --**

3        A.   Specific things like what?

4        Q.   **I don't know.  I don't know.**

5        A.   This is what -- no.  This is what the

6    mission was, to go out and interview her

7    regarding the affidavits in her name --

8        Q.   **Right.**

9        A.   -- surrounding the shooting of the poor

10   guy that caught the bullet --

11       Q.   **And you told --**

12       A.   -- Willie Sorrell.

13       Q.   **You told Ms. Friend that was your**

14   **mission?**

15       A.   That's what we are here for, yes.

16       Q.   **Okay.**

17       A.   I suppose "mission" is not the right

18   word.  It wasn't a commando raid.

19       Q.   **I want to take a look at the next**

20   **affidavit.**

21       MR. COYNE:  Exhibit 3?

22       MR. STARR:  Yeah.

23       MR. COYNE:  That's Exhibit 3,

24   Bates stamp 423.  Yeah, yeah, you got it.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 273

1   BY MR. STARR:

2       Q.   Do you remember which affidavit you

3   went over with her first?

4       A.   That's a good question.  I don't want

5   to speculate.

6       Q.   So you don't have an independent

7   recollection of which one you went over first,

8   correct?

9       A.   I could guess, but it would be a guess

10  and I would -- wouldn't want to do that.

11      Q.   So just so the record is clear, you

12  don't have an independent recollection of which

13  one you went over with her first, right?

14      A.   No.

15      Q.   Okay.  Look at number 4.  Paragraph 4.

16           Do you see that it appears that there

17  is something that was written there that was

18  written over?

19      A.   Where at, sir?  On paragraph 4.

20      Q.   Paragraph 4 where it says -- you

21  testified it said F. SF.  I'm just wondering if

22  you know what was written there before F. SF was

23  written there.

24      A.   There is an F -- a larger capital F and

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 274

1    then her initials, SF.

2        **Q.   Yeah.  Do you see the lines that are**

3    **not part of the F or the S or the other F?**

4        MR. COYNE:  Objection as to form on that.

5    BY THE WITNESS:

6        A.   I'm not following.

7    BY MR. STARR:

8        **Q.   Let me ask you this:  Looking at this**

9    **notation that Ms. Friend made here, F. SF on**

10   **number 4 --**

11       A.   Yeah.

12       **Q.   -- does it appear to you that she wrote**

13   **over something that was already written on the**

14   **page?**

15       MS. MORRISON:  Object to form.

16   BY THE WITNESS:

17       A.   It doesn't look like it to me.

18   BY MR. STARR:

19       **Q.   Okay.**

20       A.   She doesn't have the best handwriting.

21       **Q.   Let me ask about number 5.**

22           **Do you know why Ms. Friend did not**

23   **indicate with an F or a T paragraph number 5?**

24       A.   Paragraph 5.  Okay.  What about

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 275

paragraph 5?

1

2      Q.    Do you know why Ms. Friend did not

3  indicate a letter F or a letter T for paragraph

4  number 5?

5      A.    All the way down to five.  Okay.

6            She did not put an F there, and I don't

7  know why, but she did make the notation right

8  there about that paragraph.

9      Q.    Right.  She wrote, I remember some

10 arguing, but the office -- the office [sic]

11 didn't tell who to pick out, right?

12     A.    Yep.

13     Q.    So you can't tell as you look at this

14 today what information in paragraph 5 is true --

15 strike that.

16           Can you tell as you sit here today what

17 information in paragraph 5 Ms. Friend told you

18 was true and what information Ms. Friend told

19 you is false?

20     A.    I would say it would be the sentence --

21     Q.    And I'm not asking you to speculate.

22 I'm asking if you know.

23     A.    Okay.  Give me your question again.

24     Q.    Sure.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 276

```
 1          Do you have an independent recollection
 2   of specifically what in paragraph number 5
 3   Ms. Friend told you was false?
 4       A.   Let me go over this again.
 5            It's my take that no one told her who
 6   to pick out.
 7       Q.   So that's an interpretation.
 8            I'm asking if you have an independent
 9   recollection of that.
10       A.   Of her writing that?
11       Q.   Of her saying to you what was false and
12   what was true in paragraph 5.
13       A.   I don't --
14       Q.   And if you don't, you don't.
15       A.   I remember her writing, but that's --
16   that's my interpretation of what she is
17   referring to.
18       Q.   Sure.
19            I'm not -- and I'm trying now to
20   distinguish questions about your interpretation
21   from questions about what you remember.
22       A.   Okay.
23       Q.   Do you remember Ms. Friend saying
24   specifically this paragraph -- or strike that.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 277

```
 1            Do you remember Ms. Friend saying
 2   specifically "This sentence is true in
 3   paragraph 5" or "This sentence is false," or
 4   anything along those lines?  Since there is no
 5   marker, we don't know.  So I'm wondering if you
 6   have an independent recollection.
 7       A.   No.
 8       Q.   Okay.
 9       A.   No.  I don't as I sit here.
10       Q.   Fair.
11            So let me ask you, you -- we
12   established the next FS is for the paragraph 6,
13   right, where there is an under- -- or a
14   lowercase F and the letters SF next to the
15   number 6.  You previously testified about that,
16   right?
17       A.   Yeah, okay.  Go ahead.
18       Q.   And then the next one is T. SF with an
19   arrow to 7.
20            You testified about that, right?
21       A.   Okay.  That's -- yeah.  That arrow one
22   is for true.
23       Q.   Number 7.
24       A.   That that number 7 is true.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 278

1    Q.   And then the next one appears to be an

2    F. SF -- an F. SF, and is that attributed to

3    number 8?

4    A.   That would -- that would be number 8.

5    Q.   So then is there a -- there is a T. SF

6    at the end.

7         Is that for number 9, or what is that

8    for as far as you can recall?

9    A.   I -- as I sit here now, I -- I'm

10   getting a little confused with all this.  I

11   apologize.  I definitely --

12   THE COURT REPORTER:  Sorry?

13   THE WITNESS:  Oh, I'm thinking out loud.

14   THE COURT REPORTER:  Okay.

15   THE WITNESS:  Shame on me.

16   BY THE WITNESS:

17   A.   I thinking number 9 is referring to

18   that is true, but that's my best guess.

19   BY MR. STARR:

20   Q.   Okay.  Right.  So there is nine --

21   there is nine paragraphs in here, and there is

22   eight markers where she indicates F or T with

23   her initials, right?  We have established that?

24   A.   What are we going to establish?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 279

 1      Q.   I think we did establish that there is
 2  nine paragraphs --
 3      A.   Okay.
 4      Q.   -- right?  And there is eight markers
 5  with T or S -- T or F, right?  Number 5 is
 6  missing one.
 7      A.   Yeah, okay.
 8      Q.   Okay.  So it's your testimony that the
 9  last T. SF is attributed to number 9, correct?
10      A.   That's -- that's my interpretation of
11  this, yes, sir.
12      Q.   Okay.  And so Ms. Friend would have
13  told you that it was true that she wasn't
14  promised anything in return for -- for giving
15  this affidavit and that she was willing to
16  testify at an evidentiary hearing on
17  Mr. Fletcher's behalf, correct?
18      A.   Correct.
19      Q.   Okay.  When she said that it was true
20  that she'd be willing to testify on his behalf,
21  did you ask her --
22      A.   Did I --
23      Q.   Let me finish my question.
24           When Ms. Friend indicated to you that

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 280

 1  **number 9 was true and that she was willing to**

 2  **testify on Mr. Fletcher's behalf, did you say to**

 3  **her, "Why are you going to testify on his**

 4  **behalf?"**

 5       MR. COYNE:  Objection.  Mischaracterizes his

 6  testimony.  He didn't testify that she told him

 7  that.  She [sic] testified that that's his

 8  interpretation.

 9            So go ahead.

10       MS. WEST:  Join.

11  BY THE WITNESS:

12       A.   I did not ask her.

13  BY MR. STARR:

14       **Q.   Okay.**

15       A.   Okay.

16       **Q.   Do you --**

17       A.   I don't know if I missed it or what.  I

18  did not ask her.

19       **Q.   Do you have an opinion about why**

20  **Ms. Friend would be willing to testify on**

21  **Mr. Fletcher's behalf?**

22       MR. HOLMES:  On --

23       MR. COYNE:  Objection, speculation.

24       MR. HOLMES:  On behalf of the State's

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 281

```
 1   Attorney's Office, I instruct the witness not to
 2   answer the question beyond the yes or no that
 3   was sought by the plaintiff's counsel on the
 4   ground of the deliberative process privilege.
 5   BY THE WITNESS:
 6       A.   I will follow his advice.
 7   BY MR. STARR:
 8       Q.   And refuse to answer my question?
 9       A.   Pardon?
10       Q.   You're going to refuse to answer my
11   question?
12       A.   Yeah.
13       Q.   Okay.
14       A.   Follow his advice.
15       Q.   Is it possible that Ms. Friend
16   indicated to you that she was still willing to
17   testify on Mr. Fletcher's behalf because she did
18   not witness Mr. Fletcher commit the Willie
19   Sorrell homicide?
20       MR. COYNE:  Objection, speculation.
21       MS. WEST:  Join.
22       MS. MORRISON:  Join.
23   BY THE WITNESS:
24       A.   I don't believe that.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 282

```
 1   BY MR. STARR:
 2        Q.   Why not?
 3        A.   Because of what she -- the overall
 4   package of what she wrote and what she said.
 5        Q.   But you never asked her if she actually
 6   witnessed Mr. Fletcher commit the homicide,
 7   correct?
 8        MS. WEST:  Objection, form, argumentative.
 9   BY THE WITNESS:
10        A.   Go ahead.  Say it again.
11   BY MR. STARR:
12        Q.   But you never asked her whether or not
13   Mr. Fletcher committed the homicide.
14             So how would you know?
15        A.   I -- I did not ask her specifically.  I
16   asked her about this affidavit.
17        Q.   Okay.  So assuming that the affidavits
18   were sham affidavits --
19        A.   Okay.
20        Q.   -- it's also possible that Ms. Friend
21   did not see Mr. Fletcher commit the homicide,
22   correct?
23        MR. COYNE:  Objection.  It requires the
24   witness to speculate.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 283

```
 1       MS. WEST:  Join.
 2       MS. MORRISON:  Join.
 3   BY THE WITNESS:
 4       A.   Again, I wouldn't know.  I wasn't there
 5   for the homicide.  I'm only going by what
 6   she said.
 7   BY MR. STARR:
 8       Q.   Right.  And you didn't ask her that
 9   specific question about whether or not she had
10   any evidence that Mr. Fletcher was innocent or
11   guilty, correct?
12       MR. COYNE:  Objection, asked and answered.
13       MR. STARR:  Join.
14       MS. WEST:  Join.
15   BY THE WITNESS:
16       A.   Say that again.
17   BY MR. STARR:
18       Q.   You didn't ask her whether she had any
19   evidence --
20       A.   No.  I did not ask.
21       Q.   -- Mr. Fletcher was guilty or
22   innocent --
23       THE COURT REPORTER:  Sorry?  You're talking
24   at the same time.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 284

```
 1        THE WITNESS:  Say -- my bad.
 2        MR. STARR:  Yeah, yeah.  Let me just try --
 3        THE WITNESS:  Say it again.
 4        MR. STARR:  Let's get it clear.
 5   BY MR. STARR:
 6        Q.   You didn't ask Ms. Friend if she had
 7   any evidence whether or not Mr. Fletcher was
 8   guilty or innocent, correct?
 9        MR. COYNE:  Objection, asked and answered.
10   BY THE WITNESS:
11        A.   I did not ask her that.
12   BY MR. STARR:
13        Q.   The only thing you asked her about is
14   whether or not the police had manipulated her,
15   right?
16        MR. COYNE:  Objection.  That's --
17   mischaracterizes his testimony.
18        MS. WEST:  Join.
19        MS. MORRISON:  Join.
20   BY THE WITNESS:
21        A.   Say it again.
22   BY MR. STARR:
23        Q.   The only thing you asked her about was
24   whether or not the police had manipulated her
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 285

```
 1   identification, correct?

 2       MR. COYNE:  Same objection.

 3       MS. WEST:  And misstates prior testimony.

 4   BY THE WITNESS:

 5       A.   I didn't say that to her.

 6   BY MR. STARR:

 7       Q.   No.  I know.  But that was your

 8   mission, to find out whether or not the police

 9   had manipulated her identification, correct?

10       MR. COYNE:  Objection.  That's a different

11   question.

12       MS. MORRISON:  Objection.

13       MS. WEST:  Yeah.

14       MR. HOLMES:  I object --

15       MR. COYNE:  And it also misrepresents his

16   testimony.

17       MS. WEST:  Join.

18       MS. MORRISON:  Join.

19       MR. HOLMES:  Join.

20   BY THE WITNESS:

21       A.   My goal was to interview her about this

22   affidavit and find out what was accurate and

23   what wasn't.  That was -- I don't want to say

24   mission again.  That was my assignment, go
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 286

 1    interview about this affidavit and find out what

 2    was going on --

 3    BY MR. STARR:

 4        Q.   It wasn't your --

 5        A.   -- what was the truth.

 6        Q.   It wasn't your mission to find out

 7    whether or not she actually witnessed

 8    Mr. Fletcher commit the crime, correct?

 9        MR. COYNE:  Objection, asked and answered.

10        MS. WEST:  Join.

11    BY THE WITNESS:

12        A.   I don't -- I did not ask her that

13    specifically, and I have already told you that.

14    I went out there to ask her about the affidavit

15    in her name, if it was even her affidavit.

16    That's the first rule of thumb.

17    BY MR. STARR:

18        Q.   Did you care -- do you have any

19    independent recollection of caring whether or

20    not Mr. -- Ms. Friend actually witnessed

21    Mr. Fletcher commit the crime or not?

22        MR. HOLMES:  Objection.

23        MR. COYNE:  Objection, form.

24        MR. HOLMES:  Objection.  On behalf of the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 287

1   State's Attorney's Office, I instruct the

2   witness not to answer on the ground of

3   deliberative process privilege.

4   BY THE WITNESS:

5       A.   Ask the question for me again.

6       MR. COYNE:  He just instructed you not to

7   answer the question.

8       THE WITNESS:  But if he -- I'd like to -- I'd

9   like to hear what -- go ahead.

10      MR. COYNE:  Go ahead.

11  BY MR. STARR:

12      **Q.   So the question was, do you have any**

13  **independent recollection of caring at all**

14  **whether or not Ms. Friend actually witnessed**

15  **Mr. Fletcher commit the crime or not?**

16      MR. HOLMES:  On behalf of the State's

17  Attorney's Office, I instruct the witness not to

18  answer on the ground of deliberative process

19  privilege.

20      MR. COYNE:  And I'd just object on form.

21  BY THE WITNESS:

22      A.   And I am going to follow their

23  advice -- his advice.

24  BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 288

1      Q.   And you're refusing to answer my

2  question?

3      A.   Yes.

4      Q.   In retrospect, do you wish you had

5  asked Ms. Friend, "Hey, did you actually see

6  Jimmie Fletcher commit the crime or not?

7      MR. HOLMES:  On behalf --

8      MR. COYNE:  Objection, form, speculation,

9  foundation.

10     MR. HOLMES:  On behalf of the State's

11 Attorney's Office, I instruct the witness not to

12 answer on the ground of the deliberative process

13 privilege.

14 BY MR. STARR:

15     Q.   Are you going to take that instruction

16 and not answer my --

17     A.   Yes.  I'll take that --

18     Q.   -- question?

19     THE COURT REPORTER:  If you could wait.

20     MR. STARR:  Did you get it all?

21     THE COURT REPORTER:  Yes.

22     THE WITNESS:  Okay.

23 BY MR. STARR:

24     Q.   Do you have any personal opinion about

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 289

1     **whether or not you should have asked Ms. Friend**

2     **back in 2015, "Hey, did you actually see Jimmie**

3     **Fletcher commit this crime?"**

4         MR. COYNE:  Objection, form, foundation,

5     incomplete hypothetical, requires the witness to

6     speculate, argumentative, and harassing I might

7     mention as well.

8             Go ahead.

9         MR. HOLMES:  On behalf of the State's

10    Attorney's Office, I instruct the witness not to

11    answer on the ground of the deliberative process

12    privilege.

13    BY THE WITNESS:

14        A.   Follow the attorney's advice.

15    BY MR. STARR:

16        Q.   **And you'll refuse to answer that**

17    **question?**

18        A.   Yes, sir.

19        MR. STARR:  Okay.  All right.  Let's change

20    gears here a little bit.  Let me show you what I

21    will mark as -- I think we are up to 5, right?

22        MR. COYNE:  5, is it?

23        MS. WEST:  Yeah.

24        MR. STARR:  It's Exhibit 5, or -- no.  I'm

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 290

1    sorry.  Yeah, yeah.  This is Exhibit 5.

2                    (Whereupon, Brannigan Deposition

3                     Exhibit No. 5 was marked for

4                     identification.)

5    BY MR. STARR:

6        **Q.    You testified that you would have**

7    **reviewed whatever documents were in the trial**

8    **file to get a sense of the case before you went**

9    **out to interview Ms. Friend, right?**

10       MR. COYNE:  By custom and practice was his

11   testimony, by the way, but --

12   BY THE WITNESS:

13       A.   Say that again.

14   BY MR. STARR:

15       **Q.    You testified that it was your practice**

16   **to review whatever documents were in the trial**

17   **file, correct?**

18       A.   Or part of them.  Whatever I got my

19   hands on.  Sometimes I review every single

20   document.  Sometimes I just glance at stuff.

21       **Q.    And you didn't --**

22       A.   Depending on what I was asked to do.

23       **Q.    And you didn't deviate from that**

24   **practice in this case, right?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 291

1      A.   I know I didn't review the whole file

2   in this one.  It was only one assignment, and

3   that was this affidavit, and they wanted me to

4   get that.

5      **Q.   Do you remember what you did review**

6   **before you went out to interview Ms. Friend?**

7      A.   No, sir.

8      MR. STARR:  Okay.  So I'm going to show you a

9   couple documents and ask if you reviewed them

10  before you went out to interview Ms. Friend.

11          So this first document is -- which is

12  going to be Exhibit No. 5 is a Bates

13  CITY-JF-15145 through 15151.

14          This is the handwritten statement.  Do

15  you need a copy of it?

16     MS. WEST:  Yes, sure.

17     MR. COYNE:  Thank you.

18     MR. STARR:  I only made four hard copies.  I

19  didn't know everyone was going to be here.

20     THE WITNESS:  Thank you.

21  BY MR. STARR:

22     **Q.   So take a minute to review that.  You**

23  **don't necessarily need to read it in its**

24  **entirety.  Just familiarize yourself with it.**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 292

1  And, you know, I'm happy to let you read it if

2  you want, but I'm not going to ask you a lot of

3  questions about it.  Let me know when you've had

4  a chance to review it.

5      A.    Yeah.  I looked at it.

6      Q.    Okay.

7      A.    I did not read it, but I looked at it.

8      Q.    That's fine.

9      A.    I understand what it is.

10      Q.    Okay.  Have you seen this document

11  before today, sir?

12      A.    No, sir, not that I recall.

13      Q.    Did you -- so you didn't review this in

14  preparation for today's --

15      A.    I don't remember seeing this at all.

16      Q.    You didn't review it in preparation for

17  today's deposition, right?

18      A.    I didn't review it.

19      Q.    In preparation --

20      A.    For this?

21      Q.    For today's dep, yeah.

22      A.    That's correct.

23      Q.    Okay.  And this is a handwritten

24  statement of Ms. Friend, correct?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 293

```
 1      A.   Yeah.
 2      Q.   And it purports to have been taken on
 3   March 9 of 2002, at 1:00- -- 1:50; is that
 4   correct?
 5      A.   When is this taken?
 6      Q.   Up at the top there.
 7      A.   Oh, the shooting.  Okay.  I'm looking
 8   at the shooting, yeah.  9th of March, yeah.
 9      Q.   Okay.  And you see that the Detectives
10   Bogucki and Schalk were present for this, along
11   with ASA Jennifer Walker.
12           Do you see that?
13      A.   Yes.
14      Q.   And do you know whether or not you were
15   given this to review in -- before you went
16   out --
17      A.   Pardon me?
18      Q.   Let me finish.
19           Do you know whether or not you were
20   given this to review before you went out to
21   interview Ms. Friend?
22      A.   I -- I know as I sit here today now
23   that I did not see this before.
24      Q.   You know for a fact that you've never
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 294

1    seen this before?

2        A.    Correct.

3        Q.    Okay.  Do you -- are you familiar with

4    these types of handwritten statements from your

5    work --

6        A.    Yes.

7        Q.    -- with the Cook County State's

8    Attorney's Office?

9        THE COURT REPORTER:  Sorry.  Could you wait?

10   Could you repeat the question?

11       MR. STARR:  Yeah.  Sure.

12   BY MR. STARR:

13       Q.    Are you -- you are familiar with this

14   type of -- this format of a handwritten

15   statement --

16       A.    Yes.

17       Q.    -- taken by the State's Attorney based

18   on your experience as a Chicago police officer

19   and a Cook County investigator, right?

20       A.    Yes, sir.

21       Q.    Okay.  Can you look at the last page?

22       A.    Yes.

23       Q.    Do you recognize that person?

24       A.    Yeah.  I remember seeing this photo

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 295

```
 1   somewhere.
 2       Q.   Do you recall whether or not you saw
 3   this photo before you interviewed Ms. Friend?
 4       A.   I don't recall.
 5       Q.   Do you know -- do you know who this
 6   person is?
 7       A.   This?
 8       Q.   Yeah.
 9       A.   Yeah, that's Fletcher.
10       Q.   Yeah.  That's Bates 15151, right?
11       A.   1 what?
12       Q.   The number at the bottom, the attorney
13   number, it's 15151.
14       A.   Yes, sir.
15       Q.   And you know this to be James Fletcher?
16       A.   Yes, yeah.  I believe that's Fletcher,
17   yes, sir.
18       Q.   Okay.  And do you know if this is what
19   James Fletcher looked like in 1990 or at some
20   other point in time?
21       MS. WEST:  Speculation.
22   BY THE WITNESS:
23       A.   I don't know.
24   BY MR. STARR:
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 296

1     Q.   Okay.  How did Ms. Friend pronounce her
2  first name?
3     A.   I believe she is -- called it Freend
4  (phonetic).
5     Q.   Her last name, Friend?
6     A.   Freend, I think.  I'm not positive.
7     Q.   Okay.  Well, I asked you about her
8  first name, but that's interesting.
9     A.   Oh, okay.
10    Q.   How did she pronounce her first name?
11 Do you know?
12    A.   I don't remember.  I don't remember.  I
13 don't remember specifically even asking her
14 other than her name is Friend, and "Are these
15 your affidavits?"
16    Q.   Well, how would you pronounce her first
17 name?
18    A.   How would I?
19    Q.   Yeah.
20    A.   Sheeney (phonetic).
21    Q.   Sheeney?
22    A.   That's how I would --
23    Q.   Okay.  With a -- with a -- like an E-Y
24 on the end, Sheeney?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 297

1      A.   Phonetically, yeah.

2      **Q.   Instead of Sheenay (phonetic) with like**

3   **an A-Y, correct?**

4      A.   Sheenay is how I would pronounce --

5      **Q.   So let the --**

6      A.   I would pronounce this name here

7   Sheeney.

8      MR. STARR:  Okay.  So let the record reflect

9   that he pronounced Ms. Friend's first name,

10  Sheeney, with an E-Y instead of an A-Y on the

11  end; is that fair?

12     MR. COYNE:  He testified that's the way he

13  would pronounce it, not that he ever

14  specifically did pronounce it that way.

15     MR. STARR:  Well, he did pronounce it that

16  way in the dep.

17     MR. COYNE:  Right.  No.  He's -- well, okay.

18  If you're saying -- if you're representing it in

19  a dep.  I'm just saying that was his testimony.

20  Your question was how would you pronounce it.

21     MR. HOLMES:  Join.

22     MR. COYNE:  Okay.  Go ahead.

23  BY MR. STARR:

24     **Q.   Okay.  And then you testified**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 298

1   furthermore that Ms. Friend, common

2   pronunciation, pronounced her name Freend

3   (phonetic) as if it was spelled phonetically,

4   F-R-E-E-N-D, correct?

5       A.   I seem to remember that, yes.

6       Q.   Okay.  All right.  You can put that

7   document down.  I am going to show you another

8   document.

9       MS. MORRISON:  Could we take, like, a

10  two-minute bathroom break while you go through

11  the exhibits?

12      MR. STARR:  Sure.

13      MS. MORRISON:  Thanks.

14                  (Whereupon, a short break was

15                   taken.)

16      MR. STARR:  All right.  I'm going to show you

17  what I am going to now mark as Exhibit No. 6,

18  and for the record, it's Bates CITY-JF-15169

19  through 15170.

20                  (Whereupon, Brannigan Deposition

21                   Exhibit No. 6 was marked for

22                   identification.)

23  BY MR. STARR:

24      Q.   I'm going to -- take a look -- a minute

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 299

1    to look at that, sir, and I'm going to ask you a

2    similar set of questions that I just asked you

3    about the other document.

4            Have you had an opportunity to look

5    that over?

6        A.   I looked it over, yes, sir.

7        Q.   Okay.  In Exhibit No. 6, have you seen

8    this document before today?

9        A.   Unsure.  I'm not sure.

10       Q.   Did you review this document in

11   preparation for today's deposition?

12       A.   No, sir.

13       Q.   Do you know what this document is?

14       A.   Yes, sir.

15       Q.   What is this?

16       A.   It's a case report on the original

17   shooting of the victim, Sorrell.

18       Q.   Is this what's referred to as a general

19   offense case report?

20       A.   Yes, sir.

21       Q.   Okay.  And a general offense case

22   report is the first report that is generally

23   generated in a homicide or a crime?

24       A.   Yes, sir.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 300

1    Q.   Okay.  And do you know whether or not

2    you looked at this document before you went out

3    and interviewed Ms. Friend?

4         A.   I'm not certain at this point in time.

5         Q.   Okay.  So you don't have any

6    independent recollection of reviewing it prior

7    to interviewing her, correct?

8         A.   Wait.  I don't --

9         Q.   You do not have any independent

10   recollection of reviewing this?

11        A.   Oh, correct, correct.

12        Q.   And do you see that the reporting

13   officer is listed as J. Gilger?

14             Do you see that name down there?

15        A.   G-I-L-G-E-R.

16        Q.   Mm-hmm.

17        A.   Yes, sir.

18        Q.   Do you know Mr. Gilger?

19        A.   No, sir.

20        Q.   Okay.  And do you see the person that

21   arrived on the scene from Area Five is a

22   detective by the name of Fleming?  It's a little

23   farther in the same bottom column there to the

24   right.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 301

```
 1      A.   Where is that at?  Oh, right.  I see.
 2   That's a notification there or something?
 3      Q.   Yeah.
 4      A.   That's routine.  They call that in to
 5   get a name and make sure the detectives know
 6   about the case.
 7      Q.   Well, this one says he arrived on the
 8   scene.
 9           Do you know the detective by the name
10   of Fleming?
11      A.   No, sir.
12      Q.   Okay.  And do you see that there is two
13   offenders listed in this case report?  It's the
14   column 40.
15      A.   I'm sorry?
16      Q.   It's column -- or Box 40, 41, 42.  It's
17   the information about the offenders.  I have it
18   highlighted here if it helps you orient
19   yourself.
20      A.   I see them.
21      Q.   And do you see in the description, the
22   physical description of the two offenders, the
23   first one says: male, 28 to 21 [sic], 6' tall,
24   170 pounds, long black as far as hair, dark
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 302

 1    complexion?

 2         Do you see that?

 3    A.   Yes, sir.

 4    Q.   Do you know whether or not that --

 5    those physical descriptions matched up with

 6    Mr. Fletcher or not?

 7    A.   No idea, sir.

 8    Q.   Okay.  And then do you see in the

 9    second box down the -- it's listed for the

10    second offender, male, age 30, height 6',

11    weight 170, brown eyes, ponytail, dark

12    complexion?

13         Do you see that?

14    A.   Yes, sir.

15    Q.   Do you know whether or not those

16    physical descriptions match up to Mr. Fletcher

17    or not?

18    A.   No, sir.

19    Q.   Okay.  Did you ask Ms. Friend to

20    describe Mr. Fletcher when she saw him allegedly

21    commit the Willie Sorrell homicide?

22    A.   No, sir.

23    Q.   Did you ask her for any description of

24    Mr. Fletcher at all?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 303

1      A.   No, sir.

2      Q.   Okay.  And I'm going to have you flip

3   over to the second page here.  There's some

4   other officers.  I'm just wanted to ask you if

5   you're familiar with them:  Officer Maniscalco.

6           Do you see that?

7      A.   Yes, sir.

8      Q.   Do you know who that person is?

9      A.   Do I know who he is?

10     Q.   Yeah.

11     A.   No, sir.

12     Q.   Officer Gates, do you know who that is?

13     A.   No, sir.

14     Q.   First Deputy Povolo, do you know who

15   that is?

16     A.   No, sir.

17     Q.   Okay.  Does anything about this

18   document -- anything in this document refresh

19   your recollection beyond what you've already

20   testified to about your role in the --

21     A.   Slow down.  I'm sorry.

22     Q.   Does reviewing this document refresh

23   your recollection any further than what you've

24   already testified to today?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 304

1      A.   No, sir.

2      MR. STARR:  Okay.  You can put that aside.

3           I'm going to show you what I am going

4  to mark as Exhibit No. 7.  And, again, you don't

5  need to review this in its entirely.  Just

6  glance through it and see if you're familiar

7  with it.

8           And, for the record, it's Bates

9  CITY-JF-15167 through 15188 -- I'm sorry --

10  158 -- 15189.

11                    (Whereupon, Brannigan Deposition

12                     Exhibit No. 7 was marked for

13                     identification.)

14  BY MR. STARR:

15      Q.   Did you have a chance to review this

16  document, sir?

17      A.   Yes, sir.

18      Q.   Do you -- did you review this document

19  in preparation for today's deposition?

20      A.   No, sir.  I did not review this for the

21  deposition.

22      Q.   Have you ever seen this document before

23  today?

24      A.   No, sir.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 305

1    Q.   Do you know what this document is?

2    A.   It looks like an old computer run on a

3   name -- by names.

4    Q.   And when you say an "old computer run,"

5   because it says Chicago Police Department as

6   it's indicated at the top, it's a --

7    A.   You --

8    Q.   You say it's an old computer run on

9   names because it says at the top "Chicago Police

10  Department"?

11   A.   Correct.

12   Q.   Do you know what kind of computer run

13  this would be?

14   A.   It would be for names.  From its

15  appearance, for the names with Fletcher in it.

16   Q.   Right.

17       Do you know what kind of system the run

18  would have --

19   A.   And I think it was called ICAD or

20  something like that.

21   Q.   ICAM?

22   A.   ICAM, ICAD.  I'm not sure.

23   Q.   Okay.  Is there -- is there -- is there

24  one system called ICAM and one system called

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 306

1    ICAD?  Do you know?

2         A.    You know, I can't remember now.

3         Q.    Okay.  Is this something you might have

4    done when -- not this particular one, but as a

5    general practice when you were on the police

6    department --

7         A.    Right.

8         Q.    -- run a name through the ICAM or ICAD

9    system?

10        A.    When that ICAM was out, for the most

11   part I was detailed out of the police

12   department.  So I didn't do much of this.

13        Q.    Okay.

14        A.    I would have to have somebody do it.

15   So I'm not really familiar with any of --

16        Q.    So you didn't --

17        A.    At this time frame, like in the '90s or

18   whenever.

19        Q.    This one says 1999, August.

20        A.    '99, yeah.

21        Q.    Yeah.

22        A.    Yeah.  I was back -- yeah, this is

23   ICAM.  I remember.

24        Q.    Do you see right here right on the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 307

```
 1   left, it says, "Today is" and it says

 2   19 August --

 3       MR. COYNE:  Yeah, '99.  Yeah.

 4   BY MR. STARR:

 5       Q.   Okay.  So you were back in the

 6   department --

 7       A.   Yeah.  I was back with the department

 8   then.

 9       Q.   -- at that point?

10            You were back in the department by that

11   time?

12       A.   Yeah, I was back.

13       Q.   Okay.  So is this a search that you

14   would have been -- this type of search is

15   something you would be familiar with?

16       A.   Yeah.

17       Q.   Okay.  And you think it's an ICAM

18   search; is that correct?

19       A.   Yeah.

20       Q.   Okay.  And is this a search to -- can

21   you explain what the purpose of running an ICAM

22   search is as far as you understood it?

23       A.   Yeah, to find something.  You could --

24   you had different parameters.  It wasn't real
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 308

1     sophisticated back then.  You had -- so someone

2     was looking for individuals with certain

3     parameters with the name -- first name of

4     Fletcher or maybe -- maybe even last name of

5     Fletcher.  That's my take on it.

6          **Q.    And this is a printout that you would**

7     **get after putting that parameter -- those**

8     **parameters and the name in?**

9          A.    Well, you -- back then you might have

10    even had to send downtown for it --

11         **Q.    To get an ICAM search?**

12         THE COURT REPORTER:  Sorry?  Send downtown

13    for it?

14    BY THE WITNESS:

15         A.    Send downtown to get the search done.

16    I really -- I'm -- I really can't remember right

17    now.

18    BY MR. STARR:

19         **Q.    Yeah.  That's okay.**

20              **Is this a search that you -- Do you**

21    **recall if this is a search that's also**

22    **associated with getting photographs of the**

23    **people?**

24         A.    Yeah.  You would get photographs off

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 309

1   this, too.

2       Q.   Okay.  So put a name in, put some

3   parameters in, you get a list of addresses and

4   other information, and you'd also get

5   photographs, correct?

6       A.   You could, yes.

7       Q.   Okay.  And this is not a document that

8   refreshes your recollection at all, does it?

9       A.   No.

10      MR. STARR:  Okay.  You can put that to the

11  side.  And that was 7.  I'm going to show you 8.

12                  (Whereupon, Brannigan Deposition

13                   Exhibit No. 8 was marked for

14                   identification.)

15  BY MR. STARR:

16      Q.   And for the record, this is Bates

17  CITY-JF-15191 through 15201.  Just take a moment

18  to review this, and I will ask you a few

19  questions about it as well, sir.

20          Have you had an opportunity to review

21  that document, sir?

22      A.   Yes.

23      Q.   Did you review this document in

24  preparation for today's dep?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 310

1    A.   No, sir.

2    Q.   Do you know -- Did you see this

3 document back when you were working for the

4 State's Attorney's Office prior to going out to

5 interview Ms. Friend?

6    A.   No, sir.

7    Q.   Do you know what --

8    A.   I don't recall seeing it.

9    Q.   Do you know what this document is?

10   A.   Yes, sir.

11   Q.   What is this document?

12   A.   It's a run, a criminal history run, the

13 same -- similar to the ICAM, looking at --

14 naming different names using Fletcher.

15   Q.   And is this a name run, as you refer to

16 it, that would have happened -- can you tell any

17 difference between these two different

18 documents, Exhibit No. 7 and Exhibit No. 8?

19   A.   That was the more sophisticated one.  I

20 think this one would have been run to give them

21 information to put in for that.

22   Q.   Okay.

23   A.   But don't quote me on any of it.

24   Q.   Okay.  So No. 7 -- Exhibit No. 7 would

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 311

1    be an example of a more sophisticated --

2        A.    I think so, yeah.

3        Q.    -- search?

4        A.    This was the older first step to get

5    into that, okay, so --

6        Q.    And would this -- would this -- was

7    this -- based on your experience, is this -- do

8    you have a general idea of when this document

9    was in use, this type of run was in use?

10       A.    No.  I couldn't tell exactly when.

11       Q.    Would it have been likely before 1999?

12       A.    Yeah.  I would say this one was before

13   '99.

14       Q.    Okay.  And would this also be the type

15   of run that you would do to request photos if

16   you wanted to request photos?

17       A.    No.  Photos then you were -- in '90 you

18   were pretty much doing it by hand.  You had to

19   fill out a slip, you'd send it downtown or hand

20   carry it downtown, and they would give you the

21   photos from their database.  They were still

22   done with film and everything at that time.

23       Q.    Okay.

24       A.    That's my best recollection.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 312

1      **Q.   And so do you have any sense of, like,**
2   **this particular run would only be done to get**
3   **names then, or what other purposes would this**
4   **run necessarily be done for?**
5      A.   It's --
6      MS. MORRISON:  Object to foundation, form.
7   BY THE WITNESS:
8      A.   My guess -- I don't really know for
9   sure, but my -- I don't want to guess.  My --
10     MR. COYNE:  Good idea.
11     THE WITNESS:  Huh?
12     MR. COYNE:  That's a good idea.
13  BY THE WITNESS:
14     A.   I really don't know what whoever did
15  this was up to.
16  BY MR. STARR:
17     **Q.   Okay.  And you don't believe you saw**
18  **this prior to your interview with Ms. Friend,**
19  **correct?**
20     A.   That's correct.
21     **Q.   I don't know if I asked you about**
22  **Exhibit No. 7.**
23          **Did you -- do you know if you reviewed**
24  **this before you interviewed Ms. Friend?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 313

1      A.   I don't believe so.

2      **Q.   Okay.  Do you see at the top of this**

3   **Exhibit No. 7 --**

4      A.   Wait, wait.

5      **Q.   -- it says, "Confidential Report"?**

6      A.   Okay.  Go ahead.

7      **Q.   Do you see it says, "Confidential**

8   **Report"?**

9      A.   Yep.

10     **Q.   Does that indicate anything to you?**

11     A.   Does what?

12     **Q.   Does that indicate anything to you?**

13     A.   Confidential.

14     MR. COYNE:  Objection, form.

15   BY MR. STARR:

16     **Q.   About the type of report, yeah.**

17     A.   Only that it's confidential, that it's

18   not out there in the public domain.  Probably

19   only at that time -- here I go, probably, again.

20   I suspect it was only available to the detective

21   division at that time.

22     **Q.   Okay.  In 1999.**

23        **Do you know if you could run this**

24   **report and not run it confidential -- as a**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 314

1  confidential report?  Do you have any idea about

2  that?

3      MS. MORRISON:  Objection to foundation,

4  speculation.

5      MS. WEST:  Join.

6  BY MR. STARR:

7      Q.    In 1999.

8      A.    Me?

9      Q.    Yeah.  Did you have any experience

10  doing that?

11      A.    Say that again.

12      Q.    Yeah.

13          Do you know if this report only could

14  be run as a confidential report in 1999?

15      A.    No.  I don't know for sure.

16      Q.    Do you know what a confidential RD

17  number is?

18      A.    Yes.

19      Q.    What is that?

20      A.    That's a -- an RD number is a number

21  assigned to the Chicago Police Department case

22  report, and it's confidential.  They -- they did

23  it by hand, and they don't attach anything to

24  it.  And whatever they are doing will be the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 315

1   subject of reports with that number.  That

2   documents the time and the location of an

3   incident.

4           It's -- primarily was used for

5   narcotics purchases.  They would be out buying

6   dope.  Well, they don't want to have an address

7   and everything else, but they would give the RD

8   number to identify -- they might use the police

9   station as the address.

10      **Q.    And RD stands for record division?**

11      A.    Record -- the case report that would be

12   attached to a crime or an incident.

13      **Q.    And in my experience, most RDs are not**

14   **considered confidential RDs; is that --**

15      A.    Pardon?

16      **Q.    Most RDs are just RDs, not confidential**

17   **RDs --**

18      A.    I --

19      MS. WEST:  Give me a second.  I'm going to

20   object to this line of questioning.  He is a

21   fact witness as an Assistant State -- or as a

22   State's Attorney's investigator, not an expert

23   in records for the Chicago Police Department,

24   nor has he been tendered as a 30(b)(6) witness.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 316

1          So I would just have a standing

2     objection to the line of questioning.  It has

3     nothing to do with his role in the underlying

4     investigation.

5          MS. MORRISON:  And I will join that

6     objection.

7          MR. STARR:  You can answer if you remember

8     what I asked.

9          MR. COYNE:  And I would also note that one of

10    the subjects -- one of the subjects of my motion

11    for a protective order encompassed that issue.

12          But go ahead.

13          THE WITNESS:  Okay.

14          MR. COYNE:  You can go ahead and answer.

15    BY MR. STARR:

16      Q.   I think I asked, most RDs are not --

17      A.   You asked about a confidential RD --

18          THE COURT REPORTER:  Sorry.  If you could

19    wait and speak one at a time.

20          THE WITNESS:  Okay.

21    BY MR. STARR:

22      Q.   Most RDs are not confidential, correct?

23      A.   Correct.

24      Q.   And I think what you testified is that

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 317

```
 1    an RD -- a confidential RD is different than a
 2    regular RD because it's primarily about a
 3    narcotics investigation?
 4        A.    That would be the most common use.
 5    There might be a confidential investigation into
 6    a dirty cop or something like that.  They just
 7    get a number to document that this investigation
 8    was launched, basically.
 9        Q.    Was -- Have you ever seen a
10    confidential RD attached to a homicide?
11        MS. MORRISON:  Same objections.
12        MS. WEST:  Join.
13        MR. COYNE:  Go ahead.
14    BY THE WITNESS:
15        A.    Have I ever seen one?
16    BY MR. STARR:
17        Q.    Yeah.
18        A.    No.
19        MR. STARR:  Okay.  You can put that document
20    aside, those two documents aside.  I'll show you
21    another document here I will just mark as No. 9.
22    And for the record, this is CCSAO Conflicts 1761
23    through 1767.
24
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 318

1                    (Whereupon, Brannigan Deposition

2                     Exhibit No. 9 was marked for

3                     identification.)

4    BY MR. STARR:

5        Q.   And the same thing, sir, just -- if you

6    could just page through it and take a look at it

7    and let me know when you're ready to talk about

8    it.

9             Exhibit No. 9, did you review that in

10   preparation for today's dep?

11       A.   Did I --

12       Q.   Yeah.

13       A.   -- look at this document?

14       Q.   Yes.

15       A.   I've never seen it before.

16       Q.   Okay.  So it's safe to assume that you

17   did not review this prior to interviewing

18   Ms. Friend; is that correct?

19       A.   Correct.

20       Q.   Okay.  Do you know what this document

21   is, sir?

22       A.   Do I know what it is?

23       Q.   Yeah.

24       A.   Yeah, well, pictures from IDOC of

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 319

```
 1    inmates.
 2        Q.   Yeah.  If I represented to you that
 3    this is the photo array that was shown to the
 4    witnesses in the Willie Sorrell homicide in
 5    2002, would you have any reason to doubt that?
 6        A.   I don't know --
 7        Q.   Okay.
 8        A.   -- is my answer.  I don't -- I don't
 9    know what was shown to the witnesses.
10        Q.   So the record is pretty clear that this
11    is a photo array that was shown to the witnesses
12    in 2002.
13        A.   That's what they were shown?
14        Q.   Yeah.
15    THE COURT REPORTER:  Sorry.  Your answer?
16    BY THE WITNESS:
17        A.   That's what they were shown?
18    BY MR. STARR:
19        Q.   Correct.
20        A.   I don't know that, but if you tell me
21    that, we will go with it.
22        Q.   Okay.  And my question for you is,
23    having never reviewed this previously, have you
24    ever done a photo array in your career?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 320

1      A.    Have I?

2      **Q.    Yeah.**

3      A.    I've participated in them, yes.

4      **Q.    Okay.  As a Chicago police officer?**

5      A.    Yeah.

6      **Q.    Did you ever use IDOC photos to conduct**

7   **a photo array?**

8      MS. WEST:  I'm going to state the same

9   objection as I made earlier, that he is a fact

10  witness here to testify about his involvement in

11  the underlying investigation that he -- took

12  place in the locating and speaking with

13  witnesses as a State's Attorney investigator.

14         He's not here to testify about his time

15  at the Chicago Police Department, nor has he

16  been tendered as an expert for the Chicago

17  Police Department or a 30(b)(6) witness and a

18  standing objection to all lines of questioning

19  outside the bounds of his involvement in the

20  underlying investigation that the State's

21  Attorney did.

22     MS. MORRISON:  Join.

23     MR. STARR:  I don't think you made the

24  objection, like --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 321

 1      MS. WEST:  I --

 2      MR. STARR:  -- 55 questions ago -- that you

 3   didn't object to then -- but okay.

 4      THE COURT REPORTER:  Sorry?

 5      MR. STARR:  I said I don't think you made an

 6   objection on a question I asked --

 7      MS. WEST:  I --

 8      MR. STARR:  -- 55 questions ago, but if you

 9   want to make a standing one moving forward, I

10   don't -- I do not have a problem with that.

11   BY MR. STARR:

12      **Q.   Sir, do you remember what I asked you?**

13      A.   Did what?

14      **Q.   Do you remember what I asked you?**

15      A.   Do I remember what?

16      **Q.   What my question was?**

17      A.   No.

18      **Q.   Okay.**

19      A.   You'll have to begin again.

20      **Q.   In your career as a Chicago police**

21   **officer, did you ever do a photo array using**

22   **photos from the IDOC website like this?**

23      A.   No, sir.

24      **Q.   Okay.  Do you think there is anything**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 322

```
 1   improper about using photos from the IDOC
 2   website like this --
 3       MR. COYNE:  Objection.
 4   BY MR. STARR:
 5       Q.   -- for a photo array?
 6       MR. COYNE:  Sorry.  Objection, form,
 7   foundation.
 8       MR. STARR:  Let me just reask it.
 9   BY MR. STARR:
10       Q.   Do you think there is anything improper
11   about using photos printed off the IDO- -- IDOC
12   website like this exhibit to conduct a photo
13   array?
14       MS. WEST:  Objection.
15       MR. COYNE:  Objection, form, foundation.
16       MR. HOLMES:  And, Counsel, we had a crosstalk
17   before you reasked the question.  In that
18   crosstalk, you clarified that you're asking the
19   witness to base his response solely on his
20   experience as a police officer in the Chicago
21   Police Department, correct?
22       MR. STARR:  Yes.
23       MS. WEST:  And I'm going to join Mr. Coyne's
24   objections and repeat the standing objection.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 323

```
 1       MS. MORRISON:  Same.  And form.
 2   BY THE WITNESS:
 3       A.   All right.  Now, where are we at?  Go
 4   ahead and answer -- answer the question, right?
 5   BY MR. STARR:
 6       Q.   Given your experience as a Chicago
 7   police officer, do you think there is anything
 8   improper about using photos printed off an IDOC
 9   website like this Exhibit No. 9 to conduct a
10   photo array?
11       MR. COYNE:  Same objections.
12       MS. WEST:  Same.
13       MS. MORRISON:  Same.
14   BY THE WITNESS:
15       A.   Exactly in this format?
16   BY MR. STARR:
17       Q.   Yes.
18       A.   Like that?
19       Q.   Yes.
20       A.   I wouldn't do it.
21       Q.   Why not?
22       A.   I just wouldn't do it.  I think there
23   is a -- well, there's easier ways to get photos
24   within the police department --
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 324

1      **Q.   Okay.**

2      A.   -- than to use that.

3      **Q.   So in addition to there being easier**

4   **ways to get photos, is there any other reasons**

5   **why you would not use these type of photos to**

6   **conduct a photo array?**

7      MS. WEST:  Same objections.

8      MS. MORRISON:  Same objections.

9      MR. COYNE:  Same objections.

10      MR. HOLMES:  And again, Counsel, you are

11   asking him to answer based strictly off his

12   experience as a Chicago police officer, correct?

13      MR. STARR:  Yes.

14      MS. WEST:  Same objections.  And at this

15   point you are asking him to opine about what he

16   would have done during an investigation, which

17   definitely goes outside of what he has been

18   disclosed or tendered as a witness, and I would

19   move to strike all lines of questioning relative

20   to it.

21      MS. MORRISON:  Join.

22   BY MR. STARR:

23      **Q.   Great.  Can you answer the question?**

24      A.   No.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 325

1           What are we going to -- what do you

2    want me to do?  What would your recommendation

3    be?

4        MR. HOLMES:  Well, Mr. Brannigan, what we are

5    establishing here is that the question for

6    Mr. Starr is being asked limited to your time

7    and experience as a Chicago police officer.

8    With that proviso, you can answer the

9    question --

10       THE WITNESS:  Yes.

11       MR. HOLMES:  -- if you're able to, and there

12   have been other objections lodged by your

13   counsel, Mr. Coyne, and by Ms. West and -- well,

14   I don't want -- I don't want to put words in

15   Mr. Coyne's mouth, because we had Mr. Coyne

16   objecting a moment -- a question ago, but

17   certainly by Ms. West and by counsel for the

18   City of Chicago.

19       MR. COYNE:  And just for the record, my

20   motion for protective order limiting -- seeking

21   to limit the questions in this deposition to the

22   issues -- facts and issues in this case was

23   denied.  So I just want to say at the beginning

24   of this deposition that was reincorporated into

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 326

1   this deposition, that line of objections.

2       MR. STARR:  And I also -- just for the

3   record, I just have, again, to say -- maybe I

4   haven't read it recently, but I thought your

5   protective order that you were seeking that was

6   denied was about questions about the McIntosh.

7       MR. COYNE:  No.  But I -- there was -- the

8   language expanded it to anything outside of this

9   case.

10      MR. STARR:  Okay.  Well, that's probably why

11  it got denied, but that's beside the point.

12  BY MR. STARR:

13      **Q.   Can you -- I will ask you this again.**

14      A.   Okay.  Let's go.

15      **Q.   So you were a sergeant and you worked**

16  **in the cold case department -- unit, correct?**

17      A.   I did work in the cold case.

18      **Q.   Yeah.**

19          **And you were a detective that worked in**

20  **the cold case unit, right?**

21      A.   No.  I was not a detective in the cold

22  case.

23      **Q.   Okay.  Forgive me.**

24          **You supervised detectives that worked**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 327

1   in the cold case?

2       A.   Yes, yeah.

3       Q.   **Besides the fact that there is other**

4   **ways to get photos, is there -- do you think**

5   **there is anything else -- strike that.**

6            **Is there any other reason why you would**

7   **think it improper to use these photos to conduct**

8   **a photo array other than the availability of**

9   **photos?**

10      MR. COYNE:  Objection, form, foundation,

11  incomplete hypothetical, requires the witness to

12  speculate.

13      MR. HOLMES:  Based strictly on the witness's

14  time and experience as a Chicago police officer,

15  correct, Counsel?

16      MR. STARR:  Yeah.  And I don't think you need

17  to keep interrupting my line of questions.

18      MR. HOLMES:  I just would --

19      MR. STARR:  He gets confused after one

20  objection.

21      MR. HOLMES:  Just I would like to preserve --

22      MR. STARR:  I -- I --

23      MR. HOLMES:  I would like to preserve the

24  record in the ways that I see fit.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 328

1     MR. STARR:  I'm not asking about anything to

2  do with the State's Attorney's Office, his time

3  with the State's Attorney.  I am asking, given

4  his experience --

5     MS. MORRISON:  Exactly.  That's --

6     MR. STARR:  Okay.  Let's take a break.  We're

7  going to be here past 6:00, because I have a lot

8  more to go, and if you guys want to --

9     THE COURT REPORTER:  Are we off the record

10  right now?

11     MS. WEST:  Sure.  We can go off the record.

12     MR. COYNE:  Okay.

13                  (Whereupon, a short break was

14                   taken.)

15  BY MR. STARR:

16     **Q.   Sir, given your experience as a Chicago**

17  **police officer --**

18     A.   Right.

19     **Q.   -- and as someone who was a sergeant**

20  **who supervised detectives in the cold case**

21  **unit --**

22     A.   Right.

23     **Q.   -- do you think there is anything**

24  **improper of the detectives in the cold case unit**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 329

1  **using this Exhibit 9, these photos printed off**

2  **an IDOC website to conduct a photo array?**

3      MR. COYNE:  Same objection, form and

4  foundation, speculation.

5      MS. WEST:  Same objections.

6  BY THE WITNESS:

7      A.   I have no idea what the parameters are

8  surrounding an investigation to use these

9  photos.  So if I don't know what was going on,

10 what the parameters were, what the limitations

11 were imposed on the detectives, I don't want to

12 answer the question.  I would not -- I would not

13 do this like this.  And you're telling me this

14 is how it was done.  I would not do it.

15         Sometimes there may be a reason for it.

16 I can't think of one right off the top of my

17 head, but I would not do it.

18 BY MR. STARR:

19     **Q.   Fair.**

20     A.   That's the best I can answer.

21     **Q.   And my question is a little more**

22 **specific than that.**

23         **Do you think there is anything improper**

24 **about showing a photo array to a witness exactly**

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 330

```
 1   like this?
 2        MR. HOLMES:  Counsel, are you --
 3        MR. COYNE:  Same objections.
 4        MR. HOLMES:  Counsel, are you asking him
 5   based --
 6        MR. STARR:  Yes.
 7        MR. HOLMES:  -- on his experience strictly as
 8   a Chicago police officer?
 9        MR. STARR:  Yes.
10        MS. WEST:  Same objections.
11   BY THE WITNESS:
12        A.   I can't picture anybody showing it like
13   this, exactly like you're saying.  If they did,
14   I don't think it would be in the best interests
15   of the case, but I don't know all the
16   parameters.  I cannot say 100 percent.
17   BY MR. STARR:
18        Q.   That's -- that's fair.
19             And why would it maybe not be in the
20   best interests of the case?  What do you mean by
21   that?
22        MR. COYNE:  Objection, form, foundation,
23   incomplete hypothetical.
24        MR. HOLMES:  Objection.  And I know you --
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 331

1     MR. COYNE:  And it requires speculation.

2     MR. HOLMES:  I would repeat, Counsel, you are

3   asking based on his experience strictly as a

4   Chicago police officer?

5   BY MR. STARR:

6     **Q.   All these questions, the entire line of**

7   **questions are about your experience as a**

8   **sergeant in the cold case unit supervising**

9   **detectives.**

10          **Why may it not be in the best interests**

11  **of the case to show photos like this to a**

12  **witness in a photo array?**

13    MR. COYNE:  Same objections.

14    MS. WEST:  Same objections.

15    MS. MORRISON:  Same.

16  BY THE WITNESS:

17    A.   Okay.  Are you all done?

18         It may taint the lineup.

19  BY MR. STARR:

20    **Q.   How would it taint the lineup?**

21    MR. COYNE:  Same objections.

22    MR. HOLMES:  Are you asking him based

23  strictly on his experience as a Chicago police

24  officer?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 332

1       MR. STARR:  No.  That one was about as a
2   State's Attorney's.  I'm kidding.  The entire --
3   I said the entire line of questions are about
4   his time as a sergeant supervising detectives in
5   the cold case unit.
6       MR. HOLMES:  And now we have a new question
7   that's a different question, and Mr. Brannigan
8   is still the same witness who has had
9   experiences in both offices, so -- with both
10  employers.
11      MR. STARR:  All of my questions --
12      MR. HOLMES:  So that's why I -- I continue to
13  clarify.
14      MR. STARR:  All of my questions until I let
15  you know otherwise are about your experience as
16  a sergeant supervising detectives in the cold
17  case unit within the Chicago Police Department.
18  BY MR. STARR:
19      **Q.   Why might this type of photo array**
20  **compromise an investigation --**
21      MR. COYNE:  Objection.
22  BY MR. STARR:
23      **Q.   -- or taint an investigation, as you**
24  **put it?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 333

1      MR. COYNE:  Objection, form, foundation,

2   incomplete hypothetical, and requires

3   speculation.

4      MS. WEST:  I'm just going to just put a

5   standing objection so I stop interrupting

6   everybody.

7         A standing objection to any line of

8   questioning relative to what he would have done

9   or his opinion as to what he would have done or

10  what they should have done as a Chicago police

11  sergeant in the cold case unit, because it's not

12  relevant, and I move to strike all questions.

13     MS. MORRISON:  Join.

14  BY THE WITNESS:

15     A.   Based on my experience, this would

16  taint the investigation, but I do not know the

17  parameters of -- and what they were limited to.

18  BY MR. STARR:

19     **Q.   Why -- as a -- again, this is a**

20  **continuing line of questions.**

21         **Why might that taint an investigation?**

22     MR. COYNE:  Same objection.

23  BY MR. STARR:

24     **Q.   What do you mean by that?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 334

1      MR. COYNE:  Same objection.

2      MR. HOLMES:  Based on his experience as a

3   Chicago police officer, correct?

4      MR. STARR:  That's what I said.

5   BY THE WITNESS:

6      A.   It's got all kinds of information on

7   there that may taint the investigation,

8   including the fact that the guy is currently in

9   IDOC.

10  BY MR. STARR:

11     Q.   **Okay.  So the fact that he is in IDOC**

12  **might taint an investigation, correct?**

13     MR. HOLMES:  Based on his experience strictly

14  as a Chicago police officer.  Is that what

15  you're asking, Mr. Starr?

16     MR. STARR:  I'm asking questions that are in

17  a continuing line of questions.  I have already

18  indicated for the record that I will indicate if

19  I'm not asking about his time as a Chicago

20  police officer.

21     MR. HOLMES:  And he was personally involved

22  in investigating Mr. Fletcher's case while he

23  was with the CCSAO, which is -- which is why

24  there is this issue and it's a continuing issue.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 335

1   That's why I'm just going to continue to clarify

2   with each question if --

3       MR. STARR:  He has testified that he didn't

4   see this document before his time investigating

5   the Fletcher case at the State's Attorney's

6   Office.  I said that all the questions I'm

7   asking until I -- until I state otherwise on the

8   record are about his experience as a sergeant in

9   the cold case unit supervising detectives.

10      MR. HOLMES:  Including this question?

11      MR. STARR:  Including all questions until I

12  note otherwise.

13      MR. HOLMES:  We will go question by question.

14      MR. STARR:  Can you read the question back?

15                  (Whereupon, the record was read

16                   as requested.)

17      MR. HOLMES:  And we have the clarification

18  concerning the scope of the question and the

19  witness's experience.

20  BY THE WITNESS:

21      A.   Okay.  Where are we at now?

22           If -- Photos shown that someone is in

23  IDOC could -- showing that, the individuals,

24  could taint the investigation the lineup.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 336

1    BY MR. STARR:

2        Q.   **And as a Chicago police officer, why**

3    **would you think that?**

4        A.   Because it shows the guy is in jail.

5        Q.   **Okay.  Anything else about this type of**

6    **photograph?**

7        A.   It shows his height and weight.  And it

8    doesn't show what he is in there for in this

9    one.  It shows his height and weight and the

10   fact that he is in prison.  That might be

11   considered tainting a lineup.

12       MR. STARR:  Okay.  Thank you.  Sorry to

13   belabor that point.

14           All right.  I'm going to show you what

15   I am going to mark as Exhibit No. 10.  This is

16   CCSAO-CIU 1.

17                    (Whereupon, Brannigan Deposition

18                     Exhibit No. 10 was marked for

19                     identification.)

20   BY MR. STARR:

21       Q.   **Did you review this document in**

22   **preparation for today's deposition, sir?**

23       A.   No, sir.

24       Q.   **Do you know what this document is?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 337

```
 1      A.   No, sir.
 2      Q.   Have you ever seen this document
 3  before?
 4      A.   No, sir.
 5      Q.   Okay.  Do you see your name in the
 6  middle of the document?  Do you see I have
 7  highlighted it here for you?
 8      A.   Do I see what?
 9      Q.   Your name right there.
10      MR. COYNE:  It's not highlighted.  Oh, all
11  right.  There it is here.
12      MR. STARR:  It's not highlighted on the copy
13  I gave him.
14      MR. COYNE:  Yeah.  Okay.  I got it.
15  BY MR. STARR:
16      Q.   Do you see your name, sir?
17      A.   I --
18      MR. COYNE:  You see it?  Okay.
19           Is the question -- the question now is,
20  do you see your name?  Did he answer that?
21      THE COURT REPORTER:  No.
22      THE WITNESS:  Do I see --
23      MR. COYNE:  Okay.  The question is, do you
24  see your name?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 338

1      THE WITNESS:  Do I see my name on this

2  document?

3      MR. COYNE:  Yes.  That's the question.

4  BY THE WITNESS:

5      A.   Yes, sir.

6  BY MR. STARR:

7      **Q.   Okay.  And you see at the top it's**

8  **titled "Cook County State's Attorney's Office**

9  **Privilege Log"?**

10     A.   Yes, sir.

11     **Q.   And then you see the last entry at the**

12 **very bottom has the initials DB.**

13          **Do you see that directly below your**

14 **name?**

15     A.   I got it.

16     **Q.   Okay.**

17     A.   Okay.

18     **Q.   Did anyone ever consult you about this**

19 **privilege log as far as you can recall?**

20     MR. HOLMES:  On behalf of -- on behalf of the

21 State's Attorney's Office, I instruct the

22 witness not to answer on grounds of work product

23 and deliberative process privilege.

24     MR. STARR:  That yes/no question is a work

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 339

1   product, whether or not anyone consulted him?

2       MR. HOLMES:  About this specific subject,

3   yes.

4       MR. STARR:  About the privilege log in

5   general, not about any specific subjects.

6       MR. HOLMES:  Yes.  About the -- yes, about

7   the substance of the privilege log.

8       MR. STARR:  I'm not asking about the

9   substance.  I'm asking him if anyone consulted

10  him about the privilege log.

11      MR. HOLMES:  Mr. Starr, I remind you it's

12  impossible to separate the two.

13  BY MR. STARR:

14      Q.  **Are you going to take the State's**

15  **Attorney's instruction and refuse to answer that**

16  **question?**

17      A.   I don't even know where we are at

18  anymore.  I have never seen this document or one

19  like it.

20      Q.  **Yeah.  So the question -- the question**

21  **wasn't about whether -- and I did ask you**

22  **earlier if you had seen any, and you said no.**

23  **But the question is, did anyone consult you**

24  **about this privilege log at any point in time?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 340

 1    And he instructed you not to answer.

 2              So my next question is, are you

 3    refusing to answer the question?

 4         A.   Yeah.  I will follow his advice.

 5         MR. STARR:  Okay.  You can put that aside.

 6              All right.  I'm going to show you what

 7    I will mark as Exhibit No. 12, I think.

 8         MS. WEST:  11.

 9         MR. STARR:  11.  Thank you, Allyson.

10         MS. WEST:  Sure.

11         MR. STARR:  Here you go.

12         MS. WEST:  Thank you.

13                    (Whereupon, Brannigan Deposition

14                     Exhibit No. 11 was marked for

15                     identification.)

16    BY MR. STARR:

17         Q.   Did you have a chance to look that

18    over, sir?  Did you have a chance to look it

19    over?

20         A.   Yeah.

21         Q.   Okay.  Did you review this document

22    before today's deposition in preparation?

23         A.   No, sir.

24         Q.   Okay.  And do you know if you have ever

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 341

1    seen this document before?

2        A.   No, sir.  I've never seen it.

3        Q.   On this first page -- did I say the

4    Bates number?  Maybe I did.

5        THE COURT REPORTER:  Yes.  Or not --

6        MR. HOLMES:  Not on this one.

7        MR. STARR:  Okay.  Thank you.

8            So, for the record, the Bates is -- for

9    Exhibit 11 is CCSAO-CIU 450 through 456.

10   BY MR. STARR:

11       Q.   This first page of this document, do

12   you see that?

13       A.   Yes, sir.

14       Q.   Do you recognize the handwriting on

15   this page?

16       A.   It could be mine.

17       Q.   It could be yours.  Okay.

18            Do you remember writing any of that

19   information?

20       A.   No.  No, sir.

21       Q.   Okay.  And this is a yes/no question.

22            Do you know what is redacted here?

23       A.   No clue.

24       Q.   Okay.  And then if you flip it over,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 342

1    it's seemingly just a copy of the first page

2    with the bottom part missing; is that correct?

3        A.   Yes, sir.

4        Q.   Okay.

5        A.   It looks like the same thing.

6        Q.   Yeah, without the bottom half.

7        A.   Okay.

8        Q.   And then if you look at the first four

9    pages, they are handwritten notes.

10            Without reading those all right this

11   minute, do you recognize the handwriting on any

12   of those notes?

13       A.   No, sir.

14       Q.   No?

15       A.   No, sir.

16       Q.   Okay.  Do you know if you ever reviewed

17   these notes before today?

18       A.   Did I review these notes before today?

19   No, sir.

20       Q.   Okay.  So this is your first time

21   seeing these notes?

22       A.   That's correct.

23       Q.   Okay.  If you look on the second to

24   last page, 454.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 343

1      A.   Okay.

2      Q.   And I'm going to read it partially into

3   the record -- and correct me if you think it

4   reads something differently, but it says,

5   March 1995, Schalk/Bogucki - Armed with info

6   about Fletcher and detection.  Put Clinton

7   Fletcher photo in array.  Lived in area.  Had

8   arrests -- something -- drugs, robbery, guns.

9           Do you see that?

10     A.   Yes.

11     Q.   Does hearing that there was a photo

12  array done with someone named Fletcher Clinton

13  refresh your recollection at all, sir?

14     A.   Wait.  Say it again.

15     Q.   Yeah.

16          Does hearing that the Detectives

17  Bogucki and Schalk did a photo array with

18  someone named Fletcher Clinton, does that

19  refresh your recollection at all?

20     A.   I never saw it.  I don't know what -- I

21  have no clue what this is.

22     Q.   Okay.  Okay.  I'm just asking if

23  hearing that, does that refresh your

24  recollection in any way at all?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 344

```
 1      A.   No.

 2      Q.   Okay.  You can put that aside for now.

 3   Well, actually, sorry.  Look at page 453.

 4        Do you see there is two -- in the

 5   middle of the page, there is two descriptions?

 6      A.   Descriptions, yes, sir.

 7      Q.   And in the first description, it says,

 8   male, black, 20s, 5'8" to 5'11", slim build,

 9   dark complexion with gun.

10        Do you see that?

11      A.   Yes.

12      Q.   The second one says, male -- male,

13   black, 20s, 5'8" to 5'11", slim build, dark

14   complexion with gun, correct?

15      A.   Yes, sir.

16      Q.   Did you ever learn that the

17   descriptions of the offenders at some point were

18   different than what was in the general offense

19   case report?

20      MS. MORRISON:  Object to the form of the

21   question.

22   BY THE WITNESS:

23      A.   Did I?

24
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 345

```
 1   BY MR. STARR:

 2        Q.    Yeah.

 3        A.    No, sir.

 4        Q.    Okay.  You can put that aside now.

 5              This next one is a longer exhibit, and

 6   we are not going to look at all of it, but I

 7   just will have it as a group exhibit.

 8              And like I said, I'm not going to ask

 9   you about this entire document.  And the Bates

10   is not sequential, but the first page of this

11   exhibit the Bates is CCSAO_Conflicts CIU 76 and

12   the last page is 347, and I will for the record

13   note what page I'm talking about when I talk

14   about it.

15        A.    347?

16        Q.    Yeah.  Do you see that, the last page

17   there?

18              Can you turn to the fourth page, sir?

19   It's a Bates 154 -- I'm sorry.  The fifth page.

20        A.    I'm sorry?

21        Q.    The fifth page, Bates 154.

22        A.    Got it.

23        Q.    Do you see it's like a -- handwritten

24   notes?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 346

```
1      A.   Yes, sir.
2      Q.   It appears to be from someone named Jim
3  Papa.
4           Do you see that name at the bottom?
5      A.   Yes, sir.
6      Q.   Do you know who Mr. Papa is?
7      A.   Yes, sir.
8      Q.   And who is he?
9      A.   An Assistant State's Attorney.
10     Q.   Do you recall working with Mr. Papa on
11 the Fletcher case at all?
12     A.   Not as I sit here right now.
13     Q.   Okay.  And just review this brief note,
14 and let me know when you're done.  I want to ask
15 you --
16     A.   Pardon?
17     Q.   Just read this brief note to yourself.
18     A.   This note?
19     Q.   Yeah.
20     A.   Okay.  A one-page note, correct.
21     Q.   Yeah.
22          Do you -- have you ever seen this note
23 before?
24     A.   No, sir.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 347

```
 1      Q.   Okay.  Do you know if this note was

 2  written and given to you at any point?

 3      A.   Pardon.

 4      Q.   Do you know if this note was given to

 5  you at any point?

 6      A.   Was this given to me?

 7      Q.   Yeah.

 8      A.   Not that I recall.

 9      Q.   Okay.  All right.  You can take a look

10  at 172, which is two pages more into the

11  sequence.

12      A.   What number?  17- --

13      Q.   172.

14      A.   Okay.

15      Q.   And at the very top of the page, there

16  is a little bit of writing.

17      A.   Right.

18      Q.   Do you see that writing?

19      A.   Yeah.

20      Q.   All right.  I'm going to try to read it

21  into the record, and if you think I read it

22  incorrectly, let me know.  It looks like the

23  date is 1/3/20.

24          Do you see that?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 348

1      A.   Yes.

2      **Q.   And then it looks like, JM or Jim spoke**

3   **with Investigator Brannigan.  Brannigan will**

4   **retain -- something -- investigative file --**

5   **something -- it's needed in the future -- if**

6   **it's needed in the future?**

7      MR. COYNE:  So the top of the page has

8   "Confidential - Subject to a Protective Order"

9   that is stamped over a portion of the

10  handwriting, just for the record.

11  BY MR. STARR:

12     **Q.   Did I read that correctly?**

13     A.   Okay.  What now?

14     **Q.   Did I read the note correctly?**

15     A.   I got Brannigan twice.

16     **Q.   Well, why don't you read it into the**

17  **record if you can understand it better than I.**

18     A.   Okay.

19     MR. COYNE:  I'll just note an objection.  Due

20  to the language "Confidential - Subject to a

21  Protective Order" obstructing a portion of the

22  note.

23          Go ahead.

24  BY THE WITNESS:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 349

1    A.   Me read it or you read it?

2    BY MR. STARR:

3    **Q.   Yeah.  If you could -- to the best of**

4    **your ability, if you could read it into the**

5    **record, I would appreciate it.**

6    A.   It looks like 1 -- 1/3/20, JM spoke

7    Investigator -- INV -- Brannigan.  Brannigan

8    until return -- I can't make it out.  I can't

9    make out the rest.  I see INV again.  Something

10   in the future.

11   **Q.   Yeah.  Okay.**

12   A.   On the future or in the future.

13   **Q.   So the way that I --**

14   A.   That's the best that I can do.

15   **Q.   Yeah.  That's fair.**

16   **The way that I read it is, JM or Jim**

17   **spoke with Investigator Brannigan.  Brannigan**

18   **will retain -- something -- investigative**

19   **file -- something -- it's needed in the future.**

20   **Does that make sense to you?**

21   MR. COYNE:  Objection, foundation.

22   BY THE WITNESS:

23   A.   No, sir.

24   BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 350

1      Q.   But -- but when I read it -- when I
2    read it into the record, do you follow along?
3    Does it seem like it says that to you?
4      MR. COYNE:  Same objection.
5    BY THE WITNESS:
6      A.   I -- I'm not sure.  I don't see file.
7    I think you said file or something in --
8      THE COURT REPORTER:  Could you repeat that?
9      THE WITNESS:  He asked -- what did he ask, if
10   I -- what he said, something about a file.  I
11   don't see the word "file" there.
12   BY MR. STARR:
13     Q.   So the second line there is a word that
14   I don't know if it's "US," or I don't know what
15   that first word is.
16     A.   I don't know what that is.
17     Q.   But then it looks like it says, I-N-V,
18   period.
19     A.   Correct.
20     Q.   And then it looks like, F-I-L-E.
21     A.   I don't get that out of it.
22     MR. COYNE:  Objection, foundation as to that
23   interpretation.
24   BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 351

1     **Q.   Do you have a file relevant to this**

2  **case?**

3     A.   No.  No, sir.

4     **Q.   Okay.**

5     A.   No, not at all.

6     **Q.   If that does say "file," do you know**

7  **why someone would write a note about you**

8  **retaining the file in 2020?**

9     MR. COYNE:  Objection, foundation,

10  speculation.

11     MS. MORRISON:  Join.

12  BY THE WITNESS:

13     A.   No clue what that's about.

14  BY MR. STARR:

15     **Q.   Well, let me ask you this:  Between**

16  **2015 and when you were assigned to this case in**

17  **2020, did you work on this case at all?**

18     A.   I only remember this case doing a few

19  lookups and doing a -- our girl here,

20  Ms. Friend; our friend, Ms. Friend.

21     **Q.   Who were the lookups you did?**

22     A.   I don't recall.

23     **Q.   And --**

24     A.   I remember them floating around.  I --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 352

1   somebody else could have done them, but this --

2   the only thing I remember doing regarding this

3   case, now that my memory has been refreshed with

4   the e-mail, is down there -- in the case, we had

5   to go find this guy or we thought -- I forget

6   who it was.

7       **Q.   Terry Rogers.**

8       A.   Terry Rogers may or may not have been

9   in Mississippi and the interview of our friend,

10  Ms. Friend.

11      **Q.   Well, I'll represent to you that these**

12  **are State's Attorney notes that we are looking**

13  **at right now.**

14      A.   Well, I don't know what they are.

15      **Q.   No.   I'm telling you that's what**

16  **they've been produced as.**

17      A.   Okay.

18      **Q.   And I'm --**

19      MR. HOLMES:  And I'll object to counsel's

20  characterization in that there has been a

21  document production, but I'm not aware of any

22  such characterization of individual notes and

23  who made them by our office.

24      MR. STARR:  Well, I could be wrong, but I --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 353

1   my understanding is these were produced subject

2   to subpoena and that these are State's Attorney

3   files that were produced to us including

4   handwritten notes.  So I don't know if that

5   clarifies the record or not.

6   BY THE WITNESS:

7       A.   I'm not sure I'm following any of you

8   characters right now.

9   BY MR. STARR:

10      **Q.   Fair enough.**

11           **I'm just wondering if you have any idea**

12  **what this could be referring to.**

13      A.   No.

14      **Q.   Why in 2020 the State's Attorney -- a**

15  **State's Attorney would be suggesting that you**

16  **would have any sort of documents related to this**

17  **case --**

18      MR. COYNE:  Objection, foundation and

19  speculation.

20      MR. HOLMES:  Same objection as noted a moment

21  ago concerning counsel's characterization of the

22  document and the --

23      THE WITNESS:  You talk faster than him.

24           I don't have any clue about any of it.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 354

```
 1   BY MR. STARR:
 2       Q.   Did anybody reach out to you in 2020
 3   about the Fletcher case?
 4       A.   No.
 5       Q.   And it would be -- after you were done
 6   investigating Ms. -- or sorry.  Strike that.
 7            After you were done interviewing
 8   Ms. Friend, do you remember anybody
 9   communicating anything to you in this case until
10   you were informed you got a subpoena?
11       A.   As I sit here right now, I don't
12   remember anything about it other than our
13   friend, Ms. Friend.  I mean, that's --
14       Q.   Okay.  I want to flip ahead to page
15   230, on the bottom of 230.  And I will indicate
16   to you that this is a duplicate of the document
17   we just looked at.  I think it's a better copy,
18   and I want to ask you, do you think it says
19   "investigative file" on this copy?
20       A.   Where are we at?
21       Q.   230.
22       MR. COYNE:  Yeah.  This is 230.  So you want
23   to keep going.
24       THE WITNESS:  Maybe I better look back.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 355

1      MR. COYNE:  It's not in order.  No.  That's
2  all right.  So keep going.
3      THE WITNESS:  There it is.
4      MR. COYNE:  There it is.  Right there.
5      THE WITNESS:  Okay.
6      MR. COYNE:  Does it -- 230?  Does that say
7  230?
8      THE WITNESS:  230, yeah.
9  BY MR. STARR:
10     Q.    It seems like it's a better copy to me.
11           Do you see --
12     A.    This is better than the other one.
13     Q.    Yeah.
14           Do you see the same information that we
15  were looking at --
16     A.    Yeah.
17     Q.    -- a moment ago?
18     A.    Yeah.  Branni- -- someone spoke --
19  Brannigan.  Brannigan will return us [sic].
20  It -- oh, I think I can make out "investigative
21  file."  I can't read the rest of it.
22     Q.    Okay.
23     A.    Something in the future.
24     Q.    And it does appear to say

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 356

1    "investigative file" on that second line,

2    though, right?

3        A.   Pardon me?

4        Q.   It does appear to say "investigative

5    file"?

6        A.   File, yeah.

7        Q.   And do you have any idea why the

8    State's Attorney -- a State's Attorney would

9    think that you have the investigative file in

10   this case?

11       MR. COYNE:  Objection, foundation,

12   speculation.

13   BY THE WITNESS:

14       A.   Yeah, because we --

15       MR. HOLMES:  I'll just object to counsel's

16   characterization of the document as to who wrote

17   the notes, once again.

18       THE WITNESS:  Okay.  What did you say?

19       MR. HOLMES:  Mr. Brannigan, I'm just

20   objecting to Mr. Starr's characterization of the

21   author of the handwritten notes, because that

22   hasn't been established just on the basis of the

23   production --

24       THE WITNESS:  Okay.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 357

1    MR. HOLMES:  -- by our office of this

2  document.

3    THE WITNESS:  Okay.  So answer this as best I

4  can.

5  BY MR. STARR:

6    Q.  **Yeah, the best you can.**

7    A.  Okay.  What's the question now?

8    Q.  **The question is, and do you have any**

9  **idea why someone at the State's Attorney's**

10  **Office made notes suggesting that you had the**

11  **investigative file in 2020?**

12    A.  It may have been in our office

13  somewhere.  It may have been in another State's

14  Attorney's Office.  I don't know what they

15  meant, their file, or the State's Attorney's

16  file.  But oftentimes we would transport

17  documents and files back and forth to the CIU

18  offices down at the Daley Center.  It would be

19  nothing more than a mail run, for lack of a

20  better term.

21    Q.  **So you may have had the investigative**

22  **file in 2020; is that correct?**

23    A.  I may have had it to deliver.  And I

24  don't know if it was a State's Attorney file,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 358

1   the investigator's file, or what it was.  I -- I

2   could not speculate on anything.

3       Q.   And you don't have that file today; is

4   that correct?

5       A.   I don't know what kind of file -- I

6   don't know what file it is, and I know I don't

7   have any file.

8       Q.   Okay.  And let's look at another page

9   in this packet, 239 at the bottom.

10      MR. COYNE:  Four pages more.

11      THE WITNESS:  239?

12      MR. STARR:  Yeah.

13      MR. COYNE:  It's an investigator request

14  form.

15      THE WITNESS: 239.  Okay.  Okay.  Okay.

16  Okay.

17  BY MR. STARR:

18      Q.   Do you see that?

19      A.   Yep, there it is.

20      Q.   And that's a -- I think we were -- you

21  were asked some questions earlier and you gave

22  some testimony about an investigator request

23  form.

24              This is the type of form that you

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 359

1    received when you were assigned a case; is that

2    correct?

3        A.   That's correct.

4        Q.   Okay.  There is not a previous

5    investigator assigned there.

6             Do you see that?  It's blank?

7        A.   Previous.  That is blank, yeah.

8        Q.   And the date of this is 8/29/14, which

9    is August of 2014, right?

10       A.   Correct.

11       Q.   Do you know if you received this

12   document?

13       A.   Did I what?

14       Q.   Did you ever receive this document from

15   State's Attorney Galassini or however you say

16   her name?

17       A.   Did I ever receive this document?

18       Q.   Yeah.

19       A.   No.  I have never seen this document.

20       Q.   Okay.

21       A.   Or I have never seen this before.  It's

22   obviously not been assigned to anybody or

23   anything.

24       Q.   The type of request is to locate a

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 360

 1    **victim witness named Terry Rogers, right?**

 2       A.    Oh, yeah, locate a witness named Terry

 3    Rogers.

 4       **Q.    Okay.  And you testified you may have**

 5    **tried to locate him at some point based on that**

 6    **e-mail we looked at, right?**

 7       A.    Yeah.  I -- it must have.  Hold on.  I

 8    don't want to speculate.  I would guess that

 9    this -- yeah.  All right.  Go ahead.

10       THE COURT REPORTER:  I would guess?

11    BY THE WITNESS:

12       A.    I would guess that this may have been

13    the document that sent me out after Terry

14    Rogers, but I don't know that for a fact.

15    BY MR. STARR:

16       **Q.    Okay.  You can flip to the next page,**

17    **241.**

18       A.    Okay.

19       **Q.    And this is another investigator**

20    **request form, correct?**

21       A.    Yep.

22       **Q.    And your name is on this form, correct?**

23    **It says, "previous investigator assigned, Danny**

24    **Brannigan."**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 361

 1     A.   Yep.

 2     Q.   Okay.  And this is a request to locate

 3  a witness by the name of Sheenee Friend,

 4  correct?

 5     A.   Correct.

 6     Q.   In the explanation summary, it says,

 7  "Locate and interview witness regarding attached

 8  affidavits."  And then I think it says LNA for

 9  last known address is 52 North Parkside,

10  Chicago, Illinois.

11          Do you read that that way?

12     A.   Wait.  Okay.  Yeah.

13     Q.   And it also indicates that she is a

14  defense witness on this form, too, under type of

15  request, right?

16     A.   That she is what?

17     Q.   A defense witness.

18     A.   Correct.

19     Q.   Okay.  Did you receive this document

20  when you were assigned this case?

21     A.   I don't know.

22     Q.   Does the fact that it says "previous

23  investigator assigned" indicate to you that this

24  is a new request for someone to go out and talk

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 362

1    to Ms. Friend after you already interviewed her?

2        A.    Not necessarily, no.

3        Q.    **What does that previous investigator --**

4        A.    It might -- it might be I was -- go

5    ahead.

6        Q.    **No.  Go ahead.  You're right.  I**

7    **interrupted you.**

8        A.    Does this indicate what?

9        Q.    **Does this indicate to you that this is**

10   **a new request for a new investigator to go out**

11   **and interview Ms. Friend?**

12       A.    I don't know who was assigned this.

13   There is no name of who was assigned on the

14   bottom.

15       Q.    **Right.  But in the category that says**

16   **"previous investigator" is your name.**

17             **Do you see that?**

18       A.    Yes.  I see that.

19       Q.    **Does that tell you that this is a new**

20   **request for a new investigator?**

21       A.    I don't know what it would say.  It

22   could be I am one of the investigators assigned.

23   They got to fill in the blanks or it don't

24   get -- it doesn't get processed.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 363

1    Q.   So that doesn't indicate anything in
2    particular there?
3    A.   No.
4    Q.   Okay.  Let's look at 242 -- or 247, the
5    next page.
6         It's another investigator request form,
7    correct?
8    A.   Yeah.
9    Q.   This one is to locate a witness, a
10   defense witness, by the name of Edward Cooper.
11        Do you see that?
12   A.   Yep.
13   Q.   And it says under the explanation
14   summary, "Locate and interview witness regarding
15   attached affidavit."  Do you see that?
16   A.   Yes, sir.
17   Q.   And this one says, "Previous
18   investigator assigned, Danny Brannigan."
19   A.   Same thing.
20   Q.   Yeah.
21   A.   It could have been me.  It could be
22   somebody else --
23   Q.   Do you --
24   A.   -- that actually went out on this.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 364

1     Q.   Do you remember being assigned to

2   interview --

3     A.   I remember being assigned --

4     THE COURT REPORTER:  Sorry.  Do you

5   remember --

6   BY MR. STARR:

7     Q.   -- being assigned to interview Edward

8   Cooper?

9     A.   Not specifically, no.

10    Q.   Do you know if you ever did interview

11  Edward Cooper?

12    A.   Did I ever interview him?  I don't

13  believe so, no.

14    Q.   And then the last one is the next page,

15  which is a little hard to see in the font, but

16  it says -- and it's been Bates'd 250.

17    A.   Yes, sir.

18    Q.   And, again, your name is on here as the

19  previous investigator assigned, correct?

20    A.   Correct.

21    Q.   And, again, this is an investigator

22  request form?

23    A.   Correct.

24    Q.   And the request is to locate another

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 365

```
 1    defense witness by the name of Emmett Wade.

 2            Do you see that?

 3       A.   Correct.

 4       Q.   And then in the explanation summary it

 5    says, "Locate and interview witness regarding

 6    attached affidavit."

 7            Do you see that?

 8       A.   Correct.

 9       Q.   Do you remember being assigned to

10    investigate Emmett Wade?

11       A.   No.  I may have, but I don't remember.

12       Q.   Did you ever interview Emmett Wade?

13       A.   Not that I recall, no.

14       Q.   Did seeing these four different forms,

15    three of them having your name on them, one

16    not --

17       A.   Mm-hmm.

18       Q.   Do any of these forms refresh your

19    recollection of anything you did on this

20    investigation?

21       A.   No.  Just that these people were all

22    part of the case, but the only one I remember

23    working on was our friend, Ms. Friend.

24       Q.   Okay.  And then there is one more I
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 366

```
 1    neglected.  I thought that was the last one.
 2    There is actually one more in the same sequence.
 3    It's Bates 257.
 4              And this is an investigator request
 5    form, correct?
 6        A.   Yes, sir.
 7        Q.   And this is a previous investigator
 8    listed -- or assigned is listed as Danny
 9    Brannigan, right?
10        A.   Right.
11        Q.   And this is to interview a witness, but
12    "defense" is crossed out.
13              Do you see that?
14        A.   Correct.
15        Q.   And that witness is named Terry Rogers,
16    a/k/a June Rogers, correct?
17        A.   Correct.
18        Q.   And the explanation summary just gives
19    an address in Mississippi, correct?
20        A.   Correct.
21        Q.   And I think I have already asked you
22    this in some form, but seeing this document,
23    does that refresh your recollection of whether
24    or not you ever interviewed Mr. Rogers?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 367

1      A.   No.  I don't believe I interviewed

2   Mr. Rogers.

3      **Q.   And you referred to the James Fletcher**

4   **case as the "big lips caper"; isn't that**

5   **correct?**

6      A.   That is correct.

7      **Q.   And do you remember using that as**

8   **the --**

9      A.   Yeah.

10     **Q.   -- the term that you referred to him**

11  **as --**

12     A.   Yeah.

13     **Q.   Why did you call this case the "big**

14  **lips caper"?**

15     A.   That was --

16     MR. HOLMES:  Can we just lay the foundation

17  of when the witness is alleged to have

18  previously referred to him as such?

19     MR. STARR:  I mean, I asked him if he --

20  that's what he referred to and he said yeah.

21     MR. HOLMES:  But I would like to establish

22  when, how, or where.

23     THE WITNESS:  Okay.  Say it again.

24     MR. HOLMES:  The attorney is asking you a

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 368

1    question about your recollection of an event

2    that he hasn't described a date, a context, or a

3    venue or forum.  So he is asking if you remember

4    something that he hasn't described except using

5    three words, and so it wasn't clear to me what

6    counsel was asking about.

7           But if you understand, Mr. Brannigan,

8    you can answer.

9    BY THE WITNESS:

10       A.   Okay.  Start over.

11       MR. STARR:  Could you read the question back?

12               (Whereupon, the record was read

13                as requested.)

14   BY MR. STARR:

15       Q.   **Or why did you call this the "big lips**

16   **caper"?**

17       A.   Because Fletcher has big lips, and

18   somewhere along the line I remember that one of

19   his -- I don't know if it -- I can't remember

20   where it came from, but Fletcher said that he

21   couldn't be the offender because he's got big

22   lips and nobody would have missed him.  I think

23   that's how it came about, and he has big lips.

24       Q.   **Where did you learn that information,**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 369

1   sir?

2       A.   I can't tell you.  I wouldn't remember.

3   I just remember that came up.  Here.  You can

4   see there was a bit of paper going back and

5   forth, and somewhere along the line I remember

6   hearing it.  Fletcher said that -- something to

7   the effect of he -- he couldn't be the bad guy

8   because he's got big lips, and somebody would

9   have picked him out.  And he has big lips, so

10  hence the "big lips caper."

11      Q.   **When you say there was a bunch of paper**

12  **going back and forth, what are you referring to?**

13      A.   Like those four requests to look up --

14  the four or five, whatever they were.

15      Q.   **Did you see anything on -- anywhere on**

16  **those papers to indicate that the case was**

17  **called the "big lips caper"?**

18      A.   Pardon?

19      Q.   **Was there anything in those -- maybe --**

20      A.   No.  You asked me.

21      THE COURT REPORTER:  Sorry?

22  BY MR. STARR:

23      Q.   **So you just said that there was paper**

24  **going back and forth that's --**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 370

1    A.    Right.  On the case.

2    **Q.    Yeah.**

3    A.    And I'm aware of the case.

4    **Q.    Yeah.**

5    A.    And I was assigned eventually to locate

6    our friend, Ms. Friend, and in reviewing

7    documents or talking to somebody, I remember

8    something coming up that Fletcher claimed he

9    couldn't be the offender because he had big

10   lips.

11   **Q.    But when you said that there was paper**

12   **going back and forth, you were referring to**

13   **investigator request forms?**

14   A.    Yeah, investigator request forms.  And

15   I remember that all that paper was around, and I

16   can't remember -- I don't think we went right

17   out.  Look at the dates again.  I don't believe

18   we went right out to go look for him.  It may

19   have got put on a back burner or something.

20   **Q.    But there's nothing in these four**

21   **investigative -- five investigative reports to**

22   **indicate that anyone called the case the "big**

23   **lips caper," is there?**

24   A.    I didn't -- I didn't say there was

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 371

1   something in this paperwork.

2        **Q.   Oh, that was --**

3        A.   I remember a conversation that part of

4   the -- I guess you could say alibi -- was that

5   Fletcher said he had big lips and nobody would

6   mistake that.

7        **Q.   So you didn't see that in a document.**

8   **You learned that in a conversation?**

9        A.   That's correct.  I've said it a couple

10  times.  It was a conversation.

11       **Q.   Okay.  Who was the conversation with?**

12       A.   I don't -- I don't remember.  I just

13  remember it was out there.

14       **Q.   Could it have been a conversation you**

15  **had with Edward Cooper?**

16       MR. COYNE:  Objection, foundation,

17  speculation.

18  BY THE WITNESS:

19       A.   I don't know.

20  BY MR. STARR:

21       **Q.   If I told you that Edward Cooper in the**

22  **civil case in his deposition like you are giving**

23  **today testified that the detectives told him**

24  **"remember the big lips" when he went to the**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 372

```
 1   lineup, would that possibly refresh your
 2   recollection as to where you learned the "big
 3   lips" reference?
 4       A.   I have -- I have no idea where that
 5   came from.
 6       Q.   Could it be that?
 7       A.   No.
 8       MS. WEST:  Speculation.
 9   BY THE WITNESS:
10       A.   I never talked to any of the detectives
11   involved in the case.
12   BY MR. STARR:
13       Q.   Well, I guess I didn't -- I wasn't
14   representing the detectives.  I was talking
15   about Mr. Cooper himself.
16            Mr. Cooper has testified that the
17   police told him to remember the big lips when he
18   went to view a lineup back in 19- -- or back in
19   2002, and I'm wondering if that information is
20   where you got the big lips from.
21       MS. WEST:  Objection, foundation,
22   speculation.
23   BY THE WITNESS:
24       A.   No clue.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 373

```
 1   BY MR. STARR:
 2       Q.   Well, if I represent to you that I'm
 3   not aware of any other document that contains
 4   information about Mr. -- Mr. Fletcher's big
 5   lips --
 6       A.   Say it again.
 7       Q.   If I represent to you that I'm not
 8   aware of any other document that contains
 9   information about Mr. Fletcher's big lips other
10   than your handwritten document -- note --
11       A.   Yeah.
12       Q.   -- and Mr. Cooper's testimony in this
13   case, can you point me to any other place where
14   you may have learned about the "big lips caper"?
15       MR. COYNE:  Objection, form, foundation,
16   asked and answered, and requires speculation.
17       MS. WEST:  And it misstates the evidence in
18   the record.
19   BY THE WITNESS:
20       A.   Okay.  Somewhere in a conversation
21   about the case or seeing a photo or a
22   combination of the two or seeing the photo it
23   was something about -- and that's how I said
24   it -- something about Fletcher having big lips.
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 374

1  Either he couldn't -- he -- he is the one or he

2  couldn't be the one because he has big lips,

3  either way.  I can't remember exactly what it

4  was, hence the name "big lips."

5  BY MR. STARR:

6      Q.    **Do you remember asking whether or**

7  **not -- strike that.**

8          **Do you remember whether you asked**

9  **Ms. Friend if she recognized Ms. Fletcher's big**

10 **lips?**

11     A.    No, I did not.

12     Q.    **Okay.  On the bottom of this same page**

13 **that we were just looking at, 283 --**

14     A.    Wait.  What now?

15     Q.    **283.**

16     A.    Who?

17     Q.    **283.**

18     A.    Okay.

19     Q.    **This note on the bottom -- you are**

20 **looking at the redacted one, I think.  That's**

21 **the wrong one.**

22     MR. COYNE:  This one.

23          This is the one, right?

24     MR. STARR:  Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 375

1      MR. COYNE:  This is the one.

2      THE WITNESS:  Okay.

3      MR. COYNE:  283.

4      THE WITNESS:  Okay.

5      MR. COYNE:  So do you want to -- do you want

6   to just look at mine?

7      THE WITNESS:  Okay.

8      MR. COYNE:  The bottom part?

9      MR. STARR:  Yeah, the bottom part.

10      MR. COYNE:  Why don't you look at the bottom

11   part.

12      THE WITNESS:  Okay.

13   BY MR. STARR:

14      **Q.   It says, "Have contacted MS.  Will**

15   **cooperate as expected."**

16         **Do you see that?**

17      A.   Yep.  Yes, sir.

18      **Q.   Does that indicate to you that you**

19   **had -- you had at that point contacted someone**

20   **in Mississippi to find Mr. Rogers?**

21      MR. COYNE:  I just note an objection to

22   foundation.

23   BY THE WITNESS:

24      A.   Yeah.  Some -- it -- that seems -- that

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 376

```
 1    appears to be that there is someone in
 2    Mississippi.  I was given a contact person in
 3    Mississippi, if I had to go down there.
 4    BY MR. STARR:
 5        Q.    That was my next question.
 6              So that indicates to you that someone
 7    in Mississippi would cooperate with you or that
 8    Mr. Rogers would cooperate?
 9        A.    No.  That someone in Mississippi would
10    cooperate to go find.
11        Q.    Okay.  And then the -- back to the "big
12    lips caper," was that what internally at the
13    State's Attorney's Office you referred to this
14    case now as?
15        A.    Wait.  What?
16        Q.    Did you refer to this case internally
17    within the State's Attorney's Office as --
18        A.    That's what I referred to it.  I don't
19    know that anybody else said it.  I just know
20    that I referred to it.
21        Q.    Do you know if this note went -- who
22    this note went to?
23        A.    Which note are you --
24        Q.    The same one we were just looking at.
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 377

1          MR. COYNE:  This one right here.

2               Are you talking about the top note?

3     BY MR. STARR:

4          Q.    I'm talking about essentially the whole

5     page.  I think you testified that you wrote it.

6               Do you know who it went to --

7          A.    No.  I --

8          Q.    -- or who you gave it to?

9          A.    This was probably a note to myself and

10    then flipped to a State's Attorney or something.

11    It -- because I see here it says Edward Cooper.

12    I think he is the bread truck driver.  Okay.  It

13    tells me that.  See?  He -- one of the guys

14    involved.  Dixon, Fletcher, it's on the --

15    that's the name of the case, Fletcher.  I don't

16    know what that phone number is.  And then

17    possibly Mississippi or go to Mississippi.  If I

18    have to go to Mississippi, I have got a contact.

19    That's a note to myself, probably.

20         Q.    Yeah.  And so seeing the "big lips"

21    reference next to the Edward Cooper, does that

22    indicate to you anything that maybe Mr. Cooper

23    told you?

24         MR. COYNE:  Objection, foundation,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 378

```
 1    speculation.
 2    BY THE WITNESS:
 3        A.   No, not at all.  I don't recall that I
 4    ever talked to Mr. Cooper or ever found him.
 5    BY MR. STARR:
 6        Q.   I will represent to you that that's his
 7    current address still to this day.
 8             Do you remember going out to that
 9    address?
10        A.   Going -- going there to Mr. Cooper?
11        Q.   Yeah.
12        A.   No.  I do not recall --
13        Q.   Okay.
14        A.   -- going to Mr. Cooper.
15        Q.   And then turning to the last page of
16    this packet, it's 347.  Is that the last page of
17    that one?
18        A.   Which one?
19        MR. STARR:  347.  I thought I had another
20    copy.
21        MR. COYNE:  No, there isn't.
22        MR. STARR:  Okay.  Then --
23        MR. COYNE:  284 --
24        MS. WEST:  347?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 379

1        MR. STARR:  Yeah.

2        MS. WEST:  This?

3        MR. STARR:  Yeah.

4        MR. COYNE:  And 347?

5        MS. WEST:  Just the first page of that

6   affidavit?

7        MR. STARR:  Yeah.

8        MS. WEST:  Okay.

9        MR. COYNE:  Which one do you want?

10       MR. STARR:  It's the last page in the packet.

11       MR. COYNE:  Okay.  Got it.  Got it.

12       MR. STARR:  And I do have an extra one of

13   these if you want it.

14       THE WITNESS:  Do I have this now?

15       MR. COYNE:  Yeah.  Here it is.  It's your

16   last -- it should be the last page of that

17   packet.

18       MR. COYNE:  Hang on here.

19           This is, what, Group Exhibit 12,

20   correct?

21       MS. WEST:  Yeah.

22                   (Whereupon, Brannigan Deposition

23                    Exhibit No. 12 was marked for

24                    identification.)

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 380

```
 1        MR. COYNE:  12.  This is 12.

 2        THE WITNESS:  Right.  Here is part of it.

 3        MR. COYNE:  Yeah, here.  Give me -- pardon my

 4   reach.  This right here.

 5        THE WITNESS:  Okay.

 6        MR. COYNE:  That's the page he is on.

 7        THE WITNESS:  All right.

 8   BY MR. STARR:

 9        Q.   All right.  Let me know when you've had

10   a chance to review that one page, 347.

11        A.   I've got it right here.

12        Q.   Okay.  And so this is a -- it appears

13   to be the first page of that declaration that we

14   looked at in Exhibit No. 2, correct?

15        A.   Correct.

16        Q.   And then there is what appears to be a

17   Post-It note that was on this first page that's

18   copied on -- into it.

19             Do you see that?

20        A.   Yeah.

21        Q.   In the top left-hand corner?

22        A.   Yes, sir.

23        Q.   Okay.  Do you see that -- those -- is

24   this your handwriting, sir?
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 381

1    A.   I'm sorry?

2    **Q.   Is this your handwriting?**

3    A.   It appears to be my handwriting, yes,

4  sir.

5    **Q.   Is it DB?**

6    A.   And my initials, yes, sir.

7    **Q.   Yeah.**

8         **Now, do you know what the first three**

9  **initials there or the first two initials are?**

10   A.   Yes, sir.

11   **Q.   What are they?**

12   A.   N, G as in George, A.

13   THE COURT REPORTER:  A, you said?

14   THE WITNESS:  A as an apple.

15 BY MR. STARR:

16   **Q.   And who does that indicate to you?**

17   A.   That would -- that would be Nancy

18 Galassini.  I believe she --

19   **Q.   Okay.  So you were writing her a note?**

20   A.   Just, yeah, letting her know that we --

21 we found this witness.

22   **Q.   Okay.  And so you write, "Fletcher**

23 **a/k/a big lips caper.  Another new Friend, pun**

24 **intended.  Rpt to follow, DB"; is that correct?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 382

1      A.   That's correct.

2      Q.   And it looks like it's dated at the top

3   there of the handwritten Post-It note, 3/5/15.

4           Do you see that?

5      A.   That's correct.

6      Q.   And that would be the day that you got

7   the statement from -- the interview of

8   Ms. Friend, correct?

9      A.   Yes, sir.

10     Q.   And so do you -- did Ms. Adduci know

11  what the "big lips caper" was?

12     MR. COYNE:   Objection, speculation.

13  BY THE WITNESS:

14     A.   How could she not?  It says Fletcher.

15  BY MR. STARR:

16     Q.   I don't know.

17          I mean, do you know?

18     A.   It says Fletcher.  I think she would

19  know.

20     Q.   She --

21     A.   I think she would know.  Maybe she

22  didn't.  But I would assume she would, because I

23  put his name there, Fletcher, a/k/a "big lips."

24     Q.   Prior to this -- writing this note, had

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 383

1   you ever talked to Ms. Adduci and referred to

2   the Fletcher case as the "big lips caper"?

3       A.   I may have.  I don't recall.

4       Q.   And do you recall Ms. Adduci ever

5   referring to the Fletcher case as the "big lips

6   caper"?

7       A.   No.  I don't -- I don't recall.  It's

8   pretty much my -- my term for the case.

9       Q.   And was there any connotation that you

10  could think of -- or strike that.

11           Is there any connotation that you

12  intended when you dubbed the Fletcher

13  post-conviction investigation the "big lips

14  caper"?

15      MR. COYNE:  Objection, form.

16  BY THE WITNESS:

17      A.   Any what?

18  BY MR. STARR:

19      Q.   Any connotation that you were intending

20  by that term?

21      A.   Any what?

22      MR. COYNE:  Connotation.

23  BY MR. STARR:

24      Q.   Was there any connotation --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 384

1      A.   Oh, connotation?

2      **Q.   Yeah.**

3      A.   He had big lips.

4      **Q.   Okay.  Anything beyond that?**

5      A.   If he had a big -- if he had a big

6    head, I might have called him bucket head.

7      **Q.   Okay.  Anything beyond that?**

8      A.   No.

9      **Q.   You are -- you are familiar with the**

10   **fact that the African-American black community**

11   **has for years been made fun of because of the**

12   **size of their lips, correct?**

13     MR. COYNE:  Objection, form and foundation

14   and speculation.

15   BY THE WITNESS:

16     A.   It doesn't bother me one way or the

17   other.

18   BY MR. STARR:

19     **Q.   I'm --**

20     A.   Those are Fletcher's words as far as I

21   remember.

22     **Q.   Okay.  But you don't remember where you**

23   **learned that, though, right?**

24     A.   No.  I just remember --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 385

 1      MR. COYNE:  Objection, asked and answered.

 2   BY THE WITNESS:

 3      A.   -- it came up somewhere in conversation

 4   and he has big lips, and if I'm giving a

 5   description of him, I'd say big lips.  And I

 6   think -- well, never mind.

 7   BY MR. STARR:

 8      Q.   **Do you know if any of the witnesses**

 9   **gave the description of the shooter as someone**

10   **who had big lips?**

11      A.   The only one I remember talking to is

12   Friend, and -- Friend, our friend.  And, again,

13   I don't remember discussing that with her.

14      Q.   **That's fair.**

15      A.   I don't remember discussing any other

16   witnesses or talking to any other witnesses.

17      Q.   **But based on your review of the trial**

18   **file, do you remember learning at any point in**

19   **time that any of the witnesses at any point in**

20   **time ever described the shooter in the Willie**

21   **Sorrell homicide as having big lips?**

22      A.   I didn't talk to any other witnesses as

23   far as I know other than Ms. Friend.

24      Q.   **I'm not asking about whether you talked**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 386

1   to them.

2           I'm asking when you reviewed the trial

3   file whether or not you learned it.

4       A.   I don't remember where I learned it,

5   and I didn't read the whole trial file, but

6   somewhere I picked up on the big lips and the

7   fact the photo -- and he's got big lips in the

8   photo.

9       Q.   It's late in the day, and I think

10  we're talking --

11      THE COURT REPORTER:  Sorry.  There was a

12  horn.  Could you repeat that?

13  BY THE WITNESS:

14      A.   Somewhere in reviewing the file or the

15  documents I see a photo of Fletcher where

16  Fletcher has big lips.  There's somewhere I

17  picked up on it.  That's all.

18  BY MR. STARR:

19      Q.   And I think it's late in the day, and

20  we are talking past each other.

21          What my question is, is did you at any

22  point in reviewing the file ever -- ever learn

23  that any of the witnesses ever said that the

24  shooter had big lips?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 387

1      A.   No.  I don't recall that.

2      MR. STARR:  Okay.  I just have a few more

3   questions for you, and we will get out of your

4   way.

5                    (Whereupon, a discussion was had

6                     off the record.)

7   BY MR. STARR:

8      Q.   Sir, during your McIntosh deposition,

9   you testified that you recalled certain

10   instances in which you believed -- are you

11   following along?

12      A.   Say that --

13      Q.   Yeah.  Let me just start again.  You

14   can put that document aside.

15           When you were previously deposed in the

16   McIntosh case, you testified that you recall

17   certain instances in which you believe based on

18   your investigation with the State's Attorney's

19   Office that there was a person who was innocent

20   that you had -- in a case that you were

21   investigating.

22           Do you recall that testimony?

23      MR. COYNE:  Objection.  First of all, I want

24   to renew my motion for a protective order,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 388

1    number 1.  Number 2, I do believe that the

2    witness in all fairness should be given a copy

3    of his transcript if he is going to be asked

4    questions about his testimony.

5        MR. HOLMES:  Well, this is -- this is clearly

6    outside the scope of what her Honor outlined in

7    her order resolving Ms. Coyne's motion.

8        MR. STARR:  No.  It's not.

9        MR. HOLMES:  It clearly is, because what she

10   stated was the -- what her Honor stated in the

11   order was that questions concerning the McIntosh

12   deposition transcript would be permitted to the

13   extent they were asking about policies and

14   procedures of the office, which that question

15   does not.

16       MR. STARR:  And I disagree with that.

17       MR. HOLMES:  And it's clearly outside the

18   scope.

19       MR. STARR:  No.  It's not.

20       MR. COYNE:  Can you give me one -- I just

21   need a five-minute break.

22       MR. STARR:  Okay.

23       MR. COYNE:  Because I need to take a look at

24   that, and --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 389

 1      MR. STARR:  Okay.

 2                    (Whereupon, a short break was

 3                     taken.)

 4                    (Whereupon, the record was read

 5                     as requested.)

 6      MR. COYNE:  And before the witness answers,

 7  in reference to the Court's ruling on July 8,

 8  2024, Docket 158, in ruling on our motion for a

 9  protective order filed on behalf of

10  Mr. Brannigan, the Court denied our motion for a

11  protective order, but did so with respect to the

12  following limitation:  The Court reaches -- and

13  I'm quoting from the Court's order.

14          "The Court reaches this conclusion with

15  the understanding that Fletcher will not overly

16  rely on the McIntosh deposition, but will

17  instead use it only" -- I emphasize the word

18  only -- "as necessary to reference Brannigan's

19  prior testimony about CCSAO policies and

20  practices."

21          It's my interpretation, Sean, with all

22  due respect that your question is outside the

23  scope of that limitation that the Court placed

24  on this deposition.  I'm happy to hear your

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 390

1  response, but unless persuaded otherwise, I'm

2  going to instruct him not to answer in reliance

3  upon the Court's order.

4      MR. STARR:  Wasn't there more to that?  Do

5  you -- did you cut that short there?

6      MR. COYNE:  No.  I just -- I read from the

7  final paragraph before the conclusion.

8      MR. STARR:  Read that last sentence for me

9  again if you don't mind.

10      MR. COYNE:  Sure.

11         "The Court reaches this conclusion with

12  the understanding that Fletcher will not overly

13  rely on the McIntosh deposition, but will

14  instead use it only as necessary to reference

15  Brannigan's prior testimony about CCSAO policies

16  and practices."

17      MR. STARR:  Okay.  So you're going to

18  instruct him not to answer?

19      MR. COYNE:  Pursuant to the Court's order,

20  I'm going to instruct him not to answer that

21  question.

22      MR. STARR:  I'm going to state for the record

23  that it's unusual to rely on a motion that you

24  lost.  But understanding that you are, I can't

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 391

1   force an answer.  And given it's Friday at 4:40,

2   I doubt that the judge is available.  I'm going

3   to reserve my right to bring him back and ask

4   him these questions.  And I'm going to go

5   through my questions, and you can make that

6   objection and make that instruction.

7           I can't force him to answer the

8   questions.  I mean, I think I made it clear that

9   we intended to ask him some questions about his

10  prior testimony.  I think the distinction that

11  was really made that was, like, the big

12  distinction had to do with asking him about the

13  McIntosh case, and I'm not asking about the

14  McIntosh case.  I'm asking about his time --

15  during his time at the State's Attorney's Office

16  and his practices and the policies that governed

17  them.  So I think that my questions are fair

18  questions.

19      MR. COYNE:  Sure.

20          In response to that, the motion that I

21  filed was not just based on the McIntosh case.

22  It was based on referencing any other cases

23  other than the one at issue pursuant to Rule 26.

24  So I'm relying on -- and your disagreement may

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 392

1  not so much be with me, Sean, as with Judge

2  Woods.  That's her language.  I am relying upon

3  the unequivocal language in her order and

4  instructing him not to answer.

5      MR. STARR:  No.  My dispute is with you.

6  It's with your interpretation of what that

7  means.  I mean, she didn't lay out the set of

8  questions I can ask.  I mean, I'm asking

9  questions about his understanding of policies

10  and his practices at the State's Attorney's

11  Office.  I think it's well within the confines

12  of her denial of your motion, but, again, as I

13  said, like, I can't force your client to

14  testify.  And you can instruct him all you want.

15  And, you know, if the judge deems your

16  instructions to be improper, then, you know, and

17  grants me leave to bring him back, I'm going to

18  bring him back.

19      MR. COYNE:  Do what you got to do.

20      MR. STARR:  Yeah.

21      MR. COYNE:  Thank you.

22  BY MR. STARR:

23      Q.  **Are you going to take your attorney's**

24  **advice and refuse to answer my question?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 393

1      A.   Yeah.

2      THE WITNESS:  Do you want to get all that

3   stuff on the record, John?  What the questions

4   are?

5      MR. COYNE:  Well, I think we were on the

6   record as far as I understand.

7      THE WITNESS:  Okay.

8      MR. COYNE:  Yeah.

9      THE WITNESS:  Okay.  We got that?

10     THE COURT REPORTER:  Correct.

11     MR. COYNE:  You got that question, and you

12  got my instruction?

13     THE COURT REPORTER:  Yes.

14     MR. COYNE:  You got the answer and why and

15  the fact that it was reliant upon the Court's

16  order.

17     THE WITNESS:  We got the question down?

18     MR. COYNE:  Yeah.

19     THE WITNESS:  The question is on the record,

20  right?  Yeah.  Okay.

21     MR. COYNE:  Yeah.  She took it.

22  BY MR. STARR:

23     Q.   **Mr. Brannigan, you also testified**

24  **during the McIntosh deposition that you**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 394

1    **remembered at least one instance in which you**

2    **believe a number of people were innocent; is**

3    **that correct?**

4         MR. COYNE:  Same objection.  Same

5    instruction.

6              Don't answer the question based upon

7    the Court's ruling.

8    BY MR. STARR:

9         **Q.   Are you going to take your attorney's**

10   **advice and refuse to answer my question?**

11        A.   Yes, sir.

12        **Q.   Do you recall any instances when you**

13   **were working at the State's Attorney's Office**

14   **where you thought somebody who you were**

15   **investigating was actually innocent?**

16        MR. COYNE:  Same objection.  Same

17   instruction.

18        MR. HOLMES:  And similarly, on behalf of the

19   State's Attorney's Office, I instruct the

20   witness not to answer on the ground of the

21   deliberative process privilege.

22        MR. STARR:  So let me get clarification of

23   that, because during the McIntosh deposition,

24   that same instruction was based on the fact that

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 395

1    it was an ongoing investigation that was being

2    asked about.  Is that the same status quo today?

3        MR. HOLMES:  There are two issues here.  The

4    first is that I -- I concur and agree with

5    Mr. Coyne's interpretation of Judge Wood's

6    order, in that policies and practices is a

7    bright line and that counsel taking the

8    deposition cannot back in -- attempt to back

9    into CCSAO practices and procedures by asking

10   Mr. Brannigan about individual cases and then

11   seeking to connect the dots up to policy and

12   practices.

13           So that's the first part of it.  The

14   second part of it is that Mr. Brannigan's

15   subjective impressions of guilt and innocence in

16   relation to any specific case are encompassed by

17   the deliberative process privilege as

18   interpreted by the Northern District of Illinois

19   and on that -- on the basis of that privilege is

20   my objection and instruction.

21       MR. STARR:  So my subjective interpretation

22   is that you just refused to answer the question.

23   Is that correct?

24       MR. HOLMES:  I was not at the McIntosh

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 396

1    deposition, Mr. Starr.  And I'm here today for

2    the purposes of this deposition, and the

3    instruction I just gave stands.

4       MR. STARR:  So is the instruction based on

5    the fact that it's an ongoing investigation is

6    my question.  If you don't know the answer, you

7    don't know the answer, but it seems like a fair

8    question.

9       MR. HOLMES:  I'm not going to answer the

10   question because I don't need to, because your

11   question is asking Mr. Brannigan for his

12   subjective impressions of guilt or innocence and

13   his -- those such very impressions are what are

14   protected by the deliberative process privilege.

15      MR. STARR:  You guys are wild.  All right.

16   Let's move forward.

17   BY MR. STARR:

18      **Q.   You specifically testified that you can**

19   **think of one of a number of -- one instance**

20   **where a number of people have been released and**

21   **you think they should have been and that it's**

22   **all related to one investigation.**

23         **Do you recall that testimony?**

24      MR. COYNE:  Same objection.  Same

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 397

1    instruction.

2              Also, I'm just going to ask again.  We

3    have the transcript in front of us.  If you

4    could refer to the individual testimony, I think

5    it would benefit immensely the effort to apply

6    the Court's ruling to these questions.  So if

7    you're just going to do it, I can't tell you how

8    to ask your questions, Sean, but I'm just saying

9    that for purposes of our applying and my

10   applying the judge's ruling, it would help

11   immensely if you can refer to a specific page

12   and line number of the transcript since you have

13   it in front of me and I know you've read it.

14      MR. STARR:  I appreciate that suggestion,

15   John.

16              Are you going to -- did you instruct

17   him not to answer?

18      MR. COYNE:  Let me hear the question again,

19   please.

20                      (Whereupon, the record was read

21                       as requested.)

22      MR. COYNE:  And you're referring -- just for

23   the record, you're referring to the -- his

24   testimony in McIntosh, correct?

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 398

```
 1      MR. STARR:  Mm-hmm, yes.
 2      MR. COYNE:  All right.  Yeah.  I would
 3  instruct him not to answer.  I believe it's
 4  outside the scope of the judge's ruling.  It
 5  does not have to do with prior testimony about
 6  CCSAO policies and practices.
 7  BY MR. STARR:
 8      Q.   Are you going to take your attorney's
 9  recommendation and refuse to answer my question?
10      A.   Yes, sir.
11      Q.   What case were you referring to when
12  you testified about that in the McIntosh dep?
13      MR. COYNE:  Same objection.  Same
14  instruction.
15  BY MR. STARR:
16      Q.   Are you going to refuse to answer my
17  question, sir?
18      A.   Yes, sir.  I will follow my attorney's
19  advice.
20      Q.   Were you referring to the Watts cases?
21      MR. COYNE:  Same objection.  Same
22  instruction.
23      MR. HOLMES:  And I would in this instance
24  also join on behalf of the State's Attorney's
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 399

1    Office and instruct the witness not to answer on

2    the ground of the deliberative process

3    privilege.

4    BY MR. STARR:

5        **Q.   Are you going to --**

6        MR. COYNE:  I instruct you not to answer.

7    BY MR. STARR:

8        **Q.   Are you going to --**

9        MR. COYNE:  Well, there is two lawyers that

10   have instructed you.

11   BY THE WITNESS:

12       A.   I will follow my attorneys' advice.

13   BY MR. STARR:

14       **Q.   Okay.**

15       A.   I have a hard time picking you up.

16   You're too far away.

17       MR. COYNE:  Well, we both instructed you not

18   to answer --

19       THE WITNESS:  Correctomundo.

20       MR. COYNE:  -- just for the record.

21       THE WITNESS:  I got it.

22   BY MR. STARR:

23       **Q.   And when you were asked about that**

24   **during the McIntosh deposition, your attorney**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 400

1    **instructed you not to answer because it was an**

2    **ongoing investigation.**

3           **Do you remember that?**

4        MR. COYNE:  Objection, form.  I'm not sure I

5    follow that question, but --

6    BY THE WITNESS:

7        A.    Say it again.

8    BY MR. STARR:

9        Q.    **During the McIntosh deposition when you**

10   **were asked about the cases that you thought the**

11   **people were innocent on, your attorney**

12   **instructed you not to answer questions about it**

13   **because it was an ongoing investigation.**

14       MR. COYNE:  Same objection.  First of all, I

15   object to a lack of a reference to the

16   individualized testimony of this witness in the

17   transcript.  I believe that makes it avoidably

18   hard for him to follow the question and the

19   reference to the testimony, which is right

20   before us, number 1.

21           Number 2, objection to form and

22   foundation.

23           And, number 3, that question also runs

24   afoul of the judge's ruling.

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 401

 1      MR. HOLMES:  And so there's an instruction

 2   not to answer?

 3      MR. COYNE:  Correct.  I'm instructing you not

 4   to answer the question.

 5      THE WITNESS:  Yes, sir.

 6   BY THE WITNESS:

 7      A.   I'll follow my attorney's advice.

 8   BY MR. STARR:

 9      **Q.   Okay.  I'm trying to find that for you,**

10   **John.  I think it's on page 230 -- 203.  I think**

11   **it starts on 203 generally.  Okay.**

12         **So you were asked during the McIntosh**

13   **deposition, "I'm asking you about cases where**

14   **you conduct the investigation, and then you say,**

15   **'Boy, based on this investigation that I have**

16   **been involved with, I think this guy is**

17   **innocent.'"**

18         **And your answer was, "I had something**

19   **on the tip of my tongue.  There is some cases**

20   **right now that we are dealing with."**

21         **Do you recall being asked that question**

22   **and giving that answer?**

23      MR. HOLMES:  Objection.

24      MR. COYNE:  Yeah.  Same objection.  Same

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 402

```
 1    instruction.  I mean, he can -- it's in the
 2    transcript.
 3    BY MR. STARR:
 4        Q.   It is.
 5             You also testified during the McIntosh
 6    deposition that there were "goofy cops out
 7    there, coppers who were maybe no good."
 8             Do you remember giving that testimony?
 9        MR. COYNE:  Objection to that and instruct
10    him not to answer.  And that is founded upon the
11    clear language of the judge's ruling.
12    BY MR. STARR:
13        Q.   Are you going to refuse to answer that
14    question, sir?
15        A.   I'm going to follow my attorney's
16    advice.
17        Q.   That was page 106, John?
18        MR. COYNE:  Yes.  Thank you, by the way, for
19    the page references.
20        MR. STARR:  Lines 5 through 10, I believe --
21    5 through 11.
22        MR. COYNE:  I've got -- oh, I see.  This
23    starts at the --
24    BY MR. STARR:
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 403

1      Q.    Sir, during the McIntosh deposition,
2  you were -- you also gave some testimony about
3  how you believe that during your time at the
4  State's Attorney's Office you had reviewed --
5  you had reviewed post-conviction cases where
6  there had been some police officer misconduct
7  that had contributed to the wrongful conviction.
8         Do you recall that?
9      MR. COYNE:  Same objection and same
10  instruction.  And that is based upon the judge's
11  ruling.
12  BY MR. STARR:
13      Q.    Are you going to refuse to answer my
14  question?
15      A.    Yes, sir, based on my attorney's
16  advice.
17      Q.    Do you believe it's possible for a
18  Chicago police officer -- strike that.
19         Do you think it's possible that a
20  Chicago police officer could ever unduly
21  influence an identification procedure?
22      MR. COYNE:  Objection, form, foundation,
23  incomplete hypothetical, requires speculation.
24      MS. WEST:  Join.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 404

1      MR. COYNE:  You can answer.  I just objected

2   to --

3   BY THE WITNESS:

4      A.   Say it again.

5   BY MR. STARR:

6      **Q.   Do you think it's possible for a**

7   **Chicago police officer to unduly influence a**

8   **witness identification during an identification**

9   **procedure?**

10     MR. COYNE:  Same objections.

11     MS. MORRISON:  Join.

12     MS. WEST:  Join.

13  BY THE WITNESS:

14     A.   Okay.  Do I answer?

15     MR. COYNE:  You can.

16  BY THE WITNESS:

17     A.   You could.  Anything is possible, I

18  would say.

19  BY MR. STARR:

20     **Q.   Okay.  During your career as a Chicago**

21  **police officer, did you ever become aware of a**

22  **police officer unduly influencing an**

23  **identification procedure?**

24     A.   I -- I don't have a recollection of

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 405

1   anybody right now.

2       **Q.    Well, how about --**

3       A.    As I sit here right now.

4       **Q.    How about during your time as a State's**

5   **Attorney investigator, did you ever become aware**

6   **of a Chicago police officer who unduly**

7   **influenced an identification procedure?**

8       MR. HOLMES:  You said during his time as a

9   Cook County State's investigator?

10          On behalf of the office, I'd instruct

11   the witness not to answer on the ground of the

12   deliberative process privilege.

13   BY THE WITNESS:

14      A.    I'm going to follow --

15   BY MR. STARR:

16      **Q.    You're going to refuse --**

17      A.    -- that attorney's advice.

18      **Q.    You are going to refuse to answer my**

19   **question?  Okay.**

20          **If you had learned during your time as**

21   **a -- strike that.  I already asked that.  Never**

22   **mind.**

23          **During your time as a Cook County**

24   **State's Attorney -- strike that.**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 406

1          **During your time in the Cook County**

2    **State's Attorney's Office as an investigator,**

3    **have you ever encountered any witnesses that**

4    **told you specifically that the Chicago police**

5    **had unduly or incorrectly or improperly**

6    **influenced their identification of a suspect?**

7        A.   No.  I recall of no -- nobody doing

8    that or telling me that.

9        Q.   **If you were assigned to go out to**

10   **interview a witness who had given a statement**

11   **stating that they had been unduly influenced in**

12   **an identification procedure, would you have a**

13   **skepticism about their statement to that effect?**

14       MR. COYNE:  Objection, form, foundation,

15   incomplete hypothetical, and requires the

16   witness to speculate.

17       MS. WEST:  Join.

18   BY THE WITNESS:

19       A.   Say it again.

20   BY MR. STARR:

21       Q.   **Yeah.  I'll ask it a different way.**

22          **Would you be skeptical of a witness who**

23   **said they gave a -- they identified somebody and**

24   **later recanted that identification?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 407

1      MR. COYNE:  Same objections.

2      MS. WEST:  Join.

3   BY THE WITNESS:

4      A.   Could I be skeptical?

5   BY MR. STARR:

6      **Q.   Would you be.**

7      A.   Would I be?  I would question it.

8      **Q.   Why would you question it?**

9      A.   Because of what the person said.

10     **Q.   So if somebody identified somebody**

11  **during the criminal proceedings and later**

12  **recanted that identification, you would**

13  **immediately be skeptical of that recantation; is**

14  **that correct?**

15     MR. COYNE:  Same objections.

16  BY THE WITNESS:

17     A.   Say that one again.

18  BY MR. STARR:

19     **Q.   If somebody identified somebody during**

20  **the criminal proceedings who later recanted that**

21  **identification, would you be automatically**

22  **skeptical of that person?**

23     MR. HOLMES:  Are you asking him generally?

24     MR. STARR:  Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 408

```
 1        MR. COYNE:  Objection, form, foundation,
 2    incomplete hypothetical, and requires
 3    speculation.
 4        MS. WEST:  Join.
 5        MS. MORRISON:  Join.
 6    BY THE WITNESS:
 7        A.   Just in general?
 8    BY MR. STARR:
 9        Q.   Yeah.
10        A.   If someone makes an identification and
11    then recants that identification, would I be
12    skeptical -- skeptical?
13        Q.   Of that person, yes.
14        A.   Of that recant?
15        Q.   Yes.
16        A.   I would question it certainly.
17        Q.   And why would you question it?
18        A.   Because you already made an
19    identification.  I would like to find out what's
20    going on.
21        Q.   If somebody identified somebody in the
22    criminal proceedings and later recanted and
23    said, "The reason I made the identification was
24    because the police made me make the
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 409

1    identification," would you be skeptical of that?

2        MR. COYNE:  Objection, form, foundation,

3    incomplete hypothetical, and requires

4    speculation.

5        MS. WEST:  Join.

6    BY THE WITNESS:

7        A.   I would be skeptical, but I would

8    certainly look into it.

9    BY MR. STARR:

10       Q.   Why would you be skeptical of that?

11       A.   You are recanting.  You made an

12   identification.  You are recanting, and now you

13   are saying that the police told you to do it.

14   It certainly bears looking into.

15       Q.   And in your career as either a Chicago

16   police officer or a Cook County State's Attorney

17   investigator, can you tell me the number of

18   times in which you encountered a witness who had

19   recanted an identification where you actually

20   believed them?

21       MR. HOLMES:  I'm sorry.  Was this during his

22   career as a police investigator or as a State's

23   Attorney investigator?

24   BY MR. STARR:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 410

1     **Q.   Both.**

2     MR. HOLMES:  Oh, okay.  Can Madam Court

3  Reporter read back the question?

4     THE WITNESS:  Pardon me?

5     MR. HOLMES:  I'm just asking the court

6  reporter to read back the question.

7                    (Whereupon, the record was read

8                     as requested.)

9     MR. HOLMES:  So on behalf of the State's

10  Attorney's Office, I instruct the witness not to

11  answer that portion of the question that

12  pertains to, Mr. Brannigan, your time and

13  experience as a Cook County State's Attorney's

14  Office investigator.  You can answer the

15  remainder of the question as it pertains to your

16  time and experience with the Chicago Police

17  Department.

18  BY THE WITNESS:

19     A.   All right.  Do I know just within the

20  boundaries of the Chicago Police Department and

21  my time there.  Go ahead.  Now to your question.

22  BY MR. STARR:

23     **Q.   My question was broader than that.**

24        **I asked you, at any point in your**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 411

1    **career, have you ever encountered a witness who**

2    **made an identification during a criminal**

3    **proceeding and later recanted that**

4    **identification where you actually believed that**

5    **recantation?**

6        MR. HOLMES:  Same objection and same partial

7    instruction as to the witness's time with the

8    Cook County State's Attorney's Office.

9    BY THE WITNESS:

10       A.   Yes.

11   BY MR. STARR:

12       **Q.   On how many occasions have you had that**

13   **experience?**

14       A.   As I'm sitting here now, I can remember

15   one.

16       **Q.   And what case was that, sir?**

17       MR. HOLMES:  Same objection.

18            And this is limited to CPD time.

19   BY THE WITNESS:

20       A.   It was a double homicide is all I can

21   remember right now.

22   BY MR. STARR:

23       **Q.   Can you remember the name of the**

24   **defendant in the case?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 412

1      A.   I would have to look at something to

2  make sure I'm saying everything accurately.

3      Q.   Do you know whether the defendant in

4  that case was -- their conviction was

5  overturned?

6      MS. MORRISON:  Object to foundation,

7  speculation.

8  BY THE WITNESS:

9      A.   I want to make sure that I'm getting it

10 right.  I -- I can't answer the question right

11 now.  I would have to look stuff up, because I

12 may misspeak.

13 BY MR. STARR:

14     Q.   Did your career as a Chicago police

15 officer in any way create any biases in terms of

16 your belief in witnesses who make recantations

17 in cases that involve the Chicago Police

18 Department?

19     MR. COYNE:  Objection, form, foundation,

20 speculation.

21     MS. WEST:  Join.

22     MS. MORRISON:  Join.

23 BY THE WITNESS:

24     A.   Say that again.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 413

```
 1   BY MR. STARR:
 2       Q.   Yeah.
 3            Did your career as a Chicago police
 4   officer create any biases in terms of your
 5   belief in witnesses that make recantations that
 6   involve the Chicago Police Department?
 7       MS. WEST:  Same objections.
 8       MS. MORRISON:  Join.
 9   BY THE WITNESS:
10       A.   I always try and be as objective as
11   possible.  Sometimes there might be a subtle
12   bias built in that you don't even realize it.  I
13   always try to be as objective as possible.
14   BY MR. STARR:
15       Q.   Is that subtle bias that you referred
16   to based on your long distinguished career as a
17   Chicago police officer?
18       MR. COYNE:  Objection.  Please repeat his
19   last answer.
20                    (Whereupon, the record was read
21                     as requested.)
22       MS. WEST:  I'd just object to misstates --
23   BY THE WITNESS:
24       A.   Okay.  Where are we at now?  That was
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 414

1   my answer.

2       MR. COYNE:  Did you say subtle bias?  Was

3   that your question?  Subtle?

4       MR. STARR:  I don't remember exactly what I

5   asked.  It was -- I think I repeated what he

6   said.  Maybe I -- maybe I didn't.

7       MR. COYNE:  I'd just note an objection to

8   mischaracterizes his testimony and join

9   Allyson's objection.

10          But go ahead.

11      MR. STARR:  I think I -- I think I asked --

12  maybe reread my last question.  I apologize.

13                  (Whereupon, the record was read

14                   as requested.)

15  BY THE WITNESS:

16      A.   That would be any bias that might be

17  there would be based on my career as a policeman

18  and just watching human nature in general.  I am

19  now 77 years old, so I understand human nature,

20  and it can never surprise you.

21  BY MR. STARR:

22      Q.   **Do you think that your bias may have**

23  **colored your interview with Ms. Friend?**

24      MR. COYNE:  Objection, foundation,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 415

1  speculation.

2      MR. HOLMES:  I -- on behalf of the State's

3  Attorney's Office, I'd instruct the witness not

4  to answer on the ground of the deliberative

5  process privilege.

6  BY MR. STARR:

7      Q.   **Are you going to refuse to --**

8      A.   I'll follow his instructions.

9      Q.   **Are you going to refuse to answer my**

10 **question?**

11     A.   Yes, sir.

12     Q.   **Okay.  When you interviewed Ms. Friend,**

13 **you would have been aware that Mr. Fletcher was**

14 **making these allegations against the Chicago**

15 **police officers that investigated his case,**

16 **correct?**

17     MR. COYNE:  Objection, foundation.

18 BY THE WITNESS:

19     A.   Correct.

20 BY MR. STARR:

21     Q.   **And you have a -- and this is an**

22 **assumption on my part, but tell me if I'm wrong.**

23          **You have a profound respect for Chicago**

24 **police officers and the work that they do,**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 416

1   **correct?**

2       A.   In general, yes.

3       **Q.   And do you think it's possible your**

4   **profound respect for the Chicago police officers**

5   **may have impacted your interview with**

6   **Ms. Friend?**

7       MR. HOLMES:  On behalf of --

8       MR. COYNE:  Objection, foundation,

9   speculation.

10          Sorry, Cliff.  Go ahead.

11      MR. HOLMES:  No.  I -- I just want to make

12  sure I -- because I'm at the other end of the

13  table, I'm always last to go.

14          On behalf of the State's Attorney's

15  Office, I instruct the witness not to answer on

16  the ground of the deliberative process

17  privilege.

18  BY MR. STARR:

19      **Q.   Are you going to refuse to answer?**

20      A.   I'm going to follow my attorney's

21  advice.

22      **Q.   Are you going to refuse to answer that**

23  **question?**

24      A.   Yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 417

```
 1        THE COURT REPORTER:  You said yes?
 2   BY THE WITNESS:
 3        A.   Yes.  I'm going to follow my attorney's
 4   advice and not answer the question.
 5   BY MR. STARR:
 6        Q.   Have you ever considered the
 7   possibility that your biases may have influenced
 8   the interview that you conducted with
 9   Ms. Friend?
10        MR. COYNE:  Objection, form, foundation,
11   requires speculation, and just for the record,
12   the last instruction came not from your
13   attorney, but from the State's Attorney, the ASA
14   who represents the State's Attorney's Office,
15   just so we are clear on the record.
16        MR. HOLMES:  And as to this question, on
17   behalf of the State's Attorney's Office, I
18   instruct the witness not to answer on the ground
19   of the deliberative process privilege.
20   BY MR. STARR:
21        Q.   Are you going to honor that instruction
22   and refuse to answer my question?
23        A.   Based on his advice, I'm not going to
24   answer the question.
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 418

1      Q.   Do you believe that people convicted of

2  murder should --

3      A.   Pardon me?

4      Q.   I wasn't done.

5           Do you believe that people convicted of

6  murder should fulfill their sentences that they

7  are given?

8      MR. COYNE:  Objection, foundation.

9      MS. MORRISON:  Objection, form, incomplete

10  hypothetical.

11      MS. WEST:  Join.

12  BY THE WITNESS:

13      A.   Say it again.  Do I believe that

14  people --

15  BY MR. STARR:

16      Q.   Do you believe that people that are

17  convicted of murder --

18      A.   Murder.

19      Q.   -- by a court --

20      A.   Correct.

21      Q.   -- should serve out their sentences?

22      MS. MORRISON:  Same objections.

23      MR. COYNE:  Objection, foundation.

24  BY THE WITNESS:

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 419

1      A.   Do I believe that after all appeals are

2   exhausted, all post-conviction motions, and if

3   everything else has been all exhausted and there

4   has been a thorough and competent investigation,

5   they should follow whatever the sentence was?

6   BY MR. STARR:

7      **Q.   In 2014, did you write a letter to the**

8   **U.S. Parole Commission supportive of Former**

9   **El Rukn General and murderer Earl Hawkins'**

10  **parole?**

11     A.   That's correct.

12     **Q.   And why did you do that, sir?**

13     MR. HOLMES:  On behalf of the State's

14  Attorney's Office, I instruct the witness not to

15  answer on the ground of the deliberative process

16  privilege.

17          And this would seem to be a document

18  that speaks for itself.  So whatever is on the

19  face of the document is going to be the best

20  evidence in this question, and there is no

21  exhibit currently before this witness.

22     MR. STARR:  I don't think I am asking a

23  question about his job at the State's Attorney's

24  Office.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 420

1       MR. HOLMES:  It's during his time at the

2   State's Attorney's Office.  So I think there is

3   a foundational issue here.  Again, because the

4   document is not before the witness, there is

5   some things we can't answer here as lawyers or

6   the witness.

7           But because it's during his time as an

8   investigator for the State's Attorney's Office,

9   I'm not persuaded that this falls outside the

10  scope of his duties for the State's Attorney's

11  Office.

12      MR. STARR:  Well, I don't think I necessarily

13  agree with that.  I don't --

14  BY MR. STARR:

15      **Q.   Did you write your -- the letter to the**

16  **parole board on behalf of the State's Attorney's**

17  **Office?**

18      A.   Did I write a letter to the parole

19  board?

20      **Q.   In 2014 on behalf of Earl Hawkins on**

21  **behalf of --**

22      A.   I --

23      THE COURT REPORTER:  Sorry.  In 2014 --

24  BY MR. STARR:

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 421

 1      Q.   In 2014, the letter that you wrote to

 2   the parole board on behalf of the State's -- on

 3   behalf of Earl Hawkins, did you do so in your

 4   role as a member of the State's Attorney's

 5   Office?

 6      A.   I -- I wrote that letter in 2000- --

 7   whatever you said -- -14 for Earl Hawkins or to

 8   the parole board on behalf of Earl Hawkins.

 9      Q.   Yeah.

10           And in doing so, did you do so in your

11   capacity as a State's Attorney investigator?

12      A.   Did I what?

13      Q.   Did you write that letter in your

14   capacity as a State's Attorney's investigator?

15      A.   Yeah.   I was a State's Attorney's

16   investigator at the time.

17      Q.   I understand that you were employed by

18   the State's Attorney's Office, but did you write

19   the letter in your capacity as a State's

20   Attorney's investigator, or did you write the

21   letter in your capacity as a regular person?

22      A.   As a law enforcement officer from my

23   time dealing with him at CPD and my time dealing

24   with him in the State's Attorney's Office.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 422

1   **Q.   Okay.  So it was a letter that you**
2   **wrote from your capacity as both the State's**
3   **Attorney investigator and a Chicago police**
4   **officer?**
5       A.   Wearing both hats.
6       MS. MORRISON:  Objection, mischaracterizes
7   testimony.
8   BY MR. STARR:
9   **Q.   I didn't hear your answer.  I didn't**
10  **hear the answer.**
11      A.   Oh.  I -- the letter was written on
12  behalf of -- for Earl Hawkins as a former CPD
13  member and as a current investigator at the
14  State's Attorney's Office.
15  **Q.   Okay.  And so why did you write that**
16  **letter?**
17      MR. HOLMES:  So -- and here -- Counsel, I
18  will interpose an objection on the ground of the
19  deliberative process privilege and instruct the
20  witness not to answer.
21  BY MR. STARR:
22  **Q.   Are you going to respect the State's**
23  **Attorney's instruction and refuse to answer my**
24  **question?**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 423

1      A.   Yes, sir, I am.

2      Q.   At any point during your interview with

3  Ms. Friend, did she ask to end the interview?

4      A.   I'm sorry.  Say again.

5      Q.   At any point during your interview of

6  Ms. Friend, did she ask to end the interview?

7      A.   In -- no.  It just ended, "Anything

8  else to say?"  Something to that effect.  I

9  don't really recall specific phraseology or a

10  word.

11      Q.   And that was --

12      A.   And how -- it was just -- it ended

13  naturally.  Put it that way.

14      Q.   So at no point during the pendency of

15  the interview did she say, "I want to stop

16  answering questions" or anything like that

17  effect?

18      A.   You are correct.  That did not happen.

19      Q.   Did Mr. Friend ever tell you that

20  anybody ever told her who to identify in a

21  lineup during the Willie Sorrell homicide

22  investigation?

23      A.   Say it again.

24      Q.   Did Ms. Friend ever tell you that the

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 424

1    police told her who to identify in a lineup

2    during the Willie Sorrell homicide

3    investigation?

4        A.   No.

5        Q.   Did Ms. -- did you review Ms. Friend's

6    testimony in the James Fletcher prosecution

7    before you met with her?  I don't know if I

8    asked you that.

9        A.   I don't believe I did.

10       Q.   Did Ms. Friend tell you anything about

11   her testimony when you met with her during her

12   interview?

13       A.   No, sir.  I don't recall.

14       Q.   Did Ms. Friend ever tell you during

15   your meeting with her that she told

16   Mr. Fletcher's attorney during his criminal

17   trial that she was not sure about her

18   identification?

19       A.   No, sir.  I don't recall her saying

20   that.

21       Q.   Did Ms. Friend ever tell you during

22   your interview with her that she told the police

23   after the shooting happened in 1990 that she

24   could not make identification of the offenders?

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 425

1    A.   No, sir.  She did not.

2    **Q.   Did Ms. Friend ever tell you during her**

3  **interview with her that the police told her --**

4  **strike that.**

5         **Did Mr. Friend ever tell you during**

6  **your interview with her that she told the police**

7  **in 2002 that she could not make an**

8  **identification of the shooter?**

9    A.   No, sir.

10   **Q.   Did Ms. Friend ever tell you that she**

11 **was not shown a photo array?**

12   A.   That she was not shown a photo array?

13 No.  No, sir.

14   **Q.   Did Ms. Friend ever tell you that the**

15 **police only showed her a single photograph of**

16 **Mr. Fletcher as a way of orienting her as to who**

17 **to pick during the lineup?**

18   A.   She did not tell me that.

19   **Q.   Did Ms. Friend ever tell you that the**

20 **police told her that if she didn't point out**

21 **Mr. Fletcher in the lineup, she would go to**

22 **jail?**

23   A.   She did not tell me that.

24   **Q.   Did Ms. Friend ever tell you that the**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 426

1    police told her that if she did not identify

2    James Fletcher in the lineup, she would lose her

3    child?

4        A.   No, sir.

5        Q.   Did Ms. Friend ever tell you that the

6    police showed her a photograph of Mr. Fletcher

7    prior to her time in the lineup?

8        A.   No, sir.

9        Q.   Did Ms. Friend ever tell you that the

10   police told her they would drop the charges that

11   were pending against her if she identified

12   Mr. Fletcher?

13       A.   No.  She never said that to me.

14       Q.   Did you put everything material and

15   substantive that you learned from Ms. Friend

16   into your report?

17       MR. COYNE:  Objection, form.

18       THE WITNESS:  Pardon me?

19       MR. COYNE:  You can answer.

20   BY THE WITNESS:

21       A.   Yes, sir.

22   BY MR. STARR:

23       Q.   Did you find --

24       A.   To the best of my ability, yeah.

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 427

1      Q.   Do you recall finding Ms. Friend

2  credible?

3      MR. HOLMES:  On the behalf of the State's

4  Attorney's Office, I object on the grounds of

5  the deliberative process privilege and instruct

6  the witness not to answer.

7  BY MR. STARR:

8      Q.   Are you going to refuse to answer my

9  question?

10     A.   I'll follow the attorney's advice.

11     Q.   Does the fact that Ms. Friend has given

12 three different accounts about the same event

13 suggest to you that she is not a credible

14 witness?

15     MR. HOLMES:  On the behalf of the State's

16 Attorney's Office, I object on grounds of the

17 deliberative process privilege and instruct the

18 witness not to answer.

19 BY MR. STARR:

20     Q.   Are you going to refuse to answer my

21 question based on that instruction?

22     A.   On -- based on his instructions, I am

23 not answering.

24     MR. STARR:  Okay.  I believe I'm done, but I

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 428

1   would like a -- just a -- like, little

2   two-minute break to look at my notes.

3       THE WITNESS:  Yeah.

4                   (Whereupon, a short break was

5                   taken.)

6   BY MR. STARR:

7       Q.   **Mr. Brannigan, during the course of**

8   **this deposition, you have been taking notes.**

9           **Can you tell how many pages of notes**

10  **you have taken?**

11      A.   Pardon me?

12      Q.   **Can you tell how many pages of notes**

13  **you have taken?**

14      A.   One.

15      Q.   **You have only taken notes on one page;**

16  **is that correct?**

17      A.   That's correct.

18      Q.   **Okay.  I would ask that you tender a**

19  **copy of those notes to your attorney and them**

20  **being produced in this -- in this litigation.**

21      MR. COYNE:  Can I take it?

22      THE WITNESS:  Yeah.

23      MR. STARR:  And because they were notes that

24  were manufactured by the witness -- by himself,

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 429

1    that --

2        MR. COYNE:  I'm not disagreeing.

3        MR. STARR:  Okay.

4        MS. WEST:  Are you good, or do you want

5    to see what he has to say?

6        MR. STARR:  Yeah.  I mean, let's let John

7    respond.

8        MR. COYNE:  This is more like a transcript

9    than it is -- than it is notes, but okay.

10       MR. STARR:  And then I'm sure it's a real joy

11   to read.

12       MR. COYNE:  Yeah.  Yeah.  I agree.  I don't

13   see any basis to withhold it from them.

14                   (Whereupon, Mr. Coyne handed the

15                    document to Mr. Starr.)

16       MR. STARR:  Do you want me to take a

17   photograph of it, and then I will produce it, or

18   do you want to produce it?

19       MR. COYNE:  You can -- I mean, it's your dep.

20   Do you want to copy it and -- yeah.  Do you want

21   to just --

22       MR. STARR:  Is that okay with you?

23       MS. WEST:  Yeah.

24       MR. STARR:  Okay.  I'll just --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 430

1      MR. COYNE:  That's fine.

2      MR. STARR:  -- take a photograph of it.

3      MR. COYNE:  That's fine.

4      MS. WEST:  That's fine.

5      MR. STARR:  And then produce it, like, on

6   Monday or something with the Bates.

7   BY MR. STARR:

8      **Q.   Just a couple more follow-up questions**

9   **real quick.**

10         **Have you ever considered that you got**

11   **your interview with Ms. Friend incorrect?**

12      MR. HOLMES:  I'm sorry.  Would you mind

13   repeating the question, Madam Court Reporter?  I

14   was taking a note in my own right over here and

15   I --

16      MR. STARR:  I'll just -- I will just reask

17   the question.

18      MR. HOLMES:  Thank you.

19   BY MR. STARR:

20      **Q.   Have you ever considered the**

21   **possibility that you got your interview with**

22   **Ms. Friend incorrect?**

23      MR. COYNE:  Object to form --

24      MR. HOLMES:  On behalf of the State's --

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 431

1      MR. COYNE:  -- and foundation.

2          Go ahead.

3      MR. HOLMES:  On behalf of the State's

4  Attorney's Office, I instruct the witness not to

5  answer on the ground of the deliberative process

6  privilege.

7  BY MR. STARR:

8      **Q.   Are you going to refuse to answer that**

9  **question?**

10     A.   I'm not going to answer the question

11  based on the advice of my attorney.

12     **Q.   And if Ms. Friend testifies in this --**

13  **this case at any point that she told you those**

14  **things because you intimidated her or made her**

15  **feel like she had to say those things, would she**

16  **be lying?**

17     MR. COYNE:  Objection, form, foundation,

18  incomplete hypothetical, requires speculation.

19  BY THE WITNESS:

20     A.   Say it again.

21  BY MR. STARR:

22     **Q.   Yeah, sure.**

23          **If Ms. Friend at any point in this**

24  **litigation testifies that the reasons she said**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 432

1    **the things that she said to you allegedly she**

2    **did so because you had intimidated her or**

3    **coerced her or made her say those things, would**

4    **she be lying?**

5         A.   Yes, sir, she would.

6         MR. COYNE:  Same objections.

7    BY THE WITNESS:

8         A.   Yes, sir, she would.

9    BY MR. STARR:

10        **Q.   Okay.  If she recanted her recantation**

11   **to you, do you think that would make her even**

12   **more -- even less credible as a witness?**

13        MR. COYNE:  Same objections.

14        MR. HOLMES:  On behalf of the State's

15   Attorney's Office, I instruct the witness not to

16   answer the question on the ground of the

17   deliberative process privilege.

18   BY MR. STARR:

19        **Q.   And then last question -- do you --**

20        A.   I will follow his advice on that one.

21        **Q.   Okay.  And refuse to answer my**

22   **question?**

23        A.   Yes, sir.

24        **Q.   Last question, do you have any**

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 433

1    independent basis to say whether or not

2    Mr. Fletcher is guilty or innocent?

3         MR. HOLMES:  On behalf of the State's

4    Attorney's Office, I instruct the witness not to

5    answer on the ground of the deliberative process

6    privilege.

7    BY MR. STARR:

8         Q.   Are you going to --

9         A.   I will follow my attorney's advice.

10        Q.   Do you know that Mr. Fletcher received

11   a certificate of innocence in this -- in this

12   case?

13        A.   I do now.  You just told me.

14        Q.   Does that have any bearing whatsoever

15   on your opinion about whether or not

16   Mr. Fletcher is guilty or innocent?

17        MR. HOLMES:  On behalf of the --

18        MR. COYNE:  Objection, foundation.

19        MR. HOLMES:  On behalf of the State's

20   Attorney's Office, I instruct the witness not to

21   answer on the ground of the deliberative process

22   privilege.

23   BY MR. STARR:

24        Q.   Are you going to --

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 434

1      A.   I'll follow my attorney's advice.

2      **Q.   And the last two questions I asked you,**

3  **you refused to answer because of the State's**

4  **Attorney's instruction?**

5      A.   Yes, sir.

6      **Q.   Okay.**

7      A.   Correct.

8      MS. WEST:  And I don't have anything after

9  all.

10     MR. COYNE:  Okay.

11     MR. STARR:  Okay.

12     MR. COYNE:  You have the right to review your

13  transcript, and that's -- as you know, that's a

14  right you can reserve or you can waive that

15  right.

16          How do you choose?

17     THE WITNESS:  No.  I want to -- I want to

18  reserve my right.

19     MR. COYNE:  Signature reserved.

20     THE WITNESS:  (Witness mumbling).

21     THE COURT REPORTER:  Is this off the record?

22  Or I can't hear what he's saying.

23     MR. COYNE:  He's requesting -- so he's --

24  just for the record, the witness is reserving

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 435

1    his right to review the transcript, number 1.

2            And number 2, he is asking for a full

3    copy as opposed to a mini copy in order for him

4    to review it.

5        THE COURT REPORTER:  Did you need to order

6    the transcript?

7        MS. WEST:  Yes, please.

8        THE COURT REPORTER:  And did you need a copy?

9        MR. HOLMES:  I will let you know, Kari.  At

10   this time, we're not ordering it.

11       MR. STARR:  Yeah.  And I will let you know

12   too.  We will probably order a copy, but I'll

13   let you know.

14                   (Deposition concluded at

15                    5:20 p.m.)

16

17

18

19

20

21

22

23

24

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 438 of 492 PageID #:7900

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 436

```
 1           IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3

    JAMES FLETCHER JR.,              )
 4                                   )
                 Plaintiff,          )
 5                                   )
                 vs.                 )   No. 20 CV 4786
 6                                   )
    JEROME BOGUCKI, ANTHONY          )
 7  NORADIN, RAYMOND SCHALK,         )
    ANTHONY WOJCIK, UNKNOWN CITY     )
 8  OF CHICAGO POLICE OFFICERS,      )
    and the CITY OF CHICAGO,         )
 9                                   )
                 Defendants.         )
10

11           I, DANIEL BRANNIGAN, state that I have
    read the foregoing transcript of the testimony
12  given by me at my deposition on August 16, 2024,
    and that said transcript constitutes a true and
13  correct record of the testimony given by me at
    said deposition except as I have so indicated on
14  the errata sheets provided herein.

15

16       _____

17              DANIEL BRANNIGAN

    No corrections (Please
18  initial)_____
    Number of errata sheets
19  submitted_____(pgs.)

20  SUBSCRIBED AND SWORN to
    Before me this _____ day
21  of _____, 2024

22  _____
              NOTARY PUBLIC
23

24
```

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 437

```
 1   STATE OF ILLINOIS )
                        ) SS.
 2   COUNTY OF COOK    )

 3

 4        I, Kari Wiedenhaupt, Certified Shorthand

 5   Reporter, do hereby certify that on

 6   August 16, 2024, the deposition of the witness,

 7   DANIEL BRANNIGAN, called by the Defendants, was

 8   taken before me, reported stenographically, and

 9   was thereafter reduced to typewriting under my

10   direction.

11        The said deposition was taken at the

12   offices of Hale & Monico, Room 301, 53 West

13   Jackson Boulevard, Chicago, Illinois; and there

14   were present counsel as previously set forth.

15        The said witness, DANIEL BRANNIGAN, was

16   first duly sworn to tell the truth, the whole

17   truth, and nothing but the truth, and was then

18   examined upon oral interrogatories.

19        I further certify that the foregoing is a

20   true, accurate, and complete record of the

21   questions asked of and answers made by the said

22   witness, DANIEL BRANNIGAN, at the time and place

23   hereinabove referred to.

24
```

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 438

1          The signature of the witness, DANIEL

2    BRANNIGAN, was reserved by agreement of counsel.

3          The undersigned is not interested in the

4    within case, nor of kin or counsel to any of the

5    parties.

6          Witness my signature as a Certified

7    Shorthand Reporter for the State of Illinois, on

8    August 26th, 2024.

9

10

11

12

13

14    _____
      Kari Wiedenhaupt, CSR
15    161 North Clark Street
      Suite 3050
16    Chicago, Illinois 60601
      Phone:  312.361.8851
17

18
      CSR No. 084-004725
19

20

21

22

23

24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 439

**A**

**A-Y** 297:3,10
**a.m** 1:21
**a/k/a** 366:16
  381:23 382:23
**Aberdeen** 2:3
**ability** 349:4
  426:24
**able** 15:6 174:12
  204:16 241:6
  243:12 263:10
  325:11
**access** 142:12
**accompanied**
  149:17
**accounts** 427:12
**accuracy** 106:6
**accurate** 34:6
  46:3,15 285:22
  437:20
**accurately** 7:12
  59:3 412:2
**acronym** 144:17
**activity** 112:24
  112:24 113:7
  232:18
**actual** 114:6
  180:22
**ad** 115:6
**add** 178:14
  205:10
**added** 9:22
  156:9
**addition** 140:8
  324:3
**additional** 80:15
  87:13 88:15
**Additionally**
  61:21
**additions** 89:5,8
  133:6
**address** 91:6
  210:18 315:6,9
  361:9 366:19

378:7,9
**addresses**
  247:23,24
  309:3
**Adduci** 382:10
  383:1,4
**adept** 103:18
**adopted** 165:16
**advice** 170:3
  182:20 196:17
  216:7,11
  222:10,15
  237:16 241:2
  241:12 262:17
  281:6,14
  287:23,23
  289:14 340:4
  392:24 394:10
  398:19 399:12
  401:7 402:16
  403:16 405:17
  416:21 417:4
  417:23 427:10
  431:11 432:20
  433:9 434:1
**advocate** 50:6
  50:22 51:14,15
  51:19 55:4,6
  56:22 58:3
  213:16
**advocate'** 52:16
**affidavit** 26:1,17
  26:21 54:4,6
  54:15 55:24
  56:7,12 57:2
  57:10 58:5
  59:4 64:17
  65:22 68:21
  71:24 72:7
  74:5,18 76:20
  78:22 79:11,12
  80:6,16,17
  81:9 86:11,24
  88:16 173:8,17
  173:19 178:17

211:21 212:16
212:18,22
214:15 247:10
265:5 272:20
273:2 279:15
282:16 285:22
286:1,14,15
291:3 363:15
365:6 379:6
**affidavits** 7:24
  25:21 27:7,12
  27:16,24 28:15
  45:1,5,11 46:1
  46:2,10,15,22
  59:1,10,22
  60:4,9,23 61:6
  61:11,22 62:16
  62:20 81:21
  103:19 104:23
  137:17 173:1,2
  176:21,22,23
  178:2 179:1
  185:14 212:1,4
  214:5,10
  251:11 252:5
  258:2,3 265:1
  271:21 272:7
  282:17,18
  296:15 361:8
**afoul** 400:24
**African-Amer...**
  384:10
**afternoon** 98:22
  99:2
**age** 302:10
**aged** 180:16
**agencies** 119:3
  234:11
**agency** 119:6
  226:8,11,12
**aggregation**
  154:10
**ago** 8:22,22
  123:5 321:2,8
  325:16 353:21

355:17
**agree** 29:5 60:24
  71:16 102:17
  104:21 105:2
  163:8 203:24
  205:2,8,18,24
  248:13 395:4
  420:13 429:12
**agreed** 52:16
  59:4 247:10
  260:12
**agreement**
  438:2
**Ah** 173:16
**ahead** 15:15
  21:23 22:1
  30:24 31:18
  35:7 38:12
  43:24 53:5,6
  58:13 66:10,11
  70:19 93:23
  100:21 101:6
  104:3,11 106:3
  108:10 109:18
  118:12 128:13
  140:4 142:5,16
  155:24 167:4
  169:20 172:16
  178:15 184:23
  186:12 211:10
  237:7,10 240:1
  243:22 248:15
  251:22 252:10
  252:12,24
  257:12 262:20
  277:17 280:9
  282:10 287:9
  287:10 289:8
  297:22 313:6
  316:12,14
  317:13 323:4
  348:23 354:14
  360:9 362:5,6
  410:21 414:10
  416:10 431:2

**aid** 172:9,10
  174:17 176:7
**alibi** 371:4
**alive** 141:1
**allegations**
  415:14
**alleged** 367:17
**allegedly** 254:1
  254:11 302:20
  432:1
**allow** 166:22
**Allyson** 2:18 5:7
  6:13 64:9
  340:9
**Allyson's** 414:9
**aloud** 45:1
**amount** 157:14
  247:21
**and-** 2:6
**answer** 6:23
  20:2,3,4,5,6
  22:2 35:19
  49:16 73:13
  90:19 93:6,18
  97:22 103:4
  104:11 106:10
  113:17 118:13
  128:13 136:10
  136:17,19
  138:1,5 139:11
  163:20 164:4
  164:13,22
  165:11,17
  166:11,22
  167:14,17,20
  169:7,11,14,23
  170:7,13 171:1
  171:5 174:13
  176:17 196:3,5
  196:20 197:12
  202:1,6,14,17
  202:21,23
  203:5,18
  204:15 205:6
  213:3 214:23

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 442 of 492 PageID #:7904

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 440

215:12,15,24
216:7,14 219:4
219:15 220:11
221:14,20,23
222:3 234:17
239:15,18,21
240:23 241:9
241:14 244:24
246:22 247:4
253:3,6,9,10
262:12 263:4
263:11,16
264:4 267:22
268:4 271:7
281:2,8,10
287:2,7,18
288:1,12,16
289:11,16
316:7,14 319:8
319:15 323:4,4
324:11,23
325:8 329:12
329:20 337:20
338:22 339:15
340:1,3 357:3
368:8 390:2,18
390:20 391:1,7
392:4,24
393:14 394:6
394:10,20
395:22 396:6,7
396:9 397:17
398:3,9,16
399:1,6,18
400:1,12 401:2
401:4,18,22
402:10,13
403:13 404:1
404:14 405:11
405:18 410:11
410:14 412:10
413:19 414:1
415:4,9 416:15
416:19,22
417:4,18,22,24

419:15 420:5
422:9,10,20,23
426:19 427:6,8
427:18,20
431:5,8,10
432:16,21
433:5,21 434:3
answered 51:22
77:2 174:21
175:22,23
176:3 184:22
185:4 186:11
202:2 203:12
203:19 219:22
219:24 220:1
221:7 243:21
250:24 251:1,3
251:18 257:5
262:21 283:12
284:9 286:9
373:16 385:1
answering 175:6
175:12 423:16
427:23
answers 257:5
389:6 437:21
Anthony 1:6,7
224:2,4,19
436:6,7
anybody 155:20
172:11 193:7
217:15 218:3
230:12 235:15
330:12 354:2,8
359:22 376:19
405:1 423:20
anymore 155:12
339:18
apartment
21:10 174:4
apologize 27:3
119:17 187:12
187:23 278:11
414:12
Apparently 92:4

appeals 419:1
appear 40:8
254:12 274:12
355:24 356:4
appearance
305:15
APPEARAN...
2:1 3:1
appears 18:24
22:9 23:5,19
45:1 64:8
70:18,24 79:20
90:23 273:16
278:1 346:2
376:1 380:12
380:16 381:3
apple 381:14
applicable
121:15
application
108:16,20,21
108:24 203:7
applied 120:17
122:23 232:10
applies 202:17
apply 121:16
397:5
applying 397:9
397:10
appreciate
64:15 349:5
397:14
approach 134:7
175:14 237:18
appropriate
166:18
approval 149:13
153:19,22
approved
152:23 236:18
approximately
13:7 15:6
99:18 110:23
111:1,21
April 26:5,22

area 112:6
114:21,22
224:23 229:21
231:13,14,14
232:21,23,24
233:1 251:20
300:21 343:7
area-specific
111:5
areas 112:2
113:15 114:8
229:18 230:9
232:19
arguing 82:23
83:12,14
275:10
argumentative
175:21 243:21
247:17 252:22
282:8 289:6
Armed 343:5
array 27:18 83:2
319:3,11,24
320:7 321:21
322:5,13
323:10 324:6
327:8 329:2,24
331:12 332:19
343:7,12,17
425:11,12
arrears 12:22
arrest 8:1,3,6
29:12 72:17
85:10 146:21
148:4
arrested 30:9
65:24 66:19
193:5,7,11
arrests 343:8
arrival 13:6
54:16
arrived 300:21
301:7
arrow 85:21
277:19,21

articulate
173:21
ASA 293:11
417:13
aside 76:19
77:19 304:2
317:20,20
340:5 344:2
345:4 387:14
asked 9:3 11:12
33:16 41:17,20
51:22 58:24
67:12 77:1
93:2 105:14
116:12 125:17
136:16 154:11
165:18 167:9
171:6,9 173:23
174:11,21
175:22,23
176:3,20
184:10,22
185:4,9 186:11
188:4,13 189:1
201:22 211:15
211:17 219:22
219:24 221:7
240:18 243:21
244:12 245:8
246:1 250:24
251:1,3,18
256:20 257:5
258:17,19
259:3,11,16,20
259:23,24
260:8,16
267:19 269:4
270:22,24
282:5,12,16
283:12 284:9
284:13,23
286:9 288:5
289:1 290:22
296:7 299:2
312:21 316:8

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 441

316:16,17
321:6,12,14
325:6 350:9
358:21 366:21
367:19 369:20
373:16 374:8
385:1 388:3
395:2 399:23
400:10 401:12
401:21 405:21
410:24 414:5
414:11 424:8
434:2 437:21
**asking** 33:4,17
42:16 46:21
54:9,13 59:9
63:5 131:12
161:7 175:17
177:14 185:24
229:10 248:9
255:24 257:17
257:23 261:22
275:21,22
276:8 296:13
322:18 324:11
324:15 328:1,3
330:4 331:3,22
334:15,16,19
335:7 339:8,9
343:22 367:24
368:3,6 374:6
385:24 386:2
388:13 391:12
391:13,14
392:8 395:9
396:11 401:13
407:23 410:5
419:22 435:2
**ass** 269:22
**assign** 235:20
**assigned** 16:7
18:3 22:18
93:4,8 114:12
116:4 124:22
125:4,13,23

126:1 127:17
128:10,19
129:20 130:9
133:13 135:20
138:21,23
139:20 141:4
188:20 198:4,6
198:7 199:4
207:17 216:17
230:3 232:14
235:3 238:2,3
244:13,17,19
245:2 248:21
249:6,16,23,24
260:21 262:3
314:21 351:16
359:1,5,22
360:23 361:20
361:23 362:12
362:13,22
363:18 364:1,3
364:7,19 365:9
366:8 370:5
406:9
**assignment** 14:5
14:16 15:2,7
15:13 16:14
17:12 19:11,18
19:20 24:1
96:12 188:18
197:1,5,8,19
219:17 248:6
248:11 285:24
291:2
**assignments**
13:13,19,22
16:2 110:3
125:20
**assistance**
236:24 237:5
**assistant** 14:6,8
14:12 122:15
138:8 164:10
189:22 315:21
346:9

**associated**
308:22
**associates**
251:14 252:8
**assume** 150:18
199:21 223:7
318:16 382:22
**assumes** 38:21
39:8 84:6
**assuming**
282:17
**assumption**
415:22
**ATF** 119:6
234:22 235:1
**attach** 314:23
**attached** 92:8
144:24 153:12
315:12 317:10
361:7 363:15
365:6
**attachment**
153:13
**attempt** 139:22
189:19 395:8
**attempting**
95:13 97:18
**attempts** 19:23
20:18
**attending** 5:15
**attention** 27:5
219:7
**attesting** 252:6
**attorney** 6:20
10:2 13:14,15
14:6,6,9 18:15
40:7,17 53:7
57:9 61:16
80:14 109:15
117:22 119:9
121:14 122:16
122:21 123:3
123:13,16,20
124:7 125:19
126:6,12

128:19,24
129:10,19
130:1 132:5
133:13,20
134:9,11,17,20
135:4,13,23
138:23 139:4
139:20,23
140:9 143:16
144:24 145:5
145:10 148:9
148:20 150:17
151:5 152:24
153:24 154:2,5
154:14,19
155:1 164:10
164:10 170:2
172:12 179:4
196:18 198:22
199:12 202:16
211:20 213:1,5
213:10,20
214:1,4,10,14
216:7 222:12
222:14 223:22
225:22 226:20
228:10,14,18
236:5,22
241:24 254:10
254:13 256:17
256:19 266:11
267:15 268:7
268:14 294:17
295:12 320:13
320:21 328:3
346:9 352:12
353:2,14,15
356:8,8 357:24
359:15 367:24
377:10 399:24
400:11 405:5
405:24 409:16
409:23 417:13
417:13 421:11
422:3 424:16

428:19 431:11
**attorney's** 3:7
3:10 5:13
10:12,15,18
11:3 12:1,8,12
12:17,19 13:7
16:1 17:18
22:18 40:14
96:8 99:17,22
100:12 101:3
102:8,16,21
107:9,14,22
108:1,7 117:7
119:9 120:18
121:3,9,17
124:1 125:22
134:3 136:9,18
136:23 137:24
138:5,8,9
139:8,11
142:10 144:3
146:3,16
163:19 164:7
164:22 168:24
169:22 170:7
170:12 171:1
191:22 196:2
196:15 199:7
200:1,13 204:9
214:22 215:11
215:18,23
217:7 221:9
226:19 227:1,9
227:15,22
228:1,4,6
235:23 236:12
236:23 237:21
238:7 239:14
240:22 241:2,8
241:20 252:19
253:2,8 263:6
267:21 281:1
287:1,17
288:11 289:10
289:14 294:8

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 442

310:4 315:22
328:2 332:2
335:5 338:8,21
339:15 357:9
357:14,15
376:13,17
387:18 391:15
392:10,23
394:9,13,19
398:8,18,24
401:7 402:15
403:4,15
405:17 406:2
410:10,13
411:8 415:3
416:14,20
417:3,14,17
419:14,23
420:2,8,10,16
421:4,14,15,18
421:20,24
422:14,23
427:4,10,16
431:4 432:15
433:4,9,20
434:1,4
**attorneys** 48:18
48:20 98:12
133:16 170:3
189:23 216:4
237:13
**attorneys'**
399:12
**attractive**
180:16
**attributed** 278:2
279:9
**atypical** 124:12
**audio** 148:10
151:14 152:7
152:14 197:3
**August** 1:21
26:1,18 64:17
80:6 306:19
307:2 359:9

436:12 437:6
438:8
**author** 356:21
**automatically**
407:21
**availability**
327:8
**available** 140:18
140:22 141:21
142:1,3 313:20
391:2
**Avenue** 2:8
**avoidably**
400:17
**aware** 23:6 24:4
93:1 228:7
231:18 232:2,7
352:21 370:3
373:3,8 404:21
405:5 415:13
**awest@halem...**
2:20

――――――

**B**

**B** 4:8 6:10
**B-E-R-T-H-A...**
91:11
**back** 9:11 28:6
32:11 56:18
64:22 68:9,14
69:7 71:9 78:2
78:5 79:8
84:18 87:16
89:23,23 97:7
113:10,24
132:21,22
135:21 151:20
154:4 159:7
160:22,24
162:1 186:15
187:8,13,18
190:2 203:14
208:2,4 226:3
238:13 244:10
258:24 289:2

306:22 307:5,7
307:10,12
308:1,9 310:3
335:14 354:24
357:17 368:11
369:4,12,24
370:12,19
372:18,18
376:11 391:3
392:17,18
395:8,8 410:3
410:6
**background**
82:7,8 109:23
118:5,16,17,23
**backwards**
269:22
**bad** 82:5,9 284:1
369:7
**ballpark** 143:21
**Bamford** 11:13
130:19
**base** 322:19
**based** 17:8
19:18 21:12
23:24 25:2,20
25:24 26:16
29:2 39:3,18
44:24 52:6
56:10 57:1
71:1 82:9
90:20 91:5
93:11 99:16
118:13 122:2
149:11 164:13
165:18 166:16
194:18 207:10
213:10 239:10
239:21,24
240:2 253:7
254:19 294:17
311:7 324:11
327:13 330:5
331:3,22
333:15 334:2

334:13 360:5
385:17 387:17
391:21,22
394:6,24 396:4
401:15 403:10
403:15 413:16
414:17 417:23
427:21,22
431:11
**bases** 166:17
**basic** 128:8
**basically** 12:21
21:11 31:2
49:24 118:24
126:13 130:2
135:8 154:8
174:5 257:16
257:23 317:8
**basis** 115:7
221:19 356:22
395:19 429:13
433:1
**Bates** 18:15
64:10 272:24
291:12 295:10
298:18 304:8
309:16 341:4,8
345:9,11,19,21
366:3 430:6
**Bates'd** 364:16
**Bates-stamped**
18:14 63:23
**bathroom**
298:10
**Bear** 65:21
**bearing** 433:14
**bears** 409:14
**beast** 181:7
**beef** 213:15
**began** 262:12
**beginning**
325:23
**behalf** 2:11,16
2:21 3:6,10
5:20 87:2,24

136:8,18,22
137:19,23
163:18 169:21
196:1,14
214:21 215:10
215:22 221:8
236:3 239:13
240:21 241:7
253:1 267:20
279:17,20
280:2,4,21,24
281:17 286:24
287:16 288:7
288:10 289:9
338:20,20
389:9 394:18
398:24 405:10
410:9 415:2
416:7,14
417:17 419:13
420:16,20,21
421:2,3,8
422:12 427:3
427:15 430:24
431:3 432:14
433:3,17,19
**belabor** 336:13
**belated** 25:13
43:2 47:11
48:19,22 49:1
54:22 86:17
205:10
**belatedly** 221:13
**belief** 412:16
413:5
**believe** 11:13
15:9 17:16
39:11 56:18
83:12 90:13
93:7 94:10
95:10 106:15
124:20 130:16
130:20,22
147:6 152:13
177:5,6 184:2

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 443

184:8 187:9
206:21 210:23
221:6 224:24
230:22 235:3
235:15 245:12
249:4 281:24
295:16 296:3
312:17 313:1
364:13 367:1
370:17 381:18
387:17 388:1
394:2 398:3
400:17 402:20
403:3,17 418:1
418:5,13,16
419:1 424:9
427:24
**believed** 57:8
387:10 409:20
411:4
**bell** 10:8 92:21
95:7 231:3,7
264:23
**bells** 210:10
264:11
**benefit** 397:5
**Berthay** 91:10
91:12
**Berwyn** 2:8
**best** 7:10 92:21
93:9 94:24
95:5 117:5
141:8 146:11
146:14 155:8
160:8 174:24
192:6 199:16
205:15,16
207:3 210:3
211:4 243:14
274:20 278:18
311:24 329:20
330:14,20
331:10 349:3
349:14 357:3,6
419:19 426:24

**bet** 260:12
**better** 60:2
159:17 182:2
200:8 348:17
354:17,24
355:10,12
357:20
**beyond** 136:10
136:20 139:13
167:17,20
183:7 232:20
271:23 272:1
281:2 303:19
384:4,7
**bias** 413:12,15
414:2,16,22
**biases** 412:15
413:4 417:7
**big** 84:16 181:14
181:15 182:8
246:24 367:4
367:13 368:15
368:17,21,23
369:8,9,10,17
370:9,22 371:5
371:24 372:2
372:17,20
373:4,9,14,24
374:2,4,9
376:11 377:20
381:23 382:11
382:23 383:2,5
383:13 384:3,5
384:5 385:4,5
385:10,21
386:6,7,16,24
391:11
**bigger** 210:18
**Bill** 264:17
**bit** 149:6 183:15
289:20 347:16
369:4
**bits** 101:16
**black** 32:3,23
50:22 56:22

58:3 177:11
180:11,12
181:4 214:15
214:16 301:24
344:8,13
384:10
**Blagg** 2:7,7 5:15
5:17,18 80:14
268:10
**blank** 95:19
359:6,7
**blanks** 362:23
**board** 77:9,10
420:16,19
421:2,8
**Bogucki** 1:6
223:1,9,23
228:24 230:14
230:15 231:9
293:10 343:17
436:6
**bogus** 173:18
**bore** 6:19
**boss** 113:21
114:21
**bother** 384:16
**bothered** 212:5
212:9,14
251:12 252:7
252:18 266:11
**bothering** 177:3
179:8,15,16,21
**bottom** 50:6
52:13 60:18
68:15 72:14
87:12 88:6,14
254:23 265:13
266:5 269:17
269:24 270:2
270:14 295:12
300:23 338:12
342:2,6 346:4
354:15 358:9
362:14 374:12
374:19 375:8,9

375:10
**Boulevard** 1:19
2:18 3:3
437:13
**bounce** 132:21
132:22
**bounced** 154:4
**boundaries**
410:20
**bounds** 320:19
**box** 301:16
302:9
**boy** 6:11 401:15
**Brady** 121:6
122:3,4,9,22
124:1,5,8,13
124:21 125:4
125:11
**Branni-** 355:18
**Brannigan** 1:12
4:3,10 6:1,6,10
6:12 18:7,9,12
18:18 47:13
62:15 63:17,21
64:21 77:22
78:2,14 89:17
90:6,10 98:9
98:23 101:11
101:24 102:21
122:18,23
138:20 167:16
168:15 219:1
221:17 222:24
290:2 298:20
304:11 309:12
318:1 325:4
332:7 336:17
340:13 348:3,3
348:15 349:7,7
349:17,17
355:19,19
356:19 360:24
363:18 366:9
368:7 379:22
389:10 393:23

395:10 396:11
410:12 428:7
436:11,16
437:7,15,22
438:2
**Brannigan's**
204:7 389:18
390:15 395:14
**bread** 253:17
377:12
**break** 6:22,22
6:24 63:1,4,5,6
63:7,11,12,15
93:22 131:5,13
138:13,14,17
192:16 222:19
222:21 298:10
298:14 328:6
328:13 388:21
389:2 428:2,4
**bribe** 39:19
**brief** 346:13,17
**briefly** 265:1
**bright** 395:7
**bring** 68:14
391:3 392:17
392:18
**broader** 410:23
**brought** 66:20
219:6,6
**brown** 302:11
**bucket** 384:6
**build** 344:8,13
**building** 210:18
**built** 413:12
**bulk** 140:14
**bullet** 191:14
272:10
**bullshit** 46:11
**bunch** 163:3
369:11
**burner** 370:19
**BURNS** 2:12
**business** 179:2
**buying** 315:5

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 444

**C**

C 2:12 3:2,2
130:19
C-A-I-R-A
130:22
C-A-R-R-O-L...
8:15
cabinet 242:7
Caira 130:19,21
call 15:22
113:20 143:1
200:3 301:4
367:13 368:15
called 1:13 14:7
145:8 253:12
296:3 305:19
305:24,24
369:17 370:22
384:6 437:7
calling 91:3
calls 28:2 30:21
34:15 38:21
41:9 43:22
46:5 56:13
58:11 65:16
68:1 69:3 72:1
77:2 78:24
81:11 84:6
205:12
camera 152:11
152:16,18
capacity 12:8
226:7 421:11
421:14,19,21
422:2
caper 367:4,14
368:16 369:10
369:17 370:23
373:14 376:12
381:23 382:11
383:2,6,14
capital 13:1
233:23 273:24
care 286:18

career 100:9,12
102:4 199:20
319:24 321:20
404:20 409:15
409:22 411:1
412:14 413:3
413:16 414:17
caring 286:19
287:13
Carroll 8:12,14
8:15,19,21 9:2
9:5,10,14,19
10:1 18:2 19:1
19:2 21:14,16
45:12,18 156:4
156:18 157:12
211:12
Carroll's 23:2
65:3
carry 311:20
case 7:20 9:2
11:7 14:17
15:2,12 16:14
37:18 80:16
92:1,8,15 93:8
94:22 95:22
97:14 106:17
110:16,21,24
111:4,8,12,24
112:5,13,16,23
113:1,5,10,14
113:21 114:6
114:12,13,14
114:19 115:14
115:15 116:1,2
116:5,6,12,13
116:16 117:1
124:14,22
125:5 128:19
128:24 129:20
130:9,12
131:18,20,24
132:2,6,19
133:4,8,9,10
133:20 134:7,9

134:20 135:8,9
138:23 140:20
144:9 147:6
151:7 152:2
154:15,16
155:19,22
156:18 165:7
166:1,4,7,14
166:19 167:1,2
169:6,8 171:7
173:9,11,14
188:21 189:16
189:24 190:5
190:11 191:10
193:9,18,20
194:2,13,14,16
195:5 197:1,5
197:8,20 198:8
199:4,10 200:1
200:7 205:18
206:8,23
207:13 217:12
217:13 219:17
221:18 224:24
225:6,8 226:5
227:19,20
229:1,11,14,15
229:15,22
230:3,5,6,8,18
230:19,21
231:9,12,13,15
231:16,17,19
232:3,14,16
233:3,4,6
235:9,17,18,22
236:11 238:2,7
243:6 244:6,14
244:18 245:2
248:21 249:6
249:16,23
250:20 253:18
259:22 260:22
261:5,21 262:4
262:14 263:8
290:8,24

299:16,19,21
301:6,13
314:21 315:11
325:22 326:9
326:16,17,20
326:22 327:1
328:20,24
330:15,20
331:8,11 332:5
332:17 333:11
334:22 335:5,9
344:19 346:11
351:2,16,17,18
352:3,4 353:17
354:3,9 356:10
359:1 361:20
365:22 367:4
367:13 369:16
370:1,3,22
371:22 372:11
373:13,21
376:14,16
377:15 383:2,5
383:8 387:16
387:20 391:13
391:14,21
395:16 398:11
411:16,24
412:4 415:15
431:13 433:12
438:4
cases 13:2 16:3
91:23 106:18
106:23 107:4
112:1,6,21
113:14,23
114:1,23 115:4
115:16,19
116:18 126:14
140:13 141:3
143:15,22
155:15 163:11
163:22,23
164:2 189:6
200:24 201:9

203:22 204:11
204:22,23,24
206:14,16
223:22,23
227:14 229:19
230:1 232:8,11
235:19 236:17
237:13,17,21
391:22 395:10
398:20 400:10
401:13,19
403:5 412:17
cashed 177:21
category 362:15
caught 101:16
191:13 272:10
caused 197:18
caution 139:9
CCSAO 317:22
334:23 389:19
390:15 395:9
398:6
CCSAO-CIU
18:15 63:24
77:21 89:19
336:16 341:9
CCSAO_Conf...
345:11
Center 3:8
357:18
Central 66:21
72:18
certain 58:2
103:12 117:16
118:6 127:5
242:17,20
300:4 308:2
387:9,17
certainly 167:10
325:17 408:16
409:8,14
certainty 227:7
243:12
certificate
433:11

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 445

**Certified** 1:20
437:4 438:6
**certify** 437:5,19
**chain** 154:23
**chance** 292:4
304:15 340:17
340:18 380:10
**change** 21:17
127:12 132:14
150:9 162:1
289:19
**changed** 49:12
158:11 162:18
**changes** 74:4,8
74:11 132:8
133:5
**characteristics**
183:5
**characterizati...**
352:20,22
353:21 356:16
356:20
**characterize**
109:3 147:18
**characters** 92:8
353:8
**charges** 236:21
426:10
**checking** 115:5
**Chicago** 1:8,8
1:19 2:4,9,14
2:16,19 3:4,8
5:11 99:23
100:11 101:21
107:12,17,21
109:8,14 110:4
110:15 116:17
119:1 120:15
192:5,20
193:15 199:20
204:8,13
206:11,13
229:17 231:21
232:4 233:18
234:10 238:8

294:18 305:5,9
314:21 315:23
320:4,15,16
321:20 322:20
323:6 324:12
325:7,18
327:14 328:16
330:8 331:4,23
332:17 333:10
334:3,14,19
336:2 361:10
403:18,20
404:7,20 405:6
406:4 409:15
410:16,20
412:14,17
413:3,6,17
415:14,23
416:4 422:3
436:8,8 437:13
438:16
**chicken** 88:8
**chief** 91:15
235:20
**child** 12:20,22
13:8 426:3
**children** 210:12
210:15
**choose** 434:16
**chose** 109:8
**Christmas**
228:21
**circumstances**
142:2 197:17
199:2
**City** 1:7,8 2:16
5:11 204:8,13
206:11,13
236:4 325:18
436:7,8
**CITY-JF-15145**
291:13
**CITY-JF-15167**
304:9
**CITY-JF-15169**

298:18
**CITY-JF-15191**
309:17
**citywide** 111:5,6
111:8 229:20
230:19,20
**CIU** 126:22
345:11 357:17
**civil** 1:15 371:22
**claim** 101:5
**claimed** 370:8
**claiming** 50:15
**clarification**
14:4 122:13
335:17 394:22
**clarified** 123:8
322:18
**clarifies** 353:5
**clarify** 178:14
332:13 335:1
**clarity's** 115:2
**Clark** 438:15
**class** 117:23
**classified** 194:6
**clear** 11:24
33:24 35:9
43:6 51:18
55:2 74:15
112:19 115:3
165:19 180:23
187:14 192:16
249:13 251:21
257:11 273:11
284:4 319:10
368:5 391:8
402:11 417:15
**clearly** 388:5,9
388:17
**client** 193:10
392:13
**Cliff** 5:12
416:10
**CLIFTON** 3:7
**Clinton** 264:11
264:13,16,17

343:6,12,18
**close** 238:24
**clothes** 178:7
**clue** 198:3
341:23 343:21
351:13 353:24
372:24
**coerced** 211:24
212:2,3,7
217:13 218:16
219:9,18 222:8
432:3
**coin** 229:24
**cold** 110:16,21
110:24 111:4,8
111:12,24
112:1,5,6,13
112:16 113:5
113:14,14
114:6,12,13
115:4,14 116:1
116:5,12,16
193:18 194:2
194:13,14
224:24 225:6,8
229:1,11,15,19
229:22 230:3,6
230:8,18,19,21
231:11,13,16
231:17,19
232:3,8,11,14
233:2,4,6
235:9,17,18,19
235:22 236:10
237:13,21
238:7 326:16
326:17,20,21
327:1 328:20
328:24 331:8
332:5,16
333:11 335:9
**collect** 101:2
**collecting**
100:18
**collective** 198:7

**color** 181:21
182:24 183:2
**colored** 414:23
**column** 300:23
301:14,16
**combination**
373:22
**come** 29:13
30:10 31:6
33:1 34:3,11
34:24 35:13
40:8 51:6,20
108:7,12
109:22 137:17
173:5 190:2
236:14,16
254:3,11
**coming** 13:23
30:9,18 48:24
49:10 50:13
86:2 115:6
177:4 247:12
256:4 370:8
**commando**
272:18
**commencing**
1:21
**Commission**
419:8
**commit** 186:1,9
186:23 188:1,6
188:9 281:18
282:6,21 286:8
286:21 287:15
288:6 289:3
302:21
**committed**
282:13
**common** 298:1
317:4
**commonplace**
22:4
**communicating**
354:9
**community**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 446

384:10
compared
172:24 173:6
competent
419:4
complain 214:1
complaining
170:18
complete 95:19
129:7 130:3
140:19 437:20
completed
162:17 167:6
completely
144:5 202:4
complexion
302:1,12 344:9
344:14
compromise
332:20
computer
158:19,21
159:2,18,22,23
160:23 161:17
161:18 162:5
163:4 305:2,4
305:8,12
computer-gen...
159:3,4
computers
158:23 160:8
162:5
concerned
256:18
concerning
335:18 353:21
388:11
concerns 239:9
conclude 213:9
concluded
435:14
conclusion
205:13 213:14
389:14 390:7
390:11

concur 395:4
conditional
168:17
conditions
221:12
conduct 117:20
119:19 120:2
120:11 135:13
138:21,24
140:9 148:10
153:4 163:9
166:8 320:6
322:12 323:9
324:6 327:7
329:2 401:14
conducted 128:9
149:8 152:15
155:14 417:8
conducting
120:17,19
135:5 146:13
156:13 189:7,8
conduit 134:2
confer 202:18
confidential
313:5,7,13,17
313:24 314:1
314:14,16,22
315:14,16
316:17,22
317:1,5,10
348:8,20
confines 392:11
confirm 40:12
conflict 180:5
conflicts 13:2
317:22
confuse 106:13
165:12,23
confused 106:8
221:22 278:10
327:19
conjunction
235:9,23
236:11,23

238:8 263:7
connect 395:11
connotates
269:8
connotation
383:9,11,19,22
383:24 384:1
consider 146:11
147:24
considered
231:16 315:14
336:11 417:6
430:10,20
consist 12:16
consistent 72:7
89:9
constitutes 70:9
436:12
consult 338:18
339:23
consulted 339:1
339:9
contact 92:23
376:2 377:18
contacted 11:2
375:14,19
contains 373:3,8
contemporane...
148:21 149:7
154:11,14
155:13,19,21
225:7 242:13
content 132:14
153:17 263:11
contents 67:6
84:4
contest 174:24
context 368:2
continue 332:12
335:1
continued 3:1
36:10
continues 72:23
continuing
166:23 333:20

334:17,24
contractor
226:5
contributed
403:7
convenient
131:3,7,13
conversation
9:9 38:16 39:4
49:19 56:6
147:18 254:19
260:14 371:3,8
371:10,11,14
373:20 385:3
conversations
9:12,24 172:8
172:11
convicted 116:6
163:12 166:10
168:10 418:1,5
418:17
conviction 15:18
15:21 16:6,8
115:16,18,19
115:23 116:13
116:19 117:2
126:23 127:9
127:13 128:4
143:24 169:2
169:16 201:2
205:3,19 207:5
403:7 412:4
convictions
143:17 200:18
203:24 204:11
Cook 3:7 5:13
11:24 75:3
117:21 123:13
123:19 124:6
191:22 198:21
294:7,19 338:8
405:9,23 406:1
409:16 410:13
411:8 437:2
Cooper 95:7

190:17 253:17
363:10 364:8
364:11 371:15
371:21 372:15
372:16 377:11
377:21,22
378:4,10,14
Cooper's 373:12
cooperate
375:15 376:7,8
376:10
cooperating
77:10
cop 317:6
copied 380:18
copies 7:24
11:20,22 162:4
196:23 291:18
copper 118:1,4
coppers 235:2,2
402:7
cops 102:4 402:6
copy 64:8 65:1
90:11,14,23
161:24 178:11
291:15 337:12
342:1 354:17
354:19 355:10
378:20 388:2
428:19 429:20
435:3,3,8,12
corner 380:21
correct 11:8
12:3 13:21
17:10 19:21
24:3 25:22,23
26:20 27:14
28:10 29:7
30:6 31:9,12
32:17 35:24
36:19 43:15
45:3 46:16,17
47:20,24 48:1
50:7,8 52:14
56:24 57:12

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 449 of 492 PageID #:7911

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 447

66:8,17 67:4,8
67:17 68:3,8
68:11,12 69:1
70:23 71:15
72:8,11 73:20
74:6,18,23,24
75:9,10,13
78:10,11 79:24
80:1,4,11,12
81:3 83:17
86:1 87:4,20
88:10 89:6,7
89:13 97:2,9
99:19,22
100:13,14
102:10,22
103:20 110:12
110:13,14,17
111:7,10,23
112:3,4,6,7,10
112:11,14
114:11 116:2,3
118:18 120:14
122:7 123:22
126:8,9 127:10
127:11 128:7,8
128:20 129:10
129:11,20,21
135:14 144:9
144:13 149:14
149:15,18
150:14 152:5,6
152:12 155:17
157:8 159:23
160:3 161:20
166:1,5 174:14
174:15 175:8
185:3,6 186:10
188:6,7,10
192:6,21,22
193:5,15,17
194:20 199:22
199:23 209:24
212:10,11
223:10,20

238:20 239:7
242:24 243:19
246:17 250:10
250:23 252:14
256:21 259:11
259:12 260:3
260:18,19
263:3 269:5
273:8 279:9,17
279:18 282:7
282:22 283:11
284:8 285:1,9
286:8 290:17
292:22,24
293:4 294:2
297:3 298:4
300:7,11,11
305:11 307:18
309:5 312:19
312:20 316:22
316:23 318:18
318:19 319:19
322:21 324:12
326:16 327:15
334:3,12 342:2
342:22 343:3
344:14 346:20
350:19 357:22
358:4 359:2,3
359:10 360:20
360:22 361:4,5
361:18 363:7
364:19,20,23
365:3,8 366:5
366:14,16,17
366:19,20
367:5,6 371:9
379:20 380:14
380:15 381:24
382:1,5,8
384:12 393:10
394:3 395:23
397:24 401:3
407:14 415:16
415:19 416:1

418:20 419:11
423:18 428:16
428:17 434:7
436:13
**corrections**
160:24 269:16
269:18,20,24
436:17
**correctly** 83:18
101:22 348:12
348:14
**Correctomundo**
399:19
**counsel** 5:4 8:9
122:13,14
136:11 167:16
182:17 202:18
281:3 322:16
324:10 325:13
325:17 327:15
330:2,4 331:2
368:6 395:7
422:17 437:14
438:2,4
**counsel's** 352:19
353:21 356:15
**county** 3:7 5:13
12:1 75:3
117:14,21
123:13,19
124:6 191:22
198:22 294:7
294:19 338:8
405:9,23 406:1
409:16 410:13
411:8 437:2
**couple** 50:18
102:7,15 109:5
158:2 160:21
229:18 250:6
256:3 291:9
371:9 430:8
**course** 37:15
109:20 122:18
171:22 248:17

428:7
**court** 1:1 5:3
7:11 8:14
14:10 16:20,22
25:10 29:13
30:10,19 34:5
34:12 35:14
36:11,15,16,17
39:5,20 40:8,9
41:2,14 51:21
58:18 62:10,11
75:14 76:3
85:11 90:4
102:12 127:21
143:4 160:10
161:6,11
163:15 166:16
175:9 177:9
181:12 183:13
184:21 187:6
200:14,23
203:11,13
206:18 209:14
240:14 244:23
254:3,11,12
256:11 257:3
267:9 271:8
278:12,14
283:23 288:19
288:21 294:9
308:12 316:18
319:15 321:4
328:9 337:21
341:5 350:8
360:10 364:4
369:21 381:13
386:11 389:10
389:12,14,23
390:11 393:10
393:13 410:2,5
417:1 418:19
420:23 430:13
434:21 435:5,8
436:1
**Court's** 389:7

389:13 390:3
390:19 393:15
394:7 397:6
**courts** 1:16
117:13,14
**Coyne** 3:2,2
5:20,20 8:2,4
14:4,8 15:14
20:4 21:22
22:1,12 24:21
25:7,10 29:15
32:2 33:19
38:11 39:21
40:20 42:4,7
48:5 62:8,12
63:4,13 88:1,4
88:11 93:23
96:1,21 97:4
97:19,21
100:20 101:4
103:1,3,21,23
104:3,6,8
105:3 106:2
108:9 109:17
115:9 116:20
118:9 120:20
124:15 125:6
127:23 128:12
129:1 131:3,7
131:9,12
132:24 134:22
135:6 137:10
137:22 138:7
138:14,16
139:6 140:2,4
142:4,15
145:17 146:6
147:8,14
155:23 157:20
160:4,11,13
161:8,11,21
163:13 164:9
164:12,18
165:15 166:11
168:12 169:3

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 448

169:19 170:19
170:22 172:14
174:21 175:23
176:2,5 182:16
182:20 184:14
184:22 185:4
186:11 187:19
189:11 190:21
195:23 197:9
197:11,21
199:5,14
201:14,16,22
202:8,14,23
203:2,4,11,19
204:2,4 205:4
206:2 213:2,12
213:21 216:21
217:16 218:7
218:19 219:20
220:7,9,13
221:2 222:13
233:11 237:6,9
239:12 243:20
245:16 246:7
246:18 247:5
247:14 248:13
248:24 249:18
250:2,13,24
251:2,15,18
252:9,12,20,24
257:2,4,12,19
259:6 262:6,9
263:18,22
264:4 265:3,5
265:16,19,21
265:23 266:2
267:1,11
268:12,22
272:21,23
274:4 280:5,23
281:20 282:23
283:12 284:9
284:16 285:2
285:10,15
286:9,23 287:6

287:10,20
288:8 289:4,22
290:10 291:17
297:12,17,22
307:3 312:10
312:12 313:14
316:9,14
317:13 322:3,6
322:15 323:11
324:9 325:13
325:15,19
326:7 327:10
328:12 329:3
330:3,22 331:1
331:13,21
332:21 333:1
333:22 334:1
337:10,14,18
337:23 338:3
348:7,19
349:21 350:4
350:22 351:9
353:18 354:22
355:1,4,6
356:11 358:10
358:13 371:16
373:15 374:22
375:1,3,5,8,10
375:21 377:1
377:24 378:21
378:23 379:4,9
379:11,15,18
380:1,3,6
382:12 383:15
383:22 384:13
385:1 387:23
388:20,23
389:6 390:6,10
390:19 391:19
392:19,21
393:5,8,11,14
393:18,21
394:4,16
396:24 397:18
397:22 398:2

398:13,21
399:6,9,17,20
400:4,14 401:3
401:24 402:9
402:18,22
403:9,22 404:1
404:10,15
406:14 407:1
407:15 408:1
409:2 412:19
413:18 414:2,7
414:24 415:17
416:8 417:10
418:8,23
426:17,19
428:21 429:2,8
429:12,14,19
430:1,3,23
431:1,17 432:6
432:13 433:18
434:10,12,19
434:23
**Coyne's** 322:23
325:15 388:7
395:5
**CPD** 411:18
421:23 422:12
**create** 412:15
413:4
**credible** 427:2
427:13 432:12
**crime** 76:11,12
82:10 101:23
185:16 186:1,9
186:23 188:1,6
188:10 193:5
234:24 286:8
286:21 287:15
288:6 289:3
299:23 315:12
**crimes** 198:24
234:21
**criminal** 41:8
97:15 122:16
212:10 310:12

407:11,20
408:22 411:2
424:16
**cross-out** 270:4
**crossed** 270:9,11
270:16,17
366:12
**crosstalk** 245:22
322:16,18
**CSR** 438:14,18
**current** 378:7
422:13
**currently** 10:20
10:21 100:16
228:5 334:8
419:21
**custody** 147:3
147:22,23
**custom** 96:7
290:10
**customs** 119:6
**cut** 390:5
**CV** 1:5 436:5

───────
**D**

**D** 4:1
**D-A-N-I-E-L**
6:10
**D-A-V-I-S**
226:17
**Daley** 3:8
357:18
**damn** 163:5
**Dan** 25:7 104:6
262:11 263:18
**Daniel** 1:12 4:3
6:1,10 226:17
436:11,16
437:7,15,22
438:1
**Danny** 102:21
360:23 363:18
366:8
**dark** 301:24
302:11 344:9

344:13
**dark-skinned**
31:21 32:3,24
52:2 181:3
**database** 311:21
**date** 15:8 19:11
19:15 23:10
78:4,9 89:1
91:21 100:3,4
150:10 245:3,4
246:12 261:15
261:17 347:23
359:8 368:2
**dated** 23:20 26:1
26:2 64:18
80:6 238:20
253:17,19,23
382:2
**dates** 26:8
150:15 370:17
**daughter** 31:11
32:16 49:11,21
50:21 51:13
256:5
**Davis** 226:17
227:3
**day** 19:20
220:20 251:6
378:7 382:6
386:9,19
436:20
**DB** 338:12 381:5
381:24
**DEA** 119:6
126:2 235:1,1
**dead** 232:19
**dealing** 401:20
421:23,23
**death** 79:16
**December** 11:1
12:2 19:12
67:12 79:15
84:15 99:18
239:5 244:14
244:18 260:22

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 449

261:16
decide 186:2
decided 190:12
  261:17
decision 171:5
declaration
  267:1 380:13
deems 392:15
defend 169:1,16
defendant 1:13
  2:16 5:8 6:13
  122:16,17
  411:24 412:3
Defendants 1:9
  2:21 436:9
  437:7
defense 24:5,8
  24:19 25:18
  101:5 361:14
  361:17 363:10
  365:1 366:12
define 171:14
definitely
  278:11 324:17
definition
  112:16 113:4
  172:4,22
delay 250:7,12
deliberative
  136:12,21
  138:1 163:20
  164:1,14
  165:18 167:18
  167:21 169:9
  169:23 196:3,6
  214:24 215:13
  215:24 221:15
  239:15 240:23
  241:9 253:3
  267:22 281:4
  287:3,18
  288:12 289:11
  338:23 394:21
  395:17 396:14
  399:2 405:12

415:4 416:16
417:19 419:15
422:19 427:5
427:17 431:5
432:17 433:5
  433:21
deliver 357:23
delivered 11:21
  154:9
denial 392:12
denied 166:21
  325:23 326:6
  326:11 389:10
dep 292:21
  297:16,19
  309:24 318:10
  398:12 429:19
department
  99:24 100:4,5
  100:11,19,23
  107:7,18,21,23
  109:1,8,14
  110:4,5,15
  116:18 118:2
  119:1,2 121:8
  121:13 192:5
  192:21 193:15
  193:17 226:3
  229:17 231:21
  232:5,12
  233:18 234:2
  234:10,10
  235:24 238:9
  305:5,10 306:6
  306:12 307:6,7
  307:10 314:21
  315:23 320:15
  320:17 322:21
  323:24 326:16
  332:17 410:17
  410:20 412:18
  413:6
depend 97:14
  125:22 126:3
  135:15 140:12

249:8
depending
  140:15 261:14
  290:22
Deponent 3:6
deposed 105:15
  105:18 106:1
  106:16,21,24
  107:3 165:24
  387:15
deposition 1:12
  4:10 6:17 7:16
  7:23 8:11 10:2
  15:5 18:9 19:5
  22:13 63:17,21
  64:7 77:22
  78:19 90:6,15
  105:21 166:3,7
  168:5 170:6,11
  170:24 182:18
  257:8 263:9
  290:2 292:17
  298:20 299:11
  304:11,19,21
  309:12 318:1
  325:21,24
  326:1 336:17
  336:22 340:13
  340:22 371:22
  379:22 387:8
  388:12 389:16
  389:24 390:13
  393:24 394:23
  395:8 396:1,2
  399:24 400:9
  401:13 402:6
  403:1 428:8
  435:14 436:12
  436:13 437:6
  437:11
depositions 1:17
  106:8 182:16
Deputy 303:14
describe 254:20
  254:21 302:20

described 51:15
  52:3 53:22
  177:11 179:9
  368:2,4 385:20
description
  301:21,22
  302:23 344:7
  385:5,9
descriptions
  302:5,16 344:5
  344:6,17
destroyed
  242:17,20
destroying
  123:21
detail 254:21
detailed 234:22
  306:11
details 9:22 31:5
  96:14,17,23
  97:4,10
detection 343:6
detective 19:1
  40:14 41:21
  42:16 110:1,8
  110:10 113:20
  114:7 201:1,7
  203:9 205:1
  206:11 207:14
  207:17,20,20
  207:21 222:24
  223:11,19,23
  224:2,16,18,23
  230:9,24 231:4
  300:22 301:9
  313:20 326:19
  326:21
detectives 27:17
  40:6,17 43:18
  44:7 67:10
  77:9 91:15
  112:12 178:1
  179:4 200:16
  207:19,21
  217:13 218:15

219:17 222:7
223:24 228:23
230:8,23 254:2
254:4,5,17,21
293:9 301:5
326:24 328:20
328:24 329:11
331:9 332:4,16
335:9 343:16
371:23 372:10
372:14
detectives'
  254:7
determine 15:6
  163:11 166:9
  168:9 202:16
deviate 197:18
  290:23
dictated 231:19
difference
  118:19,20
  146:17 310:17
different 69:10
  69:22 83:19
  112:1 117:13
  117:14 119:24
  144:24 145:8
  158:8 165:4,9
  170:12 172:3
  230:9 232:19
  247:23 257:10
  266:18 285:10
  307:24 310:14
  310:17 317:1
  332:7 344:18
  365:14 406:21
  427:12
differently
  343:4
dig 10:9,11
direct 27:5 30:1
  129:23 258:18
direction 437:10
directly 13:16
  338:13

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 450

**dirty** 317:6
**disagree** 203:24
  206:9,14,23
  388:16
**disagreeing**
  429:2
**disagreement**
  391:24
**disclose** 263:19
  264:5
**disclosed** 324:18
**discovered**
  216:18 217:12
**discuss** 8:24
  131:18,23
  134:19 135:3
**discussing**
  385:13,15
**discussion** 387:5
**dispute** 392:5
**distinction**
  118:4,14
  146:24 391:10
  391:12
**distinguish**
  204:7 276:20
**distinguished**
  199:19 413:16
**District** 1:1,1,16
  395:18 436:1,1
**diving** 261:5
**division** 1:2
  238:7 313:21
  315:10 436:2
**Dixon** 377:14
**Docket** 389:8
**document** 18:13
  18:19,21,23
  22:6 56:8
  62:13 64:2,22
  65:13 71:2
  76:8,21 77:8
  78:15,18 80:10
  83:21,24 84:1
  85:3 87:13

88:14 90:20
96:9 167:14
170:14 174:11
238:17 259:14
260:2 263:2,7
268:23 290:20
291:11 292:10
298:7,8 299:3
299:8,10,13
300:2 303:18
303:18,22
304:16,18,22
305:1 309:7,21
309:23 310:3,9
310:11 311:8
317:7,19,21
318:13,20
335:4 336:21
336:24 337:2,6
338:2 339:18
340:21 341:1
341:11 345:9
352:21 353:22
354:16 356:16
357:2 359:12
359:14,17,19
360:13 361:19
366:22 371:7
373:3,8,10
387:14 419:17
419:19 420:4
429:15
**documentation**
11:5 97:16
**documented**
27:24 35:21
36:9 37:11,17
40:5 44:13,18
46:13 47:16,22
52:15 55:13,16
55:20 56:21
57:5,7,13 59:5
61:9,21 68:6
68:14,21 71:24
72:8 73:19,22

75:11 78:8
79:23 83:10
86:11 89:10
95:23 208:12
208:15,17
**documenting**
43:14 76:20
**documents** 7:19
7:22 11:12,20
17:9 19:4 64:5
122:15 141:5
141:17 143:10
263:20 290:7
290:16 291:9
310:18 315:2
317:20 353:16
357:17 370:7
386:15
**doing** 7:9 35:8
63:9 93:6 95:1
156:17,18
157:15 162:1
173:5 227:6
233:20 237:14
262:1 311:18
314:10,24
351:18,19
352:2 406:7
421:10
**domain** 313:18
**door** 247:4,13
271:20
**doorbell** 247:3
**dope** 315:6
**dots** 395:11
**double** 411:20
**doubt** 193:12
319:5 391:2
**downtown**
308:10,12,15
311:19,20
**draft** 151:6
153:6 154:3
159:5,6,22
160:2,3 161:3

161:16,18,19
162:4,9,15,17
162:23
**drafted** 21:13
150:19 162:22
**drafting** 21:16
21:20
**drafts** 21:18
**drawing** 95:19
**drawn** 21:9
174:3
**drew** 85:20
**drink** 211:6,10
**Drive** 2:13
**driver** 253:18
377:12
**drop** 426:10
**dropped** 177:22
183:17
**drove** 55:4,6
56:22
**drug** 234:24
**drugs** 343:8
**dubbed** 383:12
**duces** 263:13,15
263:17
**dude** 82:10
**due** 20:11
348:19 389:22
**duly** 5:1 6:2
437:16
**duplicate**
354:16
**duration** 13:3
111:11
**duties** 12:15
420:10

_____
**E**
**E** 4:1,8
**e-mail** 2:5,10,15
2:20 3:5,9
11:20 90:11,12
90:15,21,24
91:2,5,21

93:11 188:23
264:3 352:4
360:6
**e-mails** 260:23
263:12
**E-R-R-Y** 8:16
**E-Y** 296:23
297:10
**Earl** 419:9
420:20 421:3,7
421:8 422:12
**earlier** 47:16
72:23 126:4
127:4 205:5
232:13 320:9
339:22 358:21
**easier** 323:23
324:3
**EASTERN** 1:2
436:2
**easy** 161:11
**Edward** 95:7
190:17 253:17
363:10 364:7
364:11 371:15
371:21 377:11
377:21
**effect** 369:7
406:13 423:8
423:17
**effort** 141:9
199:3 397:5
**egregious**
172:24 173:10
**eight** 13:8
111:18 278:22
279:4
**either** 35:22
190:19 192:12
202:11,22
207:24 208:9
220:22 374:1,3
409:15
**El** 419:9
**elaborate**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 451

167:17,20
**electronically**
160:22
**Emmett** 95:18
95:19 190:11
365:1,10,12
**emphasize**
389:17
**employed** 10:14
10:17 12:9
99:23 100:16
192:4 226:24
227:9 228:4,5
232:4 421:17
**employer** 226:1
226:7
**employers**
332:10
**employment**
99:21 108:6
225:23 227:21
**encompass**
163:21,23
**encompassed**
316:11 395:16
**encounter**
123:22
**encountered**
123:14 406:3
409:18 411:1
**ended** 94:24
128:21 423:7
423:12
**ends** 84:22
**enforcement**
118:5,15,17,23
119:6 120:15
146:15 234:11
234:24 421:22
**engaged** 213:10
**entire** 12:11
269:9 331:6
332:2,3 345:9
**entirely** 247:7,9
304:5

**entirety** 141:7
291:24
**entitled** 202:15
**entry** 338:11
**equivalent**
91:15
**errata** 436:14,18
**escapes** 52:3
**essence** 27:16
60:19 61:5,9
**essentially** 22:19
27:15 61:14
104:20 112:18
377:4
**establish** 37:14
278:24 279:1
367:21
**established**
32:14 122:24
127:7 152:5
238:20 277:12
278:23 356:22
**establishing**
325:5
**estimate** 143:22
**ethical** 217:5,22
220:17,23
**event** 264:5
368:1 427:12
**events** 172:8
**eventually** 52:16
128:21 154:22
177:10 370:5
**everybody**
102:20 110:7
170:17,21
217:21 252:11
333:6
**Everyone's**
170:17
**evidence** 26:11
38:22 39:8
70:8 73:3
74:13 84:7
122:10 123:15

123:21 145:23
207:11 241:17
241:21,24
242:2 283:10
283:19 284:7
373:17 419:20
**evidentiary** 87:1
87:23 279:16
**exact** 15:8 47:17
150:10,15
245:4
**exactly** 127:6
311:10 323:15
328:5 329:24
330:13 374:3
414:4
**examination**
1:13 4:4,5 6:4
98:20
**examined** 6:2
437:18
**example** 259:10
311:1
**examples**
259:13
**Excellent**
121:10
**exceptions**
115:22
**exchange**
212:21
**exculpatory**
122:5 123:14
**excuse** 10:24
142:18 267:10
269:22
**exhausted** 419:2
419:3
**exhibit** 4:10
18:7,10 63:18
63:21 77:20,21
77:23 78:3
89:18 90:7
144:7,11
158:24 238:14

238:14 264:24
265:3,4 272:21
272:23 289:24
290:1,3 291:12
298:17,21
299:7 304:4,12
309:13 310:18
310:18,24
312:22 313:3
318:2,9 322:12
323:9 329:1
336:15,18
340:7,14 341:9
345:5,7,11
379:19,23
380:14 419:21
**exhibits** 298:11
**exist** 114:7
143:11
**existed** 114:6
142:12 169:2
**existence** 126:23
127:14 128:5
**expanded** 326:8
**expectation**
146:2
**expected** 375:15
**experience**
109:13 120:15
146:15 147:13
294:18 311:7
314:9 315:13
322:20 323:6
324:12 325:7
327:14 328:4
328:16 330:7
331:3,7,23
332:15 333:15
334:2,13 335:8
335:19 410:13
410:16 411:13
**experiences**
332:9
**expert** 218:22
219:3 221:11

315:22 320:16
**explain** 59:3
125:17 150:2
173:13 204:18
307:21
**explanation**
361:6 363:13
365:4 366:18
**expound** 169:5
**extent** 30:22
139:12 167:15
169:5 388:13
**extra** 379:12
**eyes** 113:2
182:24 183:2
302:11

---

**F**

**F** 70:15 71:7,10
71:17 75:22
76:18 80:22
82:16 85:8
86:16 87:7
88:1,4,9 269:7
269:11,12
273:21,22,24
273:24 274:3,3
274:9,23 275:3
275:6 277:14
278:2,2,22
279:5
**F-I-E-L-D-S**
206:21
**F-I-L-E** 350:20
**F-R-E-E-N-D**
298:4
**F-R-I-E-N-D**
19:3
**face** 60:9 84:17
419:19
**fact** 40:13 47:7
94:15 140:20
166:17 195:12
218:21 219:2
221:10 269:12

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 452

320:9 327:3
334:8,11
336:10 360:14
361:22 384:10
386:7 393:15
394:24 396:5
427:11
**facts** 38:21 39:8
80:15 84:6
269:14 325:22
**fair** 103:14
105:12 106:12
123:1 153:2
172:13 277:10
297:11 329:19
330:18 349:15
353:10 385:14
391:17 396:7
**fairly** 100:9,12
105:7 173:21
**fairness** 388:2
**falls** 420:9
**false** 59:2,11,23
60:3 70:16
71:8,17 76:16
76:18 79:11
80:22 82:16
85:8,17 86:15
86:16 87:6,10
178:12 219:19
269:9,13,15,18
269:20,21,23
275:19 276:3
276:11 277:3
**familiar** 23:1
64:2 78:15
95:17 101:10
121:7 145:1
233:17 234:4
264:22 294:3
294:13 303:5
304:6 306:15
307:15 384:9
**familiarize**
291:24

**family** 29:12
30:8,18 34:3
34:11,24 35:11
38:19 39:6
48:18 177:4
179:7,15,17
183:24 184:5
184:19 185:3
212:6,9,14
213:15
**far** 51:13 72:6
74:17 86:14
109:15 118:21
125:1 153:16
181:16 256:17
256:18 278:8
301:24 307:22
338:19 384:20
385:23 393:6
399:16
**farther** 300:23
**fashion** 237:2,3
**faster** 353:23
**FBI** 234:21,21
235:1,1
**February** 110:9
**federal** 1:14
202:19
**feel** 431:15
**felt** 173:14
**female** 32:15
52:17,21 53:7
53:16,22 54:2
54:8 55:18
57:9 58:3
**fewest** 157:14
**Field** 246:2
**Fields** 106:18
206:17,21
207:4
**fifth** 345:19,21
**figure** 121:15
134:7 237:17
**file** 114:6 140:16
140:19 141:3,5

141:6,7,10,24
142:2,12 143:1
143:1,2,3,5,8
143:14 194:23
195:4 290:8,17
291:1 348:4
349:19 350:6,7
350:10,11
351:1,6,8
354:19 355:21
356:1,5,6,9
357:11,15,16
357:22,24
358:1,3,5,6,7
385:18 386:3,5
386:14,22
**filed** 166:15,16
389:9 391:21
**files** 121:24
140:21 353:3
357:17
**filing** 242:7
**fill** 108:15
311:19 362:23
**filled** 108:20,21
108:24
**filling** 13:19
**film** 311:22
**final** 49:6 154:7
154:8 255:9
390:7
**finally** 19:23
44:13
**find** 121:12
134:6 135:9
139:2,22 158:3
180:21 190:13
190:19 238:1
246:12,24
248:18 250:19
262:1,1 271:4
271:13,24
285:8,22 286:1
286:6 307:23
352:5 375:20

376:10 401:9
408:19 426:23
**finding** 183:16
200:9 258:13
427:1
**fine** 24:16 27:4
216:16 292:8
430:1,3,4
**finish** 25:8 161:8
202:5,9 267:11
267:13 279:23
293:18
**finishes** 161:7
**firm** 106:15
**first** 6:2 8:15
9:12 12:20
15:12 17:2
19:10,20 26:17
27:6,10,10,11
28:14 37:14
55:18 57:11,17
57:20 65:23
68:9,13,15
69:14 70:21
71:11,13 85:11
112:18 117:9
119:22 129:4,6
129:24 131:17
133:7 151:6
198:1 226:17
238:14 262:11
264:15 265:8
265:13 266:24
268:17 273:3,7
273:13 286:16
291:11 296:2,8
296:10,16
297:9 299:22
301:23 303:14
308:3 311:4
341:3,11 342:1
342:8,20 344:7
345:10 350:15
379:5 380:13
380:17 381:8,9

387:23 395:4
395:13 400:14
437:16
**fit** 327:24
**five** 63:13
110:22 112:6
162:4 222:18
231:13 232:22
232:23,24
233:1 261:23
275:5 300:21
369:14 370:21
**five-minute**
131:4,13
388:21
**Fleming** 300:22
301:10
**Fletcher** 1:3
6:14 11:7
27:17,19 29:4
30:8 49:11
52:18,22 53:8
67:14,21 68:17
70:1,4,6 76:3
82:2,4,5,10
88:20 99:3
124:13,22,23
125:5,14 130:8
130:9,12 133:9
133:10 144:9
151:7 152:2
155:19,22
177:6 184:19
185:12,14,16
186:1,9,23
187:2,9,9
188:1,5,6,9
193:11 197:1,5
197:8,19
214:19 215:8
215:19 216:18
217:14 218:18
229:15 231:11
240:4,12,19
241:6 255:5,15

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 453

259:3,4 264:10
264:13,14,15
265:10 281:18
282:6,13,21
283:10,21
284:7 286:8,21
287:15 288:6
289:3 295:9,15
295:16,19
302:6,16,20,24
305:15 308:4,5
310:14 335:5
343:6,7,12,18
346:11 354:3
367:3 368:17
368:20 369:6
370:8 371:5
373:24 377:14
377:15 381:22
382:14,18,23
383:2,5,12
386:15,16
389:15 390:12
415:13 424:6
425:16,21
426:2,6,12
433:2,10,16
436:3
**Fletcher'** 69:24
**Fletcher's** 14:16
15:2,12 16:14
29:12 30:8,18
31:11,22 32:16
33:1 34:3,11
34:24 38:19
39:6 41:7
49:11,21 50:21
61:22 75:2
76:21 80:14,16
87:1,24 92:15
94:21 95:22
177:6 183:24
184:5 185:3
211:19 213:1,9
213:19 214:4

251:12 252:7
266:9,11
267:15 268:6
279:17 280:2
280:21 281:17
334:22 373:4,9
374:9 384:20
424:16
**flip** 303:2
341:24 354:14
360:16
**flipped** 377:10
**floating** 351:24
**floor** 2:3 210:20
210:21,22
**focus** 13:10
235:19
**focused** 34:1,7
237:14
**follow** 138:7
164:8,15 170:3
196:17 197:7
217:4,4,5,22
218:9 220:16
222:2,10 241:2
241:12 281:6
281:14 287:22
289:14 340:4
350:2 381:24
398:18 399:12
400:5,18 401:7
402:15 405:14
415:8 416:20
417:3 419:5
427:10 432:20
433:9 434:1
**follow-up** 40:12
43:3 47:11
255:24 256:9
256:10 430:8
**followed** 125:3
125:10
**following** 145:2
222:16 274:6
353:7 387:11

389:12
**follows** 6:3
**font** 364:15
**force** 124:23
234:9,21,22
235:1,10,11,12
391:1,7 392:13
**forces** 234:20
**foregoing**
436:11 437:19
**forget** 163:6
352:5
**Forgive** 326:23
**forgot** 132:11
**form** 13:20
15:14 21:22
22:2 25:13
28:1 29:18
30:20 32:18
33:2 34:14
35:15 36:23
37:22 38:20
39:7,21,22
40:20 41:9
42:5,8,19
43:21 46:4,23
49:1,13 50:24
52:23 53:17
54:22 56:1,13
58:11 59:13
60:5,12 61:1
61:12 62:5
65:15 69:2
72:1,9 73:2,10
74:12 77:1
78:24 81:10
84:5 89:11
96:19 102:23
103:1,3,21,22
103:23 104:4,8
108:9 109:17
114:16 115:8,9
116:7,21
120:20 124:15
125:6 132:24

134:22 135:6
137:10,22
139:6 140:2
145:17 146:6
163:13 169:3
169:19 189:11
195:23 197:9
197:11,21
199:5,14 200:4
204:2 213:2,12
213:21 216:21
217:16 219:20
221:2,4 233:11
234:16 236:2
239:12 246:7
248:24 252:4
252:20 268:12
274:4,15 282:8
286:23 287:20
288:8 289:4
312:6 313:14
322:6,15 323:1
327:10 329:3
330:22 333:1
344:20 358:14
358:23,24
360:20,22
361:14 363:6
364:22 366:5
366:22 373:15
383:15 384:13
400:4,21
403:22 406:14
408:1 409:2
412:19 417:10
418:9 426:17
430:23 431:17
**formal** 114:1,5
117:8 129:16
151:3 201:8
**formally** 144:23
**format** 294:14
323:15
**formed** 16:6
214:18 215:6

**former** 224:18
264:19 419:8
422:12
**forming** 112:20
**forms** 365:14,18
370:13,14
**forth** 357:17
369:5,12,24
370:12 437:14
**forum** 368:3
**forward** 86:2
167:11 321:9
396:16
**found** 36:4
38:18 140:21
142:7 177:10
177:13,17
251:6 378:4
381:21
**foundation**
15:14 20:1
24:6 25:14
28:1 30:21
33:2 34:14
35:15 36:23
37:22 38:11,20
39:7,22 41:9
42:5,9,19
43:21 46:4,23
48:5 49:2,13
50:24 52:23
53:17 54:23
56:1,13 58:11
59:13 60:13
61:1,12 62:6
65:15 69:2
72:1 73:10
74:12 77:1
78:24 81:10
84:5 86:17
87:8 89:11
93:14,16 96:1
96:19 97:19,21
103:21,24
104:8 106:2

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 456 of 492 PageID #:7918

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 454

109:17 113:16
116:20 124:15
128:12 129:1
142:4,15 146:6
147:8 155:23
157:20 160:4
161:21 169:3
194:3 199:5,14
201:3 204:2
205:11 216:21
217:16 218:19
219:20 221:2,4
231:22 237:6,9
245:16 246:8
246:18 247:14
249:18 250:2
250:13 252:20
262:10 270:24
288:9 289:4
312:6 314:3
322:7,15
327:10 329:4
330:22 333:1
349:21 350:22
351:9 353:18
356:11 367:16
371:16 372:21
373:15 375:22
377:24 384:13
400:22 403:22
406:14 408:1
409:2 412:6,19
414:24 415:17
416:8 417:10
418:8,23 431:1
431:17 433:18
**foundational**
420:3
**founded** 402:10
**four** 50:5 189:18
261:4,23
291:18 342:8
358:10 365:14
369:13,14
370:20

**fourth** 50:5
64:22 345:18
**Fox** 14:11
**frame** 20:11
32:6 306:17
**framed** 163:21
163:22
**free** 148:6,6,6
**Freend** 296:3,6
298:2
**fresh** 113:2
**Friday** 107:24
391:1
**friend** 8:6 19:3
19:24 20:22
21:4,7 24:2,5
25:18,21 26:17
27:17,19 28:15
29:2,11 30:5,7
30:14,17 31:13
31:20 32:15,22
34:10,22 35:11
35:22 36:4,10
36:21 37:5,15
38:17 39:4
40:6,13,16
41:1,17,17,20
42:3,16,24
43:17 44:6,14
45:2,5,11,18
46:1,9,14,21
48:2 49:9 50:9
50:20 51:5
52:2,7 53:15
54:8,14 55:4
55:17 56:7,11
57:1,5,7,14,21
57:24,24 58:1
58:8,24 59:9
60:1,10,22
61:6,10 62:16
62:21 65:11,13
66:7 67:1,5
68:6,10,20
70:5,15 71:23

73:7,20,22
74:4,17 75:7
75:11,18 76:16
76:19 77:14
78:10,23 79:10
79:20 80:9,21
81:1,8 82:14
83:21,24 85:2
85:17 86:6,10
87:5,14 88:16
88:22 89:4,9
95:1,24 135:24
136:1,6 137:8
137:16,17
147:19 151:8
152:4,8,19
157:1,11,19
173:17 174:2
179:22 183:11
184:3 185:9,11
185:15 186:22
187:3,4,16,24
188:4,9,18
194:24 195:14
207:23 208:4,8
208:20 210:9
210:12 211:5
211:18,23
212:8,13,20,24
213:11 214:3,9
214:13 240:3
240:11,18
241:5 245:10
246:3,5 251:9
251:10 252:4
253:13,16
254:1 255:17
259:3,17 260:1
260:12 266:8
266:10 267:4
268:8 270:21
271:3,12,17
272:2,13 274:9
274:22 275:2
275:17,18

276:3,23 277:1
279:12,24
280:20 281:15
282:20 284:6
286:20 287:14
288:5 289:1
290:9 291:6,10
292:24 293:21
295:3 296:1,5
296:14 298:1
300:3 302:19
310:5 312:18
312:24 318:18
351:20,20,20
352:9,10 354:8
354:13,13
361:3 362:1,11
365:23,23
370:6,6 374:9
381:23 382:8
385:12,12,12
385:23 414:23
415:12 416:6
417:9 423:3,6
423:19,24
424:10,14,21
425:2,5,10,14
425:19,24
426:5,9,15
427:1,11
430:11,22
431:12,23
**friend's** 34:4,23
47:22 49:20
51:20 55:23
66:20 67:21,24
210:4 213:19
239:10 257:16
297:9 424:5
**friends** 160:8
**front** 63:20 64:3
76:20 78:15
89:22 172:9
174:11 175:18
178:24 397:3

397:13
**FS** 277:12
**fuck** 47:9,24
266:14,19
**fulfill** 418:6
**full** 28:14,24
29:6 57:17,20
70:21 71:11,13
165:17 258:20
268:18 269:1,2
435:2
**fun** 384:11
**functions**
228:19
**further** 9:9
263:5 303:23
437:19
**furthermore**
298:1
**future** 348:5,6
349:10,12,12
349:19 355:23

--- G ---
**G** 8:16 381:12
**G-I-L-G-E-R**
300:15
**Galassini** 17:13
17:14 359:15
381:18
**game** 256:19
**gang** 207:18
**garbage** 158:4
**Gates** 303:12
**gathered** 145:24
**gears** 289:20
**general** 96:24
110:2 135:9
254:19 299:18
299:21 306:5
311:8 339:5
344:18 408:7
414:18 416:2
419:9
**generalissimo**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 455

91:17
generally 12:15
21:6 113:4
121:11 132:17
163:2 299:22
401:11 407:23
generate 128:11
generated
299:23
generating
130:24
George 8:16
381:12
Gerry 8:16
42:12
getting 17:2
20:13 103:18
104:23 170:18
221:22 246:6
278:10 308:22
412:9
Gilger 300:13
300:18
Gina 17:14
girl 351:19
give 77:19 98:5
100:2 105:22
106:5,10 110:2
112:15 121:14
130:18 150:10
176:17 177:9
202:12 208:21
209:7 211:21
211:24 212:3
212:15,15
219:18 261:23
275:23 310:20
311:20 315:7
315:19 380:3
388:20
given 17:12
22:16 36:10,14
80:6 103:19
104:23 105:20
120:7 125:20

177:14 189:18
263:14 293:15
293:20 323:6
328:3,16 347:2
347:4,6 376:2
388:2 391:1
406:10 418:7
427:11 436:12
436:13
gives 366:18
giving 40:8
86:24 168:14
180:7 183:16
254:3,11
279:14 371:22
385:4 401:22
402:8
glad 173:4
glance 290:20
304:6
go 13:4 15:15
18:14 21:23
22:1 26:8
28:21 30:19,24
31:18 32:9,12
34:4,12 35:7
35:13 36:11,15
36:16,17 38:12
39:5,20 43:24
51:21 53:5,6
58:13 59:9
64:23 66:9,11
70:19 71:9
85:11,13 93:23
94:11 100:21
101:6 104:3,11
106:3 107:13
108:10 109:18
113:1,23
114:10,19
118:12 119:3
126:13 128:13
129:7 131:22
135:9 137:5
138:21 139:13

140:4 142:5,16
148:6,7,9
152:23 154:17
155:24 158:3
159:7 160:24
162:1 163:3,5
167:4 169:16
169:20 172:16
177:8 178:10
178:11,14
182:8 184:23
186:12 187:13
190:20 199:12
200:21 201:16
211:10 236:17
237:7,10,16
238:1,13 240:1
243:22 246:14
247:22,22
248:5,10,15,17
249:5,23
251:22 252:10
252:12,24
257:12 258:8
258:24 261:11
261:15,17,18
261:22 262:20
272:6 276:4
277:17 280:9
282:10 285:24
287:9,10 289:8
297:22 298:10
313:6,19
316:12,14
317:13 319:21
323:3 326:14
328:8,11
335:13 340:11
348:23 352:5
360:9 361:24
362:4,6,10
370:18 376:3
376:10 377:17
377:18 391:4
406:9 410:21

414:10 416:10
416:13 425:21
431:2
goal 134:20
135:4 137:7,15
139:3,4,22
169:1 285:21
goals 135:24
136:5
goes 51:13 110:7
324:17
going 6:15 30:20
33:9 63:2,10
63:10 70:7,17
77:19 79:7
93:23 98:6
115:5 117:18
133:24 134:6
136:14 138:4
138:24 140:9
147:7 149:5
163:9 164:6,21
165:1,4,11
166:8 167:6,8
167:10,11
168:7 169:11
170:2 172:14
187:19 196:17
205:10 208:2,4
215:15 216:6
221:23 222:1,3
222:10 234:15
236:1 238:13
239:18,20
248:18 249:7,8
251:19 253:6
257:6 261:4
263:10 268:1
278:24 280:3
281:10 283:5
286:2 287:22
288:15 291:8
291:12,19
292:2 298:7,16
298:17,24

299:1 303:2
304:3,3 309:11
310:4 315:19
320:8 322:23
325:1 328:7
329:9 333:4
335:1 336:14
336:15 339:14
340:6 343:2
345:6,8 347:20
354:23 355:2
369:4,12,24
370:12 378:8
378:10,10,14
388:3 390:2,17
390:20,22
391:2,4 392:17
392:23 394:9
396:9 397:2,7
397:16 398:8
398:16 399:5,8
402:13,15
403:13 405:14
405:16,18
408:20 415:7,9
416:19,20,22
473:3,21,23
419:19 422:22
427:8,20 431:8
431:10 433:8
433:24
good 20:24 63:3
88:11 89:16
98:22 99:1
104:22 105:8,8
222:17 273:4
312:10,12
402:7 429:4
goofy 402:6
governed 232:8
391:16
governing 232:3
grand 41:2,7,14
66:21 72:18
grande 181:10

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 456

181:14
grants 392:17
Great 5:19
  324:23
ground 6:19
  118:23 136:12
  136:21 138:1
  163:20 167:18
  167:21 169:8
  169:23 196:3,6
  214:23 215:12
  215:24 221:14
  239:15 240:23
  241:9 253:3
  267:22 281:4
  287:2,18
  288:12 289:11
  394:20 399:2
  405:11 415:4
  416:16 417:18
  419:15 422:18
  431:5 432:16
  433:5,21
grounds 338:22
  427:4,16
group 67:11
  72:24 237:12
  345:7 379:19
guess 9:16 22:11
  22:13 115:12
  143:20 144:18
  146:19 155:8
  159:9,24
  182:16,17
  205:16,16
  208:23 216:10
  246:22,23
  262:16 273:9,9
  278:18 312:8,9
  360:8,10,12
  371:4 372:13
guessing 91:3
  92:16 182:11
  182:13,14
guesstimate

105:23 208:22
  209:8
guidance 117:20
guilt 163:11
  166:9 168:9
  395:15 396:12
guilty 185:16,17
  186:4 207:5
  214:19 215:8
  215:20 283:11
  283:21 284:8
  433:2,16
gun 344:9,14
guns 343:8
guy 50:13 82:6,9
  83:1,6 84:14
  84:16 114:18
  114:20 130:14
  156:16 177:11
  179:11 191:13
  226:16,16
  229:18 272:10
  334:8 336:4
  352:5 369:7
  401:16
guys 63:3
  113:22 142:22
  198:18 207:16
  229:19 232:21
  238:2 254:22
  328:8 377:13
  396:15

——————
**H**
H 4:8
hair 181:21,24
  181:24 182:1
  301:24
hairstyle 181:19
Hale 1:18 2:17
  3:13 437:12
half 27:10 91:16
  342:6
hand 131:21
  154:9 160:13

311:18,19
  314:23
handbook 120:7
  120:10
handed 429:14
handing 12:21
  157:2
handle 16:2
  200:9
hands 141:23
  195:1 290:19
handwrite
  159:10,13
handwriting
  23:16,18 67:22
  67:24 75:20
  88:15 274:20
  341:14 342:11
  348:10 380:24
  381:2,3
handwritten
  60:11 154:21
  265:9 266:5
  291:14 292:23
  294:4,14 342:9
  345:23 353:4
  356:21 373:10
  382:3
hang 103:23
  104:6 221:3
  251:16,16,16
  257:4 258:24
  262:6 265:12
  379:18
happen 423:18
happened 14:1
  16:11 37:6
  43:18 127:2
  145:15 176:23
  192:17 194:6
  270:1 310:16
  424:23
happening
  258:14
happens 95:1

happy 200:12,16
  292:1 389:24
harassed 105:10
  212:6
harassing
  212:18 289:6
hard 69:8,16
  105:6 291:18
  364:15 399:15
  400:18
hats 422:5
Hawkins 420:20
  421:3,7,8
  422:12
Hawkins' 419:9
head 200:11
  329:17 384:6,6
headquarters
  111:16
hear 5:17 16:22
  82:21,22 99:10
  131:10 171:15
  261:24 287:9
  389:24 397:18
  422:9,10
  434:22
heard 102:7,15
  102:18 103:15
  103:17 135:21
  198:1 235:6
hearing 20:23
  87:1,23 99:7
  279:16 343:11
  343:16,23
  369:6
heavier 180:14
heavy-set 58:3
height 182:5,13
  302:10 336:7,9
hell 231:14
help 50:15
  109:14 168:8
  173:16 200:9
  397:10
helped 171:21

237:24
helping 50:14
helps 301:18
hereinabove
  437:23
hesitate 152:21
Hey 114:14
  288:5 289:2
hidden 82:20
highest 91:1
highlighted
  301:18 337:7
  337:10,12
highway 91:16
  91:18
hired 117:6
histories 97:16
history 310:12
hit 157:16
  232:18
hoc 115:6
hold 190:1
  201:20,20,20
  360:7
Holmes 3:7 5:12
  5:12 122:12,21
  123:4,7 136:8
  136:16 137:1
  137:11,19,23
  139:7 140:1
  163:14,18
  164:12 165:16
  167:5,13
  168:11,17
  169:4,21 196:1
  196:14 203:13
  204:3,5,15
  206:10 214:21
  215:10,21
  218:20,24
  221:8 239:13
  240:21 241:7
  245:20 253:1
  263:3 267:20
  270:24 271:8

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 459 of 492 PageID #:7921

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 457

280:22,24
285:14,19
286:22,24
287:16 288:7
288:10 289:9
297:21 322:16
324:10 325:4
325:11 327:13
327:18,21,23
330:2,4,7,24
331:2,22 332:6
332:12 334:2
334:13,21
335:10,13,17
338:20 339:2,6
339:11 341:6
352:19 353:20
356:15,19
357:1 367:16
367:21,24
388:5,9,17
394:18 395:3
395:24 396:9
398:23 401:1
401:23 405:8
407:23 409:21
410:2,5,9
411:6,17 415:2
416:7,11
417:16 419:13
420:1 422:17
427:3,15
430:12,18,24
431:3 432:14
433:3,17,19
435:9
**Holmes'** 164:15
**Holy** 180:7
**Homan** 111:9,12
111:14,22
**home** 34:12
35:13 49:10
246:17 253:14
**homicide** 29:4
158:15 191:5

191:20 192:3,8
193:1,22 194:1
195:9,13,22
198:2,11,16
207:20 215:9
236:20 238:9
238:23 239:5
253:18 260:1
281:19 282:6
282:13,21
283:5 299:23
302:21 317:10
319:4 385:21
411:20 423:21
424:2
**homicides**
140:14
**honestly** 84:13
**honor** 388:6,10
417:21
**horn** 386:12
**hot** 225:9
**hours** 209:9,24
210:2
**house** 30:19
31:7 32:17
33:1 34:4 35:1
49:20 51:6,20
66:20 72:17
147:24 176:18
210:13 214:14
237:15 245:14
246:17 247:2
247:12 256:23
257:16
**How's** 209:4
**Huh** 160:12
312:11
**human** 414:18
414:19
**hypothetical**
38:1 103:24
104:9 216:22
217:17 219:21
221:5 289:5

327:11 330:23
333:2 403:23
406:15 408:2
409:3 418:10
431:18

**I**

**I-N-V** 350:17
**ICAD** 305:19,22
306:1,8
**ICAM** 305:21
305:22,24
306:8,10,23
307:17,21
308:11 310:13
**ID** 4:9 76:3
**idea** 16:18 17:5
24:11 92:17
94:11 143:19
190:3 256:19
302:7 311:8
312:10,12
314:1 329:7
353:11 356:7
357:9 372:4
**identification**
18:11 63:19
77:24 90:8
285:1,9 290:4
298:22 304:13
309:14 318:3
336:19 340:15
379:24 403:21
404:8,8,23
405:7 406:6,12
406:24 407:12
407:21 408:10
408:11,19,23
409:1,12,19
411:2,4 424:18
424:24 425:8
**identified** 31:11
31:22 32:15,24
49:21 50:21
176:19,23

179:10 185:12
257:1 258:1
406:23 407:10
407:19 408:21
426:11
**identify** 41:22
42:18 43:7,11
76:11 241:6
315:8 423:20
424:1 426:1
**identifying**
43:12 195:20
**IDO-** 322:11
**IDOC** 318:24
320:6 321:22
322:1,11 323:8
329:2 334:9,11
335:23
**Illinois** 1:1,19
2:4,9,14,19 3:4
3:8 361:10
395:18 436:1
437:1,13 438:7
438:16
**imagine** 200:18
230:10
**immediately**
407:13
**immensely**
397:5,11
**impacted** 416:5
**impeachment**
122:10 123:14
**impermissibly**
221:6
**imposed** 329:11
**impossible**
339:12
**impression**
134:14
**impressions**
134:11 221:18
395:15 396:12
396:13
**improper**

195:22 196:12
216:19 322:1
322:10 323:8
327:7 328:24
329:23 392:16
**improperly**
406:5
**impropriety**
212:24 213:10
**improve** 178:14
**in-** 237:14
**in-custody**
146:21
**in-house** 117:12
**inaccurate**
247:20
**incentives**
211:21
**incentivize**
212:15
**incident** 315:3
315:12
**include** 122:4
**included** 38:8
145:16
**including**
269:15 334:8
335:10,11
353:3
**incomplete** 38:1
103:24 104:9
216:22 217:17
219:21 221:4
289:5 327:11
330:23 333:2
403:23 406:15
408:2 409:3
418:9 431:18
**incorrect** 430:11
430:22
**incorrectly**
347:22 406:5
**independent**
14:15 15:1
19:8 20:21

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 458

21:3 30:23
33:4,17 34:9
34:16,21 35:10
35:17 36:3
37:1 41:5
42:15 44:5
45:4 46:6,18
46:20 47:1
48:8 49:3
53:14,19 54:11
54:14,17 55:3
55:9,22 56:15
58:15,20 59:8
60:10 65:12
69:4 76:23
78:21 79:2
81:7,12 84:8
92:13,18,22
93:3 94:13,19
95:12 156:19
156:23 162:7
162:10,13,21
171:6,16 172:5
172:6 173:24
175:7,13,16
180:9,13,22
182:10,23
183:1,3,8
184:10 188:19
190:4,9,15,22
191:1 195:8,19
196:11 207:22
208:7,13 209:1
209:5,11,21
210:14 238:11
241:4 255:20
255:23 260:15
273:6,12 276:1
276:8 277:6
286:19 287:13
300:6,9 433:1
**independently**
116:13 174:19
175:19,19
176:15 178:19

**indicate** 9:19
19:19 38:17
66:7 67:1
70:15 71:7
73:16 75:7,18
76:16 77:14
80:21 82:14
85:6,17,21
86:14 87:5
211:19,23
212:20,24
214:4,9 274:23
275:3 313:10
313:12 334:18
354:15 361:23
362:8,9 363:1
369:16 370:22
375:18 377:22
381:16
**indicated** 29:11
31:20,21 32:23
44:14 46:2
47:21 52:8
55:5,17 57:8
57:24 66:13
68:10 79:20
80:10 85:18
86:16 92:4
186:20 269:7
279:24 281:16
305:6 334:18
436:13
**indicates** 278:22
361:13 376:6
**indicating** 67:5
73:8 76:18
261:10
**indications**
79:11 89:8
**individual** 2:21
5:8 92:6 93:8
95:18 97:14
141:16 163:12
352:22 395:10
397:4

**individual's**
11:9
**individualized**
400:16
**individuals** 18:5
31:6,10 34:2
34:23 35:12
308:2 335:23
**individuals'**
35:23
**infancy** 145:9
**influence** 403:21
404:7
**influenced**
405:7 406:6,11
417:7
**influencing**
404:22
**info** 343:5
**inform** 97:17
**information**
25:3,17 28:13
37:20 40:18
94:14 122:5,6
132:4 146:23
218:3,6 220:6
256:21 257:17
263:19 270:22
275:14,17,18
301:17 309:4
310:21 334:6
341:19 355:14
368:24 372:19
373:4,9
**informed**
217:15 218:2
252:4 354:10
**initial** 44:16
88:22 95:11
129:18 132:7
151:16 152:22
436:18
**initialed** 70:2
74:5,9,10
87:14

**initially** 43:19
44:7 111:14
129:15 149:2
150:7 151:21
173:24 248:21
**initials** 66:12
67:2 75:8 76:1
77:16 79:24
80:23 82:17
84:2 85:18
274:1 278:23
338:12 381:6,9
381:9
**inmates** 319:1
**innocence**
163:11 166:9
168:9 395:15
396:12 433:11
**innocent** 214:20
215:8,20
283:10,22
284:8 387:19
394:2,15
400:11 433:2
433:16
**innocent.'**
401:17
**inside** 242:11
**inspiration**
101:13
**instance** 258:18
394:1 396:19
398:23
**instances** 387:10
387:17 394:12
**instruct** 136:9
137:24 163:19
164:4 167:19
169:7,22 196:2
196:5 214:22
215:11,23
221:13,19
239:14 240:22
241:8 253:2
267:21 281:1

287:1,17
288:11 289:10
338:21 390:2
390:18,20
392:14 394:19
397:16 398:3
399:1,6 402:9
405:10 410:10
415:3 416:15
417:18 419:14
422:19 427:5
427:17 431:4
432:15 433:4
433:20
**instructed** 20:5
164:12 271:5
271:14 287:6
340:1 399:10
399:17 400:1
400:12
**instructing**
136:19 220:10
392:4 401:3
**instruction**
137:1 138:5,8
138:9 164:3,15
164:22 165:16
168:18 215:22
216:10,13
218:24 222:14
222:15 239:21
253:7 268:2
288:15 339:15
391:6 393:12
394:5,17,24
395:20 396:3,4
397:1 398:14
398:22 401:1
402:1 403:10
411:7 417:12
417:21 422:23
427:21 434:4
**instructions**
239:24 240:2
268:5 392:16

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 459

415:8 427:22
integrity 15:18
    15:21 16:5,6,8
    126:23 127:9
    127:13 128:4
intended 381:24
    383:12 391:9
intending
    383:19
interaction
    213:19
interested 438:3
interesting
    173:6 296:8
interests 330:14
    330:20 331:10
interject 204:5
internally
    376:12,16
interpose
    166:12 422:18
interposed
    205:5
interpretation
    213:18 276:7
    276:16,20
    279:10 280:8
    350:23 389:21
    392:6 395:5,21
interpreted
    395:18
interrogate
    146:22
interrogation
    146:18,19
    147:5,10,13,20
interrogatories
    437:18
interrupt 33:3
    47:12
interrupted
    362:7
interrupting
    327:17 333:5
interview 19:2

21:7,8 24:1
37:16 92:9
95:6 96:9
117:24 120:2
126:15 128:9
135:24 138:22
138:24 139:3
139:20,21,23
140:10,11
141:4 145:16
145:20 146:18
147:7,12,19,21
148:1 149:10
151:8,15 152:4
152:8 153:4
157:1,11,19
168:22 171:18
171:23 172:23
173:6 174:3,20
175:20 176:16
176:21 178:20
179:6 181:2
183:11 185:21
188:18 189:19
190:19 194:23
208:19 209:4,6
209:22 210:13
210:24 211:18
213:11 246:6
249:24 250:1
250:21 261:15
261:18 271:4
271:13 272:6
285:21 286:1
290:9 291:6,10
293:21 310:5
312:18 352:9
361:7 362:11
363:14 364:2,7
364:10,12
365:5,12
366:11 382:7
406:10 414:23
416:5 417:8
423:2,3,5,6,15

424:12,22
425:3,6 430:11
430:21
interviewed
    24:18 52:8
    58:2 78:10
    95:4 136:1
    137:9 152:19
    195:14 240:5
    240:19 295:3
    300:3 312:24
    362:1 366:24
    367:1 415:12
interviewing
    20:21 21:4
    37:21 47:18
    92:20 94:20
    95:9 96:13
    128:6 134:12
    136:6 137:8,16
    148:19 168:8
    169:17 189:15
    190:6,11,14,17
    300:7 318:17
    354:7
interviews
    117:21 119:20
    120:11,19
    135:5,14
    148:10,11,13
    148:16 149:8
    152:15 155:14
    156:13 163:10
    166:8 173:1
    189:7,9 211:11
intimidated
    431:14 432:2
introduce 5:4
INV 349:7,9
invade 163:24
inventoried
    130:5,5,6
    153:15
inventory 26:12
    153:15 241:17

investigate
    101:23 112:1
    115:16 116:5
    227:14,18
    232:3,8 249:16
    268:7 365:10
investigate-
    144:18
investigated
    112:6 193:21
    198:23 201:1
    207:13 223:22
    229:15 231:20
    234:2 415:15
investigating
    198:10,24
    232:11 248:22
    334:22 335:4
    354:6 387:21
    394:15
investigation
    9:1 11:6 44:16
    44:16 77:11
    132:13 133:14
    143:10 145:24
    146:13 158:15
    191:21 192:4,8
    192:9,24
    193:23 194:2
    195:21 196:13
    198:12,16
    200:3 207:16
    216:18,20
    218:16 226:23
    231:11 236:20
    238:10 242:14
    316:4 317:3,5
    317:7 320:11
    320:20 324:16
    329:8 332:20
    332:23 333:16
    333:21 334:7
    334:12 335:24
    365:20 383:13
    387:18 395:1

396:5,22 400:2
400:13 401:14
401:15 419:4
423:22 424:3
investigations
    134:4 225:22
    237:15
investigative
    109:23 144:8
    144:12,22
    150:19 151:7
    152:3 226:12
    238:15,19
    348:4 349:18
    354:19 355:20
    356:1,4,9
    357:11,21
    370:21,21
investigator
    12:10,16,18,23
    13:20 17:18
    19:2 21:20
    22:17 23:7,11
    96:8 117:22
    121:17 122:19
    123:13,20
    125:19 126:12
    129:14 142:10
    143:17 146:4
    148:9,20
    156:14 168:24
    169:18 198:22
    223:22 236:5
    294:19 315:22
    320:13 348:3
    349:7,17
    358:13,22
    359:5 360:19
    360:23 361:23
    362:3,10,16,20
    363:6,18
    364:19,21
    366:4,7 370:13
    370:14 405:5,9
    406:2 409:17

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 460

409:22,23
410:14 420:8
421:11,14,16
421:20 422:3
422:13
**investigator's**
358:1
**investigators**
118:15,16
127:17 207:17
228:10,14
362:22
**involve** 140:14
185:24 412:17
413:6
**involved** 17:6
92:14 126:14
127:20,23
128:2,6 143:16
143:23 179:6
201:9,9 203:23
204:12,19,22
204:24 334:21
372:11 377:14
401:16
**involvement**
9:20 191:5,7
191:20 192:3
320:10,19
**involves** 103:18
**Irrelevant**
100:20
**issue** 146:21
316:11 334:24
334:24 391:23
420:3
**issued** 263:13
**issues** 99:7
158:16 325:22
325:22 395:3
**iteration** 221:16

──────────
**J**
──────────
**J** 3:8 300:13
**Jackson** 1:18

2:18 3:3
437:13
**jail** 50:16 75:3
75:15 82:6
178:4,7 336:4
425:22
**James** 1:3 6:14
14:16 15:2
87:1,24 94:21
183:23 295:15
295:19 367:3
424:6 426:2
436:3
**January** 10:24
12:6 99:18
100:6,7 107:7
**jcc@johnccoy...**
3:5
**Jennifer** 2:7,7
5:14 80:13
293:11
**jennifer@bla...**
2:10
**Jerome** 1:6
223:1 436:6
**Jim** 80:14 346:2
348:2 349:16
**Jimmie** 288:6
289:2
**Jimmy** 11:6
**JM** 348:2 349:6
349:16
**job** 109:4,11,11
109:12,14
117:18 121:17
169:15 185:21
186:6,7 229:24
419:23
**John** 3:2,2 5:20
42:6 93:21
101:11 170:21
393:3 397:15
401:10 402:17
429:6
**join** 42:8 48:7

96:3,21 103:2
104:1,2,12,13
105:4 115:10
120:21 140:3
146:7 175:22
184:16 195:24
201:4 213:22
216:24 217:1
217:19 246:20
247:16 248:13
249:2 251:23
252:23 257:21
280:10 281:21
281:22 283:1,2
283:13,14
284:18,19
285:17,18,19
286:10 297:21
314:5 316:5
317:12 320:22
322:23 324:21
333:13 351:11
398:24 403:24
404:11,12
406:17 407:2
408:4,5 409:5
412:21,22
413:8 414:8
418:11
**joined** 119:13,18
119:22
**joint** 234:8,22
235:10,11,12
**joy** 429:10
**JR** 1:3 436:3
**judge** 186:2
391:2 392:1,15
395:5
**judge's** 397:10
398:4 400:24
402:11 403:10
**July** 389:7
**June** 110:9,10
366:16
**jury** 41:2,7,14

──────────
**K**
──────────
**K** 131:1,2
**Kari** 1:19 435:9
437:4 438:14
**Katherine** 2:12
5:10
**keep** 63:2,10
93:23 151:4
155:4,6 230:1
242:23 327:17
354:23 355:2
**kept** 30:9 50:13
190:7
**Kevin** 231:5
**kick** 237:17,17
**kicked** 155:2
**kidding** 332:2
**Killacky** 130:19
131:1
**Kimmie** 14:7,10
14:11,11
**kin** 438:4
**kind** 50:14 69:8
69:15 117:11
181:5 245:21
305:12,17
358:5
**kinds** 334:6
**kitchen** 21:10
147:24 174:4
211:1
**kmorrison@b...**
2:15
**knew** 10:7 70:1
80:15 83:6
91:20 199:21
200:2 253:21
259:4,17
**knocking**
247:12
**know** 6:21,22
7:4 14:21
15:17 17:4
19:17 20:14

29:3 35:22
39:12,14,16
47:15 52:21
53:7 63:11
64:19 68:5,23
70:8 76:4,7
77:10 90:17
91:13 93:5
94:10 101:16
103:7,9,10
105:8 111:17
113:13,17
116:16 125:1
127:22 130:9
130:11,17
132:13 143:15
143:19 147:6
147:16 150:9
151:21,21
160:6,20 162:5
167:9 171:19
171:21 173:1
174:17 178:1,9
179:1,5,23
180:2,17 182:5
186:22,24
187:1,15,24
188:2,8,11
191:9 192:17
193:6,9 194:1
194:5 195:11
195:16,18
201:10,24
202:8,9 214:16
214:16 217:11
222:24 223:12
223:21 224:3,8
224:9,19,21,22
226:15 227:24
228:5,8,12,24
229:5,7,10,14
229:23 230:24
232:15 234:23
244:22 246:16
246:22 247:24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 461

249:8 250:20
251:5,6,19
254:7 257:24
261:3 263:18
263:19 264:4,6
268:6,14 272:4
272:4 273:22
274:22 275:2,7
275:22 277:5
280:17 282:14
283:4 285:7
291:1,19 292:1
292:3 293:14
293:19,22,24
295:5,5,15,18
295:23 296:11
299:13 300:1
300:18 301:5,9
302:4,15 303:8
303:9,12,14
305:1,12,17
306:1,2 310:2
310:7,9 312:8
312:14,21,23
313:23 314:13
314:15,16
318:7,20,22
319:6,9,20
329:9 330:15
330:24 332:15
333:16 336:24
339:17 340:24
341:22 342:16
343:20 346:6
346:14 347:1,4
347:22 350:14
350:14,16
351:6 352:14
353:4 357:14
357:24 358:5,6
358:6 359:11
360:14 361:21
362:12,21
364:10 368:19
371:19 376:19

376:19,21
377:6,16 380:9
381:8,20
382:10,16,17
382:19,21
385:8,23
392:15,16
396:6,7 397:13
410:19 412:3
424:7 433:10
434:13 435:9
435:11,13
**knowing** 152:20
**knowledge**
192:9,23
193:22 194:12
194:15 238:6
238:11
**known** 91:18
361:9
**knows** 259:3

---
### L
**L** 2:7,18
**lack** 357:19
400:15
**lady** 82:21 83:5
**language** 50:4
326:8 348:20
392:2,3 402:11
**larger** 273:24
**late** 386:9,19
**latest** 204:6
221:16
**launched** 317:8
**law** 2:7 3:2
118:5,15,17,22
119:5 120:15
146:15 158:14
217:4,4 234:11
421:22
**lawsuit** 17:3
**lawyer** 52:17,22
53:16,22 54:3
54:8 55:6,19

56:23 58:4
61:23 62:9,11
68:17 76:22
82:21 83:1,5
88:20 201:13
262:18 265:10
266:11
**lawyers** 62:9,13
399:9 420:5
**lay** 367:16 392:7
**layman's** 112:16
**lead** 21:20 201:1
201:7 203:8
207:20,21
**learn** 119:8
344:16 368:24
386:22
**learned** 28:12
120:16 122:5,9
193:6 218:4,15
219:16 220:6
220:24 222:7
371:8 372:2
373:14 384:23
386:3,4 405:20
426:15
**learning** 385:18
**leave** 47:9,24
48:3 61:23
68:17 76:22
88:21 109:8
167:9 265:10
266:14 392:17
**leaving** 160:22
**left** 39:19 88:5
100:4,7 107:6
132:11 225:1
230:21,21
307:1
**left-hand** 71:19
79:19 80:9
83:11 85:6
380:21
**legal** 205:12
217:22 218:9

218:14 219:7
220:17,23
221:12 222:10
222:15
**legally** 166:17
**let's** 11:23 14:22
28:20 32:9,12
33:24 37:14
61:20 64:16
65:23 71:9,9
97:7,24 104:5
123:8 137:5
138:14 182:8
201:16 209:16
264:24 284:4
289:19 326:14
328:6 358:8
363:4 396:16
429:6
**letter** 71:1,4,17
77:9,17 85:8
85:19 178:5
233:23 275:3,3
419:7 420:15
420:18 421:1,6
421:13,19,21
422:1,11,16
**letters** 277:14
**letting** 77:10
381:20
**light-skinned**
181:3
**limit** 325:21
**limitation**
389:12,23
**limitations**
329:10
**limited** 325:6
333:17 411:18
**limiting** 325:20
**line** 23:11 129:5
162:2 166:23
236:2 315:20
316:2 326:1
327:17 331:6

332:3 333:7,20
334:17 350:13
356:1 368:18
369:5 395:7
397:12
**lines** 274:2
277:4 320:18
324:19 402:20
**lineup** 27:18,20
72:18 82:20,24
83:4 331:18,20
335:24 336:11
372:1,18
423:21 424:1
425:17,21
426:2,7
**lips** 367:4,14
368:15,17,22
368:23 369:8,9
369:10,17
370:10,23
371:5,24 372:3
372:17,20
373:5,9,14,24
374:2,4,10
376:12 377:20
381:23 382:11
382:23 383:2,5
383:13 384:3
384:12 385:4,5
385:10,21
386:6,7,16,24
**list** 115:4,5
309:3
**listed** 300:13
301:13 302:9
366:8,8
**listen** 216:3
**litigation** 13:1
428:20 431:24
**little** 14:22,23
20:15 112:23
113:11 119:23
149:6 178:16
180:14 221:22

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 462

232:17 278:10
289:20 300:22
329:21 347:16
364:15 428:1
**lived** 210:16,20
343:7
**LLC** 2:17
226:11
**LNA** 361:8
**Lo** 3:12
**locate** 19:23
24:1 93:4,13
95:13 97:18
126:13 132:3,4
189:2,19
359:24 360:2,5
361:2,7 363:9
363:14 364:24
365:5 370:5
**located** 24:18
111:8,12
**locates** 135:20
**locating** 92:19
94:20 96:13
128:6 320:12
**location** 114:5
315:2
**locations** 251:7
**lock** 242:9
**locked** 75:2
242:11,11
**Locust** 210:19
**lodged** 325:12
**Loevy** 2:2,2
106:15,15
107:4,4
**log** 263:5 338:9
338:19 339:4,7
339:10,24
**London** 101:23
102:1,3
**long** 12:5 20:18
21:9,9 100:9
100:12 107:8
107:11,20

114:18 174:3
179:6 199:19
208:19 209:6
209:11,13,22
226:21 301:24
413:16
**longer** 112:24
345:5
**longhand** 159:8
**look** 9:7,15 14:1
85:20 93:20
94:7 98:6
113:2,24
114:15,19
116:13 174:13
178:9 179:22
180:17 183:2
195:16 198:7
229:24 238:13
258:3 260:20
261:3,4,24
264:24 270:20
272:19 273:15
274:17 275:13
294:21 298:24
299:1,4 318:6
318:13 340:17
340:18 342:8
342:23 344:3
345:6 347:9
354:24 358:8
363:4 369:13
370:17,18
375:6,10
388:23 409:8
412:1,11 428:2
**looked** 50:18
84:14 116:18
180:10 195:17
230:7,10 240:4
240:12,19
254:8 292:5,7
295:19 299:6
300:2 354:17
360:6 380:14

**looking** 9:18
15:4 23:23
26:11 30:1
40:5 64:10
78:4 87:18,20
109:6 140:15
140:23 175:5
175:11 176:16
190:8 194:14
198:4 245:15
246:11 247:21
261:21 265:12
274:8 293:7
308:2 310:13
352:12 355:15
374:13,20
376:24 409:14
**looks** 20:14
23:10,12,24
25:20 26:16
83:10 84:22
244:15 305:2
342:5 347:22
348:2 349:6
350:17,20
382:2
**lookup** 261:1,9
262:1,5
**lookups** 261:23
351:19,21
**lose** 89:14 426:2
**lost** 32:6 390:24
**lot** 88:8 102:3
199:21 206:16
235:2 246:3
258:8 292:2
328:7
**Lots** 105:22
**loud** 278:13
**loudest** 164:18
**loves** 102:21
**lowercase**
277:14
**lucky** 105:9
**lying** 431:16

432:4

---

**M**

**ma'am** 6:18 7:2
7:8,14,17
12:14 16:12,15
18:20 19:7,13
19:16 20:19
26:15,24 28:18
35:4 38:14
59:7,12,17,24
64:4 65:19
66:3,5 98:14
98:17 171:10
**mad** 25:11
**Madam** 62:10
161:11 163:15
203:11,13
271:8 410:2
430:13
**mail** 357:19
**mailbox** 36:5
37:7 38:18
177:18 183:17
**main** 207:17
**majority** 126:5
**making** 60:11
101:19 118:4
118:14 157:4
220:9,13
257:10 415:14
**male** 32:3,23
52:2 56:22
58:2 301:23
302:10 344:8
344:12,12
**man** 31:22 49:12
50:22 52:8
55:5 69:10,22
72:20 83:3
191:12
**manipulated**
218:17 219:18
222:7 284:14
284:24 285:9

**Maniscalco**
303:5
**manufactured**
428:24
**MAR** 23:12
**March** 19:15
26:2,4 64:18
65:24 78:4,23
238:20 246:15
250:22 253:14
293:3,8 343:5
**Margaret** 11:13
11:16,19
**margin** 71:18
83:11
**mark** 18:7 59:1
59:10 66:12
70:5 77:19
89:18 178:8,11
289:21 298:17
304:4 317:21
336:15 340:7
**marked** 4:9
18:10 62:17,21
63:18,21 64:18
66:7 67:20
70:2,4 77:23
90:7 290:3
298:21 304:12
309:13 318:2
336:18 340:14
379:23
**marker** 277:5
**markers** 278:22
279:4
**marking** 59:23
70:9 73:7
**marks** 74:16
**markups** 89:5
**match** 302:16
**matched** 302:5
**material** 123:21
145:23 257:6
426:14
**matter** 5:16 99:4

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 463

140:20 252:6
**McArthur's**
53:16,22 54:3
**McDonald**
231:5
**McIntosh**
106:17 165:6,7
165:24 166:2
166:14,19
167:1,24 168:5
170:6,11,24
326:6 387:8,16
388:11 389:16
390:13 391:13
391:14,21
393:24 394:23
395:24 397:24
398:12 399:24
400:9 401:12
402:5 403:1
**mean** 10:24 14:8
20:15 21:16
33:3 43:12
115:21 121:6
126:2 132:17
133:21,22
134:8 141:22
150:24 160:6
162:5 171:15
171:17,21
178:23 180:1
181:1 182:7
204:19 230:6
233:19 238:1
249:7 269:12
330:20 333:24
354:13 367:19
382:17 391:8
392:7,8 402:1
429:6,19
**Meaning** 118:11
**means** 392:7
**meant** 187:4
357:15
**measure** 182:14

**medium** 181:5,5
182:5
**meet** 19:23
52:17 55:6
56:23 124:7,20
131:17 133:12
133:15 134:10
138:22 139:19
210:4
**meeting** 8:9 54:8
124:4 140:8
424:15
**member** 112:5
115:14 116:5
235:8 421:4
422:13
**members** 30:8
30:18 34:11
35:12 177:4
179:7,15,17
183:23 184:5
184:18 185:2
212:6,9,14
213:16
**memory** 62:2
92:24 94:6,17
95:16 171:22
172:8,15 174:1
174:24 180:18
182:2 352:3
**men** 67:11
**mental** 221:18
**mention** 289:7
**mentioned**
51:16 99:2
189:3,6 203:4
232:13
**messed** 82:7
**met** 30:8 53:15
53:21 54:2
78:9 124:21
134:9 424:7,11
**Michael** 90:22
90:24 91:7,10
91:12,20 92:3

**Michigan**
111:16
**middle** 180:16
201:24 337:6
344:5
**Mike** 91:13
**mind** 28:6 47:8
385:6 390:9
405:22 430:12
**mine** 9:23 22:9
341:16 375:6
**mini** 435:3
**minute** 98:6
201:22 225:9
251:15,15
291:22 298:24
342:11
**minutes** 222:18
**mischaracteri...**
73:3
**mischaracteri...**
34:15 35:16
36:24 39:23
41:10 42:20
43:22 46:5,24
48:7 49:2,14
53:2,18 54:23
56:2,14 58:14
59:14 60:13
62:6 65:16
69:3 70:8
74:13 77:3
79:1 81:11
84:7 184:14
249:1 257:19
280:5 284:17
414:8 422:6
**mischaracteri...**
45:8
**misconduct**
403:6
**misrepresents**
285:15
**missed** 280:17
368:22

**missing** 232:6
233:20 279:6
342:2
**mission** 272:6
272:14,17
285:8,24 286:6
**Mississippi**
82:11 91:16
92:5,7 93:12
93:19 94:7,15
261:11 352:9
366:19 375:20
376:2,3,7,9
377:17,17,18
**misspeak**
412:12
**misspoke**
187:11,23
**misstates** 149:19
248:12 285:3
373:17 413:22
**mistake** 371:6
**Mm-hmm** 97:11
123:17 300:16
365:17 398:1
**moly** 180:7
**moment** 93:9
309:17 325:16
353:20 355:17
**Monday** 108:1
430:6
**money** 36:4,11
36:14,16 37:6
38:18 39:4,15
39:17,19 40:8
177:9,14,15,15
177:17,19
179:1,2 180:7
183:16,16,23
184:4 185:3
254:3,11
258:12
**Monico** 1:18
2:17 3:13
437:12

**months** 13:8,8
20:15 111:18
111:19
**morning** 7:23
**Morrison** 2:12
5:10,10 98:15
102:23 104:1
104:13 113:16
114:16 115:8
116:7,21
175:21 194:3
200:4 201:3,5
205:12 217:1
231:22 234:15
236:1 247:17
274:15 281:22
283:2 284:19
285:12,18
298:9,13 312:6
314:3 316:5
317:11 320:22
323:1,13 324:8
324:21 328:5
331:15 333:13
344:20 351:11
404:11 408:5
412:6,22 413:8
418:9,22 422:6
**mother** 210:5
**motion** 166:14
166:20 316:10
325:20 387:24
388:7 389:8,10
390:23 391:20
392:12
**motions** 419:2
**mouth** 160:14
325:15
**move** 78:13 81:6
119:7 162:2
167:11 324:19
333:12 396:16
**moved** 88:6
**movie** 101:10,14
101:16,19

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 464

moving 189:23
321:9
multiple 19:23
20:18 250:22
mumbling
434:20
murder 77:11
192:17 196:13
255:6,15 259:5
418:2,6,17,18
murderer 419:9
my- 117:24
myriad 200:10

―――――――――
**N**
―――――――――
N 4:1 381:12
N-A-T-H-O-N
206:20
nada 10:9
243:17
name 5:7 6:8,9
6:12 8:16 11:9
11:11 52:21
53:7,12 65:6,7
65:10 89:1
91:10 95:7,10
95:18 99:3
206:21 210:7,9
214:9 226:16
226:17 230:24
231:2,4,6
234:24 258:2
263:1 264:2,5
264:10,15,15
264:20 266:21
267:5 272:7
286:15 296:2,5
296:8,10,14,17
297:6,9 298:2
300:14,22
301:5,9 305:3
306:8 308:3,3
308:4,8 309:2
310:15 337:5,9
337:16,20,24

338:1,14 346:4
359:16 360:22
361:3 362:13
362:16 363:10
364:18 365:1
365:15 374:4
377:15 382:23
411:23
named 53:16
90:22 92:6
130:14 226:17
343:12,18
346:2 360:1,2
366:15
names 23:11
35:23 246:3
254:7 305:3,9
305:14,15
310:14 312:3
naming 310:14
Nancy 17:13
381:17
narcotics 126:2
315:5 317:3
Nathon 206:19
206:20,20
207:4
Nathson 106:18
206:17,20
207:2,4
naturally
423:13
nature 130:6
132:12 162:3
173:18 177:24
414:18,19
necessarily 70:9
147:10 161:19
194:22 291:23
312:4 362:2
420:12
necessary 59:3
141:15 389:18
390:14
need 6:21 14:4

63:1,4,5,7 94:2
155:11 190:12
200:9 201:14
202:23 203:6
291:15,23
304:5 327:16
388:21,23
396:10 435:5,8
needed 63:11
348:5,6 349:19
neglected 366:1
never 14:7 86:6
86:7 101:15
102:1 135:21
183:22 184:3
184:18 185:2
188:4 201:7
212:6 225:1
235:6 243:4
253:22 261:24
282:5,12
293:24 318:15
319:23 339:18
341:2 343:20
359:19,21
372:10 385:6
405:21 414:20
426:13
new 111:15
117:18,18
167:6 332:6
361:24 362:10
362:10,19,20
381:23
nickname 97:13
nine 13:8 111:18
278:20,21
279:2
NOLAND 2:12
nomenclature
142:24
nonemployee
215:17
Noradin 1:7
224:3,5,7,16

436:7
normal 173:11
173:12 236:20
normally 143:8
175:14
North 2:3
210:19 361:9
438:15
northern 1:1
91:16 395:18
436:1
NOTARY
436:22
notation 270:20
274:9 275:7
notations 59:2
60:11 61:21
74:8 81:1
186:20 188:2
note 27:15 170:5
170:10,16,20
170:23 236:6
243:20 265:9
266:5 316:9
335:12 345:13
346:13,17,18
346:20,22
347:1,4 348:14
348:19,22
351:7 373:10
374:19 375:21
376:21,22,23
377:2,9,19
380:17 381:19
382:3,24 414:7
430:14
noted 60:22 85:2
185:13 353:20
notes 98:7
148:21 149:1,7
149:11,16
150:13,16,20
151:4,9 153:4
153:5 154:12
154:14,21

155:4,6,13,16
155:19,21
156:6,12,14,18
156:20,24
157:4,5,7,9,10
157:12,14,18
158:12 196:24
242:13 243:8
243:11,15
244:5,9,11
342:9,12,17,18
342:21 345:24
352:12,22
353:4 356:17
356:21 357:10
428:2,8,9,12
428:15,19,23
429:9
notice 1:14
noticing 195:20
196:11
notification
301:2
notifications
17:3
number 4:9
22:19,19,22,23
22:24 23:7
69:18 71:3,3,5
88:5 134:8
153:16 158:15
200:10 273:15
274:10,21,23
275:4 276:2
277:15,23,24
278:3,4,7,17
279:5,9 280:1
295:12,13
314:17,20,20
315:1,8 317:7
341:4 347:12
377:16 388:1,1
394:2 396:19
396:20 397:12
400:20,21,23

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 465

409:17 435:1,2
436:18

**O**

**O** 233:23
**oath** 262:14
**obese** 180:1
181:7,9
**object** 30:20
70:7,17 73:2,2
102:23 114:16
115:8,9 116:7
116:20,21
118:9 122:12
163:14 167:2
169:4 172:14
194:3 200:4
201:3 218:20
231:22 234:15
236:1,2 237:9
251:16 274:15
285:14 287:20
312:6 315:20
321:3 344:20
352:19 356:15
400:15 412:6
413:22 427:4
427:16 430:23
**objected** 22:1
33:16 97:21
103:3 176:6
197:11 404:1
**objecting** 219:1
325:16 356:20
**objection** 15:14
20:1 21:22
24:6 25:13,13
28:1 29:18
32:18 33:2
34:14 36:23
37:22 38:11,20
39:7,21,22
40:20 42:4,8
43:21 45:7
46:4 48:5 49:1

50:24 54:9
68:1 69:2 72:9
74:19 81:10
84:5 86:17
87:8 93:14
96:1,19 97:19
100:20 101:4
103:1,21,22,23
104:3,8 106:2
108:9 109:17
113:16 120:20
124:15 125:6
128:12 129:1
132:24 134:22
135:6 137:10
137:11,22
139:6,9,12
140:1,2 142:4
142:15 145:17
146:6 147:8,14
149:19 155:23
157:20 160:4
161:21 163:13
168:11,12,17
169:3,19
174:21 175:21
176:2 184:14
184:22 185:4
186:11 189:11
195:23,23
196:14 197:9
197:21 199:5
199:14 204:2
205:11 213:2
213:12,21
214:21 215:10
215:21 216:21
217:16 218:19
219:20 221:2,4
233:11 236:6
237:6 239:12
243:20 245:16
246:7,18
247:14 248:24
249:18 250:2

250:13,24
251:18 252:20
257:2,4,5,19
262:6,9,9
268:12 270:24
274:4 280:5,23
281:20 282:8
282:23 283:12
284:9,16 285:2
285:10,12
286:9,22,23,24
288:8 289:4
313:14 314:3
316:2,6 320:9
320:18,24
321:6 322:3,6
322:14,15,24
327:10,20
329:3 330:22
330:24 332:21
333:1,5,7,22
334:1 348:19
349:21 350:4
350:22 351:9
353:18,20
356:11 371:16
372:21 373:15
375:21 377:24
382:12 383:15
384:13 385:1
387:23 391:6
394:4,16
395:20 396:24
398:13,21
400:4,14,21
401:23,24
402:9 403:9,22
406:14 408:1
409:2 411:6,17
412:19 413:18
414:7,9,24
415:17 416:8
417:10 418:8,9
418:23 422:6
422:18 426:17

431:17 433:18
**objections** 28:16
31:16 32:5
35:2 36:7 37:9
43:2 44:9
45:13,19 47:11
49:22 51:7
53:9 54:22
55:7 59:20
60:12 62:5
81:18 105:3
166:24 205:4,5
206:2 218:7
220:7,10,14
221:9 247:5
252:9 317:11
322:24 323:11
324:7,8,9,14
325:12 326:1
329:5 330:3,10
331:13,14,21
404:10 407:1
407:15 413:7
418:22 432:6
432:13
**objective** 105:7
413:10,13
**objects** 20:6
167:15
**obligated** 149:4
150:13,16,20
151:24
**obligation**
123:15 151:4
220:24
**obligations**
121:6 122:4,9
122:23 124:4,7
124:13,21
151:13 218:10
218:14,18
219:8 220:17
221:12
**obstructing**
348:21

**obviously**
158:20 359:22
**occasion** 14:1
98:3 112:21
140:24 152:19
199:24 237:15
245:10,14
246:5,11,15
**occasions**
105:17,20
106:16 250:22
411:12
**occurred** 79:15
115:17,18
116:14 150:9
191:21
**October** 91:21
260:23 262:4
**offender** 43:12
302:10 368:21
370:9
**offenders**
301:13,17,22
344:17 424:24
**offense** 299:19
299:21 344:18
**offer** 133:19
211:5 221:17
**offered** 211:9,20
**office** 2:7 3:7,11
5:13 10:12,15
10:18 11:3
12:1,5,8,13,17
12:19 13:7
16:1 17:18
22:18 83:15
96:8 97:3
99:17,22
100:13 101:3
102:8,16,21
107:9,22 108:1
108:7 111:9
117:7 119:9
120:18 121:3,9
121:18 124:2

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 466

| | | | | |
|---|---|---|---|---|
| 125:22 134:3 | 421:5,18,24 | 162:20 179:18 | 68:13 71:3,16 | 148:24 149:5 |
| 136:9,18,23 | 422:14 427:4 | 191:13 210:3 | 71:18 72:15,16 | 149:24 150:12 |
| 137:24 139:8 | 427:16 431:4 | 211:14 232:6 | 73:19 74:15 | 151:19 152:2 |
| 139:11 142:10 | 432:15 433:4 | 233:17 236:24 | 75:18 76:10,15 | 155:3,18 156:4 |
| 144:3 146:3,17 | 433:20 | 255:13 260:4 | 76:19 78:8,12 | 156:8 157:10 |
| 158:1,3 163:19 | **officer** 41:21 | 260:20 265:15 | 79:14 80:2,5,9 | 157:24 159:13 |
| 164:1 167:15 | 42:17 101:22 | 267:2 278:13 | 80:20 82:14 | 159:16 160:1 |
| 168:24 169:22 | 120:16 199:20 | 293:7 296:9 | 83:10,21 84:3 | 161:10 162:13 |
| 170:7,12 171:1 | 294:18 300:13 | 300:11 301:1 | 85:5,23 86:5 | 168:3,22 171:3 |
| 191:22 196:2 | 303:5,12 320:4 | 337:10 355:20 | 86:13 87:5,22 | 171:20 173:23 |
| 196:15 199:7 | 321:21 322:20 | 360:2 371:2 | 88:9,10,19 | 174:5 176:18 |
| 200:2,13 204:9 | 323:7 324:12 | 384:1 402:22 | 89:4,17,24 | 178:22 179:20 |
| 214:22 215:11 | 325:7 327:14 | 410:2 422:11 | 90:1,5,14,18 | 181:18 184:7,9 |
| 215:18,23 | 328:17 330:8 | **okay** 5:19 7:15 | 90:23 91:4,20 | 185:8,11 |
| 217:7 221:9 | 331:4,24 334:3 | 7:21 9:5,17,18 | 91:24 92:12 | 187:11 188:4 |
| 226:19 227:1,9 | 334:14,20 | 11:2,23 12:4 | 94:6 97:24 | 188:13 190:24 |
| 227:16,22 | 336:2 403:6,18 | 13:18 14:22 | 99:9,12,21 | 191:16,17 |
| 228:1,4,6 | 403:20 404:7 | 15:4,10 17:11 | 100:2,8,18 | 193:3,14,20 |
| 235:23 236:12 | 404:21,22 | 17:22 19:14 | 102:2,5 103:11 | 195:3,11 196:7 |
| 236:23 237:21 | 405:6 409:16 | 20:5,10,13,20 | 103:14 104:18 | 196:23 199:10 |
| 239:14 240:22 | 412:15 413:4 | 21:2,12 22:15 | 105:12,17,24 | 202:7 203:3,19 |
| 241:8,21 249:9 | 413:17 421:22 | 22:21 23:6,9 | 106:12,20 | 203:22 205:18 |
| 252:19 253:2,8 | 422:4 | 23:20,23,23 | 107:2,6,20 | 205:22,24 |
| 263:6,14 | **officers** 1:8 5:9 | 24:17,21,24,24 | 108:2,4,20,23 | 206:8 208:6 |
| 267:21 275:10 | 6:14 198:10,15 | 25:2,16,24 | 109:3,7,10,13 | 210:4 214:3 |
| 275:10 281:1 | 198:23 199:3 | 27:1,15 28:12 | 110:2,14,20 | 215:4 216:6 |
| 287:1,17 | 199:11,13,22 | 28:20 29:8,10 | 111:20,24 | 219:6 220:12 |
| 288:11 289:10 | 200:2 303:4 | 29:20 30:3,4,7 | 112:4,8 113:3 | 222:11 223:7 |
| 294:8 310:4 | 415:15,24 | 32:6,9,12,22 | 114:9 115:2,14 | 224:2,9,22 |
| 328:2 335:6 | 416:4 436:8 | 33:11,11 34:1 | 115:20 116:11 | 225:20 226:6 |
| 338:8,21 | **offices** 1:17 3:2 | 34:9 36:14,20 | 117:4 118:20 | 226:18 227:13 |
| 352:23 357:1 | 111:14 332:9 | 37:19 38:16 | 120:9,14 | 228:23 229:20 |
| 357:10,12,14 | 357:18 437:12 | 39:18 40:16 | 121:10 122:1,8 | 230:4 231:8 |
| 376:13,17 | **oftentimes** | 41:5,19,20 | 123:6,6,8,18 | 233:2 234:7 |
| 387:19 388:14 | 140:20 154:9 | 44:24 47:21 | 123:24 126:10 | 236:8,19 |
| 391:15 392:11 | 357:16 | 49:7,18 50:18 | 127:16 128:17 | 238:13,16 |
| 394:13,19 | **oh** 8:4 10:21 | 51:2,12,18 | 129:9,12,17,22 | 239:20,23 |
| 399:1 403:4 | 14:7 18:13 | 54:19 55:13,16 | 131:14 132:15 | 240:3,7 241:17 |
| 405:10 406:2 | 23:22 24:15 | 56:10 57:22,23 | 133:4,12,17 | 242:5,6,12 |
| 410:10,14 | 48:20 63:7 | 58:20 60:20 | 134:19 136:24 | 243:16 246:7 |
| 411:8 415:3 | 71:3 75:23 | 61:5,7 62:12 | 137:2,5,15 | 246:24 249:22 |
| 416:15 417:14 | 81:4 107:12,13 | 63:1,14 64:5,9 | 138:12 139:2 | 250:20 251:17 |
| 417:17 419:14 | 124:23,23 | 64:12 65:6,12 | 139:16 140:8 | 252:1 253:22 |
| 419:24 420:2,8 | 131:14 133:15 | 66:6,9,15,18 | 141:17 142:9 | 255:3,11,13,23 |
| 420:11,17 | 151:20 153:14 | 67:18 68:5,9 | 144:4 147:4,12 | 257:13 259:19 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 467

263:21 266:1,8
266:13,17,21
267:2 268:23
269:6 270:2,12
270:18 271:7
272:16 273:15
274:19,24
275:5,23
276:22 277:8
277:17,21
278:14,20
279:3,7,8,12
279:19 280:14
280:15 281:13
282:17,19
288:22 289:19
291:8 292:6,10
292:23 293:7,9
294:3,21
295:18 296:1,7
296:9,23 297:8
297:17,22,24
298:6 299:7,21
300:1,5,20
301:12 302:8
302:19 303:2
303:17 304:2
305:23 306:3
306:13 307:5
307:13,17,20
308:19 309:2,7
309:10 310:22
310:24 311:5
311:14,23
312:17 313:2,6
313:22 316:13
316:20 317:19
318:16,20
319:7,22 320:4
321:3,18,24
324:1 326:10
326:14,23
328:6,12
331:17 334:11
335:21 336:5

336:12 337:5
337:14,18,23
338:7,16,17
340:5,21,24
341:7,17,21,24
342:4,7,16,20
342:23 343:1
343:22,22
344:2 345:4
346:13,20
347:1,9,14
348:13,18
349:11 351:4
352:17 354:14
355:5,22
356:18,24
357:3,7 358:8
358:15,15,15
358:16 359:4
359:20 360:4
360:16,18
361:2,12,19
363:4 365:24
367:23 368:10
371:11 373:20
374:12,18
375:2,4,7,12
376:11 377:12
378:13,22
379:8,11 380:5
380:12,23
381:19,22
384:4,7,22
387:2 388:22
389:1 390:17
393:7,9,20
399:14 401:9
401:11 404:14
404:20 405:19
410:2 413:24
415:12 422:1
422:15 427:24
428:18 429:3,9
429:22,24
432:10,21

434:6,10,11
**old** 112:23
  113:21 114:14
  160:23 191:13
  194:7 230:1
  231:15 232:17
  254:22 305:2,4
  305:8 414:19
**older** 31:22 32:3
  50:22 113:6,11
  232:17 311:4
**omitting** 266:19
**once** 96:12
  106:16 141:22
  174:18 226:13
  248:10 249:15
  249:22 251:5
  257:5 356:17
**one-page** 346:20
**one.'** 69:23
**ones** 74:21
  173:12 226:14
  235:2
**ongoing** 192:10
  192:24 395:1
  396:5 400:2,13
**open** 115:19
**open-ended**
  147:12
**opened** 109:11
  109:12
**operated** 234:9
**operation**
  233:21 234:12
**Operations**
  233:8,10,18,19
  233:23 234:3,5
  234:8
**opine** 324:15
**opinion** 51:9
  133:19,21
  146:20,20
  169:15 214:18
  215:6,19 270:5
  280:19 288:24

333:9 433:15
**opinions** 131:24
  221:17
**opportunity**
  9:15 299:4
  309:20
**opposed** 91:2
  262:4 435:3
**oral** 437:18
**orally** 13:23
**order** 166:15,20
  202:14,18,23
  203:5 212:14
  212:15 316:11
  325:20 326:5
  348:8,21 355:1
  387:24 388:7
  388:11 389:9
  389:11,13
  390:3,19 392:3
  393:16 395:6
  435:3,5,12
**ordering** 435:10
**orders** 36:5
  177:17,20
**organized**
  234:24
**orient** 301:18
**orienting** 425:16
**original** 165:2
  206:4 299:16
**originally** 199:4
**outings** 228:18
**outline** 131:4
**outlined** 388:6
**outside** 82:21
  225:22 227:10
  227:21 320:19
  324:17 326:8
  388:6,17
  389:22 398:4
  420:9
**overall** 207:15
  282:3
**overly** 200:16

389:15 390:12
**overruled**
  166:21
**overturned**
  143:18,23
  201:2,10
  203:23 204:1
  204:12,22
  205:1,3,19,21
  206:1,5,9
  207:6 412:5
**overturning**
  205:8
**overview** 110:3
**owned** 226:16

---

**P**

**p.m** 435:15
**package** 129:7
  130:3 153:11
  282:4
**packet** 358:9
  378:16 379:10
  379:17
**page** 4:2 22:6
  24:13,14 26:14
  27:7,8,9 28:21
  28:22,24 36:1
  49:6 50:19
  52:7 57:18,19
  57:20 60:19
  64:21,22 65:23
  67:11 68:9,13
  68:15 69:7,10
  69:14,15,22
  70:21 71:12
  72:14 75:1,1
  77:7,7 89:21
  254:23 255:1,2
  255:10 258:9
  258:21,22,23
  259:1 265:8,8
  265:13 266:24
  268:17,21
  274:14 294:21

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 470 of 492 PageID #:7932

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 468

303:3 318:6
341:3,11,15
342:1,24 344:3
344:5 345:10
345:12,13,16
345:18,19,21
347:15 348:7
354:14 358:8
360:16 363:5
364:14 374:12
377:5 378:15
378:16 379:5
379:10,16
380:6,10,13,17
397:11 401:10
402:17,19
428:15
**pages** 89:24
342:9 347:10
358:10 428:9
428:12
**paid** 39:5
**Papa** 346:3,6,10
**paper** 11:20,22
143:14 156:15
195:18 369:4
369:11,23
370:11,15
**papers** 369:16
**paperwork** 9:15
9:19 15:4
371:1
**paragraph** 27:6
27:10,11 28:14
28:23,24 29:2
29:6,10,16,16
29:17 30:1
31:2,5,5 33:21
34:1,7 36:1,12
37:3 40:4,24
41:19 44:14,21
44:21,24 49:6
50:1,3 52:7,11
57:17,20 58:23
60:18,21 61:19

65:23 66:18,24
67:6,6,9 68:11
69:8,9,15 70:6
70:10,15,21
71:12,13,14
72:13 73:8,15
75:1,6,14,19
76:2,10,15,17
77:8,15 79:14
80:5,11,13,20
81:4,7,24
82:12,15,18
84:4,13 85:5,7
85:9,16,21,23
86:6,14,20,22
86:22 87:19,21
88:9 162:2
254:24 255:5,8
255:9 258:20
259:1,2,15
268:18 269:1,2
269:8,9,13,21
269:23 270:15
273:15,19,20
274:23,24
275:1,3,8,14
275:17 276:2
276:12,24
277:3,12 390:7
**paragraphs**
41:16 50:19
51:17 65:22
79:8 278:21
279:2
**paralegal** 3:12
**parameter**
308:7
**parameters**
112:22 307:24
308:3,8 309:3
329:7,10
330:16 333:17
**pardon** 8:20
10:16 11:10
16:21 21:24

83:23 88:3
93:15 96:18
98:10 127:3
148:15 153:21
156:22 170:8
176:1 182:12
216:12 265:2
269:19 281:9
293:17 315:15
346:16 347:3
356:3 369:18
380:3 410:4
418:3 426:18
428:11
**Parkside** 361:9
**parole** 65:24
66:1 77:9
419:8,10
420:16,18
421:2,8
**part** 6:16 16:9
18:3,4 24:21
62:22 141:18
142:11 159:17
186:7 198:21
207:15,21
211:16 227:5
230:18,18,20
231:20 270:2,7
274:3 290:18
306:11 342:2
365:22 371:3
375:8,9,11
380:2 395:13
395:14 415:22
**partial** 411:6
**partially** 125:16
343:2
**participate**
233:7
**participated**
320:3
**particular**
188:20 306:4
312:2 363:2

**particularly**
180:15
**parties** 438:5
**partner** 8:12
17:19,22 18:3
45:11 156:2
172:12 211:12
**partner's**
153:18
**parts** 178:16
**party** 228:21
**pass** 135:21
**passage** 239:11
**patrol** 91:16,18
110:7
**paws** 141:21
**paying** 39:14,16
**payment** 39:20
**payments**
211:20
**pendency**
423:14
**pending** 6:23
176:5 198:12
426:11
**pension** 100:18
101:2
**people** 12:21
17:5 40:7 47:7
47:8,23 48:3
48:17 50:15,23
51:6 56:18
81:21 103:13
103:18 104:23
105:10 117:16
118:7,22 119:5
126:1 177:3,11
179:8,14 189:4
189:18 194:14
200:11,14
212:18 252:18
254:2,10
265:23 308:23
365:21 394:2
396:20 400:11

418:1,5,14,16
**percent** 14:2
21:15 153:7,9
153:18 158:14
207:8 330:16
**perfectly** 99:11
112:19
**perfunctory**
260:10
**period** 16:10
116:22 171:19
235:17 350:18
**permanently**
18:3
**permitted**
388:12
**person** 47:18
51:10,15,16,19
53:21 85:24
134:6 141:1
146:22 166:10
168:10 181:15
248:18 294:23
295:6 300:20
303:8 376:2
387:19 407:9
407:22 408:13
421:21
**person's** 11:11
263:1
**personal** 214:18
215:6 223:8,19
224:15 225:11
228:9,12
288:24
**personally**
334:21
**personnel**
146:16
**persuaded**
390:1 420:9
**pertaining** 1:16
**pertains** 410:12
410:15
**pertinent**

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 469

141:15
pestering 177:4
pgs 436:19
phase 15:21
  16:4
phone 2:4,9,14
  2:20 3:4,9 52:9
  253:13 377:16
  438:16
phonetic 296:4
  296:20 297:2
  298:3
phonetically
  297:1 298:3
photo 27:18
  69:10,21 70:3
  83:2 268:19
  294:24 295:3
  319:3,11,24
  320:7 321:21
  322:5,12
  323:10 324:6
  327:8 329:2,24
  331:12 332:19
  343:7,11,17
  373:21,22
  386:7,8,15
  425:11,12
photocopy
  18:24
photograph
  336:6 425:15
  426:6 429:17
  430:2
photographs
  308:22,24
  309:5
photos 67:11
  72:24 82:2
  311:15,16,17
  311:21 320:6
  321:22 322:1
  322:11 323:8
  323:23 324:4,5
  327:4,7,9

329:1,9 331:11
  335:22
phrase 122:13
  234:6
phraseology
  423:9
physical 27:19
  172:8,15 183:4
  242:3 301:22
  302:5,16
pick 27:17,19
  61:17 71:20
  72:19 82:3
  83:2,6,15
  232:9 271:6
  275:11 276:6
  425:17
picked 72:17,20
  83:4 101:20
  113:11 114:22
  369:9 386:6,17
picking 399:15
picture 67:15
  330:12
pictures 318:24
piece 156:15
pieces 101:16
pile 97:13
pink 181:24
place 210:24
  320:12 373:13
  437:22
placed 389:23
places 102:3
plaintiff 1:4
  2:11 5:16 99:4
  436:4
plaintiff's
  136:11 281:3
plan 256:19
planned 70:1
  109:4
play 12:19
pleasant 21:8
  174:2 176:20

please 6:9 7:4
  28:4 99:13
  104:19 125:8
  163:15 397:19
  413:18 435:7
  436:17
plural 62:9,13
  259:6,7
point 6:21 14:20
  17:24 77:8
  111:20 131:20
  133:12,18
  135:4 189:7
  197:4 198:17
  215:7 222:18
  227:13 253:13
  263:22 295:20
  300:4 307:9
  324:15 326:11
  336:13 339:24
  344:17 347:2,5
  360:5 373:13
  375:19 385:18
  385:19 386:22
  410:24 423:2,5
  423:14 425:20
  431:13,23
pointed 67:13
  69:9,21 83:7
  268:19 270:3,8
  270:15
police 1:8 44:15
  61:15 66:19,20
  67:10 69:9,21
  71:19 72:16
  76:11 77:8
  82:1,19,23
  83:1,4,7 85:9
  97:15 99:23
  100:3,4,11,19
  100:23 101:21
  107:7,17,21,23
  109:1,8,14
  110:4,5,15
  111:16 116:17

118:1 119:1,2
  120:16 121:8
  121:13 141:10
  192:5,7,21
  193:15,16
  195:4,8,12,21
  196:12 199:20
  199:21 216:19
  226:3,20
  229:17 231:21
  232:4,12 233:8
  233:10,15,18
  233:19,21
  234:1,5,9,10
  235:24 238:8
  268:18 270:15
  271:5,14
  284:14,24
  285:8 294:18
  305:5,9 306:5
  306:11 314:21
  315:8,23 320:4
  320:15,17
  321:20 322:20
  322:21 323:7
  323:24 324:12
  325:7 327:14
  328:17 330:8
  331:4,23
  332:17 333:10
  334:3,14,20
  336:2 372:17
  403:6,18,20
  404:7,21,22
  405:6 406:4
  408:24 409:13
  409:16,22
  410:16,20
  412:14,17
  413:3,6,17
  415:15,24
  416:4 422:3
  424:1,22 425:3
  425:6,15,20
  426:1,6,10

436:8
policeman
  414:17
policies 119:21
  120:7,10,10
  231:18 232:2,7
  232:10 388:13
  389:19 390:15
  391:16 392:9
  395:6 398:6
policy 119:8,12
  119:19 120:2
  158:7,11 217:6
  217:23 218:13
  220:17 227:8
  232:15 395:11
ponytail 302:11
poor 272:9
popped 109:6
  112:21 235:20
popping 194:16
portion 73:8
  143:12 192:11
  348:9,21
  410:11
posed 42:3
position 119:4
  170:12 190:18
  200:12
positions 110:3
positive 207:8
  296:6
positively
  185:12
possibility 417:7
  430:21
possible 148:14
  148:17 245:13
  246:1,4,10
  247:7,9 249:5
  249:17 250:1,4
  252:16 262:3
  281:15 282:20
  403:17,19
  404:6,17

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 470

prep 106:9
preparation
 8:10 10:2 15:5
 19:5 64:6
 78:19 292:14
 292:16,19
 299:11 304:19
 309:24 318:10
 336:22 340:22
prepare 7:15
 140:10
prepared 19:1
 54:7,16 57:3
 111:15
presence 65:14
 66:16 68:6,24
 71:24 73:20,23
 75:12 80:3
 81:2 88:17
 89:5
present 3:12
 45:12,18,22
 293:10 437:14
presented 54:3,7
 54:15 57:2,9
 57:10 58:4
 81:20 98:4
 247:10
preserve 327:21
 327:23
president
 264:17,19
pretty 120:23
 158:23 159:12
 171:19 172:24
 173:7 174:9
 176:10 178:24
 180:23 194:7
 217:3 250:15
 256:22 311:18
 319:10 383:8
prevented
 123:20
previous 33:5
 51:17 91:23

413:11,13
 416:3
possibly 372:1
 377:17
post-conviction
 12:24 13:1,5
 13:11 15:18,19
 16:1,3,7 126:7
 126:10,14,18
 126:21 127:7
 127:10 142:11
 155:15 163:10
 227:14,19,20
 383:13 403:5
 419:2
Post-It 380:17
 382:3
posture 122:19
potential 203:6
potentially
 236:21
pounds 301:24
Povolo 303:14
practice 96:7
 131:23 138:20
 139:2 141:7,19
 145:13,22
 146:12 154:20
 155:9 158:5,6
 158:7,8 198:21
 232:16 242:22
 243:24 248:5
 248:10,20
 249:15,22
 258:5 290:10
 290:15,24
 306:5
practices 125:3
 125:10 197:7
 197:19 389:20
 390:16 391:16
 392:10 395:6,9
 395:12 398:6
precise 146:4,12
precisely 145:22

152:13 359:4,7
 360:23 361:22
 362:3,16
 363:17 364:19
 366:7
previously
 25:22 80:5
 82:1 98:23
 99:1,2 137:21
 165:23 257:7
 277:15 319:23
 367:18 387:15
 437:14
primarily 128:6
 315:4 317:2
primary 146:24
 163:8 166:7
 168:7 223:24
printed 322:11
 323:8 329:1
printout 308:6
prior 7:22 12:4
 29:4 34:16
 35:16 36:24
 41:10 42:20
 43:22 45:8
 46:6,24 48:8
 49:3,14 53:2
 53:18 54:7,16
 54:24 56:2,14
 58:4,14 59:14
 60:13 62:7
 65:16 69:4
 77:3 79:1
 80:17 81:12
 84:7 90:15
 91:20 99:21
 104:24 108:24
 129:19 137:8
 235:16 248:12
 249:1 253:13
 259:15 261:19
 285:3 300:6
 310:4 312:18
 318:17 382:24

389:19 390:15
 391:10 398:5
 426:7
prison 336:10
private 225:21
 226:23 227:15
privilege 136:12
 136:22 138:2
 163:21 164:14
 165:19 167:19
 167:21 169:9
 169:24 196:4,6
 202:16 203:7
 214:24 215:13
 216:1 221:15
 239:16 240:24
 241:10 253:4
 263:5 267:23
 281:4 287:3,19
 288:13 289:12
 338:9,19,23
 339:4,7,10,24
 394:21 395:17
 395:19 396:14
 399:3 405:12
 415:5 416:17
 417:19 419:16
 422:19 427:5
 427:17 431:6
 432:17 433:6
 433:22
probably 11:22
 21:15 50:16
 91:1 106:7,7
 131:19 156:17
 159:17 164:24
 189:1 198:4
 313:18,19
 326:10 377:9
 377:19 435:12
problem 33:15
 321:10
procedure 1:15
 97:1,3 258:4
 403:21 404:9

404:23 405:7
 406:12
procedures
 117:12,12
 388:14 395:9
proceeding
 411:3
proceedings
 407:11,20
 408:22
process 136:12
 136:22 138:1
 150:3 152:24
 153:1,3 163:20
 164:14 165:19
 167:18,21
 169:9,23 196:3
 196:6 214:24
 215:13,24
 221:15 239:15
 240:23 241:9
 253:3 267:22
 281:4 287:3,18
 288:12 289:11
 338:23 394:21
 395:17 396:14
 399:2 405:12
 415:5 416:16
 417:19 419:15
 422:19 427:5
 427:17 431:5
 432:17 433:5
 433:21
processed
 362:24
processes 164:1
produce 429:17
 429:18 430:5
produced 263:6
 352:16 353:1,3
 428:20
product 122:2
 338:22 339:1
production
 263:7 352:21

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 471

356:23
**professional** 213:20
**profound** 415:23 416:4
**promised** 86:23 87:22 279:14
**promises** 212:21
**prompt** 256:20
**pronounce** 296:1,10,16 297:4,6,13,14 297:15,20
**pronounced** 297:9 298:2
**pronunciation** 298:2
**proposed** 42:11
**prosecution** 424:6
**prosecutor** 128:18,23
**protected** 396:14
**protective** 166:15,20 316:11 325:20 326:5 348:8,21 387:24 389:9 389:11
**provided** 25:3 40:19 96:14,17 96:23 97:4,10 436:14
**proviso** 325:8
**public** 313:18 436:22
**pull** 97:15
**pun** 381:23
**purchases** 315:5
**purple** 181:24
**purports** 293:2
**purpose** 129:22 163:9 166:8 168:7 307:21

**purposes** 312:3 396:2 397:9
**pursuant** 1:14 1:14 166:15 390:19 391:23
**put** 37:20,24 38:4 50:16 62:23 67:2 70:15 77:16,18 85:8,24 90:2 132:11 174:10 190:1 227:11 227:12 275:6 298:6 304:2 309:2,2,10 310:21 317:19 325:14 332:24 333:4 340:5 343:6 344:2 345:4 370:19 382:23 387:14 423:13 426:14
**putting** 50:12 227:4 308:7

___

**Q**

**qualified** 119:4
**question** 6:23 7:3,6 29:20 33:6,8 38:24 42:2 43:3 44:2 47:12 81:5 92:12 97:5 104:20 116:4 119:23 122:22 136:10,17,19 137:4,6 138:6 139:10,14,24 156:11 161:7,9 163:7,14,22 164:13,23 165:2,17,18 166:11 167:5,7 167:9,23 169:4 169:7,12 170:9

170:13 171:1 176:5,7,12 180:24 187:20 190:21 196:8 196:10,21 201:19 202:4 202:12,15,18 202:21,24 203:2,5,12 204:6,23 206:4 215:2 218:2 219:4,13 220:4 221:5,16 222:4 229:6 233:13 234:16 236:8 239:21 240:15 245:21 246:12 249:11,12 253:7,10,10 256:6 259:10 259:23 260:21 262:12,22,24 263:23 267:13 267:19 268:4 270:14 271:9 273:4 275:23 279:23 281:2,8 281:11 283:9 285:11 287:5,7 287:12 288:2 288:18 289:17 294:10 297:20 319:22 321:6 321:16 322:17 323:4 324:23 325:5,9,16 329:12,21 332:6,7 335:2 335:10,13,13 335:14,18 337:19,19,23 338:3,24 339:16,20,20 339:23 340:2,3 341:21 344:21

357:7,8 368:1 368:11 376:5 386:21 388:14 389:22 390:21 392:24 393:11 393:17,19 394:6,10 395:22 396:6,8 396:10,11 397:18 398:9 398:17 400:5 400:18,23 401:4,21 402:14 403:14 405:19 407:7,8 408:16,17 410:3,6,11,15 410:21,23 412:10 414:3 414:12 415:10 416:23 417:4 417:16,22,24 419:20,23 422:24 427:9 427:21 430:13 430:17 431:9 431:10 432:16 432:19,22,24
**questioning** 183:22 184:2 236:2 315:20 316:2 320:18 324:19 333:8
**questions** 6:15 25:8 98:11,15 98:18 123:5 131:8 166:13 166:18,24 167:3 171:8 174:12,14 175:6,12 185:9 188:13,15 211:13 216:8 241:15 245:11 248:9 255:24

256:10,20,24 257:18,24 258:6,16,17 259:19,24 260:5,16 262:17 263:11 263:16 269:4 276:20,21 292:3 299:2 309:19 321:2,8 325:21 326:6 327:17 331:6,7 332:3,11,14 333:12,20 334:16,17 335:6,11 358:21 387:3 388:4,11 391:4 391:5,8,9,17 391:18 392:8,9 393:3 397:6,8 400:12 423:16 430:8 434:2 437:21
**quick** 14:2 78:3 158:23 430:9
**quit** 107:23
**quite** 130:15
**quo** 395:2
**quotations** 38:10 50:7
**quote** 38:6 47:17 50:12,17 230:22 266:13 266:16 310:23
**quoted** 47:7 50:4
**quotes** 38:9 47:17,23 50:10
**quoting** 389:13

___

**R**

**R-A-N-N-I-G-...** 6:11
**R/Is** 29:1 30:2

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 472

| | | | | |
|---|---|---|---|---|
| 58:24,24 259:6 | 389:4 390:6,8 | **reasons** 134:8 | 244:4,17,19 | 25:17 37:6 |
| 259:16 | 397:13,20 | 200:10 324:4 | 245:2,3,6,11 | 359:1,11 |
| **radar** 194:17 | 410:3,6,7 | 431:24 | 253:12,24 | 433:10 |
| **raid** 272:18 | 413:20 414:13 | **recall** 8:7,23 9:5 | 255:17 264:2,8 | **receiving** 14:16 |
| **Ramanujam** | 429:11 436:11 | 10:4 11:11 | 278:8 292:12 | 15:1 94:14 |
| 3:12 | **reading** 27:24 | 16:10,13,17,17 | 295:2,4 308:21 | **recognize** 138:4 |
| **rang** 247:3 | 28:6 45:5,10 | 16:19 20:8 | 310:8 338:19 | 180:2 294:23 |
| **range** 163:21,23 | 157:3 342:10 | 21:6 31:24 | 346:10 347:8 | 341:14 342:11 |
| **Ray** 223:11 | **reads** 343:4 | 40:15,22 45:21 | 351:22 365:13 | **recognized** |
| **RAYMOND** 1:7 | **ready** 318:7 | 53:11 56:11 | 378:3,12 383:3 | 374:9 |
| 436:7 | **real** 14:2 20:23 | 58:8 73:7 | 383:4,7 387:1 | **recollection** |
| **RD** 314:16,20 | 114:22 181:15 | 79:17 81:17 | 387:16,22 | 7:21 9:20 |
| 315:7,10 | 182:6,8 200:12 | 93:19 94:23 | 394:12 396:23 | 14:15 15:1 |
| 316:17 317:1,1 | 307:24 429:10 | 106:21,24 | 401:21 403:8 | 19:8,22 20:17 |
| 317:2,10 | 430:9 | 107:2 108:3 | 406:7 423:9 | 20:21 21:3 |
| **RDs** 315:13,14 | **real-life** 101:13 | 116:15 117:1 | 424:13,19 | 25:16 30:13,16 |
| 315:16,16,17 | **realize** 413:12 | 117:23 119:11 | 427:1 | 30:23 33:5,17 |
| 316:16,22 | **realized** 80:14 | 119:12,14,18 | **recalled** 9:3,4,21 | 34:10,17,22 |
| **reach** 92:2 | 193:3 | 119:21 120:1,4 | 113:23 387:9 | 35:10,17 36:3 |
| 114:13 354:2 | **really** 20:8 78:3 | 120:6,9,13 | **recant** 103:19 | 36:20 37:1,4 |
| 380:4 | 82:5 84:14 | 124:3 130:24 | 104:24 408:14 | 39:3 41:6 |
| **reaches** 389:12 | 92:17,17 94:16 | 133:2,4,11 | **recantation** | 42:16,22 43:16 |
| 389:14 390:11 | 105:8 106:5,9 | 136:2,5 137:6 | 105:1 407:13 | 44:5 45:4,24 |
| **read** 7:19 27:2 | 127:15 130:17 | 137:7,15 144:1 | 411:5 432:10 | 46:7,18,20 |
| 28:7,13 44:2 | 150:5,6 156:16 | 144:21 145:12 | **recantations** | 47:1 48:9 49:4 |
| 45:1 46:1 | 159:15 254:21 | 152:1 157:4,6 | 103:20 412:16 | 49:8 53:14,19 |
| 83:18,19,20 | 306:15 308:16 | 157:7 159:15 | 413:5 | 54:11,14,17 |
| 130:15 140:16 | 308:16 312:8 | 166:6 168:20 | **recanted** 103:19 | 55:3,9,22 |
| 140:17,22 | 312:14 391:11 | 171:18,22 | 406:24 407:12 | 56:16,19 58:16 |
| 141:22 163:16 | 423:9 | 172:1 173:7 | 407:20 408:22 | 58:21 59:9 |
| 178:10,10 | **reask** 161:15 | 174:19 175:19 | 409:19 411:3 | 60:10 65:13 |
| 186:15,16 | 322:8 430:16 | 175:19 176:15 | 432:10 | 69:5 76:23 |
| 187:17 195:18 | **reasked** 322:17 | 178:20 181:16 | **recanting** | 78:21 79:3 |
| 203:1,14,15 | **reason** 109:7 | 182:3 184:20 | 104:24 409:11 | 81:8,13 84:9 |
| 219:13 269:16 | 113:8 114:22 | 185:8 189:5 | 409:12 | 92:13,19,22 |
| 271:8 291:23 | 125:2 136:4 | 191:24 193:24 | **recants** 408:11 | 93:3 94:13,19 |
| 292:1,7 326:4 | 139:1 193:12 | 194:16 195:3,6 | **receive** 13:12,18 | 94:24 95:5,12 |
| 335:14,15 | 195:15 200:8 | 197:17 200:6 | 13:22 117:7,11 | 117:5 156:19 |
| 343:2 346:17 | 208:11 240:10 | 210:8,16,20 | 117:19 118:6 | 156:23 162:8 |
| 347:20,21 | 240:17 242:23 | 211:3,7,13,14 | 119:10 121:2 | 162:14,22 |
| 348:12,14,16 | 243:4 244:1 | 224:1 225:2 | 123:24 155:21 | 163:2 171:7,17 |
| 349:1,1,4,16 | 252:5 263:12 | 227:6 230:11 | 359:14,17 | 172:5,7 173:24 |
| 350:1,2 355:21 | 267:18 319:5 | 230:12,13,16 | 361:19 | 174:12 175:13 |
| 361:11 368:11 | 327:6 329:15 | 234:5 238:5 | **received** 15:7,13 | 175:16 180:10 |
| 368:12 386:5 | 408:23 | 240:4 243:19 | 16:13 19:17,20 | 180:13,22 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 473

| | | | | |
|---|---|---|---|---|
| 182:11,24 | 166:23 167:2 | 397:4,11 | 416:22 417:22 | **relationships** |
| 183:1,4,9 | 170:5,10,20,23 | **reference** 372:3 | 422:23 427:8 | 228:9,13 |
| 184:6,11 | 186:16 201:17 | 377:21 389:7 | 427:20 431:8 | **relative** 30:17 |
| 188:19 190:5,9 | 203:15 219:2 | 389:18 390:14 | 432:21 | 49:19 60:22 |
| 190:16,22 | 222:13,16 | 400:15,19 | **refused** 247:4 | 61:6,11 84:3 |
| 192:6,15 195:8 | 249:14 251:21 | **references** | 395:22 434:3 | 94:21 95:22 |
| 195:20 196:11 | 259:7 273:11 | 241:20 402:19 | **refusing** 165:17 | 101:5 324:19 |
| 198:9,13 | 297:8 298:18 | **referencing** | 196:20 241:14 | 333:8 |
| 199:16 207:3 | 304:8 309:16 | 235:7 391:22 | 288:1 340:3 | **relays** 29:3 |
| 207:22 208:7 | 315:10,11 | **referred** 233:7 | **regard** 86:13 | **released** 396:20 |
| 208:14 209:2,5 | 317:22 319:10 | 234:3 299:18 | 164:16 | **relevant** 80:15 |
| 209:11,22 | 325:19 326:3 | 367:3,10,18,20 | **regarding** 34:16 | 145:19 333:12 |
| 210:14 211:4 | 327:24 328:9 | 376:13,18,20 | 35:16 36:24 | 351:1 |
| 234:12 238:12 | 328:11 334:18 | 383:1 413:15 | 45:7 46:6,24 | **reliance** 390:2 |
| 239:10 241:5 | 335:8,15 341:8 | 437:23 | 48:8 49:3 | **reliant** 393:15 |
| 243:14 244:8 | 343:3 345:12 | **referring** 48:2 | 53:19 56:15 | **rely** 389:16 |
| 255:21,24 | 347:21 348:10 | 48:17 122:14 | 58:15 69:4 | 390:13,23 |
| 260:16 263:1 | 348:17 349:5 | 204:10 267:15 | 79:2 81:12 | **relying** 391:24 |
| 273:7,12 276:1 | 350:2 353:5 | 276:17 278:17 | 84:8 118:4 | 392:2 |
| 276:9 277:6 | 368:12 373:18 | 353:12 369:12 | 119:12,19 | **remainder** 70:5 |
| 286:19 287:13 | 387:6 389:4 | 370:12 383:5 | 124:13 125:4 | 410:15 |
| 300:6,10 | 390:22 393:3,6 | 397:22,23 | 125:11 137:16 | **remained** 13:2 |
| 303:19,23 | 393:19 397:20 | 398:11,20 | 172:4 176:21 | **remarked** 30:7 |
| 309:8 311:24 | 397:23 399:20 | **reflect** 297:8 | 272:7 352:2 | 46:14 |
| 343:13,19,24 | 410:7 413:20 | **refresh** 92:24 | 361:7 363:14 | **remember** 9:16 |
| 365:19 366:23 | 414:13 417:11 | 94:6,17 95:15 | 365:5 | 11:9 31:13 |
| 368:1 372:2 | 417:15 434:21 | 171:22 180:18 | **regardless** | 42:12 49:19 |
| 404:24 | 434:24 436:13 | 234:12 303:18 | 140:23 | 50:11,14 83:11 |
| **recommendat...** | 437:20 | 303:22 343:13 | **regular** 180:4 | 83:14 84:14,16 |
| 325:2 398:9 | **recorded** 151:14 | 343:19,23 | 181:15 182:1 | 84:23 92:9 |
| **recommended** | 151:14 | 365:18 366:23 | 226:8 317:2 | 95:10 106:6 |
| 165:14 | **recordings** | 372:1 | 421:21 | 113:21 150:5 |
| **record** 5:3,7 6:9 | 151:15 197:4 | **refreshed** 352:3 | **reincorporated** | 151:11 156:10 |
| 11:24 18:13 | **records** 315:23 | **refreshes** 309:8 | 325:24 | 157:2,15 160:9 |
| 28:7 32:2,4 | **recruit** 108:18 | **refuse** 138:5 | **related** 7:19 | 160:9,11,16 |
| 33:19,22 34:1 | **recruited** | 164:22 169:11 | 11:6 19:2 | 165:6 167:23 |
| 35:9 47:10,21 | 108:22 | 222:3 239:20 | 37:18 38:4,5 | 168:1,5,14 |
| 62:8,12 63:23 | **redacted** 89:23 | 253:6,9 268:4 | 92:1 117:20 | 171:8 172:23 |
| 64:17 77:20 | 263:2,12,20 | 281:8,10 | 120:11 353:16 | 173:22 174:7 |
| 89:19 90:3 | 264:3 341:22 | 289:16 339:15 | 396:22 | 176:24 177:14 |
| 91:1 115:3 | 374:20 | 392:24 394:10 | **relation** 164:1 | 178:6 181:18 |
| 148:11,13,16 | **reduced** 437:9 | 398:9,16 | 169:6,8 395:16 | 181:21,23 |
| 152:7,15 | **refer** 144:14 | 402:13 403:13 | **relationship** | 188:15 189:10 |
| 163:16 165:15 | 172:10 236:21 | 405:16,18 | 223:8,19 | 189:17 190:13 |
| 165:20 166:12 | 310:15 376:16 | 415:7,9 416:19 | 224:15 225:11 | 197:14 198:18 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 474

198:19 214:12
225:4 226:15
227:4 228:22
230:2,5 237:23
238:1 240:8,11
240:18 244:10
254:8 270:13
273:2 275:9
276:15,21,23
277:1 291:5
292:15 294:24
296:12,12,13
298:5 306:2,23
308:16 316:7
321:12,14,15
341:18 351:18
351:24 352:2
354:8,12 364:1
364:3,5 365:9
365:11,22
367:7 368:3,18
368:19 369:2,3
369:5 370:7,15
370:16 371:3
371:12,13,24
372:17 374:3,6
374:8 378:8
384:21,22,24
385:11,13,15
385:18 386:4
400:3 402:8
411:14,21,23
414:4
**remembered**
173:8 394:1
**remembers**
167:10
**remind** 262:13
339:11
**remotely** 5:15
**renew** 387:24
**renewed** 175:23
176:2
**repeat** 7:5 29:20
33:13 104:3

187:19 240:15
244:24 294:10
322:24 331:2
350:8 386:12
413:18
**repeated** 163:15
414:5
**repeatedly**
251:2,12,19
**repeating**
430:13
**rephrase** 7:5
99:13 124:19
135:2 151:23
**reply** 152:21
**report** 7:24 8:1
8:3,6 19:1,12
21:12,13,21
23:24,24 24:12
24:13 25:2,20
25:24 27:2
28:21,22 33:18
35:21 36:2,9
37:12,17,20
38:9,10 39:10
40:5 43:14
46:14 47:17,23
52:6 54:10,20
55:14,16 56:8
56:21 57:1,7
57:13 61:10
62:15,19,22
72:8 78:9
89:10 95:23
96:10 128:11
128:17 129:4,6
129:18 130:24
131:16 132:7,9
132:14,18,20
133:7 144:8,12
144:14,18,22
145:4,7,8,16
149:1,9,13,17
150:14,19
151:7,10,17

152:3,22 153:5
153:6,8,8,10
153:17,18,23
154:1,3,7,8
158:17 159:10
159:13,19,20
159:21 161:4
162:9,15 163:1
171:21 172:9
174:11,13,17
175:5,11,17
176:8,16
185:10 207:24
208:9,12,15,18
211:15,16
238:15,19
240:9 241:18
245:3 258:17
260:6,17
299:16,19,22
299:22 301:13
313:5,8,16,24
314:1,13,14,22
315:11 344:19
426:16
**reported** 437:8
**reporter** 1:20
5:3 7:11 8:14
14:10 16:20,22
25:10 58:18
62:10,11 90:4
102:12 127:21
143:4 160:10
161:6,12
163:15 175:9
181:12 183:13
184:21 187:6
200:14 203:12
203:13 206:18
209:14 240:14
244:23 256:11
257:3 267:9
271:8 278:12
278:14 283:23
288:19,21

294:9 308:12
316:18 319:15
321:4 328:9
337:21 341:5
350:8 360:10
364:4 369:21
381:13 386:11
393:10,13
410:3,6 417:1
420:23 430:13
434:21 435:5,8
437:5 438:7
**reporting** 19:14
300:12
**reports** 7:19 9:8
10:5,7 97:15
121:24 130:23
141:10 145:14
195:4,9,13
315:1 370:21
**represent** 5:5,8
5:11,12,16
6:13 99:3
193:10 352:11
373:2,7 378:6
**represented**
207:24 258:16
259:22 260:2,5
260:17 319:2
**representing**
297:18 372:14
**represents**
261:17 417:14
**reputation**
103:16,17
104:21,22
**reputational**
102:9,18
104:21
**request** 10:5
11:5 14:3
227:4,11,12
311:15,16
358:13,22
359:24 360:20

361:2,15,24
362:10,20
363:6 364:22
364:24 366:4
370:13,14
**requested** 10:4
28:8 163:17
186:17 199:8
199:12 203:16
244:5 335:16
368:13 389:5
397:21 410:8
413:21 414:14
**requesting**
169:13 434:23
**requests** 369:13
**required** 122:9
**requires** 104:9
204:4 216:22
217:17 219:21
221:5 252:21
282:23 289:5
327:11 331:1
333:2 373:16
403:23 406:15
408:2 409:3
417:11 431:18
**reread** 414:12
**reserve** 391:3
434:14,18
**reserved** 434:19
438:2
**reserving**
434:24
**residence** 30:10
**resolving** 388:7
**respect** 164:21
166:13 171:2
389:11,22
415:23 416:4
422:22
**respectful** 99:8
**respond** 429:7
**response** 47:22
139:13 262:16

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 475

263:14,17
322:19 390:1
391:20
**responsibilities**
125:18 126:11
127:12,19
128:5 217:5,6
218:10
**rest** 70:10 349:9
355:21
**restate** 99:15
**restaurant**
53:16,23 58:5
**resulted** 79:16
143:17,23
**retain** 155:6
158:12 348:4
349:18
**retaining** 351:8
**retire** 10:23
107:17 109:9
109:12
**retired** 10:22
11:24 100:15
107:11,20
110:11,18
111:3 113:20
113:20 114:19
**retirement** 12:4
109:1
**retrospect** 288:4
**return** 86:23
279:14 349:8
355:19
**review** 17:8
21:21 59:1
71:2 90:14
129:4,6 141:3
141:7,9,13,18
143:7,12,13
156:6 194:18
195:12 290:16
290:19 291:1,5
291:22 292:4
292:13,16,18

293:15,20
299:10 304:5
304:15,18,20
309:18,20,23
318:9,17
336:21 340:21
342:18 346:13
380:10 385:17
424:5 434:12
435:1,4
**reviewed** 7:22
19:5 21:17
64:6 78:18
153:11 194:22
195:1,5 290:7
291:9 312:23
319:23 342:16
386:2 403:4,5
**reviewing**
143:10 195:8
300:6,10
303:22 370:6
386:14,22
**rhyme** 114:22
**RI** 259:3
**Richard** 3:8
**right** 7:9 8:4,7
11:4,7 12:2
17:16 18:8,12
20:20 24:2,13
25:19 26:6
28:20 29:8
32:13 33:19,24
34:2,13 35:4
35:23 36:15
42:12 43:5
45:2 47:19
51:14 52:3
57:3 62:23
65:7 68:7 69:7
69:19,23 70:22
72:13 77:7,18
78:12 79:7,21
80:3 81:2,24
82:18 84:13

88:9,12 90:10
90:19 93:1,10
94:9 95:5,14
95:20 98:5,12
98:22 102:5
103:14 104:14
106:14,14
107:2,5 109:24
110:7 119:7
127:2 134:3,5
140:18 144:22
145:5 151:12
153:6 156:7,10
164:11 178:15
178:24 179:12
180:3 183:19
186:5 191:18
193:18 194:9
194:24 195:7
199:16 201:8
201:12,16
203:10 206:13
206:19 208:2
211:15 222:19
233:21 238:23
244:14,16
247:4 248:6,20
248:22,23
250:9 260:12
261:10 264:23
266:14,19,21
267:1 268:22
269:2,10,11
270:7,20 272:8
272:17 273:13
275:7,9,11
277:13,16,20
278:20,23
279:4,5 283:8
284:15 289:19
289:21 290:9
290:24 292:17
294:19 295:10
297:17 298:6
298:16 300:24

301:1 305:16
306:7,24,24
308:16 323:3,4
326:20 328:10
328:18,22
329:16 336:14
337:9,11 340:6
342:10 346:12
347:9,17,20
352:13 353:8
354:11 355:2,4
356:2 359:9
360:1,6,9
361:15 362:6
362:15 366:9
366:10 370:1
370:16,18
374:23 377:1
380:2,4,7,9,11
384:23 391:3
393:20 396:15
398:2 400:19
401:20 405:1,3
410:19 411:21
412:10,10
430:14 434:12
434:14,15,18
435:1
**ring** 10:8 95:7
210:9 231:2,6
264:11,23
**rings** 92:21
**rip** 158:3
**robbers** 102:4
**robbery** 70:2
82:6 84:15
95:11 343:8
**Robert** 230:24
**Rogers** 70:1
82:4 83:3 92:5
92:6,14,20,23
93:4,13,20
94:8,14 188:14
189:16 190:6
260:24 352:7,8

360:1,3,14
366:15,16,24
367:2 375:20
376:8
**ROI** 144:15,17
**role** 12:20
123:12 168:23
201:11 236:4
303:20 316:3
421:4
**roles** 12:18
**Roll** 139:16
**rolled** 256:22
**room** 1:18 21:10
82:20,21 83:5
242:10 437:12
**rotation** 230:2
**roughed** 159:8
**roughly** 15:13
**routine** 176:19
189:18,21
250:15 301:4
**routinely** 133:15
250:15,18
**Rpt** 381:24
**Rukn** 419:9
**rule** 115:22
121:13 166:15
286:16 391:23
**rules** 1:15 6:20
202:19 217:23
**ruling** 389:7,8
394:7 397:6,10
398:4 400:24
402:11 403:11
**run** 172:18
305:2,4,8,12
305:17 306:8
310:12,12,15
310:20 311:9
311:15 312:2,4
313:23,24
314:14 357:19
**running** 307:21
**runs** 400:23

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 476

| | | | | |
|---|---|---|---|---|
| **Rutherford** 231:1,9 | 269:24 270:3 270:15 273:20 301:7,23 305:5 305:9 306:19 307:1,1 313:5 313:7 343:4 344:7,12 350:3 350:17 354:18 360:23 361:6,8 361:22 362:15 363:13,17 364:16 365:5 375:14 377:11 382:14,18 | 28:20,22,23 30:4 43:3 44:20 50:19 52:7 55:23 56:7,12 57:2 57:10 58:4 61:20 66:18 69:7,14,15 70:20,21 132:23 210:21 210:22 254:23 255:4 268:17 268:21 269:1,2 302:9,10 303:3 315:19 342:23 344:12 350:13 356:1 395:14 | 86:3,8 87:3,15 88:9,15 94:4 136:7 140:24 155:18 173:5 183:2 200:17 241:22 255:7 255:14 259:16 266:21 269:1,2 273:16 274:2 282:21 288:5 289:2 293:9,12 293:23 300:12 300:14,20 301:1,12,20,21 302:2,8,13 303:6 304:6 306:24 310:2 | 373:22 377:20 **seek** 122:12 185:21 186:6 221:16 236:24 237:4 **seeking** 13:23 136:17 139:10 163:24 167:13 167:16 185:23 186:7 237:16 325:20 326:5 395:11 **seeks** 169:5 **seemingly** 342:1 **seen** 18:18,21 90:11 92:24 94:16 101:15 150:24 228:17 292:10 294:1 |
| **S** | | | | |
| **S** 4:8 274:3 279:5 | | | | 299:7 304:22 317:9,15 318:15 337:2 339:18,22 341:1,2 346:22 359:19,21 |
| **safe** 150:18 223:7,18 318:16 | **scene** 300:21 301:8 | **Secret** 126:2 235:3 | 313:2,7 327:24 335:4 337:5,6 337:8,16,18,20 337:22,24 | |
| **sake** 115:2 | **Schalk** 1:7 223:11,19,24 228:23 230:13 231:10 293:10 343:17 436:7 | **section** 26:12 241:18 | 338:1,7,11,13 341:12 343:9 344:4,10 345:16,23 | **select** 271:15 **send** 11:19 308:10,12,15 311:19 |
| **save** 154:9 159:5 161:19 | | **see** 18:7 19:10 19:14 22:7,8,8 23:13 24:20 | 346:4 347:18 347:24 349:9 | **sending** 91:6 260:23 |
| **saved** 159:22 160:2 161:2,4 161:24 | **Schalk/Bogucki** 343:5 | 26:3,19,23 27:13,21 29:14 30:11 31:8 | 350:6,11 355:11,14 | **sense** 172:21 290:8 312:1 349:20 |
| **Savini** 17:15 | **scope** 335:18 388:6,18 389:23 398:4 420:10 | 36:12,18 39:10 40:10 41:3,18 41:23 44:18 | 358:18 359:6 362:17,18 363:11,15 | **sent** 90:21,24 113:14 134:3 |
| **saw** 72:22 73:9 154:18 186:23 187:9 188:1,9 200:2 295:2 302:20 312:17 343:20 | **scrap** 143:14 195:18 | 52:10,19 55:20 58:6 59:5 61:19,20,24 64:24 65:3 | 364:15 365:2,7 366:13 369:4 369:15 371:7 375:16 377:11 | 270:23 271:4 360:13 **sentence** 29:17 30:4 40:24 |
| | **scratch** 88:8 **scribbled** 163:3 **se** 139:9 158:3 **Sean** 2:2 5:14 99:3 131:3 138:16 222:17 251:19 389:21 392:1 397:8 | 66:2,22 67:16 67:19 68:16,18 69:8,16 71:7 71:10,17,18,21 73:1,17 75:4 75:16,22 76:1 76:5,13 77:12 78:6 80:7,18 | 377:13 380:19 380:23 382:4 386:15 402:22 429:5,13 | 50:6 52:13 57:14,23 61:20 70:4 72:23 76:3 84:21 87:13 88:15,23 |
| **saying** 7:12 82:22 189:10 219:10 229:2 233:14 276:11 276:23 277:1 297:18,19 330:13 397:8 409:13 412:2 424:19 434:22 | | | **seeing** 144:5 228:22 292:15 294:24 310:8 342:21 365:14 366:22 373:21 | |
| **says** 19:12 23:12 24:13,18 26:16 27:9 32:2,4 33:7,18 35:21 41:1 47:6 48:3 58:1 62:13 67:15 68:16 69:9 70:4 71:19 76:3 83:11 84:22 94:2 178:7 255:5,14 258:21 259:16 265:9 266:6 | **sean@loevy.c...** 2:5 **search** 237:16 307:13,14,18 307:20,22 308:11,15,20 308:21 311:3 **second** 26:21 | 82:12,24 83:8 83:16 84:17,19 84:24 85:14 | | |

Royal Reporting Services, Inc.
312.361.8851

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 477

89:2 93:21
94:2 173:7
255:4,12 258:9
275:20 277:2,3
390:8 419:5
**sentences** 418:6
418:21
**separate** 179:1
339:12
**separately** 263:8
**sequence** 347:11
366:2
**sequential**
345:10
**sergeant** 11:14
22:10 110:9,10
110:11 112:9
129:3,12,16,18
154:10,21
224:18,19,24
225:6,8 326:15
328:19 331:8
332:4,16
333:11 335:8
**sergeants**
154:17,18
**serve** 418:21
**served** 117:16
**Service** 126:2
235:3
**set** 113:2 299:2
392:7 437:14
**setting** 148:2,3
**sex** 125:23
**SF** 66:9 68:18
71:20 75:8
76:1 273:21,22
274:1,9 277:14
277:18 278:2,2
278:5 279:9
**sham** 282:18
**Shame** 278:15
**share** 134:14
**she'd** 279:20
**Sheenay** 297:2

**Sheenee** 19:3
65:11 361:3
**Sheeney** 296:20
296:21,24
297:4,7,10
**sheets** 436:14,18
**sheriff** 100:19
**sheriff's** 119:2
**shooter** 385:9,20
386:24 425:8
**shooting** 67:12
72:19,22 73:9
79:15 271:22
272:9 293:7,8
299:17 424:23
**short** 60:21
63:15 138:17
182:3 222:21
298:14 328:13
389:2 390:5
428:4
**Shorthand** 1:20
437:4 438:7
**show** 18:6 89:17
203:11 289:20
291:8 298:7,16
304:3 309:11
317:20 331:11
336:8,14 340:6
**showed** 67:10
82:1 176:22
238:15 256:23
257:16 258:3
425:15 426:6
**showing** 329:24
330:12 335:23
**shown** 117:17
144:7,11 319:3
319:9,11,13,17
335:22 425:11
425:12
**shows** 336:4,7,9
**Shred** 155:11
**shredded**
155:16 157:22

**shredder** 157:24
**sic** 61:23 82:8
83:15 120:17
159:20 187:3
206:20 275:10
280:7 301:23
355:19
**side** 62:24 70:14
71:19 76:16
79:19 80:10
85:6 180:15
210:17 309:11
**sign** 89:1 247:10
**signature** 22:7
22:22 23:2,4,5
64:24 65:1,2,4
130:15 434:19
438:1,6
**signatures** 22:8
**signed** 22:11
23:21 25:22
46:21 61:22
65:7 68:17
76:21 88:20
130:22 137:21
153:8,10
173:16 251:10
252:5,5 265:10
**signing** 65:13
**similar** 299:2
310:13
**similarly** 394:18
**simple** 178:18
178:21 181:2
263:12
**single** 143:14
197:14 269:12
290:19 425:15
**singular** 62:10
62:11
**sir** 98:19 99:5
100:16,17,23
101:8,12,14,15
105:13,16
106:10 123:17

123:23 124:11
125:12,15
131:2 149:11
171:12 175:2
182:21 193:24
195:10 197:2,6
197:23 208:11
210:6,11
212:12,23
220:6 222:3
223:2,4,6,13
223:15,17
224:6,12,14,17
225:13 227:23
231:2,6 241:16
241:19,23
247:7 249:4
254:14 260:19
262:19 264:21
268:9 269:3
273:19 279:11
289:18 291:7
292:11,12
294:20 295:14
295:17 299:1,6
299:12,14,20
299:24 300:17
300:19 301:11
302:3,7,14,18
302:22 303:1,7
303:11,13,16
304:1,16,17,20
304:24 309:19
309:21 310:1,6
310:10 318:5
318:21 321:12
321:23 328:16
336:22,23
337:1,4,16
338:5,10
340:18,23
341:2,13,20
342:3,13,15,19
343:13 344:6
344:15 345:3

345:18 346:1,5
346:7,24
349:23 351:3
363:16 364:17
366:6 369:1
375:17 380:22
380:24 381:4,6
381:10 382:9
387:8 394:11
398:10,17,18
401:5 402:14
403:1,15
411:16 415:11
419:12 423:1
424:13,19
425:1,9,13
426:4,8,21
432:5,8,23
434:5
**sister** 177:6
179:11
**sit** 14:24 15:10
25:19 51:14,24
92:10 93:10
94:9 95:5,14
95:20 107:5
151:11 176:20
198:3 206:7
215:17 275:16
277:9 278:9
293:22 346:12
354:11 405:3
**sitting** 172:1,9
411:14
**Six** 231:14
**size** 384:12
**skeptical** 406:22
407:4,13,22
408:12,12
409:1,7,10
**skepticism**
406:13
**skinny** 31:21
32:24
**slightly** 172:3

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 478

slim 344:8,13
slip 311:19
Slow 102:12
  303:21
slower 170:15
snatched 84:17
snooping 200:17
social 228:18
solely 322:19
solve 113:1
solved 116:2
somebody 10:9
  10:11 11:2
  13:19,23 20:5
  89:14 93:7
  113:7 114:13
  118:5 129:9
  132:3 141:4
  148:19 157:9
  183:17 230:6
  249:24 250:19
  306:14 352:1
  363:22 369:8
  370:7 394:14
  406:23 407:10
  407:10,19,19
  408:21,21
somewhat 115:6
soon 173:8
  248:5 249:5,16
  250:1,4
sophisticated
  308:1 310:19
  311:1
Sorrell 79:16
  191:5,6,9,10
  191:12,20
  192:3,8,24
  193:22 194:1
  195:9,13,21
  196:13 198:2
  198:11,16
  215:9 218:16
  231:11 238:9
  238:23 253:18

260:1 272:12
281:19 299:17
302:21 319:4
385:21 423:21
424:2
sorry 8:2 10:20
  16:20,24 20:23
  24:15 26:5
  29:15,21 31:18
  34:24 42:6,7
  44:2 58:13
  78:2,12 93:21
  97:20 98:24
  102:11 119:14
  124:24 127:21
  128:3 143:4
  144:10 160:10
  161:6,13,13
  170:15 175:9,9
  181:12 183:13
  184:21 187:6
  206:18 209:14
  209:18,18
  216:12 218:23
  220:8 225:18
  240:14 244:23
  256:11 257:3
  261:8 266:9
  267:9 278:12
  283:23 290:1
  294:9 301:15
  303:21 304:9
  308:12 316:18
  319:15 321:4
  322:6 336:12
  344:3 345:19
  345:20 354:6
  364:4 369:21
  381:1 386:11
  409:21 416:10
  420:23 423:4
  430:12
sort 143:21
  181:18 235:12
  235:14 353:16

sought 136:11
  136:20 281:3
sounds 33:21
  100:8
source 28:14
south 2:13 82:11
span 239:10
speak 8:10,18
  8:21 9:14
  95:13 136:14
  198:15,23
  199:3 201:14
  201:23 202:15
  203:6 232:21
  232:24 316:19
speaking 41:6
  43:13 172:1
  198:10,14,19
  203:4 206:10
  320:12
speaks 167:14
  170:14 419:18
special 125:24
specific 34:23
  38:6,9 78:22
  96:15 97:17
  119:10 163:2
  163:23 164:2
  169:6,8 200:7
  211:13 226:5
  234:2,23 244:8
  271:24 272:1,3
  283:9 329:22
  339:2,5 395:16
  397:11 423:9
specifically
  35:12 42:2
  48:14,15 49:18
  135:17,19
  136:3 162:19
  178:6 183:22
  184:4 186:19
  201:12 231:19
  237:24 240:8
  270:23 271:4

271:13,18
276:2,24 277:2
282:15 286:13
296:13 297:14
364:9 396:18
406:4
speculate 48:11
  216:23 217:18
  221:6 262:16
  273:5 275:21
  282:24 289:6
  327:12 358:2
  360:8 406:16
speculation
  25:14 28:2
  30:21 34:15
  35:15 38:21
  39:8 41:10
  42:5,9,19
  43:23 46:5,23
  48:6 49:2,13
  52:24 53:17
  54:23 56:1,14
  58:12 59:14
  60:13 61:1,12
  62:6 65:17
  68:1 69:3 72:2
  73:11,24 77:2
  79:1 81:11
  84:6 96:2
  104:10 201:5
  204:4 219:21
  245:17 246:8
  246:19 247:15
  252:21 280:23
  281:20 288:8
  295:21 314:4
  329:4 331:1
  333:3 351:10
  353:19 356:12
  371:17 372:8
  372:22 373:16
  378:1 382:12
  384:14 403:23
  408:3 409:4

412:7,20 415:1
416:9 417:11
431:18
speculative
  217:3
spell 6:8 130:21
spelled 298:3
spoke 8:12 44:7
  44:8 348:2
  349:6,17
  355:18
spoken 55:18
  95:21
spot 201:8
squad 16:9
  110:16 230:3,6
  230:8 231:17
  232:14 235:18
Square 111:9,13
  111:15,22
SS 437:1
stage 15:11,19
stages 162:4
stamp 18:15
  272:24
stamped 348:9
stand 165:13
standard 254:22
  258:4,5
standing 316:1
  320:18 321:9
  322:24 333:5,7
standpoint
  227:15
stands 75:9
  315:10 396:3
star 22:19,23,24
  23:7 229:24
Starr 2:2 4:5
  5:14,14,19
  20:1,3 24:6
  25:12 26:4
  28:1,16 29:18
  30:20 31:16
  32:5,8,18 33:2

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 479

| | | | |
|---|---|---|---|
| 33:11,15 34:14 | 136:16,21 | 245:5,18,23,24 | 326:12 327:16 | 397:14 398:1,7 |
| 35:2,15 36:7 | 137:3,14,20 | 246:13 247:1,8 | 327:19,22 | 398:15 399:4,7 |
| 36:23 37:9,22 | 138:3,12,15,19 | 248:3,19 | 328:1,6,15 | 399:13,22 |
| 38:1,20 39:7 | 139:17 140:7 | 249:10,21 | 329:18 330:6,9 | 400:8 401:8 |
| 39:22 41:9 | 142:8,19 143:6 | 250:5,17 251:8 | 330:17 331:5 | 402:3,12,20,24 |
| 42:5,9,19 43:2 | 145:21 146:10 | 252:2,15 253:5 | 331:19 332:1 | 403:12 404:5 |
| 43:21 44:9 | 147:11,17 | 256:14 257:9 | 332:11,14,18 | 404:19 405:15 |
| 45:7,13,19 | 149:23 156:3 | 257:14 258:15 | 332:22 333:18 | 406:20 407:5 |
| 46:4,23 47:10 | 157:23 160:18 | 259:8,9 262:21 | 333:23 334:4 | 407:18,24 |
| 48:7,19,22 | 161:14 164:5 | 262:23 263:4 | 334:10,15,16 | 408:8 409:9,24 |
| 49:1,13,22 | 164:20 165:21 | 263:24 264:9 | 335:3,11,14 | 410:22 411:11 |
| 50:24 51:7,22 | 167:8,22 | 265:4,7 266:4 | 336:1,12,20 | 411:22 412:13 |
| 52:23 53:2,9 | 168:13,21 | 267:3,12,24 | 337:12,15 | 413:1,14 414:4 |
| 53:17 54:9,22 | 169:10 170:4 | 268:16,24 | 338:6,24 339:4 | 414:11,21 |
| 55:7 56:1,13 | 170:20,23 | 271:2,10 | 339:8,11,13 | 415:6,20 |
| 58:11,14 59:13 | 171:4 172:19 | 272:22 273:1 | 340:5,9,11,16 | 416:18 417:5 |
| 59:20 60:5,12 | 175:1,10 | 274:7,18 | 341:7,10 345:1 | 417:20 418:15 |
| 61:1,12 62:5 | 176:13 181:17 | 278:19 280:13 | 348:11 349:2 | 419:6,22 |
| 64:9,12,15 | 182:22 183:18 | 281:7 282:1,11 | 349:24 350:12 | 420:12,14,24 |
| 65:15 68:1 | 184:17 185:1,7 | 283:7,13,17 | 350:24 351:14 | 422:8,21 |
| 69:2 70:7,17 | 186:15,21 | 284:2,4,5,12 | 352:24 353:9 | 426:22 427:7 |
| 70:24 71:4 | 187:10,21,22 | 284:22 285:6 | 354:1 355:9 | 427:19,24 |
| 72:1,9 73:2,10 | 189:14 191:3 | 286:3,17 | 357:5 358:12 | 428:6,23 429:3 |
| 73:24 74:12,19 | 194:8 196:9,19 | 287:11,24 | 358:17 360:15 | 429:6,10,15,16 |
| 77:1 78:24 | 197:16,24 | 288:14,20,23 | 364:6 367:19 | 429:22,24 |
| 81:10,18 84:5 | 199:9,18 | 289:15,19,24 | 368:11,14 | 430:2,5,7,16 |
| 86:17 87:8 | 200:19 201:18 | 290:5,14 291:8 | 369:22 371:20 | 430:19 431:7 |
| 89:11,14,16,21 | 201:20,24 | 291:18,21 | 372:12 373:1 | 431:21 432:9 |
| 89:24 93:14,16 | 202:5,11 | 294:11,12 | 374:5,24 375:9 | 432:18 433:7 |
| 96:3,19 98:18 | 203:21 204:6 | 295:24 297:8 | 375:13 376:4 | 433:23 434:11 |
| 98:21 99:3 | 204:10,14,20 | 297:15,23 | 377:3 378:5,19 | 435:11 |
| 101:1,9 102:13 | 205:17 206:3 | 298:12,16,23 | 378:22 379:1,3 | **Starr's** 356:20 |
| 102:14 103:8 | 206:22 209:20 | 304:2,14 307:4 | 379:7,10,12 | **starring** 101:11 |
| 104:15 105:11 | 213:6,17 214:2 | 308:18 309:10 | 380:8 381:15 | **start** 65:23 |
| 106:11 108:13 | 215:1,16 216:5 | 309:15 312:16 | 382:15 383:18 | 87:18 107:21 |
| 109:21 114:3 | 217:8,24 | 313:15 314:6 | 383:23 384:18 | 163:5 198:4 |
| 115:1,13 | 218:11 219:11 | 316:7,15,21 | 385:7 386:18 | 248:22 368:10 |
| 116:10 117:3 | 220:2,19 | 317:16,19 | 387:2,7 388:8 | 387:13 |
| 118:10 121:1 | 221:24 222:19 | 318:4 319:18 | 388:16,19,22 | **started** 17:2 |
| 122:20 123:1,6 | 222:23 232:1 | 320:23 321:2,5 | 389:1 390:4,8 | 22:17 49:9 |
| 123:10 124:18 | 233:16 235:4 | 321:8,11 322:4 | 390:17,22 | 100:3,6 107:8 |
| 125:9 127:22 | 236:9 237:19 | 322:8,9,22 | 392:5,20,22 | 107:24 118:23 |
| 128:1,16 129:8 | 238:18 239:19 | 323:5,16 | 393:22 394:8 | 158:22 159:9 |
| 131:6,8,15 | 240:16 241:3 | 324:13,22 | 394:22 395:21 | 176:22 258:7 |
| 133:3 135:1,11 | 241:13 244:3 | 325:6 326:2,10 | 396:1,4,15,17 | **starts** 27:6,11 |

Case: 1:20-cv-04768 Document #: 184-50 Filed: 05/06/25 Page 482 of 492 PageID #:7944

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 480

28:24 30:2,4
41:16 44:21
57:21,24 58:23
60:19 268:18
401:11 402:23
**state** 5:5 6:8
27:16 112:4
119:2 158:14
189:22 315:21
320:8 335:7
390:22 436:11
437:1 438:7
**State's** 3:7,10
5:13 10:12,15
10:17 11:3
12:1,7,12,16
12:19 13:7,14
13:15 14:5,6,8
15:24 17:18
18:14 22:18
40:7,14,17
61:16 96:8
99:17,22
100:12 101:3
102:8,16,20
107:9,13,22,24
108:7 109:15
117:6,22 119:8
119:9 120:18
121:3,9,14,17
122:15 123:2
123:13,16,19
124:1,7 125:18
125:22 126:6
126:11 128:19
128:23 129:10
129:19 130:1
132:4 133:13
133:16,20
134:2,9,10,17
134:20 135:3
135:12,23
136:8,18,22
137:23 138:4,8
138:9,22 139:4

139:8,11,19,23
140:9 142:10
143:16 144:2
144:23 145:5
145:10 146:3
146:16 148:8
148:20 150:17
151:5 152:24
153:24 154:2,5
154:14,18
155:1 163:18
164:6,9,10,21
168:24 169:21
170:6,11,24
179:3 189:22
191:22 196:1
196:15 198:22
199:7,12 200:1
200:12 204:9
214:22 215:11
215:18,22
216:7 217:6
221:8 222:14
223:21 225:22
226:19,20,24
227:8,15,22
228:1,4,6,9,14
228:18 235:23
236:5,12,22,23
237:13,20
238:7 239:13
240:21 241:7
241:20,24
252:18 253:1,7
254:10,13
256:17,18
263:6 267:20
280:24 287:1
287:16 288:10
289:9 294:7,17
310:4 315:22
320:13,20
328:2,3 332:2
335:5 338:8,21
339:14 346:9

352:12 353:2
353:14,15
356:8,8 357:9
357:13,15,24
359:15 376:13
376:17 377:10
387:18 391:15
392:10 394:13
394:19 398:24
403:4 405:4,9
405:24 406:2
409:16,22
410:9,13 411:8
415:2 416:14
417:13,14,17
419:13,23
420:2,8,10,16
421:2,4,11,14
421:15,18,19
421:24 422:2
422:14,22
427:3,15
430:24 431:3
432:14 433:3
433:19 434:3
**stated** 36:10
40:6 388:10,10
**statement** 256:1
291:14 292:24
294:15 382:7
406:10,13
**statements**
294:4
**states** 1:1,15
54:10 436:1
**stating** 406:11
**station** 66:21
82:19 315:9
**statistic** 144:2
**status** 395:2
**staying** 66:19
**stenographica...**
437:8
**step** 79:9 149:9
178:15,16,16

311:4
**stick** 182:1
**sticking** 173:19
**stood** 47:8
**stop** 333:5
423:15
**stop/start** 163:4
163:4
**stopping** 222:18
**stops** 190:1
**story** 177:2
178:24
**straight** 206:15
219:14
**stray** 191:14
**Street** 2:3
438:15
**stricken** 67:13
72:21
**strictly** 206:10
324:11 327:13
330:7 331:3,23
334:13
**strike** 19:9
46:19 56:10
57:6 81:4
103:16 107:15
121:4 124:5
130:7 142:22
159:20 171:15
194:19 206:24
215:5 245:6,7
266:9 275:15
276:24 324:19
327:5 333:12
354:6 374:7
383:10 403:18
405:21,24
425:4
**stuck** 173:20
**stuff** 97:13
157:3 177:3
207:11 237:1
258:8 290:20
393:3 412:11

**stumbled** 248:1
**subject** 315:1
339:2 348:8,20
353:1
**subjective**
395:15,21
396:12
**subjects** 316:10
316:10 339:5
**submit** 62:20
129:17 132:18
132:20,22
148:24 149:12
149:16 150:13
150:16,20
151:4,9,15
153:5,23 154:1
154:13,20
158:18 159:6
243:1,8,11,15
244:5
**submitted** 62:16
128:17,18
131:16 132:7
133:7 144:23
145:3,4,9
149:17 150:14
151:6,16 152:3
242:12 436:19
**submitting**
129:19,23,24
145:14
**subpoena**
263:13,15,16
353:2 354:10
**subpoenas**
117:16
**SUBSCRIBED**
436:20
**subsequently**
64:18
**substance** 8:24
89:9 339:7,9
**substantive**
426:15

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 481

subtle 413:11,15
414:2,3
sued 6:14
suggest 94:18
132:8 247:19
427:13
suggested 133:6
suggesting
353:15 357:10
suggestion
59:19,24
397:14
suit 10:8
Suite 2:8,13,19
3:3 438:15
summarize
145:23 153:5
summarized
33:20 155:15
summarizing
33:6 151:8
152:3
summary 34:6
38:5,6 60:22
361:6 363:14
365:4 366:18
summons 12:21
superintendent
235:21
supervise 112:8
112:12 223:5
223:16 224:13
225:3
supervised
326:24 328:20
supervising
225:5 331:8
332:4,16 335:9
supervisor
13:15,16
128:24 129:5,9
129:13,15,18
129:23,24
130:10,11
131:17,18

132:7,19,20
133:5 134:15
145:4 149:1,13
150:17,22
151:10,16,22
152:23 153:6
153:11,20,23
158:18 244:5
supervisors
132:1
supplement
80:16
supplemental
81:9
support 12:20
12:22 13:9
supportive
419:8
suppose 158:21
243:3 272:17
supposed 48:20
92:9,10 146:4
158:11 231:20
sure 5:6 6:20
9:17 22:9 25:7
26:10 28:5
29:23,23 32:8
33:7,15 35:6,9
39:2 44:4
51:19 61:8
64:13 87:17
90:1 97:7
102:6,13
103:10,12
105:13 120:4
127:2,6 129:7
130:3,23 131:6
131:9 136:2
139:18 144:2
145:13 150:5
153:12 158:14
165:3 172:20
176:10 177:23
179:19 201:21
202:1,3,20,22

210:22 218:1
222:19 243:18
249:13 257:10
275:24 276:18
291:16 294:11
298:12 299:9
301:5 305:22
312:9 314:15
328:11 340:10
350:6 353:7
390:10 391:19
400:4 412:2,9
416:12 424:17
429:10 431:22
surprise 231:12
268:11,12
414:20
surprising
178:18
surrounding
272:9 329:8
Susan 266:22
267:5,7,14
suspect 20:11
181:24 197:15
313:20 406:6
Swanson 266:22
267:5,7,14
switched 158:23
sworn 5:2 6:2
436:20 437:16
Synopsis 24:13
system 305:17
305:24,24
306:9

_____
T
_____

T 4:8 66:4,13
67:2,3 68:10
73:16 75:8,9
75:22 76:1
77:17 79:20
85:19 274:23
275:3 277:18
278:5,22 279:5

279:5,9
table 416:13
Tac 110:8
tad 136:15
taint 331:18,20
332:23 333:16
333:21 334:7
334:12 335:24
tainting 336:11
take 6:21,22,24
7:11 9:7 14:22
21:20 63:12,13
93:22 113:1,24
131:4,12
138:12,14
148:21 151:20
153:4 156:14
157:10 161:11
164:6 175:14
187:8 216:6
222:19 258:3
260:20 262:2
264:24 268:1,5
272:19 276:5
288:15,17
291:22 298:9
298:24 308:5
309:17 318:6
328:6 339:14
347:9 388:23
392:23 394:9
398:8 428:21
429:16 430:2
taken 1:13,17
6:16 63:16
75:14 138:18
157:9,14,18
222:22 293:2,5
294:17 298:15
328:14 389:3
428:5,10,13,15
437:8,11
talk 7:10 131:19
134:11 135:8
135:12,23

170:15 199:11
199:12 201:13
209:16 260:8
318:7 345:13
353:23 361:24
385:22
talked 47:15
178:1 245:21
372:10 378:4
383:1 385:24
talking 13:24
25:21 34:2
43:11 50:23
51:9 64:19
70:20 71:10,11
75:23 80:13
81:8 116:22
135:17,19
165:8 172:7
177:16 233:22
258:7 283:23
345:13 370:7
372:14 377:2,4
385:11,16
386:10,20
talks 50:20
tall 31:21 52:1
177:11 182:3
301:23
task 234:8,20,21
234:22,24
235:10,11,12
tasked 92:19
94:20 95:8
96:12
team 110:8
tech 91:1
Technically
202:5
tecum 263:13,15
263:17
tell 15:8 21:6,13
29:13 34:4,12
35:13 39:18
40:16 42:24

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 482

47:5 51:5,20
52:1 61:6,10
64:9 71:20
83:15 91:7
93:9,11 95:3
102:9 133:24
134:5,13 148:6
150:6 152:20
160:7 163:1
174:18 175:18
176:11,14,22
179:24 184:11
208:19,24
209:3 213:24
214:13 220:24
226:22 244:20
253:16 254:4
254:12 262:11
262:14 266:8
266:10 270:21
271:3,12,17,23
275:11,13,16
310:16 311:10
319:20 362:19
369:2 397:7
409:17 415:22
423:19,24
424:10,14,21
425:2,5,10,14
425:18,19,23
425:24 426:5,9
428:9,12
437:16
**telling** 30:10,14
30:17,19 31:13
31:24 34:10,22
35:11 36:4,21
37:5 40:7
43:17 44:6
46:19 49:9,10
53:12,15 54:14
55:4 56:11
58:8 62:2
76:23 148:22
177:5,8 229:9

254:2,10
255:17 257:15
272:1 329:13
352:15 406:8
**tells** 377:13
**ten** 106:1
**tend** 261:14
**tender** 428:18
**tendered** 315:24
320:16 324:18
**tenure** 110:15
226:18
**term** 46:10
144:20 171:14
172:6 173:3
179:10 203:8
204:21 233:18
234:20 235:6
357:20 367:10
383:8,20
**terminology**
144:24
**terms** 124:4
139:3 147:1
192:7 205:2
412:15 413:4
**terrorism**
235:11
**terrorist** 234:22
**Terry** 70:1 82:3
83:3 92:5,6,14
92:20,23 93:4
93:20 188:14
188:22 190:6
260:23 352:7,8
360:1,2,13
366:15
**testified** 6:3
30:22 39:23
41:2 75:2,15
85:12 88:1,4
126:4 127:1,4
141:2 153:3
165:24 168:6
179:14 183:8

183:21 184:3
184:10 194:20
194:21 208:1
208:16 248:4,8
249:4 257:7
273:21 277:15
277:20 280:7
290:6,15
297:12,24
303:20,24
316:24 335:3
360:4 371:23
372:16 377:5
387:9,16
393:23 396:18
398:12 402:5
**testifies** 431:12
431:24
**testify** 85:10,12
86:24 87:23
176:8 217:14
218:17 279:16
279:20 280:2,3
280:6,20
281:17 320:10
320:14 392:14
**testifying** 165:7
166:6 174:7
**testimony** 34:16
35:16 36:24
41:7,11 42:20
43:22 45:8
46:6,24 48:8
49:3,14 53:3
53:18 54:24
56:2,15 58:15
59:15 60:14
62:7 65:16
69:4 77:3 79:2
81:12 84:8
99:16 104:24
141:13,14
149:20 152:13
168:14 174:1
184:15 191:4

191:19 192:2
208:10 211:2
219:19 230:17
231:9 248:12
248:14 249:1
249:12 251:9
252:3 257:9,20
279:8 280:6
284:17 285:3
285:16 290:11
297:19 358:22
373:12 387:22
388:4 389:19
390:15 391:10
396:23 397:4
397:24 398:5
400:16,19
402:8 403:2
414:8 422:7
424:6,11
436:11,13
**Thank** 23:9 26:5
32:13 38:1
43:10 54:21
69:19 83:13
98:12,16
291:17,20
336:12 340:9
340:12 341:7
392:21 402:18
430:18
**Thanks** 102:13
138:16 209:19
259:8 298:13
**thing** 148:3
163:5 180:18
181:1 191:24
197:14 261:24
269:15 284:13
284:23 318:5
342:5 352:2
363:19
**things** 27:17
91:2 102:7,10
102:15,18

109:5 113:24
117:13 120:16
130:6 153:16
160:21 173:18
173:18 177:24
234:2 261:22
272:1,3 420:5
431:14,15
432:1,3
**think** 8:1,7
17:11,13,14
37:8 46:10
51:24 71:13
90:2 98:8
103:13 116:9
117:14 122:23
124:11 125:16
126:1,4 127:1
127:4 130:14
130:18,19
133:11 150:6
150:23 151:24
158:13 162:6
164:19 167:8
175:15 176:10
177:23 179:13
179:18 183:21
184:9 185:23
186:8 192:19
194:20,21
200:7 201:10
201:11 203:19
205:9 206:19
207:1,4,7,9,10
210:18,21
211:9 224:1,10
225:1,10 227:2
228:3,16
229:12 230:20
239:4 243:24
244:11 245:8
248:4,14
253:21 254:16
256:2 258:10
260:7,11

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 483

| | | | | |
|---|---|---|---|---|
| 262:21 263:3 | **thought** 35:7 | 140:18 148:8 | 129:13 | 258:12 260:13 |
| 263:22 266:13 | 82:8 86:7 | 153:7,9 162:24 | **titled** 101:11,23 | 260:13 261:2 |
| 279:1 289:21 | 123:1 139:4 | 178:5 189:8 | 338:8 | 261:22 268:10 |
| 296:6 305:19 | 179:13 242:24 | 193:22 198:1 | **today** 7:16 8:11 | 271:19 272:11 |
| 307:17 310:20 | 248:8 326:4 | 198:20 204:7,8 | 10:3 14:24 | 272:13 275:17 |
| 311:2 316:16 | 352:5 366:1 | 204:12 206:11 | 15:5,10 19:6 | 275:18 276:3,5 |
| 316:24 320:23 | 378:19 394:14 | 215:7 216:17 | 25:19 64:7 | 279:13 280:6 |
| 321:5,24 | 400:10 | 219:8 225:7 | 78:19 90:15 | 286:13 371:21 |
| 322:10 323:7 | **thousand** 106:7 | 226:21 227:5 | 99:16 208:1,10 | 371:23 372:17 |
| 323:22 327:4,7 | **threatened** | 227:14 232:11 | 208:16 215:17 | 377:23 406:4 |
| 327:16 328:23 | 41:21 42:17 | 233:2,4,6 | 252:3 275:14 | 409:13 423:20 |
| 329:16,23 | 43:1,5,8 | 236:10 239:11 | 275:16 292:11 | 424:1,15,22 |
| 330:14 336:3 | 211:24 212:2,7 | 247:21 248:1 | 293:22 299:8 | 425:3,6,20 |
| 340:7 343:3 | **three** 37:8 50:5 | 249:9 268:15 | 303:24 304:23 | 426:1,10 |
| 347:21 350:7 | 130:16,18 | 283:24 295:20 | 307:1 342:17 | 431:13 433:13 |
| 354:17,18 | 209:9,23 210:2 | 300:4 306:17 | 342:18 358:3 | **tongue** 401:19 |
| 355:20 356:9 | 261:3 365:15 | 307:11 311:22 | 371:23 395:2 | **Tony** 224:7,19 |
| 358:20 361:8 | 368:5 381:8 | 313:19,21 | 396:1 | 224:21,22 |
| 366:21 368:22 | 427:12 | 315:2 316:19 | **today's** 292:14 | 225:1,7,12,18 |
| 370:16 374:20 | **three-hour** | 320:14 325:6 | 292:17,21 | 227:24 228:8 |
| 377:5,12 | 209:4 | 327:14 328:2 | 299:11 304:19 | 228:13,17,22 |
| 382:18,21 | **three-month** | 332:4 334:19 | 309:24 318:10 | **top** 19:11 24:12 |
| 383:10 385:6 | 250:11 | 335:4 339:24 | 336:22 340:22 | 90:20 200:11 |
| 386:9,19 391:8 | **throat** 43:6 | 342:20 385:19 | **told** 10:7 27:17 | 264:3 266:24 |
| 391:10,17 | **throw** 158:4 | 385:20 391:14 | 27:18 32:15 | 293:6 305:6,9 |
| 392:11 393:5 | **thumb** 121:13 | 391:15 399:15 | 33:20 37:15 | 313:2 329:16 |
| 396:19,21 | 286:16 | 403:3 405:4,8 | 39:11 40:6,13 | 338:7 347:15 |
| 397:4 401:10 | **time** 11:14,15 | 405:20,23 | 41:1,13,21 | 348:7 377:2 |
| 401:10,16 | 12:11 13:10 | 406:1 410:12 | 42:17 43:6,7 | 380:21 382:2 |
| 403:19 404:6 | 14:3,20 16:10 | 410:16,21 | 43:17,19 44:6 | **trafficking** |
| 414:5,11,11,22 | 17:23 20:11 | 411:7,18 420:1 | 46:9 48:14 | 125:23 |
| 416:3 419:22 | 22:10 23:21 | 420:7 421:16 | 61:15,16 69:24 | **training** 117:8 |
| 420:2,12 | 24:4 41:22 | 421:23,23 | 69:24 72:19 | 117:11,20 |
| 432:11 | 44:22 55:18 | 426:7 435:10 | 76:11 82:2,3,4 | 118:6 119:10 |
| **thinking** 241:5 | 69:11 76:10 | 437:22 | 82:5,9 83:1,3 | 121:3 123:24 |
| 278:13,17 | 91:2,14 106:6 | **times** 37:5,8 | 112:21 178:23 | 125:24 126:1 |
| **third** 2:3 28:23 | 106:17 109:9 | 106:1,10 | 179:3,3,14 | **transcript** 388:3 |
| 29:6 52:10,13 | 109:11 111:12 | 173:21 248:2 | 183:22 184:4 | 388:12 397:3 |
| 57:18,19,20 | 112:9 116:12 | 256:3 266:9,10 | 184:18 185:2 | 397:12 400:17 |
| 60:18 210:22 | 116:21 120:18 | 371:10 409:18 | 190:20 209:7 | 402:2 429:8 |
| 255:4,12,12 | 121:2,8 124:6 | **tiny** 182:6 | 219:9,19 220:5 | 434:13 435:1,6 |
| 258:20 259:2 | 124:22 125:4 | **tip** 401:19 | 231:8 234:7 | 436:11,12 |
| **thorough** | 125:13 126:5 | **tired** 105:10 | 251:10 253:22 | **transcripts** |
| 145:14 146:5 | 129:14 130:8 | 247:12 | 254:1,2,9,9,18 | 141:12,14 |
| 146:12 419:4 | 131:17 132:23 | **title** 12:11 | 257:17 258:1 | **transition** 109:4 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 484

transport
  357:16
traveled 93:12
  102:1 263:8
traveling 93:19
travels 101:22
treated 44:15
  61:14
trial 41:8 75:2
  75:15 106:8
  143:1,3,8
  195:4 212:10
  290:7,16
  385:17 386:2,5
  424:17
tricky 179:5
tried 360:5
tripping 82:21
truck 84:18,22
  253:17 377:12
true 59:1,10,23
  60:3 66:13
  67:3,7 68:10
  73:16 75:9
  76:16 79:11,20
  80:11 85:17,19
  86:15 87:6
  178:3,12
  275:14,18
  276:12 277:2
  277:22,24
  278:18 279:13
  279:19 280:1
  436:12 437:20
truth 41:1,13
  43:18,20 44:7
  66:7 77:17
  135:10 147:6
  185:22,24
  186:3,7,8
  252:6 262:15
  262:15,16
  286:5 437:16
  437:17,17
truthful 46:3,15

46:22
try 7:4,10 93:12
  97:16 113:1
  141:21,22
  167:11 169:1
  230:1 249:23
  250:21 284:2
  347:20 413:10
  413:13
trying 25:12
  106:12 160:20
  163:9 165:10
  165:12,22
  170:16 173:3
  180:20,21
  219:12,14
  276:19 401:9
turn 121:19,21
  121:22 122:5
  122:10,14
  123:15 345:18
turned 62:19
  121:12 123:2
turning 122:14
  244:11 378:15
twice 226:13
  256:3 348:15
two 8:22 9:12
  22:8 25:21
  27:6,12 28:15
  29:6 31:6
  34:22 35:11,12
  41:16 50:5
  51:6 62:20
  67:9,10 89:24
  94:3 106:16
  147:1 173:1,2
  173:21 176:21
  179:1 189:20
  221:9 224:23
  228:20 230:23
  249:7 271:21
  301:12,22
  310:17 317:20
  339:12 344:4,5

347:10 373:22
  381:9 395:3
  399:9 434:2
two-minute
  298:10 428:2
type 37:19
  159:11 160:23
  294:14 307:14
  311:9,14
  313:16 324:5
  332:19 336:5
  358:24 359:24
  361:14
typed 86:5
  159:14
types 141:17
  294:4
typewriter
  158:22
typewriting
  437:9
typical 125:3,10
  197:18 236:20
typically 13:12
  17:19 21:19
  37:19
typo 132:10

_____

          U

U.S 419:8
unaware 144:5
uncle 31:23 33:1
  52:3 177:7,12
  179:11
under- 277:13
underline 270:4
underlined
  270:9,16
underlying 9:1
  192:7 198:24
  221:18 316:3
  320:11,20
undermine
  175:15
undersigned

438:3
understand 7:3
  7:5 21:1 99:6
  101:22 103:5
  116:1 122:3,8
  123:12,19
  172:4 175:2,4
  202:4 233:13
  233:14 234:17
  292:9 348:17
  368:7 393:6
  414:19 421:17
understanding
  15:11 60:2
  121:5,11
  158:10 168:6
  234:8 353:1
  389:15 390:12
  390:24 392:9
understood 7:1
  7:7,13 109:15
  114:4 118:21
  121:16 307:22
unduly 403:20
  404:7,22 405:6
  406:5,11
unequivocal
  392:3
unequivocally
  243:5
uniform 75:15
unique 197:17
unit 12:24 13:5
  13:9,11 16:2,5
  16:9 110:16,21
  110:24 111:4,5
  111:5,8,12,24
  112:5,13,16
  113:5,14
  114:13 115:15
  116:5,12,16,17
  125:24 126:7
  126:10,18,21
  126:23 127:7,9
  127:10,13

128:4 142:11
  193:18 194:13
  207:18 229:1
  229:11,16,22
  230:19 233:6
  234:1,6 235:9
  235:22 236:11
  238:7 326:16
  326:20 328:21
  328:24 331:8
  332:5,17
  333:11 335:9
United 1:1,15
  436:1
units 125:21
UNKNOWN
  1:7 436:7
unpack 149:5
unrelated 167:1
unsure 51:14,16
  299:9
unusual 124:12
  178:24 179:23
  180:4,6,19
  183:12,15
  195:22 196:12
  390:23
urge 22:12
  138:7 164:14
  182:17 262:13
use 172:6 198:7
  234:20 311:9,9
  315:8 317:4
  320:6 324:2,5
  327:7 329:8
  389:17 390:14
usual 197:7
usually 17:21
  115:19,20
  118:24 159:7
  173:15

_____

          V

vague 96:20
various 125:20

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 485

| | | | | |
|---|---|---|---|---|
| 125:21 162:4 | 365:10,12 | 315:6 321:9 | 150:7 153:14 | 135:13 136:1 |
| **vast** 126:5 | **wait** 69:11 | 325:2,14,14,23 | 154:22 165:5 | 137:9 139:21 |
| 140:14 | 115:23 161:7 | 328:8 329:11 | 226:3 237:18 | 158:21 159:18 |
| **vault** 241:21 | 191:7 192:11 | 346:14 354:14 | 247:11 275:5 | 160:17 168:22 |
| 242:1,2,3,8,8 | 201:22 206:5 | 354:18,22 | 290:11 297:12 | 174:18 176:18 |
| 242:14 | 209:15,16 | 360:8 375:5,5 | 297:14,16 | 176:18 177:2 |
| **venture** 22:11 | 251:15,15 | 379:9,13 | 343:24 349:13 | 178:2,2,15 |
| **venue** 368:3 | 288:19 294:9 | 387:23 392:14 | 349:16 361:11 | 180:6 188:23 |
| **versus** 118:16 | 300:8 313:4,4 | 393:2 412:9 | 374:3 384:16 | 194:23 210:13 |
| 204:8 265:23 | 316:19 343:14 | 416:11 423:15 | 387:4 402:18 | 245:9,13 246:1 |
| **victim** 95:11 | 361:12 374:14 | 429:4,16,18,20 | 406:21 412:15 | 246:4,10,23 |
| 191:6,10,18 | 376:15 | 429:20 434:17 | 423:13 425:16 | 247:2 248:1,2 |
| 253:17 299:17 | **waive** 95:2 | 434:17 | **Wayne** 101:11 | 250:21 251:5,6 |
| 360:1 | 434:14 | **wanted** 64:13 | **ways** 33:10 | 260:14 268:7 |
| **victims** 126:16 | **waived** 189:8,15 | 102:5,9,17 | 113:19 114:11 | 273:3,7,13 |
| **video** 151:14 | 190:6,10,16 | 113:23 227:10 | 237:4 323:23 | 286:14 290:8 |
| 152:7,15 197:3 | 191:2 | 252:17 260:8 | 324:4 327:4,24 | 291:6,10 |
| **videoconference** | **walk** 65:21 79:7 | 291:3 303:4 | **we'll** 93:22 | 293:15,20 |
| 2:7 3:13 | **walked** 72:6 | 311:16 | 178:9 | 300:2 363:24 |
| **view** 72:18 | 180:3 | **wants** 48:3 | **we're** 30:1 34:1 | 370:16,18 |
| 82:19 83:4 | **Walker** 293:11 | **warrant** 85:10 | 34:7 40:4 | 371:24 372:18 |
| 372:18 | **walking** 55:23 | **warrants** 237:17 | 43:11 64:19 | 376:21,22 |
| **viewing** 82:23 | 59:22 78:22 | **wasn't** 13:16 | 117:17 251:19 | 377:6 |
| 238:17 | 80:24 | 90:16 115:3 | 328:6 386:10 | **weren't** 46:22 |
| **violation** 66:1 | **Wanda** 210:9 | 127:6 147:22 | 435:10 | 127:1,5 150:13 |
| **violent** 82:8 | **want** 13:10 | 147:23 148:4 | **we've** 72:6 | 200:11 |
| 234:21 | 15:22 18:6 | 149:4 170:19 | 174:17 176:6 | **West** 1:18 2:8 |
| **visit** 29:12 51:6 | 27:5 47:12 | 174:3 181:7,7 | **Wearing** 422:5 | 2:18,18 3:3 4:4 |
| 245:9 246:2,5 | 61:7 65:21 | 181:9,11,14,14 | **website** 321:22 | 5:6,8 6:5,13 |
| 246:14 | 68:13 85:12 | 181:15 182:5,8 | 322:2,12 323:9 | 8:8,17 14:13 |
| **visited** 117:15 | 86:1 90:1 99:7 | 186:24 188:11 | 329:2 | 15:23 16:21 |
| 117:15 246:17 | 104:16 114:14 | 193:4 208:14 | **week** 8:22 163:6 | 17:7 18:6,12 |
| **visiting** 253:14 | 138:12 139:9 | 215:2 249:11 | 249:7 | 18:17 20:2,9 |
| **visually** 148:11 | 141:13,18 | 272:18 279:13 | **weekend** 108:2 | 22:5,14 24:9 |
| **volunteered** | 166:22 172:4 | 283:4 285:23 | 108:5 | 25:1,15 26:5,9 |
| 258:11,12 | 172:20 178:13 | 286:4,6 307:24 | **weeks** 8:22 | 28:5,11,19 |
| **volunteering** | 180:20 187:13 | 339:21 368:5 | 72:16,23 94:3 | 29:17,22 31:3 |
| 258:8 | 187:17 200:21 | 372:13 390:4 | 249:7 250:7 | 31:17 32:6,10 |
| **vs** 1:5 436:5 | 201:21 202:1,3 | 418:4 | **weight** 302:11 | 32:21 33:9,12 |
| | 208:23 209:8 | **watching** 414:18 | 336:7,9 | 33:16,23 34:20 |
| **W** | 220:21,22 | **Watts** 398:20 | **went** 12:23,23 | 35:5,18 36:8 |
| **W** 3:7 | 238:4 260:20 | **way** 29:24 39:19 | 41:14 74:21 | 37:2,10 38:7 |
| **Wacker** 2:13 | 272:19 273:4 | 42:1 83:19 | 94:7,10 113:9 | 38:15 39:1,13 |
| **Wade** 95:18,20 | 273:10 285:23 | 95:1 113:22 | 117:15 118:24 | 40:3,23 41:15 |
| 190:11 365:1 | 292:2 312:9 | 114:1 134:7 | 124:1 129:16 | 42:14,23 43:9 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 486

| | | | | |
|---|---|---|---|---|
| 44:3,12 45:9 | 245:8 246:2,20 | 191:5,9,10,12 | 81:19 84:10 | 190:23 194:4 |
| 45:16,23 46:12 | 247:16 248:8 | 191:20 196:13 | 87:9 88:3,7,12 | 196:2,5,7,16 |
| 47:4,14 48:13 | 248:12 249:2 | 198:2,11,16 | 89:12 93:15 | 197:10,13,22 |
| 49:5,15 50:2 | 251:1,23 | 215:9 238:9,23 | 95:8,22 96:4 | 199:6,15 200:5 |
| 51:3,11 52:5 | 252:23 257:21 | 260:1 272:12 | 96:10,13,15,24 | 200:10,15 |
| 53:4,13 54:1 | 258:20 265:14 | 281:18 302:21 | 97:8,17,20,23 | 201:6,15,19,21 |
| 54:12 55:1,10 | 269:4 280:10 | 319:4 385:20 | 98:10,14,17,19 | 202:3,7,12,22 |
| 56:5,20 58:17 | 281:21 282:8 | 423:21 424:2 | 100:22 101:7 | 203:1,3,8,17 |
| 58:22 59:18,21 | 283:1,14 | **willing** 86:24 | 103:6 104:5,7 | 204:15,17 |
| 60:8,17 61:4 | 284:18 285:3 | 87:23 279:15 | 104:14 105:5 | 205:7,14 |
| 61:18 62:14 | 285:13,17 | 279:20 280:1 | 106:4 108:11 | 206:12,19 |
| 63:1,6,8,10,20 | 286:10 289:23 | 280:20 281:16 | 109:19 113:18 | 209:18 213:4 |
| 64:1,11,14,16 | 291:16 295:21 | **wish** 288:4 | 114:17 115:11 | 213:13,23 |
| 64:20 65:20 | 314:5 315:19 | **withhold** 429:13 | 116:8,23 120:3 | 214:23 215:12 |
| 68:4 69:6 | 317:12 320:8 | **witness** 4:2 5:1 | 120:22 123:8 | 215:14,23 |
| 70:13,23 71:3 | 321:1,7 322:14 | 5:21 8:3,5,15 | 124:16 125:7 | 216:2,23 217:2 |
| 71:6 72:5,12 | 322:23 323:12 | 14:7,11 15:16 | 128:10,14 | 217:18,20 |
| 73:6,12 74:3 | 324:7,14 | 16:24 17:1 | 129:2 131:10 | 218:8,21,21,22 |
| 74:14,22 77:6 | 325:13,17 | 20:7 21:24 | 131:14 133:1 | 218:23 219:2,3 |
| 77:18 78:1 | 328:11 329:5 | 22:3 24:5,7,8 | 134:23 135:7 | 219:5,23 220:8 |
| 79:6 81:16,23 | 330:10 331:14 | 24:19,23 25:9 | 136:9,13,24 | 220:12,15 |
| 84:12 86:19 | 333:4 340:8,10 | 25:18 26:7 | 137:2,12,24 | 221:6,10,11,11 |
| 87:11 88:13 | 340:12 372:8 | 28:3,9,17 | 138:10 139:10 | 221:14,19,21 |
| 89:15,17,22 | 372:21 373:17 | 29:19 31:1 | 139:15 140:5 | 231:23 233:12 |
| 90:2,5,9 93:17 | 378:24 379:2,5 | 32:9,19 33:13 | 142:6,17 | 234:18 236:3,7 |
| 93:21 94:1 | 379:8,21 | 34:18 35:3 | 145:18 146:8 | 237:8,11 238:1 |
| 96:6,22 97:6 | 403:24 404:12 | 37:21,23 38:3 | 147:9,15 | 238:17 239:14 |
| 98:1,5,11 | 406:17 407:2 | 38:13,23 39:9 | 149:21 156:1 | 239:17 240:22 |
| 102:24 103:2 | 408:4 409:5 | 40:1,21 41:12 | 157:21 160:5 | 241:1,8,11 |
| 103:22 104:2 | 412:21 413:7 | 42:10,21 43:4 | 160:12,15 | 243:23 245:1 |
| 104:12 105:4 | 413:22 418:11 | 44:1,10 45:14 | 161:10,13,22 | 246:9,21 247:6 |
| 105:14 115:10 | 429:4,23 430:4 | 45:20 46:8 | 163:19 164:4 | 247:18 248:16 |
| 120:21 125:17 | 434:8 435:7 | 47:2 48:10,20 | 164:11,17 | 249:3,19 250:3 |
| 140:3 144:11 | 437:12 | 48:23 49:23 | 165:15 166:13 | 250:14 251:4 |
| 146:7 149:19 | **whatsoever** | 51:1,8,23 53:1 | 166:18,24 | 251:17,24 |
| 171:9 173:23 | 183:9 433:14 | 53:10,20 55:8 | 167:19 168:19 | 252:11,13 |
| 174:10 175:22 | **white** 55:18 57:9 | 56:3,17 58:13 | 169:5,7,22 | 253:2 256:12 |
| 175:24 183:21 | 58:3 254:22 | 58:19 59:16 | 170:1,22 171:3 | 257:7,13,22 |
| 184:2,16 | **Wiedenhaupt** | 60:6,15 61:2 | 172:17 174:22 | 262:7,19 |
| 195:24 201:4 | 1:20 437:4 | 61:13 63:3,7,9 | 175:15 176:1,4 | 263:10,15,21 |
| 205:10 209:16 | 438:14 | 63:12,14 65:18 | 176:9 181:13 | 264:7 265:6,15 |
| 209:19 210:17 | **wild** 396:15 | 68:2 70:11 | 182:19,21 | 265:18,20,22 |
| 213:22 216:24 | **william.holme...** | 72:3,10 73:4 | 183:14 185:5 | 266:1,3 267:2 |
| 217:19 222:17 | 3:9 | 74:1,20 77:4 | 186:13,18 | 267:10,21 |
| 238:15 244:13 | **Willie** 79:16 | 79:4,14 81:14 | 187:7 189:12 | 268:13,23 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 487

| | | | | |
|---|---|---|---|---|
| 274:5,16 | 375:23 378:2 | **witnesses** 94:21 | 102:16 105:6 | 76:22 132:12 |
| 278:13,15,16 | 379:14 380:2,5 | 94:23 95:3 | 122:2 169:17 | 141:24 143:19 |
| 280:11 281:1,5 | 380:7 381:14 | 117:21 119:20 | 223:3,14 | 147:16 162:3 |
| 281:18,23 | 381:21 382:13 | 120:12,17,19 | 224:11 226:2,6 | 187:1 188:11 |
| 282:9,24 283:3 | 383:16 384:15 | 126:14,15 | 227:5,10 228:1 | 240:17 267:18 |
| 283:15 284:1,3 | 385:2 386:13 | 128:7 134:12 | 229:19 235:9 | 273:10 283:4 |
| 284:10,20 | 388:2 389:6 | 155:14 163:10 | 235:22 236:11 | 323:20,22 |
| 285:4,20 | 393:2,7,9,17 | 168:8,23 | 236:22 237:21 | 369:2 |
| 286:11 287:2,4 | 393:19 394:20 | 169:17 217:14 | 237:23 294:5 | **write** 42:1 70:6 |
| 287:8,17,21 | 399:1,11,19,21 | 218:17 219:18 | 326:17 338:22 | 149:9 158:18 |
| 288:11,22 | 400:6,16 401:5 | 222:8 319:4,9 | 338:24 351:17 | 159:2 162:24 |
| 289:5,10,13 | 401:6 404:3,8 | 319:11 320:13 | 415:24 | 351:7 381:22 |
| 290:12 291:20 | 404:13,16 | 385:8,16,16,19 | **worked** 11:16 | 419:7 420:15 |
| 295:22 308:14 | 405:11,13 | 385:22 386:23 | 12:7,12 17:19 | 420:18 421:13 |
| 312:7,11,13 | 406:10,16,18 | 406:3 412:16 | 21:19 52:17 | 421:18,20 |
| 315:21,24 | 406:22 407:3 | 413:5 | 99:17 110:16 | 422:15 |
| 316:13,20 | 407:16 408:6 | **Wojcik** 1:7 | 112:13 117:1 | **writing** 158:17 |
| 317:14 319:16 | 409:6,18 410:4 | 224:19,21,22 | 117:13 127:8 | 276:10,15 |
| 320:10,17 | 410:10,18 | 225:7,12,15,19 | 207:19 225:1 | 341:18 347:16 |
| 322:19 323:2 | 411:1,9,19 | 227:24 228:8 | 226:4 228:10 | 347:18 381:19 |
| 323:14 324:18 | 412:8,23 413:9 | 228:13,17,22 | 228:14,24 | 382:24 |
| 325:10 327:11 | 413:23 414:15 | 230:17 436:7 | 229:10 237:13 | **writings** 186:20 |
| 329:6,24 | 415:3,18 | **woman** 31:10 | 326:15,19,24 | **written** 14:3,3 |
| 330:11 331:12 | 416:15 417:2 | 49:9,20 50:20 | **working** 12:20 | 59:3 67:14,21 |
| 331:16 332:8 | 417:18 418:12 | 180:16 255:5 | 16:1 17:17 | 70:19 71:1 |
| 333:14 334:5 | 418:24 419:14 | 255:14 256:4 | 22:17 52:22 | 72:22 87:14 |
| 335:20 337:22 | 419:21 420:4,6 | **wondered** 85:24 | 53:8 100:3 | 120:7,10 161:3 |
| 338:1,4,22 | 422:20 426:18 | **wondering** | 107:8,22 113:8 | 161:17 232:15 |
| 344:22 348:24 | 426:20 427:6 | 118:14 168:4 | 113:10 114:20 | 273:17,18,22 |
| 349:22 350:5,9 | 427:14,18 | 273:21 277:5 | 126:6,7,17,20 | 273:23 274:13 |
| 351:12 353:6 | 428:3,22,24 | 353:11 372:19 | 142:9 191:21 | 347:2 421:11 |
| 353:23 354:24 | 431:4,19 432:7 | **Wood's** 395:5 | 192:20 193:14 | **wrong** 85:24 |
| 355:3,5,8 | 432:12,15 | **Woods** 392:2 | 193:16 194:13 | 152:12 194:21 |
| 356:13,18,24 | 433:4,20 | **word** 50:6,9 | 200:1 217:12 | 206:15 242:24 |
| 357:3 358:11 | 434:17,20,20 | 67:13,20 | 230:11,12 | 265:14,22 |
| 358:15 360:1,2 | 434:24 437:6 | 247:20 266:19 | 231:10,16 | 352:24 374:21 |
| 360:11 361:3,7 | 437:15,22 | 272:18 350:11 | 238:2,8 310:3 | 415:22 |
| 361:14,17 | 438:1,6 | 350:13,15 | 346:10 365:23 | **wrongful** 403:7 |
| 363:9,10,14 | **witness'** 184:15 | 389:17 423:10 | 394:13 | **wrongfully** |
| 365:1,5 366:11 | **witness's** 327:13 | **words** 72:21 | **works** 135:18 | 50:16 |
| 366:15 367:17 | 335:19 411:7 | 73:9 232:18 | 162:6 | **wrote** 74:11 |
| 367:23 368:9 | **witnessed** 186:1 | 325:14 368:5 | **worried** 200:22 | 76:7 77:9 86:6 |
| 371:18 372:19 | 186:9 188:5 | 384:20 | 203:9 | 88:16 159:17 |
| 372:23 373:19 | 282:6 286:7,20 | **work** 15:20 | **worries** 171:13 | 159:19,21 |
| 375:2,4,7,12 | 287:14 | 16:14 18:5 | **wouldn't** 25:6 | 160:1 161:16 |

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 488

178:5 212:17
266:17 274:12
275:9 282:4
356:16 377:5
421:1,6 422:2

**X**

X 4:1,8 247:21
XYZ 113:10
114:19 226:8

**Y**

yapping 156:17
157:16
yeah 9:17,17
10:5,19 14:22
25:5 33:9,12
33:15 35:8
42:7,11 51:4
63:6,12,13
64:16 69:12,20
89:22,24 91:3
91:3 102:24
104:7,17 106:8
106:24 107:15
108:3,14 110:6
113:6 115:24
118:11,12
119:17 122:20
123:11 124:11
124:19 126:24
128:2 133:15
134:1,13,16
135:2 138:7,14
138:15 145:6
153:2 154:1
156:2,5 157:9
158:13,21
159:3,7,12
161:1,8 162:11
168:2 171:24
172:20 173:12
174:6,9 175:24
178:7,21 180:1
180:20 182:15

184:6 187:21
188:24 189:1,3
191:16 192:1
192:14,19
194:7,10,11
196:17,22
199:17 201:15
201:19 202:12
202:13 203:2
206:6 208:3,5
210:21 211:3
213:7 214:7
216:9,15
225:18,24
226:9,13
227:18 229:4,6
229:23 232:23
233:5,24
236:13,24
237:1,4 238:24
239:2,3,5,8,22
242:4 244:15
244:15 245:4
245:12,23
248:13 250:19
252:14 253:9
253:20 255:2,3
255:16,19
256:6 258:1
260:7,9,11,13
261:12 262:8
264:1,18
265:15,18
266:15,20
267:13 268:20
270:9 271:19
272:22,24,24
274:2,11
277:17,21
279:7 281:12
284:2,2 285:13
289:23 290:1,1
292:5,21 293:1
293:8,8 294:11
294:24 295:8,9

295:10,16
296:19 297:1
301:3 303:10
306:20,21,22
306:22 307:3,3
307:7,12,16,19
307:23 308:19
308:24 311:2
311:12 313:16
314:9,12
317:17 318:12
318:23,24
319:2,14 320:2
320:5 326:18
327:2,16
337:14 339:20
340:4,20 342:6
343:15 345:2
345:16 346:19
346:21 347:7
347:19 349:3
349:11,15
354:22 355:8
355:13,16,18
356:6,14 357:6
358:12 359:7
359:18 360:2,7
360:9 361:12
363:8,20 367:9
367:12,20
370:2,4,14
373:11 374:24
375:9,24
377:20 378:11
379:1,3,7,15
379:21 380:3
380:20 381:7
381:20 384:2
387:13 392:20
393:1,8,18,20
393:21 398:2
401:24 406:21
407:24 408:9
413:2 416:24
421:9,15

426:24 428:3
428:22 429:6
429:12,12,20
429:23 431:22
435:11
year 13:6,8
111:21,21
112:23 113:6,6
113:7 232:17
232:17
years 43:19 44:8
44:17 91:19
110:1,20
160:21 194:9
206:17 207:18
238:22 239:1,7
241:6 384:11
414:19
yelled 180:1
Yep 259:18
260:12 266:3,7
275:12 313:9
358:19 360:21
361:1 363:12
375:17
yes/no 263:4
338:24 341:21
younger 50:20

**Z**

zero 10:9 118:24
243:17
zip 10:9 243:17

**0**

000419 63:24
000423 77:21
000424 18:15
05 12:6 100:7
084-004725
438:18

**1**

1 4:11 18:7,10
24:13,14 26:14

27:7,8,9 65:23
79:14 144:7,11
158:24 238:14
265:8 295:11
336:16 349:6
388:1 400:20
435:1
1/3/20 347:23
349:6
1:00- 293:3
1:50 293:3
10 4:20 244:15
336:15,18
402:20
10:20 1:21
100 158:13
207:8 330:16
106 402:17
10th 19:12
261:16,16
11 4:21 340:8,9
340:14 341:9
402:21
12 4:22 194:9
340:7 379:19
379:23 380:1,1
13 23:12
14 421:7
15 23:12 158:9
1509 2:8
15151 291:13
295:10,13
15170 298:19
15188 304:9
15189 304:10
15201 309:17
154 345:19,21
158 304:10
389:8
16 1:21 436:12
437:6
161 438:15
17- 347:12
170 301:24
302:11

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 489

**172** 347:10,13
**1750** 3:3
**1761** 317:22
**1767** 317:23
**18** 4:11
**19** 307:2
**19-** 372:18
**1975** 101:10
**1990** 67:12
79:15 84:15
192:18,21,23
239:6 295:19
424:23
**1995** 343:5
**1999** 306:19
311:11 313:22
314:7,14

**2**

**2** 4:12 28:21,24
36:1 49:6
63:18,22 71:12
72:14 78:3
80:5 255:1,2
258:21,23
259:1 264:24
265:3,4 380:14
388:1 400:21
435:2
**20** 1:5 248:2
436:5
**2000** 110:23
111:2,20,21
119:13
**2000-** 107:7
421:6
**2000s** 191:23
**2002** 65:24
193:4,11,14,16
193:20 194:7
229:16 293:3
319:5,12
372:19 425:7
**2005** 99:18
107:7 110:23

**111:2** 117:7
119:15,16,18
150:12
**2011** 26:1,18
64:17 79:12
80:6 265:5
**2012** 26:2,22
55:24 56:7
**2014** 19:12,18
91:22 126:17
126:22 244:14
244:21 260:22
260:23 262:4
359:9 419:7
420:20,23
421:1
**2015** 15:9,13
17:17 18:1
19:15 64:19
78:4,23 126:20
126:22 150:18
160:19 161:2
161:16 217:11
218:15 238:20
240:5,20
246:15 250:22
253:14 289:2
351:16
**2019** 150:11,12
155:7,10
158:10,13
**201E** 2:8
**2020** 351:8,17
353:14 354:2
357:11,22
**2021** 11:1 12:2
99:19 100:15
**2024** 1:21 389:8
436:12,21
437:6 438:8
**203** 401:10,11
**20s** 344:8,13
**21** 79:15 301:23
**230** 354:15,15
354:21,22

355:6,7,8
401:10
**239** 358:9,11,15
**241** 360:17
**242** 363:4
**247** 363:4
**25** 238:22 239:1
239:7 241:6
**250** 364:16
**257** 366:3
**26** 26:18 80:6
166:15 391:23
**26(a)(2)** 218:22
221:11
**26th** 26:1 64:17
438:8
**28** 301:23
**283** 374:13,15
374:17 375:3
**284** 378:23
**290** 4:15
**298** 4:16
**2nd** 91:21

**3**

**3** 4:13 22:6
60:19 67:9
68:11 75:1
77:20,21,23
78:13 80:13,20
81:5,7 272:21
272:23 400:23
**3/5/15** 382:3
**30** 180:16
302:10
**30(b)(6)** 236:3
315:24 320:17
**301** 1:18 437:12
**304** 4:17
**3050** 438:15
**309** 4:18
**311** 2:3,13
**312.243.5900**
2:4
**312.341.9646**

2:20
**312.361.8851**
438:16
**312.603.5440**
3:9
**312.929.4308**
3:4
**312.982.0090**
2:14
**318** 4:19
**31st** 10:24 11:1
12:2
**334** 2:19 22:21
**336** 4:20
**340** 4:21
**347** 345:12,15
378:16,19,24
379:4 380:10
**35th** 111:16
**379** 4:22
**390** 89:19
**391** 89:20

**4**

**4** 4:14 69:8,9,18
70:6 71:3,14
77:7 81:4,24
82:12,15 89:18
90:7 265:9
273:15,15,19
273:20 274:10
**4:40** 391:1
**40** 301:14,16
**41** 301:16
**419** 64:11 265:8
265:19,21
**42** 301:16
**422** 63:24 64:14
**423** 272:24
**425** 254:23
**426** 18:16
**450** 341:9
**453** 344:3
**454** 342:24
**456** 341:9

**4786** 1:5 436:5

**5**

**5** 4:15 64:18
72:13 73:8,15
78:4 82:18
84:4 253:14
274:21,23,24
275:1,4,14,17
276:2,12 277:3
279:5 289:21
289:22,24
290:1,3 291:12
402:20,21
**5'11** 344:8,13
**5'6** 182:9
**5'7** 182:9
**5'8** 344:8,13
**5:20** 435:15
**500** 3:8
**505** 23:8
**52** 361:9
**52-something**
210:19
**5200** 2:13
**53** 1:18 2:18 3:3
437:12
**55** 321:2,8
**5th** 19:15 26:2,4
26:5,22 78:23
238:20 246:15

**6**

**6** 4:4,16 75:1
84:13 85:5
100:6 277:12
277:15 298:17
298:21 299:7
**6'** 301:23 302:10
**6:00** 328:7
**60601** 438:16
**60602** 3:8
**60604** 2:19 3:4
**60606** 2:14
**60607** 2:4

James Fletcher, Jr. v. Jerome Bogucki, et al.
Deposition of Daniel Brannigan - Taken 8/16/2024

Page 490

| | | | | |
|---|---|---|---|---|
| **606**40 2:9<br>**63** 4:12<br>**69** 100:6 | 306:20 307:3<br>311:13<br>**9th** 293:8 | | | |
| **7** | | | | |
| **7** 4:17 75:14<br>76:2 85:9,21<br>277:19,23,24<br>304:4,12<br>309:11 310:18<br>310:24,24<br>312:22 313:3<br>**74** 110:8,9<br>**76** 345:11<br>**77** 4:13 414:19<br>**773.859.0081**<br>2:9 | | | | |
| **8** | | | | |
| **8** 4:18 76:10,15<br>85:23 86:14<br>278:3,4 309:11<br>309:13 310:18<br>389:7<br>**8/29/14** 359:8<br>**80** 21:15<br>**86** 110:9,10 | | | | |
| **9** | | | | |
| **9** 4:19 77:8<br>86:20,22 87:19<br>87:21 88:5,9<br>278:7,17 279:9<br>280:1 293:3<br>317:21 318:2,9<br>323:9 329:1<br>**9-** 192:11<br>**9/10ths** 153:9,17<br>**90** 4:14 192:11<br>192:19 194:6<br>239:2,4 311:17<br>**90s** 306:17<br>**98** 4:5<br>**99** 14:2 153:7,9<br>153:9,17 | | | | |