# EXHIBIT 58

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,         Plaintiff,<br><br>     v.<br><br>JAMES FLETCHER,      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 02 CR 16669<br><br>  The Honorable J. P. Kirby |

_____

### DEFENDANT'S MOTION FOR A NEW TRIAL

Defendant James Fletcher, by his attorneys, pursuant to 725 ILCS 5/116-1, respectfully moves this Court for a new trial. In support of this motion, Mr. Fletcher states as follows:

1.     On February 25, 2005, a jury returned a guilty verdict against Mr. Fletcher on a charge of first-degree murder relating to the death of Willie Sorrell ("Mr. Sorrell") on or about December 21, 1990.

2.     This Court should grant Mr. Fletcher a new trial as to the jury's verdict on the charge of first-degree murder for the following reasons.

**Fletcher 010034**

**I.  The Court Erred By Allowing Witnesses To Testify About Information Obtained From Out Of Court Statements Made By Terry Rogers.**

3.     In December 1990, the police interviewed an eye-witness, Terry Rogers. At that time, Mr. Rogers stated he did not know the offenders involved in the armed robbery proceeding the death of Mr. Sorrell, but he heard one offender call the other offender "Fletcher." *See* Exhibit A.

4.     In February of 2002, while in police custody for another matter, the police re-interviewed Mr. Rogers.  At that interview, Mr. Rogers stated that he knew the Defendant James Fletcher and that James Fletcher was one of the offenders of the December 1990 incident. In 2002, Mr. Rogers stated that he did not remember what he told the police when he was interviewed in 1990. *See* Exhibit B.

5.     In its opening statements, the State told the jury that in 1995 the police were looking for a man named "Fletcher" and that in 2002 the police were looking for a man named "James Fletcher."  (2/23/05 Transcript at 27-29).  The State's only source for these remarks was the statements Mr. Rogers gave to the police during police interviews.

6.     At trial, Detective Bogucki testified that the police were looking for a suspect by the name of "Fletcher" because one of the witnesses had provided that name and by 2002, they were looking for a suspect named "James Fletcher."  (2/23/05 Transcript at 180, 186). Mr. Cooper and Ms. Friend both testified that they did not know the names of either suspect. (2/23/05 Transcript at 89, 154).  The only source of Detective Bogucki's testimony was Mr. Rogers' statements.

7.     Detective Bogucki testimony based on the 1990 statement by Mr. Rogers was double hearsay, and his testimony based on Mr. Roger's 2002 statement was also hearsay. Thus, the Court erred in allowing the State in its opening statement and Detective Bogucki to

2

testify that the police were searching for a suspect by the name of "Fletcher" or "James Fletcher." The Court also erred in permitting the State to argue this in its closing arguments. (2/25/05 Transcript at 77).

        8.    Mr. Rogers was unavailable to testify at trial, and Mr. Fletcher has not had the opportunity to cross-examine Mr. Rogers. Allowing the State to use statements made by Mr. Rogers was a violation of Mr. Fletcher's constitutional right to cross-examine Mr. Rogers. *See Crawford v. Washington,* 541 U.S. 36 (2004) (holding that statements made by a declarant in a police interview are testimonial and inadmissible if the defendant has not had an opportunity to cross-examine the declarant). This violation was particularly damaging because the jury had no reason to doubt the source of the name "Fletcher." Through Mr. Roger's testimony, Mr. Fletcher could have attacked the credibility of Mr. Roger and the accuracy of his statements for at least four different reasons. First, Mr. Rogers appears to have been a suspect in this incident. *See* Exhibit D. And Mr. Rogers ceased being a suspect when he identified Mr. Fletcher. *See* Exhibit B. Second, the police chose not to pursue charges against Mr. Rogers for the other matter he was in custody for after he identified Mr. Fletcher. *See* Exhibit E. Third, Mr. Cooper testified that the suspects did not refer, at any time, to each other by name. (2/23/05 Transcript at 89). This in-court testimony by Mr. Cooper, who was the witnesses closest to the suspects during the incident, contradicts Mr. Rogers' statements to the police that he heard one suspect refer to the other suspect as "Fletcher." Finally, Mr. Rogers' statements in 1990 and 2002 were clearly inconsistent. *See* Exhibit A and B. Because Mr. Rogers' statements were presented to the jury through a detective without regard to the credibility of the source, the information from Mr. Rogers appeared to be accurate and credible to the jury which violated Mr. Fletcher's sixth amendment rights because he was not allowed to attack it.

