# EXHIBIT 60

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
                                       )
            Plaintiff      )
                                       )
     vs.                   )   No. 02-CR-16669
                                       )
JAMES FLETCHER            )
                                       )
            Defendant     )

## AMENDED MOTION FOR NEW TRIAL

Now comes defendant, James Fletcher, by Attorney Frederick F. Cohn, and moves for a new trial.

In support hereof it is asserted:

1. Defendant was denied his Sixth Amendment right of confrontation when the State, through police testimony, presented evidence that the police, after speaking with people, were looking for a person named Fletcher. Defendant's last name is Fletcher. This has been raised in the Motion for New Trial previously filed in this case in Points 5, 6, 7 and 8.

The Court ruled that this testimony was admissible because it was not hearsay; was introduced merely to show the police investigation. Such legal fiction, while accepted by some courts, must be error here, where the jury was never told as to the limited use of such evidence. (Re: opening statement, see Vol. III, Tr. 27-29.) Any discussion was had outside the presence of the jury.

In regard to testimony "one of the witnesses had provided the name of Fletcher." (Tr. 180), although the prosecutor in

IND DEF 000331

response to a defense objection (Vol. III, Tr. 180) stated, "Again, I'm just offering for his course of investigation what he did next." (Vol. III, Tr. 180), this statement was made to the court, not to the jury, and the jury was never given a limiting instruction.

Over objection, the prosecutor was permitted to argue that hearsay to the jury. (Vol. V, Tr. 46)

Again, there was never any limiting instruction.

In People v. Michel, 27 Ill.App.3d 117, 327 N.E.2d 158, the court stated:

> "The function of instructions to a jury is to convey to the mind of the jury the correct principles of law applicable to the evidence submitted to it, so that the jury may, by application of the proper legal principles to the facts, arrive at a correct conclusion according to the law and the evidence. People v. Gambony (1949), 402 Ill. 74, 83 N.E.2d 321. A defendant has a right to a full statement of the law from the court, and failure to give such a tendered full statement, when the jury consequently falls into error, is sufficient reason to justify a reversal. People v. Bolden (1968), 103 Ill.App.2d 377, 243 N.E.2d 687; People v. Kucala (1972), 7 Ill.App.3d 1029, 288 N.E.2d 622."

When evidence is admitted for a limited purpose, i.e., evidence of gangs, I.P.I. Instruction No. 3.14, evidence of other crimes, People v. Hooker, 253 Ill.App.3d 1075, 625 N.E.2d 1081, 192 Ill.Dec. 926, and, here, hearsay evidence, the jury must be told of the limited purpose. Although it is presumed a jury can follow such instructions, when no instruction is given, then it must be presumed the jury considered such evidence, not only for the limited purpose,

2

IND DEF 000332

but for any improper purpose considered by such evidence.

While in the final jury instructions, the jury was advised "any evidence that was received for a limited purpose should not be considered by you for any other purpose." (Vol. V, Tr. 88) the jury was never advised that the "Fletcher" argument and testimony was admitted for a limited purpose.

Here, admission of this evidence without there being a limited instruction, violated defendant's constitutional right of confrontation. Crawford v. Washington, 541 U.S. 36 (2004).

As seen by the jury, they were permitted to consider this accusation by some uncalled witness as direct evidence of defendant's guilt.

The jury would believe that this accusation came from a witness other than in-court witnesses. Both in-court witnesses denied they knew defendant or his name from a time before the incident. (Vol. III, Tr. 89, 154) The jury was also informed there was at least a third witness, Mr. Rodgers.

Hence, the jury would believe that a person who did not testify accused defendant and as distinct from the in-court witnesses. The jury could believe this witness knew defendant by name, and hence, knew him from before. Because there was no limiting instruction, they could consider this evidence as substantive evidence of defendant's guilt. This violates defendant's Sixth Amendment rights. Crawford v. Washington, 541 U.S. 36 (2004).

3

IND DEF 000333

This was very prejudicial. See Point 2, pp. 6-9 and Point 5, pp. 11-13.

