# EXHIBIT 61

```
                                        F I L E D
                                        CR-526-9
                                        OCT 25 2005
                                        DOROTHY BROWN
                                   CLERK OF THE CIRCUIT COURT
                                        OF COOK COUNTY, IL
```

1    STATE OF ILLINOIS  )
                        )  SS:
2    COUNTY OF C O O K  )

3                    IN THE CIRCUIT COURT OF COOK COUNTY
                     COUNTY DEPARTMENT-CRIMINAL DIVISION
4
     THE PEOPLE OF THE    )
5    STATE OF ILLINOIS,   )
                          )     Criminal
6              Plaintiff, )
                          )     No. 02-16669
7         vs.             )
                          )     Charge:  Murder, etc.
8    JAMES FLETCHER,      )
                          )
9              Defendant. )

10             REPORT OF PROCEEDINGS had of the hearing

11   in the above entitled cause, before the Honorable

12   JOHN P. KIRBY, Judge of said court, on the 27th day

13   of September, 2005.

14       APPEARANCES:

15             HONORABLE RICHARD A. DEVINE,
                    State's Attorney of Cook County, by:
16             MS. AIDAN O'CONNOR,
                    Assistant State's Attorney,
17                  for the People of the State of Illinois;

18             MR. FREDERICK COHN,
               MR. JOSEPH SALTIEL,
19                  for the defendant.

20

21

22

23   J. D. Williams, CSR #084-001757
     Official Court Reporter
     2650 S. California Ave.-4C02
24   Chicago, Illinois  60608
```

Fletcher 001934

1                                I N D E X

2

3      Date of Hearing:   9-7-05

4      Page Numbers:   1 through 60

5

6                            PROCEEDINGS

7

8      Motion for New Trial.

9

10     Sentencing Hearing.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Fletcher 001935

```
 1         THE CLERK:   James Fletcher.

 2         THE COURT:   Step up, counsels.

 3              I just received another, an additional

 4    response.   I'm going to read it at lunch and look at

 5    the cases.

 6         MR. COHN:   Your Honor, the only reason today that

 7    I didn't get the State's until yesterday.

 8         THE COURT:   All right, 1:30.

 9              I'll take time to read it and look at the

10    cases.

11         MS. O'CONNOR:   Can I ask you one question and

12    with counsel present.

13         THE COURT:   Sure.

14         MS. O'CONNOR:   If we get pass the motion for new

15    trial and we're going to proceed to sentencing, Judge,

16    I have a former prosecutor Neil Cohen on a phone call

17    to come in and testify about prosecuting defendant's

18    old murder case.   Counsel indicated that he would

19    stipulate to his testimony but I just wanted to run

20    that by you to see if you would accept such a

21    stipulation.

