# EXHIBIT 62

NOTICE
The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIFTH DIVISION
March 23, 2007

No. 1-05-3447

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the |
| ) | Circuit Court of |
| Plaintiff-Appellee, ) | Cook County |
| ) | |
| v. ) | 02 CR 16669 |
| ) | |
| JAMES FLETCHER, ) | Honorable |
| ) | John Kirby, |
| Defendant-Appellant. ) | Judge Presiding. |

ORDER

Defendant, James Fletcher, appeals his murder conviction and his sentence of natural life imprisonment. On appeal, defendant contends: (1) identification evidence was insufficient to prove him guilty of murder beyond a reasonable doubt; (2) he was denied his constitutional right to confrontation when an officer testified that after interviewing witnesses, the police began looking for someone named Fletcher; and (3) his trial counsel provided ineffective assistance when he failed to request a limiting instruction regarding hearsay evidence, and failed to impeach a witness who made conflicting statements. We affirm.

Defendant was charged with the murder of Willie Sorrell. At trial, Edward Cooper testified for the State. On December 21, 1990, between 1 p.m. and 1:30 p.m., Cooper drove his Holsum Bread truck to Uncle Remus Restaurant on 5615 West Madison in Chicago, Illinois, in order to make a delivery. As he was returning bread trays to the truck, he encountered Sheenee Friend, whom he

No. 1-05-3447

knew because he was acquainted with her parents. She asked if he had any change for the laundromat, and he told her to wait until he put the trays into the truck. After opening the door on the truck, a man came from behind and stuck an object into his back. The man then asked Cooper, "You know what this is?" Cooper responded, "[Y]eah." The man ordered Cooper to step into the truck. Two men followed Cooper into the truck, both carrying revolvers. One of the men pointed his gun at Cooper and demanded money. Cooper reached into his left pocket, pulled out some money, and gave it to him. The other gunman then reached into Cooper's right pocket and took the rest of the money. Cooper identified defendant as the gunman who took money from his right pocket.

Both gunmen then focused on the safe in the truck and told Cooper to open it for them. Cooper replied that he did not have the key to the safe, but that they could simply take the truck. Defendant told the other man to shoot Cooper. Both gunmen stepped out of the truck and ran west on Madison. One of them turned around. Cooper reached for his gun which he kept for protection. Both gunmen and Cooper began shooting at each other, and Cooper chased them until the gunmen ran into an abandoned building. Cooper did not enter the building. Another person named Terry Rogers also pursued the offenders.

As he was returning to the truck, Cooper stopped at a store on Wallace and Madison Streets, and left his gun with someone there. When he got to his truck, Cooper noticed a man lying on the ground and police officers nearby. An officer took Cooper back to the abandoned building, but the gunmen were no longer inside. At trial, Cooper described defendant at the time of the offense as having collar length Jheri curls, wearing a baseball cap, Starter jacket and dark pants, standing

-2-

Fletcher 001825
C : 00016

No. 1-05-3447

between 5-feet-8-inches and 6-feet-tall, and weighing between 160 to 170 pounds. The other gunman was about 5-feet-8-inches to 5-feet-10-inches-tall, weighing between 150 to 160 pounds, also wearing a Starter jacket and baseball cap. Both men were in their late 20's to early 30's.

Police interviewed Cooper about the shooting again in 2002. They showed him an array of seven photographs from which Cooper identified a photograph of defendant as one of the gunmen. In April, 2002, Cooper went to the police station to view a line-up in which he again identified defendant as one of the gunmen. On cross-examination, Cooper acknowledged that he told another investigator in 2004 that he was "only about 75 percent sure" of the identity of the suspects. However, on re-direct examination, Cooper stated that he told police officers at the time he viewed the lineup that he was positive that defendant was one of the gunmen, and he never told police he was uncertain.

Emmett Wade testified that on December 21, 1990, at approximately 1:20 p.m., he was sitting in his van on Madison and Central, waiting for family members. He was reading the newspaper when someone screamed. He looked up and saw the driver of a Holsum Bread truck running towards him with a gun. He fired a shot that struck and ricocheted off the windshield of Wade's van. Wade saw people wearing hoodies running west, and he got out of his van. More gunshots were coming from behind, to the west. Wade saw a man coming out of a nearby liquor store, fall to the ground, struck by some of the gunfire. Wade testified that the man was not shot by the bread truck driver, but by one of the other shooters.

Sheenee Friend testified that on December 21, 1990, at approximately 1:30 p.m., she was at the laundromat across the street from the Uncle Remus Restaurant. When she saw Cooper, a friend

-3-

Fletcher 001826
C : 00017

No. 1-05-3447

of her father's, making a delivery to the restaurant, she approached him and asked for some money for her daughter. As she spoke with Cooper in the bread truck, she noticed two unfamiliar men standing nearby. After receiving money from Cooper, Friend stepped off the truck and one of the men grabbed her arm and cursed. She pulled away and the two men went into the truck. Friend identified defendant as the man who grabbed her arm. Friend watched the men through the truck windows, and saw defendant search Cooper while the other held a gun against him. The men then jumped out of the truck and Cooper followed, chasing them. Cooper pulled out a gun as the men were running and when he shot at them, they fired back. An old man coming out of the liquor store was struck by some of the shots fired by the robbers. Friend then walked back to the laundromat. Friend described defendant at the time of the offense as wearing a skullcap, although she did not see his hair.

Friend went to the police station in April, 2002, to view a photo array. From the photographs, Friend identified defendant as one of the gunmen. Two months later, Friend identified defendant in a line-up.

