# EXHIBIT 65

MB

**FILED**

Aug 24, 2011

AUG 2 4 2011

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

United States of America ex rel.                    )
                                                    )
ARNOLD DIXON   N-03796                              )
_____            )
(Full name and prison number)                       )
(Include name under which convicted)                )
                                                    )
PETITIONER                                          )
                                                    )
        vs.                                          )
                                                    )
MARCUS HARDY                                         )
_____            )
(Warden, Superintendent, or authorized              )
person having custody of petitioner)                )
                                                    )
RESPONDENT, and                                     )
                                                    )
**(Fill in the following blank only if judgment**   )
**attacked imposes a sentence to commence**          )
**in the future)**                                   )
                                                    )
ATTORNEY GENERAL OF THE STATE OF                    )
                                                    )
LISA MADIGAN                                         )
_____            )
(State where judgment entered)                      )

**11 C 5851**
**Judge Blanche M. Manning**
**Magistrate Judge Nan R. Nolan**

Case Number of State Court Conviction:

02-CR-16669
_____

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1.  Name and location of court where conviction entered:   **Cook County Criminal Court**
    _____

2.  Date of judgment of conviction: **February 25, 2005**

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

    **First Degree Murder**

4.  Sentence(s) imposed: **Natural Life**

5.  What was your plea?  (Check one)        (A) Not guilty       ( **X** )
                                            (B) Guilty           (   )
                                            (C) Nolo contendere  (   )

    If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

    _____

    _____

Revised: 7/20/05

Fletcher 000091

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):          Jury ( X )          Judge only (   )

2. Did you testify at trial?          YES (   )          NO          ( X )

3. Did you appeal from the conviction or the sentence imposed? YES ( X )  NO (   )

    (A)  If you appealed, give the

        (1)  Name of court:  Illinois Appellate Court, First Judicial District

        (2)  Result:  Judgement Affirmed

        (3)  Date of ruling:  March 23, 2007

        (4)  Issues raised:  a. State failed to prove Defendant guilty beyond a reasonable
doubt. b. Defendant was denied his constitutional right to confrontation. c. Defendant
was denied his constitutional right to effective assistance of counsel for failure

    (B)  If you did not appeal, explain briefly why not:

        N/A

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES ( X )          NO (   )

    (A)  If yes, give the

        (1)  Result:  P.L.A. denied

        (2)  Date of ruling:  September 26, 2007

        (3)  Issues raised:  a. The Illinois Appellate Court refused to follow controlling
decision of U.S. Supreme Court that hearsay statements of out-of-court witness are
inadmissible. b. Trial Counsel was ineffective for failing to request jury instruction.

    (B)  If no, why not:  N/A

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( X )  No (   )

    If yes, give (A) date of petition: _____  (B) date *certiorari* was denied:  April 14, 2008

Revised: 7/20/05

Fletcher 000092

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES ( X )  NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: Circuit Court Cook County, Criminal Division

   B. Date of filing: October 7, 2008

   C. Issues raised: a. Petitioner was denied his right to speedy trial; b. Petitioer

   was denied his federally protected right to due process and a fair trial where he

   was subjected to a twelve year pre-indictment delay; c. he was denied his right to

   D. Did you receive an evidentiary hearing on your petition?        YES ( )  NO (X)

   E. What was the court's ruling?   Summarily Dismissed as frivolous and patently without merit.

   F. Date of court's ruling: December 30, 2008

   G. Did you appeal from the ruling on your petition?        YES (X)  NO ( )

   H. (a)   If yes, (1) what was the result?   Judgement Affirmed

             (2) date of decision:   November 4, 2010

      (b)   If no, explain briefly why not:   N/A

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (X)  NO ( )

   (a)   If yes, (1) what was the result?   P.L.A. denied

             (2) date of decision:   March 30, 2011

   (b)   If no, explain briefly why not:   N/A

Revised: 7/20/05

Fletcher 000093

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?     YES ( )     NO ( X )

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.   Nature of proceeding          N/A