3

## II. The Court Erred By Not Allowing J. Cunyon Gordon To Rebut The State's Witness, Detective Bogucki.

9.      Mr. Fletcher was arrested on April 18, 2002. Prior to his arrest, the State (separate from the police investigation) re-interviewed all of the eye-witnesses and confirmed that at least three eye-witnesses could identify Mr. Fletcher from a photo-array. The State also interrogated Mr. Fletcher on February 21, 2002.

10.      On April 18, 2002, the State filed a preliminary examination against Mr. Fletcher. Also, the Public Defender's Office entered an appearance and a demand for trial on behalf of Mr. Fletcher. Also on April 18, 2002 at a court appearance, the Court instructed the State to notify Mr. Fletcher's private attorney of upcoming corporeal lineup; to which the State agreed to do. Also, for the record, the State gave notice of the time and date of the lineup to the Public Defender.

11.      Thus, at the time of the corporeal line-up on April 20, 2002, the adversarial process had begun and Mr. Fletcher was entitled to have his attorney present at the corporeal line-up, but she was not allowed into the witness viewing room during the line-up. *See Kirby v. Illinois*, 406 U.S. 682 (1972); *Illinois v. Swift*, 91 Ill.App.3d 361 (Ill. App. Ct. 1980).

12.      At trial, the State elicited testimony from Detective Bogucki that attorneys for accused persons are never allowed into the witness viewing room during a corporeal lineup. (2/23/05 Transcript at 210). The inference from this testimony was that the police's procedure at this corporeal lineup was legal and proper.

13.      To rebut this inference, Ms. Gordon (Mr. Fletcher's attorney at the time of the corporeal lineup and a former Professor of Evidence) testified that attorneys are typically allowed into the witness viewing room and that she should have been allowed in the witness

4

viewing room. The Court struck that testimony and prohibited Mr. Fletcher from eliciting any testimony about whether the police procedures were proper. (2/24/05 Transcript 2 at 75-80). Thus, Mr. Fletcher was unable to present evidence that the corporeal lineup was improper, unfair, and suggestive, and the jury was left with the inference that the corporeal lineup conducted was proper even though it was improper and violated Mr. Fletcher's constitutional rights.

5

**Fletcher 010038**

**III.    There Were Numerous Errors Relating To The Testimony Of Sheene Friend, Including The Court's Error To Allow The State To Make Arguments In Its Closing It Knew To Be False.**

14.    At trial, Sheene Friend testified that she was arrested for a parole violation in March of 2002. At that time she identified Mr. Fletcher in a photo-array. On cross-examination, she testified that she was not released from custody after identifying Mr. Fletcher and was sent back to jail for this parole violation. (2/23/05 Transcript at 156-160).

15.    The State did not produce any evidence to indicate that Ms. Friend was sent back to jail for her parole violation. Moreover, Ms. Friend has been in and out of State custody since March of 2002. *See* Exhibit C. The jury was left with incorrect inference that she has been in jail since March of 2002 which was incorrect because she has been in and out of jail since March of 2002 for a number of different reasons. Furthermore, Mr. Fletcher was unable to verify the accuracy of her statements regarding her arrest history because the State failed to provide Mr. Fletcher in discovery with a complete arrest record. Lastly, Ms. Friend was released from State custody immediately after her presence was no longer needed at Mr. Fletcher's trial.