2. Defendant was denied his constitutional right of effective assistance of counsel when counsel was ineffective by not requesting an instruction that limited the jury's consideration of the evidence concerning looking for a person named Fletcher.

Juries are not dumb. The opening argument, the testimony and the final argument would cause the jury to believe a witness who did not testify, stated that a person named Fletcher committed the crime.

Although trial counsel objected to the admission of this evidence, counsel never requested at the time the evidence was heard or at the end of all the evidence, that the jury be advised as to the limited nature of this evidence.

In People v. Monroe, 66 Ill.2d 317, 362 N.E.2d 295, 5 Ill.Dec. 824, the court stated:

> "It is the long-established rule that evidence admissible for one purpose cannot be excluded for the reason that it *323 would not be admitted for another purpose, and that the party against whom it is admitted may tender instructions appropriately limiting the purpose for which it may be considered."

The failure to have the jury provided with a limited instruction is ineffective assistance of counsel.

The failure to seek a limiting instruction here is similar to failure to seek a limiting instruction when gang evidence or drug evidence or other crime evidence is admitted.

4

IND DEF 000334

In <u>People v. Hooker</u>, 253 Ill.App.3d 1075, 625 N.E.2d 1081, 192 Ill.Dec. 926, the court stated:

> "Other crimes evidence may be introduced for certain limited purposes but not to demonstrate that a defendant has a propensity to commit the crime charged. (*People v. McDonald* (1975), 62 Ill.2d 448, 343 N.E.2d 489.) The failure of an attorney to seek a limiting instruction when he is entitled to one is not a matter of discretion or trial strategy. (*Markiewicz*, 246 Ill.App.3d at 48, 186 Ill.Dec. 65, 615 N.E.2d 869.) Thus such a failure demonstrates that an attorney's performance was deficient, but it does not prove the second *Strickland* prong, that the attorney's poor performance prejudiced the defendant to such an extent that he was denied a fair trial."

See also <u>People v. Markiewicz</u>, 246 Ill.App.3d 31, 615 N.E.2d 869, 186 Ill.Dec. 65, where the court stated:

> "Although some of this evidence was admissible, defense counsel failed to object when the State withdrew a pattern jury instruction limiting the use of such evidence. Failing to object has been held to constitute a matter of sound trial strategy. (*People v. Steidl* (1991), 142 Ill.2d 204, 240-41, 154 Ill.Dec. 616, 568 N.E.2d 837; *People v. Bosek* (1991), 210 Ill.App.3d 573, 600-01, 155 Ill.Dec. 370, 569 N.E.2d 551.) However, defendant's trial attorneys should have sought an instruction limiting the jury's use of evidence of other crimes. It is not a matter of discretion or trial strategy for a defense attorney to fail to seek an instruction when extensive evidence of another crime is admitted, even for a limited purpose."

<u>Cf</u>. <u>People v. Grabbe</u>, 148 Ill.App.3d 678, 499 N.E.2d 499, 101 Ill.Dec. 911 (4 Dist. 1986), where an erroneous purported limiting instruction <u>re</u> prior crimes was given, that failed to properly limit the highly prejudicial evidence; a new trial was required. Surely the absence of any limiting instruction is at least as prejudicial in context here, as the giving of a

5

IND DEF 000335

flawed purported limiting instruction, as in <u>Grabbe</u>.

In <u>People v. Smith</u>, 141 Ill.2d 40, 565 N.E.2d 900, 152 Ill.Dec. 218 (1990), the court held that admission of gang evidence was so prejudicial that it amounted to plain error. Surely, admission of prejudicial evidence--even if technically admissible [here] for a limited purpose [as it was not, in <u>Smith</u>]--is prejudicial if not expressly limited by a proper limiting instruction to the jury.

Here, failure to provide a limiting instruction was very prejudicial.

The other evidence against defendant was very weak. It was the identification of defendant by strangers about 11 years after the occurrence. The identifying witnesses had substantial problems that affected the reliability of the identification and/or credibility of the witnesses.