22         THE COURT:   Both sides agree to the stipulation.

23         MR. COHN:   Yes, your Honor, the State has agreed

24    to stipulate to somethings.   And I said that I was
```

Fletcher 001936

1    going to object if we get that far to the imposition

2    of natural life but not on the basis that he is not

3    the person who was convicted.

4         THE COURT:    Okay, all right.

5         MS. O'CONNOR:    Thank you.

6         THE COURT:    Then we'll start back at 1:30.

7         MR. COHN:    Your Honor, is there any possibility I

8    want to ask you I have nobody in my office and I have

9    some people coming in to see me at 2:00 o'clock.

10        THE COURT:    We can try at 1:00 o'clock.

11        MR. COHN:    1:00 o'clock would be perfect.

12        THE COURT:    I have two other cases it will take

13   another fifteen minutes to finish up our call.

14             Be back here at 1:00 I'll see what we can do.

15                  (The above-entitled cause was

16                  passed and later recalled:)

17        THE COURT:    Okay, People versus James Fletcher.

18        MR. COHN:    Good morning, your Honor.

19        THE COURT:    You can have a seat.

20        MR. COHN:    Your Honor, we are here on my amended

21   motion for the trial --

22        THE COURT:    Okay, hold on, counsel.

23             You can have a seat right in there.    There

24   are two blacks chairs there.

4                            **Fletcher 001937**

1            Let's get everybody's name for the record.

2       MR. COHN:   Attorney Frederick F. Cohn on behalf

3   of the defendant James Fetcher.

4       MR. SALTIEL:   Joseph Saltiel on behalf of the

5   defendant James Fetcher.

6       MS. O'CONNOR:   Aidan O'Connor for the People.

7       THE COURT:   Okay.   All right.

8       MR. COHN:   Your Honor, there was pending before

9   you that had previously been filed a motion for new

10   trial by prior counsel.   I filed an amended motion

11   for new trial which your Honor permitted me to file

12   which you permitted me to become co-counsel.

13          There is my amended motion for new trial,

14   there is the State's answer to my amended motion, and

15   my response to the State's amended answer.   Sorry for

16   getting you my document today but I only got the

17   State's yesterday's afternoon.

18       THE COURT:   That's great, I read the cases.

19       MR. COHN:   Your Honor, the State has indicated to

20   me for the purposes of this hearing they would

21   stipulate that whatever is in the police reports would

22   be testified by the police officers if they were here.

23   I had subpoenaed one of the officers to corroborate

24   that Ms. Friend had told him that she was dating

Fletcher 001938

1    Mr. Cooper and I was in the process of trying to

2    locate and bring in Officer Fleming though who he is

3    retired, officers are on, they get pensions like we

4    tried to get him here, your Honor, but the State had

5    indicated for the purposes of this hearing they will

6    stipulate what is in the police reports attached is

7    what they would testify to.

8         Is that correct, Ms. O'Connor?

9    MS. O'CONNOR:    That is correct.    However the one

10   item that you referred to, Judge, that he referred to

11   about a Ms. Friend said that she was dating him was

12   not a statement made to Detective Fleming it was a

13   statement made to Detective Bogucki.

14   MR. COHN:    Right, that one was.

15        And the detective who is in fact still with

16   the police department, your Honor.

17   MS. O'CONNOR:    Who was here today by the way and

18   is still here.

19   MR. COHN:    But I am not going to put him on

20   because we have the stipulation that's what the

21   testimony would be, your Honor.

22        Your Honor, I'm only going to argue two of

23   the issues of what I assert were ineffective

24   assistance of counsel.    But I wish to point out first

Fletcher 001939

1   though and I am not going to repeat word-for-word but

2   this is a case where the prejudice caused by the

3   ineffectiveness is very strong because the evidence

4   against the defendant is very weak. I am not talking

5   about whether it is sufficient to convict but it is

6   clearly not a strong case.

7           There was no statement by the defendant, no

8   corroborating physical evidence such as fingerprints,

9   no identification by people who knew the defendant

10  from a prior time. And as I have set out in some of

11  the cases in my amended motion that considered one of

12  the least reliable type of evidence against an

13  individual is identifications of people who do not

14  know the person from a prior time and only saw them

15  under the pressure of the occasion, your Honor.   That

16  is in this case.

17          Not only that we have an additional problem

18  in this case though we don't have sometimes somebody

19  commits a crime and is stopped within moments or maybe

20  the day and identified within a short period of time

21  afterwards which lends a lot of credibility to the

22  identification and the identification is very specific

23  and the, you know, the description of the assailant is

24  very specific and then the defendant matches that

7                           **Fletcher 001940**

1    description both either physical characteristics or

2    clothing they worn identical.

3         In this case we have Mr. Cooper giving a very

4    general height description, he says the person is

5    somewhere between 5'8 and 6 feet.    That type of

6    discrepancy in cases have been found sufficient by

7    itself to raise a reasonable doubt where persons are

8    described as 5'8 and then the defendant is 6 feet tall

9    or the other way where they say a person is 6 feet and

10   the person arrested is 5'8.    And we have a very

11   general description by Ms. Friend, your Honor.

12        We also have without even the impeachment

13   which I will be talking about later the impeachment

14   that occurred in this case, we have two witnesses who

15   have other credibility problems.    Mr. Cooper admitted

16   that he lied to the police when he was first

17   questioned about whether he had a gun and Ms. Friend

18   was a person who had prior convictions, those

19   convictions were admitted and could be used under the

20   law for impeachment.

21        So, we do not have what would be clearly

22   considered in some courts an overwhelming evidentiary

23   case against the defendant.    We have identification

24   by strangers and then we have certain errors that

Fletcher 001941

1     occurred here by prior counsel. And by saying this I

2     am not saying that prior counsel is bad, you know,

3     drunk, it's just that lawyers, and I think the lawyers

4     here didn't have the type of experience necessary in

5     criminal defense --

6     MS. O'CONNOR: Objection, there is no evidence of

7     that, Judge.

8     THE COURT: Sustained.

9     MR. COHN: They just made mistakes and those

10     types of mistakes when they are prejudicial to the

11     defendant shouldn't cause a person to be convicted, it

12     is that simple, your Honor.

13     One of the first mistakes which was made is

14     your Honor admitted and I am not saying that the law

15     is against you on the issue of admitting evidence that

16     some stranger, some person who is not in court to

17     testify has accused the defendant. And the courts

18     say which are I have to admit the majority of courts,

19     I think the majority of courts are wrong and I think

20     the law is changing on that issue but I think

21     your Honor was bond by that decision to admit such

22     evidence that some other person said that the person

23     who committed the crime was Fletcher, the same name as

24     the defendant's name here.

Fletcher 001942

1     Why that evidence without the instruction

2  given is so highly prejudicial in this case is because

3  in this case the jury based on the testimony of the

4  two witnesses Cooper and Friend said I don't -- I

5  didn't know the person before.   Implicit in some

6  person out of court saying oh it was Fletcher who did

7  it you only know it was Fletcher who did it because if

8  you knew the person from a prior time.   So the

9  out-of-court accuser would carry a lot more weight in

10  the eyes of the jury because it is somebody who as

11  they can figure it out would say it's somebody who

12  knew the assailant from a prior time.   So, that's

13  very prejudicial.

14     And I know that you and the prosecutor will

15  take the position that such evidence is not admitted,

16  okay, for proof that some person out of court saw the

17  assailant here Fletcher do it.   It is only one

18  problem which you and the prosecutor and other lawyers

19  may know there is no reason to believe the jury would

20  know that.   The jury was never told that, the jury

21  was never instructed that when the evidence first came

22  in, the jury was never instructed that at the end of

23  the case.   And I say -- evidence, and I set out in

24  from People versus Michael I believe and I am not

1    going to read the quotation on Page 2 of my amended --

2         THE COURT:   Counsel, your cite was wrong on that

3    case it is not People versus Michael it is People

4    versus Michael Mitchell, a/k/a Michael P. Williams.

5         MR. COHN:   Your Honor, I'm sorry, I apologize.

6              But the holding of the case I belief is

7    correct.

8         THE COURT:   Yes, that case dealt with prior

9    inconsistent statements and 3.11.

10             Go ahead.

11        MR. COHN:   Right.  But it is very clear that we

12   presume jurors do not know the law and we -- that

13   presumption would mean that jurors would have every

14   right in this case to believe that the statements both

15   in opening statement in testimony and in final

16   argument, now I have attached the portions where it

17   occurred in my second document responding documents,

18   your Honor does not have to go digging through but I