Detective Jerome Bogucki testified that in March 1995, he was assigned to investigate the murder of Willie Sorrell that had occurred on December 21, 1990, just west of Central and Madison. Reports indicated that police were searching for two male, black offenders, and that one of the witnesses gave the name "Fletcher." Also, a witness named Terry Rogers needed to be interviewed. On February 12, 2002, he and his partner were finally able to meet with Rogers. They later interviewed Cooper and Friend. Friend identified a photograph of defendant. Detectives obtained an arrest warrant for defendant on March 21, 2002, and defendant was arrested April 19, 2002. On

-4-

No. 1-05-3447

April 20, 2002, Friend and Cooper separately identified defendant in a line-up.

The jury found defendant guilty of murder and the trial court sentenced defendant to a term of natural life in the Department of Corrections. Defendant filed this timely appeal.

First, defendant contends that the State failed to prove him guilty beyond a reasonable doubt. Particularly, defendant argues that Cooper's and Friend's identifications of him are suspect because of: (1) the length of time (12 years) between the offense and the identification; (2) their limited opportunity to view the offender; and (3) their general and non-exact descriptions of the offender. Defendant also contends that their degree of attention at the time of the offense was not good, and that Cooper expressed a lack of certainty when identifying defendant in the photo array.

In reviewing a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Sutherland, 155 Ill. 2d 1, 17 (1992). Relevant factors to consider when evaluating the reliability of a witness' identification are: (1) the opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the perpetrator; (4) the level of certainty at the identification; and (5) the length of time between the offense and the identification. People v. Slim, 127 Ill. 2d 302, 307-08 (1989). When the issue involves the credibility of witnesses, or the weight given to their testimony, a reviewing court will not substitute its judgment for that of the fact finder. People v. Sutherland, 155 Ill. 2d at 17.

In the present case, both Cooper and Friend testified to similar accounts of the shooting. Cooper testified that he was approached by two armed men who took money from his pocket. Friend

Fletcher 001828
C: 000019

No. 1-05-3447

testified that Cooper was approached by two men, one of whom held a gun on Cooper, while the other one searched his pockets. While the armed men were fleeing, they engaged in gunfire with Cooper, during which the victim was shot and killed. Cooper and Friend each testified that defendant was one of the gunmen. On appeal, defendant contends that Cooper never got a good view of the offender, because the offender approached him from behind. However, Cooper testified that he saw defendant back off the truck (i.e., defendant was facing Cooper), and he further testified that defendant was looking at him at the time shots were fired. Friend testified that she saw defendant through the windows of Cooper's truck and that she had a clear view. In 2002, twelve years after the shooting, Friend and Cooper separately identified defendant in a photo array and lineup. Two years later, in 2004, Cooper indicated that he was only 75% certain of the identity of the suspects. Friend never expressed any similar uncertainty, and testified at trial that she had "[n]o doubt at all" as to the identity of the defendant.

Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found defendant guilty of murder beyond a reasonable doubt.

Next, defendant contends that he was denied his sixth amendment right of confrontation when the trial court allowed a police detective to testify that he found the name "Fletcher" in the police reports, causing him to look for an individual of that name. Defendant contends that the witness who gave that name to police was never called to testify, thereby preventing defendant from cross-examining him on that identification. Defendant contends the error was compounded when the State referred to the police detective's testimony during opening statement and closing arguments.

Defendant's contention is without merit, as the detective's testimony was admitted only to

-6-

Fletcher 001829
C: 00020

No. 1-05-3447

show the investigative steps taken by him. See People v. Simms, 143 Ill. 2d 154, 174 (1991).

Next, defendant contends that his trial counsel was ineffective for failing to request a limiting instruction informing the jury that the detective's testimony can only be considered to show the investigative steps taken by him, and not as evidence of defendant's guilt.

To prevail on his claim of ineffective assistance, defendant must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under Strickland, defendant must show that his counsel's performance fell below an objective standard of reasonableness and that this substandard performance prejudiced the defendant by creating a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Strickland, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65; People v. Enis, 194 Ill. 2d 361, 376 (2000). A reasonable probability is a probability sufficient to undermine the confidence in the result of the trial, namely, that counsel's deficient performance rendered the outcome unreliable or the proceeding fundamentally unfair. Enis, 194 Ill. 2d at 376. The failure to satisfy either the deficiency prong or the prejudice prong of the Strickland test precludes a finding of ineffective assistance. Enis, 194 Ill. 2d at 377.

In the present case, defendant's contention of ineffective assistance is without merit, as the prosecutor explained in open court and in the hearing of the jury that the testimony was being offered for the limited purpose of showing the course of the police investigation, and the court instructed the jury that evidence admitted for a limited purpose could only be considered for that purpose. Further, any error was not prejudicial, as there is no reasonable probability that the result of the trial would have been different.

Fletcher 001830
C : 00021

No. 1-05-3447

Next, defendant contends that his counsel provided ineffective assistance for failing to present evidence that the identification witnesses, Ms. Friend and Mr. Cooper, were dating. Defendant also contends his counsel was ineffective for failing to question Ms. Friend about conflicting statements she made regarding why she had asked to borrow money from Mr. Cooper. Specifically, a police report indicated that Ms. Friend asked to borrow three dollars from Mr. Cooper because she needed bleach, whereas in her trial testimony she stated that she needed the money for her daughter.

Defendant has failed to show any reasonable probability that the result of the trial would have been different but for counsel's alleged errors. Accordingly, his contention of ineffective assistance is without merit.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

O'BRIEN, P.J., with TULLY, J., and GALLAGHER, J., concurring.

Fletcher 001831
C : 00022