        2.   Date petition filed            N/A

        3.   Ruling on the petition         N/A

        4.   Date of ruling              N/A

        5.   If you appealed, what was
            the ruling on appeal?         N/A

        6.   Date of ruling on appeal     N/A

        7.   If there was a further appeal,
            what was the ruling ?         N/A

        8.   Date of ruling on appeal     N/A

3.   With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?     YES ( )   NO ( X )

    A. If yes, give name of court, case title and case number:     N/A

    B. Did the court rule on your petition?  If so, state

       (1) Ruling:     N/A

       (2) Date:     N/A

4.   With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?   YES ( )       NO ( X )

    If yes, explain:

Revised: 7/20/05

Fletcher 000094

**PART III – PETITIONER'S CLAIMS**

1.  State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one  The petitioner challenges the presumption of correctness of the
   Supporting facts (tell your story <u>briefly</u> without citing cases or law):

state court's findings, where such findings involve an unreasonable application of

clearly established federal law, as determined by the Supreme Court of the United

States, as well as the findings resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the

state court proceeding, when the State in argument and through police testimony

presented evidence that the police, after speaking to witness (who did not testify)

were looking for a person name Fletcher. Petitioner's last name is Fletcher.

   The petitioner asserts that the State court ruling involved an unreasonable

application of Crawford v. Washington, 541 U.S. 36, 158 L. Ed 2d 177, where the

Illinois Appellate Court ignores the crucial fact that the prosecutor advised the


(B)  Ground two  The petitioner challenges the presumption of correctness of the state
   Supporting facts:

court's findings, where such findings involve an unreasonable application of clearly

established federal law, as determined by the Supreme Court of the United States,

where petitioner received ineffective assistance of trial counsel when counsel failed

to request an instruction that limited the jury's consideration of hearsay evidence

concerning the police looking for a person name Fletcher. Although, counsel objected

to the admission of the evidence, counsel never requested at the time that the

evidence was heard or at the close of the evidence, that the jury be advised a to

the limited purpose of the evidence.

   The petitioner asserts that the state court ruling involved an unreasonable

application of Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed 2d 674,

Revised: 7/20/05

Fletcher 000095

(C) Ground three ___The petitioner challenges the presumption of correctness of state___
Supporting facts:

court's findings, where such findings involve an unreasonable application of clearly

established federal law, as determined by the Supreme Court of the United States,

and is based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings, when the Illinois Appellate Court identified

the proper standard for evaluating the reliability of identification testimony but

wholly ignored the law established by United States Supreme Court in Neil v. Biggers,

409 U.S. 188, by failing to apply the five factors enumrated by the Neil court for

assessing the reliability of Cooper and Friend's identification testimony.

These factors include (1) the opportunity of the witness to view the


(D) Ground four ___The petitioner challenges the presumption of correctness of the___
Supporting facts:

state court's findings where such fingings are based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding, when

the facts adduced through these proceedings establish that petitioner's right to

counsel attached prior to the April 20, 2002, line-up when the Chicago Police had

issued a warrant for petitioner's arrest, and the state conducted a "preliminary

examination" at the April 18, 2002, hearing.

At that hearing, the judge found probable cause to arrest petitioner and

execute the warrant, the judge granted the State's request that bail be denied,

the judge appointed petitioner counsel, and the judge ordered the state to notify


2. Have all grounds raised in this petition been presented to the highest court having jurisdiction?

YES (X)  NO ( )

3. If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

N/A

Revised: 7/20/05

Fletcher 000096

**PART I – TRIAL AND DIRECT REVIEW** continued.

to request jury instruction. d. Ineffective assistance of counsel for failing to present prior statements of State Witnesses.

**(3) Issues raised: continued.**

      **c.** Illinois Appellate Court avoids the law set by U.S. Supreme Court concerning identifications.

**PART II – COLLATERAL PROCEEDINGS: continued.**

C. Issues raised: counsel when the police interfered with his right to have his attorney present during critical stages of proceedings and the adversarial process; d. Petitioner was denied due process when he was subjected to unduly suggestive line-up procedures; e. I.P.I. 3.15 is unconstitutional where social science evidence overwhelmingly indicates that there is no correlation between such certainty and accuracy of an identification. Petitioner also argued that his trial counsel's representation was objectively unreasonable where counsel (1) withdrew and failed to litigate the motion to suppress all pre-trial identification and bar in-court identification, and he asserted his appellate counsel was ineffective for failing to raise numerous issues raised in the petition for post-conviction relief.