16.    During closing arguments, the State argued that Ms. Friend had no reason to lie about identifying Mr. Fletcher because she did not make any deals with the State. (2/25/05 Transcript at 72). The State specifically reiterated Ms. Friend's testimony that she has been in custody ever since March of 2002. (*Id.*) The State knew that Ms. Friend did not remain in custody since her arrest for the parole violation and was, in fact, released after she identified Mr. Fletcher. *See* Exhibit C.

17.    In its closing arguments, the State's remarks regarding Ms. Friend's credibility were not made in good faith. The State indicated to the jury that Ms. Friend had no motive to lie and implied Ms. Friend came to court on her own free will. In fact, the State

6

repeated this argument at least four time in her closing argument. (2/25/05 Transcript at 72-74). That was simply not true. The State had a tremendous amount of difficulty getting Ms. Friend to come to court and eventually had to arrest her to secure her testimony at trial. Furthermore, the State released her from custody after she testified which further rebuts the States closing argument that she did not receive any preferential treatment for her testimony. The Court erred by allowing the State to argue that Ms. Friend did not have any reason to lie because the State knew Ms. Friend had incentives to give inaccurate testimony and also should have known that her testimony was, in fact, inaccurate. *See People v. Olinger*, 176 Ill. 2d 326, 680 N.E. 2d 321 (Ill. 1997) (holding that the State's knowing use of perjured testimony to obtain a criminal conviction is a violation of due process); *see also Naupe v. Illinois*, 360 U.S. 264 (1959) (holding that it is a violation of due process for the State to allow false testimony to go uncorrected even if that false testimony only applies to the credibility of the witness).

18. This error was further magnified in two ways. First, the State failed to provide Mr. Fletcher an updated rap sheet reflecting Ms. Friend's criminal activities the two years prior to trial including information regarding Ms. Friend's parole violation that was the subject of her March 2002 arrest. *Cf.* Exhibits C and F. *See Giglio v. U.S.,* 405 U.S. 150 (1972) and *Brady v. Maryland,* 373 U.S. 83 (1963). Thus, Mr. Fletcher was not able to verify or impeach Ms. Friend's statements regarding her parole violation. Second, the Court erred by ruling that if Mr. Fletcher attempted to impeach Ms. Friend due to her failure to appear for several previous court dates, the State would be allowed to elicit testimony regarding unsubstantiated threats against Ms. Friend which would have been extremely prejudicial. (2/23/05 Transcript at 4-7).

7

Fletcher 010040

19.    The State also failed to bring Mr. Fletcher to trial within the 120 days prescribed by 725 ILCS 5/103-5 because Ms. Friend failed to appear even though she had been subpoenaed. The Court granted the State additional time for the sole purpose of locating Ms. Friend. And when the State found Ms. Friend, the State arrested her until Mr. Fletcher's trial was finished. Thus, the State was well aware that its statements in its closing arguments were false.

8

Fletcher 010041

## IV. The Jury's Verdict Was Against The Manifest Weight Of The Evidence

20.    The jury's verdict that Mr. Fletcher was guilty of first-degree murder was against the manifest weight of the evidence as the State's evidence did not establish guilt beyond a reasonable doubt as a matter of fact or as a matter of law.

21.    The State failed to produce any physical evidence linking Mr. Fletcher to the death of Mr. Sorrell.

A.    There was no murder weapon in evidence.

B.    There was no DNA or fingerprint evidence even though the witnesses testified that the suspects spent several minutes inside Mr. Cooper's vehicle.

C.    There were no bullet casings, bullets, or bullet fragments recovered from the scene except for the bullet from Mr. Sorrell's body.

D.    There was no ballistic evidence or other scientific data to identify where the bullet came from that killed Mr. Sorrell. In fact, the State could not rule out the possibility that the bullet that killed Mr. Sorrell came from Mr. Cooper. Mr. Copper testified to shooting at least 5 bullets from a .38 caliber gun. (2/23/05 Transcript at 99). A .38 caliber bullet fragment was removed from the victim. (2/24/05 Transcript 1 at 8). And one of Mr. Cooper's bullets deflected off a vehicle's windshield that was parked in the vicinity of Mr. Sorrell. (2/23/05 Transcript at 121) There was no other evidence of a .38 caliber gun being fired by anyone else.