Both witnesses testified they had never seen the assailant before the incident, Cooper (Vol. III, Tr. 89) and Miss Friend (Vol. III, Tr. 154)

The Illinois Supreme Court has recognized that the testimony of an eyewitness accusing a person is, at most, the opinion of the eyewitness and that such witness may be honestly mistaken. In <u>People v. Peck</u>, 358 Ill. 642, 648, 193 N.E. 609, 612 (1934), the Court stated:

> "[T]he identification of one person by another who has never seen him before is an opinion or conclusion of the identifying witness."

6

IND DEF 000336

In <u>United States v. Wade</u>, 388 U.S. 218 (1967), the United States Supreme Court stated:

> "The vagaries of eye witness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent--not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927)." 388 U.S. at 225.

See Exhibit 1, containing material from an article in <u>Scientific American</u>, December 1974, Vol. 231, No. 6, "Eyewitness Testimony," containing photographs of two innocent persons originally mis-identified as a third person who subsequently confessed.

The Supreme Court of Wisconsin, <u>State v. Dubose</u>, 2003AP1690-CR, has recently studied the entire problem as to the accuracy of identification. (Attached here as Appendix A is part of that Opinion, pp. 17-19.) A copy of the full Opinion is available to the court if it desires.

The description by Mr. Cooper is very general, non-exact. The best he could describe the person identified as the defendant is between 5'6" and 6". (Vol. III, Tr. 88) (Exhibit 2)

Discrepancy of this amount has caused reviewing courts to reverse. See <u>People v. Barney</u>, 60 Ill.App.2d 79, 208 N.E.2d 378; <u>People v. Marshal</u>, 74 Ill.App.2d 483, 221 N.E.2d 133.

7

**IND DEF 000337**

Mr. Cooper's surety was not good.

While Mr. Cooper testified he was positive, on seeing the photo and he was one hundred percent sure, but he wanted to see the person. (Tr III, Tr. 93) He is contradicted by the detective who showed the photo. The detective testified:

> "A: He picked out one photo and said it looks like one of the offenders that shot at him and robbed him, but [... he said ...] couldn't be positive." (Vol. III, Tr. 187)

Mr. Cooper himself testified he told an investigator he is only seventy-five percent sure.

> "Q: You do remember discussing this case with the investigator?
>
> A: Right.
>
> Q: Do you recall telling the investigator at that time that you were not sure and could not be 100 percent sure of who the suspects were in this case?
>
> A: I told him after 14 years I'm like about 75 percent sure of who I thought." (Vol. III, Tr. 98-99)

Hence, Cooper's testimony is not so strong that the introduction of hearsay accusation and failure of there to be a limiting instruction and failure of counsel to request a limiting instruction would not be prejudicial error.

The testimony of Miss Friend has serious credibility issues.

She has two felony convictions for possession and/or possession of drugs with intent to deliver. (Vol. III, Tr. 131)

She testified she was on the truck when Mr. Cooper gave

8

her money. (Vol. III, Tr. 135)

> "A:  We was standing there talking. He gave me the money. I went <u>to get off the truck</u>, and two guys approached the truck." (Vol. III, Tr. 135) (Emphasis added.)

Mr. Cooper contradicted this. (Vol. III, Tr. 57)

> "Q:  When you saw her, what happened?
>
> A:  She told me she was at a laundromat. She asked me did I have any change. <u>I told her wait 'til I put the trays in the truck</u>. When I opened the door to the truck, a guy came up behind me and stuck a pistol in my back and told me, 'You know what this is?' And I told him yes." (Vol. III, Tr. 57) (Emphasis added.)

At trial, she testified she had never seen the person who committed the offense before the day of the offense (Vol. III, Tr. 154) and denied telling the police that she knew the offender from before. (Vol. III, Tr. 158) This was disputed by Detective Schauk:

> "Q:  And on March 7th of 2002 when you interviewed Sheenee Friend, did she indicate to you that she had seen one of the offenders who killed Willie Sorrell several times before in the neighborhood?
>
> A:  Yes, she did.
>
> Q:  And did she also indicate to you that the offender who she had previously seen in the neighborhood was, in fact, Jimmie Fletcher?
>
> A:  Yes." (Vol. IV, Tr. 64)