19   do have the whole set of transcripts if your Honor

20   wants to see it, I have the transcript in this case,

21   but jurors would have every right to believe that they

22   could consider an accusation against the defendant

23   that some person out of court who knew the defendant

24   said the defendant is the person who did it, at least

11                          **Fletcher 001944**

1     a person with the defendant's name.

2            So, want is the best and securest way to make

3     sure that jurors don't do that and that is just like

4     evidence of gangs, evidence of other crimes, the

5     courts with all these issues said there should be a

6     limiting instruction telling the jury how to consider

7     such evidence.

8            And the cases with regards to other crimes

9     and gangs have said that we can't say to give this

10    instruction is strategic.   As the Court said in

11    Hooker and Markiewicz on Page 5 of my memorandum:   The

12    failure of an attorney to seek limiting instruction

13    when he is entitled to one is not a matter of

14    discretion or trial strategy.   Markiewicz says the

15    same thing, your Honor, and that's what the law holds

16    and the lawyer here was ineffective for not requesting

17    such an instruction.   There is no rational basis to

18    say that this was trial strategy.

19            The other main issue in this case,

20    your Honor, how lawyers failed is that there was

21    substantial impeachment evidence that the lawyers did

22    not use.   I mean we have these two people Cooper and

23    Ms. Friend and supposedly they know each other through

24    the father of Ms. Friend but then there is evidence

12                    **Fletcher 001945**

1    that well I worked in a store and I knew him from the

2    store and the contradictions and then we dated she

3    says Ms. Friend.   That evidence was in the police

4    report.   The State stipulated that she specifically

5    told that to the officer.

6           That's clearly something that she should have

7    been questioned about because it raises a total

8    different concept of what their relationship was.

9    Different than what either one of them told the jury.

10    It is the type of thing which would cause the jury to

11    maybe what's going on here, something is wrong, why do

12    these people get up and attempt to mislead me as to

13    what their relationships are.

14           What other goes to that is the length of time

15    that they were together.   The testimony of Cooper and

16    Ms. Friend sort of indicates that it was just a minute

17    or two.   But no we have her giving a statement both

18    in her police report -- excuse me, in her written

19    statement, on Page 3 of her written statement.   This

20    is the statement that she signed.   Sheehan states

21    that she got into the bread truck through the

22    passenger's side door.   Sheehan states that she and

23    Edwards were talking for about twenty minutes.   That

24    was never brought out before the jury.   It's very

13

1    different, it impeaches her.   There is no strategic

2    reason to indicate that that shouldn't be brought out.

3        The State says well, third, some of the

4    alleged prior statements could have been more damaging

5    to the defendant than the trial testimony and

6    therefore trial counsel's none use of them was wisely

7    trial strategy.   How.   How was it damaging.   How

8    was it damning.   Just no way, no rational way.

9        And the failure to impeachment with prior

10   inconsistent statements as here, they are set out in

11   the body of my document is not, your Honor, the type

12   of thing that is not highly prejudicial.

13       I cited United States ex rel McCoy versus

14   O'Grady, I was the habeas corpus lawyer in those

15   cases, your Honor, and what happened was there was in

16   this case the failure to use -- the failure to use a

17   police officer's report to demonstrate that the

18   witness had said something totally distinct as to time

19   they had seen somebody.

20       And the 7th Circuit said first of all the

21   Illinois Appellate Court was in error when it said

22   failure to impeach is not, cannot be ineffective

23   assistance of counsel, said the appellate court was in

24   error about that and sent it back down for an

1    evidentiary hearing.  And at the evidentiary hearing

2    Justice Manning who was in fact an assistant state's

3    attorney at one point for the State in this county and

4    then sat on the Illinois Appellate Court ruled that

5    the failure to impeach caused it to be ineffective

6    assistance of counsel.

7         We have the very similar type of impeachment

8    in this case, your Honor.

9         And I don't want to go over each and every

10   issue of impeachment because it is set out in writing

11   and your Honor has it in writing.  And so we feel

12   that the defendant should be granted a new trial based

13   on these two issues.

14        THE COURT:  State.

15        MS. O'CONNOR:  Judge, counsel basically in his

16   amended motion for new trial and my reading of it

17   address three issues.  He in argument today said

18   there were two issues.  The third issue was that he

19   alleged that the defense was ineffective for not

20   litigating the motion to suppress the lineup

21   identification.  And since I addressed this Exhibit

22   No. 18 from the trial in my answer I'm going to show

23   it to the Court and argue that an examination of that

24   exhibit which is a photograph of the lineup that was

15                                    **Fletcher 001948**

1    used at the trial certainly shows that it was a fair

2    lineup and not suggestive in any way that would be

3    suggestive in the definition of what the case law says

4    it must be to be a suggestive lineup.

5           Yes, the defendant is slightly taller than

6    the other defendants but other than that I will not

7    repeat what I've said in my answer but it is a fair

8    lineup.

9           With regard to the other two issues, the

10   first one being a limiting instruction with regards to

11   course of investigation evidence, Judge, there is no

12   such limiting instruction and there is no such

13   limiting instruction because there is nothing to

14   limit.   And perhaps counsel and I disagree on whether

15   hearsay was elicited at trial and it certainly seems

16   like we do disagree.

17          Our position is and I thoroughly read the

18   transcript and I read the transcript not only of the

19   witnesses but also of the opening statement by the

20   State and the closing arguments and never was hearsay

21   discussed in the arguments nor was it elicited from

22   witnesses, specifically Detective Bogucki during the

23   course of investigation evidence.

24          And that is what that evidence is.   Why

Fletcher 001949

1      should there be a limiting instruction.      Jurors are

2      not suppose to take one kind of evidence and say

3      that's more important than another kind unless -- well

4      strike that.      I mean evidence is evidence.      And if

5      it is to be limited, for example, proof of other

6      crimes evidence that is well established concept in

7      the case law that that must be limited.      And that is

8      why there is an I.P.I. instruction.

9              It is our position that course of conduct

10      investigation does not need a limiting instruction and

11      there was no hearsay elicited.      And I think a careful

12      reading of the transcript would bear me out on that.

13              So, when counsel says they are ineffective

14      for not asking for a limiting instruction we would

15      reject that position and say that they didn't ask for

16      it because they shouldn't have asked for it.      But in

17      the transcript they did ask for it during a sidebar

18      they asked you to limit, to give the jury right then

19      in there a limiting instruction which you denied and

20      we agree with the Court that at that -- that there was

21      no reason to give a limiting instruction.

22              So, for those reasons we ask this Court to

23      find that there was no ineffectiveness with regard to

24      that issue.

**Fletcher 001950**

1           The case law on course of conduct evidence is

2     well established.   The cases that I cited in my

3     answer, the Gaucho case spells it all out.   And

4     defense attorneys and defendants never like the law

5     enunciated in that case because it is bad for them.

6     But that's the State of the law so everyone has got to

7     deal with it the way it is.   And they don't like it

8     because they think juries are going to make inferences

9     from it.   But there is no evidence that juries make

10    inferences from it and don't accept it on face value.

11          And there is a lot of case law that one of

12    the other side doesn't like because it puts them in a

13    harder position and that's the case here.   I mean

14    they just don't like that we can bring out course of

15    investigation evidence.

16          Clearly the name Fletcher surfaced early on

17    in this investigation.   It was in the original police

18    reports.   The detectives that picked it up in '95

19    learned that by reading the police reports.   They

20    were aware that someone of bear fact the name Fletcher

21    was known to the police from the start, they knew

22    that.   And then after 1995 after they interviewed

23    Terry Rogers they were still looking for Fletcher.

24    And that is, that follows the rule enunciated in the

                    18              **Fletcher 001951**

1     Gaucho case and any other of the cases that talk about

2     course of police investigation. So, again we would

3     ask you to deny that issue in their motion.

4             With regards to the impeachment then, Judge,

5     Mr. Cohn argues that there was huge substantial