**PART III – PETITIONER'S CLAIMS: continued.**

Ground one: jury in opening arguments, through police testimony, and closing argument that the police had a report that the person who commited the crime had the same name as petitioner. The prosecutor in reference to the police officer's actions stated:

    "After they reviewed those, they knew from the reports that they were looking for a man name Fletcher. What they did was gather information and try to locate anyone that fit the description with the name Fletcher. So, when new detectives started looking into the case in 1995, because the murder had never been solved, they reviewed the entire case file. They were then looking for a suspect named James Fletcher."

    (Vol. III, Tr. 27-29)

Fletcher 000097

By the testimony of the investigating police officer, the State also presented the fact that they were looking for a person named Fletcher. The testimony was as follows:

Q: As of March of 1995, was there anyone wanted in connection with the murder of Willie Sorrell?

Mr. Saltiel: Objection.

The Court: Basis?

Mr. Saltiel: Hearsay.

The Court: Response?

Mr. Clark: May I be heard at sidebar outside presence of jury? It's just course of this investigation. That's all we're offering it for.

The Court: Overruled. You may answer.

Witness: There were two male Black offenders wanted. One of the witnesses had provided a name Fletcher.

Mr. Clark: Was there anyone at the time —

Mr. Hill: Objection, Your Honor.

Mr. Clark: — that you were speaking with? The

The Court: Basis?

Mr. Hill: Hearsay.

The Court: Response?

Mr. Clark: Again, I'm just offering for his course of investigation what he did next.

The Court: It will be overruled. The answer will stand.

Mr. Clark: At the time was there anyone specific that you wished to speak with?

Witness: From reading the reports, it became obvious to myself and my partner that a subject named Terry Rogers needed to be talked to.

(Vol. III, Tr. 179–180)

The court provided no instruction to the jury limiting the jury's use of this testimony. The officer testified on re-direct examination as follows:

A–2

**Fletcher 000098**

    Prosecutor: On cross-examination, you were asked about 2002, and you
               assembled a photo array, right?

    Witness: Yes.

    Q: At the time you assembled that photo array, what was the name of the
       person that you wanted in connection with the murder of Willie Sorrell?

    A: James Fletcher.
    (Vol. III, Tr. 206-207)

Although an objection was sustained, the answer was not stricken, and again the

the court failed to provide the jury with a limiting instruction. Petitioner

further challenges the presumption of correctness of facts argued to the jury by

the prosecution during closing argument where those facts are rebutted by the

record. In closing argument the prosecutor argued:

    "At that point in 1995, they were looking for someone by the name of
     James Fletcher."
     (Vol. V, Tr. 46)

    The state court's findings resulted in a decision that was based on an unreasonable

determination of these facts when it ruled "the detectives testimony was admitted

only to show the investigative steps taken by him." The record demonstrates that the

name of the assailant was a critical component of the identification of Petitioner.

The only witnesses to testify for the state denied they knew petitioner or his name.

This is significant because it demonstrates that Terry Rogers was the accuser who

implicated  petitioner as the assailant. (See Exhibit A) Therefore, Terry Rogers'

statements to detectives identifying James Fletcher as the assailant in Willie

Sorrell's murder were indeed testimonial, and his identification of petitioner

stealthly presented to the jury, the veracity of such, untested by the mechanism

of cross-examination. The jury was never advised by instruction or otherwise that

this information could not be considered direct evidence of petitioner's guilt.

Their admission violates petitioner's due process garantee and VI amendment right

to confrontation.

Fletcher 000099

<u>Ground two:</u> **continued.**

based on an unreasonable determination of the facts in light of the evidence
presented in the state court proceeding where it ruled, "the prosecution explained
in open court and in the hearing of the jury that the testimony was being offered
for the limited purpose of showing the course of the police investigation, and
the court instructed the jury that evidence admitted for limited purpose could
only be considered for that purpose." (Order p. 7)

 First, the statement by the prosecutor was to the court, not directed to
the jury.