22.    Given that none of the eye witnesses testified that Mr. Fletcher shot Mr. Sorrell and given the possibility that Mr. Cooper may have shot Mr. Sorrell, Mr. Fletcher cannot be found guilty of first degree murder because there is a possibility that someone else committed the crime. *See People v. Widmayer,* 402 Ill. 143, 83 N.E. 2d 285 (Ill. 1948) (holding that in

9

Fletcher 010042

order to convict someone of a crime on circumstantial evidence, his guilt must be thoroughly established as to exclude every other reasonable hypothesis).

23.    The only evidence produced by the State was the identification testimony from two eye-witnesses who had never seen Mr. Fletcher before this incident. The eye-witness identification by strangers is inherently unreliable. *U.S. v. Wade*, 388 U.S. 218 (1967). The eye-witnesses did not identify Mr. Fletcher until over 11 years after the incident, and their in-court identification was over 14 years after the incident.

24.    Not only did Ms. Friend and Mr. Cooper know each other prior to the incident, Ms. Friend and Mr. Cooper were also friends with Mr. Rogers, a suspect in this case until Mr. Rogers identified Mr. Fletcher.

25.    Also, Mr. Cooper and Ms. Friend were only able to identify Mr. Fletcher after viewing a suggestive photo-array and a suggestive corporeal lineup. Detective Bogucki testified that the photographs used in the photo-array, other than the photograph of Mr. Fletcher, were chosen because they all had the same last name as Mr. Fletcher's alias, Dixon. (2/23/05 Transcript at 199). In other words, the police did not search for photographs that were similar in appearance to Mr. Fletcher. In the photo-array shown to the witnesses, which included seven individuals, Mr. Fletcher had braids. Five of the other photos in the photo-array were of men substantially younger than Mr. Fletcher (9 to 19 years younger). The remaining participant in the photo-array, other than Mr. Fletcher, had short hair. Thus, Mr. Fletcher was the only person in the photo-array who even remotely matched the general descriptions given by the witnesses, *i.e.* was in his 20s at the time of the incident and had long hair. The corporeal line-up was even more suggestive because Mr. Fletcher was the only person to appear in the corporeal line-up and the photo-array. In addition, Mr. Fletcher was the tallest person in the corporeal line-up (and the

10

Fletcher 010043

only one the match the height description from the suspects). Also, Mr. Fletcher was the only person in the corporeal line-up to have braids. Such an in-court identification after such suggestive procedures is meaningless. *U.S. v. Wade*, 388 U.S. 218 (1967).

26. Ms. Friend was not credible. Ms. Friend testified that she had not seen Mr. Fletcher prior to December 21, 1990. (2/23/05 Transcript at 158). However, both Detective Schalk and Detective Bogucki testified that Ms. Friend told them she had seen Mr. Fletcher in the neighborhood before the December 21, 1990 incident. (2/23/05 Transcript at 204; 2/24/05 Transcript 2 at 64). Ms Friend also lied about her jail time prior to her trial testimony. (2/23/05 Transcript at 160; Exhibit C).

27. The physical descriptions given by Ms. Friend and Mr. Cooper were inconsistent. For example, Ms. Friend testified that the suspects had black skull hats so she could not see their hair. (2/23/05 Transcript at 150, 152). Mr. Cooper testified that the suspects were wearing baseball caps and that one suspect had a pony tail while the other suspect had a long Jheri curl (hair style). (2/23/05 Transcript at 68-70). And a third witness, Mr. Wade, testified that the suspects were wearing "hoodies" which was inconsistent with both Mr. Cooper's and Ms. Friend's descriptions of the suspects at trial. (2/23/05 Transcript at 112). Finally, none of the witnesses gave any description of any salient physical characteristics of the suspects, such as Mr. Fletcher's large lips. *See People v. McCarthy,* 102 Ill.App.3d 519, 430, N.E.2d 135 (1st Dist. 1981) (reversing a conviction because the testimony of the witnesses were too inconsistent to be believed.) In fact, a lot of the testimony given by the State's witnesses either conflicted with their own testimony or with each others. *See, e.g.,* 2/23/05 Transcript at 57, 134 and 135; 2/23/05 Transcript at 58 and 136; 2/23/05 Transcript at 100 and 115; 2/23/05