Hence, her in-court testimony is contradicted by her prior statements. This raises reasonable doubt as to the reliability of her testimony. See <u>People v. Parker</u>, 234 Ill.App.3d 273, 600 N.E. 529, 175 Ill.Dec. 598 (5 Dist. 1992); State's PLA denied, No. 74523, 148 Ill.2d 650, 610 N.E.2d

9

1272, 183 Ill.Dec. 28; <u>People v. Wise</u>, 205 Ill.App.3d 1097,
563 N.E.2d 1057, 150 Ill.Dec. 930 (1 Dist. 1990); <u>People v.
Reyes</u>, 265 Ill.App.3d 985, 638 N.E.2d 650, 202 Ill.Dec. 782 (1
Dist. 1993); <u>People v. Villalobos</u>, 53 Ill.App.3d 234, 368
N.E.2d 556, 560, 11 Ill.Dec. 5, 9 (1 Dist. 1977).

 3. Due process was denied when the State obtained
identification of defendant by Mr. Cooper and Miss Friend from
an inherently suggestive line-up.

 Identification of one stranger by another has serious
problems of reliability. See <u>Wade</u>, <u>supra</u>.

 Here, where the witness did not know the assailant
identified as defendant and had limited opportunity to view
the assailant and provided only the most general description
of the assailant identified as defendant, the probability for
error is greater than in other situations.

 Here, the line-up was suggestive because he was the sole
person whose photo the witness had previously seen. (Vol. III,
Tr. 203) Defendant's height, weight and general appearance was
very dissimilar to the other persons in the line-up. (Exhibit
3) All were much shorter and much thinner than defendant.

 This caused defendant to stand out like a sore thumb.

 The situation was no different than if the police said to
a witness identify defendant for he is the person we believe
committed the crime.

 A comparison to the content of the persons in the line-up

10

IND DEF 000340

and the statement of the court in United States v. Wade, 388 U.S. 218, 18 L.Ed.2d 1149, conclusively demonstrates that the line-up was suggestive.

In Wade, the court stated:

"What facts have been disclosed in specific cases about the conduct of pretrial confrontations for identification illustrate both the potential for substantial prejudice to the accused at that stage and the need for its revelation at trial. A commentator provides some striking examples:

'In a Canadian case *** the defendant had been picked out of a lineup of six men, of which he was the only Oriental. On other cases, a black-haired suspect was placed among a group of light-haired persons, tall suspects have been made to stand with short nonsuspects, and, in a case where the perpetrator of the crime was known to be a youth, a suspect under twenty was placed in a lineup with five other persons, all of whom were forty or over.' [FN17]

FN17. Wall, Eye-Witness Identification in Criminal Cases 53. For other such examples see Houts, From Evidence to Proof 25; Frankfurter, The Case of Sacco and Vanzetti 12--14, 30--32; 3 Wigmore, Evidence s 786a, at 164, n. 2 (3d ed. 1940); Paul, Identification of Accused Persons, 12 Austl.L.J. 42, 44 (1938); Rolph, Personal Identity 34--43.

Similarly state reports, in the course of describing prior identifications admitted as evidence of guilt, reveal *233 numerous instances of suggestive procedures, for example, that all in the lineup but the suspect were known to the identifying witness, [FN18 omitted] that the other participants in a lineup were grossly dissimilar in appearance to the suspect, [FN19 omitted] that only the suspect was required to wear distinctive clothing which the culprit allegedly wore."

The same dissimilarities pointing the finger at defendant, as in Wade, exist here.

11

IND DEF 000341

This violated defendant's constitutional rights.

4.   Defendant was denied effective assistance of counsel where counsel did not proceed on a motion to suppress the identification where there was a valid motion to suppress available. The failure to move to suppress when a valid motion exists is ineffective assistance of counsel. People v. Stewart, 217 Ill.App.3d 373, 577 N.E.2d 175.

5.   Counsel rendered ineffective assistance when he failed to present prior statements of the State's accusatory witnesses, Mr. Cooper and Miss Friend, that contradicted their in-court testimony concerning their prior relationship and how long Miss Friend was in the truck before the offense occurred.