6     impeachment of Cooper and Friend. And he indicates

7     two examples, the first one involving Cooper, the

8     second one involving Friend. The impeachment that he

9     says should have been brought out on Cooper he

10     compared the trial testimony to what he had said in a

11     police report. And I'm looking for the page.

12             And the testimony was with regards to at the

13     actual time right prior to and during the initial

14     approach by the offenders. And I'm referring to

15     counsel's Page 12 and 13 of this amended motion for

16     new trial.

17             And what we had argued in our answer to his

18     amended motion was that perhaps what the witness had

19     said early on in the case to the detectives was

20     actually better for the State than what he said at

21     trial and therefore why would his trial counsel want

22     to bring that out because it would actually bring out

23     more facts and would be more damning to the defendant.

24             And your Honor can read those two paragraphs

Fletcher 001952

1    and we submit that the earlier statement that

2    Mr. Cooper made to the police that is quoted on

3    Page 13 actually has more detail and shows a better

4    recollection of what happened right after it happened.

5    There is more words spoken by the defendant and more

6    detail.

7         So, in our opinion it would have been a

8    mistake for a trial counsel to impeach Mr. Cooper with

9    his earlier better statement.   Certainly a jury would

10   understand that you would remember perhaps more

11   details in 1990 than he would in 2005 when this trial

12   was heard.

13        Then you have his reference to impeachment

14   that he believes should have been used when Ms. Friend

15   testified and that's talked about on Page 13.   And it

16   is with regards to how much time she was in the truck.

17        And in the middle of Page 13 Mr. Cohn refers

18   to some testimony and says she answered when asked how

19   do you know Mr. Cooper that Ms. Friend answered that

20   is my dad's friend.   And then it refers to the

21   transcript and the page.   And then says and she was

22   in the trunk for a short period of time.   That was

23   not Ms. Friend's testimony.

24        MR. COHN:   That is an error, I admit to that I

Fletcher 001953

1    don't have the right page on that.

2        THE COURT:   All right, we'll strike that.

3        MS. O'CONNOR:   And she never said that.   And she

4    couldn't have been impeached because she never said

5    that.

6        And then it goes on in the motion to talk

7    about her handwritten statement in the grand jury

8    where she says she was in the truck for twenty

9    minutes.   It can't be impeaching because she never

10   said she was in the truck for a short period of time.

11   That is Mr. Cohn's interpretation of what she said

12   therefore it is not impeaching.

13       All other matters of impeachment brought up

14   are extremely collateral, Judge, extremely not

15   relevant and in no way could be considered dispositive

16   in turning the tables of how this jury evaluated the

17   evidence.

18       Mr. Cohn didn't talk about the impeachment

19   that trial counsel did implore and there were many

20   aspects of impeachment of both Ms. Friend and

21   Mr. Cooper that they attempted to show that they were

22   being discredited.   So, the trial counsels were aware

23   of how to impeachment witnesses and they did use it

24   when it was important to use it.

**Fletcher 001954**

1    Again we submit that the examples that he

2    gave were either very collateral, not having any

3    bearing on the ultimate issue here, or misrepresented

4    in the motion.

5    And with regard to Friend's testimony and

6    with regard to Cooper we submit his prior statement

7    would have been actually better for us so why would

8    Jenner and Block want to bring it out.

9    For those reasons, Judge, we are going to ask

10   you to deny this amended motion for new trial.   And I

11   will rely on anything that's in my written answer and

12   former arguments at the original motion for new trial

13   as they relate to the issues that Mr. Cohn brought up.

14   If I could have just one second to look at

15   this response to the State's answer.

16   (Whereupon, a brief pause was had:)

17   MS. O'CONNOR:   Judge, we have nothing further.

18   THE COURT:   Okay, defense, you have the final

19   word.

20   MR. COHN:   Yes, your Honor.

21   There is a substantial difference of

22   impeachment.   It is one thing for both parties to say

23   gee I knew him once because he used to deliver bread

24   to the place where I did shopping, or he was a friend

**Fletcher 001955**

1     of my father.   That's very different of a type of

2     presentation to the jury of what the relationship is

3     than a dating relationship.   And there is no dispute

4     by the prosecution that there was available to the

5     defense through the testimony of an officer whose name

6     start with a B who I can't pronounce who is available

7     that she had said that when she was about sixteen and

8     this man was about some thirty years old or older they

9     were in a dating relationship.   That is a totally

10    different prospective of their relationship than was

11    conveyed by both of them to the jury.   And proper

12    impeachment would have been to use that.

13         Also if you look at that testimony, that

14    testimony if it doesn't say specifically a short

15    period of time in those words it describes how in

16    essence it appears it was just for a few moments and

17    she had given both before the grand jury and in the

18    testimony that it was for twenty minutes, a much

19    longer period of time that should have been used to

20    discredit both of them.

21         Not only that if you look at what he said in

22    his testimony she told -- at the bottom of 12:   She

23    told me at the laundromat did I have any change, and I

24    told her to wait until I put the trays in the truck.

Fletcher 001956

1     When I opened the doors to the truck the guy came up

2     behind me. Meaning she never got in the truck

3     according to his testimony. Her testimony, okay, was

4     that she was in the truck for twenty full minutes.

5     Isn't that something that the jury should have known

6     in considering whether her testimony contradicted his

7     testimony of what was going on the way they were.

8         With regards to the issue of investigation,

9     your Honor. The State says well it is nothing, it is

10     just an investigation. Then why did they put it in.

11     If it wasn't -- if it wasn't to have the very impact

12     that we say it would have had why did the State put it

13     in. Why in opening statements do they put -- they

14     were looking for a man named Fletcher. It is

15     irrelevant unless you're putting it in to show that

16     somebody had named a person by the name of Fletcher,

17     somebody who wasn't there to testify. It's a total

18     sham to say that wasn't the prosecutor's purpose.

19         And it wasn't like it just slipped out

20     because they put it in the evidence. The witness,

21     where there were two male black offenders one witness

22     had provided the name Fletcher. Why did the State do

23     that. What is the purpose of that. What is the

24     purpose of showing, quote, "the investigation that was

24

**Fletcher 001957**

1    going on". And if it was again a mistake, an

2    accident, it just happened, why was it used in final

3    argument. Why it was used in final argument again to

4    demonstrate that somebody, somebody who wasn't there

5    knew the assailant and identified him by the name of

6    Fletcher.

7              And not only the name at that point they were

8    looking for someone by the name of James Fletcher, not

9    just maybe the first name was Fletcher, maybe the last

10   name was Fletcher but James Fletcher. Why was that

11   argued to the jury if the purpose was not to

12   specifically show that some person who wasn't there.

13             And the Gaucho case was a pre-Crawford case.

14   And the concept of Gaucho is now in this array,

15   your Honor, because if it was said for testimonial

16   purposes under Crawford it is no longer admissible.

17   It would been admissible on the Gaucho if it was,

18   quote, "reliable" and therefore there was that

19   reliability test under Ohio v Roberts is no longer the

20   law under Crawford, your Honor.

21             So, if something is testimonial and this

22   would be the equivalent to testimony, your Honor.

23   What I'm saying is this is not a case where there was

24   overwhelming evidence this is the case where the

**Fletcher 001958**

1    failure to use impeachment is like in the case that I

2    have attached here when Judge Manning granted the

3    federal habeas corpus writ.

4          Let's take a look at the photograph.   I wish

5    I had a copy that I could write on.

6       MS. O'CONNOR:   Well, you don't.

7       MR. COHN:   I know I don't.

8          But look where the top of the heads of these

9    other people come they all come to the eye level of

10   the defendant, your Honor.   He stands out, he is much

11   taller, he is much heavier.

12         Remember the testimony of one witness the

13   defendant has gotten heavier, bigger.   Okay.   He is

14   the only person that you can say he is not thin he is

15   bigger.

16         So, in totality of the situation, your Honor,

17   defendant was denied his constitutional right to a

18   fair trial.

19                    FINDING

20                BY   THE COURT:

21         Okay, I will take the motion for new trial

22   which I'll call the second motion for new trial.   The

23   first argument is that going through it

24   chronologically is that the defendant's right to his

 1    Sixth Amendment right to confrontation was thwarted

 2    because of the testimony of detective that they were

 3    looking for a person named Fletcher.