 Second, the instruction was not provided to the jury in a manner that would
advise them that the detective's testimony with respect to the out-of-court identification
of petitioner by a non-testifying witness was admitted only for a limited purpose
only.

 Under these circumstances, the failure to have the jury provided with a limited
instruction is ineffective assistance of counsel. The state court's finding of
no prejudice from counsel's error is an unreasonable determination of the facts and
involves an unreasonable application of Strickland, supra, where prejudice results
from the jury being able to consider inadmissible hearsay evidence of an out-of-court
statement identifying petitioner as the assailant as direct evidence of his guilt.

Fletcher 000100

<u>Ground three</u>: continued.

criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the lenght of time between the crime and the confrontation. Neil, 409 U.S. at 199-200, 34 L. Ed 2d at 411, 93 S.Ct at 382.

Comparing the factors of the instant case to the standards established by the Neil court, it must be concluded that the reliability of the identification is constitutionally insufficient to sustain Petitioner's convictions.

(1) The witnesses had never seen the assailant(s) before. (Vol. III, Tr, 89, 154)

(2) The witnesses were caught by surprise. They didn't see the assailants coming and the robbery happened suddenly. Mr. Cooper had been approached from behind. He saw the assailants only briefly as they fled. Specificly, Cooper testified:

> Q: When you saw her, what happened?

> A: She (Miss Friend) told me she was at a laundromat. She asked me did I have any change. I told her wait 'til I put the trays in the truck. When I opened the door to the truck, a guy came up behind me and stuck a pistol in my back. (Vol. III, Tr. 57) (Emphasis added)

(3) The initial description of the assailant identified as Petitioner lacked any specifics and at best can only be characterized as vague and general.

To this point the record demonstates Cooper's initial description of the assailants was black males between 5'6" and 6', weighing 160 to 170 pounds (Vol. III, Tr. 69, 88). Miss Friend was unable to give police any description of the assailants which further highlights the witnesses impaired degree of attention and lack of opportunity to view the assailants.

The Neil court considers important the earlier (initial) description of the offender, as compared to the assailant. The most troubling aspect of Cooper and Friend's identification testimony is it lacks any specifics. These witnesses have

Fletcher 000101

never given a single detail about the facial features of the assailants, i.e.,
the men were light or dark complexion, had a beard, mustash, or had black, brown,
or light colored eyes. This is an important fact to consider when assessing the
reliability of Cooper and Friend's identification of Petitioner 12 years after
the occurrence where he has the very distinctive facial feature of unusually
large lips. (See Exhibit B)

Mr. Cooper and Miss Friend's initial inablility to give a more significant
description of the assailants to police is strong evidence that they did not have
sufficient opportunity to view the assailants. This is further emphasized by the
witnesses contradictory testimony involving the type of hats worn by the assailants
and the description of their hair. Mr. Cooper asserted the assailant he identified
as defendant had a collar length Jheri curl. Specificly, Cooper testified:

Q: What did his hair look like back on December 21st of 1990?

A: He had like a Jheri curl, about collar length.

Q: Where could you see that Jheri curl?

A: He had a cap on. You could see -- that's the kind of stuff you
put in there with spray and stuff.

Q: Could you see his hair like on the back?

A: On the back of the collar.

Q: You said collar length?

A: The back collar.

(Vol. III, Tr. 68-69) (Emphasis added)

Miss Friend's testimony squarely contradicts that of Cooper. Specifically,
she testified:

Q: The one offender that you remember what he looks like, on December 21st,
1990 -- strike that. What did his hair look like?

A: He had a skull cap on, a hat. It was cold outside.

Q: Did you, in fact, see his hair at all?

A: No. (Vol. III, Tr. 152) (Emphasis added)

A-6

Fletcher 000102

(4) Mr. Cooper's level of certainty during the confrontation demonstrates his identification of Petitioner was anything but certain.