**Fletcher 010044**

Transcript at 88 and 152; 2/23/05 Transcript at 199 and 204; 2/23/05 Transcript at 132; and 2/23/05 Transcript at 137 and 139.

28.     An identification over ten years old should not suffice as a matter of law. *See Cossel v. Miller*, 229 F.3d 649 (7th Cir. 2000) (finding a three year term before the suspect was identified in a suggestive pre-trial lineup and a six year term before an in-court identification were unreliable.); *see also Neil v. Biggers*, 409 U.S. 188 (1972) (finding that a seven month delay between the crime and the identification is a seriously negative factor in determining if there was a misidentification.) In this case, Mr. Cooper and Ms. Friend did not identify Mr. Fletcher until over 11 years later in a suggestive line-up and over 14 years later in court. Those identification are not sufficient to sustain the State's burden because of the amount of time that lapse between the incident and any of the identifications.

29.     Mr. Cooper testified, that from the photo-array shown to him, he could not positively identify Mr. Fletcher. (2/23/05 Transcript at 93). Furthermore, Mr. Cooper specifically testified that he could only be 75% sure of his identification of Mr. Fletcher. (2/23/05 Transcript at 98-99). In addition, Mr. Cooper stated that the suspects did not have any distinguishing characteristics or marks whereas Mr. Fletcher clearly had such, *e.g.* big lips. (2/23/05 Transcript at 101; 2/24/05 Transcript 2 at 10). And although Ms. Friend positively identified Mr. Fletcher, she was unable to describe any of his features, *e.g.* eyes, hair color, height, weight, age, *etc.* She was also unable to provide any details of the second suspect and was unable to identify any potential second suspect. (2/23/05 Transcript at 160). Given her inability to provide any description of either suspect in Court or when she was interviewed at the time of the incident, her in-court identification was unreliable. Reliability is the linchpin of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98 (1977). Based on the unreliable

Fletcher 010045

witnesses testimony and the length of time between the incident an the initial identification (over 11 years), Mr. Cooper's and Ms. Friend's identification was insufficient to meet the State's burden in this case.

30. In addition, the State has failed to show that Mr. Sorrell's death was the proximate cause of the suspects armed robbery as required by the felony-murder statute. *See People v. Lowry*, 178 Ill. 2d 462, 687 N.E.2d 973 (Ill. 1997). After the suspects robbed Mr. Cooper, Mr. Cooper retrieved a weapon and shot Mr. Wade's van before the suspects returned any fire. (2/23/05 Transcript at 99-100). In fact, if Mr. Cooper had not retrieved his gun and fired first, Mr. Sorrell would not have died that day. Mr. Cooper's activities were unreasonable, reckless, illegal, and an unforeseeable consequence of the armed robbery. Thus, Mr. Fletcher cannot be held responsible, as a matter of law, for Mr. Sorrell's death under a felony-murder theory.