Both Mr. Cooper and Miss Friend testified as if they were casual friends and she was at the truck for a minute or two before something happened. (Vol. III, Tr. 57, 135)

Mr. Cooper testified he knew her mother and father. He testified:

"Q:  How did you know her?

A:  I knew her mother and father.

Q:  Is that Sheenee Friend?

A:  Right.

Q:  When you saw her, what happened?

A:  She told me she was at a laundromat. She asked me did I have any change. I told her wait 'til I put the trays in the truck. When I opened the door to the truck, a guy came up behind me and stuck a pistol in my back and told me, 'You know what this is?' And I told him yes." (Vol. III, Tr. 57)

12

IND DEF 000342

This is very different than the version he told the police. In that police report it reads he told the police:

"had double parked his holsum bread truck at this location. While standing in his step van he was approached by a friend of his FRIEND Sheene who stepped in to the van to talk. At this time he was approached by the offenders who displayed handguns and told him 'GIVE ME YOUR MONEY, ITS NOT YOURS IT BELONGS TO THE COMPANY, YOU DON'T WANT TO GET KILLED FOR THE COMPANY MONEY.'" (Exhibit 4, p. 5)

Sheenee Friend testified Cooper was a friend of her dad (Vol. III, Tr. 133),

"Q: On that date at that time, did you see anyone at that location that you knew?

A: Yes. Edward Cooper.

Q: How do you know Mr. Cooper?

A: That's my dad's friend." (Vol. III, Tr. 133),

and she was in the truck for a short period of time. (Vol. III, Tr. 135)

In her handwritten statement she stated she was in the truck for "about 20 minutes." (Exhibit 5; see p. 3.)

In her grand jury statement (Exhibit 6) she stated she knew Mr. Cooper since she was 16 and that she knew him not because of Cooper having a relationship with her father, but because she met him when he delivered bread to Jewel Grocery. (Grand Jury Testimony, pp. 3-4)

In the grand jury she also testified she was in the truck for 20 to 30 minutes. (Grand Jury Testimony, p. 6)

According to Mr. Cooper "She told me she was at a

13

laundromat. She asked me did I have any change." (Vol. III, Tr. 57)

She testified she talked to him "to get some money from him for my daughter." (Vol. III, Tr. 134), and he gave her money to buy shoes.

There is a big difference between asking for change and getting money to buy a child shoes.

She could have been impeached by a police report prepared by Officer Michael Flemming. (Exhibit 4, p. 5) There it states that when she was talking to Cooper "she needed 3 dollars to purchase bleach."

She would also be impeached by her statement to Officer Jerome Bogucki, Star No. 20668, that she dated Cooper. See Exhibit 7.

If counsel was competent, he could have demonstrated that both Cooper and Miss Friend were misleading the jury as to how they knew each other and how long she was in the truck and why he gave her money. This impeachment would have discredited these witnesses.

The failure of counsel to develop this impeachment is ineffective assistance. <u>People v. Garza</u>, 180 Ill.App.3d 263, 535 N.E.2d 968, 129 Ill.Dec. 203.

6. Defendant has a right to file the Amended Motion for New Trial. These issues are not waived. The issues raised in the Amended Motion for New Trial relate to ineffective

IND DEF 000344

assistance of trial counsel.

When a case is on appeal and appellate counsel was trial counsel and he does not raise that trial counsel was ineffective, the issue is not waived. <u>People v. Keener</u>, 275 Ill.App.3d 1, 655 N.E.2d 294, 211 Ill. 391; <u>People v. Parker</u>, 288 Ill.App.3d 417, 680 N.E.2d 505, 223 Ill.Dec. 772. The same rule is applicable here.

7.   Defendant desires Attorney Frederick F. Cohn to file his appearance and desires Attorney Frederick F. Cohn to file this Amended Motion for New Trial.

WHEREFORE, it is prayed as above.

Respectfully submitted,

FREDERICK F. COHN
Attorney for Defendant
35 E. Wacker Drive
Suite 595
Chicago, Illinois  60601
(312) 641-0692
Atty. No. 02184

15

IND DEF 000345