 4            On Paragraph 2 of that motion it says that

 5    such legal fiction while accepted by some courts must

 6    be error here for the jury was never told as to the

 7    limited use of such evidence.

 8            First off, in regards to that limiting

 9    instruction I went to the I.P.I. in regards to

10    limiting instructions and under 3.00 they specifically

11    enumerate specific instances where limiting

12    instruction is necessary.

13            In the introduction on Page 85 of the latest

14    edition of the I.P.I. it says that a general

15    proposition the committee disapproves of instructions

16    which comment on particular types of evidence, e.g.

17    flight.   We agree with those cases holding that,

18    quote:

19            Courts are under a general obligation to

20        avoid giving instructions which unduly

21        emphasize one part of the evidence in a case

22        and are not required to give an instruction

23        that will provide the jury with no more

24        guidance than that available to them by

Fletcher 001960

1    application of common sense.

2         Citing People versus McCullough found at

3    62 Il Ap 3d 590.

4         In the motion and also in the argument of

5    counsel for the defense these are the terms used in

6    that argument.   That the Court admitted evidence that

7    a stranger accused the defendant of committing a

8    crime.   That there was evidence that it was Fletcher

9    who did it because the person knew the defendant.

10   And the accusation was who knew the defendant was the

11   person who did it.

12        That was not the testimony brought out or

13   elicited at trial.   There was a pre-trial motion in

14   regards to limiting that, this Court did limit it.

15   And I limited it under the rationale approved by this

16   Court and has not been overturn in Gaucho.

17        And in that particular case of People versus

18   Gaucho found at 122 Illinois 2d 221 that was dealing

19   with a police officer who interviewed one of the

20   victims in a hospital and he testified to the course

21   of conduct at trial.   And it stated there

22   specifically:

23        Had the substance of the conversation that

24   the detective had with the victim been testified to it

28

Fletcher 001961

1    would have been objectionable as hearsay.    The

2    testimony of the detective however was not of the

3    conversation with the victim but to what he did and to

4    investigatory procedure.    As our appellate court

5    stated in considering similar testimony such evidence

6    is not hearsay because it is based on the officer's

7    own personal knowledge and is admissible although the

8    inference logically to be drawn therefrom is that the

9    information received motivated the officer's

10   subsequent conduct.

11            The information received here is that they

12   were looking for a Mr. Fletcher.    There was no

13   arguments or no testimony that any unknown individual

14   named Mr. Fletcher as being a participant in the

15   offense.    That was not the fact here.

16            In regards to that particular area that was

17   cited the defense then argues that since there was no

18   limiting instruction and this course of conduct

19   testimony was admitted by the Court that that was

20   improper.    And to argue that improper I see no cites.

21            Paragraph Page 2 it says hearsay evidence the

22   jury must be told of the limited purpose, with no

23   cite.

24            Also it says that the jury was never advised

29                    **Fletcher 001962**

1    that Fletcher argument testimony was admitted for a

2    limited purpose.    Again no citation in regards to

3    this.

4              It goes on to say that they were permitted to

5    consider this accusation by some uncalled witness as

6    direct evidence of the defendant's guilt.

7              There was no accusation.    There was just the

8    fact that someone, they were looking for Mr. Fletcher,

9    that's it.    There was no accusation that he performed

10   any of the acts alleged or that he was wanted as a

11   criminal in this -- or as a defendant in this case.

12             Paragraph or on Page 3 it goes into what the

13   defense argues could have or would have happened

14   citing what could have or would have been implied by

15   the jury citing Washington or Crawford versus

16   Washington.

17             In Crawford versus Washington there has only

18   been one Illinois case that has been decided since

19   then.    And in Crawford versus Washington that was a

20   case where I believe a wife testified, testimony came

21   in based on a statement she gave to the police

22   officers without subject to any cross-examination.

23             That was a specific statement concerning the

24   events of the crime.    This is not the case here.

Fletcher 001963

1    And I believe counsel has if the defense is correct in

2    regards to describing police interrogations as

3    testimony evidence as established under Crawford but

4    that is not the case that we have here.   This is

5    under Gaucho and Gaucho has not been overruled by the

6    Illinois Appellate Court or Supreme Court.

7            Regarding that issue, that being the first

8    issue addressed here, I do not feel that the Court

9    made any improper rulings in regards to allowing the

10   course of conduct or for not giving a limiting

11   instruction even though I believe the defense did ask

12   at a sidebar.

13           In regards to Point No. 2 beginning on Page 4

14   it states that counsel, the trial counsel was

15   ineffective for not requesting an instruction that

16   limited the jury's consideration of the evidence.

17   Again trial counsel objected to the admission of this

18   evidence but never requested that the limited nature

19   be -- I mean limiting instruction be entered.    I

20   believe that that is not the case.   There was a

21   request and it was denied.   It states that the

22   failure to have the jury provided with the limited

23   instruction in these facts is ineffective assistance

24   of counsel.

**Fletcher 001964**

1          And then we go on, once again the comparison

2  to other crimes under People versus Hooker and People

3  versus Markiewicz which was also other crimes.

4  People versus Grave was the accomplice testimony.

5  And People versus Smith was gang evidence.  All of

6  this I believe is different from the factual scenario

7  we have here.

8          In going to the case cited by the defense

9  People versus Markiewicz, M-a-r-k-i-e-w-i-c-z, found

10  at 246 Il Ap 3d 31.  In there it sort of streamlines

11  the issue under Strickland versus Washington.

12  Quoting from Page A of that opinion it states:

13          There is a strong presumption that counsel's

14      performance at trial and at sentencing fell

15      within the range of acceptable behavior.  To

16      prevail on a claim of ineffective assistance

17      of counsel a defendant must establish that:

18      1:  Counsel's performance was so seriously

19      deficient that it fell below an objective

20      standard of reasonableness.  And, 2:  That

21      the deficient performance was so prejudicial

22      that the defendant was denied a fair trial.

23      To show actual prejudice the defendant

24      must demonstrate that but for counsel's

32

Fletcher 001965

1          deficient performance there is a reasonable

2          probability that the result of the proceeding

3          would have been different.

4                  An accused is entitled to competent not

5          perfect representation.   The fact that a

6          defense tactic was unsuccessful does not

7          retrospectively demonstrate incompetence.

8          Therefore counsel's performance at trial will

9          not be deemed ineffective if the claimed

10         error was a matter of discretion, trial

11         tactics, or strategy.   Although some of the

12         evidence in this particular case of

13         Markiewicz was admissible defense counsel

14         failed to object when the State withdrew a

15         pattern jury instruction limiting the use of

16         other crimes evidence.

17                 In that particular case there was extensive

18         evidence of other crimes evidence.

19                 Also in that case in regards to instructions

20         it is stated on Page 6:

21                 Generally the only instructions necessary to

22         ensure a fair trial include the elements of

23         the crime charged, the presumption of

24         innocence, and the question of burden of

33                                         Fletcher 001966

1    proof.

2         Based on the cases cited by counsel in

3    regards to the, I see a major difference in accomplice

4    testimony, proof of other crimes, and also I believe

5    the earlier one was prior inconsistent statement

6    instructions.

7         In regards to the instructions that were

8    asked for once again looking at the totality of the

9    circumstances here and the case law I don't find any

10   reason why the Court should have gave a limiting

11   instruction.

12        Therefore in regards to the failure to, of

13   this Court to give a limiting instruction and even

14   though the defense did ask I find that there was no

15   error.

16        I believe that the last part of that argument

17   is the eyewitness testimony.  And in that particular

18   argument the defense argues that the witnesses,

19   eyewitness testimony was not sufficient to establish

20   proof beyond a reasonable doubt.  In that particular

21   case the defense cites Peck and also extensively later

22   on United States versus Wade.

23        In regards to the case of People versus Peck

24   there was, that was a case where the Court said

34

Fletcher 001967

1    considering all of the circumstances considered

2    together the eyewitness testimony wasn't sufficient.