Although Cooper testified he was positive on seeing the photo and he was one hundred percent sure, but he wanted to see the assailant, (Vol. III, Tr. 93) he is contradicted by the detective who showed him the photo array. The detective testified:

> A: He picked out one photo and said it looks like one of the offenders that shot at him and robbed him, but (...he said...) couldn't be positive.

> (Vol. III, Tr. 187) (Emphasis added)

Mr. Cooper himself testified he told a different private investigator he was seventy-five percent sure. (See Exhibit C) Specificly, he testified:

> Q: You remember discussing this case with the investigator?

> A: Right.

> Q: Do you recall telling the investigator at that time, that you were not sure and could not be 100 percent sure of who the suspects were in this case?

> A: I told him after 14 years I'm like about 75 percent sure of who I thought.

> (Vol. III, Tr. 98-99) (Emphasis added)

From this record evidence it becomes obvious that Mr. Cooper's level of certainty of his identification of Petitioner is insufficient to be considered reliable.

(5) Between the date of the occurrence, December 21, 1990, and the first time photos were shown to witnesses in 2002, there was nearly a 12 year laspe of time. (Vol. III, Tr. 55, 72) This length of time between the initial observation and the photo identification further undermines the reliability of any identification of Petitioner. Mr. Cooper testified assailants wore <u>BASEBALL CAPS</u> and had a <u>COLLAR LENGHT JHERI CURL.</u> (Vol. III, Tr.68-69) Miss Friend testified assailants wore "<u>SKULL HATS</u>" and you could not <u>SEE THEIR HAIR AT ALL.</u> (Vol. III, Tr. 152) A third witness, Mr. Wade testified the <u>ROBBERS WERE WEARING HOODIES.</u> (Vol. III, Tr. 112)

A-7

Fletcher 000103

Hence, a review of the State's evidence tested by the important factors set forth by the United States Supreme Court in Neil, supra, demonstrates that Cooper and Friend's identification of Petitioner lacks the reliability necessary for an abiding conviction of his guilt beyond a reasonable doubt. The veracity of the state's evidence is further compromised by Cooper and Friend's materially conflicting statements and testimony which severly undermines their credibility.

First, Cooper initially lied to police about his possession and use of a weapon (Vol. III, Tr. 99)

Miss Friend has two felony convictions for possession and/or possession of drugs with intent to deliver. (Vol. III, Tr. 131) She was a reluctant witness who had to be arrested to ensure she complied with the subpoena to come to court. (C. 83, 84, 85, 90, 91)

Additionally, Cooper and Friend's description of their prior relationship and what they were doing together immediately prior to the incident and for how long raises substantial reason to question their credibility. Both Cooper and Friend described their relationship as casual and testified they knew each other because he (Cooper) was a friend of her father's. (Vol. III. Tr. 57, 133) However, in her Grand Jury testimony Friend did not state that she knew Cooper because he was a friend of her father. Instead she testified she knew Cooper from his delivering bread to Jewel Grocery Store where she worked. (Supplemental Record, Tr. 34-35) Furthermore, in her handwritten statement to the police Friend told detective Bogucki that her and Mr. Cooper dated. (Supplemental Record, Tr. 48)

Miss Friend testified she was on the truck when Cooper gave her money, and the men approached the truck. Miss Friend testified that:

> A: We was standing there talking. He gave me the money. I went to get off the truck, and two guys approached the truck.
> (Vol. III, Tr. 135)

In her handwritten statement, Friend stated she was in the truck for "about 20 minutes". Her statement reads:

A-8

Fletcher 000104

"Sheene states she got into the bread truck through the passenger side door. Sheene states that she and Edward Cooper were talking for about 20 minutes." (Supplemental Record, Tr. 27)

Mr. Cooper contradicted this. He testified:

Q: When you saw her, what happened?