13

Fletcher 010046

## V.     The Court Made Other Reversible Errors.

31.     In addition to the reasons stated above, the Court should grant Mr. Fletcher a new trial for the following reasons:

A.     The Court erred in denying Mr. Fletcher's motion to dismiss the indictment for failure by the State to commence this action within a reasonable time. The State waited almost 12 years to bring charges against Mr. Fletcher, and almost 15 years to try this case. The State's delay prejudiced Mr. Fletcher in several ways. First, Ms. Sanders testified that Mr. Fletcher met her at a hotel near Memphis on or about December 21, 1990, but she could not remember the name of the hotel. Mr. Fletcher was prejudiced because if the State had commenced this action within a reasonable time, Ms. Sanders could have remembered the name of the hotel, and Mr. Fletcher could have obtained hotel records to prove he was in Memphis at the time of this incident. (2/24/05 Transcript 2 at 56). In addition, even if Ms. Sanders remembered the name of the hotel after 14 years, no known hotel would have maintained any guest records from 1990. Second, Mr. Rogers, who is a central figure in the police investigation, and a one-time suspect until he identified Mr. Fletcher, was not present at trial. Mr. Rogers was available prior to 1995 and again in 2002, but was unavailable at Mr. Fletcher's trial in 2005. Mr. Rogers is the key witness from the police investigation because he originally led the police to Mr. Fletcher. And Mr. Rogers only identified Mr. Fletcher after the police went to question him about his alleged involvement in the 1990 incident. Furthermore, Mr. Rogers was friends with Mr. Cooper and Ms. Friend. In light of Mr. Rogers' role, Mr. Fletcher could not have had a fair trial without the opportunity to cross-examine Mr. Rogers.

B.     The Court erred by stating it would have allowed the State to question Officer James Martin about Mr. Fletcher's previous bad acts even though Office

14

Martin's testimony was to be directed only at Mr. Fletcher's appearance in December of 1990. (2/24/05 Transcript 2 at 93). Mr. Fletcher did not call Officer James Martin to testify because of this ruling. Officer Martin would have been a non-bias witness who could have confirmed that Mr. Fletcher did not match the witnesses' description of the suspects and that he would anticipate a witness' description of Mr. Fletcher to include a reference to Mr. Fletcher's large lips.

      C.     The State's closing argument was improper. For example, the State made arguments without a proper foundation. The State argued that Mr. Fletcher had a plan and motive to commit the charged acts. (2/25/05 Transcript at 39). However, no evidence was presented of any plan or motive by Mr. Fletcher to do anything relating to this incident. Furthermore, the State's rebuttal in close was wholly inappropriate. The State, in rebuttal, made several arguments not raised and unrelated to Mr. Fletcher's closing statements and not based on any admitted evidence. This was improper. *See People v. Abadia,* 328 Ill.App.3d 669, 683-84, 767 N.E.2d 341, 354 (1st Dist. 2001) (holding that the State's rebuttal argument constituted reversible error because it was not based on the evidence nor invited by comments from the defense.) In other words, the Court allowed the State to give its closing argument in its rebuttal whereas the State should have only been permitted to rebut Mr. Fletcher's closing arguments in its rebuttal and not raise new (and erroneous) arguments for the first time in its rebuttal. As another example, the State argued in its closing argument that the witnesses recognized the characteristics of the suspects such as lips, nose, eyes, face, and remembered those characteristics when they identified Mr. Fletcher. (2/25/05 Transcript at 79). This was improper because Mr. Cooper and Ms. Friend expressly testified that they did not remember any of these characteristics. (2/23/05 Transcript 68-70, 150-152).

15

**Fletcher 010048**

D.     The Court erred by prohibiting Mr. Fletcher from questioning Mr. Wade about statements and behavior of the police when the police questioned Mr. Wade about this incident in 2002. (2/23/05 Transcript at 125-126). During his investigation, Mr. Fletcher learned that the police made statements to Mr. Wade that implicated Mr. Fletcher in this incident prior to the police showing Mr. Wade a photo-array with potential suspects. These statements go to the state of mind of Mr. Wade as well as prior inconsistent statements made by the police officers and statements against interest.   Indeed the State argued that there was nothing inappropriate about the police's behavior with respect to the photo-array. (2/25/05 Transcript at 77). A fact Mr. Wade would have rebutted.