3    In that particular case the victim testified that he

4    was robbed at night in the dark, that the victim had a

5    mask, that there was a flashlight, the defendant also

6    put on an alibi. And more specifically in that

7    particular case since it was a 1934 case there was no

8    lineup or any attempted show-up after the incident.

9           In the case of U.S. versus Wade the quote on

10   Page 11 in regards to what the Court looks at in

11   regards to determining whether or not a lineup is

12   suggestive I would like to, just give me one moment.

13   And People versus Wade they highlighted six specific

14   points that the Court looks at. On Page 11 there is

15   really seven, the Canadian case that was cited under

16   U.S. versus Wade found at 388 U.S. 218 was that in

17   that particular lineup there was only one oriental

18   involved in the lineup and he was the defendant.

19          But it went on to say that these are the

20   things that should be looked at. And I'm reading

21   from Page 11 counsel's brief. And there are three

22   points there but I'm going to go to the body of the

23   opinion itself because there was really six points

24   brought out.

                                                     35                    **Fletcher 001968**

 1          It says similarly state reports in the course

 2      of description prior identifications admitted

 3      as evidence of guilt revealed numerous

 4      instances of suggestive procedures.   For

 5      example:  One, that all in the lineup of the

 6      suspect were known to the identifying

 7      witnesses.   That is not the case higher.

 8          Two, that the other participants in a

 9      lineup were grossly dissimilar in appearance

10      to the suspect.

11          I'll address that issue.

12          And, three, that only the suspect was

13      required to wear distinctive clothing which

14      the culprit allegedly wore.

15          And then going to Page 7 of the opinion

16  itself it goes further:

17          That the witness is told by the police that

18      they have caught the culprit after which the

19      defendant is brought before the witness alone

20      or is reviewed in the jail.

21          That was not the case here.

22          That the suspect is pointed out before

23      or during the lineup.

24          And that is not the case here.

**Fletcher 001969**

1           And that the participants in the lineup

2     are asked to try on an article of clothing

3     which fits only the suspect.

4           Again that is not the case here.

5           So, the six criteria set out in U.S. versus

6     Wade that courts look at and that commentators have

7     brought out in regard to that particular case was not

8     here.

9           Now, the defense has argued that the lineup,

10    that the defendant was grossly dissimilar because he

11    is taller and heavier.  That is not the case that I

12    see.  I see two individuals on both Mr. Fletcher's

13    left and right that are probably about -- one is about

14    two inches shorter, the other is about three depending

15    on his hair.  I see all individuals are male black

16    looking about the same age, all are wearing dark

17    clothing on the bottom.  Three -- four had gym shoes,

18    some have a sweater, a jacket, and an overcoat.  I

19    mean a blue coat and I will call it an overcoat.

20           These are all arguments addressed by trial

21    counsel in regards to the attack on that.

22           In regards to taking that in conjunction with

23    the defense failure to file a motion to suppress based

24    on suggestiveness the case of People versus Wade also

Fletcher 001970

1 highlights numerous incidents where this lineup is

2 conducted without the benefit of anybody other than

3 the police and the defendant seeing this. And it is

4 brought out a few times in that case that this is one

5 of the things that courts look at.

6    In this particular case, though, we had an

7 attorney who came into court and testified, I believe

8 it was Debra Sanders, who testified that she was

9 present for the lineup and in her opinion after giving

10 her background as an attorney, I believe she was a

11 professor of law at the present time it was her

12 opinion that that was suggestive. That was all put

13 in front of the jury for the jury to decide after they

14 received a photo to determine whether or not that

15 lineup was suggestive.

16    So, the failure, the failure to file a motion

17 to suppress having the attorney present to testify in

18 court of her opinion of that lineup I feel is just a

19 strategy issue. I believe that, I might be wrong on

20 the name Debra Sanders.

21  MR. SALTIEL: It's Ms. Gordon.

22  THE COURT: Ms. Gordon, all right, my notes are

23 wrong then, I'm sorry.

24    Well, Ms. Gordon in this Court's opinion was

1    an impressive witness with impeccable credentials and

2    I see why the defense wanted her in front of a jury.

3         So, with regard to the issue of the

4    suggestiveness of the lineup and the failure to file a

5    motion I believe the lineup was not suggestive taking

6    the criteria set out in Wade.   And further I believe

7    that the motion to suppress was a strategic decision

8    made on behalf of counsels.

9         Now, the last issue that counsel brings up is

10   now the area of impeachment, that the impeachment of

11   the two civilian witnesses that being Ms. Friend and

12   Mr. Cooper was not adequate and therefore it was

13   deemed ineffective assistance.

14        I would like to point out the defense counsel

15   had mentioned that he was the attorney on the case of

16   McCall found at 908 Federal 2d 170.   And I believe

17   counsel for the record you cited that wrong you put

18   908 Federal 3d.

19        But, in that particular case the defense

20   attorney, and I'm quoting from Page 2:

21        The defense attorney Shelly emphasized the

22        missing pieces in the State's case, that

23        there was no witness who saw McCall enter or

24        leave the victim's house.   But she made no

Fletcher 001972

1        attempt to cast out on less identification

2        testimony.    She stopped.

3              In this particular case there was doubt cast

4    on the identification testimony from the very

5    beginning.    The opening statement by the defense

6    stated this is a case of misidentification.    They

7    further went in and brought out the description given

8    to the first officer on the scene.    And then the

9    description given to the detectives Gilfer and

10   Fleming.    And when both Mr. Cooper and Ms. Fleming

11   hit the stand they were exhaustively cross examined in

12   regards to their identification.    So, I feel that the

13   facts here are somewhat different than the facts in

14   McCall.

15             In McCall they said, the Court did say that

16   failure to proceed on a line of impeachment could be

17   ineffective assistance after there is a sufficient

18   hearing established in the court.

19             The defense wants the, this Court to

20   basically say that those, because the

21   cross-examination was not thoroughly exhaustive in his

22   opinion that it therefore was ineffective assistance.

23   I don't feel that that is appropriate.

24             In the cross-examination here of Ms. Friend

Fletcher 001973

1    and Mr. Cooper all the facts were brought out.     I
2    believe even again going back to their opening
3    statement Mr. Cooper it was brought out that he had
4    told the officer at one time the individual looked
5    similar during the photo array but he wanted to see
6    him in person.    They also brought out how Mr. Cooper
7    I believe spoke with a defense investigator and he
8    said I am only seventy-five percent sure.

9            These were all attacks on the identification
10   procedure and identification of those victims in this
11   case.    That was not the case in McCall.

12           Also the fact that there was a difference in
13   the time frame brought out.    The exhaustive
14   cross-examination here based on what I saw as a
15   strategy was their inability to observe what they said
16   they observed.    I believe there was extensive
17   cross-examination in regards to facial features, size,
18   there was hair, there was whether or not Mr. Fletcher
19   has distinguishing characteristics.    These were all
20   brought out during the course of that examination.
21   And they were not brought out in a leisurely or
22   haphazard manner, they were brought out thoroughly and
23   exhaustively.

24           In regards to the issue that the relationship

Fletcher 001974

1    that existed between the parties would have swayed the

2    jury not to believe the testimony I don't believe

3    that's the case here.

4         And when you look at the, going back to the

5    criteria under People versus -- I'm sorry, Strickland

6    versus Washington this Court based on the totality of

7    the circumstances and the entire transcript of the

8    trial I find that counsel's performance was not

9    deficient and it did not fall below an objective

10   standard of reasonableness.

11        I also find that the deficient performance

12   was so prejudicial that the defendant was denied a

13   fair trial.   That there was no deficient performance

14   that prejudiced this defendant's right to a fair

15   trial.

16        Lastly I don't feel that the defense at this

17   stage has made the argument that if that impeachment

18   would have been allowed in, those two specific

19   impeachments that it would have changed the outcome or

20   effected the outcome of this case.

21        In this particular case I think that there

22   was a sound trial strategy employed.   The attorneys

23   of record that were in here each and every appearance

24   were always prepared.   The argument that they did not

42

Fletcher 001975

1    investigate this case is wholly without merit.   Every

2    motion, every hearing date they were prepared with