A: She told me she was at a laundromat. She asked me did I have any change. I told her wait 'til I put the trays in the truck. When I opened the door to the truck, a guy came up behind me and stuck a pistol in my back. (Vol. III, Tr. 57)

Mr. Cooper and Miss Friend gave different reasons as to why he gave her money. According to Cooper "she told me she was at a laundromat. She asked me did I have any change." (Vol. III, Tr. 57) On the other hand, Friend testified she talked to him (Cooper) "to get some money from him for my daughter," and he gave money to her to buy shoes for her daughter. (Vol. III, Tr. 134)

The State argued that Cooper Friend had no motive to lie, and raised the issue of their relationship through their direct examination. (Vol. V, Tr. 71, 74, 80; Vol. III, Tr. 133) There are significant discrepencies between Cooper and Friend's statements/testimony with respect to the true nature of their relationship, the reason why she asked and why Cooper gave her money, if and how long they were in the truck, and what was occuring therein considered cumulatively operates to severly undermine Cooper and Friend's credibility. Furthermore, they had motive and interest to conceal the fact that a 38 year old man was dating a 16 year old child contrary to the State's assertion otherwise. The lack of reliable identification and credible testimony renders the State's evidence insufficient to sustain an abiding conviction of Petitioner's guilt by any standard. The state court's findings in respect to this issue has resulted in an decision contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, and involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

A-9

Fletcher 000105

**Ground four**: continued.

his counsel of the line-up date and time. These facts clearly demonstrate that the accusation of petitioner was, sufficiently formal, and the government's commitment to prosecute sufficiently concrete to trigger VI amendment right to counsel.

The United States Supreme Court in Rothgery v. Gillespie County, 554 U.S. —, 128 S.Ct. at 2589 held that, an accused is faced with the prosecutorial forces of organized society, and immensed in the intricacies of substantive and procedural criminal law that defined his capacity and control his actual ability to defend himself against a formal accusation that he is a criminal.

Moreover, the Supreme Court acknowledged that it would defy common sense to say that a criminal prosecution has not commensed against a defendant who, perhaps incarcerated and unable to afford judicially imposed bail, awaits preliminary examination on the authority of a charging document filed by the prosecutor, less typically by the police, and approved by a court of law. All of this is equally true whether the machinery of prosecution was turned on by the local police or state's attorney.

Correctly applying Rothgery to the facts at hand, it is clear petitioner was denied his VI amendment right to counsel in violation of his XIV right to due process. The Illinois Appellate Court's decision that this issue is waived is an unreasonable determination of the facts as presented in the state court proceedings, where petitioner raised the issue in his petition for Post-Conviction relief in the state court, and argued ineffective assistance of appellate counsel as an exception to waiver of the issue not raised on direct appeal, thereby preserving the issue of his right to counsel for collateral review.

Prejudice results from this error where Detective Bogucki testified at the line-up Cooper I.D. petitioner, however, it was established through the cross-examination of Cooper that he told an investigator he wasn't sure at the line-up of the identification of Petitioner. (Vol. III, Tr. 98-99) Had petitioner's attorney been permitted to observe the line-up at the time of the identification from where Cooper and Friend made their idenfication counsel would be able to resolve discrepancy.

Fletcher 000106

seven individuals five of which would have been merely young boys at the time of the occurernce, and Petitioner ware his hair in braids in his picture taken of him in 2002, a stark contrast to the short fade that he wore his hair in 1991 mug shot (See Exhibit G ), while the remaining participants all had short hair. These facts played a substantial disadvantage to Petitioner.

(2) Cooper and Friend also identified Petitoner in a corporal line-up. That line-up was even more suggestive. Even though, the impermissibly suggestive photo array causes all subsequent identifications from being admissible because it gave rise to a substantial likelihood of irreparable misidentification, the line-up itself was impermissibly suggestive.