E.     The Court erred by prohibiting Mr. Fletcher from eliciting testimony from Mr. Cooper and Detective Bogucki that Mr. Rogers may have been involved in this incident. (2/23/05 Transcript at 92-93). Mr. Cooper believed Mr. Rogers was involved in the 1990 incident and made statements in 1995 to the police, including Detective Bogucki, to this effect. *See* Exhibit D.  The police only sought to question Mr. Rogers in 2002 because they believed that he might have been involved in the 1990 incident. In February of 2002, the police arrested Mr. Rogers on suspicion of arson. While in police custody for this arrest in 2002, Mr. Rogers identified Mr. Fletcher for this first time.  After making these statements, Mr. Rogers was no longer a suspect, released from police custody, and was not charged with arson.  If Mr. Cooper never made those statements, the identity of Mr. Fletcher would have never been known. The jury did not know how the police came to suspect Mr. Fletcher.  Thus, there was no reason to doubt the credibility of the police investigation.  If the jury heard that Mr. Fletcher was identified by another potential suspect who cannot be located and is currently wanted by the authorities for other matters, it may have raised doubts as to the credibility of the police

16

Fletcher 010049

investigation. The jury was entitled to hear about the circumstances in which Mr. Fletcher's was identified and that the man that lead the police to Mr. Fletcher (*i.e.* Mr. Rogers) had only led the police to Mr. Fletcher after being accused of participating in this incident.

F.      The Court erred by improperly limiting Mr. Fletcher's closing arguments by asking Mr. Fletcher to rephrase an important and proper argument related to the burden of proof and limiting argument related to the jury's role in that regard. (2/25/05 Transcript at 53). The Court also erred by asking Mr. Fletcher's counsel to "move on" during a crucial point in his closing remarks pertaining to the role of juries implying that there was something improper with Mr. Fletcher's statements. (2/25/05 Transcript at 51).

G.      The State violated Mr. Fletcher's right to due process by relying on testimony from Mr. Cooper that is knew to be false (or lack of testimony thereof) and allowing such testimony to go uncontradicted. *See Olinger* and *Naupe*.    For example, the State elicited testimony from Mr. Cooper about shooting only in a northwesternly direction, when the State knew Mr. Cooper had been arrested for shooting Mr. Wade's van which was directly south of where Mr. Cooper was located (and also near the victim). (2/23/05 Transcript at 79-80). The State also argued this point in its closing as well. (2/25/05 Transcript at 82).   As another example, the State argued in its rebuttal that Mr. Cooper lied to the police because he wanted to save his job. (2/25/05 Transcript at 85).   There is no evidence in the record to support that statement because Mr. Cooper did not testify that he lied to the police to save his job. Furthermore, Mr. Cooper explained his lie to the police by stating he was on probation and worried about losing his job, but now wanted to tell them the truth. *See* Exhibit A.

17

H.      In addition to all of the issues identified above, the totality of these errors, both in number and in substance, taken together requires that Mr. Fletcher be granted a new trial.

**Fletcher 010051**

WHEREFORE, Defendant James Fletcher respectfully requests that his Court grant him a new trial on the charge of first-degree murder.

Dated: May 6, 2005

Respectfully Submitted,
James Fletcher

By One of his Attorneys
JENNER & BLOCK LLP (05003)
  Reginald J. Hill
  Traci M. Braun
  Joseph A. Saltiel
One IBM Plaza
Chicago, Il 60611
Tel: (312) 222-9350
Fax: (312) 587-0484

19

Fletcher 010052

## CERTIFICATE OF SERVICE

I, Joseph A. Saltiel, an attorney, certify that I will cause a copy of the foregoing Defendant's Motion for a New Trial to be served upon counsel listed below by personally delivering a copy on this 6th day of May, 2005 to:

The Assistant State's Attorney
Judge Kirby's Courtroom
2650 South California Avenue
Chicago, Illinois 60608

I am readily familiar with this firm's practice for collection and processing of documents for delivery in the manner indicated above, to wit, these documents were deposited for collection in the above-described manner.

_Joseph A. Saltiel_
Joseph A. Saltiel

CHICAGO_1221370_1

20

Fletcher 010053