3    everything they had.   Their decision, their trial

4    strategy to attack the witnesses based on their

5    ability to observe was also sound strategy.   And

6    their desire and their ability to place Ms. Gordon in

7    front of the jury to have her to testify what she

8    observed in the lineup again I believe was sound trial

9    strategy.

10    Taking all of the arguments by counsel in

11    regards to the motion for a new trial at this time the

12    motion for a new trial will be denied.

13    MR. COHN:   Thank you, your Honor.

14    We are ready to proceed as to sentencing,

15    your Honor.   We will stipulate that the defendant has

16    as the State says a prior conviction for a homicide.

17    The facts of that I think the State would agree the

18    crime occurred when he was sixteen, he was tried as an

19    adult and we would assert that the imposition of

20    natural life under those situations when he was

21    sixteen and pled guilty and to make it an automatic

22    natural life because he has a second conviction is

23    unconstitutional violation of due process and the

24    cruel inhuman provisions of the Eighth Amendment.

**Fletcher 001976**

1          That's all we have to say, your Honor.

2     THE COURT:   Okay, let's go through the sentencing

3   hearing itself.

4     MS. O'CONNOR:   Judge, before we get into the

5   actual sentencing hearing I don't -- we attempted to

6   address the pre-sentence investigation at one point

7   but that was put aside due to the motions for new

8   trial and perhaps new counsel coming in.

9          At one point I had asked after we received

10   the P.S.I. to supplement it with Chicago's, Chicago

11   Police Department's old version of defendant's what we

12   call rap sheet which is a record history that actually

13   has the 1979 murder arrest resulting in 1980 murder

14   conviction on it.   The one attached in the P.S.I. is

15   the new Chris version of the rap sheet and because the

16   defendant was a juvenile apparently it didn't show up

17   on the new version.

18     MR. COHN:   We have no objection to submitting

19   that version of the document.

20     THE COURT:   All right.

21     MS. O'CONNOR:   And I had brought that up when

22   Jenner and Block was --

23     THE COURT:   Okay.

24     MS. O'CONNOR:   So I would ask leave to make this

Fletcher 001977

1   old version of the rap sheet part of the Court's

2   pre-sentence investigation.

3        MR. COHN:   No objection.

4        MS. O'CONNOR:   They've all seen it.

5        THE COURT:   Okay.   And both sides had an

6   opportunity to observe or review the pre-sentence

7   investigation?

8        MR. COHN:   Correct.

9        THE COURT:   And are there any changes, deletions,

10  or additions?

11       MR. COHN:   None.

12       MS. O'CONNOR:   Well.

13       THE COURT:   Other than the addition that you just

14  made.

15       MS. O'CONNOR:   Yeah, I would like to add that,

16  have that made part of the P.S.I. and have Page 3

17  where it lists the defendant's convictions I would ask

18  leave to have that added to the paragraph Adult

19  Convictions even though he was a juvenile he was in --

20  it was an automatic transferred tried as an adult or

21  prosecuted as an adult.   And the Page 3 fails to list

22  that although there is a paragraph where the defendant

23  told the investigator that he had been sentenced to

24  twenty-two years for felony murder and was released in

Fletcher 001978

1    1990.

2           The defendant acknowledges it but it is not

3    officially listed in the P.S.I.

4        THE COURT:   Okay.

5        MR. COHN:   We have no objection to the amendment

6    to show that.

7        THE COURT:   Okay.   And the --

8        MS. O'CONNOR:   It would be case No. 79-C-8441.

9        THE COURT:   Okay.   No objection, that that

10   amendment will be allowed and made part of the P.S.I.

11       MS. O'CONNOR:   That is the only change that I'm

12   asking the Court to make.

13       THE COURT:   Okay.

14       MR. COHN:   When was that again, what is the case

15   number on that?

16       THE COURT:   79-C-8441.

17       MR. COHN:   79-C-8441.

18       MS. O'CONNOR:   So, that's all the changes that I

19   have, I don't know if defense counsel has any.

20       MR. COHN:   The defense has no changes, Judge.

21       THE COURT:   All right, I'll listen to arguments,

22   State.

23       MS. O'CONNOR:   Judge, I would first introduce

24   People's Exhibit No. 1 for sentencing which is a

Fletcher 001979

1    certified statement of the defendant's prior murder

2    conviction.

3        MR. COHN:    No objection.

4        MS. O'CONNOR:    Under 79-8441 wherein the

5    defendant on December the 21st of 1979 was arraigned

6    and then on October the 28th of 1980 the defendant

7    pled guilty to murder and armed robbery and was

8    sentenced by Judge Pompey.    And that is a certified

9    statement of that conviction under People versus

10   Jimmy Fletcher, 79-C-8441.

11       MR. COHN:    No objection.

12       THE COURT:    All right, that certified copy will

13   be used as People's Exhibit No. 2 for sentencing.

14       MS. O'CONNOR:    Judge, we have a stipulation with

15   regards to the testimony of a witness that I was going

16   to call but since there is a stipulation I will put it

17   in this way.

18           And it will be with regards to testimony if

19   called Neil Cohen, N-e-i-l C-o-h-e-n, would testify

20   that at the current time he is an attorney licensed to

21   practice in the State of Illinois, employed in the

22   private practice.    That in October of 1980 he was an

23   assistant state's attorney, an attorney also licensed

24   to practice in the State of Illinois.

**Fletcher 001980**

1    That he was assigned to the case of People

2    versus Jimmy Fletcher 79-C-8441.   That he reviewed

3    the file from that case and his penitentiary letter

4    that I've shown to counsel.   He looked at the

5    photograph of the defendant Jimmy Fletcher a/k/a

6    James Fletcher.   He looked at a 19 -- at an old

7    arrest report and he would testify that the defendant

8    in court today being sentenced is the same defendant

9    and that the defendant pled guilty under that case

10   number on October the 28th of 1980 and was

11   subsequently sentenced to murder and attempted armed

12   robbery.

13        MR. COHN:   I have no objection to that

14   stipulation.

15        THE COURT:   Okay, that will be then admitted as

16   People's Exhibit No. 3.

17        MR. COHN:   Oh, no, there is no exhibit being

18   admitted.

19        MS. O'CONNOR:   I would if --

20        MR. COHN:   Because I object to the pen letter

21   which is attached.

22        THE COURT:   Okay.

23        MS. O'CONNOR:   All right.   I did, for the record

24   I did show it to counsel, Judge, but I was not

**Fletcher 001981**

1    planning on asking that it be admitted as an exhibit.

2        THE COURT:   Okay, all right, then that will be,

3    that stipulation will be entered into the record then.

4        MS. O'CONNOR:   I have no witnesses to call,

5    Judge, I would argue but do you want counsel to

6    present their witnesses first or do you want my

7    argument.

8        MR. COHN:   I have no witnesses, your Honor.

9        THE COURT:   All right, then you can argue.

10       MS. O'CONNOR:   Judge, what we are arguing is that

11   the defendant is subject to the mandatory natural live

12   sentencing under Chapter 730 ILCS 5/5-8-1 which is a

13   sentence of imprisonment for a felony.   And that

14   section of the code of corrections applies to, the

15   first section of that applies to the crime of murder

16   and gives the perimeters of being sentenced to murder.

17       Under Paragraph C of the murder section it

18   states that the Court shall sentence a defendant to a

19   term of natural life imprisonment when the death

20   penalty is not imposed if the defendant Subsection I

21   has previously been convicted of first-degree murder

22   under any state or federal law.

23       THE COURT:   But, counsel, I'm going to ask you

24   was that the law that applied at the time of this

49

1    offense?

2        MS. O'CONNOR:    It was, Judge, I looked it up

3    under the old code.    I didn't bring it with me today

4    but I did check it out and I believe I discussed it

5    with trial counsel prior to Mr. Cohen coming in.

6    I --

7        THE COURT:    Why don't you quote the quote that

8    was effective in 1990 then.

9        MR. COHN:    Your Honor, we'll stipulate that there

10   was one in 1990.

11       THE COURT:    All right.

12       MS. O'CONNOR:    Under 1990 it was under Chapter 38

13   Section 1005-8-1.

14       THE COURT:    Okay.

15       MS. O'CONNOR:    And in that section of the

16   criminal code --

17       MR. COHN:    What was the code of provision again?

18       MS. O'CONNOR:    Chapter 38 1005-8-1.

19           And under the sentence of imprisonment for a

20   felony that relates to murder again the criminal code

21   indicated that if the defendant has previously been

22   convicted of first-degree murder under any state or

23   federal law or is found guilty of murdering more than

24   one victim the Court shall sentence the defendant to a

Fletcher 001983

1      term of natural life imprisonment.

2              I will show counsel that 1990 book that the

3      Court has --

4          THE COURT:   All right, take a look at that,

5      counsel.

6              (Whereupon, a brief pause was had:)

7          MS. O'CONNOR:   Judge, I believe that law has been

8      in effect for quite some time and it was definitely in

9      effect in 1990.   The prior murder conviction

10     obviously is the one that we've been talking about the

11     79-C-8441 conviction.

12             The defendant in this case 02-CR-16669 was

13     convicted of first degree-murder also therefore that's

14     our position that he is subject to the mandatory

15     natural life imprisonment sentence.   And not subject

16     to any other type of sentence.   There is no other