First, Petitioner instantly standsout in the line-up; he was the tallest person in the line-up; he was the only person who remotely matched the height description given by the witnesses; he had the very distinctive feature of unusally large lips; he was the only person to have braids as well. Finally, he was the only person to "appear" in both the photo array and the line-up. (See ExhibitF)

To be sure, Cooper and Friend identification of Petitioner in the line-up is readily understandable as the fruit of their previous identification, i.e, identifying the man whose photograph the had previously picked out. The photo array in this case created a substantial likelihood of irreparable misidentification, consequently Cooper's and Friend's line-up and in-court identification are products of this improper police tactic. It needs to be noted, Petitioner's attorney was prevented by police from being present when the witnesses viewed the line-up, rendering the line-up procedures more questionable. (Argument IV, supra)

The state built it's case against Petitoner upon the identification of him by Cooper and Friend. The State provided neither witnesses nor any physical evidence which corroberated Petitioner's presence in Chicago or Illinois when

Fletcher 000107

Sorrell was murdered. On the other hand, Petitioner provided an alibi defense that he was likely in Memphis,TN on the date of the murder. The strongest, and wisest defense strategy would have been to attack the identification, and the best means to achieve this would have been through a motion to suppress. Petitioner's defense counsel filed such a motion but did not litigate it. Failure to litigate the motion can not be considered reasonable trial strategy under the specific facts and circumstances of this case. Given the suggestiveness of the photo array and the importance of the identification it was objectively unreasonable for defense counsel not to pursue the motion to suppress the suggestive identification. Petitioner obtained new counsel who raised claim of ineffective assistane of defense counsel for not litigating the motion to suppress. This was the same attorney to represent Petitioner on direct appeal to the Illinois Appellate Court. Appellate counsel failed to raise the ineffective assistance of defense counsel for not litigating the motion on direct appeal.

Aside from the identification by Cooper and Friend, the State did not have sufficient corroberating evidence linking Petitioner to the occurrence. Had the pre-trial identification been suppressed, the State would have been required to demonstrate that Cooper and Friend's in-court identification was reliable despite the passage of more than a decade and the suggestive confrontation in order to introduce the in-court identification. There was no satisfactory independant basis for Cooper and Friend's in-court identification of Petitioner as the robber, therefore, it's a reasonable probability that the motion to suppress would have been granted rendering defense counsel's failure to litigate the motion to suppress constitutionally ineffective. The state court's finding in respect to this issue has resulted in a decision contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, and involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings.

A-13

Fletcher 000108

<u>Ground six:</u> Petitioner was denied due process and his VI amendment right to effective assistance of appellate counsel on direct appeal to the Illinois Appellate Court when counsel failed to raise meritorious claims that he was denied VI amendment right to counsel as well as VI amendment right to effective assistance of trial counsel who failed to litigate motion to suppress after filing said motion.

It was argued to the Illinois Appellate Court that Petitioner raised several issues of constitutional error in his petition for Post-Conviction relief. Among those issues Petitioner argued he was denied his VI amendment right to counsel at the time of the April 20, 2002, line-up, and ineffective assistance of trial counsel for failing to litigate motion to suppress the identification testimony of Edward Cooper and Sheene Friend. Additionally, Petitioner argued in his petition for Post-Conviction relief that he was denied effective assistance of appellate counsel for failing to argue the above listed issues to the Illinois Appellate Court on direct appeal.

Ineffective assistance of appellate counsel is well recognized exception to have otherwise procedurally barred claims heard on their merits. Therefore, Petitioner has properly preserved all the issues raised herein his application for Federal Writ of Habeas Corpus. The state court's finding with respect to any procedural bars to Petitioner's claims have resulted in a decision contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, and involves an unreasonable determination of the facts inlight of the evidence presented in state court proceedings.

A-14

Fletcher 000109

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing   Public Defender's Office – Sheldon Green

(B) At arraignment and plea _____

(C) At trial   Jenner & Block, Joseph Saltiel, Reginal Hill

(D) At sentencing   Frederick F. Cohn

(E) On appeal   Frederick F. Cohn

(F) In any post-conviction proceeding     Pro se

(G) Other (state):   On appeal – Jennifer Blagg

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ( X )

Name and location of the court which imposed the sentence: _____ N/A _____

Date and length of sentence to be served in the future _____ N/A _____

    WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: ___7/7/11___
    (Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Arnold Dixon_
(Signature of petitioner)

_N03796_
(I.D. Number)

_P.O. Box 112 Joliet Il 60434_
(Address)

7

Revised: 7/20/05

**Fletcher 000110**