17     sentence available it is mandatory as a shell.

18             Of course the pre-sentence investigation has

19     other convictions listed most notably the armed

20     robbery in which the defendant was sentenced to

21     twenty-five years in prison along with two other

22     felonies.   But the bottom line is it is a second

23     murder and the only sentence available according to

24     the criminal code is the natural life imprisonment.

**Fletcher 001984**

1      We believe that the evidence that shows the

2      prior murder conviction is included in the

3      pre-sentence investigation.   The defendant made a

4      statement with regards to it on Page 3.   The Chicago

5      rap sheet has it listed, the certified statement of

6      conviction under People versus Jimmy Fletcher

7      indicates he was convicted of it.   And the

8      stipulation to the testimony of former prosecutor

9      Neil Cohen would certainly show that his, he was

10     previously convicted of a murder by a preponderance of

11     the evidence.   And I believe that is the standard,

12     Judge.

13          THE COURT:   Okay.

14          MS. O'CONNOR:   So, that's what we're asking for.

15          THE COURT:   Thank you.

16              Defense.

17          MR. COHN:   Your Honor, in addition to the issues

18     that I previously raised I point out that in 1979 he

19     was not convicted of first-degree murder only

20     convicted of murder.   There was no first-degree

21     murder so therefore there is not an adjoining of the

22     later 1990 statutory provision and the description of

23     the event, in addition to raising the

24     unconstitutionality.

                    Fletcher 001985

1     THE COURT:  Okay.

2         MS. O'CONNOR:  Judge, with regards to that and it

3     was to the Jenner and Block attorneys I had, we had

4     sort of talked about this issue and I had faxed them

5     copies of the indictment from the 1979 murder that I

6     can also give this Court where the elements are

7     exactly the same but what is now called first-degree

8     murder.

9         In 1990 what the criminal code indicated was

10    that --

11        MR. COHN:  It says first-degree murder, it

12    doesn't say murder, your Honor.

13        MS. O'CONNOR:  Judge, what our argument is that

14    the elements of the 1979 murder are exactly the same

15    as the elements of first-degree murder today and

16    perhaps I should have faxed those charging documents

17    to the new attorney but since both counsels are still

18    on the case and Jenner and Block is still involved in

19    it.

20        MR. COHN:  Your Honor, we are not disagreeing

21    that it is the same elements we are simply saying that

22    the legislature made its choice.

23        MS. O'CONNOR:  I am arguing that they changed the

24    name but the elements weren't change therefore.

53                          **Fletcher 001986**

1      MR. COHN:    That is not what the statute says.

2      THE COURT:    I'm sorry, what do you mean they

3  changed the name?

4      MS. O'CONNOR:    From, in back when there was

5  murder it wasn't called first-degree murder.    There

6  was murder and there was voluntary manslaughter.

7  Today it is first-degree murder and second-degree

8  murder.    First-degree murder being the equivalent of

9  what murder used to be, and second-degree murder being

10 equivalent to what voluntary manslaughter was.

11     MR. COHN:    Your Honor, the legislature could have

12 chosen the terms it wanted to it didn't make that

13 choice.

14     THE COURT:    May I see the statute.

15     MS. O'CONNOR:    The old one or the knew one?

16     THE COURT:    The old one, the 1990 one is the one

17 that I will rely on.

18     MS. O'CONNOR:    By 1990 the nomenclature had been

19 changed to reflect the first-degree murder and the

20 second-degree murder in the criminal code.    What the

21 defendant was convicted of in 1979 was actually murder

22 and attempted armed robbery which would be the

23 equivalent of felony murder.

24     THE COURT:    Anything further?

54

**Fletcher 001987**

1    MR. COHN:   Nothing further, your Honor.

2    THE COURT:   The statutory, the 1990 edition of

3  Chapter 38 1005-8-1 states that the sentence of

4  imprisonment for a felony will be as follows:   For

5  first-degree murder:

6         A, a term shall not be less than twenty and

7  not more than sixty;

8         Or, B, if the Court finds that the murder was

9  accompanied by exceptionally brutal or heinous

10  behavior indicative of wanton cruelty or that any of

11  the aggravating factors listed in Subsection B of

12  Section 9-1 of the Criminal Code of 1961 are present

13  the Court may sentence the defendant to a term of

14  natural life imprisonment;

15         Or, C, if the defendant has been previously

16  been convicted of first-degree murder under any state

17  or federal law or was found guilty of murdering more

18  than one victim the Court shall sentence the defendant

19  to a term of natural life imprisonment.

20         At this time the State argues that the

21  statute applies that the 1979 case was a charge of

22  murder, that the descriptors first-degree murder would

23  be the same.   The defense argues to the contrary,

24  that the statute specifically states that he has to be

Fletcher 001988

1  convicted of a previous conviction for first-degree

2  murder.

3        I believe looking back at the statute that

4  I'm familiar with that first-degree murder prior to

5  1961 was basically what the State said it was, that

6  there was a murder and voluntary manslaughter, that

7  later changed to first and second degree.

8        The elements of the crime that were alleged

9  and that were admitted to by Mr. Fletcher in the --

10  oh, I'm sorry, I have to stop here.

11        Mr. Fletcher, would you please stand.

12        Sir, is there anything you would like to say

13  to the Court before I impose sentence on you today?

14     THE DEFENDANT:   Just that I'm innocent,

15  your Honor.

16     THE COURT:   Okay.   Anything else?

17     THE DEFENDANT:   No.

18     THE COURT:   Okay, thank you.

19     MS. O'CONNOR:   Judge, would you like a copy of

20  the charging documents from the 1979 case?

21     THE COURT:   If you have them.

22     MS. O'CONNOR:   I do have them.

23     THE COURT:   Okay, did you tender a copy to the

24  defense?

     Fletcher 001989

1     MS. O'CONNOR:   I had tendered them to Jenner and

2     Block I would like them to acknowledge them on the

3     record.

4     MR. SALTIEL:   Yes, the State did.

5     THE COURT:   All right.

6          All right, I now have a copy I'll mark this

7     People's Exhibit No. 3 for purposes of the sentencing.

8     This is a copy of the charging instrument.   The

9     allegation was that the defendant on October the 21st,

10    1979, committed the offense of murder in that they,

11    Mr. Jimmy Fletcher and Terry Ware, intentionally and

12    knowingly shot and killed Faheem Aref, A-r-e-f, with a

13    gun without lawful justification in violation of

14    Chapter 38 Section 9-1(A)1 of the Illinois Revised

15    Statutes 1977 as amended.

16          I believe the criminal offense of murder and

17    first-degree murder even though the name was changed

18    during the course of the history of the statute that

19    is the same criminal offense.

20          That the defendant in 1979 was charged and

21    convicted of murder.   And that on the jury's finding

22    of guilty of murder on the 02 case before this Court

23    makes it, takes it out of any discretion that this

24    Court may have.

57                           **Fletcher 001990**

1    I find that based on the second murder

2    Mr. Fletcher is eligible and this Court is required to

3    sentence him to a term of natural life. And that's

4    what this Court will do.

5    Now, Mr. Fletcher, please stand.

6    Mr. Fletcher, even though I'm sentencing you

7    here today you understand that you have the right to

8    appeal. However, prior to your appeal if you choose

9    to challenge the correctness of this sentence or any

10   aspect of your sentencing hearing you must file in the

11   trial court within thirty days of today's date a

12   written motion to reconsider the sentence imposed or

13   to consider any challenge to the sentencing hearing.

14   Within thirty days of the Court's rulings

15   disposing of your motions if you wish to appeal you

16   must then file or request the Clerk of the Court to

17   prepare and file in the trial court a written notice

18   of appeal. You will then be limited on your right to

19   appeal to those claims of error you first set out in

20   your motion challenging your sentence.

21   If you cannot afford an attorney for the

22   purpose of this motion one will be appointed or for

23   the purposes of an appeal one will be appointed. Or

24   if you cannot afford the cost of the transcripts one

**Fletcher 001991**

```
1     will be provided.

2              Sir, do you understand that?

3         THE DEFENDANT:   Yes, sir.

4         THE COURT:   Okay.   All right, sir, thank you.

5                   (Which were all the proceedings had

6                    in the above-entitled cause.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Fletcher 001992

```
1    STATE OF ILLINOIS   )
2                        )  SS:
3    COUNTY OF C O O K   )
4
5
6            I, Jewel Williams, an Official Court Reporter
7    for the Circuit Court of Cook County, County
8    Department-Criminal Division, do hereby certify that I
9    reported in shorthand the proceedings had in the above
10   entitled cause, that I thereafter caused the foregoing
11   to be transcribed into typewriting, which I hereby
12   certify to be a true and accurate transcript of the
13   Report of Proceedings had before the Honorable
14   JOHN P. KIRBY, Judge of said court.
15
16
17                                 Official Court Reporter
18                                        084-001757
19
20
21
22
23
24
```

Fletcher 001993